KEKER, VAN NEST & PETERS LLP
BENEDICT Y. HUR - # 224018
bhur@keker.com
BENJAMIN BERKOWITZ - # 244441
bberkowitz@keker.com
THOMAS E. GORMAN - # 279409
tgorman@keker.com
KATHRYN BOWEN - # 312649
kbowen@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone: 415 391 5400
Facsimile: 415 397 7188

Attorneys for Defendant GOOGLE LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

NAPOLEON PATACSIL, individually, and on behalf of other persons similarly situated,

Plaintiff,

v.

GOOGLE, INC.,

Defendant.

Case No. 5:18-cv-05062-EJD

**DEFENDANT GOOGLE LLC'S MOTION TO DISMISS**

Date: January 31, 2019
Time: 9:00 a.m.
Dept: Courtroom 4, 5th Floor
Judge: Hon. Edward J. Davila

Date Filed: August 17, 2018

Trial Date: None set

## TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ........................................................................ iv

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................1

I. INTRODUCTION ........................................................................................................1

II. BACKGROUND AND PLAINTIFF'S ALLEGATIONS ...................................................2

A. Patacsil's allegations. ...........................................................................................2

B. Google's Privacy Policy. ......................................................................................2

C. Web & App Activity. ...........................................................................................3

III. QUESTIONS PRESENTED...........................................................................................3

IV. LEGAL STANDARD.....................................................................................................4

V. ARGUMENT ................................................................................................................4

A. Patacsil's complaint should be dismissed in its entirety because he consented to Google's collection of location information. .....................................4

B. Patacsil's CIPA claim fails because Google has not placed an "electronic tracking device" that was "attached to a movable thing." .......................................7

C. Patacsil's allegations under the California Constitution fail to state a claim. .........9

D. Patacsil's allegations for intrusion upon seclusion fail to state a claim.................12

VI. CONCLUSION............................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Appling v. Wachovia Mortg., FSB*
745 F. Supp. 2d 961 (N.D. Cal. 2010) ........ 4

*Ashcroft v. Iqbal*
556 U.S. 662 (2009) ........ 4

*Balistreri v. Pacifica Police Dept.*
901 F.2d 696 (9th Cir. 1990) ........ 4

*Bell Atl. Corp. v. Twombly*
550 U.S. 544 (2007) ........ 4

*Botello v. Morgan Hill Unified Sch. Dist.*
No. C09-02121 HRL, 2009 WL 3918930 (N.D. Cal. Nov. 18, 2009) ........ 10

*Charles O. Bradley Trust v. Zenith Capital LLC*
No. C-04-2239 JSW(EMC), 2006 WL 798991 (N.D. Cal. Mar. 24, 2006) ........ 10

*Four Navy Seals v. Associated Press*
413 F. Supp. 2d 1136 (S.D. Cal. 2005) ........ 12

*Gonzales v. Uber Techs., Inc.*
*3*05 F. Supp. 3d 1078 (N.D. Cal. 2018) ........ 6

*In re Facebook Internet Tracking Litig.*
263 F. Supp. 3d 836 (N.D. Cal. 2017) ........ 6, 12

*In re iPhone Application Litig.*
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ........ 1, 11, 13

*In re Yahoo Mail Litig*.
7 F. Supp. 3d 1016 (N.D. Cal. 2014) ........ 9, 10, 11

*Leonel v. Am. Airlines, Inc.*
400 F.3d 702 (9th Cir. 2005) ........ 10

*Nguon v. Wolf*
517 F. Supp. 2d 1177 (C.D. Cal. 2007) ........ 10

*St. Claire v. Gilead Scis., Inc.* (*In re Gilead Scis. Sec. Litig.*)
536 F.3d 1049 (9th Cir. 2008) ........ 4

**State Cases**

*Folgelstrom v. Lamps Plus, Inc.*
195 Cal. App. 4th 986 (2011) ........ 11, 13

*Fredenburg v. City of Fremont*
119 Cal. App. 4th 408 (2004) ........ 10

*Hill v. Nat'l Collegiate Athletic Ass'n*
7 Cal. 4th 1 (1994) .......... 6, 9

*Loder v. City of Glendale*
14 Cal. 4th 846 (1997) .......... 9

*Pioneer Elecs. (USA), Inc. v. Sup. Ct.*
40 Cal. 4th 360 (2007) .......... 10

**State Statutes**

Cal. Penal Code § 637.7 .......... 1, 6, 7, 8

Cal. Gov't Code § 53166 .......... 9

**Federal Rules**

Federal Rule 12(b)(6) .......... 4

**Treatises**

Rest. (2d) Torts § 652B .......... 12

iii

DEFENDANT GOOGLE LLC'S MOTION TO DISMISS
Case No. 5:18-cv-05062-EJD

1307241

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on January 31, 2019 at 9:00 a.m., defendant Google LLC ("Google") (misnamed in plaintiff's complaint as "Google Inc.") will, and hereby does, move the Court, located at 280 South 1st Street, San Jose, California, for an order dismissing Plaintiff Napoleon Patacsil's complaint in its entirety and with prejudice.

Google brings this motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure on the ground that plaintiff's complaint fails to state a claim. This motion is based on the following Memorandum of Points and Authorities, on Google's Request for Judicial Notice and attached exhibits, on all pleadings and papers on file or to be filed in the above-entitled action, on the arguments of counsel, and on any other matters that may properly come before the Court for its consideration.

Dated: October 22, 2018

KEKER, VAN NEST & PETERS LLP

By: */s/ Benjamin W. Berkowitz*
BENEDICT Y. HUR
BENJAMIN BERKOWITZ
THOMAS E. GORMAN
KATHRYN BOWEN

Attorneys for Defendant GOOGLE LLC

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION[1]

Under Google's Terms of Service and Privacy Policy, Napoleon Patacsil agreed that Google could collect information about his location. Google's Privacy Policy states: "We collect information about your location when you use our services, which helps us offer features like driving directions for your weekend getaway or showtimes for movies playing near you."[2] Because Patacsil consented to Google's collection of location information, each of his claims fail as a matter of law.

Patacsil's claims fail for independent reasons as well. His claim for violation of the California Invasion of Privacy Act ("CIPA") fails because California Penal Code § 637.7 does not apply to software products like Google's mobile-operating system or applications. Instead, § 637.7 applies only to "electronic tracking devices" that are "attached to" vehicles or other movable things. Patacsil points to software installed on a smartphone as the "tracking device" that is "attached to" a "moveable thing," but both the statute's plain language and case law reject Patacsil's attempt to apply § 637.7 to smartphone software.

Patacsil contends that Google violated the California constitutional right to privacy and intruded upon his seclusion, but those claims fail because Google's conduct did not invade Patacsil's privacy and did not amount to an "egregious" or "highly offensive" breach of social norms. As Judge Koh held in *In re iPhone Application Litigation*, use of "geolocation" data—even without consent—"does not constitute an egregious breach of social norms" and "does not constitute a violation of Plaintiffs' right to privacy." 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012). To the contrary, the use of location information by businesses is "routine commercial behavior." *Id.* (quoting *Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 992 (2011)). Thus, case law rejects Patacsil's claims under California's constitutional and common-law

---

[1] Throughout this brief, unless otherwise stated, emphases were added to quotations and internal punctuation, alternations, and citations were omitted from them.

[2] *See* Declaration of Kathryn Bowen in Support of Google's Motion to Dismiss ("Bowen Decl."), Ex. 1A. As explained in Google's Request for Judicial Notice, the Court may take judicial notice of Google's policies. In addition, Patacsil incorporated them by reference in his complaint, as he cited several Google support pages, each of which contains a link to Google's Terms of Service and its Privacy Policy. *See* Compl. 3 n.2, 5 nn.5–6, 6 n.7, 8 nn.10–14.

privacy torts.

As set forth more fully below, Patacsil's complaint fails as a matter of law and cannot be cured by amendment. It should be dismissed in its entirety and with prejudice.

## II. BACKGROUND AND PLAINTIFF'S ALLEGATIONS

### A. Patacsil's allegations.

Patacsil alleges that Google "represented to users of its operating system and apps that the activation of certain settings will prevent the tracking of users' geolocations" and he contends that this "representation was false." Compl. ¶ 1. Patacsil focuses on two Google privacy settings: Location History and Web & App Activity. *Id.* ¶¶ 4, 6, 12, 14–25. Patacsil alleges that a Google support page associated with the Location History setting stated that, "You can turn off Location History at any time. With Location History off, the places you go are no longer stored." *Id.* ¶¶ 4, 14, 18, 28.[3] Patacsil alleges that even though his "Location History storage option" was "off" on his iPhone and Android mobile phones, Google "continued to track his location information." *Id.* ¶¶ 6–7. Patacsil provides only two short paragraphs of allegations that are personal to him, stating only that he currently uses an iPhone, he previously used an Android phone, on both devices his Location History setting was off (which is the default), and yet he believes that "Google continued to track his location information." *Id.* ¶¶ 6–7. Patacsil provides no details on what location information Google allegedly collected from him or how this alleged collection caused him harm. The rest of the complaint contains only general allegations on Google's features, settings, and support pages without any specific allegations about Patascil, his alleged use of Google's products, or the location information allegedly collected from him.

### B. Google's Privacy Policy.

Google's Privacy Policy describes the information that Google collects, why it collects that information, and how Google keeps that information secure. RFJN Ex. 1A. The Privacy Policy is incorporated into Google's Terms of Service. Specifically, the Terms of Service state, "By using our Services, you are agreeing to these terms. Please read them carefully. . . . Google's

[3] While Patacsil's complaint cites this support-page statement several times, he never alleges that he relied on it or even read it.

privacy policies [hyperlinked] explain how we treat your personal data and protect your privacy when you use our Services. By using our Services, you agree that Google can use such data in accordance with our privacy policies." RFJN Ex. 2 at 1–2. With respect to location information, the Privacy Policy explains that Google "collect[s] information **about your location** when you use our services, which helps us offer features like driving directions for your weekend getaway or showtimes for movies playing near you." RFJN Ex. 1A at 4.[4] Previous versions of Google's Privacy Policy conveyed the same message using slightly different words, stating, "When you use Google services, we may collect and process information about **your actual location**." RFJN Ex. RFJN Ex. RFJN Ex. 1B at 3.

### C. Web & App Activity.

The crux of Patacsil's complaint is his suggestion that one Google setting—a "setting called Web & App Activity"—remained turned "on" and allowed Google to track his location even though the "Location History" feature was off. Compl. ¶¶ 22–24. Although Patacsil contends that Google provides "insufficient notice" of how the Web & App Activity setting relates to location data, his complaint acknowledges that a Google support page for Web & App Activity specifically discloses that—when this feature is on—Google saves user-location information. *Id.* ¶ 24. Specifically, the support page discloses: "When Web & App Activity is on, Google saves information like: . . . **Your location**."[5] And as Patacsil acknowledges, Google gives users like Patacsil the option to turn off the Web & App Activity setting. Compl. ¶¶ 22–25.

## III. QUESTIONS PRESENTED

1. Does Patacsil's consent to Google's Privacy Policy defeat all of his causes of action in light of the express authorization for Google's collection of his location information?

[4] Google also emphasizes its collection of user-location information in short tutorial videos displayed to users on the Privacy Policy webpage. In one of the videos, Google explains: "When you use Google services, we collect a few different types of information," which can include "information about **your location** as you use Google services. This means when you search for coffee shops we can use things like your search terms, **plus your location** to help you find a great place just around the corner!" *See* Google Privacy Policy at https://policies.google.com/privacy (second video tutorial). In another tutorial, Google explains: "We use your info to customize your results and improve our services for everybody. Let's say you search for 'mountain biking.' We use what you searched for, other searches you made, [and] **your location** . . . to find you the results you're looking for: mountain-biking trails near you!" *Id.* (third video tutorial).

[5] *See* RFJN Ex. 3 (cited in Compl. ¶ 24 & n.11).

2. Has Patacsil stated a claim under CIPA where he has not alleged—and cannot allege—that Google deployed an "electronic tracking device" that was "attached to a . . . movable thing"?

3. Has Patacsil stated a claim for invasion of privacy under the California Constitution where he has failed to allege a protectable privacy interest, a reasonable expectation of privacy, or that Google's conduct was an "egregious breach of social norms"?

4. Has Patacsil stated a claim for intrusion upon seclusion where he has failed to allege a violation of a "reasonable expectation of privacy" or an intrusion that was "'highly offensive' to a reasonable person"?

## IV. LEGAL STANDARD

To survive a motion to dismiss under Federal Rule 12(b)(6), a plaintiff must plead facts showing that his "right to relief [rises] above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the Court must accept material ***factual*** allegations as true, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" and pleadings that are "no more than conclusions, are not entitled to the assumption of truth." *Id*. at 678, 679. Furthermore, the Court need not accept the truth of any allegations that are contradicted by matters properly subject to judicial notice or by exhibits attached to the complaint. *St. Claire v. Gilead Scis., Inc.* (*In re Gilead Scis. Sec. Litig.*), 536 F.3d 1049, 1055 (9th Cir. 2008); *Appling v. Wachovia Mortg., FSB*, 745 F. Supp. 2d 961, 967 (N.D. Cal. 2010). Finally, dismissal is proper if the complaint lacks "a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990).

## V. ARGUMENT

### A. Patacsil's complaint should be dismissed in its entirety because he consented to Google's collection of location information.

Patacsil cannot state any claim for invasion of privacy—whether under the California Invasion of Privacy Act, the California Constitution, or the common-law tort of intrusion upon seclusion—because he consented to Google's use of his location information. Google's current

Privacy Policy explains Google's use of location information in a section entitled, "Information Google collects," with a subsection titled, "Your location information," which provides in its entirety:[6]

Your location information

We collect information about your location when you use our services, which helps us offer features like driving directions for your weekend getaway or showtimes for movies playing near you.

Your location can be determined with varying degrees of accuracy by:

- GPS
- IP address
- Sensor data from your device
- Information about things near your device, such as Wi-Fi access points, cell towers, and Bluetooth-enabled devices

The types of location data we collect depend in part on your device and account settings. For example, you can turn your Android device's location on or off using the device's settings app. You can also turn on Location History if you want to save and manage your location information in your account.

Previous versions of this Privacy Policy similarly disclosed that, "When you use Google services, we may collect and process information about **your actual location**." RFJN Ex. 1B at 3.[7] Thus,

[6] RFJN Ex. 1A at 4.

[7] Operative from December 2014 through May 25, 2018, these prior versions of the Privacy Policy stated (on location collection), "When you use Google services, we may collect and process information about your actual location. We use various technologies to determine location, including IP address, GPS, and other sensors that may, for example, provide Google with information on nearby devices, Wi-Fi access points and cell towers." RFJN Ex. 1B at 3.

the Privacy Policy (which all Google users consent to as part of Google's Terms of Service) informed Patacsil that Google collects location information when he uses Google's services.

The alleged collection of such information is not actionable because of this consent. Specifically, the California Invasion of Privacy Act prohibits the unlawful use of "electronic tracking devices," but it includes a statutory exemption for "tracking" that was "consented to." Cal. Penal Code § 637.7; *see also Gonzales v. Uber Techs., Inc., 3*05 F. Supp. 3d 1078, 1088 (N.D. Cal. 2018) (dismissing § 637.7 claim where plaintiff consented to tracking through terms of service). Similarly, Patacsil's invasion-of-privacy claim under the California Constitution requires him to establish a "legally protected privacy interest" and "a reasonable expectation of privacy in the circumstances." *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 39–40 (1994). But his consent makes it impossible for him to establish those elements, because he expressly acknowledged that Google was collecting his location information. And his intrusion-upon-seclusion claim similarly requires him to establish a "reasonable expectation of privacy" and an intrusion that was "'highly offensive' to a reasonable person." *In re Facebook Internet Tracking Litig.*, 263 F. Supp. 3d 836, 846 (N.D. Cal. 2017). Because Patacsil consented to Google's collection of his location information, he cannot satisfy these elements, and his claims must be dismissed in their entirety.

Patacsil alleges that a user might misunderstand their settings and believe that by confirming that one feature—"Location History"—was off (by default), they were restricting Google from collecting location information in any other way or through any other setting or feature. But Patacsil never alleges that he relied on or even read the "Location History" support page. And, even if he had, the "support page" that Patacsil references must be read in the context of Google's Privacy Policy and the numerous different services that Google provides. For example, Patacsil implies that Google collected his location information when he used Google Maps (Compl. ¶ 20), but Google obviously must collect and use geolocation information to provide driving directions. Other support pages—such as the Web & App Activity page—make clear that Google collects location information when those services are used.[8] And as Patacsil

[8] *See* RFJN Ex. 3 (cited in Compl. ¶ 24 & n.11) ("When Web & App Activity is on, Google saves information like: . . . **Your location.**").

admits, he can turn off Web & App Activity at any time. Compl. ¶¶ 22–25. All of Patacsil's claims require him to show that Google invaded his privacy by collecting his location information, and he cannot make that showing because he expressly consented to that collection.

**B. Patacsil's CIPA claim fails because Google has not placed an "electronic tracking device" that was "attached to a movable thing."**

Patacsil's claim that Google violated the California Invasion of Privacy Act ("CIPA") also fails because Patacsil cannot properly allege that Google placed an "electronic tracking device" that was "attached to a . . . movable thing." Cal. Pen. Code § 637.7. Patacsil alleges that Google "utilized multiple devices that are 'electronic tracking devices'" (Compl. ¶ 44), and that Google's "electronic tracking device" is embodied in "a host of technology—including but not limited to apps, firmware, device components, operating system software, and other code—on each Class member's phone (a 'movable thing' under the statute)." *Id.* But none of those alleged "devices" fall within the statutory definition of "electronic tracking device."

California Penal Code § 637.7 was enacted by the California Legislature to "prohibit the placing of an electronic tracking device on an automobile by a person who is not the registered owner."[9] As Judge Corley recently explained in *Moreno v. San Francisco Bay Area Rapid Transit District*, § 637.7 does not apply to software installed on cellphones for two reasons. *See* No.17-cv-02911-JSC, 2017 WL 6387764, at *5 (N.D. Cal. Dec. 14, 2017). ***First***, even "[a]ssuming that a cellphone qualifies as a 'vehicle or other movable thing,' the App is not 'attached to' the cellphone." *Id.* To "attach" means "to join or fasten" to something else. *Id.* (quoting Oxford English Dictionary). An app, as alleged in *Moreno*—or "firmware, operating system software, and other code" as alleged in this case—may be downloaded to a cellphone, or installed on a cellphone, but software code is not "attached to" a cellphone. *Id.* Thus, software cannot satisfy the "attached to" element of the statutory definition of "electronic tracking device." *Id.* ***Second***, software code does not fit within the plain-language definition of a "device." As Judge Corley noted, a "device" is a "piece of equipment . . . designed to serve a special purpose or perform a special function," such as a "hidden recording device" or a "smartphone[]." *Id.*

[9] RFJN Ex. 4 at 1 (Senate Committee on Public Safety Analysis, Privacy: Electronic Tracking Device, SB 1667).

(citing dictionaries). Software code cannot be a "device" and thus it cannot qualify as a prohibited "electronic tracking device" under § 637.7. *Id.*

As in *Moreno*, Patacsil's CIPA claim here fails because he does not plead—and cannot plead—that Google used an "electronic tracking device" as defined under the statute. Patacsil does not allege Google "attached" any physical device to his vehicle or other movable thing. Rather, Patacsil alleges that Google's "electronic tracking device" is embodied in "a host of technology—including but not limited to apps, firmware, device components, operating system software, and other code—on each Class member's phone (a 'movable thing' under the statute)." Compl. ¶ 44. But none of those alleged pieces of technology fall within the statutory definition of "electronic tracking device." It is self-evident that a "device component" is less than a "device" because a device component is merely a ***part*** or ***piece*** of a device. And, as Judge Corley held in *Moreno*, because the word "device" means a physical object, such as a mechanical or electrical piece of equipment,[10] Patacsil's allegations regarding "apps, firmware, operating system software, and other code" fail as well.

As Judge Corley noted in her opinion, the legislative history—and related legislative actions—confirm the *Moreno* court's interpretation of the plain language of the statute. *Moreno*, 2017 WL 6387764 at *5. As the bill moved through the legislature, the sponsor (Senator John Burton) and the relevant legislative offices repeatedly described the bill as focused on the placement of "an electronic tracking device on an automobile without the permission of the

---

[10] *Moreno*, 2017 WL 6387764, *5. *See also, e.g.*, Am. Heritage Dictionary (5th ed. 2018) ("**1.** An object designed and manufactured to perform one or more functions"); New Oxford Am. Dictionary (3d ed. 2010) ("**1** a thing made or adapted for a particular purpose, esp. a piece of mechanical or electronic equipment: *a measuring device*"); Dictionary.com, based on the Random House Unabridged Dictionary (2018) ("**1.** A thing made for a particular purpose; an invention or contrivance, especially a mechanical or electric one").

owner."[11] Thus the legislature was focused on tangible devices that could be physically attached to a vehicle, not intangible software code that could be downloaded to a smartphone.[12] Because Patacsil has not alleged—and cannot allege—that Google "attached" an "electronic tracking device" to his vehicle or other movable thing, his CIPA claim should be dismissed.

**C. Patacsil's allegations under the California Constitution fail to state a claim.**

"The California Constitution sets a 'high bar' for establishing an invasion of privacy claim." *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1038 (N.D. Cal. 2014). To state a claim for invasion of privacy under the California Constitution, Patacsil must demonstrate three elements: "(**1**) a legally protected privacy interest; (**2**) a reasonable expectation of privacy in the circumstances; and (**3**) conduct by defendant constituting a serious invasion of privacy." *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 39–40 (1994). These are "threshold elements" that permit courts to "weed out" at the pleading stage claims that do not rise to the level of a serious and significant intrusion upon "a constitutionally protected privacy interest." *Loder v. City of Glendale*, 14 Cal. 4th 846, 893 (1997). Patacsil's complaint fails to establish any of these threshold elements.

***First***, Patacsil cannot establish a "legally protected privacy interest," either in the form of an informational interest "in precluding the dissemination or misuse of sensitive and confidential information" where disclosure would cause "unjustified embarrassment or indignity," or an autonomy interest in "making intimate personal decisions" without "observation" or "intrusion."

[11] *See, e.g.*, RFJN Ex. 4 at 1 ("The purpose of this bill is to prohibit the placing of an electronic tracking device on an **automobile** by a person who is not the registered owner."); *see also* RFJN Ex. 6 at 1 ("Existing law does not regulate the placing of electronic tracking devices on **automobiles**."); RFJN Ex. 5 at 1 ("This bill would make it a misdemeanor to place an electronic tracking device on someone else's **vehicle**."); RFJN Ex. 6 at 1 ("This bill prohibits the placing of an electronic tracking device on an **automobile** by a person who is not the registered owner."); RFJN Ex. 7 at 1 ("This measure would make it a misdemeanor to place an electronic tracking device on someone else's **vehicle**,"); RFJN Ex. 9 at 1 ("Prohibits the placing of an electronic tracking device on an **automobile** by a person who is not the registered owner, lessor or lessee of that **vehicle**.").

[12] When the California Legislature wants to regulate software systems in addition to hardware devices, it knows how to do so. As just one example, Government Code § 53166 restricts local agencies from certain uses of "[c]ellular communications interception technology," a term defined as a "***device*** that intercepts . . . calling information or content." Gov't Code § 53166(a)(1). In the most recent legislative session, the Legislature has repeatedly considered an expansion of the Government Code to cover surveillance not just by devices, but also by "systems" and "software." *See* RFJN Ex. 10 at 5.

*Pioneer Elecs. (USA), Inc. v. Sup. Ct.*, 40 Cal. 4th 360, 370 (2007). Patacsil does not allege that Google misused or collected extremely sensitive information, like a confidential medical file, private financial records, or sexual information.[13] Instead, he alleges vaguely—with no specific facts—that Google collected some unidentified location information. But a "person's general location is ***not*** the type of core value, informational privacy" that is encompassed by the California Constitution. *Fredenburg v. City of Fremont*, 119 Cal. App. 4th 408, 423 (2004). Moreover, although Patacsil attached an exhibit to show how Google allegedly tracked the location of a third-party researcher (Compl. Ex. 1), he makes no allegations at all regarding what location information Google allegedly collected from him or why that specific information is private. That failure alone is grounds for dismissal. As the court held in *Cahen v. Toyota Motor Corporation*, it is not enough for plaintiffs to plead generally that the defendant was tracking his vehicle's "location 'at various times'" because that is "not categorically the type of sensitive and confidential information the constitution aims to protect." 147 F. Supp. 3d 955, 973 (N.D. Cal. 2015). A plaintiff must provide "more robust allegations" about the specific location information the defendant collected. *Id.* Similarly, in *In re Yahoo Mail Litigation*, the court dismissed allegations that Yahoo had scanned the content of their emails, holding that there is "no legally protected privacy interest and reasonable expectation of privacy in emails as a general matter" and that plaintiff must "plead specific email content in specific emails" to demonstrate a reasonable expectation of privacy. 7 F. Supp. 3d at 1040–42. So, too here, Patacsil has failed to identify what specific location information Google allegedly collected from him, or to explain why that information is sensitive enough to justify invocation of the California Constitution.

***Second***, because Patacsil agreed to a Privacy Policy that authorized Google to collect location information, he cannot establish that he had a reasonable expectation of privacy under the circumstances. In other words, he cannot claim that Google invaded his privacy by collecting information that he had already agreed to share.

[13] *See, e.g.*, *Leonel v. Am. Airlines, Inc.*, 400 F.3d 702, 712 (9th Cir. 2005) (medical profile); *Charles O. Bradley Trust v. Zenith Capital LLC*, No. C-04-2239 JSW(EMC), 2006 WL 798991, at *1-2 (N.D. Cal. Mar. 24, 2006) (private financial records); *Nguon v. Wolf*, 517 F. Supp. 2d 1177, 1196 (C.D. Cal. 2007) (sexual orientation); *Botello v. Morgan Hill Unified Sch. Dist.*, No. C09-02121 HRL, 2009 WL 3918930, at *5 (N.D. Cal. Nov. 18, 2009) (sexual activity).

Moreover, based on his allegations, Patacsil cannot credibly claim surprise that his mobile phone (including Google's services) was collecting and making use of his location. Patacsil alleges that Google collected location information when users used Google Maps and weather applications, or initiated web searches. Compl. ¶ 20. Yet it is readily apparent to any smartphone user that navigation software (such as Google Maps) requires the collection and use of location information to tell you which turns to take, that weather software needs to know where you are to provide you with the relevant forecast, and that search queries for questions like "what time is the sunset" or "movies playing nearby" require location information to provide useful results. *See also*, above at n.4 (explaining how Google uses location information to optimize web-search results). And if Patacsil wanted to turn off Location History, Web & App Activity, or other features on his mobile phone, he acknowledges he could have done so. Compl. ¶¶ 12, 13, 23, 25.

***Third***, Patacsil cannot establish the third element, because "[a]ctionable invasions of privacy must be sufficiently serious in their nature, scope, and actual or potential impact to constitute an ***egregious breach*** of social norms." *In re iPhone Application Litig.*, 844 F. Supp. 2d at 1063. In this district and in this state, courts regularly dismiss invasion-of-privacy claims at the pleading stage for not establishing an egregious breach ***even when*** plaintiffs claim that a defendant collected location information without consent. For example, in *In re iPhone Application Litigation*, the plaintiffs alleged that the defendants systematically collected (and disseminated) their geolocation data, but the court dismissed those claims because they did "not constitute an egregious breach of social norms." *Id.* Similarly, in *Folgelstrom v. Lamps Plus*, the court dismissed claims that the defendant surreptitiously collected and then used the plaintiff's home-address information for commercial purposes. 195 Cal. App. 4th at 989–992. And in *Moreno*, the court held that plaintiff's allegations—that her geolocation information was improperly collected—were insufficiently egregious to make out an invasion-of-privacy claim. 2017 WL 6387764, at *7–8. These opinions confirm that the collection of geolocation data is not sufficient to establish a constitutional claim for invasion of privacy. *See also In re Yahoo Mail Litig.*, 7 F. Supp. 3d at 1038.

**D. Patacsil's allegations for intrusion upon seclusion fail to state a claim.**

Patacsil's claim for intrusion-upon-seclusion fails for the same reasons as his constitutional claim for invasion of privacy. To state a claim for the common-law-tort of intrusion upon seclusion, Patacsil must show "(**1**) that the defendant intentionally intruded into a place, conversation, or matter as to which the plaintiff had a reasonable expectation of privacy, and (**2**) that the intrusion was 'highly offensive' to a reasonable person." *In re Facebook Internet Tracking Litig.*, 263 F. Supp. 3d 836, 846 (N.D. Cal. 2017) (citing *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 285 (2009)); *see also* Rest. (2d) Torts § 652B. And when a plaintiff brings claims both for (**A**) invasion of privacy under the California Constitution, and (**B**) the tort of intrusion upon seclusion, "courts conduct a combined inquiry that considers '(**1**) the nature of any intrusion upon reasonable expectations of privacy, and (**2**) the offensiveness or seriousness of the intrusion, including any justification and other relevant interests.'" *In re Facebook Internet Tracking Litig.*, 263 F. Supp. 3d at 846 (quoting *Hernandez*, 47 Cal. 4th at 287).

Under this "combined inquiry," Patacsil's intrusion-upon-seclusion claim fails for the same reasons as his constitutional invasion-of-privacy claim. For example, in *In re Facebook Internet Tracking Litigation*, this Court analyzed both claims together and dismissed both because the plaintiffs had not established a reasonable expectation of privacy and had not established that the alleged invasion was "highly offensive." 263 F. Supp. 3d at 846. In *Moreno*, the court dismissed the plaintiff's common-law tort "for the same reasons" as the constitutional claim. 2017 WL 6387764, at *8. In *Low v. LinkedIn*, the court noted that both the constitutional tort and the common-law tort require "similarly high standards for the type of invasion that is actionable" before dismissing them both on the pleadings because the facts alleged were not sufficient "to establish a highly offensive disclosure of information or a 'serious invasion' of a privacy interest." 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012).[14] The claims rise and fall together—indeed, Google's counsel could not find any California decision in which the court dismissed a constitutional claim for invasion of privacy ***and*** declined to dismiss a parallel claim for intrusion

[14] See *also Four Navy Seals v. Associated Press*, 413 F. Supp. 2d 1136, 1143, 1146–47 (S.D. Cal. 2005) (dismissing both invasion-of-privacy and intrusion-upon-seclusion claims because the alleged conduct was not sufficiently egregious or highly offensive).

upon seclusion. The result should be no different in this case. Patacsil's allegations—that Google collected location information during the provision of mobile services—is exactly what Patacsil (and others) consented to in Google's Privacy Policy. In addition, numerous smartphone applications routinely collect location information from users to provide them with features like navigation, weather, and localized search results, making it impossible for Patacsil to adequately allege that this collection is "highly offensive to a reasonable person" ***only when*** Google does it and despite the apparent nature of how the information is collected and used to provide those services.

Moreover, Patacsil has failed to provide any specific, factual allegations regarding the location information he contends Google collected, including what the information showed and why that information is private, making it impossible for him to establish the elements of this tort. As noted above, Patacsil's complaint alleges certain facts about what Google collected from a "Princeton postdoctoral researcher," but he does not say anything about what Google collected from him. Compl. 7 n.8. And much of what one might imagine could have been collected—like the addresses for his home or work—are exactly the sorts of information that courts have recognized is commonly collected as part of "routine commercial behavior." *In re iPhone Application Litigation*, 844 F. Supp. 2d at 1063; *Folgelstrom*, 195 Cal. App. 4th at 992. As explained in the preceding section, these allegations simply do not rise to the level of a "highly offensive" or "egregious" violation of privacy or social norms. *See* § V(C) *above*.

## VI. CONCLUSION

For the reasons set forth above, Patacsil's complaint should be dismissed in its entirety and with prejudice.

Dated: October 22, 2018

KEKER, VAN NEST & PETERS LLP

By: */s/ Benjamin W. Berkowitz*
BENEDICT Y. HUR
BENJAMIN BERKOWITZ
THOMAS E. GORMAN
KATHRYN BOWEN

Attorneys for Defendant GOOGLE LLC