**EXHIBIT A**

Michael W. Sobol (State Bar No. 194857)
msobol@lchb.com
**LIEFF CABRASER HEIMANN &**
**BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: 415.956.1000
Facsimile: 415.956.1008

Hank Bates (State Bar No. 167688)
hbates@cbplaw.com
**CARNEY BATES & PULLIAM, PLLC**
519 West 7th St.
Little Rock, AR 72201
Telephone: 501.312.8500
Facsimile: 501.312.8505

*Attorneys for Plaintiff, individually and*
*on behalf of all others similarly situated*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO/OAKLAND DIVISION

| | |
|---|---|
| NAPOLEON PATACSIL, individually, and on behalf of other persons similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> GOOGLE, INC., <br><br> Defendant. | Case No. 18-5062 <br><br> **CLASS ACTION COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** |

1606238.4

1    **I.      INTRODUCTION**

2            1.      The present action involves the surreptitious location tracking of millions of

3    mobile phone users by Defendant Google, Inc. ("Google").  Google is a mobile operating system

4    and mobile applications ("apps") developer.  Google expressly represented to users of its

5    operating system and apps that the activation of certain settings will prevent the tracking of users'

6    geolocations.  This representation was false.  Despite users' attempts to protect their location

7    privacy, Google collects and stores users' location data, thereby invading users' reasonable

8    expectations of privacy, counter to Google's own representations about how users can configure

9    Google's products to prevent such egregious privacy violations.

10           2.      The efforts of privacy-conscious individuals to avoid the improper collection and

11   storage of personal information – particularly sensitive personal information – must be protected.

12   As the Supreme Court recently recognized in *Carpenter v. United States*, 138 S. Ct. 2206 (2018),

13   location data is highly sensitive, not just because of what the data point alone says about an

14   individual (*i.e.*, where they were at a particular time), but also because of the massive amount of

15   personal information that can be extracted from location data (such as medical treatment, personal

16   relationships, and private interests).  As Chief Justice John Roberts stated, "a cell phone—almost

17   a 'feature of human anatomy[]'—tracks nearly exactly the movements of its owner.… A cell

18   phone faithfully follows its owner beyond public thoroughfares and into private residences,

19   doctor's offices, political headquarters, and other potentially revealing locales," and when a third-

20   party has access to the information stored on one's cell phone, that entity "achieves near perfect

21   surveillance, as if it had attached an ankle monitor to the phone's user." *Id.* at 2218 (internal

22   citations omitted).

23           3.      Despite the recognized sensitivity of location data, Google collects this data

24   against the express wishes and expectations of its users.  As reported recently by the Associated

25   Press, "Google wants to know where you go so badly that it records your movements even when

26   you explicitly tell it not to."[1]  The report—corroborated by respected cyber security researchers—

27   _____

28   [1] Ryan Nakashima, "AP Exclusive: Google tracks your movements, like it or not," The
     Associated Press, August 13, 2018 (available at

found that Google technology, embedded on millions upon millions of smartphones, stores individuals' location information even if users activate a privacy setting purporting to prevent Google from doing so.

4. Google itself assured individuals that they could prevent Google from tracking them by disabling a feature called "Location History" on their devices. Google represented that a user "can turn off Location History at any time. With Location History off, the places you go are no longer stored."[2] This simply was not true. As revealed in the recent AP investigation—and confirmed by a team of researchers at Princeton University—Google continues to access and store the precise geolocation information of those individuals who have affirmatively turned off the Location History setting. Google modified–and continues to modify as of the date of this complaint—this and other representations after the publication of the AP Report and the resulting public outcry, as discussed in Section C, *infra*.

5. This conduct violates the California Invasion of Privacy Act, Cal. Pen. Code §§ 630, *et seq.* ("CIPA") and California's Constitutional Right to Privacy, and constitutes an unlawful intrusion upon seclusion.

II. **THE PARTIES**

6. Plaintiff Napoleon Patacsil resides in San Diego, California. Between 2016 and the present, Plaintiff owned and used an Apple iPhone that had various Google apps and functionalities downloaded onto the phone. While using these apps, Plaintiff Patacsil expressly attempted to limit Google's tracking of his location by managing his Location History settings – turning the apps' Location History storage option to "off." Nevertheless, Google continued to track his location information.

7. Prior to acquiring the iPhone in approximately 2016, Plaintiff owned and operated an Android mobile phone. Android is a mobile operating system developed by Google. In an express effort to protect his location history – and thus his privacy – from efforts by Google, and

---

https://www.apnews.com/828aefab64d4411bac257a07c1af0ecb/AP-Exclusive:-Google-tracks-your-movements,-like-it-or-not) (hereafter, "AP Report") (accessed August 15, 2018).

[2] Google Account Help, "Manage of Delete Your Location History" (available at https://support.google.com/accounts/answer/3118687?hl=en) (accessed August 15, 2018).

1    any other third-parties, to track and record his location over time, Mr. Patacsil turned the Location

2    History setting to "off" on this device.  Nevertheless, Google continued to track his location

3    information.

4           8.      Defendant Google, Inc. ("Google," "Defendant," or "the Company") is a United

5    States corporation headquartered in Mountain View, California, and incorporated under the laws

6    of Delaware.

7    **III.**    **JURISDICTION AND VENUE**

8           9.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.

9    §§ 1332 and 1367 because this is a class action in which the matter or controversy exceeds the

10    sum of $5,000,000, exclusive of interest and costs, and in which some members of the proposed

11    Class are citizens of a state different from defendant.

12           10.      This Court has personal jurisdiction over Defendant because Defendant owns and

13    operates a business that is headquartered in the Northern District of California and conducts

14    substantial business throughout California.

15           11.      Venue properly lies in this district pursuant to 28 U.S.C. § 1391(b)(1), as Google

16    is headquartered in this district.

17    **IV.**    **STATEMENT OF FACTS**

18           12.      The overwhelming majority of mobile phones run on one of two operating

19    systems:[3] Android or iOS, which are developed by Google and Apple, respectively.  On each of

20    these operating systems, users can customize their devices to their preferences by "managing"

21    various functionalities of their phones.  They can, for example, change their time zone, preferred

22    language, or screen brightness.  Included among these functionalities is the option to turn on or

23    off the retention of "Location History"—that is, the individual's precise location information[4] as

24

25    [3] An operating system ("OS"), in its most general sense, is software that allows a user to run other applications on a computing device, such as a mobile phone. *Techopedia*, definition of "operating system" (available at https://www.techopedia.com/definition/3515/operating-system-os)

26    (accessed August 15, 2018).

27    [4] As used herein, "location information" or "location history" refers to any and all data obtained through an individual's mobile device, which allows for the identification of that individual's

28    location either in the present or through historic record.

1   determined through the phone's GPS coordinates.  Google represented that turning Location

2   History off would prevent the company from remembering where an individual had been, should

3   the individual so desire.

4         13.     In addition to developing the Android operating system, Google also develops

5   apps that can be downloaded on Android and iOS devices.  Users can make customized settings

6   and privacy decisions at the app level.  A user can share location history with some apps—such as

7   the weather map or a ride-sharing app—but decide *not* to share that information with other apps.

8   A user can also share location information with a certain app at some times, but not at others.

9         14.     Google represented to users of both its apps and its devices that it would not access

10   – and would prevent other third-parties from accessing – an individual's location history if users

11   took certain steps in managing their privacy settings.  Google's support page on the

12   subject stated: "You can turn off Location History at any time. **With Location History off, the**

13   **places you go are no longer stored**."[5]

14         15.     Google represented that Android mobile phone owners may do this on their

15   devices, by going to the phone's "Settings" tab, as follows:

16        1. On your Android phone or tablet, open your device's Settings app ⚙ > **Google** >
              **Google Account**.

17        2. At the top, tap **Data & personalization**.

18        3. Under "Activity controls," tap **Location History**.

        4. Turn **Location History** on or off for your account or devices:

19             • For your whole account and all devices associated with it, turn **Use Location History**
               on or off.

20             • For a certain device only, turn that device's history on or off.

21         16.     For iPhone users, Google explained that one must log into one's online account

22   with Google to turn off Location History (as it does not control the Apple device's operating

23   system):[6]

24

25

26   [5] Google Account Help, "Manage of Delete Your Location History" (available at
     https://support.google.com/accounts/answer/3118687?hl=en) (emphasis added) (accessed August

27   15, 2018).
   [6] Google Account Help, "Location history for iPhone and iPad" (available at

28   https://support.google.com/accounts/answer/4388034) (accessed August 15, 2018).

Turn Location History on or off

Location History stores your location data from all devices that are signed in to your Google Account.

**Note:** When you pause Location History, it doesn't delete previous activity, it only stops saving new location information.

**Using your browser**

1. Go to the Location history ⧉ section of your Google Account.
2. Turn Location History on or off.
   - **Off:** Confirm by tapping **Pause.**
   - **On:** Confirm by tapping **Turn on.**

**Using the Google app**

1. Open the Google app G.
2. At the top right, tap your account photo. You might need to sign in.
3. Tap **My Account > Personal info and privacy > Activity controls > Google Location History.**
4. Turn the setting on or off. If you turn it off, confirm by tapping **Stop storing location.**

17.     Google affirmatively—and misleadingly—represented to both Android and Apple device users that turning off "Location History" would result in Google ceasing to track, record, and use an individual's location information.

**A.     Google Tracks Location Regardless of Privacy Settings.**

18.     Google published a support page to instruct users on how to manage and delete the user's Location History which stated, "[w]ith Location History off, the places you go are no longer stored.  When you turn off Location History for your Google Account, it's off for all devices associated with that Google Account."[7]

19.     Google's representation was false.  As recently publicly revealed, turning off "Location History" only stopped Google from creating a location timeline that the *user* could view.  Google, however, continues to track the phone owners and keep a record of their locations.

20.     Even when "Location History" is turned off, a user's location is stored every time she uses any of the myriad additional Google-controlled features on her mobile phone, including, *inter alia*, the Google Maps app, weather apps, and searches made with the phone's mobile browser.  Per the Associated Press:

> For example, Google stores a snapshot of where you are when you merely open its Maps app. Automatic daily weather updates on Android phones pinpoint roughly where you are. And some

---

[7] Google Account Help, "Manage or delete your Location History" (available at https://support.google.com/accounts/answer/3118687?hl=en) (accessed August 15, 2018).

searches that have nothing to do with location, like "chocolate chip cookies," or "kids science kits," pinpoint your precise latitude and longitude — accurate to the square foot — and save it to your Google account.[8]

21.     Google's conduct is contrary to users' reasonable expectations of privacy.  As Princeton computer scientist and former chief technologist for the Federal Communications Commission's enforcement bureau, Jonathan Mayer, stated: "If you're going to allow users to turn off something called 'Location History,' then all the places where you maintain location history should be turned off. That seems like a pretty straightforward position to have."[9]

**B.**     **<u>Preventing Google's Collection and Storage of Location Information is Far More Complex than Google Represents.</u>**

22.     Contrary to the plain language and simple process set forth in the Google support pages referenced above, in order to actually prevent location tracking, an individual must navigate to a deeply buried and non-obvious setting titled "Web & App Activity."

23.     Specifically, an individual must first sign in to her Google account on a browser (if an iPhone user) or through the Android settings menu (on an Android phone).  In the browser, one can access her account settings by finding "Google Account" in the dropdown menu in the upper right-hand corner, then select "Personal Info & Privacy," choose "Manage your Google Activity," then click "Go to Activity Controls."  Once there, a setting called "Web & App Activity" is revealed, which can then be toggled off.  A series of screenshots demonstrating these steps is attached hereto as Exhibit 2.

24.     This process is counter-intuitive:  Google obfuscates the fact that the "Web & App Activity" setting is related to location.  Indeed, the setting resides directly *above*—but separate

---

[8] AP Report.  *See also*, Exhibit 1 (attached hereto): To demonstrate how powerful these other markers can be, the Associated Press ("AP") created a visual map of the movements of Princeton postdoctoral researcher Gunes Acar, who carried an Android phone with Location History turned off, and shared a record of his Google account.  The map includes Acar's train commute on two trips to New York and visits to the High Line park, Chelsea Market, Hell's Kitchen, Central Park, and Harlem.  To protect his privacy, the AP didn't plot the most telling and frequent marker—his home address.

[9] *Id.*

1   and apart from—the Location History option, causing a reasonable user to conclude that the two

2   items are distinct.  Further, Google's vague description of "Web & App Activity"—that it

3   "[s]aves your activity on Google sites and apps to give you faster searches, better

4   recommendations, and more personalized experiences in Maps, Search, and other Google

5   services"[10]—provides no reasonable notice that it relates to GPS tracking accurate to less than a

6   meter.  To obtain any more detail beyond this meaningless description, an individual must click to

7   "[l]earn more," then scroll to what's saved as "Web & App Activity," and tap again on "[i]nfo

8   about your searches & more" before Google even *mentions* location tracking.[11]  This is plainly

9   insufficient notice of the collection and storage of location information.

10      25.      Google is aware that it hides the nature of its location tracking and intentionally

11  complicates the opt-out process.  Google itself offers at least *three* support pages on location

12  titled: "Manage or delete your Location History,"[12] "Turn location on or off for your Android

13  device,"[13] and "Manage location settings for Android apps."[14]  Strikingly, none of these makes

14  any mention of "Web & App Activity"—allegedly the only true way to prevent location tracking.

15      **C.      Google's Ineffective Response to the AP Report Confirms and Continues Its
            Deceptive Behavior.**

16

17      26.      In its initial response to the Associated Press exposé on April 13, 2018, Google

18  failed to refute engaging in the identified conduct, but rather appeared to attempt a defense by

19  stating: "We provide clear descriptions of these tools."[15]

20

21  _____

22  [10] Google Account Help, "Activity Controls" (available at
    https://myaccount.google.com/intro/activitycontrols) (accessed August 15, 2018).

23  [11] Google Search Help, "See & control your search activity" (available at
    https://support.google.com/websearch/answer/54068?co=GENIE.Platform%3DAndroid&oco=1)

24  (accessed August 15, 2018).
    [12]Google Account Help, "Manage or delete your Location History" (available at

25  https://support.google.com/accounts/answer/3118687) (accessed August 15, 2018).
    [13] Google Account Help, "Turn location on or off for your Android device" (available at

26  https://support.google.com/accounts/answer/3467281?hl=en) (accessed August 15, 2018).
    [14] Android Help, "Manage location settings for Android apps" (available at

27  https://support.google.com/android/answer/6179507) (accessed August 15, 2018).
    [15] AP Report.

28

27.     Google's representation that such "clear descriptions" exist is false.  First, Google publicly represented that preventing the storage of location data is as easy as turning "off" a settings switch, though in actuality that action is ineffective.  Google silently endorsed well-known technology periodicals that propagated Google's falsehood that toggling off Location History is an effective tool to prevent tracking.[16]  Second, while perpetuating the myth of an effective "Location History" switch, Google fails to make reasonably clear to users that they must take another complicated and poorly-labeled route altogether in order to turn off location tracking, *i.e.*, locating, identifying, and understanding a deeply-buried and non-obvious setting titled "Web & App Activity."[17]

28.     Three days after the AP Report was published, on August 16, 2018, Google reversed course and revised the description on its help page for the Location History setting—which previously stated simply "With Location History off, the places you go are no longer stored"—to read:

> This setting does not affect other location services on your device, like Google Location Services and Find My Device. Some location data may be saved as part of your activity on other services, like Search and Maps. When you turn off Location History for your Google Account, it's off for all devices associated with that Google Account.[18]

29.     With this revision, Google disclosed for the first time that Google tracks users even after they have disabled the Location History setting.  However, the new language remains vague, ambiguous, and deceptive, particularly the use and meaning of "some" and "may."  It does not specify what, if anything, is accomplished by turning off Location History; and it does not specify when Google continues to store location history despite the setting being turned off.

---

[16] *See, e.g.*, Matt Burgess, "How to stop Google from tracking you and delete your personal data," *Wired* (Mar. 16, 2018) (available at https://www.wired.co.uk/article/google-history-search-tracking-data-how-to-delete) (accessed August 15, 2018); Greg Kumparak, "Google's Location History Browser is a Minute-by-Minute Map of Your Life," TechCrunch (Dec. 18, 2013) (available at https://techcrunch.com/2013/12/18/google-location-history/) (accessed August 15, 2018).

[17] This function is set by default to share your information, including location.

[18] Ryan Nakashima, "APNewsBreak: Google clarifies location-tracking policy," The Associated Press (August 17, 2018) (available at https://apnews.com/ef95c6a91eeb4d8e9dda9cad887bf211) (accessed August 17, 2018).

Moreover, Google still makes no mention of the distinct setting deeply buried in "Web & App Activity" where a user can actually stop Google from recording location history.

**D.** **The FTC has Found that Tracking Individuals' Geolocations Without Permission (and In Contravention of Their Wishes) Is a Deceptive Trade Practice.**

30. The FTC has expressly weighed in on the behavior complained of herein and found it to be a deceptive trade practice, in violation of Section 5 of the FTC Act.

31. In June 2016, the FTC announced that it had entered into a settlement agreement with a mobile advertising company, InMobi PTE, after the agency charged InMobi with deceptively tracking the locations of hundreds of millions of individuals without their knowledge or consent in order to serve them geo-targeted advertising (i.e. advertisements tailored to an individual based on where they live or places they frequent).

32. In a highly analogous case, the FTC alleged that InMobi misrepresented that its advertising software would only track consumers' locations when they opted in to being tracked, and in a manner consistent with their device's privacy settings. According to the FTC complaint,[19] InMobi was actually tracking consumers' locations whether or not the apps using InMobi's software asked for consumers' permission to do so, and even when consumers had denied permission to access their location information.

33. As a result of the FTC enforcement action, InMobi agreed to pay $950,000 in civil penalties and implement a comprehensive privacy program, including a prohibition from collecting individuals' location information without their affirmative express consent and a requirement that InMobi honor consumers' location privacy settings. The company was required to delete all of the location information of consumers it had collected without their consent and was prohibited from further misrepresenting its privacy practices. The settlement also required

---

[19] "Mobile Advertising Network InMobi Settles FTC Charges It Tracked Hundreds of Millions of Consumers' Locations Without Permission," Federal Trade Commission (June 22, 2016) (available at https://www.ftc.gov/news-events/press-releases/2016/06/mobile-advertising-network-inmobi-settles-ftc-charges-it-tracked) (accessed August 15, 2018).

1  InMobi to institute a comprehensive privacy program that will be independently audited every

2  two years for 20 years from the date of settlement.[20]

3      34.    The activities engaged in by Google, detailed in this complaint, mirror location

4  tracking activities condemned and sanctioned by the FTC.

5  **V.    CLASS ALLEGATIONS**

6      35.    Plaintiff brings this class action, pursuant to Rule 23 of the Federal Rules of Civil

7  Procedure, individually and on behalf of all members of the following classes, which are jointly

8  referred to throughout this Complaint as the "Class:"

9      **Android Class:** All natural persons residing in the United States
       who own Android mobile phones, who turned off Location History,
10      and whose location information was nonetheless recorded and used
       by Google.
11

12      **iPhone Class:** All natural persons residing in the United States who
       own Apple mobile phones, who turned off Location History, and
13      whose location information was nonetheless recorded and used by
       Google.

14      36.    Excluded from each Class are the following individuals: officers and directors of

15  Google and its parents, subsidiaries, affiliates, and any entity in which Google has a controlling

16  interest; and all judges assigned to hear any aspect of this litigation, as well as their immediate

17  family members.

18      37.    Plaintiff reserves the right to modify or amend the definition of each of the

19  proposed Classes before the Court determines whether certification is appropriate.

20      38.    This action readily satisfies the requirements set forth under Federal Rule of Civil

21  Procedure 23:

22          a.    Each Class is so numerous that joinder of all members is impracticable.

23  Upon information and belief, Class members number in the millions.

24          b.    There are questions of law or fact common to the Classes.  These questions

25  include, but are not limited to, the following:

26  _____

27  [20] "Stipulated Order for Permanent Injunction and Civil Penalty Judgment," *United States of America v. InMobi Pte, Ltd.*, Case No. 3:16-cv-3474 (NDCA) (Dkt. No. 2-1) (available at https://www.ftc.gov/system/files/documents/cases/160622inmobistip.pdf) (accessed August 15, 28  2018).

i. Whether Google's acts and practices complained of herein amount to the use of an electronic tracking device to determine the location or movement of a person, in violation of Cal. Pen. Code § 637.7;

ii. Whether the technology utilized by Google—and embedded on the mobile devices of Plaintiff and Class members—are "electronic tracking devices" under Cal. Pen. Code § 637.7(d);

iii. Whether Google's acts and practices complained of herein amount to egregious breaches of social norms;

iv. Whether Google acted intentionally in violating Plaintiff's and Class members' privacy rights;

v. Whether an injunction should issue; and

vi. Whether declaratory relief should be granted.

c. Plaintiff's claims are typical of the claims of the Class in that Plaintiff, like all Class members, took efforts to prevent his phone's location history from being recorded and used by Google, yet despite these efforts and contrary to Google's representations, nonetheless had said location history recorded and used by Google. Plaintiff and the Class members did not consent to Google's collection and use of their location history, which acts form the basis for this suit.

d. Moreover, like all Class members, Plaintiff suffers a substantial risk of repeated injury in the future. Like all Class members, although Plaintiff wishes to control the circumstances under which his location information can be collected and used by Google, Google has shown deliberate indifference to those wishes and has indeed taken pains to deceive Plaintiff (and all Class members) and to thwart those wishes. Nonetheless, like all Class members, Plaintiff must own and use a mobile phone—itself an effective prerequisite for modern life—but Google's deceptive and deliberate actions have thwarted and continue to threaten Plaintiff's (and Class members') ability to own such a phone without having his whereabouts constantly tracked, recorded, and used. Plaintiff and the Class members are entitled to injunctive and declaratory relief as a result of the conduct complained of herein. Because the conduct complained of herein

1    is systemic, Plaintiff and all Class Members face substantial risk of the same injury in the future.

2    Google's conduct is common to all Class members and represents a common thread of conduct

3    resulting in injury to all members of the Class.  Plaintiff has suffered the harm alleged and has no

4    interests antagonistic to any other Class member.

5              e.      Plaintiff will fairly and adequately protect the interests of the Class.

6    Plaintiff's interests do not conflict with the interests of the Class members.  Furthermore, Plaintiff

7    has retained competent counsel experienced in class action litigation, consumer protection

8    litigation, and electronic privacy litigation.  Plaintiff's counsel will fairly and adequately protect

9    and represent the interests of the Class.  FRCP 23(a)(4) and 23(g) are satisfied.

10             f.      In acting as above-alleged, and in failing and refusing to cease and desist

11   despite public outcry, Google has acted on grounds generally applicable to the entire Class,

12   thereby making final injunctive relief and corresponding declaratory relief each appropriate with

13   respect to the Class as a whole.  The prosecution of separate actions by individual Class members

14   would create the risk of inconsistent or varying adjudications with respect to individual Class

15   members that would establish incompatible standards of conduct for Google.

16             g.      Injunctive relief is necessary to prevent further unlawful and unfair conduct

17   by Google.  Money damages, alone, could not afford adequate and complete relief, and injunctive

18   relief is necessary to restrain Google from continuing to commit its illegal and unfair violations of

19   privacy.

20   **VI.    CAUSES OF ACTION**

21                            **COUNT ONE**
22            **(Violations of CIPA, Cal. Pen. Code §§ 630, *et seq.*)**

23   39.     Plaintiff incorporates the preceding paragraphs of this complaint as if repeated here.

24   40.     Cal. Pen. Code § 630 provides that "[t]he Legislature hereby declares that

25   advances in science and technology have led to the development of new devices and techniques

26   for the purpose of eavesdropping upon private communication and that the invasion of privacy

27   resulting from the continual and increasing use of such devices and techniques has created a

28

1  serious threat to the free exercise of personal liberties and cannot be tolerated in a free and

2  civilized society."

3       41.    Google's acts and practices complained of herein, engaged in for purposes of

4  acquiring and using the geolocation of mobile phone users, without their consent—and indeed in

5  direct contravention of instructions clearly expressed through turning off the location history

6  function —violated and continues to violate Cal. Pen. Code § 637.7.

7       42.    Cal. Pen. Code § 637.7 prohibits the use of an electronic tracking device to

8  determine the location or movement of a person.

9       43.    In direct violation of this prohibition and without the consent of Plaintiff or Class

10  members—and indeed in direct contravention of those individuals' clearly-expressed wishes—

11  Google continued to record, store, and use the location information of Plaintiff and Class

12  members after they disabled the Location History feature on their phones.

13       44.    As described herein, Google utilized multiple devices that are "electronic tracking

14  devices" under Cal. Pen. Code § 637.7(d), in that Google employs and embeds a host of

15  technology—including but not limited to apps, firmware, device components, operating system

16  software, and other code—on each Class member's phone (a "movable thing" under the statute),

17  and this technology "reveals its location or movement by the transmission of electronic signals."

18       45.    As a result of Google's violations of Cal. Pen. Code § 637.7, and pursuant to Cal.

19  Pen. Code § 637.2, Plaintiff and Class members are entitled to the following relief:

20             a.    A declaration that Google's conduct violates CIPA;

21             b.    Statutory damages and/or trebled actual damages;

22             c.    Injunctive relief in the form of, *inter alia*, an order enjoining Google from

23  geolocating Class members in violation of CIPA;

24             d.    Injunctive relief in the form of, *inter alia*, an order requiring Google to

25  destroy all data created or otherwise obtained from its illegal geolocation of Class members; and

26             e.    An award of attorney's fees and costs of litigation as provided by CIPA,

27  the private attorney general doctrine existing at common law and also codified at California Civil

28  Code Section 1021.5, and all other applicable laws.

## COUNT TWO
### (Intrusion Upon Seclusion)

46.     Plaintiff repeats and realleges all preceding paragraphs contained herein.

47.     Plaintiff and Class members have reasonable expectations of privacy in their mobile devices and their online behavior, generally.  Plaintiff's and Class members' private affairs include their locations.

48.     The reasonableness of such expectations of privacy is supported by Google's unique position to monitor Plaintiff's and Class members' behavior through its access to Plaintiff's and Class members' private mobile devices.  It is further supported by the surreptitious and non-intuitive nature of Defendant's tracking.

49.     Defendant intentionally intruded on and into Plaintiff's and Class members' solitude, seclusion, or private affairs by intentionally geolocating them.

50.     These intrusions are highly offensive to a reasonable person.  This is evidenced by, *inter alia*, Supreme Court precedent (most recently and forcefully articulated in the *Carpenter* opinion), legislation enacted by Congress, rules promulgated and enforcement actions undertaken by the FTC, and countless studies, op-eds, and articles decrying location tracking.  Moreover, Google engaged in true tracking of location history deceptively and in direct contradiction of the express instructions of Plaintiff and the members of the Class.  Also supporting the highly offensive nature of Defendant's conduct is the fact that Defendant's principal goal was to surreptitiously monitor Plaintiff and Class members and to allow third-parties to do the same.

51.     Plaintiff and Class members were harmed by the intrusion into their private affairs as detailed throughout this Complaint.

52.     Google's actions and conduct complained of herein were a substantial factor in causing the harm suffered by Plaintiff and Class members.

53.     As a result of Google's actions, Plaintiff and Class members seek damages and punitive damages in an amount to be determined at trial.  Plaintiff and Class members seek punitive damages because Google's actions—which were malicious, oppressive, and willful— were calculated to injure Plaintiff and Class members and made in conscious disregard of

Plaintiff's and Class members' rights. Punitive damages are warranted to deter Google from engaging in future misconduct.

## COUNT THREE
### California Constitutional Right to Privacy

54. Plaintiff repeats and realleges all preceding paragraphs contained herein.

55. Plaintiff and Class members have reasonable expectations of privacy in their mobile devices and their online behavior, generally. Plaintiff's and Class members' private affairs include their behavior on their mobile devices as well as any other behavior that may be monitored by the surreptitious tracking employed or otherwise enabled by location tracking.

56. Google intentionally intruded on and into Plaintiff's and Class members' solitude, seclusion, right of privacy, or private affairs by intentionally tracking their location.

57. These intrusions are highly offensive to a reasonable person, because they disclosed sensitive and confidential location information, constituting an egregious breach of social norms. This is evidenced by, *inter alia*, Supreme Court precedent (most recently and forcefully articulated in the *Carpenter* opinion), legislation enacted by Congress, rules promulgated and enforcement actions undertaken by the FTC, and countless studies, op-eds, and articles decrying location tracking. Further, the extent of the intrusion cannot be fully known, as the nature of privacy invasion involves sharing Plaintiff's and Class members' location information with potentially countless third-parties, known and unknown, for undisclosed and potentially unknowable purposes, in perpetuity.

58. Plaintiff and Class members were harmed by the intrusion into their private affairs as detailed throughout this Complaint.

59. Google's actions and conduct complained of herein were a substantial factor in causing the harm suffered by Plaintiff and Class members.

60. As a result of Google's actions, Plaintiff and Class members seek damages and punitive damages in an amount to be determined at trial. Plaintiff and Class members seek punitive damages because Google's actions—which were malicious, oppressive, and willful— were calculated to injure Plaintiff and Class members and made in conscious disregard of

1  Plaintiff's and Class members' rights.  Punitive damages are warranted to deter Google from

2  engaging in future misconduct.

3  **PRAYER FOR RELIEF**

4  WHEREFORE, Plaintiff requests that judgment be entered against Google and that the

5  Court grant the following:

6  A.  An order determining that this action may be maintained as a class action under

7  Rule 23 of the Federal Rules of Civil Procedure, that Plaintiff is a proper class representative, that

8  Plaintiff's attorneys shall be appointed as Class counsel pursuant to Rule 23(g) of the Federal

9  Rules of Civil Procedure, and that Class notice be promptly issued;

10  B.  Judgment against Google for Plaintiff's and Class Members' asserted causes of

11  action;

12  C.  Appropriate declaratory relief against Google;

13  D.  Injunctive relief in the form of, *inter alia*, an order enjoining Google from

14  continuing its practice of recording and using Plaintiff's and Class members' location information

15  against their wishes and in violation of CIPA;

16  E.  Injunctive relief related to CIPA in the form of, *inter alia*, an order requiring

17  Google to destroy all data acquired, created, or otherwise obtained from the unlawful recording

18  and use of the location information of Plaintiff and Class members;

19  F.  An award of damages pursuant to Cal. Pen. Code § 637.2;

20  G.  Reasonable attorney's fees and costs reasonably incurred; and

21  H.  Any and all other and further relief to which Plaintiff and the Class may be

22  entitled.

23  **DEMAND FOR JURY TRIAL**

24  Plaintiff hereby demands a trial by jury of all issues so triable.

25

26  Dated: August 17, 2018                    Respectfully Submitted,

27  */s/  Michael W. Sobol*

28

1                     Michael W. Sobol (State Bar No. 194857)
                     msobol@lchb.com
2                     LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
                     275 Battery Street, 29th Floor
3                     San Francisco, CA  94111-3339
                     Telephone:  415.956.1000
4                     Facsimile:  415.956.1008

5                     Nicholas Diamand
                     ndiamand@lchb.com
6                     Abbye R. Klamann (State Bar No. 311112)
                     aklamann@lchb.com
7                     LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
                     250 Hudson Street, 8th Floor
8                     New York,  NY 10013
                     Telephone:  212.355.9500
9                     Facsimile:  212.355.9592

10                  Hank Bates (State Bar No. 167688)
                     CARNEY BATES & PULLIAM, PLLC
11                  519 W. 7th St.
                     Little Rock, AR 72201
12                  Telephone:  501.312.8500
                     Facsimile:  501.312.8505
13

14                  *Attorneys for Plaintiff, individually and*
*on behalf of all others similarly situated*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 2

**Step 1**



**Step 2**



**Step 3**





**Step 4**



# Step 5



Turn on additional Web & App Activity?

████████@gmail.com

Additional Web & App Activity saves your activity from sites, apps, and devices that use Google services, including:

- activity from sites and apps that partner with Google to show ads
- Chrome history (if Chrome Sync is turned on)
- app activity, including data that apps share with Google
- Android usage & diagnostics, like battery level, how often you use your device and apps, and system errors

If you use your device without an internet connection, your data may be saved to your account once you return online.

Not all Google services save this data to your account.

This data helps Google give you more personalized experiences across Google services, like helpful app and content recommendations, and useful ads, both on and off Google.

This data may be saved and used in any Google service where you are signed in to give you more personalized experiences. You can see your data, delete it and change your settings at account.google.com.

JS-CAND 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS-CAND 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved in its original form by the Judicial Conference of the United States in September 1974, is required for the Clerk of Court to initiate the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
NAPOLEON PATACSIL, individually and on behalf of all others similarly situated

### DEFENDANTS
GOOGLE, INC.

**(b)** County of Residence of First Listed Plaintiff    San Diego County, California
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Santa Clara County, California
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Please see Attachment A

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1 | U.S. Government Plaintiff |
| ☐ 2 | U.S. Government Defendant |
| ☐ 3 | Federal Question *(U.S. Government Not a Party)* |
| ☒ 4 | Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | 1 | Incorporated *or* Principal Place of Business In This State | 4 | ☒ 4 |
| Citizen of Another State | 2 | 2 | Incorporated *and* Principal Place of Business In Another State | 5 | 5 |
| Citizen or Subject of a Foreign Country | 3 | 3 | Foreign Nation | 6 | 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | 625 Drug Related Seizure of Property 21 USC § 881 | 422 Appeal 28 USC § 158 | 375 False Claims Act |
| 120 Marine | 310 Airplane | 365 Personal Injury – Product Liability | 690 Other | 423 Withdrawal 28 USC § 157 | 376 Qui Tam (31 USC § 3729(a)) |
| 130 Miller Act | 315 Airplane Product Liability | 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **PROPERTY RIGHTS** | 400 State Reapportionment |
| 140 Negotiable Instrument | 320 Assault, Libel & Slander | | **LABOR** | 820 Copyrights | 410 Antitrust |
| 150 Recovery of Overpayment Of Veteran's Benefits | 330 Federal Employers' Liability | 368 Asbestos Personal Injury Product Liability | 710 Fair Labor Standards Act | 830 Patent | 430 Banks and Banking |
| | 340 Marine | **PERSONAL PROPERTY** | 720 Labor/Management Relations | 835 Patent—Abbreviated New Drug Application | 450 Commerce |
| 151 Medicare Act | 345 Marine Product Liability | 370 Other Fraud | 740 Railway Labor Act | 840 Trademark | 460 Deportation |
| 152 Recovery of Defaulted Student Loans (Excludes Veterans) | 350 Motor Vehicle | 371 Truth in Lending | 751 Family and Medical Leave Act | **SOCIAL SECURITY** | 470 Racketeer Influenced & Corrupt Organizations |
| 153 Recovery of Overpayment of Veteran's Benefits | 355 Motor Vehicle Product Liability | 380 Other Personal Property Damage | 790 Other Labor Litigation | 861 HIA (1395ff) | 480 Consumer Credit |
| | ☒ 360 Other Personal Injury | 385 Property Damage Product Liability | 791 Employee Retirement Income Security Act | 862 Black Lung (923) | 490 Cable/Sat TV |
| 160 Stockholders' Suits | 362 Personal Injury -Medical Malpractice | | | 863 DIWC/DIWW (405(g)) | 850 Securities/Commodities/ Exchange |
| 190 Other Contract | | | **IMMIGRATION** | 864 SSID Title XVI | 890 Other Statutory Actions |
| 195 Contract Product Liability | **CIVIL RIGHTS** | **PRISONER PETITIONS** | 462 Naturalization Application | 865 RSI (405(g)) | 891 Agricultural Acts |
| 196 Franchise | 440 Other Civil Rights | **HABEAS CORPUS** | 465 Other Immigration Actions | **FEDERAL TAX SUITS** | 893 Environmental Matters |
| **REAL PROPERTY** | 441 Voting | 463 Alien Detainee | | 870 Taxes (U.S. Plaintiff or Defendant) | 895 Freedom of Information Act |
| 210 Land Condemnation | 442 Employment | 510 Motions to Vacate Sentence | | 871 IRS–Third Party 26 USC § 7609 | 896 Arbitration |
| 220 Foreclosure | 443 Housing/ Accommodations | 530 General | | | 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| 230 Rent Lease & Ejectment | 445 Amer. w/Disabilities– Employment | 535 Death Penalty | | | |
| 240 Torts to Land | 446 Amer. w/Disabilities–Other | **OTHER** | | | 950 Constitutionality of State Statutes |
| 245 Tort Product Liability | 448 Education | 540 Mandamus & Other | | | |
| 290 All Other Real Property | | 550 Civil Rights | | | |
| | | 555 Prison Condition | | | |
| | | 560 Civil Detainee– Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☒ 1 Original Proceeding | 2 Removed from State Court |
| 3 Remanded from Appellate Court | 4 Reinstated or Reopened |
| 5 Transferred from Another District *(specify)* | 6 Multidistrict Litigation–Transfer |
| 8 Multidistrict Litigation–Direct File | |

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 1332(d)(2)

Brief description of cause:
Privacy violations under the California Invasion of Privacy Act and the California Constitution and intrusion upon seclusion.

## VII. REQUESTED IN COMPLAINT:
✓ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, Fed. R. Civ. P.

DEMAND $

CHECK YES only if demanded in complaint:
**JURY DEMAND:**    ☒ Yes    ☐ No

## VIII. RELATED CASE(S), IF ANY *(See instructions)*:
JUDGE

DOCKET NUMBER

## IX. DIVISIONAL ASSIGNMENT (Civil Local Rule 3-2)
*(Place an "X" in One Box Only)*    ☒ SAN FRANCISCO/OAKLAND    ☐ SAN JOSE    ☐ EUREKA-MCKINLEYVILLE

DATE    08/17/2018    SIGNATURE OF ATTORNEY OF RECORD    /s/ Michael W. Sobol

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS-CAND 44

**Authority For Civil Cover Sheet.** The JS-CAND 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved in its original from form by the Judicial Conference of the United States in September 1974, is required for the Clerk of Court to initiate the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I. a)**    **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name and standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

    **b)**    **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

    **c)**    **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)."

**II.**    **Jurisdiction.** The basis of jurisdiction is set forth under Federal Rule of Civil Procedure 8(a), which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

    (1)   <u>United States plaintiff</u>. Jurisdiction based on 28 USC §§ 1345 and 1348. Suits by agencies and officers of the United States are included here.

    (2)   <u>United States defendant</u>. When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

    (3)   <u>Federal question</u>. This refers to suits under 28 USC § 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

    (4)   <u>Diversity of citizenship</u>. This refers to suits under 28 USC § 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked**.** (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.**    **Residence (citizenship) of Principal Parties.** This section of the JS-CAND 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**    **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerk(s) in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.**    **Origin.** Place an "X" in one of the six boxes.

    (1)   <u>Original Proceedings</u>. Cases originating in the United States district courts.

    (2)   <u>Removed from State Court</u>. Proceedings initiated in state courts may be removed to the district courts under Title 28 USC § 1441. When the petition for removal is granted, check this box.

    (3)   <u>Remanded from Appellate Court</u>. Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

    (4)   <u>Reinstated or Reopened</u>. Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

    (5)   <u>Transferred from Another District</u>. For cases transferred under Title 28 USC § 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

    (6)   <u>Multidistrict Litigation Transfer</u>. Check this box when a multidistrict case is transferred into the district under authority of Title 28 USC § 1407. When this box is checked, do not check (5) above.

    (8)   <u>Multidistrict Litigation Direct File</u>. Check this box when a multidistrict litigation case is filed in the same district as the Master MDL docket.

    <u>Please note that there is no Origin Code 7</u>. Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI.**    **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC § 553. Brief Description: Unauthorized reception of cable service.

**VII.**    **Requested in Complaint.** <u>Class Action</u>. Place an "X" in this box if you are filing a class action under Federal Rule of Civil Procedure 23.

    <u>Demand</u>. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.

    <u>Jury Demand</u>. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS-CAND 44 is used to identify related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**IX.**    **Divisional Assignment.** If the Nature of Suit is under Property Rights or Prisoner Petitions or the matter is a Securities Class Action, leave this section blank. For all other cases, identify the divisional venue according to Civil Local Rule 3-2: "the county in which a substantial part of the events or omissions which give rise to the claim occurred or in which a substantial part of the property that is the subject of the action is situated."

**Date and Attorney Signature.** Date and sign the civil cover sheet.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO/OAKLAND DIVISION

| | |
|---|---|
| NAPOLEON PATACSIL, individually and on behalf of all others similarly situated,<br><br>            Plaintiff,<br><br>v.<br><br>GOOGLE, INC.,<br><br>            Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br><br>**DEMAND FOR JURY TRIAL** |

**ATTACHMENT A**
**ATTORNEYS FOR PLAINTIFFS**

**LIEFF CABRASER HEIMANN &**
**BERNSTEIN, LLP**
Michael W. Sobol (State Bar No. 194857)
msobol@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: 415.956.1000
Facsimile: 415.956.1008

**LIEFF CABRASER HEIMANN &**
**BERNSTEIN, LLP**
Nicholas Diamand
ndiamand@lchb.com
Abbye R. Klamann (State Bar No. 311112)
aklamann@lchb.com
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Telephone: 212.355.9500
Facsimile: 212.355.9592

**CARNEY BATES & PULLIAM, PLLC**
Hank Bates (State Bar No. 167688)
hbates@cbplaw.com
Allen Carney
acarney@cbplaw.com
David Slade
dslade@cbplaw.com
519 West 7th St.
Little Rock, AR 72201
Telephone: 501.312.8500
Facsimile: 501.312.8505

# EXHIBIT 1



# 'Location history' off?
# Google's still tracking you

An AP investigation found that Google saves your location history even if you've paused "Location History" on mobile devices. This map shows where Princeton privacy researcher Gunes Acar travelled over several days, from data saved to his Google account despite "Location History" being off.







ADRMOP,RELATE

# U.S. District Court
# California Northern District (San Jose)
# CIVIL DOCKET FOR CASE #: 5:18-cv-05062-EJD

Patacsil v. Google, LLC.                          Date Filed: 08/17/2018
Assigned to: Judge Edward J. Davila               Jury Demand: Plaintiff
Referred to: Judge Nathanael M. Cousins           Nature of Suit: 360 P.I.: Other
Relate Case Cases:   5:18-cv-05288-EJD            Jurisdiction: Diversity
                     5:18-cv-06262-EJD
Cause: 28:1332 Diversity-Personal Injury

## Plaintiff

**Napoleon Patacsil**                represented by   **Allen Carney**
*individually, and on behalf of other persons*       Carney Bates Pulliam, PLLC
*similarly situated*                                 519 W 7th Street
                                                     Little Rock, AR 72201
                                                     United Sta
                                                     501-312-8500
                                                     Fax: 501-312-8505
                                                     Email: acarney@cbplaw.com
                                                     *LEAD ATTORNEY*
                                                     *PRO HAC VICE*
                                                     *ATTORNEY TO BE NOTICED*

                                                     **David F. Slade**
                                                     Carney Bates & Pulliam, PLLC
                                                     519 W. 7th Street
                                                     Little Rock, AR 72201
                                                     501-312-8500
                                                     Fax: 501-312-8505
                                                     Email: dslade@cbplaw.com
                                                     *LEAD ATTORNEY*
                                                     *PRO HAC VICE*
                                                     *ATTORNEY TO BE NOTICED*

                                                     **Joseph Henry Bates , III**
                                                     Carney Bates & Pulliam, PLLC
                                                     519 West 7th Street
                                                     Little Rock, AR 72201
                                                     501-312-8500
                                                     Fax: 501-312-8505
                                                     Email: hbates@cbplaw.com
                                                     *LEAD ATTORNEY*
                                                     *ATTORNEY TO BE NOTICED*

                                                     **Michael W. Sobol**
                                                     Lieff Cabraser Heimann & Bernstein, LLP
                                                     Embarcadero Center West
                                                     275 Battery Street, 29th Floor

San Francisco, CA 94111-3339
(415) 956-1000
Fax: (415) 956-1008
Email: msobol@lchb.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Abbye Rose Klamann**
Lieff Cabraser Heimann and Bernstein, LLP
250 Hudson Street
8th Floor
New York, NY 10013
415-956-1000
Fax: 415-956-1008
Email: aklamann@lchb.com
*ATTORNEY TO BE NOTICED*

**Hank Bates**
Carney Bates & Pulliam, PLLC
519 West 7th Street
Little Rock, AR 72201
(501) 312-8500
Email: hbates@cbplaw.com
*ATTORNEY TO BE NOTICED*

**Melissa Ann Gardner**
Lieff Cabraser Heimann Bernstein, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111
415-956-1000
Fax: 415-956-1005
Email: mgardner@lchb.com
*ATTORNEY TO BE NOTICED*

**Nicholas Diamand**
Lieff Cabraser Heimann and Bernstein LLP
250 Hudson Street, 8th Floor
New York, NY 10013-1413
(212) 355-9500
Email: ndiamand@lchb.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Domenic Lombardo**      represented by    **Andrew J. Brown**
Attorney at Law
501 W. Broadway
Suite 1490
San Diego, CA 92101
619-501-6550
Email: andrewb@thebrownlawfirm.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Google, LLC**

                represented by   **Benedict Y. Hur**
Attorney at Law
Keker, Van Nest & Peters LLP
633 Battery Street
San Francisco, CA 94111-1809
415-391-5400
Fax: 415-397-7188
Email: bhur@keker.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Benjamin Berkowitz**
Keker, Van Nest & Peters LLP
633 Battery Street
San Francisco, CA 94111
415-391-5400
Fax: 415-397-7188
Email: bberkowitz@keker.com
*ATTORNEY TO BE NOTICED*

**Kathryn Elise Bowen**
Keker, Van Nest and Peters LLP
633 Battery St
San Francisco, CA 94111
415-391-5400
Fax: 415-397-7188
Email: kbowen@keker.com
*ATTORNEY TO BE NOTICED*

**Thomas Edward Gorman**
Keker, Van Nest & Peters LLP
633 Battery Street
San Francisco, CA 94111-1809
(415)391-5400
Fax: 415-397-7188
Email: tgorman@keker.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 08/17/2018 | 1 | COMPLAINT against Google, Inc. ( Filing fee $ 400, receipt number 0971-12606124.). Filed byNapoleon Patacsil. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Civil Cover Sheet)(Sobol, Michael) (Filed on 8/17/2018) (Entered: 08/17/2018) |
| 08/17/2018 | 2 | Proposed Summons. (Sobol, Michael) (Filed on 8/17/2018) (Entered: 08/17/2018) |
| 08/17/2018 | 3 | NOTICE of Appearance by Abbye Rose Klamann (Klamann, Abbye) (Filed on 8/17/2018) (Entered: 08/17/2018) |
| 08/20/2018 | 4 | Case assigned to Judge Nathanael M. Cousins. |

|  |  |  |
|---|---|---|
|  |  | Counsel for plaintiff or the removing party is responsible for serving the Complaint or Notice of Removal, Summons and the assigned judge's standing orders and all other new case documents upon the opposing parties. For information, visit *E-Filing A New Civil Case* at http://cand.uscourts.gov/ecf/caseopening.<br><br>Standing orders can be downloaded from the court's web page at www.cand.uscourts.gov/judges. Upon receipt, the summons will be issued and returned electronically. Counsel is required to send chambers a copy of the initiating documents pursuant to L.R. 5-1(e)(7). A scheduling order will be sent by Notice of Electronic Filing (NEF) within two business days. Consent/Declination due by 9/4/2018. (jmlS, COURT STAFF) (Filed on 8/20/2018) (Entered: 08/20/2018) |
| 08/20/2018 | 5 | MOTION for leave to appear in Pro Hac Vice *Allen Carney* ( Filing fee $ 310, receipt number 0971-12608611.) filed by Napoleon Patacsil. (Attachments: # 1 Certificate of Good Standing)(Carney, Allen) (Filed on 8/20/2018) (Entered: 08/20/2018) |
| 08/20/2018 | 6 | NOTICE of Appearance by Joseph Henry Bates, III (Bates, Joseph) (Filed on 8/20/2018) (Entered: 08/20/2018) |
| 08/20/2018 | 7 | **Initial Case Management Scheduling Order with ADR Deadlines: Case Management Statement due by 11/14/2018. Initial Case Management Conference set for 11/21/2018 10:00 AM in San Jose, Courtroom 5, 4th Floor. (sfbS, COURT STAFF) (Filed on 8/20/2018) (Entered: 08/20/2018)** |
| 08/20/2018 | 8 | Summons Issued as to Google, Inc. (sfbS, COURT STAFF) (Filed on 8/20/2018) (Entered: 08/20/2018) |
| 08/21/2018 | 9 | MOTION for leave to appear in Pro Hac Vice *David Slade* ( Filing fee $ 310, receipt number 0971-12612769.) filed by Napoleon Patacsil. (Attachments: # 1 Certificate of Good Standing)(Slade, David) (Filed on 8/21/2018) (Entered: 08/21/2018) |
| 08/21/2018 | 10 | **ORDER GRANTING APPLICATION for Admission of Attorney Allen Carney *Pro Hac Vice* 5 . Signed by Judge Nathanael Cousins.** (lmh, COURT STAFF) (Filed on 8/21/2018) (Entered: 08/21/2018) |
| 08/21/2018 | 11 | **ORDER GRANTING APPLICATION for Admission of Attorney David Slade *Pro Hac Vice* 9 . Signed by Judge Nathanael Cousins.** (lmh, COURT STAFF) (Filed on 8/21/2018) (Entered: 08/21/2018) |
| 08/24/2018 | 12 | **Filing Error.** CERTIFICATE OF SERVICE by Napoleon Patacsil (Sobol, Michael) (Filed on 8/24/2018) Modified on 8/27/2018 (sfbS, COURT STAFF). (Entered: 08/24/2018) |
| 08/24/2018 | 13 | Certificate of Interested Entities by Napoleon Patacsil (Sobol, Michael) (Filed on 8/24/2018) (Entered: 08/24/2018) |
| 08/27/2018 |  | Electronic filing error. Incorrect event used. [err101]<br><br>Please re-file in its entirety as Summons Returned Executed. Re: 12 Certificate of Service filed by Napoleon Patacsil (sfbS, COURT STAFF) (Filed on 8/27/2018) (Entered: 08/27/2018) |
| 08/27/2018 | 14 | SUMMONS Returned Executed by Napoleon Patacsil. Google, Inc. served on 8/21/2018, answer due 9/11/2018. (Sobol, Michael) (Filed on 8/27/2018) (Entered: 08/27/2018) |
| 08/29/2018 | 15 | MOTION for leave to appear in Pro Hac Vice - *Nicholas Diamand* ( Filing fee $ 310, receipt number 0971-12636188.) filed by Napoleon Patacsil. (Attachments: # 1 Certificate of good standing)(Diamand, Nicholas) (Filed on 8/29/2018) (Entered: 08/29/2018) |
| 08/30/2018 | 16 | **ORDER GRANTING APPLICATION for Admission of Attorney Nicholas Diamand** |

|            |    | *Pro Hac Vice* 15 representing Plaintiff. Signed by Judge Nathanael Cousins. (lmh, COURT STAFF) (Filed on 8/30/2018) (Entered: 08/30/2018) |
|------------|----|---|
| 08/31/2018 | 17 | CONSENT/DECLINATION to Proceed Before a US Magistrate Judge by Napoleon Patacsil.. (Sobol, Michael) (Filed on 8/31/2018) (Entered: 08/31/2018) |
| 08/31/2018 | 18 | CLERK'S NOTICE OF IMPENDING REASSIGNMENT TO A U.S. DISTRICT COURT JUDGE: The Clerk of this Court will now randomly reassign this case to a District Judge because a party has not consented to the jurisdiction of a Magistrate Judge. You will be informed by separate notice of the district judge to whom this case is reassigned. ALL HEARING DATES PRESENTLY SCHEDULED BEFORE THE CURRENT MAGISTRATE JUDGE ARE VACATED. *This is a text only docket entry; there is no document associated with this notice.* (lmhS, COURT STAFF) (Filed on 8/31/2018) (Entered: 08/31/2018) |
| 08/31/2018 | 19 | STIPULATION *Extending Defendant Google LLC's Time to Respond to Complaint* filed by Napoleon Patacsil. (Sobol, Michael) (Filed on 8/31/2018) (Entered: 08/31/2018) |
| 08/31/2018 | 20 | **ORDER REASSIGNING CASE. Case reassigned to Judge Edward J. Davila pursuant to Clerk's Notice of Impending Reassignment to a U.S. District Court Judge for all further proceedings. This case is assigned to a judge who participates in the Cameras in the Courtroom Pilot Project. See General Order 65 and http://cand.uscourts.gov/cameras. Magistrate Judge Nathanael M. Cousins remains as referral judge assigned to the case. Reassignment Order signed by Executive Committee on 8/31/2018. (Attachments: # 1 Notice of Eligibility for Video Recording) (bwS, COURT STAFF) (Filed on 8/31/2018) (Entered: 08/31/2018)** |
| 08/31/2018 | 21 | (Text Only) CLERKS NOTICE RESETTING CASE MANAGEMENT CONFERENCE FOLLOWING REASSIGNMENT. Joint Case Management Statement due by 11/19/2018. Initial Case Management Conference set for 11/29/2018 10:00 AM in San Jose, Courtroom 4, 5th Floor before Hon. Edward J. Davila. The Court does not issue a revised Initial Case Management Scheduling Order with ADR Deadlines. Standing orders can be downloaded from the court's web page at http://cand.uscourts.gov/ejdorders. *This is a text only docket entry, there is no document associated with this notice.* (amkS, COURT STAFF) (Filed on 8/31/2018) (Entered: 08/31/2018) |
| 09/14/2018 | 22 | ADMINISTRATIVE MOTION Relate cases filed by Domenic Lombardo. Responses due by 10/2/2018. (Attachments: # 1 Declaration, # 2 Proposed Order)(Brown, Andrew) (Filed on 9/14/2018) (Entered: 09/14/2018) |
| 09/14/2018 | 23 | CLERK'S NOTICE OF CORRECTION OF RESPONSE DEADLINE. Please take NOTICE that Pursuant to Local Rule 7-11(b) Responses due by 9/18/2018 as to 22 ADMINISTRATIVE MOTION Relate cases. *(This is a text-only entry generated by the court. There is no document associated with this entry.)* (amkS, COURT STAFF) (Filed on 9/14/2018) (Entered: 09/16/2018) |
| 09/18/2018 | 24 | NOTICE of Appearance by Melissa Ann Gardner (Gardner, Melissa) (Filed on 9/18/2018) (Entered: 09/18/2018) |
| 09/18/2018 | 25 | Statement of Non-Opposition re 22 ADMINISTRATIVE MOTION Relate cases filed byNapoleon Patacsil. (Related document(s) 22 ) (Sobol, Michael) (Filed on 9/18/2018) (Entered: 09/18/2018) |
| 09/21/2018 | 26 | **ORDER RELATING CASE case Lombardo v. Google, Inc., Case No. C18-cv-05288-LB be related to the first filed action, Patacsil v. Google, Inc., Case No. C18-cv-05062-EJD.. (cv, COURT STAFF) (Filed on 9/21/2018) (Entered: 09/21/2018)** |

| 09/24/2018 | 27 | NOTICE of Appearance by Benedict Y Hur (Hur, Benedict) (Filed on 9/24/2018) (Entered: 09/24/2018) |
| 09/24/2018 | 28 | NOTICE of Appearance by Benjamin Berkowitz (Berkowitz, Benjamin) (Filed on 9/24/2018) (Entered: 09/24/2018) |
| 09/24/2018 | 29 | NOTICE of Appearance by Thomas Edward Gorman (Gorman, Thomas) (Filed on 9/24/2018) (Entered: 09/24/2018) |
| 10/12/2018 | 30 | NOTICE of Appearance by Kathryn Elise Bowen (Bowen, Kathryn) (Filed on 10/12/2018) (Entered: 10/12/2018) |
| 10/22/2018 | 31 | Certificate of Interested Entities by Google, Inc. identifying Corporate Parent Alphabet Inc., Corporate Parent XXVI Holdings Inc. for Google, Inc.. (Berkowitz, Benjamin) (Filed on 10/22/2018) (Entered: 10/22/2018) |
| 10/22/2018 | 32 | MOTION to Dismiss filed by Google, Inc.. Motion Hearing set for 1/31/2019 09:00 AM in San Jose, Courtroom 4, 5th Floor before Judge Edward J. Davila. Responses due by 11/5/2018. Replies due by 11/13/2018. (Attachments: # 1 Proposed Order)(Berkowitz, Benjamin) (Filed on 10/22/2018) (Entered: 10/22/2018) |
| 10/22/2018 | 33 | Request for Judicial Notice re 32 MOTION to Dismiss filed byGoogle, Inc.. (Attachments: # 1 Declaration, # 2 Exhibit 1A, # 3 Exhibit 1B, # 4 Exhibit 2, # 5 Exhibit 3, # 6 Exhibit 4, # 7 Exhibit 5, # 8 Exhibit 6, # 9 Exhibit 7, # 10 Exhibit 8, # 11 Exhibit 9, # 12 Exhibit 10) (Related document(s) 32 ) (Bowen, Kathryn) (Filed on 10/22/2018) (Entered: 10/22/2018) |
| 10/24/2018 | 34 | STIPULATION WITH PROPOSED ORDER *To Reflect Name Change From Google Inc. To Google LLC* filed by Google, Inc.. (Gorman, Thomas) (Filed on 10/24/2018) (Entered: 10/24/2018) |
| 10/24/2018 | 35 | **REFERRAL FOR PURPOSE OF DETERMINING RELATIONSHIP re 3:18-cv-06262-JST Ali v. Google Inc. Signed by Judge Jon S. Tigar on October 24, 2018. (wsn, COURT STAFF) (Filed on 10/24/2018) (Entered: 10/24/2018)** |
| 10/24/2018 | 36 | CLERK'S NOTICE RESETTING HEARING. Please take NOTICE that the Initial Case Management Conference previously set for 11/29/2018 is HEREBY RESET for 2/7/2019 10:00 AM in San Jose, Courtroom 4, 5th Floor. Joint Case Management Statement due by 1/28/2019. *(This is a text-only entry generated by the court. There is no document associated with this entry.)* (amkS, COURT STAFF) (Filed on 10/24/2018) (Entered: 10/24/2018) |
| 10/25/2018 | 37 | **Stipulation and Order to Reflect name change 34 . Signed by Judge Edward J. Davila on 10/25/2018.(ejdlc3S, COURT STAFF) (Filed on 10/25/2018) (Entered: 10/25/2018)** |
| 10/29/2018 | 38 | **ORDER RELATING CASE. It is hereby ordered that 5:18-cv-05062-EJD Patacsil v Google, Inc. is RELATED to 3:18-cv-06262-JST Ali v Google, Inc. and such case shall be reassigned to Judge Edward J Davila. Signed by Judge Edward J. Davila on 10/29/2018.** (amkS, COURT STAFF) (Filed on 10/29/2018) (amkS, COURT STAFF) (Filed on 10/29/2018) (Entered: 10/29/2018) |
| 10/31/2018 | 39 | ADR Certification (ADR L.R. 3-5 b) of discussion of ADR options (Berkowitz, Benjamin) (Filed on 10/31/2018) (Entered: 10/31/2018) |
| 10/31/2018 | 40 | ADR Certification (ADR L.R. 3-5 b) of discussion of ADR options *for Napoleon Patacsil* (Gardner, Melissa) (Filed on 10/31/2018) (Entered: 10/31/2018) |
| 11/05/2018 | 41 | STIPULATION WITH PROPOSED ORDER *to Change Time on Amended Complaint and Motion to Dismiss* filed by Google, LLC. (Gorman, Thomas) (Filed on 11/5/2018) (Entered: 11/05/2018) |

| 11/06/2018 | 42 | **Order granting 41 Stipulation to change time on amended complaint and motion to dismiss. Signed by Judge Edward J. Davila on 11/6/2018. (ejdlc3S, COURT STAFF) (Filed on 11/6/2018) (Entered: 11/06/2018)** |

### PACER Service Center

#### Transaction Receipt

11/06/2018 10:42:03

| PACER Login: | az0048:2509544:0 | Client Code: | 330948 |
|---|---|---|---|
| **Description:** | Docket Report | **Search Criteria:** | 5:18-cv-05062-EJD |
| **Billable Pages:** | 6 | **Cost:** | 0.60 |

1  IVY T. NGO (CA State Bar No. 249860)
ngoi@fdazar.com
2  **FRANKLIN D. AZAR & ASSOCIATES, P.C.**
3  14426 East Evans Avenue
   Aurora, CO 80014
4  Telephone:    (303) 757-3300
   Facsimile:    (720) 213-5131
5

6                 **UNITED STATES DISTRICT COURT**
                  **NORTHERN DISTRICT OF CALIFORNIA**
7

8  LESLIE LEE, AN INDIVIDUAL AND           Case No.:
   WYOMING RESIDENT, STACY
9  SMEDLEY, AN INDIVIDUAL AND              **CLASS ACTION COMPLAINT**
   COLORADO RESIDENT, AND
10 FREDRICK DAVIS, AN INDIVIDUAL           COMPLAINT FOR DAMAGES,
   AND COLORADO RESIDENT,                  INJUNCTIVE RELIEF AND
11                                         RESTITUTION
                  Plaintiffs,
12                                         **DEMAND FOR JURY TRIAL**
   vs.
13
   GOOGLE, INC., AND ALPHABET, INC.,
14
                  Defendants.
15

16

17

18

19

20

21

22

23

24

25

26

27

28

                              1

# Table of Contents

PRELIMINARY STATEMENT ........................................................................................................ 4

JURISDICTION AND VENUE ........................................................................................................ 5

PARTIES ........................................................................................................................................... 6

  A. Plaintiffs ...................................................................................................................................... 6

  B. Defendants ................................................................................................................................... 7

FACTUAL BACKGROUND ............................................................................................................ 7

  A. Google Profits Enormously from Tracking and Storing Users' Location Data........................... 7

  B. Google Collected User Location Data Even After a User Opted-Out .......................................... 9

  C. Google Specifically Represented to Users That They Had the Ability to Opt-Out of the Location Data Tracking................................................................................................................................ 10

  D. Google Has a Long History of Poor Protection of User Data ..................................................... 12

  E. Tracking Users' Location Without Permission (and in Contravention of Their Wishes) Violates the FTC Act as a Deceptive Trade Practice ....................................................................................... 13

CLASS ALLEGATIONS ................................................................................................................. 14

CLAIMS ALLEGED ON BEHALF OF ALL CLASSES .............................................................. 18

  First Claim for Relief ...................................................................................................................... 18

    Violation of California's Unfair Competition Law ("UCL") – Unlawful, Fraudulent, and Unfair Business Practices (Cal. Bus. & Prof. Code § 17200, et seq.)............................................................ 18

  Second Claim for Relief .................................................................................................................. 19

    Intrusion Upon Seclusion .............................................................................................................. 19

  Third Claim for Relief ..................................................................................................................... 20

    Violation of California's Constitutional Right to Privacy .............................................................. 20

  Fourth Claim for Relief ................................................................................................................... 21

    Violation of California's Consumers Legal Remedies Act ("CLRA") – Unfair and Deceptive Acts and Practices (Cal. Civ. Code §§ 1750, et seq.) .................................................................................. 21

  Fifth Claim for Relief ...................................................................................................................... 22

    Intentional Misrepresentation and Omission ................................................................................. 22

  Sixth Claim for Relief ..................................................................................................................... 23

    Negligent Misrepresentation and Omission ................................................................................... 23

  Seventh Claim for Relief ................................................................................................................. 24

    Violations of CIPA (Cal. Pen. Code §§ 630, et seq.) ..................................................................... 24

CLAIMS ALLEGED ON BEHALF OF THE COLORADO SUB-CLASS ONLY ...................... 25

  Eighth Claim for Relief ................................................................................................................... 25

    Violation of Colorado Consumer Protection Act (Colo. Rev. Stat 6-1-101, et seq.) .................. 25

**CLASS ACTION COMPLAINT**

**PRAYER FOR RELIEF** ............................................................................................................ 27

**JURY TRIAL DEMANDED** ................................................................................................... 28

**CLASS ACTION COMPLAINT**

Plaintiffs Leslie Lee, Stacy Smedley and Fredrick Davis ("Plaintiffs"), on behalf of themselves and all others similarly situated, allege the following against Defendants Google, Inc. ("Google") and Alphabet, Inc. ("Alphabet") (collectively, "Defendants"), based on personal knowledge as to Plaintiffs and Plaintiffs' own acts and on information and belief as to all other matters based upon, *inter alia*, the investigation conducted by and through Plaintiffs' undersigned counsel.

## **PRELIMINARY STATEMENT**

1.      This case involves a deliberate, deceptive practice by Defendants to collect personal information from which they can generate millions of dollars in revenue by covertly recording contemporaneous location data about Android and iPhone mobile phone users who are using Google Maps or other Google applications and functionalities ("Users"), but who have specifically opted out of such tracking.

2.      According to Google's own support page, Users "can turn off Location History at any time. **With Location History off, the places you go are no longer stored**.  When you turn off Location History for your Google Account, it's off for all devices associated with that Google Account."[1]

3.      Despite this clear representation to Users, an Associated Press investigation announced on August 13, 2018 that – as confirmed by a Princeton computer-science researcher – Google surreptitiously tracked Users' locations even when they explicitly opted-out of such tracking ("AP Investigation").[2]

4.      Specifically, if Users only disabled "Location History" in the settings of their Google account and nothing else, Google continued to automatically store time-stamped location and data without obtaining consent from those Users.  Pausing or disabling the "Location History" setting

---

[1] Google, "Manage or delete your Location History."  *Available at* https://support.google.com/accounts/answer/3118687?hl=en (visited Aug. 14, 2018, using Wayback Machine) (all emphasis added and internal citations omitted throughout the Class Action Complaint unless otherwise indicated).

[2] Ryan Nakashima. "AP Exclusive: Google tracks your movements, like it or not."  The Associated Press, Aug. 13, 2018, *available at* https://apnews.com/828aefab64d4411bac257a07c1af0ecb (last visited Oct.18, 2018).

4

**CLASS ACTION COMPLAINT**

only prevented Google from aggregating Users' location data and visualizing that data in a timeline – not from Google tracking and storing Users' valuable location data.

5. Users who wished to prevent Google from saving their location data had to disable a setting in their account titled "Web and App Activity" – even though Google did not mention location data with regard to this setting and did not provide any disclosure to Users that this setting also allowed their location to be tracked.

6. Google thus misrepresented how, and to what extent, Users controlled their location data and, by collecting their location data without their consent, invaded their privacy.

7. Google improperly baited Users into using its applications and functionalities without worrying about their privacy by representing to Users that they could control Google's access to their location data and allowing them to opt out of giving Google their location data, then Google switched Users into allowing it to collect their location data.

8. While Google subsequently changed its disclosures after the revelations from the AP Investigation, it had already obtained valuable location data from Users without their consent. Google's attempt to paper over its misrepresentations and omissions after its deceptive practice of secretly amassing a considerable amount of profitable data based on deliberate misrepresentations and omissions does not absolve it of liability.

9. Accordingly, Plaintiffs bring this Class Action on behalf of all persons, described more fully *infra*, whose location data was tracked and stored by Google despite specifically opting out of such tracking.

## JURISDICTION AND VENUE

10. This court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because the aggregate amount in controversy exceeds $5,000,000, exclusive of interests and costs, there are more than 100 proposed class members, and at least one proposed class member is a citizen of a state from Defendants and is a citizen of a foreign state. In addition, the Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

**CLASS ACTION COMPLAINT**

11.     Venue is proper under 28 U.S.C. § 1391(c) because Defendants Google and Alphabet are corporations that do business in and are subject to personal jurisdiction in this District.  Venue is also proper because a substantial part of the events or omissions giving rise to the claims in this action occurred in or emanated from this District, including the decisions made by Defendants' governance and management personnel that led to the misrepresentations and invasions of privacy.  Further, Google's terms of service governing Users all over the world provides for venue in the Northern District of California for all claims arising out of Plaintiffs' relationship with Google.

**PARTIES**

**A. Plaintiffs**

12.     Plaintiff Leslie Lee is, and at all relevant times was, a citizen of the State of Wyoming who resides in Cheyenne, WY.  Since at least 2013 and continuously to the present, Plaintiff has owned and used an Apple iPhone that has had various Google applications and functionalities downloaded onto the device.  Since 2013, Plaintiff has owned and used an Apple iPhone X, iPhone 8, iPhone 7, iPhone 6, and iPhone 5s.  He currently owns and uses an Apple iPhone X.

13.     While using each of these devices, Plaintiff Lee expressly attempted to limit Google's tracking of his location by managing his Location Tracking and History settings – turning the operating systems' and applications' location tracking and storage buttons to "off."  Nevertheless, and unbeknownst to Plaintiff, Google continued to track his location information and store it.

14.     Plaintiff Stacey Smedley is, and at all relevant times was, a citizen of the State of Colorado who resides in Denver, Colorado.  Between 2016 and the present, she has owned and used an Apple iPhone 6 that has had various Google applications and functionalities downloaded onto the device.

15.     Prior to acquiring the iPhone, Plaintiff Smedley owned and operated an Android mobile phone for approximately four years. Her Android phone, which runs on an operating system developed by Google, has had various Google applications and functionalities downloaded onto the device.

16.     While using each of these devices, Plaintiff Smedley expressly attempted to limit Google's tracking of her location by managing her Location Tracking and History settings – turning

6

the operating systems' and applications' location tracking and storage buttons to "off." Nevertheless, and unbeknownst to Plaintiff Smedley, Google continued to track her location information and store it.

17.     Plaintiff Fredrick Davis is, and at all relevant times was, a citizen of the State of Colorado who resides in Aurora, Colorado. Since at least 2012 and continuously to the present, he has owned and used an Apple iPhone that has had various Google applications and functionalities downloaded onto the device. Since 2012, Plaintiff Davis has owned and used an Apple iPhone 8+, iPhone 6+, and iPhone 5. He currently owns and uses an Apple iPhone 8+.

18.     While using each of these devices, Plaintiff Davis expressly attempted to limit Google's tracking of his location by managing his Location Tracking and History settings – turning the operating systems' and applications' location tracking and storage buttons to "off." Nevertheless, and unbeknownst to Plaintiff Davis, Google continued to track his location information and store it.

**B. Defendants**

19.     Defendant Google, Inc. ("Google") is a Delaware corporation with its principal headquarters in Mountain View, California.

20.     Defendant Alphabet, Inc. ("Alphabet") is a Delaware corporation with its principal headquarters in Mountain View, California.  Alphabet is a public holding company formed in a corporate reorganization by Google.  Through the corporate restructuring, Defendant Google is now a direct, wholly owned subsidiary of Defendant Alphabet.

21.     At all relevant times, Defendants were and are engaged in business in San Mateo County and throughout the world.

## FACTUAL BACKGROUND

**A. Google Profits Enormously from Tracking and Storing Users' Location Data**

22.     Google is the world's largest digital advertising company.[3]  In 2017 alone, Google's advertisement revenue – which depends on its ability to collect personal information about Users – amounted to nearly $95.4 billion.[4]

---

[3] "Google and Facebook tighten grip on US digital ad market."  eMarketer, Sept. 21, 2017, *available at* https://www.emarketer.com/Article/Google-Facebook-Tighten-Grip-on-US-Digital-Ad-Market/1016494

**CLASS ACTION COMPLAINT**

23.     Google is also the developer of a mobile phone operating system, Android, and develops applications that are pre-downloaded or can be downloaded on Android and iOS mobile phone devices.  Google applications on both Android and iOS devices have the ability to collect valuable personal information about Users.

24.     Google has the ability to collect User data actively or passively.  Google's active data collection involves a User directly and consciously communicating information to Google, such as signing in to any of its widely used applications, including YouTube, Gmail, Search etc.[5]  Google's passive data collection involves using a platform (*e.g.*, Android), an application (*e.g.*, Chrome, Search, YouTube, or Maps), publisher tools (*e.g.*, Google Analytics, AdSense), or advertiser tools (*e.g.*, AdMob, AdWords) to gather information about a User while the platform, application or tool is running, possibly without the User's knowledge.

25.     Google can then leverage the personal data it collects from Users for its lucrative marketing and advertising business.  Individual location information is thus valuable to Google because of the huge revenues it can generate.  As an August 13, 2018 Bloomberg article detailed:

> Google derives significant revenue through advertising, which is bolstered by user-generated data providing information useful to advertisers such as metrics on foot traffic. Google recently reported its advertising business increased 24 percent in the second quarter, pushing Alphabet's total revenue minus partner payouts to $26.24 billion. Google Chief Executive Officer Sundar Pichai said recently that the company is exploring new ways to place promoted content and advertisements into its Map services.[6]

26.     Users' location data is valuable to Users as well, not only because of what the data point alone says about an individual (i.e., where he or she is at any particular point in time), but because of the massive amount of personal and private information that can be extracted from the

---

[4] Alphabet, Form 10-K for fiscal year ended December 31, 2017, filed with the Securities Exchange Commission on Feb. 6, 2018, at 28.
[5] Douglas C. Schmidt. "Google Data Collection."  Vanderbilt University, Aug. 15, 2018, *available at* https://digitalcontentnext.org/wp-content/uploads/2018/08/DCN-Google-Data-Collection-Paper.pdf.
[6] Emily McCormick. "Google Tracks Location Data Even When Users Turn Service Off, AP Report Finds." Aug. 13, 2018, *available at https://www.bloomberg.com/news/articles/2018-08-13/google-tracks-location-data-even-when-users-turn-service-off-ap.* (last visited Oct. 18, 2018).

8

**CLASS ACTION COMPLAINT**

location data (such as medical treatment, personal relationships, and private interests).  As Chief

Justice John Roberts observed this summer, "a cell phone – almost a 'feature of human anatomy[]' –

tracks nearly exactly the movements of its owner. . . . A cell phone faithfully follows its owner

beyond public thoroughfares and into private residences, doctor's offices, political headquarters, and

other potentially revealing locales," and when a third-party has access to the information stored on

one's cell phone, that entity "achieves near perfect surveillance, as if it had attached an ankle

monitor to the phone's user."  *Carpenter v. United States*, 138 S. Ct. 2206 at 2218 (2018).

**B. Google Collected User Location Data Even After a User Opted-Out**

27.     The Associated Press announced on August 13, 2018 that its investigation revealed

that Google surreptitiously tracked User location even if Users explicitly opted-out of location

tracking.[7]  The AP Investigation further found that in response to a User pausing or disabling the

"Location History" setting, Google only stopped aggregating Users location data and visualizing it in

a timeline.  Google did not stop automatically tracking and storing time-stamped location data –

without obtaining consent from the User.

28.     In order to prevent Google from saving their location data, Users had to disable a

setting titled "Web and App Activity" – even though Google did not describe the setting as including

location data or disclose that the setting allowed Users' location to be tracked and stored.

29.     Jonathan Mayer, a Princeton computer scientist and former chief technologist for the

FTC's enforcement bureau, confirmed this determination based upon a researcher from his

laboratory's ability to replicate the findings on multiple Android devices.[8]  The Associated Press

also conducted its own tests on several iPhones and found identical behavior.[9]

30.     In addition, a study on Android devices by Vanderbilt University professor Douglas

C. Schmidt, published on August 15, 2018 ("Vanderbilt Study"), independently reached a similarly

troubling conclusion: "[o]ur experiments show that a dormant, stationary Android phone (with

Chrome active in the background) communicated location information to Google 340 times during a

---

[7] Ryan Nakashima. "AP Exclusive: Google tracks your movements, like it or not."  The Associated Press, Aug. 13, 2018, *available at* https://apnews.com/828aefab64d4411bac257a07c1af0ecb (last visited Oct. 18, 2018).
[8] *Id.*
[9] *Id.*

**CLASS ACTION COMPLAINT**

24-hour period, or at an average of 14 data communications per hour. In fact, *location information constituted 35% of all the data samples sent to Google*."[10]  The Vanderbilt Study also concluded that "Android helps Google collect personal user information (e.g. name, mobile phone number, birthdate, zip code, and in many cases, credit card number), activity on the mobile phone (e.g. applications used, websites visited), *and location coordinates*. *In the background, Android frequently sends Google user location* and device-related information, such as apps usage, crash reports, device configuration, backups, and various device-related identifiers."[11]

31.     While the Vanderbilt Study determined that Google received a significant amount of location information passively, it noted that "*[i]t's hard for an Android mobile user to "opt out" of location tracking*. For example, on an Android device, even if a user turns off the Wi-Fi, the device's location is still tracked via its Wi-Fi signal."[12]

**C. Google Specifically Represented to Users That They Had the Ability to Opt-Out of the Location Data Tracking**

32.     On both Android and iOS operating systems, Users can customize the preferences on their devices by "managing" various functionalities, including the option to turn on or off the retention of "Location History" – that is, the User's precise location information as determined through the device's GPS coordinates.

33.     Prior to the AP investigation, Google specifically represented to Plaintiffs and the other Class members in the relevant section of its support page that Users could opt-out of Google's tracking and storage of location data by turning Location History off as follows[13]:

## Turn Location History on or off

You can turn off Location History at any time. With Location History off, the places you go are no longer stored. When you turn off Location History for your Google Account, it's off for all devices associated with that Google Account.

---

[10] Douglas C. Schmidt. "Google Data Collection."  Vanderbilt University, Aug. 15, 2018, *available at* https://digitalcontentnext.org/wp-content/uploads/2018/08/DCN-Google-Data-Collection-Paper.pdf.
[11] *Id.*
[12] *Id.*
[13] Google, "Manage or delete your Location History."  *Available at* https://support.google.com/accounts/answer/3118687?hl=en (visited Aug. 14, 2018, using Wayback Machine).

**CLASS ACTION COMPLAINT**

34.     For Android Users, Google provided the following specific steps required to turn Location History, and thereby location tracking, off:

Turn Location History on/off using device settings (Android 2.3 & up)

1. On your Android phone or tablet, open your device's Settings app ⚙ ▸ **Google** ▸ **Google Account**.
2. At the top, tap **Data & personalization**.
3. Under "Activity controls," tap **Location History**.
4. Turn **Location History** on or off for your account or devices:
   • For your whole account and all devices associated with it, turn **Use Location History** on or off.
   • For a certain device only, turn that device's history on or off.

35.     Nowhere in its support page did Google provide any reference to the critical "Web & App Activity" setting which actually allowed Users to opt-out of location data tracking and collection.

36.     By intentionally and conspicuously failing to refer to this one most critical step that would accomplish Users' goal of stopping Google from tracking and storing their location data, Google affirmatively and misleadingly represented to Users that turning off "Location History" would result in Google ceasing to track, record, and use a User's location information.

37.     Moreover, the title of the difficult-to-locate "Web & App Activity" setting, in and of itself, did not indicate to Users that it controls whether their *location* data is sent to Google.

38.     Google's deception even misled well-known technology publications, who parroted its misrepresentation that turning off "Location History" would prevent Google from collecting Users' location data.[14]

39.     Only after the Associated Press announced its discovery on August 18, 2018 did Google change its support page to imply to Users for the first time that turning off Location History did not prevent Google from obtaining their location data – but it still failed to make any mention of the critical "Web & App Activity" setting[15]:

---

[14] *See, e.g.*, Matt Burgess.  "How to stop Google from tracking you and delete your personal data."  Wired, Mar. 16, 2018, *available at* https://www.wired.co.uk/article/google-history-search-tracking-data-how-to-delete (accessed Oct. 18, 2018).
[15] Google, "Manage or delete your Location History."  *Available at* https://support.google.com/accounts/answer/3118687?hl=en (visited August 18, 2018, using Wayback Machine).

11
**CLASS ACTION COMPLAINT**

# Turn Location History on or off

You can turn off Location History at the account level at any time.

This setting does not affect other location services on your device, like Google Location Services and Find My Device. Some location data may be saved as part of your activity on other services, like Search and Maps. When you turn off Location History for your Google Account, it's off for all devices associated with that Google Account.

40.     Not until October 5, 2018 – nearly two months after the AP Investigation – did Google finally change its support page to disclose the "Web & App Activity" setting's control of Google's tracking of Users' location data[16]:

If you have other settings like Web & App Activity turned on and you pause Location History or delete location data from Location History, you may still have location data saved in your Google Account as part of your use of other Google sites, apps, and services. For example, location data may be saved as part of activity on Search and Maps when your Web & App Activity setting is on, and included in your photos depending on your camera app settings.

41.     However, this change in disclosure to Users regarding their ability to opt-out of its location data tracking does not insulate Google from liability for having already improperly collected a wealth of valuable location data from Plaintiffs and other members of the Class.

**D. Google Has a Long History of Poor Protection of User Data**

42.     Google has been on notice of deficiencies regarding its policies, processes, and procedures involving the protection of User data since 2010.

43.     As a result of such deficiencies, Google agreed to a proposed settlement in March 2011 which contained a consent decree after the Federal Communications Commission ("FTC") found that Google used deceptive tactics and violated its own privacy promises to consumers when it launched its first social network product, Google Buzz, in 2010.[17]  Under the settlement, the FTC barred Google from misrepresenting the privacy of personal information or the extent to which consumers may exercise control over the collection, use, or exposure of covered personal

---

[16] Google, "Manage or delete your Location History."  *Available at* https://support.google.com/accounts/answer/3118687?hl=en (visited October 5, 2018, using Wayback Machine).
[17] U.S. FTC. *In the Matter of GOOGLE INC.*, a corporation.  Docket No. C-4436.  *Available at* https://www.ftc.gov/sites/default/files/documents/cases/2011/10/111024googlebuzzdo.pdf

**CLASS ACTION COMPLAINT**

information.  The FTC also required Google to establish a "comprehensive privacy program that was reasonably designed to: (1) address privacy risks related to the development and management of new and existing products and services for consumers, and (2) protect the privacy and confidentiality of covered information."  Included in this privacy program was the "regular testing or monitoring of the effectiveness of those privacy controls and procedures," which would be audited by an independent third-party professional.[18]

44.     Less than a year after entering into the FTC consent decree, Google violated it – becoming one of the rare companies in the country that has violated a FTC consent decree – and paid a record fine for its circumvention of privacy protections in the web browser Safari.[19]  In discussing the settlement, Jon Leibowitz, Chairman of the FTC, said, "The record setting penalty in this matter sends a clear message to all companies under an FTC privacy order. No matter how big or small, all companies must abide by FTC orders against them and keep their privacy promises to consumers, or they will end up paying many times what it would have cost to comply in the first place."[20]

**E. Tracking Users' Location Without Permission (and in Contravention of Their Wishes) Violates the FTC Act as a Deceptive Trade Practice**

45.     FTC enforcement actions have specifically found that conduct similar to that alleged herein against Defendants is a deceptive trade practice, in violation of § 5 of the FTC Act.

46.     In June 2018, the FTC announced that it had settled charges against a mobile advertising company, InMobi PTE ("InMobi"), for deceptively tracking the locations of hundreds of millions of individuals without their knowledge or consent in order to serve them geo-targeted advertising (i.e., advertisements tailored to individuals based on where they live or places they frequent).[21]

47.     In that action, the FTC alleged that InMobi misleadingly represented that its advertising software would only track consumers' locations if they opted in to being tracked, and in

---

[18] *Id.*
[19] "Google Will Pay $22.5 Million to Settle FTC Charges It Misrepresented Privacy Assurances to Users of Apple's Safari Internet Browser."  FTC, Aug. 9, 2012, *available at* https://www.ftc.gov/news-events/press-releases/2012/08/google-willpay-225-million-settle-ftc-charges-it-misrepresented (last visited Oct. 15, 2018).
[20] *Id.*
[21] U.S. FTC. "Mobile Advertising Network InMobi Settles FTC Charges It Tracked Hundreds of Millions of Consumers' Locations Without Permission."  Jun. 22, 2018, *available at* https://www.ftc.gov/news-events/press-releases/2016/06/mobile-advertising-network-inmobi-settles-ftc-charges-it-tracked.

**CLASS ACTION COMPLAINT**

a manner consistent with their devices' privacy settings.[22]  According to the FTC complaint, InMobi was actually tracking consumers' locations whether or not the applications using InMobi's software asked them for permission to do so, and even where consumers had denied permission to access their location information.[23]

48.     As a result of the FTC enforcement action, InMobi agreed to pay $950,000 in civil penalties and to implement a comprehensive privacy program which included a prohibition against collecting consumers' location information without their affirmative express consent as well as requirements that InMobi honor consumers' location privacy settings and for the program to be independently audited every two years for the next 20 years.[24]  InMobi was further required to delete all of the consumers' location information that it had collected without their consent and was prohibited from further misrepresenting its privacy practices.[25]

## CLASS ALLEGATIONS

49.     Pursuant to Rule 23(b)(2), (b)(3), and (c)(4) of the Federal Rules of Civil Procedure, Plaintiffs, individually and on behalf of all others similarly situated, bring this lawsuit on behalf of themselves and as a class action on behalf of the following Classes and Sub-Classes:

**Nationwide iPhone Class**: All natural persons who own Apple mobile phones, who turned off Location History, and whose location information was nonetheless recorded and used by Google.

**Nationwide Android Class**: All natural persons who own Android mobile phones, who turned off Location History, and whose location information was nonetheless recorded and used by Google.

**Colorado Sub-Class**: All natural persons residing in Colorado who own Apple or Android mobile phones, who turned off Location History, and whose location information was nonetheless recorded and used by Google.

50.     Excluded from the Classes and Sub-Classes are Defendants and any entities in which Defendants or their subsidiaries or affiliates have a controlling interest, as well as Defendants' officers, agents, and employees.  Also excluded from the Classes and Sub-Class are the judge assigned to this action, members of the judge's staff, and any member of the judge's immediate

---

[22] *Id.*
[23] *Id.*
[24] *Id.*
[25] *Id.*

**CLASS ACTION COMPLAINT**

family.  Plaintiffs reserve the right to amend the Class and Sub-Class definitions if discovery and further investigation reveal that any definitions should be expanded or otherwise modified.

**Numerosity**: The members of each Class and Sub-Class are so numerous that joinder of all members of every Class and Sub-Class would be impracticable.  Plaintiffs reasonably believe that Class and Sub-Class members number hundreds of thousands of people or more in the aggregate and well over 1,000 in the smallest of the classes or sub-class.  The names and addresses of Class and Sub-Class members are identifiable through documents maintained by Defendants.

**Commonality and Predominance**: This action involves common questions of law or fact, which predominate over any questions affecting individual Class and Sub-Class members, including:

a.      Whether Defendants represented that Google would not record and use location information from Plaintiffs and Class members if they turned off Location History;

b.      Whether Google's alleged conduct amounts to the use of an electronic tracking device to determine the location or movement of a person, in violation of Cal. Pen. Code § 637.7;

c.      Whether the Android and iPhone mobile phones which contained the technology utilized by Google are "electronic tracking devices" under Cal. Pen. 6 Code § 637.7(d);

d.      Whether Defendants' conduct was an unlawful or unfair business practice under Cal. Bus. & Prof. Code § 17200, *et seq.*;

e.      Whether Defendants' conduct violated the Colorado Consumer Protection Act, Colo. Rev. Stat. 6-1-101, *et seq.*;

f.      Whether Google's alleged conduct amounts to egregious breaches of social norms;

g.      Whether Google acted intentionally in violating the privacy rights of Plaintiffs and Class members;

51.     Defendants engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs individually and on behalf of the members of the Classes and Sub-Class.  Similar or identical statutory and common law violations, business practices, and injuries

15

are involved.  Individual questions, if any, pale by comparison, in both quantity and quality, to the

numerous common questions that dominate this action.

52.      As further indication of the common questions of law, Google's terms of service

provides that "you agree that the laws of California, U.S.A., excluding California's choice of law

rules, will apply to any disputes arising out of or relating to these terms or the Services."

**Typicality**: Plaintiffs' claims are typical of the claims of the other members of their

respective classes because, among other things, Plaintiffs and Class and Sub-Class members were

injured through the substantially uniform misconduct by Defendants.  Plaintiffs are advancing the

same claims and legal theories on behalf of themselves and all other Class and Sub-Class members,

and there are no defenses that are unique to Plaintiffs.  The claims of Plaintiffs and those of other

Class and Sub-Class members arise from the same operative facts and are based on the same legal

theories.

**Adequacy of Representation**: Plaintiffs are adequate representatives of the Class and Sub-

Classes because their interests do not conflict with the interests of the other Class and Sub-Class

members they seek to represent; they have retained counsel competent and experienced in complex

class action litigation; and they will prosecute this action vigorously. Class and Sub-Class members'

interests will be fairly and adequately protected by Plaintiffs and their counsel.

**Superiority**: A class action is superior to any other available means for the fair and efficient

adjudication of this controversy, and no unusual difficulties are likely to be encountered in the

management of this matter as a class action.  The damages, harm, or other financial detriment

suffered individually by Plaintiffs and the other Class and Sub-Class members are relatively small

compared to the burden and expense that would be required to litigate their claims on an individual

basis against Defendants, making it impracticable for Class and Sub-Class members to individually

seek redress for Defendants' wrongful conduct.  Even if Class and Sub-Class members could afford

individual litigation, the court system could not.  Individualized litigation would create a potential

for inconsistent or contradictory judgments and increase the delay and expense to all parties and the

court system.  By contrast, the class action device presents far fewer management difficulties and

**CLASS ACTION COMPLAINT**

provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

53. Further, Defendants have acted or refused to act on grounds generally applicable to the Class and Sub-Class and, accordingly, final injunctive or corresponding declaratory relief with regard to the members of the Classes and Sub-Class as a whole is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

54. Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

    a. Whether Defendants represented that Google would not record and use location information from Plaintiffs and the other Class members if they turned off Location History;

    b. Whether Google's alleged conduct amounts to the use of an electronic tracking device to determine the location or movement of a person, in violation of Cal. Pen. Code § 637.7;

    c. Whether the Android and iPhone mobile phones which contained the technology utilized by Google are "electronic tracking devices" under Cal. Pen. 6 Code § 637.7(d);

    d. Whether Defendants' conduct was an unlawful or unfair business practice under Cal. Bus. & Prof. Code § 17200, et seq.;

    e. Whether Defendants' conduct violated the Colorado Consumer Protection Act, Colo. Rev. Stat. 6-1-101, et seq.;

    f. Whether Google's alleged conduct amounts to egregious breaches of social norms;

    g. Whether Google acted intentionally in violating the privacy rights of Plaintiffs and Class members.

**CLASS ACTION COMPLAINT**

## CLAIMS ALLEGED ON BEHALF OF ALL CLASSES

### First Claim for Relief
**Violation of California's Unfair Competition Law ("UCL") –
Unlawful, Fraudulent, and Unfair Business Practices
(Cal. Bus. & Prof. Code § 17200, *et seq.*)**

55. Plaintiffs hereby repeat, reallege, and incorporate by reference each and every allegation contained above as though the same were fully set forth herein.

56. Google's terms of service provide that "you agree that the laws of California, U.S.A., excluding California's choice of law rules, will apply to any disputes arising out of or relating to these terms or the Services."

57. By committing the acts and practices alleged herein, Defendants engaged in unlawful, fraudulent, and unfair business practices in violation of California's UCL:

    a. Unlawful Conduct: As a result of engaging in the conduct alleged herein, Defendants violated the UCL's proscription against engaging in unlawful conduct by virtue of: (i) their fraudulent and deceitful conduct in violation of California Civil Code §§ 1709 through 1711; (ii) their violations of the Consumers Legal Remedies Act, California Civil Code §§ 1770(a)(5), (a)(7), and (a)(9); (iii) their violation of the terms of the 2011 Consent Decree with the FTC; and (iv) their violation of Cal. Penal Code § 630, *et. seq.*

    b. Fraudulent Conduct: Defendants violated the UCL's proscription against fraud as a result of engaging in the fraudulent and deceitful conduct herein.

    c. Unfair Conduct: Defendants violated the UCL's proscription against unfair conduct as a result of engaging in the conduct alleged herein, which violates legislatively-declared policies articulated in, *inter alia*, California Civil Code §§ 1710, 1711, and 1770, subsections (a)(5), (a)(7), and (a)(9), and Cal. Penal Code § 630

58. Defendants' violations of the UCL continue to this day. As a direct and proximate result of Defendants' violations of the UCL, Plaintiffs have suffered actual damage, *inter alia*, as detailed herein.

59. Pursuant to § 17203 of the UCL, Plaintiffs and the other Class members seek an order that requires Defendants: (a) to modify Google's operating system and all applications in a manner

18

that prevents location tracking absent affirmative user consent; (b) to modify Google's operating system and all applications in a manner that truthfully advises users of location tracking; (c) to make full restitution of all moneys wrongfully obtained from their violations of the UCL, as alleged herein; and (d) to pay the attorney fees and costs incurred by counsel for Plaintiffs and the proposed class in accordance with California Code of Civil Procedure § 1021.5.

**<u>Second Claim for Relief</u>**
**Intrusion Upon Seclusion**

60.     Plaintiffs hereby repeat, reallege, and incorporate by reference each and every allegation contained above as though the same were fully set forth herein.

61.     Plaintiffs and the other Class members have reasonable expectations of privacy in their mobile devices and their online behavior, generally. Plaintiffs' and the other Class members' private affairs include their locations.

62.     The reasonableness of such expectations of privacy is supported by Defendants' unique position to monitor Plaintiffs' and the other Class members' behavior through Google's access to their private mobile devices. It is further supported by the surreptitious and non-intuitive nature of Defendants' tracking.

63.     Defendants intentionally intruded on and into Plaintiffs' and the other Class members' solitude, seclusion, or private affairs by intentionally geolocating them.

64.     These intrusions are highly offensive to a reasonable person.  This is evidenced by, *inter alia*, Supreme Court precedent (most recently and forcefully articulated in the *Carpenter* opinion), legislation enacted by Congress, rules promulgated and enforcement actions undertaken by the FTC, and countless studies, op-eds, and articles decrying location tracking. Moreover, Defendants engaged in true tracking of location history deceptively and in direct contradiction of the express instructions of Plaintiffs and the other Class members. Also supporting the highly offensive nature of Defendants' conduct is the fact that their principal goal was to surreptitiously monitor Plaintiffs and the other Class members and to allow third-parties to do the same.

65.     Plaintiffs and the other Class members were harmed by the intrusion into their private affairs as detailed herein.

**CLASS ACTION COMPLAINT**

66.     Defendants' actions and conduct complained of herein were a substantial factor in causing the harm suffered by Plaintiffs and the other Class members.

67.     As a result of Defendants' actions, Plaintiffs and the other Class members seek damages and punitive damages in an amount to be determined at trial.  They seek punitive damages because Defendants' actions – which were malicious, oppressive, and willful – were calculated to injure Plaintiffs and the other Class members and made in conscious disregard of their rights. Punitive damages are warranted to deter Defendants from engaging in future misconduct.

### Third Claim for Relief
### Violation of California's Constitutional Right to Privacy

68.     Plaintiffs hereby repeat, reallege, and incorporate by reference each and every allegation contained above as though the same were fully set forth herein.

69.     Google's terms of service provide that "you agree that the laws of California, U.S.A., excluding California's choice of law rules, will apply to any disputes arising out of or relating to these terms or the Services."

70.     Plaintiffs and the other Class members have reasonable expectations of privacy in their mobile devices and their online behavior, generally. Their private affairs include their behavior on their mobile devices as well as any other behavior that may be monitored by the surreptitious tracking employed or otherwise enabled by location tracking.

71.     Defendants intentionally intruded on and into Plaintiffs' and the other Class members' solitude, seclusion, right of privacy, or private affairs by intentionally tracking their location.

72.     These intrusions are highly offensive to a reasonable person because they disclosed sensitive and confidential location information, constituting an egregious breach of social norms. This is evidenced by, *inter alia*, Supreme Court precedent (most recently and forcefully articulated in the *Carpenter* opinion), legislation enacted by Congress, rules promulgated and enforcement actions undertaken by the FTC, and countless studies, op-eds, and articles decrying location tracking. Further, the extent of the intrusion cannot be fully known, as the nature of privacy invasion involves sharing

**CLASS ACTION COMPLAINT**

Plaintiffs' and the other Class members' location information with potentially countless third-parties, known and unknown, for undisclosed and potentially unknowable purposes, in perpetuity.

73.     Plaintiffs and the other Class members were harmed by the intrusion into their private affairs as detailed herein.

74.     Defendants' actions and conduct complained of herein were a substantial factor in causing the harm suffered by Plaintiffs and the other Class members.

75.     As a result of Defendants' actions, Plaintiffs and the other Class members seek damages and punitive damages in an amount to be determined at trial. They seek punitive damages because Defendants' actions which were malicious, oppressive, and willful were calculated to injure Plaintiffs and the other Class members and made in conscious disregard of their rights. Punitive damages are warranted to deter Defendants from engaging in future misconduct.

## Fourth Claim for Relief
### Violation of California's Consumers Legal Remedies Act ("CLRA") –
### Unfair and Deceptive Acts and Practices
### (Cal. Civ. Code §§ 1750, *et seq.*)

76.     Plaintiffs hereby repeat, reallege, and incorporate by reference each and every allegation contained above as though the same were fully set forth herein.

77.     Google's terms of service provide that "you agree that the laws of California, U.S.A., excluding California's choice of law rules, will apply to any disputes arising out of or relating to these terms or the Services."

78.     This claim for relief is brought pursuant to the CLRA. Plaintiffs and the other class members are "consumers," as that term is defined by Civil Code §1761(d), because they used their cellular telephones for personal, family, or household purposes.

79.     Plaintiffs and the other Class members have engaged in a "transaction" with Google, as that term is defined by Civil Code §1761(e).

80.     The conduct alleged herein constitutes unfair methods of competition and unfair and deceptive acts and practices for the purposes of the CLRA, and were undertaken by Defendants in transactions intended to result in, and did result in, the sale of goods to consumers; namely, the purchase of their cellular telephone or cellular telephones containing Google's operating system or

21

installation of Google applications onto their cellular telephones.

81.   By engaging in the conduct described herein, Defendants violated subdivisions (a)(5), (a)(7), and (a)(9) of California Civil Code §1770 by, *inter alia*, misrepresenting and concealing the true nature of Google's Android operating system and applications.

82.   By concealing the true nature and function of Google's operating system and applications from Plaintiffs and the other Class members, Defendants represented, and continues to represent, that the operating system and applications have characteristics, uses and benefits, or qualities that they do not have, and that they are of a particular standard, quality, or grade, when they are not, in violation of California Civil Code §1770, subsections (a)(5) and (a)(7).

83.   By engaging in the conduct alleged herein, Defendants also advertised, and continues to advertise, goods with the intent not to sell them as advertised, in violation of California Civil Code §1770(a)(9).

84.   Plaintiffs now seek an order requiring Defendants to: (a) cease violating the CLRA by use of Google's operating system and applications that secretly monitor the location of Users without consent; and (b) to provide Users of Google's operating system and applications with notice of what improper data collection has taken place.

85.   Unless Defendants agree to correct, repair, replace, or otherwise rectify the problems created by their conduct as alleged herein, Plaintiffs will amend this Class Action Complaint to seek an order awarding actual damages and, because Defendants engaged in the conduct alleged herein deliberately and with willful and malicious intent, punitive damages.

### Fifth Claim for Relief
### Intentional Misrepresentation and Omission

86.   Plaintiffs hereby repeat, reallege, and incorporate by reference each and every allegation contained above as though the same were fully set forth herein.

87.   Defendants, through Google and its agents, employees and/or subsidiaries, made materially false representations and omissions to Plaintiffs and the Class that Google's operating system and applications did not secretly collect information against Users explicit wishes.

88.   These material misrepresentations and omissions were contained in the Purchase

**CLASS ACTION COMPLAINT**

Agreements, Instructions, Terms and Conditions, in the Google's operating system itself, and various public statements by Defendants.

89.    Defendants knew or recklessly disregarded the false and misleading nature of their material misrepresentations and omissions.

90.    Defendants made the materially false and misleading statements and omissions for the purpose of inducing Plaintiffs and the other members of the Class to install and use their operating system and applications.

91.    In purchasing and using Google's operating system and applications, Plaintiffs and the other Class members reasonably relied on Defendants' materially misleading statements and omissions that Users' locations would not be monitored contrary to their explicit wishes.

92.    As a result of Defendants' materially false and misleading representations and omissions, Plaintiffs and the other Class members sustained damages as set forth herein.

### Sixth Claim for Relief
### Negligent Misrepresentation and Omission

93.    Plaintiffs hereby repeat, reallege, and incorporate by reference each and every allegation contained above as though the same were fully set forth herein.

94.    Defendants, through their agents, employees and/or subsidiaries, negligently and/or recklessly made materially false representations and omissions to Plaintiffs and the other Class members as alleged above.

95.    These material misrepresentations and omissions were contained in the Purchase Agreement, Instructions, Terms and Conditions and in various public statements by Defendants.

96.    Defendants knew or should have known that the materially false and misleading statements and omissions would induce Plaintiff and the other Class members to accept Google's operating system and applications for their phones.

97.    In purchasing Google's operating system and applications, Plaintiffs and the other Class members reasonably relied on Google's materially misleading statements and omissions that their location would not be monitored contrary to their explicit wishes.

98.    As a result of Google's materially false and misleading representations and

23

**CLASS ACTION COMPLAINT**

omissions, Plaintiffs and the other Class members sustained damage as set forth herein.

**Seventh Claim for Relief**
**Violations of CIPA**
**(Cal. Pen. Code §§ 630, *et seq*.)**

99.    Plaintiffs hereby repeat, reallege, and incorporate by reference each and every allegation contained above as though the same were fully set forth herein.

100.    Google's terms of service provide that "you agree that the laws of California, U.S.A., excluding California's choice of law rules, will apply to any disputes arising out of or relating to these terms or the Services."

101.    Cal. Pen. Code § 630 provides that "[t]he Legislature hereby declares that advances in science and technology have led to the development of new devices and techniques for the purpose of eavesdropping upon private communication and that the invasion of privacy resulting from the continual and increasing use of such devices and techniques has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society."

102.    Defendants' acts and practices complained of herein, engaged in for purposes of acquiring and using the geolocation of Plaintiffs and the other Class members, without their consent – and indeed in direct contravention of instructions they clearly expressed by turning off the Location History function – violated and continues to violate Cal. Pen. Code § 637.7.

103.    Cal. Pen. Code § 637.7 prohibits the use of an electronic tracking device to determine the location or movement of a person.

104.    In direct violation of this prohibition and without the consent of Plaintiffs or the other Class members – and indeed in direct contravention of their clearly-expressed wishes – Defendants continued to record, store, and use their location information after they disabled the Location History feature on their devices.

105.    As described herein, Defendants utilized multiple devices that are "electronic tracking devices" under Cal. Pen. Code § 637.7(d) in that Google employs and embeds a host of technology – including but not limited to applications, firmware, device components, operating system software,

**CLASS ACTION COMPLAINT**

and other code – on each Class member's phone (a "movable thing" under the statute), and this technology "reveals its location or movement by the transmission of electronic signals."

106.     As a result of Defendants' violations of Cal. Pen. Code § 637.7, and pursuant to Cal. Pen. Code § 637.2, Plaintiffs and the other Class members are entitled to the following relief:

        a.      A declaration that Defendants conduct violates CIPA;

        b.      Statutory damages and/or trebled actual damages;

        c.      Injunctive relief in the form of, *inter alia*, an order enjoining Defendants from geolocating Class members in violation of CIPA;

        d.      Injunctive relief in the form of, *inter alia*, an order requiring Defendants to destroy all data created or otherwise obtained from its illegal geolocation of Class members; and;

        e.      An award of attorney's fees and costs of litigation as provided by CIPA, the private attorney general doctrine existing at common law and codified at California Civil Code § 1021.5, and all other applicable laws.

## CLAIMS ALLEGED ON BEHALF OF THE COLORADO SUB-CLASS ONLY

### Eighth Claim for Relief
### Violation of Colorado Consumer Protection Act
### (Colo. Rev. Stat 6-1-101, et seq.)

107.     Plaintiff Smedley and Davis ("Colorado Plaintiffs") hereby repeat, reallege, and incorporate by reference each and every allegation contained above as though the same were fully set forth herein.

108.     Colorado Plaintiffs bring this cause of action on behalf of themselves and on behalf of the Colorado Sub-Class who are all Colorado residents.

109.     Defendants are a "person" as defined by Colo. Rev. Stat. § 6-1-102(6). Colorado Plaintiffs and Colorado Sub-Class Members are actual or potential consumers of the products and services offered by the Defendants.

**CLASS ACTION COMPLAINT**

110.    Defendants operating in Colorado, engaged in deceptive, unfair, and unlawful trade acts or practices in the course of their business, vocation or occupation, in violation of Colo. Rev. Stat. § 6-1- 105, including but not limited to the following:

a.    Knowingly misrepresenting and fraudulently advertising material facts pertaining to their products and services to the Colorado Sub-Class by representing and advertising that they would allow Colorado Plaintiffs and the other Colorado Sub-Class members to prevent Google's tracking of Users' geolocations in violation of Colo. Rev. Stat. §§ 6-1-105(e), (g), (i), and (u); and

b.    Knowingly omitting, suppressing, and concealing the material fact that the activation of certain settings would not prevent the tracking of Users' geolocations (intending to induce others to enter into a transaction), in violation of Colo. Rev. Stat. §§ 6-1-105(e), (g), (i), and (u);

111.    Defendants' representations and omissions were material because they were likely to deceive reasonable consumers about the ability to prevent Google's tracking of Users' geolocations.

112.    Defendants intended to mislead Colorado Plaintiffs and the other Colorado Sub-Class members and induce them to rely on Defendants' misrepresentations and omissions.

113.    Had Colorado Plaintiffs and the other Colorado Sub-Class members known that the activation of certain settings would not actually prevent the tracking of Users' geolocations, they would not have used, or would have limited their use of, Google's operating systems and/or applications.

114.    Defendants engaged in the above unfair and deceptive acts or practices in the course of their business.

115.    Defendants engaged in above unfair and deceptive acts or practices with malice and/or willfulness.

116.    As a direct and proximate result of Defendants unfair and deceptive practices, Colorado Sub-Class members suffered injuries to legally protected interests, including their legally protected interest in the confidentiality and privacy of their personal information.

**CLASS ACTION COMPLAINT**

117.    The above unfair and deceptive practices and acts by Defendants were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to Colorado Plaintiffs and Colorado Sub-Class members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

118.    Defendants knew or should have known that their misrepresentations and omissions would deceive Users.  Defendants' actions in engaging in the above-named unfair practices and deceptive acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of Colorado Sub-Class members.

119.    Colorado Plaintiffs and other Colorado Sub-Class members seek relief under Colo. Rev. Stat. §§ 6-1-101, et seq., including, but not limited to, compensatory damages, statutory damages, restitution, penalties, injunctive relief, and/or attorneys' fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the other Class and Sub-Class members, respectfully request that this Court enter an Order:

A.    Certifying the Classes and the Colorado Sub-Class, and appointing Plaintiffs as Class Representatives and Colorado Plaintiffs as the Colorado Sub-Class Representative;

B.    For an award of monetary damages, including but not limited to, compensatory, incidental and consequential damages commensurate with proof at trial for the acts complained of herein;

C.    For an award of punitive damages in an amount consistent with applicable statutes and precedent for those causes of action that permit such recovery;

D.    For an order pursuant to California Civil Code § 1780(a)(2) requiring Defendants to: (a) provide Users of Google's operating system and applications with notice of its location monitoring activities; (b) modify Google's operating system and applications in a manner that prevents unauthorized monitoring of location and other activities;

E.    For equitable relief requiring restitution and disgorgement of the revenues wrongfully retained as a result of Defendants' wrongful conduct;

F.    Appropriate declaratory relief against Google;

27

G. Injunctive relief in the form of, *inter alia*, an order enjoining Google from continuing its practice of recording and using Plaintiffs' and the other Class members' location information against their wishes and in violation of CIPA;

H. Injunctive relief related to CIPA in the form of, *inter alia*, an order requiring Google to destroy all data acquired, created, or otherwise obtained from the unlawful recording and use of the location information of Plaintiffs and the other Class members;

I. An award of damages pursuant to Cal. Pen. Code § 637.2;

J. For an award of attorney fees, where applicable;

K. For an award of costs;

L. For an award of pre- and post-judgment interest on any amounts awarded; and,

M. For any and all other relief the Court deems just and appropriate.

## **JURY TRIAL DEMANDED**

Plaintiffs demand a trial by jury of all claims in this Class Action Complaint so triable.

DATED:  October 19, 2018

Respectfully submitted,

*/s/ Ivy T. Ngo*

Ivy T. Ngo (249860)
Franklin D. Azar & Associates, P.C.
14426 E. Evans Avenue
Aurora, CO  80014
Telephone: 303-757-3300
Facsimile:  720-213-5131
Email:      ngoi@fdazar.com
*Counsel for Plaintiffs*

**CLASS ACTION COMPLAINT**

# U.S. District Court
## California Northern District (San Jose)
## CIVIL DOCKET FOR CASE #: 5:18-cv-06416-NC

Lee et al v. Google, Inc. et al
Assigned to: Judge Nathanael M. Cousins
Cause: 28:1332 Diversity-Personal Injury

Date Filed: 10/19/2018
Jury Demand: Plaintiff
Nature of Suit: 360 P.I.: Other
Jurisdiction: Diversity

**Plaintiff**

**Leslie Lee**
*an individual and Wyoming Resident*

represented by **Ivy T Ngo**
Franklin D. Azar and Associate, P.C.
14426 E. Evans Avenue
Aurora, CO 80014
303-757-3300
Email: ngoi@fdazar.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Stacy Smedley**
*an individual and Colorado Resident*

represented by **Ivy T Ngo**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Fredrick Davis**
*an individual and Colorado Resident*

represented by **Ivy T Ngo**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Google, Inc.**

**Defendant**

**Alphabet, Inc.**

| Date Filed | # | Docket Text |
|---|---|---|
| 10/19/2018 | 1 | COMPLAINT against Alphabet, Inc., Google, Inc. ( Filing fee $ 400, receipt number 0971-12779795.). Filed byLeslie Lee, Fredrick Davis, Stacy Smedley. (Attachments: # 1 Civil Cover Sheet)(Ngo, Ivy) (Filed on 10/19/2018) (Entered: 10/19/2018) |
| 10/19/2018 | 2 | Proposed Summons. (Attachments: # 1 Summons)(Ngo, Ivy) (Filed on 10/19/2018) (Entered: 10/19/2018) |
| 10/22/2018 | 3 | Case assigned to Judge Nathanael M. Cousins. |

| | | |
|---|---|---|
| | | Counsel for plaintiff or the removing party is responsible for serving the Complaint or Notice of Removal, Summons and the assigned judge's standing orders and all other new case documents upon the opposing parties. For information, visit *E-Filing A New Civil Case* at http://cand.uscourts.gov/ecf/caseopening.<br><br>Standing orders can be downloaded from the court's web page at www.cand.uscourts.gov/judges. Upon receipt, the summons will be issued and returned electronically. Counsel is required to send chambers a copy of the initiating documents pursuant to L.R. 5-1(e)(7). A scheduling order will be sent by Notice of Electronic Filing (NEF) within two business days. Consent/Declination due by 11/5/2018. (srnS, COURT STAFF) (Filed on 10/22/2018) (Entered: 10/22/2018) |
| 10/22/2018 | 4 | **Initial Case Management Scheduling Order with ADR Deadlines: Case Management Statement due by 1/16/2019. Initial Case Management Conference set for 1/23/2019 10:00 AM in San Jose, Courtroom 7, 4th Floor. (sfbS, COURT STAFF) (Filed on 10/22/2018) (Entered: 10/22/2018)** |
| 10/22/2018 | 5 | Summons Issued as to Alphabet, Inc., Google, Inc. (sfbS, COURT STAFF) (Filed on 10/22/2018) (Entered: 10/22/2018) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 11/06/2018 20:06:18 | | |
| **PACER Login:** | az0048:2509544:0 | **Client Code:** | 330948 |
| **Description:** | Docket Report | **Search Criteria:** | 5:18-cv-06416-NC |
| **Billable Pages:** | 2 | **Cost:** | 0.20 |