**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
Michael W. Sobol (SBN 194857)
msobol@lchb.com
Melissa Gardner (SBN 289096)
mgardner@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA  94111
Telephone:  415.956.1000
Facsimile:  415.956.1008

**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
Nicholas Diamand
ndiamand@lchb.com
Abbye R. Klamann (SBN 311112)
aklamann@lchb.com
250 Hudson Street, 8th Floor
New York, NY  10013
Telephone:  212.355.9500
Facsimile:  212.355.9592

**CARNEY BATES & PULLIAM, PLLC**
Hank Bates (SBN 167688)
hbates@cbplaw.com
Allen Carney
acarney@cbplaw.com
David Slade
dslade@cbplaw.com
519 West 7th St.
Little Rock, AR 72201
Telephone:  501.312.8500
Facsimile: 501.312.8505

*Attorneys for Plaintiffs individually and
on behalf of all others similarly situated*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NAPOLEON PATACSIL, MARK CARSON, NAJAT OSHANA, and NURUDAAYM MAHON, individually, and on behalf of all others similarly situated; and RICHARD DIXON, on behalf of himself; as parent and guardian of his child L.D.; and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> GOOGLE LLC, <br><br> Defendant. | Case No. 5:18-cv-05062-EJD <br><br> **FIRST AMENDED CLASS ACTION COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** |

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ........................................................................................................ 1

II.  THE PARTIES ........................................................................................................... 3

III.  JURISDICTION AND VENUE .................................................................................. 9

IV.  CHOICE OF LAW .................................................................................................... 10

V.  INTRADISTRICT ASSIGNMENT .......................................................................... 10

VI.  STATEMENT OF FACTS ....................................................................................... 10

    A.  Google Stores Location Information Regardless of Privacy Settings.................. 13

    B.  Google's Conduct Poses a Serious Threat to Personal Privacy, Personal Security, and Personal Dignity.................................................................................. 14

    C.  Preventing Google's Storage of Location Information—If Possible—is Far More Complex than Google Represents. .......................................................... 17

    D.  Google's Ineffective Response to the AP Report Confirms and Continues Its Deceptive Behavior........................................................................................... 21

    E.  Google's Surreptitious Storage of Location Data Defies Reasonable Expectations of Privacy and Egregiously Violates Established Social Norms. ...................................................................................................................... 22

        1.  Plaintiffs' Expectations of Privacy are Enshrined in Law. ....................... 24

        2.  Plaintiffs' Expectations Reflect Widely-Held Social Norms................... 24

        3.  Parents Have a Reasonable and Universal Expectation of Privacy for their Children........................................................................................... 26

        4.  The Federal Trade Commission Has Identified Surreptitious Tracking and Storage of Location Information as a Deceptive Trade Practice. ................................................................................................... 29

    F.  Google's Deception Compounds the Outrageous Nature of its Conduct. ........... 30

VII.  CLASS ALLEGATIONS ......................................................................................... 33

VIII.  FRAUDULENT CONCEALMENT AND TOLLING.................................................... 36

IX.  CAUSES OF ACTION ............................................................................................ 36

    COUNT ONE (VIOLATIONS OF CIPA, CAL. PEN. CODE §§ 630, *ET SEQ.*) ........... 36

    COUNT TWO (INTRUSION UPON SECLUSION)...................................................... 38

    COUNT THREE CALIFORNIA CONSTITUTIONAL RIGHT TO PRIVACY ........... 40

X.  PRAYER FOR RELIEF............................................................................................ 41

XI.  DEMAND FOR JURY TRIAL................................................................................. 41

1    **I.      INTRODUCTION**

2          1.      This case addresses the surreptitious and egregious tracking of millions of mobile

3    device users' geolocation by Defendant Google LLC ("Google").  For years, Google has falsely

4    represented to its users that if they activate certain settings it will prevent Google from tracking

5    users' movements and storing a record of their geolocations.  Google's very recent changes to its

6    disclosures, made after this action was commenced, equivocate and continue to obfuscate its

7    ongoing privacy invasive behavior.  Google has failed, and continues to fail, to respect and abide

8    by the very privacy choices that it ostensibly extended to its users.  Despite users expressly

9    declining to give Google permission to track and store a digital record of their movements,

10   Google does just that, creating an unflinchingly precise chronology of users' movements and

11   storing it in a vast exploitable database.  Google's conduct egregiously violates its users'

12   reasonable expectations of privacy.

13         2.      The intent and efforts of privacy and security-conscious individuals to safeguard

14   their personal information—particularly sensitive personal information—must be respected.  As

15   the Supreme Court recently recognized in *Carpenter v. United States*, 138 S. Ct. 2206 (2018),

16   location data is highly sensitive. When stored and tracked over time, location history "provides an

17   intimate window into a person's life, revealing not only his particular movements, but through

18   them his familial, political, professional, religious, and sexual associations." *Id.* at 2217

19   (quotation marks and citation omitted).  As Chief Justice John Roberts stated, "a cell phone—

20   almost a 'feature of human anatomy[]'—tracks nearly exactly the movements of its owner.… A

21   cell phone faithfully follows its owner beyond public thoroughfares and into private residences,

22   doctor's offices, political headquarters, and other potentially revealing locales," and when a third-

23   party has access to the information stored on one's cell phone, that entity "achieves near perfect

24   surveillance, as if it had attached an ankle monitor to the phone's user." *Id.* at 2218 (internal

25   citations omitted).

26         3.      The ramifications of unauthorized access to stored detailed location history can be

27   severe, and individuals accordingly go to great lengths to safeguard not only their own location

28   information, but, in the case of parents and guardians, also that of their minor children.

4.      Despite the recognized sensitivity of location data, Google stores this data against the express instructions and expectations of its users.  As reported in August 2018 by the Associated Press ("AP"), "Google wants to know where you go so badly that it records your movements even when you explicitly tell it not to."[1]  The report—corroborated by respected cyber security researchers—found that Google technology, embedded in more than two billion mobile devices, stores individuals' location information indefinitely even if users activate a privacy setting purporting to prevent Google from doing so.

5.      Until it was exposed by the media and this litigation, Google itself falsely assured individuals that they could prevent Google from creating and storing a record of their movement by disabling a feature called "Location History" on their mobile devices or in their Google Accounts.  Google represented that a user "can turn off Location History at any time.  With Location History off, the places you go are no longer stored."[2]  This simply was not true.  As revealed in the AP Report, confirmed by researchers at Princeton University, and now implied by amendments to Google's disclosures, Google accesses and stores the precise geolocation information of users who have affirmatively turned off the "Location History" setting.  Google modified—and continues to modify—this and other representations after the publication of the AP Report and the resulting public outcry, as discussed in Sections VI.C and VI.D, *infra*.

6.      Thus, while falsely characterizing its illusory privacy controls, Google deceptively and unconscionably deprived and continues to deprive Plaintiffs and Class members of one of the most fundamental autonomy and privacy rights: the ability to control access to and knowledge of their whereabouts and their movement over time.  This was true not only for Plaintiffs and Class members, but also for their children, whose location information they sought to protect.  Indeed, as discussed in further detail below, recognition and respect for child privacy and parental control are enshrined in longstanding societal norms and protected by the law.

---

[1] Ryan Nakashima, *AP Exclusive: Google tracks your movements, like it or not,* The Associated Press (August 13, 2018) (Ex. 1, hereinafter "AP Report").
[2] Archived version of Google Account Help, *Manage or delete your Location History*, (August 16, 2018) (Ex. 2).

1      7.      Google's conduct violates the California Invasion of Privacy Act (Cal. Pen. Code

2    §§ 630, *et seq.* ("CIPA")) and California's Constitutional Right to Privacy, and constitutes an

3    unlawful intrusion upon seclusion.

4    **II.      THE PARTIES**

5      8.      **Plaintiff Napoleon Patacsil** resides in San Diego, California.  From 2016 until the

6    present, Plaintiff Patacsil has owned and used, and continues to own and use, an Apple iPhone

7    with various Google apps and functionalities downloaded onto the mobile device, including

8    Google Maps. In an express effort to protect his location history—and thus his privacy and

9    security—from efforts by Google, and any other third-parties, to record and access his location

10   over time, Mr. Patacsil turned the "Location History" setting to "off" on his Google Account.

11   Based upon the terminology used by Google (*e.g.* "Location History"), the context, and

12   representations by Google to the effect that turning "Location History" off would prevent his

13   location information from being stored and that Google would respect his privacy settings, Mr.

14   Patacsil believed that this would prevent Google from storing a record of his location history.

15   Despite Mr. Patacsil's "Location History" settings, Google continued to store his precise location

16   information.

17     9.      Prior to acquiring the iPhone in approximately 2016, Plaintiff Patacsil owned and

18   used an Android mobile device.  Android is a mobile operating system developed by Google.  In

19   an express effort to protect his location history—and thus his privacy and security—from efforts

20   by Google, and any other third-parties, to track and record his location over time, Mr. Patacsil

21   turned the "Location History" setting to "off" on this mobile device.  Based upon the terminology

22   used by Google (*e.g.* "Location History"), the context, and representations by Google to the effect

23   that turning "Location History" off would prevent his location information from being stored and

24   that Google would respect his privacy settings, Mr. Patacsil believed that this would prevent

25   Google from storing a record of his location history. Despite Mr. Patacsil's "Location History"

26   settings, Google continued to store his precise location information.

27     10.     Throughout the relevant time period, Mr. Patacsil carried his mobile device

28   virtually everywhere he went throughout the day, including when traveling by vehicle or

otherwise on public thoroughfares and when entering commercial spaces, medical care providers, private offices, and private residences.

11.     In the interest of protecting his privacy and security, Mr. Patacsil does not recite here the precise locations that he took his mobile device with the "Location History" setting off during the relevant time, but does allege that the following could be determined from Mr. Patacsil's location history: his eating habits; his shopping habits; his exercise habits; whether he, or those in his care, receive frequent medical or psychological care and the types of medical or psychological care providers seen; the extent to which he is involved in the activities of his children (if any), and what those activities are; how, where, and to what extent he socializes; where his friends and associates reside; whether and where he has any recurring appointments; whether and where he attends religious services; how often he takes public transit, walks, or drives, and which routes; where he parks his car; whether and where he is employed and his work schedule; where he banks; whether he has attended any political rallies or protests; and whether and when he visited the polls on election day, and which poll.

12.     **Plaintiff Richard Dixon** resides in Long Beach, California, with his minor child L.D.  From at least 2012 until the present, Plaintiff Dixon has owned and used, and continues to own and use, an Android mobile device, with various Google apps and functionalities downloaded onto the mobile device, including Google Maps.  From at least 2016 to the present, Plaintiff Dixon's minor child has used, and continues to use, an Apple iPhone with various Google apps and functionalities downloaded onto the mobile device, including Google Maps.  From approximately 2014 until 2016, Plaintiff Dixon's minor child used an Android mobile device, with various Google apps and functionalities downloaded onto the mobile device, including Google Maps.

13.     In an express effort to protect his location history—and thus his privacy and security—from efforts by Google, and any other third-parties, to record and access his location over time, Mr. Dixon turned the "Location History" setting to "off" on his Google Account. Based upon the terminology used by Google (*e.g.* "Location History"), the context, and representations by Google to the effect that turning "Location History" off would prevent his

location information from being stored and that Google would respect his privacy settings, Mr. Dixon believed that this would prevent Google from storing a record of his location history. Despite Mr. Dixon's "Location History" settings, Google continued to store his precise location information.

14.     In an express effort to protect his location history—and thus his privacy and security—from efforts by Google, and any other third-parties, to record and access his location over time, Mr. Dixon's minor child turned the "Location History" setting to "off" on his Google Account. Based upon the terminology used by Google (*e.g.* "Location History"), the context, and representations by Google to the effect that turning "Location History" off would prevent his location information from being stored and that Google would respect his privacy settings, Mr. Dixon and his minor child believed that this would prevent Google from storing a record of his location history. Despite L.D.'s "Location History" settings, Google continued to store L.D.'s precise location information.

15.     Throughout the relevant time period, both Mr. Dixon and his minor child each carried their respective mobile devices virtually everywhere they went throughout the day, including when traveling by vehicle or otherwise on public thoroughfares and when entering commercial spaces, medical care providers, private offices, and private residences.

16.     In the interest of protecting his privacy and security, and the privacy and security of his child, Mr. Dixon does not recite here the precise locations that he or L.D. took their mobile devices with the "Location History" setting off during the relevant time, but does allege that the following could be determined from Mr. Dixon's location history: his eating habits; his shopping habits; his exercise habits; whether he receives frequent medical or psychological care and the types of medical or psychological care providers he sees; the extent to which he is involved in the activities of his children, and what those activities are; how, where, and to what extent he socializes; where his friends and associates reside; whether and where he has any recurring appointments; whether and where he attends religious services; how often he takes public transit, walks, or drives, and which routes; where he parks his car; whether and where he is employed and

1   his work schedule; where he banks; whether he has attended any political rallies or protests; and

2   whether and when he visited the polls on election day, and which poll.

3       17.     Plaintiff Dixon further alleges that the following information regarding his minor

4   child could be determined from L.D.'s location history: his eating habits; his shopping habits; his

5   exercise habits; whether he receives frequent medical or psychological care and the types of

6   medical or psychological care providers seen; the extent to which he is involved in before or

7   after-school activities, and what those activities are; how, where, and to what extent he socializes;

8   where his friends and associates reside; whether and where he has any recurring appointments;

9   whether and where he attends religious services; how often he takes public transit, walks, or is

10  driven, and which routes; whether he has attended any political rallies or protests; whether he is

11  home schooled or attends school outside of the home, which school, and whether he has good

12  attendance.

13      18.     **Plaintiff Najat Oshana** resides in Modesto, California. From at least 2012 until

14  the present, Plaintiff Oshana has owned and used, and continues to own and use, an Android

15  mobile device, with various Google apps and functionalities downloaded onto the mobile device,

16  including Google Maps.  In an express effort to protect her location history—and thus her privacy

17  and security—from efforts by Google, and any other third-parties, to record and access her

18  location over time, Ms. Oshana turned the "Location History" setting to "off" on her Google

19  Account. Based upon the terminology used by Google (*e.g.* "Location History"), the context, and

20  representations by Google to the effect that turning "Location History" off would prevent her

21  location information from being stored and that Google would respect her privacy settings, Ms.

22  Oshana believed that this would prevent Google from storing a record of her location history.

23  Despite Ms. Oshana's "Location History" settings, Google continued to store her precise location

24  information.

25      19.     Throughout the relevant time period, Ms. Oshana carried her mobile device

26  virtually everywhere she went throughout the day, including when traveling by vehicle or

27  otherwise on public thoroughfares and when entering commercial spaces, medical care providers,

28  private offices, and private residences.

20.     In the interest of protecting her privacy and security, Ms. Oshana does not recite here the precise locations that she took her mobile device with the "Location History" setting off during the relevant time, but does allege that the following could be determined from her location history: her eating habits; her shopping habits; her exercise habits; whether she, or those in her care, receive frequent medical or psychological care and the types of medical or psychological care providers seen; the extent to which she is involved in the activities of her children (if any), and what those activities are; how, where, and to what extent she socializes; where her friends and associates reside; whether and where she has any recurring appointments; whether and where she attends religious services; how often she takes public transit, walks, or drives, and which routes; where she parks her car; whether and where she is employed and her work schedule; where she banks; whether she has attended any political rallies or protests; and whether and when she visited the polls on election day, and which poll.

21.     **Plaintiff Mark Carson** resides in St. Petersburg, Florida.  From 2011 until the present, Plaintiff Carson has owned and used, and continues to own and use, an Apple mobile device with various Google apps and functionalities downloaded onto the mobile device, including Google Maps.  In an express effort to protect his location history—and thus his privacy and security—from efforts by Google, and any other third-parties, to record and access his location over time, Mr. Carson turned the "Location History" setting to "off" on his Google Account. Based upon the terminology used by Google (*e.g.* "Location History"), the context, and representations by Google to the effect that turning "Location History" off would prevent his location information from being stored and that Google would respect his privacy settings, Mr. Carson believed that this would prevent Google from storing a record of his location history. Despite Mr. Carson's "Location History" settings, Google continued to store his precise location information.

22.     Throughout the relevant time period, Mr. Carson carried his mobile device virtually everywhere he went throughout the day, including when traveling by vehicle or otherwise on public thoroughfares and when entering commercial spaces, medical care providers, private offices, and private residences.

23.     In the interest of protecting his privacy and security, Mr. Carson does not recite here the precise locations that he took his mobile device with the "Location History" setting off during the relevant time, but does allege that the following could be determined from Mr. Carson's location history: his eating habits; his shopping habits; his exercise habits; whether he, or those in his care, receive frequent medical or psychological care and the types of medical or psychological care providers seen; the extent to which he is involved in the activities of his children (if any), and what those activities are; how, where, and to what extent he socializes; where his friends and associates reside; whether and where he has any recurring appointments; whether and where he attends religious services; how often he takes public transit, walks, or drives, and which routes; where he parks his car; whether and where he is employed and his work schedule; where he banks; whether he has attended any political rallies or protests; and whether and when he visited the polls on election day, and which poll.

24.     **Plaintiff Nurudaaym Mahon** resides in Douglasville, Georgia. From at least 2013 until the present, Plaintiff Mahon has owned and used, and continues to own and use, an Android mobile device. In an express effort to protect his location history—and thus his privacy and security—from efforts by Google, and any other third-parties, to record and access his location over time, Mr. Mahon turned the "Location History" setting to "off" on his Google Account. Based upon the terminology used by Google (*e.g.* "Location History"), the context, and representations by Google to the effect that turning "Location History" off would prevent his location information from being stored and that Google would respect his privacy settings, Mr. Mahon believed that this would prevent Google from storing a record of his location history. Despite Mr. Mahon's "Location History" settings, Google continued to store his precise location information.

25.     Throughout the relevant time period, Mr. Mahon carried his mobile device virtually everywhere he went throughout the day, including when traveling by vehicle or otherwise on public thoroughfares and when entering commercial spaces, medical care providers, private offices, and private residences.

26.     In the interest of protecting his privacy and security, Mr. Mahon does not recite here the precise locations that he took his mobile device with the "Location History" setting off during the relevant time, but does allege that the following could be determined from Mr. Mahon's location history: his eating habits; his shopping habits; his exercise habits; whether he, or those in his care, receive frequent medical or psychological care and the types of medical or psychological care providers seen; the extent to which he is involved in the activities of his children (if any), and what those activities are; how, where, and to what extent he socializes; where his friends and associates reside; whether and where he has any recurring appointments; whether and where he attends religious services; how often he takes public transit, walks, or drives, and which routes; where he parks his car; whether and where he is employed and his work schedule; where he banks; whether he has attended any political rallies or protests; and whether and when he visited the polls on election day, and which poll.

27.     **Defendant Google** ("Google," "Defendant," or "the Company") is a United States corporation headquartered in Mountain View, California, and incorporated under the laws of Delaware. Google is a sophisticated mobile operating system and mobile applications ("apps") developer in the business of commercializing personal data extracted from the use of tools and services connected to the internet.  As such, Google is aware of, and benefits from the conduct described herein.  Indeed, this forms a core component, among others, of its business model.

## III.    JURISDICTION AND VENUE

28.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1332 and 1367 because this is a class action in which the matter or controversy exceeds the sum of $5,000,000, exclusive of interest and costs, and in which some members of the proposed Class are citizens of a state different from defendant.

29.     This Court has personal jurisdiction over Defendant because Defendant owns and operates a business that is headquartered in the Northern District of California and conducts substantial business throughout California.

30.     Venue properly lies in this district pursuant to 28 U.S.C. § 1391(b)(1), as Google is headquartered in this district.

1  **IV.  CHOICE OF LAW**

2  31.  California law governs the substantive legal issues in this case.  Google's Terms of

3  Service provide in pertinent part that California law will apply to any disputes arising out of or

4  relating to Google's terms or services.[3]

5  **V.  INTRADISTRICT ASSIGNMENT**

6  32.  Pursuant to Civil L.R. 3-2(c), assignment to this division is proper because a

7  substantial part of the conduct which gives rise to Plaintiffs' claims occurred in this district.

8  Defendants market their products throughout the United States, including in Santa Clara County.

9  Additionally, Google is headquartered in Mountain View, California, which is located within

10  Santa Clara County.

11  33.  Assignment to this division is also proper pursuant to Google's Terms of Service,

12  which state in pertinent part that all claims arising out of or relating to Google's terms or services

13  "will be litigated exclusively in the federal or state courts of Santa Clara County, California,

14  USA, and [users] and Google consent to personal jurisdiction in those courts."[4]

15  **VI.  STATEMENT OF FACTS**

16  34.  According to a 2018 report by the Pew Research Center, the vast majority of

17  Americans–95%–now own a cellphone; the share of Americans that own smartphones is 77%.[5]

18  Globally, an estimated 5 billion people are connected through mobile devices, with approximately

19  one-half of those using smartphones.[6]  The overwhelming majority of mobile devices run on one

20  of two operating systems: Android or iOS, which are developed by Google and Apple,

21  respectively.[7]  On each of these operating systems, users expect to customize their devices to

22  their preferences by "managing" various functionalities of their devices.  They can, for example,

23  change their time zone, preferred language, or screen brightness.  Included among these

24

25  [3] Google, *Google Terms of Service* (last modified October 25, 2017) (Ex. 3).

26  [4] *Google Terms of Service*, *supra* (Ex. 3).
    [5] Pew Research Center, *Mobile Fact Sheet* (February 5, 2018 ) (Ex. 4).

27  [6] David George et al., *Global Mobile Trends 2017,* GSMA Intelligence (September 2017) (Ex. 5).
    [7]  James Vincent, *99.6 percent of new smartphones run Android or iOS*, The Verge (February 16,

28  2017) (Ex. 6).

functionalities is the option to turn on or off the retention of "Location History"—that is, the individual's precise location information.[8]  In its Terms of Service, Google represents that it "will respect the choices you make to limit sharing or visibility settings in your Google Account."  Up until the time its true conduct became public, Google also falsely represented that, for its operating system, turning "Location History" off would prevent the company from storing location data reflecting where an individual using a device with its Android operating system had been.

35.     In addition to developing the Android operating system, Google also develops apps that can be downloaded on Android and iOS devices.  Google purports to allow users to make customized settings and privacy decisions at the app level.  Google tells users that they can choose to share location information with some apps, for specified purposes, but choose *not* to share that information with other apps.  Google also claims that a user can share location information with a certain app at some times (*e.g.*, when the app is in active use), but not at others.  Google falsely represented that, for its apps, turning "Location History" off would prevent the company from storing location data reflecting in detail where an individual with Google apps downloaded had been.

36.     Google specifically—though falsely—assured users of both its apps and its mobile devices that it would not store their location information if users denied or revoked its permission to do so through their privacy settings.  Google's support page on the subject stated: "You can turn off Location History at any time. **With Location History off, the places you go are no longer stored**."[9]

37.     Google purportedly instructed Android mobile device owners how to turn off Location History on their devices, by going to the device's "Settings" tab, as follows:[10]

---

[8] As used herein, "location information" refers to any and all data obtained through an individual's mobile device, which allows for the identification of that individual's location either in the present or, when stored, through historic record.

[9] Archived version of Google Account Help, *Manage or delete your Location History*, (August 16, 2018) (Ex. 2).

[10] *Id.*

1. On your Android phone or tablet, open your device's Settings app ⚙ ❯ **Google** ❯ **Google Account**.

2. At the top, tap **Data & personalization**.

3. Under "Activity controls," tap **Location History**.

4. Turn **Location History** on or off for your account or devices:

   • For your whole account and all devices associated with it, turn **Use Location History** on or off.

   • For a certain device only, turn that device's history on or off.

38.     For users of Apple devices such as iPhones and iPads, Google purported to explain that a user must log into her online account with Google to turn off "Location History" (as it does not control the Apple device's operating system), and that turning "Location History" off would "stop[] saving new location information":[11]

### Turn Location History on or off ⌃

Location History stores your location data from all devices that are signed in to your Google Account.

**Note:** When you pause Location History, it doesn't delete previous activity, it only stops saving new location information.

## Using your browser

1. Go to the Location history ↗ section of your Google Account.

2. Turn **Location History** on or off.

   • **Off:** Confirm by tapping **Pause**.

   • **On:** Confirm by tapping **Turn on**.

## Using the Google app

1. Open the Google app G.

2. At the top right, tap your account photo. You might need to sign in.

3. Tap **My Account** ❯ **Personal info and privacy** ❯ **Activity controls** ❯ Google Location History.

4. Turn the setting on or off. If you turn it off, confirm by tapping **Stop storing location**.

---

[11] Archived version of Google Account Help, *Location history for iPhone & iPad* (July 30, 2018) (Ex. 7).

39.     Google affirmatively represented to both Android and Apple device users that turning off "Location History" would result in Google ceasing to store an individual's location information.

**A.     Google Stores Location Information Regardless of Privacy Settings.**

40.     Consistent with the instructions for users to manage Google's permissions respecting their location information described above, Google published a support page to instruct users on how to manage and delete the user's "Location History" which stated, "[w]ith Location History off, the places you go are no longer stored.  When you turn off Location History for your Google Account, it's off for all devices associated with that Google Account."[12]  Google's representations were false.  As the AP Report revealed, turning off "Location History" only stopped Google from creating a location timeline that the *user* could view.  Google, however, tracked and continues to track the device users and store a meticulous record of their precise locations.

41.     Contrary to Google's representations, even when "Location History" is turned off, whether at the Google Account level or the individual device level, a user's location is stored and, on information and belief, continues to be stored, every time she uses Google-controlled features on her mobile device, including, *inter alia*, the Google Maps app, weather apps, and searches made with the device's mobile browser.  As reported by the AP:

> For example, Google stores a snapshot of where you are when you merely open its Maps app. Automatic daily weather updates on Android phones pinpoint roughly where you are. And some searches that have nothing to do with location, like "chocolate chip cookies," or "kids science kits," pinpoint your precise latitude and longitude — accurate to the square foot — and save it to your Google account.[13]

42.     Google's conduct is contrary to users' reasonable expectations of privacy.  As Princeton computer scientist and former chief technologist for the Federal Communications

---

[12] Archived version of Google Account Help, *Manage or delete your Location History*, (August 16, 2018) (Ex. 2).

[13] AP Report (Ex. 1).

Commission's enforcement bureau, Jonathan Mayer, stated: "If you're going to allow users to turn off something called 'Location History,' then all the places where you maintain location history should be turned off. That seems like a pretty straightforward position to have."[14]

**B.     Google's Conduct Poses a Serious Threat to Personal Privacy, Personal Security, and Personal Dignity.**

43.     Google's "Location History" is profoundly granular and revealing.  Each time Google captures an individual's location information, it stores several data points, including but not limited to: timestamp (the exact moment in time that the data was captured), latitude, longitude, velocity, altitude, and activity.  The "activity" data point even appears to reflect *how* an individual is moving.  Activity values include "IN_VEHICLE", "IN_ROAD_VEHICLE", "IN_FOUR_WHEELER_VEHICLE" (Figure 1); [15] "EXITING_VEHICLE" (Figure 2); "WALKING", "ON_FOOT" (Figure 3); "STILL" (Figure 4); and "TILTING" (Figure 5).

*Figure 1:*

```
}, {
   "timestampMs" : "1542042899598",
   "latitudeE7" : 347366509,
   "longitudeE7" : -922687181,
   "accuracy" : 44,
   "activity" : [ {
   "timestampMs" : "1542042874895",
   "activity" : [ {
     "type" : "IN_VEHICLE",
     "confidence" : 100
   }, {
     "type" : "IN_ROAD_VEHICLE",
     "confidence" : 100
   }, {
     "type" : "IN_FOUR_WHEELER_VEHICLE",
     "confidence" : 99
   } ]
```

---

[14] *Id.*

[15] The following figures show location information collected by Google, captured by forensic testing conducted as part of counsel's investigation of this matter, and do not show Plaintiffs' location information or other data.

*Figure 2:*

```
}, {
   "timestampMs" : "1537297638882",
   "activity" : [ {
      "type" : "EXITING_VEHICLE",
      "confidence" : 100
   } ]
```

*Figure 3:*

```
}, {
   "timestampMs" : "1537296563477",
   "activity" : [ {
      "type" : "ON_FOOT",
      "confidence" : 100
   }, {
      "type" : "WALKING",
      "confidence" : 100
   } ]
```

*Figure 4:*

```
}, {
   "timestampMs" : "1541747209048",
   "latitudeE7" : 347430195,
   "longitudeE7" : -922773730,
   "accuracy" : 16,
   "velocity" : 0,
   "altitude" : 91,
   "verticalAccuracy" : 32,
   "activity" : [ {
      "timestampMs" : "1541747208913",
      "activity" : [ {
         "type" : "STILL",
         "confidence" : 100
      } ]
```

*Figure 5:*

```
}, {
   "timestampMs" : "1541723208156",
   "latitudeE7" : 347428915,
   "longitudeE7" : -922776871,
   "accuracy" : 55,
   "velocity" : 0,
   "heading" : 231,
   "altitude" : 273,
   "verticalAccuracy" : 128,
   "activity" : [ {
      "timestampMs" : "1541719739275",
      "activity" : [ {
         "type" : "TILTING",
         "confidence" : 100
      } ]
   } ]
```

44.     Additional activity values include "RUNNING", "IN_RAIL_VEHICLE", "IN_TWO_WHEELER_VEHICLE", "ON_BICYCLE", and "UNKNOWN."

45.     Google also measures, on a scale from 1 to 100, how sure it is that the user is actually engaging in that type of movement.[16]

46.     Thus, for a given individual, Google not only stores a record of where, specifically, she is, at what time, and for what duration; Google also discerns how fast she is traveling, whether it is on foot or in a vehicle (and which specific vehicle), and whether she is entering or exiting a given vehicle.

47.     The location information stored by Google in violation of its representations and Class members' permissions is personally identifying, in and of itself.  When an individual's precise location is stored over a period of time, access to that stored location information provides an intimate, and individually-identifying, profile of that individual's life.  Moreover, Google's stored location information is linked with *other* personally-identifying information, including an individual's name, email address, and potentially many other personally-identifying data points.  Specifically, all location information stored by Google is stored in an individual's Google Account where it is linked to the other data in that account, which includes the individual's name and email address.  These are required data points for establishing a Google Account.  Further, a Google Account may include additional items of personally identifying information such as the user's phone number, address, and payment information.

48.     Data breaches are increasingly common among companies that store user data.  As a major aggregator of valuable personally identifying and other information, Google is an obvious target for hackers.  Any information that Google stores may eventually be stolen, if it has not already been.  As recently as October 2018, for example, Google announced that it had discovered a vulnerability in its Google+ program that exposed personal account information to third-parties, contrary to its user agreements and representations.  To protect its public image,

---

[16]  Douglas C. Schmidt, *Google Data Collection*, Digital Content Next (August 15, 2018), at pp. 12-13 (Ex. 8).

Google reportedly failed to disclose that information to the public for months, and came clean only *after* the security risk was discovered by the media.[17]

49.     In addition, despite security measures in place, individual Google accounts are sometimes taken over by criminals and others who would use the information stored there for nefarious purposes, such as stalking, harassment, identity theft, and phishing the associates of the targeted Google user.  In many respects, the *only* sure way to prevent sensitive location histories from falling into unauthorized hands is to keep no records in the first instance.  Through its duplicitous conduct, misrepresentations, and omissions here, Google denied Plaintiffs and Class members that option.

C.     **Preventing Google's Storage of Location Information—If Possible—is Far More Complex than Google Represents.**

50.     Contrary to the plain language and simple process set forth in the Google support pages referenced above, reports have suggested that in order to *actually* and effectively prevent Google from storing location information, users must navigate to and understand an additional, deeply-buried and non-obvious setting titled "Web & App Activity."

51.     Following publication of the AP Report, it was reported that, to actually prevent tracking and storage of location information by Google, a user must turn off the "Web & App Activity" setting on her Google account.  To do so, reports indicated that a user must sign in to her Google account on a browser (if an iPhone user) or through the Android settings menu (on an Android device).  In the browser, she can access her account settings by finding "Google Account" in the dropdown menu in the upper right-hand corner, then select "Personal Info & Privacy," choose "Manage your Google Activity," then click "Go to Activity Controls."  Once there, a setting called "Web & App Activity" is revealed, which can then be toggled off.  A series of screenshots demonstrating these steps is attached hereto as Exhibit 10.

---

[17] Douglas MacMillan and Robert McMillan, *Google Exposed User Data, Feared Repercussions of Disclosing to Public*, The Wall Street Journal (October 8, 2018) (Ex. 9).

52.     Thus, unless "Web & App Activity" is disabled *in addition to* "Location History,"
Google continues to store individuals' location information.  This is made evident in the AP
Report, which included a visual map of the movements of its investigator, who carried an
Android phone with Location History turned off (but with "Web & App Activity" enabled). The
map shows the location information that was tracked and stored by Google, and includes the
investigator's train commute on two trips to New York and visits to The High Line park, Chelsea
Market, Hell's Kitchen, Central Park and Harlem. To protect his privacy, the AP did not plot the
most common marker stored by Google—his home address.





53.     Although multiple media outlets have suggested that turning off "Web & App
Activity" (on top of disabling "Location History") is effective to prevent the storage of location

information, and some attribute the information to Google,[18] express confirmation of the overall effectiveness of this process seems to be absent from Google-branded webpages.

54.     As of the date of this filing, the Google Support page on the topic does not definitively confirm that turning off "Web & App Activity" would actually prevent Google from storing specific, time-stamped, precise location information about a user.  The page does not state that turning off "Web & App Activity" terminates all storage of users' location data; rather, the page warns that after Location History has been turned off, "[i]f you have other settings *like* Web & App Activity turned *on*" location data *may still be saved*.[19]

55.     Similarly, the AP reported in August 2018 that a Google spokesperson all but acknowledged that Google discerns and stores its users' location histories through other means, the details of which Google has not publicized.  The spokesperson reportedly stated, "There are a number of different ways that Google may use location to improve people's experience, *including*: Location History, Web and App Activity, *and* through device-level Location Services."[20] Accordingly, on information and belief, users may need to adjust even more settings to prevent Google from storing location information, or indeed, it may be that no amount of denying "permissions" to Google would protect one's location information from being stored.  In all events, Google has failed to disclose the true state of affairs to Plaintiffs and Class members, and instead affirmatively misrepresented that they could protect their privacy by opting out of having their location information stored.

56.     To the extent that the reports regarding "Web & App Activity" settings are correct, the process to prevent one's location data from being stored is not merely counter-intuitive, it is

---

[18] *See, e.g.*, Emily Dreyfuss, *How to Stop Google From Tracking Your Location*, Wired (August 13, 2018) ("To actually turn off location tracking, Google says you have to navigate to a setting buried deep in your Google Account called Web & App Activity, which is set by default to share your information, including not just location but IP address and more.") (Ex. 11); Associated Press, *Google Found to Track the Location of Users Who Have Opted Out*, NBC News (August 13, 2018) ("To stop Google from saving these location markers, the company says, users can turn off another setting, one that does not specifically reference location information. Called 'Web and App Activity' and enabled by default, that setting stores a variety of information from Google apps and websites to your Google account.") (Ex. 12).

[19] Google Account Help, *Manage Your Location History* (November 16, 2018) (Ex. 13).

[20] AP Report (Ex. 1) (emphasis added).

deceptive:  Google obfuscates that the "Web & App Activity" setting is related to location, and instead represents that it is the "Location History" setting that controls geolocation tracking. Indeed, in Google's description of these "Controls," the "Web & App Activity" setting resides directly *above*—but separate and apart from—the "Location History" option, indicating that settings related to location and those related to web and app activity are distinct.[21]  Further, throughout the relevant time period, ceasing only *this month*, Google's vague description of what "Web & App Activity" does—that it "[s]aves your activity on Google sites and apps to give you faster searches, better recommendations, and more personalized experiences in Maps, Search, and other Google services"[22]—would not put a user on notice that it relates to GPS tracking accurate to less than a meter.  For a user to obtain any more detail about the "Web & App Activity" setting, she had to click through to "[l]earn more," then scroll to what's saved as "Web & App Activity," and open a section that is by default collapsed, entitled,  "[i]nfo about your searches & more" before Google even *mentioned* that the setting is related to location tracking.[23]  A user therefore had insufficient notice of the storage and tracking of location information, particularly in light of separate representations and reporting that the "Location History" setting is what allows individuals to control Google's storage and tracking of their location information.

57.     Google intentionally hides the nature of its location tracking and obfuscates the opt-out process (if the opt-out process is indeed effective).  Before its conduct was uncovered in the AP Report, Google provided at least *three* support pages on location titled: "Manage or delete

---

[21] Archived version of Google Account Help, *Activity Controls* (November 3, 2018) (Ex. 14).

[22] *Id.* (Ex. 14). Prior versions of this explanation were even less informative.  In October of 2016 and May of 2018 (and, on information and belief, throughout the interim), Google described "Web & App Activity" as a setting that would "Save your search activity on apps and in browsers to make searches faster and get customized experiences in Search, Maps, Now, and other Google products." (Ex. 15).  Between November 3, 2018 and the filing of this Amended Complaint, Google revised its description of Web & App Activity to acknowledge that it "[s]aves . . . associated info like location." *See Activity Controls,* https://myaccount.google.com/intro/activitycontrols (last visited November 19, 2018).

[23] These actions would take the user to Google Search Help, *See & control your search activity,* available at https://support.google.com/websearch/answer/54068?p=web_app_activity&hl=en&visit_id=6367 80265142799029-1372957410&rd=1 (last visited November 16, 2018); (*see also id.*, Ex. 16).

your Location History,"[24] "Turn location on or off for your Android device,"[25] and "Manage location settings for Android apps."[26]  Strikingly, at the time this action was filed, none of these made any mention of "Web & App Activity"—to date, the only way identified to *potentially* prevent Google from tracking user location.

**D.    Google's Ineffective Response to the AP Report Confirms and Continues Its Deceptive Behavior.**

58.    In its initial response to the AP Report on August 13, 2018, Google did not deny storing users' location information in contravention of their settings, but rather defended itself by falsely stating: "We provide clear descriptions of these tools."[27]

59.    Google's assertion that "clear descriptions" exist is incorrect.  *First*, Google disingenuously and publicly represented that preventing the storage of location data is as easy as turning "off" a settings switch, all the while aware that such action would be ineffective.  Google silently endorsed well-known technology periodicals that, as set forth in paragraph 88, propagated Google's falsehood that toggling off "Location History" is an effective tool to prevent tracking. *Second*, while perpetuating the myth of an effective "Location History" switch, Google failed to make reasonably clear to users that they must take a wholly separate, complicated, and poorly-labeled route in order to turn off location tracking (if this route is in fact effective), *i.e.*, locating, identifying, and understanding a deeply-buried and non-obvious setting titled "Web & App Activity."[28]

60.    Three days after the AP Report was published, on August 16, 2018, Google reversed course and revised the description on its help page for the "Location History" setting—which previously stated simply "With Location History off, the places you go are no longer stored"—to read:

---

[24] Archived version of Google Account Help, *Manage or delete your Location History*, (August 16, 2018) (Ex. 2); Revised archived version of same (August 18, 2018) (Ex. 17).

[25] Archived version of Google Account Help, *Turn location on or off for your Android device* (August 16, 2018) (Ex. 18).

[26] Android Help, *Manage location settings for Android apps* (July 29, 2018) (Ex. 19).

[27] AP Report.

[28] This function is set by default to share the user's information, including location.

This setting does not affect other location services on your device, like Google Location Services and Find My Device. Some location data may be saved as part of your activity on other services, like Search and Maps. When you turn off Location History for your Google Account, it's off for all devices associated with that Google Account.[29]

61.     With this revision, Google disclosed *for the first time* that Google "may" track "some" users even after they have turned "Location History" off.

62.     Google has since amended its public-facing statements further.  In addition revealing that "[s]ome location data may continue to be saved in other settings," Google now provides more previously-concealed "examples" of how Google "may" collect and store information regardless of a user's Location History permissions, including through the user's "camera app."[30]

63.     However, Google's new language remains vague, ambiguous, and deceptive—particularly through the use of unclear language such as "some" and "may."  Google fails to clearly and definitively disclose what location data is saved, and when.

64.     Further, Google's latest revisions fail to specify what, if any, location data tracking is ceased when a user turns "Location History" off.  Moreover, Google *still* fails to clearly disclose the "Web & App Activity" setting, and how (and whether) it, or any other number of permissions settings, can be used to effectively prevent Google from recording location information.  As discussed at Section VI.F, *infra*, as of the filing of this Amended Complaint, when an individual queries Google's Help Center on how to stop Google from tracking location information, Location History is still presented as an effective tool.

**E.     Google's Surreptitious Storage of Location Data Defies Reasonable Expectations of Privacy and Egregiously Violates Established Social Norms.**

65.     Each of the following acts defy social norms and invade reasonable privacy expectations: Tracking and storing detailed location information contrary to users' consent, affirmatively misleading users regarding their ability to opt out, and failing to disclose that a

---

[29] Compare Ex. 2 (August 16, 2018 archived version captured at 04:09 a.m.) with Ex. 17 (August 18, 2018 archived version).

[30] *Manage Your Location History*, *supra* (Ex. 13).

1    history of users' locations are stored in perpetuity.  Normally, mobile device and Internet users

2    such as Plaintiffs are able to control the flow of sensitive information about themselves through

3    "settings" and "permissions" that they grant, or withhold, from third-parties, including Google.

4    Plaintiffs' and Class members' expectations that those settings and permissions would be heeded

5    and effective, and that they could travel without creating a record of their movements, are

6    eminently reasonable.

7         66.    Google falsely represented to Plaintiffs and Class members that it would not store

8    their location information, thus creating the false impression that Class members could use

9    Google's services in a privacy-protective manner.  Insofar as Google might need location

10   information to provide class members with Google services such as Google Maps, with Location

11   History disabled, any authorization to access location information for those services would only

12   be granted for a specified, limited, and *transient* purpose.  By disabling Location History,

13   Plaintiffs directed Google not to store such information for any subsequent access, analysis, or

14   use.  Storage creates additional risks of privacy harms, including because if location information

15   is not stored, it cannot subsequently be used. Moreover, the storage of location information

16   creates an individually-identifiable, comprehensive record of that person, reflecting a wealth of

17   detail about her associations ranging from familial to political to professional to religious and

18   more.

19        67.    Plaintiffs and Class members took specific steps to protect their privacy and

20   personal security (as well as the privacy and security of their minor children), and made

21   reasonable efforts to stop Google from storing information regarding their whereabouts and day-

22   to-day activities.  Based on Google's representations and omissions, context, and industry norms,

23   they expected Google to heed and follow their instructions and, as a result, expected that their

24   whereabouts would be *private*, not stored on Google's servers along with other personally-

25   identifying information and data.  Those reasonable expectations were consistent with sentiments

26   that are widely shared in American society and elsewhere, and grounded in long-standing social

27   norms and jurisprudence protecting privacy.

28

1          **1.      Plaintiffs' Expectations of Privacy are Enshrined in Law.**

2          68.      Invasion of privacy has been recognized as a common law tort for more than a

3   century.  In *Griswold v. Connecticut*, 381 U.S. 479 (1965), the Supreme Court confirmed the

4   primacy of privacy rights, explaining that the Constitution operates in the shadow of a "right to

5   privacy older than the Bill of Rights."  Most recently, the Supreme Court specifically recognized

6   the reasonable expectation of privacy a person has in the location information generated by her

7   cell phone, in *Carpenter v. United States*, 138 S. Ct. 2206 (2018).  For its part, California

8   amended its constitution in 1972 to specifically enumerate a right to privacy in its very first

9   section.  *See* Cal. Const. Art. I, § 1.

10         **2.      Plaintiffs' Expectations Reflect Widely-Held Social Norms.**

11         69.      As observed by the Supreme Court in *Carpenter*, a smartphone, tablet, or other

12  mobile device is a constant in many people's lives. Indeed, an Internet-connected digital device is

13  a pre-requisite for modern life, necessary for the full continuum of daily activities, from work to

14  commerce to communication (both professional and personal) to obtaining basic government

15  services.  Because of the indispensable nature of connected devices to the entire spectrum of daily

16  life, many Americans carry their mobile devices everywhere they go.  In a 2015 study, 94% of

17  smartphone owners said they carry their phone with them frequently, and 82% say they never or

18  rarely turn their phones off.[31]  Likewise, Plaintiffs here carry their devices with them on a regular

19  basis throughout the day.

20         70.      In light of the ubiquity of Internet-enabled mobile devices, and in light of those

21  same devices' capacity for near perfect surveillance, society unequivocally has embraced the need

22  to secure and enforce the right of all people to determine for themselves when, and to what extent,

23  data produced by these devices regarding peoples' lives and activities will be shared, cataloged,

24  and analyzed.  Google itself has recognized the importance of user control over privacy settings:

25  in September of this year, its Chief Privacy Officer testified to United States Senate Committee

26

27  _____

28  [31] Lee Rainie and Kathryn Zickuhr, *Americans' Views on Mobile Etiquette*, Pew Research Center (August 26, 2015) (Ex. 20).

on Commerce, Science, and Transportation that "users trust [Google] to keep their personal information confidential *and under their control*."[32]

71.     According to a poll by the Pew Research Center, 93% of adults believe that being in control of who can get information about them is important, and 90% believe that controlling what information is collected about them is important.[33]  Additionally, Americans say they do not approve of observation without consent: 88% say it is important that they not have someone watch or listen to them without their permission.[34]

72.     According to a 2013 Pew Research study, "86% of Internet users have tried to be anonymous online and taken at least one step to try to mask their behavior or avoid being tracked."[35]  For example, 64% percent of adults claim to clear their cookies and browser histories in an attempt to be less visible online.[36]  Such behaviors exemplify people's expectation that their personal information—including their location—will not be tracked by others without their consent or permission, and that settings claiming to allow them to protect such information will be effective.

73.     A 2010 study comparing the opinions of young adults between the ages of 18 to 24 with other age categories (25-34, 35-44, 45-54, 55-64, and 65+) found that a large percentage of young adults were in harmony with older Americans regarding concerns about online privacy, norms, and policy suggestions.[37]  For example, 88% of young adults surveyed responded that "there should be a law that requires websites and advertising companies to delete all stored

---

[32] Written Testimony of Keith Enright Chief Privacy Officer, United States Senate Committee on Commerce, Science, and Transportation, *Examining Safeguards for Consumer Data Privacy*, (September 26, 2018) (emphasis added) (Ex. 21).

[33] Mary Madden and Lee Rainie, *Americans' Attitudes About Privacy, Security and Surveillance*, Pew Research Center (May 20, 2015) (Ex. 22).

[34] *Id.*

[35] Lee Rainie, et al., *Anonymity, Privacy, and Security Online*, Pew Research Center (September 5, 2013) (Ex. 23).

[36] *Id.*

[37] Chris Hoofnagle, et al., *How Different Are Young Adults from Older Adults When It Comes to Information Privacy Attitudes & Policies*, University of Pennsylvania Scholarly Commons (April 14, 2010) (Ex. 24).

information about an individual"; for individuals in the 45-54 age range, 94% approved of such a law.[38]

74.     The same study noted that "[o]ne way to judge a person's concern about privacy laws is to ask about the penalties that companies or individuals should pay for breaching them."[39] A majority of the 18-24 year olds polled selected the highest dollar amount of punishment ("more than $2,500") in response to how a company should be fined if it purchases or uses someone's personal information illegally; across all age groups, 69% of individuals opted for the highest fine.  Beyond a fine, approximately half of the sample (across all age groups) chose the harshest penalties for companies using a person's information illegally: putting them out of business and imposing jail time.[40]

### 3. Parents Have a Reasonable and Universal Expectation of Privacy for their Children.

75.     In surreptitiously and deceitfully tracking and recording individuals' location information, Google tracked minor children, a practice which is especially and universally reviled.

76.     Parents' interest in the care, custody, and control of their children is perhaps the oldest of the fundamental liberty interests recognized by society.  There is a strong tradition of parental concern for the nurture and upbringing of children in light of children's vulnerable predispositions.  Our society recognizes that parents should maintain control over who interacts with their children and how, in order to ensure the safe and fair treatment of their children.

77.      By way of example, American society has expressed heightened concern for the exploitation of children in numerous ways:

a.     At common law, children under the age of eighteen do not have full capacity to enter into binding contracts with others.  The law shields minors from their lack of judgment, cognitive development, and experience.

---

[38] *Id.*
[39] *Id.*
[40] *Id.*

1    b. Under state law, children are frequently protected via parental consent

2 requirements.  Cal. Civ. Code § 3344 requires "the prior consent of [a] parent or legal guardian"

3 in order for a person to use the name or likeness of a minor under the age of eighteen for

4 advertising purposes.  The California Education Code does not allow access to personal data

5 collected from students without parental consent.  Cal. Educ. Code § 49076(a).  Various bills

6 pending before the California State legislature seek to protect parental autonomy over children

7 engaged in online activities.

8    c. State laws also outright ban certain forms of targeted advertising to

9 children.  The California Student Online Personal Information Protection Act ("SOPIPA")

10 requires that operators of mobile applications marketed for use in K-12 schools not engage in

11 "targeted advertising," "amass a profile" of children, or sell children's information, based upon

12 any information, including "persistent unique identifiers" (including geolocation), that the

13 operator has acquired through use of its apps or services.

14    d. At the federal level, the Children's Online Privacy Protection Act

15 ("COPPA") protects, *inter alia*, children's Personal Data from being collected and used for

16 targeted advertising purposes without parental consent, and reflects a clear nationwide norm

17 about parents' expectations to be involved in how companies profile and track their children

18 through use of technology.

19   78. Legislative commentary about the need for federal law to provide protections for

20 children provides another expression of society's expectation that companies should not track

21 children's activities without obtaining parental consent.  For example, when discussing the need

22 for federal legislation to protect children's privacy—which eventually led to Congress passing

23 COPPA—Senator Richard Bryan (the primary author of the COPPA bill) stated:  "Parents do not

24 always have the knowledge, the ability, or the opportunity to monitor their children's online

25 activities, and that is why Web site operators should get parental consent prior to soliciting

26 personal information.  The legislation that Senator McCain and I have introduced will *give*

27

28

*parents the reassurance that when our children are on the Internet they will not be asked to give out personal information to commercial Web site operators without parental consent.*"[41]

79.     The advertising industry's own privacy standards, and the self-regulatory agencies which serve it, also support enhanced protections for children online, including obtaining parental consent.  For example, "[t]he majority of advertisers agree with the statement that parents should give their permission for the data collection of their children (89.5%) and teenagers (78.9%)."[42]

80.     In the same vein, the Children's Advertising Review Unit, an arm of the advertising industry's self-regulation branch, recommends that companies take the following steps, *inter alia*, to meet consumers' reasonable expectations of privacy and avoid violating the law:

a.     Advertisers have special responsibilities when collecting data from children online.  They should take into account the limited knowledge, experience, sophistication and maturity of the audience, and must clearly disclose to website or online service users their information collection and tracking practices, information uses, and the means for correcting or removing the information. These disclosures should be prominent and readily accessible before information is collected.

b.     They should disclose passive means of collecting information from children (*e.g.*, navigational tracking tools, browser files, persistent identifiers, etc.) and what information is being collected.

c.     They must obtain "verifiable parental consent" before they collect, use or disclose personal information to third-parties, except those who provide support for the internal operation of the website or online service and who do not use or disclose such information for any other purpose.

---

[41] *S. 2326: Children's Online Privacy Protection Act of 1998*, Hearing before Senate Subcommittee on Communications, Statement of Sen. Bryan, S. Hrg. 105-1069, at 4 (Sept. 23, 1998) (Ex. 25) (emphasis added).

[42] Kristien Daems, et al., *Advertisers' perceptions regarding the ethical appropriateness of new advertising formats aimed at minors*, J. Marketing Comms. 8 (2017) (Ex. 26).

d.      To respect the privacy of parents, they should not maintain in retrievable form information collected and used for the sole purpose of obtaining verifiable parental consent or providing notice to parents, if consent is not obtained after a reasonable time. [43]

81.     By surreptitiously tracking and storing the location information of minor children, and providing misleading and outright deceptive disclosures regarding its practices, Google has breached parents' and their children's reasonable expectation of privacy, in contravention of privacy norms that are reflected in consumer surveys, centuries of common law, state and federal statutes, legislative commentaries, industry standards and guidelines, and scholarly literature.

### 4.      The Federal Trade Commission Has Identified Surreptitious Tracking and Storage of Location Information as a Deceptive Trade Practice.

82.     The Federal Trade Commission ("FTC" or Agency) has determined that tracking individuals' geolocations without permission (and in contravention of their instructions) is a deceptive trade practice.  Indeed, the FTC expressly weighed in on the legality of the very type of behavior complained of herein, and found it to be a deceptive trade practice, in violation of Section 5 of the Federal Trade Commission Act.

83.     In June 2016, the FTC announced that it had entered into a settlement agreement with a mobile advertising company, InMobi PTE, after the Agency charged InMobi with deceptively tracking the locations of hundreds of millions of people without their knowledge or consent in order to serve advertisements tailored to individual people based on where they lived or places they visited.

84.     In that highly analogous case, the FTC alleged that InMobi represented to its users that: (i) its advertising software would only track users' locations when they opted in to such tracking, and (ii) it would conduct such tracking in a manner consistent with users' device privacy settings.[44]  According to the FTC complaint,[45] however, InMobi was actually tracking consumers'

---

[43] Children's Advertising Review Unit, *Self-Regulatory Program for Children's Advertising* (2014) (Ex. 27).

[44] *Mobile Advertising Network InMobi Settles FTC Charges It Tracked Hundreds of Millions of Consumers' Locations Without Permission*, Federal Trade Commission (June 22, 2016) (Ex. 28).

[45] *Id.*

1    locations whether or not the apps using InMobi's software asked for users' permission to do so,

2    and engaged in tracking even when users explicitly *denied* permission to track and store location

3    information.

4         85.    As a result of the FTC enforcement action, InMobi agreed to pay $950,000 in civil

5    penalties and implement a comprehensive privacy program, including a prohibition from

6    collecting individuals' location information without their affirmative express consent and a

7    requirement that InMobi honor consumers' location privacy settings.  The company was required

8    to delete all of the user location information it had collected and stored without consent and was

9    prohibited from further misrepresenting its data collection practices.  The settlement also required

10   InMobi to institute a comprehensive privacy program to be independently audited every two years

11   for 20 years from the date of settlement.[46]

12        86.    The activities engaged in by Google, as detailed in this complaint, mirror location

13   tracking activities condemned and sanctioned by the FTC.

14        **F.    Google's Deception Compounds the Outrageous Nature of its Conduct.**

15        87.    Google claimed to offer people a choice when it came to their location

16   information.  In stating that users could adjust privacy settings to control whether Google stores

17   their location, Google warranted that it would respect those users' privacy choices.  In reality,

18   Google rendered users' choices meaningless:  Google stored location data despite the permissions

19   and instructions that users provided through those very settings. Google's storage and tracking of

20   users' location information and movement history was surreptitious and purposely deceptive.

21        88.    Not only were Google's representations about privacy *likely* to deceive people,

22   Google *did* deceive the billions of people who use its products.  Not only did ordinary users,

23   including Plaintiffs, reasonably conclude that turning "Location History" off meant that their

24   location would not be tracked and stored, but sophisticated media professionals who cover

25

26

_____

27   [46] Stipulated Order for Permanent Injunction and Civil Penalty Judgment, *United States of America v. InMobi Pte, Ltd.*, Case No. 3:16-cv-3474 (N.D. Cal. [June 22, 2016]) (Dkt. No. 2-1)

28   (Ex. 29).

developments in technology, as well as knowledgeable computer scientists, academics, and regulators, were also deceived.  For example:

a.      Only two weeks before the AP Report was published, a website devoted exclusively to topics concerning mobile devices running on Google's Android platform ("Android Central") published an article titled "How to view your location history in Google Maps," under the heading "How to disable location tracking."  In the article, the author—based on Google's misrepresentations—writes, "There's also the option to pause tracking for your account as a whole. To do so, toggle **Location History** to off, and select **OK** in the dialog box that follows.  That's all there is to it!"[47]

b.      Similarly, the computer security firm Sophos publishes a website dedicated to mobile privacy and security topics, called "Naked Security."  In an October 2017 article, the author stated—based on Google's misrepresentations—that preventing Google from tracking you "was as simple as going to Settings > Location (under personal) > Google Location History and selecting 'off'. For comprehensive details on switching off and deleting your location history, go to Google's Manage or delete your Location History page."[48]  As discussed in paragraphs 36-39, *supra*, this page instructed users to utilize the "Location History" setting to prevent location tracking.

c.      An online tutorial on WikiHow, titled "How to Disable Google Location History," explains—based on Google's misrepresentations—that "[w]hen you use some Google products like Google Search and Google Maps, Google collects your location information," and further indicates that the way to disable this location tracking is by following the steps described in paragraphs 36-39, *supra*.  This tutorial shows that the authors believed "Location History" was the key to preventing storage of location data, and only referred to the "Web & App Activity" section as a landmark for navigating to "Location History," and not as a setting that implicated

---

[47] Harish Jonnalagadda, *How to view your location history in Google Maps*, Android Central (July 20, 2018) (Ex. 30)(emphasis in original).
[48] Matt Boddy, *The Google tracking feature you didn't know you'd switched on*, NakedSecurity by Sophos (October 3, 2017) (Ex. 31).

the storage or use of location information in any way.  Specifically, it stated: "Navigate to 'Location History' section. You can see it under the Web & App Activity segment." [49]  The article does not indicate that "Web & App Activity" settings control location tracking and storage.

d.      Additionally, in the AP Report, multiple sophisticated researchers, regulators, and elected officials stated—based on Google's misrepresentations—that they believed Google's representations concerning the efficacy of the "Location History" setting to be deceitful.  They stated that they were unaware that Google tracked individuals even if "Location History" had been turned off.  For example, Jonathan Mayer, a Princeton computer scientist and former chief technologist for the Federal Communications Commission's Enforcement Bureau, stated "If you're going to allow users to turn off something called 'Location History,' then all the places where you maintain location history should be turned off.  That seems like a pretty straightforward position to have."[50]

89.      Lawmakers were misled as well.  Senator Mark Warner of Virginia indicated that Google's "corporate practices…diverge wildly from the totally reasonable expectations of their users."[51]  Representative Frank Pallone of New Jersey called for "comprehensive consumer privacy and data security legislation" in the wake of the AP Report.[52]

90.      Google's misrepresentations continue, despite public outcry following the AP Report.  As of the date of filing this Amended Complaint, if an individual goes to Google's Help Center[53] and inquires "How can I stop Google Tracking My Location?,"  the very first answer Google provides her is to "Manage your location history" and directs her to the "Location History" tool, which does *not* stop Google tracking her location.  None of the immediate results identify every step a user must take to achieve that result; indeed, it is unclear whether a means to truly prevent Google from storing Plaintiffs' and Class members' location data even exists.

---

[49] WikiHow, *How to Disable Google Location History* (last visited November 19, 2018) (Ex. 32).
[50] AP Report (Ex. 1), *supra*.
[51] *Id.*
[52] *Id.*
[53] Google Help, *available at* https://support.google.com/?hl=en (last visited September 19, 2018)

1    **VII.    CLASS ALLEGATIONS**

2          91.      Plaintiffs bring this class action, pursuant to Rule 23 of the Federal Rules of Civil

3    Procedure, individually and on behalf of all members of the following classes, which are jointly

4    referred to throughout this Complaint as the "Class:"

5                      **Android Class:** All natural persons who used Android mobile
                       devices, who turned off "Location History," and whose location
6                      information was nonetheless stored by Google while "Location
                       History" was disabled.
7
                       **Apple Class:** All natural persons who used Apple mobile devices,
8                      who turned off "Location History," and whose location information
                       was nonetheless stored by Google while "Location History" was
9                      disabled.

10                     **Android Parent Subclass**: All parents and/or legal guardians of
                       persons who, while such persons were younger than the age of 18,
11                     used Android mobile devices, who turned off "Location History,"
                       and whose location information was nonetheless stored by Google
12                     while "Location History" was disabled.

13                     **U.S. Android Subclass:** All natural persons residing in the United
                       States who used Android mobile devices, who turned off "Location
14                     History," and whose location information was nonetheless stored by
                       Google while "Location History" was disabled.
15
                       **U.S. Apple Subclass:** All natural persons residing in the United
16                     States who used Apple mobile devices, who turned off "Location
                       History," and whose location information was nonetheless stored by
17                     Google while "Location History" was disabled.

18                     **Apple Parent Subclass**: All parents and/or legal guardians of
                       persons who, while such persons were younger than the age of 18,
19                     used Apple mobile devices, who turned off "Location History," and
                       whose location information was nonetheless stored by Google
20                     while "Location History" was disabled.

21          92.      Plaintiff Patacsil seeks to represent the Android Class and Apple Class, and U.S.

22   Android Subclass and U.S. Apple Subclass; Plaintiffs Dixon, Oshana, and Mahon seek to

23   represent the Android Class and U.S. Android Subclass; Plaintiff Carson seeks to represent the

24   Apple Class and U.S. Apple Subclass; and Plaintiff Dixon seeks to represent the Android Parent

25   Subclass and the Apple Parent Subclass.

26          93.      Excluded from each Class are the following individuals: officers and directors of

27   Google and its parents, subsidiaries, affiliates, and any entity in which Google has a controlling

28

1   interest; and all judges assigned to hear any aspect of this litigation, as well as their immediate

2   family members.

3       94.     Plaintiffs reserve the right to modify or amend the definition of each of the

4   proposed Classes before the Court determines whether certification is appropriate.

5       95.     This action readily satisfies the requirements set forth under Federal Rule of Civil

6   Procedure 23:

7           a.      Each Class is so numerous that joinder of all members is impracticable.

8   Upon information and belief, Class members number in the millions.

9           b.      There are questions of law or fact common to the Classes.  These questions

10  include, but are not limited to, the following:

11              i.      Whether Google's acts and practices complained of herein amount

12  to the use of an electronic tracking device to determine the location or movement of a person, in

13  violation of Cal. Pen. Code § 637.7;

14              ii.     Whether the technologies utilized by Google are "electronic

15  tracking devices" under Cal. Pen. Code § 637.7(d);

16              iii.    Whether Google's acts and practices complained of herein amount

17  to egregious breaches of social norms;

18              iv.     Whether Google acted intentionally in violating Plaintiffs' and

19  Class members' privacy rights;

20              v.      Whether an injunction should issue; and

21              vi.     Whether declaratory relief should be granted.

22          c.      Plaintiffs' claims are typical of the claims of the Class. Plaintiffs, like all

23  Class members, took efforts to prevent their mobile devices' location information from being

24  recorded and stored by Google.  Plaintiff Dixon, like all Parent Subclass members, took efforts to

25  prevent his minor child's mobile device's location information from being recorded and stored by

26  Google.  Despite these efforts and contrary to Google's representations, Plaintiffs and Class

27  members nonetheless had their location information recorded and stored by Google.  Plaintiffs

28

1  and the Class members did not consent to Google's storage of their location information, which

2  acts form the basis for this suit.

3           d.      Moreover, like all Class members, Plaintiffs suffer a substantial risk of

4  repeated injury in the future.  Each Plaintiff continues to use a mobile device that is capable of

5  reporting location data to Google.  Google has shown deliberate indifference to Plaintiffs' and

6  Class members' instructions regarding storing their location information, and has indeed taken

7  pains to deceive and mislead Plaintiffs (and all Class members) and to conduct its business

8  contrary to their instruction, and contrary to the plain meaning of its own terms of service in favor

9  of surreptitiously and deceitfully storing location information.  Google's deceptive and deliberate

10  actions have thwarted and continue to threaten Plaintiffs' (and Class members') ability to exercise

11  control over their own privacy while using their devices.  Because the conduct complained of

12  herein is systemic, Plaintiffs and all Class members face substantial risk of the same injury in the

13  future.  Google's conduct is common to all Class members and represents a common pattern of

14  conduct resulting in injury to all members of the Class.  Plaintiffs have suffered the harm alleged

15  and have no interests antagonistic to any other Class member.

16           e.      Plaintiffs will fairly and adequately protect the interests of the Class.

17  Plaintiffs' interests do not conflict with the interests of the Class members.  Furthermore,

18  Plaintiffs have retained competent counsel experienced in class action litigation, consumer

19  protection litigation, and electronic privacy litigation.  Plaintiffs' counsel will fairly and

20  adequately protect and represent the interests of the Class.  FRCP 23(a)(4) and 23(g) are satisfied.

21           f.      In acting as above-alleged, and in failing and refusing to cease and desist

22  despite public outcry, Google has acted on grounds generally applicable to the entire Class,

23  thereby making final injunctive relief and corresponding declaratory relief each appropriate with

24  respect to the Class as a whole.  The prosecution of separate actions by individual Class members

25  would create the risk of inconsistent or varying adjudications with respect to individual Class

26  members that would establish incompatible standards of conduct for Google.

27           g.      Injunctive relief is necessary to prevent further unlawful and unfair conduct

28  by Google.  Money damages, alone, could not afford adequate and complete relief, and injunctive

1    relief is necessary to restrain Google from continuing to commit its illegal and unfair violations of

2    privacy.

3    **VIII.   FRAUDULENT CONCEALMENT AND TOLLING**

4            96.     The applicable statutes of limitations are tolled by virtue of Defendant's knowing

5    and active concealment of the facts alleged above.  Plaintiffs and Class members were ignorant of

6    the information essential to the pursuit of these claims, without any fault or lack of diligence on

7    their own part.

8            97.     At the time the action was filed, Defendant was under a duty to disclose the true

9    character, quality, and nature of its activities to Plaintiffs and Class members.  Defendant is

10   therefore estopped from relying on any statute of limitations.

11           98.     Defendant's fraudulent concealment is common to the Class.

12   **IX.     CAUSES OF ACTION**

13                                        **COUNT ONE**
                               **(Violations of CIPA, Cal. Pen. Code §§ 630, *et seq.*)**
14

15           99.     Plaintiffs repeat and reallege all preceding paragraphs contained herein.

16           100.    Cal. Pen. Code § 630 provides that "[t]he Legislature hereby declares that

17   advances in science and technology have led to the development of new devices and techniques

18   for the purpose of eavesdropping upon private communication and that the invasion of privacy

19   resulting from the continual and increasing use of such devices and techniques has created a

20   serious threat to the free exercise of personal liberties and cannot be tolerated in a free and

21   civilized society."

22           101.    Google's acts and practices complained of herein, engaged in for purposes of

23   storing and tracking indefinitely the location information of mobile device users and thus

24   determining their movement over time (and all other inferences derivable therefrom), without

25   their consent—and indeed in direct contravention of instructions clearly expressed through

26   turning off the "Location History" setting—violated and continues to violate Cal. Pen. Code §

27   637.7.

28

1     102.    Cal. Pen. Code § 637.7(a) prohibits the use of an electronic tracking device to

2     determine the location or movement of a person. As used in Cal. Pen. Code § 637.7, "electronic

3     tracking device" means "any device attached to a vehicle or other movable thing that reveals its

4     location or movement by the transmission of electronic signals." Cal. Pen. Code § 637.7(d).

5     103.    In direct violation of this prohibition and without the consent of Plaintiffs or Class

6     members—and indeed in direct contravention of those individuals' clearly-expressed wishes—

7     Google continued to record, store, and use the location and movement of Plaintiffs and Class

8     members after they disabled the "Location History" setting on their mobile devices.

9     104.    As described herein, Google utilized "electronic tracking devices" as defined by

10    Cal. Pen. Code § 637.7(d), in that Google used "devices"—including the GPS hardware, the

11    cellular radio and/or the WiFi chip, all of which are mechanical or electronic equipment—

12    attached to, and located within, each Class member's mobile device (a "movable thing") to

13    "reveal[] its location or movement by the transmission of electronic signals."

14    105.    Alternatively, as described herein, Google used each Class member's mobile

15    device as an "electronic tracking device" which when placed or attached on or within vehicles

16    and other movable things of the Class member, "reveal[ed]" each device's "location or movement

17    by the transmission of electronic signals."  Indeed, the emphasis on tracking and storing the

18    location and movement of vehicles is made clear by the fact that Google not only stores and

19    tracks when an individual traveled in a vehicle, but also what *type* of vehicle the individual

20    traveled in. As discussed above, Google's technology enables it to analyze and determine whether

21    an individual utilized a rail vehicle, a road vehicle, a two-wheeled vehicle, a four-wheeled

22    vehicle, or a bicycle.

23    106.    In so doing, Google unlawfully used those electronic tracking devices "to

24    determine the location or movement of a person"—namely, Plaintiffs and Class members.

25    Google engaged in such storage and tracking of each Class member's movement after each Class

26    member had expressly communicated to Google that Google did not have their consent to do so,

27    by turning off Location History.  Moreover, Google, itself, had affirmatively (but falsely) stated

28

1    that it would not store and track each Class member's movement once the individual turned off

2    Location History.

3        107.    Additionally, for members of the Android Parent and Apple Parent Subclasses,

4    Google's wanton and surreptitious tracking and storing of Class members' children's location

5    information violated Cal. Pen. Code § 637.7 for the same reasons as described in the preceding

6    paragraphs.  Namely, Google used electronic tracking devices to determine the location or

7    movements of those Subclass members' minor children, in direct contravention of Subclass

8    members' wishes and instruction.

9        108.    As a result of Google's violations of Cal. Pen. Code § 637.7, and pursuant to Cal.

10   Pen. Code § 637.2, Plaintiffs and Class members are entitled to the following relief:

11            a.    A declaration that Google's conduct violates CIPA;

12            b.    Statutory damages and/or trebled actual damages;

13            c.    Injunctive relief in the form of, *inter alia*, an order enjoining Google from

14   geolocating Class members in violation of CIPA;

15            d.    Injunctive relief in the form of, *inter alia*, an order requiring Google to

16   destroy all data created or otherwise obtained from its illegal geolocation of Class members; and

17            e.    An award of attorney's fees and costs of litigation as provided by CIPA,

18   the private attorney general doctrine existing at common law and also codified at California Civil

19   Code Section 1021.5, and all other applicable laws.

20                              **COUNT TWO**
                         **(Intrusion Upon Seclusion)**
21

22       109.    Plaintiffs repeat and reallege all preceding paragraphs contained herein.

23       110.    Plaintiffs and Class members have reasonable expectations of privacy in their

24   mobile devices and their online behavior, generally.  Plaintiffs' and Class members' private

25   affairs include their locations.

26       111.    The reasonableness of such expectations of privacy is supported by Google's

27   unique position to monitor Plaintiffs' and Class members' behavior through its access to

28

1    Plaintiffs' and Class members' private mobile devices.  It is further supported by the surreptitious

2    and non-intuitive nature of Defendant's tracking.

3        112.    Defendant intentionally intruded on and into Plaintiffs' and Class members'

4    solitude, seclusion, or private affairs by intentionally geolocating them. Additionally, for

5    members of the Android Parent and Apple Parent Subclasses, Google's wanton and surreptitious

6    tracking and storing of Subclass members' children's location information was an intentional

7    intrusion on and into the solitude, seclusion, or private affairs of Subclass members and their

8    children.

9        113.    These intrusions are highly offensive to a reasonable person.  This is evidenced by,

10   *inter alia*, Supreme Court precedent (most recently and forcefully articulated in the *Carpenter*

11   opinion), legislation enacted by Congress, rules promulgated and enforcement actions undertaken

12   by the FTC, and countless studies, op-eds, and articles decrying location tracking.  Moreover,

13   Google engaged in true tracking of location information deceptively and in direct contradiction of

14   the express instructions of Plaintiffs and the members of the Class.  Also supporting the highly

15   offensive nature of Defendant's conduct is the fact that Defendant's principal goal was to

16   surreptitiously monitor Plaintiffs and Class members.

17       114.    Plaintiffs and Class members were harmed by the intrusion into their private

18   affairs as detailed throughout this Complaint.

19       115.    Google's actions and conduct complained of herein were a substantial factor in

20   causing the harm suffered by Plaintiffs and Class members.

21       116.    As a result of Google's actions, Plaintiffs and Class members seek damages and

22   punitive damages in an amount to be determined at trial.  Plaintiffs and Class members seek

23   punitive damages because Google's actions—which were malicious, oppressive, and willful—

24   were calculated to injure Plaintiffs and Class members and made in conscious disregard of

25   Plaintiffs' and Class members' rights.  Punitive damages are warranted to deter Google from

26   engaging in future misconduct.

27

28

## COUNT THREE
## California Constitutional Right to Privacy

117.    Plaintiffs repeat and reallege all preceding paragraphs contained herein.

118.    Plaintiffs and Class members have reasonable expectations of privacy in their mobile devices and their online behavior, generally.  Plaintiffs' and Class members' private affairs include their behavior on their mobile devices as well as any other behavior that may be monitored by the surreptitious tracking employed or otherwise enabled by location tracking.

119.    Google intentionally intruded on and into Plaintiffs' and Class members' solitude, seclusion, right of privacy, or private affairs by intentionally tracking their location.  Additionally, for members of the Android Parent and Apple Parent Subclasses, Google's wanton and surreptitious tracking and storing of Subclass members' children's location information was an intentional intrusion on and into the solitude, seclusion, right of privacy, or private affairs of Subclass members and their children.

120.    These intrusions are highly offensive to a reasonable person, because they disclosed sensitive and confidential location information, constituting an egregious breach of social norms.  This is evidenced by, *inter alia*, Supreme Court precedent (most recently and forcefully articulated in the *Carpenter* opinion), legislation enacted by Congress, rules promulgated and enforcement actions undertaken by the FTC, and countless studies, op-eds, and articles decrying location tracking.

121.    Plaintiffs and Class members were harmed by the intrusion into their private affairs as detailed throughout this Complaint.

122.    Google's actions and conduct complained of herein were a substantial factor in causing the harm suffered by Plaintiffs and Class members.

123.    As a result of Google's actions, Plaintiffs and Class members seek damages and punitive damages in an amount to be determined at trial.  Plaintiffs and Class members seek punitive damages because Google's actions—which were malicious, oppressive, and willful— were calculated to injure Plaintiffs and Class members and made in conscious disregard of

Plaintiffs' and Class members' rights.  Punitive damages are warranted to deter Google from engaging in future misconduct.

## X.  PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that judgment be entered against Google and that the Court grant the following:

A.     An order determining that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, that Plaintiffs are proper class representatives, that Plaintiffs' attorneys shall be appointed as Class counsel pursuant to Rule 23(g) of the Federal Rules of Civil Procedure, and that Class notice be promptly issued;

B.     Judgment against Google for Plaintiffs' and Class members' asserted causes of action;

C.     Appropriate declaratory relief against Google;

D.     Injunctive relief in the form of, *inter alia*, an order enjoining Google from continuing its practice of recording and using Plaintiffs' and Class members' location information against their instructions and in violation of CIPA;

E.     Injunctive relief related to CIPA in the form of, *inter alia*, an order requiring Google to destroy all data acquired, created, or otherwise obtained from the unlawful recording and storage of the location information of Plaintiff and Class members;

F.     An award of damages pursuant to Cal. Pen. Code § 637.2;

G.     Reasonable attorney's fees and costs reasonably incurred; and

H.     Any and all other and further relief to which Plaintiffs and the Class may be entitled.

## XI.  DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury of all issues so triable.

1    Dated: November 19, 2018                Respectfully Submitted,

2                                            */s/  Michael W. Sobol*

3                                            Michael W. Sobol (State Bar No. 194857)
                                             msobol@lchb.com
4                                            Melissa Gardner (State Bar No. 289096)
                                             mgardner@lchb.com
5                                            LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
                                             275 Battery Street, 29th Floor
6                                            San Francisco, CA  94111-3339
                                             Telephone:  415.956.1000
7                                            Facsimile:  415.956.1008

8                                            Nicholas Diamand (*pro hac vice*)
                                             ndiamand@lchb.com
9                                            Abbye R. Klamann (State Bar No. 311112)
                                             aklamann@lchb.com
10                                           LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
                                             250 Hudson Street, 8th Floor
11                                           New York,  NY 10013
                                             Telephone:  212.355.9500
12                                           Facsimile:  212.355.9592

13                                           Hank Bates (State Bar No. 167688)
                                             hbates@cbplaw.com
14                                           Allen Carney (*pro hac vice*)
                                             acarney@cbplaw.com
15                                           David Slade (*pro hac vice*)
                                             dslade@cbplaw.com
16                                           CARNEY BATES & PULLIAM, PLLC
                                             519 W. 7th St.
17                                           Little Rock, AR 72201
                                             Telephone:  501.312.8500
18                                           Facsimile:  501.312.8505

19                                           *Attorneys for Plaintiffs, individually and
                                             on behalf of all others similarly situated*

20

21

22

23   1607494.21

24

25

26

27

28