**LIEFF CABRASER HEIMANN**
    **& BERNSTEIN, LLP**
Michael W. Sobol (SBN 194857)
msobol@lchb.com
Melissa Gardner (SBN 289096)
mgardner@lchb.com
Michael Levin-Gesundheit (SBN 292930)
mlevin@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA  94111
Telephone:  415.956.1000
Facsimile:  415.956.1008

**LIEFF CABRASER HEIMANN**
    **& BERNSTEIN, LLP**
Nicholas Diamand (*pro hac vice*)
ndiamand@lchb.com
250 Hudson Street, 8th Floor
New York, NY  10013
Telephone:  212.355.9500
Facsimile:  212.355.9592

*Interim Co-Lead Class Counsel*

**AHDOOT & WOLFSON, PC**
Tina Wolfson (SBN 174806)
twolfson@ahdootwolfson.com
Alex R. Straus (SBN 321366)
astraus@ahdootwolfson.com
Brad King (SBN 274399)
bking@ahdootwolfson.com
10728 Lindbrook Drive
Los Angeles, CA 90024
Telephone: 310.474.9111
Facsimile: 310.474.8585

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

IN RE GOOGLE LOCATION HISTORY
LITIGATION

Case No. 5:18-cv-05062-EJD

**CONSOLIDATED CLASS ACTION
COMPLAINT**

**CLASS ACTION**

**DEMAND FOR JURY TRIAL**

# TABLE OF CONTENTS

                                                                              **Page**

I.      INTRODUCTION .................................................................................. 1

II.     THE PARTIES...................................................................................... 3

III.    JURISDICTION AND VENUE .......................................................... 11

IV.     CHOICE OF LAW .............................................................................. 11

V.      INTRADISTRICT ASSIGNMENT .................................................... 12

VI.     STATEMENT OF FACTS .................................................................. 12

        A.      Google Stores Location Information Regardless of Privacy Settings................... 15

        B.      Google's Conduct Poses a Serious Threat to Personal Privacy, Personal
                Security, and Personal Dignity................................................................ 17

        C.      Preventing Google's Storage of Location Information—If Possible—Is Far
                More Complex than Google Represents. ........................................... 21

        D.      Google's Ineffective Response to the AP Report and to This Litigation
                Confirms and Continues Its Deceptive Behavior................................ 26

        E.      Google's Surreptitious Storage of Location Data Defies Reasonable
                Expectations of Privacy and Egregiously Violates Established Social
                Norms. ......................................................................................... 29

                1.      Plaintiffs' Expectations of Privacy are Enshrined in Law. ...................... 30

                2.      Plaintiffs' Expectations Reflect Widely-Held Social Norms................... 30

                3.      Parents Have a Reasonable and Universal Expectation of Privacy
                        for their Children................................................................. 34

                4.      The Federal Trade Commission Has Identified Surreptitious
                        Tracking and Storage of Location Information as a Deceptive Trade
                        Practice. ........................................................................... 37

        F.      Google's Deception Compounds the Outrageous Nature of its Conduct. ........... 38

VII.    CLASS ALLEGATIONS .................................................................... 41

VIII.   FRAUDULENT CONCEALMENT AND TOLLING.................................. 45

IX.     CAUSES OF ACTION ........................................................................ 45

        Count One (Violations of CIPA, Cal. Pen. Code §§ 630, *et seq.*) .................... 45

        Count Two (Intrusion Upon Seclusion) ........................................................ 47

        Count Three (California Constitutional Right to Privacy)................................ 49

X.      PRAYER FOR RELIEF........................................................................ 50

XI.     DEMAND FOR JURY TRIAL............................................................. 51

1    I.    **INTRODUCTION**

2        1.     This case addresses the surreptitious, non-consensual, tracking of millions of

3    mobile device users' geolocation by Defendant Google LLC ("Google").  For years, Google has

4    misled people who use its products and services, telling them that if they activate or deactivate

5    certain settings it will prevent Google from tracking their movements and storing a record of their

6    geolocations.  Google's dishonest behavior was first publicly exposed by investigative reporting

7    in August 2018.  Today, Google's recent changes to its disclosures equivocate and continue to

8    obfuscate its ongoing privacy invasive behavior.  Google has failed, and continues to fail, to

9    respect and abide by the very privacy choices that it ostensibly extended to its users.  Despite

10   users expressly declining to give Google permission to track and store a digital record of their

11   movements, Google does just that, creating a detailed and encyclopedic chronology of users'

12   movements and storing it in a vast exploitable, profitable database.  Data concerning consumers'

13   habits, customs and patterns are currency today, and as geolocation data is particularly rich and

14   personal, it is particularly valuable currency.

15       2.     Google's deceptive and outrageous conduct violates its users' reasonable

16   expectations of privacy.  The intent and efforts of privacy- and security-conscious individuals to

17   safeguard their personal information—particularly sensitive location information—must be

18   respected.  As recently confirmed by the Supreme Court in *Carpenter v. United States*, 138 S. Ct.

19   2206 (2018), location data is highly sensitive. When stored and tracked over time, location history

20   "provides an intimate window into a person's life, revealing not only his particular movements,

21   but through them his familial, political, professional, religious, and sexual associations." *Id.* at

22   2217 (quotation marks and citation omitted).  As Chief Justice John Roberts stated, "a cell

23   phone—almost a 'feature of human anatomy[]'—tracks nearly exactly the movements of its

24   owner . . . .   A cell phone faithfully follows its owner beyond public thoroughfares and into

25   private residences, doctor's offices, political headquarters, and other potentially revealing

26   locales," and when a third-party has access to the information stored on one's cell phone, that

27   entity "achieves near perfect surveillance, as if it had attached an ankle monitor to the phone's

28   user." *Id.* at 2218 (internal citations omitted).  Google's own Chief Executive Officer has

1   formally acknowledged that precise geolocation information is "considered highly, highly

2   sensitive."[1]

3       3.      The ramifications of unauthorized access to the highly personal details of a stored

4   location history can be severe, and individuals accordingly go to great lengths to safeguard not

5   only their own location information, but, in the case of parents and guardians, also that of their

6   minor children.

7       4.      Despite the recognized sensitivity of location data, Google stores this data against

8   the express instructions and expectations of its users.  As reported in August 2018 by the

9   Associated Press ("AP"), "Google wants to know where you go so badly that it records your

10  movements even when you explicitly tell it not to."[2]  The AP Report—corroborated by respected

11  cyber security researchers at Princeton University—found that Google technology, embedded in

12  more than two billion mobile devices, stores individuals' location information indefinitely even if

13  users activate a privacy setting purporting to prevent Google from doing so.  Google Senior

14  Privacy Counsel was forced to admit Google's ongoing, invasive practices last month, in

15  testimony before Congress:

16          Q. Google collects geolocation data even if location history is
            turned off, correct?
17
            A. **Yes, Senator, it can** in order to operate other services …
18          (inaudible)

19          Q: Let's just – let's just get that on the record. Google collects
            geolocation history and information even if location history is
20          turned off.  Do you think that an average consumer, let's say a
            teenager with an Android phone would be surprised to learn that
21          Google is tracking his location even when location services are
            turned off – turned off by scanning Wi-Fi networks around them
22          throughout the day? Do you think he'd be surprised by that?[3]

23  _____

24  [1] *See* Testimony of Sundar Pichai, Google Chief Executive Officer, Transcript of United States
    House of Representatives Judiciary Committee, *Transparency and Accountability: Examining*
25  *Google and its Data Collection, use and Filtering Practices* (December 11, 2018), at 53 (Ex. 1).
    [2] Ryan Nakashima, *AP Exclusive: Google tracks your movements, like it or not,* The Associated
26  Press (August 13, 2018) (Ex. 2, hereinafter "AP Report").
    [3] *See* Testimony of Will Devries, Google Senior Privacy Counsel, United States Senate Judiciary
27  Committee, *GDPR & California Consumer Privacy Act: Opt-Ins, Consumer Control, and the*
    *Impact on Competition and Innovation* (Mar. 12, 2019), at 14 (Ex. 3).  In subsequent testimony,
28  Mr. Devries consistently failed to answer directly the Senator's questions regarding whether

5.      Until it was exposed by the media, this litigation, and then Congress, Google itself fraudulently assured individuals that they could prevent Google from creating and storing a record of their movement by disabling a feature called "Location History" on their mobile devices or in their Google Accounts.  Google represented that a user "can turn off Location History at any time.  With Location History off, the places you go are no longer stored."[4]  This simply was not true.  As revealed in the AP Report and the researchers at Princeton University, and then in Google's recent testimony before the United States Congress, Google accesses and stores the precise geolocation information of users who have affirmatively turned off the "Location History" setting.  Google modified—and continues to modify—this and other representations after the publication of the AP Report and the resulting public outcry, as discussed in Sections VI.C and VI.D, *infra*.

6.      While falsely characterizing its illusory privacy controls, Google deceptively and unconscionably deprived and continues to deprive Plaintiffs and Class members of one of the most fundamental autonomy and privacy rights: the ability to control access to and knowledge of their whereabouts and their movement over time.  This is true not only for Plaintiffs and Class members, but also for their children, whose location information they sought to protect.  Indeed, as discussed in further detail below, recognition and respect for child privacy and parental control are enshrined in longstanding societal norms and protected by the law.

7.      Google's conduct violates the California Invasion of Privacy Act (Cal. Pen. Code §§ 630, *et seq.* ("CIPA")) and California's Constitutional Right to Privacy, and constitutes an unlawful intrusion upon seclusion.

## II.      THE PARTIES

8.      **Plaintiff Napoleon Patacsil** resides in San Diego, California.  From 2016 until the present, Plaintiff Patacsil has owned and used, and continues to own and use, an Apple iPhone with various Google apps and functionalities downloaded onto the mobile device, including

---

Devries thought users, including underage users, "would be surprised" by Google's practices.  *Id.* at 15-16.
[4] Archived version of Google Account Help, *Manage or delete your Location History*, (August 16, 2018) (Ex. 4).

Google Maps. In an express effort to protect his location history—and thus his privacy and security—from efforts by Google, and any other third-parties, to record and access his location over time, Mr. Patacsil turned the "Location History" setting to "off" on his Google Account. Based upon the terminology used by Google (*e.g.* "Location History"), the context, and representations by Google to the effect that turning "Location History" off would prevent his location information from being stored and that Google would respect his privacy settings, Mr. Patacsil believed that this would prevent Google from storing a record of his location history. Despite Mr. Patacsil's "Location History" settings, Google continued to store his precise location information.

9.     Prior to acquiring the iPhone in approximately 2016, Plaintiff Patacsil owned and used an Android mobile device.  Android is a mobile operating system developed by Google.  In an express effort to protect his location history—and thus his privacy and security—from efforts by Google, and any other third-parties, to track and record his location over time, Mr. Patacsil turned the "Location History" setting to "off" on this mobile device.  Based upon the terminology used by Google (*e.g.* "Location History"), the context, and representations by Google to the effect that turning "Location History" off would prevent his location information from being stored and that Google would respect his privacy settings, Mr. Patacsil believed that this would prevent Google from storing a record of his location history. Despite Mr. Patacsil's "Location History" settings, Google continued to store his precise location information.

10.     Throughout the relevant time period, Mr. Patacsil carried his mobile device virtually everywhere he went throughout the day, including when traveling by vehicle or otherwise on public thoroughfares and when entering commercial spaces, medical care providers, private offices, and private residences.

11.     In the interest of protecting his privacy and security, Mr. Patacsil does not recite here the precise locations that he took his mobile device with the "Location History" setting off during the relevant time, but does allege that the following could be determined from Mr. Patacsil's location history: his eating habits; his shopping habits; his exercise habits; whether he, or those in his care, receive frequent medical or psychological care and the types of medical or

1   psychological care providers seen; the extent to which he is involved in the activities of his

2   children (if any), and what those activities are; how, where, and to what extent he socializes;

3   where his friends and associates reside; whether and where he has any recurring appointments;

4   whether and where he attends religious services; how often he takes public transit, walks, or

5   drives, and which routes; where he parks his car; whether and where he is employed and his work

6   schedule; where he banks; whether he has attended any political rallies or protests; and whether

7   and when he visited the polls on election day, and which poll.

8          12.     **Plaintiff Richard Dixon** resides in Long Beach, California, with his minor child

9   L.D.  From at least 2012 until the present, Plaintiff Dixon has owned and used, and continues to

10  own and use, an Android mobile device, with various Google apps and functionalities

11  downloaded onto the mobile device, including Google Maps.  From at least 2016 to the present,

12  Plaintiff Dixon's minor child has used, and continues to use, an Apple iPhone with various

13  Google apps and functionalities downloaded onto the mobile device, including Google Maps.

14  From approximately 2014 until 2016, Plaintiff Dixon's minor child used an Android mobile

15  device, with various Google apps and functionalities downloaded onto the mobile device,

16  including Google Maps.

17         13.     In an express effort to protect his location history—and thus his privacy and

18  security—from efforts by Google, and any other third-parties, to record and access his location

19  over time, Mr. Dixon turned the "Location History" setting to "off" on his Google Account.

20  Based upon the terminology used by Google (*e.g.* "Location History"), the context, and

21  representations by Google to the effect that turning "Location History" off would prevent his

22  location information from being stored and that Google would respect his privacy settings, Mr.

23  Dixon believed that this would prevent Google from storing a record of his location history.

24  Despite Mr. Dixon's "Location History" settings, Google continued to store his precise location

25  information.

26         14.     In an express effort to protect his location history—and thus his privacy and

27  security—from efforts by Google, and any other third-parties, to record and access his location

28  over time, Mr. Dixon's minor child turned the "Location History" setting to "off" on his Google

Account. Based upon the terminology used by Google (*e.g.* "Location History"), the context, and representations by Google to the effect that turning "Location History" off would prevent his location information from being stored and that Google would respect his privacy settings, Mr. Dixon and his minor child believed that this would prevent Google from storing a record of his location history. Despite L.D.'s "Location History" settings, Google continued to store L.D.'s precise location information.

15.     Throughout the relevant time period, both Mr. Dixon and his minor child each carried their respective mobile devices virtually everywhere they went throughout the day, including when traveling by vehicle or otherwise on public thoroughfares and when entering commercial spaces, medical care providers, private offices, and private residences.

16.     In the interest of protecting his privacy and security, and the privacy and security of his child, Mr. Dixon does not recite here the precise locations that he or L.D. took their mobile devices with the "Location History" setting off during the relevant time, but does allege that the following could be determined from Mr. Dixon's location history: his eating habits; his shopping habits; his exercise habits; whether he receives frequent medical or psychological care and the types of medical or psychological care providers he sees; the extent to which he is involved in the activities of his children, and what those activities are; how, where, and to what extent he socializes; where his friends and associates reside; whether and where he has any recurring appointments; whether and where he attends religious services; how often he takes public transit, walks, or drives, and which routes; where he parks his car; whether and where he is employed and his work schedule; where he banks; whether he has attended any political rallies or protests; and whether and when he visited the polls on election day, and which poll.

17.     Plaintiff Dixon further alleges that the following information regarding his minor child could be determined from L.D.'s location history: his eating habits; his shopping habits; his exercise habits; whether he receives frequent medical or psychological care and the types of medical or psychological care providers seen; the extent to which he is involved in before or after-school activities, and what those activities are; how, where, and to what extent he socializes; where his friends and associates reside; whether and where he has any recurring appointments;

whether and where he attends religious services; how often he takes public transit, walks, or is driven, and which routes; whether he has attended any political rallies or protests; whether he is home schooled or attends school outside of the home, which school, and whether he has good attendance.

18.     **Plaintiff Najat Oshana** resides in Modesto, California. From at least 2012 until the present, Plaintiff Oshana has owned and used, and continues to own and use, an Android mobile device, with various Google apps and functionalities downloaded onto the mobile device, including Google Maps.  In an express effort to protect her location history—and thus her privacy and security—from efforts by Google, and any other third-parties, to record and access her location over time, Ms. Oshana turned the "Location History" setting to "off" on her Google Account. Based upon the terminology used by Google (*e.g.* "Location History"), the context, and representations by Google to the effect that turning "Location History" off would prevent her location information from being stored and that Google would respect her privacy settings, Ms. Oshana believed that this would prevent Google from storing a record of her location history. Despite Ms. Oshana's "Location History" settings, Google continued to store her precise location information.

19.     Throughout the relevant time period, Ms. Oshana carried her mobile device virtually everywhere she went throughout the day, including when traveling by vehicle or otherwise on public thoroughfares and when entering commercial spaces, medical care providers, private offices, and private residences.

20.     In the interest of protecting her privacy and security, Ms. Oshana does not recite here the precise locations that she took her mobile device with the "Location History" setting off during the relevant time, but does allege that the following could be determined from her location history: her eating habits; her shopping habits; her exercise habits; whether she, or those in her care, receive frequent medical or psychological care and the types of medical or psychological care providers seen; the extent to which she is involved in the activities of her children (if any), and what those activities are; how, where, and to what extent she socializes; where her friends and associates reside; whether and where she has any recurring appointments; whether and where

1   she attends religious services; how often she takes public transit, walks, or drives, and which

2   routes; where she parks her car; whether and where she is employed and her work schedule;

3   where she banks; whether she has attended any political rallies or protests; and whether and when

4   she visited the polls on election day, and which poll.

5       21.     **Plaintiff Mark Carson** resides in St. Petersburg, Florida.  From 2011 until the

6   present, Plaintiff Carson has owned and used, and continues to own and use, an Apple mobile

7   device with various Google apps and functionalities downloaded onto the mobile device,

8   including Google Maps.  In an express effort to protect his location history—and thus his privacy

9   and security—from efforts by Google, and any other third-parties, to record and access his

10  location over time, Mr. Carson turned the "Location History" setting to "off" on his Google

11  Account. Based upon the terminology used by Google (*e.g.* "Location History"), the context, and

12  representations by Google to the effect that turning "Location History" off would prevent his

13  location information from being stored and that Google would respect his privacy settings, Mr.

14  Carson believed that this would prevent Google from storing a record of his location history.

15  Despite Mr. Carson's "Location History" settings, Google continued to store his precise location

16  information.

17      22.     Throughout the relevant time period, Mr. Carson carried his mobile device

18  virtually everywhere he went throughout the day, including when traveling by vehicle or

19  otherwise on public thoroughfares and when entering commercial spaces, medical care providers,

20  private offices, and private residences.

21      23.     In the interest of protecting his privacy and security, Mr. Carson does not recite

22  here the precise locations that he took his mobile device with the "Location History" setting off

23  during the relevant time, but does allege that the following could be determined from Mr.

24  Carson's location history: his eating habits; his shopping habits; his exercise habits; whether he,

25  or those in his care, receive frequent medical or psychological care and the types of medical or

26  psychological care providers seen; the extent to which he is involved in the activities of his

27  children (if any), and what those activities are; how, where, and to what extent he socializes;

28  where his friends and associates reside; whether and where he has any recurring appointments;

whether and where he attends religious services; how often he takes public transit, walks, or drives, and which routes; where he parks his car; whether and where he is employed and his work schedule; where he banks; whether he has attended any political rallies or protests; and whether and when he visited the polls on election day, and which poll.

24.   **Plaintiff Nurudaaym Mahon** resides in Douglasville, Georgia.  From at least 2013 until the present, Plaintiff Mahon has owned and used, and continues to own and use, an Android mobile device.  In an express effort to protect his location history—and thus his privacy and security—from efforts by Google, and any other third-parties, to record and access his location over time, Mr. Mahon turned the "Location History" setting to "off" on his Google Account. Based upon the terminology used by Google (*e.g.* "Location History"), the context, and representations by Google to the effect that turning "Location History" off would prevent his location information from being stored and that Google would respect his privacy settings, Mr. Mahon believed that this would prevent Google from storing a record of his location history. Despite Mr. Mahon's "Location History" settings, Google continued to store his precise location information.

25.   Throughout the relevant time period, Mr. Mahon carried his mobile device virtually everywhere he went throughout the day, including when traveling by vehicle or otherwise on public thoroughfares and when entering commercial spaces, medical care providers, private offices, and private residences.

26.   In the interest of protecting his privacy and security, Mr. Mahon does not recite here the precise locations that he took his mobile device with the "Location History" setting off during the relevant time, but does allege that the following could be determined from Mr. Mahon's location history: his eating habits; his shopping habits; his exercise habits; whether he, or those in his care, receive frequent medical or psychological care and the types of medical or psychological care providers seen; the extent to which he is involved in the activities of his children (if any), and what those activities are; how, where, and to what extent he socializes; where his friends and associates reside; whether and where he has any recurring appointments; whether and where he attends religious services; how often he takes public transit, walks, or

drives, and which routes; where he parks his car; whether and where he is employed and his work schedule; where he banks; whether he has attended any political rallies or protests; and whether and when he visited the polls on election day, and which poll.

27.    **Plaintiff Aichi Ali** resides in Los Angeles, California. From at least 2015 until the present, Plaintiff Ali has owned and used, and continues to own and use, an Apple iPhone, with various Google apps and functionalities downloaded onto the mobile device, including Google Maps.  In an express effort to protect her location history—and thus her privacy and security— from efforts by Google, and any other third-parties, to record and access her location over time, Ms. Ali turned the "Location History" setting to "off" on her Google Account. Based upon the terminology used by Google (*e.g.* "Location History"), the context, and representations by Google to the effect that turning "Location History" off would prevent her location information from being stored and that Google would respect her privacy settings, Ms. Ali believed that this would prevent Google from storing a record of her location history. Despite Ms. Ali's "Location History" settings, Google continued to store her precise location information.

28.    Throughout the relevant time period, Ms. Ali carried her mobile device virtually everywhere she went throughout the day, including when traveling by vehicle or otherwise on public thoroughfares and when entering commercial spaces, medical care providers, private offices, and private residences.

29.    In the interest of protecting her privacy and security, Ms. Ali does not recite here the precise locations that she took her mobile device with the "Location History" setting off during the relevant time, but does allege that the following could be determined from her location history: her eating habits; her shopping habits; her exercise habits; whether she, or those in her care, receive frequent medical or psychological care and the types of medical or psychological care providers seen; the extent to which she is involved in the activities of her children (if any), and what those activities are; how, where, and to what extent she socializes; where her friends and associates reside; whether and where she has any recurring appointments; whether and where she attends religious services; how often she takes public transit, walks, or drives, and which routes; where she parks her car; whether and where she is employed and her work schedule;

1    where she banks; whether she has attended any political rallies or protests; and whether and when

2    she visited the polls on election day, and which poll.

3          30.    **Defendant Google LLC** ("Google," "Defendant," or "the Company") is a United

4    States public corporation headquartered in Mountain View, California, and incorporated under the

5    laws of Delaware. Google is a sophisticated mobile operating system and mobile applications

6    ("apps") developer in the business of commercializing personal data extracted from the use of

7    tools and services connected to the internet.  As such, Google is aware of, and benefits from the

8    conduct described herein.  Indeed, this forms a core component, among others, of its business

9    model.

10   **III.      JURISDICTION AND VENUE**

11         31.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.

12   §§ 1332 and 1367 because this is a class action in which the matter or controversy exceeds the

13   sum of $5,000,000, exclusive of interest and costs, and in which some members of the proposed

14   Class are citizens of a state different from defendant.

15         32.    This Court has personal jurisdiction over Defendant because Defendant owns and

16   operates a business that is headquartered in the Northern District of California and conducts

17   substantial business throughout California.  Google expressly consents to the jurisdiction of the

18   federal or state courts of Santa Clara County, California, USA through its Terms of Service.[5]

19         33.    Venue properly lies in this district pursuant to 28 U.S.C. § 1391(b)(1), as Google

20   is headquartered in this district.

21   **IV.      CHOICE OF LAW**

22         34.    California law governs the substantive legal issues in this case.  Google's Terms of

23   Service provide in pertinent part that California law will apply to any disputes arising out of or

24   relating to Google's terms or services.[6]

25

26

27   _____

     [5] Google, *Google Terms of Service* (last modified October 25, 2017) (Ex. 5).

28   [6] *Id.*

1    **V.      INTRADISTRICT ASSIGNMENT**

2         35.      Pursuant to Civil L.R. 3-2(c), assignment to this division is proper because a

3    substantial part of the conduct which gives rise to Plaintiffs' claims occurred in this district.

4    Defendants market their products throughout the United States, including in Santa Clara County.

5    Additionally, Google is headquartered in Mountain View, California, which is located within

6    Santa Clara County.

7         36.      Assignment to this division is also proper pursuant to Google's Terms of Service,

8    which state in pertinent part that all claims arising out of or relating to Google's terms or services

9    "will be litigated exclusively in the federal or state courts of Santa Clara County, California,

10   USA, and [users] and Google consent to personal jurisdiction in those courts."[7]

11   **VI.     STATEMENT OF FACTS**

12        37.      According to a 2018 report by the Pew Research Center, the vast majority of

13   Americans—95%—own a cellphone; 77% of Americans own smartphones.[8]  Globally, an

14   estimated 5 billion people are connected through mobile devices, with approximately one-half of

15   those using smartphones.[9]  The overwhelming majority of mobile devices run on one of two

16   operating systems: Android or iOS, which are developed by Google and Apple, respectively. [10]

17        38.      On each of these operating systems, users expect to customize their devices to

18   their preferences by "managing" various functionalities of their devices.  They can, for example,

19   change their time zone, preferred language, or screen brightness.  Included among these

20   functionalities is the option to turn on or off the retention of "Location History"—that is, the

21   individual's precise historical location information.[11]  In its Terms of Service, Google represents

22   that it "will respect the choices you make to limit sharing or visibility settings in your Google

23   

24   [7] *Id.*

     [8] Pew Research Center, *Mobile Fact Sheet* (February 5, 2018) (Ex. 6).

25   [9] David George et al., *Global Mobile Trends 2017,* GSMA Intelligence (September 2017) (Ex. 7).

26   [10] James Vincent, *99.6 percent of new smartphones run Android or iOS*, The Verge (February 16, 2017) (Ex. 8).

27   [11] As used herein, "location information" refers to any and all data obtained through an
     individual's mobile device, which allows for the identification of that individual's location either

28   in the present or, when stored, through historic record.

Account." [12]   In its Privacy Policy, Google states that "across our services, you can adjust your privacy settings to control what we collect and how your information is used."[13]  Up until the time its true conduct became public, Google also falsely represented that, for its operating system, turning "Location History" off would prevent the company from storing location data reflecting where an individual using a device with its Android operating system had been.

39.     In addition to developing the Android operating system, Google also develops apps that can be downloaded on Android and iOS devices.  Google purports to allow users to make customized settings and privacy decisions at the app level.  Google tells users that they can choose to share location information with some apps, for specified purposes, but choose *not* to share that information with other apps.  Google also claims that a user can share location information with a certain app at some times (*e.g.*, when the app is in active use), but not at others.  Google falsely represented that, for its apps, turning "Location History" off would prevent the company from storing location data reflecting in detail where an individual with Google apps downloaded had been.

40.     Google specifically—though falsely—assured users of both its apps and its mobile devices that it would not store their location information if users denied or revoked its permission to do so through their privacy settings.  Google's support page on the subject stated: "You can turn off Location History at any time. **With Location History off, the places you go are no longer stored**."[14]

41.     Google purportedly instructed Android mobile device owners how to turn off Location History on their devices, by going to the device's "Settings" tab, as follows:[15]

---

[12] *Google Terms of Service* (Ex. 5).

[13] *Google Privacy Policy* (last modified January 22, 2019) (Ex. 9).  Although Google amended its privacy policy sixteen times in the past five years, it has consistently made representations to the effect that users control what data Google collects about them through settings that users can customize.

[14] Archived version of Google Account Help, *Manage or delete your Location History*, (August 16, 2018) (emphasis added) (Ex. 4).

[15] *Id.*

1. On your Android phone or tablet, open your device's Settings app ⚙ > **Google** >
   **Google Account.**
2. At the top, tap **Data & personalization.**
3. Under "Activity controls," tap **Location History.**
4. Turn **Location History** on or off for your account or devices:
   - For your whole account and all devices associated with it, turn **Use Location History**
     on or off.
   - For a certain device only, turn that device's history on or off.

42.     For users of Apple devices such as iPhones and iPads, Google purported to explain that a user must log into her online account with Google to turn off "Location History" (as it does not control the Apple device's operating system), and that turning "Location History" off would "stop[] saving new location information":[16]

### Turn Location History on or off                                    ⌃

Location History stores your location data from all devices that are signed in to your Google Account.

**Note:** When you pause Location History, it doesn't delete previous activity, it only stops saving new location information.

## Using your browser

1. Go to the Location history ↗ section of your Google Account.
2. Turn **Location History** on or off.
   - **Off:** Confirm by tapping **Pause.**
   - **On:** Confirm by tapping **Turn on.**

## Using the Google app

1. Open the Google app G.
2. At the top right, tap your account photo. You might need to sign in.
3. Tap **My Account** > **Personal info and privacy** > **Activity controls** >
   **Google Location History.**
4. Turn the setting on or off. If you turn it off, confirm by tapping **Stop
   storing location.**

---

[16] Archived version of Google Account Help, *Location history for iPhone & iPad* (July 30, 2018) (Ex. 10).

43.     Google affirmatively represented to both Android and Apple device users that turning off "Location History" would result in Google ceasing to store an individual's location information.

**A.     Google Stores Location Information Regardless of Privacy Settings.**

44.     Consistent with the instructions for users to manage Google's permissions respecting their location information described above, Google published a support page to instruct users on how to manage and delete the user's "Location History" which stated, "[w]ith Location History off, the places you go are no longer stored.  When you turn off Location History for your Google Account, it's off for all devices associated with that Google Account."[17]

45.     Users who visited Google's Privacy Policy for more information received further confirmation that unless they opted to turn "Location History" *on*, they were not "allow[ing]" Google to store information about their location, from any Google app or service.  Specifically, as of at least December 18, 2017, Google's Privacy Policy expansively stated "[w]hen you use Google services, we may collect and process information about your actual location. We use various technologies to determine location, including IP address, GPS, and other sensors that may, for example, provide Google with information on nearby devices, Wi-Fi access points and cell towers."[18]  The phrase "may collect and process information about your actual location" was hyperlinked, and clicking on it for more information took users to a page further illustrating that, through the Location History setting, users could control Google's permissions to store location data used by any Google app or service:

> Location History **allows** Google to store a history of your location data from all devices where you are logged into your Google Account and have enabled Location Reporting. Location History and Location Reporting data may be used by any Google app or service.[19]

---

[17] Archived version of Google Account Help, *Manage or delete your Location History*, (August 16, 2018) (Ex. 4).

[18] Archived version of Google Privacy Policy (last modified December 18, 2017) (Ex. 11).

[19] Archived version of "may collect and process information about your actual location" page hyperlinked from Google Privacy Policy (last modified December 18, 2017) (emphasis added) (Ex. 12).  Additional hyperlinked text ("Learn More") within this hyperlinked page routed users back to the Account Help page *Manage or delete your Location History*, which contained

1    46.    Google's representations were false.  As the AP Report revealed, turning off

2    "Location History" only stopped Google from creating a location timeline that the *user* could

3    view.  Google, however, tracked and continues to track the device users and store a meticulous

4    record of their precise locations.

5    47.    Contrary to Google's representations, even when "Location History" is turned off,

6    whether at the Google Account level or the individual device level, a user's location is stored and,

7    on information and belief, continues to be stored, every time Google-controlled features on her

8    mobile device are active, including, *inter alia*, the Google Maps app, weather apps, and searches

9    made with the device's mobile browser.  As reported by the AP:

10   
11   > For example, Google stores a snapshot of where you are when you
     > merely open its Maps app. Automatic daily weather updates on
12   > Android phones pinpoint roughly where you are. And some
     > searches that have nothing to do with location, like "chocolate chip
13   > cookies," or "kids science kits," pinpoint your precise latitude and
     > longitude — accurate to the square foot — and save it to your
     > Google account.[20]

14   48.    European researchers have corroborated the AP's findings.  On November 27,

15   2018, Norwegian consumer protection organization Forbrukerrådet published a report entitled

16   "Every Step You Take, *How deceptive design lets Google track users 24/7*," which examined

17   "how Google continuously tracks the location of its users through a number of different

18   technologies . . .  implemented and enabled through the features "Location History" and "Web &

19   App Activity," with reference to user testing of Android-enabled devices.[21]  Forbrukerrådet

20   concluded that consumers are deceived into being tracked when they use Google services,

21   through multiple techniques including hiding information and deceptive design, and that Google's

22   practices are unethical.[22]

23   49.    Google's secretive location tracking practices are not only deceptive and unethical,

24   they are directly contrary to users' reasonable expectations of privacy.  As Princeton computer

25   _____

     instructions to "Turn Location History on or off" (*see* Ex. 4).
26   [20] AP Report (Ex. 2).
     [21] Forbrukerrådet (Norwegian Consumer Council), *Every Step You Take, How deceptive design*
27   *lets Google track users 24/7* (November 27, 2018) (Ex. 13).
28   [22] *Id.*

1  scientist and former chief technologist for the Federal Communications Commission's

2  enforcement bureau, Jonathan Mayer, stated: "If you're going to allow users to turn off something

3  called 'Location History,' then all the places where you maintain location history should be

4  turned off. That seems like a pretty straightforward position to have."[23]

5        **B.    Google's Conduct Poses a Serious Threat to Personal Privacy, Personal**
            **Security, and Personal Dignity.**

6

7        50.    Google's "Location History" is profoundly granular and revealing.  Each time

8  Google captures an individual's location information, it stores several data points, including but

9  not limited to: timestamp (the exact moment in time that the data was captured), latitude,

10  longitude, velocity, altitude, and activity.  The "activity" data point even appears to reflect *how* an

11  individual is moving.  Activity values include "IN_VEHICLE," "IN_ROAD_VEHICLE,"

12  "IN_FOUR_WHEELER_VEHICLE" (Figure 1);[24] "EXITING_VEHICLE" (Figure 2);

13  "WALKING," "ON_FOOT" (Figure 3); "STILL" (Figure 4); and "TILTING" (Figure 5).

14                          ***Figure 1:***

```
}, {
  "timestampMs" : "1542042899598",
  "latitudeE7" : 347366509,
  "longitudeE7" : -922687181,
  "accuracy" : 44,
  "activity" : [ {
    "timestampMs" : "1542042874895",
    "activity" : [ {
      "type" : "IN_VEHICLE",
      "confidence" : 100
    }, {
      "type" : "IN_ROAD_VEHICLE",
      "confidence" : 100
    }, {
      "type" : "IN_FOUR_WHEELER_VEHICLE",
      "confidence" : 99
    } ]
```

---

[23] AP Report, *supra* n.2 (Ex. 2).

[24] The following figures show location information collected by Google, captured by forensic testing conducted as part of counsel's investigation of this matter, and do not show Plaintiffs' location information or other data.

***Figure 2:***

```
}, {
   "timestampMs" : "1537297638882",
   "activity" : [ {
      "type" : "EXITING_VEHICLE",
      "confidence" : 100
   } ]
```

***Figure 3:***

```
}, {
   "timestampMs" : "1537296563477",
   "activity" : [ {
      "type" : "ON_FOOT",
      "confidence" : 100
   }, {
      "type" : "WALKING",
      "confidence" : 100
   } ]
```

***Figure 4:***

```
}, {
   "timestampMs" : "1541747209048",
   "latitudeE7" : 347430195,
   "longitudeE7" : -922773730,
   "accuracy" : 16,
   "velocity" : 0,
   "altitude" : 91,
   "verticalAccuracy" : 32,
   "activity" : [ {
      "timestampMs" : "1541747208913",
      "activity" : [ {
         "type" : "STILL",
         "confidence" : 100
      } ]
```

***Figure 5:***

```
}, {
   "timestampMs" : "1541723208156",
   "latitudeE7" : 347428915,
   "longitudeE7" : -922776871,
   "accuracy" : 55,
   "velocity" : 0,
   "heading" : 231,
   "altitude" : 273,
   "verticalAccuracy" : 128,
   "activity" : [ {
      "timestampMs" : "1541719739275",
      "activity" : [ {
         "type" : "TILTING",
         "confidence" : 100
      } ]
   } ]
```

51.     Additional activity values include "RUNNING," "IN_RAIL_VEHICLE," "IN_TWO_WHEELER_VEHICLE," "ON_BICYCLE," and "UNKNOWN."

52.     Google also measures, on a scale from 1 to 100, how sure it is that the user is actually engaging in that type of movement.[25]

53.     Thus, for a given individual, Google not only stores a record of where, specifically, she is, at what time, and for what duration; Google also discerns how fast she is traveling, whether it is on foot or in a vehicle (and which specific vehicle), and whether she is entering or exiting a given vehicle.

54.     The location information stored by Google in violation of its representations and Class members' permissions is personally identifying, in and of itself.  When an individual's precise location is stored over a period of time, access to that stored location information provides an intimate, and individually-identifying, profile of that individual's life.  Moreover, Google's stored location information is linked with *other* personally-identifying information, including an individual's name, email address, and potentially many other personally-identifying data points. Specifically, all location information stored by Google is stored in an individual's Google Account where it is linked to the other data in that account, including the individual's name and email address.  These are required data points for establishing a Google Account.

55.     In 2012, Google announced that it would eliminate distinctions between data collected from different Google products and services for purposes of its advertising, data analysis, and other activities, saying specifically that Google "may combine information you've provided from one service with information from other services," and "[w]e'll treat you as a single user across all our products."[26]  The current iteration of Google's Privacy Policy also

---

[25]  Douglas C. Schmidt, *Google Data Collection*, Digital Content Next (August 15, 2018), at pp. 12-13 (Ex. 14).

[26] Alma Whitten, Updating our privacy policies and terms of service, Google Official Blog (January 24, 2012) (Ex. 15).  *See also* Eyder Peralta, *Google's New Privacy Policy Will Allow Tracking Across Services*, NPR (January 25, 2012) (Ex. 16).  Reports at the time indicated that Google's motivation was to improve Google's ability to monitor users' interaction with and responses to advertising campaigns—consolidated data from multiple distinct interfaces would, for example, provide Google more opportunities to determine whether users made a purchase using a different interface than the one in which the ads were initially shown.

provides that Google "may" combine the location information it acquires with "information that's publicly available online or from other public sources," as well as information "about you from trusted partners, including marketing partners," and "information from advertisers to provide advertising and research services on their behalf."[27]  In addition to data Google collects about users from other sources, any user's Google Account may include additional items of personally identifying information input by the user, such as the user's phone number, address, and payment information.

56.   Google has created the means to illicitly compile extremely valuable, personal, and important time-stamped data points, contrary to users' express direction to Google.  This data would enable Google to cross-reference and conduct unlimited analysis toward unmerited, improper, and monetizable insights into users' private lives, including without limitation into their social, professional, and other relationships, whether and to what extent they perform activities or travel with others, when two people first meet, how they might influence one another, and when common living arrangements and other relationships begin and end.

57.   The collection and storage of users' geolocation data itself violated users' reasonable expectations of privacy, and also puts them at increased risk for further privacy violations.  Data breaches and other security vulnerabilities are increasingly common among companies that store user data.  As a major aggregator of valuable personally identifying and other information, Google is an obvious target for hackers.  Any information that Google stores may eventually be stolen, if it has not already been.  As recently as October 2018, for example, Google announced that it had discovered a vulnerability in its Google+ program that exposed personal account information to third-parties, contrary to its user agreements and representations. Reportedly, in order to protect its public image, Google failed to disclose that information to the public for months, and came clean only *after* the security risk was discovered by the media.[28]

---

[27] *Google Privacy Policy* (last modified January 22, 2019), *supra* n.13 (Ex. 9).

[28] Douglas MacMillan and Robert McMillan, *Google Exposed User Data, Feared Repercussions of Disclosing to Public*, The Wall Street Journal (October 8, 2018) (Ex. 17). Shortly thereafter, Google shut down the Google+ product entirely.  Bill Chappell, *Google Accelerates Google+ Shutdown After 52.5 Million Users' Data Exposed*, NPR (Dec. 11, 2018) (Ex. 18).

58.     In addition, despite security measures in place, individual Google accounts are sometimes compromised and may be taken over by criminals and others who would use the information stored there for nefarious purposes, such as stalking, harassment, identity theft, and phishing the associates of the targeted Google user.  In many respects, the *only* sure way to prevent sensitive location histories from falling into unauthorized hands is to keep no records in the first instance.  Through its duplicitous conduct, misrepresentations, and omissions here, Google denied Plaintiffs and Class members the very option it expressly—and falsely—touted it was providing them.

**C.**     **Preventing Google's Storage of Location Information—If Possible—Is Far More Complex than Google Represents.**

59.     Google's first location-enabled mobile service, "My Location," launched as part of Google Maps on November 28, 2007.  In its introduction to the service, Google said that My Location used cell tower communications to pinpoint the user's real-time location in the form of a "magical blue circle" displayed on Google Maps. [29]

60.     Acknowledging that users view their location data as highly sensitive, Google's My Location launch announcement included an informational video that promised users who enabled the My Location feature complete anonymity, and described the feature as a transient use by Google of cellular tower data to "display" (not store) location information, at such time as "My Location" was in use (not indefinitely):

> So how does it work?  Each time you use your phone to make a call, send a text message, or view a web site, the information goes through towers which provide your phone with reception.  A tower picks up your call and connects you to your aunt Molly. The same thing happens when you fire up Google Maps for mobile.  The tower gives you the reception you need to access map information. These towers also help Google **display** your location.  Each tower has a unique footprint.  **When you access My Location, Google calculates an estimated location of your handset based on the unique footprint of nearby towers.**  It's not GPS, but it comes pretty close.  The location accuracy may vary and the service gets better the more you use it.  **You might ask, does Google know where I am?  The answer is no.**  In order for you to receive a

---

[29] Mike Chu, *New magical blue circle on your map*, Google Mobile Blog (November 28, 2007) (transcription of excerpt from embedded video at 1:15-2:14) (Ex. 19).

normal call, your phone needs to locate and connect to a nearby tower.  Google uses the same location information for My Location. It tells Google where a handset is, but not who's using it, their phone number, or any other personal information.  **And if you want, you can always disable the feature. . . .**[30]

61.    On February 4, 2009, Google launched Latitude, another feature of Google Maps, which transmitted the real-time location information described above to other Latitude subscribers (specified by the user), on an opt-in basis.[31]  In connection with the launch of this feature, Google again promised to protect and respect user privacy, and specifically acknowledged the sensitivity of location data, stating: "Fun aside, **we recognize the sensitivity of location data**, so we've built fine-grained privacy controls right into the application."[32]  Nine months later, on November 10, 2009, Google introduced a new "Location History" feature, which would allow users to "store, view, and manage" their own past Latitude locations indefinitely, assuring users that "[o]f course, you can always delete selected history or your entire location history at any time."[33]

62.    In or around July 2013, Google retired Latitude.  Google has not retired Location History.

63.    Contrary to the plain language and simple process set forth in the Google support pages referenced above (*e.g.*, "With Location History off, the places you go are no longer stored."), reports after the AP Report initially suggested that in order to *actually* and effectively prevent Google from storing location information, users must navigate to and understand an additional, deeply-buried and non-obvious setting titled "Web & App Activity."

64.    Following publication of the AP Report, it was reported that a user could prevent tracking and storage of location information by Google by turning off the "Web & App Activity" setting on her Google account.  To do so, reports indicated that a user must sign in to her Google

---

[30] *Id.*

[31] Charles Mendis, *Locate your friends in real time with Google Latitude*, Google Mobile Blog (February 4, 2009) (Ex. 20).

[32] Vic Gundotra, *See where your friends are with Google Latitude*, Google Official Blog (February 4, 2009) (emphasis added) (Ex. 21).

[33] Chris Lambert, *Google Latitude, now with Location History & Alerts*, Google Mobile Blog (November 10, 2009) (Ex. 22).

1   account on a browser (if an iPhone user) or through the Android settings menu (on an Android

2   device).  In the browser, she can access her account settings by finding "Google Account" in the

3   dropdown menu in the upper right-hand corner, then select "Personal Info & Privacy,"

4   choose "Manage your Google Activity," then click "Go to Activity Controls."  Once there, a

5   setting called "Web & App Activity" is revealed, which can then be toggled off.  A series of

6   screenshots demonstrating these steps is attached hereto as Exhibit 23.

7          65.     Thus, unless "Web & App Activity" is disabled *in addition to* "Location History,"

8   Google continues to store individuals' location information.  This is made evident in the AP

9   Report, which included a visual map of the movements of its investigator, who carried an

10   Android phone with Location History turned off (but with "Web & App Activity" enabled). The

11   map shows the location information that was tracked and stored by Google, and includes the

12   investigator's train commute on two trips to New York and visits to The High Line park, Chelsea

13   Market, Hell's Kitchen, Central Park and Harlem. To protect his privacy, the AP did not plot the

14   most common marker stored by Google—his home address.





66.     Although multiple media outlets, following publication of the AP Report, suggested that turning off "Web & App Activity" (on top of disabling "Location History") would be effective to prevent the storage of location information, and some attributed the information to Google,[34] express confirmation of the overall effectiveness of this process seems to be absent from Google-branded webpages.

67.     As of the date of this filing, the Google Support page on the topic does not definitively confirm that turning off "Web & App Activity" would actually prevent Google from storing specific, time-stamped, precise location information about a user.  The page does not state that turning off "Web & App Activity" terminates all storage of users' location data; rather, the page as amended following revelations by the AP, now warns that after Location History has been turned off, "[i]f you have other settings *like* Web & App Activity turned *on*" location data *may still be saved*.[35]

---

[34] *See, e.g.*, Emily Dreyfuss, *How to Stop Google From Tracking Your Location*, Wired (August 13, 2018) ("To actually turn off location tracking, Google says you have to navigate to a setting buried deep in your Google Account called Web & App Activity, which is set by default to share your information, including not just location but IP address and more.") (Ex. 24); Associated Press, *Google Found to Track the Location of Users Who Have Opted Out*, NBC News (August 13, 2018) ("To stop Google from saving these location markers, the company says, users can turn off another setting, one that does not specifically reference location information. Called 'Web and App Activity' and enabled by default, that setting stores a variety of information from Google apps and websites to your Google account.") (Ex. 25).

[35] Google Account Help, *Manage Your Location History* (last visited April 29, 2019) (Ex. 26).

68.     Similarly, the AP reported in August 2018 that a Google spokesperson all but acknowledged that Google discerns and stores its users' location histories through other means, the details and extent of which Google has not publicized.  The spokesperson reportedly stated, "There are a number of different ways that Google may use location to improve people's experience, *including*: Location History, Web and App Activity, *and* through device-level Location Services."[36]  Accordingly, it appears that users may need to adjust even more settings to prevent Google from storing location information, or indeed, it may be that no amount of denying "permissions" to Google would protect one's location information from being stored.  In all events, Google has failed to disclose the true state of affairs to Plaintiffs and Class members, and instead affirmatively misrepresented that they could protect their privacy by opting out of having their location information stored.

69.     To the extent that the reports regarding "Web & App Activity" settings are correct, the process to prevent one's location data from being stored was not merely counter-intuitive, it was deceptive:  Google obfuscated that the "Web & App Activity" setting is related to location, and instead represents that it is the "Location History" setting that controls geolocation tracking. Indeed, in Google's description of these "Controls," the "Web & App Activity" setting resides directly *above*—but separate and apart from—the "Location History" option, indicating that settings related to location and those related to web and app activity are distinct.[37]  Further, until at least November 2018, Google's vague description of what "Web & App Activity" does—that it "[s]aves your activity on Google sites and apps to give you faster searches, better recommendations, and more personalized experiences in Maps, Search, and other Google services"[38]—would not put a user on notice that it relates to location tracking accurate to less than

---

[36] AP Report, *supra* n.2 (emphasis added) (Ex. 2).

[37] Archived version of Google Account Help, *Activity Controls* (November 3, 2018) (Ex. 27).

[38] *Id.* (Ex. 27). Prior versions of this explanation were even less informative.  In October of 2016 and May of 2018 (and, on information and belief, throughout the interim), Google described "Web & App Activity" as a setting that would "Save your search activity on apps and in browsers to make searches faster and get customized experiences in Search, Maps, Now, and other Google products." (Ex. 28).  In November 2018, Google revised its description of Web & App Activity to acknowledge that it "[s]aves . . . associated info like location." *See Activity Controls,* https://myaccount.google.com/intro/activitycontrols (visited November 19, 2018; last visited

a meter.  For a user to obtain any more detail about the "Web & App Activity" setting, she had to click through to "[l]earn more," then scroll to what's saved as "Web & App Activity," and open a section that is by default collapsed, entitled,  "[i]nfo about your searches & more" before Google even *mentioned* that the setting is related to location tracking.[39]  A user therefore had insufficient notice of the storage and tracking of location information, particularly in light of separate representations and reporting that the "Location History" setting is what allows individuals to control Google's storage and tracking of their location information.

70.     Google intentionally hides the nature of its location tracking and obfuscates the opt-out process (if the opt-out process is indeed effective).  Before its conduct was uncovered in the AP Report, Google provided at least *three* support pages on location titled: "Manage or delete your Location History,"[40] "Turn location on or off for your Android device,"[41] and "Manage location settings for Android apps."[42]  Strikingly, at the time this litigation commenced, none of these made any mention of "Web & App Activity"—to date, the only way identified to *potentially* prevent Google from tracking user location.

**D.     Google's Ineffective Response to the AP Report and to This Litigation Confirms and Continues Its Deceptive Behavior.**

71.     In its initial response to the AP Report on August 13, 2018, Google did not deny storing users' location information in contravention of their settings, but rather defended itself by falsely stating: "We provide clear descriptions of these tools."[43]

72.     Google's assertion that "clear descriptions" exist is incorrect.  *First*, Google disingenuously and publicly represented that preventing the storage of location data is as easy as

---

April 29, 2019).

[39] These actions would take the user to Google Search Help, *See & control your search activity* available at https://support.google.com/websearch/answer/54068 (visited November 16, 2018, last visited April 29, 2019); (Ex. 29).

[40] Archived version of Google Account Help, *Manage or delete your Location History*, (August 16, 2018) (Ex. 4); Revised archived version of same (August 18, 2018) (Ex. 30).

[41] Archived version of Google Account Help, *Turn location on or off for your Android device* (August 16, 2018) (Ex. 31).

[42] Android Help, *Manage location settings for Android apps* (July 29, 2018) (Ex. 32).

[43] AP Report, *supra* n.2 (Ex. 2).

1  turning "off" a settings switch, all the while aware that such action would be ineffective.  Google

2  silently endorsed well-known technology periodicals that, as set forth in paragraph 106,

3  propagated Google's falsehood that toggling off "Location History" is an effective tool to prevent

4  tracking.  *Second*, while perpetuating the myth of an effective "Location History" switch, Google

5  failed to make reasonably clear to users that they must take at least one wholly separate,

6  complicated, and poorly-labeled route in order to turn off location tracking (if this route is in fact

7  effective), *i.e.*, locating, identifying, and understanding a deeply-buried and non-obvious setting

8  titled "Web & App Activity."[44]

9        73.    Three days after the AP Report was published, on August 16, 2018, Google

10  reversed course and revised the description on its help page for the "Location History" setting—

11  which previously stated simply "With Location History off, the places you go are no longer

12  stored"—to read:

13      This setting does not affect other location services on your device, like
        Google Location Services and Find My Device. Some location data

14      may be saved as part of your activity on other services, like Search and
        Maps. When you turn off Location History for your Google Account,

15      it's off for all devices associated with that Google Account.[45]

16        74.    With this revision, Google disclosed *for the first time* that Google "may" track

17  "some" users even after they have turned "Location History" off.

18        75.    Google has since amended its public-facing statements further.  In addition to

19  revealing that "[s]ome location data may continue to be saved in other settings," Google now

20  provides more previously-concealed "examples" of how Google "may" collect and store

21  information regardless of a user's Location History permissions, including through the user's

22  "camera app."[46]

23        76.    However, Google's new language remains vague, ambiguous, and deceptive—

24  particularly through the use of unclear language such as "*some* location data" and "*may* collect

25

---

26  [44] This function is set by default to share the user's information, including location.

27  [45] Compare Ex. 4 (August 16, 2018 archived version captured at 04:09 a.m.) with Ex. 30 (August 18, 2018 archived version).

28  [46] *Manage Your Location History*, *supra* n. 35 (Ex. 26).

and store information."  Google fails to clearly and definitively disclose what location data is saved, and when.  In January 2019, the French National Data Protection Commission ("CNIL") addressed complaints regarding Google's data collection and use disclosures, and ultimately fined Google €50 million for failing to be transparent as required by the European Union's General Data Protection Regulation ("GDPR").  In its reported findings, CNIL noted, among other things, that relevant information about Google's geolocation tracking practices is "accessible after several steps only," that "information is not always clear nor comprehensive," and that "[u]sers are not able to fully understand the extent of the processing operations carried out."[47]

77.     In an amendment to its Privacy Policy dated January 22, 2019, Google introduced a new and dramatically different explanation of "Location History."  Whereas Google previously and pervasively described Location History as the tool that would "allow" Google to store a history of location data from any source (see *supra* paragraph 45), which users could turn "off" to prevent location data from being stored (see *supra* paragraphs 40-45), Google has now redefined it altogether, as nothing more than "a private map of where you go with your signed-in devices,"[48] providing insufficient explanation of its functioning.

78.     Further, Google still fails to specify what, if any, location data tracking is ceased when a user turns "Location History" off.  Google *still* fails to clearly disclose the "Web & App Activity" setting, and how (and whether) it, or any other number of permissions settings, can be used to effectively prevent Google from recording location information.  As discussed at Section VI.F, *infra*, as of the filing of this Consolidated Complaint, when an individual queries Google's Help Center on how to stop Google from tracking location information, Location History is still presented as an effective tool.

---

[47] CNIL, *The CNIL's Restricted Committee Imposes a Financial Penalty of 50 Million Euros against Google LLC* (January 21, 2019) (Ex. 33).
[48] *Google Privacy Policy* (last modified January 22, 2019), *supra* n.13 (Ex. 9).

**E.**   **Google's Surreptitious Storage of Location Data Defies Reasonable Expectations of Privacy and Egregiously Violates Established Social Norms.**

79.     Each of the following acts defy social norms and invade reasonable privacy expectations: Tracking and storing detailed location information contrary to users' consent, affirmatively misleading users regarding their ability to opt out, and failing to disclose that a history of users' locations are stored in perpetuity.  Normally, mobile device and Internet users such as Plaintiffs are able to control the flow of sensitive information about themselves through "settings" and "permissions" that they grant, or withhold, from third parties, particularly private parties such as Google.  Plaintiffs' and Class members' expectations that those settings and permissions would be heeded and effective, and that they could travel without creating a record of their movements, are eminently reasonable.

80.     Google falsely represented to Plaintiffs and Class members that it would not store their location information, thus creating the false impression that Class members could use Google's services in a privacy-protective manner.  Insofar as Google might need location information to provide class members with Google services such as Google Maps, with Location History disabled, any authorization to access location information for those services would only be granted for a specified, limited, and *transient* purpose.  By disabling Location History, Plaintiffs directed Google not to store such information for any subsequent access, analysis, or use.  Storage creates additional risks of privacy harms, including because if location information is not stored, it cannot subsequently be used. Moreover, the storage of location information creates an individually-identifiable, comprehensive record of that person, reflecting a wealth of detail about her associations ranging from familial to political to professional to religious and more.

81.     Plaintiffs and Class members took specific steps to protect their privacy and personal security (as well as the privacy and security of their minor children), and made reasonable efforts to stop Google from storing information regarding their whereabouts and day-to-day activities.  Based on Google's representations and omissions, context, and industry norms, they expected Google to heed and follow their instructions and, as a result, expected that their

whereabouts would be *private*, not stored on Google's servers along with other personally-identifying information and data.  Those reasonable expectations were consistent with sentiments that are widely shared in American society and elsewhere, and grounded in long-standing social norms and jurisprudence protecting privacy.

### 1.  Plaintiffs' Expectations of Privacy are Enshrined in Law.

82.    Invasion of privacy has been recognized as a common law tort for more than a century.  In *Griswold v. Connecticut*, 381 U.S. 479 (1965), the Supreme Court confirmed the primacy of privacy rights, explaining that the Constitution operates in the shadow of a "right of privacy older than the Bill of Rights."  Most recently, the Supreme Court specifically recognized the reasonable expectation of privacy a person has in the location information generated by her cell phone, in *Carpenter v. United States*, 138 S. Ct. 2206 (2018).  For its part, California amended its constitution in 1972 to specifically enumerate a right to privacy in its very first section.  *See* Cal. Const. Art. I, § 1.

83.    The law provides especially robust protections for geolocation privacy.  In 1998, the California Legislature enacted California Penal Code 637.7, which states "No person or entity in this state shall use an electronic tracking device to determine the location or movement of a person."  (Cal. Pen. Code, § 637.7 (a)).  This measure was accompanied by the statement that reads: "The Legislature finds and declares that the right to privacy is fundamental in a free and civilized society and that the increasing use of electronic surveillance devices is eroding personal liberty. The Legislature declares that electronic tracking of a person's location without that person's knowledge violates that person's reasonable expectation of privacy." (Stats. 1998, ch. 449, § 1).

### 2.  Plaintiffs' Expectations Reflect Widely-Held Social Norms.

84.    As observed by the Supreme Court in *Carpenter*, a smartphone, tablet, or other mobile device is a constant in many people's lives. Indeed, an Internet-connected digital device is a pre-requisite for modern life, necessary for the full continuum of daily activities, from work to commerce to communication (both professional and personal) to obtaining basic government services.  Because of the indispensable nature of connected devices to the entire spectrum of daily

1    life, many Americans carry their mobile devices everywhere they go.  In a 2015 study, 94% of

2    smartphone owners said they carry their phone with them frequently, and 82% say they never or

3    rarely turn their phones off.[49]  Likewise, Plaintiffs here carry their devices with them on a regular

4    basis throughout the day.

5    85.    In light of the ubiquity of Internet-enabled mobile devices, and in light of those

6    same devices' capacity for near perfect surveillance, society unequivocally has embraced the need

7    to secure and enforce the right of all people to determine for themselves when, and to what extent,

8    data produced by these devices regarding peoples' lives and activities will be shared, cataloged,

9    and analyzed.

10    86.    These social norms and expectations are also well-established outside the United

11    States.  On November 27, 2018, the same day Forbrukerrådet published its research regarding

12    unethical location tracking practices by Google (*supra*, paragraph 48), seven European consumer

13    organizations—Forbrukerrådet, Consumentenbond (The Netherlands), Ekpizo (Greece), dTest

14    (Czech Republic), Zveza Potrošnikov Slovenije (Slovenia), Federacja Konsumentów (Poland)

15    and Sveriges Konsumenter (Sweden)—filed complaints with their national data protection

16    authorities, alleging practices by Google similar to the allegations herein.[50]  In January 2019, the

17    Swedish Data Protection Authority *Datainspektionen* demanded that Google explain why

18    Google's access to the location data of users of mobile users through "Location History" and

19    "Web & App Activity" do not violate the GDPR.[51]  On Monday, January 21, 2019, Dutch

20    consumer organization Consumentenbond presented Google with a petition signed by more than

21    50,000 consumers that objected to the secret storage of location information by Google. [52]

22

23

---

24    [49] Lee Rainie and Kathryn Zickuhr, *Americans' Views on Mobile Etiquette*, Pew Research Center (August 26, 2015) (Ex. 34).

25    [50] Press Release, *Consumer groups across Europe file complaints against Google for breach of GDPR* (November 27, 2018) (Ex. 35).

26    [51] Datainspektionen, *Request for Reply and Further Clarification to Google LLC* (January 18, 2019) (Ex. 36).

27    [52] Janene Pieters, *Dutch Petition against Google's Location Tracking Gets 50,000 Signatures*, Nltimes.nl (January 22, 2019) (Ex. 37).

28

87.    Google itself has long acknowledged the importance of user control over privacy settings. In 2009, when announcing its Latitude location-sharing feature, Google again emphasized both the sensitivity of location data and the privacy implications: "Fun aside, we recognize the sensitivity of location data, so we've built fine-grained privacy controls right into the application."[53] And when Location History was first launched, in 2009, Google promised that users "can disable it at any time."[54]  In September of this year, Google's Chief Privacy Officer testified to United States Senate Committee on Commerce, Science, and Transportation that "users trust [Google] to keep their personal information confidential *and under their control*."[55] In testimony on December 11, 2018 at the House Judiciary Committee hearing on Transparency and Accountability, Google's Chief Executive Officer expressly agreed that geolocation tracking of consumers (such as Plaintiffs and Class members here) should occur, if at all, only on an *opt-in* basis because precise geolocation information is "considered highly, highly sensitive."[56]

88.    According to a poll by the Pew Research Center, 93% of adults believe that being in control of who can get information about them is important, and 90% believe that controlling what information is collected about them is important.[57]  Additionally, Americans say they do not approve of observation without consent: 88% say it is important that they not have someone watch or listen to them without their permission.[58]

---

[53] *See, supra*, n.32 (Ex. 21).

[54] *See, supra*, n.33 (Ex. 22).

[55] Written Testimony of Keith Enright Chief Privacy Officer, United States Senate Committee on Commerce, Science, and Transportation, *Examining Safeguards for Consumer Data Privacy*, (September 26, 2018) (emphasis added) (Ex. 38).

[56] Representative Karen Handel asked: "For years, a Federal Trade Commission, on a bipartisan basis, has affirmed that precise geolocation information is considered highly, highly sensitive. And that consumers must opt in to that. Do you agree with that?"  Google's Chief Executive Officer responded: "Yes, I agree with that." *See* Testimony of Sundar Pichai, Google Chief Executive Officer, United States House of Representatives Judiciary Committee, *Transparency and Accountability: Examining Google and its Data Collection, use and Filtering Practices* (Dec. 11, 2018) at 53 (Ex. 1).

[57] Mary Madden and Lee Rainie, *Americans' Attitudes About Privacy, Security and Surveillance*, Pew Research Center (May 20, 2015) (Ex. 39).

[58] *Id.*

89.     According to a 2013 Pew Research study, "86% of Internet users have tried to be anonymous online and taken at least one step to try to mask their behavior or avoid being tracked."[59]  For example, 64% percent of adults claim to clear their cookies and browser histories in an attempt to be less visible online.[60]  Such behaviors exemplify people's expectation that their personal information—including their location—will not be tracked by others without their consent or permission, and that settings claiming to allow them to protect such information will be effective.

90.     A 2010 study comparing the opinions of young adults between the ages of 18 to 24 with other age categories (25-34, 35-44, 45-54, 55-64, and 65+) found that a large percentage of young adults were in harmony with older Americans regarding concerns about online privacy, norms, and policy suggestions.[61]  For example, 88% of young adults surveyed responded that "there should be a law that requires websites and advertising companies to delete all stored information about an individual"; for individuals in the 45-54 age range, 94% approved of such a law.[62]

91.     The same study noted that "[o]ne way to judge a person's concern about privacy laws is to ask about the penalties that companies or individuals should pay for breaching them." A majority of the 18- to 24-year-olds polled selected the highest dollar amount of punishment ("more than $2,500") in response to how a company should be fined if it purchases or uses someone's personal information illegally; across all age groups, 69% of individuals opted for the highest fine.  Beyond a fine, approximately half of the sample (across all age groups) chose the harshest penalties for companies using a person's information illegally: putting them out of business and imposing jail time.[63]

---

[59] Lee Rainie, et al., *Anonymity, Privacy, and Security Online*, Pew Research Center (September 5, 2013) (Ex. 40).

[60] *Id.*

[61] Chris Hoofnagle, et al., *How Different Are Young Adults from Older Adults When It Comes to Information Privacy Attitudes & Policies*, University of Pennsylvania Scholarly Commons (April 14, 2010) (Ex. 41).

[62] *Id.*

[63] *Id.*

3.    **Parents Have a Reasonable and Universal Expectation of Privacy for their Children.**

92.    In surreptitiously and deceitfully tracking and recording individuals' location information, Google tracked minor children, a practice that is especially and universally reviled.

93.    Parents' interest in the care, custody, and control of their children is perhaps the oldest of the fundamental liberty interests recognized by society.  There is a strong tradition of parental concern for the nurture and upbringing of children in light of children's vulnerable predispositions.  Our society recognizes that parents should maintain control over who interacts with their children and how, in order to ensure the safe and fair treatment of their children.

94.    By way of example, American society has expressed heightened concern for the exploitation of children in numerous ways:

a.    At common law, children under the age of eighteen do not have full capacity to enter into binding contracts with others.  The law shields minors from their lack of judgment, cognitive development, and experience.

b.    Under state law, children are frequently protected via parental consent requirements.  Cal. Civ. Code § 3344 requires "the prior consent of [a] parent or legal guardian" in order for a person to use the name or likeness of a minor under the age of eighteen for advertising purposes.  The California Education Code does not allow access to personal data collected from students without parental consent.  (Cal. Educ. Code § 49076(a)).  Various bills pending before the California State legislature seek to protect parental autonomy over children engaged in online activities.  In addition, the State of California filed an *amicus curiae* brief in *Fraley, et al. v. Facebook, Inc.*, 11-cv-01726 (N.D. Cal., filed Apr. 4, 2011) in which it stated: "Protecting children's information is of particular importance, because of their still-developing capacities and the potential for misuse of their information to affect their futures."

c.    State laws also outright ban certain forms of targeted advertising to children.  The California Student Online Personal Information Protection Act ("SOPIPA") requires that operators of mobile applications marketed for use in K-12 schools not engage in "targeted advertising," "amass a profile" of children, or sell children's information, based upon

any information, including "persistent unique identifiers" (including geolocation), that the operator has acquired through use of its apps or services.

d.     At the federal level, the Children's Online Privacy Protection Act ("COPPA") protects, *inter alia*, children's Personal Data from being collected and used for targeted advertising purposes without parental consent, and reflects a clear nationwide norm about parents' expectations to be involved in how companies profile and track their children through use of technology.

95.     Legislative commentary about the need for federal law to provide protections for children provides another expression of society's expectation that companies should not track children's activities without obtaining parental consent.  For example, when discussing the need for federal legislation to protect children's privacy—which eventually led to Congress passing COPPA—Senator Richard Bryan (the primary author of the COPPA bill) stated:  "Parents do not always have the knowledge, the ability, or the opportunity to monitor their children's online activities, and that is why Web site operators should get parental consent prior to soliciting personal information.  The legislation that Senator McCain and I have introduced will *give parents the reassurance that when our children are on the Internet they will not be asked to give out personal information to commercial Web site operators without parental consent*."[64]

96.     The advertising industry's own privacy standards, and the self-regulatory agencies which serve it, also support enhanced protections for children online, including obtaining parental consent.  For example, "[t]he majority of advertisers agree with the statement that parents should give their permission for the data collection of their children (89.5%) and teenagers (78.9%)."[65]

97.     In the same vein, the Children's Advertising Review Unit, an arm of the advertising industry's self-regulation branch, recommends that companies take the following

---

[64] *S. 2326: Children's Online Privacy Protection Act of 1998*, Hearing before Senate Subcommittee on Communications, Statement of Sen. Bryan, S. Hrg. 105-1069, at 4 (Sept. 23, 1998) (emphasis added) (Ex. 42).

[65] Kristien Daems, et al., *Advertisers' perceptions regarding the ethical appropriateness of new advertising formats aimed at minors*, J. Marketing Comms. 8 (2017) (Ex. 43).

steps, *inter alia*, to meet consumers' reasonable expectations of privacy and avoid violating the law:

a. Advertisers have special responsibilities when collecting data from children online.  They should take into account the limited knowledge, experience, sophistication and maturity of the audience, and must clearly disclose to website or online service users their information collection and tracking practices, information uses, and the means for correcting or removing the information. These disclosures should be prominent and readily accessible before information is collected.

b. They should disclose passive means of collecting information from children (*e.g.*, navigational tracking tools, browser files, persistent identifiers, etc.) and what information is being collected.

c. They must obtain "verifiable parental consent" before they collect, use or disclose personal information to third-parties, except those who provide support for the internal operation of the website or online service and who do not use or disclose such information for any other purpose.

d. To respect the privacy of parents, they should not maintain in retrievable form information collected and used for the sole purpose of obtaining verifiable parental consent or providing notice to parents, if consent is not obtained after a reasonable time. [66]

98.    Survey research confirms that societal expectations respecting children's rights to be free from  unknown location tracking are fundamental.  A survey published in 2012 by  two leading nonprofit groups, the Center for Digital Democracy and Common Sense Media, found that 91% of both parents and adults believe it is not "OK" for advertisers to collect information about a child's location from that child's mobile phone, and 94% of parents and 91% of adults agree that advertisers should receive the parent's permission before putting tracking software on a child's computer.[67]

---

[66] Children's Advertising Review Unit, *Self-Regulatory Program for Children's Advertising* (2014) (Ex. 44).

[67] Center for Digital Democracy, *New Survey Reveals Strong Support for Updating Children's*

99.     By surreptitiously tracking and storing the location information of minor children, and providing misleading and outright deceptive disclosures regarding its practices, Google has breached parents' and their children's reasonable expectation of privacy, in contravention of privacy norms that are reflected in consumer surveys, centuries of common law, state and federal statutes, legislative commentaries, industry standards and guidelines, and scholarly literature.

### 4.     The Federal Trade Commission Has Identified Surreptitious Tracking and Storage of Location Information as a Deceptive Trade Practice.

100.    The Federal Trade Commission ("FTC" or Agency) has determined that tracking individuals' geolocations without permission (and in contravention of their instructions) is a deceptive trade practice.  Indeed, the FTC expressly weighed in on the legality of the very type of behavior complained of herein, and found it to be a deceptive trade practice, in violation of Section 5 of the Federal Trade Commission Act.

101.    In June 2016, the FTC announced that it had entered into a settlement agreement with a mobile advertising company, InMobi PTE, after the Agency charged InMobi with deceptively tracking the locations of hundreds of millions of people without their knowledge or consent in order to serve advertisements tailored to individual people based on where they lived or places they visited.

102.    In that highly analogous case, the FTC alleged that InMobi represented to its users that: (i) its advertising software would only track users' locations when they opted in to such tracking, and (ii) it would conduct such tracking in a manner consistent with users' device privacy settings.[68]  According to the FTC complaint,[69] however, InMobi was actually tracking consumers' locations whether or not the apps using InMobi's software asked for users' permission to do so,

---

*Online Privacy Protection Act (COPPA): Majority express concerns about new marketing and data-collection practices* (December 6, 2012) (Ex. 45).

[68] Federal Trade Commission, *Mobile Advertising Network InMobi Settles FTC Charges It Tracked Hundreds of Millions of Consumers' Locations Without Permission* (June 22, 2016) (Ex. 46).

[69] *Id.*

and engaged in tracking even when users explicitly *denied* permission to track and store location information.

103.     As a result of the FTC enforcement action, InMobi agreed to pay $950,000 in civil penalties and implement a comprehensive privacy program, including a prohibition from collecting individuals' location information without their affirmative express consent and a requirement that InMobi honor consumers' location privacy settings.  The company was required to delete all of the user location information it had collected and stored without consent and was prohibited from further misrepresenting its data collection practices.  The settlement also required InMobi to institute a comprehensive privacy program to be independently audited every two years for 20 years from the date of settlement.[70]

104.     The activities engaged in by Google, as detailed in this complaint, mirror location tracking activities condemned and sanctioned by the FTC.

**F.     Google's Deception Compounds the Outrageous Nature of its Conduct.**

105.     Google claimed to offer people a choice when it came to their location information.  In stating that users could adjust privacy settings to control whether Google stores their location, Google warranted that it would respect those users' privacy choices.  In reality, Google rendered users' choices meaningless:  Google stored location data despite the permissions and instructions that users provided through those very settings. Google's storage and tracking of users' location information and movement history was surreptitious and purposely deceptive.

106.     Not only were Google's representations about privacy *likely* to deceive people, Google *did* deceive the billions of people who use its products.  Not only did ordinary users, including Plaintiffs, reasonably conclude that turning "Location History" off meant that their location would not be tracked and stored, but sophisticated media professionals who cover developments in technology, as well as knowledgeable computer scientists, academics, and regulators, were also deceived.  For example:

---

[70] Stipulated Order for Permanent Injunction and Civil Penalty Judgment, *United States of America v. InMobi Pte, Ltd.*, Case No. 3:16-cv-3474 (N.D. Cal. [June 22, 2016]) (Dkt. No. 2-1) (Ex. 47).

a.      Only two weeks before the AP Report was published, a website devoted exclusively to topics concerning mobile devices running on Google's Android platform ("Android Central") published an article titled "How to view your location history in Google Maps," under the heading "How to disable location tracking."  In the article, the author—based on Google's misrepresentations—writes, "There's also the option to pause tracking for your account as a whole. To do so, toggle **Location History** to off, and select **OK** in the dialog box that follows.  That's all there is to it!"[71]

b.      Similarly, the computer security firm Sophos publishes a website dedicated to mobile privacy and security topics, called "Naked Security."  In an October 2017 article, the author stated—based on Google's misrepresentations—that preventing Google from tracking you "was as simple as going to Settings > Location (under personal) > Google Location History and selecting 'off'. For comprehensive details on switching off and deleting your location history, go to Google's Manage or delete your Location History page."[72]  As discussed in paragraphs 40-45, *supra*, this page instructed users to utilize the "Location History" setting to prevent location tracking.

c.      An online tutorial on WikiHow, titled "How to Disable Google Location History," explains—based on Google's misrepresentations—that "[w]hen you use some Google products like Google Search and Google Maps, Google collects your location information," and further indicates that the way to disable this location tracking is by following the steps described in paragraphs 41-42, *supra*.  This tutorial shows that the authors believed "Location History" was the key to preventing storage of location data, and only referred to the "Web & App Activity" section as a landmark for navigating to "Location History," and not as a setting that implicated the storage or use of location information in any way.  Specifically, it stated: "Navigate to

---

[71] Harish Jonnalagadda, *How to view your location history in Google Maps*, Android Central (July 20, 2018) (emphasis in original) (Ex. 48).
[72] Matt Boddy, *The Google tracking feature you didn't know you'd switched on*, NakedSecurity by Sophos (October 3, 2017) (Ex. 49).

1   'Location History' section. You can see it under the Web & App Activity segment."[73]   The

2   article does not indicate that "Web & App Activity" settings control location tracking and storage.

3          d.      Additionally, in the AP Report, multiple sophisticated researchers,

4   regulators, and elected officials stated—based on Google's misrepresentations—that they

5   believed Google's representations concerning the efficacy of the "Location History" setting to be

6   deceitful.  They stated that they were unaware that Google tracked individuals even if "Location

7   History" had been turned off.  For example, Jonathan Mayer, a Princeton computer scientist and

8   former chief technologist for the Federal Communications Commission's Enforcement Bureau,

9   stated, "If you're going to allow users to turn off something called 'Location History,' then all the

10  places where you maintain location history should be turned off.  That seems like a pretty

11  straightforward position to have."[74]

12          107.    Lawmakers were misled as well.  Senator Mark Warner of Virginia indicated that

13  Google's "corporate practices . . . diverge wildly from the totally reasonable expectations of their

14  users."[75]  Representative Frank Pallone of New Jersey called for "comprehensive consumer

15  privacy and data security legislation" in the wake of the AP Report.[76]  In response to suggestions

16  by Google's counsel at a recent Senate Judiciary Committee Hearing that Google's storage and

17  use of location information is "complicated," Senator Josh Hawley stated: "I think when

18  somebody turns off their user information, their location history, they expect the location tracking

19  to be off.  But it's not in fact.  They don't have a way, apparently, to turn it off. . . .  What's

20  complicated is you don't allow consumers to stop your tracking of them.  You tell them that you

21  do.  You would anticipate that they do.  A consumer would have a reasonable expectation based

22  on what you've told them that they're not being tracked, but in fact you're still tracking it.  You're

23  still gathering the information, and you're still using it."[77]

24

25  _____

    [73] WikiHow, *How to Disable Google Location History* (last visited November 19, 2018) (Ex. 50).
26  [74] AP Report, *supra* n.2 (Ex. 2).

    [75] *Id.*
27  [76] *Id.*

28  [77] Testimony of Will Devries, *supra* n.3, at 15-16 (Ex. 3).

108.     The extent of Google's use, analysis, commercialization and dissemination of the location data it stores has not been publicized, however, this information can be used in myriad ways by Google, including to sell advertising that is precisely, unprecedentedly targeted.  It can track where and when consumers shop, the establishments they pass once or every day, which restaurants they frequent, the doctors they visit, where they pump their gas.  Google, the quintessence of Big Data, can exponentially increase the value of a single atom of data.  There can be no doubt that data this rich and raw is a precious treasure trove.  On April 23, 2019, the United States House of Representatives, Committee on Energy and Commerce, demanded Google answer 10 detailed questions in writing within two weeks regarding "concerning reports" that Google has been storing location information on hundreds of millions of consumers in perpetuity in a database Google calls its "Sensorvault," and other as-yet unidentified databases.[78]

109.     Google's misrepresentations continue, despite public outcry following the AP Report, and despite Google's recent suggestion in its Privacy Policy that Location History functions as little more than a personalized map.  Users are still being deceived and tracked without consent.  As of the date of filing this Consolidated Complaint, if an individual goes to Google's Help Center[79] and inquires "How can I stop Google Tracking My Location?,"  the very first answer Google provides her is to "Manage your location history" and directs her to the "Location History" tool, which does *not* stop Google tracking her location.  None of the immediate results identify every step a user must take to achieve that result; indeed, it is unclear whether a means to truly prevent Google from storing Plaintiffs' and Class members' location data even exists.

**VII.     CLASS ALLEGATIONS**

110.     Plaintiffs bring this class action, pursuant to Rule 23 of the Federal Rules of Civil Procedure, individually and on behalf of all members of the following classes, which are jointly referred to throughout this Complaint as the "Class:"

---

[78] Letter from Greg Walden, United States House of Representatives Committee on Energy and Commerce to Sundar Pichai, Google LLC Chief Executive Office (April 23, 2019) (Ex. 51).

[79] Google Help, *available at* https://support.google.com/?hl=en (last visited April 29, 2018).

**Android Class:** All natural persons who used Android mobile devices, who turned off "Location History," and whose location information was nonetheless stored by Google while "Location History" was disabled.

**Apple Class:** All natural persons who used Apple mobile devices, who turned off "Location History," and whose location information was nonetheless stored by Google while "Location History" was disabled.

**Android Parent Subclass**: All parents and/or legal guardians of persons who, while such persons were younger than the age of 18, used Android mobile devices, who turned off "Location History," and whose location information was nonetheless stored by Google while "Location History" was disabled.

**Apple Parent Subclass**: All parents and/or legal guardians of persons who, while such persons were younger than the age of 18, used Apple mobile devices, who turned off "Location History," and whose location information was nonetheless stored by Google while "Location History" was disabled.

**U.S. Android Subclass:** All natural persons residing in the United States who used Android mobile devices, who turned off "Location History," and whose location information was nonetheless stored by Google while "Location History" was disabled.

**U.S. Apple Subclass:** All natural persons residing in the United States who used Apple mobile devices, who turned off "Location History," and whose location information was nonetheless stored by Google while "Location History" was disabled.

111.   Plaintiff Patacsil seeks to represent the Android Class and Apple Class, and U.S. Android Subclass and U.S. Apple Subclass; Plaintiffs Dixon, Oshana, and Mahon seek to represent the Android Class and U.S. Android Subclass; Plaintiffs Ali and Carson seek to represent the Apple Class and U.S. Apple Subclass; and Plaintiff Dixon seeks to represent the Android Parent Subclass and the Apple Parent Subclass.

112.   Excluded from each Class are the following individuals: officers and directors of Google and its parents, subsidiaries, affiliates, and any entity in which Google has a controlling interest; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

113.   Plaintiffs reserve the right to modify or amend the definition of each of the proposed Classes before the Court determines whether certification is appropriate.

114.   This action readily satisfies the requirements set forth under Federal Rule of Civil Procedure 23:

a.      Each Class is so numerous that joinder of all members is impracticable. Upon information and belief, Class members number in the millions.

b.      There are questions of law or fact common to the Classes.  These questions include, but are not limited to, the following:

i.      Whether Google's acts and practices complained of herein amount to the use of an electronic tracking device to determine the location or movement of a person, in violation of Cal. Pen. Code § 637.7;

ii.      Whether the technologies utilized by Google are "electronic tracking devices" under Cal. Pen. Code § 637.7(d);

iii.      Whether Google's acts and practices complained of herein amount to egregious breaches of social norms;

iv.      Whether Google acted intentionally in violating Plaintiffs' and Class members' privacy rights;

v.      Whether an injunction should issue; and

vi.      Whether declaratory relief should be granted.

c.      Plaintiffs' claims are typical of the claims of the Class. Plaintiffs, like all Class members, took efforts to prevent their mobile devices' location information from being recorded and stored by Google.  Plaintiff Dixon, like all Parent Subclass members, took efforts to prevent his minor child's mobile device's location information from being recorded and stored by Google.  Despite these efforts and contrary to Google's representations, Plaintiffs and Class members nonetheless had their location information recorded and stored by Google.  Plaintiffs and the Class members did not consent to Google's storage of their location information, which acts form the basis for this suit.

d.      Moreover, like all Class members, Plaintiffs suffer a substantial risk of repeated injury in the future.  Each Plaintiff continues to use a mobile device that is capable of reporting location data to Google.  Google has shown deliberate indifference to Plaintiffs' and

1    Class members' instructions regarding storing their location information, and has indeed taken

2    pains to deceive and mislead Plaintiffs (and all Class members) and to conduct its business

3    contrary to their instruction, and contrary to the plain meaning of its own terms of service in favor

4    of surreptitiously and deceitfully storing location information.  Google's deceptive and deliberate

5    actions have thwarted and continue to threaten Plaintiffs' (and Class members') ability to exercise

6    control over their own privacy while using their devices.  Because the conduct complained of

7    herein is systemic, Plaintiffs and all Class members face substantial risk of the same injury in the

8    future.  Google's conduct is common to all Class members and represents a common pattern of

9    conduct resulting in injury to all members of the Class.  Plaintiffs have suffered the harm alleged

10   and have no interests antagonistic to any other Class member.

11              e.      Plaintiffs will fairly and adequately protect the interests of the Class.

12   Plaintiffs' interests do not conflict with the interests of the Class members.  Furthermore,

13   Plaintiffs have retained competent counsel experienced in class action litigation, consumer

14   protection litigation, and electronic privacy litigation.  Plaintiffs' counsel will fairly and

15   adequately protect and represent the interests of the Class.  Federal Rule of Civil Procedure

16   23(a)(4) and 23(g) are satisfied.

17              f.      In acting as above-alleged, and in failing and refusing to cease and desist

18   despite public outcry, Google has acted on grounds generally applicable to the entire Class,

19   thereby making final injunctive relief and corresponding declaratory relief each appropriate with

20   respect to the Class as a whole.  The prosecution of separate actions by individual Class members

21   would create the risk of inconsistent or varying adjudications with respect to individual Class

22   members that would establish incompatible standards of conduct for Google.

23              g.      Injunctive relief is necessary to prevent further unlawful and unfair conduct

24   by Google.  Money damages, alone, could not afford adequate and complete relief, and injunctive

25   relief is necessary to restrain Google from continuing to commit its illegal and unfair violations of

26   privacy.

27

28

1    **VIII.    FRAUDULENT CONCEALMENT AND TOLLING**

2         115.    The applicable statutes of limitations are tolled by virtue of Defendant's knowing

3    and active concealment of the facts alleged above.  Plaintiffs and Class members were ignorant of

4    the information essential to the pursuit of these claims, without any fault or lack of diligence on

5    their own part.

6         116.    At the time the action was filed, Defendant was under a duty to disclose the true

7    character, quality, and nature of its activities to Plaintiffs and Class members.  Defendant is

8    therefore estopped from relying on any statute of limitations.

9         117.    Defendant's fraudulent concealment is common to the Class.

10   **IX.    CAUSES OF ACTION**

11                          **Count One**
                 **(Violations of CIPA, Cal. Pen. Code §§ 630, *et seq.*)**
12

13        118.    Plaintiffs repeat and reallege all preceding paragraphs contained herein.

14        119.    Cal. Pen. Code § 630 provides that "[t]he Legislature hereby declares that

15   advances in science and technology have led to the development of new devices and techniques

16   for the purpose of eavesdropping upon private communication and that the invasion of privacy

17   resulting from the continual and increasing use of such devices and techniques has created a

18   serious threat to the free exercise of personal liberties and cannot be tolerated in a free and

19   civilized society."

20        120.    Google's acts and practices complained of herein, engaged in for purposes of

21   storing and tracking indefinitely the location information of mobile device users and thus

22   determining their movement over time (and all other inferences derivable therefrom), without

23   their consent—and indeed in direct contravention of instructions clearly expressed through

24   turning off the "Location History" setting—violated and continues to violate Cal. Pen. Code §

25   637.7.

26        121.    Cal. Pen. Code § 637.7(a) prohibits the use of an electronic tracking device to

27   determine the location or movement of a person. As used in Cal. Pen. Code § 637.7, "electronic

28

1    tracking device" means "any device attached to a vehicle or other movable thing that reveals its

2    location or movement by the transmission of electronic signals." Cal. Pen. Code § 637.7(d).

3         122.    In direct violation of this prohibition and without the consent of Plaintiffs or Class

4    members—and indeed in direct contravention of those individuals' clearly-expressed wishes—

5    Google continued to record, store, and use the location and movement of Plaintiffs and Class

6    members after they disabled the "Location History" setting on their mobile devices.

7         123.    As described herein, Google utilized "electronic tracking devices" as defined by

8    Cal. Pen. Code § 637.7(d), in that Google used "devices"—including the GPS hardware, the

9    cellular radio and/or the WiFi chip, all of which are mechanical or electronic equipment—

10   attached to, and located within, each Class member's mobile device (a "movable thing") to

11   "reveal[] its location or movement by the transmission of electronic signals."

12        124.    Alternatively, as described herein, Google used each Class member's mobile

13   device as an "electronic tracking device" which when placed or attached on or within movable

14   things "reveal[ed]" each device's "location or movement by the transmission of electronic

15   signals."  Vehicles—including cars, buses, trains, bicycles and other forms of transportation—are

16   obvious examples of such moveable things.  Other personal property—such as clothing, purses,

17   briefcases, backpacks, are also "movable things" in that people use them to go about their

18   business and travel in the world.  Google not only stores and tracks when an individual traveled in

19   a vehicle, but also what type of vehicle the individual traveled in.  Google's technology enables it

20   to analyze and determine whether an individual utilized a rail vehicle, a road vehicle, a two-

21   wheeled vehicle, a four-wheeled vehicle, or a bicycle.  Likewise, Google can determine if an

22   individual is traveling by foot.  Whatever movable thing the device is attached to, a location and

23   associated data can be determined.  As Chief Justice Roberts explained in *Carpenter*, "a cell

24   phone—almost a feature of the human anatomy—tracks nearly exactly the movements of its

25   owner" and "achieves near perfect surveillance, as if it had attached an ankle monitor to the

26   phone's user." 138 S. Ct. 2218.

27        125.    Google unlawfully used those electronic tracking devices "to determine the

28   location or movement of a person"—namely, Plaintiffs and Class members.  Google engaged in

1    such storage and tracking of each Class member's movement after each Class member had

2    expressly communicated to Google that Google did not have their consent to do so, by turning off

3    Location History.  Moreover, Google, itself, had affirmatively (but falsely) stated that it would

4    not store and track each Class member's movement once the individual turned off Location

5    History.

6         126.    Additionally, for members of the Android Parent and Apple Parent Subclasses,

7    Google's wanton and surreptitious tracking and storing of Class members' children's location

8    information violated Cal. Pen. Code § 637.7 for the same reasons as described in the preceding

9    paragraphs.  Namely, Google used electronic tracking devices to determine the location or

10   movements of those Subclass members' minor children, in direct contravention of Subclass

11   members' wishes and instruction.

12        127.    As a result of Google's violations of Cal. Pen. Code § 637.7, and pursuant to Cal.

13   Pen. Code § 637.2, Plaintiffs and Class members are entitled to the following relief:

14             a.    A declaration that Google's conduct violates CIPA;

15             b.    Statutory damages and/or trebled actual damages;

16             c.    Injunctive relief in the form of, *inter alia*, an order enjoining Google from

17   geolocating Class members in violation of CIPA;

18             d.    Injunctive relief in the form of, *inter alia*, an order requiring Google to

19   destroy all data created or otherwise obtained from its illegal geolocation of Class members; and

20             e.    An award of attorney's fees and costs of litigation as provided by CIPA,

21   the private attorney general doctrine existing at common law and also codified at California Civil

22   Code Section 1021.5, and all other applicable laws.

23                           **Count Two**
                      **(Intrusion Upon Seclusion)**
24

25        128.    Plaintiffs repeat and reallege all preceding paragraphs contained herein.

26        129.    Plaintiffs and Class members have reasonable expectations of privacy in their

27   mobile devices and their online behavior, generally.  Plaintiffs' and Class members' private

28   affairs include their locations.

130.    The reasonableness of such expectations of privacy is supported by Google's unique position to monitor Plaintiffs' and Class members' behavior through its access to Plaintiffs' and Class members' private mobile devices.  It is further supported by the surreptitious and non-intuitive nature of Defendant's tracking.

131.    Defendant intentionally intruded on and into Plaintiffs' and Class members' solitude, seclusion, or private affairs by intentionally geolocating them. Additionally, for members of the Android Parent and Apple Parent Subclasses, Google's wanton and surreptitious tracking and storing of Subclass members' children's location information was an intentional intrusion on and into the solitude, seclusion, or private affairs of Subclass members and their children.

132.    These intrusions are highly offensive to a reasonable person.  This is evidenced by, *inter alia*, Supreme Court precedent (most recently and forcefully articulated in the *Carpenter* opinion), legislation enacted by Congress and the California legislature, rules promulgated and enforcement actions undertaken by the FTC, petitions and litigation initiated in the United States and abroad, countless studies, op-eds, and articles decrying location tracking, and Google's own statements.  Moreover, Google engaged in true tracking of location information deceptively and in direct contradiction of the express instructions of Plaintiffs and the members of the Class.  Also supporting the highly offensive nature of Defendant's conduct is the fact that Defendant's principal goal was to surreptitiously monitor Plaintiffs and Class members.

133.    Plaintiffs and Class members were harmed by the intrusion into their private affairs as detailed throughout this Complaint.

134.    Google's actions and conduct complained of herein were a substantial factor in causing the harm suffered by Plaintiffs and Class members.

135.    As a result of Google's actions, Plaintiffs and Class members seek damages and punitive damages in an amount to be determined at trial.  Plaintiffs and Class members seek punitive damages because Google's actions—which were malicious, oppressive, and willful— were calculated to injure Plaintiffs and Class members and made in conscious disregard of

1   Plaintiffs' and Class members' rights.  Punitive damages are warranted to deter Google from

2   engaging in future misconduct.

**Count Three**
**(California Constitutional Right to Privacy)**

5   136.   Plaintiffs repeat and reallege all preceding paragraphs contained herein.

6   137.   Plaintiffs and Class members have reasonable expectations of privacy in their

7   mobile devices and their online behavior, generally.  Plaintiffs' and Class members' private

8   affairs include their behavior on their mobile devices as well as any other behavior that may be

9   monitored by the surreptitious tracking employed or otherwise enabled by location tracking.

10   138.   Google intentionally intruded on and into Plaintiffs' and Class members' solitude,

11   seclusion, right of privacy, or private affairs by intentionally tracking their location.  Additionally,

12   for members of the Android Parent and Apple Parent Subclasses, Google's wanton and

13   surreptitious tracking and storing of Subclass members' children's location information was an

14   intentional intrusion on and into the solitude, seclusion, right of privacy, or private affairs of

15   Subclass members and their children.

16   139.   These intrusions are highly offensive to a reasonable person, because they

17   disclosed sensitive and confidential location information, constituting an egregious breach of

18   social norms.  This is evidenced by, *inter alia*, Supreme Court precedent (most recently and

19   forcefully articulated in the *Carpenter* opinion), legislation enacted by Congress and the

20   California legislature, rules promulgated and enforcement actions undertaken by the FTC,

21   petitions and litigation initiated in the United States and abroad,  countless studies, op-eds, and

22   articles decrying location tracking, and Google's own statements.

23   140.   Plaintiffs and Class members were harmed by the intrusion into their private

24   affairs as detailed throughout this Complaint.

25   141.   Google's actions and conduct complained of herein were a substantial factor in

26   causing the harm suffered by Plaintiffs and Class members.

27   142.   As a result of Google's actions, Plaintiffs and Class members seek damages and

28   punitive damages in an amount to be determined at trial.  Plaintiffs and Class members seek

1  punitive damages because Google's actions—which were malicious, oppressive, and willful—

2  were calculated to injure Plaintiffs and Class members and made in conscious disregard of

3  Plaintiffs' and Class members' rights.  Punitive damages are warranted to deter Google from

4  engaging in future misconduct.

5  **X.**     **PRAYER FOR RELIEF**

6          WHEREFORE, Plaintiffs request that judgment be entered against Google and that the

7  Court grant the following:

8          A.     An order determining that this action may be maintained as a class action under

9  Rule 23 of the Federal Rules of Civil Procedure, that Plaintiffs are proper class representatives,

10  that Plaintiffs' attorneys shall be appointed as Class counsel pursuant to Rule 23(g) of the Federal

11  Rules of Civil Procedure, and that Class notice be promptly issued;

12          B.     Judgment against Google for Plaintiffs' and Class members' asserted causes of

13  action;

14          C.     Appropriate declaratory relief against Google;

15          D.     Injunctive relief in the form of, *inter alia*, an order enjoining Google from

16  continuing its practice of recording and using Plaintiffs' and Class members' location information

17  against their instructions and in violation of CIPA;

18          E.     Injunctive relief related to CIPA in the form of, *inter alia*, an order requiring

19  Google to destroy all data acquired, created, or otherwise obtained from the unlawful recording

20  and storage of the location information of Plaintiff and Class members;

21          F.     An award of damages pursuant to Cal. Pen. Code § 637.2;

22          G.     An order awarding Plaintiffs and the Class members damages, special damages,

23  general damages, and restitution;

24          H.     An order requiring Google to pay punitive damages and exemplary damages;

25          I.     An order requiring Google to pay pre-judgment and post-judgment interest;

26          J.     Reasonable attorney's fees and costs reasonably incurred; and

27          K.     Any and all other and further relief to which Plaintiffs and the Class may be

28  entitled.

1

XI.   **DEMAND FOR JURY TRIAL**

2

      Plaintiffs hereby demand a trial by jury of all issues so triable.

3

4

Dated:  April 29, 2019           Respectfully Submitted,

5

                                */s/  Michael W. Sobol*

6

                                Michael W. Sobol (SBN 194857)
                                msobol@lchb.com

7

                                Melissa Gardner (SBN 289096)
                                mgardner@lchb.com

8

                                Michael Levin-Gesundheit (SBN 292930)
                                mlevin@lchb.com

9

                                LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
                                275 Battery Street, 29th Floor

10

                                San Francisco, CA  94111-3339
                                Telephone:  415.956.1000

11

                                Facsimile:  415.956.1008

12

                                Nicholas Diamand (*pro hac vice*)
                                ndiamand@lchb.com

13

                                LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
                                250 Hudson Street, 8th Floor

14

                                New York,  NY 10013
                                Telephone:  212.355.9500

15

                                Facsimile:  212.355.9592

16

                                */s/  Tina Wolfson*

17

                                Tina Wolfson (SBN 174806)
                                twolfson@ahdootwolfson.com

18

                                Alex R. Straus (SBN 321366)
                                astraus@ahdootwolfson.com

19

                                Brad King (SBN 274399)
                                bking@ahdootwolfson.com

20

                                AHDOOT & WOLFSON, PC
                                10728 Lindbrook Drive

21

                                Los Angeles, CA 90024
                                Telephone: 310.474.9111

22

                                Facsimile: 310.474.8585

23

                                *Interim Co-Lead Class Counsel*

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Hank Bates (SBN 167688)
hbates@cbplaw.com
CARNEY BATES & PULLIAM, PLLC
519 W. 7th St.
Little Rock, AR 72201
Telephone:  501.312.8500
Facsimile:  501.312.8505

Rosemary M. Rivas (SBN 209147)
rrivas@zlk.com
LEVI & KORSINSKY, LLP
44 Montgomery Street, Suite 650
San Francisco, CA 94104
Telephone: 415.373.1671
Facsimile: 415.484.1294

Ivy T. Ngo (SBN 249860)
ngoi@fdazar.com
FRANKLIN D. AZAR & ASSOCIATES, P.C.
14426 East Evans Avenue
Aurora, CO 80014
Telephone: 303.757.3300
Facsimile: 720.213.5131

Melissa R. Emert (*pro hac vice*)
memert@ssbny.com
STULL, STULL & BRODY
6 East 45th Street
New York, NY 10017
Telephone: 212.687.7230
Facsimile: 212.490.2022

Andrew J. Brown (SBN 160562)
andrewb@thebrownlawfirm.com
THE LAW OFFICES OF ANDREW J. BROWN
501 W. Broadway, Suite 1490
San Diego, CA 92101
Telephone: 619.501.6550

*Interim Class Counsel*

1686217.11

CASE NO. 5:18-CV-05062-EJD
CONSOLIDATED CLASS ACTION COMPLAINT