KEKER, VAN NEST & PETERS LLP
BENEDICT Y. HUR - # 224018
bhur@keker.com
BENJAMIN BERKOWITZ - # 244441
bberkowitz@keker.com
THOMAS E. GORMAN - # 279409
tgorman@keker.com
KATHRYN BOWEN - # 312649
kbowen@keker.com
CHRISTINA LEE - # 314339
clee@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:    415 397 7188

Attorneys for Defendant GOOGLE LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE: GOOGLE LOCATION HISTORY LITIGATION | Case No. 5:18-cv-05062-EJD <br><br> **DEFENDANT GOOGLE LLC'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED COMPLAINT** <br><br> Date:        September 5, 2019 <br> Time:        9:00 a.m. <br> Dept:        Courtroom 4 - 5th Floor <br> Judge:      Hon. Edward J. Davila <br><br> Date Filed:  November 2, 2018 <br><br> Trial Date:  None Set |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ...................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES .......................................................2

I.     INTRODUCTION ........................................................................................................2

II.    STATEMENT OF THE CASE...................................................................................3

III.   BACKGROUND AND PLAINTIFFS' ALLEGATIONS .......................................4

       A.     Plaintiffs' allegations about two Google settings: Location History and
              Web & App Activity .........................................................................................4

       B.     Plaintiffs' allegations about themselves...........................................................6

       C.     Plaintiffs consented to Google's collection of location information. .....................7

IV.    QUESTION PRESENTED...........................................................................................8

V.     LEGAL STANDARD...................................................................................................8

VI.    ARGUMENT .................................................................................................................9

       A.     Plaintiffs' complaint should be dismissed in its entirety because Plaintiffs
              consented to Google's collection of location information. ....................................9

       B.     Plaintiffs' CIPA claim fails because Google has not placed an "electronic
              tracking device" that was "attached to a movable thing." ...................................12

              1.     Plaintiffs' CIPA claim fails because software is not an "electronic
                     tracking device" that can be "attached to a movable thing." ....................12

              2.     Plaintiffs' first alternative CIPA theory fails because GPS
                     hardware, a cellular radio, and Wi-Fi chip are mere device
                     components, not "electronic tracking devices." .........................................13

              3.     Plaintiffs' second CIPA theory fails because Plaintiffs haven't
                     alleged their smartphones are "attached to a vehicle or other
                     movable thing." ...........................................................................................14

       C.     Plaintiffs' allegations under the California Constitution fail to state a claim.........15

       D.     Plaintiffs' intrusion-upon-seclusion claim fails as a matter of law.......................19

VII.   CONCLUSION..............................................................................................................21

DEFENDANT GOOGLE LLC'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED COMPLAINT
Case No. 5:18-cv-05062-EJD
1327444

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Appling v. Wachovia Mortg., FSB,*
   745 F. Supp. 2d 961 (N.D. Cal. 2010) ...............................................................8

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ...............................................................................................8

*Balistreri v. Pacifica Police Dept.,*
   901 F.2d 696 (9th Cir. 1990) ................................................................................9

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ...............................................................................................8

*Botello v. Morgan Hill Unified Sch. Dist.,*
   No. C09-02121 HRL, 2009 WL 3918930 (N.D. Cal. Nov. 18, 2009) .................16

*Cahen v. Toyota Motor Corporation,*
   147 F.Supp. 3d 955 (N.D. Cal. 2015) .................................................................17

*Charles O. Bradley Trust v. Zenith Capital LLC,*
   No. C-04-2239 JSW (EMC), 2006 WL 798991 (N.D. Cal. Mar. 24, 2006) ............16

*In re Facebook Internet Tracking Litig.,*
   263 F. Supp. 3d 836 (N.D. Cal. 2017) .....................................................10, 19, 20

*Folgelstrom v. Lamps Plus, Inc.,*
   195 Cal. App. 4th 986 (2011) ....................................................................3, 18, 21

*Four Navy Seals v. Associated Press,*
   413 F. Supp. 2d 1136 (S.D. Cal. 2005) ..............................................................20

*Fredenburg v. City of Fremont,*
   119 Cal. App. 4th 408 (2004) .............................................................................16

*Gonzales v. Uber Techs., Inc.,*
   305 F. Supp. 3d 1078 (N.D. Cal. 2018) .............................................................10

*In re Google Inc. Privacy Policy Litigation*
   58 F. Supp. 3d 968 (N.D. Cal. 2014).  .....................................................18, 19, 21

*Hernandez v. Hillsides, Inc.,*
   47 Cal. 4th 272 (2009) .....................................................................................19, 20

*Hill v. Nat'l Collegiate Athletic Ass'n,*
   7 Cal. 4th 1 ......................................................................................................10, 16

ii

*In re iPhone Application Litigation*,
    844 F. Supp. 2d 1040 (N.D. Cal. 2012). ...................................................................3, 18, 21

*Leonel v. Am. Airlines, Inc.*,
    400 F.3d 702 (9th Cir. 2005) ...................................................................................................16

*Loder v. City of Glendale*,
    14 Cal. 4th 846 (1997) ..............................................................................................................16

*Low v. LinkedIn,*
    900 F.Supp. 2d 1010, (N.D. Cal. 2012) ...................................................................................20

*Manigault-Johnson v. Google, LLC*,
    No. 2:18-cv-1032-BHH, 2019 U.S. Dist. LEXIS 59892 (D.S.C. Mar. 31, 2019) ...................21

*Med. Lab. Mgmt. Consultants v. Am. Broad. Cos., Inc.*,
    306 F.3d 806 (9th Cir. 2002) ...................................................................................................21

*Moreno v. San Francisco Bay Area Rapid Transit District*,
    No. 17-cv-02911-JSC, 2017 WL 6387764 (N.D. Cal. Dec. 14, 2017)............................*passim*

*Nguon v. Wolf*,
    517 F. Supp. 2d 1177 (C.D. Cal. 2007) ...................................................................................16

*Pioneer Elecs. (USA), Inc. v. Sup. Ct.*,
    40 Cal. 4th 360 (2007) .......................................................................................................16, 17

*St. Claire v. Gilead Scis., Inc.* (*In re Gilead Scis. Sec. Litig.*),
    536 F.3d 1049 (9th Cir. 2008) ...................................................................................................8

*Susan S. v. Israels*,
    55 Cal. App. 4th 1290 (1997) ...................................................................................................16

*Urbaniak v. Newto*n,
    226 Cal. App. 3d 1128 (1991) ...................................................................................................16

*In re Yahoo Mail Litig.*,
    7 F. Supp. 3d 1016 (N.D. Cal. 2014) .........................................................................15, 17, 19

**Statutes**

California Penal Code § 637.7 ............................................................................................*passim*

**Other Authorities**

Am. Heritage Dictionary (5th ed. 2018) ...................................................................................13

California Constitution.................................................................................................*passim*

Federal Rule of Civil Procedure 12(b)(6) ...................................................................................8

DEFENDANT GOOGLE LLC'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED COMPLAINT
Case No. 5:18-cv-05062-EJD

New Oxford Am. Dictionary (3d ed. 2010) ........................................................................13

Random House Unabridged Dictionary (2018) ...............................................................13

Rest. (2d) Torts § 652B ...................................................................................19, 21

DEFENDANT GOOGLE LLC'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED COMPLAINT
Case No. 5:18-cv-05062-EJD

1327444

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on September 5, 2019 at 9:00 a.m., defendant Google LLC ("Defendant" or "Google") will, and hereby does, move the Court, located at 280 South 1st Street, San Jose, California, for an order dismissing Plaintiffs Napoleon Patacsil, Richard Dixon, Najat Oshana, Mark Carson, Nurudaaym Mahon, and Aichi Ali's (collectively "Plaintiffs") Consolidated Class Action Complaint in its entirety and with prejudice.

Google brings this motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure on the ground that Plaintiffs' Complaint fails to state a claim. This motion is based on the following Memorandum of Points and Authorities, on Google's Request for Judicial Notice and attached exhibits, on all pleadings and papers on file or to be filed in the above-entitled action, on the arguments of counsel, and on any other matters that may properly come before the Court for its consideration.


Dated: May 28, 2019                                    KEKER, VAN NEST & PETERS LLP


                                              By:    /s/ Benjamin Berkowitz
                                                     BENEDICT Y. HUR
                                                     BENJAMIN BERKOWITZ
                                                     THOMAS E. GORMAN
                                                     KATHRYN BOWEN
                                                     CHRISTINA LEE

                                                     Attorneys for Defendant GOOGLE LLC

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION[1]

Under Google's Terms of Service and Privacy Policy, Plaintiffs Napoleon Patacsil, Richard Dixon, Najat Oshana, Mark Carson, Nurudaaym Mahon, and Aichi Ali (collectively "Plaintiffs") agreed that Google could collect information about their location.  Google's Privacy Policy states: "We collect information about your location when you use our services, which helps us offer features like driving directions for your weekend getaway or showtimes for movies playing near you."[2]  Because Plaintiffs consented to Google's collection of location information, each of their claims fail as a matter of law.

Plaintiffs' claims fail for additional reasons as well.  Their claim for violation of the California Invasion of Privacy Act ("CIPA") fails because California Penal Code § 637.7 does not apply to software products like Google's mobile-operating system or applications.  Instead, § 637.7 applies only to "electronic tracking device[s]" that are "attached to" vehicles or other movable things.  In an attempt to plead around the statute, Plaintiffs offer two theories of what the "tracking device" and "movable thing[s]" are, stopping short of outright accusing Google's software as the "electronic tracking device."  But both the statute's plain language and case law reject Plaintiffs' creative attempts to apply § 637.7 to smartphone software.

Plaintiffs contend that Google violated the California constitutional right to privacy and intruded upon their seclusion, but those claims fail because Google's conduct did not invade Plaintiffs' privacy and did not amount to an "egregious" or "highly offensive" breach of social

---

[1] Throughout this brief, unless otherwise stated, emphases were added to quotations and internal punctuation, alternations, and citations were omitted from them.

[2] *See* Declaration of Christina Lee in Support of Google's Motion to Dismiss ("Lee Decl."), Ex. 3A.  As explained in Google's Request for Judicial Notice, the Court may take judicial notice of Google's policies.  In addition, Plaintiffs incorporated them by reference in their complaint, as they cite to Google's Terms of Service and its Privacy Policy.  *See* Compl. ¶¶ 32, 34, 36, 38, 45, 55, 77, 109, 114(d) & nn. 5, 12, 13, 18, 19, 26, 27, and 48.

norms. As Judge Koh held in *In re iPhone Application Litigation*, use of "geolocation" data "does not constitute an egregious breach of social norms" and "does not constitute a violation of Plaintiffs' right to privacy," even, unlike here, where there is no consent. 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012). To the contrary, multiple courts have held that the use of location information by businesses is "routine commercial behavior." *Id.* (quoting *Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 992 (2011)). Thus, case law rejects Plaintiffs' claims under California's constitutional and common-law privacy torts.

As set forth more fully below, Plaintiffs' consolidated complaint—Plaintiffs Napoleon Patacsil and Aichi Ali's third complaint in this case and their co-plaintiffs' second—fails as a matter of law and cannot be cured by further amendment. It should be dismissed in its entirety and with prejudice.

## II.      STATEMENT OF THE CASE

On August 13, 2018, the Associated Press (or "AP") published a report contending that Google collects certain geolocation information from its users through a setting called Web & App Activity even when a separate setting called Location History is off. Compl. Ex. 2, Dkt. 80-1 at 79–85. The AP claimed that users might not understand the differences between these two settings, in part because a statement contained in a Google support page previously noted that "With Location History off, the places you go are no longer stored." *Id.* Five days after publication of the AP's report, Plaintiff Napoleon Patacsil filed a putative-class-action complaint against Google that repeated the AP's allegations and asserted counts under **(1)** CIPA, **(2)** the common-law tort for intrusion upon seclusion, and **(3)** the related tort for invasion of privacy under the California Constitution. Dkt. 1 ¶¶ 99–123. Google moved to dismiss, arguing that Patacsil had consented to Google's Privacy Policy (which expressly disclosed Google's collection of location information), and that—even without the privacy Policy—Patacsil's allegations did not state any claim for relief. Dkt. 32. Patacsil chose not to defend his complaint. Instead, he filed a First Amended Complaint with four new co-plaintiffs—Plaintiffs Richard Dixon, Najat Oshana, Mark Carson, and Nurudaaym Mahon. Dkt. 47 ¶¶ 12–26. The FAC asserted the same causes of action as the initial complaint, although the CIPA count contained new, alternative

theories as to where the alleged "electronic tracking device" is located. *Id.* ¶¶ 104–05. Plaintiffs also added new sub-classes for **(1)** "parents and/or legal guardians" who derivatively assert that their children's privacy was invaded, and **(2)** users residing in the United States (implicitly alleging that other classes are meant to include smartphone users not only in the United States, but throughout the world). *Id.* ¶ 91.

On December 11, 2018, the Court granted the parties' stipulation to consolidate the action with five related actions filed on the heels of Patacsil's initial complaint, including the one filed by Aichi Ali, now a co-plaintiff in the consolidated action. Dkt. 51. After the Court's order appointing interim class counsel (Dkt. 72), Plaintiffs Patacsil, Dixon, Oshana, Carson, Mahon, and Ali filed their consolidated complaint against Google on April 29, 2019. Dkt. 80. The consolidated complaint asserts the same three causes of action as both of Patacsil's prior complaints and includes the new sub-classes added in Patacsil's First Amended Complaint.

## III. BACKGROUND AND PLAINTIFFS' ALLEGATIONS

### A. Plaintiffs' allegations about two Google settings: Location History and Web & App Activity

Plaintiffs allege that Google "misled people who use its products and services, telling them that if they activate or deactivate certain settings it will prevent Google from tracking their movements and storing a record of their geolocations." Compl. ¶ 1. Plaintiffs' allegations target two of Google's account-level settings: Location History and Web & App Activity.[3] Plaintiffs allege that they "turned the 'Location History' setting to 'off' on [their] Google Account[s]" because they believed that this would "prevent Google from storing a record" of their geolocation information. *Id.* ¶¶ 8–9, 13–14, 18, 21, 24, 27. But, Plaintiffs contend, Google "continued to store" some of their geolocation information through the Web & App Activity setting. *Id.*; *see also id.* ¶¶ 63–69.

As explained in the exhibits attached to Plaintiffs' complaint, the Location History feature allows Google to provide users with "better results and recommendations." Compl. Ex. 4 at ECF

---

[3] *See, e.g.*, Compl. ¶¶ 5, 8–9, 11, 13–14, 16, 18, 20–21, 23–24, 26–27, 29, 38–39, 40–50, 61–70, 72–75, 77–80, 86–87, 106, 109–110.

p. 129; Ex. 30 at ECF p. 369; *see also* Ex. 26 at ECF p.352. "For example, you can see recommendations based on places you've visited with signed-in devices, or traffic predictions for your daily commute." Compl. Ex. 4 at ECF p. 129; Ex. 30 at ECF p. 369. Although Plaintiffs assert that they "turned the 'Location History' setting to 'off,'"[4] "Location History is turned **off by default** for your Google Account and can only be turned on if you opt in." *See* Compl. Ex. 26 at ECF p. 352.[5] The Google support page for Location History explains that when the account-level Location History setting is turned on, *and* your device has Location Reporting turned on, "you may see a number of benefits across Google products and services, including personalized maps, recommendations based on places you've visited, help finding your phone, real-time traffic updates about your commute, and more useful ads." *Id.*

The Web & App Activity setting is different. When Web & App Activity is on—and it is on by default—Google saves certain information about a user's "activity on Google sites and apps to give you faster searches, better recommendations, and more personalized experiences in Maps, Search, and other Google services." Compl. Ex. 27 at ECF p. 356. Although Plaintiffs contend that Google provides "insufficient notice" of how the Web & App Activity setting relates to location data, their complaint acknowledges that Google disclosed that Web & App Activity saves user-location information. Compl. ¶ 69. Specifically, the support page for Web & App Activity discloses: "When Web & App Activity is on, Google saves information like: . . . **Your location**." Compl. Ex. 29 at ECF p. 367.

---

[4] Compl. ¶¶ 8–9, 13–14, 18, 21, 24, 27.

[5] *See also* RJN Ex. 1 at 3–4 ("If you **opt in** to Location History and your device is reporting location, the precise location of your signed-in devices will be collected and stored, even when you're not actively using a Google product or service. . . . Turning on Location History provides more personalized experiences across Google—restaurants suggested in Google Maps based on dining spots you've visited, real-time information about the best time to leave for home or work in order to beat the traffic, and albums in Google Photos automatically created from places you've visited."). RJN Exhibits are attached to the Lee Declaration.

As Plaintiffs acknowledge, Web & App Activity does not store information about a user's location everywhere they go with their mobile device. Instead, Web & App Activity is triggered only when one "uses Google-controlled features" like the Google Maps app or conducts searches using Google's web-search service. Compl. ¶ 47. This is a far narrower set of data than what is encompassed by Location History. If Location History is turned on (**and** Location Reporting is turned on, **and** the mobile device is logged-in to Google), then Location History "saves where you go with every mobile device." Compl. Ex. 26 at ECF p. 352. But, as Plaintiffs' acknowledge, Web & App Activity collects a far more limited set of data about a user's location, saving certain location information only when specific "Google-controlled features" like "Google Maps" and "weather apps" are "active," and when "searches [are] made with the device's mobile browser." Compl. ¶ 47. Of course, if Plaintiffs want to turn Web & App Activity off, they can. Compl. Ex. 23, 29. They can also delete any of the "searches and browsing activity" that may have been collected through Web & App Activity. Compl. Ex. 29; *see also* RJN Ex. 2.

### B. Plaintiffs' allegations about themselves

Each Plaintiff asserts the same factual allegations about themselves and their relationship with Google. Each claims that they either used an Apple mobile device (on which "various Google apps and functionalities" were "downloaded") (Compl. ¶¶ 8–9, 12,18, 21, 24, 27), or they used an Android mobile device (and some Plaintiffs assert they used both (*id.* ¶¶ 8–9)). Each plaintiff also alleges that they "turned the 'Location History' setting to 'off' on [their] Google Account" to "protect" their location information. *Id.* ¶¶8–9, 13–14, 18, 21, 24, 27. Each Plaintiff alleges that they believed "that this would prevent Google from storing a record of [their] location" information because of "the terminology used by Google (*e.g.* 'Location History'), the context, and representations by Google to the effect that turning 'Location History' off would prevent [their] location information from being stored." *Id.* ¶¶8–9, 13–14, 18, 21, 24, 27. Otherwise, Plaintiffs offer no specific facts about themselves.

Plaintiffs provide no details whatsoever as to what location information Google allegedly collected from them. Each Plaintiff asserts the same boilerplate—that they "carried [their] mobile device[s] virtually everywhere." *Id.* ¶¶ 10, 15, 19, 22, 25, 28. They each decline to "recite" the

"precise locations" where they "took [their] mobile device[s] with the 'Location History setting off during the relevant time" but allege that if one knew all those locations one could potentially learn things about the Plaintiffs, such as: "eating habits," "shopping habits;" "exercise habits;" "whether" they, or anyone in their care, received "medical or psychological care"; "the extent" to which they are "involved in the activities of [their] children (if any)"; to what extent they socialize; where their "friends and associates reside"; whether they have "any recurring appointments"; "whether" they "attend[] religious services" and if so, where; "whether" they have "attended any political rallies or protests," and so on. *Id.* ¶¶ 11, 16, 20, 23, 26, 29. Plaintiffs do not contend that they actually have any "recurring appointments," visit "religious services," attend "political rallies," or participate in their children's activities (if they even have children). Instead, Plaintiffs each assert that the locations they travel would reveal "***whether***" or "***to what extent***" they engaged in any activities. Plaintiffs allege conclusorily that "Google continued to store [their] precise location information," but fail to allege what that information would show about their travels or why that information is private. *See id.* ¶¶ 8–9, 13, 18, 21, 24, 27.

### C. Plaintiffs consented to Google's collection of location information.

Google's Privacy Policy describes the information that Google collects, why it collects that information, and how Google keeps that information secure. RJN Ex. 3A. The Privacy Policy is incorporated into Google's Terms of Service. Specifically, the Terms of Service state, "By using our Services, you are agreeing to these terms. Please read them carefully. . . . Google's privacy policies [hyperlinked] explain how we treat your personal data and protect your privacy when you use our Services. By using our Services, you agree that Google can use such data in accordance with our privacy policies." RJN Ex. 4 at 1–2. With respect to location information, the Privacy Policy explains that Google "collect[s] information **about your location** when you use our services, which helps us offer features like driving directions for your weekend getaway or showtimes for movies playing near you." RJN Ex. 3A at 4; Ex. 3C at 3. Previous versions of Google's Privacy Policy conveyed the same message using slightly different words, stating, "When you use Google services, we may collect and process information about **your actual location**." Lee Decl. ¶ 5(iv); RJN Ex. 3D at 3.

The Privacy Policy webpage also contains short tutorial videos that emphasize Google's collection of user-location information. *See* Lee Decl. ¶ 4. In one of the videos, Google explains: "When you use Google services, we collect a few different types of information," which can include "information about **your location** as you use Google services. This means when you search for coffee shops we can use things like your search terms, **plus your location** to help you find a great place just around the corner." *See* Google Privacy Policy at https://policies.google.com/privacy (second video tutorial; also available at https://youtu.be/YlmVKT3Zvhw). In another tutorial, Google explains: "We use your info to customize your results and improve our services for everybody. Let's say you search for 'mountain biking.' We use what you searched for, other searches you've made, [and] **your location** . . . to find you the results you're looking for: mountain-biking trails near you." *Id.* (third video tutorial; also available at https://youtu.be/48l-xdS4pXg).

## IV.    QUESTION PRESENTED

Whether Plaintiffs state a claim against Google upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).

## V.    LEGAL STANDARD

To survive a motion to dismiss under Federal Rule 12(b)(6), a plaintiff must plead facts showing that his "right to relief [rises] above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the Court must accept material *factual* allegations as true, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" and pleadings that are "no more than conclusions, are not entitled to the assumption of truth." *Id*. at 678, 679. Furthermore, the Court need not accept the truth of any allegations that are contradicted by matters properly subject to judicial notice or by exhibits attached to the complaint. *St. Claire v. Gilead Scis., Inc.* (*In re Gilead Scis. Sec. Litig.*), 536 F.3d 1049, 1055 (9th Cir. 2008); *Appling v. Wachovia Mortg., FSB*, 745 F. Supp. 2d 961, 967 (N.D. Cal. 2010). Finally, dismissal is proper if the complaint lacks "a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."

*Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990).

## VI.     ARGUMENT

### A.     Plaintiffs' complaint should be dismissed in its entirety because Plaintiffs consented to Google's collection of location information.

Plaintiffs cannot state any claim for invasion of privacy—whether under the California Invasion of Privacy Act, the California Constitution, or the common-law tort of intrusion upon seclusion—because they consented to Google's use and collection of their location information. Google's current Privacy Policy (https://policies.google.com/privacy) explains how Google uses location information in a section entitled, "Information we collect as you use our services," with a subsection titled, "Your location information," which provides in its entirety:

Your location information



We collect information about your location when you use our services, which helps us offer features like driving directions for your weekend getaway or showtimes for movies playing near you.

Your location can be determined with varying degrees of accuracy by:

- GPS

- IP address

- Sensor data from your device

- Information about things near your device, such as Wi-Fi access points, cell towers, and Bluetooth-enabled devices

The types of location data we collect depend in part on your device and account settings. For example, you can turn your Android device's location on or off ⬀ using the device's settings app. You can also turn on Location History ⬀ if you want to create a private map of where you go with your signed-in devices.

Previous versions of this Privacy Policy similarly disclosed that, "When you use Google services, we may collect and process information about **your actual location**."  Lee Decl. ¶ 5(iv); RJN Ex. 3D at 3.[6]  Thus, the Privacy Policy (which all Google users consent to as part of Google's Terms of Service) informed Plaintiffs that Google collects location information when they use Google's applications and services.

The alleged collection of such information is not actionable because of this consent.  Specifically, the California Invasion of Privacy Act prohibits the unlawful use of "electronic tracking devices," but it includes a statutory exemption for "tracking" that was "consented to."  Cal. Penal Code § 637.7; *see also Gonzales v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078, 1088 (N.D. Cal. 2018) (dismissing § 637.7 claim where plaintiff consented to tracking through terms of service).  Similarly, Plaintiffs' invasion-of-privacy claim under the California Constitution requires them to establish a "legally protected privacy interest" and "a reasonable expectation of privacy in the circumstances."  *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 39–40 (1994).  But their consent makes it impossible for them to establish those elements, because they each expressly acknowledged that Google was collecting their location information.  And their intrusion-upon-seclusion claim similarly requires them to establish a "reasonable expectation of privacy" and an intrusion that was "'highly offensive' to a reasonable person."  *In re Facebook Internet Tracking Litig.*, 263 F. Supp. 3d 836, 846 (N.D. Cal. 2017).  Because each Plaintiff consented to Google's collection of their location information, they cannot satisfy these elements, and their claims must be dismissed in their entirety.

Plaintiffs suggest that a user would misunderstand their settings and believe that if one feature—"Location History"—was off (by default), they were restricting Google from collecting

---

[6] Operative from December 2014 through December 18, 2017, these prior versions of the Privacy Policy stated, "When you use Google services, we may collect and process information about your actual location.  We use various technologies to determine location, including IP address, GPS, and other sensors that may, for example, provide Google with information on nearby devices, Wi-Fi access points and cell towers."  Lee Decl. ¶ 4(v).

location information in any other way or through any other setting or feature. Plaintiffs repeatedly and conclusorily claim that Google made false representations, but all they can point to is one sentence embedded in the middle of a support page for the Location History feature only. Compl. ¶ 40 (alleging that the support page for Location History previously stated, "You can turn off Location History at any time. With Location History off, the places you go are no longer stored.").

Importantly, none of the Plaintiffs allege that they even ***read*** (much less relied on) that particular statement—they assert only that they "based" their subjective beliefs on ***unspecified*** "representations by Google ***to the effect*** that turning 'Location History' off would prevent [their] location information from being stored." *Id.* ¶ 8–9, 13–14, 18, 21, 24, 27. Indeed, having failed to allege they ever read the statement in the Location History support page, Plaintiffs also fail to identify any purported source for their subjective beliefs. And, even if they had reviewed that page, the support page is plainly describing a specific Google feature (Location History) and nowhere purported to override or modify Google's Privacy Policy and the individual privacy settings of the numerous different services that Google provides. For example, Plaintiffs allege that Google collected location information on certain users when they used Google Maps.[7] *Id.* ¶ 47. But Google obviously must collect and use geolocation information to provide driving directions. And the Web & App Activity support page makes clear that Google does collect location information when those specific services are used. Compl. Ex. 29. This allows Google to provide customized results like driving directions, local movie show times, and local search results without collecting the more detailed location information required for the Location History feature. *See* above at Section III.C. And as Plaintiffs admit, they can turn off Web & App Activity at any time. Compl. ¶¶ 64–65 & Ex. 23. All of Plaintiffs' claims require them to show that Google invaded their expectations of privacy by collecting their location information, and

---

[7] In another example of Plaintiffs vague pleading, none of them actually alleges that Google collected ***their*** location information through their use of Google Maps. Indeed, none of them even allege that they have ever used Google Maps.

they cannot make that showing because they expressly consented to Google's use of their location information. Accordingly, all of Plaintiffs' claims should be dismissed with prejudice.

As set forth below, each of Plaintiffs' claims fail for additional, independent reasons as well.

### B. Plaintiffs' CIPA claim fails because Google has not placed an "electronic tracking device" that was "attached to a movable thing."

Plaintiffs' claim that Google violated the California Invasion of Privacy Act ("CIPA") fails because Plaintiffs have not—and cannot—allege that Google placed an "electronic tracking device" that was "attached to a vehicle or other movable thing." Cal. Penal Code § 637.7. California Penal Code § 637.7 was enacted by the California Legislature to "prohibit the placing of an electronic tracking device on an automobile by a person who is not the registered owner."[8] The statute was designed to prevent the covert attachment of a tangible device to a car—i.e., by a private investigator.[9] Because the statue's plain language does not apply to software such as Google's operating system or mobile applications installed on smartphones, *Moreno v. San Francisco Bay Area Rapid Transit District*, No. 17-cv-02911-JSC, 2017 WL 6387764, at *5 (N.D. Cal. Dec. 14, 2017), Plaintiffs' claims under § 637.7 should be dismissed with prejudice.

### 1. Plaintiffs' CIPA claim fails because software is not an "electronic tracking device" that can be "attached to a movable thing."

Plaintiffs engage in creative pleading to attempt to circumvent the plain statutory language of § 637.7 and Judge Corley's well-reasoned decision in *Moreno*. But Plaintiffs' attempts to plead an "electronic tracking device" cannot cure the fundamental defect in their CIPA claim: At bottom, Plaintiffs are accusing ***software***, not an "electronic tracking device." As their complaint makes clear, Plaintiffs accuse Google's software settings. They contend that they turned one

---

[8] RJN Ex. 5 (Senate Committee on Public Safety Analysis, Privacy: Electronic Tracking Device, SB 1667).

[9] *See* RJN Ex. 6 at 5 ("The bill would also provide that a violation of these provisions by a person . . . licensed as a private investigator would constitute grounds for the revocation of the private investing license issued to that person . . . .").

software setting off ("the 'Location History' setting on their mobile devices"), that they left another software setting on (Web & App Activity), and that "Google continued to record, store, and use the[ir] location and movement," none of which is independently possible but for the software on their mobile devices collecting and transmitting information to Google.  Compl. ¶ 122; *see also id.* ¶¶ 5, 8–9, 11, 13–14, 16, 18, 20–21, 23–24, 26–27, 29, 38–39, 40–50, 61–70, 72–75, 77–80, 86–87, 106, 109–110 (describing "Location History" and "Web & App Activity" settings).  But as Judge Corley explained in *Moreno*, § 637.7 does not apply to software installed on cellphones for two reasons.  2017 WL 6387764, at *5.  First, software code does not fit within the plain-language definition of a "device," because the word "device" means a physical object.[10] *Id.*  And because software code is not a "device," it does not qualify as a prohibited "electronic tracking device" under § 637.7.  *Id.*  Second, even "[a]ssuming that a cellphone qualifies as a 'vehicle or other movable thing,' the App is not 'attached to' the cellphone."  *Id.*  To "attach" means "to join or fasten" to something else.  *Id.* (quoting Oxford English Dictionary).  A mobile device application or operating system may be downloaded to a cellphone, or installed on a cellphone, but software code is not "attached to" a cellphone.  *Id.*  Software simply cannot satisfy the "attached to" element of the statutory definition of "electronic tracking device."  *Id.* Accordingly, for the same reasons explained by Judge Corley in *Moreno*, Plaintiffs' CIPA claim fails as a matter of law.

> **2.    Plaintiffs' first alternative CIPA theory fails because GPS hardware, a cellular radio, and Wi-Fi chip are mere device components, not "electronic tracking devices."**

In an attempt to avoid the plain statutory language of § 637.7 and the holding of *Moreno*,

---

[10] *See also* Am. Heritage Dictionary (5th ed. 2018) ("1. An object designed and manufactured to perform one or more functions"); New Oxford Am. Dictionary (3d ed. 2010) ("1 a thing made or adapted for a particular purpose, esp. a piece of mechanical or electronic equipment: *a measuring device*"); Dictionary.com, based on the Random House Unabridged Dictionary (2018) ("1.  A thing made for a particular purpose; an invention or contrivance, especially a mechanical or electric one").

Plaintiffs engage in creative pleading to accuse Google of using multiple "devices"—"including the GPS hardware, the cellular radio and/or the WiFi chip," each of which Plaintiffs contend are "mechanical or electronic equipment—attached to, and located within, each Class member's mobile device (a 'movable thing')." Compl. ¶ 123. There are several problems with this theory. *First*, the GPS hardware, cellular radio, and WiFi chip are not "devices" but are merely device components. But device components—GPS hardware, cellular radios, or WiFi chips—"located *within*" Plaintiffs' "mobile *device[s]*" are merely *parts* or *pieces* of the devices, not the devices themselves. *Second*, and relatedly, none of these device components—either individually or in combination—satisfies the statute because they are not capable of "reveal[ing] the location or movement" of a mobile device "by the transmission of electronic signals." Cal. Penal Code § 637.7(d). For example, a GPS chip can't be an "electronic tracking device" because a GPS chip doesn't "reveal[] its location or movement by the transmission of electronic signals." *Id.* Rather, a GPS chip *receives* signals from GPS satellites—it does not *transmit* signals. Similarly, a "cellular radio" or a "WiFi chip" cannot independently determine a smartphone's location or transmit that location to Google. For any of these components to work, you need to add a battery, antennas, memory, processors, and software. No single component—not even the GPS chip— can fulfill all the functions required to meet the statutory definition of "electronic tracking device." These device *components* simply are not themselves "electronic tracking devices" within the meaning of § 637.7.

### 3. Plaintiffs' second CIPA theory fails because Plaintiffs haven't alleged their smartphones are "attached to a vehicle or other movable thing."

Plaintiffs alternatively accuse Google of "us[ing] each Class member's mobile device as an 'electronic tracking device' which when *placed* or *attached on or within* movable things 'reveal[ed]' each device's 'location or movement by the transmission of electronic signals.'" Compl. ¶ 124. For this theory, Plaintiffs allege a whole host of "movable things," from "[v]ehicles—including cars, buses, trains, bicycles and other forms of transportation," to "[o]ther personal property—such as clothing, purses, briefcases, [and] backpacks." *Id.* Plaintiffs' second alternative theory fails for two reasons. *First*, in an attempt to square their theory with CIPA's plain text, Plaintiffs conveniently rewrite the statute to suit their needs. Unable to allege that their

smartphones were "attached to"—*i.e. joined or fastened to*—a bus, for example, Plaintiffs swap out the verb "attached" and allege instead that their phones were "*placed* . . . on or within" any number of vehicles. *Id.* Unable to allege that their smartphones were "attached to" their clothing, Plaintiffs change out the preposition, alleging that their phones were "attached *on or within*" their "personal property." *Id.* But CIPA's plain text requires Plaintiffs to allege that Google *attached* an electronic tracking device *to* their vehicles or other movable things, and Plaintiffs have not done so.

*Second*, Plaintiffs *cannot* plead that their devices are "attached to vehicles or other movable things" because each of them specifically pleads that they "*carried*" their "mobile device[s] virtually everywhere." *Id.* ¶¶ 10, 15, 19, 22, 25, 28; *see also id.* at ¶ 84 ("*Plaintiffs* here *carry* their devices with them on a regular basis throughout the day."). Having alleged that they "carry" their devices "virtually everywhere," Plaintiffs cannot make the incompatible claim that their phones were attached to vehicles. *Third*, and it bears repeating, though their allegations identify smartphones as the electronic tracking device, Plaintiffs are again plainly accusing Google's *software*. In describing their alternative CIPA theory, Plaintiffs, carefully avoiding the word "software," take issue with "Google's *technology*." *Id.* ¶ 124. But the only Google "technology" Plaintiffs accuse in their complaint is Google's software. *See id.* ¶¶ 5, 8–9, 11, 13–14, 16, 18, 20–21, 23–24, 26–27, 29, 38–39, 40–50, 61–70, 72–75, 77–80, 86–87, 106, 109–110 (describing "Location History" and "Web & App Activity" settings). At bottom, Plaintiffs cannot cure the fundamental problem with their CIPA claim, which is that under the statute's plain language (as recognized in *Moreno*), Plaintiffs' software-focused allegations are not actionable under § 637.7. Because Plaintiffs have not alleged that Google "attached" an "electronic tracking device" to their vehicles or other movable things, their CIPA claim should be dismissed.

## C. Plaintiffs' allegations under the California Constitution fail to state a claim.

"The California Constitution sets a 'high bar' for establishing an invasion of privacy claim." *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1038 (N.D. Cal. 2014). To state a claim for invasion of privacy under the California Constitution, Plaintiffs must demonstrate three elements: "(**1**) a legally protected privacy interest; (**2**) a reasonable expectation of privacy in the

circumstances; and (**3**) a serious invasion of privacy constituting "an ***egregious*** breach of . . . social norms." *Hill*, 7 Cal. 4th at 35–37.  These are "threshold elements" that permit courts to "weed out" at the pleading stage claims that do not rise to the level of a serious and significant intrusion upon "a constitutionally protected privacy interest." *Loder v. City of Glendale*, 14 Cal. 4th 846, 893 (1997).  Plaintiffs' complaint fails to establish any of these threshold elements.

    ***First***, Plaintiffs cannot establish a "legally protected privacy interest," either in the form of an informational interest "in precluding the dissemination or misuse of sensitive and confidential information" where disclosure would cause "unjustified embarrassment or indignity," or an autonomy interest in "making intimate personal decisions" without "observation" or "intrusion." *Pioneer Elecs. (USA), Inc. v. Sup. Ct.*, 40 Cal. 4th 360, 370 (2007). Plaintiffs do not allege that Google misused or collected extremely sensitive information, like a confidential medical file, private financial records, HIV status, or sexual information.[11]  Instead, they generically plead that they "carried [their] mobile device[s] virtually everywhere," and if someone knew all the places they went with their phones, that person could learn much about them.  Compl. ¶¶ 10, 15, 19, 22, 25, 28.  But a "person's general location is ***not*** the type of core value, informational privacy" that is encompassed by the California Constitution.  *Fredenburg v. City of Fremont*, 119 Cal. App. 4th 408, 423 (2004).  Moreover, Plaintiffs make no allegations at all regarding what location information Google allegedly collected from them or why that specific

_____

[11] *See, e.g.*, *Leonel v. Am. Airlines, Inc.*, 400 F.3d 702, 712 (9th Cir. 2005) (medical profile); *Botello v. Morgan Hill Unified Sch. Dist.*, No. C09-02121 HRL, 2009 WL 3918930, at *5 (N.D. Cal. Nov. 18, 2009) (sexual activity); *Nguon v. Wolf*, 517 F. Supp. 2d 1177, 1196 (C.D. Cal. 2007) (sexual orientation); *Charles O. Bradley Trust v. Zenith Capital LLC*, No. C-04-2239 JSW(EMC), 2006 WL 798991, at *1–2 (N.D. Cal. Mar. 24, 2006) (private financial records); *Susan S. v. Israels*, 55 Cal. App. 4th 1290 (1997) (mental health records); *Urbaniak v. Newto*n, 226 Cal. App. 3d 1128 (1991) (HIV status).

information is private.[12]  That failure alone is grounds for dismissal.  As the court held in *Cahen v. Toyota Motor Corporation*, it is not enough for plaintiffs to plead generally that the defendant was tracking his vehicle's "location 'at various times'" because that is "not categorically the type of sensitive and confidential information the constitution aims to protect."  147 F. Supp. 3d 955, 973 (N.D. Cal. 2015).  A plaintiff must provide "more robust allegations" about the specific location information the defendant collected.  *Id.*  Similarly*, in *In re Yahoo Mail Litigation*, the court dismissed allegations that Yahoo had scanned the content of their emails, holding that there is "no legally protected privacy interest and reasonable expectation of privacy in emails as a general matter" and that plaintiff must "plead specific email content in specific emails" to demonstrate a reasonable expectation of privacy.  7 F. Supp. 3d at 1040–42.  So, too here, Plaintiffs have failed to identify what specific location information Google allegedly collected from them, or to explain why that information is sensitive enough to justify invocation of the California Constitution.

*Second*, because Plaintiffs agreed to a Privacy Policy that authorized Google to collect

---

[12] Plaintiffs' complaint speculates generically that if someone knew all the places they went with their phones, that person could learn their "eating habits," "shopping habits;" "exercise habits;" "whether" they, or anyone in their care, received "medical or psychological care"; "the extent" to which they are "involved in the activities of [their] children (if any)"; to what extent they socialize; where their "friends and associates reside," whether they have "any recurring appointments"; "whether" they "attend[] religious services" and if so, where; "whether" they have "attended any political rallies or protests," "whether and when" they "visited the polls on election day, and which poll," and so on.  Compl. ¶¶ 10, 15, 19, 22, 25, 28. But the California Constitution protects sensitive information where disclosure would cause "unjustified embarrassment or indignity," (*Pioneer Elecs*, 40 Cal. 4th at 370), not "shopping habits" or "exercise habits."  And even assuming *arguendo* that knowledge about some of the activities Plaintiffs mention could be considered extremely sensitive, Plaintiffs do not allege that they ever made such visits, and indeed, they say nothing at all about any location information actually collected by Google.

location information, they cannot establish that they had a reasonable expectation of privacy under the circumstances.  In other words, they cannot claim that Google invaded their privacy by collecting information that they had already agreed to share.  Moreover, based on their allegations, Plaintiffs cannot credibly claim surprise that Google's services were collecting and making use of their locations.  Specifically, Plaintiffs allege that Google collected location information when they used "Google-controlled features" like Google Maps, weather applications, or web search.  Compl. ¶ 47.  Yet it is readily apparent to any smartphone user that navigation software (such as Google Maps) requires the collection and use of location information to tell you which turns to take, that weather software needs to know where you are to provide you with the relevant forecast, and that search queries for questions like "what time is the sunset" or "movies playing nearby" require location information to provide useful results.  *See also* above at Section III.C (explaining how Google uses location information to optimize web-search results).  And if Plaintiffs wanted to turn off Web & App Activity, they could have done so.  Compl. ¶¶ 64–65.

*Third*, in this district and in this state, courts regularly dismiss invasion-of-privacy claims at the pleading stage for not establishing an egregious breach *even when*, unlike here, plaintiffs claim that a defendant collected location information without consent.  For example, in *In re iPhone Application Litigation*, the plaintiffs alleged that the defendants systematically collected (and disseminated) their geolocation data, but the court dismissed those claims because they did "not constitute an egregious breach of social norms."  844 F. Supp. 2d at 1063.  Similarly, in *Folgelstrom v. Lamps Plus*, the court dismissed claims that the defendant surreptitiously collected and then used the plaintiff's home-address information for commercial purposes.  195 Cal. App. 4th at 989–992.  And in *Moreno*, the court held that plaintiff's allegations—that her geolocation information was improperly collected through an app even when the app was not in use—were insufficiently egregious to make out an invasion-of-privacy claim.  2017 WL 6387764, at *7–8. Likewise, in *In re Google Inc. Privacy Policy Litigation*, this court analyzed plaintiffs' allegation that Google collected location information from Android users, associated it with other private user information, and then disclosed the commingled data to "third-party developers" in ways that

allegedly violated even "Google's own policies." 58 F. Supp. 3d 968, 974–75, 987 (N.D. Cal. 2014). But this court held that even those allegations "do not plausibly rise to the level of intrusion necessary to establish an intrusion claim" and it granted a motion to dismiss. *Id.* at 988. These opinions confirm that the collection of geolocation data is not sufficient to establish a constitutional claim for invasion of privacy. *See In re Yahoo Mail Litig.*, 7 F. Supp. 3d at 1038.

**Finally**, there is a fundamental mismatch between Plaintiffs' insinuation (that Google tracked them everywhere they went) and the factual allegations that they make (that Google collected location information only when they interacted with Google-controlled services like Google Maps). The insinuation is that Google tracked "everywhere" they "carried" their smartphones.[13] *See* Compl. ¶ 1 ("Google does just that, creating a detailed and encyclopedic chronology of users' movements"). But as Plaintiffs recognize in their own allegations, simply carrying a device does ***not*** result in location information being saved through Web & App Activity. Rather, Plaintiffs' complaint alleges that Web & App Activity stored their location information only when "Google-controlled features" (like Google Maps) were being actively used. *Id.* ¶ 47. In other words, Plaintiffs' specific factual allegations do not support their broader speculation that Google tracked them everywhere they went. Instead, Plaintiffs' factual allegations about Web & App Activity make clear that this setting involves only a limited collection of location data, not the sort of pervasive tracking that Plaintiffs insinuate is at issue.

### D. Plaintiffs' intrusion-upon-seclusion claim fails as a matter of law.

Plaintiffs' claim for intrusion-upon-seclusion fails for the same reasons as their constitutional claim for invasion of privacy. To state a claim for the common-law-tort of intrusion upon seclusion, Plaintiffs must show "(**1**) that the defendant intentionally intruded into a place, conversation, or matter as to which the plaintiff had a reasonable expectation of privacy and (**2**) that the intrusion was 'highly offensive' to a reasonable person." *In re Facebook Internet Tracking Litig.*, 263 F. Supp. 3d at 846 (citing *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 285 (2009)); *see also* Rest. (2d) Torts § 652B. And when a plaintiff brings claims both for (**A**)

---

[13] Compl. ¶¶ 10, 15, 19, 22, 25, 28.

invasion of privacy under the California Constitution, and (**B**) the tort of intrusion upon seclusion, "courts conduct a combined inquiry that considers '(**1**) the nature of any intrusion upon reasonable expectations of privacy, and (**2**) the offensiveness or seriousness of the intrusion, including any justification and other relevant interests.'" *In re Facebook Internet Tracking Litig.*, 263 F. Supp. 3d at 846 (quoting *Hernandez*, 47 Cal. 4th at 287).

Under this "combined inquiry," Plaintiffs' intrusion-upon-seclusion claim fails for the same reasons as their constitutional invasion-of-privacy claim. For example, in *In re Facebook Internet Tracking Litigation*, this Court analyzed both claims together and dismissed both because the plaintiffs had not established a reasonable expectation of privacy and had not established that the alleged invasion was "highly offensive." *Id.* In *Moreno*, the court dismissed the plaintiff's common-law tort "for the same reasons" as the constitutional claim. 2017 WL 6387764, at *8. In *Low v. LinkedIn*, the court noted that both the constitutional tort and the common-law tort require "similarly high standards for the type of invasion that is actionable" before dismissing them both on the pleadings because the facts alleged were not sufficient "to establish a highly offensive disclosure of information or a 'serious invasion' of a privacy interest." 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012).[14] The claims rise and fall together—indeed, Google's counsel could not find any California decision in which the court dismissed a constitutional claim for invasion of privacy ***and*** declined to dismiss a parallel claim for intrusion upon seclusion. The result should be no different in this case. Plaintiffs' allegations—that Google collected location information during the provision of mobile services—is exactly what Plaintiffs (and others) consented to in Google's Privacy Policy. In addition, numerous smartphone applications routinely collect location information from users to provide them with features like navigation, weather, and localized search results, making it impossible for Plaintiffs to adequately allege that this collection is "highly offensive to a reasonable person" ***only when*** Google does it.

---

[14] *See also Four Navy Seals v. Associated Press*, 413 F. Supp. 2d 1136, 1143, 1146–47 (S.D. Cal. 2005) (dismissing both invasion-of-privacy and intrusion-upon-seclusion claims because the alleged conduct was not sufficiently egregious or highly offensive).

Moreover, Plaintiffs have failed to provide any specific, factual allegations regarding the location information they contend Google collected, including what the information showed and why that information is private, making it impossible for them to establish the elements of this tort. And much of what one might imagine could have been collected—like the addresses for their home or work—are exactly the sorts of information that courts have recognized is commonly collected as part of "routine commercial behavior." *In re iPhone Application Litigation*, 844 F. Supp. 2d at 1063; *Folgelstrom*, 195 Cal. App. 4th at 992; *see also* ); *In re Google Inc. Privacy Policy Litig.* 58 F. Supp. 3d at 987–88 (dismissing intrusion claim as not sufficiently offensive even though Google allegedly violated its own policies to collect user-location information and distribute it to third parties); *Manigault-Johnson v. Google, LLC*, No. 2:18-cv-1032-BHH, 2019 U.S. Dist. LEXIS 59892, at *17–18 (D.S.C. Mar. 31, 2019) (dismissing intrusion-upon-seclusion claim regarding "personal information," including location information). As explained in the preceding section, these allegations simply do not rise to the level of a "highly offensive" or "egregious" violation of privacy or social norms. *See* § VI.C above. Indeed, conduct is not tortious under the common-law tort of intrusion upon seclusion unless it is "an ***exceptional*** kind of prying into another's private affairs." *Med. Lab. Mgmt. Consultants v. Am. Broad. Cos., Inc.*, 306 F.3d 806, 819 (9th Cir. 2002) (citing the Rest. (2d) Torts § 652 as offering examples, such as, "(1) taking the photograph of a woman in the hospital with a 'rare disease that arouses public curiosity' over her objection, and (2) using a telescope to look into someone's upstairs bedroom window for two weeks and taking 'intimate pictures' with a telescopic lens"). Plaintiffs fall well short of alleging the "exceptional kind of prying" required to assert the common-law tort of intrusion upon seclusion, and their claims should be dismissed.

## VII.    CONCLUSION

For the reasons set forth above, Plaintiffs' consolidated complaint should be dismissed in

its entirety and with prejudice.

Dated: May 28, 2019

KEKER, VAN NEST & PETERS LLP

By: */s/ Benjamin Berkowitz*
BENEDICT Y. HUR
BENJAMIN BERKOWITZ
THOMAS E. GORMAN
KATHRYN BOWEN
CHRISTINA LEE

Attorneys for Defendant GOOGLE LLC

DEFENDANT GOOGLE LLC'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED COMPLAINT
Case No. 5:18-cv-05062-EJD

1327444