**LIEFF CABRASER HEIMANN
  & BERNSTEIN, LLP**
Michael W. Sobol (SBN 194857)
msobol@lchb.com
Melissa Gardner (SBN 289096)
mgardner@lchb.com
Michael Levin-Gesundheit (SBN 292930)
mlevin@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA  94111
Telephone:  415.956.1000
Facsimile:  415.956.1008
**LIEFF CABRASER HEIMANN
  & BERNSTEIN, LLP**
Nicholas Diamand (*pro hac vice*)
ndiamand@lchb.com
250 Hudson Street, 8th Floor
New York, NY  10013
Telephone:  212.355.9500
Facsimile:  212.355.9592

*Interim Co-Lead Class Counsel*

**AHDOOT & WOLFSON, PC**
Tina Wolfson (SBN 174806)
twolfson@ahdootwolfson.com
Theodore W. Maya (SBN 223242)
tmaya@ahdootwolfson.com
Alex R. Straus (SBN 321366)
astraus@ahdootwolfson.com
Brad King (SBN 274399)
bking@ahdootwolfson.com
10728 Lindbrook Drive
Los Angeles, CA 90024
Telephone: 310.474.9111
Facsimile: 310.474.8585

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

|  |  |
|---|---|
| IN RE: GOOGLE LOCATION HISTORY LITIGATION | Case No. 5:18-cv-05062-EJD<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT GOOGLE LLC'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED COMPLAINT** |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   BACKGROUND ................................................................................................. 2

III.  ARGUMENT ...................................................................................................... 3

    A.   Legal Standard. ......................................................................................... 3

    B.   Plaintiffs Did Not Consent to Surveillance of Their Location. ................ 3

    C.   Plaintiffs Plausibly Allege a Violation of the California Invasion of Privacy Act Because Google Used an Electronic Tracking Device to Determine the Location or Movement of a Person. ................................. 7

        1.   Plaintiffs' CIPA Allegations Do Not Hinge on Software. ......... 8

        2.   Google's Assertions that GPS, Cellular Radio, or WiFi Hardware Are Not Electronic Tracking Devices Raise, at Most, Questions of Fact That Cannot Be Resolved on a Motion to Dismiss. ............ 8

        3.   Plaintiffs' Mobile Devices Are Electronic Tracking Devices that Travel With Vehicles or Other Movable Things, and Are Subject to CIPA's Prohibitions. ................................................................... 9

    D.   Plaintiffs Properly Plead the  California Constitutional and Intrusion Upon Seclusion Claims. ....................................................................................... 13

        1.   Plaintiffs Have a Legally Protected Privacy Interest in Their Location Information. ................................................................. 14

        2.   Plaintiffs Retain a Reasonable Expectation of Privacy When They Use Google's Services. ............................................................. 17

        3.   Plaintiffs Plausibly Allege that Google's Surveillance Is a Serious Invasion of Their Protected Privacy Interests. ......................... 18

IV.   CONCLUSION ................................................................................................. 22

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Aschroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................................... 3

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................................... 9

*Cahen v. Toyota Motor Corp.*,
147 F. Supp. 3d 955 (N.D. Cal. 2015) .................................................................. 18

*Carpenter v. United States*,
138 S. Ct. 2206 (2018) ..................................................................................... passim

*Folgelstrom v. Lamps Plus, Inc.*,
195 Cal. App. 4th 986 (2011) ................................................................................ 19

*Fredenburg v. City of Fremont*,
119 Cal. App. 4th 408 14 (2004) ..................................................................... 16, 17

*Gonzales v. Uber Technologies, Inc.*,
305 F. Supp. 3d 1078 (N.D. Cal. 2018) .......................................................... 6, 12, 16

*Harris v. County of Orange*,
682 F.3d 1126 (9th Cir. 2012) ................................................................................. 3

*Hill v. NCAA*,
7 Cal. 4th 1 (1994) .......................................................................................... passim

*In re Facebook Internet Tracking Litigation*,
263 F. Supp. 3d 836 (N.D. Cal. 2017) .................................................................... 7

*In re Google Inc. Cookie Placement Consumer Privacy Litigation.*,
806 F.3d 125 (3d Cir. 2015) ................................................................................... 19

*In re Google Inc., Gmail Litigation*,
No. 13-2430, 2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) .................................. 4

*In re Google Privacy Policy Litigation*,
58 F. Supp. 3d 968, 987 (N.D. Cal. 2014) ............................................................ 21

*In re iPhone Application Litigation*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ................................................................ 20

*In re Vizio, Inc. Consumer Privacy Litigation*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) ................................................................ 14

*In re Yahoo Mail Litigation*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014) .................................................................... 20

*United States v. Jones*,
565 U.S. 400 (2012) ........................................................................................ 15, 18

**TABLE OF AUTHORITIES**
(continued)

Page

*Lee v. Pep Boys*,
No. 12-5064, 2014 WL 129171 (N.D. Cal. Jan. 14, 2014) ........................................ 12

*Loder v. City of Glendale*,
14 Cal.4th 846 (1997) ............................................................ 14

*McDonald v. Kiloo ApS*,
No. 17-4344, 2019 WL 2211316 (N.D. Cal. May 22, 2019) ........................ 16, 18, 19

*Morales v. County of L.A.*,
No. 257303, 2015 WL 4240720 (Cal. Ct. App. July 14, 2015) ................................. 12

*Moreno v. San Francisco Bay Area Rapid Transit District*,
No. 17-2911, 2017 WL 6387764 (N.D. Cal. Dec. 14, 2017) ........................... 8, 12, 20

*Opperman v. Path, Inc.*,
205 F. Supp. 3d 1064 (N.D. Cal. 2016) ........................................................ 4

*Rowe v. Educ. Credit Mgmt. Corp.*,
559 F.3d 1028 (9th Cir. 2009) ............................................................ 3

*Shulman v. Grp. W Prods., Inc.*,
18 Cal. 4th 200 (1998) ............................................................ 14

*Starr v. Baca*,
652 F.3d 1202 (9th Cir. 2011) ............................................................ 3

**Statutes**

Cal. Pen. Code § 1546(g) ............................................................ 17

Cal. Pen. Code § 630 ............................................................ 11

Cal. Pen. Code § 637.7 ............................................................ passim

S.B. 1667, Stats. 1998, ch. 449, § 1 ............................................................ 7, 10

**Other Authorities**

Am. Heritage Dictionary (2019) ............................................................ 13

Cal. Bill Analysis, Assembly Comm. On Appropriations
(Aug. 5, 1998) ............................................................ 11

Cal. Bill Analysis, Assembly Comm. On Appropriations
(June 23, 1998) ............................................................ 11

Cal. Const. art. I, § 1 ............................................................ 2

Google Dictionary (accessed June 21, 2019) ............................................................ 13

Merriam-Webster Unabridged Dictionary (2019) ............................................................ 13

1

## I.    **INTRODUCTION**

2

Plaintiffs' Consolidated Class Action Complaint ("Complaint") sets forth in its fifty pages

3 detailed allegations of Google's surreptitious tracking of millions of mobile device users'

4 geolocation information.  Plaintiffs allege that for years Google deliberately misled its users that

5 certain settings would prevent Google from tracking and storing a permanent record of their

6 movements, when in fact despite those settings, Google did so anyway.  The Complaint, which

7 chronicles Google's misleading statements over the years and includes copious factual allegations

8 regarding Google's comprehensive collection of such location information, more than sufficiently

9 states claims for Google's violations of the right to privacy under the California Invasion of

10 Privacy Act, the California Constitution, and common law Intrusion Upon Seclusion.

11

Although Google's Motion to Dismiss ostensibly attacks the sufficiency of the pleadings,

12 it actually seeks to have this Court adjudicate disputed facts at the crux of Plaintiffs' case and

13 Google's primary defense.  For example, Google seeks a ruling as a matter of law that Plaintiffs'

14 expectation that their location information would be kept private could not possibly be

15 reasonable, despite Google telling them that disabling the "Location History" setting would

16 ensure such privacy.  Google makes the factual argument that yet another setting called "Web &

17 App Activity" could have done the trick, but Plaintiffs expressly allege that Google hid it, or at

18 least failed to inform users of its existence and what Google now claims it would accomplish

19 (which Plaintiffs also dispute).  Likewise, Google asserts that, through the unilateral imposition of

20 its terms of service, all of its users necessarily consented to the collection of location information

21 under all circumstances, overriding Plaintiffs' opting-out of location "services," which expressed

22 the direct opposite of any such consent.  Further, Google would have this Court grant it a

23 permanent legal license to freely catalogue users' movements and locations in secret because,

24 according to Google, that information should not be, by law, private at all, notwithstanding

25 common law principles, legislative declarations, and statements of established societal norms to

26 the contrary—including statements by Google's CEO to Congress concerning the very conduct at

27 issue here.

28

1       Under well-established California law, the arguments Google raises present "mixed

2    questions of law and fact" not suitable for determination on this Motion.  *Hill v. NCAA*, 7 Cal. 4th

3    1, 40 (1994).  Moreover, Google's legal arguments not only rely on its self-serving

4    misinterpretation of the facts alleged, but also misinterpret or fail to acknowledge existing

5    precedent.  The Complaint sets forth allegations that, if accepted as true and seen in the light most

6    favorable to Plaintiffs, as required on a Rule 12(b)(6) motion, adequately plead claims upon

7    which relief can be granted.  Accordingly, Plaintiffs respectfully request that the Court deny this

8    Motion to Dismiss.

9    **II.**    **BACKGROUND**

10       Plaintiffs bring this class action for violations of California law arising from Google's

11    unauthorized use of their personal mobile devices to engage in surreptitious and uninterrupted

12    surveillance of their locations and movements, regardless of Google's own user account settings.

13    Until shortly after this case was filed in August 2018, Google promised: "You can turn off

14    Location History at any time.  With Location History off, the places you go are ***no longer***

15    ***stored***."  Compl. ¶ 5, 40, ECF No. 80 (emphasis added).  Plaintiffs and the Class are Google users

16    who turned-off Google's Location History setting.  *Id.* ¶¶ 8, 12, 18, 21, 24, 27.  As reported by

17    the Associated Press, corroborated by academic cybersecurity researchers at Princeton University,

18    and as Google admitted in testimony before Congress, Google nonetheless captured and kept a

19    precise record of their location information.  *Id.* ¶ 4.

20       Plaintiffs allege that Google's unauthorized—and, in fact, deceitful—surveillance and

21    recording of their locations and movements over many years violates the California Invasion of

22    Privacy Act ("CIPA"), the right to privacy under the California Constitution, and the common

23    law tort of Intrusion Upon Seclusion.  *See* Cal. Pen. Code § 637.7; Cal. Const. art. I, § 1; Compl.

24    ¶¶ 118-42.  Google's conduct plainly violates CIPA, which proscribes that "[n]o person or entity

25    in this state shall use an electronic tracking device to determine the location or movement of a

26    person."  Cal. Pen. Code § 637.7(a).  With respect to Plaintiffs' California constitutional and

27    common law claims, Plaintiffs' Complaint marshals academic research, statements from

28    advocacy organizations, articles from major media outlets, public opinion surveys, industry self-

1   regulating standards, state and federal statutes, and even recent jurisprudence from the United

2   States Supreme Court, *see Carpenter v. United States*, 138 S. Ct. 2206 (2018), supporting the

3   proposition that Google's unauthorized surveillance represents a severe breach of social norms

4   and is an egregious violation of their right to privacy.  Compl. ¶ 79-109.  Thus, Plaintiffs

5   plausibly allege that Google's unauthorized surveillance represents a severe breach of their right

6   to privacy.  Plaintiffs' allegations are as specific as they are plausible, and Plaintiffs should be

7   afforded an opportunity to engage in discovery to uncover the full extent of Google's

8   unauthorized surveillance and to explain to a jury that Google's conduct so egregiously violates

9   social norms as to be actionable under the California Constitution and common law.

10  **III.   ARGUMENT**

11      **A.   Legal Standard.**

12      At the pleading stage, a court must "accept all factual allegations in the complaint as true

13  and construe the pleadings in the light most favorable to the nonmoving party."  *Rowe v. Educ.*

14  *Credit Mgmt. Corp.*, 559 F.3d 1028, 1029-30 (9th Cir. 2009) (citation and quotation omitted).  A

15  complaint need only "contain[] 'sufficient factual matter, accepted as true, to state a claim of

16  relief that is plausible on its face.'"  *Harris v. County of Orange*, 682 F.3d 1126, 1131 (9th Cir.

17  2012) (quoting *Aschroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Thus, "[i]f there are two alternative

18  explanations, one advanced by [the] defendant and the other advanced by [a] plaintiff, both of

19  which are plausible, [a] plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)."

20  *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

21      **B.   Plaintiffs Did Not Consent to Surveillance of Their Location.**

22      Plaintiffs did not consent to surveillance of their location and indefinite storage of a record

23  of their movements.  In raising consent as a defense to all of Plaintiffs' claims, Google not only

24  distorts its historical privacy disclosures and misstates Plaintiffs' allegations, but ignores the law.

25      To be clear, Plaintiffs acknowledge that in some applications, contemporaneous *use* of

26  location information may be appropriate—for example, to receive "driving directions" or

27  "showtimes for movies playing near[by]."  MTD 9.  However, in accepting the transitory use of

28  location information for an immediate, discrete purpose, Plaintiffs in no way consented to

1  indefinite *storage* of their daily locations and movements, tied forever to other personal

2  information. Plaintiffs here expressly instructed Google to *refrain from storing* their location

3  information and therefore could *only* have consented to Google's use of their location information

4  for the temporary and limited purposes authorized. Compl. ¶¶ 8, 12, 18, 21, 24, 27. Plaintiffs

5  thereby retained their reasonable expectation of privacy that their location information would not

6  be tracked and logged in perpetuity.

7        Google attempts to exaggerate the nature of Plaintiffs' consent by ignoring the distinction

8  between the temporary use of location information to facilitate immediate services and the

9  indefinite storage of location information for future access in a manner entirely inconsistent with

10 the law of consent. For consent to be legally binding, Plaintiffs must have consented "to the

11 *particular* conduct, or to substantially the same conduct" that gives rise to their claims.

12 *Opperman v. Path, Inc.*, 205 F. Supp. 3d 1064, 1072 (N.D. Cal. 2016) (quoting Restatement

13 (Second) of Torts § 892A (1979) §§ 2(b), 4) (emphasis added). *See also id.* at 1081

14 (distinguishing between consumers' consent to a mobile phone application temporarily accessing

15 their contacts and uploading those contacts to a central database); *In re Google Inc., Gmail Litig.*,

16 No. 13-md-2430, 2013 WL 5423918, at *12 (N.D. Cal. Sept. 26, 2013) (holding that "consent is

17 not an all-or-nothing proposition" and that individuals may consent to interception of some, but

18 not all, of their information). Under no reading of the Complaint did Plaintiffs consent to

19 tracking and indefinite storage of their location information. Rather, Plaintiffs ensured that

20 Google's "Location History" setting was disabled and trusted Google's assurance that,

21 consequently, it would not retain a record of their movements. Compl. ¶¶ 8, 12, 18, 21, 24, 27.

22 Rather than respecting Plaintiffs' informed choices, Google treated Plaintiffs' private location

23 information in exactly the same way as it did for users who had enabled "Location History." *Id.*

24 ¶¶ 46-48.

25       Further, none of the self-serving disclosures Google cites *ever* mentions cataloging or

26 retaining Plaintiffs' location information. Therefore, Plaintiffs could not have known about—and

27 certainly could not have consented to—Google's privacy violations. Google's Terms of Service,

28 effective since October 25, 2017, promise users that Google "will respect the choices you make to

limit sharing or visibility settings in your Google Account." Compl. Ex. 5, at 135.  Likewise, Google's Privacy Policy provides that "across [Google's] services, you can adjust your privacy settings to *control* what [Google] collects and how your information is used." Compl. Ex. 9, at 160 (emphasis added).  Google *falsely* represented that, when "Location History" is disabled, "the places you go are ***no longer stored***." Compl. Ex. 4, at 129 (emphasis added).  Plaintiffs relied upon these statements to conclude that when their "Location History" setting was disabled, Google would *not* store a record of their personal location information. *See, e.g.*, Compl. ¶ 8. That is, Plaintiffs took Google at its word and determined for themselves how much—or, in this case, how little—private information to share.  Google dishonored their decisions, using electronic tracking devices to circumvent their choices and create historical compendiums of Plaintiffs' movements, storing that information indefinitely in a vast and commercially exploitable database.

In contending that Plaintiffs consented to its surveillance because of the availability of a different setting, which Google describes as Web & App Activity, Google misrepresents the record.  MTD 11, 18.  Google's assertion that its "Web & App Activity support page makes clear that Google *does* collect location information when" the setting is enabled is misleading and contradicts the Complaint's allegations.  MTD 11.  Google fails to acknowledge that the support page it claims is clear is its ***current*** support page, captured on November 19, 2018, and created after this case was filed and for the purpose of supporting Google's pending motion to dismiss. Compl. ¶ 69, Ex. 29.  Before this case was filed, Google did not suggest that users' Web & App Activity settings bore any relationship to whether Google stored location information. *Id.* ¶ 69. Specifically, Plaintiffs' Complaint shows that, as of March 2018, Google described Web & App Activity as merely a means to "[s]ave your ***search activity*** on apps and in browsers to make searches faster." *Id.* Ex. 28.

Google also ignores Plaintiffs' allegations that Google deliberately hid—and continues to hide—its "Web & App Activity" setting from users, that it sows confusion for anyone who stumbles upon this setting, and that the setting's supposed effectiveness is in question.  Compl. ¶¶ 63-70, 72, 78, 106.  Rather, Plaintiffs allege that Google's pre-lawsuit disclosures themselves do

1    *not* clearly indicate that disabling Web & App Activity actually prevents Google from storing

2    users' location information.  *Id.* ¶¶ 66-67.  Tellingly, even today, Google fails to confirm that

3    disabling Web & App Activity actually prevents Google from storing users' location information.

4    Google chooses only to state that the setting may be turned off.  MTD 6, 11.  As Plaintiffs allege,

5    Google never explains in a reasonably clear manner to its users the purported relationship

6    between Web & App Activity and Google's storage of their location information, or whether

7    turning off "Web & App Activity" along with Location History effectively protects location

8    privacy.  Compl. ¶ 70.  To be clear, contrary to Google's assertion, Plaintiffs' allegations do not

9    turn on whether "*Web & App Activity* stored their location." MTD 19.  Plaintiffs allege that,

10   without their consent, Google maintained a record of their location and movements whenever

11   Google collected their location from their personal device and regardless of any of their Google

12   account settings.  Compl. ¶ 68.

13       Nor do Google's three cases lend support to its theory of consent.  The discussion of

14   consent in *Gonzales v. Uber Technologies, Inc* centered on whether, in authorizing Lyft to

15   monitor plaintiff Lyft drivers' locations, those drivers had also consented to competitor Uber's

16   monitoring of their locations when it intercepted the drivers' electronic communications with Lyft

17   in an effort to gain a competitive advantage.  305 F. Supp. 3d 1078, (N.D. Cal. 2018).  Whether

18   Plaintiffs' consent—or lack thereof—transferred to a third party is not at issue here.

19       While Google cites *Hill v. NCAA*, 7 Cal. 4th 1 (1994), for the anodyne proposition that an

20   invasion of privacy claim under the California Constitution requires Plaintiffs to show that they

21   had "a reasonable expectation of privacy in the circumstances," MTD 10, the case's facts are

22   entirely dissimilar to those here.  The *Hill* court held that student athletes manifested voluntary

23   consent to drug testing because they *signed* a document with the following explicit provision: "By

24   signing this part of the form, you certify that you agree to be tested for drugs."  7 Cal. 4th at 11.

25   *Hill* would only support Google's argument had a) Google not specifically represented that it

26   would *not* store their location information; *and* b) Plaintiffs *signed* a document stating that they

27   "certify that [they] agree to" have their location tracked and stored indefinitely.  Finally, *In re*

28   *Facebook Internet Tracking Litigation* does not even address consent.  263 F. Supp. 3d 836 (N.D.

Cal. 2017).  There, in precisely the opposite circumstances presented here, where Plaintiffs tried to *protect* their privacy against Google, the Court found no expectation of privacy where the "[p]laintiffs could have taken steps to keep their browsing histories private," but "chose not to do so."  *Id.* at 846.

Accordingly, Google's consent defense cannot defeat any of Plaintiffs' claims.  To the contrary, Plaintiffs have defined a class of similarly situated persons who, just like them, manifested a conscious choice to *prevent* the tracking of their location history, by implementing Google's very own instructions on how to do so.  Google's cynicism aside, in no way can Plaintiffs and the Class reasonably be viewed as having consented to some other, surreptitious back-end mechanism whereby Google collected and stored that same location information.

**C.**    **Plaintiffs Plausibly Allege a Violation of the California Invasion of Privacy Act Because Google Used an Electronic Tracking Device to Determine the Location or Movement of a Person.**

Google advances an interpretation of the California Invasion of Privacy Act ("CIPA") that is wholly divorced from the practical purposes of the statute and the facts of this lawsuit.

In 1992, the California Legislature amended CIPA to clarify that spying on individuals in the digital age is prohibited, by forbidding the interception or recording of mobile phone communications.  In 1998 the Legislature went further, specifically prohibiting the conduct at issue in this case: unauthorized electronic location tracking.  The Legislature's statement of intent declares, in prescient terms, "that the increasing use of electronic surveillance devices is eroding personal liberty."  S.B. 1667, Stats. 1998, ch. 449, § 1.  It expressly "declare[d] that electronic tracking of a person's location without that person's knowledge violates that person's reasonable expectation of privacy."  *Id.*  Accordingly, CIPA provides in pertinent part: "No person or entity in this state shall use an electronic tracking device to determine the location or movement of a person" where "'electronic tracking device' means any device attached to a vehicle or other movable thing that reveals its location or movement by the transmission of electronic signals."  Cal. Pen. Code § 637.7(a), (d).  This is exactly what Google has done.

As Google cannot square its conduct with CIPA's primary mandate and clear purpose, Google instead attempts to isolate certain phrases within CIPA and rip them from their proper

context.  Google argues that an "electronic tracking device" under CIPA cannot merely be composed of computer software, despite that Plaintiffs allege that the "electronic tracking device" at issue is composed of physical hardware, *not* software.  Compl. ¶¶ 123-24.  Google also relies on a self-serving, selective definition of "attach," implying that the Legislature actually sought to *permit* clandestine surveillance, so long as a device is not physically "fastened" to a movable object, even where a device is designed to travel with and accompany a movable object, as is consistent with other common usages of the word "attach."  Plaintiffs' allegations offer the more plausible and commonsense interpretations of "electronic tracking device" and "attached" that better serve the intent of Legislature.  Beyond the implausibility of Google's interpretations, its argument merely highlights the presence of factual issues, which are inappropriate to resolve on a motion to dismiss.

### 1.   Plaintiffs' CIPA Allegations Do Not Hinge on Software.

Google's argument that its software code cannot be an "electronic tracking device" under CIPA is nothing more than a straw man.  MTD 12-13.  In no paragraph of Plaintiffs' Consolidated  Complaint describing Google's violation of CIPA does the word "software" appear.  *See* Compl. 80, ¶¶ 118-127.  Simply put, Plaintiffs do *not* allege that Google's software or mobile applications are "*devices*" as defined by CIPA.  Instead, Plaintiffs allege that the following are electronic tracking devices: GPS hardware, cellular radios, WiFi chips, and Plaintiffs' mobile devices (*e.g.*, mobile phones).  *Id.* ¶¶ 123-24.  Therefore, while Plaintiffs do not endorse the reasoning of *Moreno v. San Francisco Bay Area Rapid Transit District*, No. 17-2911, 2017 WL 6387764, at *5 (N.D. Cal. Dec. 14, 2017), its statement that "software, such as [an] [a]pp, cannot" be an electronic tracking device under CIPA has no application to the case at hand.

### 2.   Google's Assertions that GPS, Cellular Radio, or WiFi Hardware Are Not Electronic Tracking Devices Raise, at Most, Questions of Fact That Cannot Be Resolved on a Motion to Dismiss.

Plaintiffs allege that "GPS hardware, the cellular radio[s] and/or the WiFi chip[s]" are all "attached to . . . each Class member's mobile device (a 'movable thing')."  Compl. ¶ 123.  Google then employed these electronic tracking devices to reveal "location or movement by the transmission of electronic signals" in violation of CIPA.  *Id.*

Google's claim that the GPS hardware, cellular radios, and WiFi chips in Plaintiffs' mobile phones are "not 'devices' but are merely device components" fails any test of common sense.  MTD 14.  If electronic hardware that may be characterized as a "component" cannot be an electronic tracking device, then a navigation system present in every commercial aircraft cannot be an electronic tracking device because it, just like an engine or landing gear, is but a component of a larger aircraft.  Likewise, employing Google's logic, a built-in anti-theft car tracking system cannot be an electronic tracking device because it, too, is one of many components of an automobile—*e.g.*, the radiator, power steering system, air conditioner, etc.

Google's technical and unsupported argument that GPS hardware, cellular radios, and WiFi chips do not reveal one's "location or movement by the transmission of electronic signals" fares no better.  MTD 14.  Plaintiffs plausibly allege that they do.  Compl. ¶123; *see also, e.g.* Compl. Ex. 12 (Google Policy document stating: "If you use Google Maps for Mobile, we use GPS, WiFi and cell tower signals to determine your location").  Precisely how GPS hardware, cellular radios, and WiFi chips operate vis-à-vis Google's unauthorized tracking of Plaintiffs' location may be subject to expert testimony.  Whether these electronic devices reveal location information by transmission of electronic signals are questions of *fact* and cannot be adjudicated based on *attorney argument* on a motion to dismiss.  Google's motion must be denied because Plaintiffs' allegations that GPS hardware, cellular radios, and WiFi chips reveal Plaintiffs' precise locations is plausible, and Plaintiffs' "right to relief" rises far "above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).[1]

### 3. Plaintiffs' Mobile Devices Are Electronic Tracking Devices that Travel With Vehicles or Other Movable Things, and Are Subject to CIPA's Prohibitions.

Finally, Plaintiffs respectfully submit that this Court should not entertain Google's cynical effort to turn CIPA on its head by transforming an anti-spying statute into a technical regulation

---

[1] Google also strains credulity in asserting that GPS hardware, cellular radios, and WiFi chips cannot be electronic tracking devices because they rely on "a battery, antennas, memory, processors, and software" to function.  Compl. 14.  *Electronic* tracking devices would be expected to rely on batteries, antennas, processors, and software to function.  Google cannot define electronic tracking device out of existence by requiring such an item to be self-powered and function without the benefit of modern computing.

1    of the items to which an electronic tracking device may be "joined or fastened."  MTD 15.

2    Specifically, Google attacks the following paragraph of Plaintiffs' Complaint, wherein Plaintiffs

3    plausibly allege that mobile phones are electronic tracking devices that travel with myriad

4    vehicles and movable things:

5            Google used each Class member's mobile device as an "electronic tracking
             device" which when placed or attached on or within movable things "reveal[ed]"
6            each device's "location or movement by the transmission of electronic signals."
             Vehicles—including cars, buses, trains, bicycles and other forms of
7            transportation—are obvious examples of such moveable things. Other personal
             property—such as clothing, purses, briefcases, backpacks, are also "movable
8            things[.]"

9    Compl. ¶ 124.  Because Google cannot dispute that "clothing, purses, briefcases, backpacks," or

10   the like are "movable things" within the meaning of CIPA, Google instead hones in on the word

11   *attach*, as it appears within CIPA's definition of an "'electronic tracking device" as "any device

12   attached to a vehicle or other movable thing that reveals its location or movement."  Cal. Pen.

13   Code § 637.7(d).  Google argues that "attach" may only mean "join or fasten" in this context—as

14   if the statute only applies to electronic tracking devices that are affixed, glued, or bolted to

15   movable property.  It thus argues that a mobile phone cannot be an electronic tracking device

16   because it is not permanently or semi-permanently affixed to another movable object.  MTD 15.

17   Google's rigid definition of "attach," however, is inconsistent with the Legislature's intent and

18   yields absurd results.  *See infra* Section III.C. Therefore, the meaning of "attach" within the

19   statute cannot be as narrow as Google claims.

20          The Legislature's intent is unambiguous, as it declared in its preface to the statute at issue

21   "that the increasing use of electronic surveillance devices is eroding personal liberty," S.B. 1667,

22   Stats. 1998, ch. 449, § 1, and then mandated that "[n]o person or entity in this state shall use an

23   electronic tracking device to determine the location or movement of a person," Cal. Pen. Code

24   § 637.7(a).  To avoid the Legislature's unequivocal statement of intent in the statute itself, Google

25   misleadingly cites legislative analysis from March 1998, noting that an effect of the bill would be

26   to prohibit placement "of an electronic tracking device on an automobile by a person who is not

27   the registered owner" as proof that that this was *why* it was enacted.  Google's Request for

28   Judicial Notice Ex. 5, ECF No. 88-2; MTD 12.  But the statute itself describes "electronic

1    tracking device[s]" as traveling with "vehicle[s] or *other movable things*"—*i.e.*, non-vehicles.

2    Cal. Pen. Code § 637.7(d) (emphasis added).  Google also fails to acknowledge that the final

3    August 1998 legislative analysis prior to the bill's final passage described the effect of the statute

4    in much broader terms in no way limited to automobiles, indicating that the bill "[m]akes it a

5    misdemeanor for unauthorized persons to use an electronic tracking device [] to *determine the*

6    *location or movement of a perso*n."  Cal. Bill Analysis, Assembly Comm. On Appropriations

7    (Aug. 5, 1998) (emphasis added) (*available on Westlaw*); *accord* Cal. Bill Analysis, Assembly

8    Comm. On Appropriations (June 23, 1998) (*available on Westlaw*).  Tracking devices in or on

9    vehicles was undoubtedly the technology of greatest concern in 1998, when far fewer

10   Californians had mobile phones, and mobile phones did not have the GPS capabilities that

11   became commonplace approximately a decade later with the proliferation of smartphones,

12   including with the release of the iPhone in 2007.  Nevertheless, the bill analyses make clear that

13   the Legislature did not intend to limit the statute to only the most common technology

14   applications of 1998; and indeed, was concerned with securing privacy rights against new abuses

15   enabled by "advances in science and technology."  Cal. Pen. Code § 630.

16        Adopting Google's definition of "attach" as permanently or semi-permanently "joined or

17   fastened" within the context of a "device *attached* to a vehicle or other movable thing," would

18   fatally undermine the Legislature's stated intent.  Cal. Pen. Code § 637.7(d).  Under Google's

19   definition of "joined or fastened," and its preferred application of the statute to vehicles, while a

20   GPS device glued to the undercarriage of a vehicle would be prohibited, the same device hidden

21   and resting loosely in a car's trunk or under a seat would not.  Likewise, under Google's reading

22   of the statute, Google violates CIPA with respect to the majority of class members who keep their

23   mobile phones "joined or fastened" to a protective case, but its surveillance is perfectly legal for

24   those class members who keep their phone bare.  And for class members who fasten their mobile

25   phones to a belt holster, Google only violates CIPA when the mobile phone is in the belt holster

26   but not when it is found in one's pocket, purse, or backpack traveling with the user everywhere he

27   or she goes.  This cannot be what the Legislature intended when it prohibited unauthorized

28

1   tracking of "the location or movement of a person."  Cal. Pen. Code § 637.7(a).[2]

2          Nor is Google's definition consistent with the limited case law applying CIPA to location

3   tracking.  The only California appellate court to have addressed the contours of CIPA's

4   prohibition on electronic location tracking indicated that "a cell phone secreted in [the victim's]

5   vehicle"—not glued, affixed, joined, or fastened to the vehicle—is "a violation of Penal Code

6   section 637.7, subdivision (a)."  *Morales v. County of L.A.*, No. 257303, 2015 WL 4240720, at

7   *1-2 (Cal. Ct. App. July 14, 2015).[3]  Further, in 2018, Judge Corley, in *Gonzales*, 305 F. Supp. 3d

8   at 1089-90, suggested that a GPS-enabled mobile phone would be an electronic tracking device

9   under CIPA.  Notably, in 2017, Judge Corley also authored *Moreno*, upon which Google relies

10  entirely for its preferred definition of "attach."  2017 WL 6387764, at *5.  There, the court had no

11  need to examine the multiple meanings of attach and addressed the definition in three sentences,

12  concluding that software code could not be "attached to" a mobile device because software code

13  is not a physical object.  *Id.*  Judge Corley's later decision in *Gonzales* suggests she did not intend

14  in the non-binding *Moreno* decision to define "attach" so narrowly as to foreclose Plaintiffs'

15  claims here.  This is clear because the alleged mobile phone tracking device addressed in her

16  *Gonzales* opinion travels with a person in and out of a vehicle—*i.e.*, it is not "joined or fastened"

17  to a person or vehicle.

18         In light of both legislative intent and case law interpreting CIPA's use of "attached"

19  within the context of a "device attached to a vehicle or other movable thing," "attached to" must

20  mean something akin to accompanying or "traveling with."  That is, an electronic tracking device

21  *travels with* a vehicle or other movable thing, transmitting information about their location

22  through electronic signals.  Dictionaries support this common-sense understanding of "attached."

23  _____

24  [2] Even accepting Google's argument that "attach" may only mean "join or fasten," which the
    Court should not, Plaintiffs' claims survive so long as any named plaintiff kept his or her mobile
    device in a protective case, as surely at least one—if not all—of the named plaintiffs did.  *See,*

25  *e.g.*, Statistica, *Do you use a protective case for your smartphone?* (Apr. 3, 2017), *available at*
    https://www.statista.com/statistics/368627/us-protective-case-usage-among-smartphone-owners/

26  (survey showing 79 percent of smartphone users in the United States use protective cases).
    [3] Plaintiffs recognize that *Morales* is an unpublished decision of the California Court of Appeal.

27  It is the *only* California authority, however, and a "[c]ourt may," and Plaintiffs respectfully
    submit should, "consider an unpublished decision of the California Court of Appeals for its

28  'persuasive reasoning.'"  *Lee v. Pep Boys*, No. 12-5064, 2014 WL 129171, at *5 n.6 (N.D. Cal.
    Jan. 14, 2014)

1    For example, included among the American Heritage Dictionary's definitions is "connect[ed] as

2    an adjunct or associated . . . part."  Am. Heritage Dictionary (2019), *Attach*, Definition 2.

3    Further, Merriam-Webster defines "attach" as "to bring [] into an association" and "to associate

4    as a property or adjunct."  Merriam-Webster Unabridged Dictionary (2019), *Attach*, Definitions

5    3.a, 7.  Even under Google's definition of "attached" as "joined," Google's *own* dictionary

6    confirms that something "joined" need not be permanently or semi-permanently fused to

7    something else, as it aptly defines "attach" as to "join (someone or *something*) without being

8    invited," much as Plaintiffs did not invite Google to track them with their ever-present mobile

9    devices.  Google Dictionary, *Attach*, Definition 1, *available at*

10   https://www.google.com/search?q=dictionary#dobs=attach (last accessed June 21, 2019).  These

11   sources confirm that, when an electronic tracking device is attached to something, it is *associated*

12   with that thing, *traveling* with it from place to place.  Unsurprisingly *travel with* is the definition

13   consistent with the Chief Justice of the United States' usage when he observed that a cell phone

14   is, in essence, "attached" to the "phone's user" as if it were an "ankle monitor."  *Carpenter v.*

15   *United States*, 138 S. Ct. 2206, 2218 (2018).

16        Google's wishful redefinition of the term "electronic tracking device" within CIPA would

17   defeat the Legislature's intent and grant Google a permanent license to conduct surveillance on

18   people's locations.  As Google would have it, CIPA only prohibits unauthorized tracking of a

19   person when conducted using the least effective technology: a transponder affixed to a

20   sometimes-occupied vehicle, as opposed to a mobile device, which, on the other hand, travels

21   with a person at all times.  Plaintiffs' mobile devices are undoubtedly electronic tracking devices

22   within the meaning of CIPA.  Plaintiffs' CIPA claim cannot be dismissed, and Plaintiffs should

23   be afforded an opportunity to prove that Google's unauthorized location tracking violated the

24   statute.

25        **D.      Plaintiffs Properly Plead the California Constitutional and Intrusion Upon**
              **Seclusion Claims.**

26

27        To state a claim under the California Constitution's right to privacy, a plaintiff must show:

28   (1) a legally protected privacy interest; (2) a reasonable expectation of privacy under the

circumstances; and (3) conduct by the defendant that amounts to a serious invasion of the protected privacy interest. *Hill*, 7 Cal. 4th at 35-37.[4]  Similarly, a common law intrusion upon seclusion claim must allege:  "(1) intrusion into a private place, conversation or matter, (2) in a manner highly offensive to a reasonable person." *Shulman v. Grp. W Prods., Inc.*, 18 Cal. 4th 200, 231 (1998).  As Defendant concedes (*see* MTD 19-20) analysis of these respective prongs is effectively identical. *See, e.g.*, *In re Vizio, Inc. Consumer Privacy Litig.*, 238 F. Supp. 3d 1204, 1232 n.11 (C.D. Cal. 2017).  Therefore, for the purposes of this motion, Plaintiffs analyze their California constitutional and common law claims together under *Hill*'s three elements.

Whether expectations of privacy are "reasonable," and whether actions constitute "serious" invasions of privacy "are mixed questions of law and fact." *See Hill*, 7 Cal. 4th at 40. Only if "the *undisputed* material facts show no reasonable expectation of privacy or an insubstantial impact on privacy interests," may "the question of invasion [of privacy] be adjudicated as a matter of law." *Id.*  In arguing that Plaintiffs have not alleged a serious violation of a reasonable expectation of privacy, Google fails to accept all of Plaintiffs' allegations as true and construed in a light most favorable to Plaintiffs, as this Court must do when ruling on this motion.

### 1.  Plaintiffs Have a Legally Protected Privacy Interest in Their Location Information.

Google asks this Court to determine as a matter of law, upon the pleadings and without a developed factual record, that geolocation information cannot ever legally constitute "extremely sensitive information."  MTD 16.  Google's argument flies in the face of Plaintiffs' allegations, the current judicial decisions recognizing the sensitivity of the type of private location information at issue here, and Google's own public statements to the contrary dating back more than a decade.  Plaintiffs more than sufficiently allege an invasion of a legally protected privacy interest.[5]

---

[4] The *Hill* elements do not constitute a categorical test, but rather serve as threshold components of a valid claim to be used to "weed out claims that involve so insignificant or de minimis an intrusion on a constitutionally protected privacy interest as not even to require an explanation or justification by the defendant." *Loder v. City of Glendale*, 14 Cal.4th 846, 893 (1997).

[5] The California Supreme Court has at times described "[l]egally recognized privacy interests as

Plaintiffs allege Google surreptitiously collected and stored comprehensive and highly sensitive location data capable of creating a detailed profile of an individual's life. *See*, *e.g.*, Compl. ¶¶ 2, 54-57, 79, 139. The nature of the location information Google collects is granular and revealing, containing several precise data points including *how* a user is traveling. *Id.* at ¶ 50. In short, "for a given individual, Google not only stores a record of where, specifically, she is, at what time, and for what duration, Google also discerns how fast she is traveling, whether it is on foot or in a vehicle." *Id.* at ¶ 53. Plaintiffs further allege that the body of location information Google collects and stores so precisely and categorically records users' movements over time that it can effectively reveal not only movements to and from locations, but one's employment, health conditions, religious and political beliefs, and information about one's children. *See*, *e.g.*, Compl. ¶¶ 11, 20, 23, 26, 29. This could include something as personal as the frequency with which a parent brings a child to therapist visits. *Id.* By amassing an immense database of location information concerning tens of millions of users, Google has systematically divested them of the ability to "mak[e] intimate personal decisions or conduct[] personal activities without observation [or] intrusion." *Hill*, 7 Cal. 4th at 35.

With the increasing ubiquity of cellphones, and the concomitant consumption of mobile digital technology, the United States Supreme Court has led with the emerging vision that the collection of location data poses a threat to citizens' reasonable expectation of privacy. In *Carpenter*, the Court specifically "h[e]ld that an individual maintains a legitimate expectation of privacy in the record of his physical movements as captured through [cell phones]." 138 S. Ct. at 2217; *see also United States v. Jones*, 565 U.S. 400, 430 (2012) (Alito, J., concurring) (finding that long term monitoring of one's location with GPS technology "impinges on expectations of privacy"). Notably, the Court saw that the "unique nature of cell phone location information" presented a "new phenomenon: the ability to chronicle a person's past movements through the

generally" falling in two classes: "information privacy" and "autonomy privacy." Both privacy interests are at stake here. "Informational privacy" is at issue because Plaintiffs allege Google "misuse[d] [their] sensitive and confidential [location] information." Likewise, "autonomy privacy" is at issue because Google's comprehensive cataloging of Plaintiffs' movements—and associated life choices—restricts their ability to "mak[e] intimate personal decisions . . . without observation [or] intrusion." *Hill*, 7 Cal. 4th at 35. *See also* Compl. at 1, ¶¶ 11, 20, 23, 26, 29.

1   record of his cell phone signals." *Carpenter*, 138 S. Ct. at 2217, 2216.  The threat posed by the

2   unflinchingly comprehensive collection of personal data which impelled the Supreme Court in

3   *Carpenter* to conclude citizens have a reasonable expectation of privacy in such data, is the same

4   kind of systematic collection of data that Plaintiffs allege Google has been engaged in here.

5           Acknowledging the dynamic nature of the law in this area, another court in this District

6   noted in a case also involving, in part, location information, that "[c]urrent privacy expectations

7   are developing, to say the least," and thus "privacy interest and accompanying legal standards are

8   best viewed *flexibly* and in context."  *McDonald v. Kiloo ApS*, No. 17-4344, 2019 WL 2211316,

9   at *4 (N.D. Cal. May 22, 2019) (emphasis added) (quoting *Hill*, 7 Cal. 4th at 31).  *See also*

10  *Gonzales*, 305 F. Supp. 3d at 1091 ("Plaintiff has sufficiently pled a protected privacy interest as

11  to home addresses and arguably precise geolocation data.").

12          Against the weight of this developing, and controlling, precedent, Google relies on a pre-

13  smart phone era case that rejected the argument that a criminal sex offender had a superior

14  interest in protecting the privacy of his home address than the State did in providing notice of it to

15  protect the public.  MTD 16, citing *Fredenburg v. City of Fremont*, 119 Cal. App. 4th 408, 423

16  (2004).  The location information at issue in *Fredenburg* was limited to the "general location of

17  one's residence," and did not extend to the systematic tracking of movements over time.

18  *Fredenburg*, 119 Cal. App. 4th at 422.  That case simply has no place in the Court's analysis here.

19          Publicly, outside of its litigation battles, Google has for years acknowledged that location

20  information is highly sensitive.  For example, when Google launched its "Latitude" feature in

21  2009, which utilized real-time location data, it assured users that it had "built fine-grained privacy

22  controls right into the application" because "we recognize the sensitivity of location data."

23  Compl. at ¶ 61.  Google's privacy assurances to its users have been unrelenting even as its

24  undisclosed surveillance continues, aided by improvements in tracking technology, and

25  broadened with the booming presence of mobile devices in modern life.  For example, in a 2015

26  statement of support submitted to the Legislature for a since-enacted California law prohibiting

27  government entities from obtaining "current and prior locations of [personal mobile] device[s]"

28  without a *warrant*, Google emphasized that the law would offer "important protections [its users]

should *reasonably expect*." *See* Cal. Pen. Code § 1546(g); Letter to Senator Mark Leno (Mar. 12, 2015), *available at* https://www.eff.org/files/2015/03/19/google_sb_178_support_letter.pdf (emphasis added).  And, as recently as December 2018, after the commencement of this Action, in testimony before Congress, Google's CEO expressly agreed that geolocation information—identical to that at issue here—is "considered highly, highly sensitive." *Id*. at ¶ 87.

In direct contrast to its CEO's statement to Congress, Google argues here that location information is not "extremely sensitive."  MTD 16.  Rather than decipher Google's contradictory positions on the same issue, the Court should, as is required on a motion to dismiss, accept Plaintiffs' allegations as true, recognizing that it is plausible that the location information at issue is sufficiently sensitive to support a legally protected privacy interest.

### 2.  Plaintiffs Retain a Reasonable Expectation of Privacy When They Use Google's Services.

Plaintiffs' allegations also establish a plausible basis for their reasonable expectation in the privacy of their location information.  Plaintiffs and the proposed class members reasonably expected that Google would *not* track or store any location information when the "Location History" setting was disabled.  *See, e.g.*, Compl. ¶¶ 8-9, 13-14, 18, 21, 24, 27, 65.  Google misrepresented that "the places you go are no longer stored" when Location History is disabled, fueling Plaintiffs' reasonable expectation of privacy in that information.  *Id.* ¶ 40.  At a minimum, the determination of whether users had a reasonable expectation of privacy in the specific type of location information Google has been surreptitiously taking is a mixed question of law and fact, better suited to be made on a fully developed record, and not on a motion to dismiss.  *See Hill*, 7 Cal. 4th at 40.

Google's cited cases highlight the paucity of support for its position.  As noted above, *Fredenburg v. City of Fremont* concerned information concerning the *general vicinity* of one's residence, not the systematic recordation of movements and locations over time, brought down to the street-level.  *Fredenburg,* 119 Cal. App. 4th 411.  Further, *Fredenburg* was decided on summary judgment on a full record, and not on the pleadings.

*Cahen v. Toyota Motor Corp.* is even less on point.  147 F. Supp. 3d 955 (N.D. Cal.

2015).  The only relevant allegation in *Cahen* is that the defendants tracked the plaintiffs'

vehicles' driving history, performance, or location at various times.  The court held that tracking a

vehicle's location "at various times" is not the type of information the California Constitution

aims to protect.  *Id*. at 973.  By contrast, the allegations here are that Google not only tracked

Plaintiffs *continuously* in their cars, but also in every other aspect of their lives.  The difference

between these allegations is stark and renders comparisons futile.  As the Supreme Court

recognized in *Carpenter*, when collected *over time*, stored location information "provides an

intimate window into a person's life, revealing not only his particular movements, but through

them his familial, political, professional, religious, and sexual associations."  138 S.Ct. at 2217

(quoting *Jones*, 565 U.S. at 415).

Based on Google's *own* instructions, Plaintiffs took concrete action to ensure that Google

would *not* create historical compendiums of their movements over time.  Thus, Plaintiffs have

more than adequately pled that they maintained a reasonable expectation of privacy in their

location information when using Google's services.

**3.**  **Plaintiffs Plausibly Allege that Google's Surveillance Is a Serious Invasion of Their Protected Privacy Interests.**

Plaintiffs' allegations demonstrate that Google's surreptitious tracking of their location

data violates time-honored social norms and represents an egregious breach of their reasonable

expectations of privacy.  In addition to the Supreme Court's recognition that unauthorized

collection of location data violates constitutionally protected privacy interests, lower courts also

have held that even routine data collection practices may be highly offensive when the defendant

disregards consumers' privacy choices.

For example, a court in this District recently denied a motion to dismiss where, as here,

allegations involved the secret and unauthorized collection of user data, sufficient to generate

unique profiles of individuals.  The court held that "[c]urrent privacy expectations are

developing" with respect to whether a user "owns and controls his or her personal information,

and whether a commercial entity that secretly harvests it commits a highly offensive or egregious

act."  *McDonald*, 2019 WL 2211316, at *7.  The court concluded that it could not "say that the

1  answers are so patently obvious that the plaintiffs' allegations are implausible or inadequate as a

2  matter of law." *Id.*

3        Google's misrepresentations about Location History bear on the seriousness of the privacy

4  violation as well.  The Third Circuit, applying California law, held that Google's "deceit and

5  disregard" in surreptitiously tracking it customers' use of the internet "raises different issues than

6  tracking or disclosure alone."  *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 806

7  F.3d 125, 150 (3d Cir. 2015) ("Whether or not data-based targeting is the internet's pole star,

8  users are entitled to deny consent, and they are entitled to rely on the public promises of the

9  companies they deal with.").  The Court noted that deceitful conduct may elevate a privacy

10 violation, holding that

11       [w]hat is notable about this case is *how* Google accomplished its tracking.
   Allegedly, this was by overriding the plaintiffs' [web browser] cookie blockers,
12 while concurrently announcing in its Privacy Policy that internet users could "reset
   your browser to refuse all cookies."  Google further assured Safari users
13 specifically that their cookie blockers meant that using Google's in-house
   prophylactic would be extraneous.  Characterized by deceit and disregard, the
14 alleged conduct raises different issues than tracking or disclosure alone.

15 *Id.*  (emphasis in original).

16       Here, as in *In re Google Inc. Cookie Placement*, Plaintiffs allege Google published

17 instructions that purportedly would allow users to block Google from tracking their location,

18 while Google intentionally continued tracking and storing that data against its users' *explicit*

19 instructions.  *See* Compl. ¶¶ 4-6.  Google's "deceit and disregard" for Plaintiffs' preferences,

20 while not required to allege serious violation of their privacy, underscores the egregiousness of

21 the privacy violation at issue.

22       Unsurprisingly, Google is unable to marshal case law supporting its contention that

23 tracking Plaintiffs' locations in direct violation of Plaintiffs' explicit instructions is somehow not

24 sufficiently egregious to support common law and constitutional invasion of privacy claims.  For

25 example, *Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986 (2011), involved significantly

26 less, and less sensitive, information than at issue here.  In *Folgelstrom*, the defendant requested

27 that customers provide their zip codes in credit card transactions so that it could obtain their home

28 addresses for the purpose of mailing marketing materials.  *Id.* at 989.  Google's claim that

1   *requesting* a customer's zip code is "routine commercial behavior" indistinguishable from

2   allegations of location tracking, over the course of years and with explicit instruction *not* to do so,

3   is preposterous.  MTD 3.  Creating a historical compendium of one's historical location from

4   mobile devices is "qualitatively different" from the collection of singular analog records—*i.e.*, zip

5   codes.  *Carpenter*, 138 S. Ct. at 2216-17.

6         *Moreno*'s facts and allegations are similarly off point.  The *Moreno* court held that the

7   pleadings did not allege a sufficiently egregious violation of social norms, in part, because there

8   were no allegations "even that [the defendant] was aware of the data collection."  2017 WL

9   6387764, at 8.  Here, Plaintiffs allege the opposite.  Plaintiffs allege Google engaged in a multi-

10  year scheme to mislead Plaintiffs into thinking they had prevented Google from tracking their

11  movements, while Google continued to track and store vast quantities of sensitive location data

12  for commercially exploitable purposes.  *See, e.g.*, Compl. ¶ 1.

13        Nor does *In re iPhone Application Litigation* support Google's argument.  844 F. Supp.

14  2d 1040 (N.D. Cal. 2012).  There, plaintiffs alleged that Apple violated their privacy rights by

15  allowing third-party developers to collect certain identifying information from their mobile

16  devices.  Notably, unlike Google's *mis*representation, Apple's representation at issue—that it

17  would take "precautions . . . to safeguard [users'] personal information against theft, loss, and

18  misuse, as well as against unauthorized access, disclosure, alteration, and destruction"—did not

19  on its face appear to be false.  *Id.* at 1049.  By contrast, Google published specific instructions

20  regarding how users could protect their location information.  Plaintiffs followed those

21  instructions, but Google secretly collected their location information anyway.[6]

22        Finally, Google's reliance on *In re Google Privacy Policy Litigation* for the proposition

23  that "the collection of geolocation data is not sufficient to establish a constitutional claim for

24

---

25  [6] Google's reliance on *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016 (N.D. Cal. 2014), is similarly misplaced.  There, the court dismissed plaintiffs' claim for violation of privacy under the California Constitution with leave to amend, because plaintiffs had not described the content of

26  the emails they alleged Yahoo intercepted and scanned with enough specificity for the court to conclude that the interception implicated a legally protected privacy right.  *Id.* at 1041-42.  Here,

27  by contrast, Plaintiffs allege Google's collection of the intimate details of their precise location over years, despite Plaintiffs' instruction *not* to collect such information, violates well-recognized

28  legally protected privacy interests recognized by many courts, including the United States Supreme Court.

1    invasion of privacy" is troubling.  MTD 19.  Google mischaracterizes the court's holding.  The *In*

2    *re Google Privacy* plaintiffs alleged that Google commingled information collected through the

3    use of one Google product with information collected during the consumer's use of other Google

4    products.  58 F. Supp. 3d 968, 987 (N.D. Cal. 2014).  Critically, the information at issue was all

5    collected pursuant to "a single, unified [privacy] policy that allow[ed] Google to comingle user

6    data across accounts."  *Id.* at 974.  That is, Google did not misrepresent its conduct to users.

7    Here, on the other hand, Google represented that users could ensure that it would not save a

8    historical record of their movements.  Plaintiffs then followed Google's instructions, yet for years

9    Google secretly collected and stored their location information.  Google's citation to *In re Google*

10   *Privacy* is an attempt to confuse the relevant issues and does not support dismissal.

11          Google's authorities involve far less personal information and do *not* support its assertion

12   that case law "confirm[s] that the collection of geolocation data is not sufficient to establish a

13   constitutional claim for invasion of privacy."  MTD 19.  Moreover, Google cites *no case* in which

14   the defendant engaged in conduct even bordering on Google's deception.

15          Perhaps more important than the weaknesses of Google's authorities is the fact that

16   Google *ignores* the myriad ways Plaintiffs have alleged that Google's conduct egregiously

17   violates longstanding social norms.  Google does not engage with at least 12 pages of detailed

18   allegations regarding social norms about location privacy.  These allegations are tethered to

19   academic research, statements from advocacy groups, investigative reporting and articles from

20   major media outlets, public opinion surveys, industry self-regulatory standards, and state and

21   federal statutes and regulations enacted to protect the privacy of both adult and children's

22   sensitive location data.  Compl. ¶¶ 79-109.  These authorities underscore the plausibility of

23   Plaintiffs' allegation that Google's surreptitious tracking of their location contradicts time-

24   honored social norms and egregiously violates their reasonable expectations of privacy.

25          In sum, Plaintiffs' allegations are more than sufficient to state claims for intrusion upon

26   seclusion and invasion of privacy under the California Constitution.

27

28

1    **IV.    <u>CONCLUSION</u>**

2        Plaintiffs have plausibly alleged that Google violated their privacy rights under CIPA, the

3    California Constitution, and common law intrusion upon seclusion by recording their locations

4    and movements not only without their consent, but in direct violation of Google's public

5    assurance that "with Location History off, the places you go are *no longer stored*."  Compl. ¶ 40

6    (emphasis added).  Therefore, Plaintiffs respectfully request that the Court deny Google's Motion

7    to Dismiss and allow this case to proceed on the merits.

8

9    Dated: July 2, 2019                              Respectfully Submitted,

10                                                        */s/ Tina Wolfson*
                                                      Tina Wolfson (SBN 174806)
11                                                    twolfson@ahdootwolfson.com
                                                      Theodore W. Maya (SBN 223242)
12                                                    tmaya@ahdootwolfson.com
                                                      Alex R. Straus (SBN 321366)
13                                                    astraus@ahdootwolfson.com
                                                      Brad King (SBN 274399)
14                                                    bking@ahdootwolfson.com
                                                      AHDOOT & WOLFSON, PC
15                                                    10728 Lindbrook Drive
                                                      Los Angeles, CA 90024
16                                                    Telephone: 310.474.9111
                                                      Facsimile: 310.474.8585
17

18                                                       */s/ Michael W. Sobol*
                                                      Michael W. Sobol (SBN 194857)
19                                                    msobol@lchb.com
                                                      Melissa Gardner (SBN 289096)
20                                                    mgardner@lchb.com
                                                      Michael Levin-Gesundheit (SBN 292930)
21                                                    mlevin@lchb.com
                                                      LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
22                                                    275 Battery Street, 29th Floor
                                                      San Francisco, CA  94111-3339
23                                                    Telephone:  415.956.1000
                                                      Facsimile:  415.956.1008

24

25

26

27

28

Nicholas Diamand (*pro hac vice*)
ndiamand@lchb.com
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York,  NY 10013
Telephone:  212.355.9500
Facsimile:  212.355.9592

*Interim Co-Lead Class Counsel*


**ATTESTATION OF FILER—LOCAL RULE 5-1(i)(3)**

I, Tina Wolfson, attest that concurrence in the filing of this document has been obtained from the other signatories.  I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

　　　　　　　　　　　　　 *　/s/ Tina Wolfson　　　　　*
　　　　　　　　　　　　　 Tina Wolfson