KEKER, VAN NEST & PETERS LLP
BENEDICT Y. HUR - # 224018
bhur@keker.com
BENJAMIN BERKOWITZ - # 244441
bberkowitz@keker.com
THOMAS E. GORMAN - # 279409
tgorman@keker.com
CHRISTINA LEE - # 314339
clee@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:     415 391 5400
Facsimile:     415 397 7188

Attorneys for Defendant GOOGLE LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE: GOOGLE LOCATION HISTORY LITIGATION | Case No. 5:18-cv-05062-EJD |
| | **GOOGLE LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED COMPLAINT** |
| | Date:         October 3, 2019 |
| | Time:         9:00 a.m. |
| | Dept:         Courtroom 4 - 5th Floor |
| | Judge:        Hon. Edward J. Davila |
| | Date Filed:  November 2, 2018 |
| | Trial Date:  None Set |

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ......................................................................................... 1

II.    ARGUMENT ................................................................................................... 2

    A.    Plaintiffs concede that they consented to collection of location information. ........ 2

    B.    Plaintiffs' allegations fail to state a claim under CIPA's plain language. .............. 6

        1.    Plaintiffs' CIPA claim is based on software, which is not an "electronic tracking device" that can be "attached to a movable thing." ......................................................................................... 6

        2.    GPS hardware, cellular radios, and WiFi chips are device components, not "electronic tracking devices." ....................................... 7

        3.    Plaintiffs haven't alleged that a device is "attached to a vehicle or other movable thing." ............................................................................. 8

    C.    Plaintiffs fail to state claims for invasion of privacy under the California Constitution and common-law intrusion upon seclusion.................................... 11

III.   CONCLUSION............................................................................................. 15

GOOGLE LLC'S REPLY ISO MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED COMPLAINT
Case No. 5:18-cv-05062-EJD

1332164

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arnett v. Dal Cielo,*
    14 Cal. 4th 4 (1996) .................................................................................................... 11

*Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris,*
    729 F.3d 937 (9th Cir. 2013) ...................................................................................... 10

*Cahen v. Toyota Motor Corp.,*
    147 F. Supp. 3d 955 (N.D. Cal. 2015) ........................................................................ 15

*Carpenter v. United States,*
    138 S. Ct. 2206 (2018) ................................................................................................ 13

*In re Facebook Internet Tracking Litig.,*
    263 F. Supp. 3d 836 (N.D. Cal. 2017) ...................................................................3, 12

*Fredenburg v. City of Fremont,*
    119 Cal. App. 4th 408 (2004) ..................................................................................... 12

*Friends of Animals v. U.S. Fish & Wildlife Serv.,*
    879 F.3d 1000 (9th Cir. 2018) .................................................................................... 11

*Gonzales v. Uber Techs., Inc.,*
    305 F. Supp. 3d 1078 (N.D. Cal. 2018) ...............................................................2, 3, 9

*In re Google Inc. Gmail Litigation,*
    No. 13-MD-02430-LHK, 2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) ................... 3

*Hill v. Nat'l Collegiate Athletic Ass'n,*
    7 Cal. 4th 1 (1994) ..............................................................................................3, 11, 14

*In re iPhone Application Litigation,*
    844 F. Supp. 2d 1040 (N.D. Cal. 2012) ..................................................................... 14

*Microsoft Corp. v. Motorola, Inc.,*
    No. C10-1823JLR, 2013 WL 2111217 (W.D. Wash. Apr. 25, 2013) ......................... 8

*Morales v. Cty. of Los Angeles,*
    No. B257303, 2015 WL 4240720 (Cal. Ct. App. July 14, 2015) ................................ 9

*Moreno v. San Francisco BART District,*
    No. 17-CV-02911-JSC, 2017 WL 6387764 (N.D. Cal. Dec. 14, 2017) ................7, 9, 15

*Opperman v. Path, Inc.,*
    205 F. Supp. 3d 1064 (N.D. Cal. 2016) ...................................................................... 3

*People v. Prunty*,
    62 Cal. 4th 59 (2015) ................................................................................................... 11

*Pioneer Elecs. (USA), Inc. v. Sup. Ct.*,
    40 Cal. 4th 360 (2007) ................................................................................................. 12

*SiRF Tech., Inc. v. ITC*,
    601 F.3d 1319 (Fed. Cir. 2010) ..................................................................................... 8

*In re Yahoo Mail Litig.*,
    7 F. Supp. 3d 1016 (N.D. Cal. 2014) ....................................................................11, 15

**Statutes**

Cal. Civ. Code § 3515 ........................................................................................................... 3

Cal. Penal Code § 630 ......................................................................................................... 10

Cal. Penal Code § 637.7 .................................................................................................*passim*

**Other Authorities**

Rest. (2d) Torts § 652B ....................................................................................................... 12

GOOGLE LLC'S REPLY ISO MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED COMPLAINT
Case No. 5:18-cv-05062-EJD

1332164

## I.      INTRODUCTION[1]

Plaintiffs' complaint fails to state a claim that Google improperly collected or used their location information. ***First***, all of Plaintiffs' claims fail because Google disclosed and Plaintiffs consented to its collection of location information in its Privacy Policy and further in its setting for Web & App Activity. In fact, Plaintiffs' opposition concedes as much, acknowledging that they consented to Google's collection of location information and that Google's use of that location was "appropriate" to provide Plaintiffs with "driving directions" or "showtimes for movies playing near[by]." Opp. 3. While Plaintiffs now argue their consent was limited to Google's "transitory" or "contemporaneous use" of their location information, their argument finds no basis in Google's Privacy Policy, its public descriptions of its location practices, or in the decisional law cited by Plaintiffs. Each of Plaintiffs' claims—whether under CIPA, the California Constitution, or the common-law tort of intrusion upon seclusion—is precluded by their consent to Google's collection of their location information when they used Google's services, as disclosed both in Google's Privacy Policy and again in the setting for Web & App Activity.

***Second***, Plaintiffs' creative attempts to save their CIPA claim fare no better. As a matter of law, CIPA does not apply to claims based upon smartphone software. Nor does it apply when a person purposefully brings her smartphone into her car to use Google Maps or puts her phone into a protective plastic case. ***Third***, Plaintiffs' opposition tries to save their privacy tort claims by attempting to rewrite their complaint to suggest that there are disputes of fact necessitating proceedings beyond the four corners of their complaint. But Plaintiffs' opposition contradicts the allegations in their own complaint and the incorporated exhibits, erroneously conflating Google's Location History setting with the Web & App Activity setting. Plaintiffs cannot create their own factual disputes by making assertions in their opposition brief inconsistent with their own pleaded allegations. As a matter of law, the facts alleged in Plaintiffs' complaint demonstrate that Google disclosed the type of information it would collect, that Plaintiffs consented to it, and that therefore Google's actions were consistent with users' reasonable expectations of privacy. Plaintiffs'

---

[1] Throughout this brief, unless otherwise stated, emphases were added to quotations and internal punctuation, alternations, and citations were omitted from them.

GOOGLE LLC'S REPLY ISO MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED COMPLAINT
Case No. 5:18-cv-05062-EJD

1332164

consolidated complaint should be dismissed in its entirety and with prejudice.

## II.   ARGUMENT

### A.   Plaintiffs concede that they consented to collection of location information.

All of Plaintiffs' claims fail because Google disclosed and Plaintiffs consented to Google's collection of their location information. Google's Privacy Policy informs users that it "*collect[s]* information about your location when you use our services." RJN Ex. 3A. Previous versions of the Privacy Policy similarly disclosed that, "When you use Google services, we may *collect and process* information about your actual location." Lee Decl. ¶ 5(iv); RJN Ex. 3D at 3.

The gravamen of Plaintiffs' claims is that even when Plaintiffs turned off Location History, Google collected certain location information if users had a different setting called Web & App Activity turned on. But in opposition, Plaintiffs concede that they consented to Google's collection of their location information when they used certain services (such as Google Maps) that collected data as described in Google's Web & App Activity setting. Plaintiffs acknowledge that, in fact, they "*accept[ed]* the transitory use of location information" by Google for applications like driving directions and searching for nearby movie show times. Opp. 3. Plaintiffs acknowledge that Google's "*contemporaneous use*" of that location information was appropriate. *Id.* How else could one use Google Maps? Nonetheless, Plaintiffs insist that despite "accepting the *transitory use* of location information," they did not consent to the "*storage*," "*cataloging or retaining*" of their information. *Id.* 3–4. But Plaintiffs' distinction is concocted purely for litigation purposes. Nowhere does Google's Privacy Policy distinguish between "transitory" use and retention of location information; instead it broadly authorizes collection. Under any reading of the Privacy Policy, Plaintiffs consented to Google's collection of their location information.

Because Plaintiffs consented, they cannot state a privacy claim. *First*, CIPA includes a statutory exemption for "tracking" that was "consented to." Cal. Penal Code § 637.7; *see also Gonzales v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078, 1088 (N.D. Cal. 2018) (dismissing § 637.7 claim where plaintiff consented to tracking).[2] Plaintiffs now concede that they have, at minimum,

---

[2] Plaintiffs' attempts to distinguish *Gonzales* (Opp. 6) ignore that their consent to Google's

consented to Google's collection of location information for "transitory" use. Opp. 3. Such consent is fatal to their CIPA claim, because § 637.7 does not distinguish between "transitory" use and "storage." Indeed, § 637.7(a) does not address **storage**, but only "**determin[ing]** the location or movement of a person." What happens **after** a person's location is "determine[d]" is irrelevant under § 637.7(a), and because Plaintiffs consent to that determination here, § 637.7(a) cannot apply. **Second**, because Google properly obtained Plaintiffs' consent to its collection of location information through its Privacy Policy (and also included disclosures of its collection through its Web & App Activity setting), Plaintiffs' claims under the California Constitution and the common law fail as a matter of law. *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 39–40 (1994); *In re Facebook Internet Tracking Litig.*, 263 F. Supp. 3d 836, 846 (N.D. Cal. 2017).[3] "He who consents to an act is not wronged by it." Cal. Civ. Code § 3515.

The cases Plaintiffs cite offer no support for their attempt to limit their consent to Google's collection of location information. In both cases, unlike here, the plaintiffs consented to conduct narrower than the conduct alleged. In *Opperman v. Path, Inc.*, 205 F. Supp. 3d 1064 (N.D. Cal. 2016), the court distinguished users' consent to Yelp "look[ing] at" their mobile phone contacts and the broader alleged practice of "upload[ing]" users' contacts to its servers. *Id.* at 1072–73. In *In re Google Inc. Gmail Litigation*, No. 13-MD-02430-LHK, 2013 WL 5423918 (N.D. Cal. Sept. 26, 2013), the court distinguished between consent to email scanning to exclude objectionable content, and consent to email scanning to create user profiles and provide targeted advertising. *Id.* at *12–13. Here, unlike in *Opperman* and *Gmail*, Plaintiffs consented to a Privacy Policy authorizing the very conduct they complain of—Google's **collection** of their location information

---

collection of location information is fatal to their CIPA claim, just as Gonzales' "consent[] to the tracking of his vehicle through his cellphone when he signed up to be a Lyft driver" required dismissal of his CIPA claim. 305 F. Supp. 3d at 1090.

[3] Plaintiffs argue that *Hill* does not apply because in that case plaintiffs consented to drug testing. Opp. 6. But here too, Plaintiffs consented to Google's collection of location information through a Privacy Policy that expressly authorizes Google to do so.

when they use Google services. Plaintiffs' attempt to retroactively limit such collection to "transitory" use is not supported anywhere in the Privacy Policy that they agreed to.

In an effort to circumvent the Privacy Policy's clear terms, Plaintiffs continue to point to a single sentence embedded in the middle of a support page for the Location History feature, claiming that they "relied upon" that sentence for the proposition that turning off the Location History feature would restrict Google from collecting any location information through any other feature or service (though, as noted above, they did not appear to believe this applied to Google's "transitory" collection of their location information). Opp. 5; Compl. ¶ 40 (alleging that the support page for Location History previously stated, "You can turn off Location History at any time. With Location History off, the places you go are no longer stored."). But none of the Plaintiffs allege that they even ***read*** that statement or reviewed the Location History support page. Rather, they gesture vaguely to unidentified "representations by Google ***to the effect*** that turning 'Location History' off would prevent [their] location information from being stored." Compl. ¶¶ 8–9, 13–14, 18, 21, 24, 27. Yet, even if Plaintiffs had read the previous Location History support page, that page on its face describes only a single Google feature (Location History) and does not purport to supersede or override Plaintiffs' consent to Google's Privacy Policy, which applies across numerous Google features and services and plainly informs users that Google "collect[s] information about your location when you use ***our services***."

Plaintiffs also seek to ignore or dismiss the text of a similar support page for Web & App Activity, which informed them that Google would collect their location information when they used certain features and services (such as when they used Google Maps to provide driving directions or searched for local weather or show times). Plaintiffs insinuate without foundation that Google, prior to this lawsuit, failed to inform users that Google collects location information when the Web & App Activity setting is on. Opp. 5. They accuse Google of "misrepresent[ing] the record" and creating the current Web & App Activity support page for purposes of defending this litigation. *Id*. But contrary to Plaintiffs' insinuations, previous versions of the Web & App Activity support page also identified "[y]our location" in the "What's saved as Web & App Activity" section, stating that "[w]hen Web & App Activity is on, Google saves information like . . . Your location." Supp. RJN

Ex. 2; *see also id.* Ex. 3 ("When Web & App Activity is on, Google saves information like . . . Your connection information, including location").

Next, Plaintiffs' opposition misleadingly asserts that "Google treated Plaintiffs' private location information in exactly the same way as it did for users who had enabled 'Location History.'" Opp. 4 (citing Compl. ¶¶ 46–48).[4] But not only do Plaintiffs conflate Location History with Web & App Activity erroneously, they contradict the factual allegations of their complaint and the exhibits attached thereto. Location History and Web & App Activity are different. Location History collects more detailed location information so that users can create a "timeline" of their activities, if users choose to turn it on. Compl. Ex. 4 at ECF p. 129; Ex. 30 at ECF p. 369. But Location History is off by default. *Id*. Ex. 26 at ECF p. 352; Ex. 13 at ECF p. 218. Contrary to their opposition, Plaintiffs' complaint does not allege that Google engaged in "continuous" or "uninterrupted" tracking of Plaintiffs when the Location History setting is turned off.

By contrast, Web & App Activity is a setting that is on by default and enables many typical location-related features, such as accessing driving directions or local weather. Google discloses to users that when the Web & App Activity setting is on (and Plaintiffs do not allege they turned it off), Google saves certain information about a user's "***activity on Google sites and apps*** to give you faster searches, better recommendations, and more personalized experiences in Maps, Search,

---

[4] In support of this contention, Plaintiffs cite paragraphs 46–48 of their complaint, but those paragraphs (and the exhibits cited therein) provide no support for Plaintiffs' conflation of Location History and Web & App Activity. Paragraphs 46 and 47 cite the AP report (Compl. Ex. 2) that led Plaintiffs to file this lawsuit. As quoted in Paragraph 47, that AP report recognized that, unlike users who opt in to Location History, Web & App Activity users' locations are stored ***only when*** they actively use applications such as "Google Maps app, weather apps, and searches." Similarly, Paragraph 48 quotes and relies on a report that recognized that Web & App Activity did not involve continuous tracking and that "most apps do not record the users' location through Web & App Activity," though users who have "Web & App Activity on, will still have ***some*** of their location data collected by Google." Compl. Ex. 13.

5

and other Google services." Compl. Ex. 27 at ECF p. 356; *id.* Ex. 13 at ECF p. 219 ("Web & App Activity is enabled by default when setting up a Google account."). According to Plaintiffs' own complaint, Web & App Activity does ***not*** continuously collect uninterrupted information about a user's location everywhere they go with their mobile device. Instead, Web & App Activity is triggered only when one "uses Google-controlled features" like Google Maps or Search. Compl. ¶ 47. At bottom, Plaintiffs can't contradict their own complaint to obscure their consent by conflating Location History and Web & App Activity erroneously.

Because Plaintiffs expressly consented to Google's collection of location information through acceptance of Google's Privacy Policy, each of their claims should be dismissed with prejudice. Plaintiffs' citations to the Location History support page do not defeat that consent, particularly where they acknowledge that Google's collection of such location information for purposes of providing features like driving directions and other localized information was "appropriate" and consistent with their consent. Opp. 3.

**B.      Plaintiffs' allegations fail to state a claim under CIPA's plain language.**

In addition to failing because of their consent, Plaintiffs' CIPA claim fails because Google has not installed an "electronic tracking device" that is "attached to a vehicle or other movable thing." Cal. Penal Code § 637.7. CIPA was enacted to penalize attachment of an electronic tracking device to a vehicle without consent. The statute's plain language demonstrates, and case law holds, that CIPA does not apply to software installed on mobile phones. Moreover, CIPA cannot apply when a user, knowing her phone uses her location information, purposefully brings her device into a car or slips it into a protective case. Plaintiffs attempt to create a CIPA windfall by arguing that a violation occurs whenever software collects data using a smartphone or any of its device components, requiring neither surreptitious attachment nor even a vehicle or its equivalent to support their CIPA allegation. But Plaintiffs' unprecedented claim has no basis in statutory language, case law or common sense.

**1.      Plaintiffs' CIPA claim is based on software, which is not an "electronic tracking device" that can be "attached to a movable thing."**

Plaintiffs' complaint repeatedly makes allegations against Google's software, including its settings for Location History and Web & App Activity, its "mobile operating system," and its

6

1332164

"mobile applications," and then Plaintiffs "repeat[ed] and realleg[ed]" those allegations into the CIPA count of their complaint. Compl. ¶ 118. But Plaintiffs argue that their allegations do not hinge on software because the word doesn't appear in the CIPA count, and therefore they assert that Judge Corley's reasoning in *Moreno v. San Francisco BART District*, No. 17-CV-02911-JSC, 2017 WL 6387764 (N.D. Cal. Dec. 14, 2017), is inapplicable here. Opp. 8. Plaintiffs' allegations are centrally focused on Google's software.

Plaintiffs do not allege that Google physically "attached" a device to their vehicles or other movable things. They do not contend that they were unaware that their smartphones contained GPS hardware, cellular radios, and WiFi chips. They do not claim that Google surreptitiously "attached" any of these internal components to their smartphones. Instead, Plaintiffs complain that Google collected their location information from Google's mobile software installed on their mobile devices. In short, Plaintiffs contend that they turned one software setting off (Location History), that they left another software setting on (Web & App Activity), and that Google's software collected location data **because of** those specific software settings. Compl. ¶ 122; *see also id.* ¶¶ 5, 8–9, 11, 13–14, 16, 18, 20–21, 23–24, 26–27, 29, 38–39, 40–50, 61–70, 72–75, 77–80, 86–87, 106, 109–110 (describing Location History and/or Web & App Activity). Plainly, Plaintiffs allegations are focused on Google's software.

Plaintiffs cannot save their CIPA claim from the reasoning of *Moreno*, which likewise involved mobile software running on smartphones containing GPS hardware, cellular radios and WiFi chips. In *Moreno*, Judge Corley correctly focused on software because the software at issue— the BART Watch mobile app—was the accused means for the defendants' "clandestine collection of cell phone identifiers and location data" from the plaintiffs' phones. 2017 WL 6387764, at *1. There is no meaningful distinction between the phones used here and those used in *Moreno*, which also had GPS hardware, WiFi chips, and cellular radios. Here too, Plaintiffs' allegations are that Google invaded their privacy via its mobile software—not that it surreptitiously attached any hardware device to Plaintiffs' vehicles of other movable things.

  **2.**  **GPS hardware, cellular radios, and WiFi chips are device components, not "electronic tracking devices."**

In a failed attempt to transform their allegations into a CIPA claim, Plaintiffs argue that

certain device components of a smartphone are "electronic tracking devices" presumably so that they can argue that those components are attached to a "movable thing"—in their view, the smartphone. But none of these device components are independently capable of revealing a person's location by the transmission of electronic signals to Google. A WiFi chip, "[w]hen embedded into a device . . . *enables the device* . . . to transmit and [r]eceive information on radio frequency carriers"—in other words, the WiFi chip itself doesn't communicate wirelessly, but "enable[s] *a host device* to communicate wirelessly." *Microsoft Corp. v. Motorola, Inc.*, No. C10-1823JLR, 2013 WL 2111217, at *93 (W.D. Wash. Apr. 25, 2013). Similarly, GPS hardware is "incorporated into end-user GPS devices" and by definition *receives* but does not *transmit* satellite signals. *See SiRF Tech., Inc. v. ITC*, 601 F.3d 1319, 1322 (Fed. Cir. 2010) ("The GPS system permits a GPS-enabled *receiver* to detect signals from . . . satellites[.]").

Plaintiffs object that under Google's logic, an anti-theft car tracking system or a navigation system in a commercial aircraft could not be an electronic tracking devices because they are part of larger devices, like the "landing gear" on the plane or the "radiator" on the car. Opp. 9. But Google did not argue that an electronic tracking device can never be a component of a larger integrated system; the point is that CIPA requires a device capable of revealing the location of a person through electronic transmissions. *See* Cal. Penal Code § 637.7(d). While a complete anti-theft car tracking system might be capable of doing so, a GPS chip or a WiFi chip standing alone cannot. Much as a plane's landing gear cannot fly passengers cross-country and a radiator cannot drive down the highway, these chips cannot satisfy the definition of an electronic tracking device. This is not a question of expert testimony (Opp. 9), but of common sense.

### 3. Plaintiffs haven't alleged that a device is "attached to a vehicle or other movable thing."

Plaintiffs' alternative CIPA theory also fails because Plaintiffs cannot allege their smartphones are "attached to a vehicle or other movable thing." In their attempt to fit a square peg into a round hole, Plaintiffs rewrite the plain text of the statute to suit their theory. *First*, they stretch the definition of "attached" beyond recognition. Google's definition of "attached"—*i.e.* joined or fastened to—tracks the plain meaning of the word. Indeed, Judge Corley recently held that "[t]he ordinary meaning of 'to attach' in [the § 637.7] context is 'to join or fasten (something) to

something else.'"[5] *Moreno*, 2017 WL 6387764, at *5 (quoting Oxford English Dictionary). Merriam-Webster similarly defines "attached" as "1. connected or joined to something." *See* https://www.merriam-webster.com/dictionary/attached. Dictionary.com defines "attached" as "1. joined; connected; bound." *See* https://www.dictionary.com/browse/attached. The American Heritage Dictionary defines "attached" as "joined to" or "fixed to," *see* https://ahdictionary.com/word/search.html?q=attached, and defines "attach" as "1. To fasten, secure, or join." *See* https://ahdictionary.com/word/search.html?q=attach. Unable to plead that their phones were connected, joined, or fastened to vehicles, Plaintiffs cannot satisfy § 637.7(d).

In contrast, Plaintiffs propose to define "attached to" as "something ***akin to accompanying*** or '***traveling with***,'" which not only fails to give effect to the plain meaning of the word "attached," but is also inconsistent with ordinary usage.[6] Opp. 12. Plaintiffs cite definitions of "attach," as opposed to "attached," but even their chosen definitions of "attach" don't support their asserted definition of "traveling with," and yield absurd results when applied to smartphones. Plaintiffs cite a Merriam-Webster definition of "attach"—"2.a: to bring (***oneself***) into an association"— but a smartphone is incapable of "bring[ing]" itself "into an association." *See* https://www.merriam-webster.com/dictionary/attach. Plaintiffs cite an equally inapplicable Google Dictionary definition

---

[5] Plaintiffs argue Judge Corley "***suggested***" in *Gonzales*, 305 F. Supp. 3d at 1089–90, that "she did not intend in the non-binding *Moreno* decision to define 'attach' so narrowly as to foreclose Plaintiffs' claims here." Opp. 12. But the word "attached" doesn't appear at all in *Gonzales*, and the definition of "electronic tracking device" was not at issue. 305 F. Supp. 3d at 1089–90.

[6] Plaintiffs cite to an unpublished, noncitable decision to argue against the plain meaning of "attached." Opp. 12 (citing *Morales v. Cty. of Los Angeles*, No. B257303, 2015 WL 4240720 (Cal. Ct. App. July 14, 2015)). But the definition of "attached" was not at issue in *Morales*; there was no explanation of how the cellphone was "secreted" in the victim's vehicle; and the probation officer who performed the tracking "was never charged with a violation of law" under § 637.7. 2015 WL 4240720, at *2. In fact, CIPA was not at issue in the case, which was a civil action appealing the probation department's administrative discipline of the probation officer. *Id.* at *1.

of "attach"—"join (someone or something) without being invited"—but that source provides the example "they were all ***too ready to attach themselves to you*** for the whole day." *See* https://www.google.com/search?q=dictionary#dobs=attach. These definitions are nonsensical when applied to inanimate objects, such as "devices." For Plaintiffs' "device[s]" to be "attached to a vehicle or other movable thing," the smartphones would have to "join (someone or something) without being invited" or "bring [themselves] into an association" with a vehicle or other movable thing. Plaintiffs' chosen definitions illustrate that the word "attach" is sometimes used figuratively with respect to humans capable of free will and self-direction, but Plaintiffs' attempt to swap out the plain meaning of "attached to" for these more figurative usages in the context of "electronic tracking devices" is incompatible with CIPA's plain meaning.

Tellingly, Plaintiffs dedicate pages to their interpretation of legislative intent before ever offering a definition of the statutory term "attached." Opp. 7–12. This inverts the rules of statutory interpretation, which require courts to "look[ ] first to the language of the statute and give[ ] effect to its plain meaning," and only next to consider legislative history "[i]f the intent of the legislature is not clear from the language of the statute." *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 945 (9th Cir. 2013). Moreover, Plaintiffs' legislative history argument is contrary to the historical facts (as even they admit). Plaintiffs concede that traditional "***[t]racking devices*** in or on vehicles was [sic] undoubtedly the technology of greatest concern in 1998" when the legislature passed CIPA, and that the legislature could not have been concerned with smartphone tracking because phones "did not have the GPS capabilities" at that time. Opp. 11. Although Plaintiffs argue that the legislature "was concerned with securing privacy rights against . . . 'advances in science and technology,'" and thus "did not intend to limit the statute to only the most common technology applications of 1998" (*id.* (quoting Cal. Penal Code § 630)), they omit the rest of § 630, which refers to "advances in science and technology" in the past tense and contemplates devices ***already*** in use in 1998.

***Second***, recognizing their phones are not attached to vehicles, Plaintiffs instead argue that the phones of some class members ***could be*** attached to any number of "other movable things," including belt holsters and phone cases, although Plaintiffs never alleged such attachment in their

1332164

complaint. Opp. 11. Obviously, they cannot save their complaint from dismissal by asserting new allegations in their opposition. But even if they had made such allegations in their complaint, Plaintiffs' reliance on "other movable things" as a catchall escape hatch ("**non-vehicles**") is untenable and ignores basic rules of statutory construction. Neither a phone case nor a belt holster can be properly construed as a "vehicle or other movable thing." To the contrary, "when words 'are associated in a context suggesting that the words have something in common, they should be assigned a permissible meaning that makes them similar.'" *Friends of Animals v. U.S. Fish & Wildlife Serv.*, 879 F.3d 1000, 1008 (9th Cir. 2018); *see People v. Prunty*, 62 Cal. 4th 59, 73 (2015) (interpreting "group" in "organization, association, or group" as requiring "a meaning generally similar to—and at least no broader than" the preceding terms). That limiting principle applies here, where the modifier "other" suggests a relationship between "vehicles" and "movable things," and where both "vehicles" and "movable things" are capable of moving a person. Plaintiffs' interpretation, which fails to consider these rules of construction, would render the word "vehicle" redundant and the qualifier "other" superfluous, as all "movable things" would surely include "vehicles." *See Prunty*, 62 Cal. 4th at 73 (courts "must stop short of construing [a term] so expansively" as to "render the other terms unnecessary or redundant"); *Arnett v. Dal Cielo*, 14 Cal. 4th 4, 22 (1996) (declining to construe "discovery" in "discovery or subpoena" so broadly as to render "subpoena" surplusage). Plaintiffs' interpretation of § 637.7 thus would encompass every instance in which a smartphone "accompanies" any conceivable thing capable of being moved. Such interpretation is incompatible with plain meaning and ordinary canons of construction.

Plaintiffs cannot allege their smartphones were "attached to a vehicle or other movable thing" under CIPA's plain meaning. Their CIPA claim should be dismissed with prejudice.

### C.   Plaintiffs fail to state claims for invasion of privacy under the California Constitution and common-law intrusion upon seclusion.

"The California Constitution sets a 'high bar' for establishing an invasion of privacy claim." *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1038 (N.D. Cal. 2014). To state a claim for invasion of privacy under the California Constitution, Plaintiffs must establish: (1) a legally protected privacy interest; (2) a reasonable expectation of privacy in the circumstances; and (3) a serious invasion of privacy constituting "an *egregious* breach of . . . social norms." *Hill*, 7 Cal. 4th at 35–

37. Similarly, to state a claim for intrusion upon seclusion, Plaintiffs must show "(1) that the defendant intentionally intruded into a place, conversation, or matter as to which the plaintiff had a reasonable expectation of privacy and (2) that the intrusion was 'highly offensive' to a reasonable person." *In re Facebook Internet Tracking Litig.*, 263 F. Supp. 3d at 846; *see also* Rest. (2d) Torts § 652B. Plaintiffs fail to satisfy these required elements.

**First**, Plaintiffs cannot establish they had a reasonable expectation of privacy under the circumstances because they agreed to a Privacy Policy that authorized Google to collect their location information. Plaintiffs can't claim that Google "surreptitiously" collected their location information when they expressly agreed to share that information with Google. Opp. 17. Nor can Plaintiffs claim that Google "tracked Plaintiffs **continuously** . . . in every . . . aspects of their lives," Opp. 18, when their own allegations and exhibits make clear that Google does **not** track their location information continuously through Web & App Activity. *See* Compl. ¶ 47.

**Second,** Plaintiffs don't allege that Google misused or collected extremely sensitive information (MTD 16 n.11 (citing cases)), and cannot establish a "legally protected privacy interest," either in the form of an informational interest "in precluding the dissemination or misuse of sensitive and confidential information" where disclosure would cause "unjustified embarrassment or indignity," or a bodily autonomy interest in "making intimate personal decisions" without "observation" or "intrusion." *Pioneer Elecs. (USA), Inc. v. Sup. Ct.*, 40 Cal. 4th 360, 370 (2007). As the California Court of Appeal held in *Fredenburg v. City of Fremont*, 119 Cal. App. 4th 408 (2004), "[a] person's general location is **not** the type of core value, informational privacy" encompassed by the California Constitution, *id.* at 423, and Plaintiffs cannot establish a violation of a legally protected privacy interest without something more.

Plaintiffs assert that they've established a legally protected privacy interest, arguing the location information Google collects is "granular and revealing," and "for a given individual, Google not only stores a record of where, specifically, she is, at what time, and for what duration, Google also discerns how fast she is traveling, whether it is on foot or in a vehicle." Opp. 15 (citing Compl. ¶¶ 50, 53). But Plaintiffs again mischaracterize the nature of the information they allege Google collected. The paragraphs cited in Plaintiffs' opposition—Paragraphs 50 through 53 of

1332164

Plaintiffs' Complaint—describe what Google collects through Location History, which Plaintiffs allege they **turned off**. *Compare* Compl. ¶ 50 ("Google's '**Location History**' is profoundly granular and revealing.") *with* ¶ 110 (classes consist of people "**who turned off 'Location History**'"). Nowhere in Plaintiffs' complaint do they allege that such granular or continuous information was collected regarding themselves or others who had turned Location History off. As explained above, such a theory is not only inconsistent with the factual allegations of the complaint, but also the exhibits cited therein, including the AP Report.

*Carpenter v. United States*, 138 S. Ct. 2206 (2018), provides no support for Plaintiffs' claims. *Carpenter* addressed the "narrow" question of "whether the Government conducts a search under the Fourth Amendment when it accesses historical cell phone records," or cell-site location information ("CSLI"), "that provide a comprehensive chronicle of the user's past movements." *Id.* at 2211, 2220. There was no claim in *Carpenter* that the cellular phone companies (MetroPCS and Sprint) had invaded Carpenter's privacy by collecting Carpenter's CSLI in the first instance, but rather, the question was whether the **government** violated the Fourth Amendment by obtaining Carpenter's CSLI from MetroPCS and Sprint without a warrant. *Id.* at 2212; *see also id.* at 2242 (Thomas, J., dissenting) ("Carpenter stipulated below that the cell-site records are the **business records of Sprint and MetroPCS**."). Under *Carpenter*, there is no question that Google (like MetroPCS and Sprint) is permitted to collect information from its customers. A privacy interest would be implicated only if a third party, such as law enforcement, then sought to obtain that information without a warrant. Moreover, the limited activity collected through Web & App Activity is substantially **dissimilar** to the "comprehensive" CSLI in *Carpenter*. Whereas Plaintiffs allege that Web & App Activity collects location information only when a user "uses Google-controlled features" like Google Maps or Search (Compl. ¶ 47), in contrast, CSLI is generated each time a cellphone connects to a cell site, which occurs constantly (*Carpenter*, 138 S. Ct. at 2211). And unlike CSLI, which cellphone users cannot avoid "[a]part from disconnecting the phone from the network," the activity recorded through Web & App Activity can be turned off or deleted any time. Compl. Ex. 23, 29; *see also* RJN Ex. 2.

Plaintiffs argue privacy expectations are "developing" and "privacy interests and

13

accompanying legal standards are best viewed flexibly and in context." Opp. 16 (quoting *McDonald v. Kiloo ApS*, 2019 WL 2211316, *4 (N.D. Cal. May 22, 2019). But viewing privacy interests "flexibly and in context" does not mean asking the Court to override Plaintiffs' express consent (which they now acknowledge) to Google's collection of location information or to draw implausible inferences contradicted by Plaintiffs' own allegations and exhibits. Rather, viewing privacy interests "in context" requires the Court to consider Plaintiffs' consent to Google's collection of such information, as "no wrong is done to one who consents." *Hill*, 7 Cal. 4th at 26.

**Third**, courts regularly dismiss invasion-of-privacy claims at the pleading stage for not establishing an egregious breach **even when**, unlike here, plaintiffs claim a defendant collected location information without consent. MTD 18–19. Plaintiffs fail to establish that this case compels a different result. Plaintiffs assert that *In re iPhone Application Litigation*, 844 F. Supp. 2d 1040 (N.D. Cal. 2012), is inapplicable here because Apple's representation that it would safeguard users' information "did not on its face appear to be false," whereas here, Google "misrepresent[ed]" that it "secretly collect[s]" location information. Opp. 20. But Plaintiffs ignore the allegations of the *In re iPhone* plaintiffs who alleged that "Apple represented that users could prevent Apple from collecting geolocation data about them by switching the Location Services setting on their iDevices to 'off,'" but "continued to monitor and store information about Plaintiffs locations even when the functionality was disabled on users' iDevices." 844 F. Supp. 2d at 1050–51. Here, where Plaintiffs consented to a Privacy Policy authorizing Google to collect location information when they use its services, and where the Web & App Activity support page has stated for years that Google collects location information, the facts fall far short of the conduct alleged in *In re iPhone*. Judge Koh's holding that the systematic collection and dissemination of mobile users' geolocation data did "not constitute an egregious breach of social norms" should apply no differently here. *Id.* at 1063.

**Fourth**, although Plaintiffs argue that there are "mixed question[s] of law and fact" preventing dismissal of their claims, Opp. 17, Plaintiffs plead no facts at all regarding what location information Google allegedly collected from them or why they contend that specific information is private. Plaintiffs plead in boilerplate fashion that they "carried [their] mobile device[s] virtually everywhere," and if someone knew all the places they went with their phones, that person could

1    learn much about them. Compl. ¶¶ 10, 15, 19, 22, 25, 28. But Plaintiffs have not pleaded that they

2    actually used the relevant Google features, such as Google Maps or Search, everywhere they went

3    or what location information Google actually collected from them (which is readily available to

4    them through their Google accounts). That failure alone is grounds for dismissal as a matter of law.

5    *Cahen v. Toyota Motor Corp.*, 147 F. Supp. 3d 955, 973 (N.D. Cal. 2015) (insufficient to generally

6    plead that the defendant was tracking his vehicle's "location 'at various times'" because that is "not

7    categorically the type of sensitive and confidential information the constitution aims to protect.").

8         Plaintiffs argue that *Cahen* is distinguishable because defendants tracked plaintiffs' vehicle

9    locations only "at various times." Opp. 18. But as explained above, *see supra* Section II.A, with

10   Location History disabled and Web & App Activity left on, Google's collection of location

11   information occurs only "at various times" when Plaintiffs interact with Google services. *See*

12   *Moreno*, 2017 WL 6387764, at *8 (considering allegation of monitoring "at periodic intervals"

13   indistinguishable from allegation of monitoring "at various times" in *Cahen*).

14        Plaintiffs' case is also similar to *In re Yahoo Mail Litigation*. In that case, the court

15   dismissed allegations that Yahoo had scanned the content of their emails, holding that there is "no

16   legally protected privacy interest and reasonable expectation of privacy in emails as a general

17   matter" and that plaintiff must "plead specific email content in specific emails" to demonstrate a

18   reasonable expectation of privacy. 7 F. Supp. 3d at 1040–42. Here too, Plaintiffs' allegations are

19   "fatally conclusory" and fail to identify the "particular" information Google allegedly collected or

20   explain why that specific information is sensitive enough to invoke the California Constitution. *Id.*

21   at 1041. Though Plaintiffs attempt to distinguish their case from *In re Yahoo Mail Litigation*,

22   arguing that they've "allege[d] Google's collection of the ***intimate details of their precise location***

23   ***over years***," the boilerplate allegations in their complaint contain no details at all about their precise

24   location, much less intimate details. Compl. ¶¶ 10, 15, 19, 22, 25, 28.

25   **III.    CONCLUSION**

26        For the reasons set forth above and in Google's opening brief, Plaintiffs' consolidated

27   complaint should be dismissed in its entirety and with prejudice.

28

1332164

1   Dated:  July 30, 2019                                KEKER, VAN NEST & PETERS LLP

2

3                                        By:    /s/ Benjamin Berkowitz
                                                BENEDICT Y. HUR
4                                               BENJAMIN BERKOWITZ
                                                THOMAS E. GORMAN
5                                               CHRISTINA LEE

6                                               Attorneys for Defendant GOOGLE LLC

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GOOGLE LLC'S REPLY ISO MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED COMPLAINT
Case No. 5:18-cv-05062-EJD

1332164