1                  UNITED STATES DISTRICT COURT

2                 NORTHERN DISTRICT OF CALIFORNIA

3                        SAN JOSE DIVISION

4

5                                      )  C-18-05062 EJD
                                       )
6     IN RE: GOOGLE LOCATION HISTORY   )  SAN JOSE, CALIFORNIA
      LITIGATION,                      )
7                                      )  NOVEMBER 21, 2019
                                       )
8     _____  )  PAGES 1-62

9

10

11                   TRANSCRIPT OF PROCEEDINGS
                BEFORE THE HONORABLE EDWARD J. DAVILA
12                 UNITED STATES DISTRICT JUDGE

13

14    A P P E A R A N C E S:

15    FOR THE PLAINTIFFS:    LIEFF, CABRASER, HEIMANN & BERNSTEIN
                             BY:  MICHAEL W. SOBOL
16                                MELISSA GARDNER
                                  MICHAEL LEVIN-GESUNDHEIT
17                           275 BATTERY STREET, 29TH FLOOR
                             SAN FRANCISCO, CALIFORNIA  94111
18
                             AHDOOT & WOLFSON
19                           BY:  TINA WOLFSON
                                  THEODORE W. MAYA
20                           10728 LINDBROOK DRIVE
                             LOS ANGELES, CALIFORNIA  90024
21

22              APPEARANCES CONTINUED ON NEXT PAGE

23    OFFICIAL COURT REPORTER:    LEE-ANNE SHORTRIDGE, CSR, CRR
                                  CERTIFICATE NUMBER 9595
24

25            PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
                TRANSCRIPT PRODUCED WITH COMPUTER

1

2      APPEARANCES (CONTINUED)

3

4      FOR THE DEFENDANT:      KEKER, VAN NEST & PETERS
                              BY:  BENJAMIN BERKOWITZ
5                                 CHRISTOPHER SUN
                              633 BATTERY STREET
6                             SAN FRANCISCO, CALIFORNIA  94111

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1     SAN JOSE, CALIFORNIA                    NOVEMBER 21, 2019

 2                      P R O C E E D I N G S

 3          (COURT CONVENED AT 2:58 P.M.)

 4              THE COURT:  OKAY.  LET'S TURN TO 18-5062.  THIS IS

 5     GOOGLE LOCATION HISTORY.

 6              THE CLERK:  CAN I GET JUST A MOMENT FOR COUNSEL TO

 7     CHECK IN?

 8              THE COURT:  YEAH.

 9          (PAUSE IN PROCEEDINGS.)

10              MR. SOBOL:  GOOD AFTERNOON, YOUR HONOR.

11              THE COURT:  GOOD AFTERNOON.  I'M GOING TO CAPTURE

12     YOUR APPEARANCES HERE IN JUST A MOMENT.

13          (PAUSE IN PROCEEDINGS.)

14              THE COURT:  YES, CAN I HAVE YOUR APPEARANCES, PLEASE.

15     THANK YOU.

16              MR. SOBOL:  GOOD AFTERNOON, YOUR HONOR.

17          I'M MICHAEL SOBOL FROM LIEFF, CABRASER, HEIMANN &

18     BERNSTEIN.  I'M HERE FOR THE PLAINTIFFS.

19              THE COURT:  THANK YOU.

20              MS. WOLFSON:  YOUR HONOR, TINA WOLFSON OF

21     AHDOOT & WOLFSON FOR THE PLAINTIFFS AS WELL.

22              THE COURT:  THANK YOU.  GOOD AFTERNOON.

23              MS. WOLFSON:  GOOD AFTERNOON.

24              MR. SOBOL:  YOUR HONOR, MS. WOLFSON AND I ARE GOING

25     TO SPLIT SOME OF THE CLAIMS IN TERMS OF WHAT THE COURT MAY WANT
```

1    TO HEAR FROM US ON.

2              THE COURT:  OKAY.  THANK YOU.  I APPRECIATE THAT.

3    THANK YOU.

4              MR. BERKOWITZ:  GOOD AFTERNOON, YOUR HONOR.

5         BEN BERKOWITZ OF KEKER, VAN NEST & PETERS ON BEHALF OF

6    GOOGLE.  WITH ME IS MY COLLEAGUE, CHRISTOPHER SUN.

7              THE COURT:  ALL RIGHT.  THANK YOU VERY MUCH.

8         AND --

9              THE CLERK:  THERE'S OTHER COUNSEL, I BELIEVE.

10             MR. SOBOL:  YES, THERE ARE OTHER COUNSEL, I'M SORRY.

11   I DIDN'T MEAN TO BE RUDE.

12             MR. MAYA:  GOOD AFTERNOON, YOUR HONOR.

13        THEODORE MAYA OF AHDOOT & WOLFSON ON BEHALF OF PLAINTIFFS.

14             THE COURT:  THANK YOU.

15             MS. GARDNER:  MELISSA GARDNER OF LIEFF, CABRASER,

16   HEIMANN & BERNSTEIN ON BEHALF PLAINTIFFS.

17             THE COURT:  THANK YOU.

18             MR. LEVIN-GESUNDHEIT:  MICHAEL LEVIN-GESUNDHEIT FROM

19   LIEFF CABRASER ON BEHALF OF PLAINTIFFS ALSO.

20             THE COURT:  ALL RIGHT.  THANK YOU VERY MUCH.

21        THIS IS A MOTION TO DISMISS BY DEFENDANTS, AND I'M HAPPY

22   TO HEAR FROM YOU.

23        WHEN I LOOKED AT THIS, LET ME JUST INDICATE, I LOOKED AT

24   THIS, AND IT SOUNDS LIKE THE LAWSUIT IS PREDICATED A LITTLE BIT

25   ON A CALIFORNIA PENAL CODE, IS THAT RIGHT, 637.7?

1          MR. SOBOL:  YES, THAT'S THE CALIFORNIA INVASION OF

2     PRIVACY ACT.

3          THE COURT:  RIGHT.

4          MR. SOBOL:  THAT IS ONE OF THE CLAIMS, YES.

5          THE COURT:  AND I LOOKED AT THAT, AND I HAVE TO TELL

6     YOU, I THOUGHT, WELL, ALL RIGHT.  WE'LL NEED, FIRST OF ALL, 12

7     MEMBERS OF THE COMMUNITY TO HEAR THE CASE.  AND THEN THE

8     STANDARD OF PROOF IS PROOF BEYOND A REASONABLE DOUBT, ISN'T IT?

9     AND IT'S A MISDEMEANOR.

10          SO, YOU KNOW, THAT -- SOMEBODY -- YOU KNOW, GOOGLE COULD

11     GO TO JAIL, I SUPPOSE, FOR UP TO SIX MONTHS.

12          IS THAT YOUR UNDERSTANDING?

13          MR. SOBOL:  THOSE AREN'T THE REMEDIES WE'VE

14     REQUESTED, YOUR HONOR.

15          THE COURT:  THERE IS AN INJUNCTIVE RELIEF STATUTE, I

16     THINK, THAT ALLOWS FOR INJUNCTIVE AND OTHER CIVIL PENALTIES FOR

17     A VIOLATION OF THE STATUTE, AND I WAS THINKING, WELL, I WONDER,

18     PROCEDURALLY, HOW DO WE DO THAT?  HOW DO WE -- IS THERE A

19     CRIMINAL TRIAL AND THEN WE HAVE A REMEDY FOR INJUNCTION?

20          AND PERHAPS I'M GETTING AHEAD OF OURSELVES HERE, BUT IT'S

21     AN INTERESTING PARSE TO LOOK AT THE STATUTE.

22          AND I THINK THAT STATUTE PLAYS A LARGE PART OF WHAT YOUR

23     COMPLAINT IS, OR ONE OF THE PIECES OF IT.

24          AND --

25          MR. BERKOWITZ:  IT'S AN INTERESTING POINT, YOUR

1     HONOR.  I DON'T THINK IT'S PART OF THE BRIEFING BEFORE YOU

2     TODAY.

3             THE COURT:  NO.

4             MR. BERKOWITZ:  BUT I HAD THE PLEASURE OF TRYING, A

5     NUMBER OF YEARS AGO, A FALSE CLAIMS ACT CASE IN MISSISSIPPI, A

6     FEDERAL FALSE CLAIMS ACT CASE WITH THE DEPARTMENT OF JUSTICE ON

7     THE OTHER SIDE, AND IN THAT CASE THE FALSE CLAIMS THAT WERE

8     ALLEGED WERE VIOLATIONS OF THE ANTI-KICKBACK STATUTE, WHICH IS

9     A CRIMINAL STATUTE, AND THE SAME ISSUE ARISES THERE --

10            THE COURT:  YEAH.

11            MR. BERKOWITZ:  -- WHICH IS YOU NEED TO PROVE THE

12    VIOLATION OF THE ANTI-KICKBACK STATUTE BEYOND A REASONABLE

13    DOUBT.

14            THE COURT:  RIGHT.  SO IT'S JUST FASCINATING, BECAUSE

15    AS I LOOK AHEAD, I THOUGHT, WELL, THIS WILL BE INTERESTING.

16            MR. BERKOWITZ:  EXACTLY, YOUR HONOR.

17            THE COURT:  BUT WE'RE NOT THERE YET.

18            MR. BERKOWITZ:  WE'RE NOT THERE.

19            THE COURT:  WE'RE NOT THERE YET.

20            MR. BERKOWITZ:  AND I DON'T THINK -- FOR THE REASONS

21    WE'VE SAID IN OUR MOTION, YOUR HONOR, I DON'T THINK WE WILL BE

22    THERE IN THIS STAGE, OR WE SHOULD BE THERE.

23            THE COURT:  ALL RIGHT.  WELL, ONE THING -- AND I'M

24    GOING TO HEAR FROM YOU FIRST AND LET YOU GO FORWARD -- BUT IT

25    SEEMS LIKE, AGAIN, THIS 637 PART IS PREDICATED ON, I THINK,

1    CALIFORNIA PENAL CODE SECTION 630, WHICH IS THE STATEMENT OF

2    PURPOSE, IF YOU WILL, OF 637.7.  YOU'VE ALL READ THAT AND IT'S

3    A VERY GRAND AND BOLD STATEMENT THAT EXPRESSES THE STATE'S, THE

4    LEGISLATURE'S, DESIRE TO PROTECT AND RECOGNIZE THE INTEREST OF

5    PRIVACY IN CALIFORNIA RESIDENTS, AND THAT STATUTE SEEKS TO

6    PROTECT THAT.

7         AND IT'S INTERESTING TO NOTE THAT THAT WAS AUTHORED IN

8    1998, I BELIEVE.  AND THAT'S THE -- I THINK THAT'S THE DATE OF

9    THAT LEGISLATION, AND NOW HERE WE ARE A DECADE OR MORE LATER

10   AND WE'RE TRYING TO LITIGATE PRIVACY ISSUES BASED ON A STATUTE

11   THAT IS LONG IN THE TOOTH.

12        THE PRINCIPLES STILL THRIVE, AND WE ALL RECOGNIZE THEM.

13        BUT I THINK THIS IS ONE OF THOSE EXAMPLES WHERE THE LAW

14   JUST DOESN'T KEEP UP WITH TECHNOLOGY, AND MAYBE THAT'S ONE OF

15   THE THEMES OF YOUR CONVERSATION THIS AFTERNOON.

16        THIS IS SOMETHING I'VE LOOKED AT.

17           MR. BERKOWITZ:  I MEAN, IT'S AN INTERESTING

18   OBSERVATION, YOUR HONOR.

19        I THINK ONE THING YOU COULD LOOK AT, IN LOOKING AT THE

20   LANGUAGE OF 637.7, IS IT CLEARLY WASN'T INTENDED TO APPLY TO

21   THIS SITUATION WHERE SOMEBODY KNOWINGLY, YOU KNOW,

22   INTENTIONALLY WAS USING A DEVICE CAPABLE OF DETERMINING THEIR

23   LOCATION.

24        SO THERE'S NO DISPUTE, AND PLAINTIFFS DON'T DISPUTE, THAT

25   THEY UNDERSTOOD THAT THEIR MOBILE DEVICES WERE CAPABLE OF

1    DETERMINING THEIR LOCATION.

2         AND, IN FACT, THEY DON'T DISPUTE THAT THEY HAD LOCATION

3    REPORTING ON.  THEY DON'T DISPUTE THAT THEY HAD -- THAT THEY'D

4    USED FUNCTIONS LIKE GOOGLE MAPS AND GOOGLE WEATHER WHICH

5    WERE -- WHICH THEY UNDERSTOOD, AND I THINK THE WORDS IN THEIR

6    OPPOSITION, THEY BELIEVED IT WAS APPROPRIATE AND ACCEPTABLE FOR

7    GOOGLE TO USE THEIR LOCATION FOR THAT PURPOSE.

8         SO WE'RE NOT -- WE'RE NOT ACTUALLY IN THE LAND, I DON'T

9    THINK, OF WHAT THE LEGISLATURE WAS DISCUSSING IN SECTION 637.7,

10   BECAUSE SECTION 637.7 HAS NOTHING TO DO WITH WHETHER OR NOT

11   SOMEONE'S LOCATION INFORMATION IS STORED OR NOT STORED.

12        IT'S ABOUT WHETHER OR NOT IT'S DETERMINED BY AN ELECTRONIC

13   TRACKING DEVICE, AND HERE PLAINTIFFS DON'T DISPUTE, NOR COULD

14   THEY, THAT IT WAS APPROPRIATE AND ACCEPTABLE FOR GOOGLE, ON THE

15   FACTS HERE PLEADED, TO DETERMINE THEIR LOCATION WHEN THEY WERE

16   USING THEIR -- THE GOOGLE SERVICES.

17             THE COURT:  CERTAIN FEATURES.

18             MR. BERKOWITZ:  ABSOLUTELY, YOUR HONOR.

19             THE COURT:  RIGHT, THE MAPS, THE WEATHER, AND THOSE

20   TYPES OF THINGS.

21             MR. BERKOWITZ:  AND IF YOU LOOK AT PARAGRAPH 47 OF

22   THE COMPLAINT AND THE A.P. REPORT, IT'S CLEAR THAT THAT'S WHAT

23   WE'RE TALKING ABOUT.

24        WE'RE TALKING ABOUT PEOPLE WHO'VE OPTED OUT OF WHAT IS

25   DESCRIBED IN THE COMPLAINT AS LOCATION HISTORY, WHICH IS THE

1    FEATURE THAT ALLOWS INDIVIDUALS TO MAKE A PRIVATE MAP OF THE

2    PLACES THEY'VE GONE, AND WHAT WE'RE TALKING ABOUT INSTEAD IS

3    PEOPLE WHO HAVE WEB AND APP ACTIVITY -- BOTH LOCATION REPORTING

4    TURNED OFF AND WEB AND APP ACTIVITY TURNED OFF, AND THAT GROUP

5    OF PEOPLE, WHAT WE'RE TALKING ABOUT HERE, WHAT YOU SEE AGAIN IN

6    THE BOTH IN THE A.P. REPORT AND PARAGRAPH 47 OF THE COMPLAINT,

7    WE'RE ONLY TALKING ABOUT THE ALLEGATION THAT THESE PEOPLE

8    TRANSMITTED LOCATION INFORMATION TO GOOGLE WHEN THEY USED THOSE

9    SERVICES.

10           THE COURT:  RIGHT.  I THINK I CAPTURE WHAT YOU'RE

11   SAYING.

12           MR. BERKOWITZ:  SORRY IF THAT WAS LONG WINDED.

13           THE COURT:  YEAH.  NO, I DIDN'T MEAN TO --

14           MR. BERKOWITZ:  I WAS TRYING TO APPROPRIATELY STATE

15   IT.

16           THE COURT:  THANK YOU.  I DIDN'T MEAN TO HIJACK YOUR

17   PRESENTATION AT ALL WITH MY PRELIMINARY OBSERVATIONS.

18           MR. BERKOWITZ:  I THINK IT'S THE RIGHT OBSERVATION,

19   YOUR HONOR.  I MEAN, THIS STATUTE WAS NOT INTENDED TO CAPTURE

20   THE TYPE OF CONDUCT THAT'S ALLEGED IN THE COMPLAINT.

21           THE COURT:  THANK YOU.

22       AND WHEN I LOOKED AT THIS, IMMEDIATELY CAME TO MIND TWO

23   THINGS.  THE MOVIE "CHINATOWN," AND YOU'VE SEEN "CHINATOWN,"

24   I'M SURE YOU HAVE, AND YOU REMEMBER THE DETECTIVE THERE AS HE

25   TRACKED SOMEBODY, HE TOOK HIS WATCH OFF AND PUT IT UNDER THE

1    BACK TIRE OF THE 1940 OLDSMOBILE, AND THAT WAS THE WAY THEY

2    TRACKED THE TIME THAT THAT CAR LEFT, AS YOU RECALL, AND

3    JACK NICHOLSON IS THE ONE WHO DID THAT, AND HE WENT BACK THE

4    NEXT DAY -- YOUR COLLEAGUE DOESN'T KNOW THIS MOVIE.  HE HAS NO

5    CLUE WHAT I'M TALKING ABOUT.

6         MR. BERKOWITZ:  I HAVE A VAGUE RECOLLECTION.

7         THE COURT:  THE '40 OLDSMOBILE BACKS UP, THE SMASHED

8    WATCH IS THERE, AND HE KNOWS THAT THAT CAR LEFT AT 3:10 P.M.

9    THAT'S VERY OLD TECHNOLOGY.

10        AND NOW WE FAST FORWARD TO THIS TECHNOLOGY.  AND, AGAIN, I

11   AGREE WITH YOU, THE STATUTE DOESN'T CAPTURE THAT.  WHEN I LOOK

12   AT THE STATUTE, I'M DRAWN TO A LITTLE BIT OF COMING FORWARD

13   FROM THE MOVIE "CHINATOWN" TO THE MAGNETIC DEVICE THAT GOES

14   UNDER THE GAS TANK OR THE BUMPER OF THE CAR.

15        IT SEEMS LIKE THAT'S REALLY WHAT, BECAUSE IT'S IN THE

16   PENAL CODE, THAT'S WHERE THOSE TYPES OF THINGS TYPICALLY WE

17   UNDERSTAND OCCUR IN A PENAL CODE SETTING.

18        MR. BERKOWITZ:  AND EVEN PUTTING THE TECHNOLOGY --

19   YOU KNOW, THERE'S THE TECHNOLOGICAL DIFFERENCE, RIGHT, WHICH

20   CLEARLY THE STATUTE WASN'T INTENDED TO APPLY TO.

21        BUT THERE'S ALSO JUST THE, THE FACT THAT HERE YOU HAVE A

22   DEVICE THAT PLAINTIFFS KNOW AND ACCEPT DETERMINES THEIR

23   LOCATION, AND THAT'S REALLY WHAT THE STATUTE WAS FOCUSSED

24   ABOUT.

25        IT WASN'T ABOUT SOMEBODY'S -- TO USE THE EXAMPLE FROM THE

1    PLAINTIFFS' BRIEF, SOMEBODY'S -- I FORGET WHAT THEY CALL IT --

2    LOJACK OR SOMETHING LIKE THAT.

3        THAT WASN'T WHAT THE STATUTE WAS ABOUT.  IT WAS ABOUT THE

4    TYPE OF THING THAT YOUR HONOR IS TALKING ABOUT.

5        THE COURT:  RIGHT.  AND SO THERE'S A LOT TO TALK

6    ABOUT HERE.  WE NEED TO -- I THOUGHT INITIALLY, SHOULD WE PARSE

7    THIS STATUTE TO TRY TO SEE HOW IT'S RELEVANT TO TODAY AND

8    WHETHER IT'S RELEVANT TO THE COMPLAINT THAT'S HERE?

9        BUT, AGAIN, I DON'T WANT TO HIJACK YOUR ARGUMENT.

10       MR. BERKOWITZ:  YOUR HONOR, I'M HAPPY TO -- I'M HERE

11   TO BE HELPFUL TO THE COURT.

12       MR. SOBOL:  YEAH.

13       MR. BERKOWITZ:  I'M HAPPY TO TAKE IT IN THAT ORDER.

14       MR. SOBOL:  AS I HOPE TO BE AS WELL, YOUR HONOR, AND

15   I DON'T KNOW IF YOU --

16       THE COURT:  BUT I'M ASKING HIM ALL THE QUESTIONS.

17       (LAUGHTER.)

18       MR. SOBOL:  YOU KNOW, I -- AND I WANT TO ANSWER THEM

19   ANYWAY.

20       (LAUGHTER.)

21       MR. SOBOL:  BUT IF YOUR HONOR WANTS, I MEAN, I'M --

22   YOU KNOW, RATHER THAN GETTING --

23       THE COURT:  YOU WANT TO TALK.  I'M HAPPY TO LET YOU

24   DO IT.

25       MR. SOBOL:  THANK YOU.

```
 1            LOOK, I OBVIOUSLY DISAGREE.  I THINK THIS STATUTE --
 2              THE COURT:  WHAT I THOUGHT I'D DO -- AND I KNOW YOU
 3       HAVE SOME VERY INTERESTING POINTS TO THIS --
 4              MR. SOBOL:  OKAY.
 5              THE COURT:  -- AND I STARTED OFF WITH THIS THRESHOLD
 6       JUST TO SHARE WITH YOU SOME ORIGINAL THOUGHTS THAT I HAD HERE
 7       ABOUT THIS INTERESTING CASE.
 8            BUT I DON'T WANT TO TAKE AWAY FROM YOUR PRESENTATION,
 9       SO --
10              MR. BERKOWITZ:  SURE.  AND I'M HAPPY TO -- I KNOW
11       THAT MR. SOBOL AND MS. WOLFSON ARE DIVIDING THIS IN SOME WAY.
12       I'M HAPPY TO FIRST ARGUE -- I DON'T KNOW IF IT MAKES SENSE FOR
13       ME TO FIRST ARGUE CIPA AND THEN TALK ABOUT THAT.
14            IS THAT -- WERE YOU ARGUING CIPA?
15              THE COURT:  THAT'S FINE.  YOU'RE ALL HERE TO HELP ME.
16              MR. SOBOL:  I'M FOR THAT AS WELL.
17              MR. BERKOWITZ:  LET ME BEGIN WITH CIPA THEN.
18              THE COURT:  OKAY.
19              MR. BERKOWITZ:  AND I'LL TRY TO -- I THINK I'LL TRY
20       TO FOCUS ON THE POINTS THAT YOUR HONOR HAS MADE.
21              THE COURT:  THANK YOU.
22              MR. BERKOWITZ:  SO PLAINTIFFS -- AND I'M CALLING IT
23       CIPA --
24              THE COURT:  YEAH.
25              MR. BERKOWITZ:  -- BUT IT'S THE CALIFORNIA INVASION
```

1    OF PRIVACY ACT.

2            THE COURT:  RIGHT.

3            MR. BERKOWITZ:  THE PLAINTIFFS' CIPA CLAIM MUST BE

4    DISMISSED HERE, AGAIN, BECAUSE THE PLAINTIFFS HAVE CONCEDED

5    THAT GOOGLE USING THEIR SMARTPHONES TO DETERMINE THEIR LOCATION

6    WAS ACCEPTABLE AND APPROPRIATE IN THE CIRCUMSTANCES OF THIS

7    CASE.  AND, AGAIN, THEY SAY THIS AT PAGE 3 OF THEIR OPPOSITION.

8            AND SPECIFICALLY WHAT WE'RE TALKING ABOUT -- AND WE LOOK

9    AT PARAGRAPH 47 OF THEIR COMPLAINT AND WE LOOK AT THE A.P.

10   STORY WHICH, AGAIN, IS THE ENTIRETY OF THE FACTUAL ALLEGATIONS

11   IN THIS CASE IS THE SINGLE A.P. STORY, AND WHAT THE A.P. STORY

12   SAYS AND WHAT'S REPEATED IN PARAGRAPH 47 OF THE COMPLAINT IS

13   THAT WHEN THEY TURNED LOCATION HISTORY OFF, THERE WAS ANOTHER

14   SETTING CALLED WEB AND APP ACTIVITY, AND WHEN THEY ACCESSED

15   CERTAIN GOOGLE FEATURES, LIKE GOOGLE MAPS OR GOOGLE WEATHER OR

16   THEY SEARCHED FOR SHOW TIMES FOR MOVIES PLAYING NEARBY, GOOGLE

17   USED THE LOCATION INFORMATION FROM THEIR PHONE TO PROVIDE THEM

18   WITH THAT INFORMATION AND COLLECTED THAT INFORMATION FROM THEM.

19           PLAINTIFFS HAVE CONCEDED THAT THAT WAS ACCEPTABLE AND

20   APPROPRIATE, AND THAT IS THE END OF THE CIPA CLAIM.

21           AND I WOULD ADD, OBVIOUSLY, THEY'VE ALSO CONSENTED

22   CONTRACTUALLY TO GOOGLE DOING THIS BECAUSE, AND THEY

23   ACKNOWLEDGE IN THEIR COMPLAINT THEY'VE -- THAT THE TERMS OF

24   SERVICE ARE BINDING HERE.

25           BUT THE TERMS OF SERVICE AND THE PRIVACY POLICY PROVIDE

1    THAT GOOGLE WILL COLLECT THEIR LOCATION INFORMATION WHEN THEY

2    USE GOOGLE SERVICES.

3              THE COURT:  BUT -- AND I UNDERSTAND THAT, AND IT

4    SEEMS LIKE THERE'S -- AND I DON'T WANT TO GET INTO FACTUAL

5    DISCUSSIONS YET BECAUSE THAT'S -- THERE'S STILL SOME, SOME OF

6    THAT AHEAD OF US, BUT IT SEEMS LIKE WHAT A USER -- I'LL JUST

7    CALL THEM THAT -- THEY LOOK AT THIS, THEY SAY, OKAY, I CAN GO

8    TO THIS FIRST -- WHAT IS IT CALLED? -- LOCATION HISTORY, AND I

9    TURN THAT OFF, AND MY SENSE IS THE GRAVAMEN OF THE PLAINTIFFS'

10   POSITION IS, ALL RIGHT, I TURNED THAT OFF AND THEN THEY'RE NOT

11   TRACKING ME ANY LONGER, EVEN THOUGH I RECOGNIZE, WHEN I PUSH

12   MAPQUEST, OR WHATEVER IT IS, THE LITTLE RED LIGHT OR BLUE

13   LIGHT, WHATEVER IT IS, BLINKS.  I RECOGNIZE THAT I HAVE TO LET

14   THEM KNOW WHERE I AM BECAUSE IT ASKS, YOU WANT TO GO HERE FROM

15   WHERE?

16             MR. BERKOWITZ:  YEAH.

17             THE COURT:  BUT THEN WHEN I TURN THAT OFF, MY SENSE

18   IS THE GRAVAMEN OF THE COMPLAINT IS, OKAY, I ASSUME THAT I'M

19   DONE.  I'M DONE WITH THAT.

20        BUT THEN THERE'S, I GUESS THERE'S SOME PAGE, AN FAQ OR

21   SOMETHING, AND THEY GO TO THAT AND THEY SAY, OH, YES, YOU TURN

22   THAT OFF AND THIS IS WHAT HAPPENS.

23        BUT THEN YOU HAVE TO GO DEEPER TO THIS OTHER -- WHAT'S IT

24   CALLED? -- WEB AND APP?

25             MR. BERKOWITZ:  IT'S NOT DEEPER, YOUR HONOR.

1          THE COURT:  OH.

2          MR. BERKOWITZ:  MAYBE LET ME JUST GIVE A HIGH LEVEL

3     FACTUAL EXPLANATION.

4          THE COURT:  THANK YOU.

5          MR. BERKOWITZ:  AND THIS IS PURELY WHAT'S IN THE

6     COMPLAINT AND WHAT'S IN THE EXHIBITS TO THE COMPLAINT.

7          THE COURT:  YEAH.

8          MR. BERKOWITZ:  AND YOUR HONOR CAN LOOK AT -- FOR

9     EXAMPLE, I THINK IT'S EXHIBIT 26 TO THE PLAINTIFFS' COMPLAINT

10     IS THE PAGE ON MANAGING THE LOCATION HISTORY.

11          AND ONE OF THE THINGS IT FIRST SAYS IS YOU'VE GOT TO

12     HAVE LOCATION -- TO USE ANY OF THESE FEATURES, YOU'VE GOT TO

13     TURN LOCATION REPORTING ON ON YOUR PHONE, RIGHT?  SO WHEN YOU

14     GO, WHEN YOU OPEN YOUR PHONE -- AND I THINK APPLE CALLS IT

15     SOMETHING DIFFERENT, THEY CALL IT LOCATION SERVICES -- BUT IT'S

16     THE BIG LOCATION TOGGLE ON EVERYBODY'S PHONE.  NONE OF THESE

17     FEATURES ARE WORKING UNTIL YOU'VE DONE THAT.

18          THEN ONCE YOU'VE TURNED ON LOCATION REPORTING, YOU ALSO --

19     YOU KNOW, THERE'S A WHOLE HOST OF FEATURES THAT THAT EXPLAINS

20     ARE -- USE YOUR LOCATION.  SO IF YOU USE GOOGLE MAPS, YOU'VE

21     GOT TO HAVE WEB AND APP ACTIVITY TURNED ON SO THAT GOOGLE CAN

22     USE YOUR LOCATION.

23          AND IF YOU -- YOU KNOW, OBVIOUSLY YOU JUST CAN'T USE

24     GOOGLE MAPS WITHOUT SHARING YOUR LOCATION.  YOU CAN'T GET

25     DRIVING DIRECTIONS IF GOOGLE CAN'T DETERMINE THE LOCATION OF

1    YOUR CAR.

2            THE COURT:  SURE.

3            MR. BERKOWITZ:  SIMILARLY, YOU KNOW, YOU CAN'T GET

4    MOVIES NEARBY IF GOOGLE DOESN'T KNOW WHERE YOU ARE, AND WEB AND

5    APP ACTIVITY, THE SETTING EXPLAINS THAT.  IT SAYS, YOU KNOW,

6    HERE'S THE INFORMATION WE COLLECT ABOUT YOU, AND IT INCLUDES

7    YOUR LOCATION.

8        BUT, AGAIN, THIS IS STILL ONLY FOR PEOPLE WHO'VE TURNED ON

9    LOCATION REPORTING, WHAT'S CALLED LOCATION REPORTING IN ANDROID

10   OR WHAT'S CALLED LOCATION SERVICES IN IOS, WHICH ALREADY

11   EXPLAINS TO PEOPLE OBVIOUSLY THAT THEY'RE REPORTING THEIR

12   LOCATION SO THAT THE DIFFERENT APPLICATIONS THEY HAVE ON THEIR

13   SMARTPHONE CAN USE THAT INFORMATION TO PROVIDE THEM SERVICES.

14       THERE'S A SEPARATE FEATURE CALLED LOCATION HISTORY WHICH

15   IS -- IT IS OFF FOR EVERYONE BY DEFAULT.

16           AND, AGAIN, THAT'S DESCRIBED IN --

17           THE COURT:  IT'S OFF BY DEFAULT?

18           MR. BERKOWITZ:  OFF BY DEFAULT.  OFF BY DEFAULT FOR

19   EVERYONE.  AND THAT'S DESCRIBED IN THE PLAINTIFFS' EXHIBITS AS

20   WELL.  I THINK IT'S ALSO IN EXHIBIT 26.

21       AND YOU WOULD HAVE TO GO INTO YOUR SETTINGS TO TURN THAT

22   ON, AND WHAT'S EXPLAINED IN THE PLAINTIFFS' EXHIBITS IS WHAT

23   THAT -- WHAT LOCATION HISTORY IS IS ABOUT CREATING A PRIVATE

24   MAP SO IT ALLOWS INDIVIDUALS TO CREATE A MAP OF ALL OF THE

25   PLACES THEY'VE GONE WITH THEIR SIGNED IN DEVICE.

1    AND IT GIVES GOOGLE BROADER PERMISSIONS TO COLLECT

2    INFORMATION, OR MORE BROADLY DISCLOSES THAT IT'S DOING THAT.

3    BUT IT'S NOT -- AGAIN, IT'S OFF BY DEFAULT.  THE FACT THAT

4    YOU HAVEN'T TURNED IT ON DOESN'T MEAN THAT YOU HAVEN'T ALSO

5    AGREED THAT GOOGLE IS GOING TO COLLECT ALL OF YOUR LOCATION

6    INFORMATION.  IT DOESN'T MEAN THAT YOUR TURNING ON OF LOCATION

7    REPORTING IS INEFFECTIVE.  IT DOESN'T MEAN THAT YOUR TURNING ON

8    OF WEB AND APP ACTIVITIES IS INEFFECTIVE, AND IT DOESN'T CHANGE

9    THE EFFECT OF THE FACT THAT IT'S PLAINLY OBVIOUS THAT WHEN

10   YOU'RE USING THOSE FEATURES, GOOGLE IS COLLECTING YOUR LOCATION

11   INFORMATION.

12        THE COURT:  OKAY.

13        MR. SOBOL:  THANK YOU, YOUR HONOR.

14   I THINK THAT'S AN EXCELLENT EXPLANATION IF YOU HAPPEN TO

15   BE A TECHNICIAN WORKING AT GOOGLE.

16   BUT IF YOU'RE A CONSUMER WITH A MOBILE DEVICE, IT MAKES NO

17   SENSE.  IF YOU'RE A CONSUMER WITH A MOBILE DEVICE AND YOU TURN

18   OFF LOCATION HISTORY AND GOOGLE TELLS YOU THAT, WITH LOCATION

19   HISTORY OFF, THE PLACES YOU GO ARE NO LONGER STORED, WHAT THAT

20   MEANS TO PEOPLE IS IT'S NOT BEING COLLECTED, IT'S NOT BEING

21   STORED.

22   YOU CAN HAVE A TRANSITORY USE.  YOU GO TO THE GAS

23   STATION -- YOU WANT TO KNOW WHERE YOUR NEAREST GAS STATION IS,

24   YOU NEED TO KNOW THE LOCATION.

25   THAT'S NOT STORING IT FOREVER.  THAT'S NOT WHAT THAT IS.

1        AND SO IT'S A VERY DIFFERENT KIND OF USE BETWEEN, YOU

2    KNOW, AN ACKNOWLEDGED TRANSITORY USE AND COLLECTING THESE DATA

3    POINTS INTO STORAGE OVER TIME AND DIRECTLY VIOLATING CIPA.

4            THE COURT:  SO TELL ME HOW THE TERMS OF SERVICE APPLY

5    TO -- I THINK I CAPTURE YOUR MEANING WHERE THE NORMAL CONSUMER

6    THINKS THAT THEY SEE THIS LOCATION HISTORY, IF YOU TURN THIS

7    OFF, YOU TOGGLE THIS, IT'S OFF.  AND THEY MIGHT PRESUME AND ACT

8    IN RELIANCE ON THAT, THAT I'M NO LONGER BEING TRACKED.  I GET

9    THAT.

10       BUT THEN THEY HAVE TO GO TO A GAS STATION, THEY WANT TO

11   FIND THE LOCAL PIZZA, BEST PIZZA PARLOR NEAR ME, AND THEY PUSH

12   THAT BUTTON.

13       YOU'RE SAYING THEY RECOGNIZE THERE'S A CONSENT FOR THAT

14   LOCATION WHEN THEY PUT THAT LOCATION IN?  IT'S AN ACTIVE

15   CONSENT THAT I'M GOING TO BE TRACKED BECAUSE THEY'RE GOING TO

16   TAKE ME TO THE BEST PIZZA PARLOR NEAR ME?

17           MR. SOBOL:  NOT THAT I'M GOING TO BE TRACKED.

18   THERE'S A TRANSITORY USE THAT THEY WILL DETERMINE MY LOCATION

19   FOR THAT MOMENT.

20       BUT THERE IS NOTHING IN THIS THAT SUGGESTS THAT THEY

21   UNDERSTOOD THAT IT WAS GOING TO BE KEPT AND STORED IN A VAST

22   DATABASE MARKING THEIR MOVEMENTS OVER TIME, OVER THE COURSE OF

23   A DAY, OVER THE COURSE OF WEEKS, OR OVER THE COURSE OF MONTHS

24   AND YEARS, AND THAT'S WHAT THIS IS ALL ABOUT AND THAT'S WHY IT

25   VIOLATES CIPA.

1        THERE'S TWO PARTS TO CIPA.  ONE OF THEM -- IT SAYS, "NO

2   PERSON OR ENTITY IN THIS STATE SHALL USE AN ELECTRONIC TRACKING

3   DEVICE TO DETERMINE THE LOCATION OR MOVEMENT OF A PERSON."

4        NOW, IT'S TRUE THAT A TRANSITORY USE WILL DETERMINE YOUR

5   LOCATION.

6        BUT A TRANSITORY USE WILL NOT DETERMINE YOUR MOVEMENT, AND

7   PARTICULARLY NOT A MOVEMENT OVER TIME.

8        THE COURT:  YOU KNOW, AS I MENTIONED EARLIER TO

9   MR. BERKOWITZ, THIS IS A DATED STATUTE.  IT DOESN'T SAY

10  ANYTHING ABOUT TRANSITORY, DOES IT?

11       MR. SOBOL:  I DO NOT BELIEVE THE WORD "TRANSITORY" IS

12  IN THERE.

13       BUT I THINK THE INTENT OF THE LEGISLATURE IN, YOU KNOW,

14  1998 WAS CLEARLY STATED.  IT HAD THOSE HIGH GOALS THAT YOU

15  MENTIONED AT THE BEGINNING.

16       BUT IT ALSO SAID THAT -- IT WAS RECOGNIZING THE INCREASED

17  USE OF ELECTRONIC SURVEILLANCE.  IT DIDN'T SAY THE INCREASED

18  USE OF GPS DEVICES ATTACHED TO A BUMPER.  IT'S NOT THERE TO

19  PROTECT THE SECRECY OF MOVEMENTS OF AUTOMOBILES FROM PLACE TO

20  PLACE AS THEY LIKE TO ARGUE AND THEY CITE THAT PART OF THE

21  LEGISLATIVE HISTORY.

22       BUT THERE'S OTHER LEGISLATIVE HISTORY THAT CAME AFTER IT,

23  CLOSER TO THE TIME OF THE ENACTMENT, THAT SHOWS THAT IT'S A

24  VERY BROAD BASED STATUTE IN THAT WAY, AND THAT'S -- THE

25  PROTECTION THAT'S REALLY THERE ARE PEOPLE'S CIVIL LIBERTIES AND

1    THEIR REASONABLE -- THE LEGISLATURE IS FINDING THAT PEOPLE HAVE

2    A REASONABLE EXPECTATION OF PRIVACY OF WHERE THEY GO AND WHERE

3    THEY TRAVEL AND WHERE THEY'VE BEEN.

4         THE COURT:  WELL, THOSE THREE FACTORS -- YOU'LL TELL

5    ME ABOUT THE THREE FACTORS AND HOW THEY APPLY HERE, OR NOT, FOR

6    PRIVACY.  BUT -- I EXPECT YOU WILL.

7         MR. SOBOL:  AND BY THE THREE FACTORS, YOU MEAN?  I'M

8    SORRY.

9         THE COURT:  YOUR COLLEAGUE BEHIND YOU IS GOING TO

10    TAKE CARE OF THAT, SO DON'T WORRY.

11        (LAUGHTER.)

12        MR. SOBOL:  OKAY.  EXCELLENT.

13        SO, YOU KNOW, IN MY VIEW, THIS IS -- THIS IS REALLY --

14    THIS REALLY GETS AT, YOU KNOW, REALLY THE GUTS AND THE PURPOSE

15    IN THIS CASE, RIGHT?  BECAUSE, YOU KNOW, NOT EVERYBODY OUT IN

16    THE WORLD IS A GOOGLE TECHNICIAN AND PEOPLE DO NOT UNDERSTAND

17    THIS.

18        CONGRESS DIDN'T UNDERSTAND THIS.  CONGRESS CALLED GOOGLE

19    IN AND SAID, WAIT A MINUTE, WITH LOCATION HISTORY OFF, YOU'RE

20    STILL STORING LOCATION?  THAT WAS ASKED OF SENIOR COUNSEL AT

21    GOOGLE.  AND THE ANSWER WAS, YES, IT WAS.

22        THERE'S PEOPLE ALL OVER THE WORLD, THERE'S THE

23    CONSUMENTENTBOND, IN HOLLAND, THERE'S B.E.U.C. IN BELGIUM.

24    THERE ARE -- THE WHOLE WORLD, FRANKLY, YOUR HONOR, THERE'S

25    INTERNATIONAL ATTENTION ON THIS PARTICULAR BEHAVIOR, BECAUSE

```
 1      WHEN YOU TELL PEOPLE THAT YOU'RE NOT GOING TO TRACK THEM,

 2      YOU'RE NOT GOING TO WATCH WHERE THEY GO AND KEEP A RECORD OF IT

 3      FROM TIME TO    TIME -- AND THAT'S WHAT THEY DO -- THAT IS SO

 4      DIFFERENT THAN GET ME TO THE GAS STATION AND THEN FORGET ABOUT

 5      ME.

 6                 THE COURT:  I UNDERSTAND THAT.

 7                 MR. SOBOL:  YEAH.

 8                 THE COURT:  AND I THINK I CAPTURE THAT.

 9            AND YOU WERE TALKING ABOUT -- YOU USED THE WORD

10      "TRANSITORY," AND I THINK I MENTIONED TO MR. BERKOWITZ EARLIER

11      THAT IT SAYS, IF I TURN THIS OFF, THEN I WON'T BE TRACKED.

12                 MR. SOBOL:  RIGHT.

13                 THE COURT:  AND I THINK WHAT YOU'RE SAYING IS YOUR

14      CLIENTS ACT IN RELIANCE ON THAT, AND TO THE AVERAGE CONSUMER

15      THAT MEANS, OKAY, THEY'RE NOT FOLLOWING ME, I'VE SHUT OFF THE

16      BUG OR WHATEVER IT IS.

17            BUT, WAIT, THERE'S MORE.  THERE'S ANOTHER LEVEL.  THERE'S

18      THIS -- WHAT'S IT CALLED? -- THE WEB AND APP ACTIVITY.

19                 MR. SOBOL:  WELL, YOU KNOW, AGAIN --

20                 THE COURT:  DOESN'T THE TERMS OF SERVICE GRANT

21      CONSENT TO THAT AS WELL?

22                 MR. SOBOL:  NO, IT DOESN'T.  IT SHOULDN'T.

23                 THE COURT:  OKAY.

24                 MR. SOBOL:  IT SHOULDN'T.

25                 THE COURT:  BUT FOR THE PURPOSES OF THIS MOTION, WHY
```

1      DOESN'T IT?

2           MR. SOBOL:  BECAUSE, FRANKLY, YOUR HONOR, IF I MAY

3      SAY, THAT THIS RELIANCE ON THIS STATEMENT ON A SUPPORT PAGE

4      WHERE THERE'S TWO WORDS THAT SAY, "WE'LL SAVE YOUR LOCATION,"

5      AND IT'S BEEN THERE FOR A WHILE, BUT IT'S BEEN HIDDEN, AND IT'S

6      NOT, UNTIL APRIL 3RD OF THIS YEAR, EVER EXPLAINED BY GOOGLE TO

7      RELATE -- THE RELATIONSHIP BETWEEN LOCATION HISTORY AND WEB AND

8      APP ACTIVITY WASN'T EVER EXPLAINED UNTIL AFTER THIS LAWSUIT WAS

9      FILED.

10          THE COURT:  IS THIS THE A.P. STORY?

11          MR. SOBOL:  NO.  THE A.P. STORY, WHICH MY COLLEAGUE

12     REFERRED TO, IS -- WHAT HE'S TRYING TO INSINUATE IS THAT WE

13     WERE FOLLOWING THE PRESS, AND BECAUSE WE FOLLOW THE PRESS, WE

14     FILE LAWSUITS, AND THAT'S REALLY WHAT THIS CASE IS ALL ABOUT.

15          THE COURT:  OH, HE DIDN'T MEAN THAT.

16          MR. SOBOL:  NO, NOT AT ALL.

17          MR. BERKOWITZ:  THAT'S ACTUALLY NOT WHAT I WAS

18     SAYING.

19          THE COURT:  I DIDN'T THINK HE WAS.  I'M SERIOUS.

20          MR. SOBOL:  I GET THAT.

21        (OVERLAPPING COLLOQUY.)

22          THE COURT:  ONE AT A TIME, PLEASE.  ONE AT A TIME.  I

23     DIDN'T MEAN TO EXCITE YOU.

24          MR. BERKOWITZ:  I DID JUST WANT TO SAY, YOUR HONOR, I

25     WASN'T INTENDING AND IT WASN'T MY INTENT TO CAST ANY ASPERSIONS

```
 1      ON MR. SOBOL.

 2            THE COURT:  I DIDN'T TAKE IT THAT WAY.  I THOUGHT IT

 3      WAS THE A.P. STORY THAT WAS THEN MADE PUBLIC, ET CETERA.

 4            MR. SOBOL:  BEN AND I GET ALONG REALLY WELL, YOUR

 5      HONOR.

 6            THE COURT:  OKAY.  GO AHEAD.

 7            MR. SOBOL:  I'M SORRY.

 8         AND I'M SORRY, BEN.

 9         BUT, YOU KNOW, LOOK, I MEAN -- WHERE WERE WE?  YOU'RE

10      ASKING ME, WHY IS IT CONSENT?  I'M SAYING WEB AND APP ACTIVITY

11      IS A CONTRIVANCE BY GOOGLE TO ESTABLISH A CONSENT WHERE NO

12      CONSENT REALLY EVER REASONABLY SHOULD HAVE LEFT, BECAUSE IT

13      NEVER SHOULD HAVE BEEN.

14            THE COURT:  SO IS IT A QUESTION -- ARE YOU SAYING

15       THAT IT REALLY WASN'T INFORMED CONSENT, EVEN THOUGH SOMEBODY

16       MAY HAVE PUSHED THE BUTTON ON TERMS OF SERVICE AND CONSENTED,

17       BUT IT REALLY WASN'T INFORMED BECAUSE THERE WAS NO CONSENT

18       GIVEN TO THIS SECOND LEVEL?

19            MR. SOBOL:  THERE'S NO BUTTON TO PUSH, YOUR HONOR.

20      THE BUTTON TO PUSH -- THE CLASS IS DEFINED AS PEOPLE WHO TURNED

21       LOCATION HISTORY OFF.

22            THE COURT:  THAT'S THE BUTTON.

23            MR. SOBOL:  RIGHT.  YOU'VE TURNED IT OFF.  YOU GO TO

24      THE CONTROL PAGE -- YOU GO TO THE PAGE ON GOOGLE'S WEBSITE

25      WHERE THEY ACTUALLY EXPLAIN SOME OF THESE THINGS, AND THERE'S
```

1    LOCATION HISTORY AND YOU TURN IT OFF.

2         THERE'S WEB AND APP ACTIVITY.  WHAT DOES IT SAY ON THE

3    CONTROL PAGE?  IT SAYS WEB AND APP ACTIVITY WILL SAVE YOUR

4    SEARCH ACTIVITY ON APPS AND IN BROWSERS TO MAKE SEARCHES FASTER

5    AND TO GET CUSTOMIZED EXPERIENCE.

6         THERE'S NOTHING ABOUT LOCATION THERE.  YOU HAVE TO GO

7    SOMEWHERE ELSE IN A PRIVACY POLICY, FOLLOW A HYPERLINK, THEN

8    GET TO WEB AND APP ACTIVITY OFF THE CONTROL PAGE, OFF THE PLACE

9    WHERE YOU WOULD REALLY GO IF YOU WANT TO FIGURE OUT HOW TO WORK

10   THIS THING, IN ANOTHER PLACE AND IT SAYS, IN A LIST OF THINGS,

11   THINGS THAT WE MAY SAVE, YOUR LOCATION.

12        IT'S NOT CONSENT, YOUR HONOR.

13        AND, IN FACT, WHEN THE A.P. STORY BROKE IN THE SUMMER OF

14   2018, GOOGLE'S REACTION TO THIS WHOLE SET OF CIRCUMSTANCES WAS

15   NOT TO REFER TO THE WEB AND APP ACTIVITY, BUT FOR THE FIRST

16   TIME THEY SAY ON THE LOCATION HISTORY PAGE, HEY, THERE'S OTHER

17   SERVICES THAT MAY CAPTURE YOUR LOCATION ANYWAY.

18        BUT THEY DON'T MENTION WEB AND APP ACTIVITY.  THEY MENTION

19   OTHER SERVICES.  BUT THEY DIDN'T.

20        AND SO, YOU KNOW, THIS IS -- YOU KNOW, TO FASHION SOME

21   SORT OF CONSENT OUT OF TWO LITTLE WORDS IN A HYPERLINK AWAY

22   FROM THE ACTIVITY AND CONTROL PAGE WHERE PEOPLE WOULD GO AND

23   SUGGEST THAT THAT'S PEOPLE'S INFORMED CONSENT IS, IT JUST

24   STRAINS CREDULITY HERE.

25        YOU KNOW, AND IT WASN'T -- IT WASN'T UNTIL PEOPLE ONLINE,

1    BLOGGERS, TECHIE FOLKS COMMENTING IN THE PRESS THAT SAID, HEY,

2    YOU KNOW, IT MIGHT BE THAT EVEN THOUGH YOU'RE STILL TRACKED

3    WHEN YOU HAVE LOCATION HISTORY OFF, YOU MIGHT BE ABLE TO GET

4    RID OF IT THROUGH WEB AND APP ACTIVITY, AND SO THE WORLD WAS

5    LOOKING AT THAT.

6         NOT GOOGLE.  GOOGLE DIDN'T TELL ITS USERS THAT.  AGAIN,

7    NOT UNTIL APRIL OF 2019 DID THEY FINALLY PUBLISH A POLICY

8    STATEMENT THAT LINKED LOCATION HISTORY WITH WEB AND APP

9    ACTIVITY.

10        THIS IS AN AFTERTHOUGHT.  THIS IS AN AFTERTHOUGHT FOR

11   LITIGATION.  IT WASN'T EVEN GOOGLE'S FIRST REACTION IN REAL

12   TIME.

13        SO, YOU KNOW, THERE COULD NOT HAVE BEEN CONSENT FORMED ON

14   THOSE.

15        AND I'LL SAY THIS ALSO, AND THIS IS AN ALLEGATION IN THE

16   COMPLAINT.  GOOGLE IS STILL NOT BEING FULLY TRANSPARENT, WE

17   DON'T THINK, AS TO WHAT'S GOING ON HERE.

18        WHAT THEY HAVE SAID IS THAT THERE ARE -- EVEN WHEN YOU

19   HAVE LOCATION HISTORY OFF AND YOU HAVE WEB AND APP ACTIVITY

20   OFF, THERE STILL MIGHT BE A NUMBER OF DIFFERENT WAYS THAT

21   GOOGLE MAY USE YOUR LOCATION.

22        SO WE REALLY EVEN DON'T KNOW IF IT'S POSSIBLE YET FOR

23   PEOPLE TO GET -- TO STOP BEING TRACKED BY GOOGLE ONCE -- JUST

24   BY CONSUMERS' BEST EFFORTS TO TRY TO WORK THEIR WAY THROUGH A

25   MAZE OR FOLLOW TECH BLOGS OR TRY TO FIGURE OUT WHAT GOOGLE

1    WOULDN'T TELL THEM AND DIDN'T TELL THEM ALL THIS WHILE.

2        SO --

3            MR. BERKOWITZ:  YOUR HONOR, CAN I RESPOND TO SOME OF

4    THESE?

5            THE COURT:  YOU MAY.  I THINK MR. SOBOL IS ABOUT

6    DONE.

7        ARE YOU?

8            MR. SOBOL:  WELL, I WANT TO -- I WANT TO -- I THINK I

9    ADDRESSED MY CIPA POINT FOR NOW.

10            THE COURT:  OKAY.

11            MR. SOBOL:  SO I'LL CALM DOWN.

12            THE COURT:  THANK YOU.

13            MR. BERKOWITZ:  I THOUGHT YOU WERE VERY CALM.

14        THE -- SO I THINK WE NEED TO FOCUS ON THE STATUTORY

15    LANGUAGE.  THE STATUTORY LANGUAGE IS ABOUT WHETHER OR NOT THERE

16    IS CONSENT TO THE DETERMINATION OF THE LOCATION.  IT'S NOT

17    ABOUT SAVING OR STORAGE AND SO FORTH.

18        I THINK MR. SOBOL HAS ONCE AGAIN -- AND I THINK IT'S VERY

19    CANDID AND I COMPLIMENT HIM FOR IT -- BUT HE HAS ACKNOWLEDGED

20    THAT HIS CLIENTS ACCEPTED GOOGLE'S USE -- HE CALLS IT

21    TRANSITORY USE, BUT HE ACCEPTS THAT HIS CLIENTS ACCEPTED

22    GOOGLE'S USE OF LOCATION INFORMATION TO DETERMINE THEIR

23    LOCATION.

24        THAT IS THE END OF THE CIPA CLAIM.  THERE IS NOTHING IN

25    CIPA ABOUT STORAGE.  IT WASN'T A STATUTE ABOUT STORAGE.

1         THERE ARE, BY THE WAY, STATUTES THAT TOUCH ON THOSE TYPES

2    OF TOPICS.  THIS IS SIMPLY NOT ONE OF THEM.

3         I ALSO WANT TO TALK ABOUT THE SUPPORT PAGES.  HIS -- HIS

4    CLAIM, AND THE A.P. ARTICLE, IS BASED ENTIRELY ON A SUPPORT

5    PAGE FOR THE LOCATION HISTORY FEATURE, A STATEMENT THAT

6    PREVIOUSLY EXISTED ON THAT SUPPORT PAGE.

7         NOT A SINGLE ONE OF HIS PLAINTIFFS HAS ALLEGED THAT THEY

8    READ THAT SUPPORT PAGE.  SO WHEN MR. SOBOL JUST SAID THAT THEY

9    WERE RELYING ON IT, I BELIEVE HE IS MISSPEAKING BECAUSE THERE

10   IS NO ALLEGATION THAT ANY OF THEM READ THAT SUPPORT PAGE.

11        THE OTHER THING I WOULD JUST SAY IS WE AREN'T WRITING -- I

12   MEAN, YOUR HONOR ISN'T WRITING ON A BLANK SLATE HERE.  THERE

13   ARE OTHER COURT THAT HAVE CONSIDERED PRECISELY THESE QUESTIONS.

14        SO IN MORENO, THE ALLEGATIONS WERE EXACTLY THE SAME.  YOU

15   HAD --

16             THE COURT:  DIFFERENT FACTS, WEREN'T THEY?

17             MR. BERKOWITZ:  THEY WERE THE SAME -- THEY WERE THE

18   SAME CORE ALLEGATION, WHICH IS THAT BART WAS USING A SMARTPHONE

19   APPLICATION TO DETERMINE PEOPLE'S LOCATION WITHOUT THEIR

20   CONSENT.

21             THE COURT:  AND JUDGE CORLEY RESOLVED THAT ON THE

22   WORD "APP," DIDN'T SHE?

23             MR. BERKOWITZ:  JUDGE CORLEY REVOLVED THAT ON THE

24   TEXT OF THE STATUTE.

25             THE COURT:  RIGHT.

1      MR. BERKOWITZ:  SHE SAYS THAT THIS, I THINK JUST AS

2  YOUR HONOR WAS STARTING WITH, THIS ISN'T AN ELECTRONIC TRACKING

3  DEVICE ATTACHED TO ANYTHING.  THIS IS SOFTWARE.

4      AND THAT'S ALL THAT GOOGLE IS ALLEGED TO HAVE MADE IN THIS

5  CASE.  I MEAN, GOOGLE DIDN'T -- ISN'T ALLEGED TO HAVE MADE GPS

6  CHIPS, ISN'T ALLEGED TO HAVE ATTACHED ANYTHING TO ANYBODY'S

7  VEHICLE.  THEY'RE ALLEGED TO HAVE MADE SOFTWARE.

8      THE COURT:  AT SOME POINT, SOME OF YOU WILL TALK

9  ABOUT -- I DO WANT TO HAVE A CONVERSATION ABOUT "DEVICE" AND

10  WHAT THAT IS.

11      MR. BERKOWITZ:  AND I'M HAPPY TO, YOUR HONOR.

12      THE COURT:  OKAY.  THANK YOU.

13      MR. BERKOWITZ:  BUT LET ME FINISH THIS ONE POINT NOW

14  AND THEN I'LL MOVE ON TO THAT.

15      THE COURT:  SURE.

16      MR. BERKOWITZ:  SO JUDGE CORLEY -- SO YOUR HONOR

17  ISN'T WRITING ON A BLANK SLATE.  JUDGE CORLEY HAS ADDRESSED

18  THIS ALLEGATION IN MORENO.

19      AND THEN ALSO THE ALLEGATION HAS BEEN ADDRESSED IN THE

20  GONZALES VERSUS UBER CASE, AND IN GONZALES VERSUS UBER,

21  AGAIN --

22      THE COURT:  THAT WAS THE HELLWARE I THINK IT'S

23  CALLED.

24      MR. BERKOWITZ:  THAT WAS THE HELLWARE CASE.  I MEAN,

25  TALK ABOUT FACTS THAT ARE FAR MORE EGREGIOUS THAN ANYTHING

1    THAT'S BEEN ALLEGED IN THIS CASE.  ESSENTIALLY THE FACTS IN

2    THAT CASE WERE THAT LYFT HAD OBTAINED CONSENT FROM THE -- FROM

3    ITS DRIVERS TO USE THEIR LOCATION INFORMATION IN ORDER TO

4    PROVIDE ITS SERVICES.

5         UBER CREATED A FORM OF MALWARE, I GUESS, CALLED HELL,

6    WHICH IT THEN USED TO, I DON'T KNOW IF IT'S SCRAPING OR WHAT

7    THE TECHNICAL TERM IS, BUT ESSENTIALLY IMPROPERLY OBTAIN THAT

8    DRIVER LOCATION INFORMATION.

9              THE COURT:  FOR THEIR FINANCIAL BENEFIT, THEN

10   CREATING ALGORITHMS -- THE DEMISE OF ALL OF US -- BUT TO

11   ENHANCE THEIR BUSINESS MODEL.

12             MR. BERKOWITZ:  AND LIKE I SAID, YOUR HONOR, I THINK

13   THE FACTS ALLEGED IN THAT CASE ARE, YOU KNOW, SIGNIFICANTLY

14   MORE EGREGIOUS THAN WHAT'S BEEN ALLEGED IN THIS CASE.

15             THE COURT:  OKAY.

16             MR. BERKOWITZ:  AND WHAT JUDGE -- AND I APOLOGIZE,

17   YOUR HONOR, I'M FORGETTING WHO DECIDED THAT CASE -- BUT WHAT

18   THE COURT DECIDED IN THAT CASE WAS NOT THAT THE CONDUCT, THE

19   ALLEGED CONDUCT WASN'T BAD, BUT THAT THE CIPA STATUTE DIDN'T

20   REACH IT.

21        AND THE REASON WAS -- IS THE LANGUAGE OF 637.7(A) AND (B),

22   WHICH IS THAT ONCE THERE IS CONSENT TO THE USE OF A DEVICE WITH

23   RESPECT TO THE VEHICLE, THAT'S THE END OF THE STORY WITH

24   RESPECT TO CIPA.

25             AND, OF COURSE, THERE WAS STORAGE IN THAT CASE.  OF COURSE

1    THERE WAS STORAGE IN MORENO.  I MEAN, ANY TIME YOU HAVE

2    ELECTRONIC TRANSMISSION OF DATA, THERE IS STORAGE OF THAT DATA.

3    THAT'S JUST INHERENT IN THE TRANSMISSION OF DATA.

4        BUT NONETHELESS, THE COURTS IN MORENO AND THE COURTS IN

5    THE -- THE COURT IN MORENO AND THE COURT IN GONZALES VERSUS

6    UBER DISMISSED THOSE CLAIMS, AND THE REASON BEING IS BECAUSE

7    THEY DON'T MEET THE STATUTORY TEXT.

8        THE COURT:  WELL, IT WAS CONSENT IN GONZALES AS WELL,

9    WASN'T IT?

10       MR. BERKOWITZ:  IT WAS CONSENT -- IT WAS NOT BECAUSE

11   THEY HAD CONSENTED TO UBER, BUT BECAUSE THEY HAD CONSENTED

12   TO --

13       THE COURT:  TO LYFT.

14       MR. BERKOWITZ:  -- TO LYFT, AND THE REASON BEING --

15   AND I THINK JUST MR. SOBOL WOULD ARGUE THAT WAS BEYOND THE

16   SCOPE OF THE CONSENT BECAUSE IT WAS BEYOND THE SCOPE -- YOU

17   KNOW, CERTAINLY THEY WEREN'T CONSENTING TO LYFT THAT UBER COULD

18   STEAL THE DATA.

19       BUT NONETHELESS, THE FACT THAT THEY HAD CONSENTED TO THE

20   USE OF THE DATA, THE COLLECTION OF THE DATA FOR ANY PURPOSE --

21   SORRY -- FOR THE PURPOSE OF DETERMINING THE LOCATION OF THE

22   VEHICLE, BEYOND THAT, THE STATUTE DOESN'T REACH IT.

23       THERE MAY BE OTHER CLAIMS THAT -- AND I BELIEVE THERE WERE

24   OTHER CLAIMS THAT SURVIVED IN THAT CASE.

25       THE COURT:  RIGHT.

1            MR. BERKOWITZ:  BUT NOT, NOT THE CALIFORNIA INVASION

2      OF PRIVACY ACT.

3            AND I GUESS I'LL GET TO THE OTHER TEXTUAL ISSUES IF YOUR

4      HONOR WILL INDULGE ME.

5            THE COURT:  OKAY.  GO AHEAD.

6            MR. BERKOWITZ:  I'LL GO AHEAD.

7            AND SO ATTACHED TO -- SO HERE, YOUR HONOR, OBVIOUSLY WE

8      DON'T -- FOR THE REASONS THAT JUDGE CORLEY STATED IN MORENO, WE

9      DON'T HAVE THE "ATTACHED TO" ELEMENT.  THE PHONE IS CERTAINLY

10     NOT ATTACHED TO ANYTHING, THE SOFTWARE IS NOT ATTACHED TO

11     ANYTHING, AND THE CHIPS AND SO FORTH AREN'T ELECTRONIC TRACKING

12     DEVICES, THEY DON'T TRACK ANYTHING.

13            THEY'RE -- I MEAN, YOUR HONOR CAN GO DOWN TO FRY'S IF YOU

14     WANT AND BUY A HANDFUL OF GPS CHIPS.  A GPS CHIP IS A LITTLE

15     PIECE OF PLASTIC WITH SOME WIRES STICKING OUT OF IT.  IT'S NOT

16     A TRACKING DEVICE, SO IT DOESN'T MEET ANY OF THE TEXT OF THE

17     STATUTE.

18            IT ALSO -- HERE WE DON'T HAVE -- I THINK THE PLAINTIFFS

19     HAVE MADE SOME WHAT I WOULD DESCRIBE AS CREATIVE ARGUMENTS

20     ABOUT WHAT "OTHER MOVABLE THING" COULD BE, AND WE'VE EXPLAINED

21     WHY THAT'S INCONSISTENT WITH NORMAL CANONS OF STATUTORY

22     CONSTRUCTION BECAUSE YOU HAVE TO READ A STATUTE IN A WAY THAT

23     GIVES OPERATION TO ALL OF THE WORDS.

24            IF YOU READ "OTHER MOVABLE THING" TO LITERALLY MEAN ANY

25     MOVEABLE THING AS OPPOSED TO BEING A MOVEABLE THING SIMILAR TO

1    A VEHICLE, THEN IT WOULD MAKE INEXPLICABLE THE LEGISLATURE'S

2    USE OF THE WORD "VEHICLE."

3         AND I THINK JUDGE CORLEY ADDRESSES THIS IN A PARENTHETICAL

4    IN HER OPINION IN MORENO, AND SHE GIVES EXAMPLES OF THINGS THAT

5    WOULD BE OTHER MOVEABLE THINGS IN THE STATUTE THAT WOULDN'T BE

6    VEHICLES, AND SHE SAYS BOATS OR PLANES, AND QUITE POSSIBLY

7    THAT'S BECAUSE THE LEGISLATURE, WHEN THEY WERE WRITING THE

8    STATUTE, HAD THE DEFINITION OF VEHICLE IN MIND FROM THE VEHICLE

9    CODE BECAUSE IT'S A CRIMINAL STATUTE.

10        BUT I'M HAPPY TO EXPAND ON ANY OF THOSE POINTS.

11             THE COURT:  WELL, I'D LIKE DISCUSSION, PLEASE, ON

12   "DEVICE" AND "ATTACHMENT."

13             MR. BERKOWITZ:  YEAH.

14             THE COURT:  WHAT IS A "DEVICE," AND IS THIS A DEVICE?

15             MR. BERKOWITZ:  WELL, WHAT IS "THIS" I THINK IS THE

16   QUESTION.

17             THE COURT:  YES, THAT'S RIGHT.  WHAT IS "THIS"?  THE

18   PHONE -- IT'S A PHONE, I TAKE IT, IS WHAT THE ALLEGATIONS ARE.

19             MR. BERKOWITZ:  THEY'VE MADE TWO DIFFERENT SETS OF

20   ALLEGATIONS.  FIRST THEY HAVE SAID -- SO THEY'VE SAID THE

21   PHONE, AND THEN THEY'VE SAID THE CHIPS AND THE COMPONENTS OF

22   THE PHONE.

23        I THINK ACTUALLY THE FAIR -- SO FIRST OF ALL, YOUR HONOR

24   DOESN'T -- UNDER IQBAL AND TWOMBLY, YOUR HONOR ISN'T SUPPOSED

25   TO LOOK AT HOW THEY'VE CHARACTERIZED THE FACTS.  YOUR HONOR IS

1    SUPPOSED TO LOOK AT WHAT ARE THE FACTS THEY'VE PLEADED.

2         THE FACTS THEY'VE PLEADED ARE INDISTINGUISHABLE FROM THE

3    FACTS PLEADED IN MORENO.  IN OTHER WORDS, THEY PLEADED SOFTWARE

4    MADE BY A DEFENDANT THAT IS INSTALLED ON A MOBILE DEVICE THAT

5    CONTAINS THE DEVICE COMPONENTS THEY'VE DESCRIBED, GPS CHIPS,

6    CELLULAR, RADIO, WI-FI.

7         AND WHAT JUDGE CORLEY SAID IS WE NEED TO LOOK AT THIS AS

8    SOFTWARE, BECAUSE SOFTWARE -- I MEAN, THAT'S WHAT IS BEING

9    ACCUSED.

10        THERE'S NO DISPUTE THAT THE PLAINTIFFS IN THIS CASE, THAT

11   MR. PATACSIL AND HIS CO-PLAINTIFFS KNEW THAT THEIR DEVICES

12   CONTAINED GPS CHIPS.  I'M SURE THEY BOUGHT THEM BECAUSE OF THAT

13   REASON, BECAUSE THEIR DEVICES COULD GIVE THEM DRIVING

14   DIRECTIONS AND ALL OF THESE THINGS.

15        PLAINTIFFS DON'T DISPUTE THAT.  THEY DON'T ALLEGE THAT

16   MR. PATACSIL WAS SHOCKED TO LEARN THAT HIS PHONE COULD CONNECT

17   TO THE INTERNET OR COULD USE GPS OR ANY OF THESE THINGS.

18        THE THING THAT THEY'RE SAYING THAT GOOGLE -- THEY'RE

19   ALLEGING THE SUPPORT PAGE IS ABOUT IS NOT ABOUT HARDWARE.  IT'S

20   ABOUT SOFTWARE.  IT'S ABOUT, DID GOOGLE SAY THAT THEY WERE

21   GOING TO STORE THIS LOCATION INFORMATION?

22        THAT'S NOT A HARDWARE QUESTION.  THAT HAS NOTHING TO DO

23   WITH THE HARDWARE OF THE PHONE.  THAT IS ENTIRELY TO DO WITH

24   THE SOFTWARE.  SO I THINK IT'S A SOFTWARE QUESTION.

25        I THINK IT NEEDS TO BE DISMISSED FOR THE REASONS

1    JUDGE CORLEY EXPLAINED, WHICH IS THAT SOFTWARE CAN'T BE

2    UNDERSTOOD TO BE ATTACHED TO THE MOBILE DEVICE.  THAT'S NOT A

3    SENSICAL READING OF THE USE OF THE TERM "ATTACHED TO."

4         EVEN IF YOU ACCEPTED THEIR OTHER DEFINITIONS, FOR EXAMPLE,

5    THAT THE ELECTRONIC DEVICE IS THE MOBILE PHONE, WHICH YOU

6    SHOULDN'T, BUT IF YOU DO, THE MOBILE PHONE ISN'T ATTACHED TO

7    ANYTHING.  THEY HAVEN'T ALLEGED IT WAS ATTACHED TO ANYTHING

8    AND, THEREFORE, IT DOESN'T QUALIFY -- IT MIGHT BE AN ELECTRONIC

9    DEVICE, BUT IT IS NOT AN ELECTRONIC DEVICE WITHIN THE MEANING

10   OF THE STATUTE BECAUSE IT'S NOT BEEN ATTACHED TO A VEHICLE, A

11   BOAT, A PLANE, OTHER MOVEABLE THING.

12        THE COURT:  DOES IT ATTACH ITSELF TO THE

13   HOLDER/CARRIER OF THE DEVICE AND THEN THAT PERSON THEN ATTACHES

14   HIMSELF OR HERSELF TO AN AUTOMOBILE, AN AIRPLANE, A BICYCLE, A

15   SCOOTER?  IS THAT TOO FAR?

16        MR. BERKOWITZ:  I -- I -- I THINK THAT'S -- I THINK

17   THAT'S ALSO CREATIVE.

18        BUT I DON'T THINK THAT'S WHAT THE LEGISLATURE WAS

19   INTENDING.  I DON'T THINK THAT'S WHAT THE STATUTE SAYS.

20        SO, FIRST OF ALL, THE HOLDER IS NOT AN OTHER MOVEABLE

21   THING FOR THE REASONS THAT JUDGE CORLEY EXPLAINS AND JUST IN

22   ORDINARY INTERPRETATION OF THE STATUTE.

23        ACTUALLY, LET ME START AT A HIGHER LEVEL.

24        THE COURT:  YEAH, SURE.

25        MR. BERKOWITZ:  FIRST OF ALL, THE HIGHER LEVEL POINT

1    IS PLAINTIFFS' COMPLAINT DOES NOT ALLEGE THEY ATTACH THE PHONE

2    TO ANYTHING.

3        THE SECOND LEVEL POINT IS EVEN IF THEY HAD, THAT WOULD NOT

4    MEET THE STATUTORY DEFINITION, AND THE REASON THAT WOULDN'T

5    MEET THE STATUTORY DEFINITION IS, FIRST OF ALL, A PHONE HOLDER

6    ISN'T AN OTHER MOVEABLE THING IN ANY COGNIZABLE INTERPRETATION

7    OF THE STATUTE.  "OTHER MOVEABLE THING" HAS TO BE UNDERSTOOD IN

8    CONNECTION WITH THE WORD "VEHICLE," SO IT HAS TO BE SOMETHING

9    OF A KIND OF A VEHICLE.  IT CAN'T RENDER THE WORD "VEHICLE"

10   MEANINGLESS.

11       SO I THINK JUDGE CORLEY'S INTERPRETATION OF THOSE, OF THAT

12   THING AS MEANING SOMETHING AKIN TO A PLANE OR A BOAT, SOMETHING

13   CAPABLE OF MOVING PEOPLE, IS THE RIGHT INTERPRETATION.

14       AND THEN THE FACT THAT SOMEBODY MIGHT ENTER A CAR OR ENTER

15   SOMETHING ELSE HAS NOTHING TO DO WITH BEING ATTACHED, BECAUSE I

16   CAN HAVE A PHONE IN MY POCKET AND ENTER INTO A CAR AND THAT

17   DOESN'T -- THAT DOESN'T MAKE ME EITHER ME ATTACHED TO THE CAR

18   OR CERTAINLY IT DOESN'T MAKE THE PHONE ATTACHED TO THE CAR.

19           THE COURT:  WELL, THEY'RE CALLED MOBILE PHONES,

20   AREN'T THEY?

21           MR. BERKOWITZ:  CERTAINLY.  I GUESS -- I SEE WHAT

22   YOUR HONOR IS SAYING.

23       SOME PEOPLE CALL THEM SMARTPHONES.  I DON'T KNOW.

24       BUT, NO, I DON'T THINK IT MEETS THE DEFINITION OF -- THE

25   "ATTACHED TO" DEFINITION.

1          THE COURT:  WELL, AND WE'RE TALKING ABOUT PARAGRAPH

2     D, I BELIEVE, IN THE STATUTE, "ELECTRONIC TRACKING DEVICE MEANS

3     ANY DEVICE ATTACHED TO A VEHICLE" -- AND IT TURNS OUT

4     VEHICLE -- "OR OTHER MOVEABLE THING THAT REVEALS ITS LOCATION

5     OR MOVEMENT BY THE TRANSMISSION OF ELECTRONIC SIGNALS."

6          MR. BERKOWITZ:  CORRECT.  AND WE CITE, YOUR HONOR,

7     AND WE GO THROUGH I THINK IN SOME DETAIL AT PAGE 11 OF OUR

8     REPLY BRIEF WHY THE PLAINTIFFS', THE CONSTRUCTION THEY'VE

9     PROPOSED IN THEIR OPPOSITION ISN'T CONSISTENT WITH THE CANONS

10    OF STATUTORY INTERPRETATION.

11         THE COURT:  OKAY.  THANK YOU.

12         MR. SOBOL:  JUDGE, LET'S START AGAIN WITH THE

13    RELEVANT STATUTORY LANGUAGE OF 637.7(A), "NO PERSON OR ENTITY

14    IN THIS STATE SHALL USE AN ELECTRONIC TRACKING DEVICE TO

15    DETERMINE THE LOCATION OR MOVEMENT OF A PERSON."

16         SO THIS IS -- YOU KNOW, WHAT I HEARD ARGUMENT ON WAS

17    GOOGLE DIDN'T PUT THOSE THINGS THERE, THE CHIPS, YOU KNOW, THE

18    WI-FI CHIP, THE GPS, THE SENSOR DATA, THEY DIDN'T PUT THAT

19    THERE SO, THEREFORE, YOU KNOW, WHY WOULD THEY BE LIABLE?

20         BUT OUR ALLEGATIONS ARE THAT THEY USED THOSE THINGS, AND

21    THAT PUTS THEM SQUARELY WITHIN THE STATUTE.

22         I HEARD A COUPLE OF TIMES HOW WE HAVE ALLEGED THAT THIS IS

23    SOFTWARE.

24         LET ME SAY THAT THE AMENDED COMPLAINT NOWHERE MENTIONS

25    SOFTWARE.  IT IS NOT AN ALLEGATION OF OURS.  IT IS A SORT OF

1    INTERPRETATION OF WHAT WE SAY, BUT WE DO NOT ALLEGE IT.

2        WE ARE SQUARELY OUTSIDE OF THE MORENO CASE FOR THAT

3    REASON.  THE JUDGE THERE WAS FOCUSSED ON THE APP, THE BART APP,

4    THE BART APP LOCATION, AND DETERMINED THAT THAT WAS SOFTWARE.

5        BUT WHAT WE ACTUALLY RELY ON IN OUR ALLEGATIONS TO

6    DETERMINE WHAT THE DEVICE IS, IS NOT ARTFUL PLEADING AS

7    WE'VE -- AS HAS BEEN SUGGESTED, BUT RATHER, GOING BACK TO

8    GOOGLE'S OWN WORDS AND REPRESENTATIONS OF HOW IT IS THAT THEY

9    DETERMINE YOUR LOCATION.

10        AND THEY SAY SEVERAL TIMES IN SEVERAL PLACES OVER MANY

11    YEARS THAT WE USE VARIOUS TECHNOLOGIES TO DETERMINE LOCATION,

12    INCLUDING A NUMBER OF THINGS, BUT INCLUDING DEVICES LIKE GPS,

13    WI-FI CHIPS --

14            THE COURT:  SO ARE YOU SAYING THAT A WI-FI CHIP IS A

15    DEVICE?

16            MR. SOBOL:  THAT IS OUR ALLEGATION.

17            THE COURT:  A WI-FI CHIP, STANDING ALONE, IS A

18    DEVICE?

19            MR. SOBOL:  BOTH A WI-FI CHIP, STANDING ALONE, AND A

20    GPS CHIP, STANDING ALONE, AND THESE OTHER SENSOR DATAS THAT

21    GOOGLE USES, STANDING ALONE, ARE DEVICES OR, YOUR HONOR, IN

22    CONNECTION AND WORKING TOGETHER WITH ONE ANOTHER THEY ARE A

23    DEVICE.

24            THE COURT:  I THINK IT'S COMMON KNOWLEDGE THAT A CHIP

25    BY ITSELF OFF THE SHELF FROM FRY'S OR SOMETHING IS NOT GOING TO

1     WORK.  IT'S A COMPONENT, ISN'T IT?

2                MR. SOBOL:  IT IS A COMPONENT.

3                THE COURT:  AND YOU'LL CONCEDE THAT?

4                MR. SOBOL:  IT IS.

5                THE COURT:  AND IT DOESN'T BECOME A DEVICE UNTIL IT

6     ATTACHES TO -- I SHOULDN'T USE THAT WORD -- UNTIL IT'S COMBINED

7     WITH OTHER COMPONENTS AND THEN IT BECOMES A DEVICE?  IS THAT A

8     GOOD RECIPE?

9                MR. SOBOL:  WELL, YOUR HONOR, THEY'VE INTRODUCED --

10    THEY HAVE INTRODUCED THIS NOTION OF COMPONENTS AND THAT SOMEHOW

11    IF THEY'RE COMPONENTS, THEY COULDN'T POSSIBLY QUALIFY AS

12    DEVICES.

13        WHERE THAT COMES FROM IS NOT CITED.  I THINK THAT'S SORT

14    OF --

15                THE COURT:  I'M JUST ASKING YOU THE QUESTION.  IS

16    THAT A FAIR ANALYSIS OF IT?  I'M CURIOUS.  STANDING ALONE -- I

17    THINK WE KNOW A CIRCUIT BOARD, STANDING ALONE, IS NOT GOING TO

18    DO ANYTHING.  YOU HAVE TO COMBINE IT WITH SOMETHING ELSE TO

19    MAKE IT A LIVE FUNCTIONING THING, A DEVICE FOR PURPOSES OF THIS

20    STATUTE.

21        SO WHAT IT SAYS, AND PARAGRAPH A, I THINK, IS WHAT YOU

22    WERE CITING TO, "USE AN ELECTRONIC TRACKING DEVICE" --

23                MR. SOBOL:  THAT'S RIGHT.

24                THE COURT:  -- AND I THINK YOU'LL AGREE, WON'T YOU,

25    THAT A CHIP, A CIRCUIT BOARD, A GPS CHIP, STANDING ALONE, IS

1    NOT A TRACKING DEVICE THAT COULD BE USED.  DON'T YOU HAVE TO

2    SAY --

3            MR. SOBOL:  I DON'T THINK THERE'S -- I HEAR WHAT -- I

4    THINK I HEAR WHAT YOUR HONOR IS ASKING ME IS, DOES IT HAVE TO

5    STAND ALONE AS A DEVICE SEPARATE FROM OTHER COMPONENTS OF A

6    PHONE IN ORDER TO QUALIFY AS A DEVICE UNDER THE STATUTE?  IF

7    THAT'S YOUR QUESTION?  DO I UNDERSTAND?

8            THE COURT:  THAT'S RIGHT, FOR THE PURPOSE OF THIS

9    LAWSUIT, FOR THE FACTS IN THIS LAWSUIT.

10           MR. SOBOL:  NO, I DON'T THINK SO, YOUR HONOR.  I

11   THINK A RADIATOR IS A DEVICE THAT GOES IN A CAR, AND IT MAY NOT

12   VERY WELL WORK WITHOUT ALL THE OTHER COMPONENTS, BUT IT,

13   STANDING ALONE, IS A DEVICE.  IT COOLS THE ENGINE.

14       AND THERE ARE THINGS IN A PHONE THAT DETERMINE YOUR

15   LOCATION, AND THOSE ARE DEVICES, TOO.

16       I MEAN, WE DO HAVE AN ALLEGATION -- WE DO HAVE AN

17   ALLEGATION THAT OF COURSE THE PHONE ITSELF IS A TRACKING

18   DEVICE, AND I THINK THAT'S PRETTY MUCH ESTABLISHED.  MORENO

19   SAYS THAT BLACK AND WHITE.

20       AND THE CHIEF JUSTICE OF THE SUPREME COURT HAS SAID THAT

21   BASICALLY CELL PHONES ARE LIKE ANKLE MONITORS, AND THAT

22   CERTAINLY SOUNDS LIKE AN ELECTRONIC TRACKING DEVICE TO ME.

23       SO THE PHONE CERTAINLY IS.  SO WE HAVE TO GET TO A CERTAIN

24   LEVEL OF GRANULARITY TO SUGGEST THAT YOU LOOK AT THE DEVICES

25   WITHIN THE PHONE AND SAY, WELL, THEY'RE CERTAINLY GLUED,

1    FASTENED, RIVETED, STAPLED, WHATEVER IT IS, I THINK IT FITS

2    WITHIN GOOGLE'S DEFINITION OF ATTACHED, THOSE COMPONENTS FOR

3    SURE.

4         BUT, YOU KNOW, IF YOU LOOK AT THE PHONE AS A WHOLE AND

5    CONSIDER THAT TO BE THE DEVICE, WE ACTUALLY DO MAKE ALLEGATIONS

6    THAT THEY ARE ATTACHED TO OTHER MOVEABLE THINGS, AND THEY ARE

7    ATTACHED TO THINGS LIKE PEOPLE'S POCKETS, PEOPLE'S BRIEFCASES,

8    PEOPLE'S BACKPACKS, PEOPLE'S PURSES, AND THOSE ARE MOVABLE

9    THINGS AND THEY WORK -- HERE'S THE POINT.

10        THE COURT:  WHAT'S THE MOVEABLE THING?  I'M SORRY.

11        MR. SOBOL:  THE MOVEABLE THING IS THE BRIEFCASE AND

12   THE BACKPACK AND THOSE THINGS THAT YOU CARRY AROUND WITH YOU

13   AND THAT ARE MEANT TO GO WITH YOU AS YOU TRAVEL ABOUT AND

14   PEOPLE USE THEM, AND IT IS ATTACHED IN THE SENSE THAT IT IS

15   CLOSELY ASSOCIATED WITH AND IT IS THERE AS AN ENTITY IN YOUR

16   LIFE AND A PRESENCE, WHICH IS EXACTLY, AGAIN, IN CARPENTER,

17   WHAT CHIEF JUSTICE ROBERTS WAS SAYING ABOUT HOW INVASIVE THESE

18   ARE AND HOW THEY ARE BECOMING BASICALLY A PART OF HUMAN

19   ANATOMY.

20        I MEAN, THE NOTION THAT THEY'RE NOT ATTACHED TO OUR LIVES

21   IN THAT SENSE, IT'S AS THOUGH THE STATUTE WAS REALLY TRYING TO

22   PROTECT ATTACHING THINGS TO ONE ANOTHER, LIKE THAT'S THE

23   PROBLEM.

24        IT HAD -- YOU CAN -- YOU KNOW, UNDER THEIR DEFINITION OF

25   "ATTACH," YOU COULD TAKE A GPS DEVICE -- AND LET'S JUST INVENT

1   ONE THAT WORKS ALL BY ITSELF -- YOU CAN LAY IT ON THE BACK SEAT

2   OF A CAR AND SOMEHOW IT'S NOT ATTACHED AND THERE'S NO VIOLATION

3   OF CIPA.

4        BUT IF YOU TAKE IT AND YOU PUT IT INTO A MAGNET OR YOU

5   GLUE IT ONTO THE BUMPER, ALL OF A SUDDEN YOU HAVE A VIOLATION

6   OF CIPA.

7        WELL, THAT JUST TURNS THE STATUTE ON ITS HEAD, DOESN'T IT?

8             THE COURT:  THAT'S SEMANTICS.  IS IT ATTACHED?  IS IT

9   PLACED?  IS IT WHATEVER?

10            MR. SOBOL:  RIGHT.

11       SO THE QUESTION IS -- THE QUESTION IS, WHAT ARE THE RIGHTS

12  AND INTERESTS AT STAKE HERE AND WHAT ARE THE PRINCIPLES

13  INVOLVED?

14       AND WHEN THE LEGISLATURE SAYS, YOU KNOW, ELECTRONIC

15  SURVEILLANCE IS GETTING OUT OF CONTROL, LET'S DO SOMETHING, IN

16  1998, LET'S DO SOMETHING, WHAT WE KNOW, LET'S SAY IT HOW WE

17  BEST KNOW, THEY DIDN'T SAY, YOU KNOW, LET'S JUST KEEP THIS TO

18  CARS, PLANES, AND TRAINS.

19       IT'S NOT ABOUT THAT.  IT'S ABOUT PROTECTING PEOPLE'S CIVIL

20  LIBERTIES AND ABOUT NOT TRACKING THEM WHEN YOU'VE TOLD THEM

21  THAT THAT'S NOT WHAT YOU'RE GOING TO DO.

22       SO, YOU KNOW --

23            THE COURT:  WELL, I THINK YOU'VE ANSWERED QUESTIONS

24  THAT I'VE HAD ABOUT YOUR OPINIONS ABOUT "ATTACHED" AND

25  "DEVICE," AND THAT'S WHAT I WAS PROBING.

```
1              MR. BERKOWITZ:  CAN I MAKE ONE COMMENT ON THE
2       STATUTORY INTERPRETATION QUESTION, YOUR HONOR?
3              THE COURT:  YES.
4              MR. BERKOWITZ:  YOUR HONOR STARTED THE HEARING WITH A
5       VERY ASTUTE OBSERVATION, WHICH IS THIS IS A CRIMINAL STATUTE --
6       AND WE SEE THIS IN THE ANTI-KICKBACK STATUTE, TOO.  COURTS ARE
7       VERY CAUTIOUS ABOUT HOW YOU INTERPRET CRIMINAL STATUTES BECAUSE
8       IF YOU INTERPRET A CRIMINAL STATUTE AS ADDRESSING CONDUCT THAT
9       IS NOT IN THE FOUR CORNERS OF THE STATUTE, YOU HAVE
10      POTENTIALLY -- YOU ARE POTENTIALLY EXPOSING PEOPLE -- NOT IN
11      THIS CASE, BUT IN FUTURE CASES -- TO CRIMINAL LIABILITY TO
12      WHICH THEY ARE NOT ON NOTICE.
13         SO THE IDEA THAT WE WOULD EXTEND THE STATUTE BEYOND ITS
14      PLAIN MEANING, I HOPE -- I JUST WOULD ASK THE COURT TO REJECT
15      THAT.
16             THE COURT:  IS THAT SOMETHING -- AND THERE'S SOME
17      TENSION THERE, AND THAT'S WHY I STARTED WITH WHAT I DID ABOUT,
18      SOMEWHAT OFF THE CUFF, ABOUT DO WE NEED A PROOF BEYOND A
19      REASONABLE DOUBT STANDARD AND 12 MEMBERS OF THE COMMUNITY,
20      BECAUSE IT IS A CRIMINAL STATUTE.
21             MR. BERKOWITZ:  AND THERE'S A LINE OF AUTHORITY -- I
22      KNOW THIS FROM THE ANTI-KICKBACK STATUTE, YOUR HONOR, THAT
23      THERE IS A LINE OF AUTHORITY SPECIFICALLY NARROWLY CONSTRUING
24      THE ANTI-KICKBACK STATUTE, EVEN IN CIVIL CASES, FOR THIS EXACT
25      REASON.  YOU DON'T WANT TO CREATE PRECEDENT IN A CIVIL CASE
```

1    THAT COULD BE USED TO TAKE AWAY SOMEBODY'S LIBERTY IN A CASE

2    WHERE THEY WEREN'T FAIRLY ON NOTICE THAT THE CONDUCT WAS

3    ILLEGAL.

4         THE COURT:  AND THAT'S ONE OF THE INTERESTING

5    ATTRIBUTES ABOUT PURSUING LITIGATION, CIVIL LITIGATION, THROUGH

6    THE CRIMINAL STATUTE.  I THINK JUDGES HAVE TO BE MINDFUL OF

7    THAT.

8         I'M SURE YOU RECOGNIZE THAT, TOO, MR. SOBOL --

9         MR. SOBOL:  I DO.

10        THE COURT:  -- THAT THE INTERPRETATION HERE SHOULD

11   NOT HAVE ANY EFFECT ON THE CRIMINAL STATUTE, ALBEIT IT'S A

12   MISDEMEANOR.  THAT STILL PUTS SOMEBODY AT RISK OF A LOSS OF

13   LIBERTY IN MANY FASHIONS.

14        SO IT'S -- IT'S AN ISSUE THAT'S NOT LOST ON ME, AND I

15   THINK ONE THAT REQUIRES, AS I THINK I'VE SAID BEFORE, A

16   SCALPEL, NOT A CHAIN SAW.

17        BUT -- AND THAT'S WHY I'M ASKING THESE QUESTIONS TO GUIDE

18   ME AS YOU SEE, AS YOU SEE APPROPRIATE.

19        MR. SOBOL:  YOUR HONOR, I ANSWERED YOUR QUESTIONS

20   ABOUT -- IF I'VE ANSWERED YOUR QUESTIONS ABOUT "DEVICE" --

21        THE COURT:  YES.

22        MR. SOBOL:  -- AND "ATTACH," THERE WAS SOMETHING

23   RAISED ABOUT HOW THE STATUTE DOESN'T ADDRESS STORAGE, AND I

24   WANT TO AT LEAST PUT OUR, OUR VIEW ON THAT.

25        AGAIN, YOUR HONOR, THE STATUTE SAYS THAT YOU CAN'T USE

1    THESE THINGS TO DETERMINE LOCATION OR MOVEMENT.  AND WHAT WE

2    HAVE HERE IN BIG PLAY -- IN PLAY IS THE POWER OF BIG DATA.  YOU

3    HAVE AN AVERAGE CONSUMER SAYING, GET ME TO THE GAS STATION, AND

4    THAT'S REALLY ALL I'M AUTHORIZING YOU TO DO, DETERMINE MY

5    LOCATION AND GET ME TO MY GAS STATION AND THEN FORGET ABOUT ME.

6          AND INSTEAD WHAT WE HAVE IS AN ATTEMPT TO USE THAT LIMITED

7    CONSENT FOR A SPECIFIC PURPOSE AND BROADEN IT OUT BEYOND WHAT

8    IT WAS INTENDED.

9          BECAUSE THEY WILL TAKE THAT -- NOW THAT THEY'RE IN

10   STORAGE, THEY'LL TAKE THAT ONE DATA BIT AND THEY'LL COMBINE IT

11   WITH OTHER DATA POINTS AND, THROUGH THE IMMENSE AND VAST

12   COMPUTING POWERS THAT THEY HAVE, THEY WILL BE ABLE TO GET A

13   COMPLETE AND INFORMATIVE AND INTRUSIVE PICTURE OF ALL YOUR

14   MOVEMENTS OVER TIME, EXACTLY WHAT THE STATUTE PROHIBITS.

15         AND THIS REALITY IS EXACTLY WHAT CONSUMERS ARE UPSET ABOUT

16   AND DID NOT CONSENT TO.

17             THE COURT:  OKAY.  THANK YOU.

18         YOU'VE GIVEN ME A PREAMBLE AND AN INTRODUCTION TO WHAT

19   MS. WOLFSON WILL TALK ABOUT.

20             MR. BERKOWITZ:  CAN I RESPOND TO THAT POINT?

21             THE COURT:  YEAH, SURE.

22         YOU WANT TO COME FORWARD, MS. WOLFSON.

23             MR. BERKOWITZ:  AND I'LL BE VERY BRIEF.  BUT TO USE

24   MR. SOBOL'S EXAMPLE, IF SOMEBODY IS DRIVING WITH THE GOOGLE

25   NAVIGATION APP AND IT'S HELPING THEM GET TO THEIR LOCATION,

1    IT'S CLEAR, BOTH TO THE USER -- IT'S CLEAR TO THE USER THAT

2    GOOGLE, THAT'S INFORMATION THAT'S TRANSMITTING TO GOOGLE.

3         SO THERE IS NOT -- THERE IS NOTHING -- I DON'T THINK

4    THERE'S A DELTA THERE, YOUR HONOR.

5              THE COURT:  OKAY.  THANK YOU.

6         MS. WOLFSON, THANK YOU FOR YOUR PATIENCE, AND I THINK YOU

7    WERE GOING TO TALK A LITTLE BIT ABOUT THE PRIVACY INTERESTS AND

8    THE ISSUES.

9              MS. WOLFSON:  YES, YOUR HONOR.  THANK YOU.

10        THANK YOU FOR HEARING US OUT.

11        REGARDLESS OF HOW YOU COME OUT ON THE CIPA CLAIMS, THE

12   COMPLAINT ABSOLUTELY STATES A VIOLATION OF THE CALIFORNIA

13   CONSTITUTION RIGHT TO PRIVACY AND THE INTRUSION UPON SECLUSION.

14        THOSE CLAIMS ARE CLOSELY RELATED AND, AS YOU MENTIONED,

15   THERE ARE BASICALLY THREE ELEMENTS:  A LEGALLY PROTECTED

16   PRIVACY INTEREST; REASONABLE EXPECTATION OF PRIVACY UNDER THE

17   CIRCUMSTANCES; AND A SERIOUS INVASION OF THAT PRIVACY,

18   SOMETIMES PHRASED AS AN EGREGIOUS BREACH OF THE SOCIAL NORMS.

19        ON THE FIRST ELEMENT, THERE IS NO QUESTION THAT THE

20   GEOLOCATION COLLECTION, THROUGH THE MOBILE PHONE, IS A LEGALLY

21   PROTECTED INTEREST.  THAT'S BEEN PROCLAIMED BY THE SUPREME

22   COURT IN CARPENTER, AND THAT IS THE ONLY ISSUE OF LAW THAT'S AT

23   STAKE HERE.

24        THE OTHER TWO ELEMENTS ARE MIXED QUESTIONS OF LAW AND

25   FACT, AND I WOULD SUBMIT TO YOU THAT IN THE 50-PAGE COMPLAINT

THAT WE'VE SUBMITTED, MOST OF WHICH GOOGLE DOES NOT ENGAGE

WITH, WE'VE MORE THAN STATED A CASE THAT SHOULD GO TO THE JURY

ON WHETHER OR NOT THERE WAS A REASONABLE EXPECTATION OF PRIVACY

AND WHETHER OR NOT THERE WAS AN EGREGIOUS VIOLATION OF THOSE --

OF SOCIAL NORMS.

AND AS JUDGE CHHABRIA RECENTLY STATED IN THE CAMBRIDGE

ANALYTICA CASE, THE COURTS MUST BE RELUCTANT TO REACH A

CONCLUSION AT THE PLEADING STAGE ABOUT HOW OFFENSIVE OR SERIOUS

THE PRIVACY INTRUSION IS; THE WILLIAMS VERSUS FACEBOOK CASE,

SAME THING, JUDGE SEEBORG; AND THE OPPERMAN VERSUS PATH CASE,

JUDGE TIGAR AGREES.

THE REASONABLE EXPECTATION HERE WAS ESTABLISHED BY GOOGLE

ITSELF.  GOOGLE SAID IN ITS PRIVACY POLICY, ACROSS THEIR

SERVICES, YOU CAN ADJUST YOUR PRIVACY SETTINGS TO CONTROL WHAT

WE COLLECT AND HOW YOUR INFORMATION IS USED.

AND A LINK FROM THAT PRIVACY POLICY TO A SUPPORT PAGE

ABOUT THE LOCATION HISTORY SAID, WITH LOCATION HISTORY OFF, THE

PLACES YOU GO ARE NO LONGER STORED.

AND, YOU KNOW, GIVING THE BENEFIT OF THE DOUBT TO THE

ALLEGATIONS OF THE COMPLAINT, AN AVERAGE CONSUMER UNDERSTOOD

THAT TO MEAN THAT THERE WILL NOT BE A GEOLOCATION PROFILE OF

THE KIND THAT WE ALLEGE, THE PERVASIVENESS, THE DETAIL, THE

GRANULARITY THAT WE ALLEGE WAS STORED.

AND IF I HEARD MR. BERKOWITZ SUGGEST OTHERWISE, I REALLY

HAVE TO TAKE ISSUE WITH THAT.

1    SO THAT'S REASONABLE EXPECTATION OF PRIVACY.

2    NOW LET'S TALK ABOUT SOCIAL NORMS.  SOCIAL NORMS, WE CAN

3    LOOK AT CASE LAW, WE CAN LOOK AT WHAT THE LEGISLATURE HAS DONE,

4    INCLUDING CIPA.  WE LOOK AT WHAT GOVERNMENTAL BODIES HAVE DONE

5    SINCE THIS NEWS BECAME OPEN.  AND ALL OF THAT IS IN OUR

6    COMPLAINT AND SHOWS THAT THE VIOLATION HERE IS INDEED EGREGIOUS

7    AND VIOLATES ALL SOCIAL NORMS.

8    THE IDEA THAT YOU HAVE AN AUTONOMY IN YOUR MOVEMENT IS A

9    VERY, VERY OLD CONCEPT THAT IS A PRIVATE RIGHT -- THAT IS A

10   CIVIL RIGHT IN THIS COUNTRY.

11   GOOGLE ITSELF HAS ACKNOWLEDGED THE SENSITIVITY OF

12   GEOLOCATION DATA, BOTH IN WHAT IT STATES IN ITS PRIVACY POLICY

13   TERMS OF USE, AS WELL AS ITS PUBLIC STATEMENTS TO THE PUBLIC

14   AND THE GOVERNMENTAL BODIES.

15   THE FCC HAS TALKED ABOUT THIS.  THAT'S IN PARAGRAPH 49 OF

16   OUR COMPLAINT.  THE FCC HAS TALKED ABOUT THIS AND, IN FACT, YOU

17   KNOW, HAS INVESTIGATED OTHER COMPANIES WHO HAVE BEEN ALLEGED TO

18   HAVE BEEN DOING SIMILAR COLLECTION OF GEOLOCATION.  THAT'S AT

19   PARAGRAPH 101.

20   THE STATUTORY SCHEMES THAT MR. SOBOL TALKED ABOUT AND THE

21   LEGISLATIVE INTENT RECOGNIZES THAT THESE ARE VERY, VERY SACRED

22   RIGHTS.  AND I COULD GO ON AND ON, BUT IT'S ALL IN OUR

23   COMPLAINT AND I -- YOU KNOW, I KNOW THAT GOOGLE DOESN'T DISPUTE

24   THAT AND DOESN'T REALLY ENGAGE WITH THE MYRIAD OF FACTUAL

25   ALLEGATIONS ABOUT HOW THEY EGREGIOUSLY VIOLATED THE SOCIAL

1    NORMS.

2         ONE THING TO NOTE IS THE CASE LAW RECOGNIZES THAT EVEN

3    WHERE THE RIGHT ALLEGED IS NOT AS SACRED AS GEOLOCATION

4    COLLECTION RIGHTS, THAT THE DECEITFUL NATURE OF HOW THE PRIVACY

5    RIGHTS HAVE BEEN VIOLATED GO TO THE EGREGIOUSNESS, THE

6    EGREGIOUSNESS OF THE VIOLATION OF THE SOCIAL NORMS.

7         AND IN THE IN RE: GOOGLE COOKIE PLACEMENT CASE, FOR

8    EXAMPLE, ALL THAT WAS AT STAKE THERE IS, YOU KNOW, COOKIES,

9    RIGHT?  YOUR MOVEMENT THROUGH THE INTERNET.

10        AND WHILE THAT IS -- YOU KNOW, ACCORDING TO SOME CASE LAW,

11   THAT IS NOT NECESSARILY PROTECTED PRIVACY INTERESTS, THE FACT

12   THAT GOOGLE SAID THAT THEY WOULD RESPECT, YOU KNOW, THE

13   BLOCKING OF COOKIES AND DIDN'T DO THAT, THAT ELEVATED THAT

14   CONDUCT TO AN EGREGIOUS ONE, WHICH IS EXACTLY WHAT WE HAVE

15   HERE.

16        OPPERMAN VERSUS PATH, SAME CONCEPT, AND THE WILLIAMS

17   VERSUS FACEBOOK CASE AS WELL.

18             MR. BERKOWITZ:  MAY I RESPOND, YOUR HONOR?

19             THE COURT:  MS. WOLFSON, ARE YOU FINISHED FOR NOW?

20             MS. WOLFSON:  FOR NOW I AM, YES.

21             THE COURT:  YES.

22             MR. BERKOWITZ:  THANK YOU.

23        OBVIOUSLY WE DO DISAGREE, YOUR HONOR.  WE DO DISAGREE WITH

24   MS. WOLFSON'S CHARACTERIZATION, AND WE DISAGREE THAT THERE'S

25   BEEN ANY DISHONESTY HERE.

1      AND I GUESS I WOULD POINT YOUR HONOR FIRST TO THE FACT

2  THAT THIS IS, THIS IS NOT PLAINTIFFS' FIRST COMPLAINT.  THE

3  PLAINTIFFS HAVE FILED A NUMBER OF COMPLAINTS IN THIS CASE.  IN

4  FACT, THERE WERE AT ONE POINT FRAUD ALLEGATIONS IN THIS CASE

5  WHICH WE MOVED TO DISMISS.

6      AMONG OTHER THINGS, YOUR HONOR, WE POINTED OUT THAT NOT

7  ONE OF THE PLAINTIFFS HAD ALLEGED THAT THEY READ THE ALLEGED

8  STATEMENT THAT THEY HANG THEIR ENTIRE CASE ON, WHICH IS THAT

9  THERE WAS THIS PREVIOUS STATEMENT IN THE LOCATION HISTORY PAGE

10  WHICH THEY CLAIM CREATED CONFUSION.  WE DISPUTE THAT.  BUT NOT

11  ONE OF THEM HAS READ IT.

12      WE MOVED TO DISMISS THAT.  THEY DISMISSED THEIR FRAUD

13  CLAIM.

14      AND IN THEIR MOST RECENT CONSOLIDATED COMPLAINT, THEY

15  CONTINUE NOT TO PLEAD THAT A SINGLE PLAINTIFF EVER READ THE

16  STATEMENT IN THE SUPPORT PAGE, WHICH IS THE ENTIRE FOCUS OF

17  THEIR COMPLAINT.

18      WHILE THEIR COMPLAINT IS, I FORGET HOW MANY PAGES

19  MS. WOLFSON SAID, BUT 40-SOMETHING PAGES, THERE'S REALLY ONE

20  PARAGRAPH OF ALLEGATIONS ABOUT THE INFORMATION THAT THEY ALLEGE

21  GOOGLE COLLECTED ABOUT THEM.  IT'S PARAGRAPH 47.

22      AND, YOUR HONOR, SO LET ME START FIRST OF ALL WITH THE

23  HIGH LEVEL CONCEPTS OF, DID GOOGLE OBTAIN CONSENT TO COLLECT

24  LOCATION?

25      AND I THINK, YOUR HONOR, IT'S CLEAR THAT THEY DID.  SO,

1      AGAIN, THEIR PRIVACY POLICY, WHICH PLAINTIFFS DID AGREE TO WHEN

2      THEY CREATED THEIR GOOGLE ACCOUNTS, THAT PRIVACY POLICY SAYS WE

3      WILL COLLECT YOUR LOCATION INFORMATION.

4          AND THAT'S THE CONSENT THAT I THINK THIS CASE LAW IS

5      PRETTY CLEAR IS, YOU KNOW, BINDING ON THE PLAINTIFFS.

6          GOOGLE ALSO GOES BEYOND THAT.  GOOGLE HAS A SERIES -- AND

7      WE CITE THEM AND INCLUDED HYPERLINKS TO THEM FOR YOUR HONOR IN

8      OUR REQUEST FOR JUDICIAL NOTICE AND IN OUR BRIEFING -- OF

9      VIDEOS EXPLAINING HOW GOOGLE, WHAT TYPES OF INFORMATION GOOGLE

10     COLLECTS.  GOOGLE COLLECTS -- IT SAYS, YOU KNOW, AGAIN, WE

11     COLLECT YOUR LOCATION INFORMATION.  WE HAVE MULTIPLE VIDEOS IN

12     THE PRIVACY POLICY THAT EXPLAIN THAT THEY DO THIS.

13         AND THIS IS NOT A -- SOMETHING THAT'S HIDDEN.  THIS IS --

14     AND I THINK WE EXCERPT A PORTION OF IT IN OUR BRIEF.  I MEAN,

15     THIS IS A LARGE CHUNK OF TEXT WITH GRAPHICS THAT EXPLAINS, YOU

16     KNOW, THAT THE INFORMATION ABOUT YOU WE COLLECT IS YOUR

17     LOCATION INFORMATION, AND IT EXPLAINS WHY WE COLLECT IT AND

18     WHAT WE DO WITH IT AND SO FORTH.

19         SO THERE'S NO -- YOU KNOW, TO SAY THAT THERE IS, I THINK,

20     ANY KIND OF DECEIT HERE IS AN ENTIRE MISREADING OF THE

21     COMPLAINT.

22         AND IT ALSO -- THERE'S -- OBVIOUSLY THEY HAVEN'T PLED

23     RELIANCE ON THE ALLEGED DECEITFUL STATEMENT BECAUSE THEY

24     HAVEN'T EVEN PLED THAT ANYBODY READ THE STATEMENT THAT THEY

25     ACKNOWLEDGE WAS NOT IN THE PRIVACY POLICY, BUT WAS IN A

1    SEPARATE SUPPORT PAGE.

2         SO I GUESS THAT'S HOW I WOULD JUST -- I WANT TO MAKE THAT

3    CLEAR ON THE FACTUAL ALLEGATIONS.

4         THE OTHER -- AND, AGAIN, I GUESS -- AGAIN, THIS COMES BACK

5    TO, YOU KNOW, I MEAN, WE'RE HERE AT THE 12(B) STAGE, YOUR

6    HONOR, SO I LOOK AT THE COMPLAINT AND I LOOK AT THE ADMISSIONS

7    THAT ARE MADE IN THE OPPOSITION.

8         THE COMPLAINT ADMITS, AGAIN IN PARAGRAPH 47 AND IN THE

9    EXHIBITS THAT IT ATTACHES, THAT THE AMOUNT OF LOCATION

10   INFORMATION THAT WE'RE TALKING ABOUT HERE IS LIMITED TO THOSE

11   INSTANCES WHERE A USER IS USING A FEATURE LIKE GOOGLE MAPS,

12   GOOGLE WEATHER, OR SEARCHING FOR, YOU KNOW, SHOW TIMES AT A

13   MOVIE NEARBY.

14        SO THIS IS NOT A SITUATION LIKE CARPENTER WHERE THERE WAS

15   PERVASIVE COLLECTION OF LOCATION INFORMATION.

16        AND ALSO, YOUR HONOR, I WOULD REFER YOUR HONOR TO THE

17   SUPREME COURT'S OPINION IN CARPENTER.  THE WAY THE SUPREME

18   COURT DESCRIBES THAT LOCATION INFORMATION, WHICH IS, AGAIN,

19   MUCH MORE PERVASIVE LOCATION INFORMATION THAN WHAT'S AT ISSUE

20   IN THIS CASE, BUT THE WAY THAT THE SUPREME COURT DESCRIBES THAT

21   INFORMATION WITH RESPECT TO SPRINT AND METRO PCS, WHICH WERE

22   THE TWO PHONE COMPANIES INVOLVED, IT CALLS IT THEIR, YOU KNOW,

23   ROUTINE BUSINESS RECORDS.

24        OR I'M SORRY, IT DOESN'T SAY -- I DON'T KNOW IF IT USED

25   THE WORD "ROUTINE."

1          IT DESCRIBED THEM AS THE BUSINESS RECORDS OF SPRINT AND

2     METRO PCS, BECAUSE NOBODY TOOK ISSUE WITH THE IDEA THAT IT WAS

3     APPROPRIATE FOR SPRINT AND METRO PCS TO HAVE THIS INFORMATION.

4          THE ISSUE WAS WHETHER THE DEPARTMENT OF JUSTICE COULD GET

5     THAT INFORMATION IN THE CONTEXT OF A CRIMINAL PROSECUTION

6     WITHOUT A WARRANT.

7          NOBODY DISPUTED THAT IT WAS APPROPRIATE FOR SPRINT AND

8     METRO PCS TO HAVE LOCATION INFORMATION ABOUT THEIR CUSTOMERS,

9     AND INDEED, THE SUPREME COURT REGARDED THAT INFORMATION AS

10    THEIR BUSINESS RECORDS.

11         SO PLAINTIFFS, AGAIN, THEY'VE AGREED --

12             THE COURT:  THAT SUGGESTS -- YOU'RE NOT SUGGESTING

13     THAT YOUR CLIENT IS IN THE BUSINESS OF OBTAINING PERSONAL

14     INFORMATION?

15             MR. BERKOWITZ:  I'M SORRY, YOUR HONOR?

16             THE COURT:  YOU'RE NOT SUGGESTING THAT YOUR CLIENT'S

17     BUSINESS IS COLLECTING PERSONAL INFORMATION, LIKE METRO PCS?

18             MR. BERKOWITZ:  I DON'T KNOW THAT THAT'S -- AND IF I

19     SUGGESTED THAT ABOUT METRO PCS, THAT WASN'T WHAT I WAS

20     SUGGESTING ABOUT METRO PCS.

21         WHAT -- METRO PCS IS IN THE BUSINESS, LIKE SPRINT IS IN

22     THE BUSINESS, OF PROVIDING PHONE SERVICE.  ONE -- A FUNCTION OF

23     THAT IS THEY HAVE TO KNOW HOW FAR PEOPLE ARE FROM VARIOUS PHONE

24     TOWERS SO THEY KNOW WHICH PHONE TOWER SHOULD PROVIDE THE BEST

25     SIGNAL TO THEM.

1    IF YOUR HONOR HEARD ME AS ACCUSING SPRINT OR METRO PCS OF

2    DOING SOMETHING INAPPROPRIATE, THAT WASN'T MY INTENTION.

3        THE COURT:  THANK YOU.

4        MR. BERKOWITZ:  THE OTHER THING I WOULD POINT OUT,

5    YOUR HONOR, IS THAT PLAINTIFFS -- AND AGAIN I COME BACK TO

6    THIS -- BUT THEY CONCEDE IN THEIR OPPOSITION, AGAIN AT PAGE 3,

7    THAT GOOGLE'S USE OF THIS INFORMATION, THE COLLECTION OF THIS

8    INFORMATION TO PROVIDE THE SERVICES, YOU KNOW, WAS ACCEPTABLE

9    AND APPROPRIATE.

10        AND GIVEN THAT, YOUR HONOR, THERE SIMPLY CAN'T BE A

11    VIOLATION OF THE PRIVACY, THE INVASION OF PRIVACY TORT OR THE

12    CALIFORNIA CONSTITUTIONAL INVASION OF PRIVACY TORT.

13        AND SO WE SEE, YOUR HONOR, THIS IS -- DISMISSAL IN THIS

14    CASE IS CONSISTENT WITH THE CASE -- WITH CASE LAW IN THIS

15    DISTRICT.  THERE ARE FUNCTIONALLY TWO CASES -- WELL, I GUESS

16    MORE THAN TWO.  THERE ARE AT LEAST TWO CASES THAT YOUR HONOR

17    CAN LOOK TO -- I GUESS THERE'S REALLY -- I'M GOING TO GIVE YOU

18    FOUR CASES, YOUR HONOR, THAT I WOULD LIKE YOUR HONOR TO VIEW AS

19    REQUIRING A DISMISSAL OF THIS CASE.

20        FIRST IS IN RE: IPHONE, WHICH WAS WRITTEN BY JUDGE KOH IN

21    THIS COURTHOUSE.  IN RE: IPHONE HAD FACTS MORE EGREGIOUS,

22    AGAIN, THAN THE FACTS ALLEGED IN THIS CASE, WHICH I THINK

23    INVOLVED ALLEGED PERVASIVE COLLECTION OF GEOLOCATION

24    INFORMATION CONTRARY TO THE EXPRESS CONSENT OF THE USERS, AND

25    EVEN IN THAT CASE, JUDGE KOH SAID, YOU KNOW, WITHOUT MORE, THAT

1      ISN'T ENOUGH TO MEET THE TEST ON THE COMMON LAW.

2           JUDGE -- IN MORENO, WHICH IS ANOTHER CASE WE'VE ALREADY

3      TALKED ABOUT, JUDGE CORLEY REASONED SIMILARLY.  SHE SAID THIS

4      IS -- THIS SIMPLY DOESN'T MEET THE -- AGAIN, IT WAS THE BART

5      APPLICATION ON A USER'S SMARTPHONE, JUST LIKE -- THESE ARE --

6      BOTH CASES, MORENO AND IN RE: IPHONE ARE BOTH SMARTPHONE CASES

7      IN WHICH THE ALLEGATION WAS THAT THE SOFTWARE MAKER COLLECTED

8      LOCATION INFORMATION IN EXCESS OF THE CONSENT PROVIDED.

9           AND IN BOTH CASES, JUDGE KOH AND JUDGE CORLEY SAID THAT'S

10     NOT ENOUGH TO STATE A CAUSE OF ACTION UNDER, UNDER THE COMMON

11     LAW.

12          AND THEN THERE'S TWO MORE CASES, YOUR HONOR.  THERE'S

13     CAHEN V. TOYOTA MOTORS, AND IN RE: YAHOO MAIL LITIGATION, AND

14     THOSE CASES ALSO REQUIRE DISMISSAL HERE, YOUR HONOR, FOR THE

15     DIFFERENT REASON, WHICH IS THAT EVEN IF IT WERE TORTIOUS TO --

16     EVEN IF YOUR HONOR ACCEPTED THAT THERE WAS NOT -- YOU KNOW,

17     THAT THE CONSENT WASN'T SUFFICIENT AND THAT NOTWITHSTANDING

18     JUDGE KOH'S AND JUDGE CORLEY'S OPINIONS IN MORENO AND IN IN RE:

19     IPHONE, THAT SOMEHOW THE COLLECTION OF LOCATION INFORMATION

20     COULD GIVE RISE TO A FINDING OF TORT LIABILITY.

21          WHAT CAHEN V. TOYOTA MOTORS SAYS AND WHAT IN RE: YAHOO

22     MAIL LITIGATION SAYS IS IT'S NOT SUFFICIENT JUST TO ALLEGE

23     GENERALLY THAT YOU'VE -- THAT PRIVATE INFORMATION HAS BEEN

24     TAKEN.  YOU HAVE TO ALLEGE WHAT THE PRIVATE INFORMATION IS.

25          SO IN CAHEN V. TOYOTA MOTORS, THE PLAINTIFFS ALLEGED

1    ESSENTIALLY THAT THEIR LOCATION WAS BEING TRACKED BY THEIR

2    MOTOR CARS AT VARIOUS TIMES.

3         AND THAT'S EXACTLY WHAT'S BEEN ALLEGED HERE, YOUR HONOR,

4    WHICH IS IT'S NOT A PERVASIVE COLLECTION OF INFORMATION, IT'S

5    SAYING THAT WHEN I USE CERTAIN APPLICATIONS, MY LOCATION

6    INFORMATION WAS -- IT TRANSMITTED MY LOCATION INFORMATION TO

7    GOOGLE, AND THEY SAY THEY CONSENTED TO THAT.

8         BUT NOTWITHSTANDING THE CONSENT, EVEN IF YOUR HONOR DIDN'T

9    ACCEPT THE CONSENT, THEY WOULD STILL NEED TO PLEAD WHERE -- YOU

10   KNOW, WHAT IS THE LOCATION INFORMATION THAT GOOGLE COLLECTED,

11   WHICH THEY CAN DOWNLOAD -- AND IT'S EXPLAINED IN THE EXHIBITS

12   TO THEIR COMPLAINT -- THEY CAN DOWNLOAD BY GOING TO MY

13   ACTIVITY, WHATEVER IT IS, MYACCOUNT.GOOGLE.COM, AND THEN

14   EXPLAIN WHAT THAT LOCATION INFORMATION IS AND WHY IT WAS, YOU

15   KNOW, SUCH AN EGREGIOUS VIOLATION OF THEIR RIGHTS THAT IT WAS

16   COLLECTED.

17        THEY HAVEN'T DONE THAT, YOUR HONOR, AND SO UNDER CAHEN V.

18   TOYOTA MOTORS, THEIR COMPLAINT INDEPENDENTLY NEEDS TO BE

19   DISMISSED FOR THAT REASON.

20        AND THE SAME PRINCIPLE IS AT ISSUE IN THE IN RE: YAHOO

21   MAIL LITIGATION CASE, WHICH, AGAIN, THE ALLEGATION THERE WAS

22   THAT YAHOO WAS READING E-MAIL.

23        AND WHAT THE COURT SAID IN IN RE: YAHOO MAIL LITIGATION

24   WAS IT'S NOT ENOUGH TO JUST GENERALLY ALLEGE THAT YOUR E-MAILS

25   HAVE BEEN READ.  YOU HAVE TO POINT TO SPECIFIC PRIVATE FACTS IN

1      E-MAILS AND EXPLAIN WHY YAHOO'S ACCESSING OF THOSE E-MAILS

2      AMOUNTED TO A PRIVACY VIOLATION.

3             HERE, ON THE FACTS IN THE COMPLAINT -- FIRST, THEY HAVEN'T

4      ALLEGED THEY READ THE ALLEGEDLY MISLEADING STATEMENT, WHICH I

5      DON'T THINK IS MISLEADING AT ALL, BUT THEY HAVEN'T ALLEGED THEY

6      READ IT.

7             THEY ALSO HAVEN'T ALLEGED A SINGLE LOCATION THAT THEY

8      CLAIM GOOGLE SHOULDN'T HAVE DETERMINED ABOUT THEIR LOCATION.

9             THE COURT:  OKAY.

10     MS. WOLFSON, ANYTHING FURTHER?

11            MS. WOLFSON:  THERE'S A LOT TO UNPACK THERE.  I'D

12      LIKE TO RESPOND, YOUR HONOR.

13            ON PAGE 8, FOR EXAMPLE, ABOUT MR. PATACSIL, WE SAY HE

14     TURNED THE LOCATION HISTORY SETTING TO OFF ON HIS GOOGLE

15     ACCOUNT BASED UPON THE TERMINOLOGY USED BY GOOGLE, THE CONTEXT

16     AND REPRESENTATIONS TO THE EFFECT THAT TURNING LOCATION HISTORY

17     OFF WOULD PREVENT HIS LOCATION INFORMATION FROM BEING STORED

18     AND THAT GOOGLE WOULD RESPOND -- WOULD RESPECT HIS PRIVACY

19     SETTINGS.  MR. PATACSIL BELIEVED THAT HE WOULD PREVENT GOOGLE

20     FROM STORING A RECORD OF HIS LOCATION HISTORY.

21            SO WE DO ALLEGE THAT RELIANCE, BUT THOSE ARE THE

22     ALLEGATIONS OF THE COMPLAINT.

23            ON -- IN PARAGRAPH 50 ON, WE EXPLAIN THE GRANULARITY WITH

24     WHICH, BASED ON OUR FORENSICS ANALYSIS, WITH WHICH GOOGLE

25     COLLECTS LOCATION INFORMATION.

```
1            AND WE DON'T HAVE TO ALLEGE WHERE THE CLIENTS WENT.  THAT

2      IS -- THAT'S JUST WRONG.  RIGHT?  THE RIGHT IS THE RIGHT TO

3      AUTONOMY.  IT'S THE RIGHT TO BE LEFT ALONE FROM BEING TRACKED

4      ON A DAILY MOVEMENT.

5                 THE COURT:  YOU DON'T HAVE TO ALLEGE PRIVACY TO --

6                 MS. WOLFSON:  THAT'S RIGHT.

7                 THE COURT:  YOU DON'T HAVE TO ALLEGE YOUR PRIVATE

8      INTEREST WAS VIOLATED.

9                 MS. WOLFSON:  CORRECT.  IT DOESN'T MATTER IF I WENT

10     TO THE POST OFFICE OR I WENT TO A RELIGIOUS MEETING OR I WENT

11     TO VOTE OR ANYTHING ELSE.  IT'S THE TRACKING OF MOVEMENT OVER

12     TIME.  IT'S AUTONOMY.  IT'S THE RIGHT TO BE LEFT ALONE.

13                THE COURT:  WHICH IS TO SAY YOU DON'T HAVE TO

14     DISCLOSE YOUR PRIVACY TO MAKE THE COMPLAINT.

15                MS. WOLFSON:  YES.

16                MR. BERKOWITZ:  YOUR HONOR, WE'RE NOT SAYING THAT

17     THEY WOULD HAVE TO FILE THESE THINGS UNDER SEAL.

18          BUT THE POINT WE'VE MADE, WHICH IS THE POINT THE COURT

19     MADE AGAIN IN CAHEN VERSUS TOYOTA MOTORS, IS THAT YOU NEED TO

20     ALLEGE THE FACTS.  YOU CAN'T SIMPLY ALLEGE THAT YOU WERE

21     SURVEILLED FROM TIME TO TIME OR AT PARTICULAR INTERVALS.  THAT

22     DOESN'T SATISFY THE COMMON LAW.

23                MS. WOLFSON:  WELL, IF YOU LOOK AT PARAGRAPH 11, WE

24     ALLEGE JUST THAT.  WE SAY THEY WERE TRACKED.  MR. PATACSIL WAS

25     TRACKED.
```

1      AND IF YOU LOOK AT -- IF YOU LOOK AT GOOGLE'S RECORDS, YOU

2    WOULD BE ABLE TO TELL HIS EATING HABITS, HIS SHOPPING HABITS,

3    HIS EXERCISE HABITS, WHETHER -- YOU KNOW, ET CETERA.

4      SO I THINK WE MORE THAN MEET THOSE REQUIREMENTS.

5      TO TALK ABOUT THE CASES A LITTLE BIT, AGAIN, YAHOO WAS AN

6    INFORMATIONAL PRIVACY CASE.  IT WAS NOT AN AUTONOMY CASE, SO

7    THAT'S A BIG DIFFERENCE.

8      AND, YOU KNOW, THE INTEREST THERE WAS WHETHER OR NOT YOU

9    HAVE A PRIVACY INTEREST IN YOUR E-MAILS.  JUDGE KOH CONCLUDED

10    THAT THERE WAS NOT UNLESS THERE WAS SOMETHING SENSITIVE.

11      CARPENTER SQUARELY SAYS YOU HAVE A PRIVACY INTEREST IN

12    YOUR GEOLOCATION.

13      TOYOTA MOTORS WAS BASICALLY A CASE THAT SAID -- THE

14    ALLEGATIONS THERE WERE SIMPLY TOO VAGUE AND THEY COULD NOT BE

15    CONSTRUED TO SHOW THAT, SIMPLY BY DRIVING THE CAR, GEOLOCATION

16    WAS TRANSMITTED.

17      THE IPHONE CASE, JUDGE KOH'S DECISION, I THINK REALLY

18    LACKS IN REASONING AND IT'S BASED ON THE LAMPS PLUS CASE, WHICH

19    IS A ZIP CODE CASE.

20      SHE CONCLUDES VERY, VERY QUICKLY THAT THERE IS NO -- YOU

21    KNOW, THAT THE VIOLATION THERE, WHICH WAS NOT AN EXTENSIVE

22    GEOLOCATION, IT HAD SOME OTHER DATA AND OCCASIONAL GEOLOCATION,

23    WHICH IS ANOTHER DIFFERENCE WITH OUR COMPLAINT, SHE SAYS THAT'S

24    NOT -- YOU KNOW, THAT DOESN'T VIOLATE SOCIAL NORMS AND CITES

25    THIS LAMPS PLUS CASE, WHICH HAS NOTHING TO DO WITH THE

1    ALLEGATIONS IN THE IPHONE CASE OR OUR ALLEGATIONS HERE.

2         AND IT'S IMPORTANT TO NOTE THAT SHE ALSO MADE THAT

3    DECISION PRIOR TO THE ANNOUNCEMENT IN CARPENTER THAT THIS IS --

4    WHICH ESTABLISHES A RIGHT TO PRIVACY IN GEOLOCATION.

5         AGAIN, MORENO WAS DECIDED ON THOSE FACTS, WHICH IS THAT

6    PEOPLE HAD TO DOWNLOAD AN APP THAT ALLOWED THEM TO REPORT

7    SUSPICIOUS ACTIVITY IN BART, AND TO SAY THAT BECAUSE THOSE

8    FOLKS REASONABLY SHOULD HAVE EXPECTED THAT THE -- THAT BART AND

9    OTHER APPS WOULD GET THEIR GEOLOCATION SO THAT THE POLICE COULD

10   RESPOND TO WHAT WAS HAPPENING, WHICH WAS THE WHOLE PURPOSE OF

11   THE APP, YOU KNOW, TO MAKE -- I THINK IT'S A HUGE LEAP TO SAY

12   THAT THAT CASE, YOU KNOW, RESULTS IN OUR DISMISSAL HERE.

13        THESE CONSUMERS DID NOT EXPECT, UNDER ANY CIRCUMSTANCES,

14   THAT THERE WOULD BE SUCH A GRANULAR MAP CREATED OF THEIR

15   MOVEMENTS.

16        AND NOT JUST THE CONSUMERS, BUT ALL THE MEDIA THAT WE TALK

17   ABOUT, ARTICLES WRITTEN BEFORE THE A.P. NEWS SERVICE THAT

18   GUIDED PEOPLE AS TO HOW TO PROTECT THEIR PRIVACY, HOW TO

19   TAKE -- HOW TO TAKE CARE THAT THEIR LOCATION IS PRIVATE, EVEN

20   VERY, VERY TECHIE, VERY SAVVY WRITERS ALSO WERE DECEIVED BY

21   WHAT GOOGLE WAS DOING.

22        THE COURT:  OKAY.  YOU GET THE LAST WORD.

23        MR. BERKOWITZ:  THANK YOU, YOUR HONOR.

24   LET ME JUST RESPOND TO A COUPLE OF THINGS THAT WERE JUST

25   DESCRIBED ABOUT THE COMPLAINT, BECAUSE I -- I HAVE TO BELIEVE

```
1          MS. WOLFSON SIMPLY MISSPOKE.

2          PARAGRAPH 11, SHE SAYS, RECITES THE PLACES THAT -- I

3     THOUGHT I HEARD HER SAY RECITES THE PLACES THAT MR. PATACSIL

4     WENT.

5          IN FACT, IF YOU READ PARAGRAPH 11, HE WRITES MR. PATACSIL

6     DOES NOT RECITE HERE THE PRECISE LOCATIONS HE WENT, AND THEN HE

7     GIVES A LIST OF THEORETICAL PLACES THAT SOMEONE COULD HAVE

8     GONE, WITHOUT SAYING WHETHER OR NOT HE ACTUALLY WENT TO THOSE

9     PLACES.

10         AND THAT'S EXACTLY WHAT CAHEN -- I MEAN, THAT'S OUR POINT,

11    YOUR HONOR, WHICH IS THAT'S WHAT CAHEN V. TOYOTA MOTORS SAYS

12    YOU CANNOT DO.

13         I BELIEVE JUDGE CORLEY MAY HAVE ALSO SAID YOU CAN'T DO

14    THAT IN MORENO.

15         AND THEN -- AND THEN THE OTHER THING THAT, YOUR HONOR, SHE

16    SAID REGARDING THE COMPLAINT WHICH I JUST WANT TO ADDRESS IS

17    THIS SUGGESTION THAT SHE'S FILLED IN THE GAPS IN PARAGRAPH 50

18    AND SO FORTH IN THE COMPLAINT.

19         PARAGRAPH 50 IN THE COMPLAINT AND THE FOLLOWING PARAGRAPHS

20    HAVE NOTHING TO DO WHATSOEVER WITH THE ALLEGATION THAT ANY OF

21    THE PLAINTIFFS WERE -- THEIR LOCATION WAS COLLECTED.

22         THE ALLEGATION REGARDING THE PLAINTIFFS IS PARAGRAPH 47,

23    WHICH DESCRIBES WHAT'S REVEALED, OR WHAT'S ALLEGED IN THE A.P.

24    STORY, WHICH IS THAT WHEN YOU USE CERTAIN APPLICATIONS, LIKE

25    GOOGLE MAPS, WEATHER, AND SO FORTH, OF COURSE YOU ARE GIVING --
```

1    YOU'RE TRANSMITTING YOUR LOCATION TO GOOGLE, WHICH GOOGLE

2    DISCLOSES TO YOU.

3         PARAGRAPH 50 IS A SEPARATE DESCRIPTION OF GOOGLE'S --

4    AGAIN, OF ALLEGATIONS ABOUT GOOGLE'S LOCATION HISTORY

5    FUNCTIONS, WHICH AREN'T AT ISSUE IN THIS CASE BECAUSE, AGAIN,

6    THE PLAINTIFFS HAVE OPTED OUT OF LOCATION HISTORY, AND NOT A

7    SINGLE PLAINTIFF HAS ALLEGED, AND I DON'T BELIEVE THEY COULD

8    ALLEGE BASED ON WHAT I KNOW ABOUT THEIR FACTS, THAT -- BUT IN

9    ANY EVENT, NOT A SINGLE PLAINTIFF HAS ALLEGED THAT THE TYPE OF

10   LOCATION INFORMATION CONTAINED IN PARAGRAPH 50 WAS COLLECTED

11   ABOUT THEM PRECISELY BECAUSE THEY DID OPT OUT OF LOCATION

12   HISTORY.

13        THE COMPLAINT CERTAINLY DOESN'T CONTRADICT THAT.

14        AND FINALLY, YOUR HONOR, I GUESS I WOULD TALK ABOUT

15   MS. WOLFSON'S DESCRIPTION OF IN RE: IPHONE.

16        SO FIRST OF ALL, I OBVIOUSLY BELIEVE JUDGE KOH'S REASONING

17   IN IN RE: IPHONE WAS THE RIGHT REASONING.

18        I ALSO THINK MS. WOLFSON HAS INCORRECTLY DESCRIBED THE

19   LAMPS PLUS CASE WHICH IS CITED IN IN RE: IPHONE.  LAMPS PLUS

20   WAS NOT JUST ABOUT ZIP CODES.  YES, ZIP CODES WERE THE ORIGINAL

21   INFORMATION THAT WAS OBTAINED.

22        BUT THEN WHAT WAS DONE WITH THAT INFORMATION IN LAMPS PLUS

23   WAS TO OBTAIN PEOPLE'S HOME ADDRESSES, AND SO THE CASE WAS

24   ABOUT HOME ADDRESSES, NOT MERELY ABOUT ZIP CODES.

25        SO IT'S REASONABLE -- I MEAN, I THINK IT MADE A LOT OF

1        SENSE THAT JUDGE KOH RELIED ON THAT CASE AND CITED TO THAT CASE

2        IN DECIDING THE SPECIFIC FACTS AND ISSUES AT ISSUE IN IN RE:

3        IPHONE.

4               THE COURT:  OKAY.  THANK YOU VERY MUCH.

5            THANK YOU FOR THIS DISCUSSION.

6               MS. WOLFSON:  THANK YOU, YOUR HONOR.

7               THE COURT:  IT WAS VERY HELPFUL.  I ENJOYED IT.

8            AND THE MATTER IS UNDER SUBMISSION.  THANKS SO MUCH.

9               MR. BERKOWITZ:  THANK YOU VERY MUCH, YOUR HONOR.

10              THE COURT:  YOU'RE WELCOME.  THANK YOU.

11              MS. WOLFSON:  THANK YOU, YOUR HONOR.

12           (THE PROCEEDINGS WERE CONCLUDED AT 4:14 P.M.)

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3                      CERTIFICATE OF REPORTER

4

5

6

7          I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8     STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9     280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10    CERTIFY:

11         THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12    A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13    ABOVE-ENTITLED MATTER.

14

15

16    _____
      LEE-ANNE SHORTRIDGE, CSR, CRR
17    CERTIFICATE NUMBER 9595

18          DATED:  JANUARY 16, 2020

19

20

21

22

23

24

25