**LIEFF CABRASER HEIMANN
& BERNSTEIN, LLP**
Michael W. Sobol (SBN 194857)
msobol@lchb.com
Melissa Gardner (SBN 289096)
mgardner@lchb.com
Michael Levin-Gesundheit (SBN 292930)
mlevin@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA  94111
Telephone:  415.956.1000
Facsimile:  415.956.1008

**LIEFF CABRASER HEIMANN
& BERNSTEIN, LLP**
Nicholas Diamand (*pro hac vice*)
ndiamand@lchb.com
250 Hudson Street, 8th Floor
New York, NY  10013
Telephone:  212.355.9500
Facsimile:  212.355.9592

*Interim Co-Lead Class Counsel*

**AHDOOT & WOLFSON, PC**
Tina Wolfson (SBN 174806)
twolfson@ahdootwolfson.com
Theodore Maya (SBN 223242)
tmaya@ahdootwolfson.com
Brad King (SBN 274399)
bking@ahdootwolfson.com
10728 Lindbrook Drive
Los Angeles, CA 90024
Telephone: 310.474.9111
Facsimile: 310.474.8585

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| IN RE GOOGLE LOCATION HISTORY LITIGATION | Case No. 5:18-cv-05062-EJD<br><br>**NOTICE OF MOTION AND MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b); MEMORANDUM OF POINTS AND AUTHORITIES** |

1

# TABLE OF CONTENTS

2

**Page**

3

NOTICE OF MOTION ............................................................................................................i

4

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................... 1

5

I.    INTRODUCTION ...................................................................................... 1

II.   BACKGROUND ......................................................................................... 1

6

III.  ARGUMENT ............................................................................................... 2

7

A.   The Dismissal of Plaintiffs' CIPA Claim Warrants Interlocutory Review Under

8

§ 1292(b). ................................................................................................ 3

9

1.   Controlling Questions of CIPA's Interpretation and Scope are at
Issue. .......................................................................................... 3

10

2.   Substantial Grounds for Difference of Opinion Exist. ............................ 4

11

3.   Prompt Review of the CIPA Claim Will Materially Advance the
Termination of this Action. ........................................................... 6

12

B.   The Dismissal of Plaintiffs' California Privacy Tort Claims Warrants Interlocutory

13

Review Under § 1292(b). ...................................................................... 7

14

1.   Controlling Questions of Law Are at Issue. .......................................... 7

2.   Substantial Grounds for Difference of Opinion Exist. ............................ 8

15

3.   Prompt Review of the California Privacy Tort Claims Will
Materially Advance the Termination of this Action. ........................ 10

16

IV.   CONCLUSION ........................................................................................... 10

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*F.T.C. v. Swish Mktg.*,
  No. 09-3814, 2010 WL 1526483 (N.D. Cal. Apr. 14, 2010) ................................................. 3

*Fredenburg v. City of Fremont*,
  14 Cal. Rptr. 3d 437 (Ct. App. 2004) ..................................................................................... 10

*Gonzales v. Uber Techs., Inc.*,
  305 F. Supp. 3d 1078 (N.D. Cal. 2018) ............................................................................. 4, 5

*Heeger v. Facebook, Inc.*,
  No. 18-6399, ECF No. 1 (N.D. Cal. Dec. 27, 2019) ....................................................... 5, 6, 9

*In re Cement Antitrust Litig.*,
  673 F.2d 1020 (9th Cir. 1981) ...................................................................................... 3, 4, 7

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*,
  806 F.3d 125 (3d Cir. 2015) ..................................................................................................... 7

*McDonald v. Kiloo ApS*,
  385 F. Supp. 3d 1022 (N.D. Cal. 2019) .................................................................................. 9

*Moreno v. S.F. Bay Area Rapid Transit Dist.*,
  No. 17-2911, 2017 WL 6387764 (N.D. Cal. Dec. 14, 2017) ................................................. 4

*Reese v. BP Exploration (Alaska) Inc.*,
  643 F.3d 681 (9th Cir. 2011) ........................................................................................ 3, 6, 9

*United States ex rel. Atlas Compo Compressors LLC*,
  No. 16-215, 2017 WL 2986586 (D. Haw. July 13, 2017) ...................................................... 3

*United States v. Woodbury*,
  263 F.2d 784 (9th Cir. 1959) .................................................................................................. 3

**Statutes**

28 U.S.C. § 1292(b) ...................................................................................................... passim

Cal. Pen. Code § 637.7(a) ............................................................................................... 5, 6

Cal. Pen. Code § 637.7(d) .................................................................................................... 6

California Invasion of Privacy Act, Cal. Penal Code §§ 630 *et seq.* ................................ passim

**Other Authorities**

Federal Rule 12(b) ............................................................................................................... 8

Federal Rule 12(b)(6) ................................................................................................. 1, 6, 8

**Treatises**

Stuart A. Thompson and Charlie Warzel,
  *Twelve Million Phones, One Dataset, Zero Privacy*, New York Times (Dec. 19, 2019) ........ 6

1

**NOTICE OF MOTION**

2   TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3   **PLEASE TAKE NOTICE** that on April 16, 2020, at 9 a.m., in the Courtroom of the

4   Honorable Edward J. Davila, United States District Judge for the Northern District of California,

5   280 South 1st Street, San Jose, CA 95113, Plaintiffs will and hereby do move the Court for an

6   Order certifying the Court's December 19, 2019 Order Granting Defendant's Motion to Dismiss

7   (ECF No. 113) for interlocutory appellate review pursuant to 28 U.S.C. § 1292(b).

8   This motion is based on this notice of motion and motion; the accompanying

9   memorandum of points and authorities; all papers and records on file in this case; and such other

10   matters as the Court may consider.

11

12   Dated: January 27, 2020          Respectfully Submitted,

13                                               */s Michael W. Sobol*

14                                     Michael W. Sobol (SBN 194857)
                                       msobol@lchb.com
15                                     Melissa Gardner (SBN 289096)
                                       mgardner@lchb.com
16                                     Michael Levin-Gesundheit (SBN 292930)
                                       mlevin@lchb.com
17                                     LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
                                       275 Battery Street, 29th Floor
18                                     San Francisco, CA  94111-3339
                                       Telephone:  415.956.1000
19                                     Facsimile:  415.956.1008

20                                               */s Tina Wolfson*

21                                     Tina Wolfson (SBN 174806)
                                       twolfson@ahdootwolfson.com
22                                     Theodore Maya (SBN 223242)
                                       tmaya@ahdootwolfson.com
23                                     Brad King (SBN 274399)
                                       bking@ahdootwolfson.com
24                                     AHDOOT & WOLFSON, PC
                                       10728 Lindbrook Drive
25                                     Los Angeles, CA 90024
                                       Telephone: 310.474.9111
26                                     Facsimile: 310.474.8585

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Nicholas Diamand (*pro hac vice*)
ndiamand@lchb.com
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York,  NY 10013
Telephone:  212.355.9500
Facsimile:  212.355.9592

*Interim Co-Lead Class Counsel*

1    <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2    **I.    <u>INTRODUCTION</u>**

3    This Court's December 19, 2019 Order Granting Defendant's Motion to Dismiss (ECF

4    No. 113, "Dismissal Order") decided novel and pivotal issues that have profound consequences

5    for the privacy of nearly every person who uses a mobile device.  The Court held that Plaintiffs'

6    detailed allegations describing Defendant Google LCC's ("Google") tracking and storage of their

7    geolocation data, including data showing their precise movements over time, without their

8    consent — indeed contrary to their express wishes — stated no cognizable claim for a privacy

9    violation.  This holding has far-reaching implications for society at large.

10   Given the gravity of the fundamental privacy interests at stake, and the dearth of recent

11   guiding precedent construing them in the context of the nascent digital age, justice requires

12   immediate appellate review of the Dismissal Order now, rather than after continued litigation in

13   accordance with the Dismissal Order's strictures, all of which may be for naught should the Court

14   of Appeals agree with Plaintiffs after such continued litigation.  Amending the pleadings in

15   accordance with the Dismissal Order, instead of proceeding with interlocutory review, would so

16   severely alter the allegations concerning the nature of the privacy rights at stake that efficiency

17   dictates appellate review prior to further proceedings in the District Court.

18   Interlocutory review under 28 U.S.C. § 1292(b) is entirely appropriate under the

19   circumstances presented here.  The Dismissal Order presents controlling issues of law, obviously

20   with respect to the CIPA claim, as the Court dismissed it with prejudice, but just as certainly with

21   respect to the common law and California Constitution claims for which the Court created new

22   legal criteria and effectively made findings of material fact on a Rule 12(b)(6) motion that

23   contravene Plaintiffs' allegations.  Understandably, these are complex and novel issues on which

24   there is, naturally, a substantial ground for difference of opinion.  Respectfully, Plaintiffs ask that

25   the Court certify the Dismissal Order for interlocutory appeal under 28 U.S.C. § 1292(b).

26   **II.    <u>BACKGROUND</u>**

27   The Dismissal Order dismissed all three of Plaintiffs' claims, all of which arise from a

28   common core of alleged facts — that Google has been tracking the movements of its users

1   without their consent.  In dismissing these five Plaintiffs' claims under the California Invasion of

2   Privacy Act, Cal. Penal Code §§ 630 *et seq.* ("CIPA"), with prejudice, the Dismissal Order

3   reached conclusions adverse to Plaintiffs on several dispositive questions of statutory

4   interpretation, including on the meanings of statutory terms "electronic tracking device" and

5   "movable thing"; on whether the term "movement" plays a meaningful role in defining the scope

6   of CIPA's prohibitions; and on the interplay between the terms "use" and "attach" as applied to a

7   defendant's conduct under the statute.  Dismissal Order at 10-13.

8         The Court also dismissed Plaintiffs' claims under the California Constitution and common

9   law tort of Intrusion Upon Seclusion (collectively, "California Privacy Torts").  Here, the

10  Dismissal Order drew fundamental conclusions on the scope of "autonomy privacy" in the digital

11  age,[1] as well as on factual matters in dispute, such as whether Google is capable of continuously

12  tracking location information through apps and other services, and whether information thus

13  collected can create a mosaic of a person's movements.  Based on these essentially factual

14  findings, the Dismissal Order held that only amended and significantly narrowed allegations of

15  location-specific privacy invasions can state a California Privacy Tort claim.

16        The Court granted leave to amend "to allege an invasion of privacy" in support of

17  Plaintiffs' constitutional and common law privacy claims, but prohibited the addition of any new

18  parties or claims not asserted in the original Consolidated Class Action Complaint.  Dismissal

19  Order at 19.  Thus, while the Court did grant leave to amend, a restricted amendment conforming

20  to the Dismissal Order's enunciation of the relevant law would, respectfully, render any amended

21  complaint drastically impaired and, possibly, unjustifiably vulnerable in later proceedings.

22  Rather than proceeding on amended allegations struck so drastically lame, the wiser course is to

23  permit appellate review and allow the case to proceed on clear legal footing afterward.

24  **III.    ARGUMENT**

25        A district court may certify an order for interlocutory appeal under 28 U.S.C. § 1292(b)

26  where: (1) a controlling question of law is at issue; (2) a substantial ground for difference of

27  ───────────────────────

28  [1] Dismissal Order at 15.

1   opinion exists; and (3) an immediate appeal from the order may materially advance the ultimate

2   termination of the litigation.  *Id.*; *see also United States ex rel. Atlas Compo Compressors LLC*,

3   No. 16-215, 2017 WL 2986586 (D. Haw. July 13, 2017).

4           An issue is "controlling" if its resolution "on appeal could materially affect the outcome

5   of litigation in the district court."  *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir.

6   1981).  "[T]he issue need not be dispositive of the lawsuit[.]"  *F.T.C. v. Swish Mktg.*, No. 09-

7   3814, 2010 WL 1526483, at *1 (N.D. Cal. Apr. 14, 2010) (citing *United States v. Woodbury*, 263

8   F.2d 784, 787 (9th Cir. 1959)).

9           A substantial ground for difference of opinion exists when novel legal issues are

10  presented, on which reasonable minded jurists might reach contradictory conclusions. *Reese v. BP*

11  *Exploration (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011). "[N]o cases directly conflicting

12  with the district court's construction of the law" are required for a § 1292(b) appeal.  *Id.*

13          Resolution of a question materially advances the termination of litigation if it "facilitates

14  disposition of the action by getting a final decision on a controlling legal issue sooner, rather than

15  later in order to save the courts and the litigants unnecessary trouble and expense." *Atlas Compo*,

16  2017 WL 2986586, at *11 (citations and quotation marks omitted); *see also In re Cement*

17  *Antitrust Litig.*, 673 F.2d at 1026.

18      **A.      The Dismissal of Plaintiffs' CIPA Claim Warrants Interlocutory Review**
19              **Under § 1292(b).**

20              **1.      Controlling Questions of CIPA's Interpretation and Scope are at Issue.**

21          In concluding that no "electronic tracking device" within the meaning of CIPA was

22  alleged in this action, the Dismissal Order tackled a multitude of complex questions of first

23  impression concerning the California Legislature's intent when it outlawed determining the

24  location or movement of a person electronically.  Dismissal Order at 10-11.  Some of the

25  unprecedented questions of statutory interpretation and CIPA's scope that the Dismissal Order

26  addressed are:

27      1. Does determining the location or movement of a person via an electronic tracking
           device constitute "use" of the device when a defendant accesses the device through
28         software services, applications, and features?

2. Must CIPA's statutory text "vehicle or other movable thing" be interpreted to exclude all moveable things other than motorized machines comparable to automobiles?

3. Insofar as storage of location data points converts otherwise transitory and ephemeral information about a user's location into information about their movements from one location to another, do CIPA's prohibitions on determining location *or* movement encompass the nonconsensual *storage* of location data points?

4. To violate CIPA's prohibitions, must a defendant, itself, "attach" an electronic tracking device to a vehicle or other moveable thing, or does the statute prohibit "use" of a device otherwise attached to a vehicle or other moveable thing, by someone other than the defendant, to determine a plaintiff's location or movement?

The Dismissal Order determined each of these questions adversely to Plaintiffs. To be sure, a different resolution to these questions would "materially affect the outcome of the litigation in the district court." *In re Cement Antitrust Litig.*, 673 F.2d at 1026.

## 2.     Substantial Grounds for Difference of Opinion Exist.

Whether the GPS hardware, cellular radio, or WiFi chip attached to Plaintiffs' mobile devices or the mobile devices themselves constitute "electronic tracking devices" under CIPA is a "novel legal issue[] . . . on which fair-minded jurists might reach contradictory conclusions." *Reese*, 643 F.3d at 688; *see* Consolidated Class Action Compl. ("Compl.") ¶¶ 123-24, ECF No. 80. Notably, there is not one appellate opinion—from either the California Court of Appeal or the Ninth Circuit—addressing these questions. Just three federal district court decisions touch on these topics. Two are from Magistrate Judge Corley: *Moreno v. S.F. Bay Area Rapid Transit Dist.*, No. 17-2911, 2017 WL 6387764 (N.D. Cal. Dec. 14, 2017), and *Gonzales v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078 (N.D. Cal. 2018). These two non-binding decisions, however, are inconsistent with one another. In *Moreno*, whose reasoning Plaintiffs do not endorse, the court concluded that "software,[2] such as [an] [a]pp, cannot" be an electronic tracking device under CIPA. *Moreno*, 2017 WL 6387764, at *5. But the following year, in *Gonzales*, Judge Corley suggested that transmission of an individual's location via software on a mobile device—specifically, the Uber app—*could* constitute use of an electronic tracking device under CIPA.

---

[2] Plaintiffs note that their allegations involve not only Google applications but Google hardware as well—specifically, Android mobile devices. *See* Compl. ¶ 110.

1  *Gonzales*, 305 F. Supp. 3d at 1090.  The court ultimately found the plaintiff, unlike Plaintiffs

2  here, "consented to the tracking of his vehicle through his cellphone."  *Id.*  Finally, in *Heeger v.*

3  *Facebook, Inc.*, another judge in this District addressed CIPA in the context of a software

4  application[3] that collected only "approximate locations using IP addresses and other information

5  gleaned from Wi-Fi connections"—definitely not the type of precise geolocation information at

6  issue in this case.  Compl. ¶ 31, *Heeger v. Facebook, Inc.*, No. 18-6399, ECF No. 1 (N.D. Cal.

7  Dec. 27, 2019).  On a first motion to dismiss, the court held that a "downloaded Facebook app of

8  the sort in dispute" was not an "electronic tracking device" under CIPA.  No. 18-6399, 2019 WL

9  7282477, at *3 (N.D. Cal. Dec. 27, 2019).  However, recognizing the challenge of interpreting

10  CIPA in this digital age, unlike here, the court granted the plaintiff leave to amend, stating "[i]t

11  may be possible for [plaintiff] to provide additional facts that might address this issue."  *Id.*

12  The Dismissal Order also concluded that "other moveable things," in the context of

13  CIPA's definition of an electronic tracking device as a device attached to a "vehicle or other

14  moveable thing," "refers to things like boats, planes, or other comparable motorized machines."

15  Dismissal Order at 13.  No other court has interpreted CIPA so narrowly and, Plaintiffs contend,

16  interpreting "other movable things" to mean vehicles (*e.g.*, "boats" and "planes"), when the word

17  "vehicles" appears in the same clause of the statute, ignores and renders "other moveable thing"

18  surplusage.

19  Similarly, whether a defendant must *use* or instead *place*, *put*, or *join* an electronic

20  tracking device—is a "controlling question of law" for "which there is a substantial ground for

21  difference of opinion."  28 U.S.C. § 1292(b).  CIPA mandates that "[n]o person or entity in this

22  state shall ***use*** an electronic tracking device to determine the location or movement of a person."

23  Cal. Pen. Code § 637.7(a) (emphasis added).  The Dismissal Order, however, held that CIPA

24  requires the "wrongdoer to 'place,' 'put,' or 'join' an electronic tracking device to a moveable

25  thing."  Dismissal Order at 13.  Another court in this district just recently came to a different

26  conclusion—suggesting that CIPA applies, not when an electronic tracking device is placed, put,

27

28  [3] *See, supra*, n.2.

1   or joined to something, but when it is "hidden on" something.  *Heeger*, 2019 WL 7282477, at *3.

2   As a result of this Court's holding, the affirmative conduct element of CIPA is unclear.

3        In enacting CIPA, the California Legislature published a statement of intent declaring, in

4   prescient terms, "that the increasing use of electronic surveillance devices is eroding personal

5   liberty."  Stats. 1998, ch. 449, § 1 (emphasis added).  It expressly "declare[d] that electronic

6   tracking of a person's location without that person's knowledge violates that person's reasonable

7   expectation of privacy."  *Id.*  Accordingly, CIPA provides in pertinent part: "No person or entity

8   in this state shall use an electronic tracking device to determine the location or movement of a

9   person" where "'electronic tracking device' means any device attached to a vehicle or other

10  movable thing that reveals its location or movement by the transmission of electronic signals."

11  Cal. Pen. Code § 637.7(a), (d).  Respectfully, taking Plaintiffs' allegations as true, as a court must

12  on a Rule 12(b)(6) motion, a "fair-minded jurist[] might reach [the] conclusion[]," *Reese*, 643

13  F.3d at 688, that by determining Plaintiffs' locations and movements via the GPS hardware,

14  cellular radio, or WiFi chip attached—literally soldered—to Plaintiffs' mobile devices or via the

15  mobile devices themselves, Google, in the words of CIPA, "use[d] an electronic tracking device

16  to determine the location or movement of a person."  Cal. Pen. Code § 637.7(a).

17               **3.**       **Prompt Review of the CIPA Claim Will Materially Advance the**

18                          **Termination of this Action.**

19       Guidance from the Ninth Circuit is sorely needed as geolocation tracking technology, and

20  increasingly sophisticated means of accessing the information made available by mobile devices,

21  become ever more present in our lives.  *See* Stuart A. Thompson and Charlie Warzel, *Twelve*

22  *Million Phones, One Dataset, Zero Privacy*, New York Times (Dec. 19, 2019), *available at*

23  https://www.nytimes.com/interactive/2019/12/19/opinion/location-tracking-cell-phone.html.   The

24  Court's dismissal of Plaintiffs' CIPA claim leaves multiple questions that can dramatically shape

25  the scope of this putative class action.  These novel and complex questions answered by the

26  Dismissal Order implicate dispositive issues.

27       Prompt appellate review at this time with respect to Plaintiffs' CIPA claim thus would

28  "materially advance the termination of this litigation," 28 U.S.C. § 1292(b), by eliminating the

1   possibility of repeating this litigation after final judgment on Plaintiffs' California Privacy Torts

2   and an appeal.  Interlocutory review would save the parties and the Court from "protracted and

3   expensive" additional rounds of discovery and depositions (first in proportion to the limited

4   allegations permitted by the Dismissal Order, and again in proportion  to allegations about

5   comprehensive tracking and storage), motion practice, including summary judgment, *Daubert*,

6   and class certification motions, and trial.  *See In re Cement Antitrust Litig.*, 673 F.2d at 1026.

B.      **The Dismissal of Plaintiffs' California Privacy Tort Claims Warrants**
7          **Interlocutory Review Under § 1292(b).**[4]

8          1.      **Controlling Questions of Law Are at Issue.**

9

10  In an effort to protect their privacy, Plaintiffs did not reveal their exact movements in the

11  Complaint.  They alleged, however, that Google created a historical compendium documenting,

12  in essence, *all of their movements* from home to work to the doctor's office to the home of a

13  romantic partner and the like.  *See, e.g.*, Compl. ¶ 11.  Plaintiffs contend that a jury could

14  conclude that creating a comprehensive atlas of one's movements and activities, with "deceit and

15  disregard" for Plaintiffs' expressed preference *not* to be tracked via the Location History setting,

16  violates time-honored norms and represents an egregious breach of their reasonable expectations

17  of privacy.  *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125, 150 (3d

18  Cir. 2015) (applying California law).  Nevertheless, this Court held that Plaintiffs' California

19  Privacy Torts fail as a matter of law because Plaintiffs did not allege specific "sensitive or

20  confidential location[s]" where Google tracked them.  Dismissal Order at 18.

21  Like the CIPA claim, dismissal of the California Privacy Tort claims required the Court to

22  resolve questions of first impression about the application of common law principles in the

23  context of modern technology with no dispositive guidance from the legislature or any binding

24  court.  The Order also addressed questions of material fact raised by the pleadings, reaching

25  conclusions adverse to Plaintiffs' allegations, at times, Plaintiffs contend, exceeding the

26
27  [4] The Court correctly recognized that Plaintiffs' claims under the California Constitution and common law tort of Intrusion Upon Seclusion are "effectively identical" and "examine[d] the claims together."  Dismissal Order at 14.  Thus, Plaintiffs analyze the claims together here as
28  well.

MOTION TO CERTIFY ORDER FOR
INTERLOCUTORY APPEAL
CASE NO. 5:18-CV-05062-EJD

appropriate scope of review under Federal Rule of Civil Procedure 12(b).  The legal and factual

questions resolved by the Court include:

1.  Does consent to an app's collection of location information in connection with functions of that app for which such collection is necessary (*e.g.*, momentary use of Google Maps) constitute consent to a defendant's indefinite storage of that location information, which allows a defendant to track one's movements over time?

2.  Do allegations that "Google accesses and stores the precise geolocation information of users who have affirmatively turned off the 'Location History' setting" (Compl. ¶ 5), amount to allegations that, "even with Location History 'off,' Defendant was still tracking [Plaintiffs'] geolocation data"? (Dismissal Order at 16).

3.  Is the allegation that "a user's location is stored and, on information and belief, continues to be stored, every time Google-controlled features on [a user's] mobile device are active" an allegation that Google engaged in "continuous geolocation tracking"?  Dismissal Order at 16 (quoting Compl. ¶ 47).

4.  As a factual matter, is Google capable of continuously tracking mobile device users through its software services, applications, and features?

5.  Does "autonomy privacy," defined by the California Supreme Court as a right to "mak[e] intimate personal decisions . . . without observation [or] intrusion," encompass a right to privacy in one's movements?  Dismissal Order at 15 (citations omitted).

6.  Is the systematic collection and storage of one's precise location, as a matter of law, sufficient to satisfy the "high bar" set for an invasion of privacy claim, or must a plaintiff allege a separate privacy interest in specific locations that were tracked? Dismissal Order at 19.

The Dismissal Order's resolution of these controlling questions played a material role in

the outcome on the Dismissal Order.

## 2.    Substantial Grounds for Difference of Opinion Exist.

Whether Plaintiffs maintain a protectable privacy interest in a catalog of their locations

and movements tracked and recorded *every* time they use a Google service on their mobile

device—or effectively the *sum total* of their movements in modern society—is a "controlling

question of law" for "which there is a substantial ground for difference of opinion."  28 U.S.C.

§ 1292(b).[5]

_____

[5] Contrary to the Rule 12(b)(6) standard, the Court appears to have disregarded Plaintiffs' allegations that Google tracked and recorded locations and movements *regardless* of users' Location History Setting—and regardless of whether they were using Google services.  Compl. ¶¶ 65-68, 75.  Indeed, Plaintiffs showed with images—*i.e.*, maps—how Google tracked movements from one location to another.  *Id.* ¶ 65.  Plaintiffs did not allege that these catalogs of movements are "bits and pieces."  *But see* Dismissal order at 18.

Notably, no other court, let alone an appellate court, has addressed large-scale geolocation data collection in the context of the California Privacy Torts. The court in *Heeger v. Facebook, Inc.*, however, suggested that where the plaintiff alleged Facebook collected approximate location information from non-GPS sources, had the plaintiff pled facts like those at issue here, the California Privacy Torts claims against Facebook would survive a motion to dismiss. 2019 WL 7282477, at *3. Specifically, the court held that "a generalized location, such as one that locates a user no more precisely than within several city blocks, may not implicate much in the way of privacy concerns," but "[h]ighly specific location data, on the other hand, that identifies a user's pinpoint comings and goings would likely present substantially greater concerns." *Id.* The plaintiff's allegation that "Facebook collected his 'private' location data" was insufficient, *id.*, at *4, but the court did not demand, as here, an accounting of the specific "sensitive or confidential location[s]" where the defendant tracked him, Dismissal Order at 18. Instead, the court allowed the plaintiff to amend to "clearly say what level of location data [the defendant] is alleged to have collected," which is exactly what Plaintiffs here have done. *Heeger*, 2019 WL 7282477, at *4. *See, e.g.*, Compl. ¶¶ 65-68 (illustrating pinpoint locations stored by Google with the Location History feature turned off, as well as evidence of statements from Google spokesperson explaining that Google utilizes additional "device level" geolocation features in addition to the Web & App Activity feature); *see also, supra*, n.5.

"Current privacy expectations are developing, to the say least," and thus, in the context of the California Privacy Torts, "privacy interests and accompanying legal standards are best viewed *flexibly* and in context." *McDonald v. Kiloo ApS*, 385 F. Supp. 3d 1022, 1032 (N.D. Cal. 2019) (emphasis added) (quoting *Hill v. NCAA*, 7 Cal. 4th 1, 31 (1994). *See also AsIs Internet Servs. v. Active Response Grp.*, No. 07-211, 2008 WL 4279695, at *3 (N.D. Cal. Sep. 16, 2008) (substantial ground for difference of opinion existed where there was an "intra-district split"). As demonstrated above, "fair-minded jurists might reach contradictory conclusions," *Reese*, 643 F.3d at 688, especially here, where the Court's holding rested on a 15-year-old decision, issued before the availability of mass-market GPS-enabled mobile devices, which concerned publication of a map showing only the "general location of one's residence"—specifically, residences of *criminal*

1     *sex offenders*—rather than anything akin to the systematic tracking of every Google users'

2     movements over time.  *See* Dismissal Order at 18 (quoting *Fredenburg v. City of Fremont*, 14

3     Cal. Rptr. 3d 437, 446 (Ct. App. 2004)).  In sum, appellate review is needed to determine what

4     privacy rights the California Privacy Torts protect as we embark on a new decade.

5

            **3.**     **Prompt Review of the California Privacy Tort Claims Will Materially**
                  **Advance the Termination of this Action.**

6

7           While the Court did grant Plaintiffs leave to amend with respect to their California

8     Privacy Torts, interlocutory review will nonetheless "materially advance the ultimate termination

9     of the litigation."  28 U.S.C. § 1292(b).  The Dismissal Order curtails the scope of the privacy

10     interests and invasions that may be considered for purposes of the California Privacy Torts.

11     Amendments in accordance with the Dismissal Order' limitations on these claims will

12     undoubtedly have meaningful impact on certification of a putative class, and will shift the overall

13     focus of litigation away from Plaintiffs' primary concerns (such as comprehensive tracking),

14     goals, and intents, instead leaving the parties to quibble about, for instance, whether particular

15     allegations meet the Dismissal Order's bar for "continuous" or "comprehensive" location

16     tracking.  Dismissal Order at 16-18.  Resolving the controlling questions of law outlined above

17     with respect to these claims now will make clear to the parties the extent of potential privacy

18     violations at issue, and — whether the determinations in the Dismissal Order are sustained or

19     overruled — will allow the parties to best evaluate the case and chart the most efficient course to

20     a viable termination.

21    **IV.**     **CONCLUSION**

22           Plaintiffs respectfully request the Court certify its December 19, 2019 Order Granting

23     Defendant's Motion to Dismiss (ECF No. 113) for interlocutory appeal pursuant to 28 U.S.C.

24     § 1292(b).

25

26

27

28

1    Dated: January 27, 2020            Respectfully Submitted,

2                                 */s Michael W. Sobol*

3                        Michael W. Sobol (SBN 194857)
                       msobol@lchb.com

4                        Melissa Gardner (SBN 289096)
                       mgardner@lchb.com

5                        Michael Levin-Gesundheit (SBN 292930)
                       mlevin@lchb.com

6                        LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
                       275 Battery Street, 29th Floor

7                        San Francisco, CA  94111-3339
                       Telephone:  415.956.1000

8                        Facsimile:  415.956.1008

9                                 */s Tina Wolfson*

10                       Tina Wolfson (SBN 174806)
                      twolfson@ahdootwolfson.com

11                       Theodore Maya (SBN 223242)
                      tmaya@ahdootwolfson.com

12                       Brad King (SBN 274399)
                      bking@ahdootwolfson.com

13                       AHDOOT & WOLFSON, PC
                      10728 Lindbrook Drive

14                       Los Angeles, CA 90024
                      Telephone: 310.474.9111

15                       Facsimile: 310.474.8585

16                       Nicholas Diamand (*pro hac vice*)
                      ndiamand@lchb.com

17                       LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
                      250 Hudson Street, 8th Floor

18                       New York,  NY 10013
                      Telephone:  212.355.9500

19                       Facsimile:  212.355.9592

20                       *Interim Co-Lead Class Counsel*

21

22

23

24

25

26

27

28

## ATTESTATION OF FILER—LOCAL RULE 5-1(i)(3)

I, Michael Levin-Gesundheit, attest that concurrence in the filing of this document has been obtained from the signatories shown above.  I declare under penalty of perjury that the foregoing is true and correct.

_/s Michael Levin-Gesundheit_

Michael Levin-Gesundheit

1917172.2