**LIEFF CABRASER HEIMANN
  & BERNSTEIN, LLP**
Michael W. Sobol (SBN 194857)
msobol@lchb.com
Melissa Gardner (SBN 289096)
mgardner@lchb.com
Michael Levin-Gesundheit (SBN 292930)
mlevin@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA  94111
Telephone:  415.956.1000
Facsimile:  415.956.1008

**LIEFF CABRASER HEIMANN
  & BERNSTEIN, LLP**
Nicholas Diamand (*pro hac vice*)
ndiamand@lchb.com
250 Hudson Street, 8th Floor
New York, NY  10013
Telephone:  212.355.9500
Facsimile:  212.355.9592

**AHDOOT & WOLFSON, PC**
Tina Wolfson (SBN 174806)
twolfson@ahdootwolfson.com
Theodore Maya (SBN 223242)
tmaya@ahdootwolfson.com
Brad King (SBN 274399)
bking@ahdootwolfson.com
10728 Lindbrook Drive
Los Angeles, CA 90024
Telephone: 310.474.9111
Facsimile: 310.474.8585

*Interim Co-Lead Class Counsel*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| IN RE GOOGLE LOCATION HISTORY LITIGATION | Case No. 5:18-cv-05062-EJD<br><br>**REPLY IN SUPPORT OF MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(B)** |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................................ 1

II. ARGUMENT ...................................................................................................................... 2

    A. Plaintiffs Never Conceded that Google's Tracking of Their Locations Is Not at Issue, or in Any Way Legal or Consensual. ................................................. 2

    B. Plaintiffs Identify Controlling Questions of Law Appropriate for Immediate Appellate Review. .................................................................................. 3

        1. Google Never Addresses Critical Questions Concerning the Applicability of CIPA that Are Appropriate for Interlocutory Review. ............................................................................................................ 3

        2. Google Fails to Address Critical Questions Regarding the Scope of Any Consent by its Users to Tracking Movement Information, which Control Dismissal of Plaintiffs' CIPA and California Privacy Tort Claims. ........................................................................................................ 4

        3. Controlling Questions of Law Regarding Plaintiffs' California Privacy Tort Claims Are Appropriate for Immediate Review. ................... 5

    C. Substantial Ground for Difference of Opinion Exists on the Controlling Questions of Law. ................................................................................................... 7

    D. Interlocutory Review Now, Rather than Forcing Plaintiffs to Proceed to Final Judgment on Severely Hobbled Allegations Before Resolving that Same Appeal, Will Materially Advance the Litigation. ........................................ 9

III. CONCLUSION ................................................................................................................. 10

## I. INTRODUCTION

Google's opposition to the present motion only underscores the propriety of immediate review by the Ninth Circuit of this Court's Dismissal Order,[1] which addressed novel, purely legal questions of statutory construction concerning the California Invasion of Privacy Act, Cal. Penal Code §§ 630 *et seq.* ("CIPA"), critical issues concerning the scope of any consent given by Plaintiffs to Google's location tracking, and the capacity of California's constitutional and common law privacy torts to apply in any meaningful sense to new technologies that threaten the privacy of every person with a smartphone.

Rather than addressing the controlling questions that Plaintiffs specifically identified in their moving papers regarding the dismissal of Plaintiffs' CIPA claim without leave to amend, or those regarding Plaintiffs' California Privacy Tort[2] claims, Google blandly asserts that nobody could reasonably disagree with the Dismissal Order's conclusions and that Plaintiffs have, essentially, conceded that they have no claims under the theories they advance. Of course none of this is accurate and, in truth, it is difficult to see how anyone can assert in good faith that there is no room for disagreement on the issues at stake in this litigation, which concern the application of California's constitutional, statutory, and common law privacy jurisprudence to the quickly evolving and expanding technologies that promise to expose the details of every person's past and present whereabouts to unknown people and entities.

Plaintiffs respectfully submit that these issues meet the standard for interlocutory review under 28 U.S.C. § 1292(b), and request that the Court issue an order certifying its Dismissal Order for such review.

---

[1] December 19, 2019 Order Granting Defendant's Motion to Dismiss, ECF No. 113 (the "Dismissal Order").

[2] Plaintiffs defined "California Privacy Torts" in their moving papers to encompass their claims under the California Constitution and the common law tort of intrusion upon seclusion.

## II. ARGUMENT

### A. Plaintiffs Never Conceded that Google's Tracking of Their Locations Is Not at Issue, or in Any Way Legal or Consensual.

Google bases its argument in opposition to the present motion on an incorrect premise — that Plaintiffs "*conceded* that 'they take issue not with the "determination [of] the[ir] location or movement," but with the *collection* and *storage* of that geolocation data.'" (Opp. at 1 (quoting Dismissal Order at 10) (emphasis in original).) To be clear, nowhere in Plaintiffs' Complaint, in their opposition to Google's motion to dismiss — or anywhere else — have Plaintiffs made any such concession.

Furthermore, as Plaintiffs emphasized in their Memorandum of Points and Authorities supporting the present motion, and as their Complaint makes clear, a purported distinction between "collection," "storage," and "tracking" of location information is not justified and by no means is determinative, as Google suggests. To protect the right of privacy, CIPA prohibits the use of an electronic tracking device "to determine the *location or movement* of a person." CIPA § 637.7(a) (emphasis added). The "collection" and "storage" (over time) of location data is precisely how Google determines users' "movements" from one location to the next. "Tracking" happens when location information — *i.e.*, coordinates on Earth — are "stored" and thus made available for comparison. That is how Google keeps "track"; it tracks an individual's movements between stored coordinates. At bottom, "storing" locations is a necessary predicate to location "tracking." Artificial distinctions among these various terms (collection, storage, and tracking) do not justify a ruling that Google could be liable under CIPA and California Privacy Tort claims if it determined users' locations in real time without consent, but somehow cannot be liable based on allegations that it used electronic tracking devices to actually "track" the users over time, creating an all-encompassing picture — an atlas so to speak — of their movements.

Again, to be clear, Plaintiffs' Complaint is replete with allegations of Google's unauthorized "tracking" of their locations, including through the "collection" and "storage" of such data to which users never consented. (*E.g.*, Compl. ¶ 48 ("'Google continuously tracks the location of its users through a number of different technologies.'").) Although the Dismissal

1    Order inaccurately found that Plaintiffs distinguished "tracking" from "storage," (Dismissal Order
2    at 7-8, characterizing Plaintiffs' Opp. to Motion to Dismiss (MTD) at 3-4), that is not so. At all
3    times, Plaintiffs have challenged the location tracking imposed upon them by Google, including
4    as to any data points made accessible for transitory purposes. *See* Opp. to MTD at 3-4 (citing
5    Superseding Complaint). Plaintiffs never conceded that tracking is not at issue in this case.

### B. Plaintiffs Identify Controlling Questions of Law Appropriate for Immediate Appellate Review.[3]

In their moving papers Plaintiffs identified four controlling questions concerning CIPA's interpretation and scope that are appropriate for resolution via interlocutory review of the Court's dismissal of that claim with prejudice. (Mot. at 3-4.) Similarly, Plaintiffs identified six controlling questions concerning dismissal of their California Privacy Tort claims. (*Id.* at 8.) Google only engages with a few of these questions, and then only does so in oblique fashion, but it never engages at all with several of the thorniest issues Plaintiffs identified.

#### 1. Google Never Addresses Critical Questions Concerning the Applicability of CIPA that Are Appropriate for Interlocutory Review.

Among the controlling questions that Plaintiffs identified concerning CIPA, which Google fails to address, is whether CIPA's prohibitions on determining location *or* movement encompass the nonconsensual *storage* of location data points — a distinction drawn by the Court in the Dismissal Order. (Dismissal Order at 10.) Rather than engage with this question in any meaningful way, Google simply quotes the Dismissal Order and insists that Plaintiffs conceded that their claims concern only storage, and not tracking — a misrepresentation of the record, as discussed in Section II.A, above.

This question of whether there is a meaningful distinction between "storage," "collection," and "tracking" of location information is critically important in light of the Court's conclusions in

---

[3] All parties agree that, under the applicable standard, the Court may certify the Dismissal order for interlocutory appeal under 28 U.S.C. § 1292(b) if it concludes in writing that: (1) a controlling question of law is at issue; (2) a substantial ground for difference of opinion exists; and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation. *Id.*

the Dismissal Order (parroted by Google), that "Plaintiffs' issue is not with Defendant tracking them during application use, rather their issue is with the *storage* of that data," and that "CIPA does not apply to the storage of geolocation data; it only applies to geolocation tracking." (Dismissal Order at 10.) But "storage" — *i.e.*, making note of users' locations at various points in time — is part and parcel of geolocation "tracking," and encompassed within CIPA's prohibition on determining "movement." Indeed, it is impossible to track movement between locations without storing historical locations. Plaintiffs' complaint includes allegations and exhibits demonstrating that, for instance, "Google accesses and stores the precise geolocation information of users who have affirmatively turned off the 'Location History' setting" (Compl. ¶ 5), and that such location information is incredibly detailed (*e.g.*, Compl. Ex. 1 at 4 ("[An] Android phone, with Chrome active in the background, communicated location information to Google 340 times during a 24-hour period, or at an average of 14 data communications per hour.")). Whether Google's "storage" of such location data "determine[s] the location or movement of a person" is a question that goes to the heart of Plaintiffs' claims and is appropriate for interlocutory review. Cal. Penal Code § 637.7(a).

**2. Google Fails to Address Critical Questions Regarding the Scope of Any Consent by its Users to Tracking Movement Information, which Control Dismissal of Plaintiffs' CIPA and California Privacy Tort Claims.**

The Court's reliance, in the Dismissal Order, on the supposed "concession" by Plaintiffs that "'in some applications, contemporaneous use of location information may be appropriate . . . [like] to receive "driving directions" or "showtimes for movies playing near[by],"'" raises a controlling question of law as to whether consent to such transitory use of location information at a given moment — for instance, to facilitate use of Google Maps' driving directions — amounts to consent to indefinite storage of the user's location information amounting to "tracking." (Dismissal Order at 10 (quoting Dkt. 93, Opp. to Mot. to Dismiss at 3.)

The importance of this question is highlighted by Google's erroneous assertion that, by acknowledging that permitting access to real-time location data is appropriate for certain limited functions of Google's apps (*i.e.,* driving directions or local movie showtimes), "Plaintiffs did not

challenge Google's 'determination [of] the[ir] location or movement.'" Opp. at 4. The question of the scope of Plaintiffs' consent thus is a controlling question of law at the heart of the Court's dismissal of both the CIPA and California Privacy Tort Claims. (Dismissal Order at 10, 16.)

As Plaintiffs argued in opposition to Google's motion to dismiss, for consent to be legally binding, Plaintiffs must have consented "to the particular conduct, or to substantially the same conduct" that gives rise to their claims. *Opperman v. Path, Inc.*, 205 F. Supp. 3d 1064, 1072 (N.D. Cal. 2016) (Tigar, J.) (quoting Restatement (Second) of Torts § 892A (1979) §§ 2(b), 4) (emphasis added); *see also id.* at 1081 (distinguishing between consumers' consent to a mobile phone application temporarily accessing their contacts and uploading those contacts to a central database); *In re Google Inc., Gmail Litig.*, No. 13-md-2430, 2013 WL 5423918, at *12 (N.D. Cal. Sept. 26, 2013) (Koh, J.) ("[C]onsent is not an all-or-nothing proposition."). This is a controlling question of law, on which substantial ground for difference of opinion exists, resolution of which by the Ninth Circuit would have a major impact on, and materially advance, this litigation.

### 3. Controlling Questions of Law Regarding Plaintiffs' California Privacy Tort Claims Are Appropriate for Immediate Review.

Google faults Plaintiffs' counsel for not spilling enough ink in opposition to Google's motion to dismiss on the distinction between "autonomy privacy" and "informational privacy" — a distinction on which the Court placed great weight in dismissing Plaintiffs' California Privacy Torts. (Dismissal Order at 17; Opp. at 2.) The amount of space spent arguing the point in a prior brief is irrelevant to the issue presently before the Court: This distinction clearly presents a controlling question of law appropriate for appellate review, now.

As Plaintiffs argued in opposition to Google's motion to dismiss, both of these privacy interests are at stake here. "Informational privacy" is at issue because Plaintiffs allege Google "misuse[d] [their] sensitive and confidential [location] information." *Hill v. NCAA*, 7 Cal. 4th 1, 35 (1994). Likewise, "autonomy privacy" is at issue because Google's comprehensive cataloging of Plaintiffs' movements — and associated life choices — restricts their ability to "mak[e] intimate personal decisions . . . without observation [or] intrusion." *Id.* The Court's determination that it lacked "sufficient cause to extend the bodily autonomy line of cases to data

autonomy" is a pure question of law with far-reaching impact, including its impact on this litigation. (Dismissal Order at 17.)

Likewise, whether the systematic collection and storage (*i.e.*, tracking) of individuals' precise locations is sufficient to meet the "'high bar' set for establishing an invasion of privacy claim" is a controlling question of law appropriate for interlocutory review. (Dismissal Order at 19; Mot. at 8.) As recent reporting in the *New York Times* and other news outlets demonstrates, the issues presented in this action meet the bar: *New York Times* reporters gained access to a trove of "anonymized" location data from a location data company that must be considered a relative lightweight compared to Google, and these reporters were able to tie the cell phone "pings" included in that data to individual members of society with relative ease, generating maps of, essentially, those individuals' entire daily lives. *E.g.*, Stuart A. Thompson and Charlie Warzel, *Where Even the Children Are Being Tracked*, New York Times (Dec. 21, 2019), *available at* https://www.nytimes.com/interactive/2019/12/21/opinion/pasadena-smartphone-spying.html (last visited Feb. 14, 2020).

> This granular location data — the kind that is collected by hundreds of mobile apps and then shared with dozens of location data brokers — may seem like a catalog of the mundane. But the aggregate is closer to total surveillance — an exact record of the rhythms of a living, breathing community.

*Id.*

Indeed, if these reporters (and others) can use such data to track the President, then none of us are exempt from this surveillance. *See* Stuart A. Thompson and Charlie Warzel, *How to Track President Trump*, New York Times (Dec. 20, 2019), *available at* https://www.nytimes.com/interactive/2019/12/20/opinion/location-data-national-security.html (last visited Feb. 14, 2020). Whether claims based on this kind of data collection state valid causes of action is a controlling (and tremendously important) question of law. Plaintiffs' purported failure to plead "what location information Google actually collected from them" — something Google is uniquely positioned to know — misses the point entirely. (Opp. at 8.)

### C. Substantial Ground for Difference of Opinion Exists on the Controlling Questions of Law.

Google first chides Plaintiffs for arguing that interlocutory appeal is appropriate because the Dismissal Order addressed "novel" questions of law, and then chides Plaintiffs for failing to cite authority conflicting with the Court's ruling in the Dismissal Order on these questions. (Opp. at 6.) Obviously, one shouldn't expect much published authority concerning novel questions of law. "[C]ourts traditionally will find that a substantial ground for difference of opinion exists where . . . novel and difficult questions of first impression are presented, as is the case here." *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011) (citations and internal quotation marks omitted). "[I]nterlocutory appellate jurisdiction does not turn on a prior court's having reached a conclusion adverse to that from which appellants seek relief." *Id.*[4]

As Plaintiffs correctly pointed out in the Motion, not one appellate opinion — from either the California Court of Appeal or the Ninth Circuit — addresses the following question that Plaintiffs now seek to bring before the Ninth Circuit: Whether the GPS hardware, cellular radio, or WiFi chips attached to Plaintiffs' mobile devices, or the mobile devices themselves constitute "electronic tracking devices" under CIPA.

All that Google does is cite the same three district court opinions that Plaintiffs themselves addressed in the Motion: Magistrate Judge Corley's orders in *Moreno v. S.F. Bay Area Rapid Transit Dist.*, No. 17-2911, 2017 WL 6387764 (N.D. Cal. Dec. 14, 2017) (Corley, M.J.) and *Gonzales v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078 (N.D. Cal. Apr. 18, 2018) (Corley, M.J.), and Judge Donato's order in *Heeger v. Facebook, Inc.*, No. 18-6399, 2019 WL 7282477 (N.D. Cal. Dec. 27, 2019) (Donato, J.). Plaintiffs' discussion of these cases in their moving papers puts the lie to Google's contention that Plaintiffs somehow "selectively ignored" these decisions. (Opp. at 7.) And *Heeger* — a case that did not involve precise location information at

---

[4] The *Reese* court continued: "A substantial ground for difference of opinion exists where reasonable jurists might disagree on an issue's resolution, not merely where they have already disagreed. Stated another way, when novel legal issues are presented, on which fair-minded jurists might reach contradictory conclusions, a novel issue may be certified for interlocutory appeal without first awaiting development of contradictory precedent." *Reese*, 643 F.3d at 688.

1   all — recognized that "[i]t may be possible for [plaintiff] to provide additional facts" supporting
2   the contention that the Facebook app at issue in that case constituted an electronic tracking device
3   under CIPA and, accordingly, granted leave to amend that claim, unlike Court here.  *Id.* at *3.

4         As Plaintiffs asserted in the Motion, they disagree with the conclusions reached in these
5   opinions, but none of these opinions go as far as the Dismissal Order in concluding that Plaintiffs
6   cannot state a claim under CIPA for the constant, non-consensual tracking alleged in the
7   Complaint, or that Plaintiffs' detailed allegations fail even to state a claim under the California
8   Privacy Torts advanced by Plaintiffs.  *Id.*  And none of these district court orders supports the
9   proposition that there is no ground for difference of opinion among "fair-minded jurists" on these
10  novel issues.  *Reese*, 643 F.3d at 688.

11        Google's reliance on *Couch v. Telescope Inc.*, 611 F.3d 629 (9th Cir. 2010), is misplaced,
12  given that the district court in that case certified its order for interlocutory review "in the interests
13  of comity," after finding that no substantial ground for difference of opinion on the question in
14  that case (whether defendant's reality show giveaways constituted illegal lotteries under
15  California law).  *Id.* at 631-32.  Nobody is arguing that "the interests of comity" support
16  § 1292(b) certification here, and Google's reliance on *Couch* to argue that such certification
17  might somehow conflict with later state law rulings on the issue are misplaced, given that CAFA
18  ensures that any class action such as this one will be in federal, not state, court.  28 U.S.C.
19  § 1332(d).

20        Likewise, Google's invocation of *Hanni v. Am. Airlines, Inc.*, No. 08-00732, 2008 WL
21  5000237 (N.D. Cal. Nov. 21, 2008) (Wilken, J.), does not support denial of the present motion.
22  In that case, plaintiff sought interlocutory review of the court's dismissal of her claims for false
23  imprisonment, intentional infliction of emotion distress, and fraud arising from a delayed flight.
24  *Id.* at *1, 6.  Such a scenario hardly equates with the present action, which presents far-reaching
25  privacy concerns affecting every person with a smartphone.

26        Here, with respect to both CIPA and the California Privacy Torts, the Court's Dismissal
27  Order addresses the critically important intersection between quickly evolving location tracking
28  technologies and privacy jurisprudence, which is the only check on such invasive technologies

1 available to ordinary citizens whose every move is tracked and stored without their consent. It
2 cannot reasonably be disputed that these are questions on which reasonable minds may — and
3 do — differ, nor can there be any real question that appellate review will dramatically alter
4 Plaintiffs' legal footing in this case (either establishing that this Court got it right in the Dismissal
5 Order or that Plaintiffs have much broader and more far-reaching claims than this Court has
6 allowed at present) and, thus, will materially advance the ultimate termination of the litigation.

7        The only way that Google can argue with a straight face that no substantial ground for
8 difference of opinion exists with respect to the questions of law that Plaintiffs identified in their
9 moving papers is to ignore the questions Plaintiffs actually posed, and falsely assert that Plaintiffs
10 conceded they have no claims. This Court should not take the same approach, nor should the
11 Court see certification for interlocutory review as an implicit reversal of its own Dismissal Order.
12 Rather, certification is appropriate because reasonable jurists could reach differing conclusions on
13 these novel and weighty issues, and resolution by the Ninth Circuit now — one way or the
14 other — will speed this litigation to conclusion by providing certainty concerning the controlling
15 legal questions Plaintiffs identified.

**D.  Interlocutory Review Now, Rather than Forcing Plaintiffs to Proceed to Final Judgment on Severely Hobbled Allegations Before Resolving that Same Appeal, Will Materially Advance the Litigation.**

18        Google argues Plaintiffs fail to identify any controlling questions of law that might
19 "'materially affect the outcome of the litigation in the district court'" (Opp. at 4 (citation
20 omitted)), but fails to contend with the central fact that, if Plaintiffs prevail on appeal, they will
21 have a CIPA claim that they otherwise will not have until a final judgment is entered and they
22 then get to proceed with the presently urged appeal. And, as Plaintiffs explained in their moving
23 papers, the Court's dismissal of their California Privacy Tort claims, while made with leave to
24 amend, so severely hobbles those claims that the very nature of Plaintiffs' case is fundamentally
25 different than it might be after appellate review. Again, the certainty that interlocutory review
26 would provide concerning the answer to the controlling questions of law identified by Plaintiffs
27 will, undoubtedly, materially affect the outcome in this Court, and speed up conclusion of the
28 litigation as a whole.

1   In other words, the scenario presented here is nothing like that which was presented to this
2   Court in *Silicon Valley Self Direct, LLC v. Paychex, Inc.*, No. 15-01055, 2015 WL 5012820, at *3
3   (N.D. Cal. Aug. 24, 2015) (Davila, J.), which Google cites in support of its opposition. In that
4   case, "[r]egardless of how Paychex's question [might be] answered, the 'outcome' [would be] the
5   same as far as the district court is concerned: th[e] case [would] remain[] stayed" pending
6   arbitration. *Id.*

7   Here, by contrast, if Plaintiffs succeed on appeal, they will have a statutory claim allowing
8   statutory damages (Cal. Penal Code § 637.2) and vastly strengthened California Privacy Tort
9   claims. If the present motion is denied, by contrast, Plaintiffs will be forced to continue through
10  final judgment on weakened allegations and claims, and only then allowed to bring these issues to
11  the Ninth Circuit, at which time the entire case will come back to this Court if Plaintiffs succeed.
12  Thus, allowing an interlocutory appeal here "would avoid protracted and expensive litigation"
13  that is promised by proceeding through final judgment here in the present circumstances, and only
14  then allowing the appeal Plaintiffs seek to pursue now. *Id.* at *2 (quoting *In re Cement Antitrust*
15  *Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1981)).

## III.   CONCLUSION

17  The Court's Dismissal Order decided novel and pivotal issues that have profound
18  consequences for the privacy of nearly every person who uses a smartphone. For all the reasons
19  described above and in the moving papers, Plaintiffs respectfully urge the Court to certify that
20  Dimissal Order for interlocutory appeal under 28 U.S.C. § 1292(b).

- 10 -

REPLY ISO MOT. TO CERTIFY ORDER FOR
INTERLOCUTORY APPEAL
CASE NO. 5:18-CV-05062-EJD

| | | |
|---|---|---|
| 1 | Dated: February 18, 2020 | Respectfully Submitted, |

*/s Tina Wolfson*

Tina Wolfson (SBN 174806)
twolfson@ahdootwolfson.com
Theodore Maya (SBN 223242)
tmaya@ahdootwolfson.com
Brad King (SBN 274399)
bking@ahdootwolfson.com
AHDOOT & WOLFSON, PC
10728 Lindbrook Drive
Los Angeles, CA 90024
Telephone: 310.474.9111
Facsimile: 310.474.8585

*/s Michael W. Sobol*

Michael W. Sobol (SBN 194857)
msobol@lchb.com
Melissa Gardner (SBN 289096)
mgardner@lchb.com
Michael Levin-Gesundheit (SBN 292930)
mlevin@lchb.com
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  415.956.1000
Facsimile:  415.956.1008

Nicholas Diamand (*pro hac vice*)
ndiamand@lchb.com
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013
Telephone:  212.355.9500
Facsimile:  212.355.9592

*Interim Co-Lead Class Counsel*

**ATTESTATION OF FILER—LOCAL RULE 5-1(i)(3)**

I, Michael Levin-Gesundheit, attest that concurrence in the filing of this document has been obtained from the signatories shown above. I declare under penalty of perjury that the foregoing is true and correct.

  */s Michael Levin-Gesundheit*

Michael Levin-Gesundheit