**LIEFF CABRASER HEIMANN**
  **& BERNSTEIN, LLP**
Michael W. Sobol (SBN 194857)
msobol@lchb.com
Melissa Gardner (SBN 289096)
mgardner@lchb.com
Michael Levin-Gesundheit (SBN 292930)
mlevin@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA  94111
Telephone:  415.956.1000
Facsimile:  415.956.1008

**LIEFF CABRASER HEIMANN**
  **& BERNSTEIN, LLP**
Nicholas Diamand (*pro hac vice*)
ndiamand@lchb.com
250 Hudson Street, 8th Floor
New York, NY  10013
Telephone:  212.355.9500
Facsimile:  212.355.9592

*Interim Co-Lead Class Counsel*

**AHDOOT & WOLFSON, PC**
Tina Wolfson (SBN 174806)
twolfson@ahdootwolfson.com
Theodore Maya (SBN 223242)
tmaya@ahdootwolfson.com
Brad King (SBN 274399)
bking@ahdootwolfson.com
10728 Lindbrook Drive
Los Angeles, CA 90024
Telephone: 310.474.9111
Facsimile: 310.474.8585

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| IN RE GOOGLE LOCATION HISTORY LITIGATION | Case No. 5:18-cv-05062-EJD<br><br>**NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION OF DISMISSAL ORDER; MEMORANDUM OF POINTS AND AUTHORITIES** |

1

## TABLE OF CONTENTS

2

**Page**

3

4

MEMORANDUM OF POINTS AND AUTHORITIES .................................................................. 1

I.      INTRODUCTION ................................................................................................. 1

II.     PROCEDURAL BACKGROUND......................................................................... 2

III.    LEGAL STANDARD.......................................................................................... 3

IV.     ARGUMENT ...................................................................................................... 3

A.      The Ninth Circuit's pivotal *Facebook* decision is instructive on all aspects of this Court's Dismissal Order.................................................................................... 4

      1.      *Facebook* instructs that there is a privacy interest in collected cumulative data. ........................................................................ 5

      2.      *Facebook* instructs that privacy statutes should be construed in accordance with their paramount objectives. ........................... 6

B.      The Dismissal Order cannot be Squared with *Facebook* or the Requirements of Federal Rule 12(b). ................................................................................. 7

      1.      The Court should reconsider dismissal of Plaintiffs' common law and constitutional privacy claims........................................... 7

      2.      The Court should reconsider dismissal of Plaintiffs' CIPA claims. ...... 11

V.      CONCLUSION ................................................................................................. 14

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abada v. Charles Schwab & Co., Inc.,*
 127 F. Supp. 2d 1101 (S.D. Cal. 2000) ................................................................................... 3

*Carpenter v. United States,*
 138 S. Ct. 2206 (2018) .............................................................................................. 6, 11, 13

*City of L.A. v. Santa Monica Baykeeper,*
 254 F.3d 882 (9th Cir. 2001)................................................................................................. 3

*City of San Jose v. Monsanto Co.,*
 No. 15-03178, 2017 WL 6039670 (N.D. Cal. Dec. 6, 2017).................................................. 3

*Fredenburg v. City of Fremont,*
 119 Cal. App. 4th 408 (2004) ............................................................................................. 13

*Hill v. NCAA,*
 7 Cal. 4th 1 (1994) ............................................................................................................... 6

*In re Facebook, Inc. Internet Tracking Litig.,*
 263 F. Supp. 3d 836 (N.D. Cal. 2017) .................................................................................. 5

*In re Facebook, Inc. Internet Tracking Litigation,*
 956 F.3d 589 (9th Cir. 2020)...................................................................................... passim

*In re Intuitive Surgical Sec. Litig.,*
 No. 13-01920, 2014 WL 7146215 (N.D. Cal. Dec. 15, 2014)................................................ 3

*Melancon v. Texaco, Inc.,*
 659 F.2d 551 (5th Cir.1981)................................................................................................. 3

**Statutes**

28 U.S.C. § 1292(b) ................................................................................................................. 2

Cal. Pen. Code § 637.7.............................................................................................. 11, 12, 13

Cal. Penal Code §§ 630 *et seq*............................................................................................. passim

**Rules**

Civ. L.R. 7-9 ................................................................................................................ i, 3, 6, 11

Fed. R. Civ. P. 12(b) .......................................................................................................... 1, 8, 12

**Other Authorities**

Civ. L.R. 7-9(c) ....................................................................................................................... 6

S.B. 1667, Stats. 1998, ch. 449 ............................................................................................. 11

Stuart A. Thompson and Charlie Warzel, *Twelve Million Phones, One Dataset, Zero Privacy*,
 New York Times (Dec. 19, 2019), *available at*
 https://www.nytimes.com/interactive/2019/12/19/opinion/location-tracking-cell-phone.html... 10

1

## <u>NOTICE OF MOTION AND MOTION</u>

2

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3

**PLEASE TAKE NOTICE** that Plaintiffs hereby move under Civil Local Rule 7-9(a) for

4

leave to file a motion for reconsideration of the Court's December 19, 2019 Order Granting

5

Defendant's Motion to Dismiss (ECF No. 113).

6

This motion is based on this Notice of Motion and Motion; the accompanying

7

Memorandum of Points and Authorities; all papers and records on file in this case; and such other

8

matters as the Court may consider.  Should the Court grant Plaintiffs' Motion for Leave to file a

9

Motion for Reconsideration, Plaintiffs respectfully request that the Court deem the accompanying

10

Memorandum of Points and Authorities in support of the Motion for Leave as Plaintiffs'

11

Memorandum of Points and Authorities in support of reconsideration.

12

13

Dated: May 21, 2020                     Respectfully Submitted,

14

_____/s Michael W. Sobol_____

15

Michael W. Sobol (SBN 194857)
msobol@lchb.com

16

Melissa Gardner (SBN 289096)
mgardner@lchb.com

17

Michael Levin-Gesundheit (SBN 292930)
mlevin@lchb.com

18

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor

19

San Francisco, CA  94111-3339
Telephone:  415.956.1000

20

Facsimile:  415.956.1008

21

_____/s Tina Wolfson_____

22

Tina Wolfson (SBN 174806)
twolfson@ahdootwolfson.com

23

Theodore Maya (SBN 223242)
tmaya@ahdootwolfson.com

24

Brad King (SBN 274399)
bking@ahdootwolfson.com

25

AHDOOT & WOLFSON, PC
10728 Lindbrook Drive

26

Los Angeles, CA 90024
Telephone: 310.474.9111

27

Facsimile: 310.474.8585

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Nicholas Diamand (admitted *pro hac vice*)
ndiamand@lchb.com
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York,  NY 10013
Telephone:  212.355.9500
Facsimile:  212.355.9592

*Interim Co-Lead Class Counsel*

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.    INTRODUCTION**

3

Plaintiffs respectfully request leave pursuant to Civil Local Rule 7-9(b) to file a motion

4

for reconsideration of the Court's Order Granting Defendant's Motion to Dismiss (ECF No. 113,

5

"Dismissal Order").

6

The Ninth Circuit's April 9, 2020, opinion in *In re Facebook, Inc. Internet Tracking*

7

*Litigation*, 956 F.3d 589 (9th Cir. 2020) articulated standards for the legal sufficiency of the same

8

claims at issue in Plaintiffs' Consolidated Amended Class Action Complaint (ECF No. 80,

9

"Complaint"), which, Plaintiffs respectfully submit, require the Court to reconsider its Dismissal

10

Order.  *Facebook* clarifies that class action claims of mass digital surveillance are adequately

11

pleaded upon allegations that a defendant, without authorization, collected "broad swaths of

12

personal information," such that the mass collection "itself is sensitive," and regardless of

13

whether singular bits of that information would, in isolation, independently give rise to a

14

reasonable expectation of privacy.  *Facebook* also stands for the proposition that in interpreting

15

privacy statutes, courts should liberally construe those laws in light of their goal to protect

16

individuals from surveillance, rather than to protect individuals only from certain technologies

17

existing at the time of statutory adoption.

18

The Dismissal Order inferred limitations on Google's collection of location data by failing

19

to accept Plaintiffs' allegations regarding the ubiquity of Google apps and how they are used,

20

leading the Court incorrectly to conclude that Google captured only "bits and pieces" of

21

information insufficient to implicate a cognizable privacy interest under California law and that

22

Plaintiffs did not allege that Google tracks consumers' "movement" so as to support the claim

23

under the California Invasion of Privacy Act, Cal. Penal Code §§ 630 *et seq.* ("CIPA").  The

24

intervening authority embodied by *Facebook* requires the Court to consider anew the sufficiency

25

of the allegations in the Complaint with respect to all claims.  Plaintiffs respectfully submit that

26

the allegations of the Complaint describe the same kind of mass surveillance, achieved through

27

unauthorized acquisition of "broad swaths" of private data, which the Ninth Circuit ruled satisfies

28

the pleading requirements of Rule 12(b)(6) (particularly when appropriately making all

1    reasonable inferences in favor of Plaintiffs as the non-moving party).

2         Plaintiffs respectfully request that the Court reconsider the dismissal of all three claims

3    pleaded in the Complaint, and enter an order denying Google's Motion to Dismiss, or

4    alternatively, enter an order granting leave to amend *all* claims in the Complaint to address the

5    concerns animating *Facebook*.

6    **II.    PROCEDURAL BACKGROUND**

7         Plaintiffs filed the Complaint (ECF No. 80) on April 29, 2019.  The Court heard argument

8    on Google's Motion to Dismiss the Complaint (ECF Nos. 87, 93, 98, 119) on November 21,

9    2019.  In the Dismissal Order dated December 19, 2019 (ECF No. 113), the Court dismissed all

10   three of Plaintiffs' claims based upon Google's tracking the movements of its users without their

11   consent, terminating claims brought by five named Plaintiffs to enforce consumer privacy rights.

12   The Court dismissed Plaintiffs' claims under the California Constitution and common law tort of

13   intrusion upon seclusion, and granted leave to amend those claims "to cure the deficiencies

14   addressed in [the Dismissal] Order," including to allege "specific places [Plaintiffs] went"

15   because, as the Court concluded, "comprehensive data collection is not at issue here."  Dismissal

16   Order at 18-19.  The Court dismissed Plaintiffs' CIPA claims with prejudice, holding that as a

17   matter of law, CIPA does not apply to the "storage" of geolocation data, and only applies where

18   the defendant attaches tracking devices to automobiles or comparable motorized machines.  *Id.* at

19   10-13, 19.

20        On January 27, 2020, Plaintiffs requested that the Court certify the Dismissal Order for

21   interlocutory review under 28 U.S.C. § 1292(b) (ECF Nos. 120-122).  On April 9, 2020, the

22   Ninth Circuit Court of Appeals issued its opinion in *In re Facebook, Inc. Internet Tracking*

23   *Litigation*, 956 F.3d 589 (9th Cir. 2020), which Plaintiffs submitted as supplemental authority on

24   April 13, 2020 (ECF No. 125).  On April 15, 2020, the Court denied Plaintiffs' request for

25   § 1292(b) certification (ECF No. 126).  On April 16, 2020, the Ninth Circuit granted a 30-day

26   extension of time, until May 26, 2020, for Facebook to file a petition for panel rehearing or

27   rehearing *en banc* (*In re Facebook*, No. 17-17486, ECF No. 87).  On April 24, 2020 the Court

28   approved a stipulation by the parties to postpone the filing of a further amended complaint until

1   30 days after a ruling on this request for leave to file a motion for reconsideration, or if leave is

2   granted, until 30 days after a ruling on Plaintiffs' motion for reconsideration (ECF No. 128).

3   **III.    LEGAL STANDARD**

4         Local Rule 7-9(b)(2)-(3) authorizes a party to seek leave to file a motion for

5   reconsideration based, *inter alia*, upon "a change of law occurring after the time of such order" or

6   "[a] manifest failure by the Court to consider material facts or dispositive legal arguments which

7   were presented to the Court before such interlocutory order."

8         While Local Rule 7-9(b) delineates limited circumstances for a party to seek leave to file a

9   motion for reconsideration, "[a] district court may reconsider and reverse a previous interlocutory

10  decision for any reason it deems sufficient, even in the absence of new evidence or an intervening

11  change in or clarification of controlling law."  *In re Intuitive Surgical Sec. Litig.*, No. 13-01920,

12  2014 WL 7146215, at *2 (N.D. Cal. Dec. 15, 2014) (quoting *Abada v. Charles Schwab & Co.,*

13  *Inc.,* 127 F. Supp. 2d 1101, 1102 (S.D. Cal. 2000)).  As this Court noted in its order denying

14  Plaintiffs' request for interlocutory review of the Dismissal Order, "[t]o the extent Plaintiffs

15  disagree with the Court's application of the law to the facts, the proper vehicle is a motion for

16  reconsideration."  ECF No. 126, at 5, citing *City of San Jose v. Monsanto Co.*, No. 15-03178,

17  2017 WL 6039670, at *1 (N.D. Cal. Dec. 6, 2017).  The Court's reference to that avenue of relief

18  is consistent with the Federal Rules of Civil Procedure, because any order "that adjudicates fewer

19  than all the claims," as is the case for the Court's Dismissal Order, "does not end the action" and

20  thus "may be revised at any time before the entry of a judgment."  *See also City of L.A. v. Santa*

21  *Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001) ("As long as a district court has jurisdiction

22  over the case, then it possesses the inherent procedural power to reconsider . . . or modify an

23  interlocutory order for cause seen by it to be sufficient." (quoting *Melancon v. Texaco, Inc.*, 659

24  F.2d 551, 553 (5th Cir.1981))).

25  **IV.    ARGUMENT**

26        The Ninth Circuit's intervening controlling authority in *Facebook* compels this Court to

27  reconsider the Dismissal Order for each claim alleged in the Complaint.  First, *Facebook*

28  mandates that, drawing appropriate inferences from the allegations and evidence presented on the

1    scope and nature of Google's data collection, Plaintiffs' intrusion upon seclusion and California

2    constitutional invasion of privacy claims are properly pled.  Second, *Facebook* confirms that the

3    Court too narrowly interpreted the scope and purpose of the California Invasion of Privacy Act

4    ("CIPA") when it cabined the prohibitions against person-tracking to the automobile tracking

5    technology existing at the time of the statute's adoption rather than, as the Ninth Circuit in

6    *Facebook* directs, adopting a statutory construction that recognizes the California Legislature's

7    intent to protect persons from surveillance technologies as they evolve over time.

8         Even if the Court is unpersuaded that *Facebook* warrants reconsideration and reversal of

9    the Dismissal Order, Plaintiffs respectfully submit that reconsideration is justified on the grounds

10   that the Court: (a) did not consider the full complement of facts alleged in the Complaint; and

11   (b) did not draw all reasonable inferences based on those allegations in Plaintiffs' favor, as

12   required when deciding a Rule 12(b) motion.  Specifically, Plaintiffs' allegations detail how,

13   without consent, Google stored vast amounts of detail about Plaintiffs' geolocations giving rise to

14   common law and constitutional privacy harms, and that by using that stored data, Google

15   determined Plaintiffs' "movements" in violation of CIPA.

16       **A.**    **The Ninth Circuit's pivotal *Facebook* decision is instructive on all aspects of**
         **this Court's Dismissal Order.**
17

18        The Ninth Circuit now has clarified the breadth of privacy interests implicated by

19   Plaintiffs' claims.  As explained below, *Facebook* holds that where, as here, plaintiffs allege that

20   a defendant, without consent, collects broad swaths of the plaintiffs' personal information—more

21   than enough to determine their movements over time and create profiles of their habits and

22   activities—the plaintiffs are not required to identify specific bits of that trove of data that are

23   especially sensitive to properly plead intrusion upon seclusion and California constitutional

24   invasion of privacy claims.  *Facebook* also is instructive with respect to Plaintiffs' statutory claim

25   for violation of CIPA, because it underscores the centrality of the Legislature's paramount

26   objectives in applying privacy statutes to modern day technology.

27

28

1.   ***Facebook* instructs that there is a privacy interest in collected cumulative data.**

The *Facebook* plaintiffs alleged that Facebook tracked a large portion of their online browsing histories, without consent, when they logged out of Facebook and visited websites that had installed "plug-ins, such as Facebook's 'Like' button." *In re Facebook*, 956 F.3d 589, 595-97. Because an estimated 7 million websites incorporate Facebook social plug ins, the plaintiffs alleged this conduct garnered Facebook "a comprehensive browsing history of an individual, no matter how sensitive the websites visited," and allowed Facebook to "compile a 'vast repository of personal data.'" *Id.* at 603. Like Plaintiffs here, the *Facebook* plaintiffs sought to vindicate their privacy rights by pleading claims for intrusion upon seclusion and for violation of California's constitutional safeguards. *Id.* at 601. Like Google, Facebook was accused of significant, rather than continuous, collection of private information, which when accumulated enabled the defendant to profile and track consumers' activities. *Id.* This Court dismissed the *Facebook* plaintiffs' privacy claims with prejudice, reasoning that the plaintiffs had "not established that they have a reasonable expectation of privacy in the URLs of the pages they visit" because such collection is "part of routine internet functionality and can be easily[1] blocked." *In re Facebook, Inc. Internet Tracking Litig.*, 263 F. Supp. 3d 836, 846 (N.D. Cal. 2017).

The Ninth Circuit reversed. *In re Facebook*, 956 F.3d at 596. In rejecting Facebook's argument that plaintiffs had to allege "specific, sensitive information that Facebook collected," rather than "more general allegation[s] that Facebook acquired 'an enormous amount of individualized data,'" the Ninth Circuit held that "[t]he question is *not* necessarily whether [the] [p]laintiffs maintained a reasonable expectation of privacy in the information in and of itself." *Id.* at 603 (emphasis added). Instead, courts should "examine whether the data"—*i.e.*, the *cumulative*

---

[1] Here, on the other hand, Google purposefully made it difficult to stop its surveillance. As the Court found, Plaintiffs alleged that Google "told users they could 'turn off Location History at any time' and that, with Location History off, 'the places you go are no longer stored,'" while "[i]n reality . . . even when 'Location History' was 'off,' [Google] captured and kept a record of Plaintiffs' location information." Dismissal Order at 2.

1  collection of information—"itself is sensitive *and* whether the manner it was collected—after

2  users had logged out—violates social norms." *Id.* (emphasis in original).  The court remarked

3  that recent precedents, including *Carpenter v. United States*, 138 S. Ct. 2206 (2018) (also invoked

4  by Plaintiffs here[2]) "stand for the proposition that individuals maintain the expectation that

5  entities will not be able to collect *such broad swaths* of personal information absent consent." *Id.*

6  at 604 n.7 (emphasis added).

7       Ultimately, the Ninth Circuit concluded that the case should not have been dismissed on

8  the pleadings because "there remain[ed] material questions of fact as to whether a reasonable

9  individual would find" his or her collected web browsing history, given the profiling and online

10  location tracking such collection allows, "sensitive and confidential" under California law.  *Id.* at

11  603 (citing *Hill v. NCAA*, 7 Cal. 4th 1, 36 (1994)).  *Facebook* thus instructs that there is no "need

12  to identify specific, sensitive information" collected to properly state a claim under California law

13  for intrusion upon seclusion or constitutional invasion of privacy, so long as plaintiffs allege that,

14  as here, the defendant collected a wide swatch of personal information without consent (here,

15  after turning off Location History).  *In re Facebook*, 956 F.3d at 603.  The Ninth Circuit made

16  clear that a court should evaluate whether the total universe of information collected qualifies as

17  "sensitive" and "whether the manner it was collected . . . violates social norms."  *Id.*

18       **2.   *Facebook* instructs that privacy statutes should be construed in**
            **accordance with their paramount objectives.**

19

20       *Facebook* counsels in favor of broadly interpreting privacy statutes such as CIPA.[3]

21  Indeed, the Ninth Circuit indicated in connection with an analogous privacy statute (the

22  Electronic Communications Privacy Act, "ECPA") that, in the context of evolving technology,

23

24  _____

   [2] *See* Pls.' Opp'n to Google's Mot. to Dismiss at 15, ECF No. 93; Compl. ¶¶ 2, 82, 84, 124, 132,
25  139.

   [3] *Facebook* is "a change in law occurring after" the Court's Dismissal Order.  L.R. 7-9(b)(2).
26  Plaintiffs are mindful that under Local Rule 7-9(c), they should not repeat previous arguments.
   Therefore, Plaintiffs do not restate their arguments regarding important terms in CIPA's statutory
27  text—namely, "use," "attach," "electronic tracking device," and "other moveable thing."  *See,*
   *e.g.*, Pls.' Opp'n to Google's Mot. to Dismiss at 7-13; Pls.' Mot. to Certify Order for
28  Interlocutory Appeal at 4-6, ECF No. 120.

1    courts should understand and interpret privacy statutes liberally in recognition of their purpose.

2    Even though the ECPA was written long before the advent of internet browsing history tracking

3    and did not specifically address the twenty-first century technology at issue in the case, the Ninth

4    Circuit held that the "paramount objective" of the statute controlled.  Facebook's alleged

5    collection of data through its social plug ins was not subject to dismissal, because that conduct

6    violated the spirit of the statute, which is "to protect effectively the privacy of electronic

7    communications."  *In re Facebook*, 956 F.3d at 608.  The Ninth Circuit articulates an elegant

8    logic: Courts should understand privacy statutes as serving the goal of protecting privacy.  These

9    statutes do not merely protect individuals from certain technologies existing at the time of

10   adoption and later outmoded.  Rather, so long as legislative intent makes clear what aspect of

11   privacy is protected from surveillance, these statutes serve as indelible prohibitions on that

12   surveillance, no matter the technology of the day.

13         **B.**    **The Dismissal Order cannot be Squared with *Facebook* or the Requirements**

14                 **of Federal Rule 12(b).**

15         Contrary to the instruction from *Facebook* and the standards set forth by Federal Rule of

16   Civil Procedure 12(b), the Dismissal Order drew inferences unfavorable to Plaintiffs from the

17   Complaint, overlooked or misconstrued crucial allegations, and narrowly interpreted the scope of

18   the common law and statutory privacy interests at stake.

19         **1.**    **The Court should reconsider dismissal of Plaintiffs' common law and**

20                 **constitutional privacy claims.**

21         The Dismissal Order acknowledged many of the salient allegations that bring this case

22   within the ambit of *Facebook*'s guidance, but drew inferences contrary to those allegations in

23   dismissing Plaintiffs' common law and constitutional privacy claims.  At the outset, this Court

24   correctly concluded that Plaintiffs pled "sufficient facts to show they did not consent to the

25   storage of their geolocation information."  Dismissal Order at 8.  This Court also agreed that

26   Plaintiffs plausibly alleged that Google collected and stored "specific movements or locations"

27   from Plaintiffs when they used Google services on their mobile devices.  *Id.* at 18.  However, the

28   Court found that the Complaint failed to plead "sufficient facts to establish a legally protected

1   privacy interest" because the Court inferred that Google's data collection was limited to "bits and

2   pieces." *Id.* at 18-19.  This finding falls short of the standard, reaffirmed by *Facebook*, that "[a]t

3   the pleading stage, all allegations of material fact are taken as true and construed in the light most

4   favorable to the non-moving party."  *In re Facebook*, 956 F.3d at 601; Fed. R. Civ. Proc. 12(b).

5        The Dismissal Order improperly inferred limitations on Google's data collection, and

6   failed to consider Plaintiffs' allegations regarding the ubiquity of Google apps and how they are

7   used.  It also lacked the benefit of the Ninth Circuit's recent guidance in *Facebook* pertinent to

8   the non-consensual nature of Google's data collection.  Specifically, the Dismissal Order held that

9   Plaintiffs' intrusion upon seclusion and constitutional claims failed because "comprehensive data

10  collection is not at issue," as Google "only tracked and collected data during use of Google

11  services . . . [so its] 'profile' of a user is only as specific as their use of Google services."

12  Dismissal Order at 17-19.

13       Contrary to Plaintiffs' allegations, this holding assumed that use of Google apps must

14  result in relatively few location data points.  The Court, rather than construing the allegations in a

15  light most favorable to Plaintiffs as the non-moving party, drew a contrary inference that

16  Google's data collection was limited to "bits and pieces," such that Google had not intruded upon

17  a legally protected privacy interest at all.  Dismissal Order at 18-19.  The Court granted leave to

18  amend these claims, but only within the confines of the Dismissal Order's findings, such that any

19  privacy interests would turn on whether the so-called "bits and pieces" of geolocation data which

20  Google collected concerned "a sensitive or confidential location."  Dismissal Order at 18.

21       Plaintiffs' Complaint in fact alleged expansive tracking akin to that which the *Facebook*

22  court held constitutes a breach of established privacy rights.  The Complaint averred well-

23  supported allegations that Google's data collection far exceeds the boundaries inferred by the

24  Court, but rather is nearly constant.  As alleged, Google mobile applications—*e.g.*, Google Maps,

25  Google Search, Google Hangouts, and "camera" apps—are ubiquitous in contemporary life, and

26  constantly gathering location data on their users.  For instance, Plaintiffs allege:

27      •   That location data is stored each time an app is active, and at least some applications

28          collect location data via "automatic" updates.  Complaint (ECF No. 80, "Compl."),

MOTION FOR LEAVE TO FILE MOTION FOR
RECONSIDERATION
CASE NO. 5:18-CV-05062-EJD

¶¶ 47, 85.

- That "[a]ccording to a study conducted by Vanderbilt University, a dormant, stationary Android phone, with [Google] Chrome active in the background, communicated location information to Google 340 times during a 24-hour period, or an average of 14 data communications per hour."  Compl. Ex. 1, ECF 80-1 at 11.

- That Google mobile apps, which collect data both actively and passively, such as when running in the background, have "tremendous reach."  Compl. Ex. 14, ECF 80-1 at 252.

- That, when using an Android device, "even if a user does not interact with any key Google applications"—*i.e.* no Google Search, no YouTube, no Gmail, and no Google Maps—"Google is still able to collect considerable information through its advertiser and publisher products," and that "location information constituted 35% of all the data samples sent to Google . . . driven largely by data activity from Google's publisher and advertiser products (e.g. Google Analytics, DoubleClick, AdWords)."  *Id.* at 253-54.

- That users make more than 11 billion Google Search queries per month in the United States.  *Id.* at 276.

Plaintiffs did not consent to Google's surveillance of their locations and movements, which likely involves collection of location data points far exceeding those collected from the 7 million third-party webpages at issue in *Facebook*.  Indeed, this Court already determined that Plaintiffs properly alleged, at a minimum, that Google collected location information contemporaneous with Plaintiffs' every use of Google services on their mobile phones throughout the day, week, and year *without* Plaintiffs' consent.  Dismissal Order at 8.

The Complaint robustly alleges that Google's unauthorized storage of geolocation data provided Google a virtual atlas of users' movements from point to point throughout the day. Below is an image drawn from Plaintiffs' complaint showing an investigator's movements, over just **two days** in Manhattan and northern New Jersey, as Google cataloged them, despite an attempt to prevent such tracking by turning Location History to the "off" position:

1

2

3

4

5

6

7

8

9



10   Compl. ¶ 65.  *See also* Stuart A. Thompson and Charlie Warzel, *Twelve Million Phones, One*

11   *Dataset, Zero Privacy*, New York Times (Dec. 19, 2019), *available at*

12   https://www.nytimes.com/interactive/2019/12/19/opinion/location-tracking-cell-phone.html.

13          This far-ranging geolocation information is exactly the sort that the Ninth Circuit held can

14   be compiled into "highly personalized profiles" based on "histories and habits," which

15   "prevent[ed] [the Ninth Circuit] from concluding that the [p]laintiffs have no reasonable

16   expectation of privacy."  *In re Facebook*, 956 F.3d at 604.  Thus, in the words of the Ninth

17   Circuit, these are "broad swaths of personal information" that are inherently sensitive.  *Id.* at 604

18   n.7.  Plaintiffs similarly alleged that, with the compendium of location and movement information

19   Google collects without user consent, Google creates "an intimate, and individually-identifying,

20   profile of [each Google user]'s life."  Compl. ¶ 54.

21          Had this Court drawn inferences favorable to Plaintiffs from the Complaint, with the

22   benefit of the Ninth Circuit's guidance in *Facebook*, it would have found a privacy interest

23   alleged.  Following the Ninth Circuit's reasoning, the cumulative collection of one's movements

24   *is by itself* sensitive—indeed, likely more sensitive than any single, one-time pinpoint on a map,

25   no matter how sensitive that one specific location.  In light of Plaintiffs' other allegations

26   concerning Google's ubiquity and the collection of data automatically and in the background,

27   Plaintiffs respectfully submit that it is clear that the "[c]ollect[ion] [of] such broad swaths of

28   personal information absent consent" is conduct supporting these claims as a matter of law.  *In re*

1  *Facebook*, 956 F.3d at 604 n.7.

2       Therefore, Plaintiffs respectfully request that this Court reconsider its Dismissal Order and

3  deny Google's motion to dismiss Plaintiffs' intrusion upon seclusion and constitutional invasion

4  of privacy claims.

5              **2.        The Court should reconsider dismissal of Plaintiffs' CIPA claims.**

6       *Facebook* instructs that the Dismissal Order's evaluation of Plaintiffs' CIPA claims

7  should focus not on technology existing and discussed at the time of CIPA's passage, but rather

8  on the paramount objectives of the statute—in this case, to provide protections and redress for

9  non-consensual geolocation tracking enabled by developing technology.  Respectfully, the

10 Dismissal Order misapplied the facts to the law in concluding that "Plaintiffs' CIPA claim fails as

11 a matter of law" because Plaintiffs "take issue not with the 'determination [of] the[ir] location or

12 movement,' but with the *collection* and *storage* of that geolocation data."  *See* Civ. L.R. 7-

13 9(b)(3); Dismissal Order at 10 (quoting Cal. Penal Code § 637.7(b)).

14      With the benefit of the Ninth Circuit's instruction, this Court should reconsider whether

15 CIPA not only protects against surveillance, as it held, by "a device on the automobile of an

16 individual," as existing at the time of CIPA's adoption in 1998 (Dismissal Order at 12), but also

17 from the electronic tracking devices of today:  mobile devices and the GPS hardware, cellular

18 radios, and WiFi chips, which are soldered to those mobile devices.  After all, when the

19 California Legislature adopted the CIPA provision at issue, its statement of intent declared, in

20 prescient terms, "that the increasing use of electronic devices is eroding personal liberty."

21 S.B. 1667, Stats. 1998, ch. 449, § 1; *cf. Carpenter v. United States*, 138 S. Ct. 2206, 2219, 2223

22 (2018) (reasoning, in light of "the seismic shifts in digital technology that made possible the

23 tracking of not only Carpenter's location but also everyone else's [through their cell phones], not

24 for a short period but for years and years," that "the Court is obligated . . .  to ensure that the

25 'progress of science' does not erode Fourth Amendment protections").

26      Applying *Facebook*'s reasoning, CIPA's paramount objective is to protect people, not

27 automobiles.  Indeed, CIPA expressly "declare[d] that electronic tracking of a person's location

28

without that person's knowledge violates that person's reasonable expectation of privacy." *Id.*[4]
CIPA does not limit itself to the automobile tracker of 1998 but provides, in pertinent part, that
"[n]o person or entity in this state shall use an electronic tracking device to determine the location
or movement of a **person**" where "'electronic tracking device' means any device attached to a
vehicle or *other movable thing* that reveals its location or movement by the transmission of
electronic signals." Cal. Pen. Code § 637.7(a), (d)  (emphasis added).

The Court also misapplied the alleged facts to the law and failed to consider Plaintiffs'
legal arguments. A fundamental basis for the Court's dismissal of the CIPA claim was the
perception that Plaintiffs failed to challenge Google's determination of "location or movement,"
the conduct that CIPA prohibits.  Dismissal Order at 10.  This perception erroneously expanded
Plaintiffs' acknowledgement that some (not all) instances of Google's determination of "location"
were known to them, such as when Plaintiffs requested that their location be shown during active
use of Google Maps, into a false concession that Plaintiffs did not challenge any "data tracking"
by Google.  *Id*.  The Dismissal Order's inference that Plaintiffs' limited acknowledgement
regarding transitory use of location data by certain apps encompassed all locations determined
through any means by Google, as well as movement determination, was improper under Federal
Rule 12(b)(6).

Plaintiffs nowhere conceded that Google's determination of Plaintiffs' *movements*, *i.e.* the
changes in their locations over time, was known to them or authorized.  *See* Tr. of Nov. 21, 2019
Dismissal Hearing, at 19 (Argument of Ps' Counsel: "There's two parts to CIPA. . . .  Now, it's
true that a transitory use will determine your location. But a transitory use will not determine your
movement, and particularly not a movement over time."); Compl. ¶ 65 (showing "a visual map of
the movements" of an investigator as drawn from Google's collection of geolocation information
captured with Location History off); ¶ 79 ("Plaintiffs' and Class members' expectations that those
settings and permissions would be heeded and effective, and that they could travel without

---

[4] This legislative statement also indicates that, contrary to the Dismissal Order's conclusion,
under California law, individuals have a legally protectable privacy interest in their location
information generally.  *Cf.* Dismissal Order at 19.

1    creating a record of their *movements*, are eminently reasonable.") (emphasis added); ¶ 105

2    ("Google's . . . tracking of users' . . . *movement* history was surreptitious and purposely

3    deceptive.") (emphasis added); ¶ 120 ("Google's acts and practices complained of herein,

4    engaged in for purposes of storing and tracking indefinitely the location information of mobile

5    device users and thus determining their *movement* over time . . . violated and continues to violate

6    Cal. Pen. Code § 637.7.") (emphasis added); ¶ 125 ("Google engaged in such . . . tracking of each

7    Class member's *movement* after each Class member had expressly communicated to Google that

8    Google did not have their consent to do so[.]").[5]

9       In the context of privacy rights, the "storage" of geolocation information and "tracking"

10    are conceptually linked.  To "track" a person's location contemplates a reference point showing

11    their prior location.  "Storage" (over time) of location data is what makes it possible to determine

12    (or track) "movements" from one location to the next.  "Tracking" happens when location

13    information—*i.e.*, coordinates on Earth—are "stored" and thus made available for comparison.

14    That is how Google keeps "track"; it tracks an individual's movements between stored

15    coordinates.  At bottom, "storing" locations is the means of determining a person's movement.

16    Had Google determined only Plaintiffs' "location" at a particular time and only to the extent

17    Plaintiffs allowed and reasonably expected, rather than storing those voluminous data points

18    without notice or consent, Google would not have been able to profile its users or analyze their

19    location data in the invasive way it did.  Dismissal of Plaintiffs' CIPA claim with prejudice

20    should be reconsidered to fully address the argument and facts supporting Plaintiffs' claims based

21    upon Google's tracking of their movements.

22       In sum, the Ninth Circuit's *Facebook* decision demonstrates that this Court took too

23    narrow a view of the protections CIPA offers as we embark on this third decade since CIPA's

24    adoption.  The inferences drawn by the Dismissal Order regarding the nature of Plaintiffs'

25    Complaint ignored factual allegations and argument presented to the Court prior to its order.

26

27    [5] *See also*, *e.g.*, Pls.' Opp'n to MTD at 15-16, quoting *Carpenter*, 138 S. Ct. at 2217, 2216 (taking issue with "the ability to chronicle a person's past movements through the record of his cell phone signals"); *id.* at 16 (distinguishing *Fredenburg v. City of Fremont*, 119 Cal. App. 4th 408,

28    423 (2004) on grounds that it did not concern "the systematic tracking of movements over time").

1    Therefore, Plaintiffs respectfully request that the Court reconsider its Dismissal Order and deny

2    Google's motion to dismiss Plaintiffs' CIPA claim.  To the extent, however, that the Court is

3    inclined to deny reconsideration with respect to this claim, Plaintiffs respectfully request that the

4    Court reconsider its dismissal of the CIPA claim with prejudice and grant Plaintiffs leave to

5    amend their CIPA claim to further tailor their allegations to the Ninth Circuit's guidance in

6    *Facebook*.

7    **V.      CONCLUSION**

8         For the reasons stated, Plaintiffs respectfully request that the Court grant Plaintiffs leave

9    to file a motion for reconsideration, reconsider its Dismissal Order, and deny Google's Motion to

10   Dismiss in its entirety.  To the extent the Court does not intend to reconsider its dismissal of

11   Plaintiffs' CIPA claim, Plaintiffs respectfully request leave to amend.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR LEAVE TO FILE MOTION FOR
RECONSIDERATION
CASE NO. 5:18-CV-05062-EJD

1    Dated: May 21, 2020            Respectfully Submitted,

2

                     */s Michael W. Sobol*

3                 Michael W. Sobol (SBN 194857)
                msobol@lchb.com

4                 Melissa Gardner (SBN 289096)
                mgardner@lchb.com

5                 Michael Levin-Gesundheit (SBN 292930)
                mlevin@lchb.com

6                 LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
                275 Battery Street, 29th Floor

7                 San Francisco, CA  94111-3339
                Telephone:  415.956.1000

8                 Facsimile:  415.956.1008

9                      */s Tina Wolfson*

10               Tina Wolfson (SBN 174806)
              twolfson@ahdootwolfson.com

11               Theodore Maya (SBN 223242)
              tmaya@ahdootwolfson.com

12               Brad King (SBN 274399)
              bking@ahdootwolfson.com

13               AHDOOT & WOLFSON, PC
              10728 Lindbrook Drive

14               Los Angeles, CA 90024
              Telephone: 310.474.9111

15               Facsimile: 310.474.8585

16               Nicholas Diamand (*pro hac vice*)
              ndiamand@lchb.com

17               LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
              250 Hudson Street, 8th Floor

18               New York,  NY 10013
              Telephone:  212.355.9500

19               Facsimile:  212.355.9592

20               *Interim Co-Lead Class Counsel*

21

22

23

24

25

26

27

28

MOTION FOR LEAVE TO FILE MOTION FOR
RECONSIDERATION
CASE NO. 5:18-CV-05062-EJD

1

## **ATTESTATION OF FILER—LOCAL RULE 5-1(i)(3)**

2      I, Michael Levin-Gesundheit, attest that concurrence in the filing of this document has

3  been obtained from the signatories shown above.  I declare under penalty of perjury that the

4  foregoing is true and correct.

5

6            */s Michael Levin-Gesundheit*

7      Michael Levin-Gesundheit

8
1993895.2

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 16 -