KEKER, VAN NEST & PETERS LLP
BENJAMIN BERKOWITZ - # 244441
bberkowitz@keker.com
THOMAS E. GORMAN - # 279409
tgorman@keker.com
CHRISTOPHER S. SUN - # 308945
csun@keker.com
CHRISTINA LEE - # 314339
clee@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:     415 391 5400
Facsimile:     415 397 7188

Attorneys for Defendant GOOGLE LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE: GOOGLE LOCATION HISTORY LITIGATION | Case No. 5:18-cv-05062-EJD |
| | **DEFENDANT GOOGLE LLC'S MOTION TO DISMISS PLAINTIFFS' AMENDED CONSOLIDATED CLASS ACTION COMPLAINT** |
| | Date:       November 5, 2020 <br> Time:       9:00 a.m. <br> Dept:       Courtroom 4 - 5th Floor <br> Judge:      Hon. Edward J. Davila |
| | Date Filed: November 2, 2018 |
| | Trial Date:  None Set |

DEFENDANT GOOGLE LLC'S MOTION TO DISMISS PLAINTIFFS'
AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
Case No. 5:18-cv-05062-EJD

1388807

# **TABLE OF CONTENTS**

**Page**

NOTICE OF MOTION AND MOTION ...................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................2

I.      INTRODUCTION ......................................................................................................2

II.     BACKGROUND AND PLAINTIFFS' ALLEGATIONS ..................................3

        A.      Plaintiffs' allegations about Location History and Web & App Activity...............3

        B.      Plaintiffs' failed attempts to state a viable claim. ..................................5

        C.      Plaintiffs' failed efforts to avoid amending their Consolidated Complaint............6

        D.      The new allegations in Plaintiffs' Amended Consolidated Complaint...................7

III.    QUESTION PRESENTED........................................................................................9

IV.     LEGAL STANDARD................................................................................................9

V.      ARGUMENT ............................................................................................................10

        A.      Plaintiffs fail to state a claim under the California Constitution. .........................10

                1.      Plaintiffs fail to plead a legally protected privacy interest. ....................10

                2.      Plaintiffs fail to plead facts establishing their privacy was breached
                        in light of Google's disclosures. ..............................................................15

                3.      Plaintiffs fail to plead an egregious breach of social norms. ...................16

        B.      Plaintiffs fail to state a common-law intrusion-upon-seclusion claim..................18

        C.      Plaintiffs fail to state an unjust enrichment claim..................................................19

                1.      Plaintiffs have contracts with Google that bar a quasi-contract
                        claim...........................................................................................................20

                2.      Plaintiffs' quasi-contract claim fails for the same reasons as their
                        privacy claims. ..........................................................................................22

        D.      Plaintiffs fail to state a breach-of-contract claim...................................................23

VI.     CONCLUSION........................................................................................................24

1388807

1

# <u>TABLE OF AUTHORITIES</u>

2

<u>Page(s)</u>

3

**Cases**

4

*AdTrader, Inc. v. Google LLC*,
   No. 17-CV-07082-BLF, 2018 WL 3428525 (N.D. Cal. July 13, 2018) ................................21

5

6

*Appling v. Wachovia Mortg., FSB*,
   745 F. Supp. 2d 961 (N.D. Cal. 2010) ...................................................................................9

7

*In re Arris Cable Modem Consumer Litig.*,
   No. 17-CV-01834-LHK, 2018 WL 288085 (N.D. Cal. Jan. 4, 2018) ....................................23

8

9

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)................................................................................................................9

10

*Astiana v. Hain Celestial Grp., Inc.*,
   783 F.3d 753 (9th Cir. 2015) ................................................................................................19

11

12

*Azadpour v. Sun Microsys., Inc.*,
   No. 06-3272-MJJ, 2007 WL 2141079 (N.D. Cal. July 23, 2007) .........................................13

13

14

*Balistreri v. Pacifica Police Dept.*,
   901 F.2d 696 (9th Cir. 1990) .................................................................................................9

15

16

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)................................................................................................................9

17

*Bradley v. Chiron Corp.*,
   136 F.3d 1317 (9th Cir. 1998) ..............................................................................................13

18

19

*Cahen v. Toyota Motor Corporation*,
   147 F. Supp. 3d 955 (N.D. Cal. 2015) .................................................................................11

20

21

*Ewert v. eBay, Inc.*,
   602 F. App'x 357 (9th Cir. 2015) ..........................................................................................23

22

*In re Facebook, Inc. Internet Tracking Litigation*,
   956 F.3d 589 (9th Cir. 2020) ...........................................................................................7, 24

23

24

*Folgelstrom v. Lamps Plus*,
   195 Cal. App. 4th 986 (2011) ...............................................................................................17

25

*Gerlinger v. Amazon.Com, Inc.*,
   311 F. Supp. 2d 838 (N.D. Cal. 2004) ..................................................................................22

26

27

*In re Google Assistant Privacy Litig.*,
   No. 19-CV-04286-BLF, 2020 WL 2219022 (N.D. Cal. May 6, 2020) ......................11, 12, 23

28

ii

DEFENDANT GOOGLE LLC'S MOTION TO DISMISS PLAINTIFFS'
AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
Case No. 5:18-cv-05062-EJD

1388807

*In re Google, Inc. Privacy Policy Litig.*,
    58 F. Supp. 3d 968 (N.D. Cal. 2014) .........................................................................17, 18, 19

*Heeger v. Facebook, Inc.*,
    No. 18-CV-06399-JD, 2019 WL 7282477 (N.D. Cal. Dec. 27, 2019) ...................................11

*Hernandez v. Hillsides, Inc.*,
    47 Cal. 4th 272 (2009) .........................................................................................................18

*Hill v. Nat'l Collegiate Athletic Ass'n*,
    7 Cal. 4th 1 (1994) .........................................................................................................10, 16

*Hill v. Roll Int'l Corp.*,
    195 Cal. App. 4th 1295 (2011) ............................................................................................22

*In re iPhone App. Litig.*,
    844 F. Supp. 2d 1040 (N.D. Cal. 2012) .................................................................2, 16, 17, 19

*Jordan v. Wonderful Citrus Packing LLC*,
    No. 1-18-CV-00401-A WI-SAB, 2018 WL 4350080 (E.D. Cal. Sept. 10, 2018)..................19

*Letizia v. Facebook Inc.*,
    267 F. Supp. 3d 1235 (N.D. Cal. 2017) ......................................................................19, 20, 21

*Loder v. City of Glendale*,
    14 Cal. 4th 846 (1997) ..........................................................................................................10

*Low v. LinkedIn*,
    900 F. Supp. 2d 1010 (N.D. Cal. 2012) ................................................................................18

*Manigault-Johnson v. Google, LLC*,
    No. 2:18-cv-1032-BHH, 2019 WL 3006646 (D.S.C. Mar. 31, 2019) ...................................19

*Med. Lab. Mgmt. Consultants v. Am. Broad. Cos., Inc.*,
    306 F.3d 806 (9th Cir. 2002) ................................................................................................18

*Moreno v. San Francisco Bay Area Rapid Transit District*,
    No. 17-CV-02911-JSC, 2017 WL 6387764 (N.D. Cal. Dec. 14, 2017) ................................17

*O'Connor v. Uber Techs., Inc.*,
    58 F. Supp. 3d 989 (N.D. Cal. 2014) ...............................................................................20, 21

*Rojas-Lozano v. Google, Inc.*,
    159 F. Supp. 3d 1101 (N.D. Cal. 2016) ................................................................................22

*Sloan v. Gen. Motors LLC*,
    No. 16-CV-07244-EMC, 2020 WL 1955643 (N.D. Cal. Apr. 23, 2020) ...............................20

*St. Claire v. Gilead Scis., Inc.* (*In re Gilead Scis. Sec. Litig.*),
    536 F.3d 1049 (9th Cir. 2008) ................................................................................................9

1388807

*Swearingen v. Healthy Beverage, LLC,*
    No. 13-CV-04385-EMC, 2017 WL 1650552 (N.D. Cal. May 2, 2017) ................................ 23

*In re Yahoo Mail Litig.,*
    7 F. Supp. 3d 1016 (N.D. Cal. 2014) ............................................................................... *passim*

**Statutes**

Cal. Pen. Code §§ 630 *et seq.* ....................................................................................................... 6

**Other Authorities**

Federal Rule of Civil Procedure Rule 8(e)(2) ............................................................................. 22

Federal Rule of Civil Procedure 12(b)(6) ............................................................................. 9, 12

Restatement (Second) of Torts § 652B (1977) ........................................................................... 18

Schwarzer, et al., *California Practice Guide: Federal Civil Procedure Before Trial*
    § 9:223.5 (2006) ....................................................................................................................... 13

iv

1388807

1

## NOTICE OF MOTION AND MOTION

2          PLEASE TAKE NOTICE that on November 5, 2020 at 9:00 a.m., defendant Google LLC

3    ("Defendant" or "Google") will, and hereby does, move the Court, located at 280 South 1st

4    Street, San Jose, California, for an order dismissing Plaintiffs Napoleon Patacsil, Michael Childs,

5    Najat Oshana, Nurudaaym Mahon, and Noe Gamboa's (collectively "Plaintiffs") Amended

6    Consolidated Class Action Complaint ("Amended Complaint") in its entirety and with prejudice.

7          Google brings this motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure on

8    the ground that Plaintiffs' Amended Complaint fails to state a claim. This motion is based on the

9    following Memorandum of Points and Authorities, on all pleadings and papers on file or to be

10   filed in the above-entitled action, on the arguments of counsel, and on any other matters that may

11   properly come before the Court for its consideration.

12
      Dated: August 31, 2020                         KEKER, VAN NEST & PETERS LLP
13

14                                          By:    /s/ Benjamin Berkowitz

15                                                 BENJAMIN BERKOWITZ
                                                   THOMAS E. GORMAN
16                                                 CHRISTOPHER S. SUN
                                                   CHRISTINA LEE
17
                                                   Attorneys for Defendant GOOGLE LLC
18

19

20

21

22

23

24

25

26

27

28

DEFENDANT GOOGLE LLC'S MOTION TO DISMISS PLAINTIFFS'
AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
Case No. 5:18-cv-05062-EJD

1388807

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION[1]

For over two years, Plaintiffs have tried to identify and plead a viable cause of action. Their Amended Consolidated Complaint is the eleventh complaint that Plaintiffs have collectively filed. But it fares no better than their previous attempts and should be dismissed with prejudice.

Plaintiffs have failed to cure the deficiencies that led the Court to dismiss their common-law and constitutional privacy claims in its prior dismissal order. Once again, they have alleged no facts establishing that Google inappropriately collected any specific location information from them. *See In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1038 (N.D. Cal. 2014). Indeed, Plaintiffs have made no material changes to their vague, boilerplate allegations regarding the location information allegedly collected. Because Plaintiffs have failed to remedy the defects identified in the Court's prior dismissal order, their privacy claims should be dismissed with prejudice.

Plaintiffs' privacy claims also fail because Plaintiffs have again failed to plead how their privacy was breached given that Google disclosed its use of location information. Moreover, Plaintiffs have once more failed to plead an "egregious breach of social norms," as their own allegations and exhibits confirm that Google's alleged collection and use of location data is consistent with "routine commercial behavior." *In re iPhone App. Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012).

Plaintiffs' new cause of action for unjust enrichment (or, in the alternative, breach of contract) lacks any legal or factual basis. Plaintiffs cannot plead a cause of action for unjust enrichment where, as here, there is an enforceable contract—Google's Terms of Service—that covers the same subject matter as their unjust enrichment claim. Moreover, even in the absence of a written contract, their unjust enrichment claim would fail for the same reasons Plaintiffs' privacy claims fail. Plaintiffs also cannot pivot to a breach-of-contract claim because they have identified no provision in the Terms of Service that Google has breached.

---

[1] Throughout this brief, unless otherwise stated, emphases were added to quotations and internal punctuation, alternations, and citations were omitted from them.

1388807

1   As set forth more fully below, Plaintiffs' Amended Complaint fails as a matter of law and

2   cannot be cured by further amendment. It should be dismissed in its entirety and with prejudice.

3   **II.      BACKGROUND AND PLAINTIFFS' ALLEGATIONS**

4       **A.      Plaintiffs' allegations about Location History and Web & App Activity.**

5       Plaintiffs have submitted yet another amended complaint, but their material factual

6   allegations remain unchanged. Plaintiffs allege that Google falsely "assur[ed] users that certain

7   device settings can prevent Google from tracking their movements and storing a record of their

8   geolocations." Am. Compl. (hereafter, "AC") ¶ 1. As the Court previously concluded, Plaintiffs'

9   allegations are, at their core, about two of Google's account-level settings: Location History and

10  Web & App Activity.[2] Dkt. 113 (Order Granting Defendant's Motion to Dismiss, hereafter,

11  "Order"). Plaintiffs allege that they "turned the 'Location History' setting to 'off'" because they

12  believed that this would "prevent Google from storing a record" of their geolocation information,

13  but that Google "continued to store" their geolocation information through the Web & App

14  Activity setting. AC ¶¶ 11-12, 16-17, 22, 25, 28; *see also id.* ¶¶ 76-78, 83-84.

15      The Location History feature allows Google to provide users with "better results and

16  recommendations." Dkt. 131-3 (Ex. 11) at 100; *id.* (Ex. 36) at 354; *see also id.* (Ex. 31) at 288.[3]

17  "For example, you can see recommendations based on places you've visited with signed-in

18  devices, or traffic predictions for your daily commute." Dkt. 131-3 (Ex. 11) at 100; *id.* (Ex. 36) at

19  354; *see also id.* (Ex. 31) at 288. The Google support page for Location History explains that

20  when the account-level Location History setting is turned on (it is off by default),[4] and you have

21  turned on Location Reporting on your device, "you may see a number of benefits across Google

22  products and services, including personalized maps, recommendations based on places you've

23  visited, help finding your phone, real-time traffic updates about your commute, and more useful

24

25  [2] *See, e.g.*, AC ¶¶ 48, 50, 53, 75-79, 82-84, 98 & n.62.

26  [3] Citations to the exhibits attached to Plaintiffs' Amended Complaint use ECF pagination.

27  [4] "Location History is turned **off by default** for your Google Account and can only be turned on

28  if you opt in." *See* Dkt. 131-3 (Ex. 31) at 288.

3

DEFENDANT GOOGLE LLC's MOTION TO DISMISS PLAINTIFFS'
AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
Case No. 5:18-cv-05062-EJD

1388807

ads." Dkt. 131-3 (Ex. 31) at 288. If Location History is turned on (*and* Location Reporting is turned on, *and* the mobile device is logged-in to Google), then Location History "saves where you go with every mobile device." *Id.* Plaintiffs assert that they "turned the 'Location History' setting to 'off.'" AC ¶¶ 11-12, 16-17, 22, 25, 28. When users turn off Location History in their Google accounts, a "popup" informs users that even after the Location History setting is disabled, "**some location data may be saved as part of your activity on other Google services, like Search and Maps**." Dkt. 131-3 (Ex. 30) at 286; *see also id.* (Ex. 2) at 4.

The Web & App Activity setting is separate from the Location History setting and addresses a narrower set of location information. Order at 2. When Web & App Activity is on, Google saves certain information about a user's "activity on Google sites and apps to give you faster searches, better recommendations, and more personalized experiences in Maps, Search, and other Google services." Dkt. 131-3 (Ex. 33) at 341. This allows Google to provide more useful and customized results like local movie times, driving directions, and restaurants offering takeout or delivery nearby. As Plaintiffs' Amended Complaint and exhibits demonstrate, Google tells its users that Web & App Activity saves some location information. *Id.* (Ex. 35) at 352; *see also* AC ¶ 84. The Google support page for Web & App Activity discloses: "**When Web & App Activity is on, Google saves information like: . . . Your location.**" Dkt. 131-3 (Ex. 35) at 352; *see also* Dkts. 99-2, 99-3, 99-4 (previous versions of the Web & App Activity support page that also disclosed that Google collects location information through that setting). Plaintiffs can turn off Web & App Activity at any time. Dkt. 131-3 (Exs. 28, 35). They can also delete any of the "searches and browsing activity" that may have been collected through Web & App Activity. *Id.* (Ex. 35).

As the Court previously recognized, Web & App Activity does not continuously store information about a user's location everywhere they go with their mobile device. *See* Order at 1-2, 15-16, 18. Instead, as the name suggests, Web & App Activity saves certain location information only when users interact with Google services and generate web and app activity— for example, when "Google-controlled features" like "Google Maps" and "weather apps" are active, and when "searches [are] made with the device's mobile browser." AC ¶ 49; *see also* Dkt.

4
DEFENDANT GOOGLE LLC'S MOTION TO DISMISS PLAINTIFFS'
AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
Case No. 5:18-cv-05062-EJD

1388807

131-3 (Ex. 33) at 341 (Web & App Activity "[s]aves your activity on Google sites and apps

. . . ."); *id.* (Ex. 35) at 351 ("If Web & App Activity is turned on, your searches and activity from

other Google services are saved to your Google Account, so you may get better search results and

suggestions."). This is a far more limited set of location data than what is allegedly collected

through Location History. *Compare* AC ¶ 59 (alleging that Location History can be used to

estimate "*how* an individual is moving"—*i.e.*, by vehicle or by walking—at a given location) *with*

AC ¶ 49 (describing Web & App Activity as collecting location information only when users

affirmatively activate Google-controlled features, like Google Maps, weather apps, and searches).

The Court recognized this distinction in its prior order, writing, "Notably, Web & App Activity is

triggered only when one uses Google-controlled features, like the Google Maps app or conducts

searches using Google's web-search service." Order at 2. Thus, Web & App Activity does not

involve "general geolocation tracking," but a much "narrower" collection of location information.

*Id.*

Plaintiffs do not dispute that they consented to some amount of collection and use of

location information by Google. As the Court previously found, "Plaintiffs acknowledge that in

some applications, contemporaneous use of location information may be appropriate—for

example, to receive 'driving directions' or 'showtimes for movies playing near[by].'" Order at 16

(citing Plaintiffs' Opposition to Motion to Dismiss, Dkt. 93, at 3). "Indeed, consent to geolocation

tracking is corollary to the use of a Google service, like Google Maps." *Id.*

**B.      Plaintiffs' failed attempts to state a viable claim.**

Over the past two years, Plaintiffs have filed two consolidated class action complaints,

four amended complaints, and eleven complaints overall. *See* Dkts. 1, 47, 80, 131; Case No. 18-

cv-06685 (Dkt.1); Case No. 18-cv-06652 (Dkt. 1); Case No. 18-cv-06416 (Dkt. 1); Case No. 18-

cv-06262 (Dkts. 1, 29), Case No. 18-cv-5288 (Dkts. 1, 28). They have yet to state a claim upon

which relief can be granted.

Plaintiffs filed their first Consolidated Class Action Complaint on April 29, 2019. Dkt. 80.

That complaint, like the current Amended Complaint, alleged that Google improperly collected

and stored its users' geolocation data while those users were utilizing Google applications. *See*

5

DEFENDANT GOOGLE LLC'S MOTION TO DISMISS PLAINTIFFS'
AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
Case No. 5:18-cv-05062-EJD

1388807

1    *generally id.* The Complaint alleged causes of action for violation of the California Invasion of

2    Privacy Act ("CIPA"), Cal. Pen. Code §§ 630 *et seq.*, intrusion upon seclusion, and violation of

3    California's constitutional right to privacy. *Id.* ¶¶ 118-42.

4          In an order dated December 19, 2019, the Court dismissed Plaintiffs' CIPA claim without

5    leave to amend. Order at 10-14. The Court also dismissed Plaintiffs' common-law and

6    constitutional privacy claims because Plaintiffs "d[id] not plead sufficient facts to establish a

7    legally protected privacy interest." *Id.* at 15:15-19:11. In reaching that conclusion, the Court

8    focused on a fundamental disconnect in Plaintiffs' privacy allegations. While Plaintiffs "argued

9    that Google . . . tracked [them] *continuously*" in "every . . . aspect of their lives," the facts alleged

10   in the Consolidated Complaint did not support that conclusion. *Id.* at 15:24-25. Instead, the Court

11   observed, Plaintiffs' allegations concerned Google's alleged storage of location information at

12   discrete times—when Plaintiffs were using Google's services. *Id.* at 16:2-4, 16:24-25. "Thus,

13   continuous geolocation tracking [wa]s not at issue." *Id.* at 16:2-10.

14         Because continuous location tracking wasn't at issue, Plaintiffs' mere allegations that

15   Google had possibly collected *some* unspecified location data was insufficient to state a claim for

16   either a common-law or constitutional privacy tort. In order to state a viable privacy claim,

17   Plaintiffs needed to allege *specific* facts establishing that "sensitive and confidential" location

18   data was actually collected. *Id.* at 18:16-17.

19         But Plaintiffs' Consolidated Complaint failed to do so. Because the Consolidated

20   Complaint did not identify any specific location data that Google allegedly collected from

21   Plaintiffs or explain why that data was sensitive, the Court concluded it was "entirely speculative

22   that geolocation data was ever collected from a Plaintiff while at a sensitive and confidential

23   location." *Id.* at 18:19-20. For that reason, the Consolidated Complaint's allegations failed to

24   satisfy the "'high bar' set for establishing an invasion of privacy claim," and the Court dismissed

25   Plaintiffs' constitutional and common-law privacy claims with leave to amend. *Id.* 19:8-14.

26         **C.    Plaintiffs' failed efforts to avoid amending their Consolidated Complaint.**

27         Following the Court's Order, Plaintiffs first asked this Court to certify its Order for

28   interlocutory appellate review, arguing that if they were required to file an amended complaint,

6

1388807

"any amended complaint" would be "drastically impaired," "unjustifiably vulnerable in later proceedings," and "drastically lame." Dkt. 120 at 2. The Court denied Plaintiffs' motion for interlocutory review on April 15, 2020. Dkt. 126. Plaintiffs moved for reconsideration of the Court's Order on May 21, 2020, arguing that the Ninth Circuit's decision in *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589 (9th Cir. 2020), amounted to a change in the law warranting reconsideration. Dkt. 129. The Court denied that motion on June 3, 2020, recognizing that *In re Facebook* had not amounted to a "material change in the law." Dkt. 130 at 2.

**D.    The new allegations in Plaintiffs' Amended Consolidated Complaint.**

After failing, repeatedly, to avoid amendment, Plaintiffs filed the current Amended Complaint on July 6, 2020.[5] Dkt. 131. This complaint adds two (and removes three) proposed class representatives, adds a new cause of action for unjust enrichment (or, alternatively, breach of contract), and again attempts to assert causes of action for intrusion upon seclusion and violation of California's constitutional right to privacy. *Id.* As Plaintiffs predicted, their attempts at repleading are "drastically lame." Dkt. 120 at 2. Essentially, Plaintiffs have sought to remedy the deficiencies the Court identified in two different but equally ineffective ways.

*First*, in response to the Court's concern that Plaintiffs had failed to "**specifically**" identify any "sensitive and confidential" location data Google had collected, the Amended Complaint merely reprises the same non-specific allegations that failed before. Plaintiffs fail to allege even a single instance of Google collecting any specific location information from any of the named Plaintiffs. Indeed, Plaintiffs' allegations describing the location data Google allegedly collected, and why that information might be sensitive, are materially *identical* to those in the prior Complaint—despite the fact that the Amended Complaint has swapped in two entirely new Plaintiffs. *See* Dkt. 132-4 (redline) at 6:1-13:26. Even new named Plaintiff Michael Childs alleges only vaguely and speculatively that Google "would have" collected location information from him and his children, not that Google actually did collect any specific sensitive and confidential

_____

[5] The Court granted leave to file the Amended Complaint (which included a new cause of action) pursuant to stipulation of the parties. Dkt 136.

1388807

location information. *See* AC ¶ 19.

*Second*, the Amended Complaint adds a series of conclusory allegations seeking to rebut the Court's prior holding that Plaintiffs' privacy claims do not concern "continuous" location data collection. These new allegations, however, are irrelevant and immaterial attempts at misdirection. They are summarized as follows:

1.  Plaintiffs insert the adjective "comprehensive" in various places throughout their prior allegations. *See* Dkt. 132-4 at 1 ¶ 1, 1 ¶ 3, 6 ¶ 12, 8 ¶¶ 16-17, 10 ¶ 22, 12 ¶ 25, 24 ¶ 57, 33 ¶ 77, 67 ¶ 151, 68 ¶ 158, 69 ¶ 164.

2.  Plaintiffs cite an article suggesting that ninety percent of Android applications share data—not location data—with Google, a significant portion of which concerns "reporting crash statistics and analytics." *See* Dkt. 132-4 at 22 ¶ 52; Dkt. 131-3 (Ex. 17) at 169-70;

3.  Plaintiffs cite a study conducted by a professor at Vanderbilt University, which analyzes location data reporting for Google applications when Location History is turned *on* (Dkt. 132-4 at 22-23 ¶¶ 53-55; Dkt. 131-3 (Ex. 18) at 185-86), a circumstance that does not apply to any of the Plaintiffs in this case (AC ¶¶ 11, 16, 22, 25, 28); and

4.  Plaintiffs reference a series of articles published by the New York Times that: (**1**) analyzed granular location data that ***wasn't*** collected by Google and (**2**) described how such data is widely collected by (and available from) companies ***other than Google***. *See* Dkt. 131-3 (Ex. 44) at 383 ("The data reviewed by Times Opinion . . . originated from a location data company, one of dozens quietly collecting precise movements using software slipped onto mobile phone apps. . . . "); *see also id.* (Ex. 22) at 243; *id.* (Ex. 23) at 253; Dkt. 132-4 at 28 ¶ 65, 47 ¶ 12.

Finally, the Amended Complaint also adds a number of allegations that simply do not address the Court's prior dismissal. Broadly speaking, these allegations:

- Identify Google's internal code name for certain data architecture, Dkt. 132-4 at 20 ¶ 48;

8

DEFENDANT GOOGLE LLC'S MOTION TO DISMISS PLAINTIFFS'
AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
Case No. 5:18-cv-05062-EJD

1388807

- Quote Google's public disclosures about how it can "cross reference" information from different products, services, and marketing partners, *id.* at 27 ¶ 64;

- Describe how Google may collect location information from users who, unlike Plaintiffs, have turned Location History "on," *id.* at 21 ¶ 51, 24 ¶ 57;

- Speculate about the possibility of de-anonymizing location data, *id.* at 27 ¶ 63;

- Characterize Google's recent statements about how it manages deleted user data, *id.* at 23 ¶ 56;

- Discuss recently proposed federal privacy legislation, *id.* at 48 ¶ 114; and

- Reference a separate civil case recently filed by Arizona's Attorney General, *id.* at 35 ¶ 80, 36 ¶ 82, 47 ¶ 113.

## III.   QUESTION PRESENTED

Whether Plaintiffs state a claim against Google upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).

## IV.   LEGAL STANDARD

To survive a motion to dismiss under Federal Rule 12(b)(6), a plaintiff must plead facts showing that his "right to relief [rises] above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the Court must accept material *factual* allegations as true, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" and pleadings that are "no more than conclusions, are not entitled to the assumption of truth." *Id.* at 678, 679. Furthermore, the Court need not accept the truth of any allegations that are contradicted by matters properly subject to judicial notice or by exhibits attached to the complaint. *St. Claire v. Gilead Scis., Inc.* (*In re Gilead Scis. Sec. Litig.*), 536 F.3d 1049, 1055 (9th Cir. 2008); *Appling v. Wachovia Mortg., FSB*, 745 F. Supp. 2d 961, 967 (N.D. Cal. 2010). Finally, dismissal is proper if the complaint lacks "a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990).

9

1388807

# V.      ARGUMENT

## A.      Plaintiffs fail to state a claim under the California Constitution.

"The California Constitution sets a 'high bar' for establishing an invasion of privacy claim." *In re Yahoo Mail Litig.*, 7 F. Supp. 3d at 1038. To state a claim for invasion of privacy under the California Constitution, Plaintiffs must demonstrate three elements: (**1**) a legally protected privacy interest; (**2**) a reasonable expectation of privacy in the circumstances; and (**3**) a serious invasion of privacy constituting "an ***egregious*** breach of . . . social norms." *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 35-37, 39-40 (1994). At the pleading stage, these "threshold elements" allow courts to "weed out" claims that do not rise to the level of a serious and significant intrusion upon "a constitutionally protected privacy interest." *Loder v. City of Glendale*, 14 Cal. 4th 846, 893 (1997). Plaintiffs have failed to cure their deficient pleading with respect to each element.

### 1.      Plaintiffs fail to plead a legally protected privacy interest.

Plaintiffs have failed to cure their "conclusory and speculative pleading" problem, ignoring the Court's admonition that Plaintiffs' speculative allegations left the Court unable to "assess whether Plaintiffs had a legally protected privacy interest in the ***specific*** places they went." Order at 19.[6] As a result, Plaintiffs once again have failed to "plead sufficient facts to establish a legally protected privacy interest." *Id*. Plaintiffs could have (as they admit) viewed and downloaded their data using Google's "My Activity" and "Takeout" tools, *see* AC ¶ 55, but didn't do so, choosing instead to stand on the same allegations the Court already deemed insufficient. Indeed, the Amended Complaint leaves wholly unchanged the text cited by the Court as examples of speculative and conclusory pleading. *Compare* Order at 18 *with* Dkt. 132-4 (redline comparing Amended Complaint and dismissed Complaint) at 38 ¶ 85 (leaving unchanged the sentence quoted in the Court's Order from former ¶ 108), 7 ¶ 14 (leaving unchanged former

---

[6] The Court correctly refused to extend to this case the *bodily* autonomy line of privacy cases, which address the autonomy interest in "making intimate personal decisions" without "observation" or "intrusion." Order at 15, 17 (quoting *Hill*, 7 Cal. 4th at 35).

10

DEFENDANT GOOGLE LLC'S MOTION TO DISMISS PLAINTIFFS'
AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
Case No. 5:18-cv-05062-EJD

1388807

¶ 11). Other than baldly asserting that Google's collection of unidentified location information was "comprehensive," Plaintiffs Patacsil, Oshana, and Mahon's boilerplate allegations remain entirely unchanged. Despite the Court's Order, they continue to plead generically that they "carried [their] mobile device[s] virtually everywhere," and if someone knew all the places they went with their phones, that person *could* learn about their "shopping habits" or "exercise habits," among other things. *See* Dkt. 132-4 at 6-7 ¶¶ 11-14, 9-10 ¶¶ 22-24, 11-12 ¶¶ 25-27. In fact, their boilerplate allegations are so generic and vague that the Amended Complaint simply *swaps in* new Plaintiff Gamboa for former Plaintiff Aichi Ali without needing to change the boilerplate. *See id.* at 12-13 ¶¶ 28-30. As for new Plaintiff Childs, he, too, alleges only generic "examples" of where "Google *would have*" collected location information from him, not that Google in fact did so. Dkt. 132-4 at 8 ¶ 19. But sheer speculation isn't sufficient to state a claim under the "high bar" set by the California Constitution.

Because it remains "entirely speculative" what location information, if any, was actually collected from Plaintiffs, Plaintiffs have not established a "legally protected privacy interest in the specific places they went." Order at 18. Courts have rejected such deficient pleading time and time again. In *In re Yahoo Mail Litigation*, a case the Court cited in its Order, *see* Order at 19, the court dismissed allegations that Yahoo had scanned the content of plaintiffs' emails, holding that plaintiffs' failure to "plead specific email content in specific emails" was "fatal[]" to their constitutional privacy claim, 7 F. Supp. 3d at 1040-42. In *Cahen v. Toyota Motor Corporation*, the court likewise dismissed plaintiff's constitutional privacy claim where plaintiff pled only generally that the defendant was tracking his vehicle's "location 'at various times.'" 147 F. Supp. 3d 955, 973 (N.D. Cal. 2015). Instead, a plaintiff must provide "more robust allegations" about the specific location information collected. *Id.* Indeed, this Court's Order was quickly followed by *Heeger v. Facebook, Inc.*, in which the court similarly held that the plaintiff had failed to "plausibly plead[] a privacy claim" where he alleged "only that Facebook collected his 'private' location data" without more particular pleading. No. 18-CV-06399-JD, 2019 WL 7282477, at *4 (N.D. Cal. Dec. 27, 2019). More recently, in *In re Google Assistant Privacy Litigation*, the court dismissed common-law and constitutional privacy claims alleging that Google devices

improperly recorded plaintiffs' conversations, reasoning that the operative complaint lacked any facts showing that any allegedly recorded conversations were confidential. *In re Google Assistant Privacy Litig.*, No. 19-CV-04286-BLF, 2020 WL 2219022, at *19 (N.D. Cal. May 6, 2020). Plaintiffs had not, for example, alleged "any facts regarding the participants in the conversations, the locations of the conversations, or examples of content from the conversations." *Id.* at *8.

Here, where it's not even clear that Plaintiffs' location information was collected at all, much less specific location information, Plaintiffs have failed to establish a legally protected privacy interest within the meaning of the California Constitution. *See* Order at 18-19. "Allowing such conclusory and speculative pleading to survive a Rule 12(b)(6) motion to dismiss would obliterate the 'high bar' set for establishing an invasion of privacy claim." *Id.* at 19. Plaintiffs' failure to cure the deficiencies addressed in the Court's Order should lead to dismissal now with prejudice. *See id.*

Rather than add the specific allegations that the Court told Plaintiffs they needed, Plaintiffs instead assert that Google collected "comprehensive" information from them by (**1**) inserting the word "comprehensive" throughout their Amended Complaint, (**2**) attempting to partially backtrack from their prior admission that Web & App Activity collects location information intermittently when users affirmatively engage Google services and features, and (**3**) falsely conflating Web & App Activity with Location History. None of these attempts to circumvent the Court's Order succeeds.

In a transparent, but ultimately futile, attempt to avoid dismissal, Plaintiffs recharacterize the location data collected as "comprehensive"—primarily just by inserting that adjective throughout the Amended Complaint. *See, e.g.*, Dkt. 132-4 at 6 ¶ 12 (adding "comprehensive"), 8 ¶¶ 16-17 (same), 10 ¶ 22 (same), 12 ¶ 25 (same), 18 (adding "comprehensive" to section heading), 68 ¶ 158 (adding "comprehensively" as an adverb). But these cosmetic edits to their previous allegations do not alchemize them into plausible claims. *Cf. In re Google Assistant Privacy Litig.*, 2020 WL 2219022, at *8, 19 (concluding that "the bare allegation" that plaintiffs interacted "repeatedly" with devices that may have recorded their conversations was insufficient to state an invasion of privacy claim). The Court previously dismissed these exact same

12

1388807

allegations because, as Plaintiffs concede, Web & App Activity does not continuously collect location information from users everywhere they carry their mobile devices, but instead is triggered only when users interact with Google services such as Maps or Search, and only when the Web & App Activity setting is turned on. *See* Order at 2, 17-18; AC ¶ 49; Dkt. 131-3 (Exs. 33, 35). Plaintiffs cannot escape the same result here simply by sprinkling the word "comprehensive" throughout the same allegations.

In tacit recognition of that problem, Plaintiffs attempt to recast Web & App Activity as a setting that collects location information "consistently" simply by removing one prior admission, which the Court discussed in its Order, that Web & App Activity is triggered only when Google-controlled features in a user's mobile device "are active." *Compare* Order at 2, 16 (citing former ¶ 47) *with* Dkt. 132-4 at 20 ¶ 49 (redline showing changes made to former ¶ 47). The Court, of course, need not accept such a transparent effort at obscuring the facts laid out in Plaintiffs' prior pleading.[7] Moreover, Plaintiffs' removal of the words "are active" from the allegation changes nothing about the way Web & App Activity functions. Indeed, the exhibits Plaintiffs rely upon for the proposition have not changed. As quoted in ¶ 49, the AP report which precipitated this lawsuit acknowledges that users who have Web & App Activity enabled may have their location information stored ***only*** when they actively interact with products such as "Google Maps app, weather apps, and searches." *See id.* (showing no changes made to quotation from AP report in AC ¶ 49). And in ¶ 50, Plaintiffs continue to quote from and rely on a report (Ex. 16, formerly Ex. 13) that recognizes that users who have "Web & App Activity on, will still have ***some*** of their location data collected by Google," and that "certain apps and services, such as Google searches

---

[7] "Where allegations in an amended complaint contradict those in a prior complaint, a district court need not accept the new alleged facts as true, and may, in fact, strike the changed allegations as 'false and sham.'" *Azadpour v. Sun Microsys., Inc*., No. 06-3272-MJJ, 2007 WL 2141079, at *2 n. 2 (N.D. Cal. July 23, 2007) (citing Schwarzer, et al., *California Practice Guide: Federal Civil Procedure Before Tria*l § 9:223.5 (2006)); *see also Bradley v. Chiron Corp.*, 136 F.3d 1317, 1325 (9th Cir. 1998).

1388807

and searches made through Google Maps, are logged with location data of where the user was *when he or she performed the search*." Dkt. 131-3 (Ex. 16) at 147.

To be fair, Plaintiffs do add some new allegations, but they relate to Location History (the feature Plaintiffs allege they turned off), not Web & App Activity. Specifically, Plaintiffs describe a Vanderbilt study (Ex. 18), suggesting that it stands for the proposition that Google collects location information constantly and passively from Android devices. *See* AC ¶¶ 52-53. But that study (which is incorporated as an exhibit to the Amended Complaint) does not claim that it examined users whose Location History setting was turned **off** (and, to the contrary, it plainly describes data for users who chose to turn Location history **on**, thus directing Google to "save the places" they went). *See* Dkt. 131-3 (Ex. 18) at 185-86 ¶ 20 & Fig. 5.[8] Because the Vanderbilt study did not examine users who had turned Location History *off*, as Plaintiffs allege they did, it is irrelevant. *See* AC ¶¶ 11-12, 16-17, 22, 25, 28. Indeed, the entire premise of Plaintiffs' complaint is that they turned Location History *off*, so they cannot save their Amended Complaint by describing data that could have been collected if Location History had been turned *on*.

Accordingly, just as the *Heeger* court rejected the plaintiff's allegation that "Facebook continued to track and store his private location information . . . even when [he] did not use the Facebook app or tag his location in posts," because the plaintiff had pled contradictorily "that location collection was limited to 'every time [users] use[d] Facebook,'" 2019 WL 7282477, at *4 (alterations in original), here the Court should reject Plaintiffs' superficial efforts to contradict

---

[8] The study provides a snapshot of a "Google user location upload," concluding that Google is able to "ascertain with a high degree of confidence whether a user is still, walking, running, bicycling, or riding on a train or a car," and that Google "achieves this **by tracking an Android mobile user's location coordinates at frequent time intervals**" in conjunction with other sensor data. Dkt. 131-3 (Ex. 18) at 185-86 ¶ 20 & Fig. 5. But as Plaintiffs concede, the **Location History** setting—not Web & App Activity—stores location data that can "reflect how an individual is moving." AC ¶¶ 59-62.

14

DEFENDANT GOOGLE LLC'S MOTION TO DISMISS PLAINTIFFS'
AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
Case No. 5:18-cv-05062-EJD

1388807

their prior pleading and the very exhibits they cite. As Plaintiffs have conceded, and as recognized in this Court's Order, "comprehensive data collection is not at issue here." Order at 18. Because Plaintiffs relabel, but substantively do not change their allegations, they cannot establish that Google collected "comprehensive" location information, thereby invading their legally protected privacy interests. Thus, their constitutional privacy claim should be dismissed once more, this time with prejudice.

**2.      Plaintiffs fail to plead facts establishing their privacy was breached in light of Google's disclosures.**

When Plaintiffs created their accounts with Google, they each acknowledged and accepted that Google would collect information about them, including location information. Dkt. 131-3 (Ex. 10) at 71. While Plaintiffs allege that they turned "off" Location History, not one of the Plaintiffs alleges that he or she ever read the Location History support-page disclosure—that "the places you go are no longer stored" after turning off Location History—that lies at the crux of their lawsuit. *See, e.g.*, AC ¶ 11-12, 16-17, 22, 25, 28 (alleging that Plaintiffs turned off Location History based in part on "representations by Google *to the effect* that turning 'Location History' off would prevent [their] location information from being stored").

But even so, as the exhibits to the Amended Complaint reveal, when users turn off Location History (and, to be clear, it is off by default for all users) in their Google Accounts, a "popup" advises them that even with Location History off "**some location data may be saved as part of your activity on other Google services, like Search and Maps**." Dkt. 131-3 (Ex. 30) at 286; *see also id.* (Ex. 2) at 4. And when users turn off Location History on their Apple devices, as Plaintiff Gamboa alleges he did, AC ¶¶ 28, 141, the iPhone popup reads, "None of your Google apps will be able to store location data **in Location History**," Dkt. 131-3 (Ex. 30) at 286; *see also id.* (Ex. 2) at 5. Thus, the disclosures that Plaintiffs were actually shown disclosed that Google may continue to save location data when they used "other Google services, like Search and Maps," and that such location data would not be stored in the Location History setting. Dkt. 131-3 (Ex. 30) at 286; *see also id.* (Ex. 2) at 4-5. Under these circumstances, Plaintiffs cannot claim that Google violated their reasonable expectations of privacy in their location information.

1    Moreover, the fact that Google collects location information when Web & App Activity is

2    turned on is obvious. When users interact with Google products like Maps or Search, it is

3    apparent that location information is required to provide driving directions and to provide useful

4    results for search queries like "what's the weather right now" or "restaurant takeout nearby." And

5    beyond being intuitive, Google has expressly disclosed that it collects location information

6    generated by users' web and app activity when the Web & App Activity setting is on. The

7    Privacy Policy authorizes Google to "collect information about your location when you use our

8    services." Dkt. 131-3 (Ex. 10) at 71.[9] And the Web & App Activity support page likewise states

9    that Google collects location information through that setting.[10] *Id.* (Ex. 35) at 351-52. Given that

10   Google's practices were both implicitly and explicitly disclosed, Plaintiffs cannot establish the

11   violation of a reasonable expectation of privacy under the circumstances.

12   **3.    Plaintiffs fail to plead an egregious breach of social norms.**

13   Plaintiffs' invasion-of-privacy claim also fails for the independent reason that they have

14   not pleaded sufficient facts to establish that the collection of any alleged data constituted an

15   "***egregious*** breach of . . . social norms." *Hill*, 7 Cal. 4th at 37. At most, Plaintiffs suggest that

16   when Web & App Activity was turned on Google collected Plaintiffs' location information at

17   discrete, intuitive times—for example, when providing driving directions in Google Maps or

18   providing showtimes for local movie theaters. As numerous courts have found, the collection of

19   that kind of limited geolocation data falls well short of an egregious breach of social norms and is

20   instead a routine commercial practice.

21   For example, in *In re iPhone Application Litigation*, Judge Koh assumed without deciding

22   
_____

23   [9] Google has disclosed that it collects location information from users when they use Google

24   services in its Privacy Policies dating back to at least December 19, 2014. *See* Dkt. 131-3 (Ex. 10)

25   at 71; Dkt. 88-1 ¶ 5; Dkt. 88-2 (Exs. 3A-D).

26   [10] Google has disclosed for years that Web & App Activity, when enabled, collects location

27   information. *See* Dkts. 99-2, 99-3, 99-4 (previous versions of the Web & App Activity support

28   page similarly disclosing Google collects location information through that setting).

1388807

that plaintiffs had established the first two elements of a constitutional privacy claim, but nonetheless dismissed plaintiffs' claim because the allegations that the defendants systematically collected (and disseminated) plaintiffs' geolocation data did "not constitute an egregious breach of social norms." 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012). Similarly, in *Folgelstrom v. Lamps Plus*, the court concluded that even assuming plaintiff had a protected privacy interest, plaintiff's claim that the defendant surreptitiously collected and then used the plaintiff's home-address information for commercial purposes did not constitute a "serious" invasion of privacy. 195 Cal. App. 4th 986, 989-92 (2011). In *Moreno v. San Francisco Bay Area Rapid Transit District*, Judge Corley held that plaintiff's allegations—that her geolocation information was improperly collected through an app even when the app was not in use—were insufficiently egregious to make out an invasion-of-privacy claim, and dismissed the claim for failure to satisfy the third element alone. No. 17-CV-02911-JSC, 2017 WL 6387764, at *7-8 (N.D. Cal. Dec. 14, 2017). Likewise, in *In re Google Inc. Privacy Policy Litigation*, the court analyzed plaintiffs' allegation that Google collected location information from Android users, associated it with other private user information, and then disclosed the commingled data to "third-party developers" in ways that allegedly violated even "Google's own policies." 58 F. Supp. 3d 968, 974-75, 987 (N.D. Cal. 2014). But the court dismissed plaintiffs' claim, holding that those allegations "do not plausibly rise to the level of intrusion necessary to establish an intrusion claim" and failed to clear the "high bar" required to state a claim. *Id.* at 988. All of these opinions dismissing invasion-of-privacy claims at the pleadings stage confirm that the collection of geolocation data alone is insufficient to establish a constitutional claim for invasion of privacy. *See also In re Yahoo Mail Litig.*, 7 F. Supp. 3d at 1038 ("Even disclosure of very personal information has not been deemed an 'egregious breach of social norms' sufficient to establish a constitutional right to privacy."). Plaintiffs' constitutional privacy claim should be dismissed for this independent reason, as well.

Because Plaintiffs have failed to establish any element of a constitutional privacy claim and have failed to cure the deficiencies identified in this Court's previous Order, their claim should be dismissed with prejudice.

1388807

**B.       Plaintiffs fail to state a common-law intrusion-upon-seclusion claim.**

Plaintiffs' claim for intrusion upon seclusion fails for the same reasons as their constitutional claim for invasion of privacy. To state a claim for the common-law-tort of intrusion upon seclusion, a plaintiff must show (**1**) that the defendant "intentionally intrude[d] into a place, conversation, or matter as to which the plaintiff has a reasonable expectation of privacy" and (**2**) that the intrusion "occur[ed] in a manner highly offensive to a reasonable person." *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286 (2009); *see also* Restatement (Second) of Torts § 652B (1977). And when a plaintiff brings claims both for (**A**) invasion of privacy under the California Constitution and (**B**) the tort of intrusion upon seclusion, courts conduct a combined inquiry that considers "(**1**) the nature of any intrusion upon reasonable expectations of privacy, and (**2**) the offensiveness or seriousness of the intrusion, including any justification and other relevant interests." *Hernandez*, 47 Cal. 4th at 288.

As "[t]he right to privacy in the California Constitution sets standards similar to the common law tort of intrusion," *id.* at 287, Plaintiffs' intrusion-upon-seclusion claim fails for the same reasons that their constitutional invasion-of-privacy claim fails to clear the "high bar" set by the California Constitution, *see In re Yahoo Mail Litig.*, 7 F. Supp. 3d at 1038; *see also In re Google, Inc. Privacy Policy Litig.*, 58 F. Supp. 3d at 988 (noting the "high bar" for the requisite intrusion). In *Moreno*, the court dismissed the plaintiff's common-law tort "for the same reasons" as the constitutional claim. 2017 WL 6387764, at *8. In *Low v. LinkedIn*, the court noted that both the constitutional tort and the common-law tort require "similarly high standards for the type of invasion that is actionable" before dismissing them both on the pleadings because the facts alleged were not sufficient "to establish a highly offensive disclosure of information or a 'serious invasion' of a privacy interest." 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012). The claims rise and fall together, and the result should be no different in this case.

Plaintiffs fall well short of alleging "an ***exceptional*** kind of prying into another's private affairs." *Med. Lab. Mgmt. Consultants v. Am. Broad. Cos., Inc.*, 306 F.3d 806, 819 (9th Cir. 2002) (citing the Rest. (2d) Torts § 652 as offering examples, such as, "(**1**) taking the photograph of a woman in the hospital with a 'rare disease that arouses public curiosity' over her objection,

18

1388807

and (**2**) using a telescope to look into someone's upstairs bedroom window for two weeks and taking 'intimate pictures' with a telescopic lens"). Instead, their Amended Complaint confirms that Google's alleged collection and use of location data is consistent with "routine commercial behavior." *In re iPhone Application Litigation*, 844 F. Supp. 2d at 1063; *Folgelstrom*, 195 Cal. App. 4th at 992; *see also In re Google Inc. Privacy Policy Litig.* 58 F. Supp. 3d at 987-88; *Manigault-Johnson v. Google, LLC*, No. 2:18-cv-1032-BHH, 2019 WL 3006646, at *5-6 (D.S.C. Mar. 31, 2019) (dismissing intrusion-upon-seclusion claim regarding "personal information," including location information). As Plaintiffs' allegations and exhibits acknowledge, "***hundreds***" of smartphone apps routinely collect location information from users to provide features like navigation, weather, and localized search results—or sometimes without any utility to the app user at all. *See, e.g.*, AC ¶¶ 51-52, 65; *see also* Dkt. 131-3 (Ex. 44) at 383 (*New York Times* article reporting on "dozens" of location data companies "collecting precise movements"). Plaintiffs thus cannot plausibly allege that what is otherwise routine collection is "highly offensive to a reasonable person" only when Google does it (after Google repeatedly disclosed it).

Accordingly, Plaintiffs' claim for intrusion upon seclusion fails for the same reasons as their constitutional claim for invasion of privacy and should be dismissed with prejudice.

### C.    Plaintiffs fail to state an unjust enrichment claim.

Plaintiffs' claim for unjust enrichment fails as a matter of law. California law does not recognize a standalone cause of action for unjust enrichment. *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). However, "[w]hen a plaintiff alleges unjust enrichment, a court may construe the cause of action as a quasi-contract claim seeking restitution." *Id.* (internal quotation marks omitted).

"Quasi-contract in California is a claim for relief that seeks restitution based on the defendant's unjust enrichment." *Jordan v. Wonderful Citrus Packing LLC*, No. 1-18-CV-00401-AWI-SAB, 2018 WL 4350080, at *4 (E.D. Cal. Sept. 10, 2018). "The doctrine applies where plaintiffs, while having no enforceable contract, nonetheless have conferred a benefit on defendant which defendant has knowingly accepted under circumstances that make it inequitable for the defendant to retain the benefit without paying for its value." *Letizia v. Facebook Inc.*, 267

19

DEFENDANT GOOGLE LLC'S MOTION TO DISMISS PLAINTIFFS'
AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
Case No. 5:18-cv-05062-EJD

1388807

F. Supp. 3d 1235, 1253 (N.D. Cal. 2017). To plead a quasi-contract claim, a plaintiff must allege "(**1**) a defendant's receipt of a benefit and (**2**) unjust retention of that benefit at the plaintiff's expense." *Id*.

The Amended Complaint fails to state a cause of action for quasi-contract for two independent reasons. *First*, Plaintiffs have entered into enforceable contracts with Google and are therefore barred from pursuing a claim for quasi-contract. *Second*, because Plaintiffs have failed to allege sufficient facts to establish an actionable invasion-of-privacy claim, they also cannot state a claim for quasi-contract.

### 1.      Plaintiffs have contracts with Google that bar a quasi-contract claim.

"It is well settled that an action based on an implied-in-fact or quasi-contract cannot lie where there exists between the parties a valid express contract covering the same subject matter." *O'Connor v. Uber Techs., Inc.*, 58 F.Supp.3d 989, 999-1000 (N.D. Cal. 2014). Courts have interpreted the scope of this prohibition broadly. Thus, for example, "[n]umerous cases indicate that the mere existence of a contract that defines the parties' rights bars a claim for unjust enrichment." *Sloan v. Gen. Motors LLC*, No. 16-CV-07244-EMC, 2020 WL 1955643, at *27 (N.D. Cal. Apr. 23, 2020). In fact, even the "mere existence of [a] potential contract claim bars the unjust enrichment remedy." *Id.* "A plaintiff may recover for unjust enrichment only where there is no contractual relationship between the parties." *Id.*

Regardless of the specific formulation of this prohibition, the allegations in the Amended Complaint establish that Plaintiffs entered into contracts with Google that bar their quasi-contract claim. By using Google's services, each of the Plaintiffs agreed to Google's Terms of Service. Dkt. 131-3 (Ex. 6) at 41-46; AC ¶ 169. And those Terms of Service cover the same subject matter as Plaintiffs' quasi-contract claim. Plaintiffs' quasi-contract claim alleges that Google surreptitiously collected Plaintiffs' location data while they were using Google apps and services. *See, e.g.*, AC ¶¶ 49, 164; Dkt. 131-3 (Ex. 2) at 2. The Terms of Service, in turn, govern Google's provision of those apps and services. *See* Dkt. 131-3 (Ex. 6) at 41. Google's collection of user location data is also expressly disclosed by Google's Privacy Policy. *Id.* (Ex. 13) at 108; AC ¶ 169. Thus, by any reasonable measure, Plaintiffs' quasi-contract claim covers the same subject

20

DEFENDANT GOOGLE LLC'S MOTION TO DISMISS PLAINTIFFS'
AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
Case No. 5:18-cv-05062-EJD

1388807

matter as the Google Terms of Service to which each Plaintiff agreed. As a result, that claim is barred. *See Letizia*, 267 F. Supp. 3d at 1253-54 (dismissing quasi-contract claim because it covered the same subject matter as Facebook's terms of service); *see also O'Connor*, 58 F.Supp.3d at 999-1001 (dismissing breach of implied contract claim because it covered the same subject matter as Uber's terms of service).

*AdTrader, Inc. v. Google LLC* is instructive. In that case, advertisers filed suit against Google regarding online ads they placed using certain Google advertisement services, including a Google platform that facilitated the purchase of ad space. No. 17-CV-07082-BLF, 2018 WL 3428525, at *1 (N.D. Cal. July 13, 2018). The advertisers alleged, among other things, that Google had unjustly enriched itself by failing to refund, to the advertisers, fees Google had withheld from website publishers that had violated Google's policies. *Id.* at *11. In response, Google argued that the advertisers could not bring a claim for unjust enrichment (or quasi-contract) because there was an enforceable agreement that covered the subject matter of the claim. *Id.* The Court agreed, noting that each of the advertisers had assented to Google's "Advertising Program Terms," which covered Google's provision of advertisement services. *Id.* at *1, *11. And because California law prohibited the advertisers from bringing a quasi-contract claim when there was a valid contract between the parties covering the subject matter of the claim, the court dismissed the claim. *Id.* at *11. Notably, in dismissing the quasi-contract claim, the court rejected the advertisers' argument that the claim was viable so long as the Advertising Program Terms never specifically addressed refunding ad fees. *Id.* Instead, the court found, the fact that "[t]he subject matter of the . . . agreement [wa]s Google's advertisement services" was sufficient to bar the quasi-contract claim. *Id.*

The situation here is no different. Like the advertisers in *AdTrader*, Plaintiffs have filed a quasi-contract claim regarding certain Google services. And, like the advertisers in *AdTrader*, Plaintiffs are parties to a binding agreement governing the provision of those services. Because there is such an agreement, Plaintiffs cannot bring a quasi-contract claim under California law.

Plaintiffs' Amended Complaint definitively confirms that Plaintiffs' claims cover the same subject matter as Google's Terms of Service. Plaintiffs expressly rely on the Terms of

Service to establish that this Court has personal jurisdiction over this dispute, that California law governs this dispute, and that this case was properly assigned to the San Jose Division of this District. AC ¶¶ 33, 35, 37. In making these points, they cite to provisions of the Terms of Service applying to "disputes arising out of or relating to Google's terms or services." *Id.* ¶¶ 35, 37; *see also* Dkt. 131-3 (Ex. 6) at 46. By relying on these provisions, Plaintiffs therefore concede that the Amended Complaint and its claims—including the quasi-contract claim—"aris[e] out of or relat[e] to" the Terms of Service. *Id.* ¶¶ 35, 37; *see also* Dkt. 131-3 (Ex. 6) at 46. Having done so, they cannot now argue that their quasi-contract claims fall outside the scope of those Terms of Service. Nor can Plaintiffs save their quasi-contract claim by pleading it "in the alternative," as they attempt to do. *See* AC ¶ 169. "Even though Rule 8(e)(2) of the Federal Rules of Civil Procedure allows a party to state multiple, even inconsistent claims, it does not alter a substantive right between the parties and accordingly does not allow a plaintiff invoking state law to [assert] an unjust enrichment claim while also alleging an express contract." *Gerlinger v. Amazon.Com, Inc.*, 311 F. Supp. 2d 838, 856-57 (N.D. Cal. 2004). Consequently, because Plaintiffs' quasi-contract claim covers the same subject matter as the Terms of Service, it is barred under California law.

### 2. Plaintiffs' quasi-contract claim fails for the same reasons as their privacy claims.

Even if Plaintiffs' quasi-contract claim wasn't barred under California law, it suffers from the same defects as Plaintiffs' privacy claims, and should therefore be dismissed for the same reasons. Plaintiffs cannot bring a quasi-contract action simply because they believe they have conferred a benefit on Google. More is required. Plaintiffs would have a viable cause of action only if Google's retention of that benefit would be unjust because Google engaged in an "actionable wrong" to obtain it. *Rojas-Lozano v. Google, Inc.*, 159 F. Supp. 3d 1101, 1120 (N.D. Cal. 2016) (quoting *Hill v. Roll Int'l Corp.*, 195 Cal. App. 4th 1295, 1307 (2011)). Absent such an actionable wrong, "there is no basis for . . . relief." *Id.*

Accordingly, if the Court dismisses Plaintiffs' privacy claims, it should dismiss the quasi-contract claim as well. Because Plaintiffs cannot establish that Google invaded their legally

1    protected privacy interests by collecting their location data, they also cannot establish that Google

2    engaged in any "actionable wrong" that would make retaining the benefits resulting from that

3    data "unjust." Thus, Plaintiffs' unjust enrichment claim should be dismissed along with their

4    substantive tort claims. *See, e.g.*, *In re Arris Cable Modem Consumer Litig.*, No. 17-CV-01834-

5    LHK, 2018 WL 288085, at *10 (N.D. Cal. Jan. 4, 2018) (concluding quasi-contract claim "fails to

6    satisfy Rule 9(b) for the same reasons that the UCL, FAL, and CLRA claims do"); *Swearingen v.*

7    *Healthy Beverage, LLC*, No. 13-CV-04385-EMC, 2017 WL 1650552, at *5 (N.D. Cal. May 2,

8    2017) (holding that "any claim for unjust enrichment fails for the same reason that Plaintiffs'

9    claims under the UCL, FAL, and CLRA fail").

10         **D.    Plaintiffs fail to state a breach-of-contract claim.**

11         In addition to their quasi-contract claim, Plaintiffs also make a half-hearted attempt to

12   allege that Google breached the Terms of Service by collecting their location data. But that claim

13   fails for a simple reason: Plaintiffs cannot identify any contract term that Google breached.

14         It is hornbook law that, "[t]o prevail in a breach of contract suit, a plaintiff must allege all

15   the elements of the claim, including defendant's breach of a contract term." *Ewert v. eBay, Inc.*,

16   602 F. App'x 357, 359 (9th Cir. 2015).

17         The Amended Complaint identifies only one contractual provision Google allegedly

18   breached. That provision, which comes from Google's Privacy Policy, states that users "can

19   adjust [their] privacy settings to control what [Google] collect[s] and how [their] information is

20   used." AC ¶ 169 (citing Dkt. 131-3 (Ex. 10) at 68). As this is the only provision expressly

21   identified in the Amended Complaint, it is the only one the Court need consider when deciding

22   whether to dismiss the breach-of-contract claim. *See In re Google Assistant Privacy Litig.*, 2020

23   WL 2219022, at *21 (dismissing contract claim and refusing to consider contract term that was

24   not identified in the operative complaint).

25         There are at least two problems with basing a breach-of-contract claim on that

26   representation. *First*, the quoted language from the Privacy Policy provides information, not a

27   commitment. It informs users that they can adjust their settings to control what data Google

28   collects about them; it doesn't commit Google to providing any specific settings in particular. As

23

DEFENDANT GOOGLE LLC'S MOTION TO DISMISS PLAINTIFFS'
AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
Case No. 5:18-cv-05062-EJD

1388807

a result, it cannot form the basis of a breach-of-contract claim. *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 610-11 (dismissing breach-of-contract claim premised on Facebook's alleged violation of its Data Use Policy after concluding the policy "merely provides information—not commitments—regarding Facebook's use of information and how users can control that information").

 *Second*, to the extent this Privacy Policy language creates an actionable contractual obligation, the allegations in the Amended Complaint affirmatively establish that Google satisfied that obligation. Google provides a number of options that allow users to "adjust [their] privacy settings to control what [Google] collect[s] and how [their] information is used" in the manner the Privacy Policy describes. AC ¶ 169 (citing Dkt. 131-3 (Ex. 10) at 68). The Privacy Policy itself describes a number of those options. *See* Dkt. 131-3 (Ex. 10) at 75-76. And Plaintiffs identify a few others, two of which (Location History and Web & App Activity) they allege controlled the collection of the very location data at issue in this case. *See* AC ¶ 76; *see also* Dkt. 131-3 (Ex. 28) at 273-76. In other words, while Plaintiffs allege that Google breached its contractual duty to provide privacy settings allowing users to control the location data Google collected, they concede that Google did, in fact, supply users with those settings. AC ¶ 76; Dkt. 131-3 (Ex. 28) at 273-76. Because Plaintiffs have admitted that the settings exist, they simply have not alleged a breach of contract.

## VI. CONCLUSION

 Plaintiffs have demonstrated that they cannot cure the deficiencies in their Amended Complaint through further amendment. Plaintiffs' Amended Consolidated Class Action Complaint should be dismissed in its entirety and with prejudice.

 //

 //

 //

 //

 //

 //

1388807

1

Dated: August 31, 2020                                      KEKER, VAN NEST & PETERS LLP

2

3                                                   By:    /s/ Benjamin Berkowitz
                                                           BENJAMIN BERKOWITZ
4                                                          THOMAS E. GORMAN
                                                           CHRISTOPHER S. SUN
5                                                          CHRISTINA LEE

6                                                          Attorneys for Defendant GOOGLE LLC

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT GOOGLE LLC'S MOTION TO DISMISS PLAINTIFFS'
AMENDED CONSOLIDATED CLASS ACTION COMPLAINT
Case No. 5:18-cv-05062-EJD

1388807