**LIEFF CABRASER HEIMANN
 & BERNSTEIN, LLP**
Michael W. Sobol (SBN 194857)
msobol@lchb.com
Melissa Gardner (SBN 289096)
mgardner@lchb.com
Michael Levin-Gesundheit (SBN 292930)
mlevin@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA  94111
Telephone:  415.956.1000
Facsimile:  415.956.1008

**LIEFF CABRASER HEIMANN
 & BERNSTEIN, LLP**
Nicholas Diamand (*pro hac vice*)
ndiamand@lchb.com
250 Hudson Street, 8th Floor
New York, NY  10013
Telephone:  212.355.9500
Facsimile:  212.355.9592

**AHDOOT & WOLFSON, PC**
Tina Wolfson (SBN 174806)
twolfson@ahdootwolfson.com
Theodore Maya (SBN 223242)
tmaya@ahdootwolfson.com
Bradley K. King (SBN 274399)
bking@ahdootwolfson.com
Christopher Stiner (SBN 276033)
cstiner@ahdootwolfson.com
Rachel Johnson (SBN 331351)
rjohnson@ahdootwolfson.com
10728 Lindbrook Drive
Los Angeles, CA 90024
Telephone: 310.474.9111
Facsimile: 310.474.8585

*Interim Co-Lead Class Counsel*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| IN RE GOOGLE LOCATION HISTORY LITIGATION | Case No. 5:18-cv-05062-EJD<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF CROSS MOTION TO UNSEAL AMENDED CONSOLIDATED COMPLAINT** |

## I. INTRODUCTION

To maintain any aspect of Plaintiffs' Amended Consolidated Complaint under seal, Google "must demonstrate compelling reasons." *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1103 (9th Cir. 2016). In its two briefs on this issue, Google has not provided any compelling reason—let alone any plausible reason—to deviate from the "strong presumption" of public access to court records. Google's abstract exhortations of competitive harm that could result from the revelation of a ▆▆▆▆▆▆▆, lacking the detailed factual showing the law requires, ring hollow. Being without a legally sufficient basis to keep matters of public concern hidden from the public, Google attempts to shift the burden to Plaintiffs and resorts to impugning their motives. Respectfully, the Court should not entertain Google's diversions, as the law clearly places the burden upon Google to demonstrate a compelling need to continue to conceal aspects of Plaintiffs' pleadings.

This lawsuit is a matter of significant public concern that, whatever the manner of its ultimate disposition, will inform how we as society contend with a paramount issue of our time—namely, the nature of people's reasonable expectations of privacy as technology giants, such as Google, collect and store ever more massive volumes of personal and private information on a daily basis. The public interest—amply demonstrated by, among other things, Congressional scrutiny and the cascade of consumer rights' actions pending throughout the world that focus on the very issues this case presents—demands that the general public and the putative class members here be well informed about the nature of the invasive practices that affect them.

The question before the Court remains a simple one: Should the ▆▆▆▆▆▆▆ name ▆▆▆▆▆▆ which Google has given to a ▆▆▆▆▆▆ for user geolocation data be locked away from the very same general public whose locations Google continues placed in that ▆▆? *See, e.g.*, Am. Consolidated Class Action Compl. ("Am. Compl."), ECF No. 132-2. Google has failed to carry its burden to demonstrate a compelling reason to continue to hide this information from the public. Therefore, Plaintiffs' allegations concerning the ▆▆▆▆▆▆ name for Google's ▆▆ ▆▆ holding the geolocation information of its users, as set forth in the Plaintiffs' Amended Consolidated Complaint, should be unsealed.

## II. DISCUSSION

### A. Plaintiffs' Amended Consolidated Complaint is subject to a strong presumption of public access, and the public's interest in understanding the judicial process and significant public events also favors unsealing.

The law in the Ninth Circuit firmly establishes that Google bears the burden to "demonstrate compelling reasons" in support of sealing. *Ctr. for Auto Safety, LLC*, 809 F.3d at 1103. Further, in considering whether documents should be sealed, courts "start with a ***strong presumption*** in favor of access to court records." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003).[1] Plaintiffs have demonstrated that the public's interest in understanding the judicial process and significant public events weighs in favor of unsealing. *See, e.g.*, Plaintiffs' Opposition to Motion to Retain Confidentiality and Cross Motion to Unseal Amended Consolidated Complaint at 5-7, ECF No. 139 ("Under our system of justice, we presume that civil proceedings are open to the public because the rule of law—and democracy itself—are best served by judicial transparency and open public discourse of issues.").

Unable to overcome this presumption and satisfy its burden, Google mischaracterizes the governing standards. First, Google incorrectly, and in direct contravention of the authority it cites, characterizes the starting point instead as a "***general*** presumption favoring disclosure." Google's Opp'n at 2, ECF No. 146. The case Google cites actually reads as follows: "Unless a particular court record is one 'traditionally kept secret,' a '***strong presumption*** in favor of access' is the starting point." *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006). Indeed, as this Court has recognized, if a "court record is 'more than tangentially related to the merits of the case'—as is the case with the [amended complaint]—then there is a '***strong presumption*** in favor of access." *In re Macbook Keyboard Litig.*, No. 18-2813, 2019 WL 8955362, at *1 (N.D. Cal. June 12, 2019) (Davila, J.) (quoting *Ctr. for Auto Safety*, 809 F.3d at 1102).

Second, Google attempts to wipe away *any* presumption by arguing that Plaintiffs bear the burden of "explain[ing] why the public needs access . . . to understand either the substance of

---

[1] All emphasis shown in quotations within this brief has been added.

1  their claims or why Google might be liable." Google's Opp'n at 6. This is categorically not the
2  law. Plaintiffs are under no burden to demonstrate a public need, although Plaintiffs clearly have
3  as set forth below. It is true that "promoting the public's understanding of the judicial process
4  and of significant public events"[2] are among the "factors" that "justif[ied] creating a 'strong
5  presumption' in favor of . . . access." *Valley Broad. Co. v. U.S. Dist. Ct.*, 798 F.2d 1289, 1294
6  (9th Cir. 1986). But Google provides no authority for its radical proposition that the presumption
7  of public access has no force, and that it is, rather, Plaintiffs' responsibility to articulate why the
8  public should have full access to their class action complaint.

9  Regardless, Plaintiffs *have* explained why the public's interest in favor of disclosure
10 weighs in here with particular heft. As poignantly stated in *Cohen v. Trump*, an authority Google
11 ignored wholesale in its opposition, "the interest in access to court proceedings in general may be
12 asserted more forcefully when the litigation involves matters of significant public concern." No.
13 13-2519, 2016 WL 3036302, at *6 (S.D. Cal. May 27, 2016). This class action litigation centers
14 on whether Google, one of the world's most powerful aggregators of personal data, will be held
15 accountable to its users' reasonable expectations of privacy. This is undoubtedly a "matter[] of
16 significant public concern," as illustrated by the fact that the U.S. House of Representatives
17 Judiciary Committee, the Australian Competition and Consumer Commission, the Irish Data
18 Protection Commission, the Swedish Data Protection Authority, and the Arizona Attorney
19 General, among others, all have undertaken investigations or enforcement actions related to
20 Google's treatment of user location data. Am. Compl. ¶¶ 113, 117, 118, ECF No. 132.

21 Further, though Plaintiffs need not show it, they nonetheless have shown that the material
22 at issue bears on "the substance of [Plaintiffs'] claims or why Google might be liable."[3] Google's

---

[2] Google's inaccurately describes *Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (1995), as holding that "[i]n deciding whether to seal materials, courts weigh *only* the public's *narrow* interest 'in understanding the judicial process.'" Google's Opp'n at 6 (emphasis changed). *Hagestad* makes no such proclamation. Instead, it states that "factors relevant to a determination of whether the strong presumption of access is overcome *include* the 'public interest in understanding the judicial process." 49 F.3d at 1434. As recently as 2016, the Ninth Circuit reaffirmed that among these factors is the public's understanding of "significant public events." *Ctr. for Auto Safety*, 809 F.3d at 1098.

[3] Google erroneously cites two authorities, neither of which stand for its proposition that the

1   Opp'n at 6. ███████████████████████████████████

2   ███████████████████████████████████. Thus, Google's use of the term

3   ████████ for its ████████—which actually describes the nature of the data therein, as

4   opposed to obscuring the nature of the data with a *bona fide* codename—is highly probative of

5   Google's state of mind as to the purpose of this ████████ and Google's motivation and

6   probable uses for its collection and storage of geolocation data.  *See* Pls.' Mot. at 7, ECF No. 139.

7   And, of course, Google's intended disposition of consumers' geolocation data pertains to

8   Plaintiffs' intrusion upon seclusion and California constitutional invasion of privacy claims—

9   namely, whether Google's conduct is "offensive to a reasonable person" amounting to a "breach

10  of social norms."  Am. Compl. ¶¶ 152, 159.  Unlike authorities Google cites for sound bites rather

11  than substance, the name ████████ is not an irrelevant detail in Plaintiffs' complaint about

12  Google's geolocation tracking practices.  *See Barnes v. Hershey Co.*, No. 12-1334, 2015 WL

13  1814293, at *2 (N.D. Cal. Apr. 21, 2015) (sealing "exhibits [that] focus on Hershey's trade

14  secrets and bear only tangentially on the ***employment matters*** at the heart of th[e] litigation");

15  *Ojmar US, LLC v. Sec. People, Inc.*, No. 16-4948, 2016 WL 6091543, at *2 (N.D. Cal. Oct. 19,

16  2016) (sealing specific business strategy information—"cancellation, renewal, durational, and

17  pricing information"—in a lawsuit centering on patent misuse).

18       Google has not overcome the strong presumption of public access that applies to

19  Plaintiffs' Amended Consolidated Complaint.  This is particularly true here, where that

20  ―――――――――――――

21  public "interest typically only covers 'material . . . critical to the substantive issue of liability.'"  Google's Opp'n at 6 (quoting *In re Google Inc. Gmail Litig.* ("*In re Gmail.*"), No. 13-md-2430, 2013 WL 5366963, at *3 (N.D. Cal. Sep. 25, 2013) and citing *In re Yahoo! Inc.*

22  *Customer Data Security Breach Litig.* ("*In re Yahoo!*"), No. 16-md-2752, 2018 WL 9651897, at *3 (N.D. Cal. Jan. 3, 2018)).  First, nowhere does the court in *In re Gmail* state that the public

23  interest in disclosure *typically* only applies to material critical to liability, as Google suggests.  *In re Gmail.*, 2013 WL 5366963, at *3.  Second, the court in *In re Yahoo!* did not apply the

24  "compelling reasons" standard that Google concedes is at issue here.  2018 WL 9651897, at *3 (stating that the court would only apply the "compelling reasons" standard if "the redacted

25  information is *later* important to a motion that is more than tangentially related to the merits").  And, while the court in *In re Yahoo!* commented that "[p]laintiffs d[id] not recite the

26  redacted information within any of the specific causes of action," *id.*, whether ████████

27  appears in the limited portions of Plaintiffs' complaint delineated with cause-of-action headers cannot be the standard.  If material could be redacted purely by virtue of appearing in the other sections of Plaintiffs' complaint, then 147 of the 169 paragraphs in Plaintiffs' complaint could be

28  under seal.

1    presumption is heightened because the public has a strong interest in understanding this lawsuit
2    addressing and defining the public's reasonable expectations of privacy in an age when
3    technology companies derive ever-growing, immense fortunes from data left by members of the
4    public traveling the physical world.

        **B.**        **Google provides no credible explanation of how public disclosure of the name ▓▓▓▓▓▓▓▓ would harm Google.**

7    In claiming a risk of harm to its "competitive position" from public disclosure, Google
8    once again engages in a display of spurious spectacles to distract from what is actually at issue:
9    the name ▓▓▓▓▓▓ which it applies to a ▓▓▓▓▓▓ of user geolocation data. Google's Opp'n
10   2. Google has not made a detailed factual showing of any credible risk of harm. Therefore, the
11   words at issue should be unsealed. *See U.S. Ethernet Innovations, LLC v. Acer, Inc.*, No. 10-
12   3724, 2013 WL 4426507, at *2 (N.D. Cal. Aug. 14, 2013) (denying sealing request and finding
13   that "general[] claims that [Intel] would be 'harmed' by public disclosure and this would result in
14   a 'competitive disadvantage' for it and in 'security concerns'" were simply "broad and generic
15   statements [that] do not meet the standard for sealing").

16   Google claims that "publicly disclosing" the name ▓▓▓▓▓▓ "would cause competitive
17   harm because it could be combined with other information to gain improper insight into Google's
18   systems and how they work." Google's Opp'n at 2. But Google provides no support for this
19   speculative assertion that a competitor could duplicate its complex user offerings by learning the
20   ▓▓▓▓▓▓ name for a ▓▓▓▓▓▓ of user location information. Google has not
21   explained how one could possibly derive a profound insight as to how Google's technology
22   operates by combining the name of the ▓▓▓▓▓▓▓▓▓▓ "with other information."

23   Unsurprisingly, the collection of authorities Google cites involve detailed descriptions of
24   proprietary business information that a competitor could use to gain an advantage, not ▓▓▓▓
25   ▓▓▓▓ names for ▓▓▓▓▓▓ (or anything else). *See Finjan, Inc. v. Cisco Sys. Inc.*,
26   No. 17-72, 2019 WL 4168952, at *2 (N.D. Cal. Sept. 3, 2019) (sealing material "reveal[ing] the
27   identification, organization, and/or operation of Cisco's proprietary products," which
28   "competitors could use . . . to map [*i.e.*, copy] proprietary features of Cisco's products");

1  *Cardinali v. Plusfour, Inc.*, No. 16-2046, 2019 WL 4723071, at *14 (D. Nev. Sept. 26, 2019)
2  (sealing "enough codes and other information about Experian's system for matching consumer
3  information that a competitor could reverse-engineer the rules governing that system" to create a
4  duplicate consumer reporting database); *Reyna v. Arris Int'l PLC*, No. 17-1834, 2018 WL
5  1400513, at *2 (N.D. Cal. Mar. 20, 2018) (sealing "insights into Intel's hardware and software
6  architecture," not the names thereof); *Ochoa v. McDonald's Corp.*, No. 14-2098, 2015 WL
7  3545921, at *2 (N.D. Cal. June 5, 2015) (sealing a "Business Review Report containing ***specifics***
8  on . . . business operations and suggested guidance from McDonald's USA as [to] how to
9  maximize profits," which "would provide competitors . . . a strategic and unfair business
10 advantage by allowing competitors a ***detailed*** and firsthand account of the key business strategies
11 and profit-driving factors considered and offered as optional guidance exclusively to
12 franchisees"); *Synchronoss Techs., Inc. v. Dropbox, Inc.*, No. 16-119, 2017 WL 11527607, at *2
13 & ECF No. 143-1 (sealing a "Synchronization Platform Architecture Guide"); *Delphix Corp. v.*
14 *Actifio, Inc.*, No. 13-4613, 2014 WL 4145520, at *2 & ECF No. 102 ¶ 39 (N.D. Cal. Aug. 20,
15 2014) (sealing "product architecture and development" information contained in PowerPoint
16 slides).

17       Nor does Google offer support for its inflated warning that public disclosure of the ▮
18 ▮ name ▮ which Google presumably can change at any time, "would allow
19 malicious actors to more efficiently target Google systems for exploitation." Google's Opp'n at
20 4. To be clear, where Google's ▮ is located—whether in terms of physical
21 location, I.P. address, otherwise—is *not* at issue. The threat of hacking is not a wand that can be
22 waived to make compelling reasons magically appear that would justify sealing the ▮
23 ▮ Google's own authorities confirm as much. In each case, the risks were readily
24 apparent. For example, in *Bohannon v. Facebook, Inc.*, the court sealed "specific policies and
25 methods that Facebook uses to refund users and confirm user's identifies and credit card
26 purchases" that "third-parties could exploit" to commit financial crimes. No. 12-1894, 2019 WL
27 188671, at *5 (N.D. Cal. Jan. 14, 2019). *In re Yahoo!* concerned "***detailed information*** about the
28 technology Yahoo uses to protect users' information, as well as the methods that were used to

1  breach Yahoo's systems." 2018 WL 9651897, at *3.  So, too, did *In re Gmail Litigation* concern

2  detailed information—namely, "how users' interactions with the Gmail system affects how

3  messages are transmitted." 2013 WL 5366963, at *3.

4      In sum, Google's claims of harm are unsupported and do not provide "compelling

5  reasons" to maintain the name of the ███████████████ under seal.

6      **C.**    **Google's other misleading distractions provide no "compelling reason" to keep the name of ███████ of user location data at issue in this case under seal.**

7

8      It appears that because Google cannot satisfy the "compelling reasons" standard for

9  maintaining the name of the ███████████████ under seal, it has unfortunately engaged in

10  attacks on Plaintiffs that are entirely irrelevant to the topic at hand.  Plaintiffs briefly address

11  these distractions.

12      ***Plaintiffs do not argue the "Court got it wrong."***  Google's Opp'n at 1.  As Plaintiffs

13  explained in their motion, the initial administrative proposed order to seal came concurrently with

14  the filing of Plaintiffs' Amended Consolidated Complaint via a procedure that does not allow the

15  benefit of argument from Plaintiffs.  *See* Pls.' Mot. at 4.  In fact, Plaintiffs were required to seek

16  permission to file the material under seal because Google designated it "Confidential" pursuant to

17  the terms of the governing Protective Order.  Only when Google later filed its response to the

18  motion to seal were Plaintiffs provided with Google's explanation for the basis of its asserted

19  confidentiality.  Once Google responded "agreeing" with the motion to seal, the Local Rules do

20  not provide an express avenue to disagree with the designating party's basis for its asserted

21  confidentiality.  (Plaintiffs had earlier requested Google's consent to publicly filing their

22  complaint, but on the day Plaintiffs' Amended Consolidated Complaint was due, Google declined

23  without providing an explanation of its position.)  So, the Court simply had not heard any

24  challenge to the designation, and thus has not, and could not have, yet made specific findings

25  about Plaintiffs' challenges that the Google has failed to satisfy the "compelling reasons"

26  standard.  Parties may later challenge an administrative order sealing material when facts come to

27  light that the sealing the material was not warranted.  *Kamakana*, 447 F.3d at 1185-86 (rejecting

28  the defendant's argument that court's prior adoption of special master's reports sealing

1  documents precluded later holding that the material should be unsealed).  In short, Plaintiffs do
2  not assert that the Court is in error, but rather that the issue only now is before the Court.

3  ***Plaintiffs are not "us[ing] the threat of revealing confidential material to exert leverage***
4  ***on Google."***  Google's Opp'n at 8.  Google has chosen to attack counsel's motives to distract
5  from the fact that it can provide no justification for keeping a ▓▓▓▓▓▓▓▓▓▓▓▓▓ name
6  of a user geolocation ▓▓▓ under seal.  Plaintiffs are defending the public's—and class
7  members'—right to learn about this important issue.  To be sure, "embarrassment" or
8  "incrimination . . . will not, without more, compel [a] court to seal its records," *Kamakana*, 447
9  F.3d at 1179, but Plaintiffs do not move to unseal out of ill motive, but rather out of an interest in
10 transparency and open public discourse.  This is not, in the words of Google's authority, a
11 complaint "serv[ing] the improper purpose of circulating libel." *Accenture LLP v. Sidhu*, No. 10-
12 2977, 2011 WL 6057597, at *3 (N.D. Cal. Dec. 6, 2011).  After all, there is no dispute that the
13 name of the ▓▓▓▓▓ at issue actually is ▓▓▓▓▓ as Google provided the name to
14 Plaintiffs in a verified interrogatory response.

15 ***Interim Co-Lead Counsel have not filed "11 separate complaints."***  Google's Opp'n at
16 7.  Google's description of Plaintiffs' Amended Consolidated Complaint as the eleventh
17 complaint filed in this matter is misleading at best.  As the Court surely is aware, different
18 plaintiffs brought different lawsuits against Google; those cases were consolidated; this Court
19 appointed Interim Co-Lead Counsel on April 1, 2019; Plaintiffs filed a Consolidated Complaint
20 on April 30, 2019; the Court granted dismissal with leave to amend on December 19, 2019;
21 Plaintiffs sought certification for interlocutory appeal and reconsideration; and Plaintiffs filed
22 their first Amended Consolidated Complaint on July 6, 2020.  *See* ECF Nos. 72, 80, 113, 131.
23 The Court has addressed just one complaint in a substantive ruling.

24 **III.   CONCLUSION**

25 Google has provided no "compelling reason" to overcoming the strong presumption of
26 public access that applies to Plaintiffs' Amended Consolidated Complaint. *Kamakana*, 447 F.3d
27 at 1178.  Therefore, for the reasons stated above, Plaintiffs respectfully request that the Court
28 grant Plaintiffs' Cross Motion to Unseal the Amended Consolidated Complaint.

| | | |
|---|---|---|
| 1 | Dated: September 8, 2020 | Respectfully Submitted, |
| 2 | | */s Michael W. Sobol* |
| | | Michael W. Sobol (SBN 194857) |
| 3 | | msobol@lchb.com |
| | | Melissa Gardner (SBN 289096) |
| 4 | | mgardner@lchb.com |
| | | Michael Levin-Gesundheit (SBN 292930) |
| 5 | | mlevin@lchb.com |
| | | LIEFF CABRASER HEIMANN & BERNSTEIN, LLP |
| 6 | | 275 Battery Street, 29th Floor |
| | | San Francisco, CA  94111-3339 |
| 7 | | Telephone:  415.956.1000 |
| | | Facsimile:  415.956.1008 |
| 8 | | |
| | | */s Tina Wolfson* |
| 9 | | Tina Wolfson (SBN 174806) |
| | | twolfson@ahdootwolfson.com |
| 10 | | Theodore Maya (SBN 223242) |
| | | tmaya@ahdootwolfson.com |
| 11 | | Bradley K. King (SBN 274399) |
| | | bking@ahdootwolfson.com |
| 12 | | Christopher Stiner (SBN 276033) |
| | | cstiner@ahdootwolfson.com |
| 13 | | 10728 Lindbrook Drive |
| | | Los Angeles, CA 90024 |
| 14 | | Telephone: 310.474.9111 |
| | | Facsimile: 310.474.8585 |
| 15 | | |
| | | Nicholas Diamand (*pro hac vice*) |
| 16 | | ndiamand@lchb.com |
| | | LIEFF CABRASER HEIMANN & BERNSTEIN, LLP |
| 17 | | 250 Hudson Street, 8th Floor |
| | | New York,  NY 10013 |
| 18 | | Telephone:  212.355.9500 |
| | | Facsimile:  212.355.9592 |
| 19 | | |
| 20 | | *Interim Co-Lead Class Counsel* |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |