**LIEFF CABRASER HEIMANN**
   **& BERNSTEIN, LLP**
Michael W. Sobol (SBN 194857)
msobol@lchb.com
Melissa Gardner (SBN 289096)
mgardner@lchb.com
Michael Levin-Gesundheit (SBN 292930)
mlevin@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA  94111
Telephone:  415.956.1000
Facsimile:  415.956.1008

**LIEFF CABRASER HEIMANN**
   **& BERNSTEIN, LLP**
Nicholas Diamand (*pro hac vice*)
ndiamand@lchb.com
250 Hudson Street, 8th Floor
New York, NY  10013
Telephone:  212.355.9500
Facsimile:  212.355.9592

*Interim Co-Lead Class Counsel*

**AHDOOT & WOLFSON, PC**
Tina Wolfson (SBN 174806)
twolfson@ahdootwolfson.com
Theodore Maya (SBN 223242)
tmaya@ahdootwolfson.com
Rachel Johnson (SBN 331351)
rjohnson@ahdootwolfson.com
10728 Lindbrook Drive
Los Angeles, CA 90024
Telephone: 310.474.9111
Facsimile: 310.474.8585

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

IN RE GOOGLE LOCATION HISTORY
LITIGATION

Case No. 5:18-cv-05062-EJD

**PLAINTIFFS' OPPOSITION TO
DEFENDANT GOOGLE LLC'S MOTION TO
DISMISS PLAINTIFFS' AMENDED
CONSOLIDATED COMPLAINT**

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................ 1

II.  BACKGROUND ................................................................................................ 2

III.  ARGUMENT ................................................................................................... 3

    A.  Google's Mischaracterization of the FAC Would Have This Court Stray Far From the Standards for Motions Under Fed. R. Civ. P. 12(b)(6). .................. 3

    B.  Plaintiffs Properly Plead Claims under the California Constitution and for Common Law Intrusion Upon Seclusion. ............................................................ 4

        1.  Plaintiffs Plead a Reasonable Expectation of Privacy in their Geolocation Data and in Google's Profiles Based Upon It. ....................... 4

            a.  Plaintiffs Allege Google Stored Broad Swaths of their Information. ............................................................................................ 7

            b.  Plaintiffs' Allegations are Plausible. ............................................. 9

            c.  Google's Authorities Do Not Render Plaintiffs' Expectation of Privacy in Their Location Data Unreasonable. ........................ 12

        2.  Google's Invasion of Privacy Is Highly Offensive. ................................. 14

        3.  Google's Misleading and Elusive User-Directed Statements Do Not Overcome Plaintiffs' Reasonable Expectation of Privacy. ...................... 18

    C.  Plaintiffs' Claim for Restitution Is Properly Pled. ............................................... 20

        1.  Plaintiffs' Alternative Pleading Is Proper. .............................................. 21

        2.  Restitution Under an Unjust Enrichment Theory Is Proper Because No Express Contract Governs. ................................................................ 22

        3.  If Google's Terms of Service Are a Contract, then Google Is in Breach. ...................................................................................................... 23

    D.  Should the Court Dismiss Any Claim, Leave to Amend Should Be Granted. ........................................................................................................... 24

IV.  CONCLUSION .............................................................................................. 25

# TABLE OF AUTHORITIES

**Page**

**Cases**

*AdTrader, Inc. v. Google LLC*,
   No. 17-7082, 2018 WL 3428525 (N.D. Cal. July 13, 2018).................................. 23

*Alkayali v. Hoed*,
   No. 18-cv-777, 2018 WL 3425980 (S.D. Cal. July 16, 2018) ............................... 20

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................................... 7

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................................................... 11

*Bradley v. Chiron Corp.*,
   136 F.3d 1317 (Fed. Cir. 1998)........................................................................... 9

*Bruton v. Gerber Prods. Co.*,
   703 F. App'x 468 (9th Cir. 2017) ....................................................................... 20

*Cahen v. Toyota Motor Corp.*,
   147 F. Supp. 3d 955 (N.D. Cal. 2015) *aff'd*, 717 F. App'x 720 (9th Cir. 2017) ....................... 14

*Carpenter v. United States*,
   138 S. Ct. 2206 (2018) ....................................................................................... passim

*DCD Programs, Ltd. v. Leighton*,
   833 F.2d 183 (9th Cir. 1987)............................................................................... 25

*Dinan v. SanDisk LLC*,
   No. 18-05420, 2020 WL 364277 (N.D. Cal. Jan. 22, 2020) ............................... 20

*Dunkin v. Boskey*,
   82 Cal. App. 4th 171 (2000) ............................................................................... 20

*Folgelstrom v. Lamps Plus, Inc.*,
   195 Cal. App. 4th 986 (2011) ............................................................................. 17

*Gerlinger v. Amazon.Com*,
   311 F. Supp. 2d 838 (N.D. Cal. 2004) ................................................................ 23

*Heeger v. Facebook, Inc.*,
   No. 18-06399, 2019 WL 7282477 (N.D. Cal. Dec. 27, 2019)............................. 13, 15

*Hernandez v. Hillsides, Inc.*,
   47 Cal. 4th 272 (2009) ....................................................................................... 4

*Hill v. NCAA*,
   7 Cal. 4th 1 (1994) ............................................................................................. 4

*In re Facebook, Inc. Internet Tracking Litig.*
   956 F.3d 589 (9th Cir. 2020).............................................................................. passim

*In re Gilead Scis. Sec. Litig.*,
   536 F.3d 1049 (9th Cir. 2008)............................................................................ 3, 9

*In re Google Assistant Privacy Litigation*,
   No. 19-04286, 2020 WL 2219022 (N.D. Cal. May 6, 2020)............................... 13, 14, 15

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*,
   806 F.3d 125 (3d Cir. 2015) ............................................................................... 16

*In re Google, Inc. Privacy Policy Litig.*,
   58 F. Supp. 3d 968 (N.D. Cal. 2014) ................................................................. 15, 17

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3
*In re iPhone App. Litig.*,
   844 F. Supp. 2d 1040 (N.D. Cal. 2012) .............................................................. 15, 17
4
*In re Yahoo Mail Litigation*,
   7 F. Supp. 3d 1016 (N.D. Cal. 2014) .............................................................. 14
5
*Jafari v. FDIC*,
   No. 12-2982, 2015 WL 3604443 (S.D.N.Y. June 8, 2015) .............................................................. 21
6
*Khoja v. Orexigen Therapeutics, Inc.*,
   899 F.3d 988 (9th Cir. 2018).............................................................. 20
7
*Letizia v. Facebook, Inc.*,
   267 F. Supp. 3d 1235 (N.D. Cal. 2017) .............................................................. 23
8
*Low v. LinkedIn Corp.*,
   900 F. Supp. 2d 1010 (N.D. Cal. 2012) .............................................................. 15
9
*McDonald v. Kiloo ApS*,
   385 F. Supp. 3d 1022 (N.D. Cal. 2019) .............................................................. 16
10
*Meyer v. Aabaco Small Bus., LLC*,
   No. 17-2102, 2018 WL 306688 (N.D. Cal. Jan. 5, 2018) .............................................................. 21
11
*Moreno v. Bay Area Rapid Transit Dist.*,
   No. 17-02911, 2017 WL 6387764 (N.D. Cal. Dec. 14, 2017).............................................................. 17
12
*O'Connor v. Uber Technologies, Inc.*,
   58 F. Supp. 3d 989 (N.D. Cal. 2014) .............................................................. 22
13
*Opperman v. Path, Inc.*,
   205 F. Supp. 3d 1064 (N.D. Cal. 2016) .............................................................. 18
14
*OSU Student All. v. Ray*,
   699 F.3d 1053 (9th Cir. 2012).............................................................. 3
15
*PAE Gov't Servs., Inc. v. MPRI, Inc.*,
   514 F.3d 856 (9th Cir. 2007).............................................................. 9, 10
16
*Patel v. Facebook, Inc.*,
   932 F.3d 1264 (9th Cir. 2019).............................................................. 6, 11
17
*Pinnacle Armor, Inc. v. United States*,
   648 F.3d 708 (9th Cir. 2011).............................................................. 7
18
*Riley v. California*,
   573 U.S. 373 (2014).............................................................. 5, 6
19
*Starr v. Baca*,
   652 F.3d 1202 (9th Cir. 2011).............................................................. 3
20
*United States v. Jones*,
   565 U.S. 400 (2012).............................................................. 5, 12
21
*Weingand v. Harland Fin. Solutions, Inc.*,
   No. 11-3109, 2012 WL 3763640 (N.D. Cal. Aug. 29, 2012) .............................................................. 21

**Rules**
Federal Rule of Civil Procedure 8(d)(2) .............................................................. 21

22

23

24

25

26

27

28

## I.    **INTRODUCTION**

Plaintiffs allege that Google collected and stored their geolocation data without Plaintiffs' permission and created comprehensive records of their daily movements.  The allegations of the First Amended Complaint ("FAC") are thoroughly detailed, supported by extensive evidence from the limited discovery to date, academic research, reports from advocacy organizations, media outlets, public opinion surveys, industry self-regulating standards, admissions from Google, and parallel litigation in the United States and overseas.

Rather than contend with the case as pled, Google scarcely acknowledges Plaintiffs' allegations and evidentiary support.  Instead, Google invites the Court to stray from Rule 12(b)(6)'s standards by ignoring the allegations and exhibits, drawing inferences *against*, rather than in favor of, Plaintiffs, and to resolve central, disputed factual issues.

For example, Google asks the Court to accept its characterization of the FAC as complaining about only a single Google setting—Web & App Activity—despite Plaintiffs' extensive allegations concerning the myriad ways Google collects users' location information for commercial exploitation.  Google asks the Court to make unsupported factual findings about even that setting, suggesting that the information it gathered was inadequate to create a comprehensive picture of Plaintiffs' movements, despite material factual allegations showing the opposite. Google also asks the Court to find that Plaintiffs could not, as a matter of law, reasonably expect to keep their locations private, even though Google assured them that they could via the Location History setting, and despite the fact that members of Congress, governmental authorities, researchers, and others, all reasonably shared the same expectation.  Google would have this Court make infirm findings of fact entirely outside the pleadings to hold that its conduct was "routine," and thus grant Google and other technology companies unfettered license to freely catalog their users' locations and movements in secret, despite common law principles, legislative declarations, and established societal norms that forbid such intrusions into private affairs.

Google attempts to package its factual arguments in legal wrapping, but to determine that no legally protectable privacy interest is at issue and no breach of social norms occurred, when Google comprehensively cataloged Plaintiffs' locations and movements without their consent,

1   would require accepting Google's self-serving rendition of the facts, divorced from Plaintiffs'

2   allegations.  The facts alleged must be taken as true, with all reasonable inferences drawn in a

3   light most favorable to Plaintiffs.  With their allegations of Google's unauthorized,

4   comprehensive surveillance, Plaintiffs state claims for violations of their right to privacy under

5   California law and for restitution to class members of Google's profits wrongfully obtained from

6   their location data.  Respectfully, the Court should deny Google's Motion to Dismiss.

7   **II.**     **BACKGROUND**

8          Plaintiffs are users of mobile devices with Google services that purportedly allowed them

9   to "control" the collection and storage of geolocation information determinable from their

10  devices.  Google offered a mobile device setting called Location History, and explained: "With

11  Location History off, *the places you go are no longer stored*."[1]  Dkt. 131, FAC ¶¶ 41, 45.

12  However, even with Plaintiffs' Location History setting turned "off," Google nonetheless

13  collected and stored their geolocation information daily, through multiple other means.  *Id.* § VI-

14  B. Google's practices rendered Plaintiffs' preferences futile and thwarted Plaintiffs' reasonable

15  expectations of privacy in their locations and movements.  *See id.* ¶¶ 11, 16, 22, 25, 28.

16         Plaintiffs filed their Consolidated Amended Complaint on April 24, 2019 (Dkt. 80). On

17  December 19, 2019, this Court granted dismissal with leave to amend. Dkt. 113 ("Dismissal

18  Order"). Plaintiffs sought interlocutory review of the Dismissal Order (Dkt. 120), which was

19  denied on April 15, 2020.  Dkt. 126.  On May 21, Plaintiffs sought reconsideration.  Dkt. 129.  In

20  denying reconsideration, the Court corrected Plaintiffs' misunderstanding of the Dismissal Order:

21  "Plaintiffs seem to read the Court's dismissal order too narrowly—nothing in the order prevents

22  Plaintiffs from amending their Complaint to add details indicating that the type of geolocation

23  tracking and collection at issue was comprehensive such that Defendant collected sensitive and

24  confidential information." Dkt. 130 at 2.  Plaintiffs assiduously adhered to the Court's direction

25  when, on July 6, 2020, they filed the FAC by expanding allegations about the myriad ways

26

27

28  [1] Throughout this brief, unless indicated otherwise, all emphasis shown in quotation is added.

1   Google amasses comprehensive location data.[2]  Dkt. 131.

2   **III.   ARGUMENT**

3       A.   **Google's Mischaracterization of the FAC Would Have This Court Stray Far**
4            **From the Standards for Motions Under Fed. R. Civ. P. 12(b)(6).**

5       Google's recitation of the background misconstrues the FAC, and is little more than a

6   catalog of self-serving interpretations and weak inferences that are contrary to, and ignore many

7   of, Plaintiffs' well-supported allegations.  "[A] district court ruling on a motion to dismiss is not

8   sitting as a trier of fact." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1057 (9th Cir. 2008).  "At

9   the pleading stage, all allegations of material fact are taken as true and construed in the light most

10  favorable to the non-moving party." *In re Facebook, Inc. Internet Tracking Litig.* (hereinafter, *In*

11  *re Facebook Tracking*, 956 F.3d 589, 601 (9th Cir. 2020)).  "[W]here the claim is plausible—

12  meaning something more than 'a sheer possibility,' but less than a probability—the plaintiff's

13  failure to prove the case on the pleadings does not warrant dismissal." *OSU Student All. v. Ray*,

14  699 F.3d 1053, 1078 (9th Cir. 2012).  "If there are two alternative explanations, one advanced by

15  defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint

16  survives a motion to dismiss under Rule 12(b)(6)." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir.

17  2011).

18      At the center of this controversy is the question of whether Google's geolocation data

19  collection and storage practices intruded upon Plaintiffs' reasonable expectation of privacy.

20  Relatedly, there is the question of whether Google's collection of geolocation data was

21  sufficiently "comprehensive" to invade a reasonable expectation of privacy.  These are inherently

22  questions of fact.  Plaintiffs plainly allege that Google tracked their daily movements, and in fact

23  they allege that the tracking was so complete that it must have included capturing inherently

24  private locations, and was sufficient enough to create profiles of their habits and preferences for

25  Google's commercial purposes.  But whether it is reasonable for Plaintiffs to expect that Google's

26

27  [2] Plaintiffs concurrently sought leave to include a cause of action seeking disgorgement under
    alternative legal theories (unjust enrichment or breach of contract) and to substitute certain
28  Plaintiffs. The parties later stipulated to this relief, which the Court ordered on July 16. Dkt. 137.

1    record of their daily locations and movements is private in the aggregate, regardless of the nature

2    of individual locations, is not a question of law, but one of fact.  And whether the extent of

3    Google's geolocation data collection was sufficiently "comprehensive" must be viewed in context

4    of the claims presented—that is, the question *is* whether it was sufficiently comprehensive to be

5    sensitive, which is, again, inherently a factual question.  The Court need not, and respectfully

6    should not, determine on a motion to dismiss whether the precise nature of Google's geolocation

7    tracking thwarted Plaintiffs' reasonable expectation of privacy.

8         Determining whether an intrusion is "highly offensive" also requires a fact-intensive

9    inquiry that "examines all of the surrounding circumstances."  *Hernandez v. Hillsides, Inc.*, 47

10   Cal. 4th 272, 295 (2009).  Such an inquiry cannot be conducted at the motion to dismiss stage

11   where, as here, there are open factual questions regarding "the degree and setting of the intrusion,

12   the intruder's motives and objectives, and whether countervailing interests or social norms render

13   the intrusion inoffensive."  *In re Facebook Tracking*, 956 F.3d at 606.

14        The depth and detail of Plaintiffs' allegations, as set forth in the subsequent sections,

15   demonstrate that Plaintiffs plausibly state claims upon which relief can be granted.

16   **B.      Plaintiffs Properly Plead Claims under the California Constitution and for
             Common Law Intrusion Upon Seclusion.**

17

18        Because the tests for pleading invasion of privacy under the California Constitution and

19   common law intrusion upon seclusion are similar, "courts consider the claims together and ask

20   whether: (1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly

21   offensive."  *In re Facebook Tracking*, 956 F.3d at 601 (citing *Hernandez*, 47 Cal. 4th at 287).

22   Both issues present "mixed questions of law and fact."  *Hill v. NCAA*, 7 Cal. 4th 1, 40 (1994).

23   **1.      Plaintiffs Plead a Reasonable Expectation of Privacy in their
            Geolocation Data and in Google's Profiles Based Upon It**

24

25        Plaintiffs satisfy the first prong of this two-part test.  Plaintiffs expected that when

26   Location History was disabled, Google would not store records of their locations, even if it

27   accessed some of that information on a transient basis to provide specific services, because there

28   is a common societal understanding that ordinary people can conduct their daily affairs without

1   records being surreptitiously kept of their movements.  "[I]ndividuals maintain the expectation

2   that entities will not be able to collect . . . broad swaths of personal information absent consent."

3   *In re Facebook Tracking*, 956 F.3d at 604 n.7; *Carpenter v. United States*, 138 S. Ct. 2206 (2018)

4   (holding that individuals have a reasonable expectation of privacy in long-term location tracking);

5   *Riley v. California*, 573 U.S. 373, 397-99 (2014) (holding that individuals have a reasonable

6   expectation of privacy in the contents of their cell phones).  Google claimed to honor those

7   expectations, providing a "Location History" toggle, and promising that Plaintiffs' locations

8   would not be "stored."  FAC ¶¶ 12, 16, 22, 24, 28, 40-46; FAC Ex. 11.  Accordingly, Plaintiffs

9   allege they have a reasonable expectation of privacy that their locations will not be tracked daily.

10      Plaintiffs allege in a detailed, well-researched, and plausible manner that Google's

11   unauthorized collection of location data took place over an extended period of years *and*

12   repeatedly throughout the day.  Google violated Plaintiffs' reasonable expectations not only by

13   storing information Google received for exclusively transitory uses, but also by growing those

14   illicit data stores with information reported by other apps and services, and by using its data

15   repositories to generate and refine sensitive profiles of Plaintiffs that it otherwise would not have

16   had.  *See* FAC ¶¶ 14, 19, 24, 27, 30 (alleging specific habits and places that can be gleaned from

17   the information Google collects regarding Plaintiffs).  Google asserts that Plaintiffs have no

18   privacy interest in Google's recording their locations (MTD at 17), but that is not society's

19   expectation, nor is it the law.  In *Carpenter*, the Supreme Court specifically held "that an

20   individual maintains a legitimate expectation of privacy in the record of his physical movements

21   as captured through [cell phone call records]."  138 S. Ct. at 2217; *see also United States v. Jones*,

22   565 U.S. 400, 430 (2012) (Alito, J., concurring) (finding that long term monitoring of location

23   data via GPS technology "impinges on expectations of privacy").

24      The Supreme Court explains that the "unique nature of cell phone location information"

25   presents a "new phenomenon: the ability to chronicle a person's past movements."  *Carpenter*,

26   138 S. Ct. at 2216, 2220.  The Ninth Circuit observes that such "[t]echnological advances provide

27   'access to a category of information otherwise unknowable,' and 'implicate privacy concerns'" in

28   new and different ways than before the current age.  *Patel v. Facebook, Inc.*, 932 F.3d 1264, 1273

1   (9th Cir. 2019) (quoting *Riley*, 573 U.S. at 393).  The threat posed by the storage of personal data

2   over time—both as to tracking individually sensitive locations *and* as to divining "otherwise

3   unknowable" inferences from the sum of stored information, which impelled the *Carpenter* Court

4   to conclude citizens have a reasonable expectation of privacy in the geolocation records

5   maintained by telecommunications providers, is analogous to Google's alleged tracking here.

6         Thus, it is not only the individually sensitive data points regarding Plaintiffs in Google's

7   illicit repositories that render Plaintiffs' expectations reasonable.  The duration and scale of

8   Google's tracking, in itself, violates Plaintiffs' privacy interests.  The Ninth Circuit's recent

9   opinion in *In re Facebook Tracking* is instructive.  956 F.3d at 606.  There, just as Google does

10  here, Facebook argued that the plaintiffs had "to identify specific, sensitive information" that

11  Facebook collected" to allege any concrete privacy interest.  *Id.* at 603; MTD at 10, 12.  The

12  Ninth Circuit disagreed: "The nature of the data allegedly collected is important . . . The question

13  is not necessarily whether Plaintiffs maintained a reasonable expectation of privacy in the

14  information in and of itself," but "whether the data itself is sensitive *and* whether the manner it

15  was collected"—in that case, after users had logged off Facebook—"violates social norms."  956

16  F.3d at 603, 606 (emphasis in original).  *Facebook* concerned less inherently sensitive data, and

17  less data overall, than the geolocation tracking alleged here.  Tracking on websites that "employ

18  Facebook plug-ins" allegedly allowed Facebook to garner "a comprehensive browsing history of

19  an individual, no matter how sensitive the websites visited," which allowed Facebook to "compile

20  a 'vast repository of personal data.'"  *Id.* at 603, 604 n.7 (citing *Carpenter*, 138 S. Ct. at 2207 and

21  *Riley*, 573 U.S. at 397-99).  The court held that allegations of "surreptitious data collection" from

22  Facebook users browsing the Internet were sufficient to state privacy interests at the pleading

23  stage, in part because of how Facebook could use that data to profile its users.  *Id.* at 606.

24        Plaintiffs here allege that Google tracks them well beyond any active use of Google, and

25  has compiled *real-world* records of their physical movements day by day, hour by hour, and even

26  minute by minute, over *years*, garnering for itself records and profiles that, in breadth and

27  sensitivity, are far more invasive than the browsing histories compiled by Facebook.  These

28  records, quite plausibly, are more thorough than the 127 days of records revealing to within 50

1   meters "the location of [a] cell phone whenever it made or received calls" in *Carpenter*.  138 S.

2   Ct. at 2214, 2219.  Plaintiffs have carried their burden.  *See Pinnacle Armor, Inc. v. United States*,

3   648 F.3d 708, 721 (9th Cir. 2011) ("A plaintiff is not required to 'demonstrate' anything in order

4   to survive a Rule 12(b)(6) motion to dismiss.  Rather, it only needs to allege 'sufficient factual

5   matter, accepted as true, to state a claim to relief that is plausible on its face.'" (quoting *Ashcroft*

6   *v. Iqbal*, 556 U.S. 662, 678 (2009))).

7               a.      **Plaintiffs Allege Google Stored Broad Swaths of their**
                        **Information.**
8

9       Mobile devices have become a virtual human appendage (*see Carpenter*, 138 S. Ct. 2206),

10  and quite naturally Plaintiffs carried their mobile devices everywhere they traveled, including in

11  private and sometimes sensitive places such as places of worship, medical offices, and private

12  residences.  FAC ¶¶ 13-14, 18, 20-21, 23-24, 26-27, 29-30.  All the while Google's apps and

13  systems were continually sending location data to Google, and Google was using that information

14  to discern even more private information about the Plaintiffs.  *See* FAC ¶¶  3-4 (Google admitting

15  that Google stores precise location data when Location History is off); ¶¶ 52-53 (citing reports

16  which found Google collects location data from Android phones even without any Google apps

17  being used ); ¶ 54 (similar findings for Apple devices); *see also id.* ¶¶ 14, 19, 24, 27, 49, 63-67,

18  116-117.   Google's collection of geolocation data is automatic; it happens through multiple

19  methods, including through the pinging of cell-phone towers, via Wi-Fi devices, other mobile

20  devices, Bluetooth devices, and other inputs that have not been disclosed to the public.  FAC

21  ¶¶ 46-47, 51; FAC Ex. 18 ¶ 17 & Fig. 3, FAC Ex. 41.   The data Google stores is precise,

22  "pinpoint[ing] your precise latitude and longitude—accurate to the square foot."  FAC ¶ 49.

23  Google stores geolocation data ███████████████████████████████ Google

24  regards the data stored therein as capable of tracking the locations and movements of its users and

25  revealing a comprehensive understanding of their whereabouts. *Id.* ¶ 48.

26      Ignoring these allegations, Google strongly implies (without explicitly representing) that it

27  does not store enough data about Plaintiffs to include the individually sensitive locations that

28  Plaintiffs allege they carried their phones, or to create sensitive profiles.  As Google purports to

read the FAC, Google captures locations when Location History is off only if Google services are actively used, via Web & App Activity. *See e.g.*, MTD at 3 (characterizing "core" allegations as regarding Web & App Activity); *id.*, at 6 (arguing Dismissal Order limits this action to location information collected "at discrete times—when Plaintiffs were using Google's services"); *id.* at 13 (citing dismissal order to assert "Plaintiffs concede [that] Web & App Activity does not continuously collect location information from users everywhere they carry their mobile devices, but instead is triggered only when users interact with Google services such as Maps or Search, and only when the Web & App Activity setting is turned on").

To be sure, Web & App Activity is invasive, misleading, and capable on its own of capturing sensitive locations and generating comprehensive records of Plaintiffs' activities.  FAC ¶ 77 (example of Web & App Activity data alone amounting to 22 precise location data points in an eight-hour period).  Year after year, it gathers location data via Google's mobile applications such as Google Maps, Google Search, Google Hangouts, music and "camera" apps, which are ubiquitous in contemporary life, and sends data to ███████ not only when apps are used, such as when users listen to music, chat or email one another, or perform searches on the web, but also when apps and services "update" automatically on a device and in the "background" of unused devices.  *Id.* ¶¶ 6, 49.  *Compare Carpenter*, 138 S. Ct. 2206, 2214 (2018) (127 days of data generated when calls occurred, averaging 101 data points per day, gave rise a privacy interest).

However, Plaintiffs allege that Web & App Activity is not the only means by which Google collects geolocation data when Location History is disabled.  *See, e.g.*, FAC ¶ 80 ("Web & App Activity is simply the only data capturing tool that Google has been forced to acknowledge to the public, to date."); ¶¶ 51-53 (discussing other means).  Web & App Activity is a severe privacy violation and one of "the primary settings through which Google misleads, deceives, and conceals material information from consumers"—but it is not the outer bound of Google's surveillance. *Id.* ¶ 113 (at least ten additional "settings" are relevant).  The Vanderbilt University study cited in the FAC found that "a dormant, stationary Android phone, with Google Chrome active **in the background**, communicated location information to Google 340 times during a 24-hour period, or at an average of 14 data communications per hour." *Id.* ¶ 52.  For a

phone that was not stationary, Google collected location at a 1.4x higher rate—450 data points in one 24 hour period.  *Id.* Ex. 18 at 3-4; *see also id.* ¶ 53. This data collection, beyond what is reported via Web & App Activity, "is driven largely by data activity from Google's publisher and advertiser products (e.g. Google Analytics, DoubleClick, AdWords)," all of which Google continued when users opted out of Location History.  *Id.*  Also quite telling is Google's substantial investment in patented technologies for determining the location of a given mobile device, the direction and speed of travel, and its proximity to other users and locations.  *Id.* ¶ 57.

Here, Plaintiffs' substantive additions to the FAC illustrate that Google's insinuations regarding Web and App data (which supports a privacy interest even as counterfactually presented by Google) are completely unreliable—and certainly cannot be relied upon as factually true to dismiss this case as a matter of law.  *See Gilead.*, 536 F.3d at 1057) ("[S]o long as the plaintiff alleges facts to support a theory that is not facially implausible, . . . skepticism is best reserved for later stages of the proceedings when the plaintiff's case can be rejected on evidentiary grounds.").

### b.  Plaintiffs' Allegations are Plausible.

The above facts provide supporting evidence that show that the locations Google actually captures from Plaintiffs' devices are, in fact, more than adequate to generate a full picture of their daily lives, including sensitive locations, and inferences about Plaintiffs' habits and activities. FAC ¶¶ 14, 19, 24, 27, 30; *see also id.* ¶¶ 49, 52-54, 77, Ex. 18.  Despite these detailed allegations, Google accuses Plaintiffs of attempting to "circumvent," the direction the Court provided in its Dismissal Order.  MTD at 12, 18.  Central to Google's argument is precedent from the Federal Circuit, *Bradley v. Chiron Corp.*, 136 F.3d 1317, 1325 (Fed. Cir. 1998), which Google wrongly cites as controlling authority from the *Ninth* Circuit, to label Plaintiffs' amended allegations "false and sham."  MTD at ii, 13 n.7.  Not only has Google erroneously cited the source of authority central to its position, but Google also fails to disclose that the Ninth Circuit specifically rejected *Bradley*.  *See PAE Gov't Servs., Inc. v. MPRI, Inc.*, 514 F.3d 856, 858-59 (9th Cir. 2007).  As the Ninth Circuit confirms, as parties "learn[] more about the available evidence and viable legal theories," they "shape their allegations to conform to these newly

1   discovered realities." *Id.* at 859. "We do not call this process sham pleading; we call it litigation."

2   *Id.*  It turns out that Google's argument is *literally* a sham.

3          The Court set no requirement that Plaintiffs had to catalog each and every location where

4   they have traveled of a sensitive nature, because the Court made clear that it is sufficient for

5   Plaintiffs to allege that their locations were comprehensively tracked.  In fact, the Court explicitly

6   stated, "nothing in the [dismissal] order prevents Plaintiffs from amending their Complaint to add

7   details indicating that the type of geolocation tracking and collection at issue was comprehensive

8   such that Defendant collected sensitive and confidential information."  Dkt. 130 (Reconsideration

9   Order), at 2.  That is precisely what Plaintiffs have done in the amended allegations of the FAC.

10         Google would simply disregard Plaintiffs' factual allegations regarding the nature of its

11  surveillance.  Google asserts that the robust Vanderbilt study, which concerns data collected by

12  various Google services on mobile devices, is "irrelevant," because it claims Location History

13  was enabled for the Google Accounts examined by researchers.  MTD at 14.  Not so.  The study

14  never states that Location History was turned on, and instead specifies that the observed devices

15  "were configured with the suggested ***default*** settings" (FAC, Ex. 18 at 47), and Google maintains

16  that Location History is "off by ***default***" (MTD at 3, 15).  Even in the event that Location History

17  somehow *were* activated despite the researchers' use of default settings, many of the data sources

18  identified—communications from Google's Chrome browser, Google Maps, YouTube, Google

19  Play Music, and other apps that sent location data to Google—are instances of the "Web" and

20  "Apps," which are tracked whether or not Location History is disabled, at a minimum, via "Web

21  & App Activity."  Furthermore, one of the study's chief conclusions (on the same page cited by

22  Google for its false proposition that the study looked only at devices with Location History turned

23  "on") is that it is very difficult "to 'opt out' of location tracking." FAC Ex. 18 at 12.  Google's

24  assertion that all the location tracking identified by the Vanderbilt researchers is attributable to

25  Location History being turned on is further belied by the fact that those researchers had to employ

26  special man-in-the-middle software to glean a fuller picture of the extent of Google's data

27  collection.  FAC Ex. 18 at 13, 46.  Ultimately, the complete picture will be revealed through

28  discovery, but Plaintiffs plausibly allege "comprehensive" tracking in the FAC.

1    Google also attempts to distract from the substantive issues by focusing on semantics.

2    MTD 13 n.7.  Rather than addressing material amendments, Google focuses on Plaintiffs' use of

3    the adjective "comprehensive," and erroneously asserts that all the amendments are cosmetic and

4    "sham."  Google thus ignores the Court's focus in its Dismissal Order on the "comprehensive"

5    nature of the cell-site location information in *Carpenter*, which was generated only when calls

6    were sent or received, but "was comprehensive" because it "provided cellular companies with a

7    rough 'map' of a customer's fluid movements."  Dismissal Order at 17-18; *see also Carpenter*

8    138 S. Ct. 2206, 2214.  Plaintiffs addressed this precise issue in the FAC by explaining how

9    Google similarly maintains a personal chronicle of Plaintiffs' lives from which it can extract

10   details about Plaintiffs that otherwise are "unknowable" and private.  *See, e.g.*, FAC ¶¶ 14, 19, 24,

11   27; 77; *Patel*, 932 F.3d at 1273.  Plaintiffs explained how, even with a relatively small trove of

12   ostensibly "anonymized" location data that pales in comparison to Google's data stores, reporters

13   were able to tie cell phone "pings" to individual members of society with ease, generating maps

14   of their travels.  FAC ¶ 112.  While Google may choose to ignore Plaintiffs' allegations and rely

15   on discredited authorities, this Court, of course, cannot.

16       Further discovery will confirm that Google's data collection has allowed Google to create

17   a detailed map of consumers' lives, without consent, in order to "develop new services," and to

18   "measure performance" to bolster its core advertising business while expanding into new fields.

19   FAC ¶¶ 85-86, ¶ 93; *see also* ¶¶ 89-91 (discussing commercial uses of location data by Google).

20   Plaintiffs thus amply allege a reasonable expectation of privacy not only in the individual

21   sensitive and confidential locations they went, which were captured by Google's indiscriminate

22   tracking, but also in the totality of their movements, which taken together, enabled Google to

23   derive and profit from sensitive and confidential information about Plaintiffs.  *See* FAC ¶¶ 14, 19,

24   24, 27, 30; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (plausibility requirement

25   "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence

26   of" alleged conduct).

27

28

**c.** **Google's Authorities Do Not Render Plaintiffs' Expectation of Privacy in Their Location Data Unreasonable.**

Google's authorities do not support a finding Plaintiffs' expectations of privacy are unreasonable and implausible. Addressing the nature of Google's geolocation tracking through Web & App Activity and other inputs over years, as alleged, would require Google to acknowledge that, at most, there are factual issues that cannot be resolved on its Motion. So instead, Google mischaracterizes Plaintiffs' claims as "boilerplate" and attempts to divert the inquiry from its proper focus on the privacy interests at stake. MTD at 11.[3] Google's argument that Plaintiffs must allege the confidential nature of specific places they went is premised entirely upon the Court's previous determination that, in their *prior* complaint, Plaintiffs had alleged Google's location tracking was specifically limited to "bits and pieces" of geographic location data collected only when a Google app was in use or performing a Google search. Dismissal Order at 16, 18. To show a legally protected privacy interest, these "bits and pieces" had to be collected from sensitive or confidential locations. *Id.*

Unlike Plaintiffs' prior complaint, however, the FAC clearly alleges that Google's collection of their geolocation data is neither infrequent nor dependent on "how often they use Google's services." *Compare* Dismissal Order at 18. Much like the continual GPS tracking in *Jones* and the geolocation records created when calls occurred in *Carpenter*, this case is about historical compendiums of individual movements over time. It is not "speculative that geolocation data was ever collected from a Plaintiff while at a sensitive or confidential location" (*id.*)—indeed, accepting Plaintiffs' allegations of material fact in the FAC as true, it is a certainty. *See, e.g.*, FAC ¶¶ 14, 19, 24, 27, 30, 52-53. Moreover, Google's sweeping collection of data about the Plaintiffs is sensitive in itself. *See* FAC ¶¶ 14, 19, 24, 27; *Cf. Jones*, 565 U.S. at 416 (2012) (Sotomayor, J., concurring) ("I would take these attributes of GPS monitoring into account

---

[3] Plaintiffs' allegations are neither boilerplate nor conclusory. Google's surveillance is so widespread and consistent across devices that it makes class members' allegations as to Google's actions identical: All putative class members have the same experience of virtually constant surveillance by Google. Therefore, Plaintiffs can be "swapped," as Google calls it, *id.*, without change to certain specific details because Google's methods and frequency of location collection affect each of them in the same way.

1   when considering the existence of a reasonable societal expectation of privacy *in the sum* of one's

2   public movements.") (emphasis in original).

3       As a result of its focus on the previous complaint, Google's authority is largely inapposite.

4   For instance, in *Heeger v. Facebook, Inc.*, the court found the plaintiffs had not sufficiently

5   alleged what Facebook actually had done.  But here, Plaintiffs' allegations precisely detail the

6   granularity of Google's surveillance of Android and iPhone device users with Google apps and

7   services installed.   *Heeger v. Facebook, Inc.,* No. 18-06399, 2019 WL 7282477, at *4 (N.D. Cal.

8   Dec. 27, 2019); FAC ¶¶ 49, 52-54, 77; FAC Ex. 18.  Indeed, *Heeger* noted that such "[h]ighly

9   specific location data . . . that identifies a user's pinpoint comings and goings would likely present

10  substantially greater concerns."  2019 WL 7282477, at *3.

11      *In re Google Assistant Privacy Litigation* also did not concern the scale of surveillance

12  alleged in the FAC.  *Google Assistant* concerned claims that conversations were recorded when

13  Google devices misinterpreted everyday communications as "hotwords" that were meant to

14  activate the device, known as "false accepts." No. 19-04286, 2020 WL 2219022, at *1 (N.D. Cal.

15  May 6, 2020).  The plaintiffs pled evidence that approximately 15% of recordings were false

16  accepts. *Id.* (153 of 1,000 recordings).  The plaintiffs' claims were dismissed because—in stark

17  contrast to the FAC where Plaintiffs allege they carried devices with Google apps and

18  functionalities installed "virtually everywhere," provide examples of the types of data points

19  compiled, and strongly support their claims that locations are gathered throughout each day—the

20  *Google Assistant* plaintiffs had not alleged how they used the devices, nor had they alleged

21  sufficient frequency of recordings for the court to infer that ordinary device users like the

22  plaintiffs were even among those affected.  *Id.* at *7-8, 16, 19-20.  The court rejected Google's

23  "suggestion that [p]laintiffs must identify specific communications that [they] reasonably

24  believed to be private and that were wrongly recorded," instead concluding that (even where only

25  15% of conversations were affected) "it would be enough for [p]laintiffs to show that they

26  frequently have oral communications near their respective Google Assistant" to "support an

27  inference that Plaintiffs had private conversations intercepted."  *Id.* at *7.  Notably, the court also

28  determined a reasonable person could find Google's conduct highly offensive, and that Google

1    had no justifiable "motive" or "objective" for making the alleged interceptions.  *Id.* at *20.

2          *In re Yahoo Mail Litigation* similarly concerned only a subset of the plaintiffs'

3    information (emails sent from the plaintiffs' non-Yahoo accounts to Yahoo accountholders),

4    where the plaintiffs failed to allege "facts regarding the content of their emails, their intent in

5    sending those emails, the circumstances under which those emails were sent, or who the

6    recipients of those emails were."  7 F. Supp. 3d 1016, 1039 (N.D. Cal. 2014).  In that context,

7    where the interceptions were not alleged to be of a nature that inferences could be drawn about

8    the plaintiffs' entire lives, the question was whether the emails themselves were sensitive.  *Cahen*

9    *v. Toyota Motor Corp.*, 147 F. Supp. 3d 955 (N.D. Cal. 2015) *aff'd*, 717 F. App'x 720 (9th Cir.

10   2017), addressed non-individually identifiable data nothing like the case at bar.  In holding that

11   the plaintiffs had failed to plead a privacy interest in their vehicles' locations "at various times,"

12   *Cahen w*as not discussing years' worth of meticulous records on individuals; the court

13   specifically found that the plaintiffs had not even alleged "the frequency of which the data is

14   being tracked, or the type of data is being collected."  *Id*. at 973; *Compare* FAC § VI-B.  A

15   comparison to *Yahoo* and *Cahen* only confirms that Google's tracking is exceptional. The

16   relevant authority here is *Carpenter* and its progeny, wherein the Supreme Court reiterated that

17   when collected *over time*, stored location information "provides an intimate window into a

18   person's life, revealing not only his particular movements, but through them his familial, political,

19   professional, religious, and sexual associations." 138 S. Ct. at 2217.  Such data collection is

20   plausibly alleged in the FAC. *See* FAC ¶¶ 14, 19, 24, 27, 30.

21                  **2.      Google's Invasion of Privacy Is Highly Offensive.**

22         Plaintiffs satisfy the second prong of the two-part test for pleading invasion of privacy

23   under the California Constitution and common law intrusion upon seclusion.  *See In re Facebook*

24   *Tracking*, 956 F.3d at 601.  Plaintiffs plead that Google's conduct is serious, supporting their

25   allegations with over ten pages of detailed material facts regarding social norms about location

26   privacy.  FAC § G-2 (describing survey evidence, governmental inquiries, and Google's own

27   statements demonstrating that "Plaintiffs' Expectations Reflect Widely Held Social Norms").

28   Notably, the AZAG concluded that Google's conduct is "willfully deceptive and unfair," and that

Google's array of settings "misleads and deceives users of Google's products into believing that they are not sharing location information when they actually are," finding Google had made it "impractical if not impossible for users to meaningfully opt-out."  FAC ¶ 113.

None of Google's authorities hold or even imply that persistent tracking via mobile devices is inoffensive.  In trying to set an impossibly high bar for "highly offensive" invasions, Google relies on dissimilar cases that do not speak to the tracking technology at issue here. MTD 18-19.  There may be no perfectly analogous case given the exceptional nature of Google's surveillance, but somewhat more on point are *In re Google Assistant Privacy Litigation*, 2020 WL 2219022, and *In re Facebook Tracking*, 956 F.3d 589, both recent cases which recognized that offensiveness is a fact question that should be resolved on a full record.  *See In re Facebook Tracking*, 956 F.3d at 606 ("The ultimate question of whether Facebook's tracking and collection practices could highly offend a reasonable individual is an issue that cannot be resolved at the pleading stage.").[4]

Indeed, Google's Location History "control" that fails to curtail its surveillance, its unilaterally revised "support pages" and "Privacy Policies," and its ever-changing "popups" that seem to vary user-to-user, device-to-device, and day-to-day, all underscore the extraordinary and misleading nature of Google's practices of tracking users who expressed their desire not to be tracked.  "[D]eceit can be a 'kind of "plus" factor [that is] significant in establishing an expectation of privacy or making a privacy intrusion especially offensive.'"  *Heeger*, 2019 WL 7282477, at *4 (quoting *McDonald v. Kiloo ApS*, 385 F. Supp. 3d 1022, 1036 (N.D. Cal. 2019)).

---

[4] The Ninth Circuit critiqued much of Google's authority in which privacy claims were rejected at the motion to dismiss stage as "non-precedential cases" that "do not compel the opposite conclusion," including because the plaintiffs in *In re Google, Inc. Privacy Policy Litig.*, 58 F. Supp. 3d 968 (N.D. Cal. 2014), *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010 (N.D. Cal. 2012), and *In re iPhone App. Litig.*, 844 F. Supp. 2d 1040 (N.D. Cal. 2012), did not allege tracking outside of active use of the defendants' services.  *In re Facebook Tracking*, 956 F.3d at 606 n.8. Here, as in *Facebook Internet Tracking*, Plaintiffs allege Google tracks their location even when they are not using Google's services.  FAC ¶¶ 53-54, 80.  Further, none of these cases involved comprehensive location tracking.  Additionally, it is important to recognize that six to eight years have passed since these district court cases were decided, and, as the Ninth Circuit has explained, "[a]dvances in technology can increase the potential for unreasonable intrusions into personal privacy."  *In re Facebook Tracking*, 956 F.3d at 599.

The Third Circuit, applying California law, also held that "deceit and disregard" by Google were

relevant to its holding that California Constitutional and privacy tort claims were well-pled:

> What is notable about this case is *how* Google accomplished its tracking.
> Allegedly, this was by overriding the plaintiffs' [web browser] cookie blockers,
> while concurrently announcing in its Privacy Policy that internet users could 'reset
> your browser to refuse all cookies' . . . . Characterized by deceit and disregard, the
> alleged conduct raises different issues than tracking or disclosure alone . . . .
> Google not only contravened the cookie blockers—it held itself out as respecting
> the cookie blockers. Whether or not data-based targeting is the internet's pole star,
> users are entitled to deny consent, and they are entitled to rely on the public
> promises of the companies they deal with. Furthermore, Google's alleged conduct
> was broad, touching untold millions of internet users; it was surreptitious . . . .
> [W]e see no justification.

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125, 150-51 (3d Cir.

2015).

Here, as in *Google Cookie Placement*, Plaintiffs allege Google published instructions that

purportedly would allow users to keep Google from tracking them, while Google intentionally

continued tracking, and storing that data, against users' *explicit* instructions. Google's "deceit

and disregard" for Plaintiffs' preferences, while not required to allege serious violation of their

privacy, underscore the seriousness of the privacy violations alleged. *Id.*

Moreover, consistent with the Supreme Court's recognition that mobile device location

data collected when phone calls are made and received implicates constitutional privacy interests,

lower courts have held that even apparently routine data collection practices (which Google's are

not) may be highly offensive when conducted deceptively or in disregard for consumers' privacy

choices. For example, a court in this District recently denied a motion to dismiss where, as here,

allegations involved the unauthorized collection of user data sufficient to generate unique profiles

of individuals. The court held that "[c]urrent privacy expectations are developing" with respect to

whether a user "whether a commercial entity that secretly harvests [personal information]

commits a highly offensive or egregious act." *McDonald*, 385 F. Supp. 3d at 1035. The court

could not "say that the answers are so patently obvious that the plaintiffs' allegations are

implausible or inadequate as a matter of law." *Id.*

Google's authorities involve defendants that compiled far less information in both scope

and content than Plaintiffs allege, and do not support its assertion that the "collection of

1   geolocation data alone" can never constitute an "egregious breach of social norms."   MTD at 17.

2   For instance, in *In re iPhone Application Litigation*, 844 F. Supp. 2d 1040 (N.D. Cal. 2012), the

3   plaintiffs alleged that Apple violated their privacy by allowing third-party developers to collect

4   identifying information from their mobile devices.   The extent of data at issue in *In re iPhone* was

5   nothing close to what Plaintiffs allege here: location tracking so comprehensive that Plaintiffs'

6   daily lives were mapped out, stored, and profiled.   Further, unlike Google's false promise, Apple

7   had not reinforced established privacy expectations; instead, its representation—that it would take

8   "precautions . . . to safeguard [users'] personal information against theft, loss, [] misuse" and

9   certain disclosures—did not on its face appear false.  *Id.* at 1049.

10      *Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986 (2011), also involved much less,

11   and much less sensitive, information than the detailed, years-long profiling that Plaintiffs allege.

12   In *Folgelstrom*, the defendant requested that customers provide their zip codes in credit card

13   transactions so that it could obtain their home addresses for the purpose of mailing marketing

14   materials.  *Id.* at 989.  Google's assertion that *requesting* a customer's zip code is "routine

15   commercial behavior" indistinguishable from its alleged conduct (MTD at 17) is preposterous.

16   Creating a compendium of Plaintiffs' ███████████ from their mobile devices is "qualitatively

17   different" from requesting a zip code.  *See Carpenter*, 138 S. Ct. at 2216-17.

18      Google's reliance on *In re Google Privacy Policy Litigation*, 58 F. Supp. 3d 968 (N.D.

19   Cal. 2014), as support for the proposition that "the collection of geolocation data is not sufficient

20   to establish a constitutional claim for invasion of privacy" is similarly misplaced.  MTD 19.

21   *Google Privacy Policy* did not concern non-consensual data collection, let alone geolocation

22   tracking in the real world.  It involved a challenge to Google's new privacy policy, which allowed

23   Google to comingle data that would have been stored separately under previous policies.  *Moreno*

24   *v. Bay Area Rapid Transit Dist.*, No. 17-02911, 2017 WL 6387764 (N.D. Cal. Dec. 14, 2017), is

25   also off point; that court held the pleadings did not allege a sufficiently egregious violation of

26   social norms, in part, because there were no allegations "even that [defendant] was aware of the

27   data collection." *Id.* at *8.  Here, Plaintiffs allege the opposite: Google engaged in a multi-year

28   scheme to allow Plaintiffs to think they could move freely without being tracked and cataloged,

1    while continuing to track and store vast quantities of their sensitive location data for

2    commercially exploitable purposes.  *Google Privacy Policy* and *Moreno* have little bearing on the

3    mixed questions of law and fact here, which ask whether a reasonable person would find

4    Google's non-consensual, detailed location tracking, storage, and profiling, offensive.

5         Google also ignores more recent cases in this District that call Google's authority into

6    question.  *See Opperman v. Path, Inc.,* 205 F. Supp. 3d 1064, 1078-79 (N.D. Cal. 2016)

7    (criticizing the *In re iPhone* court for failing to "explain how expansion of *Folgelstrom*'s holding,

8    counter to the privacy interests of iDevice users, was consistent with California's community

9    privacy norms" and the *Google Privacy Policy* court for "ma[king] no effort to explain why

10   Google's practices were consistent with community notions of privacy").  Unsurprisingly, Google

11   cites *no case* in which the defendant lawfully engaged in conduct akin to Google's deceptive,

12   continuous location tracking.

13            **3.      Google's Misleading and Elusive User-Directed Statements Do Not
                        Overcome Plaintiffs' Reasonable Expectation of Privacy.**
14

15        Meticulous and invasive tracking like Google's can be lawful only with consent.  *See*

16   *Carpenter*, 138 S. Ct. at 2219; *In re Facebook Tracking*, 956 F.3d at 604 n.7.  Google failed to

17   obtain Plaintiffs' consent, and instead reinforced Plaintiffs' inherently reasonable expectation that

18   their mobile devices with Google apps and services installed would *not* be used to track them

19   over time, by promising their locations would not be stored.  The Court already found Google's

20   purported disclosures ineffective: "Drawing all inferences in favor of Plaintiffs, a reasonable user

21   could believe that disabling Location History prevented Defendant from collecting and storing

22   geolocation data. This conclusion is bolstered by the fact that *many* people were misle[]d by the

23   effect of disabling Location History."  Dismissal Order at 7.  Google's contentions regarding its

24   "disclosure" merely recycle failed arguments that are no more meritorious now.

25        First, Google once again complains that Plaintiffs do not specifically plead that they read

26   Google's statement that "With Location History off, the places you go are no longer stored,"

27   MTD at 15, but the Court has already ruled that it "can plausibly infer that Plaintiffs read and

28   relied on Defendant's representations," Dismissal Order 7 n.1; *see also* FAC ¶ 107 ("Based on

1   Google's representations and omissions, context, and industry norms, [Plaintiffs] expected

2   Google to heed and follow their instructions and, as a result, expected that their whereabouts

3   would be *private*, not stored on Google's servers along with other personally identifying

4   information and data.").  All Plaintiffs allege that, "[b]ased upon the terminology used by Google

5   (*e.g.* 'Location History'), the context, and representations by Google to the effect that turning

6   'Location History' off would prevent [their] location information from being stored and that

7   Google would respect [their] privacy settings," they believed that Google would not track their

8   location when the setting was turned off.  FAC ¶¶ 11-12, 16-17, 22, 25, 28.

9          Second, Google claims that adequate disclosures are present in a "popup" and statements

10  on "support pages."  MTD 15-16.  Both the FAC and the Dismissal Order already address how

11  Google's user-facing statements *changed* after this case was filed. *See* FAC ¶ 99 (explaining how

12  Google changed its description of the Location History setting after the AP Report), ¶ 83

13  (explaining how Google's statements concerning Web & App Activity have changed over time,

14  always in a confusing manner); Dismissal Order at 7 ("[T]he support page Defendant points the

15  Court to was created *after* this litigation had already commenced.  At the time Plaintiffs' original

16  complaints were filed, the page described Web & App Activity as merely a means to '[s]ave your

17  search activity on apps and in browsers to make searches faster.'").  Moreover, Google's

18  characterization of the FAC's exhibits is misleading.  Reports of the confusing "popup" on which

19  Google relies only state that it appears when a user turns off Location History by logging into

20  their Google accounts on the web—not via apps on a mobile device, and not for any user who

21  simply looked to ensure that Location History *remained* off, as it was by default.  *See* MTD at 15.

22         Third, Google's suggestion that the mystery behind what location information Google

23  maintains on Plaintiffs could easily be unlocked with "My Activity" and "Takeout" tools directly

24  contradicts supported allegations in the FAC. *See* FAC ¶ 55 ("Google offers [these] tools . . . , but

25  provides no confirmation that the [results] represent[] the full compendium of data Google itself

26  has stored . . . [T]hese tools 'do not paint a complete picture of the size and scale of Google's data

27  collection.'").  Indeed, the Vanderbilt study concluded these tools fail to provide consumers with

28  any information concerning much of the data Google collects, and those researchers had to utilize

- 19 -

"man in the middle" technologies to get a clearer picture of the extent of Google's surreptitious location tracking.  FAC Ex. 18 at 13, 46.  Google does not provide **any** means for users to ascertain the full extent of location information collected about them.  FAC ¶ 55.

Google's efforts to find evidence of "consent" are unavailing (*see* MTD at 3, 5, 15), and at most create factual disputes that should be resolved on a full record.  *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002-03 (9th Cir. 2018) ("[I]t is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint."); *cf. Dinan v. SanDisk LLC*, No. 18-05420, 2020 WL 364277, at *7 (N.D. Cal. Jan. 22, 2020) ("[T]he reasonable consumer standard ... raises questions of fact that are appropriate for resolution on a motion to dismiss only in rare situations.").  The Court was correct in its Dismissal Order that "the literal statements within the Privacy Policies and Terms of Service are irrelevant" because **"**the relevant inquiry is whether Plaintiffs still consented to geolocation storage *even after* disabling Location History."  Dismissal Order at 6-7.  Plaintiffs have more than adequately pled that they did not agree to Google's storage of their location information.

### C.     Plaintiffs' Claim for Restitution Is Properly Pled.

Plaintiffs also have pled a claim for restitution of the economic benefits Google obtained from its use and storage of Plaintiffs' locations without their consent, under two alternative legal theories: unjust enrichment[5] and breach of contract.[6]  Google does not seriously take issue with the sufficiency of Plaintiffs' allegations.  Rather, relying on its arguments against Plaintiffs' constitutional and common law privacy claims, Google merely argues that it has not "invaded [Plaintiffs'] legally protected privacy interests by collecting their location data" and thus could not have "engaged in any 'actionable wrong.'"  MTD at 22-23.  For the reasons above, these arguments fail.  Further, under California law, where, as here, Plaintiffs "did not provide

---

[5] The Ninth Circuit has interpreted California law to "allow[] an independent claim for unjust enrichment to proceed."  *Bruton v. Gerber Prods. Co.*, 703 F. App'x 468, 470 (9th Cir. 2017).
[6] Under California law, restitutionary remedies are available for breach of contract.  *See, e.g.*, *Dunkin v. Boskey*, 82 Cal. App. 4th 171, 198 n.15 (2000) ("We note that appellant need not amend the pleading to seek compensation under an unjust enrichment theory, as those damages are recoverable in his breach of contract action."); *Alkayali v. Hoed*, No. 18-777, 2018 WL 3425980, at *6 (S.D. Cal. July 16, 2018).

authorization for the use of their personal information, nor did they have any control over its use to produce revenue," then "[t]his unauthorized use of their information for profit would entitle Plaintiffs to profits unjustly enriched." *In re Facebook, Tracking*, 956 F.3d at 601. The thrust of Google's argument is that there can be no restitutionary recovery because Plaintiffs' unjust enrichment claim is precluded by the existence of a contract, while at the same time, Plaintiffs' breach of contract claim fails because Google made no actionable *promise* to Plaintiffs to abide by their privacy settings. Google's contradictory arguments illustrate exactly why pleading quasi-contract and breach of contract in the alternative is permissible here.

### 1. Plaintiffs' Alternative Pleading Is Proper.

Under Federal Rule of Civil Procedure 8(d)(2), "[a] party may set out 2 or more statements of a claim . . . alternatively or hypothetically." As numerous courts have recognized, plaintiffs are specifically allowed to allege unjust enrichment and breach of contract claims in the alternative. *See, e.g., Meyer v. Aabaco Small Bus., LLC*, No. 17-2102, 2018 WL 306688, at *5 (N.D. Cal. Jan. 5, 2018) (holding that "[p]laintiffs are entitled to plead claims in the alternative," and denying motion to dismiss unjust enrichment claim); *Jafari v. FDIC*, No. 12-2982, 2015 WL 3604443, at *8 (S.D.N.Y. June 8, 2015) (same); *Weingand v. Harland Fin. Solutions, Inc.*, No. 11-3109, 2012 WL 3763640, at *4 (N.D. Cal. Aug. 29, 2012) (same). There is nothing improper about Plaintiffs' alternative pleading. The two legal theories operate as follows:

Under the unjust enrichment theory, "Google was enriched when it utilized Plaintiffs and Class members' location information stored without consent for its own financial advantage," and "[i]t would be inequitable for Google to retain the benefits it has unjustly received." FAC ¶¶ 165-168. Thus, equity demands that "Google disgorge the profits and other benefits it has unjustly obtained." FAC ¶ 168. Unjust enrichment is Plaintiffs' primary legal theory underpinning their claim seeking restitutionary recovery.

Nevertheless, "to the extent Google successfully asserts that [its] Terms of Service form a binding contract . . . sufficiently defin[ing] the parties' rights regarding Google's use of Plaintiffs' and Class members' location information," Plaintiffs also allege a breach of contract. Specifically, in exchange for Plaintiffs' use of its services, Google promised that "you can adjust

1   your privacy settings to control what we collect and how your information is used." FAC ¶ 169,

2   Ex. 10 (*Google Privacy Policy* (effective July 1, 2020)).  Nevertheless, Google tracked Plaintiffs'

3   movements and stored their locations despite the "Location History" setting being disabled, and

4   therefore, under this contract theory, Google is in breach.

5

6   **2.    Restitution Under an Unjust Enrichment Theory Is Proper Because No Express Contract Governs.**

7       A valid express contract does ***not*** govern how Google's privacy settings operate and

8   whether Google may store users' locations when they are not using Google's services (as Google

9   has done here).  Therefore, restitution is appropriate under an unjust enrichment theory.  To

10  begin, Google asserts that its Terms of Service are a "contract[] with Google" barring Plaintiffs'

11  unjust enrichment claim, but the word "contract" appears nowhere in the document Google

12  contends is dispositive.  MTD at 20 (citing FAC Ex. 6).  Nor is location information addressed

13  therein.  FAC Ex. 6.  Only in Google's Privacy Policy, which is cross-referenced within the

14  Terms of Service, is location information addressed.  *See* MTD at 20 (citing FAC Ex. 13).  While

15  the Privacy Policy states that "[w]hen you use Google services, we may collect and process

16  information about your actual location," the Privacy Policy says nothing about how Google's

17  privacy settings operate or what happens when users are ***not*** using Google services.  In short,

18  Google's Terms of Service and Privacy Policy are not express contracts that govern the subject

19  matter at issue, and therefore Plaintiffs' unjust enrichment claim is not precluded.

20      Google's authorities do not demonstrate otherwise; each is an inapposite example of a

21  dispute whose subject matter an express contract clearly addresses.  In *O'Connor v. Uber Techs.,*

22  *Inc.*, Uber drivers alleged that they were third-party beneficiaries of a quasi-contract between

23  riders and Uber manifested in Uber's ***advertising*** that its fees included gratuities.  58 F. Supp. 3d.

24  989, 993 (N.D. Cal. 2014).  A quasi-contract claim was foreclosed there by express language

25  within riders' contracts with Uber disclaiming "any reliance placed by you on the completeness,

26  accuracy or existence of any ***advertising***."  *Id.* at 1000 (emphasis modified).  In *Letizia v.*

27  *Facebook, Inc.*, plaintiff advertisers brought suit against Facebook alleging that Facebook

28  induced the advertisers to purchase video advertisements by offering video ***performance metrics***

that were inaccurate.  267 F. Supp. 3d 1235, 1239-41 (N.D. Cal. 2017).  The *Letizia* plaintiffs "conceded during oral arguments that they 'd[i]d believe that the advertising services that are part of [the parties'] contract include[d] ***performance metrics***.'"  *Id.* at 1253.  Nor is *AdTrader, Inc. v. Google LLC* on all fours, as Google claims.  No. 17-7082, 2018 WL 3428525 (N.D. Cal. July 13, 2018).  Google omits that the "[c]ourt generally agree[d] with Plaintiffs' argument that they may assert an alternative unjust enrichment claim."  *Id.* at \*11.  The court merely held that in the context of a dispute about refunds for ***advertisement*** fees, an express agreement regarding "***advertisement*** services" precluded an unjust enrichment claim. *Id.*

Finally, Plaintiffs did not *rely* on Google's Terms of Service for the unremarkable proposition that a company based in Mountain View, California is subject personal jurisdiction over claims brought under California law in Santa Clara County.  Plaintiffs referenced Google's consent to California law and venue as additional support for jurisdiction, venue, and choice of law, but this is no concession that Google's Terms of Service are a valid express contract governing privacy subject matter.  FAC ¶¶ 33-35, Ex. 6.  Further, the facts here are entirely unlike those in *Gerlinger v. Amazon.Com*, where a court held that when a plaintiff relies on the existence of a purchase contract as a prerequisite for antitrust standing, it cannot also "allege in good faith . . . that no contract exists" in order to pursue a claim for unjust enrichment stemming from those same purchases.  311 F. Supp. 2d 838, 856 (N.D. Cal. 2004).

None of the documents proffered as a contract by Google set forth the essential terms of some sort of bargain, supported by consideration, between Google and Plaintiffs allowing it to collect their location data in the manner alleged.  Thus, there is no express contract, and Plaintiffs' alternative allegations of unjust enrichment and breach of contract are appropriate.

### 3. <u>If Google's Terms of Service Are a Contract, then Google Is in Breach.</u>

If Google is correct that its Terms of Service govern this dispute, then Plaintiffs have properly alleged a breach of contract.  Specifically, by collecting and storing location information when Location History is disabled, Google violated its promise that "you can adjust your privacy settings to control what we collect and how your information is used."  FAC ¶ 169, Ex. 10.

Puzzlingly, after arguing that its Terms of Service and Privacy Policy form a contract

governing the subject matter at issue, Google then claims that the quoted language simply "provides information" and is "not a commitment."  MTD at 23.  While it is unclear how promising that "privacy settings" will "control what we collect and how your information is used" is "not a commitment," what is clear is what Google means: There is no contract at all.  If that is so, then the logical conclusion is that Plaintiffs' unjust enrichment legal theory should survive.

Yet Google seeks to confuse the issues with one further.  It misconstrues Plaintiff's FAC to claim that "Plaintiffs allege that Google breached its contractual duty to provide privacy settings allowing users to control the location data Google collected."  MTD at 24.  Plaintiffs, however, do ***not*** allege that Google was obligated to provide specific privacy settings.  Rather, Google provided the pertinent privacy setting—Location History—but Google disregarded it and tracked users even though the setting was disabled.  Google's inconsistent arguments cannot defeat Plaintiffs' legal theories underpinning their claim for restitution.

### D.     Should the Court Dismiss Any Claim, Leave to Amend Should Be Granted.

Google not only has mischaracterized the well-pled allegations of the FAC, but it has held up discovery in an attempt to keep from the Court evidence that shows that Plaintiffs' claims have merit.  The FAC noted that the Arizona Attorney General, on May 27, 2020, had filed a heavily redacted complaint regarding Google's location tracking practices, which suggested "there is significant information, known to Google, that has not yet been disclosed."  FAC ¶ 113.  On August 21, that complaint and various exhibits were partially unsealed.  As Plaintiffs now have learned, throughout 2019 and 2020, while stalling discovery in this action, Google provided the Arizona Attorney General substantive responses, rolling productions of documents, and access to witnesses.  The limited evidence recently made public by the Arizona Attorney General makes clear Google's artifice.  *See* Motion to Reopen Discovery, at 13 (Google employee: "The current [user interface] *feels* like it was designed to make things possible, yet difficult enough that people won't figure it out."), *id.* ("[O]ur messaging around this is enough to confuse a privacy focused Google-[software engineer].  That's not good.").  This new evidence, which was released after the FAC was filed, also demonstrates that Google's geolocation collection practices are far more extensive and invasive than it has argued here.  *See id.*; Decl. of Michael W. Sobol in

1  Support of Motion to Reopen Discovery Exs.5-16.  Google should not be permitted to avoid

2  discovery, take positions inconsistent with what that discovery would show, and seek dismissal

3  on a skewed record.  Leave to amend could not possibly be futile under these circumstances.

4  Thus, if the Court is inclined to grant aspects of Google's Motion, then Plaintiffs should be

5  granted leave to amend after Plaintiffs have had an opportunity to conduct further discovery into

6  the factual matters raised above.  *See DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th

7  Cir. 1987) (the primary factors relied upon in denying leave to amend are "bad faith, undue delay,

8  prejudice to the opposing party, and futility of amendment").

9  **IV.  CONCLUSION**

10        Plaintiffs plausibly allege that Google violated their privacy rights by recording their

11  locations, not only without their consent, but in direct violation of social norms and Google's

12  public assurance that "with Location History off, the places you go are *no longer stored*."  FAC ¶

13  41.  Further, Plaintiffs plausibly allege a claim for restitutionary recovery.  Therefore, Plaintiffs

14  respectfully request that the Court deny Google's Motion to Dismiss and allow this case to

15  proceed on the merits, or in the alternative grant leave to amend.

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated: September 30, 2020

Respectfully Submitted,

/s/ Michael W. Sobol

Michael W. Sobol (SBN 194857)
msobol@lchb.com
Melissa Gardner (SBN 289096)
mgardner@lchb.com
Michael Levin-Gesundheit (SBN 292930)
mlevin@lchb.com
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  415.956.1000
Facsimile:  415.956.1008

Nicholas Diamand (*pro hac vice*)
ndiamand@lchb.com
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York,  NY 10013
Telephone:  212.355.9500
Facsimile:  212.355.9592

/s/ Tina Wolfson

Tina Wolfson (SBN 174806)
twolfson@ahdootwolfson.com
Theodore Maya (SBN 223242)
tmaya@ahdootwolfson.com
Brad King (SBN 274399)
bking@ahdootwolfson.com
AHDOOT & WOLFSON, PC
10728 Lindbrook Drive
Los Angeles, CA 90024
Telephone: 310.474.9111
Facsimile: 310.474.8585

*Interim Co-Lead Class Counsel*

2044459.13