**LIEFF CABRASER HEIMANN**
  **& BERNSTEIN, LLP**
Michael W. Sobol (SBN 194857)
msobol@lchb.com
Melissa Gardner (SBN 289096)
mgardner@lchb.com
Michael Levin-Gesundheit (SBN 292930)
mlevin@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA  94111
Telephone:  415.956.1000
Facsimile:  415.956.1008

**LIEFF CABRASER HEIMANN**
  **& BERNSTEIN, LLP**
Nicholas Diamand (*pro hac vice*)
ndiamand@lchb.com
250 Hudson Street, 8th Floor
New York, NY  10013
Telephone:  212.355.9500
Facsimile:  212.355.9592

*Interim Co-Lead Class Counsel*

**AHDOOT & WOLFSON, PC**
Tina Wolfson (SBN 174806)
twolfson@ahdootwolfson.com
Theodore Maya (SBN 223242)
tmaya@ahdootwolfson.com
Bradley K. King (SBN 274399)
bking@ahdootwolfson.com
Christopher Stiner (SBN 276033)
cstiner@ahdootwolfson.com
Rachel Johnson (SBN 331351)
rjohnson@ahdootwolfson.com
10728 Lindbrook Drive
Los Angeles, CA 90024
Telephone: 310.474.9111
Facsimile: 310.474.8585

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| IN RE GOOGLE LOCATION HISTORY LITIGATION | Case No. 5:18-cv-05062-EJD<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION TO REOPEN DISCOVERY PURSUANT TO FRCP 1, 26, AND 37; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**CLASS ACTION**<br><br>Date:  November 5, 2020<br>Time: 9:00 a.m.<br>Judge: Hon. Edward J. Davila |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION ............................................................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................... 3

RELEVANT BACKGROUND ............................................................................................. 4

ARGUMENT ......................................................................................................................... 7

      A.     Documents From The AZAG Litigation Undermine Google's Litigation
           Position In This Case But Have Yet To Be Produced. ........................................... 7

      B.     A Strong Showing is Required to Justify an Ongoing Discovery Stay. ............... 14

      C.     Reopening Discovery Will Avoid Unnecessary Delay and Thus Avoid
           Prejudice to Plaintiffs and the Class. ................................................................... 16

CONCLUSION .................................................................................................................... 17

# TABLE OF AUTHORITIES

Page

**Cases**

*Alaska Cargo Transport, Inc. v. Alaska R.R. Corp.*,
    5 F.3d 378 (9th Cir. 1993)..........................................................................................14

*Am. Pac. Textile, Inc. v. United States*,
    627 F. App'x 648 (9th Cir. 2015) ...............................................................................14

*Blankenship v. Hearst Corp.*,
    519 F.2d 418 (9th Cir. 1975)........................................................................................14

*Gibbs v. Carson*,
    No. 13-0860, 2014 WL172187 (N.D. Cal. Jan. 15, 2014) .........................................15

*Glob. Commodities Trading Grp., Inc. v. Beneficio De Arroz Choloma, S.A.*,
    No. 16-01045, 2016 WL 7474912 (E.D. Cal. Dec. 29, 2016) ....................................14

*Gray v. First Winthrop Corp.*,
    133 F.R.D. 39 (N.D. Cal. 1990)...................................................................................14

*In re Apple In-App Purchase Litig.*,
    No. 11-1758, No. 63 2012 U.S. Dist. LEXIS 18970 (N.D. Cal.  Feb. 15, 2012) ...............14, 17

*In re Facebook, Inc. Internet Tracking Litig.*,
    956 F.3d 589 (9th Cir. 2020)........................................................................................16

*In re Nexus 6P Prod. Liab. Litig.*,
    No. 17-02185, 2018 WL 3036734 (N.D. Cal. June 19, 2018)....................................15

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Res. Dev. Servs., Inc.*,
    No. 10-1324, 2010 WL 3746290 (N.D. Cal. Sept. 18, 2010) .....................................15

*Pac. Lumber Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*,
    220 F.R.D. 349 (N.D. Cal. 2003)................................................................................15

*Rae v. Union Bank*,
    725 F.2d 478 (9th Cir.1984).........................................................................................16

*Reveal Chat Holdco, LLC v. Facebook, Inc.*,
    No. 20-00363, 2020 WL 2843369 (N.D. Cal. Apr. 10, 2020) ....................................15

*Singh v. Google, Inc.*,
    No. 16-03734, 2016 WL 10807598 (N.D. Cal. Nov. 4, 2016) ...................................15

*Wenger v. Monroe*,
    282 F.3d 1068 (9th Cir. 2002) (*quoting Wood v. McEwen*, 644 F.2d 797 (9th Cir. 1981)........16

**Rules**

Fed. R. Civ. P. 1 ...................................................................................................................3

Fed. R. Civ. P. 12(b)(6)..................................................................................................14, 15

Fed. R. Civ. P. 37(a)(1)........................................................................................................4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

i

1

**<u>NOTICE OF MOTION</u>**

2

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3

 **PLEASE TAKE NOTICE** that on November 5, 2020 at 9:00 a.m., or as soon thereafter

4

as the matter can be heard before the Honorable Edward J. Davila, located at the San Jose

5

Courthouse, Courtroom 4, 5th Floor, 280 South 1st Street, San Jose, CA 95113, Plaintiffs will

6

and hereby do move for an Order compelling the reopening of discovery in this case.

7

 This motion is based on this Notice of Motion and Motion; the Memorandum of Points

8

and Authorities in support; the Declaration of Michael W. Sobol filed herewith; all papers and

9

records on file in this case; and such other matters as the Court may consider.

10

Dated: September 30, 2020  Respectfully Submitted,

11

 */s Michael W. Sobol*
Michael W. Sobol (SBN 194857)

12

msobol@lchb.com
Melissa Gardner (SBN 289096)

13

mgardner@lchb.com
Michael Levin-Gesundheit (SBN 292930)

14

mlevin@lchb.com
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

15

275 Battery Street, 29th Floor
San Francisco, CA  94111-3339

16

Telephone:  415.956.1000
Facsimile:  415.956.1008

17

 */s Tina Wolfson*
Tina Wolfson (SBN 174806)

18

twolfson@ahdootwolfson.com
Theodore Maya (SBN 223242)

19

tmaya@ahdootwolfson.com
Bradley King (SBN 274399)

20

bking@ahdootwolfson.com
Christopher Stiner (SBN 276033)

21

cstiner@ahdootwolfson.com
Rachel Johnson (SBN 331351)

22

rjohnson@ahdootwolfson.com
AHDOOT & WOLFSON, PC

23

10728 Lindbrook Drive
Los Angeles, CA 90024

24

Telephone: 310.474.9111
Facsimile: 310.474.8585

25

26

27

28

- 1 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Nicholas Diamand (admitted *pro hac vice*)
ndiamand@lchb.com
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York,  NY 10013
Telephone:  212.355.9500
Facsimile:  212.355.9592

*Interim Co-Lead Class Counsel*

- 2 -

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

Pursuant to Fed. R. Civ. P. 1, 26, and 37, Plaintiffs move to lift the restriction on

3   discovery to which the parties previously stipulated, and which the Court later entered as an

4   order, in order to allow Plaintiffs to propound discovery requests on Defendant Google LLC

5   ("Google").

6

It has come to light that, subsequent to Google's production in the initial, limited round of

7   agreed-upon discovery in this action and just days after the Court entered the order Google sought

8   deferring further discovery in this case, Google produced materials to the Arizona Attorney

9   General (AZAG) that are responsive to Plaintiffs' earlier discovery requests here, but which were

10   not produced in this case.  Some of the new information recently made public by the AZAG,

11   albeit in heavily redacted form, undermines the positions Google has taken in its prior and its

12   now-pending Motion to Dismiss with regard to pivotal issues of disclosure, consent, and social

13   norms, among others.  In one document, for example, from February 2017, Google employees

14   recognized "the overall mess that we have with regards to data collection, consent, and storage,"

15   and questioned whether users "with significant privacy concerns" could "understand what data

16   we are saving."[1]  Google should not be permitted to stall discovery in this action while making

17   arguments to the Court that a full and honest record would not credibly allow.

18

Plaintiffs respectfully submit that they should be permitted to conduct discovery now.

19   This is not a circumstance where it could be equitable to suspend discovery while a defendant's

20   challenge to the pleadings is pending.  First, Plaintiffs should have had a complete production of

21   relevant information *prior* to their filing of the current operative complaint such that even if the

22   Court sees inadequacies in the pleadings, justice would require under these circumstances that

23   Plaintiffs be given further leave to amend *after* Google complies with its discovery obligations.

24   Second, as the newly available information undermines factual arguments made by Google,

25   Plaintiffs will suffer significant prejudice in their efforts to fairly meet Google's fact-based

26   defenses in its Motion to Dismiss and elsewhere in the litigation.  Now that the sound basis for

27

---

28   [1] Declaration of Michael W. Sobol ("Sobol Decl.") Ex. 5, at GOOG-GLAZ-00057478.

1    Plaintiffs' allegations has been made ever more evident by Google's own documents, Plaintiffs

2    respectfully submit that there is no longer a basis to delay their ability to conduct discovery.

3        In accordance with Fed. R. Civ. P. 37(a)(1), Plaintiffs have asked Google to stipulate to

4    the relief requested herein.  Google has not agreed.  *See* Sobol Decl. ¶ 8.

5                                    **<u>RELEVANT BACKGROUND</u>**

6        This litigation commenced when, in August 2018, users of Google's products and services

7    across the United States brought claims against Google for privacy violations reported by the

8    Associated Press ("AP Report"), specifically that Google collects and stores location data

9    contrary to expectations and to its promises that users can control the tracking of their movements

10   through the "Location History" device setting.  Those cases were consolidated before this Court

11   on December 11, 2018.  Dkt. 51.

12       Concurrently in August 2018, the AZAG apparently initiated a parallel investigation of

13   Google's same activities.  Plaintiffs' counsel did not become aware of the AZAG's investigation

14   until seeing a May 27, 2020 Washington Post article reporting on the heavily redacted complaint

15   the AZAG filed that same day.  Sobol Decl. ¶ 6.  Discovery commenced promptly in the AZAG

16   action, such that by early 2019, the AZAG had served discovery and document requests as part of

17   its investigation, seeking information relevant to Google's collection and storage of users'

18   location information when the Location History function was disabled.  *See generally* Ex. 6, at 6.

19   Google produced its initial discovery responses to the AZAG on April 17, 2019.  *See id.*, at 4.

20       Meanwhile, in this action, this Court appointed Co-Lead Counsel on April 1, 2019 (Dkt.

21   72), and Plaintiffs served their first discovery requests on April 24, 2019.  Sobol Decl. ¶ 2.

22   Google served Initial Disclosures on May 20, 2019, identifying only two individuals who may

23   have discoverable information.  Sobol Decl. Ex. 3.  At no time did Google disclose to Plaintiffs

24   that it was identifying, reviewing, and producing relevant documentation to the AZAG, which are

25   equally responsive and relevant here.

26       As for Plaintiffs' discovery requests, Google served objections and limited responses on

27   June 4, 2019, but would not produce responsive documents without a formal protective order,

28   which was entered on December 9, 2019, following contentious negotiations that nearly required

1   resolution of a discovery dispute.  Dkt. 102, 112.  Shortly thereafter, on December 19, 2019, this

2   Court dismissed Plaintiffs' Consolidated Amended Complaint with leave to amend.  Dkt. 113,

3   "Dismissal Order."  On December 30, 2019, Google produced supplemental responses to two of

4   Plaintiffs' interrogatories, and certain documents that its counsel stated had been collected prior

5   to December 19, 2019.  *See* Sobol Decl. Ex. 4. (Suppl. Rog. Responses).  Google represented

6   with respect to each Interrogatory response that its "investigation is continuing and Google may

7   amend this response at a later date."  *Id.*

8          Unbeknownst to Plaintiffs, throughout 2019 and 2020, Google engaged in the process of

9   collecting, reviewing, and producing relevant documents, information and witnesses in the AZAG

10  investigation.  At the same time it served its Initial Disclosures and discovery responses in this

11  case, Google had actual knowledge of additional witnesses and voluminous additional evidence

12  directly relevant to this action but which nowhere appeared in the Initial Disclosures or discovery

13  responses, or in any discussion of discovery between the parties.  Indeed, Plaintiffs have

14  independently learned that Google served Supplemental Responses to the AZAG's discovery

15  requests on May 30, June 20, September 4, and December 31, 2019, made a rolling production of

16  documents through 2019 and early 2020, and made numerous witnesses available throughout

17  2019 and 2020 for questioning by the AZAG regarding its collection of location information.

18  *See, e.g.*, Sobol Decl. Ex. 6, at 6-7, 9-10, 14, 16, 30, 32-39.

19         On January 14, 2020, after entry of the Dismissal Order, Plaintiffs requested Google's

20  consent to extend the time to file an amended complaint until the conclusion of the then-pending

21  request for interlocutory review of the Dismissal Order, and the proceedings thereon, if any.

22  Sobol Decl. ¶ 5.  As a condition for that consent, Google required that discovery be deferred until

23  it answered the next pleading.  *Id.*  Thus, at Google's request, the parties stipulated to an order

24  setting deadlines related to Plaintiffs' anticipated motion for interlocutory review of the Dismissal

25  Order, and deferring discovery.  Dkt. 118.  This Court denied Plaintiffs' request to certify the

26  Dismissal Order for interlocutory review on April 15, 2020.  Dkt. 126.  Plaintiffs moved for

27  reconsideration of the Dismissal Order on May 21, 2020.  Dkt. 129.

28         Subsequently, on May 27, 2020, Plaintiffs' counsel learned of the AZAG's two-year

1  investigation of Google and the filing of its Complaint in Arizona Maricopa County Court.  The

2  public version of the AZAG's Complaint was heavily redacted (*see* Dkt. 131-1, FAC Ex. 32), and

3  voluminous exhibits were filed under seal.[2]

4        This Court on June 3, 2020 denied Plaintiffs' motion for reconsideration (Dkt. 130), and

5  on July 6, 2020, Plaintiffs filed their First Amended Complaint.  Dkt. 131.

6        Eleven days after Plaintiffs filed the FAC, on July 17, 2020, the AZAG filed a Notice of

7  Lodging which attached redacted copies of a subset of the exhibits to its Complaint.  Sobol Decl.

8  Ex. 7.  In its Notice, the AZAG opposed the broad redactions that it has been required to apply to

9  these materials due to Google's overuse of confidentiality designations.  As the AZAG explained,

> 10  During the investigation, Google designated as "confidential" nearly every
> document produced, every page of every examination and every word in every
> 11  written discovery response.  In the Complaint, Google likewise wants to redact
> anything and everything that derives from the investigation.  For example, Google
> 12  seeks to redact entire portions of the Complaint, the entirety of nearly all exhibits,
> and all quotations or information derived from any testimony, document or other
> 13  information provided during the investigation. Google also seeks to redact most of
> the specifics concerning its wrongdoing in the Complaint. (*E.g.*, Compl. § IV). . . .
> 14  Google's proposed sealing and redactions would significantly undermine "the
> public's ability to ably scrutinize" this matter of great public interest, [citation],
> 15  even as its PR team has accused the State of "mischaracteriz[ing]" its services.

16  *Id.* at 8.

17        The AZAG described the information under seal as comprising three "buckets":  (1)

18  public information; (2) "internal" information, such as (i) communications about Google's

19  products and services, (ii) information concerning Google's internal treatment of location data,

20  (iii) Google's communications with and information regarding third parties, (iv) the names and

21  definitions of internal Google platforms and services, and (v) the names of Google witnesses

22  examined by the AZAG; and (3) a description of information concerning the AZAG's

23  investigation. *Id.* at 9, 10-11.  The Arizona Court has not yet ruled on Google's motion to seal this

24  information.  *See generally State of Arizona v. Google LLC*, No. CV2020-006219 (Ariz. Sup.).

25

26  [2] Plaintiffs noted in their FAC, filed July 6, 2020, that the AZAG's heavily redacted complaint
"suggests that there is significant information, known to Google, that has not yet been disclosed
27  in this action," and that the AZAG alleged its investigation had "revealed that Google's deceptive
and unfair conduct extends well beyond its false Location History disclosure."  ECF No. 131 at
28  43-44.

1    On August 21, 2020, additional exhibits cited in the AZAG's complaint (with redactions),

2    and a less, but still heavily, redacted version of the Complaint itself, were added to the public

3    record in Arizona Court.  On August 24, 2020, the AZAG filed a redacted copy of its brief in

4    opposition to Google's Motion to Dismiss the AZAG's Complaint, and on August 25, 2020, the

5    AZAG moved for Partial Summary Judgment, filing a Separate Statement of Facts and exhibits.

6    *See* Exs. 8-10.  These filings are also heavily redacted and/or under seal.

7    Conclusions from the AZAG's investigation, and certain factual information—which are

8    consistent with Plaintiffs' allegations in the FAC—have become available since the FAC was

9    filed in July.  Vast swaths of the evidence relied upon by the AZAG, however, remain subject to

10   Google's overbroad requests for sealing orders, and thus remain inaccessible to Plaintiffs and this

11   Court.  Nonetheless, it is readily apparent from the public portions of the AZAG's filings from

12   August 21 to the present that, during the pendency of this action, including prior to the stipulated

13   stay of discovery, Google already had identified, collected, and produced to the AZAG relevant

14   materials that are inconsistent with the positions Google has taken to defend against liability in

15   this litigation.

16   Indeed, Google relies on Plaintiffs' inability to access this evidence to argue that this

17   Court should draw inferences and conclusions adverse to Plaintiffs in order to grant Google's

18   pending Motion to Dismiss, with prejudice.  Lifting the stay on discovery immediately will allow

19   Plaintiffs to bring the facts before this Court and will support Plaintiffs' allegations that Google is

20   tracking the location of millions of Americans in violation of their constitutional and common

21   law privacy rights without their knowledge or consent.

22                                        **ARGUMENT**

23   **A.      Documents From The AZAG Litigation Undermine Google's Litigation
             Position In This Case But Have Yet To Be Produced.**

24

25   Plaintiffs agreed to Google's request to defer discovery on the basis that Google had made

26   a fulsome disclosure and a complete production.  It turns out, however, that while Google was

27   assembling and producing information, documents, and witnesses to the AZAG, it was

28   withholding that information from Plaintiffs, while simultaneously taking positions in this

1  litigation that are undermined by the documents it did not produce.  Therefore, prior to filing this

2  motion, Plaintiffs requested Google's agreement to open discovery.  Google did not agree to that

3  request.  There being no basis for an agreement to defer discovery any longer, Plaintiffs move the

4  Court to open discovery to the Plaintiffs.

5          Throughout this litigation, Google has downplayed the extent of its geolocation data

6  collection practices.  It has done so in primarily two ways.  *First*, Google mischaracterizes

7  Plaintiffs' allegations and attempts to mislead the public and the Court into believing that the

8  complained-of practices are limited to, or solely a function of, a single device setting that Google

9  calls "Web & App Activity," which Google insinuates collects only limited information.

10 However, Plaintiffs' allegations encompass all of Google's geolocation data collection practices.[3]

11 Invoking this artificial limitation, Google asserts, for instance, that its practices are not

12 "comprehensive" enough to invade its users' privacy.

13         *Second*, Google claims its users "consented" to having their movements tracked, despite

14 ensuring that their "Location History" settings were turned off, via certain disclosures concerning

15 Google's Web & App Activity setting.  (The Court already ruled that Plaintiffs adequately pled a

16 lack of consent.  Dkt. 113 at 7-8 (reasoning that "a reasonable user could believe that disabling

17 Location History prevented Defendant from collecting and storing geolocation data. This

18 conclusion is bolstered by the fact that *many* people were misle[]d by the effect of disabling

19 Location History," and finding it plausible that any implied consent during active use of an app

20 was for transitory purposes only)).  That the Web & App Activity setting forms a basis of consent

21 to Google's geolocation data collection practices is a complete contrivance for purposes of this

22 litigation is amply demonstrated in the AZAG documents which reveal that internally at Google

23 the people in charge acknowledged and agreed with users' confusion.

24
25 [3] This is made patently clear in the Interrogatories Plaintiffs propounded to Google, which define
   the nature of the "Location Information" sought as, "any record of Users' location and/or
26 movement Google collects or has collected from Users' mobile devices, regardless of the manner
   of the collection, transmission, or storage of the data or what Google calls the particular Service,
27 system, functionality, offering, or otherwise for the collection, transmission, or storage of location
   and/or movement information (*e.g.*, Location History, Web & App Activity, Sensorvault,
28 Latitude. etc.)."  Sobol Decl. Ex. 2 (Plaintiffs' First Interrogatories, at 3 ¶(k)).

1

<b>a.      Evidence Produced to the AZAG Undermines Google's<br/>Arguments about the Scope of its Geolocation Tracking.</b>

2

3      Google mischaracterizes the complaint in an attempt to cabin Plaintiffs' allegations

4  regarding how and when it tracks and stores geolocation information to a single Google setting,

5  which Google implies (but never states explicitly) is rarely active.  Google would have the Court

6  believe that Google's location tracking is not "comprehensive" because Web & App Activity

7  ("WAA") is the only Google product that collects geolocation information when Location History

8  ("LH") is disabled, and that WAA reports users' locations to Google on a limited basis, only

9  when users actively use Google-controlled features, like the Google Maps app.  *See* Dkt. 87, at 6

10  (First MTD); Dkt. 145, at 13 (Second MTD).  *See also* Dkt. 113, at 13, 18.  However, to be clear,

11  the allegations and exhibits to Plaintiffs' FAC strongly aver and further clarify that Web & App

12  Activity is *not* the only mechanism other than Location History through which Google collects

13  geolocation data, and that the data collection is comprehensive.  Indeed, "Web & App Activity is

14  simply the only data capturing tool that Google has been forced to acknowledge to the public, to

15  date.  The full scope of Google's geolocation data collection remains a closely guarded secret."

16  FAC ¶ 80; *see also id*. ¶¶ 51-53, 55, 75-79, 113 (describing other mechanisms through which

17  Google appears to gather location information).

18      The strength of Plaintiffs' allegations that Google's location data collection is broad and

19  comprehensive is supported by the limited documents now available from the AZAG's

20  investigation.  Those documents confirm that data stored through Web & App Activity when

21  Google apps are actively used (*i.e.*, the conduct uncovered by the AP Report) is only the tip of the

22  proverbial iceberg in terms of location data gathered and stored against the instructions of users

23  who kept "Location History" off.  Through the AZAG's August 2020 filings, plaintiffs are now

24  aware of specific evidence that will incontrovertibly show Google takes its users' location data

25  via a multitude of settings and sources, not just WAA, and certainly not rarely.

26      Plaintiffs sought this information more than one year ago, but Google failed to disclose it.

27  Among other topics, Plaintiffs' April 24, 2019 discovery asked Google to "Identify by name,

28  purpose, sequence, and physical location each Process and/or piece of Architecture involved in

the creation, development, transmission, maintenance and/or storage of Location Information"

(Rog. 4), to "Identify all ways in which Google or other Alphabet companies use and/or analyze

Location Information" (Rog 5), and to produce all documents reviewed or relied upon in

preparing written responses to the Interrogatories (RFP 4).  Exs. 1-2.  Google's December 30,

2019 response concerning architecture involved in the storage of Location Information omitted

any disclosure of storage other than through Location History and Web & App Activity, and

Google never supplemented its response regarding the uses of location data after September 2019.

Ex. 4.  By contrast, the AZAG was provided with documentation and testimony concerning a

wide variety of Google products and services that collect, store, and disperse users' location data

within Google, which enabled the AZAG to file a Complaint alleging an array of settings that

operate to deceive users whose Location History setting is off and to move for partial summary

judgment against Google.  *See* Dkt. 131, at ¶ 113, Sobol Ex. 8.

In its Motion for Partial Summary Judgment, filed August 25, 2020 with redactions, the

AZAG characterizes Google's false location history representation as "only a small part of

Google's massive, multi-year operation designed to obtain and monetize user location data

through deceptive acts and practices."  It seeks a judgment that "Google committed deceptive acts

and practices involving" (at least) "***three*** of Google's most important location-related settings:

Location History, Web & App Activity, and the Location Master." Ex. 9, at 1.[4]  More details

about this massive operation, and all information regarding how the Location Master operates, is

entirely redacted, and would be a subject of discovery.  *See Id.*, at. 5, 11-14.  Furthermore, the

AZAG's motion notes that these three settings were not the only means by which Google

gathered location data without consent from its users.  *Id.* at 1.  This observation is supported by

one of the AZAG's unsealed exhibits, which appears to have been written after the AP Report

uncovered the practice, which contains this admission from a Google employee: "There are lots

of 'location histories', like WAA, Fi, Photos. Probably others. Impossible to find them all and

prevent new ones from being created.  Infeasible to change . . . [i]nfeasible to respect device-level

---

[4] Throughout this brief, unless otherwise indicated, all emphasis in quotations is added.

controls as required. **Solvable through messaging**." Ex.11, at GOOG-GLAZ-00078653.[5]

The AZAG documents undermine the positions Google has taken in this case. In disregard of the allegations it must know are true, and in the face of evidence it has already gathered, reviewed, and produced to the AZAG, Google asserts that Plaintiffs' case is "about two of Google's account-level settings," and "at most, Plaintiffs suggest" that Web & App Activity collects data at "discrete, intuitive times." Dkt. 145 (Google Second Motion to Dismiss), at 3, 16. Throughout its Motion to Dismiss, Google relies on carefully crafted ambiguity to conceal Google's actual knowledge that it obtains data about users who are not "actively" using their mobile devices; that the data collected is equally as precise as Location History information[6]; that Google collects geolocation information about users who opt out of Location History through "lots" of different settings, which circulate the data to other servers at Google; and that Google makes no effort to "respect" the controls it purports to offer consumers.

Google's mischaracterization of the FAC is a fundamental component of its arguments in favor of dismissal. The fact that Google's arguments raise questions that can only be resolved *after* evidence is gleaned through discovery demonstrates that this case is overwhelmingly likely to be litigated beyond the pleadings. Opening discovery now will put an end to Google's specious arguments based on distorted and self-serving interpretations of the limited evidence

---

[5] In another exemplary piece of correspondence that has been partially unsealed, it appears that the names of three distinct pieces of Google architecture related to its chronicling and internal circulation of users' location information were redacted. On February 27, 2017 a Google employee offers to "make a drawing showing how all of these things relate to one another" as they explain that "[Redacted Term 1] is a protobuf that encapsulates device location once it gets to a Google server . . . to pass device location around servers . . . [Redacted Term 2] is essentially where WAAH [Web & App Activity History] data is stored and processed. [Redacted Term 3] a backend built by Google Now team that essentially collects a bunch of signals (including current location) in both ephemeral and persistent way." Ex. 12, at GOOG-GLAZ-00027381.

[6] Google also supports its motion with the misguided suggestion that Plaintiffs misunderstand important differences between Location History and Web & App Activity, rendering certain exhibits that support Plaintiffs' allegations "irrelevant," (Dkt. 145, at 14 & n.8, "as Plaintiffs concede, the Location History setting—not Web & App Activity—stores location data that can "reflect how an individual is moving"), but the AZAG's discussion of Web & App Activity, like the FAC, *also* states that location information is "derived from a variety of sensors." *See* Ex. 9 at 4-5 (AZAG MSJ) (redacting the description and identification of those sensors). Moreover, the AZAG's evidence confirms that beginning in 2015 (*i.e.*, during the Class period), "Google began storing precise WAA location data, namely precise latitude/longitude—**the same precision with which LH location data is saved**." *Id.* at 5.

1    attached to Plaintiffs' FAC and allow the parties to bring facts before this Court.

2            **b.**      **Evidence Produced to the AZAG Undermines Google's**
                          **Litigation Position on Disclosures, Consent and Social Norms.**

3

4            In parts of its Motion to Dismiss, Google also drops all pretense of making legal

5    arguments and simply proffers as a factual matter that even if it tracks consumers' whereabouts

6    and stores and uses their private information day after day, the factual record shows consumers

7    consented to this.  Google asks for the factual finding that Plaintiffs fail to allege any breach of

8    their privacy interests because Google's use of Web & App Activity to collect location

9    information is "obvious," and some amount of data collection by Google has been noted in

10   various documents and popups that were mentioned in news reports.  Dkt. 145, at 14-16.  Even

11   the limited documents that have been published by the AZAG, however, confirm this is a

12   spurious litigation position completely at odds with the reality at Google.  Indeed, the AZAG has

13   affirmatively moved for partial summary judgment on whether Google's acts and practices

14   surrounding Location History were deceptive.  Unredacted documents show that Google

15   engineers and other employees were under the same misconception regarding user control

16   through Location History as Plaintiffs and the public.  There is no reason to expect that the

17   redacted information, still subject to Google's pending motion to seal, will be less incriminating.

18           The AZAG's motion for summary judgment explains that "[i]n internal discussions

19   regarding the AP report, Google's own employees acknowledged Google's deceptive practices

20   surrounding Location History and Web & App Activity," quoting the following correspondence

21   between Google personnel in August 2018: AZAG Statement of Facts ¶ 134 ("Although I know

22   how it works and what the difference between 'Location' and 'Location History' is, I did not

23   know that Web and App activity had anything to do with location. Also seems like we are not

24   very good at explaining this to users."), ¶ 135 ("Indeed we aren't very good at explaining this to

25   users. Add me to the list of Googlers who didn't understand how this worked an [sic] was

26   surprised when I read the article . . . we shipped a [user interface] that confuses users. . . . "),

27   ¶ 136 ("The complaint in this article is that if you have Web and App Activity enabled and the

28   location toggle enabled, then your search history entries contain your approximate location at the

1   time you made a query. It's also not possible to remove them by clearing your location history,

2   which is counter-intuitive – you have to clear your search history instead."), ¶ 137 ("Definitely

3   confusing from a user point of view if we need googlers [to] explain it to us.") ¶ 138 ("I agree

4   with the article. Location off should mean location off, not except for this case or that case."),

5   ¶¶ 139–40 ("[C]omms and policy are looking for an update on where we are in terms of fixing

6   'location history' fixes and having one single place to turn off instead of 3.")."  Ex. 9 at 15

7   (AZAG MSJ); *see also* Ex. 10 (Statement of Facts); Ex. 13 at GOOG-GLAZ-00001289, 1290,

8   1288; Ex. 14 at GOOG-GLAZ-00001279; Ex. 15 at GOOG-GLAZ-00001253 .

9          The AZAG's Complaint also describes the complete evidentiary record of Google's

10   knowledge of user deception as "overwhelming," AZAG Compl. ¶ 43, and recites further

11   evidence that Google knew of consumers' deception.  *See* Ex. 14 at GOOG-GLAZ-00001270 (On

12   around August 13, 2018, a Google employee [] said the following in an internal email thread:

13   "The current UI *feels* like it is designed to make things possible, yet difficult enough that

14   people won't figure it out." [record citation]."); Ex. 16 at GOOG-GLAZ-00163213 (Another

15   wrote "Speaking as a user, WTF? More specifically I **thought** I had location tracking turned

16   off on my phone. However the location toggle in the quick settings was on. So our messaging

17   around this is enough to confuse a privacy focused Google-SWE [software engineer]. That's not

18   good.")).

19          Further, other materials filed in the AZAG litigation show that no later than February

20   2017, Google employees recognized "the overall mess that we have with regards to data

21   collection, consent, and storage," and questioned whether users "with significant privacy

22   concerns" could "understand what data we are saving."  Ex. 5 at GOOG-GLAZ-00057478.

23          This limited evidence now in the public domain undermines Google's litigation position

24   that consumers consented to its conduct—as well as its tongue-in-cheek contention that the

25   conduct alleged here is "routine commercial behavior."  Dkt. 145, at 2, 16, 19.  In general,

26   questions of consent, disclosures, and the violation of social norms are intensely factual.  This

27   especially true here, where the pleadings that Google spuriously contends are "deficient" have

28   direct support from evidence in Google's possession.

1    Google's arguments for dismissal are inextricably fact-based and indistinguishable from

2    the types of Rule 12(b)(6) motions that courts, including this Court, have repeatedly found to be

3    insufficient to justify a blanket discovery stay.  In light of the newly-disclosed evidence discussed

4    above, and the tremendous amount of relevant evidence that has not yet been publicly revealed,

5    this Court should reject any contention that this case will be dismissed with prejudice, and instead

6    should open discovery now.  The discovery Plaintiffs seek is both relevant to the many factual

7    questions raised by Google's Motion to Dismiss, and also necessary to ensure an efficient, and

8    just, resolution to this action.  *See Alaska Cargo Transport, Inc. v. Alaska R.R. Corp.*, 5 F.3d 378,

9    383 (9th Cir. 1993); *Am. Pac. Textile, Inc. v. United States*, 627 F. App'x 648, 649 (9th Cir.

10   2015); *Glob. Commodities Trading Grp., Inc. v. Beneficio De Arroz Choloma, S.A.*, No. 16-

11   01045, 2016 WL 7474912, at *2 (E.D. Cal. Dec. 29, 2016).  Google cannot satisfy the two-prong

12   test commonly employed in this District for staying discovery at this juncture, and it cannot meet

13   its burden to make a "strong showing" that a continued stay is justified.

**B.      A Strong Showing is Required to Justify an Ongoing Discovery Stay.**

15   Courts have traditionally looked unfavorably upon blanket stays of discovery while Rule

16   12 motions are pending.  *See e.g.*, *Gray v. First Winthrop Corp.*, 133 F.R.D. 39, 40 (N.D. Cal.

17   1990) ("Had the Federal Rules contemplated that a motion to dismiss under Fed. R. Civ. Pro.

18   12(b)(6) would stay discovery, the Rules would contain a provision to that effect. In fact, such a

19   notion is directly at odds with the need for expeditious resolution of litigation.").  For example, in

20   *In re Apple In-App Purchase Litig*, this Court rejected a blanket stay pending a ruling on a

21   dispositive motion, even where the defendant sought dismissal of all claims.  Noting in particular

22   the "strong showing" required to justify such a stay, this Court held:

> Here, Defendant requests the court to stay discovery pending a ruling on a potentially dispositive motion.  In this context, the Ninth Circuit requires Defendant to make a 'strong showing' of why discovery should be stayed.  *See Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975).  However, Defendant has not made a strong showing proving the necessity of staying discovery.  Defendant's contentions that Plaintiffs have not alleged a cognizable claim and that discovery would be costly do not prove the need for a stay.

27   No. 11-1758, No. 63 2012 U.S. Dist. LEXIS 18970, * 3-4 (N.D. Cal.  Feb. 15, 2012).

28   District Courts often apply a two-pronged test to determine the appropriateness of a stay

1   of discovery pending motion practice.  *See, e.g.*, *Reveal Chat Holdco, LLC v. Facebook, Inc.*, No.

2   20-00363, 2020 WL 2843369, at \*1–2 (N.D. Cal. Apr. 10, 2020); *Gibbs v. Carson*, No. 13-0860,

3   2014 WL172187, at \*3 (N.D. Cal. Jan. 15, 2014); *Pac. Lumber Co. v. Nat'l Union Fire Ins. Co.*

4   *of Pittsburgh, PA*, 220 F.R.D. 349, 351 (N.D. Cal. 2003).  These decisions hold that to warrant

5   the stay, first, a pending motion must be potentially dispositive of the entire case, or at least

6   dispositive on the issue at which discovery is directed.  *Pac. Lumber Co.*, 220 F.R.D. at 351.

7   Second, the court must determine whether the pending motion can be decided absent discovery.

8   *Id.* at 352.  "[I]f either prong of this test is not established, discovery proceeds."  *Id.*

9       Google cannot meet the first prong because its pending motion cannot fairly be

10  adjudicated in a way dispositive of this case.  First, Plaintiffs should have had a production of

11  responsive information collected for the AZAG *prior* to their filing of the current operable

12  complaint such that even if the Court sees inadequacies in the pleadings, justice would require

13  under these circumstances that Plaintiffs be given further leave to amend *after* the documents are

14  produced.  Second, even if some claims are or may be dismissed, the possibility of a leave to

15  amend some claims renders a motion non-dispositive for purpose of this inquiry.  *Singh v.*

16  *Google, Inc.*, No. 16-03734, 2016 WL 10807598, at \*2 (N.D. Cal. Nov. 4, 2016) (denying motion

17  to stay discovery where "the Court would consider whether leave to amend should be granted,

18  rendering Google's motion not dispositive"); *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Res.*

19  *Dev. Servs., Inc.*, No. 10-1324, 2010 WL 3746290, at \*1 (N.D. Cal. Sept. 18, 2010) (same,

20  applying two-prong test and denying motion to stay).

21      Further, in applying the two-factor test, courts take a "preliminary peek" at the issues of

22  the pending motion to determine whether it can reasonably be dispositive.  *In re Nexus 6P Prod.*

23  *Liab. Litig.*, No. 17-02185, 2018 WL 3036734, at \*1–2 (N.D. Cal. June 19, 2018) (citation

24  omitted).  Here, Google's arguments, though ostensibly pursuant to Fed. R. Civ. P. 12(b)(6),

25  would, to be successful, require the Court to make fact determinations by drawing inferences in

26  Google's, as the moving party, favor.  Thus, because even a "preliminary peek" at the motion

27  shows that it would require eschewing the well-established standard under Rule 12(b)(6) that the

28  Court draws all reasonable inferences from the allegations "in the light most favorable to the non-

1  moving party" it cannot reasonably be dispositive.  *In re Facebook, Inc. Internet Tracking Litig.*,

2  956 F.3d 589, 601 (9th Cir. 2020).

3        Indeed, a stay on discovery is not appropriate under Ninth Circuit precedent unless there

4  are no factual issues raised by the motion to dismiss.  *Wenger v. Monroe*, 282 F.3d 1068, 1077

5  (9th Cir. 2002) (*quoting Wood v. McEwen*, 644 F.2d 797, 801 (9th Cir. 1981); *Rae v. Union Bank*,

6  725 F.2d 478, 481 (9th Cir.1984) ("[D]iscovery is appropriate where there are factual issues

7  raised by the motion").  As the preceding sections outlining Google's arguments for dismissal

8  show, factual issues are rife throughout this dispute, such that discovery should go forward.

9        **C.      Reopening Discovery Will Avoid Unnecessary Delay and Thus Avoid**
           **Prejudice to Plaintiffs and the Class.**

10

11        If the current stay of discovery were to remain in place, it would significantly prejudice

12  Plaintiffs and the putative Class by unnecessarily delaying the progress and resolution of this

13  case.  Over time memories fade and evidence is lost.  While Google may protest that it has

14  implemented procedures for data preservation, that ignores that there may be third parties from

15  whom discovery will be sought, as well as the fact that Google has repeatedly failed to

16  acknowledge the scope of its own conduct and may be limiting its preservation efforts consistent

17  with its preferred interpretation of Plaintiffs' allegations.  In addition, opening discovery would

18  reduce the risk of spoliation of pertinent ESI.

19        Moreover, to the extent Google's Motion to Dismiss identifies any deficiencies in

20  Plaintiffs' allegations, allowing discovery to commence now would still facilitate moving this

21  case forward as it would allow Plaintiffs to more expeditiously further develop the FAC's already

22  robust allegations, including with the benefit of factual information known to *all* parties, and the

23  Court.  *See In re Apple In-App Purchase Litig.*, 2012 U.S. Dist. LEXIS 18970, at * 4 (*citing San*

24  *Francisco Tech. v. Kraco Enterprises LLC*, No. 11-00355, 2011 WL 2193397, at *3 (N.D. Cal.

25  June 6, 2011) ("[E]ven if the court were to grant Defendant's motion to dismiss, it is not

26  unreasonable to assume that it would grant leave to amend pleadings. . . .  Thus, the discovery

27  sought by Plaintiffs might 'allow for a more detailed complaint' and 'assist in expediting' the

28  case…. Therefore . . . the court finds there is greater benefit to allowing discovery to proceeds at

1   this time as it would promote the court's interest, as well as that of the public, in judicial

2   efficiency and timely resolution of litigation.").

3                                    **CONCLUSION**

4          The Court's Order entered on January 14, 2020 (Dkt. 118) directs that discovery in this

5   case is stayed "until after Google has answered."   For the foregoing reasons, Plaintiffs

6   respectfully request entry of an Order lifting the restriction on discovery and allowing Plaintiffs to

7   propound discovery requests on Google.

8

9   Dated: September 30, 2020                   Respectfully Submitted,

10                                              _____*/s Michael W. Sobol*_____
                                                Michael W. Sobol (SBN 194857)
11                                              msobol@lchb.com
                                                Melissa Gardner (SBN 289096)
12                                              mgardner@lchb.com
                                                Michael Levin-Gesundheit (SBN 292930)
13                                              mlevin@lchb.com
                                                LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
14                                              275 Battery Street, 29th Floor
                                                San Francisco, CA  94111-3339
15                                              Telephone:  415.956.1000
                                                Facsimile:  415.956.1008
16
                                                _____*/s Tina Wolfson*_____
17                                              Tina Wolfson (SBN 174806)
                                                twolfson@ahdootwolfson.com
18                                              Theodore Maya (SBN 223242)
                                                tmaya@ahdootwolfson.com
19                                              Bradley K. King (SBN 274399)
                                                bking@ahdootwolfson.com
20                                              Christopher Stiner (SBN 276033)
                                                cstiner@ahdootwolfson.com
21                                              10728 Lindbrook Drive
                                                Los Angeles, CA 90024
22                                              Telephone: 310.474.9111
                                                Facsimile: 310.474.8585
23
                                                Nicholas Diamand (*pro hac vice*)
24                                              ndiamand@lchb.com
                                                LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
25                                              250 Hudson Street, 8th Floor
                                                New York,  NY 10013
26                                              Telephone:  212.355.9500
                                                Facsimile:  212.355.9592
27
                                                *Interim Co-Lead Class Counsel*
28