KEKER, VAN NEST & PETERS LLP
BENJAMIN BERKOWITZ - # 244441
bberkowitz@keker.com
THOMAS E. GORMAN - # 279409
tgorman@keker.com
CHRISTOPHER S. SUN - # 308945
csun@keker.com
CHRISTINA LEE - # 314339
clee@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:    415 397 7188

Attorneys for Defendant GOOGLE LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE: GOOGLE LOCATION HISTORY LITIGATION | Case No. 5:18-cv-05062-EJD |
| | **REPLY IN SUPPORT OF GOOGLE LLC'S MOTION TO DISMISS** |
| | Date:        November 5, 2020<br>Time:        9:00 a.m.<br>Dept:        Courtroom 4 – 5th Floor<br>Judge:      Hon. Edward J. Davila |
| | Date Filed: November 2, 2018 |
| | Trial Date:  None Set |

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.      INTRODUCTION ...................................................................................................1

II.     ARGUMENT ..........................................................................................................2

    A.      Plaintiffs have alleged no facts supporting their conclusory assertion that Google improperly collected comprehensive location information from them.......................................................................................................................2

    B.      Plaintiffs' sparse and ambiguous allegations do not state a common-law or constitutional-privacy claim......................................................................................8

          1.      Plaintiffs fail to plead facts establishing a legally protected privacy interest..........................................................................................................8

          2.      Plaintiffs fail to plead facts establishing their privacy was breached in light of Google's disclosures. .............................................................10

          3.      Plaintiffs fail to plead facts establishing an egregious breach of social norms. ..................................................................................................12

    C.      Plaintiffs cannot state a claim for quasi-contract and have not stated a claim for breach of contract. ..................................................................................13

          1.      Plaintiffs cannot state a claim for quasi-contract. ......................................13

          2.      Plaintiffs have not stated a claim for breach of contract...........................15

III.    CONCLUSION.....................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*AdTrader, Inc. v. Google LLC*,
  No. 17-CV-07082-BLF, 2018 WL 3428525 (N.D. Cal. July 13, 2018) ................................ 14

*Airs Aromatics, LLC v. Opinion Victoria's Secret Stores Brand Mgmt., Inc.*,
  744 F.3d 595 (9th Cir. 2014) ......................................................................................... 5

*Bradley v. Chiron*,
  136 F.3d 1317 (Fed. Cir. 1998) ...................................................................................... 5

*Brodsky v. Apple Inc.*,
  445 F. Supp. 3d 110 (N.D. Cal. 2020) .......................................................................... 15

*Carpenter v. United States*,
  138 S. Ct. 2206 (2018) ............................................................................................... 8, 9

*Clear Channel Outdoor, Inc. v. Bently Holdings Cal. L.P.*,
  No. 11-2573 EMC, 2011 WL 6099394 (N.D. Cal. Dec. 7, 2011) ........................... 14

*Digital Shape Techs., Inc. v. Glassdoor, Inc.*,
  No. 16-mc-80150-JSC, 2016 WL 5930275 (N.D. Cal. Oct. 12, 2016) .................... 7

*In re Facebook, Inc. Internet Tracking Litig.*,
  956 F.3d 589 (9th Cir. 2020) .................................................................... 8, 9, 10, 13, 15

*In re Google Assistant Privacy Litig.*,
  457 F. Supp. 3d 797 (N.D. Cal. 2020) .................................................... 3, 6, 7, 13

*Heeger v. Facebook, Inc.*,
  No. 18-CV-06399-JD, 2019 WL 7282477 (N.D. Cal. Dec. 27, 2019) ............... 3, 11

*In re iPhone App. Litig.*,
  844 F. Supp. 2d 1040 (N.D. Cal. 2012) ..................................................................... 13

*Letizia v. Facebook Inc.*,
  267 F. Supp. 3d 1235 (N.D. Cal. 2017) ..................................................................... 14

*Lewis v. Casey*,
  518 U.S. 343 (1996) ........................................................................................................ 6

*Low v. LinkedIn Corp.*,
  900 F. Supp. 2d 1010 (N.D. Cal. 2012) ................................................................. 2, 5

*Matilock, Inc. v. Pouladdej*,
  No. 20-CV-01186-HSG, 2020 WL 3187198 (N.D. Cal. June 15, 2020) ................ 2

*Med. Lab. Mgmt. Consultants v. Am. Broad. Cos., Inc.*,
　306 F.3d 806 (9th Cir. 2002) ...................................................................................12

*Meyer v. Aabaco Small Bus. LLC*,
　No. 5:17-CV-02102-EJD, 2018 WL 306688 (N.D. Cal. Jan. 5, 2018)..................................14

*Moss v. U.S. Secret Serv.*,
　572 F.3d 962 (9th Cir. 2009) .....................................................................................2

*PAE Gov't Servs., Inc. v. MPRI, Inc.*,
　514 F.3d 856 (9th Cir. 2007) .....................................................................................5

*Rojas-Lozano v. Google, Inc.*,
　159 F. Supp. 3d 1101 (N.D. Cal. 2016) ..................................................................13

*Schulz v. Cisco Webex, LLC*,
　No. 13-CV-04987-BLF, 2014 WL 2115168 (N.D. Cal. May 20, 2014) ...............................15

*Sloan v. Gen. Motors LLC*,
　No. 16-CV-07244-EMC, 2020 WL 1955643 (N.D. Cal. Apr. 23, 2020) ..............................13

*Sprewell v. Golden State Warriors*,
　266 F.3d 979 (9th Cir. 2001) .................................................................................2, 4

*Weingand v. Harland Fin. Sols., Inc.*,
　No. C-11-3109 EMC, 2012 WL 3763640 (N.D. Cal. Aug. 29, 2012)..................................14

*Wolf v. Wells Fargo Bank, N.A.*,
　No. C11–1337 WHA, 2011 WL 4831208 (N.D. Cal. Oct. 12, 2011) ....................................14

*In re Yahoo Mail Litig.*,
　7 F. Supp. 3d 1016 (N.D. Cal. 2014) ......................................................................10

**State Cases**

*Hill v. Nat'l Collegiate Athletic Ass'n*,
　7 Cal. 4th 1 (1994) ...............................................................................................8, 12

**Rules**

Fed. R. Civ. P. 8 ...............................................................................................14

Fed. R. Civ. P. 12(b)(6)........................................................................................2

# I.     INTRODUCTION[1]

Plaintiffs' Opposition reveals that Plaintiffs cannot correct the pleading defects this Court identified when dismissing their prior complaint and should not be afforded another futile attempt at amendment. Over the course of eleven complaints and four motions to dismiss, Plaintiffs' theory of liability has always been about "two privacy settings: Location History and Web & App Activity." Order at 1. Specifically, Plaintiffs alleged that Google violated their privacy after they had turned off Location History by continuing to collect their location information via Web & App Activity. This theory failed, however, when this Court held that Plaintiffs hadn't identified *any* data that Google collected from them, nor identified what data was collected at sensitive and confidential locations. *Id.* at 18-19. Moreover, Plaintiffs' allegations and exhibits showed (and continue to show) that Web & App Activity collected location data only sporadically, when users interacted with certain Google services (like Maps), *id.*, and that Google disclosed this collection.

Rather than address the defects in their complaint identified by the Court's Order, Plaintiffs have tried to expand their theory of liability by baldly asserting that Google has amassed a collection of their location data so "comprehensive" that it violates their privacy interests. But Plaintiffs' bald and conclusory assertions—devoid of well-pleaded facts—cannot save their claims. Nothing in the Amended Complaint ("AC") rebuts Plaintiffs' concessions that Web & App Activity collects location data only intermittently and Plaintiffs have pleaded no facts supporting any broader theory of collection. Indeed, Plaintiffs still have not alleged facts showing that Google collected a single iota of sensitive location information about them, even though they concede they have ready access to tools showing what, if any, location data Google collected. *See, e.g.,* AC ¶ 55. No doubt this is because these tools show that Google has neither collected sensitive location data about them nor collected such data "comprehensively."

Having conceded that Web & App Activity collects location information, at most, sporadically, Plaintiffs' Opposition pivots to a new set of speculative assertions. Plaintiffs theorize that Google possesses a host of unspecified technologies that *might* allow Google to

---

[1] Throughout this brief, unless otherwise stated, emphases were added to quotations and internal punctuation, alterations, and citations were omitted from them.

1392674

1   collect comprehensive location data from them, and plead for discovery in the hopes that they can

2   find something to support their unfounded allegations. But even if the Court were to credit

3   Plaintiffs' conclusory allegations that Google had the *capability* to collect their location

4   information comprehensively, Plaintiffs plead no facts that Google actually did so. Because

5   Plaintiffs have not identified any location information actually and unlawfully collected by

6   Google, every one of the claims in Plaintiffs' AC should be dismissed with prejudice.

7   **II.   ARGUMENT**

8       **A.    Plaintiffs have alleged no facts supporting their conclusory assertion that
9             Google improperly collected comprehensive location information from them.**

10      Plaintiffs spend almost two pages of their Opposition educating the Court about the legal

11  standard applicable to Rule 12(b)(6) motions but conveniently omit any reference to the specific

12  rule that renders their AC defective: while the Court must credit a plaintiff's factual allegations, it

13  need not accept conclusory allegations. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988

14  (9th Cir. 2001). In particular, a plaintiff "may not obfuscate the nature of its causes of action

15  against Defendant, then fill in the necessary details later" through discovery. *Matlock, Inc. v.*

16  *Pouladdej*, No. 20-CV-01186-HSG, 2020 WL 3187198, at *4 (N.D. Cal. June 15, 2020).

17      That's precisely what Plaintiffs are trying to do here. They assert that, even after they

18  turned off "Location History," Google recorded their movements "minute by minute, over years."

19  Opp. at 6. But the AC does not allege a single fact supporting that assertion. Instead, Plaintiffs

20  plead facts at most showing Google had the *capability* to collect location data from its users and

21  ask the Court to infer that because Google *could* collect comprehensive location data after

22  Plaintiffs turned off the Location History setting, that Google in fact *did*.

23      That inference cannot, of course, satisfy the federal pleading standards. To state a viable

24  cause of action, it is not enough for plaintiffs to allege that a defendant had the means to harm

25  them; the plaintiffs must allege that the defendant actually harmed them. *See Low v. LinkedIn*

26  *Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (allegation that defendant could de-

27  anonymize data was insufficient to state privacy claim absent allegation that defendant actually

28  did de-anonymize the data); *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 971 (9th Cir. 2009) (failure

to tie defendants to misconduct warranted dismissal because courts aren't required to make "unwarranted deductions of fact to save a complaint from a motion to dismiss"). Here, that means Plaintiffs must allege that Google actually collected their comprehensive location information without their consent. Facts describing whether and how Google may have been able to collect location data generally cannot support Plaintiffs' claims because, as Plaintiffs concede, AC ¶ 46; Dkt. 131-3 (Ex. 10) at 68-98, Google collected location data from consenting users. Indeed, Plaintiffs themselves admit that—despite their avowed privacy concerns—they have given Google permission to collect their location information for specific purposes. Opp. at 4.

The AC contains no facts showing Google ever collected comprehensive location data from Plaintiffs improperly. They have not, for example, alleged any facts showing that (1) Google ever collected *any* location data from them while the Location History setting was off, (2) what kind of location data Google collected, (3) how Google collected the data, (4) the frequency with which Google collected the data, or (5) whether the data was stored and for how long. Absent such facts, the AC cannot state a privacy claim premised on comprehensive collection. *In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 816-17 (N.D. Cal. 2020) (dismissing Federal Wiretap Act claim because plaintiffs had not alleged that they actually were recorded); *Heeger v. Facebook, Inc.*, No. 18-CV-06399-JD, 2019 WL 7282477, at *4 (N.D. Cal. Dec. 27, 2019) (concluding that "bareboned and vague allegation" that Facebook "collected [plaintiff's] 'private' location data" did not state a claim).

While Plaintiffs may self-servingly proclaim in their Opposition that they have pled their claims "in a detailed, well-researched, and plausible manner," Opp. at 5, reviewing the actual allegations in the AC shows that simply isn't true. Plaintiffs have cited 36 different paragraphs and exhibits[2] from the AC in the section of their Opposition titled "Plaintiffs Allege Google Stored Broad Swaths of their Information." Opp. at 7-9. None show that Google collected comprehensive location information from Plaintiffs without their permission—or any location

---

[2] AC ¶¶ 3-4, 6, 13-14, 18-21, 23-24, 26-27, 29-30, 46-49, 51-54, 57, 63-67, 77, 80, 113, 116-17, Ex. 18, Ex. 41.

information at all. Instead, their (largely irrelevant) content falls into seven broad categories.

**Conclusory allegations** (AC ¶ 6). In paragraph 6, Plaintiffs allege that Google collects comprehensive location data and does so "regardless of whether users tell it not to . . . by opting out of the Location History setting." There are no supporting factual allegations. This is precisely the sort of bald, conclusory allegation the Court should disregard. *See Sprewell*, 266 F.3d at 988.

**Allegations related to other companies** (AC ¶¶ 65-66). These paragraphs summarize the findings of a series of *New York Times* articles describing how "granular location data . . . is collected by hundreds of mobile apps and then shared with dozens of location data brokers." *Id.* ¶ 65. Importantly, and as the underlying articles acknowledge, none of this data was collected by Google. Dkt. 131-3 (Ex. 44) at 383. These allegations are thus irrelevant to Plaintiffs' claims.

**Speculative allegations about where plaintiffs might have traveled** (AC ¶¶ 13-14, 18-21, 23-24, 26, 27, 29-30). In these paragraphs, Plaintiffs each attest that they carried their cell phones "virtually everywhere," *id.* ¶¶ 13, 18, 23, 26, 29, and then list a number of facts that "could be determined" from reviewing the places they travelled with their phones, *id.* ¶¶ 14, 20-21, 24, 27, 30. Plaintiff Michael Childs further details a handful of public places where Google "would have" tracked him, but never alleges Google actually tracked him. *Id.* ¶ 19.

These allegations are most notable for what they don't allege. None of these paragraphs ever once alleges any ***facts*** showing that Google actually collected location information from Plaintiffs after they turned off Location History, much less what kind of data, how much, and with what frequency. Notably, Plaintiffs have conceded they have access to tools—"My Activity" and "Takeout"—that give them an easy way to identify what location information Google has collected about them. *Id.* ¶ 55. Plaintiffs' only response is to assert that these tools might not represent the "full compendium of data" Google has on them. Opp. at 19. But Plaintiffs plead no ***facts*** to support this contention and, at the very least, these tools might have shown that Google collected ***some*** location information about them. As it stands, Plaintiffs have not pointed to even one scrap of location data that Google has collected.

**General descriptions of Google's capabilities** (AC ¶¶ 46, 49, 51, 57, 63-64, 67). These paragraphs simply describe the tools Google uses to collect data (some related to location, and

4

1392674

1  some not) from consenting users. These tools include, for example, IP addresses, GPS chips, cell

2  towers (*id.* ¶¶ 46, 51), cookies, pixeltags, and server logs (*id.* ¶ 49). One paragraph describes how

3  Google owns patents "concerning the collection, treatment, and analysis of geolocation data." *Id.*

4  ¶ 57. Three other paragraphs speculate that Google could have the capability to de-anonymize

5  data. *Id.* ¶¶ 63-64, 67. But the mere allegation that Google may have these capabilities does not

6  indicate any wrongdoing because, as Plaintiffs acknowledge, Google uses these tools when

7  servicing consenting users. *Id.*¶ 46; Dkt. 131-3 (Ex. 10) at 68-98. As discussed above, Google's

8  capability to collect comprehensive location information from Plaintiffs does not raise an

9  actionable inference that Google in fact did so. *See Low*, 900 F. Supp. 2d at 1025.

10      **Allegations regarding Web & App Activity** (AC ¶¶ 3-4, 47-48, 77, 116-117). In these

11  paragraphs, Plaintiffs largely recycle allegations about Web & App Activity from the

12  Consolidated Complaint. But as this Court found, and as Plaintiffs concede, Web & App Activity

13  does not continuously collect location data from users. It collects data when triggered by an

14  individual's use of specific Google services. Order at 2, 17-18; AC ¶ 49; Dkt. 131-3 (Exs. 33, 35).

15  Plaintiffs try to remedy this defect by deleting the relevant admission from the AC without

16  providing any justification or explanation for doing so. Their opposition similarly fails to provide

17  any justification or explanation. Instead, Plaintiffs spend half a page of their opposition

18  castigating Google for a Bluebooking error regarding a "*see also*" citation to *Bradley v. Chiron*,

19  136 F.3d 1317, 1325 (Fed. Cir. 1998). Opp. at 9-10. But Ninth Circuit law holds that "a party

20  cannot amend pleadings to directly contradict an earlier assertion." *Airs Aromatics, LLC v.*

21  *Opinion Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595, 600 (9th Cir. 2014).

22      Plaintiffs' citation to *PAE Government Services, Inc. v. MPRI, Inc.*, 514 F.3d 856, 859

23  (9th Cir. 2007), does not prove otherwise. *PAE* holds only that courts should not **strike** allegations

24  merely because they are inconsistent with allegations in earlier pleadings. *Id.* While *PAE* permits

25  Plaintiffs to amend their pleadings "to conform to . . . newly discovered realities," *id.*, here,

26  Plaintiffs have alleged no fact—newly discovered or otherwise—to suggest that their prior

27  allegations should be so "conformed." To the contrary, Plaintiffs' allegations regarding Web &

28  App Activity rely on the same AP report cited in their prior complaints' discussions of Web &

App Activity, which acknowledges that location information is stored when a user interacts with specific Google products. AC ¶ 49; Dkt 131-3 (Ex. 2) at 2-3. As this Court previously held, such sporadic data collection is insufficient to establish an actionable privacy violation. Order at 17.

Plaintiffs half-heartedly attempt to salvage their Web & App Activity allegations by pointing back to that report, which indicates that Web & App Activity allowed Google to track an individual's location 22 times over the course of eight hours. Opp. at 8 (citing AC ¶ 77).[3] But even if that fact somehow qualified as the kind of "minute by minute" tracking Plaintiffs are accusing Google of performing, Opp. at 6, it doesn't show that Google collected any location data—comprehensive or otherwise—from *Plaintiffs*. It shows, at most, Google collected some location data from a non-party when he was interacting with Google services. That isn't enough to state a claim. *In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d at 816 (allegations that a third-party reporter's communications were intercepted by Google "do not suffice to show that Plaintiffs' own oral communications were intercepted, which they must do"); *see also Lewis v. Casey*, 518 U.S. 343, 357 (1996) ("[N]amed plaintiffs . . . must allege . . . that they personally have been injured, not that injury has been suffered by other, unidentified members of the class . . . ."). Again, Plaintiffs easily could have determined what and how much location data Google collected from them, AC ¶ 55, but they chose not to, presumably because Google's location data collection wasn't nearly as comprehensive as Plaintiffs would like this Court to believe.

**Third-party reports about Google's data-collection capabilities** (AC ¶¶ 52-54, Ex. 18). Plaintiffs describe in these paragraphs an article from TechRadar and a report by Douglas C. Schmidt, a Professor at Vanderbilt. Both documents purport to describe the data Google can

---

[3] Plaintiffs' suggestion that this third-party was tracked at 22 separate locations is exaggerated. Instead, the third-party map pasted into the complaint from the AP's website shows bursts of data shared with Google at distinct intervals (*e.g.* three pings within a couple minutes from the same location, six pings from a different location). The pattern suggests that the "researcher" was interacting with Google Maps or another location-based service at specific times, but it does not suggest that he was being tracked "comprehensively" everywhere he went.

1392674

collect from a typical user. Plaintiffs' reliance on these reports simply continues their habit of impermissibly using the experiences of third parties to try to prove their own claims. *See In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d at 816-17. It is unclear from the reports and Plaintiffs' allegations what device settings were used for either report, whether those settings were the same as on Plaintiffs' devices, or whether the devices in those reports were used in the same way as Plaintiffs' devices. As just one example, one of the key conditions in Professor Schmidt's analysis was that the phone being analyzed was operating on the Android platform[4] and had a "Chrome browser session . . . active in the background." Dkt. 131-3 (Ex. 18) at 186 ¶ 22. But only a handful of Plaintiffs allege they owned an Android device, and none allege they used Chrome, much less had it running constantly. Professor Schmidt's analysis is therefore inapplicable. If Plaintiffs wanted to identify the data Google collected from them, they could have used the "My Activity" and "Takeout" tools. Or they could have had the forensic expert they hired, AC ¶ 59 n. 43, replicate Professor Schmidt's analysis using their personal settings. They chose not to do so (or chose not to share the results) and thus have failed to state a claim.

Nor would these reports be helpful even if they were applicable to Plaintiffs' specific circumstances. For example, the reports do not explain what kind of location data Google was collecting or how. The TechRadar report doesn't even say that Google was collecting location data at all. It simply says that 90% of all Android apps share data with Google and speculates that this data "*could* involve . . . location." Dkt. 131-3 (Ex. 17) at 169. And most of the location data analyzed in Professor Schmidt's report aren't encompassed by Plaintiffs' claims. As Plaintiffs concede, the location data collection analyzed by Professor Schmidt "is driven largely by data activity from Google's publisher and advertiser products." Opp. at 9. But the location data sent by these products predominantly revealed nothing more than a user's IP address. Dkt. 131-3 (Ex. 18*)* at 190 ¶ 35; *see also Digital Shape Techs., Inc. v. Glassdoor, Inc.*, No. 16-mc-80150-JSC, 2016 WL 5930275, at *5 (N.D. Cal. Oct. 12, 2016) (finding failure to show privacy would be violated

---

[4] Professor Schmidt also analyzed an iPhone but concluded that "Google did not collect any user location during the 24-hour experiment timeframe via iPhone." Dkt. 131-3 (Ex. 18) at 187 ¶ 25.

1392674

by virtue of disclosure of IP addresses). The remaining location data sent by these products was sent only "when apps have the appropriate permissions." Dkt. 131-3 (Ex. 17) at 191 ¶ 41. Thus, that third-party report falls far short of what would be needed to support Plaintiffs' claims.

**Third-party complaint from Arizona** (AC ¶¶ 80, 113). These paragraphs attempt to piggyback on a separate complaint filed by Arizona's Attorney General and pursued by private outside counsel. But that complaint did not include any privacy claims. Plaintiffs also vaguely accuse Google of having collected location data through WiFi access points after users turned off a setting called "WiFi scanning," but provide no reason to think the location data collected was "comprehensive." AC ¶¶ 80, 113. Indeed, Plaintiffs never allege ***facts*** showing that any such data was collected regarding them, explain what data was collected, how granular it was, or how frequently it was collected. Indeed, none of the Plaintiffs allege whether they turned off or enabled the "WiFi scanning" setting, so these allegations cannot concern their claims.

### B.   Plaintiffs' sparse and ambiguous allegations do not state a common-law or constitutional-privacy claim.

The sparse allegations in Plaintiffs' AC fail to establish any of the elements of a common-law or constitutional-privacy claim: (**1**) a legally protected privacy interest; (**2**) a reasonable expectation of privacy in the circumstances; and (**3**) a serious invasion of privacy constituting an ***egregious*** breach of social norms. *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 35-37 (1994); Order at 14-19 (analyzing common-law and constitutional-privacy claims together).

### 1.   Plaintiffs fail to plead facts establishing a legally protected privacy interest.

Plaintiffs have not pled "sufficient facts to establish a legally protected privacy interest." Order at 19; *see also* MTD at 10-15. Indeed, Plaintiffs' Opposition abandons any pretext that Plaintiffs' claims are premised in any way on the collection of specific location data, never mind the sensitivity of the specific locations they may have visited, opting instead to focus on their (equally unsupported) allegation that Google collected "comprehensive" location data from them. Opp. at 12-13. Plaintiffs principally rely on *Carpenter v. United States*, 138 S. Ct. 2206 (2018), and *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589 (9th Cir. 2020), but neither

case supports Plaintiffs' attempt to allege a legally protected privacy interest in this case.

**First**, Plaintiffs' repeated attempts to liken their case to *Carpenter* continue to prove futile. *See* Opp. at 5-8, 11-12, 14, 17-18. *Carpenter* was limited to the "narrow" question of whether the **government** violated the Fourth Amendment by obtaining Carpenter's cell-site location information ("CSLI") from MetroPCS and Sprint without a warrant. 138 S. Ct. at 2212, 2220. *Carpenter* did not, for example, involve a claim that **MetroPCS and Sprint** had invaded Carpenter's privacy by collecting Carpenter's CSLI in the first instance. *See* Order at 17; *see also* 138 S. Ct. at 2242 (Thomas, J., dissenting) ("Carpenter stipulated below that the cell-site records are the business records of Sprint and MetroPCS."). Accordingly, this Court previously held that *Carpenter* "does not stand for the proposition that geolocation collection violates the right of privacy" generally. Order at 17-18. Moreover, the CSLI in *Carpenter* bears no resemblance to the location data here, which involves location information generated when users interact with Google's web and app services. *See supra* Section II.A; *see also* Order at 17-18; MTD at 3-5, 13-14. As noted in *Carpenter*, "[c]ell phones **continuously** scan . . . for the best signal, which generally comes from the closest cell site," and "[e]ach time the phone connects to a cell site, it generates a time-stamped record." 138 S. Ct. at 2211; *see also id.* at 2216 (noting "that the individual **continuously** reveals his location to his wireless carrier"). Plaintiffs' speculative allegations about what location data Google collected from them are fundamentally different from the government obtaining "12,898 location points cataloging Carpenter's movements." *Id.* at 2212. Plaintiffs have failed to allege that Google actually collected (as opposed to could have collected) **any** specific location information from them at even a single location point, much less continuously. *See* AC ¶¶ 14, 20, 24, 27, 30; Order at 19 (noting Plaintiffs' failure to plead "even how often their geolocation was accessed").

**Second**, Plaintiffs' reliance on *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589 (9th Cir. 2020) ("*In re Facebook*"), is similarly misplaced. As this Court previously recognized, *In re Facebook* did not involve a material change in the law as applied to this case. Dkt. 130 at 2. Notwithstanding the Court's conclusion that *In re Facebook* was not "dispositive" as to Plaintiffs' privacy claims, *id.*, Plaintiffs nonetheless attempt—to no avail—to repaint their

1   amended allegations to fit the mold of *In re Facebook*, *see* Opp. at 3-6, 14-15, 18. Plaintiffs assert

2   baldly that *In re Facebook* "concerned less inherently sensitive data, and less data overall, than

3   the geolocation tracking alleged here." Opp. at 6. But their bare assertions crumble when

4   examined against the actual allegations in the AC. Here, Plaintiffs fail to allege what location

5   information, including sensitive location information, Google actually collected from them, *see*

6   AC ¶¶ 14, 20, 24, 27, 30, despite having easy access to tools enabling them to view data collected

7   from them. The thin facts here bear no resemblance to the undisputed collection at issue in *In re*

8   *Facebook*, which involved Facebook allegedly collecting an "enormous" amount of user

9   browsing information through plug-ins embedded in over 7 million websites ***after*** users had

10  logged out of Facebook, and then "correlat[ing]" that "comprehensive browsing history" with

11  other user web actions to compile "highly personalized profiles." 956 F.3d at 596, 603-04.

12  Instead, in the AC, the only location information plausibly at issue came through the Web & App

13  Activity setting, which collected only "bits and pieces" of location data. Order at 18.

14  Plaintiffs' attempts to distinguish the AC from the deficient pleadings previously rejected

15  by other courts fail for similar reasons: Plaintiffs have alleged no facts showing Google collected

16  their location data comprehensively or while they were at sensitive locations. *In re Yahoo Mail*

17  *Litig.*, 7 F. Supp. 3d 1016, 1040-42 (N.D. Cal. 2014); *see also* MTD at 11-12 (citing cases). Thus,

18  Plaintiffs' bare allegations are insufficient to establish a legally protected privacy interest in any

19  location information allegedly collected by Google. Having failed to cure the very pleading

20  deficiencies that previously warranted dismissal of their privacy claims, Plaintiffs should not be

21  afforded a further opportunity at amendment. *See* Order at 19 ("Failure to cure the deficiencies

22  addressed in this Order will result in dismissal with prejudice.").

23              **2.      Plaintiffs fail to plead facts establishing their privacy was breached in**
24                        **light of Google's disclosures.**

25  Plaintiffs fail to plead any facts showing that Google violated any reasonable expectation

26  of privacy in their location information, irrespective of their labeling any collected information as

27  "comprehensive." Plaintiffs tellingly continue to refuse to state whether they actually read the

28  Location History support-page statement at the center of this lawsuit—that "the places you go are

no longer stored" after turning off Location History. *See* Opp. at 18; AC ¶¶ 11-12, 16-17, 22, 25, 28 (avoiding pleading Plaintiffs actually read the statement). They also continue to dispute the applicability of Google's repeated disclosures that Google may collect information about them, including location information, and including through the Web & App Activity setting. *See* Opp. at 19; *see also* Dkt. 131-3 (Ex. 10) at 71 (Privacy Policy); *id.* (Ex. 35) at 351-52 (Web & App Activity support page); Dkts. 99-2, 99-3, 99-4 (previous versions of Web & App Activity support page); Dkt. 88-1 ¶ 5; Dkt. 88-2 (Exs. 3A-D) (previous versions of Privacy Policy). Although Plaintiffs try to handwave away Google's disclosures, the disclosures directly belie Plaintiffs' insinuations of "deceit" on Google's part and foreclose Plaintiffs' attempts to liken their case to ones where courts have found deceit to be a "plus factor" in helping establish either a reasonable expectation of privacy or the offensiveness of an intrusion. *See* Opp. at 15-16. Given Google's repeated public disclosures that it may collect location information from users and may do so through Web & App Activity for users who have the setting on, Plaintiffs cannot plausibly plead that Google collected their location information "secretly" or procured their consent fraudulently, particularly where they refuse to plead specific reliance on any purported fraudulent statement by Google. Opp. at 16. And even if Plaintiffs had sufficiently pled deceit, "pleading the 'plus' factor alone is not enough to carry the day" where "the complaint says too little in the way of facts tied specifically to the core elements of the . . . privacy counts." *Heeger*, 2019 WL 7282477, at *4.

Plaintiffs' failure to plead that Google violated any reasonable expectation of privacy through deceit is further underscored by the fact that, when users turned off Location History, Google disclosed that it could continue to save location data when they used "other Google services, like Search and Maps," and that such data would not be stored in the Location History setting. Dkt. 131-3 (Ex. 30) at 286; *see also id.* (Ex. 2) at 4-5. Although Plaintiffs misleadingly suggest that this disclosure changed after they filed this lawsuit, and that it did not appear on mobile devices, Opp. at 19, this suggestion is contradicted by their own complaint. Indeed, the same disclosure was detailed in the AP report that precipitated this lawsuit. *See* Dkt. 131-3 (Ex. 2) at 4-5; *id.* (Ex. 30) at 286. That report explains that when users turn off Location History on their Apple devices, as Plaintiff Gamboa alleges he did, AC ¶¶ 28, 141, the iPhone popup states,

1392674

"None of your Google apps will be able to store location data **in Location History**," Dkt. 131-3 (Ex. 30) at 286; *see also id.* (Ex. 2) at 5.[5] And when users turn off Location History on their Google Account webpages, as Plaintiffs Patacsil, Oshana, and Mahon allege they did, AC ¶ 11, 22, 25 (alleging Plaintiffs "turned the 'Location History' setting to 'off' on [their] Google Account[s]"), a "popup" informs them that "**some location data may be saved as part of your activity on other Google services, like Search and Maps**" even after Location History is turned off. Dkt. 131-3 (Ex. 30) at 286; *see also id.* (Ex. 2) at 4. Plaintiffs thus have not plausibly claimed that Google fraudulently violated any reasonable expectation of privacy in their location data.

Beyond being explicitly disclosed, the fact that Google may collect location information through Web & App Activity when users interact with Google services is also implicitly disclosed. The Court previously found, "consent to geolocation tracking is corollary to the use of a Google service, like Google Maps," and observed that "Plaintiffs acknowledge that in some applications, contemporaneous use of location information may be appropriate—for example, to receive 'driving directions' or 'showtimes for movies playing near[by].'" Order at 16 (citing Pls.' Opp. to MTD, Dkt. 93 at 3). Indeed, Plaintiffs continue to concede in their Opposition, as they must, that Google could "access[]" location information "to provide specific services" to them. Opp. at 4. In light of Google's explicit and implicit disclosures, Plaintiffs cannot establish any violation of a reasonable expectation of privacy under the circumstances.

### 3.  Plaintiffs fail to plead facts establishing an egregious breach of social norms.

Plaintiffs fail to plead facts establishing that the collection of any alleged data constituted an "*egregious* breach of . . . social norms," *Hill*, 7 Cal. 4th at 37, or "an *exceptional* kind of prying into another's private affairs." *Med. Lab. Mgmt. Consultants v. Am. Broad. Cos., Inc.*, 306 F.3d 806, 819 (9th Cir. 2002). The AC suggests, at most, that Google collected location data from Plaintiffs while their Web & App Activity setting was on, and when they interacted with Google

---

[5] For users who turn off Location History on Android devices, the popup similarly advises them that "places you go with your devices will stop being added to **your Location History map**." Dkt. 131-3 (Ex. 30) at 286; *see also id.* (Ex. 2) at 5.

1392674

1    services like Maps or Search. Such discrete collection of location information while providing

2    users with services is well within the ambit of "routine commercial behavior,"[6] *In re iPhone App.*

3    *Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012), and falls well short of even conduct held ***not***

4    to rise to the level of an egregious breach of social norms, *see* MTD at 16-17 (citing cases).

5           Furthermore, Plaintiffs' attempts to argue that Google achieved its collection of location

6    information through deceit and fraud fail for the same reasons discussed above. *See* Opp. at 15-

7    16; *see also supra* Section II.B.2. And the paucity of factual allegations regarding any location

8    information Google actually collected from Plaintiffs renders this case wholly unlike the situation

9    described in *In re Google Assistant Privacy Litigation*, in which the court cautioned that "open

10   factual questions" could preclude resolution of the question of offensiveness without a fuller

11   record. 457 F. Supp. 3d at 830-31. Ultimately, Plaintiffs have failed to plead facts establishing

12   any element of a privacy claim. Their claims should be dismissed with prejudice.

13           **C.    Plaintiffs cannot state a claim for quasi-contract and have not stated a claim
14                   for breach of contract.**

15           **1.    Plaintiffs cannot state a claim for quasi-contract.**

16           Plaintiffs do not dispute that, to state a claim for quasi-contract (*i.e.* unjust enrichment),

17   they must allege that Google committed an "actionable wrong." *Rojas-Lozano v. Google, Inc.*,

18   159 F. Supp. 3d 1101, 1120 (N.D. Cal. 2016). Thus, their quasi-contract claim rises and falls with

19   the only "wrong" they have alleged—their privacy claims. *In re Facebook*, 956 F.3d at 600, does

20   not alter that conclusion. That case addressed the availability of an unjust enrichment ***remedy*** in

21   the context of a standing inquiry; it offers no guidance on stating a quasi-contract ***claim***. *Id.*

22           Regardless, Plaintiffs are barred from pleading a quasi-contract claim because there was a

23   contract—the Terms of Service—defining the parties' rights. *Sloan v. Gen. Motors LLC*, No. 16-

24   CV-07244-EMC, 2020 WL 1955643, at *27 (N.D. Cal. Apr. 23, 2020). Indeed, Plaintiffs

25   expressly rely on the Terms of Service in the AC, and in so doing inherently concede that their

26

27
     _____

28   [6] As the AC notes, "***hundreds***" of smartphone apps routinely collect location data from users to
     provide services to users and at times without any utility to users. *See, e.g.*, AC ¶¶ 51-52, 65.

                                                     13
1392674

claims "aris[e] out of or relat[e] to Google's terms." AC ¶¶ 35-37. Plaintiffs try to minimize this admission by arguing they were only citing the Terms of Service "as additional support." Opp. at 23. But Plaintiffs cited Google's Terms of Service because they apply to any disputes "arising out of or relating to these terms or the Services" that Google provided. Dkt. 131-3 (Ex. 6) at 46; *accord id.* (Ex. 5) at 35. If the Terms of Service apply to any dispute relating to Google's services, then they apply to this case and a quasi-contract claim cannot lie.

Plaintiffs respond that their quasi-contract claim isn't barred because there is no specific provision in the Terms governing the collection of their location data. Opp. at 22. But they can't identify even one case to support that position—for good reason, it isn't the law. Where, as here, a quasi-contract claim concerns a defendant's services, and there is a contract governing those services, the claim is barred, regardless of whether the contract specifically addresses plaintiff's grievance. *AdTrader, Inc. v. Google LLC*, No. 17-CV-07082-BLF, 2018 WL 3428525, at *11 (N.D. Cal. July 13, 2018); *see also Letizia v. Facebook Inc.*, 267 F. Supp. 3d 1235, 1253–54 (N.D. Cal. 2017) (dismissing quasi-contract claim relating to ad metrics even though "Facebook's contracts do not expressly mention the . . . metrics at issue"); MTD at 20-22 (citing cases).

Plaintiffs also cannot plead quasi-contract in the alternative, regardless of whether Fed. R. Civ. P. 8 otherwise permits plaintiffs to seek inconsistent causes of action. *Letizia*, 267 F. Supp. 3d at 1253-54. Plaintiffs rely on cases describing a narrow exception to this general rule,[7] which permits a plaintiff to plead a quasi-contract claim alongside a breach of contract claim only if "the

---

[7] Plaintiffs' cases rely on this exception. *Meyer v. Aabaco Small Bus. LLC*, No. 5:17-CV-02102-EJD, 2018 WL 306688, at *5 (N.D. Cal. Jan. 5, 2018) cites to *Clear Channel Outdoor, Inc. v. Bently Holdings Cal. L.P.*, No. 11-2573 EMC, 2011 WL 6099394, at *9 (N.D. Cal. Dec. 7, 2011), which dismissed a quasi-contract claim because plaintiff had not alleged "the contract would be unenforceable." *Weingand v. Harland Fin. Sols., Inc.*, No. C-11-3109 EMC, 2012 WL 3763640, at *4 (N.D. Cal. Aug. 29, 2012), relies on *Clear Channel* and *Wolf v. Wells Fargo Bank, N.A.*, No. C11–1337 WHA, 2011 WL 4831208, at *8 (N.D. Cal. Oct. 12, 2011), which held an unjust enrichment remedy was available only where the contract is "unenforceable or ineffective."

plaintiff also pleads facts suggesting that the contract may be unenforceable or invalid." *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 133 (N.D. Cal. 2020); *Schulz v. Cisco Webex, LLC*, No. 13-CV-04987-BLF, 2014 WL 2115168, at *5 (N.D. Cal. May 20, 2014) ("[A] plaintiff may not plead the existence of an enforceable contract and maintain a quasi-contract claim at the same time, unless the plaintiff has pled facts suggesting that the contract may be unenforceable or invalid . . . ."). Plaintiffs, however, have not pled any facts establishing that Google's Terms of Service are unenforceable or invalid. This exception thus does not apply.

### 2.    Plaintiffs have not stated a claim for breach of contract.

Plaintiffs' breach of contract claim fails because they have identified no contract term that Google has breached. Their attempt to rely on the Privacy Policy's statement that "you can adjust your privacy settings to control what we collect and how your information is used," AC ¶ 169, fails for two reasons. *First*, the Privacy Policy was simply informing users that there were settings they could use to control the data Google collected. This statement did not create an obligation with respect to the particular settings and cannot support a breach of contract claim. *In re Facebook*, 956 F.3d at 610-11.

*Second*, even if the statement created an obligation, it merely obligated Google to allow users to adjust their privacy settings to control the data Google collected. AC ¶ 169. As Plaintiffs admit, users like Plaintiffs *could* adjust their settings (*e.g.* Location History *and* Web & App Activity) to control what Google collected. AC ¶ 76; Dkt. 131-3 (Ex. 28) at 273-76. Plaintiffs' theory seems to be that the Location History setting didn't work as they desired it to, and they didn't understand that Web & App Activity controlled a separate type of data collection. Opp. at 24. But these allegations do not state a breach of the Privacy Policy, as Google did not commit to providing any particular settings in any particular way, certainly not in some specific manner Plaintiffs say they subjectively desired. The Privacy Policy's plain language does not support that self-serving interpretation. Plaintiffs' breach of contract claim fails as a matter of law.

### III.    CONCLUSION

Plaintiffs' amended complaint should be dismissed in its entirety and with prejudice.

1392674

1    Dated: October 21, 2020                          KEKER, VAN NEST & PETERS LLP

2

3                                          By:     /s/ Benjamin Berkowitz
                                                   BENJAMIN BERKOWITZ
4                                                  THOMAS E. GORMAN
                                                   CHRISTOPHER S. SUN
5                                                  CHRISTINA LEE

6                                                  Attorneys for Defendant GOOGLE LLC

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY IN SUPPORT OF GOOGLE LLC'S MOTION TO DISMISS
Case No. 5:18-cv-05062-EJD

1392674