UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE GOOGLE LOCATION HISTORY LITIGATION | Case No.  5:18-cv-05062-EJD<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS; DENYING MOTION TO RETAIN CONFIDENTIALITY DESIGNATIONS, AND DENYING MOTION TO REOPEN DISCOVERY**<br><br>Re: Dkt. Nos. 138, 139, 145, 151 |

Plaintiffs Napoleon Patacsil, Michael Childs, Najat Oshana, Nurudaaym Mahon, and Noe Gamboa's (collectively "Plaintiffs") brought this putative class action alleging that Defendant Google LLC's ("Defendant" or "Google") violated Plaintiffs' constitutional and common law privacy rights by tracking and storing Plaintiffs' location data without their consent.  This Court previously dismissed Plaintiffs' first Consolidated Class Action Complaint (Dkt. No. 80, "Original Complaint") without prejudice, after which Plaintiffs filed an Amended Consolidated Class Action Complaint.  Dkt. No. 131 ("Amended Complaint" or "AC").

Now before the Court are (1) Google's motion to dismiss the Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Dkt. No. 145, "Motion to Dismiss"); (2) Google's Motion to retain confidentiality designations relating to certain sealed portions of the Amended Complaint (Dkt. No. 138, "Motion to Seal"); (3) Plaintiffs' cross motion to unseal the Amended Complaint (Dkt. No. 139, "Motion to Unseal"); and (4) Plaintiffs' motion to reopen discovery pursuant to Rules 1, 26, and 37 of the Federal Rules of Civil Procedure (Dkt. No. 151,

United States District Court
Northern District of California

"Motion to Reopen Discovery"). The Court took the motions under submission for decision without oral argument pursuant to Civil Local Rule 7-1(b). For the reasons below, the Court GRANTS in part and DENIES in part the Motion to Dismiss, DENIES the Motion to Seal, GRANTS the Motion to Unseal, and DENIES the Motion to Reopen Discovery.

## I.   Background[1]

Plaintiffs bring this putative class action alleging that Google violated California statutory, constitutional, and common law by secretly tracking and storing the geolocation and other personal data of its users. AC ¶ 1. According to Plaintiffs, "Google tracks and stores users' locations and movements to amass a vast and comprehensive store of highly valuable geolocation data which it has and continues to commercially exploit." *Id.* Google told users that a device feature called "Location History" allowed users to control Google's ability to collect and store location information. When Location History is on, it allows Google to continuously track and store information about where you go with every mobile device. When Location History is off, Google assured users that "the places you go are no longer stored." *Id.* ¶ 2, 41; *see also* AC Ex. 11; AC Ex. 12 (explaining that turning Location History off would cause Google to "stop[] saving new location information"). Plaintiffs allege that contrary to this representation to users, Google collected and stored users' location data even when their Location History was set to off. AC ¶ 3.

Plaintiffs allege that in addition to Location History, Google collects and stores location data through a users' "Web & App Activity," meaning whenever users interact with a Google application (e.g. Google Maps, Google Hangouts, etc.) and whenever users run a Google search on the internet. While Plaintiffs acknowledge that certain Google applications ("apps") require location data to function, they allege that location information is also collected and stored when no reasonable consumer would expect their location to be recorded, including for Google services

---

[1] This Court has previously summarized the basic facts underlying this action and only summarizes the facts relevant to the Motion here.

United States District Court
Northern District of California

that have nothing to do with a users' location.  *Id.* ¶ 6.  For example, Google gathers location data any time apps and services "update" automatically on a device (*id.* ¶ 6), when users run non-location dependent searches such as "chocolate chip cookies" on a Google device or Google browser (*id.* ¶ 49), when Google Android applications are dormant (*id.* ¶ 52), and when users' devices interact with Wi-Fi access points (*id.* ¶ 80).  Google allegedly gathers location data in these instances regardless of whether users have opted to turn Location History off.

Plaintiffs further allege that Google is able to monetize the location data it collects and stores in a myriad of ways, including by selling precisely targeted advertisements.  *Id.* ¶¶ 85-86.  Indeed, Google markets its advertising services as having the ability to "[t]arget your ads to people in—or who've shown interest in—geographic locations" and explains that it may detect users' "location[s] of interest" by evaluating "[a] person's past physical locations."  *Id.* ¶ 90; AC Ex. 41.  Google also uses location data to "build better services," to "maintain & improve [Google's] services," to "develop new services," and to "measure performance," all of which enables Google to create operational efficiencies and be competitive in a wide array of industries in addition to advertising.  *Id.* ¶ 93; AC Ex. 10.  Plaintiffs allege that these profit-driven uses of consumer location data contradict Google's assertion that its collection of location information does nothing more than benefit consumers by offering convenience such as "driving directions for your weekend getaway or showtimes for movies playing near you."  *Id.*

On August 13, 2018, the Associated Press reported on Google's tracking and storage of location data.  *Id.* ¶ 3; AC Ex. 2 ("AP Report").  The practices disclosed in the article, including that Google tracks and stores location data even when Location History is turned off, were later confirmed by academic cyber security researchers and testified to by Google Senior Privacy Counsel in a 2019 appearance before Congress.  *Id.* ¶ 3.  Following the AP Report, Plaintiffs filed multiple complaints against Google which were later consolidated.  In the consolidated Original Complaint Plaintiffs alleged that Google violated the California Invasion of Privacy Act ("CIPA"), the right to privacy under the California Constitution, and the common-law tort of Intrusion Upon

1   Seclusion by surreptitiously surveilling and storing location data.  Dkt. No. 80 ¶¶ 118–42.

2   On December 19, 2019, this Court granted Google's Motion to Dismiss the Original

3   Complaint.  Dkt. No. 113 ("Dismissal Order").  The Court dismissed the CIPA claim with

4   prejudice, finding that Plaintiffs neither showed that CIPA reaches the software at issue nor that

5   Google was intentionally placing electronic tracking devices on vehicles or other comparable

6   moveable things as required under the statute.  *Id.* at 14.  The Court dismissed the constitutional

7   and common law privacy claims without prejudice, finding that the allegations were insufficient

8   for the Court to determine whether Plaintiffs had a legally protected privacy interest in the specific

9   places they went or how often their location was accessed.  *Id.* at 19.  The Court granted leave to

10  amend but noted that Plaintiffs were not permitted to add new causes of action or parties without a

11  stipulation or order of the Court under Rule 15 of the Federal Rules of Civil Procedure.  *Id.*

12  Following the Court's Dismissal Order, the parties filed a stipulation agreeing to extend

13  the deadline for Plaintiffs to file an amended complaint and staying all discovery until after

14  Google has answered the amended complaint.  Dkt. No. 118.  Plaintiffs then asked this Court to

15  certify the Dismissal Order for interlocutory appellate review, which this Court declined to do.

16  Dkt. No. 120 at 2; Dkt. No. 126.  Plaintiffs moved for reconsideration of the Dismissal Order,

17  arguing that the Ninth Circuit's decision in *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d

18  589 (9th Cir. 2020), amounted to a change in the law warranting reconsideration.  Dkt. No. 129.

19  This Court denied that motion on June 3, 2020, finding that *In re Facebook, Inc. Internet Tracking*

20  *Litigation* had not amounted to a "material change in the law."  Dkt. No. 130 at 2.

21  On July 6, 2020, Plaintiffs filed the Amended Consolidated Class Action Complaint,

22  reasserting the constitutional and common law privacy claims and adding a claim for unjust

23  enrichment, or alternatively, breach of contract.  Dkt. No. 131.  The parties filed a stipulation,

24  which this Court approved, allowing Plaintiffs to add new parties and a new cause of action to the

25  Amended Complaint.  Dkt. No. 137.  Plaintiffs filed portions of the Amended Complaint under

26  seal in accordance with the Stipulated Protective Order in this action.  Dkt. No. 112 ("Protective

United States District Court
Northern District of California

1   Order").  At the time the Amended Complaint was filed, Plaintiffs did not take a position as to

2   whether the designated material satisfied the requirements for sealing and reserved the right to

3   challenge the sealability of the documents going forward.  Dkt. No. 132 at 1-2.  Google then filed

4   a Motion to Retain Confidentiality Designations in accordance with the Protective Order,

5   preemptively requesting that the sealed material remain sealed.  Dkt. No. 138.  Shortly thereafter,

6   Plaintiffs filed a Cross Motion to Unseal Documents.  Dkt. No. 139.  Pursuant to Local Civil Rule

7   79-5, Plaintiffs also filed three administrative motions to file the same material, which was

8   described or referenced in each of their briefs on the issue, under seal.  Dkt. Nos. 141, 147, 150.

9   The briefing and arguments on all of these sealing-related motions overlap significantly and the

10  Court considers them together below.

11          On August 31, 2020, Google filed its Motion to Dismiss, seeking to dismiss all counts in

12  the Amended Complaint.  Plaintiffs oppose the Motion.  Dkt. No. 149 ("Opposition").

13          With the Motion to Dismiss pending, Plaintiffs filed a motion to reopen discovery pursuant

14  to Federal Rules of Civil Procedure 1, 26, and 37.  Dkt. No. 151.  Google opposes the Motion to

15  Reopen Discovery, arguing that Plaintiffs ignore the parties' stipulated agreement to stay

16  discovery until Google has answered the Amended Complaint.

17  **II.  Google's Motion to Dismiss**

18          **A.  Legal Standard**

19          Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient

20  specificity to "give the defendant fair notice of what the ... claim is and the grounds upon which it

21  rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)

22  (internal quotations omitted).  A complaint which falls short of the Rule 8(a) standard may be

23  dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).  To

24  survive a Rule 12(b)(6) motion to dismiss, the complaint "must contain sufficient factual matter,

25  accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556

26  U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atlantic Corp.*, 550 U.S. at

27  Case No.: 5:18-cv-05062-EJD
    ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS; DENYING
28  MOTION TO RETAIN CONFIDENTIALITY DESIGNATIONS, AND DENYING MOTION
    TO REOPEN DISCOVERY

United States District Court
Northern District of California

1   570).

2          A claim has facial plausibility when the plaintiff pleads factual content that allows the

3   court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Id.*

4   (a plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully").

5   While the Court must accept factual allegations as true, "[t]hreadbare recitals of the elements of a

6   cause of action, supported by mere conclusory statements, do not suffice" and pleadings that are

7   "no more than conclusions, are not entitled to the assumption of truth."  *Id.* at 678–79.

8   Furthermore, the Court need not accept the truth of any allegations that are contradicted by matters

9   properly subject to judicial notice or by exhibits attached to the complaint.  *In re Gilead Scis. Sec.*

10  *Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).  Dismissal "is proper only where there is no

11  cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal

12  theory."  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

13         **B.  Constitutional and Common Law Privacy Claims**

14         Plaintiffs allege that Google intruded on and into Plaintiffs' solitude, seclusion, right of

15  privacy, and/or private affairs in violation of their right to privacy under Article I, Section 1 of the

16  California Constitution by intentionally and comprehensively tracking their locations and

17  movements.  AC ¶¶ 155–62.  Plaintiffs also allege this conduct constitutes an intrusion upon

18  seclusion under the common law.  *Id.* ¶¶ 148–55.

19         "The California Constitution sets a 'high bar' for establishing an invasion of privacy claim."

20  *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1038 (N.D. Cal. 2014).  To establish an invasion of

21  privacy claim, a plaintiff must demonstrate: "(1) a legally protected privacy interest; (2) a

22  reasonable expectation of privacy in the circumstances; and (3) conduct by defendant constituting

23  a serious invasion of privacy."  *Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1, 865 P.2d 633,

24  654–655 (1994).  "Legally recognized privacy interests are generally of two classes: (1) interests

25  in precluding the dissemination or misuse of sensitive and confidential information ('informational

26  privacy'); and (2) interests in making intimate personal decisions or conducting personal activities

27  Case No.: 5:18-cv-05062-EJD

28  ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS; DENYING
    MOTION TO RETAIN CONFIDENTIALITY DESIGNATIONS, AND DENYING MOTION
    TO REOPEN DISCOVERY

United States District Court
Northern District of California

1   without observation, intrusion, or interference ('autonomy privacy')." *Id.*  This Court previously

2   declined to extend the autonomy privacy line of cases to the facts of this case, and Plaintiffs do not

3   reassert that theory here.

4       These elements are not a categorical test but rather are "threshold elements" that allow

5   courts to "weed out claims that involve so insignificant or de minimis an intrusion on a

6   constitutionally protected privacy interest as not even to require an explanation or justification by

7   the defendant." *Loder v. City of Glendale*, 14 Cal. 4th 846, 927 P.2d 1200, 1230 (1997).

8   "Actionable invasions of privacy must be sufficiently serious in their nature, scope, and actual or

9   potential impact to constitute an egregious breach of the social norms underlying the privacy

10  right." *Hill*, 865 P.2d at 655.

11      A common law intrusion upon seclusion claim must allege: "(1) intrusion into a private

12  place, conversation or matter, (2) in a manner highly offensive to a reasonable person." *Shulman*

13  *v. Grp. W Prods., Inc.*, 18 Cal. 4th 200, 231, 955 P.2d 469 (1998), *as modified on denial of reh'g*

14  (July 29, 1998).  Analysis of these respective prongs is effectively identical, and the Parties

15  acknowledge that the claims rise and fall together.  Mot. at 18; Opp. at 4; *see also In re Vizio, Inc.,*

16  *Consumer Privacy Litig.*, 238 F. Supp. 3d 1204, 1232 n.11 (C.D. Cal. 2017).  Because of the

17  similarity of the tests, courts consider the claims together and ask: (1) whether there exists a

18  reasonable expectation of privacy, and (2) whether the intrusion was highly offensive.  *In re*

19  *Facebook, Inc. Internet Tracking Litigation*, 956 F.3d at 601 (citing *Hernandez v. Hillsides, Inc.*,

20  47 Cal. 4th 272, 286, 211 P.3d 1063 (2009)).

21              **i.  Reasonable Expectation of Privacy**

22      This Court previously dismissed Plaintiffs' constitutional and common law privacy claims

23  because the Consolidated Complaint failed to show a legally protected interest, or reasonable

24  expectation of privacy.  The Court first explained that because Plaintiffs acknowledged that they

25  consented to Google's contemporaneous use of location information for Google's services (e.g. for

26  driving directions in Google Maps), the issue was not the tracking of users' locations but rather,

27  Case No.: 5:18-cv-05062-EJD
    ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS; DENYING
28  MOTION TO RETAIN CONFIDENTIALITY DESIGNATIONS, AND DENYING MOTION
    TO REOPEN DISCOVERY

7

United States District Court
Northern District of California

the storage of that information.  In considering whether Plaintiffs demonstrated a legally protected

privacy interest in the location information that Google allegedly stored, the Court reasoned:

> "Even if the collection of granular and specific location data establishes an information privacy interest, Plaintiffs' theory is undercut by the admission that Defendant only tracked and collected data during use of Google services. Accordingly, Defendant's "profile" of a user is only as specific as their use of Google services.  *Carpenter v. United States* and *United States v. Jones* do not undercut this conclusion.  *Carpenter v. United States* addressed whether the Fourth Amendment required government agents to secure a warrant to access historical cell phone records (cell-site location information). 138 S. Ct. 2206, 2211, 2220 (2018). . . . the cell-site location information discussed in *Carpenter* was comprehensive—the cell-site location information provided cellular companies with a rough "map" of a customer's fluid movements.  *Id.* at 2211.  Such comprehensive data collection is not at issue here; Plaintiffs' geolocation information depends on how often they use Google's services.  Defendant's collection of geolocation data is not automatic; it does not happen by the routine "pinging" of a cell-phone tower. *Cf. United States v. Jones*, 565 U.S. 400, 417 (2012) (Sotomayor, J., concurring) ("I would take these attributes of GPS monitoring into account when considering the existence of a reasonable societal expectation of privacy *in the sum* of one's public movements." (emphasis added)).  Here, unlike the continual GPS tracking in *Jones*, not *all* of Plaintiffs movements were being collected, only specific movements or locations.  Such "bits and pieces" do not meet the standard of privacy established in *Carpenter* or *Jones*. *Carpenter*, 138 S. Ct. at 2218 ("[A] cell phone . . . tracks *nearly exactly* the movements of its owner . . . . [to] private residences, doctor's offices, political headquarters, and other potentially revealing locales"); *see also* Orin S. Kerr, *The Mosaic Theory of the Fourth Amendment*, 111 MICH. L.R. 311, 328–29 (2012) (discussing the mosaic theory)."

Dismissal Order at 17-18.  The Court went on to find that "without more particular pleading, the

Court cannot determine if Defendant extrapolated a 'mosaic' from the user data *or* if the data

collected is 'sensitive and confidential' information."  *Id.* at 18.  In other words, because the

Plaintiffs did not allege that Google's tracking and storage of data was continuous and

comprehensive, the Court instead considered whether Plaintiffs had a privacy interest in the

specific locations where they had used Google services but found that Plaintiffs had not included

allegations about those specific locations.

Google argues that none of the allegations Plaintiffs added to the Amended Complaint cure

United States District Court
Northern District of California

the deficiencies addressed in the Dismissal Order.  As Google points out, Plaintiffs did not add any allegations about the specific location information that Google allegedly collected.  Instead, Plaintiffs added allegations to demonstrate that Google's tracking and collection of location data was comprehensive, such that Plaintiffs have a reasonable expectation of privacy in the sum of the stored information.  In other words, Plaintiffs' new allegations aim to cure the Court's previous conclusion that "comprehensive data collection is not at issue here."

Specifically, unlike in the Original Complaint, Plaintiffs now allege that Google's mobile apps such as Google Maps, Google Search, and Google Hangouts, among others, gather location data "almost incessantly" and even when a user is not interacting with them.  AC ¶¶ 49, 52. Plaintiffs allege that this is true even of applications that have nothing to do with the user's locations, such as mobile health analysis, payment services, social networking, and music streamlining.  *Id.* ¶ 52.  The proliferation of Google-hosted apps allows for a continuous flow of personal data to Google's servers, even when a user is not interacting with those apps.  *Id.* Plaintiffs cite articles and studies in the Amended Complaint for the assertion that approximately 90% of Google-hosted applications send personal data to Google whether or not users interact with the apps on their devices.  *Id.*  For example, a Vanderbilt study cited by Plaintiffs found that a dormant Android phone communicated location information to Google 340 times during a 24-hour period, or at an average of 14 times per hour.  *Id.*; AC Ex. 18.  Plaintiffs also allege that in addition to collecting location data via Web & App Activity, Google also collects location data through a device's interaction with Wi-Fi access points without involving the user.  *Id.* ¶ 80.

Google disputes these allegations, arguing that it only receives location data when a user interacts with a Google app or web service.  It argues that Plaintiffs previously alleged that location data was only collected when a Google app was "active" and that they cannot now plead that collection occurs even when apps are not active, such that the data collected is comprehensive.  Plaintiffs assert that the new allegations reflect new information uncovered during limited discovery.  The Court finds that Plaintiffs are permitted to amend their pleadings to

Case No.: 5:18-cv-05062-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS; DENYING
MOTION TO RETAIN CONFIDENTIALITY DESIGNATIONS, AND DENYING MOTION
TO REOPEN DISCOVERY

1    account for this new information.  *PAE Gov't Servs., Inc. v. MPRI, Inc.*, 514 F.3d 856, 859 (9th

2    Cir. 2007) ("over the passage of time and through diligent work, [parties] learn[] more about the

3    available evidence and viable legal theories, and wish to shape their allegations to conform to

4    these newly discovered realities. We do not call this process sham pleading; we call it litigation.").

5    Moreover, in the Court's Order Denying Plaintiffs' Motion for Leave to File a Motion for

6    Reconsideration, the Court expressly stated that "nothing in the [dismissal] order prevents

7    Plaintiffs from amending their Complaint to add details indicating that the type of geolocation

8    tracking and collection at issue was comprehensive such that Defendant collected sensitive and

9    confidential information."  Dkt. 130 at 2.

10        Google further argues that the Vanderbilt study is irrelevant because the study involved

11   devices with the Location History setting turned on.  According to Plaintiffs, however, the

12   Vanderbilt study involved location information gathered from Web & App Activity.  The parties

13   agree that the Location History setting does not control what location information Google collects

14   or stores through Web & App Activity.  Thus, accepting Plaintiffs' allegations as true, the Court

15   finds that the Vanderbilt study supports the allegation that Google received and stored location

16   data multiple times an hour, day after day, even when users did not interact with Google apps or

17   web services and regardless of whether the Location History setting was on or off.

18        Google's argument that Web & App Activity does not continuously store information

19   about a user's location everywhere they go with their mobile device is an inherently factual

20   argument.  Although this Court previously found that continuous tracking was not at issue in the

21   Original Complaint, the Amended Complaint includes factual allegations sufficient to allege that

22   Google does continuously track users through Web & App Activity, Wi-Fi Scanning, and possibly

23   other means.  Whether and the extent to which Google actually does so will likely come to light

24   through discovery, but at this stage of the proceedings the Court must accept Plaintiffs' well-pled

25   allegations as true.

26        Furthermore, the Court previously held that it was reasonable for a user to believe that

27   Case No.: 5:18-cv-05062-EJD

28   ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS; DENYING
     MOTION TO RETAIN CONFIDENTIALITY DESIGNATIONS, AND DENYING MOTION
     TO REOPEN DISCOVERY

United States District Court
Northern District of California

1 disabling Location History prevented Google from collecting and storing location data.  Courts

2 have held that plaintiffs have a reasonable expectation of privacy where data is collected without

3 their consent.  *See In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d at 603 ("In light of

4 the privacy interests and Facebook's allegedly surreptitious and unseen data collection, Plaintiffs

5 have adequately alleged a reasonable expectation of privacy."); *In re Google Inc. Cookie*

6 *Placement Consumer Privacy Litig.*, 806 F.3d 125, 129, 151 (3d Cir. 2015) (interpreting

7 California Law and holding that users maintained a reasonable expectation of privacy in their

8 browsing histories when Google tracked URLs after the users denied consent for such tracking);

9 *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 293–94 (3d Cir. 2016) (holding, under

10 analogous New Jersey law, that a reasonable expectation of privacy existed when Nickelodeon

11 promised users that it would not collect information from website users, but then did).

12      Much like the continual GPS tracking in *Jones* and the geolocation records created when

13 calls occurred in *Carpenter*, Google's alleged collection and storage of location data creates a

14 detailed and comprehensive record of a users' individual movements over time.  *See, e.g.*, AC ¶ 9,

15 77, 106, 3 ("even when users had opted out of Location History, Google recorded historical

16 location data comprehensive enough to map out the course of a user's movements from location to

17 location throughout the day, and day after day"); *cf. Jones*, 565 U.S. at 417 (Sotomayor, J.,

18 concurring) ("I would take these attributes of GPS monitoring into account when considering the

19 existence of a reasonable societal expectation of privacy *in the sum of* one's public movements."

20 (emphasis added)); *Carpenter*, 138 S. Ct. at 2218 ("[A] cell phone . . . tracks nearly exactly the

21 movements of its owner . . . . [to] private residences, doctor's offices, political headquarters, and

22 other potentially revealing locales"); *see also* Orin S. Kerr, The Mosaic Theory of the Fourth

23 Amendment, 111 MICH. L.R. 311, 328–29 (2012) (discussing the mosaic theory).

24      The Court, therefore, finds that Plaintiffs' allegations that Google collected and stored

25 comprehensive location data without Plaintiffs' consent are sufficient to show that Plaintiffs had a

26 reasonable expectation of privacy in the sum of that data.

27 Case No.: 5:18-cv-05062-EJD

28 ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS; DENYING
MOTION TO RETAIN CONFIDENTIALITY DESIGNATIONS, AND DENYING MOTION
TO REOPEN DISCOVERY

1

### ii.  Highly Offensive Intrusion

2        Google next argues that the even if Plaintiffs had a reasonable expectation of privacy under

3   the circumstances, the alleged violation is not an egregious violation of social norms.  "In order to

4   maintain a California common law privacy action, [p]laintiffs must show more than an intrusion upon

5   reasonable privacy expectations.  Actionable invasions of privacy also must be highly offensive to a

6   reasonable person, and sufficiently serious and unwarranted so as to constitute an egregious breach of

7   the social norms.  *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d at 606 (quotations

8   omitted) (citing *Hernandez*, 47 Cal. 4th at 295).

9        While analysis of a reasonable expectation of privacy primarily focuses on the nature of the

10  intrusion, the highly offensive analysis focuses on the degree to which the intrusion is unacceptable as

11  a matter of public policy.  *Hernandez*, 47 Cal. 4th at 287 (noting that highly offensive analysis

12  "essentially involves a 'policy' determination as to whether the alleged intrusion is highly offensive

13  under the particular circumstances").  Courts have held that "deceit can be a kind of 'plus' factor [that

14  is] significant in . . . making a privacy intrusion especially offensive."  *Heeger v. Facebook, Inc.*, No.

15  18-CV-06399-JD, 2019 WL 7282477, at *4 (N.D. Cal. Dec. 27, 2019); *McDonald v. Kiloo ApS*, 385

16  F. Supp. 3d 1022, 1036 (N.D. Cal. 2019).

17       Whether Google's collection and storage of location data when Location History was set to off

18  was highly offensive to a reasonable person is a question of fact.  *In re Facebook, Inc. Internet*

19  *Tracking Litigation*, 956 F.3d at 606 ("[t]he ultimate question of whether Facebook's tracking and

20  collection practices could highly offend a reasonable individual is an issue that cannot be resolved at

21  the pleading stage.").

22       Google's argument that the Court may decide as a matter of law that the intrusion here was

23  not highly offensive rests on its assertion that "Google collected Plaintiffs' location information at

24  discrete, intuitive times—for example, when providing driving directions in Google Maps or

25  providing showtimes for local movie theaters."  As discussed above, that is not the factual context

26  alleged in the Amended Complaint.  Plaintiffs do not allege that Google only collected

27  Case No.: 5:18-cv-05062-EJD

28  ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS; DENYING
MOTION TO RETAIN CONFIDENTIALITY DESIGNATIONS, AND DENYING MOTION
TO REOPEN DISCOVERY

United States District Court
Northern District of California

information at discrete, intuitive times, but rather, they specifically allege that Google collected location information constantly from Google searches, interactions with apps having nothing to do with a users' location, dormant apps, and Wi-Fi connections.  The majority of the cases Google cites to do not involve allegations of continuous tracking or storage of comprehensive location data, but instead involved discrete data collected at specific times without the level of alleged deceit present in this case.  *See Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 992, 125 Cal. Rptr. 3d 260 (2011), *as modified* (June 7, 2011) ("Here, the supposed invasion of privacy essentially consisted of [Defendant] obtaining plaintiff's address without his knowledge or permission, and using it to mail him coupons and other advertisements. This conduct is not an egregious breach of social norms, but routine commercial behavior."); *Moreno v. San Francisco Bay Area Rapid Transit Dist.*, No. 17-CV-02911-JSC, 2017 WL 6387764 (N.D. Cal. Dec. 14, 2017) (holding that the pleadings did not allege a sufficiently egregious violation of social norms, in part, because there were no allegations "even that [defendant] was aware of the data collection.").

In *In re iPhone Application Litigation*, the court found that the plaintiffs' allegations did not rise to the level of highly offensive where the plaintiffs alleged that the defendant companies had permitted third-party application developers to access personally identifying information from users' devices, including in some cases location data.  *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1049–50 (N.D. Cal. 2012).  In *In re Google Inc. Privacy Policy Litigation*, the court found no highly offensive conduct when the plaintiffs alleged that Google surreptitiously tracked their browsing data while using Google's services.  *In re Google, Inc.Privacy Policy Litig.*, 58 F. Supp. 3d 968, 987–88 (N.D. Cal. 2014).  As the Ninth Circuit has noted, neither of these cases involved "allegations that the defendants tracked the plaintiffs after the plaintiffs stopped using the defendant's services."  *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d at 606.  The Court does not find that these cases compel the conclusion that Google's alleged conduct is not highly offensive as a matter of law.

Case No.: 5:18-cv-05062-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS; DENYING MOTION TO RETAIN CONFIDENTIALITY DESIGNATIONS, AND DENYING MOTION TO REOPEN DISCOVERY

United States District Court
Northern District of California

1          Therefore, the Court finds that Plaintiffs' allegations that Google collected and stored

2    comprehensive location data through Web & App Activity and other means even when Location

3    History was off are sufficient to survive a motion to dismiss.  *Id.*  Thus, the Motion to Dismiss is

4    **DENIED** as to the intrusion upon seclusion claim (Count One) and the California Constitutional Right

5    to Privacy claim (Count Two).

6                              **C.  Unjust Enrichment Claim**

7          For the first time in the Amended Complaint, Plaintiffs bring a claim for unjust enrichment,

8    arguing that Google was unjustly enrichment when it utilized Plaintiffs' location information stored

9    without consent for its own financial advantage.  AC ¶¶ 165-168.  California law does not recognize a

10   standalone cause of action for unjust enrichment.  *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753,

11   762 (9th Cir. 2015).  However, "[w]hen a plaintiff alleges unjust enrichment, a court may construe the

12   cause of action as a quasi-contract claim seeking restitution."  *Id.* (internal quotation marks omitted).

13         "Quasi-contract in California is a claim for relief that seeks restitution based on the defendant's

14   unjust enrichment." *Jordan v. Wonderful Citrus Packing LLC*, No. 118CV00401AWISAB, 2018 WL

15   4350080, at *4 (E.D. Cal. Sept. 10, 2018).  "The doctrine applies where plaintiffs, while having no

16   enforceable contract, nonetheless have conferred a benefit on defendant which defendant has

17   knowingly accepted under circumstances that make it inequitable for the defendant to retain the benefit

18   without paying for its value."  *Letizia v. Facebook Inc.*, 267 F. Supp. 3d 1235, 1253 (N.D. Cal. 2017).

19   To plead a quasi-contract claim, a plaintiff must allege "(1) a defendant's receipt of a benefit and (2)

20   unjust retention of that benefit at the plaintiff's expense."  *Id.*

21         Google argues that Plaintiffs' unjust enrichment claim fails because the alleged conduct at

22   issue is covered by Google's Terms of Service, which constitutes an express contract with Plaintiffs.

23   "It is well settled that an action based on an implied-in-fact or quasi-contract cannot lie where there

24   exists between the parties a valid express contract covering the same subject matter."  *O'Connor v.*

25   *Uber Techs., Inc.*, 58 F. Supp. 3d 989, 999–1000 (N.D. Cal. 2014); *Sloan v. Gen. Motors LLC*, No. 16-

26   CV-07244-EMC, 2020 WL 1955643, at *27 (N.D. Cal. Apr. 23, 2020) ("A plaintiff may recover for

27   Case No.: 5:18-cv-05062-EJD
     ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS; DENYING
28   MOTION TO RETAIN CONFIDENTIALITY DESIGNATIONS, AND DENYING MOTION
     TO REOPEN DISCOVERY

United States District Court
Northern District of California

1    unjust enrichment only where there is no contractual relationship between the parties.").  Google

2    argues that "Plaintiffs' quasi-contract claim alleges that Google surreptitiously collected Plaintiffs'

3    location data while they were using Google apps and services" and that the "Terms of Service, in

4    turn, govern Google's provision of those apps and services."  Mot. at 20.  Thus, Google concludes

5    that the Plaintiffs' unjust enrichment claim is barred because it arises out of conduct covered by

6    the Terms of Service.  *Id.*

7           Plaintiffs do not dispute that they agreed to Google's Terms of Service by using Google

8    services.  AC Ex. 6 at 41-46; AC ¶ 169).  Indeed, Plaintiffs rely on the Terms of Service to

9    establish personal jurisdiction and governing law and concede that the Terms of Service apply to

10   "disputes arising out of or relating to Google's terms or services."  AC ¶¶ 33, 35, 37.  Plaintiffs

11   instead argue that those Terms of Service do not cover the same subject matter as their unjust

12   enrichment claim.  Specifically, Plaintiffs argue that the collection or storage of location

13   information is not addressed at all in the Terms of Service, except to the extent that it is discussed

14   in the cross-referenced Privacy Policy (AC Ex. 13).  The Privacy Policy states only that "[w]hen

15   you use Google services, we may collect and process information about your actual location," but

16   does not address how Google's privacy settings operate or what happens when users are not using

17   Google services.  *Id.*  In other words, Plaintiffs argue that while the Terms of Service may govern

18   their use of Google services, the conduct underlying the unjust enrichment claim specifically

19   occurred even when users did not interact with Google apps or services.  Thus, Plaintiffs conclude

20   that Google's surreptitious collection and storage of location data even when users did not interact

21   with Google apps or web services and even when the Location History setting was off, is not

22   included in the "subject matter" covered by the Terms of Service or Privacy Policy.

23          The Court agrees.  Google's argument is that the Terms of Service cover all claims arising

24   out of the use of Google apps or services, but as discussed above, the Amended Complaint alleges

25   that Google collected and stored information even when users were not interacting with Google

26   apps or services.  It is not plausible that the Terms of Service govern conduct outside of Google's

27   Case No.: 5:18-cv-05062-EJD

28   ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS; DENYING
     MOTION TO RETAIN CONFIDENTIALITY DESIGNATIONS, AND DENYING MOTION
     TO REOPEN DISCOVERY

1    provision of services.  The cases Google relies on are distinguishable in that they involved

2    allegations which were much more closely related to the terms of an express contract than the

3    alleged conduct in this case is related to the Terms of Service.  *See, e.g.*, *O'Connor*, 58 F. Supp. 3d

4    at 993 (finding drivers' claim based on a quasi-contract between riders and Ubers based on Uber's

5    advertising was foreclosed by the existence of Uber's express contracts with riders which

6    specifically disclaimed any reliance on advertising).

7        Google next argues that Plaintiffs' unjust enrichment claim fails "for the same reasons as

8    their privacy claims," because Google's collection and storage of location data is not an

9    "actionable wrong" that would make retaining the benefits resulting from that data "unjust."  Mot.

10   at 22-23.  Because the Court has concluded that Plaintiffs' privacy claims survive this motion, the

11   Court similarly finds that Plaintiffs have stated an actionable wrong on which to base their unjust

12   enrichment claim.

13       The Court finds that Plaintiffs plausibly allege that Google received a benefit from its

14   collection and storage of comprehensive location data and that its retention of that benefit was

15   unjust.  Thus, the Court finds that Plaintiffs have stated a valid unjust enrichment claim.  The

16   Motion to Dismiss is **DENIED** as to the unjust enrichment claim in Count Three.

17                              **i.  Breach of Contract Claim**

18       Plaintiffs plead a breach of contract claim in the alternative.  For the reasons stated above, the

19   Court finds that the Terms of Service do not apply to the extent that Plaintiff alleges that Google

20   collected and stored data when users were not interacting with Google apps or services.

21       Even if the Terms of Service did apply to other aspects of Plaintiffs' allegations (*e.g.* Plaintiffs'

22   allegations that location data collected while using location-dependent Google services was stored

23   without their consent), Plaintiffs fail to allege a specific contract provision that Google breached.  The

24   only provision from the Terms and Services cited in the Amended Complaint states that users "can

25   adjust [their] privacy settings to control what [Google] collect[s] and how [their] information is used."

26   The Court finds that this provision does not actually bind Google to offer any particular privacy

27   Case No.: 5:18-cv-05062-EJD
     ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS; DENYING
28   MOTION TO RETAIN CONFIDENTIALITY DESIGNATIONS, AND DENYING MOTION
     TO REOPEN DISCOVERY

settings, but rather, merely explains to users where they can go to adjust their settings.  *See In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d at 610–11 (dismissing breach-of-contract claim premised on Facebook's alleged violation of its Data Use Policy after concluding the policy "merely provides information—not commitments—regarding Facebook's use of information and how users can control that information").  Moreover, Plaintiffs do not allege that they had no control whatsoever over their privacy settings, rather, they allege that they were misled about the effect of the Location History setting specifically.

The Court, therefore, finds that Plaintiffs fail to state a claim for breach of contract, even in the alternative to their unjust enrichment claim.  The Motion to Dismiss is **GRANTED** as to the breach of contract claim in Count Three.

**III.     Motion to Retain Confidentiality Designations / Cross Motion to Unseal**

The Amended Complaint includes an exhibit attaching Google's response to Plaintiffs' Interrogatory No. 4, which Google had designated as containing confidential information under the parties' stipulated Protective Order.  Specifically, the interrogatory identified Google's internal codename for the infrastructure by which it stores location data and a brief description of that infrastructure.

In accordance with the Protective Order, Plaintiffs filed an administrative motion to seal the interrogatory response, and Google provided a declaration in support.  Decl. of David Monsees, Dkt. No. 134.  The declaration stated that "public disclosure of the confidential internal codename for Google's proprietary infrastructure could be used by competitors or other third parties, in combination with other information that has been or may be revealed or otherwise disclosed about Google's infrastructure to gain an improper understanding of Google's data and services architecture. "  *Id.* ¶ 9.  By operation of the local civil rules, Plaintiffs did not have an opportunity to respond.  The Court granted the motion to seal.

Plaintiffs challenged Google's confidentiality designation and wholesale sealing of the interrogatory response.  Google offered to de-designate all but the following phrase: "Web & App

Case No.: 5:18-cv-05062-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS; DENYING MOTION TO RETAIN CONFIDENTIALITY DESIGNATIONS, AND DENYING MOTION TO REOPEN DISCOVERY

17

Activity data is stored in a data store called Footprints." Accordingly, Google moved to retain the confidentiality designation upon which the filing under seal is based. Dkt. No. 138. Plaintiffs opposed that motion and separately moved to unseal the above phrase and related references to the "data store" and the name "Footprints." Dkt. No. 139. The Court will consider these related motions together.

### A. Legal Standard

"Historically, courts have recognized a 'general right to inspect and copy public records and documents, including judicial records and documents.'" *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 & n.7, 98 S. Ct. 1306, 55 L. Ed. 2d 570 (1978)). Accordingly, when considering a sealing request, "a strong presumption in favor of access is the starting point." *Kamakana*, 447 F.3d at 1178 (internal quotation marks omitted); *see also Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003) (in considering whether documents should be sealed, courts "start with a strong presumption in favor of access to court records.").

Parties seeking to seal judicial records relating to motions that are "more than tangentially related to the underlying cause of action," *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1099 (9th Cir. 2016), bear the burden of overcoming the presumption with "compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure." *Kamakana*, 447 F.3d at 1178–79 (internal quotation marks and citation omitted).

Plaintiffs move to seal parts of the Amended Complaint, which is undoubtedly "more than tangentially related to the underlying cause of action." *Center for Auto Safety*, 809 F.3d at 1099. Indeed, this Court and many others have held that the compelling reasons standard applies to the sealing of a complaint precisely because the complaint forms the foundation of the lawsuit. *See, e.g.*, *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2018 WL 9651897, at *2 (N.D. Cal. Jan. 3, 2018); *Ponomarenko v. Shapiro*, No. 16-CV-02763-BLF, 2017

Case No.: 5:18-cv-05062-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS; DENYING MOTION TO RETAIN CONFIDENTIALITY DESIGNATIONS, AND DENYING MOTION TO REOPEN DISCOVERY

United States District Court
Northern District of California

WL 3605226, at *2 (N.D. Cal. Aug. 21, 2017); *In re Google Inc. Gmail Litig.*, No. 13-MD-02430-LHK, 2013 WL 5366963, at *2 (N.D. Cal. Sept. 25, 2013); *Dunbar v. Google, Inc.*, No. 5:12-CV-003305-LHK, 2013 WL 4428853, at *2 (N.D. Cal. Aug. 14, 2013); *In re NVIDIA Corp. Derivative Litig.*, No. C 06-06110 SBA, 2008 WL 1859067, at *3 (N.D. Cal. Apr. 23, 2008). Accordingly, the Court applies the "compelling reasons" standard to Plaintiffs' request to seal parts of the Amended Complaint.

In determining whether there are compelling reasons to seal, "courts should consider all relevant factors, including: 'the public interest in understanding the judicial process and whether disclosure of the material could result in improper use of the material for scandalous or libelous purposes or infringement upon trade secrets." *Foltz*, 331 F.3d at 1135 (quoting *Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir. 1995)). Courts must "'conscientiously balance[ ] the competing interests' of the public and the party who seeks to keep certain judicial records secret." *Kamakana*, 447 F.3d at 1179 (quoting *Foltz*, 331 F.3d at 1135). After considering these interests, if the court decides to seal certain judicial records, it must "base its decision on a compelling reason and articulate the factual basis for its ruling, without relying on hypothesis or conjecture." *Hagestad*, 49 F.3d at 1434 (citing *Valley Broad. Co. v. U.S. Dist. Court for Dist. of Nevada*, 798 F.2d 1289, 1295 (9th Cir. 1986)). Compelling reasons may exist to seal "trade secrets, marketing strategies, product development plans, detailed product-specific financial information, customer information, internal reports and other such materials that could harm a party's competitive standing . . . [but] courts should exercise caution not [to] allow these exceptions [to] swallow the strong presumption in favor of disclosure." *In re Apple Inc. Device Performance Litig.*, No. 5:18-MD-02827-EJD, 2019 WL 1767158, at *2 (N.D. Cal. Apr. 22, 2019).

### B. Discussion

Google asserts that the eight words which they seek to keep sealed reveal "non-public information about Google's proprietary data infrastructure, including its internal codename for certain infrastructure and the functions that infrastructure performs." Defendant's Motion to

United States District Court
Northern District of California

1    Retain Confidentiality Designations, Dkt. No. 138 ("Motion to Seal") at 4.  Google first argues

2    that compelling reasons exist to seal the material because disclosure would "harm Google's

3    competitive standing by helping competitors and other malicious actors obtain sensitive

4    information about its systems."  Defendant's Reply to Motion to Retain Confidentiality

5    Designations; Opposition to Plaintiffs' Cross Motion to Unseal, Dkt. No. 146 ("Reply").  It further

6    states that disclosure "may incentivize and permit malicious actors to target that infrastructure or

7    obtain additional confidential information about that infrastructure through illicit channels."

8    Motion to Seal at 5.

9          Plaintiffs argue that this rationale is thread-bare, speculative, and lacks credibility.

10   Plaintiffs' Opposition to Defendant Google LLC's Motion to Retain Confidentiality Designations

11   and Cross Motion to Unseal Consolidated Amended Complaint, Dkt. No. 139 ("Cross Motion to

12   Unseal") at 7.  Plaintiffs argue that the fact that Google stores location information in a "data

13   store" called "Footprints" does not, as Google claims, reveal any proprietary data infrastructure or

14   the functions that infrastructure performs.  The Court agrees.  "Data store" is extremely broad

15   terminology, akin to "file," which is generally defined to mean "repository for storing, managing,

16   and distributing data sets."  Cross Motion to Unseal at 9; *see Network Appliance, Inc. v. Bluearc*

17   *Corp.*, No. C03-5665MHP, 2004 WL 5651036, at *29 (N.D. Cal. Nov. 30, 2004) ("Although

18   neither the phrase 'common data store' nor 'data store' are defined in the IEEE Dictionary, the

19   noun 'storage' has a well-established meaning in the art of 'electronic computation,' which the

20   IEEE Dictionary defines as '[a]ny device in which information can be stored, sometimes called a

21   memory device,' or 'a section [of a computer] used primarily for storing information . . .

22   sometimes called a memory or a store.'").  In other words, stating that "data is stored in a data

23   store" is really no more specific or revealing than stating that Google stores data.

24          Relying on a number of cases that generally support the proposition that a court may seal

25   information that provides insight into proprietary product architecture, Google argues that the

26   information provided "need not be technical or detailed to warrant protection from public

27   Case No.: 5:18-cv-05062-EJD
     ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS; DENYING
28   MOTION TO RETAIN CONFIDENTIALITY DESIGNATIONS, AND DENYING MOTION
     TO REOPEN DISCOVERY

disclosure."  Motion to Seal at 4.  Based on the cases Google itself cites, this Court disagrees.

Google cites cases that involved information far more detailed and technical than the phrase at

issue here.  *See, e.g.*, *Reyna v. Arris Int'l PLC*, No. 17-CV-01834-LHK, 2018 WL 1400513, at *3

(N.D. Cal. Mar. 20, 2018) (acknowledging that "*detailed information* about the technology that a

company uses to protect against hacking and other types of attacks, or *specific vulnerabilities* in that

technology, is sealable under the compelling reasons standard" but refusing to seal information about a

company's internal investigation procedures because disclosure of such "general information" did not

present a similar risk) (emphasis added); *Finjan, Inc. v. Cisco Sys. Inc.*, No. 17-CV-00072-BLF, 2019

WL 4168952, at *2 (N.D. Cal. Sept. 3, 2019) (sealing material that "reveals the identification,

organization, and/or operation of Cisco's proprietary products," which competitors could "use to map

proprietary features of Cisco's products").

While it is clear that a court may in some circumstances seal information that describes

proprietary product architecture, the information at issue in this case does not do so.  The phrase

Google seeks to keep sealed merely identifies the name of a relatively broad aspect of Google's

infrastructure but provides no information about how it functions, how it is accessed, or where it

may contain weaknesses.  Nor does it reveal "source code," "processes and functionality of []

security," or "names of particular source code variables [and] functions."  *Campbell v. Facebook

Inc.*, No. 13-CV-05996-PJH, 2016 WL 7888026, at *2 (N.D. Cal. Oct. 4, 2016) (decided under the

"good cause" standard); *see also Uniloc United States of Am., Inc. v. Apple Inc.*, No. 18-CV-

00362-PJH, 2018 WL 2392561, at *7 (N.D. Cal. May 25, 2018) (sealing "references to portions of

Apple's source code, including names of particular source code variables, functions, and files . . .

that contains proprietary and trade secret descriptions of the technical infrastructure and design of

Apple's software and hardware products.").

In *In re Yahoo!*, the Court found it appropriate to seal information that if disclosed would

allow competitors to replicate the features and procedure Yahoo used to provide services and

security to its users.  The Court highlighted that if made public, the material "could lead to another

United States District Court
Northern District of California

1     breach in the security of Yahoo's systems" because the material "contain[ed] detailed information

2     about the technology Yahoo uses to protect its users' information, as well as the methods that were

3     used to breach Yahoo's systems." *In re Yahoo! Inc. Customer Data Security Breach Litigation*,

4     2018 WL 9651897, at *3. Unlike in *In re Yahoo!*, Google cannot argue that the phrase it seeks to

5     seal—which reveals only that location data is stored in a data store as part of a program internally

6     referred to as "Footprints"—constitutes "detailed information" about its architecture, the security

7     technology it uses, or any methods that might be used to breach its systems.

8          While the phrase itself does not reveal detailed information, Google argues that the

9     codename "Footprints" could nonetheless be used by malicious actors to uncover additional

10    information. Motion to Seal at 5 ("Much as knowing the name of a person makes it easier to

11    obtain information about that person, knowing the internal code name for Google's architecture

12    and the functions performed by that architecture would allow third parties to more easily identify

13    who might know about that architecture or where they can obtain more information."). The Court

14    finds this concern to be largely speculative. *Cf. U.S. Ethernet Innovations, LLC v. Acer, Inc.*, No.

15    10-3724, 2013, WL 4426507 (N.D. Cal. Aug. 14, 2013) (denying sealing request because

16    "general[] claims that [Intel] would be 'harmed' by public disclosure and this would result in a

17    'competitive disadvantage' for it and in 'security concerns'" were simply "broad and generic

18    statements [that] do not meet the standard for sealing information related to dispositive motions");

19    *Cardinali v. Plusfour, Inc.*, No. 216CV02046JADNJK, 2019 WL 4723071, at *14 (D. Nev. Sept.

20    26, 2019) (sealing the declaration of an employee "who breaks down the various computer

21    systems that Experian maintains for storing and accessing consumer information" because the

22    employee's statements "contain enough detail about Experian's computer systems and software

23    that a competitor could use them to its own advantage and identity thieves could use them to

24    develop methods to circumvent Experian's protections"). The Court, therefore, cannot articulate

25    compelling reasons to keep the information under seal "without relying on hypothesis or

26    conjecture." *Hagestad*, 49 F.3d at 1434.

27    Case No.: 5:18-cv-05062-EJD

       ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS; DENYING
28    MOTION TO RETAIN CONFIDENTIALITY DESIGNATIONS, AND DENYING MOTION
       TO REOPEN DISCOVERY

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Google separately argues that Plaintiffs' Cross Motion to Unseal should be denied because

2   Plaintiffs offer no reason to disclose the information other than that the public has a right to know.

3   Google argues that the information is not necessary to prosecute Plaintiffs' case, nor is it necessary

4   in order for the public to understand the litigation.  But it is Google's burden to show that the

5   material is sealable, not Plaintiffs' burden to prove that it is not.  Plaintiffs need not explain why

6   the public deserves access to court records; there is always a public interest in understanding the

7   judicial process, which always weighs in favor of unsealing.  Moreover, "the interest in access to

8   court proceedings in general may be asserted more forcefully when the litigation involves matters

9   of significant public concern," such as the widely reported privacy-related matters involved in this

10   nationwide class action.  *Cohen v. Trump*, No. 10-CV-0940-GPC-WVG, 2016 WL 3036302, at *6

11   (S.D. Cal. May 27, 2016).  Google has failed to meet its burden of demonstrating compelling

12   reasons that outweigh the public's interest in the material at issue.

13    The Court, therefore, **GRANTS** Plaintiffs' Cross Motion to Unseal, and **DENIES**

14   Google's Motion to Seal.  The Court further **DENIES** the related motions to seal the briefing

15   associated with these motions, to the extent they concern the same material addressed herein.  Dkt.

16   Nos. 141, 147, 150.

17   **IV.    Plaintiffs' Motion to Reopen Discovery**

18    Lastly, Plaintiffs' filed a Motion to Reopen Discovery Pursuant to FRCP 1, 26, and 37.

19   Dkt. No. 118 ("Motion to Reopen Discovery").  After this Court issued the Dismissal Order,

20   Plaintiffs sought various forms of interlocutory relief.  In order to allow time to resolve these

21   efforts, Plaintiffs asked Google for an extension of the deadline to file an amended complaint.

22   Google obliged on the condition that the parties stay discovery until the pleadings were settled, or

23   specifically, until after Google filed an answer to the amended complaint.  The Court granted the

24   parties' joint stipulation, extending the deadline for Plaintiffs' Amended Complaint and ordering a

25   stay of discovery. Dkt. 118 (the "Discovery Stay Order").

26    Plaintiffs assert that in or around May 2020, they became aware of similar proceedings in

27   Case No.: 5:18-cv-05062-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS; DENYING
28   MOTION TO RETAIN CONFIDENTIALITY DESIGNATIONS, AND DENYING MOTION
TO REOPEN DISCOVERY

1    Arizona Maricopa County Court brought by the Attorney General of Arizona ("AZAG") against

2    Google arising out of Google's practice of collecting and storing location data.  Plaintiffs assert

3    that following the filing of their Amended Complaint, they learned that Google had produced

4    materials to the AZAG that are responsive to Plaintiffs' earlier discovery requests in this action,

5    but which were not produced in this case.  Motion to Reopen Discovery at 3.  According to

6    Plaintiffs, the documents Google produced to the AZAG undermine the positions that Google has

7    taken with respect to its motion to dismiss the present case.  On this basis, Plaintiffs request that

8    the stay on discovery be lifted and that discovery commence immediately.

9         Courts have traditionally looked unfavorably upon blanket stays of discovery while Rule

10   12 motions are pending.  *See, e.g., Gray v. First Winthrop Corp.*, 133 F.R.D. 39, 40 (N.D. Cal.

11   1990) ("Had the Federal Rules contemplated that a motion to dismiss under Fed. R. Civ. Pro.

12   12(b)(6) would stay discovery, the Rules would contain a provision to that effect.  In fact, such a

13   notion is directly at odds with the need for expeditious resolution of litigation.").  In this case,

14   however, the parties entered a stipulation to stay of discovery, which the court ordered.  The

15   question, therefore, is not whether a stay of discovery pending resolution of the motion to dismiss

16   is proper; rather, it is whether the Court should permit Plaintiffs to withdraw from the stipulation

17   they entered.

18        As discussed above, Plaintiffs' Amended Complaint has adequately stated common law and

19   Constitutional privacy claims as well as an unjust enrichment claim.  The Amended Complaint will

20   survive and Google will be required to file an answer, presumably within 14 days of this order.  The

21   Discovery Stay Order will expire when Google files its answer.  Thus, the thrust of the Motion to

22   Reopen Discovery is essentially mooted by this Order.  Nevertheless, because there will be some lag

23   time between this Order and the date on which discovery may resume by operation of the stipulation,

24   the Court considers the motion.

25        Plaintiffs' motion appears to be motivated by two concerns: first, that their Amended

26   Complaint might be dismissed with prejudice without their having an opportunity to conduct full

27   Case No.: 5:18-cv-05062-EJD

28   ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS; DENYING
     MOTION TO RETAIN CONFIDENTIALITY DESIGNATIONS, AND DENYING MOTION
     TO REOPEN DISCOVERY

United States District Court
Northern District of California

1 discovery, and second, that Google failed to produce relevant documents in response to Plaintiffs'

2 prior discovery requests.  *See* Motion to Reopen Discovery at 3 ("Plaintiffs will suffer significant

3 prejudice in their efforts to fairly meet Google's fact-based defenses in its Motion to Dismiss and

4 elsewhere in the litigation."); *id.* ("Plaintiffs should have had a complete production of relevant

5 information prior to their filing of the current operative complaint such that even if the Court sees

6 inadequacies in the pleadings, justice would require under these circumstances that Plaintiffs be

7 given further leave to amend after Google complies with its discovery obligations").  Neither

8 concern warrants the reopening of discovery in this case.

9   The amount and content of discovery that has or has not been exchanged should not typically

10 affect a motion to dismiss, which is based on the pleadings, not the evidence.  While Plaintiffs'

11 Amended Complaint benefited from the limited discovery that occurred prior to the Court's order

12 dismissing the Original Complaint, the Court considers only the facts as alleged in the Amended

13 Complaint when deciding the Motion to Dismiss.  Plaintiffs argue that the material produced to the

14 AZAG undermines Google's arguments in its Motion to Dismiss regarding consent and the scope of its

15 geolocation tracking practices, but to the extent that Google premises its arguments on facts that are

16 not alleged in the Amended Complaint, the Court is not permitted to consider those extrinsic facts

17 anyway.  Thus, the Court finds that reopening discovery is unnecessary and irrelevant to the pending

18 Motion to Dismiss.

19   Furthermore, the Court agrees with Google that Plaintiffs must abide by the terms of the

20 stipulation they bargained for.  Having pled a plausible claim, Plaintiffs will be permitted to request

21 the materials that they seek once discovery is reopened by operation of the parties' stipulation and the

22 Discovery Stay Order.  Whether or not Google was forthright and complete in its prior productions is a

23 separate question that is more properly resolved on a separate motion to compel at the appropriate

24 time.  The Court, therefore, **DENIES** Plaintiffs' Motion to Reopen Discovery.

25 **V. Conclusion**

26   For the reasons stated above, the Court orders as follows:

27 Case No.: 5:18-cv-05062-EJD

28 ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS; DENYING
MOTION TO RETAIN CONFIDENTIALITY DESIGNATIONS, AND DENYING MOTION
TO REOPEN DISCOVERY

1.  Defendant's Motion to Dismiss is **GRANTED** as to Plaintiffs' alternative breach of contract claim and **DENIED** as to all other counts.  The Court finds that further leave to amend breach of contract would be futile and the claim is therefore dismissed with prejudice.

2.  Defendant's Motion to Retain Confidentiality Designations is **DENIED** and Plaintiffs' Cross Motion to Unseal portions of the Amended Complaint is **GRANTED**.

3.  The three related motions to seal portions of the parties' briefing (Dkt. Nos. 147, 150, 157) are **DENIED**.  The parties shall file unredacted versions of their pleadings in accordance with this order by no later than February 8, 2021.

4.  Plaintiffs' Motion to Reopen Discovery is **DENIED**.

The Court has denied Defendant's Motion to Retain Confidentiality Designations.  Nevertheless, the Court has temporarily filed this Order under seal to allow Defendant time to consider whether to seek further judicial review of the denial of that motion.  Defendant shall advise the court of its intent to seek further judicial review, if any, by no later than February 8, 2021.

**IT IS SO ORDERED.**

Dated: January 25, 2021

_____
EDWARD J. DAVILA
United States District Judge

Case No.: 5:18-cv-05062-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS; DENYING MOTION TO RETAIN CONFIDENTIALITY DESIGNATIONS, AND DENYING MOTION TO REOPEN DISCOVERY