*In re Google Location History Litigation*, No. 5:18-cv-05062-EJD (Hon. Nathanael M. Cousins)
**Joint Statement re: Discovery Dispute**

### I. PLAINTIFFS' ARGUMENT

Plaintiffs seek Court intervention to resolve the parties' dispute as to how "location information" should be defined for discovery. The parties have conferred at length since Google first offered its definition in its June 4, 2019 discovery responses. Google has refused to budge from its position that only location data "saved to a user's Google Account" is discoverable. The parties' proposed definitions of "location information" are:

| Plaintiffs | Google |
|---|---|
| Physical geographical location data that is determined, estimated, or inferred from a user's mobile device sensors (including, but not limited to, GPS, Wi-Fi, Bluetooth, cellular) saved to any data store, database, device, or system in Google's possession, custody or control (as distinguished from storage exclusively in a user's device or a user's systems) | Location information that is determined using inputs from a user's mobile-device sensors (e.g., GPS, Wi-Fi, Bluetooth), or from cellphone towers, saved to a user's Google Account (as distinguished from storage in a user's device or systems or in non-Google devices or systems) |

The gravamen of this case is Google's comprehensive storage of class members' location information despite its assurance that, with its "Location History" setting disabled, Google would refrain from storing their location data. Google surreptitiously stores class members' location data not just in their "Google account[s]," but also in "other repositories." Am Compl. ¶ 67, ECF 164-1. As this Court has recognized, Plaintiffs "allege that Google . . . continuously track[s] users through Web & App Activity, Wi-Fi Scanning, and possibly other means," and "[w]hether and the extent to which Google actually does so will likely come to light through *discovery*." ECF 162 at 10 (emphasis added). Google's definition of "location information" would preclude the very discovery the Court contemplated.

Plaintiffs' chief objection to Google's definition is that it limits the scope of location information to that which is "saved to a user's Google Account." Google asserts that, otherwise, location data is "anonymous" and raises no privacy interest, even when data is associated with persistent identifiers, such as an advertising or device ID. Google contorts the concept of "anonymous" in this assertion. None of the data at issue is truly "anonymous" because Google collects location data in identified form from users' devices by way of persistent identifiers. Any persistent identifier—be it a Google ID, device ID, or advertising ID—enables identification of individuals. Therefore, location data associated with persistent identifiers is decidedly not "anonymous."[1] Plaintiffs have a privacy interest in identifying personal information, and are entitled to discovery about the subsequent use of that data.[2]

While Google may separately "de-identify" data for use in one of multiple applications or

---

[1] Google admits as much. *See, e.g.*, *About mobile advertising IDs*, Google Ad Manager Help, https://support.google.com/admanager/answer/6274238 (last visited May 18, 2021) ("Mobile advertising IDs allow developers and marketers to track activity for advertising purposes. They're also used to enhance serving and targeting capabilities.").

[2] To be clear, Plaintiffs have *not* "declined to take discovery" about this topic, and this dispute is ripe. In a letter, Plaintiffs asked Google whether it would produce a Rule 30(b)(1) witness on "anonymization" but received no response.

*In re Google Location History Litigation*, No. 5:18-cv-05062-EJD (Hon. Nathanael M. Cousins)
**Joint Statement re: Discovery Dispute**

contexts, as Google's former Global Lead of Privacy Technologies through as recently as 2019 explained, "Datasets are generally deidentified rather than anonymized—the names and obvious identifiers are stripped out, but the rest of the data is left untouched. *Deidentification doesn't tend to successfully anonymize data* because there are so many sources of data in the world that still have identifying information in them; figure out where some identified dataset and the deidentified data align, and you've re-identified the dataset."[3]  Indeed, this Court has recognized that "[w]hether the risk of reidentification is sufficiently great to constitute injury in fact is a factual question." *In re Google Referrer Header Privacy Litig.*, No. 10-cv-04809, 2020 WL 5545155, at *3 (N.D. Cal. Sep. 16, 2020) (Davila, J.). Here, Plaintiffs allege that Google holds patents to "[d]etermin[e] device location using multiple sources" and is "uniquely able to deanonymize stored location data." Am Compl. ¶¶ 56-57; *see also id.* ¶ 63.

Nevertheless, even if Google has somehow created "anonymous" data, Plaintiffs' inquiry into that process should not be pretermitted by Google's sleight of definition. Google ignores that Plaintiffs also bring a claim for unjust enrichment in addition to invasion of privacy—that is, Plaintiffs seek disgorgement of Google's gains from its unauthorized storage of their location data, regardless of how Google manipulated the data.[4] Prohibiting Plaintiffs from understanding how Google used their location data based solely on Google's self-serving assurances of its "pro-privacy" practices is akin to allowing the fox to guard the henhouse. *Infra* at 3.

This Court made clear that Plaintiffs are entitled to discover what exactly Google does with their data. Google's authorities do not suggest otherwise. *Moreno v. BART* arose in the Rule 12 context, and among other dissimilar facts, the "clientid" could not be associated with other information to identify the plaintiff. No. 17-cv-02911, 2017 WL 6387764, at *4 (N.D. Cal. Dec. 14, 2017). In denying Google's motion to dismiss, the Court already distinguished *Moreno* on multiple grounds. *See* ECF 162 at 13 (*e.g.*, BART was not even "aware of the data collection"). *Low v. LinkedIn Corp.* concerned inadequate allegations of *third-party*, not defendant, data re-identification using the defendant's identifiers. 900 F. Supp. 2d 1010, at 1031 (N.D. Cal. 2012). The privacy claims in *McCoy v. Alphabet, Inc.* were dismissed not because of anonymization, but because, per the court, collecting "the frequency and duration of use of certain apps" did not "rise to the requisite level of an egregious breach of social norms." No. 20-cv-05427, 2021 WL 405816, at *8 (N.D. Cal. Feb. 2, 2021). *City and County of San Francisco v. Purdue Pharma*—relating to the opioid crisis—is not a privacy case at all and only addressed whether de-identified prescription data could be produced subject to a protective order. No. 18-cv-07591, 2021 WL 842574, at *2 (N.D. Cal. Mar. 5, 2021); *accord Snibbe v. Sup. Ct.*, 224 Cal. App. 4th 184, 195 (2014) (compelling production of redacted medical records in wrongful death action).

Plaintiffs' proposed definition aligns with their allegations. Google's positions, including its suggestions to serve "limited discovery" and other "assurances," are clearly inconsistent with its proposed definition. Google promised, without qualification, that it would not store class members' whereabouts. All practices relating to Google's storage of location data collected from class members' mobile devices are at issue here and fair game in discovery. Plaintiffs' definition anticipates as much. Accordingly, Plaintiffs respectfully request that the Court order that discovery proceed using Plaintiffs' definition of location information.

---

[3] https://iapp.org/news/a/de-identification-vs-anonymization/ (June 18, 2019) (emphasis added).
[4] *London v. New Albertson's* does not speak to Plaintiffs' unjust enrichment claim.  2008 WL 4492642 (S.D. Cal. Sep. 30, 2008).  The case concerned a pharmacy's sale of de-identified prescription data and not, as here, a promise to refrain from storing data in the first instance.

*In re Google Location History Litigation*, No. 5:18-cv-05062-EJD (Hon. Nathanael M. Cousins)
**Joint Statement re: Discovery Dispute**

**DEFENDANT'S ARGUMENT**

Plaintiffs ask for permission to rewrite their discovery requests (without any description of those requests) based on the misapprehension that Google has categorically refused to provide discovery on anonymous, anonymized, and pseudonymous data. Not so. Google has tried to meet and confer regarding interrogatories and requests for production that use the term, "Location Information," that Plaintiffs refused to narrow until 24 months into discussions, and which still renders the requests overbroad and unduly burdensome. After months of explaining Google's practices, and why Plaintiffs' conspiratorial fears of "de-anonymization" and "re-identification" are unfounded, Plaintiffs declined to take discovery and instead manufactured this "dispute."

At a high level, when Google collects mobile-device data tied to a user's personally identifiable information ("PII"), it is tied to the user through a Google Account ID (if the user enabled the settings to allow that collection). And so we colloquially refer to it as being "saved to a user's Google account." However, when data is *not* tied to a specific person, such as when it is scrubbed of PII (anonymized) or when it is not associated with a person and their PII when collected (anonymous or pseudonymous), it is not linked to a Google Account ID or "saved to a user's Google account." Courts have recognized that these types of data do not raise the same privacy concerns, even were it possible to "re-identify" the user.[5] Tellingly, Plaintiffs identify ***no decision*** that found a privacy interest in this kind of data. Instead, they try to distinguish cases without explaining why any of the distinctions matter. The only case Plaintiffs have cited in support of their position—*In re Google Referrer Header Priv. Litig.*, 2020 WL 5545155, at *3— is inapposite because it addressed only whether an injury was sufficiently concrete, not whether a privacy right existed. The court noted that it was theoretically "possible" for plaintiffs to amend their complaint to "plead facts" to show a risk of re-identification sufficient for Article III standing. *Id*. But given the anonymity of the logs at issue there, the court noted a significant "factual question" about whether there was ***any*** risk of injury. *Id*. at *1, *3.

Google does not object to Plaintiffs taking limited discovery into its pro-privacy data practices, including to verify that Google does not "de-anonymize." But the discovery that Plaintiffs propose into Google's uses of anonymous, anonymized, and pseudonymous data is overbroad and unduly burdensome given the data's limited, if any, relevance to this case. Plaintiffs assert privacy claims based upon the alleged collection of *personal* information. Specifically, Plaintiffs point to two account settings that control the collection of user geolocation information from mobile devices (called "Location History" and "Web and App

---

[5] *Moreno v. San Francisco Bay Area Rapid Transit Dist.*, No. 17-CV-02911-JSC, 2017 WL 6387764, at *4, *8 (N.D. Cal. Dec. 14, 2017) (dismissing privacy claims because Plaintiffs hadn't alleged that "App tracked *Plaintiff's* location as opposed to some anonymous clientid that is not matched to any particular person"); *see also Low v. LinkedIn*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (dismissing privacy claims about data plaintiffs "postulate[d] . . . third parties could . . . de-anonymize"); *see also McCoy v. Alphabet, Inc.*, No. 20-CV-05427-SVK, 2021 WL 405816, at *8 (N.D. Cal. Feb. 2, 2021) (dismissing privacy claims about anonymized data); *City & Cty. of San Francisco v. Purdue Pharma L.P.*, No. 18-CV-07591-CRB, 2021 WL 842574, at *2 (N.D. Cal. Mar. 5, 2021) (concluding "no . . . privacy concerns arise" for "de-identified" data); *London v. New Albertson's, Inc.*, No. 08-CV-1173 H (CAB), 2008 WL 4492642, at *8 (S.D. Cal. Sept. 30, 2008) (accepting there is "no legally protected privacy interest in de-identified information"); *Snibbe v. Superior Ct.*, 224 Cal. App. 4th 184, 194–96 (2014) (rejecting "speculative" privacy concerns based on a "hypothetical danger of reidentification").

*In re Google Location History Litigation*, No. 5:18-cv-05062-EJD (Hon. Nathanael M. Cousins)
**Joint Statement re: Discovery Dispute**

Activity"). Plaintiffs contend that, for a period of time, a Google support page caused users to believe that their location information would not be saved to their accounts through settings like Web and App Activity if Location History was disabled. Moreover, Plaintiffs specifically allege that the "location information" at issue is saved to a user's Google Account. *See* Am. Comp. ¶ 67 ("Specifically, location information stored by Google **is stored in an individual's Google Account** (in addition to other repositories. . .) where it is **linked to the other data in that account**, including the individual's name and email address.") (emphasis added).[6] Plaintiffs' efforts to take sweeping discovery of all manner of location data maintained by Google, whether or not it is tied to personal identifiers, accordingly lacks any basis in law or the alleged facts.[7]

Google is willing to answer questions about anonymous, pseudonymous, and anonymized data, and has already done so. But Plaintiffs refuse to serve targeted requests or a Rule 30(b)(1) notice to confirm that Google doesn't de-anonymize. Instead, they demand that Google must provide unlimited discovery about every project that uses this data, including descriptions of "all ways in which Google . . . use[s] and/or analyze[s]" the data, and identification of "each Process and/or piece of Architecture involved in the creation, development, transmission, maintenance and/or storage of" the data. Interrog. Nos. 4 & 5. Such overbroad requests are not reasonably proportional to Plaintiffs' discovery needs. For example, Google sometimes makes aggregated, anonymized location data publicly available for researchers. Since the data is scrubbed of PII, it would make no sense for Plaintiffs to insist that Google identify "each Process and/or piece of Architecture" used in connection with that data. *See* Interrog. No. 4. Or that, when Google answers an interrogatory about whether it has shared "Location Information" with third parties, it must list every publicly available research report that incorporates the data.

Google has repeatedly told Plaintiffs that their theorized concerns are simply not true. For example, Plaintiffs assert that data tied to certain "persistent identifier[s] . . . enable[] identification of individuals." But they cannot explain how. As Google has repeatedly explained, its "persistent identifiers" aren't tied to user identities, either because it is technologically impossible, or because Google's policies forbid the creation of tools to re-identify user data. Thus, for example, a "persistent identifier" might track a user's language preferences so that Google can use the correct language when providing services to that identifier. But it does not link that identifier to PII like the user's name or email address. Plaintiffs themselves admit that such data does not implicate privacy concerns when they try to distinguish *Moreno* on the grounds that the "clientid" at issue in that case "could not be associated with other information to identify the plaintiff." Indeed, Plaintiffs cite *zero* evidence to support their assertions and instead rely on an article that generally describes the benefits and disadvantages of deidentification vs. anonymization (and concludes that deidentification is often better for privacy). The article does not, however, describe Google's practices. Plaintiffs cannot justify the broad discovery that they seek based on third-party articles that do not even mention Google. Instead, the parties should engage in limited discovery to determine what, if any, relevance anonymous, anonymized, or pseudonymous data has to Plaintiffs' claims so that future submissions to this Court, if necessary, are based on facts and not supposition.

---

[6] The "other repository" identified in the Complaint is not actually distinct, as it contains data keyed to Google Account IDs.

[7] Plaintiffs insinuate (without authority) that anonymous or anonymized data collection is actionable under an unjust-enrichment theory, but that is not true. *See London,* 2008 WL 4492642, at *9 (defendant hadn't been unjustly enriched by collecting de-identified data because plaintiffs had "no propriety right to de-identified . . . information").

*In re Google Location History Litigation*, No. 5:18-cv-05062-EJD (Hon. Nathanael M. Cousins)
**Joint Statement re: Discovery Dispute**

Dated: May 27, 2021

Respectfully Submitted,

*/s Michael W. Sobol*
Michael W. Sobol (SBN 194857)
msobol@lchb.com
Melissa Gardner (SBN 289096)
mgardner@lchb.com
Michael Levin-Gesundheit (SBN 292930)
mlevin@lchb.com
Jallé Dafa (SBN 290637)
jdafa@lchb.com
**LIEFF CABRASER HEIMANN
    & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel: (415) 956-1000
Fax: (415) 956-1008

Nicholas Diamand (*pro hac vice*)
ndiamand@lchb.com
**LIEFF CABRASER HEIMANN
    & BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, NY 10013
Tel: (212) 355-9500
Fax: (212) 355-9592

*/s Tina Wolfson*
Tina Wolfson (SBN 174806)
*twolfson@ahdootwolfson.com*
Theodore Maya (SBN 223242)
*tmaya@ahdootwolfson.com*
Bradley K. King (SBN 274399)
*bking@ahdootwolfson.com*
Christopher Stiner (SBN 276033)
*cstiner@ahdootwolfson.com*
Rachel Johnson (SBN 331351)
*rjohnson@ahdootwolfson.com*
**AHDOOT & WOLFSON, PC**
2600 West Olive Avenue, Suite 500
Burbank, California 91505
Tel: (310) 474-9111
Fax: (310) 474-8585

*Interim Co-Lead Class Counsel*

*In re Google Location History Litigation*, No. 5:18-cv-05062-EJD (Hon. Nathanael M. Cousins)
**Joint Statement re: Discovery Dispute**

          */s Christopher S. Sun*
KEKER, VAN NEST & PETERS LLP
BENJAMIN BERKOWITZ - # 244441
bberkowitz@keker.com
NICHOLAS D. MARAIS - # 277846
nmarais@keker.com
THOMAS E. GORMAN - # 279409
tgorman@keker.com
CHRISTOPHER S. SUN - # 308945
csun@keker.com
CHRISTINA LEE - # 314339
clee@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:     415 391 5400
Facsimile:     415 397 7188

*Counsel for Google*

## ATTESTATION

Pursuant to Local Rule 5-1, I attest that all signatories shown above have concurred in the filing of this document.

DATED: May 27, 2021         */s Michael Levin-Gesundheit*
                                                                     Michael Levin-Gesundheit