UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

HON. NATHANAEL M. COUSINS

```
IN RE:                          )
                                )
GOOGLE LOCATION HISTORY         )
LITIGATION                      )
_____ )  CASE NO. 5:18-cv-05062-EJD
```

TRANSCRIPT OF PROCEEDINGS

HEARING ON 173 JOINT DISCOVERY LETTER BRIEF

VOLUME 1 OF 1

June 16, 2021 at 1:09 p.m.

**<u>APPEARANCES</u>**
(All present by video or telephone)

```
FOR THE PLAINTIFFS:          LIEFF CABRASER HEIMANN &
                             BERNSTEIN, LLP
                             BY:  MICHAEL LEVIN-GESUNDHEIT,
                             ESQ.
                             275 Battery Street
                             Floor 29
                             San Francisco, CA 94111


FOR THE DEFENDANT:           KEKER, VAN NEST & PETERS LLP
                             BY:  THOMAS E. GORMAN, ESQ.
                                  CHRISTOPHER S. SUN, ESQ.
                             633 Battery Street
                             San Francisco, CA 94111
```

PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING; TRANSCRIPT
PRODUCED BY ESCRIBERS, LLC



1          THE CLERK:  Calling 5-18-56062 In re:  Google

2   Location History Litigation.

3          Counsel, please state your appearances for the

4   record, beginning with Plaintiffs.

5          MR. LEVIN-GESUNDHEIT:  Michael Levin-Gesundheit from

6   the law firm Lieff Cabraser Heimann & Bernstein for Plaintiffs.

7          THE COURT:  Good afternoon.

8          MR. GORMAN:  Thomas Gorman from Keker, Van Nest &

9   Peters on behalf of Google.  And with me is my colleague

10  Christopher Sun.

11         THE COURT:  Good afternoon to you all.  All right,

12  thanks for being with me.  Just to set our procedural backdrop,

13  we're here on referral from Judge Davila in this class action

14  involving location history prior -- against Google and any

15  (audio interference) to my discovery rulings, it goes back to

16  Judge Davila, and it must be made within fourteen days of my

17  ruling on the discovery issues.

18         Our foundational procedural issues are whether the

19  discovery sought is relevant and proportional to the needs of

20  the case under Rule 26.  And in determining what's relevant and

21  proportional, of course I'm starting with (audio interference).

22  Here we've got the amended complaint as well as the answer.

23  And I've read Judge Davila's ruling on the motion to dismiss.

24          I think I might have a slow internet speed.  I'll

25  slow down for a second.  Hopefully, that's cured now.

1    So I've reviewed those to help me understand the

2  parameters of the claims and defenses in the case.

3    You've given me your competing definitions of what

4  location information means.  And ordinarily, I'd be inclined to

5  just start with the Plaintiffs' definition.  It's their

6  complaint.  They've defined what they're complaining about in

7  the case, and I would kind of start with their definition.

8    Here, Google's given a little bit of a different

9  definition of what that means.  And it's all very abstract to

10  me because I'm not in the same position of Google of knowing

11  what they've got, what the consequence (audio interference)

12  finding it Plaintiff's way.

13    And if I were to proceed, myself, I would maybe start

14  with a deposition to get some background information from

15  Google about the way that they store anonymous information,

16  their use of pseudonymous information, and to kind of get a

17  baseline of understanding.

18    And that's what they suggest in their letter briefs.

19  So kind of practically speaking, I want to navigate with you

20  all to see if there's some middle ground that can be found to

21  get Plaintiffs what they need without overburdening Google with

22  irrelevant and excessively burdensome discovery.  So thank you

23  for listening to my longwinded introduction.

24    Let me start on the Plaintiff's side with kind of

25  your thoughts, practically speaking.  If I used your

4

1   definition, what would be the consequences in the discovery

2   process ahead? And conversely, if I used Google's definition,

3   how's that going to hamstring you?  Give me your sense of kind

4   of the outcomes from -- that are going to follow.

5          MR. LEVIN-GESUNDHEIT:  Thank you, Your Honor.  Just

6   clear my throat for a second.  I appreciate your comments, and

7   I appreciate that you are thinking about how we can proceed

8   most expeditiously here.

9          You said you reviewed the complaint, and I'm sure you

10  saw that Plaintiffs allege the Google comprehensively stored

11  records of their locations from their mobile devices in

12  violation of their privacy, and that Google was unjustly

13  enriched, and that Google did so via various means.

14         And ultimately, the problem here is that the

15  definition Google proposes is just a fraction of the location

16  information Google collects.  Plaintiffs' goal is to, in

17  discovery, as the Court suggested should be the case in its

18  order resolving the motion to dismiss, show how comprehensive

19  Google's location-tracking practices are.

20         In order to do so, we need to be able to ask the

21  questions.  What are the databases in which Google stores

22  location information and how does it use the information?  We

23  have to be able to follow the data.

24         Google's definition includes only that data that it

25  says is "saved to a user's Google account".  It says this is a

 1  colloquial definition that somehow implies that the data is

 2  saved in the same database as a Google user ID.

 3        What we know from our extensive meet and confer about

 4  this -- and the meet and confer had two different tranches,

 5  both in 2019 and in 2021.  What we know is that Google is

 6  specifically excluding location information tied to other

 7  persistent identifiers, like a mobile device ID or an

 8  advertising ID.

 9        Those identify people.  They identify users.  They

10  identify their devices.  And Plaintiffs need to be able to

11  understand what Google has collected about them, even if it's

12  not tied to a Google account username, even if Google

13  categorizes it in some other way.  So Google has, in essence,

14  sought via this discovery dispute to hobble Plaintiffs' ability

15  to bring their claims in much the way that they did with the

16  motion to dismiss.

17        You mentioned this question about a deposition of a

18  witness about anonymization.  What I would say about that is

19  that it's true, in the meet and confer process, we did ask

20  Google if it would put forth a witness on this topic.  Google

21  did not respond.  And of course, we'd be interested in taking a

22  deposition on that topic, but I do not think that that will

23  resolve this issue.

24        Ultimately, we're not talking about any specific

25  discovery request and a motion to compel.  We're not talking

1  about the burden of collecting from any specific database.

2  Google is free, and Plaintiffs are, in fact, very much

3  interested and willing to meet and confer about specific

4  requests.  There are certainly topics about which Plaintiffs

5  will be more interested in.  And we will do our very best to

6  ensure that discovery is not burdensome.

7          But right now, we're just asking for the ability to

8  ask the questions.  Google seeks to cut us off at the very

9  beginning and limit this case to a small subsection of data

10  that it has defined.

11          And what I would also say about the deposition of a

12  witness about anonymization is that, one, I don't think that

13  Google's anonymization practices are going to absolve it of

14  liability in this case, so I don't think that there's any way

15  that that deposition will resolve the case and make the

16  discovery so much narrower.

17          But in order to take a deposition on that topic, we

18  need access to records.  We need to be able to look at

19  custodial emails.  And I'm concerned that if we, at this stage,

20  after this much meeting and conferring, delay discovery into

21  custodial emails and databases until such a deposition is

22  taken, we may end up in a spot where we have to come to you

23  twice about custodians and search terms.

24          And if we don't resolve right now that Plaintiffs are

25  at least allowed to ask the questions about broader databases

1    of location information, we may be coming to you time and time

2    again with each request about whether we can ask about the

3    various ways data has kept track of -- Google has kept track of

4    data.  My apologies, Your Honor.

5              THE COURT:  All right, thank you very much.

6              Let me get Google's perspective on kind of the

7    consequences of the two extremes here, but also the context for

8    kind of where this is going to take us.  This is not our final

9    hearing.  It's not the closing arguments of trial.  We're just

10   kind of setting the stage for efficient and fair discovery to

11   come.  Go ahead, Mr. Gorman.

12             MR. GORMAN:  Thank you, Your Honor.  Plaintiffs'

13   letter brief and their request here is premature.  And in

14   particular, it's divorced from the actual discovery requests

15   that are at issue in this case.  I thought it was notable that

16   Mr. Levin-Gesundheit said we're not talking about specific

17   requests here.  And I think that's a problem.

18             To the extent Plaintiffs believe that Google is de-

19   anonymizing location data, so that it's reassociating it with

20   user accounts or user identities, Plaintiffs should propound

21   targeted discovery on that.  But instead, what Plaintiffs are

22   asking the Court to do here is to bless, in advance, an

23   overbroad definition of location information that's completely

24   taken out of context from their actual discovery requests.

25             And some background here, Your Honor -- Plaintiffs

1  served RFPs and rogs that used a specific defined term.  It was

2  location information with a capital L and a capital I, and it

3  was wildly overbroad, and we met and conferred about that.  At

4  the time this letter brief was submitted, that term was used in

5  seven RFPs and six interrogatories.  After filing this letter

6  brief, Plaintiffs served almost forty new RFPs and this same

7  defined term is used in thirty-five of them.

8          Now, Google's position is that discovery should be

9  primarily focused on what the complaint complains about, that

10  Plaintiffs' personal information was allegedly collected by

11  Google through Google account settings and then stored in

12  individual Google accounts, or otherwise linked back to those

13  accounts and to the persistent identifiers that identify them:

14  their email addresses, their names.

15          There's a lot of accusations that have been thrown

16  out that Google takes anonymous or pseudonymous data and

17  relinks it back to those accounts.  And we've offered to answer

18  those questions.  We were answering them informally, and we're

19  happy to answer them in more formal discovery.

20          But Plaintiffs refuse to serve those requests and,

21  instead, just keep asking for more and more and more about

22  every possible project that touches location information or any

23  location data or anything having to do with location.

24          So candidly, I'm not exactly sure what Plaintiffs

25  want the Court to do here, to bless this definition of location

1   information completely divorced from the actual rogs and RFPs.

2   We had offered essentially what you proposed at the beginning

3   of this hearing, which is to take some folks' discovery on

4   anonymous and pseudonymous data practices, and to otherwise

5   focus primarily the discovery on the Google account settings

6   that are at the heart of this complaint.

7           THE COURT:  All right.  So here's one -- this is a

8   procedural step forward.  It's not a leap by any stretch, but

9   I'm willing to take the discovery requests, and there's first

10  tranche and a second tranche -- and take a look at them so I

11  can see a little more concretely the breadth of what's being

12  asked for, and I bet you can get that to me pretty quickly.

13  And if there are responses that you want me to see, too, I can

14  look at those, too, so that I have better appreciation for the

15  consequences of my definition.

16          MR. LEVIN-GESUNDHEIT:  May I offer something, Your

17  Honor?

18          THE COURT:  Yeah, please.

19          MR. LEVIN-GESUNDHEIT:  So I think that if we step

20  back to what Plaintiffs propounded back in 2019, and to which I

21  don't believe we've received adequate responses, the two most

22  important interrogatories in my mind were one, interrogatory

23  asking for Google to explain the system architecture used to

24  collect and store location information, and two, to state its

25  uses of location information.

1            I think that those are questions that Google can

2     answer and that, with answers to those questions, Plaintiffs

3     will be able to focus their further discovery requests.

4     Currently, Google has basically sought to cut us off and not

5     explain the various sources of storage locations of location

6     information.

7            THE COURT:  Let me -- sorry to interrupt.  Which were

8     the two rogs you just referenced there, what numbers were

9     those, just so I'm keeping score?

10           MR. LEVIN-GESUNDHEIT:  Yeah, so in compliance with

11    your standing order, we didn't submit any exhibits.  We can

12    certainly submit them to you, but it was the first set of

13    interrogatories, interrogatories numbers 4 and 5.  I can read

14    them to you, if you'd like.  But they basically ask for, in

15    narrative form, information that will be very valuable in

16    discovery going forward and --

17           THE COURT:  All right, so is this a compromise you're

18    suggesting, which is to ask them to answer rogs 4 and 5 and

19    defer the others, using your definition?

20           MR. LEVIN-GESUNDHEIT:  I think that if Google

21    answered those interrogatories with our definition in a short

22    time frame, that could move us a long way forward.  If it

23    actually explained the process by which it collects location

24    information under our broader definition, for sure, that we

25    think is tied to our claims, and it explains the ways that it

1 uses it, whether it's, in Google's view -- whether it

2 anonymizes data or not.

3         And I think that we would strongly dispute that

4 Google's practices that it calls anonymization really removed

5 personal information or absolve it of any privacy violation.

6 And certainly, any anonymization can't eliminate the unjust

7 enrichment claim.

8         But if Google gave us true, comprehensive, fulsome

9 answers to those two questions, using our definition, and

10 allowed us to review those, I think that would move us a long

11 way forward and could avoid further disputes.  It can help

12 focus us.

13         I mean, obviously, we'd like you to tell us that we

14 can use our definition and that Google can object to each

15 specific request, and we can meet and confer about burden.  But

16 if that's not where Your Honor is inclined to go, I think

17 getting fulsome responses to these two interrogatories would

18 move us a long way forward.

19         THE COURT:  Thank you for the proposal.

20         Mr. Gorman, what do you think?

21         MR. GORMAN:  Again, I think it's notable that Mr.

22 Levin-Gesundheit argues that there's no way that Google's

23 pro-privacy data minimization techniques could ever eliminate

24 those practices from this case when he has not taken any

25 discovery on how those practices work, how they protect

1    privacy, what effect they have in terms of eliminating the

2    connection between that data and user identities.  And that's

3    the type of discovery that we think should come first before

4    Google is asked to itemize every project or every research or

5    every piece of source code that uses anything having to do with

6    location.

7            Now, these specific requests are incredibly broad.

8    We actually agreed with Plaintiffs' counsel to defer meeting

9    and conferring about just how broad they were until we finished

10   meeting and conferring about this definitional issue, so I'm a

11   little surprised that this has now turned into a motion to

12   compel on those two specific interrogatories.

13           But we believe that it's improper to start

14   identifying every research paper that's published online where

15   Google uses anonymized location information, completely

16   divorced from personally identifying information, that could no

17   way invade privacy.  We have to identify the web server where

18   it's published or the blog post announcing that publication, or

19   the source code that helped create that research, when none of

20   it could have anything to do with this case.  And that's my

21   concern.

22           MR. LEVIN-GESUNDHEIT:  May I respond, Your Honor?

23           THE COURT:  You may.

24           MR. LEVIN-GESUNDHEIT:  So the first thing I would say

25   is that Plaintiffs get to decide how to litigate their case and

1  how to stage discovery.  So that Google wants to provide

2  Plaintiffs with certain discovery on what it calls its

3  pro-privacy practices, that's fine, but Plaintiffs get to

4  decide, I think, how they want to make their case.

5          Here, I think it'll be very helpful to get Google's

6  explanation of how it collects location information under

7  Plaintiffs' definition and how it uses it.  We haven't asked

8  for source code.  That's not correct.  We need answers to these

9  questions and, depending on those answers, we may need source

10  code, but the answers to the questions are explain in prose

11  form, not by providing source code.

12          And then my colleague mentions research projects.

13  And I understand the appeal of pointing out that example, but

14  that's just one example.  And Google is the one that has the

15  knowledge.  Plaintiffs want to follow the data, and we get to

16  learn what Google did, not just the self-serving examples that

17  it provides.

18          Now, if there's a number of different research

19  projects that are hard to explain, of course we can meet and

20  confer with Google to maybe get broader answers on that

21  particular category of information.  But what we really need to

22  know is exactly how Google uses Plaintiffs' location

23  information, where it stores the information, whether it uses

24  it for personalized advertising, et cetera, what it does after

25  it anonymizes information.

1          We understand from our research that it still uses

2     that information for personalized advertising, so we're not

3     certain what that means.  But I think that requiring Google to

4     actually answer interrogatories which were served two years

5     ago, and about which Google provided a handful of examples,

6     self-serving ones, I would say, I think that would move us a

7     long way forward.

8          THE COURT:  All right, thank you.

9          Mr. Gorman, anything further?

10          MR. GORMAN:  Yeah, I mean, I would just say again I

11    think this is a motion that was addressed that the definition

12    of certain rogs and RFPs completely divorced from the context

13    of those  rogs and RFPs, and if we're going to have a motion to

14    compel on interrogatory number 4, interrogatory number 5,

15    interrogatory number 6, or the forty-two RFPs in which this

16    term is used, then we should be allowed to brief that and argue

17    the specifics of exactly what burdens that's going to create.

18          MR. LEVIN-GESUNDHEIT:  May I respond, Your Honor?

19          THE COURT:  Okay.

20          MR. LEVIN-GESUNDHEIT:  I understand Mr. Gorman's

21    point, but what I would say is that we've met and conferred for

22    many months, both in 2019 and 2021.  We exchanged numerous

23    briefs leading up to this joint filing.  Interrogatories 4 and

24    5 are mentioned and addressed in the briefs.  It's very clear

25    what they're about.

1          It's about identifying how -- the data architecture

2    Google collects and stores location information, into what

3    databases it flows, and how Google uses it.  And I just think

4    that at this stage in the case, two years since we served these

5    interrogatories, after two motions to dismiss, these are basic

6    facts to which Plaintiffs are entitled.  And we should be able

7    to get answers to them.  I don't think we need to engage in

8    another round of briefing and weeks more of meeting and

9    conferring about it.

10          THE COURT:  All right, thank you very much.

11          So if I might offer a friendly amendment, Mr. Levin-

12    Gesundheit, to one thing you said.  Each party gets to ask for

13    the discovery they want, but it is a collaborative process to

14    go through the discovery process because both sides might be

15    seeking things from the other.  And if you can communicate

16    about what you want and what's available and what might be

17    objections, that makes the entire process more efficient for

18    you all.

19          But ultimately, as far as the sequencing of things, I

20    think we do start with the party seeking information to see

21    what they want and when.  And then we've got to work it out,

22    and sometimes the Court helps facilitate that process, but

23    oftentimes, the parties work these issues out without need for

24    Court involvement.  And there's no punishment for asking for

25    Court (audio interference).  It does take more time.

escribers

www.escribers.net | 800-257-0885

1        And what I am concerned about here, from what you've

2   said, is paralysis by analysis, endless briefing, and meeting

3   and conferring without actual any discovery going on.  And I

4   think it is time for this discovery process to get moving a

5   little faster.

6        I'll pause for a second to make sure my internet is

7   back to speed.

8        All right, so let's get into some orders here.  As to

9   interrogatories 4 and 5, so those are the two that Mr. Levin-

10  Gesundheit identified, using Plaintiffs' definition of location

11  information, (audio interference) Google to respond to those

12  within fourteen days.  That's by June 30th (audio interference)

13  only.

14        As to the remaining rogs and document requests, two

15  parts.  One, you're going to confer with each other further

16  about what the limits of burden are.  And I hope that that'll

17  be an informed conversation.  I do encourage you to get moving

18  on (audio interference) depositions where you can ask

19  questions, find out more about what might be out there.

20        And it may be that you still have some disputes, and

21  you want to come back to me to refine, to put a fine point on

22  some of these issues of burden.  But I want you to both pursue

23  the discovery in depositions and getting these answers and

24  confer further, because I think there's a lot of middle ground

25  that could be found on this discovery stuff.  But I invite you

1 to come back.  I'm not saying you can't come back, but I want

2 you to try to work it out first.

3          And a third part is you don't have to wait.  You can

4 send me -- not send me.  You can file the discovery requests

5 that you've already put out there, so I'm informed before you

6 come back as to the particulars.  But I'm not waiting for 4 and

7 5.  You described them for me.  I think that'll get the process

8 started with that information.

9          MR. LEVIN-GESUNDHEIT:  Thank you, Your Honor.  And I

10 take to heart your comments.  We, of course, seek to work

11 collaborative, and we will continue to do so.

12          THE COURT:  Very good.  So in summary, we've set the

13 deadline of June 30th for responses to rogs 4 and 5.  The

14 parties have leave to submit the request and any responses for

15 all this stuff, not that I'm going to be issuing a ruling on it

16 now, but just for my additional education, so I'm prepared for

17 the next round.  And third, the parties are going to confer

18 with each other about all the outstanding requests, now that

19 you've shared further the consequences of these definitions,

20 and you're going to get to work on the depositions so you can

21 kind of refine where you're going from here.

22          MR. LEVIN-GESUNDHEIT:  Thank you, Your Honor.

23          THE COURT:  All right.  I think that takes care of

24 it.  I thank you for your time today.

25          MR. LEVIN-GESUNDHEIT:  Thank you.



1          MR. GORMAN:  Just to be clear, Your Honor.  While Mr.

2    Levin-Gesundheit has described at a very high level these

3    interrogatories, they include -- they're quite burdensome in

4    their subcomponents and their sub-subcomponents, and in their

5    incorporated definitions.  So while we will endeavor to answer

6    them to the greatest extent we can, I'm not sure -- I'm not

7    sure it's going to be possible to answer them to the extent

8    that Mr. Levin-Gesundheit is looking for at this stage.

9          THE COURT:  Yeah, well you may have a disagreement

10   about the comprehensiveness of the answers, and I can't rule on

11   that until I've seen the answers, and I don't know if you'll

12   have a dispute about it or not.  I can be hopeful that you'll

13   work it out, but so far, I've just ordered you to answer them.

14   And you can also send me the question and answer, and I'll see

15   them, and if you have a dispute, I'll help you to where (audio

16   interference).  But I think that's a good starting place.

17         MR. GORMAN:  Thank you, Your Honor.

18         MR. LEVIN-GESUNDHEIT:  Thank you, Your Honor.  May I

19   ask one question?  And that is our presentation of future

20   discovery disputes, is this the -- is this the format you'd

21   like, two pages from each party?  Is there a specific way you'd

22   like us to bring issues to Your Honor?  Of course, we'll try to

23   avoid bringing issues, but to the extent we need to.

24         THE COURT:  This is the right way.  And if you seek

25   leave, if you want to attach things, if you want to have more

```
 1  pages, if you want to do something different, just ask
 2  permission.  Just say we'd like leave to do X, Y, or Z.  I'll
 3  consider your request and do it.
 4          The reason that I have my rule as it is is that
 5  parties, without asking permission, might submit 1,000 pages of
 6  supporting materials, half of it under seal, requiring many
 7  days and weeks of review unnecessary to resolve a particular
 8  issue.  And it's not out of malfeasance.  The parties want to
 9  make sure that I'm educated on everything, but the collective
10  impact of that is that we get a lot more information than we
11  need to resolve things.
12          And it slows down the entire process, not just for
13  your case, but for the other cases that need a decision.  So
14  I'm erring at the front end on brevity, with parties permitted
15  leave to have permission to file more rather than to start with
16  more and then to have me say, well, I wish you hadn't given me
17  all that.  But now (audio interference) with it.  I hope that's
18  responsive.
19          MR. LEVIN-GESUNDHEIT:  Understood.  Understood.
20  We'll try to crystalize the issues, but we recognize that, if
21  necessary, we can ask for leave to file attachments.
22          THE COURT:  Very good.  All right, thank you so much
23  for your time and working through these things.  We'll do a
24  summary of that, but I think you've got the plan going forward.
25          MR. LEVIN-GESUNDHEIT:  Thank you.
```



1          THE COURT:  All right.  That case is concluded.

2   Thank you very much.

3          MR. LEVIN-GESUNDHEIT:   Thank you.

4      (Proceedings concluded at 1:33 p.m.)

5                          *  *  *  *  *

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25



1                C E R T I F I C A T E

2          I, court-approved transcriber, certify that the

3    foregoing is a correct transcript from the official electronic

4    sound recording of the proceedings in the above-entitled

5    matter.

6

7

8          *Tamara Bentzur*

9

10   _____      June 27, 2021
     Signature of Approved Transcriber     Date

11

12

     Tamara Bentzur, CET-824
13   Typed or Printed Name

14

15

16

17

18

19

20

21

22

23

24

25


www.escribers.net | 800-257-0885