1    KEKER, VAN NEST & PETERS LLP
     BENJAMIN BERKOWITZ - # 244441
2    bberkowitz@keker.com
     THOMAS E. GORMAN - # 279409
3    tgorman@keker.com
     CHRISTOPHER S. SUN - # 308945
4    csun@keker.com
     CHRISTINA LEE - # 314339
5    clee@keker.com
     633 Battery Street
6    San Francisco, CA 94111-1809
     Telephone:    415 391 5400
7    Facsimile:    415 397 7188

8    Attorneys for Defendant GOOGLE LLC

9    AHDOOT & WOLFSON, PC
     Tina Wolfson (SBN 174806)
10   *twolfson@ahdootwolfson.com*
     Theodore Maya (SBN 223242)
11   *tmaya@ahdootwolfson.com*
     Bradley K. King (SBN 274399)
12   *bking@ahdootwolfson.com*
     Christopher Stiner (SBN 276033)
13   *cstiner@ahdootwolfson.com*
     Rachel Johnson (SBN 331351)
14   *rjohnson@ahdootwolfson.com*
     2600 West Olive Avenue, Suite 500
15   Burbank, California 91505
     Tel: (310) 474-9111
16   Fax: (310) 474-8585

17

18   Interim Co-Lead Class Counsel

LIEFF CABRASER HEIMANN
& BERNSTEIN, LLP
Michael W. Sobol (SBN 194857)
msobol@lchb.com
Melissa Gardner (SBN 289096)
mgardner@lchb.com
Michael Levin-Gesundheit (SBN 292930)
mlevin@lchb.com
John Maher (SBN 316157)
jmaher@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: 415.956.1000
Facsimile: 415.956.1008


LIEFF CABRASER HEIMANN
& BERNSTEIN, LLP
Nicholas Diamand (*pro hac vice*)
250 Hudson Street, 8th Floor
New York, NY 10013
Telephone: 212.355.9500
Facsimile: 212.355.9592


Interim Co-Lead Class Counsel

19                    UNITED STATES DISTRICT COURT

20                  NORTHERN DISTRICT OF CALIFORNIA

21                          SAN JOSE DIVISION

22

23   IN RE:  GOOGLE LOCATION HISTORY          Case No. 5:18-cv-05062-EJD-NC
     LITIGATION
24                                            **JOINT UPDATE RE DKT. 181**

25                                            Dept:      Courtroom 5 – 4th Floor
                                              Judge:     Hon. Nathanael M. Cousins
26
                                              Hr'g Date: October 6, 2021
27                                            Time:      1:00 p.m.

28

The parties submit this joint update in response to the Court's request and in advance of this week's discovery hearing.  *See* ECF No. 181.

I.      **GOOGLE'S STATEMENT**

On September 3, 2021, Google filed a joint letter brief identifying serious deficiencies in Plaintiffs' discovery responses.  *See* ECF 180 ("JLB").  The Court set those disputes for an October 6 hearing and directed the parties to file this discovery update on October 4. Unfortunately, despite the passage of an additional month, Plaintiffs still have not produced the documents and information at issue in Google's September 3, 2021 JLB.

Rather than address their continued failure to produce the information and documents at issue, and because Plaintiffs have failed to remedy *any* of their discovery shortcomings, Plaintiffs seek in their statement below to distract the Court from the issues presented in Google's JLB motion by raising a laundry list of purported discovery complaints that have nothing to do with Google's motion and about which they have not yet met and conferred with Google.  Google has repeatedly requested that Plaintiffs focus this letter on what Plaintiffs themselves describe as "motions before the court," and that they do so within the Court's 2.5-page limit.  Plaintiffs have refused and insisted instead that the parties file this oversized statement, to which Google has objected.  Nonetheless, Plaintiffs' efforts at distraction and diversion are all beside the point. Plaintiffs should be ordered to produce the documents and information at issue in Google's discovery motion.  *See* ECF No. 180.

A.      **Motions Before the Court**

1.      **ECF No. 180**

Over the last month, Plaintiffs have done nothing to remedy the issues raised by Google's motion.  In mid-September, Plaintiffs made a "production" that consisted of just 11 documents. Of those, only *six* documents came from plaintiffs' own files: a few emails to Mr. Patacsil describing Google's privacy policies or encouraging him to "complete [his] privacy checkup" and an exchange between Mr. Patacsil and GameStop, a video-game company.  The other half of the production—that is, five documents—was gathered by Plaintiffs' counsel from public websites, including from one operated *by* Plaintiffs' counsel.  None of those documents are responsive to

Google's pending requests.  If anything, this makeshift "production" demonstrates yet again why Google felt compelled to bring these issues to the Court's attention.  Plaintiffs' counsel simply refuses to conduct a proper, thorough search of Plaintiffs' documents or to identify relevant, responsive materials.  Instead, they have left their clients to hand-select documents, which their lawyers have produced to Google at a rate of just 6 or 7 per month.  In *total*, Plaintiffs have now produced just 59 documents[1] since March.

With respect to **Topic A**, there is no substantive dispute: Plaintiffs agreed to produce these documents (that is, those responsive to RFPs No. 15, 19–28, 30–31, and 33–41) back in March.  They acknowledge as much in the JLB.  They simply haven't done what they promised to do.  Now, another 30 days have passed, and Plaintiffs have once again made no meaningful progress.  Respectfully, Google repeats its September 3 request that the Court order Plaintiffs to produce these documents within 14 days.

In **Topic B**, Google requested the Court to order Plaintiffs to respond to Interrogatory No. 3, as they have committed to doing.[2]  In response, Plaintiffs "acknowledged that their search for additional information continues" but complained that "a 14-day deadline" was "unworkable."  Now, another 30 days have passed, and Plaintiffs still have not supplemented their response to Interrogatory No. 3 or provided any additional information.[3]

---

[1] Plaintiffs complain below that it is "disingenuous" not to give them credit for Bates-stamping and producing the exhibits to their Complaint.  Those exhibits—which Plaintiffs gathered long before discovery opened—constitute 531 pages (or *75%* of Plaintiffs' *total* production).  In other words, since February, when discovery opened, Plaintiffs have identified and produced a meager 59 documents (or 182 pages), at a rate of less than *one page per day*.

[2] Plaintiffs have responded to *part* of this interrogatory by identifying applications installed on their mobile devices but have never explained "the settings relating to the collection or storage of location information for the application, the date(s) any changes to such settings were made for the application, and the mobile device ID for each mobile device on which You used each application."  In this "update," Plaintiffs complain for the first time that describing these settings changes would be "burdensome" and "harassing."  But Plaintiffs cannot *change* their location settings in the midst of discovery, claim that those settings do *not* allow other apps to track their location, and then allege that it would be too burdensome to confirm when they made those changes.  None of this is "contrary to" the parties' discussions, as Plaintiffs allege below.  Indeed, just last month, Plaintiffs confirmed—in a written submission to this Court—that they had agreed to "provide a list of the apps installed on their mobile devices, … any Location Services of App Permission settings, … *and dates when changes to those settings were made*."  *See* ECF No. 180 at 4 (emphasis added).

[3] Plaintiffs also still have not responded to Google's outstanding July 2, 2021 request that they "send us a more detailed description of the [forensic analysis] work and timelines" they

With respect to **Topic C**, Plaintiffs still have not produced the relevant screenshots.

With respect to **Topic D**, Plaintiffs still have not produced documents sufficient to identify—or identified in writing—the "sensitive locations" they allege in their Complaint.

### 2.   ECF No. 183

The parties' jointly-submitted request for a class certification schedule is still pending before Judge Davila.  *See* ECF No. 179.  Once that is decided, the parties should meet and confer about a joint schedule that focuses on and prioritizes class-certification issues.

### B.   New Issues Raised for the First Time in Plaintiffs' Statement Below

As if to highlight the concern Google raised last week,[4] Plaintiffs now insist on using this "discovery update"—which the Court directed in response to Google's pending JLB, ECF No. 180—to brief a litany of brand new issues about which Plaintiffs have not even bothered to meet and confer with Google.  These include:

- A vague complaint that *Google* has somehow "obstructed [the] process" of identifying custodians and search terms.  But Google asked Plaintiffs' counsel to propose custodians and search terms more than a month ago.  Then, as Plaintiffs' counsel acknowledge below, they went silent for weeks, ultimately proposing custodians for the very *first* time just one business day before this joint statement was to be filed—indeed, in the very same email in which they provided their portion of this statement to Google.  Plaintiffs' complaints not only ring hollow, but are a transparent effort to distract from Google's legitimate discovery complaints and to somehow blame Google for Plaintiffs' own delays.

- A complaint that Google has not responded to Interrogatory No. 7.  On September 13, Google explained that that interrogatory asked the wrong question and was neither a useful nor efficient way for Plaintiffs to identify potential custodians or witnesses, as the Google employees who "have supervisory responsibility" for databases are not typically

_____

envisioned.  *See* JLB at 2 n.1.

[4] *See* ECF No. 183 at 5 ("Google also requests that the Court deny Plaintiffs' demand for monthly 'status conferences….'  If Plaintiffs have specific discovery concerns, they should follow this Court's established procedures for conferring and then submitting a joint discovery brief, just as any other litigant would be expected to do.").

1    the people responsible for the content or products Plaintiffs appear to be accusing in their

2    complaint.  To fix that problem, Google offered to meet and confer.  Remarkably,

3    although Plaintiffs have now twice complained *to the Court* about this interrogatory, they

4    waited almost three weeks to respond to Google's offer and still have not met and

5    conferred with Google about their poorly-worded request.  Google has reminded

6    Plaintiffs' counsel that this Court requires parties to "meet and confer, in person or by

7    telephone, to attempt to resolve their dispute[s]."  Unfortunately, Plaintiffs' counsel is

8    more focused on rushing complaints to the docket than on working to resolve them.

9    •    A mischaracterization of Google's proposed compromise offer to produce documents

10        previously produced to the Arizona Attorney General.  Google has objected broadly to

11        Plaintiffs' requests for cloned discovery in other matters, which seek to vexatiously

12        multiply Google's discovery obligations and seek discovery that, in many instances, is

13        simply irrelevant to the present litigation.  Indeed, numerous courts in this Circuit have

14        found such "cloned discovery" to be improper.[5]  Nonetheless, Google has always been

15        clear that if documents produced in the Arizona litigation referred to by Plaintiffs' counsel

16        below are relevant to this action and responsive to Plaintiffs' requests, Google will

17        produce such documents.  Contrary to Plaintiffs' baseless claim below, Google has never

18        asked "that Plaintiffs agree not to challenge any of Google's future sealing requests."  To

19        the contrary, Google proposed a compromise last week that, if Google were to agree to

20        produce the documents it produced in Arizona here (without further review for

21        responsiveness as to Plaintiffs' individual requests), Plaintiffs should "agree not to oppose

22        the sealing of any materials that have ***been ordered sealed*** by the judge or special master

23        in the Arizona matter."  The parties have limited time and the Court has limited resources.

24

25    [5] *See, e.g.*, *Clean Diesel Marketing, Sales Practices, & Products Liability Litigation*, 2017 WL
      4680242, at *2 (N.D. Cal. Oct. 18, 2017) ("Plaintiffs are not entitled to complete access to the

26    MDL Production simply because there may be an overlap between their claims and those [here].
      They instead must serve requests for production on [defendant] in accordance with the Federal

27    Rules."); *Ludlow v. Flowers Foods, Inc.*, No. 18-CV-01190-JLS-JLB, 2019 WL 6252926, at *18–
      19 (S.D. Cal. Nov. 22, 2019) ("Asking for all documents produced in another matter is not

28    generally proper."); *Racing Optics v. Aevoe Corp*, No. 2:15-CV-1774-RCJ-VCF, 2016 WL
      4059358, at *1 (D. Nev. July 28, 2016) ("'Piggyback' discovery requests are prohibited.").

1   If Plaintiffs' goal is efficiency, as they claim, it is difficult to see why the parties need to

2   relitigate sealing decisions that have already been evaluated by a judge or special master.

3   If Plaintiffs were willing to agree to this compromise, it would potentially reduce the

4   expense for Google to review the Arizona production to determine which documents, if

5   any, may be responsive to Plaintiffs' discovery requests in this action and, if so, how such

6   documents should be designated for confidentiality purposes.  If Plaintiffs' position is that

7   Google must re-review the Arizona production and relitigate sealing issues that have

8   already been decided by another court, Plaintiffs' position is untenable, and would

9   unnecessarily multiply Google's discovery obligations out of proportion with any

10  legitimate needs for information that Plaintiffs may have.

11  •   Interrogatories 4–5, where Plaintiffs have refused to follow the Court's advice[6] and, yet,

12      boldly accuse *Google* of being "in default of the Court's June 16, 2021 order."  Plaintiffs'

13      rhetoric is divorced from the facts.  In June, the Court ordered Google to provide

14      additional responses to these two interrogatories.  Google did, and its answers to these two

15      requests now total approximately 18 pages, detail more than 49 different ways that Google

16      uses location data, and identify a list of products or services that use location data.

17      Google provided those responses by the Court's deadline, and then responded to various

18      questions about them.  If Plaintiffs actually believed that Google's detailed, thorough

19      responses were inadequate, they could and should have (1) met and conferred with Google

20      in person or by phone, as this Court's standing order requires, and (2) raised any

21      remaining disputes in a joint letter, as the Court has previously suggested.  *See infra* at

22      6 n.5.  That Plaintiffs have not done so is revealing, and the fact that they raise this issue

23      here for the first time is evidence that their goal is to distract from the issues raised in

24      Google's JLB, ECF No. 180, not resolve disputes in good faith.

25                                      *  *  *

26  _____

[6] *See, e.g.*, Hr'g Tr. (June 16, 2021) at 3:19–22 ("I want to navigate with you all to see if there's

27  some middle ground that can be found to get Plaintiffs what they need without overburdening
    Google with irrelevant and excessively burdensome discovery."); *id.* at 16:20–25 (noting that, if

28  disputes remained after meet-and-confer efforts, Plaintiffs could and should "come back to me to
    refine"); *id.* at 16:17–19 (encouraging Plaintiffs to "get moving on depositions").

JOINT DISCOVERY UPDATE
Case No. 5:18-cv-05062-EJD-NC

1    It is telling that Plaintiffs seek no relief with respect to any of their litany of complaints.

2    Instead, their goal appears to be to distract the Court from the only issue actually before it:

3    Plaintiffs' failure to produce any meaningful discovery in *eight months*.  Respectfully, Google

4    requests that the Court remind Plaintiffs that its standing order applies to all litigants (including

5    Plaintiffs) and to all discovery disputes.

6    **II.    PLAINTIFFS' STATEMENT**

7        **1.  Motions Before the Court**

8            **a.  Letter Brief re: Named Plaintiff Discovery (ECF 180)**

9    Plaintiffs made an additional document production on September 22, which included

10   documents responsive to Google's contention requests 28, 31, and 33-35,[7] correspondence

11   responsive to Google's requests 16 and 38, and a landing page that Plaintiffs Patacsil and Mahon

12   viewed prior to seeking representation in this action, which was produced in an abundance of

13   caution in response to Request 39, seeking documents related to attorney advertisements.

14   Counsel continue work with Setec Investigations and the Plaintiffs to locate any additional

15   responsive documents, to compile available information regarding the dates that settings

16   identified in response to Interrogatory 3 changed over time, and to locate additional device

17   information responsive to Interrogatory 1 (of course, Google itself is expected to have identifying

18   information for the devices through which it tracked Plaintiffs).  At present, it is not clear when

19   this work will be complete, but counsel re-confirm their commitment to producing responsive

20   documents and information on a rolling basis as it becomes available.

21   Responding to Google's footnote regarding Interrogatory 3, Plaintiffs never agreed to

22   undertake the gargantuan task of ascertaining location settings for *each* of the hundreds of

23   applications installed since 2014 on their devices.  Over breadth and relevance objections,

24   Plaintiffs agreed to provide Location Services or App Permissions settings, which are compiled

25

26   [7] Google's insistence that the 64 documents related to Plaintiffs' claims and factual allegations
     which were exhibits to the Complaint comprise a single "document" and are non-responsive is
     disingenuous.  Google's counsel insisted they be re-produced in response to requests seeking,
27   *e.g.*, all documents "you may seek to introduce as an exhibit at trial" (RFP 31) and "relating to
     this litigation, including each of the legal and factual allegations" (RFP 28).  The September 22
28   production included documents cited in, but not appended to, Plaintiffs' operative complaint.

by devices for applications that recently requested access to location data (*see* ECF 180 at 4).

Video recordings and screenshots of those settings created during Plaintiffs' search for that

information were also produced.  If Google seeks to compel Plaintiffs to find the "settings" for *all*

applications—contrary to the parties' discussions—the request should be denied as burdensome,

harassing, and seeking irrelevant information.  Plaintiffs are working with Setec to compile

historical location settings, where available, to inform Plaintiffs' responses regarding changes

over time.  The parties' disputes with respect to Requests 1 and 6 have not been resolved.

### b.   Letter Brief re: Discovery Deadlines and Status Conferences (ECF 183)

Plaintiffs will be prepared to answer the Court's questions regarding their request for

discovery deadlines and regular status conferences, as outlined in the September 28 letter brief.

ECF No. 183.  Plaintiffs respectfully suggest that the topics addressed in the Discovery Update,

below (Part I.2), are indicative of the need for firm deadlines to ensure that conferring with

Google is productive.

### 2.   Discovery Update

### a.   Custodians and Search Terms

Google has obstructed this process by refusing to identify knowledgeable individuals who

could serve as custodians.  Nonetheless, per Google's request, Plaintiffs made an initial proposal

regarding custodians on October 1, 2021, and at the time of this writing are working on an initial

proposal regarding search terms, both of which are based on limited knowledge.

Google's 2019 initial disclosures, which Google refuses to supplement, listed just two

individuals with discoverable information. Additionally, on September 13, Google refused to

provide any substantive response to the interrogatory below, which was aimed at identifying

custodians.[8]

---

**INTERROGATORY NO. 7**

For each year from 2014 to present, identify by name, job title, and current employer (to the extent known), each Google employee with supervisory responsibility for Footprints, Sawmill, Kansas, Oolong Cache, the data store(s) or database(s) associated with Google Location Services/Google Location Accuracy, and any data store(s) or database(s) containing Location Information stored when any User's "Location History" setting is disabled.

For clarity, Plaintiffs provide a chart below to demonstrate the form Google's response may take:

| Data Store or Database | Supervisory Employee(s), Job Title, Year(s) in Role (Current Employer) |
|---|---|
| Footprints | Jane Doe, Product Manager, 2014-18 (Apple, Inc.)<br>Bob Smith, Product Manager, 2018-20 (Google LLC)<br>Mary Jones, Product Manager, 2020-present (Google LLC)<br>John Q. Public, Engineering Manager, 2014-present (Google LLC) |
| . . . | . . . |

---

### 2.   Documents Previously Produced in the *Arizona* Action

Since October 2020, Plaintiffs have sought documents that Google produced to the Arizona Attorney General in location tracking litigation.  Google now has agreed to produce the documents, but only if Plaintiffs agree to unreasonable conditions.

Google would require Plaintiff to forego discovery concerning any other governmental investigations, but Google has provided no explanation as to why its production in *Arizona* would be sufficient.  Google also insists that Plaintiffs agree not to challenge Google's future sealing requests.  Civil discovery is not a hostage negotiation, and Google should not treat it as such. While Plaintiffs will not oppose reasonable requests to seal such information, they should not be required to forego their duty to challenge improper sealing requests—especially since Plaintiffs previously were required to litigate, at length, an improper sealing request.  *See* ECF 162 at 23

---

[8] Contrary to Google's assertions regarding this interrogatory in its section, Plaintiffs sent Google a letter addressing its response to this Interrogatory on September 29, 2021, asking Google's counsel to provide dates to meet and confer on this issue the week of October 4.  To date, Google has not responded to that letter or the request to meet and confer.  In its September 13 response, Google objected on the basis of relevance, and did not provide any argument like that in its section above to the effect that Plaintiffs somehow "asked the wrong question."

1    (denying Google's request to seal the name of the "Footprints" location database and holding that

2    "the interest in access to court proceedings in general may be asserted more forcefully when

3    litigation involves matters of significant public concern, such as the widely reported privacy-

4    related matters involved in this nationwide class action") (internal quotation marks omitted).

5           **a.   Interrogatories 4 & 5 (previously raised in ECF 173)**

6         Google is in default of the Court's June 16, 2021, order requiring it to answer Plaintiffs'

7    long-pending Interrogatories 4 and 5 using Plaintiffs' litigation-specific definition of "Location

8    Information." *See* ECF No. 175.  These interrogatories seek answers to foundational questions—

9    specifically, how Google collects, stores, and then uses "Location Information."

10        Google's June 30 supplemental responses, while more substantive than those served in

11   2019, are still incomplete.  Plaintiffs compiled clarifying questions that Google could answer to

12   satisfy its obligation under the Court's order.  Sent on July 26, Plaintiffs' aim was to initiate a

13   meet-and-confer process, which the Court had contemplated.  ECF No. 178 at 18:9-13.  In

14   response, Google stated that it was refusing to answer the questions because they "appear to be

15   additional interrogatories."  Plaintiffs made clear that the questions posed seek information that

16   should have bene contained in Google interrogatory responses.  On August 6, Google changed

17   course, writing that it was ***not*** "refus[ing] to answer any of the questions," and that Google would

18   "get back to [Plaintiffs] as soon as [the team] [was] able."  Plaintiffs followed up several times.

19   Google did not respond until September 11, refusing to answer *nearly all* the questions.

20        Google's obstinacy is just the latest example of its pattern of stonewalling Plaintiffs'

21   efforts to find out the various ways Google collects, stores, and uses Plaintiffs' location data.

22   Notably, Google refuses to (1) identify all the Google products and services that transmit or have

23   transmitted Location Information to Google; or (2) describe how, specifically, it made use of

24   Location Information stored in each of the databases it has identified.  Plaintiffs expect this issue

25   will be before the Court soon if Google does not answer these simple questions.

26   //

27   //

28   //

JOINT DISCOVERY UPDATE
Case No. 5:18-cv-05062-EJD-NC

1   Dated:  October 4, 2021                                    AHDOOT & WOLFSON, PC

2

3                                                          By:    /s/ Tina Wolfson
                                           TINA WOLFSON

4                                                                 THEODORE MAYA
                                           RACHEL JOHNSON

5                                                                 *Interim Co-Lead Class Counsel*

6

7   Dated:  October 4, 2021                                    LIEFF CABRASER HEIMANN &
                                            BERNSTEIN, LLP

8

9                                                          By:    /s/ Michael W. Sobol
                                           MICHAEL W. SOBOL

10                                                                MELISSA GARDNER
                                           MICHAEL LEVIN-GESUNDHEIT

11                                                                JOHN MAHER

12                                                                *Interim Co-Lead Class Counsel*

13

14  Dated:  October 4, 2021                                    KEKER, VAN NEST & PETERS LLP

15

16                                                         By:    /s/ Benjamin Berkowitz
                                           BENJAMIN BERKOWITZ

17                                                                Attorneys for Defendant GOOGLE LLC

18

19

20

21                                         **ATTESTATION**

22       Pursuant to Local Rule 5-1(i)(3), I attest that all signatories above have concurred in the

23   filing of this document.

24

25   Dated:  October 4, 2021                            /s/ Benjamin Berkowitz
                                       Benjamin Berkowitz

26

27

28

JOINT DISCOVERY UPDATE
Case No. 5:18-cv-05062-EJD-NC