Pages 1 - 31

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE NATHANAEL COUSINS, MAGISTRATE JUDGE

|                           |   |                         |
|---------------------------|---|-------------------------|
| IN RE GOOGLE LOCATION     | ) |                         |
| HISTORY LITIGATION.       | ) | NO. 18-cv-5062-EJD (NC) |
|                           | ) |                         |

San Jose, California
Wednesday, October 6, 2021

**TRANSCRIPT OF PROCEEDINGS**

**FROM THE OFFICIAL ELECTRONIC SOUND RECORDING**

**1:02 P.M to 1:44 P.M.**

**APPEARANCES**:

For Plaintiffs: (By Zoom Webinar)
AHDOOT & WOLFSON, PC
2600 West Olive Avenue
Suite 500
Burbank, California  91505
BY: **TINA WOLFSON, ESQ.**
**THEODORE W. MAYA, ESQ.**

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street
29th Floor
San Francisco, California  94111-
BY: **MICHAEL W. SOBOL, ESQ.**
**MICHAEL I. LEVIN-GESUNDHEIT, ESQ.**
**MELISSA A. GARDNER, ESQ.**

For Defendant:
KEKER, VAN NEST & PETERS, LLP
633 Battery Street
San Francisco, California  94111-1809
BY: **NICHOLAS D. MARAIS, ESQ.**
**BENJAMIN BERKOWITZ, ESQ.**

Transcribed By: **BELLE BALL, CSR 8785, CRR, RDR**
Official Reporter, U.S. District Court

1   <u>**Wednesday - October 6, 2021**</u>                              <u>**1:02 p.m.**</u>

2                      **P R O C E E D I N G S**

3          **THE COURTROOM DEPUTY:**  Calling Civil 18-5062, In Re

4   Google Location History Litigation.  Counsel, please state

5   your appearances for the record.

6          **MS. WOLFSON:**  Your Honor, good afternoon.  Tina

7   Wolfson of Ahdoot & Wolfson for the plaintiffs.  And with me

8   is my partner, Theodore Maya.

9          **THE COURT:**  Good afternoon.

10         **MS. GARDNER:**  Good --

11         **MR. SOBOL:**  My apologies, Melissa.

12      Good afternoon, Your Honor.  Michael Sobol, Lieff Cabraser

13   Heimann Bernstein, here for the plaintiffs.  And I have a

14   couple of my colleagues, and I'll let them introduce

15   themselves.

16         **MS. GARDNER:**  Melissa Gardner, also of Lieff Cabraser

17   Heimann Bernstein, for the plaintiffs.

18         **THE COURT:**  Good afternoon.

19         **MR. LEVIN-GESUNDHEIT:**  Mike Levin-Gesundheit also for

20   plaintiffs, also from Lieff Cabraser.

21         **THE COURT:**  Good afternoon.

22         **MR. MARAIS:**  Good afternoon, Your Honor.  I'm Nick

23   Marais from Keker, Van Nest & Peters.  I'm here in the virtual

24   sense with my colleague Ben Berkowitz.  And we represent

25   defendant Google.

1          **THE COURT:**  Good afternoon.  All right.  I think

2     that's everybody present.  Good afternoon.

3          We're here for discovery, and referred discovery in the

4     case.  To recount our procedural history recently, back at

5     Docket 179 you sent a letter request to Judge Davila, your

6     trial judge, and me, asking for help in various ways.  One,

7     with some deadlines for class certification and related topics.

8     And secondly, directed towards me was a request for guidance on

9     discovery steps along the way that would lead up to the class

10    certification brief.

11         Unfortunately, I don't know if you were aware of what

12    Judge Davila's doing.  He's involved in a trial you might have

13    read about involving a person of interest, and he's been rather

14    busy on that, and will be, through December.  And he's got

15    another trial for a co-defendant following right after, that

16    might take several more months.  So he has not set a

17    case-management conference that you requested on the eve of his

18    felony criminal trial, and I don't know if he will any time too

19    soon, because he's got other things too, to do.

20         And I, too, received that on the eve of being on criminal

21    duty which I have been on until last night, so this is the

22    first civil matter I'm returning to from being on criminal

23    duty.

24         I did get your update at 185 filed on the 4th, and thank

25    you for that, but it reveals that you haven't really resolved

1    the disputes that came up in Docket 180 back on September 3rd.

2    Maybe in part, but many of the problems remain, and there seems

3    to be lots of disagreement.  So, I want to get us back on track

4    on the discovery to help you along the way towards class

5    certification, and ultimately, resolution of the case.

6        Many details in the update.  So 185 and 180 are the

7    motions before the Court.  179 is your request for some

8    deadlines.  I absolutely agree that having some deadlines and

9    structure will be helpful to you, to move things forward.  So

10   we'll try to set some of those.

11       And my desire is if you could agree to a structure, that

12   would be the first step towards getting this case back on a

13   good path, which is having you collaborate and agree on things,

14   rather than stacking up disagreements, waiting for the Court to

15   do the work for you, because that's not going to get the case

16   resolved in a fair and efficient manner.  So that's my

17   objective.

18       So there's more plaintiffs' counsel than defense counsel.

19   So this is not towards a particular issue, but who on the

20   plaintiffs' side, what attorney is in charge of discovery?

21   Who's the person in charge?  And maybe it's more than one

22   person.  But I want to set up a structure here for you to be

23   working together.  And, who -- who's the person that would be

24   responsible?

25            **MS. WOLFSON:**  Your Honor, we have a team working on

1   discovery.  Ted Maya, Michael Levin-Gesundheit and Melissa

2   Gardner, as well as Rachel Johnson from our firm who is not at

3   the hearing today, are the discovery team.  And we have been

4   diligently moving the case forward.  I'm happy to provide some

5   details on that.

6           **THE COURT:**  Okay.

7           **MS. WOLFSON:**  As far as today's hearing, Ms. Gardner

8   is going to cover the plaintiff discovery-related issues.  And

9   I would like to speak to our request for schedule and regular

10  CMC hearings with Your Honor, which we think will go a long

11  way toward resolving a lot of these disputes --

12          **THE COURT:**  Yes.

13          **MS. WOLFSON:**  -- prior to us coming to the Court.

14          **THE COURT:**  Yeah.  So if there is a discovery issue

15  in the case and you want to talk about it with Google's

16  counsel, whether it's affirmative or in defense.  Something

17  you're seeking from them, or they're seeking from you.  Who

18  needs to be involved in the conversation?  Because I'm going

19  to impose a stronger meet-and-confer process here to help you

20  work things out.

21      And if the answer is there's a committee, my concern is

22  that that's not very efficient, to have a committee be on every

23  meet-and-confer call.  I just want to know who's the person in

24  charge.  And I know more than one person might be working on

25  it, but who's Google going to contact if they need to get

1  something resolved.

2      **MR. SOBOL:**  Your Honor, if I could address that.  If

3  you're talking about someone to liaise basically on discovery

4  with the defendants, that both Ms. Wolfson and I were

5  appointed co-lead, and I think that the two of us could be

6  that liaison and centralize that effort so that it goes

7  through us.  And we're happy to continue to take on that role.

8      **THE COURT:**  All right.  And I'm not trying to push it

9  on any one person.  I just -- I don't want there to be any

10  confusion about, you know, did you -- did Google talk to the

11  right person.  If they're not talking to the right person, I

12  want to make sure that they know who to talk to.  And that I

13  know, for accountability purposes, that, Mr. Sobol,

14  Ms. Wolfson, that you're in charge.

15      On the Google side, we've only got two of you here.  Who's

16  your liaison for discovery on your side?  Who's the person that

17  they need to talk to on your side to move the case forward?

18      **MR. BERKOWITZ:**  Your Honor, I believe it's my

19  partners, Nick Marais, and Tom Gorman, who are not on this

20  call today.  He's not on this call today.

21      **MR. MARAIS:**  I'm here.

22      **MR. BERKOWITZ:**  Sorry.  Nick is here, but my partner

23  Tom Gorman, who is attending to a different matter today, has

24  also been deeply involved in that process.

25      **THE COURT:**  All right.  So Mr. Marais is here.

1    Mr. Marais and Mr. Gorman.  All right, very good.  So we know

2    that.

3         I think we need to have some very regular conversations

4    here to get things moving forward.  So I'm contemplating a

5    weekly joint discovery report coming to me.  It's going to be

6    due every Monday at noon, until further court order, when I

7    know that you're moving along more efficiently.

8         And I think we need to have a monthly get-together until I

9    see that things are moving along.  One moment, I'm still making

10   my mind when that's going to be.

11        We'll make our next one on November -- this will all be by

12   Zoom.  November 3rd at 1:00 will be our next Zoom get-together

13   to talk about discovery.  And I contemplate we'll do it at the

14   first Wednesday of each month, at 1:00.  So December 1, might

15   as well put that on the calendar now.  November 3rd, 1:00,

16   December 1, 1:00, and that will be January 5th at 1:00.

17        And every Monday at noon, a joint update on discovery.

18   And if Monday's a holiday like next Monday is a holiday, it

19   will be on Tuesday rather than Monday.

20        And what I want to see in your report coming on Tuesday

21   the 12th is an update from you.  You had some dates on your

22   letter on Docket 179 with requests for some things which have

23   passed already.  You had some dates in September which is

24   passed, so it wouldn't be appropriate for me to set a deadline

25   with something that occurred three weeks ago.

 1          And I'm hoping you can agree to the schedule over the next

 2     three or four months leading up to class certification.  But if

 3     you can't agree, then I'm going to give you permission in your

 4     joint update due next Tuesday to submit proposed orders with

 5     each side's updated request for what that schedule is going to

 6     be.

 7          I've read -- I see you have got a dispute in 179 as to

 8     what it's going to be.  I hope you can just agree to a

 9     schedule.  But if you can't, submit it, and I'll pick one.  In

10     between, I will confer with Judge Davila to give him my

11     thoughts as to class certification.  But I wanted to get the

12     benefit of our conversation today about where you're at and

13     where you're going, so that I might advise him about that amid

14     his trial.

15          All right.  Ms. Wolfson, I'm starting to address the

16     topics that you mentioned of having a schedule in place, so

17     that's kind of where I'm going with this.

18          **MS. WOLFSON:**  (Nods head)

19          **THE COURT:**  Two other procedural orders I'm setting

20     are, one, for any future discovery disputes, I want a

21     certification that lead counsel -- the discovery liaisons have

22     conferred.  I think that's been occurring, but I want to make

23     sure that you are in communication.  And what I mean,

24     "conferred," I mean speak to each other.  Not an email, not a

25     fax, not a passenger pigeon, but actually speak with each

1   other.  It can be by Zoom or other technology, but I want to

2   make sure you're talking with each other.

3        And that's Ms. Wolfson or Mr. Sobol and Mr. Marais or

4   Mr. Gorman talking to each other about what your challenge is

5   before you come to court with a dispute about it.  And I expect

6   that those are going to get less and less over time, as you

7   work more together on these issues.

8        Also in your report coming next Tuesday, I'm hoping that

9   on the issues of custodians, meaning Google's custodians and

10  ESI protocols, you are going to have worked those things out.

11  It might have been you worked those things out some weeks ago,

12  but I want to know where you are at in that process in detail

13  next Tuesday.  And you've got many other things you're amid

14  discussing, so you can include an update on all those things,

15  but that is a very significant one which I want to hear more

16  about.

17       Next, there will be no more footnotes in any discovery

18  briefs to the Court.  You've used your footnotes to add in a

19  lot of details, and some snark and accusations against the

20  other parties.  Life's too short for me to read your footnotes.

21  So, no more footnotes.  If it's worth presenting to the Court

22  get it into a regular font in the brief.  And, and consider

23  whether you need to add the extra sauce to the dish.

24       So I'll put those into a summary procedural order so

25  everybody on your teams can review those.  Those are the

1 procedural steps which I think will help you move along more

2 efficiently going forward.

3     But, there are a number of substantive disputes that

4 you've got presented in your update at 180.  And this is, at

5 the starting point, principally Google's request for documents

6 and information from plaintiffs.  And it's theoretically

7 possible you have had some updates since the 4th, some further

8 discussions about that.  And also I want to prioritize my time

9 and your time on the things which are most important on each

10 side.

11     So I'm going to start on the Google side.  It's

12 principally your request for information from plaintiffs.  So

13 update me if there's any resolution of these issues, number

14 one.

15     Number two, prioritize for me, from your perspective,

16 what's important for you, what's a good use of your time.  And

17 then I'll hear from plaintiffs' counsel, too, as to any update

18 in what's important from their side.

19     **MR. MARAIS:**  Your Honor, thank you.  Nick Marais from

20  Keker, Van Nest and Peters for Google.

21     There are, unfortunately, no updates.  There has been no

22 movement on the four topics that we addressed.  I had

23 understood that Your Honor gave us the extra 30 days before the

24 hearing, perhaps in the hope that we would make some progress,

25 but unfortunately, there hasn't been any.

1          **THE COURT:**  That was my hope.  You interpreted my

2      signals correctly.  Go ahead.  Tell me how I can -- how can I

3      help you?

4          **MR. MARAIS:**  Thanks.

5          The request in Docket 180 -- which obviously is the brief

6      that led to this hearing -- are all Google's.  There are four

7      of them.  And just for context, these requests all relate to

8      RFPs and interrogatories that Google served in mid-February,

9      eight months ago.  I think -- there are four of them, as I

10     said; they're all relatively straightforward.

11         I think we're in agreement on the remedy for some of them.

12     Plaintiffs just haven't followed through with their commitments

13     to produce documents.  We have been waiting.  We've met and

14     conferred in March, in April, in May.  We asked plaintiffs to

15     commit to a certain date by which they would produce documents

16     and give us responses to these requests.  And they haven't done

17     it.

18         To date, in eight months of discovery, we've received 60

19     documents, 180 pages in total, from plaintiffs in support of

20     their case.  So perhaps, Your Honor, I could just run through

21     these four topics as quickly as I can.  I think they're all

22     relatively discrete and straightforward.

23         The first, Topic A is a set of requests for production

24     that plaintiffs have agreed to produce responsive documents to.

25     So again, these RFPs were served in February.  Plaintiffs

responded in March to say, at least with respect to these 22

RFPs which goes to foundational issues in the case such as:

Produce the representations that you claim Google made that

your clients relied on; produce documents which show these

steps you supposedly took to protect your data.  Really basic

documents.  Plaintiffs agreed to produce them.  We haven't seen

any of them.

        We've asked.  We asked in April, May and June.  Your Honor

gave plaintiffs the extra 30 days beyond the 14 that we

proposed in Docket 180.  And we just haven't received any of

these documents.

        It's something of a gating issue, Your Honor, because we

need these basic discovery documents before we can start

seeking additional documents, testing plaintiffs' theories,

taking depositions and so on.

        So it's tough to square plaintiffs' apparent desire that

discovery be completed by January, just three months from now,

with their refusal to produce any of these documents that they

committed to producing eight months ago.  So that's Topic A.

And really, all we're asking is that the Court order plaintiffs

within 14 days to produce this set of documents from their

clients that they have already agreed to produce.

        Topic B relates to one of our interrogatories,

Interrogatory No. 3.  Now, in the complaint, as Your Honor

knows, plaintiffs allege that they are privacy-conscious,

1   security-conscious individuals who have taken steps to protect

2   their data.  And we have asked plaintiffs to identify what apps

3   they have on their cellphones, which of those apps track their

4   locations, which of those apps they've given permission to

5   track their locations, and the extent to which those settings

6   have changed over time.

7        Now, again, plaintiffs have agreed to produce this data in

8   response to Interrogatory 3.  They committed to doing so on

9   April 13, six months ago.  They make the same commitment in

10  Docket 180, where they say that they have agreed to give us,

11  quote, "Information concerning changes in location settings

12  over time where available."

13       Plaintiffs have produced some narrow data in response to

14  this interrogatory.  And I can't get too far into it because

15  plaintiffs have designated absolutely everything confidential.

16       But suffice to say, Your Honor, that there are -- there

17  are apps where plaintiffs are telling us they don't let the app

18  know their location, that don't really make any sense.  For

19  instance, if I have the Lyft app or the Uber app on my phone,

20  it doesn't function without location information.  So we're

21  skeptical that the location permission setting on that app is

22  "Never Allow" or has always been "Never Allow."

23       And what we've asked plaintiffs to do is provide us

24  information about when they changed that location information

25  setting.  Because if they changed it the day before they filed

the complaint or in the midst of discovery, that's obviously

all relevant.

     And again, this is an uncontroversial request that

plaintiffs agreed to respond to six months ago.  They just

haven't done it.  And our request is simply that the Court

direct them to follow through on that commitment within 14

days.  That's Topic B.

     Topic C is perhaps the most straightforward of the bunch.

We have asked plaintiffs to provide us with information

identifying the mobile devices they've used.

     The central allegation here is that Google tracked

plaintiffs' whereabouts via their mobile devices.  As I've

explained to plaintiffs' counsel, we need a way of knowing what

those devices are, who the providers are, what the serial

numbers are.  And we have requested the plaintiffs simply take

a screenshot of what's called the About page on their

cellphone.  It would take 30 seconds.  It would include all of

the information that we've asked for about their mobile

devices.  And it would be extremely easy for them to produce.

     The plaintiffs raise a privacy complaint in responding to

this interrogatory -- this interrogatory, that I don't

understand, for two reasons.  Number one is there isn't any

sensitive information in the About page.  The best plaintiffs

have identified is the number of photos one has on one's phone.

And I don't think there is anything sensitive or private about

1    that.  I'm not sure it would rise to the level of confidential

2    under the protective order.

3        But that brings me to the second reason I find that

4    objection baffling, which is if plaintiffs truly believe that

5    the number of photos on their phone is somehow sensitive, they

6    could simply designate those screenshots confidential under the

7    protective order, and we could have that dispute, if we need

8    to, down the line.

9        But those screenshots are very easy to collect, very easy

10   to produce, could be done tomorrow.  And yet, for some reason,

11   plaintiffs have refused to do it.

12       And then the fourth and final of our complaints in Docket

13   180, which is Topic D, is also, I think, very important.  We

14   have requested that plaintiffs explain what sensitive locations

15   they believe they were tracked to.

16       Their complaint makes two broad allegations.  Number one

17   is that Google tracked plaintiffs' locations comprehensively --

18   quote, "comprehensively," via their mobile devices.  And the

19   second is that Google invaded their privacy by tracking them to

20   particularly sensitive locations.

21       Now, plaintiffs decline to identify those locations in the

22   complaint.  Perhaps because it was a public document.  But they

23   obviously had locations in mind.  And they must have had a

24   good-faith basis for making that allegation.

25       We have asked, through the meet-and-confer process, that

plaintiffs now tell us what those sensitive locations are, so
that we can consider them, see whether Google actually tracked
them to those locations, and if necessary, take followup
discovery.

So this was an RFP seeking information about the first,
broader category:  Tell us the locations that you have visited
using your phone that you believe you were tracked at.  Through
the meet-and-confer, we have offered to narrow that
significantly so that all plaintiffs need to do, whether by
producing documents or in response to an interrogatory, is
identify for Google these supposedly sensitive locations, so
that we can begin to test the allegation and test plaintiffs'
theory.  And again, for reasons that I don't understand,
plaintiffs have refused to do that.  But it's holding back
further discovery, and the discovery process in this case.

So we again have asked that the Court instruct plaintiffs
to respond to that RFP, either by producing documents, or, if
they've indicated their preference is to respond in writing,
that's fine.  But, to respond to that RFP by identifying the
allegedly sensitive locations.

So those are the four issues, Your Honor.

THE COURT:  What's the time period on the
sensitive-locations document or interrogatory request?

MR. MARAIS:  Well, it's keyed off of plaintiffs'
allegation as to when they were tracked, Your Honor.  So it

1    really does flow from plaintiffs' contention.  I believe the

2    class period we've identified is January, 2014, through the

3    present.

4        But plaintiffs are in control of that time period.  And

5    having set it at 2014 through the present, that's what we would

6    expect them to produce in response.

7                **THE COURT:**  All right.  Thank you, Mr. Marais.

8        All right, who from plaintiffs' counsel would like to

9    update me on those issues A through D?

10               **MS. GARDNER:**  Melissa Gardner.  I'll take that.

11               **THE COURT:**  Go ahead, Ms. Gardner.

12               **MS. GARDNER:**  Thank you, Your Honor.

13       We are -- we are very grateful for the oversight that will

14   be coming, especially in light of the number of things we have

15   repeatedly explained that defense counsel continues apparently

16   not to understand.

17       With respect to their Topic A, documents that we agreed to

18   search for and produce, as we said in our response to their

19   statement, we are searching for those and we are producing

20   those as we find them.  There is not a lot more to say about

21   that, except we don't think it's appropriate for Google to ask

22   the Court to set some kind of close of fact discovery for the

23   plaintiffs that doesn't apply to everybody, prematurely at this

24   stage of the case, not sitting on troves of responsive

25   documents that we're not producing.  We are identifying

documents that are responsive, producing them as they come in,

and making ourselves available to meet and confer with Google,

as needed, on those kinds of things.

So, um, that's their Topic A.  As for their Topic B, which

is this Interrogatory No. 3 which Mr. Marais described as a

non-controversial request, I can attest it has been an

extremely controversial interrogatory.  We have discussed it at

great length, exchanged case law on the scope of this request,

and have taken significant issue with Google's suggestion that

the plaintiffs' personalities as privacy-conscious people is

something directly relevant to their claims in this case, or

that every single application on the plaintiffs' phones is

relevant to their privacy claims involving Google's tracking

and storage of their location after they've disabled the

setting that was supposed to prevent Google from doing that.

The information that we have produced thus far was

something that we offered to produce as a compromise to put an

end to the extended back-and-forth on the kind of things this

information may or may not be relevant to.  We believe that

some of these apps may have relevance to this case, if they

send information to Google.

If Google is getting location information about the

plaintiffs through other non-Google applications on their

devices, of course we want to tell Google which applications

those are, so that Google can confirm or deny that it gets this

information.  But we absolutely don't agree.  That is very
controversial for Google to say that every app is relevant to
their expectation of privacy in some way.

     That said, we made a very generous offer to identify every
single application on their phones, not just the ones they use
today, but to the extent we could find it going back all the
way to 2014, apps they downloaded, whether they have them or
not.  We provided information about the location setting, just
like we said we would.  And the big dispute that Google seems
to be raising here is about how much information we have
provided regarding changes to settings over time.

     As we've told them in correspondence and on the phone, and
we'll tell them again here, we are working on it.  We have old
phones that were turned off before the case was even filed.  We
are working with a company called Setec Investigations to turn
them back on, get information without compromising the data
that's there.  And it's a process.

     We don't just want the plaintiffs to say:  I don't know if
I ever changed these settings, kind of in a vacuum.  We want
them to be able to conduct a reasonable search and get the
information that they can get before providing that information
to Google.  And that's what we're doing.

     On their Topic C, which are these screenshots they're
insisting on, the main dispute that we have with that demand is
it's asking for information we have already provided.  There's

an interrogatory.  It asks:  What devices did you use?  What is
the device ID?  We're answering it; we've answered it.

    And this insistence that in addition to writing down the
serial number and the IMEI for a cellphone, we also make a
screenshot just to produce it, it's -- it baffles -- we don't
understand what the purpose of it could possibly be, except to
burden the plaintiffs, to show them that Google has the ability
to force them to create things that they don't currently have.

    There's no new information here.  It would be difficult.
To the extent that they're asking for screenshots from the
older -- older devices, it's not something you can just get.  I
don't know how many -- you know, you use a lot of phones over
the course of seven years, sometimes.  And there's absolutely
no additional information that Google would obtain by virtue of
getting these screenshots created for them.  So we have
declined to ask the plaintiffs to do that.

    And then, lastly, their Topic D is this request for
production of documents sufficient to show everywhere
plaintiffs traveled, which they, I believe, have limited to
everywhere a plaintiff has traveled that they might consider
sensitive.

    As you, I think, Your Honor, noted, this covers a span of
many years.  It's very burdensome and broad.  Plus, we have
told defense counsel here that it would make a lot more sense
for Google to produce information about where Google tracked

the plaintiffs, so we have then the universe of locations that
are relevant to this case.  And if they still wish to know
which of those locations plaintiffs consider particularly
sensitive, we can find a way to provide that information.

We've made other compromise proposals as well, including
to provide examples of the types of places that the plaintiffs
went, consistent with their allegations in the complaint.

But ultimately, that issue, whether, you know, a plaintiff
is particularly sensitive about this particular doctor that
they visited in 2015, it's not central to this case.  It's not
even necessarily central to the privacy invasion that is
alleged in the complaint, which has to do not just with the
individual locations that a plaintiff traveled, but also with
Google's compilation of the sum of that information, and
storage of that, and their ability to kind of determine things
about individuals based on the sum of their location
information.

And that's the allegation that Mr. Marais points to.  It
says -- and I think that is Paragraph 14 of the complaint, just
one of the examples, it says with the information Google has
collected, it could determine things like his eating habits,
whether he, you know, goes to children's activities, where his
friends reside, whether he has recurring medical appointments,
and so on.

And that ability to determine those kinds of facts about

1   the plaintiffs is not -- is not the same thing as whether the

2   specific location in isolation is sensitive.  So we think that

3   Google's just asking plaintiffs to do a lot for very little

4   return on that RFP.

5               **THE COURT:**  All right.  Thank you, Ms. Gardner.

6         Mr. Marais, you might have more to say, but I'm going to

7   issue my ruling on these requests from Google and Dockets 180

8   and 185.  There are some other parts of the discovery briefs.

9   I'm only addressing right now the ones that you've just

10   discussed.  And that's Google's requests for a compelled

11   production of further documents and interrogatories.

12        As to Google's requests, the motion will be granted as to

13   Topics A, B, C and D.  I find each of them seeks relevant

14   information that is also proportional to the needs of the case,

15   under Rule 26.  The deadline for productions will be 14 days

16   from today, October 20th, 2021.

17        And I might have ordered a longer time, but there's been

18   this open dispute for at least the last 30 days.  So there's

19   been an opportunity for additional production from the time of

20   Google's request.  And it's apparent to me that a deadline

21   needs to be created to get things done.

22        So, Topic A, plaintiff is to produce responsive materials

23   within 14 days.  Topic B, to provide supplemental

24   interrogatories within 14 days.  Topic C, to identify the

25   mobile devices about page within 14 days.

1          And as to Topic D as modified by Google, so it's limited

2     to sensitive locations only -- it's not all locations,

3     sensitive locations only -- to provide either interrogatory

4     responses or documents sufficient to show the asserted

5     sensitive locations for the responsive time period.

6          And if it had been a request for all locations, I might

7     have found that to be overly broad.  But as it's limited to

8     sensitive locations, I find that it is proportional to the

9     needs of the case.  There is already a protective order in the

10    case, so that should address some of the privacy interests.

11         Now, of course, if there's not documents that exist or

12    that plaintiffs' counsel cannot find, well, that will be

13    another matter and you will then have to assert that to Google,

14    and you can have a meet-and-confer process about what to do

15    about any documents.

16         Old devices or old apps that you can no longer identify,

17    that's a detail that you'll have to work together to work out.

18    But as to the basics, I'll set that response date for

19    supplemental information within 14 days of today.

20         So that is the ruling on Topics A, B, C and D.  And, no

21    fees or costs are awarded to either party on those disputes.

22         Now, as to -- moving on to the next topic, you've got a

23    dispute in the update about Google's custodians and search

24    terms.  And I know you've been working on that for a while, and

25    plaintiffs are pushing for a deadline for that.

1      But I'm going to table discussion right now so you can

2  keep working on that together, and give me your update next

3  Tuesday.  And if you haven't resolved it by next Tuesday, your

4  proposed orders by next Tuesday on -- this will be what

5  plaintiff wants me to order about custodians and search terms,

6  and Google can have its own order about what it thinks is

7  appropriate.  But I'm hopeful -- it's much more effective if

8  you can work that out together, to have a plan for custodians

9  and search terms.  But we've got the next court date, November

10  3rd, if we need to have an in-person discussion about that.

11      There's another topic raised in Docket 185, which is the

12  documents previously produced in the Arizona action, indicating

13  that plaintiffs have been seeking that, and that Google's

14  attaching some unreasonable conditions to a production of those

15  materials.

16      Let me get kind of a summary from plaintiffs' counsel

17  about how I can help you on that topic.

18      **MS. WOLFSON:**  Your Honor, I would like to address

19   that.

20      **THE COURT:**  Go ahead.

21      **MS. WOLFSON:**  We would love an order from you today,

22  saying that all of those documents should be produced,

23  forthwith.  These have been collected.  There is no burden

24  associated with them.  This is quite a routine request that

25  we've seen in many complex cases, even while pleadings are

being resolved.

For example, in the *Facebook* antitrust case, in the *Google* anti -- advertising antitrust cases, Judge Koh, Judge Freeman, have ordered that all documents produced to governmental bodies be produced to the plaintiffs here.

And while Google maintained for months -- we originally brought up this issue in October of 2020.  They have maintained for months that there is some sort of bizarre privilege that I never heard of in my 26 years of complex litigation about, you know, bulk production, or duplicative production, or something like that.

They have now had an about-face, and are willing to produce the documents, but with some -- some honorary -- onerous, rather, excuse me -- pre-conditions, which are that we don't seek any other documents from any other government investigations.  We're not willing to agree to that.

And, that we do not challenge any sealing that have been ordered by the Arizona court.  We do not agree to that, either. We already had a sealing dispute.  We strongly believe that this is a matter of public interest, and we want the dispute, so we're not willing to simply blindly agree not to ever challenge the sealing of these documents.

**THE COURT:**  And the "sealing" is referring to sealing in a court filing, in this case, in the future.

**MS. WOLFSON:**  That's right, Your Honor.  And we have

1    -- you know, we have protocols for challenging that.  They

2    will certainly be kept confidential until and if we decide to

3    challenge those, but we're not willing to agree to never

4    challenge it.

5            THE COURT:  And would you agree that that production

6    will be subject to the protective order that is currently in

7    place in this case?

8            MS. WOLFSON:  Yes, Your Honor.

9            THE COURT:  All right.  I thank you.

10       And let me hear Google's views on the Arizona action

11   materials.

12           MR. BERKOWITZ:  Thank you, Your Honor.  This is Ben

13   Berkowitz.

14           THE COURT:  Yeah.

15           MR. BERKOWITZ:  So this is -- I'm a little -- a

16   little, I will say, troubled by how this issue was presented

17   to the Court, in the following sense.  The parties had been

18   meeting and conferring about a series of requests regarding a

19   number of plaintiffs' RFPs.  Google, in an attempt to resolve

20   that, proposed via email a compromise.

21       The party -- rather than get on the phone with us and meet

22   and confer about that compromise, the plaintiffs raised that

23   without an in-person or telephonic discussion in their portion

24   of this statement, they did not identify that as an issue they

25   were moving to compel production of.  But rather, just listed

1    it among their kind of litany of complaints here.

2         But here is the context.

3         The context is plaintiffs have included very broad

4    requests for what the courts in this district have come to term

5    "clone discovery."  And courts in this district, while courts

6    have made different decisions about when clone discovery is

7    appropriate, those decisions have tended to be

8    context-specific.  And that's because, as the *Volkswagen* court

9    put it, the issue of clone discovery, quote, "expands the scope

10   of discovery beyond that which is allowed by the federal

11   rules."

12        Now, Google's proposal here was an attempt to bridge a

13   dispute between the parties, and to avoid briefing this issue

14   to Your Honor.  We proposed that -- you know, because

15   plaintiffs had expressed to us that they were most interested

16   in the materials produced in this Arizona litigation -- which,

17   by the way, we do not concede are all responsive to the issues

18   or relevant to the issues in this litigation -- that we would

19   agree, in order to resolve several different RFPs, to produce

20   those materials, again, to resolve several different requests

21   for production.

22        The one request we made as part of that was that we are

23   aware that there have been a number of issues regarding sealing

24   of materials in that Arizona litigation that have gone before

25   the Court, and which the Court or the special master has

1   ordered those materials sealed.  I do not know whether those

2   materials have any relevance, whatsoever, to plaintiffs' claims

3   in this case.  But I do know that another court in a contested

4   proceeding has made a determination that those materials should

5   be sealed.

6        So the alternative, you know, the original place that we

7   started from here was never that we would not produce the

8   materials from the Arizona matter, but rather, that we would

9   revert -- we would review those for responsiveness to determine

10  whether they were relevant to this litigation, and were

11  responsive to plaintiffs' discovery requests.

12       Plaintiffs proposed alternatively that we simply produce

13  those, you know, en masse, without review.  And the compromise

14  position that we stated was what I just said.  But it was

15  intended to avoid the burden of our needing to review those --

16  that -- those documents produced in separate litigation, which

17  raises issues that may well be different than the issues in

18  this litigation, from needing to re-review those materials

19  for -- for relevance and responsiveness, as well as

20  confidentiality.

21       But I guess what I would propose, Your Honor,

22  respectfully, is that the parties should actually meet and

23  confer about this issue, because we haven't done that yet.  And

24  I do think -- I do think our proposal is reasonable.  And if

25  they have concerns about our proposal, that's an issue that we

1    ought to get on the phone and talk about.

2         **THE COURT:**  All right.  Thank you, to each side.  I

3    do have experience with so-called "clone discovery," and it

4    depends, in each case.  You know, what's being asked for here

5    and what was produced in the other litigation, you know, it

6    might be a different matter of efficiency in each case as to

7    how much sorting and privilege and sealing review you might

8    need to do in a production, versus just producing it all, and

9    with a protective order, and that might be more efficient.

10        But I don't know the answer in your case because I don't

11   know the details of what was produced in Arizona, and how much

12   work it'll be for you to do that assessment.

13        But I'll take -- Mr. Berkowitz, I'll take you up on your

14   proposal to have more meet-and-confer on it, but I don't want

15   to drag it out.

16        Ms. Wolfson references that you've been talking about this

17   since last October, and now it's another October.  I don't want

18   to move -- get this unresolved to October, 2022.  So put this

19   on your meet-and-confer agenda for this week, and give me an

20   update on Tuesday, in your proposed orders.  And it could be

21   that a middle ground is some sort of protective order amendment

22   or something -- protective order targeting these materials that

23   would regulate the production.

24        And you also probably want to talk about the timing of

25   when the production will be made, so that there's an

1  expectation on plaintiffs' side as to when and what they'll

2  receive.

3       But my tentative view is it sounds like a responsive set

4  of materials, but you might have some agreement you could reach

5  as to the method and timing of production.

6       All right.  So, too, as to the assertion on Page 10 by

7  plaintiffs' counsel that Google is in default on its order of

8  the Court from June 16th about location information, that's

9  concerning, but I want you to try to work that issue out.

10       And, you know, we already had a hearing and an order about

11  that.  So if there's been a violation of a court order, then

12  we're not at a meet-and-confer process; we're in a motion for

13  enforcement and contempt situation.  We're not there at this

14  moment, but I want you to confer about that further, and give

15  me an update on Tuesday about where you're at.

16       All right, so that's everything on my agenda from your

17  letter briefs.  Let me give you an open floor, not hoping to

18  create more problems, but see if there's anything that I missed

19  that will be helpful to you to move the case forward.

20       Ms. Wolfson, Mr. Sobol, how about on your side?

21          **MR. SOBOL:**  Nothing, Your Honor, at this time.

22          **THE COURT:**  All right.  Thank you.  And on the

23   defense?

24          **MR. BERKOWITZ:**  Nothing, Your Honor.

25          **THE COURT:**  All right, thank you very much for your

```
 1   time.

 2        I will confer with Judge Davila about the class

 3   certification deadlines and the need for a case-management

 4   conference, and I'll let him know the deadlines and events we

 5   have scheduled for the next couple of months to move the

 6   discovery process forward.

 7        And I will have a summary order coming out later today,

 8   hopefully saying the same things which I said here in court.

 9        Thank you for your time.  Have a good afternoon.  We are

10   in recess.

11             MS. WOLFSON:  Thank you.

12             MR. MARAIS:  Thank you.

13             MR. SOBOL:  Thank you.

14             THE COURT:  Thank you.  Bye-bye.

15        (Proceedings concluded)

16

17

18

19

20

21

22

23

24

25
```

## CERTIFICATE OF TRANSCRIBER

I, BELLE BALL, CSR 8785, CRR, RDR, hereby certify that the foregoing is a correct transcript, transcribed to the best of my ability from the official electronic sound recording of the proceedings taken on the date and time previously stated in the above matter.

I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken; and, further, that I am not financially nor otherwise interested in the outcome of the action.

_____
/s/ Belle Ball

Belle Ball, CSR 8785, CRR, RDR

Friday, October 15, 2021