KEKER, VAN NEST & PETERS LLP
BENJAMIN BERKOWITZ - # 244441
bberkowitz@keker.com
THOMAS E. GORMAN - # 279409
tgorman@keker.com
NICHOLAS D. MARAIS - # 277846
nmarais@keker.com
CHRISTOPHER S. SUN - # 308945
csun@keker.com
CHRISTINA LEE - # 314339
clee@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:     415 391 5400
Facsimile:     415 397 7188

Attorneys for Defendant GOOGLE LLC

AHDOOT & WOLFSON, PC
Tina Wolfson (SBN 174806)
*twolfson@ahdootwolfson.com*
Theodore Maya (SBN 223242)
*tmaya@ahdootwolfson.com*
Bradley K. King (SBN 274399)
*bking@ahdootwolfson.com*
Christopher Stiner (SBN 276033)
*cstiner@ahdootwolfson.com*
Rachel Johnson (SBN 331351)
*rjohnson@ahdootwolfson.com*
2600 West Olive Avenue, Suite 500
Burbank, California 91505
Tel: (310) 474-9111
Fax: (310) 474-8585

Interim Co-Lead Class Counsel

LIEFF CABRASER HEIMANN
& BERNSTEIN, LLP
Michael W. Sobol (SBN 194857)
msobol@lchb.com
Melissa Gardner (SBN 289096)
mgardner@lchb.com
Michael Levin-Gesundheit (SBN 292930)
mlevin@lchb.com
John D. Maher (SBN 316157)
jmaher@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: 415.956.1000
Facsimile: 415.956.1008

LIEFF CABRASER HEIMANN
& BERNSTEIN, LLP
Nicholas Diamand (*pro hac vice*)
250 Hudson Street, 8th Floor
New York, NY 10013
Telephone: 212.355.9500
Facsimile: 212.355.9592

Interim Co-Lead Class Counsel

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE:  GOOGLE LOCATION HISTORY LITIGATION | Case No. 5:18-cv-05062-EJD-NC<br><br>**WEEKLY DISCOVERY UPDATE**<br><br>Dept:        Courtroom 5 – 4th Floor<br>Judge:      Hon. Nathanael M. Cousins<br><br>Hr'g Date:  November 3, 2021<br>Time:        1:00 p.m |

Pursuant to the Court's October 6, 2021 Order, Dkt. 187 (the "Discovery Order"), the parties submit this weekly discovery status report. The parties apologize for the late filing.

### A.     Plaintiffs' Responses to Discovery Propounded by Google

#### 1.     Plaintiffs' Position

Pursuant to the Discovery Order, Plaintiffs on October 20, 2021, completed their fifth production. Plaintiffs also filed an accompanying Motion for Leave to File a Motion for Reconsideration (Dkt. 195). Plaintiffs produced all responsive materials in their possession, custody, or control after a reasonable search in compliance with the Court's order.

As to Topic A, Plaintiffs confirmed in a letter accompanying their production that "insofar as Plaintiffs have located additional materials responsive to Google's RFPs No. 15, 19–28, 30–31, and 33–41 which Plaintiffs agreed to produce in their formal discovery responses, but which had not yet been produced, those are enclosed in this production." The screenshots Google complains about were sent by email from Mr. Childs to his counsel to assist in drafting his responses (served on March 15 and supplemented in July) to Interrogatory 3.  Class Counsel produced the underlying screenshots containing the information disclosed in July in this fifth production, in hopes that access to the source materials would provide Google comfort that—as they have repeatedly made clear—Plaintiffs are providing the information in their possession, and not withholding responsive information.

Similarly, as to Topic C, Google complains about the information Plaintiffs have provided regarding the dates that location settings for the applications on their devices changed over time, but again, in their letter accompanying their production, Plaintiffs confirmed that "[i]nsofar as Plaintiffs have been able to location additional information within the scope of what Plaintiffs agreed to produce in response to Interrogatory No. 3, that information is reflected in the enclosed supplemental response to Interrogatory No. 3."  Plaintiffs have provided the information they currently have.

As to Topic D, which is also the subject of a pending motion for reconsideration and clarification, Plaintiffs confirmed to Google that "[t]o the best of their ability, in the enclosed written response to Request for Production No. 6, Plaintiffs have identified the locations they

traveled to during the relevant period that are sensitive locations as asserted by Plaintiffs, based on the information currently available to them." This included a list from each plaintiff of their home addresses, grocery stores, malls and other retail establishments, food and beverage establishments, banks and/or credit unions, other business establishments, performance venues, recreational establishments, public facilities, educational establishments, barber shops, salons, spas, massage parlors, religious establishments, healthcare and dental facilities, gyms and exercise-related establishments, hotels, vacation destinations, and other locations that they may have been tracked by Google during the relevant period. Far from being obstructionist, these responses represent Plaintiffs' good faith compliance with the Court's order to identify locations that are sensitive "as asserted by Plaintiffs" in the complaint, *i.e.*, everywhere Plaintiffs traveled over approximately seven years.

### 2.      Google's Position

Earlier this month, the Court ordered Plaintiffs to provide supplemental discovery responses and documents in four categories, and to do so by no later than October 20. *See* Discovery Order at 1–2. Although the parties met and conferred on other topics, Plaintiffs never raised any concerns about the Court's Order. Then, at approximately 7:30 pm on the very last day for complying, Plaintiffs produced a tiny set of documents—approximately 120 pages' worth—and filed a motion for reconsideration. Although Google has had Plaintiffs' production for just two days, it is already clear that Plaintiffs have flouted the Court's Order in at least three of the four categories.

**Topic A:** In March, Plaintiffs committed to producing documents responsive to 22 of Google's RFPs. Because Plaintiffs refused to produce these documents for *8 months*, Google finally (and successfully) moved to compel. Now, Plaintiffs have again thumbed their nose at their discovery obligations: last week, they produced a total of just 110 documents. (That number actually *overstates* Plaintiffs' production. For instance, instead of producing screenshots showing Plaintiff Childs's current location settings as *one* document, Plaintiffs' counsel produced them as 23 separate one-page documents.)

Plaintiffs' October 20 production is frustrating in several ways. *First*, it confirms what

Google suspected: that Plaintiffs' counsel has intentionally stonewalled discovery in this case.
For instance, the screenshots Plaintiffs' counsel produced last week were sent by Mr. Childs to
his attorneys on March 2, a few weeks after Google served its RFPs.  It is unclear why Plaintiffs'
counsel sat on those plainly relevant documents for *8 months*, wasting Google's and this Court's
time.  *Second*, Plaintiffs' eleventh-hour production still comes nowhere close to satisfying
Google's RFPs or this Court's order.  There are, for instance, no communications with Google or
third parties related to Google's "collection of location information," no documents showing
Plaintiffs' supposed efforts to "prevent the storage of their location" information, and no
documents supporting or refuting Plaintiffs' claims that they have been harmed.

**Topic B:**  At issue here, Interrogatory No. 3 asked Plaintiffs to identify "settings relating
to location information" for apps on their mobile devices *and* the "dates of any *changes* to the
settings."  The Court ordered Plaintiffs to provide that information in writing by October 20.
Despite promising for *months* that Plaintiffs were working with a "forensic consultant" to identify
*when* they changed their location settings, Plaintiffs have failed to provide *any* substantive
information to Google.  Because Plaintiffs have designated *every single page* of their responses
"Confidential," Google cannot readily summarize their shortcomings for the Court, but will do so
in a separate letter brief in the near future.

**Topic C:**  Plaintiffs have produced some of the "About" screenshots for their mobile
devices.  Google is still reviewing those documents to determine whether (or the extent to which)
Plaintiffs have complied with the Court's order.

**Topic D / Plaintiffs' "Motion for Reconsideration":**  With respect to RFP No. 6, the
Court ordered Plaintiffs to "provide either interrogatory responses or documents sufficient to
show the asserted sensitive locations for the responsive time period."  *See* Hr'g Tr. (Oct. 6, 2021)
at 23:1–5.  That instruction was clear and straightforward.  But, rather than comply, Plaintiffs
waited until after-hours on the very last day possible before filing "a motion for reconsideration"
based on all-new arguments they had not raised in the parties' joint letter brief.  *See generally*
Dkt. 195 ("Mot. for Reconsideration" or "MFR").

In their recent MFR, Plaintiffs argue—for the first time—that they could simply respond

to RFP No. 6 by "indicating none," because they now in fact

> make no assertion about the sensitive nature of the locations themselves. This is not
> to say that individual Plaintiffs may not regard certain locations as more or less
> sensitive than other locations, but such distinctions are not asserted by the Plaintiffs.

MFR at 3:10–13. This, too, is frustrating, because Google repeatedly proposed that very compromise when the parties met and conferred about this request over the past *six months.* In July, for instance, Google reiterated its position in a letter to Plaintiffs' counsel:

> You initially proposed that we "phase" discovery and leave this subject for later.
> We considered that request and offered to accept your proposal if Plaintiffs
> confirmed that they were not alleging—and did not intend to allege—that they had
> "visited specific, sensitive locations, and that Google could or did 'determine' that"
> they did so…. When we spoke by phone earlier this month, you said that Plaintiffs
> did intend to make that sort of claim, and you … proffered a long list of
> hypothetical places that you argued might fit that description (including doctors'
> officers and other healthcare providers). Now, in your May 17 letter, you have taken
> a more circumspect position, claiming somewhat circuitously that it is "probably
> factually incorrect to agree that no places the Plaintiffs visited could be considered
> sensitive." In any event, we stand by our proposed compromise: we are willing to
> leave RFP No. 6 for later, as you have requested, provided that each plaintiff
> provides us with a list—not categories or examples—of the sensitive locations at
> which they allege they "were tracked by Google." If any of the plaintiffs do not
> intend to make such an allegation, then we agree that they can simply provide
> written confirmation that this is no longer their contention. Please confirm that you
> will provide us with this information by June 4, 2021.

> Plaintiffs repeatedly rejected that proposal:

> After Google produces information about the location data it actually stored, it may
> be sensible to discuss **which of those locations Plaintiffs consider sensitive**. In the
> meantime, we are working with the Plaintiffs to obtain addresses of **some locations
> the Plaintiffs consider sensitive** that they may have been tracked by Google with
> the Location History setting off, and we intend to provide some examples with
> address information in good faith at this stage of discovery.

*See* Gardner ltr. (June 11, 2021) (emphasis added); *see also* Gardner ltr. (July 2, 2021) (noting that counsel was "working with the named plaintiffs to provide some *illustrative* information regarding *specific locations* referenced in the allegation you cite"). Indeed, even in the September 3 joint letter brief, Plaintiffs argued that *some* of the locations they visited were sensitive while others were not:

> It would be more efficient for Google to produce information about the locations
> Google tracked the Plaintiffs (i.e., locations of arguable relevance to this case), and
> then to discuss discovery regarding **which** are sensitive.

*See* Dkt. 180 at 5. So it came as a surprise when Plaintiffs suddenly abandoned their prior

positions, argued that the *Court* had "*misapprehended*" their case, and claimed that they weren't sure whether to respond with "none" or to "identify *all* locations they went in the relevant time…."  MFR at 5.  To avoid taking a position, Plaintiffs produced a vague written response that generically lists any and all locations they recall visiting and does nothing to elucidate their case:

> Approximately 4 years ago, Plaintiff took a road trip from San Diego to Washington State, driving through California, Nevada, Colorado, Idaho, Oregon, and Washington. In the course of this travel, Plaintiff stopped at several retail establishments, in several states, but Plaintiff cannot recall precisely which stores or precisely which cities or states. He believes it likely that the stores he would have stopped at would have been along the lines of Walmart, Target, Walgreens, CVS, and multiple gas stations.

That response is obstructionist (Plaintiffs cannot believe that public "retail establishments" like Walmart and Walgreens are "sensitive locations") and non-responsive.

It is now past time for Plaintiffs to comply with the Court's Discovery Order.  Plaintiffs have failed to either (1) confirm in a verified writing that they do not allege that any particular location they visited was sensitive *or* (2) specifically identify any such "sensitive locations."

*   *   *

Given how significantly Plaintiffs have ignored the Court's Discovery Order, Google anticipates needing to file another motion to compel compliance.

Google will also be ready to discuss these issues at the November 3, 2021 hearing.

## B.    Google Custodians

### 1.    Plaintiffs' Position

As of this writing, Plaintiffs have received only *two* custodian names from Google—the two Google employees listed in Google's Rule 26(a) initial disclosures in 2019. Plaintiffs requested numerous times for the better part of 2020 that Google supplement its initial disclosures. In February 2020, Plaintiffs propounded RFPs requesting documents that would identify potential custodians. Google refused to provide any documents, a stance that has been the subject of numerous meet-and-confers and motion practice before this Court. Since July 2020, Plaintiffs have requested, by means of interrogatories and during these meet-and-confers, that Google provide an initial list of custodians, as Google is the party with superior information, including information regarding who fills what relevant roles at Google.

1        Until September 2021, Google's position had been that it would not negotiate about

2   custodians or search terms until the parties reached agreement on "relevance categories" (*i.e.*, that

3   Plaintiffs agree to Google's narrow understanding regarding the scope of this case and of

4   discovery). During a September 10 meet-and-confer, Google changed its position and proposed,

5   instead, that Plaintiffs provide the initial list of custodians.

6        Despite the inefficient nature of Google's proposal, Plaintiffs provided their best-effort list

7   of custodians to Google on October 1, 2021—which included approximately 30 Google

8   employees identified through public filings in the *Arizona* litigation, and through Plaintiffs'

9   research on location-related Google technology and services. Plaintiffs' list also included a

10  number of bullet points describing roles for appropriate custodians, whose identities Plaintiffs do

11  not know at this time (*e.g.*, "custodians, deponents, and witnesses who produced responsive

12  evidence in *Arizona v. Google LLC*," and "[t]he individuals whose identities were redacted at

13  ¶¶ 152-153 of the complaint in" that action). Google's only response to Plaintiffs' list has been to

14  assert that most of the individuals are irrelevant, and to request additional information as to why

15  Plaintiffs proposed these individuals in the first place. Google refuses to provide its own list, to

16  identify the individuals filling the roles described in Plaintiffs' list, or even to respond with a

17  subset of individuals that it agrees would make appropriate document custodians in this case.

18       Contrary to Google's position here, Plaintiffs' long-standing efforts to engage with

19  Google on the custodians issue has never, from Plaintiffs' perspective, been dependent on

20  Google's production of discovery in this case that it produced in *State of Arizona v. Google LLC*,

21  No. CV2020-00619 (Ariz. Sup. Ct., Maricopa Cty.). *See, e.g.*, Dkt. 179 at n.9; Dkt. 183 at 1-2.

22  Doing so would have been a logical impossibility because, until recently, Google took the

23  position that it would not re-produce *Arizona* discovery in this action at all, not that, as it now

24  contends, such a production is necessary to facilitate negotiations concerning custodians.

25  Google's change of heart is thus is inconsistent with its earlier position that it would simply not

26  produce such discovery, and appears to be nothing more than a tactic designed to ensure that

27  Google's production of custodial data is delayed at least another month, in aid of Google's

28  overarching strategy of producing as little data as possible, as slowly as possible, while insisting

1    that for Plaintiffs move for class certification deadline with no meaningful discovery.

2           Google's contention that Plaintiffs must, but somehow have not, met and conferred about

3    the scope of their requests is another delaying tactic. Google has argued that the custodians issue

4    cannot be decided until the "scope" issue is settled, referring to the parties' ongoing debate over

5    whether Plaintiffs are entitled to discovery concerning "Location Information," which they define

6    as "location data that is . . . saved to any data store, database, device, or system in Google's

7    possession, custody or control (as distinguished from storage exclusively in a user's device or a

8    user's systems)" or whether, instead, the scope of Plaintiffs' discovery should be limited to

9    location information that is "saved to a user's Google Account," as Google contends. *See* Dkt.

10   173 at 1. By making this yet another a condition precedent to negotiations about custodians,

11   Google again seeks to delay and, ultimately, impeded Plaintiffs' ability to obtain full discovery

12   responses. Custodians should be Google employees and systems holding data responsive to

13   Plaintiffs' requests, not only those holding data responsive to those requests as rewritten by

14   Google, such that responsive data would be limited to information held in Plaintiffs' Google

15   accounts, which they themselves can access. The bottom line, as Plaintiffs have said previously,

16   is that Plaintiffs have produced a list of custodians. It is now time for Google to do the same.

17          At this point, Plaintiffs can only conclude that Google is deliberately withholding

18   information on this issue that it is required to provide, including under Rule 26(a) and the Court's

19   ESI Guidelines, which information is long overdue.

20                         **2.      Google's Position**

21          For months, Plaintiffs have insisted that Google should clone and reproduce hundreds of

22   thousands of pages of discovery from *Arizona v. Google LLC*, regardless of whether that

23   discovery is relevant to the claims here.  To justify that overbroad request, Plaintiffs assured

24   Google and the Court that they would use the discovery from that matter to streamline and focus

25   discovery here—including to help identify appropriate custodians and necessary search terms,

26   and to narrow the discovery they would seek. Plaintiffs now try to walk those representations

27   back in their statement above, but the question remains: if production of these documents—many

28   of which are entirely irrelevant to Plaintiffs' claims—wasn't going to be used to make discovery

1    more efficient in this case, why did Plaintiffs request them? And why do they need those

2    documents now?

3         In any event, Plaintiffs' purported justification for producing the *Arizona* materials—

4    increased efficiency—appears to have been pretextual. Plaintiffs are now demanding to negotiate

5    custodians before Plaintiffs have even had a chance to review the *Arizona* documents.  It is

6    unclear why.  Having gone through the trouble of negotiating the production of those materials, it

7    makes far more sense for the parties to discuss custodians with the benefit of that production.

8    Instead, just days after Plaintiffs secured Google's commitment to produce the *Arizona*

9    documents, Plaintiffs are now insisting that the parties negotiate custodians on the basis of

10   incomplete information in "the public filings in the *Arizona* litigation," rather than the actual

11   discovery produced in that matter. But that just means the parties will have to negotiate

12   custodians twice: once now and once again after Plaintiffs have received and reviewed the

13   *Arizona* cloned discovery.  This will result in a waste of the parties' time and resources, as well as

14   the Court's if the parties are unable to reach agreement.

15        Plaintiffs' premature efforts to identify custodians immediately have been hindered by

16   their refusal to identify what documents Plaintiffs believe they need.  Months ago, Google

17   suggested that the parties meet and confer about Plaintiffs' overbroad RFPs, and that they attempt

18   to define and agree about *what* information Google should search for and produce.  Then, Google

19   could identify custodians that were likely to possess responsive documents.  While Plaintiffs paint

20   this dispute as one about the definition of "Location Information," the reality is that, despite

21   Google's offers to meet and confer, Plaintiffs haven't conferred with Google or said a word about

22   the vast majority of their production requests, including by describing what relevant information

23   they seek or negotiating what Google will agree to provide in response.

24        Instead, Plaintiffs have insisted that Google propose custodians ***first***, before the parties

25   had even settled on what documents Google would search for.  To move things forward, Google

26   agreed to consider a list of custodians that Plaintiffs proposed.  But that list, too, was overbroad,

27   and many of the *dozens* of custodians Plaintiffs named have no apparent connection to Plaintiffs'

28   allegations.  (It appears instead that Plaintiffs have borrowed custodian names from other,

unrelated Google class actions that have nothing to do with location information.)  Indeed, Plaintiffs have steadfastly refused to provide any justification for the custodians they seek.  When Google asked Plaintiffs to explain how they identified those custodians, what information they hoped to obtain from those custodians, and why they believed the listed custodians possessed that information, Plaintiffs simply refused to explain.

As Google has explained to Plaintiffs on several separate calls, there is a logical way to proceed: Plaintiffs should meet and confer about the *scope* of their requests; they should review the *Arizona* documents they insisted would help streamline and focus discovery; and *then* the parties can identify (a reasonable number of) custodians.  There is plenty of time to work through this process logically, and for Plaintiffs to harness the efficiencies they promised would come from the *Arizona* cloned-discovery documents.

## C.   Plaintiffs' Fourth & Fifth Interrogatories

### 1.   Plaintiffs' Position

In Plaintiffs' view, Google's answers to Interrogatories Nos. 4 and 5 are incomplete and not in compliance with the Court's June 16, 2021 order. *See* Dkt. 175. These interrogatories seek answers to foundational questions—specifically, how Google collects, stores, and then uses "Location Information." The text of Plaintiffs' interrogatories, which Google included in its section, is in accord.

Google's June 30 supplemental responses, while more substantive than those served in 2019, are still incomplete. In particular, the responses provide only a curated view of Google's location tracking practices; that is, Google has not disclosed all the means by which it collects, stores, and uses Location Information. Instead, it has disclosed only those it is comfortable revealing to Plaintiffs. In a July 26 letter, Plaintiff asked a series of clarifying questions, which Google at first categorically refused to answer (despite the Court's instruction at the June 16 hearing, following Google's counsel's suggestion that Plaintiffs would not find Google's responses to be comprehensive, that the parties should meet and confer after the responses were served). Then, on August 6, Google reversed course writing that it was ***not*** "refus[ing] to answer any of the questions," that Google would "get back to [Plaintiffs] as soon as [the team] [was]

able."  Plaintiff followed up several times, and Google did not respond under September 11, reversing course again and refusing to answer nearly all the questions.

In an effort to close what has now been a 2½-year dispute that has been the focus of numerous teleconferences and letters, on October 11, 2021, Plaintiff proposed that, in lieu of providing complete answers to the interrogatories, Google could amend its responses to provide the information listed below from 2014 to the present, which, in Plaintiffs' view is covers a subset of the information originally requested in the interrogatories. Google asked clarifying questions on Friday, October 15, to which Plaintiff responded on Monday, October 18. At approximately 9 a.m. on Monday, October 25 (in a draft of this status report), Google appeared to reject Plaintiffs' proposal wholesale.

*Plaintiffs' Proposal* – Google amends its responses to:

1.  Identify of all Google products, applications, and services that have committed user Location Information to storage;
2.  Identify of all databases, data stores, devices and/or systems in Google's possession, custody, or control containing user Location Information; and
3.  Identify, by reference to (1) product, application and/or service and (2) database, data stores, devices and/or systems in Google's possession, custody, or control, all ways Google has used Location Information, including under what circumstances Location Information has been shared with third parties.

Finally, a note of clarification if required regarding "third parties." Google is correct that, in 2019, Plaintiff served a different interrogatory asking Google to identify **which** third parties had received Location Information from Google. (Google answered that interrogatory under its own narrower definition of location information that excludes data relevant to Plaintiffs' claims.) Plaintiffs' proposal above does not ask Google to identify these third parties. It is not duplicative. Instead, it asks Google to identify "under what circumstances Location Information has been shared with third parties." This is clearly covered by Plaintiffs' Interrogatory No. 5, which asks Google to "[i]dentify all ways in which Google or other Alphabet companies use . . . Location Information."

## 2.    Google's Position

This is the second time that Plaintiffs have complained to the Court about the adequacy of Google's responses to these interrogatories.  Both times, Plaintiffs have declined to include the

actual text of these interrogatories in their submissions, presumably because they realize that their ever-shifting demands for "supplemental information" far exceed the actual requests.  To understand just how far afield Plaintiffs now are, these are the original requests:

> **Interrogatory No. 4:** "Identify by name, purpose, sequence, and physical location each Process [defined as a series of discrete steps, ordered and undertaken to achieve a specific goal or set of goals that facilitate Google's operation] and/or piece of Architecture [defined as any Google infrastructure—including but not limited to source code, software, applications, databases, configuration tables, servers, hardware, and/or networks—utilized to implement or otherwise facilitate any of Google's services] involved in the creation, development, transmission, maintenance and/or storage of Location Information."

> **Interrogatory No. 5:** "Identify all ways in which Google or other Alphabet companies use and/or analyze Location Information. The response to this Interrogatory should include an explanation of any commercial, educational, research and development, or other use of the data."

Google has now responded to these interrogatories twice.  Its responses were comprehensive, spanning approximately 18 pages.  In Google's view, and based on its reasonably diligent investigation, its responses are complete.  Initially, Plaintiffs seemed to agree: when the parties met and conferred after Google provided its supplemental responses, Plaintiffs thanked Google and noted on multiple occasions that its responses to these interrogatories were "very helpful."  On July 26, 2021, Plaintiffs apparently changed their minds, and sent a list of 19 categories of further questions, each with multiple subparts, resulting in dozens of total questions, the vast majority of which sought information outside the scope of either interrogatory. Despite the out-of-scope character of these questions, Google provided additional information in a separate three-and-a-half page, single-spaced response. Yet now Plaintiffs insist in this status report that Google's responses are *still* incomplete.  Those assertions are flimsy, and the information Plaintiffs now claim is missing clearly falls beyond the scope of their interrogatories.

For example, Plaintiffs now insist that Google "amend its responses to provide . . . information . . . from 2014 to the present."  But neither Interrogatory 4 nor 5 requested *historical* information, much less information spanning back to 2014.  To the contrary, both interrogatories were clearly written in the ***present tense***.

Elsewhere, Plaintiffs now insist that Google identify "under what circumstances Location Information has been shared with third parties."  This request, too, was not contemplated by

either Interrogatory 4 or 5.  In fact, it falls within the scope of an entirely different interrogatory to which Google responded separately.  *See* Interrogatory No. 3 (asking Google to "identify all third parties . . . to whom Google has disclosed any Location Information").

As one final example, Plaintiffs have requested that Google supplement its interrogatory responses to include a detailed chart that ties: (1) each Google service that uses location information to (2) the database where that specific location information is stored and (3) an explanation of how that data is specifically used.  When Google asked Plaintiffs to explain how this information was called for by *either* Interrogatory No. 4 or 5, they didn't even try.  Instead, they argued that the information is "***inherent to*** a complete answer to Interrogatories 4 and 5." *See* Levin-Gesundheit Ltr. (Oct. 18, 2021) (emphasis added).

Google has participated in a good-faith back-and-forth with Plaintiffs about these two interrogatories.  It has provided several pages of additional information in written correspondence.  But Plaintiffs cannot rewrite their interrogatories *after* Google has responded to them, broaden their scope, and then complain that Google's answers are "incomplete."  If Plaintiffs have further questions, they can and should propound additional interrogatories or take the deposition of witnesses knowledgeable about the topics.

Dated:  October 25, 2021

AHDOOT & WOLFSON, PC

By:   */s/ Tina Wolfson*
TINA WOLFSON
THEODORE MAYA
RACHEL JOHNSON

*Interim Co-Lead Class Counsel*

//

//

//

//

//

1

2    Dated:  October 25, 2021                          LIEFF CABRASER HEIMANN &
                                                       BERNSTEIN, LLP

3                                            By:    /s/ Michael W. Sobol
4                                                  MICHAEL W. SOBOL
                                                   MELISSA GARDNER
5                                                  MICHAEL LEVIN-GESUNDHEIT
                                                   JOHN D. MAHER
6
7                                                  *Interim Co-Lead Class Counsel*

8    Dated:  October 25, 2021                          KEKER, VAN NEST & PETERS LLP

9
10                                           By:    /s/ Benjamin Berkowitz
                                                   BENJAMIN BERKOWITZ
11                                                 THOMAS E. GORMAN
                                                   NICHOLAS D. MARAIS
12                                                 CHRISTOPHER S. SUN
                                                   CHRISTINA LEE
13
14                                                 Attorneys for Defendant GOOGLE LLC

15

16

17

18                              **ATTESTATION**

19         Pursuant to Local Rule 5-1(i)(3), I attest that all signatories above have concurred in the

20   filing of this document.

21

22   Dated:  October 25, 2021                          /s/ Michael W. Sobol
23                                                     Michael W. Sobol

24

25

26

27

28