KEKER, VAN NEST & PETERS LLP
BENJAMIN BERKOWITZ - # 244441
bberkowitz@keker.com
THOMAS E. GORMAN - # 279409
tgorman@keker.com
NICHOLAS D. MARAIS - # 277846
nmarais@keker.com
CHRISTOPHER S. SUN - # 308945
csun@keker.com
CHRISTINA LEE - # 314339
clee@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone: 415 391 5400
Facsimile: 415 397 7188

Attorneys for Defendant GOOGLE LLC

AHDOOT & WOLFSON, PC
Tina Wolfson (SBN 174806)
*twolfson@ahdootwolfson.com*
Theodore Maya (SBN 223242)
*tmaya@ahdootwolfson.com*
Bradley K. King (SBN 274399)
*bking@ahdootwolfson.com*
Christopher Stiner (SBN 276033)
*cstiner@ahdootwolfson.com*
Rachel Johnson (SBN 331351)
*rjohnson@ahdootwolfson.com*
2600 West Olive Avenue, Suite 500
Burbank, California 91505
Tel: (310) 474-9111
Fax: (310) 474-8585

Interim Co-Lead Class Counsel

LIEFF CABRASER HEIMANN
& BERNSTEIN, LLP
Michael W. Sobol (SBN 194857)
msobol@lchb.com
Melissa Gardner (SBN 289096)
mgardner@lchb.com
Michael Levin-Gesundheit (SBN 292930)
mlevin@lchb.com
John D. Maher (SBN 316157)
jmaher@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: 415.956.1000
Facsimile: 415.956.1008

LIEFF CABRASER HEIMANN
& BERNSTEIN, LLP
Nicholas Diamand (*pro hac vice*)
250 Hudson Street, 8th Floor
New York, NY 10013
Telephone: 212.355.9500
Facsimile: 212.355.9592

Interim Co-Lead Class Counsel

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

IN RE: GOOGLE LOCATION HISTORY LITIGATION

Case No. 5:18-cv-05062-EJD-NC

**WEEKLY DISCOVERY UPDATE**

Dept: Courtroom 5 – 4th Floor
Judge: Hon. Nathanael M. Cousins

Hr'g Date: November 3, 2021
Time: 1:00 p.m

Pursuant to the Court's October 6, 2021 Order, Dkt. 187 (the "Discovery Order"), the parties submit this weekly discovery status report.

### A. Google's Statement

#### 1. Plaintiffs' Non-Compliance with the Court's Discovery Order

In last week's discovery report, Google raised concerns about Plaintiffs' failure to comply with the Court's Discovery Order. Plaintiffs now complain that Google had "no basis" for its concerns. But Google's bases were detailed in last week's report. *See, e.g.*, Dkt. 196 at 3:16–19; *id.* at 4:2–9; 4:21–6:13. In short, after Plaintiffs were ordered to produce documents responsive to 22 separate Requests for Production ("RFPs"), Plaintiffs produced a mere 120 pages of documents—a production that still did not contain documents responsive to many of Google's RFPs. Indeed, over the entire course of this litigation, Plaintiffs have now produced just 800 pages of documents between them, in total, and many of those pages are simply reproductions of their pleadings.

The parties met and conferred on October 29 and discussed Google's concerns. But, far from alleviating those concerns, the parties' conference only exacerbated them. During the call, Plaintiffs' counsel steadfastly refused to provide any details as to how they had searched for the documents Plaintiffs were ordered to produce. Plaintiffs' counsel would not tell Google whether they had collected, processed, or reviewed the named plaintiffs' documents—or whether they had simply relied on the named plaintiffs to identify documents themselves. They would not describe what repositories or devices they searched. They refused to disclose whether they had made forensic images of the named plaintiffs' devices, or whether they have searched those images for responsive documents. And they refused to describe what search terms they used. In fact, **Plaintiffs have even refused to confirm *whether* they used search terms at all**. As a result, and because Plaintiffs' counsel will not answer the most basic questions, Google has no reason to believe that Plaintiffs have properly searched for—let alone completed their production of—responsive documents.

Plaintiffs' unwillingness to answer to these basic questions is particularly vexing because it expressly contradicts the positions they have taken when demanding discovery from Google.

For example, Plaintiffs are now demanding that Google propose search terms for Plaintiffs' review, *see* Dkt. 179 at 3, while simultaneously refusing to confirm *whether* they used search terms with respect to Plaintiffs' own productions. Similarly, Plaintiffs have claimed they "are entitled to know where and how Google maintains potentially relevant documents and other information responsive to [Plaintiffs'] Requests," Ferich 5/7/2021 Ltr. at 8, while refusing to describe what devices, services and other repositories Plaintiffs have searched when it comes to their own obligations to identify and produce responsive documents.

Unfortunately, these sorts of contradictory positions, while untenable, are generally consistent with Plaintiffs' approach to discovery to date. At every turn, Plaintiffs have tried to impose onerous and one-sided discovery obligations on Google while avoiding any reciprocal obligation. For instance, they have asked the Court to impose interim discovery deadlines on Google, but not Plaintiffs. *See* Dkt. 179 at 3. The results speak for themselves. To date, Google has produced almost 30,000 pages of responsive documents and has committed to producing hundreds of thousands of additional pages within the next three weeks. Plaintiffs, by contrast, have produced fewer than 1,000 pages between them, in total, and do not appear to have any immediate plans to produce more.

Google would prefer to resolve these discovery disputes informally and without the Court's assistance. But it cannot do so if Plaintiffs refuse to provide any details about how they searched for responsive documents—the very same details Plaintiffs demand from Google—or any reason to think they have complied with the Court's Discovery Order. Google will be prepared to discuss the above issues at the November 3, 2021 hearing, but also anticipates it may need to file a motion to compel compliance with the Court's October 6, 2021 Discovery Order.

**2. Plaintiffs' misrepresentations regarding Google's discovery responses**

In addition to meeting and conferring regarding Plaintiffs' failure to comply with the Court's Discovery Order, Plaintiffs also requested that the parties meet and confer regarding a hodge-podge of other "questions" that Plaintiffs' counsel initially refused to identify to Google in advance of the call.

Unfortunately, rather than use the October 29 discussion as an opportunity to find

compromise solutions regarding issues raised in the parties' previous discovery reports, Plaintiffs' counsel insisted on repeatedly mischaracterizing Google's previously stated positions. While Google corrected these misstatements in real time during that call, Plaintiffs' entire statement below merely repeats Plaintiffs' blatant misrepresentations of Google's positions. (They do, notably, correct one such misrepresentation—which they now describe as an "inadvertent error"—by presenting a different "Question 1" to the Court.) This tactic is not only disappointing, but is particularly bizarre here, where Google has already set forth its positions in writing in the parties' previous Joint Status Reports. *See* Dkt. Nos. 194 & 196 (setting out the parties' positions on custodians, search terms, and interrogatory responses). Because Google has already set out its positions in writing, and out of respect for the Court's time, Google declines Plaintiffs' demand that it rehash them here. But, to be clear, Plaintiffs' false recitations of Google's positions are easily disproved, and appear to serve no purpose other than as an effort to distract from Plaintiffs' failure to comply with the Court's Discovery Order.Finally, Google must address two other claims Plaintiffs make below.

*First*, Plaintiffs begin their section of this report by claiming that "Google responded that it preferred not to [meet and confer with Plaintiffs] unless, as a precondition, Plaintiffs altered their stated positions." But, once again, that simply isn't true. In fact, what Google said was that it was "***not*** imposing 'preconditions' and [was] happy to schedule a call":

> We're not imposing "preconditions" and are happy to schedule a call. I'm simply asking you *what* you would like to discuss so that we can focus our time properly and have an efficient conversation. If we don't know what's on the agenda, we don't know who from our team needs to attend. If we don't know what new compromises you have in mind, we can't consider them in advance or share them with our client, which is going to limit our ability to discuss them with you, and which may ultimately double the amount of meeting and conferring. (Last time we spoke, you were very frustrated that we could not give you an immediate decision on proposals you spun out on the fly on the call.)

*See* Marais 10/28/21 Email. What Plaintiffs appear to be complaining about is Google's straightforward request that Plaintiffs identify, in advance of the call, the topics they hoped to discuss so that Google could prepare accordingly. It is unclear why Plaintiffs refused to provide an agenda until Google made *two* separate requests, or what they hope to gain now by misrepresenting Google's statements.

*Second*, Plaintiffs now claim (in new language they circulated just *13 minutes* before the filing deadline for this status report) that Google has "declined" their "request" "that future meet and confers be recorded." Of course, Plaintiffs did not make a request; they simply announced, in a draft of this statement, that they "*intend*" to record the parties' calls. Google will be ready to address this topic at the hearing. Google's preference would be for the parties to engage productively with one another and to treat these meet-and-confer discussions as an opportunity to seek out areas of compromise. But, if the October 29 call is a hint at Plaintiffs' intended approach, Google agrees that it may be necessary to have a court reporter transcribe these conferences.

**B. Plaintiffs' Statement**

**1. October 29 Meet and Confer**

On Wednesday, October 27, Plaintiffs requested that Google meet and confer regarding the issues raised in the joint status reports filed since the last hearing. Levin-Gesundheit 10/26/21 Email ("For the call, we would ask that you please be prepared to address all the issues identified in the parties' recent status reports, including, for example, Google's comments about Plaintiffs' fifth document production, Plaintiffs' proposed compromise regarding Interrogatories Nos. 4 and 5, Interrogatory No. 7, custodians and search terms, and the case schedule."). *See* Dkt. 191, 193, 196. Google responded that it preferred not to meet and confer unless, as a precondition, Plaintiffs altered their stated positions. Marais 10/27/21 Email ("We've already spent hours discussing those topics, and hours more briefing them because we understood that we had reached an impasse or because Plaintiffs insisted on taking them to the Court. If you have new proposals you would like us to consider, we can certainly do that, but can you please let us know what they are so that we can evaluate them in advance and, where appropriate, discuss them with our client?"). Plaintiffs then sent Google a list of questions aimed at identifying common ground. Google did not provide responses but agreed to meet and confer at 2 p.m. on Friday, October 29.

Thirty minutes prior to call, Google sent a letter touching on some of the outstanding issues, with an offer to meet and confer on Thursday, November 4—*i.e.*, after the next status conference. Plaintiffs reviewed the letter. It answered none of the questions. Plaintiffs thus raised the

unaddressed questions at the October 29 meet and confer. The questions, and Google's responses, are reproduced below. (An inadvertent error has been corrected in Question 1). Plaintiffs are disappointed that Google now seems to disavow its own statements during the meet and confer. Indeed, Google once again attacks Plaintiffs' purported "mischaracterizations" of its positions, while once again declining to identify what those mischaracterizations actually are. This behavior is why Plaintiffs request, below, that future meet and confers be recorded. Plaintiffs asked Google to join this request but, despite Google's oft-expressed concerns regarding mischaracterization of its positions, the company declined to do so. Plaintiffs proposed a list of custodians, based on limited information, on October 1.

1. Will Google agree to let us know by November 5 which individuals on Plaintiffs' list it agrees are relevant?

   _Response:_ No.

   Google stated that "85% of people have nothing to do with what we think this case is about." Plaintiffs asked Google if it would identify who the remaining potentially relevant individuals are. Google indicated that it would not identify which individuals are, in its view, relevant to the claims in this case, unless Plaintiffs first provide a written explanation of how Plaintiffs identified each individual or category of individual on their custodian list. Google would not confirm that the two individuals identified in its initial disclosures are relevant.

2. Plaintiffs had proposed that that the parties *both* exchange initial lists of proposed custodians and search terms on October 26. Dkt. 193 at 3. That date has come and gone, and Google has not made a proposal. Will Google agree to provide its list by November 19?

   _Response:_ No.

   Again, Google indicated that it would not propose custodians and search terms until Plaintiffs provide a written explanation of how they identified each individual or category of individual on their proposed custodian list.

3. During our October 8 meet and confer, Plaintiffs answered clarifying questions Google posed about Plaintiffs' Interrogatory No. 7, which seeks identification of the individuals

responsible for and knowledgeable about the databases in which Google stores Location Information. Plaintiffs served the interrogatory on August 12, and Google still has not provided a substantive response. What information, if any, does Google intend to provide in response to this interrogatory—and when?

*Response:* None at this time.

Google indicated it would *consider* whether it would agree to identify individuals knowledgeable about how Location Information flows into and out of each database or platform. Google provided no timeline.

4. Do Google's responses to Plaintiffs' Interrogatories Nos. 4 and 5 identify "*all* Google products, applications, and services that have committed user Location Information to storage" and "*all* databases, data stores, devices, and/or systems in Google's possession, custody, or control containing user Location Information"? Google has been silent on this question for months and, by its silence, we have inferred that the answer is no. Please confirm.

*Response:* Google would not answer.

At approximately 2:50 p.m., Google's counsel indicated there was not time to answer this yes-or-no question.

5. Does Google maintain that David Monsees and Marlo McGriff, are the only individuals who "may have discoverable information that [Google] may use to support its claims or defenses"? *See* Google's Initial Disclosures at 2 (5/20/19) (listing these two individuals only).

*Response:* Yes.

Google indicated that it has no present intention of identifying additional individuals who may have information Google may use in support of its defense.

**2. Discovery from the Named Plaintiffs**

There was no basis for Google's accusations in the parties' October 25 status report—made to the Court with no prior notice or conferral with Plaintiffs' counsel—that Plaintiffs failed to produce responsive documents pursuant to the Court's order given that Plaintiffs have consistently

informed Google, as they did most recently during and after the October 29 meet and confer, that they have produced all responsive documents and are withholding none. (In the letter accompanying their production on October 22, Plaintiffs expressly confirmed that "[h]having conducted a reasonable search, insofar as Plaintiffs have located additional materials responsive to Google's RFPs No. 15, 19–28, 30–31, and 33–41 which Plaintiffs agreed to produce in their formal discovery responses, but which had not yet been produced, those are enclosed in this production."). When, during the meet and confer, Google expressed concern that the Plaintiffs may have conducted the search for responsive documents on their own without oversight or assistance by counsel, Plaintiffs confirmed to Google that the documents produced are the result of a reasonable and diligent search, conducted collaboratively by Plaintiffs and their counsel, with specific guidance regarding searches to perform and the types of documents to search for, and in response to requests from, conversations with, and follow up by counsel which were intended to capture all materials subject to the Court's order.

Plaintiffs have produced all responsive documents in their possession that they have located through a diligent search with the assistance of counsel. And, as Plaintiffs have disclosed multiple times, they are working with forensic consultant Setec Investigations to determine whether additional material exists and can proportionally be obtained from older stored devices which have been powered off and are no longer in use. Google, by contrast, has produced ***no*** custodial data in response to Plaintiffs' requests.

Plaintiffs, who are individuals not corporate actors with large numbers of employees and bodies of ESI to search through the use of search terms or other techniques, have been transparent with Google about their extensive efforts to comply with Google's requests. Google, in contrast, has refused even to negotiate custodians or search terms for its own production (although it now suggests it will at least discuss search terms on November 4).

Google's suggestion that Plaintiffs are refusing to disclose sufficient information about their document productions is simply untrue. Plaintiffs' counsel have declined to provide information about the substance of counsel's communications with their clients, but have explained the process by which documents and information were collected, and repeatedly have confirmed that any and

all responsive, non-privileged materials located through reasonable, diligent, and collaborative efforts have been produced. Google identifies no specific information that Plaintiffs have withheld (nor are Plaintiffs' counsel aware of any), and its generalized complaints that the individual Plaintiffs have produced fewer responsive documents than Google itself are no basis for accusations of non-compliance with this Court's order.

**3. Future Meet and Confers**

During the October 29 meet and confer, Google's counsel often interrupted Plaintiffs' counsel to monopolize speaking time and avoid answering questions. To ensure that future meet and confers are productive, Plaintiffs intend to schedule them on Zoom and record them.

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

Dated: November 1, 2021

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

By: */s/ Michael W. Sobol*
MICHAEL W. SOBOL
MELISSA GARDNER
MICHAEL LEVIN-GESUNDHEIT
JOHN D. MAHER

*Interim Co-Lead Class Counsel*

Dated: November 1, 2021

AHDOOT & WOLFSON, PC

By: */s/ Tina Wolfson*
TINA WOLFSON
THEODORE MAYA
RACHEL JOHNSON

*Interim Co-Lead Class Counsel*

Dated: November 1, 2021

KEKER, VAN NEST & PETERS LLP

By: */s/ Nicholas D. Marais*
BENJAMIN BERKOWITZ
THOMAS E. GORMAN
NICHOLAS D. MARAIS
CHRISTOPHER S. SUN
CHRISTINA LEE

Attorneys for Defendant GOOGLE LLC

**ATTESTATION**

Pursuant to Local Rule 5-1(i)(3), I attest that all signatories above have concurred in the filing of this document.

Dated: November 1, 2021

*/s/ Nicholas D. Marais*
Nicholas D. Marais