**LIEFF CABRASER HEIMANN
  & BERNSTEIN, LLP**
Michael W. Sobol (SBN 194857)
msobol@lchb.com
Melissa Gardner (SBN 289096)
mgardner@lchb.com
Michael Levin-Gesundheit (SBN 292930)
mlevin@lchb.com
Jallé H. Dafa (SBN 290637)
jdafa@lchb.com
John D. Maher (SBN 316157)
jmaher@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone:  415.956.1000
Facsimile:  415.956.1008

**LIEFF CABRASER HEIMANN
  & BERNSTEIN, LLP**
Nicholas Diamand (*pro hac vice*)
250 Hudson Street, 8th Floor
New York, NY 10013
Telephone:  212.355.9500
Facsimile:  212.355.9592

*Interim Co-Lead Class Counsel*

**AHDOOT & WOLFSON, PC**
Tina Wolfson (SBN 174806)
twolfson@ahdootwolfson.com
Theodore Maya (SBN 223242)
tmaya@ahdootwolfson.com
Brad King (SBN 274399)
bking@ahdootwolfson.com
2600 West Olive Avenue, Suite 500
Burbank, California 91505
Telephone: 310.474.9111
Facsimile: 310.474.8585

**AHDOOT & WOLFSON, PC**
Andrew W. Ferich (*pro hac vice*)
aferich@ahdootwolfson.com
201 King of Prussia Road, Suite 650
Radnor, PA 19087
Telephone: 310.474.9111
Facsimile: 310.474.8585

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| IN RE GOOGLE LOCATION HISTORY LITIGATION | Case No.  5:18-cv-05062-EJD (NC)<br><br>**DECLARATION OF MELISSA GARDNER REGARDING PLAINTIFF DOCUMENT PRODUCTION AND PROCESS**<br><br>Dept:     Courtroom 5 – 4th Floor<br>Judge:    Hon. Nathanael Cousins |

I, Melissa Gardner, declare and state as follows:

1. I am a member in good standing of the California State Bar, and a partner in the law firm of Lieff, Cabraser, Heimann & Bernstein, LLP. I submit this Declaration pursuant to the Court's order of November 30, 2021 (ECF 207) to identify the discovery Plaintiffs have produced in response to the Court's order of October 6, 2021 (ECF 187), and to describe the efforts Plaintiffs made to fully comply with that order, including search terms associated therewith. I have personal knowledge of the matters set forth herein and could competently testify thereto.

2. A true and correct copy of:

   a. The Declaration of Theodore Maya is attached hereto as **Exhibit 1**.
   
   b. The Declaration of David Slade is attached hereto as **Exhibit 2**.
   
   c. The Declaration of Melissa Emert is attached hereto as **Exhibit 3**.

3. In the order at ECF 187, the "Court GRANTED request to compel discovery production by October 20, 2021, on topics A-D." Topics A-D were identified by Google in the Joint Letter Brief filed at ECF 180, as follows:

   a. **Topic A:** "Plaintiffs must now produce documents they agreed to produce in March" (asserting prior document productions were inadequate as to RFPs No. 15, 19–28, 30–31, and 33–41).
   
   b. **Topic B:** "Plaintiffs must respond to Interrogatory No. 3" (asserting prior written responses were inadequate as to Interrogatory No. 3).
   
   c. **Topic C:** "Plaintiffs must produce documents identifying their mobile devices" (requesting order for Plaintiffs to create screenshots of "About" screen for RFP 2).
   
   d. **Topic D:** "Plaintiffs' Alleged 'Sensitive Locations'" (requesting order for written response to RFP 6).

4. Attached hereto as **Exhibit 4** is a chart showing excerpts of RFPs No. 15, 19–28, 30–31, and 33–41.

5. After receiving Google's Requests for Production on February 12, Co-Lead Counsel conferred and devised a process to locate responsive information. On February 24, 2021, on behalf of Co-Lead Interim Class Counsel, I sent to attorneys at Interim Class Counsel firms

1 who had been retained to represent individual Plaintiffs (David Slade of Carney Bates & Pulliam for Napoleon Patacsil and Nurudaaym Mahon, Melissa Emert of Kantrowitz, Goldhamer & Graifman for Michael Childs, and Co-Lead Counsel at Ahdoot & Wolfson for Noe Gamboa) a list of tasks, requested information, and questions to pose to individual Plaintiffs that Co-Lead Counsel had prepared ("February Communication"). This document served the dual purposes of thoroughly responding to discovery demands from Google, and of assisting Co-Lead Counsel's gathering of other pertinent information from the named Plaintiffs to inform the prosecution of the case generally. It included questions regarding matters under investigation by Co-Lead Counsel, questions regarding the existence and likely locations of responsive materials, and questions intended to inform Plaintiffs' responses to Google's Interrogatories and Requests for Production. It also included instructions based upon research by Co-Lead Counsel into potential sources of information about the applications installed on mobile devices and the location settings for those applications (specifically, through the Google Play Store and/or iPhone App store, and otherwise on mobile devices), and instructed counsel to collect screenshots of this information accessible through Plaintiffs' mobile devices, and to summarize in a chart the information thus collected, as well as pertinent information not reflected in screenshots of which the Plaintiff was aware. As such, we regard the February Communication itself as protected from discovery under the attorney-client privilege and/or work product doctrine.

6. Plaintiffs served their initial responses and objections on March 15, 2021. In light of objections to Interrogatory No. 3 as written, Co-Lead Counsel requested to meet and confer on Interrogatory No. 3 prior to serving responses. The parties met and conferred by phone on April 6 and May 10, and communicated by letters dated March 25, April 29, May 11, and May 27. In a letter dated May 27, Google confirmed that it would accept Plaintiffs' proposal made on May 17 for responding to Interrogatory No. 3. Plaintiffs had proposed to provide, to the extent it can be determined after a reasonable search, (i) a list of the applications installed on their mobile device(s) during the relevant period; (ii) for each such app, the dates of installation, Location Services/App Permissions settings, and the dates of changes to those where available; and (iii) a

1  list of all e-mail addresses they may have associated with any non-Google application identified
2  in response to Interrogatory No. 3.

3        7.      On June 2 and June 3, 2021, on behalf of Co-Lead Interim Class Counsel, I sent a
4  document collection checklist and request for supplemental information ("June Communication")
5  to counsel who had previously discussed discovery with the Plaintiffs.  The June Communication
6  included requests to conduct additional searches and confirm or update information provided in
7  response to the February Communication, and to provide additional information Co-Lead
8  Counsel had agreed and/or proposed to provide through meet and confers, including the email
9  addresses associated with applications installed on Plaintiffs' mobile devices for Interrogatory
10 No. 3.  The June Communication also summarized the categories of documents Plaintiffs had
11 agreed to produce in response to RFPs No. 15, 19–28, 30–31, and 33–40, among others,
12 requesting that counsel work with the Plaintiffs to locate and provide responsive documents and
13 information to Co-Lead Counsel as soon as possible, and to provide any additional documents
14 located on a rolling basis.  As such, we regard the June Communication itself as protected from
15 discovery under the attorney-client privilege and/or work product doctrine.

16       8.      In addition to listing categories of documents to locate on the basis of Plaintiffs'
17 and counsel's knowledge of the likely sources of responsive documents, Co-Lead Counsel
18 requested that Plaintiffs be instructed to conduct the following searches in their email inboxes as
19 part of the process, and to download and send all responsive documents to counsel:

```
from: google location
from: google settings
from: google privacy
from: google terms
from: no-reply@accounts.google.com location
from: no-reply@accounts.google.com settings
from: no-reply@accounts.google.com privacy
from: no-reply@accounts.google.com terms
from: googleaccount-noreply@google.com
from: noreply@google.com
```

26 I understand that the first eight searches above would return all results sent from the email
27 address or entity noted (such as "google" or "no-reply@accounts.google.com") that include the
28 words "location," "settings," "privacy," or "terms," and that the following two searches would

1  return all results sent from the email addresses noted.  Co-Lead Counsel also requested that

2  Plaintiffs be instructed to conduct the broad search "from: google" and if other messages were

3  identified that have to do with location information, terms of service, privacy, or account settings,

4  to download and send those to counsel as well.

5      9.    Plaintiffs made rolling productions of documents on June 25, August 13, August

6  20, and September 22.  On July 15, Plaintiffs served Supplemental Responses to Interrogatory

7  No. 3, identifying in an appendix derived from the screenshots and discussions pursuant to the

8  February and June Communications: (i) a list of the applications installed on the Plaintiffs'

9  mobile device(s) during the relevant period; (ii) for each such app, the dates of installation,

10  Location Services/App Permissions settings, and the dates of changes to those where available;

11  and providing in their written responses (iii) the email addresses each Plaintiff may have used in

12  connection with each identified application.

13      10.    One Request for Production at issue in Topic A was excluded from the processes

14  above.  Google's Request for Production 41 sought documents "related to any forensic testing or

15  analysis performed in connection with or in anticipation of this litigation, including the 'forensic

16  testing' referenced in footnote 43 of the consolidated complaint."  In March, Plaintiffs agreed to

17  produce "documents not subject to the attorney-client privilege or work product doctrine in their

18  possession, custody, or control that are located after a reasonable search."  Because the forensic

19  testing or analysis did not involve files from the Plaintiffs, responding to this Request required

20  review of counsel's files, rather than Plaintiffs' files.  As set forth in the Declaration of David

21  Slade filed herewith, counsel searched their correspondence and files associated with this

22  analysis.  Co-Lead Counsel reviewed and produced responsive documents, *i.e.*, the factual

23  information utilized to create the images in paragraph 59 of the operative complaint, referenced in

24  footnote 43, but not documents that reflect the mental impressions of counsel, prior to October 6.

25      11.    In addition, Co-Lead Counsel retained Setec Investigations in June 2021 to assist

26  with forensic and electronic discovery support, as well as investigative activities, including

27  identifying a proportional means of accessing information about changes to location settings over

28  time for applications installed on Plaintiffs' mobile devices, if possible.

12. After receiving the Court's order of October 6 regarding Discovery Disputes (ECF 187), Co-Lead Counsel conferred and devised a process to ensure compliance. On October 12, on behalf of Co-Lead Interim Class Counsel, I sent to counsel who had previously discussed discovery with the Plaintiffs a list of tasks and requested information that Co-Lead Counsel had prepared ("October Communication"). As such, we regard the October Communication itself as protected from discovery under the attorney-client privilege and/or work product doctrine. I also requested and obtained information and documents from Setec Investigations as discussed in this Section.

13. **Topic A.** The October Communication summarized categories of documents that would be responsive to RFPs No. 15, 19–28, 30–31, and 33–40, and requested that counsel for each Plaintiff work with their clients to locate and send any additional documents they could locate to Co-Lead Counsel, or as applicable, confirm that no additional documents exist. The October Communication also requested certain data from Plaintiffs' "Takeout" files which Class Counsel reviewed prior to October 20 for information that may be responsive to the Requests in Topic A as well as other Requests for Production. Responsive documents identified through these processes were included with Plaintiffs' fifth production of documents, served October 20.

14. In addition, in mid-October Setec Investigations completed a process begun in August for imaging Plaintiff Michael Childs' email inbox, which we understood was necessary because work and travel obligations had prevented Mr. Childs from completing his search for certain documents requested by the June Communication without such assistance. Co-Lead Counsel reviewed these files and conducted the searches requested by the June and October Communications for any documents responsive to RFPs No. 15, 19–28, 30–31, and 33–40, or information relating to changes in Mr. Childs' location settings over time. Documents located in that search were included with Plaintiffs' fifth production of documents, served October 20.

15. In addition, Co-Lead Counsel re-evaluated their production in response to Google's complaints about the volume of Plaintiffs' production responsive to RFPs No. 15, 19–28, 30–31, and 33–40, and concluded that the volume is appropriate and consistent with the nature of these requests and the information Plaintiffs provided to counsel regarding their

communications with Defendant, third parties, and about this litigation. As demonstrated by a review of **Exhibit 4**, many of these RFPs request documents related to allegations in the operative complaint about Defendant's representations, omissions, and awareness which are the types of documents Co-Lead Counsel would expect to locate in Defendant's files and/or in the public record consistent with the exhibits attached to the operative complaint, but would not expect to locate in Plaintiffs' personal files.

16. **Topic B.** In preparing the October Communication in light of the Court's order, Co-Lead Counsel reviewed Plaintiffs' Supplemental Responses to Interrogatory No. 3 to reconfirm the accuracy of the answers provided with respect to various settings that Google represented to the Court were not consistent with the functioning of the app in question. *See e.g.*, ECF 192 (Oct. 6, 2021 Tr.), at 13:16-22. We reviewed the settings identified for all applications listed in response to Interrogatory No. 3, not just those identified by Google, and instructed counsel to discuss these applications with the Plaintiffs to confirm the accuracy, to the best of the information available to Plaintiffs, of the "settings" information provided, including changes over time, and where possible to obtain from the Plaintiffs an explanation for apparent inconsistencies for applications Co-Lead Counsel had identified. We used the results of those attorney-client communications to draft Plaintiffs' Second Supplemental and Amended Responses to Interrogatory No. 3, which were served on October 20.

17. **Topic C.** The October Communication instructed counsel to obtain screenshot(s) of the "About" page under Settings for any devices Plaintiffs are able to access. In addition, Co-Lead Counsel corresponded with Setec Investigations to obtain image(s) of the "About" page under Settings for any devices Setec Investigations was able to access. Documents (*i.e.*, screenshots) created through those processes were included with Plaintiffs' fifth production of documents, which were served on October 20.

18. **Topic D.** The October Communication included a template response and instructions for counsel to obtain as much detail as possible from the Plaintiffs regarding the locations to which they carried their mobile devices during the relevant period. Those responses, as amended following counsel's discussion with and investigation by the Plaintiffs, were included

1  with Plaintiffs' fifth production of documents, served on October 20. On December 7, pursuant
2  to the Court's order on Plaintiffs' Motion for Reconsideration, Plaintiffs intend to serve amended
3  responses to Request for Production No. 6.

4      19.    Co-Lead Counsel's understanding of the Court's deadline to "[e]xchange initial
5  list of proposed custodians and search terms" is that it applies solely to the Google custodians and
6  search terms to search Google's documents. *See* ECF 205 (the Court's recommendation) and
7  ECF 208 (Judge Davila's endorsement of the recommendation). The Court's recommendation,
8  for example, comes upon its review of the parties' joint statement (ECF 194) where Plaintiffs
9  requested a deadline be imposed, to which Google replied there is no requirement to provide
10 search terms and there should be no deadline at all. Nonetheless, the actual search terms Co-Lead
11 Counsel instructed all Plaintiffs to use, to the extent that search terms can facilitate an individual
12 consumer's production of documents, have been provided above. Although Co-Lead Counsel
13 believe that Plaintiffs' search for responsive documents has been reasonably diligent and
14 complies with their obligations, they are nonetheless willing to meet and confer in good faith
15 should Google have requests for the use of additional search terms beyond those used by all
16 Plaintiffs to date.

18     I declare under penalty of perjury that the foregoing is true and correct. Executed this 7th
19 day of December, 2021 at Des Moines, Washington.

                        */s/ Melissa Gardner*
                        Melissa Gardner