KEKER, VAN NEST & PETERS LLP
BENJAMIN BERKOWITZ - # 244441
bberkowitz@keker.com
THOMAS E. GORMAN - # 279409
tgorman@keker.com
NICHOLAS D. MARAIS - # 277846
nmarais@keker.com
CHRISTOPHER S. SUN - # 308945
csun@keker.com
CHRISTINA LEE - # 314339
clee@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:     415 391 5400
Facsimile:     415 397 7188

Attorneys for Defendant GOOGLE LLC

AHDOOT & WOLFSON, PC
Tina Wolfson (SBN 174806)
*twolfson@ahdootwolfson.com*
Theodore Maya (SBN 223242)
*tmaya@ahdootwolfson.com*
Bradley K. King (SBN 274399)
*bking@ahdootwolfson.com*
Christopher Stiner (SBN 276033)
*cstiner@ahdootwolfson.com*
Rachel Johnson (SBN 331351)
*rjohnson@ahdootwolfson.com*
2600 West Olive Avenue, Suite 500
Burbank, California 91505
Tel: (310) 474-9111
Fax: (310) 474-8585

Interim Co-Lead Class Counsel

LIEFF CABRASER HEIMANN
& BERNSTEIN, LLP
Michael W. Sobol (SBN 194857)
msobol@lchb.com
Melissa Gardner (SBN 289096)
mgardner@lchb.com
Michael Levin-Gesundheit (SBN 292930)
mlevin@lchb.com
John D. Maher (SBN 316157)
jmaher@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: 415.956.1000
Facsimile: 415.956.1008

LIEFF CABRASER HEIMANN
& BERNSTEIN, LLP
Nicholas Diamand (*pro hac vice*)
250 Hudson Street, 8th Floor
New York, NY 10013
Telephone: 212.355.9500
Facsimile: 212.355.9592

Interim Co-Lead Class Counsel

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE: GOOGLE LOCATION HISTORY LITIGATION | Case No. 5:18-cv-05062-EJD-NC <br><br> **WEEKLY DISCOVERY UPDATE** <br><br> Dept:     Courtroom 5 – 4th Floor <br> Judge:   Hon. Nathanael M. Cousins <br><br> Hr'g Date: January 12, 2021 <br> Time:      1:00 p.m. |

The parties submit this report in response to the Court's December 8 Order, Dkt. 215.

## PLAINTIFFS' POSITION

**A. Issues Addressed in the December 8 Discovery Order**

Plaintiffs satisfied their obligations with respect to Google's outstanding discovery requests, and the declarations submitted at Dkt. 210 *et seq.* spell out the steps they took in detail. Plaintiffs gathered and produced documents, are not withholding anything, and have produced a significant amount of documents given the nature of Google's requests.

Nonetheless, in order to avoid further squandering the Court's and the parties' time needlessly engaging on these issues *ad nauseum*, Plaintiffs asked Google to consider the following interdependent compromises, which collectively would resolve all outstanding disputes concerning: Plaintiffs' compliance with the prior Discovery Order; RFPs 4, 17, and 18; and RFPs 42-47 (seeking Google Takeout data concerning Plaintiffs).

*First*, Plaintiffs would produce additional takeout data requested in response to RFPs 42, 44, and 47, like that they already produced in response to RFPs 43, 45, and 46. (Plaintiffs complied with the Court's order to produce all takeout data the previously agreed to produce by December 10.)

*Second*, Plaintiffs would allow the mobile devices identified in Plaintiffs' responses to Google's Interrogatory No. 1 to be imaged, to the extent they can be located, are operable, and are accessible by Setec Investigations. Setec then would run mutually agreed and/or Court-ordered search terms on those images, and Plaintiffs would produce to Google data found through such searches that is responsive to the RFPs raised in Google's prior motion to compel (RFPs 2, 15, 19-28, 30-31, and 33-41), as well as RFPs 4, 17, and 18.

*Third*, the parties would meet and confer regarding email-friendly search terms, which Plaintiffs, with the assistance of counsel, would run on the email accounts with respect to which Plaintiffs already have produced Google Takeout data. Plaintiffs would produce to Google data found through such searches that is responsive to the same RFPs.

*Fourth*, Plaintiffs would identify all devices, including computers, that they searched in responding to Defendant's discovery requests to date, provided Google would agree to the same

obligations with respect to each of its document custodians.

Google has rejected this proposed compromise, and instead of offering any alternative compromise that would obviate the need for a Court order, makes misleading statements to the Court and asks the Court to impose various deadlines that would fall on New Year's Eve.

**B. RFPs 4, 17, and 18**

It is outright false for Google to represent that Plaintiffs have produced "no" documents in response to these RFPs. (Similarly false was Google's representation to the Court at the last hearing that Plaintiffs produced 100 pages altogether—the true figure at this time stands at 820 pages for 161 documents.)

These RFPs seek documents Plaintiffs "received in connection with or when they purchased their devices (receipts, contracts, privacy notices, terms of service, etc.)," (Dkt. 209); Plaintiffs have produced, and are not withholding any, responsive documents. For instance, Google insists that Plaintiffs who are T-Mobile subscribers should produce emails from T-Mobile regarding their purchase and activation of mobile devices—yet Plaintiff Gamboa already produced two such emails. Google insists that terms of service with T-Mobile should be produced, but those emails contain links to T-Mobile's terms of service, which are available to Google. And Google's own correspondence on these RFPs demonstrates that Plaintiffs already have produced additional responsive documents, including communications from Google itself.

Plaintiffs invited Google to propose "email-friendly" search terms that Plaintiffs could run on their email accounts, in an effort to locate additional responsive documents, if Google truly believes that more should be produced. Google refuses to cooperate in any such effort, instead insisting only on search terms that would require Plaintiffs' email accounts to be imaged in order to be used. If the Court is in any way inclined to order that Plaintiffs do more with respect to these RFPs, Plaintiffs respectfully request the opportunity for more fulsome briefing.

**C. Search Terms and Custodians**

Plaintiffs have been transparent about how they searched for and produced documents responsive to Google's requests, including with respect to the search terms used, how those search terms were used, and the other steps Plaintiffs and their counsel took to locate responsive

documents without the use of a single set of search terms (resulting, for example, in production of the T-Mobile emails described above). *See, e.g.*, Dkt. 210 at ¶¶ 7-8. In contrast, Google refuses to share with Plaintiffs the search terms it used to gather the *Arizona* documents, labeling this as impermissible "discovery on discovery." (Email from N. Marais 12/10/2021.)

Plaintiffs complied with the Court's order requiring that they propose and discuss search terms applicable to their own data. Plaintiffs' initial list included the search terms they already disclosed in counsels' declarations; there is nothing improper about that. Google never disclosed any search terms until the Court-ordered date of December 8. Again, Plaintiffs stand willing to cooperate with Google to run a reasonable number of additional search terms on Plaintiffs' email accounts (or indeed other sources of data amenable to the use of such search terms), but Google at this time insists on search terms that would require the unnecessary and invasive step of imaging the entirety of Plaintiffs' personal email accounts. Hopefully, as the parties' negotiations concerning search terms progress, they will make progress on this point, but by no means should the Court order Plaintiffs to image all their data at this time.

## GOOGLE'S POSITION

Plaintiffs' proposed "compromise" is not a serious proposal. Google should not have to agree that Plaintiffs would resolve "all outstanding disputes" simply by "exploring" their clients' "willingness to allow" their email and mobile devices to be searched for responsive material—a process that should have happened months ago. This "proposal" is not made in good faith; it is another attempt to avoid complying with the Court's Orders and Plaintiffs' discovery obligations.

**A.     Takeout Data**

In October, after *months* of conferring about Plaintiffs' Takeout Data, Google served six narrow RFPs seeking production of a small subset of that information. (This is data in Plaintiffs' Google Accounts, which they can readily and easily download from takeout.google.com. If Google has location information about Plaintiffs, as they allege, this is where it will be found.) This week, Plaintiffs stated they had produced data responsive to *some* of these requests (RFPs 43, 45, and 46), but not others. As Google explained last month, there is no serious dispute that the outstanding RFPs seek relevant information: **RFP 42** calls for basic account registration

data (such as Plaintiffs' Google Account IDs); **RFP 44** calls for Play Store data (which will identify third-party apps Plaintiffs installed on their devices, many of which Plaintiffs likely allowed to collect their location information); and **RFP 47** calls for "My Activity" data, a compilation of Plaintiffs' Web & App Activity, where Plaintiffs allege Google collected, kept, and used their location information. *See, e.g.*, Dkt. 164-1 at ¶ 117. Indeed, these requests are all subsumed by Plaintiffs' own RFPs. To date, the *only* concern Plaintiffs have ever articulated is a "privacy" interest in this data—a concern easily assuaged by the stipulated protective order. Ultimately, Plaintiffs know this data must be produced, which is why they now offer to do so *if* Google agrees *in advance* that (1) their production will fully address Google's outstanding RFPs and (2) it will be "deemed confidential." Neither prerequisite is appropriate. <u>Google asks the Court to order Plaintiffs to produce all data responsive to RFPs 42–47 within 14 days</u>.

      **B.**      **Plaintiffs' failure to comply with the Court's Discovery Order**

Google previously detailed its concerns with Plaintiffs' failure to engage in the discovery process or comply with the Court's October 6 Order. *See* Dkt. 187; Dkt. 197 at § A.1. It continues to become ever clearer that Plaintiffs have ignored those obligations. In October and November, they produced just 100 pages of documents between them. (The misleading number Plaintiffs cite above, 820 pages, is their *entire* production in this case—comprised mostly of Bates-stamped copies of their lawyers' pleadings.) For months, Plaintiffs refused to disclose *any* search terms they supposedly used, and when they finally did, it was clear why they had resisted. They left their clients to search for documents using just *four* search terms, *all* of which they inexplicably restricted to emails received only *from* Google. Despite the Court's Order, Plaintiffs have also refused to explain which email addresses and which devices they searched. *See* Dkt. 207 at 2. This week, during meet-and-confer, Plaintiffs have remained unable or unwilling to do so. <u>Google requests that the Court order Plaintiffs to provide this information within 14 days</u>.

      **C.**      **Plaintiffs' failure to comply with the Court's "bilateral exchange"**

At last week's hearing, Plaintiffs argued that the Court-imposed deadline to "*exchange*" search terms should apply only to Google. The Court made clear that Plaintiffs were wrong. *See* Hr'g Tr. (Dec. 8, 2021) at 27:9 ("[A]re the search terms bilateral. The answer is yes."). Yet, that

same day, after agreeing to a time for a mutual exchange, Plaintiffs thumbed their noses at the Court's directions and declined to participate in the bilateral exchange. Instead, their "proposal" for searching Plaintiffs' data comprised just *four* terms—the same four terms they claimed they had already run. In any event, *Google* has proposed a list of search terms for Plaintiffs' data, as it said it would, and Plaintiffs should now be ordered to use those terms to search for documents.

### D. Plaintiffs' counsel must search their clients' data

Google has proposed search terms in a standard format (the same format used by Plaintiffs' counsel) that can be run using any standard e-discovery software. Given Plaintiffs' non-compliance, and the paucity of their productions to date, it is critical that Google's search terms are run against Plaintiffs' custodial data. Plaintiffs' refusal to use industry standard e-discovery software to review their clients emails—even though they are using such software to review Google's productions—is inexplicable. These searches cannot and should not be outsourced to individual Plaintiffs who lack the tools and experience to conduct independent, reasonably diligent searches. Instead, just as in any other case in this District, Plaintiffs' counsel should process and review their clients' email and custodial data, and then conduct an appropriate search for responsive material. Google is not seeking *access* to all of Plaintiffs' documents; it is only asking that Plaintiffs share their documents *with their own lawyers*, who are officers of this Court and who would be required (and would have the tools) to conduct an appropriate and diligent review. <u>Google asks that the Court order Plaintiffs' counsel to collect and process their clients' email and other custodial data (*e.g.*, documents they have saved to their computers or cloud-based accounts) in the next 14 days.</u> Their refusal to do so has made it impossible for the parties' discussions of search terms to progress.

### E. RFPs 4, 17, and 18

Plaintiffs *agreed* to identify and produce documents responsive to RFPs 4, 17 and 18 in May. They still haven't done so: as they concede above, they produced just "*two* responsive emails" from *one* plaintiff. That's because they haven't looked. On this week's meet-and-confer calls, Plaintiffs were once again unable or unwilling to explain whether, how, or where they searched. <u>Google requests that the Court order Plaintiffs to produce these documents within 14 days.</u>

| | |
|---|---|
| Dated: December 16, 2021 | LIEFF CABRASER HEIMANN & BERNSTEIN, LLP |

By: */s/ Michael W. Sobol*
MICHAEL W. SOBOL
MELISSA GARDNER
MICHAEL LEVIN-GESUNDHEIT
JOHN D. MAHER

*Interim Co-Lead Class Counsel*

| | |
|---|---|
| Dated: December 16, 2021 | AHDOOT & WOLFSON, PC |

By: */s/ Theodore Maya*
TINA WOLFSON
THEODORE MAYA
RACHEL JOHNSON

*Interim Co-Lead Class Counsel*

| | |
|---|---|
| Dated: December 16, 2021 | KEKER, VAN NEST & PETERS LLP |

By: */s/ Nicholas D. Marais*
BENJAMIN BERKOWITZ
THOMAS E. GORMAN
NICHOLAS D. MARAIS
CHRISTOPHER S. SUN
CHRISTINA LEE

Attorneys for Defendant GOOGLE LLC

## ATTESTATION

Pursuant to Local Rule 5-1(i)(3), I attest that all signatories above have concurred in the filing of this document.

Dated: December 16, 2021*/s/ Theodore Maya*
Theodore Maya