Pages 1 - 46

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Nathanael M. Cousins, Magistrate Judge

IN RE:  GOOGLE LOCATION HISTORY)
LITIGATION,                   )   **NO. C 18-05062 EJD (NMC)**
_____ )

San Jose, California
Wednesday, December 8, 2021

**TRANSCRIPT OF VIDEOCONFERENCE PROCEEDINGS OF THE OFFICIAL
ELECTRONIC SOUND RECORDING 1:02 - 1:59 p.m.**

**APPEARANCES**:  (via videoconference)

For Plaintiffs:

        LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
        275 Battery Street - 29th Floor
        San Francisco, California  94111
  BY:  **MICHAEL W. SOBOL, ATTORNEY AT LAW**
       **MICHAEL LEVIN-GESUNDHEIT,ATTORNEY AT LAW**

        AHDOOT & WOLFSON, P.C.
        2600 West Olive Avenue - Suite 500
        Burbank, California  91505
  BY:  **THEODORE W. MAYA, ATTORNEY AT LAW**
       **TINA WOLFSON, ATTORNEY AT LAW**

For Defendants:

        KEKER & VAN NEST LLP
        633 Battery Street
        San Francisco, California  94111
  BY:  **THOMAS E. GORMAN, ATTORNEY AT LAW**
       **NICHOLAS D. MARAIS, ATTORNEY AT LAW**
       **BENJAMIN BERKOWITZ, ATTORNEY AT LAW**

Transcribed By:    Marla F. Knox, RPR, CRR, RMR
        United States Official Court Reporter

<u>**Wednesday - December 8, 2021**</u>                    <u>**1:02 p.m.**</u>

**P R O C E E D I N G S**

**---000---**

**THE CLERK:**  Calling 5:18-5062, In Re: Google Location History Litigation.

Counsel, please state your appearances beginning with the Plaintiffs.

**MR. SOBOL:**  Good afternoon, Your Honor, this is Michael Sobol on behalf of the Plaintiffs.

**MS. WOLFSON:**  Good afternoon, Your Honor, Tina Wolfson on behalf of the Plaintiffs.

**MR. MAYA:**  Good afternoon, Your Honor, Theodore Maya, also on behalf of Plaintiffs.

**MR. LEVIN-GESUNDHEIT:**  Michael Levin-Gesundheit on behalf of Plaintiffs.

**MR. MARAIS:**  Good afternoon, Your Honor, Nick Marais from Keker Van Nest & Peters.  I'm here with my colleagues Ben Berkowitz and Tom Gorman and we represent Google.

**THE COURT:**  Thank you.  Good afternoon, all.  Good to see you.

All right.  I'm working off of your most recent status report, ECF 209, in the order of matters presented there.

So that's giving you -- I asked you for the agenda.  You gave me the agenda.  I'm working off of your agenda.

Between our last conversation and today, Judge Davila did

1    affirm the schedule that I recommended; that you had agreed to

2    mostly with one exception.

3        So that's now in place.  It gives us some structure to

4    work on between now and your class certification briefing

5    mid-2022.

6        So let's start at the top with the procedures for your

7    meet-and-confer process.  You have a little disagreement there

8    about some improvements that might be made in the communication

9    process with Google suggesting that you have a court reporter

10   for those and Plaintiffs' Counsel suggesting that a Zoom

11   recording would be appropriate.

12       It occurs to me you could do both.  You could have both a

13   Zoom recording and a court reporter, and you both could get

14   what you want.  But there is a question about -- when it comes

15   to a court reporter, there is some expense involved.  And so a

16   question might be, well, who would pay for a court reporter if

17   one is required.

18       Mr. Marais, it is your -- Google's suggestion.  So tell me

19   more about the need for it and what you suggest would be the --

20   the way to pay for it.

21       **MR. MARAIS:**  Yeah, thank you, Your Honor.

22       And to clarify, it's not Google's position that these

23   calls need to be transcribed.  We haven't taken that position.

24       Plaintiffs have started to insist over the last few weeks

25   that the calls be recorded.

1      Our view is that the Court has directed the parties to

2 talk to each other in a meet-and-confer context presumably with

3 the hope of resolving some of our differences before presenting

4 them to the Court.

5      Our view continues to be that we should do that and that

6 there is more chance of us successfully resolving our disputes

7 if folks don't feel like every word they say is being recorded

8 or written down to be quoted back against them later.

9      So our position has not been -- until fairly recently has

10 not been that these calls should be recorded.

11      We have noticed over the last six or eight weeks that the

12 calls have become a little less productive.  Our view on that,

13 as we set out in the letter brief, is that Mr. Sobol and Ms.

14 Wolfson have delegated their responsibilities to other lawyers

15 on their team who have taken a much more combative stance.

16      And we would hope that -- with some direction from the

17 Court as to what the goals of these meet-and-confers are and

18 who should participate in them, we can return to where we were

19 a few months ago making some progress on the weekly calls.

20      But to the extent we can't and to the extent Plaintiffs'

21 Counsel continue to delegate those duties to junior lawyers on

22 their team, then I do think they need to be transcribed.  And

23 we have proposed that the parties split the cost of a court

24 reporter for that purpose.

25      **MR. SOBOL:**  Your Honor, maybe I will try to address

1    this first --

2          **THE COURT:**  Go ahead.

3          **MR. SOBOL:**  -- although I would -- with the Court's

4    indulgence, permitting if others want to chime in.

5          We do have a difference of opinion as to whether or not

6    these conversations regarding discovery will be most productive

7    with or without some sort of record of them.

8          And it has become very clear to the Plaintiffs is that we

9    need a record of it because what we have been experiencing is a

10   lot of shifting positions, a lot of extreme nonsense, and

11   really just, what unfortunately can only be described as sort

12   of getting in the way of progress from the other side.

13         That having been said, Ms. Wolfson and I have not wholly

14   delegated our responsibilities whatsoever.

15         We are very mindful of the Court's order back in early

16   October that we are supposed to speak to the other side in good

17   faith before filing any discovery disputes.

18         And we have certainly done that.  There is no question

19   that this is a large and complex case, and it requires a lot of

20   attorneys and some with some expertise, some experience on

21   certain issues from other cases in their career, and that we

22   rely on our very able and experienced lawyers, partners of

23   ours, to conduct some of these meet-and-confers, which

24   Ms. Wolfson and I attend and listen and participate in when

25   needed.

1      So, you know, I don't think Defense Counsel gets to choose
2  who Plaintiffs' Counsel is.  I don't see that in Your Honor's
3  order from October 6th.
4      But we are taking our responsibilities very seriously.
5  With respect to whether it should be a -- a court reporter's
6  transcription where we split the cost.  And we understood that
7  offer from them.
8      You know, our view is that Zoom can be recorded and is
9  free, so there is much less expense.  But beyond that, you
10 know, getting a court reporter scheduled is not going to be
11 conducive to being able to pick up the phone and talk when we
12 need to without having to go through a court reporter and the
13 scheduling.
14     And, frankly, we just observe, you know, that sort of
15 recommendation as just another one in a series of how to make
16 this more difficult on Plaintiffs to make progress; that we
17 have to get a court reporter scheduled.
18     We have to adhere to that.  We have to wait and pay for
19 transcripts.  We have to go back and look at transcripts.  That
20 is a cumbersome process.
21     What we want is some sort of accountability here, and we
22 think that accountability will be instilled if people know that
23 they are going to have to have potentially, you know, the Court
24 hear back or see back how it is that they are behaving during
25 the meet-and-confer process.

1    We are very happy to show that of ourselves.  And, you

2    know, I think that's really the most expedient way to do it is

3    to have it recorded that way and not throw up another roadblock

4    or obstacle to making progress by requiring a court reporter.

5        **THE COURT:**  All right.  Thank you.  Here is the, I

6    think, the area of agreement here.

7        First, an observation -- and I might have put it in an

8    order speaking to, but I will correct my grammar; and I intend

9    this to be speaking with.

10       The purpose of these discover conversations is to have a

11   conversation between the parties, not to just tell the other

12   party what your position is and then march off to file a

13   motion.

14       It's to communicate with the objective of stating your

15   positions and seeking compromise, common ground, where you can

16   find it.  And if you can't, then to understand where the

17   disagreement is.

18       And if you need to -- the Court's help then moving

19   forward, then come and get my help promptly so you can move

20   forward with the situation.

21       And it's -- so it is not just a touching base on here is

22   something to mark off that you have done before you come to

23   court.

24       The objective I intended was to give both parties,

25   bilaterally, an opportunity to work things out through a fair

1   process with the goals of efficiency and fairness to both.

2       And I'm not sure I have accomplished that yet, but we will

3   keep working at it.  That still is my goal.

4       And, you know, we could just scrap this whole process of

5   talking to each other and do something entirely different.

6       I'm still optimistic that through your collective

7   experiences and skills that you can work together and make this

8   process a fair and fruitful one.

9       So, my modification will be to grant your permission to

10  make a recording of these.  That's technologically easy to do

11  and is not expensive.

12      From a recording, either party could -- if you saw a means

13  to it, you could order a court reporter to make a transcript

14  from the recording.

15      I don't hope that's necessary.  It's not my intention to

16  do that.  I think that could be, you know, overkill to what is

17  accomplished.

18      But, you know, there is that possibility; that if either

19  party said, well, something so outrageous occurred during this

20  conversation that we must bring to the Court's attention, well,

21  upon notice to the other party that you are going to request a

22  transcript, you could go through that process.

23      But I hope that won't be necessary and that just the idea

24  that there could be a transcript would be sufficient for you to

25  make the communication process successful.

1      Because I assure you I have plenty of other things to do

2   than to watch Zoom recordings of your meet-and-confer process.

3   I'm sure they are intriguing, but you have given me enough work

4   to do and other cases I have enough work to do that I will be

5   happy if you can work things out without need for Zoom review.

6      So, that's the slight modification.  I'm not ordering a

7   court reporter because I think that will be a little inflexible

8   towards the possibility of informal working things out and

9   discussing them.  But a recording through means that you agree

10  to, I will order that.

11     All right.  And I was just thinking on your upcoming

12  reports, I did waive the report for this week and the one right

13  before Christmas that dated back to your last -- Mr. Marais I

14  think asking at an earlier conference if we might go to every

15  other week, so I granted that here a little bit later.

16     But I will still want an update mid-December to hope that

17  you are continuing down the path of discovery success.

18     All right.  Here is my next topic is -- moving down your

19  agenda -- Plaintiffs' compliance with my discovery order.

20     And I got an update from that yesterday from Plaintiffs'

21  Counsel with a summary of what has been produced through what

22  means.

23     I did not order and Google hasn't had a chance to respond

24  to that, to agree that that's sufficient or say that it is not

25  sufficient.

1    So, let me ask, Mr. Marais, one, if Google has had time to

2  do that evaluation; and if not, then we might pass this agenda

3  item.

4    And you tell me, you know, what time would be an

5  appropriate one for you to follow up on those items.

6    **MR. MARAIS:**  Your Honor, I'm happy to address them.

7  The declarations were just a couple of pages, and we certainly

8  have had time to review them.

9    We have obviously discussed at some length -- and the

10  Court is already aware of Google's concerns and frustrations of

11  how unwilling Plaintiffs have been to participate in discovery

12  in this case.

13    It seemed to us quite clear that Plaintiffs had failed to

14  comply with the Court's October 6th order in part because they

15  produced only 100 pages of documents in total between the four

16  Plaintiffs and in part because they were so reluctant to answer

17  any of our questions about what steps they have taken, what

18  devices they collected, what search terms they had run, and how

19  they reviewed that data.

20    Obviously the Court looked at that and ordered the

21  Plaintiffs to file declarations, and we have had a chance to

22  review those.

23    And that review has confirmed that Plaintiffs have taken

24  almost no steps to comply with the Court's order.

25    Here is what we know as we sit here today:  Number one,

1   the lawyers in this courtroom on this Zoom window weren't

2   involved in the process of reviewing and collecting that data

3   at all.

4        It was outsourced to other Counsel who I have never met,

5   who have never attended a hearing before this Court, who have

6   never participated in a meet-and-confer call.

7        Two, those lawyers then essentially outsourced the hard

8   work of looking for documents to the individual Plaintiffs.

9        To be clear, Plaintiffs' Counsel, it seems, have never

10  collected their clients' documents; have never collected their

11  clients' devices; haven't processed those documents; haven't

12  run any searches on them.

13       They handed a set of search terms -- and there are only

14  four search terms.  I will come to those in a second.  They

15  handed a very short set of search terms to Plaintiffs.  And

16  then although -- this is voided in the passive voice in their

17  declarations -- it was quite clear that Plaintiffs were left to

18  find responsive documents and get those back to Plaintiffs'

19  Counsel.

20       To the extent that Plaintiffs ran any searches, those

21  searches appear to have been run before the Court's order was

22  even issued.

23       So the two or three pages of declarations that were

24  submitted last night summarized steps that Plaintiffs' Counsel

25  and Plaintiffs took over the summer, long before we got to the

hearing.

And it is pretty well documented that that process was so inadequate that we had to move to compel on the 22 RFPs that are at issue here.

The search terms the Plaintiffs have proposed are limited only, it seems, to documents from Google.

So they are all qualified by "from Google," and then they have a set of very specific terms; privacy, location, and one or two others.

But the RFPs aren't limited to documents from Google.  And the Court can see this.  Plaintiffs submitted their own summary of those RFPs.

But take the very first one on the list, RFP 15.  Sort documents relating to your efforts -- Plaintiffs' efforts to prevent the collection or storage of your location information.

So any number of search terms that we could have come up with or that Plaintiffs could have come up with would have found those documents or would have led us in their direction.

But by limiting it to only documents the Plaintiffs have received from Google, they have cabined the universe of relevant materials in a way that I think is clearly improper.

RFP 20 -- and there are several like this -- but RFP 20 seeks documents related to Plaintiffs' claims that they go to, quote, great lengths to safeguard their own location information and the location information of their children.

1        Again, these are documents that would be in Plaintiffs'

2    possession, custody and control, and not documents that would

3    have come from Google.

4        So these four search terms that Plaintiffs ran over the

5    summer clearly aren't going to get at the documents that are

6    called for by these RFPs.

7        The result is that we have this tiny set of documents,

8    just a hundred pages worth and often no documents at all in

9    response to many of our RFPs.

10        And that effort, outsourced to other lawyers and then out

11    sourced to the Plaintiffs themselves, is clearly below the

12    level expected of litigants in this district.  It does not

13    comply with the Court's October 6th order.

14        And it is somewhat clear to me in hindsight why we had to

15    fight tooth and nail to get Plaintiffs' Counsel even to explain

16    what steps they have taken.

17        Now, Your Honor, all of this leads to what I think is a

18    topic further down in the agenda but this idea of a bilateral

19    exchange of search terms, you know, the Plaintiffs had

20    originally asked that Google be required by a date certain to

21    identify search terms and custodians.

22        That's not what the Court ordered.  The Court ordered the

23    parties to exchange sets of custodians and search terms.

24        And that process -- you know, which was critical and fair

25    and bilateral to begin with -- is all the more crucial now

given what we think is Plaintiffs clear failure to comply with the Court's discovery order.

So, that's where we are at.  I don't think the declarations absolve any of our concerns.

And I think what they do is underscore the fact that Plaintiffs' Counsel, frankly, have not done what they should have done over the summer.

They have not done what they should have done in response to the Court's order.  And it really is time for them to start participating in discovery rather than throwing up their hands and claiming they don't need to exchange search terms with us.

**THE COURT:**  All right.  So you have tied this in with the issue of the search terms which are -- that first level of exchange is due today -- and the question whether it is bilateral or as to the materials requested from Google only.

And, Mr. Marais, I'm going to go back to you as far as what do you want?  What do you want from here?

There has already been a Court order about this discovery.  And Plaintiffs' Counsel may very well say they have complied and there is nothing more to do.  I will hear from them.

From your perspective, what you are seeking -- you know, here is a couple of range of options.

If I said, all right, there is going to be a bilateral discussion of search terms -- and I might give you more time because the date was today -- go and have that bilateral

1   discussion and see if you can work out any gaps you have

2   identified in their production through, perhaps, more robust

3   search terms but also searching.

4        That's -- you know, that's kind of the meet-and-confer

5   path.

6        Another is to file a motion under Rule 37.  There has been

7   a court order.  If you are saying they didn't comply with the

8   court order, there is a next level of enforcement which comes

9   from Rule 37 that has a range of consequences for a failure to

10  violate a court order.

11       But you file your motion and the Plaintiffs can respond to

12  the motion, and we can do it -- you know, it is kind of the

13  more formal, less collaborative approach.  But which one do you

14  recommend?

15       **MR. MARAIS:**  Right.  Your Honor I think you're right.

16  I think Plaintiffs' Counsel will say that they have complied.

17       I think even the most cursory review of the

18  declarations -- which don't disclose devices; clearly don't

19  include search terms that anywhere broad enough -- even a

20  cursory review will put that claim to bed.

21       I think both of the options that Your Honor has outlined

22  makes sense.  I don't want to take a position yet on a Rule 37

23  motion.  Obviously our view here is that Plaintiffs have failed

24  to comply with a court order.

25       I think that what we ask, Your Honor, is that Plaintiffs

do the sort of appropriate review -- collection of data and
review through search terms that are expected of any litigant
in this district.

And so that is a couple stages.  First, they need to
collect their clients' devices, devices from which they claim
Google tracked their locations.  They need to collect and
process their clients' e-mail.

Then we need to meet and confer about search terms,
exactly as Plaintiffs want to do for Google's data; and then
Plaintiffs need to review and produce any responsive material
that results from that search term review.

So, I think that's what we need to do going forward.  I
see no reason why Plaintiffs can't get moving on this and get
on the same schedule as the rest of us are on.

They have constantly said that they expect their clients
will have less data.  That may well be true.  But they need to
collect it so we can do a review and find out.

**THE COURT:**  All right.  Thank you. Let me hear from
the Plaintiffs' side.

**MR. MAYA:**  Yes, Your Honor, thank you.  I will be
speaking to that, Theodore Maya for Plaintiffs.

And I really do feel you were just regaled with a number
of falsehoods that need to be corrected.

First of all, I am here.  I am on Zoom.  Mr. Marais has
met me.  My declaration was included in the submissions that

1   were made to the Court yesterday.

2        The Plaintiffs, none of the -- you know, a review of those

3   declarations will demonstrate the Plaintiffs were not just sent

4   on their merry way to find a few documents and send them off.

5   That's not what happened.

6        Plaintiffs -- their Counsel worked with them carefully,

7   diligently, repeatedly before and after the Court's order to

8   gather all responsive documents that the Plaintiffs could

9   locate and produce them.  And we have done that.

10        It is extremely ironic for Google to be sitting here

11   complaining that Plaintiffs have failed to gather data from,

12   you know, sources of data that they have; have failed to search

13   those sources of data with search terms when Google hasn't even

14   gathered custodial data in this case; has refused to negotiate

15   search terms that it might apply to that data once it's

16   gathered; has refused to discuss custodians; to identify any

17   custodians beyond the two people identified in their 2019

18   initial disclosures.

19        It's the height of irony.

20        With regards to the search terms and the arguments you

21   heard there, there are search terms that are described in

22   Ms. Gardener's declaration.  That's not the entirety of the

23   search that was conducted for responsive documents.

24        We, I think, tried to explain the entirety of that search.

25   Plaintiffs were instructed.  They worked with Counsel to look

1   for responsive documents.  And we have produced them.

2        There, likewise, are falsehoods and misrepresentations in

3   what Google put -- has said in the court in these filings.  I

4   mean, there are -- Plaintiffs have produced responsive

5   documents.

6        Google takes issue with the amount of those documents, the

7   quantity of those documents.  But it cannot say, as it does at

8   various points, that we haven't produced documents at all.  We

9   have.

10       The fact is, as the Court is no doubt aware, there is

11   always going to be a certain level of asymmetry when we are

12   talking about individuals on the one hand versus the world's

13   largest and richest tech company on the other.

14       Plaintiffs are not going to have the same quantity of

15   documents to review nor the same quantity of responsive data or

16   comparable quantity of responsive data to produce.  That being

17   said, we have done that.

18       At the end of the day, Your Honor, this is part of a war

19   of attrition that Google is waging.

20       It's -- I think it's evident there are not smoking guns

21   that Google is seeking or likely to get from Plaintiffs through

22   this war of attrition.  They are harassing Plaintiffs.

23       And no matter what we did, it will never be enough,

24   according to them.

25       They are now asking for forensic images of all phones,

just to preview what is coming.  And kicking it up a notch.

But, Your Honor, I'm ready to answer specific questions you may have.  I did just really want to respond to those particular search terms.

**THE COURT:**  All right.  Well, first smoking gun is not the discovery standard.  So neither party is limited to only seeking smoking guns.

And also you don't know what the other party has until you get it to.  So --

**MR. SOBOL:**  Your Honor, may I chime in for a moment since I have overseeing this process?

**THE COURT:**  Yeah.  Go ahead.

**MR. SOBOL:**  Thank you very much.

We are not withholding anything.  We are going out there and we are identifying everything that we see as responsive and we are producing it.  We have no interest in withholding documents.

You know, and we have not outsourced this.  What that declaration says very plainly is that we have engaged in a series of communications with the lawyers who represent the named Plaintiffs, some of which are the appointed Counsel here before you and some of which are other lawyers who filed other complaints who interface with their clients.

And what you see there is a very directed campaign of instructing them and giving them guidance and engaging in

1   feedback and dialogue with them.

2        And we are talking about individual persons.  The notion

3   that there is -- that somehow there needs to be an exact

4   symmetry between how you search for documents over at Google

5   and how you work with an individual client -- I'm sorry, but I

6   have been practicing too long.

7        You sit down with an individual client and you work with

8   them, you know, in looking for the documents that you know are

9   responsive and you talk to them.

10       And if it comes to a situation where you have got to

11   search something like your old e-mail, you use search terms.

12       But, you know, this notion that somehow we have got to --

13   that -- I'm not even sure what we would search for anymore at

14   this point, at least with respect to the RFPs that we are

15   looking for.

16       We are not withholding things.  It may be a very sparse

17   production, but I have to tell you that if you look at the

18   nature of the requests, the reason why we served -- the reason

19   why we submitted that charge is just to show those aren't kind

20   of documents that individuals really have.  They are not the

21   kinds of things that they have.

22       So, you know, I -- what we have said is:  Here is the

23   search terms we did use.  We have disclosed them now.  We have

24   already disclosed them to them.

25       They are due tomorrow from Google, but we have disclosed

1  them.  We said, if you think that some other search term will

2  be helpful in getting us other documents -- we don't think they

3  will be because we have looked for what is responsive -- then

4  tell us what that is.  And we will meet and confer on that.

5          **THE COURT:**  Mr. Sobol, what is it that is due

6  tomorrow?

7          **MR. SOBOL:**  The deadline for the exchange of search

8  terms actually isn't today, Your Honor.  It happens to be

9  tomorrow.  That's all.

10          **MR. MARAIS:**  I believe it is today.  It is

11  December 8th today.

12          **MR. SOBOL:**  It is December 8th today.

13          **MR. MARAIS:**  Your Honor --

14          **MR. SOBOL:**  You are right.

15          **MR. MARAIS:**  If I could just respond very briefly,

16  this is the problem we had.

17      Mr. Sobol, who respectfully has not been on these

18  meet-and-confer calls and did not participate in the process of

19  collecting these documents from Plaintiffs, is now telling us

20  and this Court, I have looked at the RFPs.  These are not the

21  kinds of documents that Plaintiffs have.

22      But I am confident that he doesn't know what devices have

23  been searched, who ran the searches, and what they have done to

24  look for responsive materials.

25      We should not have to take it on faith that these are not

1    the kinds of documents Plaintiffs have.  Plaintiffs need, like

2    any other litigants, to search for those documents and then

3    produce them when they find them.

4         Of course, there is an information asymmetry.  But on the

5    one hand, Google has produced 400,000 pages of material in this

6    case; and Plaintiffs have produced 100 pages between four of

7    them.

8         That is not the kind of asymmetry one expects.  That's the

9    kind of asymmetry that suggests that somebody is not doing what

10   they need to do to look for responsive documents.

11         **THE COURT:**  All right.  I get the asymmetry issue.

12   Let me be -- go back to Plaintiffs' side with some specifics.

13         This is the next agenda item.  So I'm coming back to --

14   this is all in the category of what Google is seeking.

15         The so-called take out data -- this is RFPs 42 through 47

16   and 4, 17, and 18, which they have asked the Court to order to

17   be produced within 7 and 14 days.

18         Is that something that is in process?  Do you object to

19   that -- those requests?  Tell me why I shouldn't grant the

20   request on those topics.

21         **MR. MAYA:**  Sure, Your Honor, I will speak to that

22   again.

23         We served written responses, November 15th.  Those

24   responses include -- there are some requests where we have

25   objected and some where we agreed to produce.

1    We said we would produce that take out data by

2    December 10th, which we are on track to do, Your Honor.

3    We met and conferred once on these requests, by the way,

4    after a letter from Mr. Marais that regarded only the prior set

5    of RFPs from Google, not this set.

6    Without meeting and conferring or discussing it with the

7    discovery leads, they have now brought this one to the Court,

8    we believe, totally improperly.

9    We have said we will give it to you within 25 days of that

10   written request.  We are gathering them.  We are processing

11   them.  We are on track to do that.  We are going to do that.

12       **THE COURT:**  All right.  So when you say you are going

13   to do, you are going to do that by December 10th?

14       **MR. MAYA:**  Yeah, and --

15       **THE COURT:**  A later deadline is not necessary?

16       **MR. MAYA:**  No, Your Honor.  I mean, I would prefer not

17   to have a court ordered deadline of Friday, but that's when we

18   said we would give it to them; and that's what we are doing.

19   Your Honor, we never said that we would produce

20   everything.  We have described to them what we will produce.

21   We are producing various categories of take out data.

22   And, by the way, Your Honor, this is all data that comes

23   from Google.  It's Google data.

24       **THE COURT:**  All right.  So is there some -- since I'm

25   hearing some equivocation as far as when you are producing

 1   things.  It is by December 10th.  Is there something you are

 2   producing later in response?

 3          **MR. MAYA:**  No.  We are on track at this time to

 4   produce on Friday.

 5          **THE COURT:**  All right.  So, let me start ordering some

 6   things.

 7      So I hear you and I grant your request.  So I expect that

 8   you will make the production of responsive non-privilege

 9   documents by Friday, December 10th.

10      And if Google has -- in its assessment of what is produced

11   has concerns about what has been produced, you are going to

12   meet and confer about that after December 10th.

13      And you can report to me in your next status report what

14   the status is.

15      If Google is still seeking compelled production of

16   materials that are missing or a search that the responses are

17   incomplete in some way, you can bring it to my attention in

18   your next report.

19          **MR. MARAIS:**  Your Honor, does that include RFPs 42

20   through 47, which we have highlighted in our brief?

21          **THE COURT:**  Yes.

22          **MR. MARAIS:**  Okay.  Thank you.

23          **THE COURT:**  That is as to 42 through 47, 4, 17, and

24   18.

25          **MR. SOBOL:**  Do I understand, Your Honor, that we still

 1 preserve our objections should we have valid objections to

 2 those?

 3          **THE COURT:**  Yes.  I'm saying --

 4          **MR. SOBOL:**  Thank you, Your Honor.

 5          **THE COURT:**  I'm saying anything you have agreed to

 6 produce.

 7      As I understood Mr. Maya, there is various categories that

 8 you have agreed to produce and you are going to produce.  Just

 9 do what you said.  That's all.

10      And if you have an objection that Google disagrees with,

11 well, then you can confer and try to work out the area of

12 disagreement and present that to me in your next joint letter

13 brief.

14          **MR. MARAIS:**  Your Honor, I think there is one of those

15 that we teed up with respect to RFP 47.

16      Mr. Maya has faulted me for failing to meet with the

17 discovery leads.  But what he means by that is that neither

18 Mr. Sobol nor Ms. Wolfson joined our call.

19      But I did meet and confer with Mr. Maya and Ms. Gardener

20 for an hour about these requests.  RFP 47 is a critical

21 request.

22      It asks Plaintiffs to simply download and produce data

23 from a tab called My Activity.  As the Court knows, the

24 Plaintiffs have alleged that Google tracked them via their web

25 and app activity.  That is stored in this corner of Google take

1  out called My Activity.  And all we have asked Plaintiffs to do
2  is download and produce that material.
3       Now, as Mr. Maya notes, this is all material that
4  Plaintiffs have previously shared with Google.  We were ready
5  and willing to produce it months ago, but we asked Plaintiffs
6  to give us a consent stipulation; making clear that they, in
7  fact, have control of the relevant e-mail addresses and that
8  the individuals consented to us gathering the data and
9  producing it.
10      Those discussions fell apart.  So, the short of it is that
11 this data is readily accessible to Plaintiffs.  It will take a
12 couple minutes for them to access and download it.
13      And I really see no reason why it shouldn't be produced by
14 Friday or certainly within the next seven days given how
15 central it is to the allegations in this case.
16          THE COURT:  All right.  Well, thank you for raising
17 that.  I'm going to put that -- I'm not going to change my
18 order.
19      If they are objecting to that, that gives you one -- amid
20 many other things -- to try to talk to each other about and to
21 work out.
22      There are some things, which we haven't gotten to yet,
23 where they have requested things from Google.  And it may be
24 that the timing of that -- that you work together to figure out
25 the sequence of things.

1          For right now, as for this Friday, I am ordering them to

2     produce the things they have not objected to, the things which

3     they have agreed to produce.  And then you will confer further.

4          I'm not saying you lose on that issue.  I'm just saying I

5     want to see what gets done this week, and we will talk about

6     that, if necessary, at the next discussion.

7          **MR. MARAIS:**  Thank you, Your Honor.

8          **THE COURT:**  All right.  The next bullet item here

9     is -- are the search terms bilateral.  The answer is yes.

10         So you are talking in every direction about search terms.

11    Of course, that does not mean that it is symmetric; that it is

12    the same search terms with the same people with the same

13    expected number of documents.  No, that's not the case.

14         But as far as who is talking to whom about what, you are

15    talking to each other about the things that Plaintiff is

16    seeking from Google; and you are talking about the things that

17    Google is seeking from Plaintiffs.

18         You have already begun that process in various different

19    ways with various different requests.  But to the extent there

20    was any ambiguity in the Court's orders about which terms you

21    are discussing, the answer is it is all of them.

22         So you should be talking about all of them with each other

23    and trying to work them out because that would be the most

24    effective way for you to know what is happening and to work out

25    any compromises.

```
 1        All right.  Now, moving onto the Plaintiffs' request.

 2             MR. BERKOWITZ:  I'm sorry, Your Honor, may I ask just

 3   one --

 4             THE COURT:  Go ahead, Mr. Berkowitz.

 5             MR. BERKOWITZ:  -- clarifying question?  Am I correct

 6   that the Court's -- in terms of ordering the Plaintiffs to

 7   produce the documents they agreed to produce, does that include

 8   RFPs 4, 17 and 18, which they agreed to produce in May?

 9             THE COURT:  Yes.

10             MR. BERKOWITZ:  Thank you, Your Honor.

11             THE COURT:  Now, back to Plaintiffs' Interrogatory

12   Requests 4, 5, and 7, which Google has filed a document partly

13   seeking to seal it as to those responses.

14        This has been raised in a number of the discovery status

15   reports, so I want to see if I can get this nailed down.

16        First, does Plaintiffs' Counsel agree that what Google is

17   filed is all of the current responses?  Is anything missing

18   from the record?

19             MR. LEVIN-GESUNDHEIT:  No.

20             THE COURT:  All right.  What is missing from the

21   record?

22             MR. LEVIN-GESUNDHEIT:  No, nothing is missing from the

23   record.

24             THE COURT:  Gotcha.  All right.  It was a double

25   negative.  You do agree --
```

1      **MR. LEVIN-GESUNDHEIT:**  Understood.

2      **THE COURT:**  Very good.  And do you want to then tell

3  me -- so, good, I have got the record before me.  Highlight for

4  me -- and you have got it in some of your briefs -- but

5  highlight for me what the most significant deficiencies are.

6  And part two, just to compound things, tell me what I can do

7  about it.  Tell me what I should order.

8      **MR. LEVIN-GESUNDHEIT:**  Thank you, Your Honor.

9     I will start with Interrogatories 4 and 5.  These

10  interrogatories asks Google how it stores location information

11  and how it uses that information.

12     I know you are familiar because we briefed this back in

13  June, and the Court agreed that what Plaintiffs sought was

14  relevant and proportional and ordered Google to respond using

15  Plaintiffs' definition of location information.

16     Google didn't move for reconsideration.  It served amended

17  responses.  And what is clear -- and I think we highlighted

18  this in our status report -- is that Google answered these

19  interrogatories by way of example.

20     It provided what appear to be curated examples.  And in

21  order for these interrogatories to be useful, the answers have

22  to be complete.  They can't be cherry picking.  There can't be

23  curation.

24     And that's -- that's simply what this is about.  We need

25  full answers identifying all the ways by which Google collected

and stored location information and how it used it.  That's 4 and 5.  It is really that simple.

I can answer further questions, but I can also move onto 7.

**THE COURT:**  Why don't you tell me about 7.

**MR. LEVIN-GESUNDHEIT:**  Okay.  Interrogatory Number 7 I think is even simpler.

As propounded -- I know you have seen the interrogatory -- it sought identification by year and by name, job title, current employer, to the extent known, those Google employees with supervisory responsibilities for databases containing location information stored when any user's location history setting is disabled which is exactly what this case is about.

In our interrogatory, which we served back in August, almost four months ago now, we put a chart showing an exemplary response, what it could look like with one column being the name of a database and the other column being a list of individuals and their job titles, like engineering manager, for example.

But, of course, Plaintiff doesn't know who these people are.  We were just providing an example of what this could look like to make it real.

Google did not provide a substantive response.  It hasn't provided one since then.

We have met and conferred several times, long phone calls

1   with lots of questions.

2       Google expressed concern that supervisor responsibility

3   was too broad of a term.  Told us that it could encompass even

4   janitors responsible for maintaining the floor of a data center

5   and making sure it is clean, something like that.

6       We explained that what we are seeking are those

7   individuals most knowledgeable about how location information

8   flows into and out of the databases; how data flows.

9       Google responded that it couldn't understand what the term

10  "data flow" means.

11      During our most recent meet-and-confer on the topic,

12  Google continued down, what I view as sort of an absurdist path

13  or argumentation that I think is obstructionist, telling us

14  that well, does data flow mean -- which wasn't facetious --

15  does it mean the flow of electrical signals through wires?

16      And obviously not.  This is about how location information

17  moves from one database to another as Google uses it.

18      This morning I actually searched through Google's Arizona

19  production, which they provided to Plaintiffs just before

20  Thanksgiving and then another tranche afterwards.  There was

21  something missing, but we have that now.  I think it's

22  complete -- and I found more than 300 documents that hit on the

23  term "data flow" suggesting it is very clear to at least people

24  inside of Google what it means.

25      I printed it out and highlighted where it is.  I could

1    share on the screen, but I imagine you don't want to get into

2    that level of the weeds.

3        Anyway, we have asked Google to answer the interrogatory

4    based on its understanding of the terms.  Then we can meet and

5    confer from there.

6        And I would ask that you consider ordering Google to do

7    that; to identify those individuals most knowledgeable from

8    2014 to present about how data flows between the various

9    databases storing location information.  And Plaintiffs can

10   then have an actual substantive response to work with.

11       **THE COURT:**  All right.  Thank you.  Let me get

12   Google's response on -- if there is anything more that can be

13   done to satisfy Plaintiffs' interests?

14       **MR. GORMAN:**  Excuse me.  I was on mute.  Yes,

15   Your Honor.

16       So on Interrogatories 4 and 5, to be clear.  Those

17   responses are complete.

18       We conducted a diligent investigation.  We invested over

19   50 hours of attorney time.  We invested significantly more

20   hours of in-house employee time.

21       It was a diligent investigation.  The responses are

22   complete.  We did not cherrypick or exclude information to hide

23   what was going on.

24       What we did was reserve our rights, as every litigant

25   does, to amend our responses if we discover additional facts

down the road.

We would supplement, which is proper under the rules.  So that's what we have done.

Plaintiffs now have those detailed responses.  You have a copy as well.

And they also have over 340,000 pages of electronically stored information.  So we think it's time to move on from ROGs 4 and 5.

**THE COURT:**  And how about -- go ahead, 7.

**MR. GORMAN:**  Sure.  On Interrogatory Number 7, as originally drafted, it asked for a list of every supervisory employee who had any responsibility having to do with a variety of back-end technologies that are not exclusively used for location information and not even used most of the time for location information.

And so instead of actually focusing on the alleged collection of location information, which is what the issue is in this case, we are off -- off trying to find the database engineering manager or the network manager who services storage infrastructure that is used by hundreds of teams at Google.

Now, that engineering manager, that product manager, is not going to know anything about the data at issue or the collection practices or the usage practices or the policies that are at issue.

So, what we are going to end up with is a list of every

1   employee who has ever touched these incredibly complex back-end

2   technologies but doesn't actually know anything relevant.

3        And that's what we told the Plaintiffs, and we sought

4   clarification on what they are interested in.

5        And, as you heard, there is this resuscitation of the

6   phrase "data flow."

7        And so we asked, are -- is what you are asking about how

8   it moves non-electrical signals through a wire, but are you

9   asking how data moves from a phone to the firewalls through

10  some sort of edge server and then gets processed?  Is that what

11  you are looking for?  And they wouldn't tell us.

12       We said, are you looking for something else, like some

13  sort of internal processing?  And they wouldn't tell us.

14       We have sent written questions that have gone unanswered

15  for two months.

16       We have asked internally if our employees can make better

17  sense of this than the Plaintiffs have been able to do or that

18  we have been able to do.  And we have had no luck.

19       So we have been trying.  We have been working.  But we

20  just haven't gotten the information we need to narrow this to

21  relevant information.

22            **MR. LEVIN-GESUNDHEIT:**  May I respond?

23            **THE COURT:**  You may.

24            **MR. LEVIN-GESUNDHEIT:**  What I would say to

25  Mr. Gorman's argument -- I would start with Interrogatory

1   Number 7 first -- and that is if there is some way that Google

2   believes our request is too broad, I think what it should do is

3   provide the response that it thinks is appropriate and let us

4   meet and confer from there rather than withhold its response

5   entirely.

6        To be clear, we are not seeking a list of every employee

7   who has touched on these various databases.

8        We are seeking a list of the employees most knowledgeable

9   about how location data flows between the databases.  And this

10  is not an unclear term.

11       I'm looking at a document that says:  This location data

12  flows to -- and then I'm not going to say the name of the

13  database, Google might think that it is confidential -- but

14  it's a term that is commonly used in technology.  I don't know

15  what the confusion here is.

16       And it's been four months.  I think Google should provide

17  a response that identifies those people most knowledgeable.

18  And we can go from there.

19       With respect to --

20       **MR. GORMAN:**  If I can just respond very quickly,

21  Your Honor.  Several of the --

22       **THE COURT:**  No.  Mr. Gorman, hold on.

23       I want to finish this topic and let me let

24  Mr. Levin-Gesundheit finish.  Go ahead.

25       **MR. LEVIN-GESUNDHEIT:**  Thank you.

      With respect to Interrogatories 4 and 5, we have been asking Google for months whether it identified all of the ways that it stored and used location information.  It has not been willing to answer.

      So, I appreciate hearing now that it has conducted a diligent search; but that's not what we have heard in the meet-and-confer process; and that's not what is stated in its verified interrogatory responses.

            **THE COURT:**  All right.  Thank you.  Mr. Gorman.

            **MR. GORMAN:**  I mean, our position has been clear. It's in writing.  It is in, at this point, I think four or five of these discovery updates.  So I won't belabor it.

      We believe our responses were complete.  We answered them to the best of our ability based on our understanding of the interrogatories as written and the information we were able to gather in our investigation.

      As to Interrogatory 7, I just want to point out that the interrogatory asks about technologies that are not databases for location information.

      And we repeatedly pressed that saying these are, like, storage infrastructure.  It is like saying:  I want to know about what is saved to your law firm's server, so let's go interview the database engineer at Amazon who services the cluster upon which your document management sits, upon which your server sits.

1      It is so attenuated from the actual practices at issue in

2  this case, which is a privacy case, not a technology case, not

3  a trade secret case, not a patent case.

4      So the flows between different parts of Google's

5  infrastructure are really not relevant.

6          **MR. LEVIN-GESUNDHEIT:**  May I make one last statement

7  on that?

8          **THE COURT:**  You may.

9          **MR. LEVIN-GESUNDHEIT:**  That is the way the

10  interrogatory was phrased it listed the names of databases or

11  data stores -- I'm honestly not sure what the differences is

12  between them.  They are terms Google has used intermittently --

13  that were named in Google's interrogatory responses in which it

14  was explaining how it collected and used location information,

15  incomplete as far as I can tell.

16      And so I don't know how Mr. Gorman can argue that those

17  databases aren't relevant.

18      And then to be clear, we have made clear that we are

19  asking for people who are knowledgeable about how location data

20  has flowed between these databases.

21      So I think it is a bit of a red herring to say that we

22  just want people who know about how the C drive on your

23  computer works.  This is not what this is about.

24          **THE COURT:**  All right.  I will have a ruling on ROGs

25  4, 5, and 7 to move the process ahead.  Thank you.

1          Next topic is Plaintiffs' request for production set 3.

2     And their criticism in the letter brief was that Google has

3     been a little squishy about which ones it is going to produce

4     and which one it's not going to produce.  And, perhaps, the

5     meet-and-confer process is not complete yet.

6          So let me start on the Google side.  Procedurally, where

7     are you in your response to RFP 3?

8          **MR. GORMAN:**  The RFP set 3 we have agreed to produce

9     in response to several categories.  There are, I believe

10    roughly 20 RFPs in which we ask to meet and confer.

11         We asked to meet and confer in July.  For whatever reason,

12    it has been very difficult to get opposing counsel on the phone

13    and to actually, like, methodically work through the questions

14    that we have; trying to understand terms we think are overbroad

15    or terms we can't understand exactly what they are looking for.

16         So, we have been asking for clarification.  Unfortunately,

17    it has been a slow process.  But we have made ourselves

18    available.  We continue to make ourselves available.  And we

19    would like to get through these RFPs as quickly as possible

20    obviously because we are about to head into this search term

21    negotiation process.

22         So we would like that meet-and-confer process to play out.

23    I don't really understand the relief that was requested in this

24    case -- in this latest update which is to order us to answer

25    whether we are going to produce documents in response to RFPs

1  that on their face appear irrelevant or overbroad or are just

2  confusing.

3       And we want to make sure that we gather the information

4  that they are --

5            **THE COURT:**  Well, I understand the request which is

6  the day -- I don't understand if you are objecting or not

7  objecting.

8       And if you are not objecting, then they want responsive

9  documents.  If you are objecting, they want to know what the

10 objection is.

11      As to those you have agreed to produce, is there an agreed

12 upon date when you will produce them?

13           **MR. GORMAN:**  I don't think there is an agreed upon

14 date, no.

15           **MR. BERKOWITZ:**  I'm sorry, Your Honor.  I just want to

16 make sure one thing is perfectly clear.

17      We have served objection to these interrogatories -- I'm

18 sorry -- to these RFPs.  I don't believe Plaintiffs' Counsel is

19 taking any issue with those particular objections here.

20      We have offered to meet and confer with them.  And I think

21 what Mr. Gorman is saying is that we haven't had an opportunity

22 to do that yet because Plaintiffs' Counsel haven't been

23 available.

24      We are certainly -- we do have objections.  We are not

25 waiving those objections in case that was unclear.

1          **THE COURT:**  All right.  Let me hear from Plaintiffs'

2   Counsel as to what they would like me to order.

3          **MR. MAYA:**  Thank you, Your Honor.

4      We have met and conferred on these RFPs.  It has been a

5   time-consuming process.  We have not gotten through all of the

6   RFPs, and the process has been made that much harder and that

7   much more time consuming by Google's approach, which has been

8   to, by and large, say we are we willing to meet and confer.

9          Then we meet and confer.  They say, well -- much as they

10  have with respect to Interrogatory 7, Your Honor, in that

11  discussion -- this is impossibly broad.  You are asking for the

12  documents concerning the flow of location information between

13  one chip and another chip within the user's phone.

14     We say, well, that's not actually what we are looking for.

15  We offer -- we try to come up with compromised languages --

16  language that might work.

17     And Google says, no, it is impossibly broad.  And at the

18  end of the day, all this meeting and conferring ends to no, we

19  won't produce.

20     But it would be a lot -- I mean, they really have to tell

21  us whether they are going to produce it or not.

22     This response is not acceptable, and this is the sort of

23  problem that it causes; and we are very much experiencing that

24  problem now, Your Honor.

25     So, yeah, we would like them to just say clearly whether

1   or not they are going to produce documents with respect to

2   these RFPs.

3        If they think that they are impossibly vague and

4   overbroad, how do they -- and can they produce documents with

5   respect to some plain language understanding that they can

6   enunciate to us or is the answer just no?

7             THE COURT:  All right.

8             OTHER ATTORNEY:  We.

9             MR. MAYA:  Are entitled to know that.

10            THE COURT:  Here is the meet-and-confer process -- we

11  will go from here -- by a week from today, by the 15th, Google

12  will specify -- maybe this is just a clarification of what you

13  have already provided -- where you are objecting and where you

14  are not objecting.

15       And if you are agreeing to produce documents, I want you

16  to say by when you will produce the documents.

17       Again, you might have already done that.  But to be clear,

18  by next Wednesday, Plaintiffs' Counsel should have an

19  expectation for when they will be getting materials and what

20  they are getting.  And if you are objecting, what the objection

21  is.

22       Meet and confer about that, you know, through the 15th;

23  but by the 15th, Google is the one who has to be more specific

24  about it.

25       And if there is any remaining dispute about that -- and

1   there certainly could be -- Plaintiffs' Counsel may say, no,

2   you are not providing us responsive information; we want

3   more -- all right; put that in your next update on the 16th,

4   what it is that is still deficient or tell me that this topic

5   is satisfied.

6          MR. MAYA:  Thank you, Your Honor.

7       There is something that I feel like I need to go back and

8   address.  This is with regards to Plaintiffs' discovery

9   responses.  I just don't want that to get away from us, when

10  you are ready.

11         THE COURT:  All right.  Is there anything more on

12  Plaintiffs' discovery requests that I have not covered that you

13  want to bring to my attention?

14         MR. MAYA:  I think that covers it.  Thank you,

15  Your Honor.

16         THE COURT:  All right.  Now, we will go back to your

17  other item.  Go ahead.

18         MR. MAYA:  Well, I think two agenda items got

19  conflated there at the end.

20      One is our responses to Google's second set of RFPs, which

21  include RFPs 42 through 47 seeking take out data.  That is the

22  data we are gathering and preparing to produce on Friday.

23      We are not gathering and preparing to produce documents in

24  response to RFPs, 4, 17 and 18, which come from Google's first

25  set and is a separate agenda item.

1        And if I misspoke on that or it was unclear, I want to

2   correct the record there.

3        Those RFPs were not part of Google's prior motion.  This

4   is an instance where I was saying we have produced responsive

5   documents.

6        Google just seems convinced that it is not enough and that

7   there should be more and that Plaintiffs must have receipts and

8   terms of service that they haven't produced beyond those which

9   they have produced.

10        **THE COURT:**  All right.  So you are saying as to 4, 17

11   and 18, you don't have anymore documents coming.  You are

12   resting on your objections.

13        **MR. MAYA:**  No.  We have produced documents.  Not

14   resting on our objections.  Resting on our compliance to date.

15        **THE COURT:**  Nothing more to come, I should say.  No

16   more documents coming.

17        **MR. MAYA:**  Right, Your Honor.  And I think this would

18   be subsumed in the search term discussion that we have had.

19        And if Google thinks that additional search terms are

20   necessary to locate additional documents in response to these

21   RFPs, we will discuss that.

22        **THE COURT:**  All right.  Go ahead, Mr. Marais.

23        **MR. MARAIS:**  Your Honor, this is teed up in our

24   motion, which is why the Court flagged it as an agenda item.

25   It is at page 3.  It is item 4 in the motion.

1    These are three requests that call for Plaintiffs to

2  produce documents that they received at the time or in

3  connection with purchases of their mobile devices, which,

4  again, are at the center of the case.

5    Plaintiffs agreed to produce these documents in May.  So,

6  I'm not sure what the dispute is.

7    Mr. Maya says they produced documents.  We have two

8  documents from one of the four Plaintiffs that relate to the

9  purchase of one of her devices.

10    When we met and conferred last week, I asked whether

11  Plaintiffs' Counsel had explored paper documents that might not

12  exist in e-mails.  They didn't have an answer to that question.

13    It is clear from the search terms that they filed last

14  night that they haven't searched for these kinds of documents.

15    So, again, I find it hard to believe that Mr. Maya can

16  stand here and say Plaintiffs have complied when they haven't

17  run any searches and they don't know whether their clients have

18  actually looked for physical documents or not.

19    So, if Mr. Maya's position is they have already produced

20  everything, then I would ask that the Court order them to

21  produce all documents responsive to RFPs 4, 17 and 18, within

22  seven days.

23    If Mr. Maya really believes they have already complied, no

24  skin off of his nose.  And obviously we can revisit this as we

25  develop search terms for Plaintiffs' data.

 1          **THE COURT:**  Well, I understand that he's saying they

 2   have complied, but I'm going to move this in the same pile of

 3   things that you are going to continue to confer about.

 4          If your position is that their search has not been

 5   diligent enough, you are going to be talking about that; and

 6   maybe you will persuade them they need to do more or maybe you

 7   won't.  Maybe they will say, we don't think anything more is

 8   necessary.  Our production is complete.

 9          I understand -- I amend your response, Mr. Maya, that as

10   to those requests, your -- you don't have something in your

11   outbox waiting to be produced later this week.  You are only

12   referring to 42 through 47.

13          **MR. MAYA:**  That's right, Your Honor.

14          **MR. BERKOWITZ:**  I'm sorry, Your Honor.  If I could

15   just add one thing, this goes to just the adequacy of their

16   search.

17          I mean, we have got -- we have got Plaintiffs who have got

18   iPhones, for example.  Their search terms don't include terms

19   like Apple, iPhone, IOS, etc.

20          So, it is no wonder that we don't have any of the

21   documents related to those devices.

22          **THE COURT:**  All right.  I got that issue.

23          All right.  I think that's enough for today.  I will do a

24   summary order of some things we determined.

25          A lot of things are left for you to keep working on in the

1  next week and months.

2      So, back to where we started, I encourage you to use the

3  meet-and-confer process to your advantage to work things out,

4  to resolve the disputes, narrow them, focus, sharpen them.

5      So that we can use the time to resolve the things you

6  can't resolve because I think many of these things you can work

7  through successfully together.

8      All right.  Thank you.  Happy holidays.  Seasons

9  greetings.  And I will move on to the other case.  Thank you,

10  Your Honor.

11         **MR. SOBOL:**  Thank you, Your Honor.

12         **MR. MARAIS:**  Thank you, Your Honor.

13         **MS. WOLFSON:**  Thank you, Your Honor.  Happy Holidays.

14              (Proceedings adjourned at 1:59 p.m.)

15                     ---oOo---

1

2                    **CERTIFICATE OF REPORTER**

3          I certify that the foregoing is a true and correct

4    transcript, to the best of my ability, of the official

5    electronic sound recording provided to me by the U.S. District

6    Court, Northern District of California, of the proceedings

7    taken on the date and time previously stated in the

8    above-entitled matter.

9          I further certify that I am neither counsel for, related

10   to, nor employed by any of the parties to the action in which

11   this proceeding was taken; and, further, that I am not

12   financially nor otherwise interested in the outcome of the

13   action.

14

15   DATE:   Tuesday, December 14, 2021

16

17

18

19   _____

20          Marla F. Knox, RPR, CRR, RMR
            United States Court Reporter

21

22

23

24

25