1 | KEKER, VAN NEST & PETERS LLP
BENJAMIN BERKOWITZ - # 244441
bberkowitz@keker.com
THOMAS E. GORMAN - # 279409
tgorman@keker.com
NICHOLAS D. MARAIS - # 277846
nmarais@keker.com
CHRISTOPHER S. SUN - # 308945
csun@keker.com
CHRISTINA LEE - # 314339
clee@keker.com
GREGORY WASHINGTON - # 318796
gwashington@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:   415 391 5400
Facsimile:   415 397 7188

Attorneys for Defendant GOOGLE LLC

AHDOOT & WOLFSON, PC
Tina Wolfson (SBN 174806)
*twolfson@ahdootwolfson.com*
Theodore Maya (SBN 223242)
*tmaya@ahdootwolfson.com*
Bradley K. King (SBN 274399)
*bking@ahdootwolfson.com*
Christopher Stiner (SBN 276033)
*cstiner@ahdootwolfson.com*
Rachel Johnson (SBN 331351)
*rjohnson@ahdootwolfson.com*
2600 West Olive Avenue, Suite 500
Burbank, California 91505
Tel: (310) 474-9111
Fax: (310) 474-8585

Interim Co-Lead Class Counsel

LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
Michael W. Sobol (SBN 194857)
msobol@lchb.com
Melissa Gardner (SBN 289096)
mgardner@lchb.com
Michael Levin-Gesundheit (SBN 292930)
mlevin@lchb.com
John D. Maher (SBN 316157)
jmaher@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: 415.956.1000
Facsimile: 415.956.1008

LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
Nicholas Diamand (*pro hac vice*)
250 Hudson Street, 8th Floor
New York, NY 10013
Telephone: 212.355.9500
Facsimile: 212.355.9592

Interim Co-Lead Class Counsel

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE: GOOGLE LOCATION HISTORY LITIGATION | Case No. 5:18-cv-05062-EJD-NC<br><br>**BI-WEEKLY STATUS REPORT**<br><br>Dept:     Courtroom 5 - 4th Floor<br>Judge:   Hon. Nathanael M. Cousins<br><br>Date Filed: November 2, 2018 |

The parties submit the following joint status report.

## GOOGLE'S STATEMENT

***Interrogatories No. 1–2.***  It has been *one year* since Google served these interrogatories, which ask only that Plaintiffs identify (1) the mobile devices at issue in this lawsuit and (2) Plaintiffs' Google accounts or Gmail addresses. Google requests that Plaintiffs be ordered to confirm—in a verified response—that they have now identified all relevant devices and accounts.

***Interrogatory No. 3.***  After the January 12 conference, Plaintiffs acknowledged the deficiencies in their prior responses and, yesterday, they served *another* supplemental response. Google is reviewing those revisions and will confer further with Plaintiffs' counsel if necessary.

***Plaintiffs' custodial data.***  Plaintiffs have confirmed that they have collected and processed much, but not all, of their data for electronic searching.

*First*, Plaintiffs' counsel told Google this week that they had ***not*** collected data from multiple email addresses, either because (a) Plaintiffs say they are unable to access those accounts or (b) the accounts are used by Plaintiffs' children. Because Plaintiffs only identified these gaps *this week*, the parties have not yet had an opportunity to confer properly. Among other things, Google needs to understand how Plaintiffs contend they lost access to their accounts and whether Plaintiffs still contend that their children's accounts and devices are at issue in this litigation. *See, e.g.*, Dkt. 164-1 (Am. Compl.) at ¶15; *id.* at ¶140 (defining a purported "Parent Subclass").

*Second*, Plaintiffs revealed this week they still have not imaged or processed their *current* mobile devices. Plaintiffs were previously ordered to complete processing of custodial data by January 18, *see* Dkt. 226. Google requests that they be directed to comply with the Court's Order.

***Google Custodians.***  Plaintiffs refuse to explain what custodial data they need that Google hasn't already provided or agreed to provide. In November, Google produced more than ***300,000*** pages of documents collected from ***19*** custodians in the *Arizona* litigation—documents Plaintiffs argued would streamline discovery in this matter. In addition, Google has also identified four custodians that it determined are most likely to have documents relevant to Plaintiffs' claims. As Plaintiffs' counsel have acknowledged, "[i]t is Google, not Plaintiffs, that is best situated to know which employees are most likely to possess relevant documents."  For months, Google told

1   Plaintiffs repeatedly that, if they believe Google's proposal is insufficient, they should explain
2   what *additional* information is missing that would be relevant and proportional.

3   Plaintiffs rejected Google's invitation. Instead, Plaintiffs now demand that Google search
4   and review data from *35* custodians—but refuse to explain why the information Google has
5   agreed to provide is insufficient or what else they need. Wastefully, Plaintiffs' proposed list of *35*
6   custodians would include (1) re-searching and re-reviewing the same *Arizona* custodians' data,
7   for no reason other than that they were *Arizona* custodians, and (2) collecting and searching data
8   for 17 *additional* custodians, many of whom Plaintiffs first identified just two weeks ago. During
9   meet-and-confer, Plaintiffs' counsel have been unable or unwilling to articulate any reasonable
10  basis for including these additional names. In fact, for many names on their list, Plaintiffs'
11  counsel conceded that they did "[n]ot necessarily" have any reason to think the custodians they
12  had listed "ha[d] anything to do with … the collection of location information."

13  Two days ago, after months of negotiations, Plaintiffs finally provided a cursory
14  explanation for some of their proposed custodians. But even those eleventh-hour explanations
15  confirm that Plaintiffs are targeting individuals who have little, if any, relevant information, and
16  still fail to identify any information that would not already be captured by other sources Google
17  has already agreed to search. For example, Plaintiffs now propose designating *multiple* Google
18  employees because they are knowledgeable about data that Google collects when a user's
19  "Location History" setting is on. But why Plaintiffs need any custodians on this topic is entirely
20  unclear because Plaintiffs have defined their class as only those individuals who have this feature
21  *disabled*. *See, e.g.*, Am. Compl. ¶ 140. Even so, Google has already identified custodians
22  (including knowledgeable project managers) who will have information related to that feature.
23  Plaintiffs simply refuse to explain what additional data they are seeking or why they believe
24  multiple additional custodians on a non-accused feature are proportional to the needs of the case.

25  Google has already produced custodial data from 19 custodians and has agreed to run new
26  searches on 4 custodians. Google submits that its proposal is reasonable and proportional to the
27  needs of the case.  Plaintiffs' months-long refusal to identify *any* additional information they are
28  seeking or explain why Google's proposal fails to adequately address their needs speaks for itself.

*Search terms.* With respect to *Plaintiffs*' data, Google sent proposed search terms to Plaintiffs on December 8. Plaintiffs did not object to Google's proposed terms, or provide alternative terms, until a few days ago. The parties first discussed those new proposals yesterday and the issue is not yet ripe due to Plaintiffs' delay. Plaintiffs' request below that the Court order the use Plaintiffs' newly revised terms—which exclude terms addressing requests for which Plaintiffs have already been ordered to produce documents—is yet another attempt by Plaintiffs to avoid complying with the Court's discovery orders. With respect to *Google*'s data, there is no doubt Plaintiffs' terms are vastly overbroad: across Google's proposed 4 custodians, they would return more than *550,000* documents, which would require more than *1,500 person-days* to review. Extrapolating to Plaintiffs' proposed 35 custodians, those terms could well return *5 million* documents, which would take even a 10-person review team more than *five years* to review. (Indeed, Google estimates that merely collecting and processing data from 35 custodians would take more than a month.) If the Court orders the parties to proceed with Google's proposed 4 custodians, or otherwise sets a reasonable limit to the number of custodians (*e.g.*, 5 custodians beyond the already-produced *Arizona* data), Google submits this would help the parties refine terms to return a number of documents proportionate to the needs of this case.

## PLAINTIFFS' STATEMENT

*Google's Custodians.* Despite the deadline to "[f]inalize custodians and search terms … and present any disputes" (ECF 208), Google has not meaningfully engaged. It remains steadfast in refusing to collect data from more than four (or perhaps, as of last night, five) custodians. Plaintiffs remain willing to continue discussions with Google, but respectfully suggest that a Court order holding that 35 custodians are appropriate would aid the parties and the discovery process.

Google has maintained that it is Plaintiffs' obligation to propose custodians and search terms in the first instance, despite Google's ready access to detailed information about potential custodians and the locations of relevant documents. At the same time, Google refuses even to identify which Google teams worked on topics related to this litigation. And, of course, Google will not identify who served on those teams despite Plaintiffs pointing to specific portions of Google's intranet containing such information.

Even so, on October 1, Plaintiffs proposed a list of custodians, including the job titles and/or relevant duties of each (*e.g.*, "Director of Project Management, Privacy, Data Protection"). On December 8, Plaintiffs sent a revised list of 52 custodians, including 17 from the then-recently produced Arizona documents. Again, for each non-Arizona custodian, job titles and/or relevant duties were listed. Notably, Arizona custodians cannot be excluded here because Google has refused to share the search terms (or produce the discovery requests and responses) used to identify those documents. On January 11, in response to questions Google raised, Plaintiffs sent a shorter list of 35 proposed custodians. Twenty-five had been on previous lists, including 15 Arizona custodians. Google's only response was that the list was "overbroad" and burdensome. Nevertheless, Plaintiff provided additional information about their selections this week, but Google's offer—just four custodians—did not change.

As to Google's claim that processing data from these custodians would take more than a month, it is important to note that for 17 of the 35 custodians, data was *already collected and processed* in Arizona. Regardless, Google's time estimate does not mean Plaintiffs' list of custodians is not proportional under Rule 26(b)(1), which requires consideration of "the importance of the issues at stake in the action" and "the parties' resources." Further, the collection and review of documents from 35 custodians is common in complex cases. Documents from more than 40 custodians were recently ordered produced in *Calhoun v. Google*, ECF 349, 20-cv-05146 (N.D. Cal.), and *Brown v. Google*, ECF 298, 20-cv-03664 (N.D. Cal), both cases in which, as here, Google is alleged to have unlawfully collected and stored users' personal information.

Finally, Plaintiffs take issue with Google's assertion that custodians should be limited to those specifically knowledgeable *only* about the storage of user location data when "Location History" is "off." Google has not demonstrated that job duties are so narrowly specified at Google and, in fact, has refused to identify which teams and individuals work on the topics at issue in this case (*e.g.*, location data collection, user interface design, communications, and monetization).

***Search terms for Google's data.*** Google misrepresents the history of search term negotiations. Each side proposed search terms on December 8. In a meet and confer on December 22, Plaintiffs explained in detail why Google's proposed terms were inadequate, *e.g.*, basic concept

terms such as "place" and "private or privacy" and "setting" were omitted. Based on Google's feedback and Plaintiffs' review of the Arizona documents, Plaintiffs proposed 58 revised terms on January 11 (reduced from 74). On January 20, Google accepted or proposed modifications to 19 of the terms. On January 21, Plaintiffs asked Google to provide the basis for its rejection of 39 terms without comment or modification. Respectfully, Google should be ordered to respond.

Google's claim that Plaintiffs' terms would return more than 550,000 should be treated with caution. In an email at 10:28 last night, Google stated for the first time that "the terms you proposed return >550k hits across the four custodians." After deduplication across and within custodians, "550k hits" could well produce fewer than 100,000 documents. Further, the gross number of hits is useless without a hit count report for each search term.

*Named Plaintiff discovery.* As to search terms, Plaintiffs described to Google in great detail how 6 of the 16 terms Google proposed hit vast amounts of spam email, and no or practically no relevant documents. Plaintiffs provided Google with workable alternatives and hit counts—information Google has refused to provide regarding search terms for its own data. Respectfully, the Court should order the parties to proceed with the six alternative search terms proposed by Plaintiffs on January 22, which Plaintiffs will submit to the Court upon request, as well as the other 10 search terms Google originally proposed to which Plaintiffs do not object.

All of the email addresses Plaintiffs actually used have been imaged. Plaintiffs cannot be faulted for not imaging email addresses identified only as recovery addresses on their Google accounts, which belong to third parties, or are inaccessible. Despite Google's claims to the contrary, Plaintiffs responded to Google's interrogatories with a great wealth of information, and answered Google's questions regarding their mobile devices and email addresses directly and clearly.

Plaintiffs also complied with the Court's order to collect and process their data. Plaintiffs preserved the phones they were using when they joined this litigation, and now are using replacement phones. They shouldn't have to repeat that process over and over, and Google presents no reason why Plaintiffs' current, *replacement* phones must also be imaged, too. Indeed, the location data that is at issue in this case is stored by Google, *not by Plaintiffs' mobile devices*.

| | | |
|---|---|---|
| Dated: 1/27/22 | | KEKER, VAN NEST & PETERS LLP |
| | By: | */s/ Nicholas D. Marais* |
| | | BENJAMIN BERKOWITZ |
| | | THOMAS E. GORMAN |
| | | NICHOLAS D. MARAIS |
| | | CHRISTOPHER S. SUN |
| | | CHRISTINA LEE |
| | | GREGORY WASHINGTON |
| | | Attorneys for Defendant GOOGLE LLC |
| Dated: 1/27/22 | | LIEFF CABRASER HEIMANN & BERNSTEIN, LLP |
| | By: | */s/ Michael Levin-Gesundheit* |
| | | MICHAEL W. SOBOL |
| | | MELISSA GARDNER |
| | | MICHAEL LEVIN-GESUNDHEIT |
| | | JOHN D. MAHER |
| | | *Interim Co-Lead Class Counsel* |
| Dated: 1/27/22 | | AHDOOT & WOLFSON, PC |
| | By: | */s/ Theodore Maya* |
| | | TINA WOLFSON |
| | | THEODORE MAYA |
| | | RACHEL JOHNSON |
| | | *Interim Co-Lead Class Counsel* |

## ATTESTATION

Pursuant to Civil Local Rule 5.1 regarding signatures, I attest that concurrence in the filing of this document has been obtained from the other signatories.

Dated:  1/27/22                                                                 */s/ Michael Levin-Gesundheit*