

Keker, Van Nest & Peters LLP
633 Battery Street
San Francisco, CA 94111-1809

415 391 5400
keker.com

**Nicholas D. Marais**
(415) 773-6689
nmarais@keker.com

March 28, 2023

**VIA ECF**

Hon. Nathanael Cousins
United States District Court, Northern District of California
San Jose Courthouse, Courtroom 5 – 4th Floor
280 South 1st Street, San Jose, CA 95113

Re:   *In re: Google Location History Litigation*,
      Case No. 5:18-cv-05062-EJD (N.D. Cal.)
      Plaintiffs' Dispute Statement, Dkt. 283

Your Honor:

Plaintiffs' recent letter brief on document custodians violates two of this Court's orders. First, it ignores the order requiring the parties to finalize and submit any disputes about ESI custodians by no later than January 27, 2022. *See* Dkt. 229 (setting deadline to brief ESI custodian dispute). That deadline has passed, and the parties previously briefed this dispute. *See* Dkt. 234 (parties' joint brief). Plaintiffs should not now be permitted to brief the same dispute all over again, or to add yet more custodians at this late stage. Second, Plaintiffs' supplemental brief violates the Court's order requiring the parties to "confer by speaking" before filing discovery disputes. Dkt. 187. As Plaintiffs concede in their March 21, 2023 brief, they simply "provided" their "dispute statement" to Google—never seeking to discuss it—before "regretfully fil[ing] separately." These practices should not be rewarded, and Google submits that the Court should adjudicate this issue based on the briefing properly and timely submitted. *See* Dkt. 234.

It is confounding that Plaintiffs continue to pretend that the parties are still at the discovery starting line. Plaintiffs misleadingly argue that Google has "yet to produce any custodial ESI" in response to their RFPs. That is not true. Google has already produced more than ***500,000*** pages of discovery in response to Plaintiffs' RFPs—including large amounts of ESI from at least ***19 custodians***. (Plaintiffs, for their part, have produced just 850 documents.) This includes, as Plaintiffs note, the "Arizona Documents," which Google produced after Plaintiffs promised that they would be used to ***narrow*** discovery. Consistent with Plaintiffs' stated plan—to use the voluminous Arizona production to focus any further discovery—Google has agreed to conduct another round of searches on a ***reasonable*** number of supplemental custodians. But Plaintiffs appear to have abandoned their commitments to streamline discovery and instead now refuse to

2109136

Hon. Nathanael Cousins
March 28, 2023
Page 2

agree to anything less than 35—or, as of last week, 40—custodians' worth of additional ESI collection, search, review, and production. There is no good reason for such a massive number of custodians at this late stage, other than that Plaintiffs believe it will inflict gratuitous expense and burden on Google. Indeed, during the parties' meet-and-confer calls prior to the January 2022 briefing, Plaintiffs' counsel was often unable to explain who their proposed custodians were or why they had been added to their list. *See, e.g.*, M&C Tr. (Dec. 6, 2021), 18:21–19:14 ("Mr. Gorman: What about Ben Gomes?  Mr. Kelston: That is one I don't have a note about."); *see also id.* at 9:4–12 (explaining that Plaintiffs' counsel did not know how their list of proposed custodians was generated, and could not explain it because a "significant contributor" in drafting that list had not left any notes for the team). And, last week, Plaintiffs suddenly re-inserted Google's CEO, Sundar Pichai to their list, despite acknowledging back in December 2021 that he was not a relevant custodian and removing him from a previous custodian list.

Google has tried to move this process along. Even though it has already provided hundreds of thousands of pages of custodial ESI, Google has also identified (by name) four custodians for whom it makes sense to conduct supplemental ESI searches. That number (four) is not arbitrary: Google has investigated and identified potentially relevant employees who held key roles related to the accused settings and services. Google has also made clear that it is willing to discuss any legitimate requests if Plaintiffs believe there are other key individuals who should be added. And Google has repeatedly offered to confer about documents or information that Plaintiffs believe is ***missing*** from the 500,000 pages already produced, including any information Plaintiffs believe they reasonably need for this matter that has not already been produced from the 19 custodians in the Arizona matter. For example, Plaintiffs recently accused Google of "glaring deficiencies in the collection and production of truly relevant evidence." *See* Dkt. 269 at 1:20–21. Google asked what Plaintiffs meant, *id.* at 7:24–26, and almost two months later, Plaintiffs still have not identified a single "deficiency."

Ultimately, this case will not turn on Google's custodial documents. Plaintiffs' claim is that (1) they relied on a *public* Google statement (that, with Location History setting turned "off," "the places you go are no longer stored") and, nevertheless, (2) Google "track[ed] and store[d] users' locations and movements." *See generally* Dkt. 164-1 (FAC), ¶¶ 1–2. When it comes to discovery from Google, what matters with respect to those claims is (1) Google's public statements (if Plaintiffs allege they created an expectation of privacy) and (2) whatever location data Google actually "tracked" and "stored" from Plaintiffs' mobile devices. Plaintiffs bear the burden of establishing that common proof can be used to prove that a diverse class of users held the same expectation of privacy and suffered the same alleged invasion. It is difficult to see how custodial email would be material here, and Plaintiffs have made no effort to explain it in any of the parties' discussions or in either of their briefs on this topic. Dkt. 234 at 4–5; Dkt. 283.

The parties now have just four months remaining before the close of discovery. Despite the Court's June 2021 recommendation, Plaintiffs still have not taken a single deposition. The search terms and custodians that Plaintiffs proposed in January 2022 would generate enough hits to occupy even a ***10-person review team*** for ***five years***, *see* Dkt. 234 at 4—and that's without the five additional custodians Plaintiffs now want to add. Plaintiffs' requests are unreasonable,

2109136

Hon. Nathanael Cousins
March 28, 2023
Page 3

overbroad, and unduly burdensome. Google respectfully submits that the Court set a limit of four ESI custodians for a final round of searches, and that it order the parties to meet and confer about the identity of those custodians.

\* \* \*

Finally, we note that on January 27, 2022, when the parties submitted this dispute—about limiting the number ESI custodians—they also briefed two other issues for the Court to resolve:

1. Google's Interrogatories No. 1–2, in connection with which Google asked the Court to order Plaintiffs to confirm—in a verified interrogatory response—that they have now identified all devices and accounts; and

2. Whether Plaintiffs have in fact collected all of the custodial data the Court previously ordered them to collect.

If the Court has time on its April 5, 2023 calendar, Google respectfully requests that it address all three of the issues the parties briefed on January 27, 2022. *See* Dkt. 234.

Respectfully submitted,

KEKER, VAN NEST & PETERS LLP

*[signature]*

Nicholas D. Marais

2109136