*In re Google Location History Litigation*, No. 5:18-cv-05062-EJD (Hon. Nathanael M. Cousins)
**Joint Statement re: Discovery Dispute**

### I. PLAINTIFFS' ARGUMENT

Plaintiffs ask the Court to compel Google to answer Plaintiffs' Interrogatories 1-6 and Requests for Production ("RFPs") 5-60 using Plaintiffs' definition of "Location Information." **Exs. 1-3**. Numerous meet and confers have made clear that the parties simply cannot agree on this foundational definition affecting nearly all discovery—including the appropriate scope of Rule 30(b)(6) depositions and ESI search terms. The relief Plaintiffs seek will allow the parties to engage in productive meet and confers about burden and reach resolution. The alternative will be that Plaintiffs will need to move to compel for the vast majority of these requests and likely as to data-related search terms as well. Plaintiffs' definition, shown below beside Google's, is appropriately tied to Plaintiffs' claims, and Google's objections are belied by its endorsement of functionally the same definition in its recent state settlements about the same controversy.

| **Plaintiffs** (emphasis added) | **Google** (emphasis added) |
|---|---|
| Physical geographical location data that is determined, estimated, or inferred from a user's mobile device sensors (including, but not limited to, GPS, Wi-Fi, Bluetooth, cellular) **saved to any data store, database, device, or system in Google's possession, custody or control** (as distinguished from storage exclusively in a user's device or a user's systems) | Location information that is determined using inputs from a user's mobile-device sensors (e.g., GPS, Wi-Fi, Bluetooth) sensors, or from cellphone towers, **saved to a user's Google Account** (as distinguished from storage in a user's device or systems or in non-Google devices or systems) |

Google consistently has sought to redefine and limit the scope of this case and advance a discovery proportionality argument by misconstruing Plaintiffs' claims as relating only to location data "saved to a user's Google Account," meaning only data specifically keyed to "a Google Account ID," as opposed to other persistent identifiers, like advertising IDs, other device IDs, or what Google terms "pseudonymous" or "anonymous" identifiers. Dkt. 173 at 3, 1. These categories of data, which Google inaccurately terms "non-identified," are encompassed within Plaintiffs' complaint and access to such data is proportional to the needs of the case. *See, e.g.*, Dkt. 164-1 at ¶¶ 56-57, 63-65 (explaining how Google's collection of purportedly anonymized location data violates class members' privacy); *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020) ("The question is not necessarily whether Plaintiffs maintained a reasonable expectation of privacy in the information in and of itself . . . [but, rather] whether the data itself is sensitive *and* whether the manner it was collected . . . violates social norms.").

Google argues Plaintiffs have no privacy interest in "non-identified" data. Plaintiffs strongly disagree, but resolution of that issue is fact-dependent and better suited for summary judgment. Plaintiffs must be allowed to learn the extent to which their location information is in fact "non-identified" and what Google does with such location information.[1]

Plaintiffs brought this issue to the Court in May 2021. At that time, Google once again insisted—incorrectly—that Plaintiffs' complaint concerns only information "stored in individual Google accounts," *i.e.*, keyed to a Google Account ID. 6/16/21 Tr. at 8:11-12, Dkt. 178. The

---

[1] As to whether Plaintiffs maintain a privacy interest in "anonymous" data specifically, with the exception of a District of Delaware case where the plaintiffs had withdrawn their California invasion of privacy claim, Plaintiffs addressed Google's authorities in prior briefing. *See* Dkt. 173 at 2; *Massie v. Gen. Motors LLC*, 2022 WL 534468, at *1, *5 (D. Del. Feb. 17, 2022).

*In re Google Location History Litigation*, No. 5:18-cv-05062-EJD (Hon. Nathanael M. Cousins)
**Joint Statement re: Discovery Dispute**

Court adopted Plaintiffs' definition of "Location Information"—but only for two specific interrogatories addressing Google's collection and use of location data. Dkt. 175.

Google's June 2021 Court-mandated supplemental interrogatory responses, which should now be updated, confirm that Google indeed collects and stores location data from its users that is not keyed to a Google Account ID. It uses such data via, *inter alia*, Chrome, Google Maps, YouTube, and Photos. Capturing and then storing locations when users are "not interact[ing] with Google apps or services" plainly implicates Plaintiffs' privacy interests and Plaintiffs' claim for unjust enrichment. Dkt. 162 at 15. Discovery about these practices is therefore proportional.

Despite numerous meet and confers, including on July 14 and 21, September 10, and November 4, 2021, when Plaintiffs attempted to address each discovery request individually, related meetings about custodians and search terms in 2021 and 2022, and two meetings this spring about the dispute statement, Google generally insists that it will limit its productions to documents concerning location data keyed to a Google Account ID. *See, e.g.*, **Ex. 4**, 12/15/21 Resps. to Third Set of RFPs at 5-6 ¶ 18 (construing Location Information as data "saved to a user's Google Account"); **Ex. 5**, 3/15/21 Resps. to Second Set at 5-6 ¶ 18 (same). Google's unwillingness to provide basic facts about its practices—for example, documents showing the "frequency with which [Google] receive[s] and store[s] Location Information pertaining to Users"—has prejudiced Plaintiffs' ability to take meaningful depositions. **Ex. 4**, RFP 47.

Google recently revised certain responses, confirming it only "agrees to produce" documents about location data keyed to a Google Account ID, as opposed to other persistent identifiers, for RFPs 22-24, 26-27, 30, 34, 36, 43-45, 47, and 55-56. *See, e.g.*, **Ex. 6**, 3/24/23 Resps. to Third Set of RFPs at 75:5. It is also unclear whether Google will produce documents regarding anonymization or deanonymization of location data keyed to device ID (RFP 33). For some RFPs, Google states that it "also produced responsive documents related to data that is not stored, or may not be stored, in a Google Account," but it has *not* agreed to make *comprehensive* productions following a reasonable and diligent search. *See id.* at RFPs 22-24, 26, 34, 43-45. Nor has Google stated whether it is withholding documents on the basis of its definitional objection.

Google's refusal to accept Plaintiffs' definition of Location Information is inconsistent with settlements with dozens of state attorneys general where it defined "Location Information" broadly to include not just data that keyed to a Google Account ID, but

> any information or data used to identify the [physical location . . . at a point in time] on Earth of a USER or DEVICE including, but not limited to, by use of GPS . . . , IP address, cell tower data, wireless internet access points (Wi-Fi data), Bluetooth data, and any other similar information or data used to identify the [physical location].

*See, e.g.*, Mass. Settlement at 5, https://tinyurl.com/2p8f58k8 (executed by Google on 4/8/22).[2]

The attorneys general found that Google "collects and stores the same type of LOCATION INFORMATION from signed-out users when they use GOOGLE products as . . . from signed-in USERS," and that it "merely associates the LOCATION INFORMATION of signed-out USERS with a unique 'pseudonymous' identifier rather than the USER's GOOGLE ACCOUNT" ID. *Id*. at 13 ¶ 35. That is, Google collects location information that is *not* keyed to a Google Account ID but is still keyed to a unique identifier. Further, "disabling or enabling

---

[2] This definition is actually *broader*. Unlike Plaintiffs' definition, it covers location data gathered from "IP address[es]," which is relevant to this case and which Plaintiffs may pursue separately.

2108867

*In re Google Location History Litigation*, No. 5:18-cv-05062-EJD (Hon. Nathanael M. Cousins)
**Joint Statement re: Discovery Dispute**

GOOGLE ACCOUNT settings such as LOCATION HISTORY does not control whether GOOGLE will collect, store, or use a USER'S LOCATION INFORMATION" and, "[a]s a result of [its] misleading statements . . . , USERS cannot reasonably avoid GOOGLE's access to and use of their LOCATION INFORMATION." *Id.* at ¶ 37. Google agreed to various practice changes using those settlements' broad definition of the term. *See id.* ¶¶ 42-60. Given Google's clear concession that location data beyond that keyed to a Google Account ID is at issue in related litigation stemming from the same conduct, it cannot in good faith continue to withhold discovery here based on its years-long sleight of definition that would exclude such data.

Nor should Google be able to avoid this issue by pointing out that for many requests, it is withholding documents on other bases. *See, e.g.*, **Ex. 6**, Resps. to RFPs 22-24, 26, 27, 30, 34, 36, 43-45, 47, 55-56 (refusing to produce *any* documents concerning, *inter alia*, the value of location data, despite Plaintiffs' unjust enrichment claim). Google's responses are deficient in more ways than one—and Plaintiffs expect to raise other disputes with the Court—but Google's proportionality arguments are often tied to this dispute about the scope data at issue in the case.

Therefore, Plaintiffs respectfully request that the Court adopt Plaintiffs' definition of "Location Information" for the purposes of discovery and order Google to respond using that definition to Plaintiffs' Interrogatories 1-6 and RFPs 5-60 (where, in all but a handful of cases, Google has limited its responses based on its definitional objection). *See* **Exs. 1-3**. Plaintiffs believe requiring Google to either produce documents or meet and confer about these requests as Plaintiffs have actually specified them will break the logjam. However, if the Court is disinclined, Plaintiffs ask that Google be ordered to amend its responses to each RFP to indicate, per Rule 34(b)(2)(C), whether it is withholding information on the basis of its objection.

## II. GOOGLE'S ARGUMENT

At last week's discovery hearing, the Court ordered the parties "to confer further with each other" about this dispute. 4/5/2023 Tr. at 19:7–14. Instead of doing that, Plaintiffs proceeded straight to sending Google a copy of this letter brief—identifying, for the first time, **62** different discovery requests. It wasn't until two days ago that they asked to confer. As a result, the parties have discussed only *two* of these 62 requests. And Plaintiffs continue to add new issues they have never raised with Google, including (as of this afternoon) relief related to a forthcoming 30(b)(6) notice they have not even served yet. Unfortunately, Plaintiffs appear intent on creating disputes, even if it means ignoring the Court's guidance to (1) prioritize depositions to better understand how Google collects and uses anonymous, pseudonymous, deidentified data, etc. ("non-identified data"), and (2) engage in an "informed conversation" about the "burden" associated with particular requests. Dkt. 178 at 16:14–25. Now, Plaintiffs return to the Court, having ignored its advice but seeking effectively the same relief they sought two years ago: a vague declaration that Google should "adopt" Plaintiffs' definition of "Location Information" for a slew of discovery requests without any attention to the context of those requests. But the same problems persist: (1) many of the requests seek irrelevant or disproportionate information, and Plaintiffs refuse to discuss how the requests could be answered in a reasonable manner; and (2) granting Plaintiffs' requested relief would not advance discovery because (a) Plaintiffs ignore that, for many requests, Google has effectively used Plaintiffs' definition or a broader one where appropriate, (b) Plaintiffs admit they will likely revise the definition further, regardless of what the Court rules, and (c) Plaintiffs refuse to confer on Google's remaining objections to their RFPs.

3

2108867

*In re Google Location History Litigation*, No. 5:18-cv-05062-EJD (Hon. Nathanael M. Cousins)
**Joint Statement re: Discovery Dispute**

**Plaintiffs' requests are disproportionate and they refuse to confer about narrowing.** Plaintiffs assert that the definition of "Location Information" should include *non-identified* data for every request. Google disagrees, because that definition would render the requests irrelevant, overbroad, and disproportionate. Critically, non-identified data raises **no** actionable privacy interests or unjust-enrichment claims. Dkt. 173 at 3 (listing cases); *see, e.g., Massie v. Gen. Motors LLC*, 2022 WL 534468, at *5 (D. Del. Feb. 17, 2022) (holding that "anonymized, non-personal data" does not "harm[] [plaintiffs'] privacy interests in any way"); *Low v. LinkedIn*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012); *see also London v. New Albertson's, Inc.*, 2008 WL 4492642, at *9 (S.D. Cal. Sept. 30, 2008) (no unjust enrichment because "no propriety right to de-identified . . . information"). Plaintiffs offer only naked assertions that non-identified data "plainly implicates [their] privacy interests" (or that the issue is "better suited" for an MSJ). They are wrong on both counts. In *Moreno v. San Francisco Bay Area Rapid Transit Dist.*, for example, the court dismissed constitutional and common-law privacy claims—the same claims Plaintiffs assert here—regarding the collection of location data tied to an "*anonymous* client id"—what Plaintiffs call a "persistent identifier." *Moreno*, 2017 WL 6387764, at *8 (N.D. Cal. Dec. 14, 2017). Indeed, Plaintiffs have never identified **any** case, from **any** jurisdiction, finding an actionable interest in non-identified data. The only case they cite, *In re Facebook*, concerned "personally identifiable browsing history." *Facebook*, 956 F.3d at 598. While Google has agreed to answer many requests, it would be grossly disproportionate to require Google to go through the burdensome process of identifying and producing documents related to every potential way that Google may collect, store, or use legally *irrelevant* data. That's also true for Plaintiffs' unjust enrichment claim. Plaintiffs speculate that Google apps or services store non-identified location data, but the Court limited Plaintiffs' unjust-enrichment claim to data collected "when users did **not** interact with Google apps or services." Dkt. 162 at 15 (emphasis added).

At most, non-identified data would implicate privacy interests *only* if Google *reidentified* such data, which is all the cited paragraphs of Plaintiffs' complaint allege. *See* Dkt. 164-1 at ¶ 57 (discussing Google's alleged "ability to de-anonymize location data"). That fear—unsupported by **any** evidence—doesn't justify adopting Plaintiffs' definition indiscriminately. To the extent Google were to discover data had been reidentified, such data would no longer be non-identified and Google wouldn't dispute its relevance. But, despite having reviewed 500,000 pages of Google's documents, Plaintiffs still have no basis to assert that Google reidentifies anonymous or pseudonymous location data. In any event, to the extent discovery is warranted, it must be tailored to the relevant issue—the technical measures used to prevent reidentification. That's precisely what the Court suggested in June 2021 and again on April 5, 2023. Dkt. 175; Dkt. 178 at 16:14–25; 4/5/2023 Tr. at 19:7–14.

Lacking any law supporting their position, Plaintiffs' reconsideration request stands on a single, thin reed. They argue the parties should use Plaintiffs' definition of Location Information because Google agreed to use a ***different*** definition in a settlement agreement. But a ***settlement*** agreement in a different case based on different legal theories is not an agreement on the scope of ***discovery*** in this (or any) case. The agreement in no way suggests that "users can be identified even when data is not specifically saved with a Google Account," as Plaintiffs assert. Google has never objected to Plaintiffs taking targeted discovery on measures Google uses to prevent non-identified data from reasonably being linked to any person. But with nothing more than speculation, Plaintiffs have no basis to insist on indiscriminate discovery into irrelevant topics.

**Plaintiffs' proposed relief would not advance discovery.** Plaintiffs have again declined

4

*In re Google Location History Litigation*, No. 5:18-cv-05062-EJD (Hon. Nathanael M. Cousins)
**Joint Statement re: Discovery Dispute**

to confer with Google to refine any specific RFPs, saying they are "not willing to go that route" until the Court rules on this "definitional" issue. In this letter brief, Plaintiffs cite only ***one*** specific request—RFP 33—where Google has made clear what it is willing to produce and has offered to confer further. Plaintiffs have ignored those offers. And, with respect to other requests, Plaintiffs admit that, no matter how the Court rules, the parties will still have to discuss aspects of Plaintiffs' requests. It remains unclear to Google why Plaintiffs will not do that work now.

      Despite all this, Google has tried its best to reach a reasonable middle ground. For many requests, Google did not stand on its objection to Plaintiffs' "Location Information" definition or otherwise agreed to produce documents consistent with that definition, or an even broader definition. For example, Google did so with respect to various policies, disclosures, studies, security reports, and other documents, which it had organized using a definition that is as broad or broader than Plaintiffs'. **Ex. 6**[3] at RFP Nos. 28, 30, 33, 35, 58–60. For other RFPs, Google maintains its objection to a company-wide search for irrelevant documents on non-identified data, but where it was not unduly burdensome, Google has *already* produced information consistent with Plaintiffs' definition and repeatedly invited counsel to specify what else is reasonably needed. *See, e.g.*, *id.* at Nos. 22–24, 34, 43–45. And for other requests, Google has raised independent objections that Plaintiffs are not contesting, and thus Plaintiffs' definitional dispute is not a gating issue. *Id.* at Nos. 37–39. The point is, Google has taken a nuanced approach for each request and agreed to produce where reasonable, whereas Plaintiffs' untethered "definitional" approach would render many or most of their requests overbroad.

      Interrogatory No. 3 perfectly illustrates the folly of Plaintiffs' approach. It asks Google to identify all "third parties . . . to whom Google has disclosed any Location Information . . . ." Dkt. 212-1 at 8. Google answered that it does not disclose location data linked to user accounts, names, or email addresses. *Id.* at 7. Plaintiffs, however, interpret their request as requiring Google to itemize every third party that has received irrelevant information, including anonymized public-policy research (*e.g.* Google's COVID-19 Community Mobility Reports) or the voluntary sharing of location between two users. Plaintiffs repeatedly told Google that this type of information ***is*** responsive, even though it cannot possibly be relevant. Thus, Plaintiffs' own example demonstrates why their blanket approach is unworkable—it would pose an unreasonable and disproportionate burden on Google by sweeping in categories of information that have no relevance to any privacy claim. *See* Dkt. 225 (finding that Plaintiffs' ROG 7 is "overly broad, not limited to the claims in the case, and therefore not proportional. . . .").

      **Google's Final Compromise Proposal.** Consistent with the Court's instructions, Google is willing to meet and confer with Plaintiffs to resolve this dispute informally. And it has already provided RFP responses specifying what it is willing to produce. But Plaintiffs have refused to discuss their requests or to explain how the information Google has agreed to produce fails to satisfy those requests. So it is still unclear what other documents they want—or what information they now seek under Rule 34(b)(2)(C). (This, too, is another issue that Plaintiffs have never raised during the parties' discussions. And *none* of Plaintiffs' written discovery responses identify what documents they are withholding, as Plaintiffs now demand of Google.) As always, Google remains prepared to meet and confer.

---

[3] Plaintiffs have insisted on attaching ***217*** pages of exhibits to this letter.

*In re Google Location History Litigation*, No. 5:18-cv-05062-EJD (Hon. Nathanael M. Cousins)
**Joint Statement re: Discovery Dispute**

Dated:  April 12, 2023

Respectfully Submitted,

*/s/ Michael Levin-Gesundheit*
Michael W. Sobol (SBN 194857)
msobol@lchb.com
Melissa Gardner (SBN 289096)
mgardner@lchb.com
Michael Levin-Gesundheit (SBN 292930)
mlevin@lchb.com
Michael K. Sheen (SBN 288284)
msheen@lchb.com
Jallé Dafa (SBN 290637)
jdafa@lchb.com
**LIEFF CABRASER HEIMANN
    & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Tel: (415) 956-1000
Fax: (415) 956-1008

Nicholas Diamand (*pro hac vice*)
ndiamand@lchb.com
**LIEFF CABRASER HEIMANN
    & BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York,  NY 10013
Tel: (212) 355-9500
Fax: (212) 355-9592

Tina Wolfson (SBN 174806)
*twolfson@ahdootwolfson.com*
Theodore Maya (SBN 223242)
*tmaya@ahdootwolfson.com*
Bradley K. King (SBN 274399)
*bking@ahdootwolfson.com*
Henry Kelston (*pro hac vice*)
*hkelston@ahdootwolfson.com*
**AHDOOT & WOLFSON, PC**
2600 West Olive Avenue, Suite 500
Burbank, California 91505
Tel: (310) 474-9111
Fax: (310) 474-8585

*Interim Co-Lead Class Counsel*

2108867

*In re Google Location History Litigation*, No. 5:18-cv-05062-EJD (Hon. Nathanael M. Cousins)
**Joint Statement re: Discovery Dispute**

*/s/ Christopher S. Sun*
KEKER, VAN NEST & PETERS LLP
BENJAMIN BERKOWITZ - # 244441
bberkowitz@keker.com
NICHOLAS D. MARAIS - # 277846
nmarais@keker.com
THOMAS E. GORMAN - # 279409
tgorman@keker.com
CHRISTOPHER S. SUN - # 308945
csun@keker.com
CHRISTINA LEE - # 314339
clee@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:     415 391 5400
Facsimile:      415 397 7188

*Counsel for Google*

## ATTESTATION

Pursuant to Civil Local Rule 5-1(h) regarding signatures, I attest that concurrence in the filing of this document has been obtained from the other signatories.

Dated: April 12, 2023                                                          */s/ Michael Levin-Gesundheit*