```
                                        Pages 1 - 49

                       UNITED STATES DISTRICT COURT
                       NORTHERN DISTRICT OF CALIFORNIA

                 Before The Honorable Nathanael M. Cousins,
                       United States Magistrate Judge

IN RE:                          )
                                )
GOOGLE LOCATION HISTORY         )
LITIGATION                      )    Case No. 5:18-CV-05062-EJD
                                )
                                )
_____ )


                                     San Jose, California
                                     Wednesday, April 5, 2023
```

**TRANSCRIPT OF DISCOVERY HEARING**

**APPEARANCES VIA ZOOM VIDEOCONFERENCE:**

```
For the Plaintiff:
                    AHDOOT & WOLFSON, PC
                    2600 W Olive Avenue
                    Burbank, California 91505
```
**BY: HENRY KELSTON, ATTORNEY AT LAW**
**BY: THEODORE MAYA, ATTORNEY AT LAW**

```
                    LEIFF CABRASER HEIMANN & BERNSTEIN
                    275 Battery Street, Suite 2900
                    San Francisco, California 94111
```
**BY: MICHAEL W. SOBOL, ATTORNEY AT LAW**
**BY: MICHAEL LEVIN-GESUNDHEIT, ATTORNEY AT LAW**

```
For the Defendant:
                    KEKER VAN NEST & PETERS LLP
                    633 Battery Street
                    San Francisco, California 94111
```
**BY: NICHOLAS MARAIS, ATTORNEY AT LAW**
**BY: THOMAS GORMAN, ATTORNEY AT LAW**

```
TRANSCRIPTION SERVICE BY:
                    Dipti Patel, CET-997
                    Liberty Transcripts
                    7306 Danwood Drive
                    Austin, Texas 78759
                    (847) 848-4907
```

1      **Wednesday - April 5, 2023**                                        **10:03 A.M.**

2                              **P R O C E E D I N G S**

3                                   ---oOo---

4          **THE CLERK:**  Calling civil 18-5062, In re: Google Location

5     History Litigation.

6          Counsel, please state your appearances for the record.

7          **MR. KELSTON:**  Henry Kelston, K-E-L-S-T-O-N, from Ahdoot &

8     Wolfson for plaintiffs in the class.

9          **THE COURT:**  Good day.

10         **MR. KELSTON:**  Good day.

11         **MR. SOBOL:**  Good morning, Your Honor.  Michael Sobol from

12    Lieff Cabraser for the plaintiffs.

13         **THE COURT:**  Good morning.

14         **MR. MAYA:**  Theodore Maya from Ahdoot & Wilson, also for

15    plaintiffs.

16         **THE COURT:**  Good morning.

17         **MR. LEVIN-GESUNDHEIT:**  Michael Levin-Gesundheit.  Also from

18    Lieff Cabraser, like Michael Sobol for plaintiffs.

19         **MR. MARAIS:**  Good morning, Your Honor.  Good to see you

20    again.  Nic Marais and Tom Gorman from Keker Van Nest & Peters on

21    behalf of Google.

22         **THE COURT:**  Good morning to each of you, all of you.

23    Welcome back, everyone.

24         **UNIDENTIFIED SPEAKER:**  Thank you.

1      **THE COURT:**  And did we get everybody into the room that --

2   I'll go side by side on the plaintiff side?  Is everybody here

3   that you were anticipating?

4      **MR. KELSTON:**  Yes, sir.

5      **THE COURT:**  Very good.  And on the Google side, is everybody

6   here that you are anticipating?

7      **MR. GORMAN:**  We are, Your Honor.

8      **THE COURT:**  Very good.  All right, then.  We are making a

9   recording of our hearing, which we're doing by Zoom at the

10   request of the parties for three reasons.  One, it's Passover.

11   Two, spring break.  And third is we didn't give you much warning

12   to the fact that we are switching back towards doing things

13   mostly in person in our courthouse, and you haven't had much

14   warning of that so I went along with setting this by Zoom.  And

15   we still have that capability, fortunately.  But the Cares Act

16   expires on May 11th.  And we did get noticed that there was a

17   bill on the president's desk that would end the Cares Act

18   immediately that we expect that he's going to sign.

19      So our authority to do things remotely is diminishing, and

20   the national mood about Zoom is diminishing.  And so we are

21   moving back towards doing things presumptively in person.  And

22   that, of course, affects you in a myriad of ways.  But one, Mr.

23   Kelston, you're in New York.  And we're here in California.  And

24   there's of course, quite a bit of inefficiency, to compelling you

25   to be here for something that will be a small discovery hearing.

4

 1    And of course, you have colleagues on your side in this

 2  case, and they might be able to cover certain things.  But I also

 3  note that you and Mr. Sheen (phonetic) are recently designated as

 4  the co-discovery liaison, so I would not want to be excluding you

 5  from any discovery.  So I just wanted to bring that issue up, in

 6  part for you to think about how it might impact your

 7  communication and coordination.

 8    There's many attorneys on both sides and many issues over

 9  time that have been presented.  And I'm not here to tell you how

10  to do things on your side among the different attorneys.  But

11  just to raise that procedural issue going forward is that we have

12  an external -- it will probably be in person, and I'll give you

13  time to prepare for it.  But that's how we're -- that's the

14  direction that we're moving is towards doing our hearings in

15  person.  That will affect Google as well, although their counsel

16  are more local.

17    All right.  And we had a little hiatus in this case, with a

18  pause for some settlement discussions.  And we're back now.  Back

19  in 2022, I was requesting first, I think weekly, but then

20  bi-weekly discovery reports overall.  Those were paused.  And the

21  question I have for both sides is if we should return to those in

22  some format, if so what frequency and whether we should get

23  together in person, or through some other format here.

24    We've got Dockets 283 and 288, your letter briefs on certain

25  issues.  And at Google's request I put back on the agenda for

5

1   today some that were open back at our last get together in 2022.

2   Those are discovery requests from Google.  Maybe you've got other

3   discovery issues that are percolating or are ripe and they're not

4   presented in the discovery briefs.

5       I'm not trying to expand the things you're disagreeing

6   about.  But I don't know that I have a complete picture of all

7   the things that you're working on, such as you gave me in your

8   discovery updates back in 2022.  So I might start at high

9   altitude for just like an overview of where you're at overall

10  because it has been some time since we spoke together.

11      I know that I ruled on the one expert issue without a

12  hearing, but as far as the high altitude view of where are we at

13  and where are we going and how can I help you.  That's kind of my

14  high altitude request.  And you've got, I think about four months

15  left in the discovery time period.  So we're much closer to the

16  end of that than we were in our earlier conversation.

17      So I want to just be pragmatic to see, like, how can I help

18  you get to the finish line in a fair process and an efficient

19  process?  That's kind of the spirit in which I come is to see how

20  can I help you with this project going forward to get it to

21  completion in a fair and efficient way?  So that's pretty much a

22  softball.

23      But let me start on the plaintiff side, and you can address

24  before we get into the details in the discovery brief, kind of

25  where are we in the discovery process overall?  What do you see

6

1    coming?  And how can I help you?  Who wants to take that?

2         **MR. KELSTON:**  I'm going to invite Michael Sobol to take it.

3         **MR. SOBOL:**  Yeah.  Be happy to address that, Your Honor.

4    Mr. Kelston and Mr. Maya are going to address this sort of motion

5    that you have, but let me let me take that.  I think where we

6    are, Your Honor, is we're on a very aggressive, ambitious

7    schedule, given where we are in discovery in this case.

8         As you point out, there's about four months left, four or so

9    months left for us to complete.  The majority of discovery,

10   including depositions in this case, you know, after we get the

11   documents that we're looking for, I think it would be very

12   helpful, given this ambitious schedule, to have at least

13   scheduled conferences with you that we can always if we don't

14   need them, by agreement, or if the Court doesn't think we need

15   them extend.

16        But I think that we should planning out have them on the

17   schedule.  And with, of course, providing you with the update as

18   far in advance as you need to have.  But there's, quite a bit

19   left to do in this case, discovery wise.  So you know, if we're

20   going to be proceeding through this phase, we're going to need

21   your help.

22        **THE COURT:**  All right.  Thank you.  And right now, today's

23   kind of the teed up issues are focused on documents and

24   interrogatories.  So that's usually the one of the first steps in

25   discovery.  But depositions are going to need to be happening

1   pretty soon.  And on the plaintiff side, do you have any notice?

2   Do you have an idea for what will be coming first and that kind

3   of period of discovery?

4       **MR. SOBOL:**  Your Honor, what we internally do, this is not

5   -- you know, we've -- of course, we've used our time, I think

6   wisely during the hiatus.  I should point that out for Your

7   Honor.  I mean, we have now had a chance to review the documents

8   from the so-called Arizona production.  We have a better sense of

9   what's there than we did a year or so ago when we took the

10  hiatus.  And we've certainly, you know, internally have a sense

11  of, from so far what we know, where we would go in the

12  depositions.

13      Unfortunately, there's been no custodial production yet in

14  this case.  And we feel in the order that we would prefer to do

15  discovery is to have that information, and the production from

16  Google of the custodial information before we begin to notice who

17  it is that we would want to depose.

18      **THE COURT:**  All right.  And I'm going to get to Google here

19  in a moment.  So hold on, Mr. Marais.

20      Mr. Sobol, just to kind of give me a sense for -- and I know

21  what -- well, it's seated for today.  So maybe the answer is the

22  things seated for today are the most important things right now.

23  But what are the areas of discovery or things that you are

24  seeking coming forward that are the most important areas?

25  Prioritize for me the discovery from the plaintiff side that is

1    going to be most important, say, in the next 60 days?

2        **MR. SOBOL:**  Well, Your Honor, we're still at a very

3    fundamental level here.  I mean, you know, I think that one of

4    the things that you're going to be seeing from us in the short

5    term unless, you know, this sort of approach from both sides

6    changes is returning back to the definition of location

7    information, which really defines the proper scope of what

8    discovery should be and what our case is.  And that priority --

9    that sort of signals what the priorities here would be.  I mean,

10   the priorities here are to -- for us to understand all the ways

11   in which location information as we define it, is collected and

12   then used.

13       And you know, this is not something that we've been able to

14   have a meeting of the minds on with Google, and that that dispute

15   continues to be live.  We're in the middle of continuing to have

16   some communication back and forth on that issue to get it

17   properly suited up for Your Honor, but I think that's inevitable,

18   but that will be coming your way.  So you know, it's the data

19   collection, how it's stored, how it's used, and how it's

20   monetized.  It's that basic.  I don't know if my other colleagues

21   want to chime in on anything.

22       **THE COURT:**  I'll give them a chance to chime in.

23       **MR. SOBOL:**  Okay.

24       **THE COURT:**  I'm just switching one more topic while you have

25   the baton.  What's the overall status of discovery from

1    plaintiffs?  Google is going to be asking me here in a moment

2    about things that they're seeking from plaintiffs.  What's the

3    overall status of your collection and production of information

4    that they've requested?

5        MR. SOBOL:  Your Honor, we collect it up every --

6        Ted, do you want to answer?  Go ahead.

7        MR. MAYA:  I'm fine.

8        MR. SOBOL:  Yes.  Thank you.

9        MR. MAYA:  Yeah, Your Honor.  In response to the two

10    questions in particular that had been placed on the agenda for

11    today.

12        THE COURT:  Yeah.

13        MR. MAYA:  Back in January 2022, we did provide verified

14    interrogatory responses, identifying all the plaintiffs' devices

15    and email accounts.  We also have collected all the custodial

16    data that we can that's available, and have gathered quite a bit

17    of it from both devices and those accounts.

18        THE COURT:  Collected and not produced.  Is that accurate?

19        MR. MAYA:  No.  When the stay went into effect, we were

20    negotiating search terms to be used on plaintiffs' data.  Those

21    negotiations have not really commenced since the stay was lifted.

22        THE COURT:  All right.  Thank you.  All right.  And anything

23    else on the plaintiffs' side, just capturing the status of the

24    moment that I haven't asked about, but would be important for me

25    to understand?

1    **MR. SOBOL:**  I don't think so, Your Honor.

2    **THE COURT:**  All right.  Thank you.  Then let me go over to

3    the Google counsel for your high-altitude views on what they're

4    seeking from you and what you're seeking from them and how I can

5    help.

6    **MR. MARAIS:**  Your Honor, I assume we'll return to the items

7    on the agenda.  So I'll table responses to Mr. Maya's comments

8    for now.  I think the high-level question is a good place to

9    start.  I was going to bring it up, so I'm glad that the Court

10   has.  As Your Honor was pointed out, before the stay went into

11   effect, we had monthly check-in's with the Court.

12       We had settled at that time on bi-weekly status updates,

13   which I think struck a balance between updating the Court and

14   actually rolling up our sleeves and doing the work in between the

15   updates.  And from our perspective, those were working well.

16   There are going to be other issues that we have, I'm sure on both

17   sides.  And I think if it works for the Court, getting back into

18   that cadence of perhaps a monthly check-in with a bi-weekly

19   status update is a good idea.

20       Again, at the high level, you know, when we agreed to stay

21   this case in February 2022, we were most of the way through

22   discovery.  And the parties at that stage agreed that when we

23   resumed if the settlement talks fell through, that we would pick

24   up where we left off, that is with another four months of

25   discovery.  We had a dispute about that in front of Judge Davila,

1   but ultimately, he has agreed, and the current cutoff is July 28.

2       What that means in practice is we have had 14 months of

3   discovery in this case, and we have four months left to go.  We

4   are 80 percent of the way through discovery in this case.  And I

5   think that's important as we talk about some of the issues today.

6   Because on both sides, we really need to be focused on kind of

7   tying down loose ends.  And then as the Court has suggested,

8   moving into depositions.

9       To respond to your question about the kind of issues that I

10  see coming on plaintiff side, some of them we're going to talk

11  about today.  We really need to get firm final responses to some

12  very basic interrogatories so that we know that we have a handle

13  on what plaintiffs' accounts are, what mobile devices they were

14  using. There is, as we'll discuss, some issue with how much data

15  plaintiffs have collected to date.  And that's sort of a gating

16  issue to getting onto the search terms.

17      But Mr. Maya is right, that we had made some progress on

18  those search terms discussions, and we'll resume those in short

19  order.  Maybe we'll be able to resolve them among ourselves.

20  That may be an issue that at least in some aspects we need to

21  bring to the Court.  To date, we only have 800 documents in total

22  from plaintiffs.  I'm hoping that once we make progress on the

23  search terms of the custodial data, that number will increase.

24      We still need additional data from plaintiffs, and if not

25  from plaintiffs then perhaps from third parties about data that

1   plaintiffs have shared with third-party apps that are on their

2   devices.  And so we'll be working on that.  And then obviously,

3   we need depositions of the plaintiffs.  But that's how I see from

4   our perspective, the next four months progressing.

5        **THE COURT:**  Thank you.  And from your side, no depositions

6   personally noticed.  You'll still need to go through some

7   foundational interrogatory and document discovery first.

8        **MR. MARAIS:**  Yeah.  From our side for plaintiffs, there'll

9   be four depositions of those plaintiffs that there may be some

10  third-party depositions.  But we have time in the next four

11  months, I think to do that.

12       **THE COURT:**  All right.  Thank you very much.  And as far as

13  their requests go to you, any -- I guess, like, rephrase this

14  question.  Prioritization of different things.  So what are going

15  to be the most important areas I can help you in, in the next 60

16  days?  Is it going to be the documents and search terms?  That

17  kind of stuff?  Or is there some other area I think I'd be much

18  more helpful?

19       **MR. MARAIS:**  You mean, from -- with respect to plaintiffs'

20  discovery of Google?

21       **THE COURT:**  Yeah.  Yeah.

22       **MR. MARAIS:**  Yeah.  Your Honor, I mean, I think that the

23  issue that is pending today that we can get into about ESI

24  custodians is crucial.  We -- one of the issues that we've had

25  is, as Mr. Sobol has done today, and as has happened in the

briefs, plaintiffs are making it sound as though there has been

no discovery in this case.  And Your Honor has been with us

through dozens of discovery disputes and is fully aware of the

history of the hard-fought discovery litigation in this case.

We, in November 2021, came to an agreement with plaintiffs'

counsel that we would reproduce documents from the Arizona matter

which even in the current brief, plaintiffs describe as

substantially the same issues that are being litigated in this

case.  We resisted that at first, because we don't think the

claim discovery is proper.  But ultimately, we reached an

agreement with them that the Court is aware of.  And we have

produced 500,000 pages of discovery so far.

Now, we have not said to plaintiffs or in briefing to the

Court that that is the absolute be all and end all.  But given

that we have four months left to wrap up document discovery and

move into depositions, I don't know whether plaintiffs want to

take ten depositions, but I assume they do.

And given the time that we have left, what we really need to

be doing on the ESI custodial piece at this stage of the case,

where we've already produced data from 19 different custodians is

focusing clearly carefully on what is still missing.  And that's

the answer that we haven't been able to get out of plaintiffs.

What it is, I heard today that they have now got a good

handle on the Arizona documents.  That's great.  To the extent

they think they're missing something, we've never heard from them

14

1   what that is, and I think that needs to be the tenor of the

2   discussion from here on out.

3       **THE COURT:**  All right.  Thanks very much.

4       All right.  Well, that gives me some context for the

5   conversation.  It sounds good, that sounds like there's some

6   consensus in having some check ins going forward.  So let me set

7   a few.  And if it turns out that these are not frequent enough,

8   or they're too frequent, we can modify it.  But let's set if May

9   3rd at 11 a.m. in person in Courtroom 5 for a discovery status,

10  and ask for you with a Friday before on April 28th to file a

11  joint agenda and status report.

12      And I'll ask that to be no more than ten pages long, so you

13  can sort of prioritize the top things.  It doesn't have to be ten

14  pages, it can be shorter, but just tell me kind of what the

15  status is and where I can -- especially where I can help you.  If

16  there's issues in dispute, put them in that report, so I can be

17  prepared to help you resolve the disputes.  And then let's do the

18  next one the following month, June 7th, also 11 a.m. in person in

19  San Jose, with a report due June 2nd, that's the Friday before.

20  Same encouragement as to what would be in the report.

21      And if I look at your report, of course, if you say you

22  don't want to have a meeting, you can tell me that and I will

23  probably agree with you.  But I'll look at your report and see if

24  we need to make any modifications of the timing and topics for

25  the discovery status.  And I would intend if things go -- kind of

1   keep going as they are, we'll do that again in a similar schedule

2   in July and August, if appropriate.

3        **MR. MARAIS:**  Thank you, Your Honor.  That's helpful.

4        Can I clarify one thing I assume as before, what the Court

5   is asking is for us to, you know, between now and the next

6   written report date, kind of keep working on the disputes as much

7   as we can, and then roll open unresolved issues into that one

8   status.

9        **THE COURT:**  Right.  My hope, hope would be that this would

10   take the place of discovery letter briefs.  You might want to

11   file in between now and a month from now on various different

12   topics.  This will reduce the total number of filings and allow

13   you to consolidate your efforts into those reports.  That's the

14   goal.  But I'm not precluding you.  You might have some emergency

15   that occurs sooner, and I want you to -- I order you to confer

16   first.

17        I don't want to hear about it to for the first time before

18   you've talked with each other.  But if you do have something that

19   comes up sooner than that, you can present it sooner.  But that's

20   when I'll at least plan to see you next in person.

21        Is that responsive to your question, Mr. Levin?

22        **MR. MARAIS:**  Yeah.  Thank you.  Thanks, Your Honor.

23        **THE COURT:**  All right.  Very good.  So that's the piece

24   going forward and how we can talk about it.  So let's go back --

25   so thank you.  Let's go back to the top then, which is the -- in

1   the letter brief filed by plaintiffs at 283.  Dispute about the

2   custodial data and the number of custodians and who the

3   custodians are.

4       **MR. SOBOL:**  Your Honor, may I beg the Court's indulgence for

5   a moment?

6       **THE COURT:**  Yeah.

7       **MR. SOBOL:**  Just a clarification on the last point, I

8   apologize for not speaking up sooner.  But I appreciate that we

9   will endeavor to try to roll everything into the next status

10  report.  My concern is that I don't -- some of these disputes are

11  so central and so foundational to the case, like our dispute

12  about location information, and given our short time frame.

13      You know, I think plaintiffs are going to have a strong

14  interest in -- and if it's ready, after our meet and confer's of

15  course, you know, if it's ready, and it might be now, but I mean,

16  to get in front of you before May 3rd, I really think that we're

17  going to want to do that.  I just want to make sure that that's

18  going to sit well with the Court.

19      **THE COURT:**  No.  All right.  Well, tell me more about what

20  it is you think needs to be resolved and how we should resolve it

21  on something sooner than our next get together.  So you know, I'm

22  going to take up the issues you've told me about today, here

23  right now.  So maybe tell me after that.  But you tell me.  What

24  would you like -- what do you think needs to be addressed, and

25  when?

1       **MR. SOBOL:**  Well, what comes to mind right now, Your Honor,

2   is this dispute about location information, which we're very

3   towards the end, if not already complete with our meet and confer

4   on.  And so, you know, our basic view of this comes about because

5   Google has interpreted the scope of the case, the scope of

6   discovery, and their own definition of location information.  We

7   took it on.  We were in front of Your Honor on that on a number

8   of ways.

9       And what they're asking us to do at this point is basically

10  to meet and confer on each request, and go through the definition

11  of location information with respect to each request.  I don't

12  think we have time for that.  And the fact is, is that the

13  functional definition which we've advanced in which Your Honor

14  adopted for the point of I think it was in Interrogatories 4 and

15  5 at one point.  That definition functionally is the same

16  definition that is used for location information by Google in its

17  settlement agreements with the attorneys general.

18      And we just don't see why it is that it's so impractical to

19  use that definition here, allow the plaintiffs to define the

20  scope of the case the way they believe they've pled it, and adopt

21  that here.  It's obviously a workable definition.  So that is

22  something that is so threshold to how we approach all this

23  discovery, that I would -- and given our schedule, I would -- I

24  really wouldn't want to have that waiting another month before we

25  brought it to you unless we can reach agreement on it, which is

1   really does not seem possible.

2       **THE COURT:**  All right.  Fair enough.  Before I give Mr.

3   Marais a chance to respond, are there any other issues like that,

4   that you say all that needs to be resolved sooner than either

5   right now, or in the next month?

6       **MR. SOBOL:**  I would like to defer to my colleagues on that

7   if they feel -- if they feel that I -- but that's the one that

8   comes to mind for me, Judge.

9       **THE COURT:**  I'm looking around the Zoom room at other

10  plaintiffs' counsel.  I don't hear anyone else speaking.  All

11  right.

12      And Mr. Marais, Mr. Gorman, your thoughts on that issue?

13      **MR. MARAIS:**  Your Honor, I want to be a little careful

14  because it is sort of a live issue between the parties and I

15  don't think it's fair on anybody to preview a dispute.  It's not

16  at all clear to me why Mr. Sobol thinks that a definition used in

17  a settlement agreement in some other context  is automatically

18  appropriate as defining the scope of discovery in this case.  But

19  that's the dispute.  And I don't -- you know, we're not going to

20  spring it on the Court.

21      If plaintiffs are saying that they can't wait a month for

22  that.  We have made progress on discussing it, and on a letter

23  brief.  I mean, again, we disagree with the merits of plaintiffs'

24  position.  I think we all probably would benefit from avoiding a

25  situation where the parties are filing ad hoc briefs every time

1    an issue comes up.  And the Court's general guidance that we try

2    to do a regular status report makes a lot of sense to me.  But if

3    the Court wanted to set something specially on that issue before

4    a month from now, I think that's fine.

5         **THE COURT:**  All right.  Well, Mr. Sobol highlighted it as

6    something that he thinks needs resolution sooner, so I respect

7    that.  But I also want you to try to talk it through with each

8    other to see if you can reach an agreement on it, because it

9    could be more efficient if you're able to reach a collective

10   agreement on the issues.  But let's put that on a separate track.

11        So if I might ask you to confer further with each other in

12   the next week by -- through April 12th, do so, and then we'll

13   just make the deadline April 12th for you to file a joint letter

14   brief on that issue.  And if you just tell me you've resolved it,

15   then it'll be a very short brief.

16        But otherwise, tell me what the different issues are.  And I

17   think particularly helpful, Mr. Sobol, as you present it is, it's

18   for me to understand, right?  What relief are you seeking?  You

19   know, which discovery request does this apply to?  What is the

20   particular language that you're asking for?

21        Maybe you have that very clear in your mind, but I'm a

22   little bit cautious of knowing if I say right now oh, I adopt

23   plaintiffs definition to know what -- you know, what that's

24   applying to, which requests?  Over what -- how many different

25   things is that going to impact?  Because I don't have a very good

1   context at the moment for how my decision would impact the scope

2   of your discovery and the case overall.  So that would help me to

3   know, specifically, what is plaintiff seeking?  And from Google's

4   perspective too, clarity as to how my decision would be impacting

5   things.

6       **MR. SOBOL:**  Understood, Your Honor.  Well, if need be, we'll

7   fully brief that aspect.

8       **THE COURT:**  Very good.  And I'm not going to set a hearing

9   now because I want to see what you do first.  I'm going to be

10  here every day in April for criminal duty and so if I'm going to

11  set something, it'll be here in April.  All right.  Now, let's go

12  back to -- so we'll set that briefing schedule just on that one

13  issue.

14      All right.  Back to plaintiffs requests for custodial data

15  and definitions for who is going to be searched.  First, I want

16  to make sure I'm starting from a point of common understanding

17  some of the parts which are in agreement, before we resolve any

18  disputed areas.

19      In plaintiffs' letter brief in 283, you reference a total of

20  40 custodians, reflecting the addition of five additional

21  custodians.  So basically going from 35 before to 40 now that

22  you're seeking.  And then you identify five particular persons

23  that are the five that are added.  So my question is, does that

24  mean that there was agreement on the 35?  Or I think I think the

25  answer is no, but I want to figure out what was your agreement to

1   before?  And what is the area of disagreement being added to it?

2   And who on the plaintiff will be taking this issue up?

3       **MR. KELSTON:**  I will, Your Honor.

4       **THE COURT:**  All right, Mr. Kelston.  So tell me what part is

5   agreed and which part is disagreed?

6       **MR. KELSTON:**  Well, there has not been any actual agreement,

7   though Google has proposed four custodians who are on our lists.

8   So I suppose it's appropriate to say that there has been

9   agreement on those four.

10      **THE COURT:**  And is it specifically the four, or just the

11  number four?

12      **MR. KELSTON:**  No, it's a specific four that they have

13  proposed, who are --

14      **THE COURT:**  Okay.  Thank you.

15      **MR. KELSTON:**  -- who are included in our list.

16      **THE COURT:**  Okay.

17      **MR. KELSTON:**  To clarify one point.  The examples that we

18  gave in our filing are not the five added.  At least one of them

19  is one of the added, but the others are just examples of people

20  on our list who Google -- who are not on Google's list, who we

21  think are very obvious candidates.

22      **THE COURT:**  I get it.  So these five identified on page 3,

23  those are people that are included in your list and excluded on

24  Google's list.  So that's a clear area of disagreement as to

25  those five.

1     **MR. KELSTON:**  Yes.  As well as to the other -- 36 minus five

2    -- the other 31.

3     **THE COURT:**  All right.  Starting with four and everything.

4    All right.  Very good.  I think I understand then where you're

5    starting from.  And in one of the things Mr. Sobol referenced is

6    that you would now have been able to review the documents from

7    the Arizona collection.  So that's some more information than you

8    had than when we were last talking together.

9     So understanding that you've digested the Arizona documents

10   and have done some more analysis, why should I grant your request

11   for identifying 40 custodians, including these five that are

12   expressly objected to?

13    **MR. KELSTON:**  Your Honor, the reason is that the Arizona

14   production, those documents comprise a part of, but certainly not

15   all of the discovery to which we're entitled in this case.  And

16   while Google's response to many of the issues we raised including

17   their response on specific custodians is, but you already have

18   the Arizona documents.  The fact is that we don't know what those

19   Arizona documents comprise.

20    Google has refused to give us either the document requests

21   to which those documents were responsive, or -- and even more

22   critically, has refused to give us the search terms or other

23   search methodologies that were used to gather those documents.

24   So we don't know what is included, and we don't know what was

25   excluded from the Arizona production.

1        Moreover, our case involves certain subjects, certain

2    allegations that were not in the Arizona case.  An example being

3    the damages for unjust enrichment.  The monetary damages were not

4    an issue in the Arizona case.  And so some of our discovery is

5    aimed at monetization of location data.  And you know, and some

6    of our custodians are people we believe have information about

7    that.

8        So the discovery in the Arizona case and this case, are

9    simply not coextensive.  And the agreement between the parties

10   relating to the production of the Arizona agreement specifically

11   recognize that saying, "Plaintiffs reserved their right to

12   propound additional discovery related to the Arizona action."

13   Google seems to be missing the significance of that provision,

14   which was in the report to the Court about the agreement for the

15   Arizona documents.

16       So that's sort of the high-level view of why we believe

17   we're entitled to further discovery.  Now as to, you know, the

18   specific custodians and the specific number 40, plaintiffs have

19   made every effort for more than 18 months to try to work

20   cooperatively with Google to identify an appropriate list of

21   custodians for collection.  And Google frankly, has just refused

22   to cooperate and has been unreasonable every step of the way.

23       We have -- I mean, the reason we're here, Google says, you

24   know, at this late stage of discovery, the only reason we're here

25   at this late stage of discovery is we've been unable to make any

24

1   progress.  We have proposed at different times four different

2   lists of custodians.

3       The first one we did, we proposed before we even had the

4   Arizona documents because Google refused to negotiate about

5   custodians, unless we provided the initial list, which is

6   contrary to the way discovery normally proceeds.  It's contrary

7   to the way discovery should proceed, and forced us into, you

8   know, an attempt to make any progress.  Forced us into developing

9   a list of custodians based solely on publicly available

10  documents.

11      Now, since then, Google has repeatedly tried to kind of

12  weaponize that list against us by saying that well, we're not

13  providing enough information about why we believe they have

14  relevant documents.  But at the same time, Google refuses to

15  provide any additional information about those people.  It

16  refuses to provide any explanation as to why it objects to any

17  individual custodians.  And simply tells us over and over that we

18  don't have a good enough basis to support our requests for those

19  custodians.

20      One of the things that's raised in Google's submission, you

21  know, is the discussion that took place in the December 16th meet

22  and confer, where again, we were providing additional information

23  about why we had put custodians on the list.  They raised eight

24  specific names.  We provide -- we had already provided the job

25  titles that we believed provided sufficient support, but at that

1    point, we also gave them additional information.

2    They repeatedly asked us, where did you get this information?

3    And for some custodians, the answer to that question was not

4    readily at hand.  And they have taken that and kind of distorted

5    that conversation into telling the Court that for many

6    custodians, we didn't know why they were on the list.  And that

7    is simply not accurate.

8         In terms of, you know, the other portions of that

9    discussion, Google has quoted from that meet and confer from what

10   apparently they represent to be a transcript of it.  We've not

11   seen that transcript.  We don't have access to it.  If the Court

12   is --

13        **THE COURT:**   Which transcript are you referring to?

14        **MR. KELSTON:**   The transcript, if it is indeed a real

15   transcript, of the December 16th meet and confer.

16        **MR. MARAIS:**   Your Honor, I can give some context to this.

17   You'll remember some time ago, the parties came to you with

18   competing proposals, when we were struggling with the meet and

19   confer.  Google suggested that we transcribe those calls in real

20   time and split the cost, and the plaintiffs wanted to record them

21   on Zoom.  Where we ended up was that you said either party could

22   record them by Zoom as long as they shared the recording, and

23   then either party could make a transcript of that.  So we

24   retained, I believe, Veritext, and had a transcript of that call

25   made.

1      Plaintiffs have refused to share the cost of that transcript

2   with us.  I offered to Mr. Kelston yesterday, not that I think

3   Your Honor wants to read the 50-page transcript, but I offered to

4   stipulate to submit it to the Court, and I never heard back.  So

5   I take some offense at the idea that we've distorted anything

6   that's in that transcript, but that is its genesis.

7      **THE COURT:**  Thank you.  I understand now what you're talking

8   about.  Okay.

9      **MR. KELSTON:**  If Your Honor is inclined to consider any of

10   the assertions that Google makes based on the events of that meet

11   and confer, we would request that Your Honor view the actual

12   recording.  We're happy to provide specifics.

13      **THE COURT:**  I'm not interested in going back in time.  I'm

14   right here wanting to know how I can resolve the dispute right

15   now.  So why 40?  You've got a list of 40 custodians.  Google is

16   going to tell me what it should be four?  What's the support for

17   40?

18      **MR. KELSTON:**  The support for 40 is that 17 of those

19   custodians were custodians in the Arizona action.  Google has

20   agreed to run supplemental searches on four of the Arizona

21   custodians, thus acknowledging that those custodians may indeed

22   possess additional documents relevant to this case that were not

23   produced in Arizona.  And we failed to see why the other 13

24   Arizona custodians on our list are not in the same position.  As

25   I say, the issues in the case and discovery in the case is not

1   coextensive.

2       For those custodians -- for the Arizona custodians, Google

3   has already collected and processed the information and has

4   reviewed one would assume a large portion of the documents that

5   should be produced in this action.  So any claim of burden is

6   certainly mitigated by the earlier Arizona production, but that

7   production is not sufficient.  In this case, it's not responsive

8   to our document requests and it doesn't include certain issues,

9   you know, certain key issues and information for this case.

10      **THE COURT:**  All right.  I need to get over to Google.  So

11  anything else?

12      **MR. KELSTON:**  Well, that and that I was just discussing the

13  Arizona custodians who were on our list.  If Your Honor wants to

14  get their response on that, I'd be happy to discuss the remaining

15  custodians after that.

16      **THE COURT:**  Mr. Marais, are you handling this or Mr. Gorman?

17      **MR. MARAIS:**  I think I am, Your Honor.

18      **THE COURT:**  All right.  So here's the areas where it would

19  be helpful for me to understand a little more.  One, the Arizona

20  production sort of what -- how that overlaps with what's being

21  sought here.  And in response to the assertion that plaintiffs'

22  counsel doesn't know what requests it is responsive to, what the

23  search terms were used.  It prevents them from weighing the

24  discovery in the two cases.  That would be helpful to understand.

25  Two, they say it should be 40 custodians.  I understand Google's

1  agreed to search for four.  Why four, not 40, or some number in

2  between.

3      And then finally, they've identified here five particular

4  people, including the CEO.  If there's arguments about -- that

5  you want to make about certain people, I want to give you a

6  chance to tell me why certain people should be excluded for sure.

7      **MR. MARAIS:**  Yeah.  Thanks, Your Honor.  Just to go back a

8  little on the history.  And I'll be as brief as I can.  Mr.

9  Kelston mentioned in his description that they had sent us four

10 different lists of custodians during the discussion, and that

11 sort of encapsulates the problem we've had.  We got a list of 52,

12 we got a list of 35.  We just saw a new list when they submitted

13 this brief a week or two ago, the 40 custodians.  Some people on

14 that list had been taken off.  It's been a real moving target.

15     And the parties have not -- I think it's fair to say, have

16 not really met and conferred about the identity of the

17 appropriate custodians.  Because we reached a point in those

18 discussions where it was unproductive, and we thought the most

19 useful next step was to get the Court's guidance on a manageable

20 number of custodians.

21     Now, I don't know where the number 40 comes from.  It is

22 enormous.  Plaintiffs have talked about other cases like Brown,

23 which they cite in their letter brief.  You know, Brown started

24 with ten custodians.  And then over time, based on information

25 learned in discovery, other custodians were added.  But in narrow

1    ways, and for narrow time periods.  <u>Brown</u> started at ten.  It did

2    not start at 40 custodians.  And it started at ten without the

3    benefits of this cloned production the plaintiffs told us was

4    intended to streamline discovery in this case.

5          So what I think we should be focused on and I just heard for

6    the first time today from Mr. Kelston, that they think that there

7    are damages documents that they want, that they don't have.  Now,

8    it's not true that there wasn't a damages claim in the Arizona

9    case.  The Arizona Attorney General was pursuing a disgorgement

10   theory.  And those parties were about to go to trial on damages.

11         So I would need to understand a little better what it is he

12   thinks is missing.  But the resource that I think plaintiff

13   should be consulting is not other discovery from Arizona, or

14   search terms that may have been used in other cases, it is the

15   primary source material that they have, and that they've said

16   that they are familiar with.  So plaintiffs have looked at those

17   documents.  And what we need them to do is tell us in an attempt

18   to streamline discovery the way they said they were going to,

19   what it is that they think is missing, and who, if any, are the

20   custodians that they think may have those documents?

21         We're not getting that at all.  We're getting lists of 40

22   people that include Google CEO that seemed designed to inflict

23   pain rather than identify relevant documents.  We have proposed

24   four custodians.  Your Honor asks why those four custodians.

25   They are in our view, the four people who are most likely to have

1    relevant information, based on our understanding of plaintiffs'

2    case.  Plaintiffs' case is that although their clients turn their

3    location history setting off, their location information was

4    nevertheless connect -- collected because of a different setting,

5    Web & App Activity or WAA.

6         Now, we've proposed the program manager for location

7    history.  We have proposed the program manager for WAA then use

8    the data controls.  We have proposed, number three, the head of

9    the Android litigation team who was responsible for context

10   technologies that take data and turn it into meaningful

11   information like location.  And we have proposed the principal

12   software engineer who works on the back-end location services

13   that allow Google products to estimate user location.

14        So we have identified those four because we think that they

15   are at the heart of plaintiffs' case, and they are the folks that

16   are most likely to have relevant information.  And we have said

17   to plaintiffs throughout that if there are other individuals who

18   they think may have information that wasn't collected in Arizona,

19   we're more than happy to meet and confer about that.

20        But we can't start at a -- this outrageous number of 40

21   custodians as though this case were at day one, when we've gone

22   through everything.  We've gone through and produced just

23   hundreds of thousands of pages of documents already on the

24   assurance to us and the Court that doing so would streamline the

25   issues.

1    **THE COURT:**  Thank you.  And can you speak to the particular

2    five individuals bullet pointed on page 3 of their briefs that

3    they're seeking (indiscernible)?

4    **MR. MARAIS:**  I confess that I'm not really in a position to.

5    Again, we haven't met and conferred with plaintiffs about them,

6    and the first time I saw those names was in plaintiffs' letter

7    brief.  You know, with respect to Google's CEO, we've met and

8    conferred before and I believe where we landed was the plaintiffs

9    were withdrawing him from a prior list.

10    So I think that we need to meet and confer about those

11    folks.  I don't know if the Court was going to order four

12    custodians.  I would be surprised if those are the four

13    plaintiffs would choose, rather than the individuals I've just

14    described.

15    **THE COURT:**  All right.  Thank you very much.

16    Mr. Kelston, anything further on this portion (indiscernible)?

17    **MR. KELSTON:**  Yes.  Yes, Your Honor.  First, that Mr.

18    Marais' description of, you know, plaintiffs presenting a moving

19    target, because we have revised our custodian list through the

20    meet and confer process, is really kind of rich.  I mean, that's

21    the purpose of the meet and confer process.  We have been

22    responsive to Google's concerns.  We have taken people off the

23    list.  We have -- Google wanted us to review the Arizona

24    documents before agreeing on custodians.  We did that.

25    We've gleaned additional information.  We've added the five

1  people based on specific documents.  We, at Google's request,

2  provided them with both additional information about each of our

3  35 custodians.  This was before the stay, and Bates numbers of

4  specific documents that to us indicated that those people had

5  relevant information.  Google never responded.  Google,

6  throughout all of this, has never agreed to a single custodian

7  that we have proposed that was not on their original list of

8  four.

9      Now, the five people that we describe in this letter are, we

10  think, obvious, appropriate, custodians.  They have not

11  responded.  They don't -- they haven't provided information,

12  haven't said why they aren't.  But when we, the CEO, Sundar

13  Pichai, was omitted from one iteration of our custodian list,

14  that was part of an -- we trimmed I believe, 17 custodians from

15  one list to the next.

16      That was an attempt to respond to Google's concern and find

17  a way to reach common ground.  We did not acknowledge that he was

18  not an appropriate custodian.  And it was not the result of a

19  meet and confer in which that was discussed and, you know, they

20  asked us or provided some information why they thought he should

21  be omitted, and that's why he was omitted.

22      So it's completely appropriate that he's on the list, and

23  particularly in view of some of the documents in the Arizona

24  action that shed light on his direct involvement in the key

25  events in the case.  We have never said that we're married to the

1   number of 35 or 40.  But Google has never tried to trim that

2   number other than to four.  And we have repeatedly asked them if

3   there are other individuals they think are more appropriate for

4   certain subject matters, that we would welcome their input and

5   suggestion of substitutes.

6       We have asked them if there are people on the list who they

7   believe the documents would be redundant because of their

8   particular reporting requirement where overlapping duties, we

9   asked them to tell us about that.  We would want to take those

10  people off the list.  They have not responded in any way to any

11  of those requests.

12      So when you say why 40, the answer isn't really, you know,

13  40 because, but it's 40 because there are 40 people we believe,

14  legitimately believe have relevant documents and they have not

15  done anything to try to encourage agreement on a list short of

16  40.

17      You know, when they say they talk about the burden and how

18  many months it would take for ten reviewers, I mean that is

19  really pulled from thin air and is not worthy of any credit in

20  terms of evaluating the burdens here.  And when they say that 40

21  is too many, it's outrageous.  Well, 40 is too many, compared to

22  what?

23      40 is too many compared to the number of custodians commonly

24  approved in similar cases?  40 is too many compared to the number

25  of employees in the company?  40 is -- I mean, it's a numerator

34

1   without a denominator, but they're claiming it's too many.

2   That's not a proportionality analysis.  And given their complete

3   failure to negotiate in good faith about these custodians, we

4   were really left with no option, but to ask the Court to approve

5   the list that we put together.  And that's why it's 40.

6       **THE COURT:**  All right.  Here we are, and I'll help you

7   forward.  All right.  So the touchstone is proportionality.  Of

8   course, discovery also needs to be relevant.  But here, we're

9   focused on balancing the interests of the parties and the burdens

10  involved to this discovery, mindful is where we are in the

11  process.  Chronologically, we're not at the beginning of

12  discovery.  We're thinking about what might go on over the course

13  of years.  But we're now about four months from the end.  So I

14  need to help you with discovery that you can accomplish

15  collectively, within the time frame remaining without unfair

16  burdens and costs on any party.

17      So my answer is going to be two parted.  One, the four

18  custodians that Google has designated, those are custodians that

19  will be used for this custodial data collection.  So four, plus

20  six more that the plaintiffs will identify from among the list of

21  42 they've previously shared most recently with Google.  So four

22  plus six equals ten.  And I'm going to order you to confer about

23  those ten.  There's not much to confer about as far as Google's

24  four designees because you've identified who they are, and that's

25  a starting point.

1     But as to the next six that plaintiffs will designate, I do

2  want you to talk over the next week by April 12th about who they

3  are, because it still may be that there could be some trade offs

4  and that Google will suggest someone different than who plaintiff

5  is asking for.  It might be someone else who would be more

6  efficient and a more appropriate custodian.  But I want to leave

7  it to you for that conversation to work out who the appropriate

8  ten total are.

9     And why ten and not more?  Well, in significant part, it's

10 because of the Arizona production.  I find that that production

11 is foundational and should provide plaintiffs' counsel with

12 information they can use both to pursue this case, but also to

13 efficiently use that information to efficiently pick the people

14 who you want more information about.  And also to take

15 depositions, that should give you a starting point.  And you've

16 had that information now, a starting point to start taking

17 depositions sooner rather than later.

18     So if we're not in a situation where there was this

19 substantial document production from another useful case, it

20 might identify more, but because that you do have that

21 production, and because there's not much time left now in

22 discovery, I'm picking ten as the number of custodians asking you

23 to confirm on April 12th.  So that's how I'll resolve those

24 issues.  And I would like to know, in your -- on April 12th, kind

25 of what the status is.  Hoping that it's just -- that you've

1    resolved it.  But if there's still some remaining issue, tell me

2    then.

3        **MR. KELSTON:**  Your Honor, if I would only ask that you

4    perhaps reconsider about the Arizona custodians because the

5    burden of them collecting from those custodians is quite small.

6    And they have already acknowledged by including them in the

7    Arizona perception that they have relevant documents.  And

8    they've acknowledged that they may have additional by being

9    willing to run additional searches on some of the others.  So as

10   I said, 17 of the 35 were Arizona custodians.  And --

11       **THE COURT:**  Request for reconsideration is denied.  And I've

12   listened to all the arguments by both sides here and read your

13   briefs.  Ten is the number and you can assess on your team which

14   ones you want to pick, whether it's from the Arizona production

15   or from outside the Arizona production.  Maybe you want to look

16   somewhere else.  I'll leave the tactics to you.  But that's the

17   parameters of the discovery.

18       All right.  I need to get on because we've got some criminal

19   matters to get to soon.  So let's turn over to the Google

20   requests, starting with the request for the verification of

21   Interrogatories 1 and 2.  Now, I heard at the beginning Mr. Sobol

22   say or maybe it was Mr. Kelston.  I am not trying to misattribute

23   who said it, but there was a response that was made to the

24   interrogatories.

25       Mr. Maya, go ahead.

1    **MR. MAYA:**  That's right, Your Honor.  The answer to both of

2   those questions is yes.

3       **THE COURT:**  All right.  So back over to then Mr. Marais.

4   What more do you want as far as --

5       **MR. MARAIS:**  Thanks, Your Honor.  This is one of the most

6   fundamental requests from our side and it's Interrogatory Number

7   1, which is identify the mobile devices that are -- the mobile

8   devices that you use during what you view as the relevant period

9   in this case.  It sort of has two components, the one ends up

10  being about the email accounts and email, you know, the Gmail

11  addresses that plaintiffs have used, and the other is about

12  mobile devices.  But they're both really fundamental requests.

13  Let me take them in turn.

14      On the Gmail accounts, this is information wholly within

15  plaintiffs' control.  I understand plaintiffs' position to be

16  that they have produced identified all of their Google accounts.

17  I take counsel at his word, but I do think that plaintiffs should

18  say in their interrogatory response, this is a full and complete

19  list.  Because it has happened time and again in this litigation

20  that they have supplemented, added other Google accounts.  And

21  we're at the point of the litigation where we really need to know

22  that we have identified all of their Google accounts.  If they

23  have as they say they have, I think it should be very easy for

24  them to make clear in their interrogatory response that they

25  file.

1      **THE COURT:**  Sorry to interrupt.  Did they provide a verified

2  interrogatory response to number 1 saying that, or tell me what

3  they haven't done that you're saying is sufficient?

4      **MR. MARAIS:**  Their response identifies a set of accounts.  I

5  do not know, as I sit here, whether it's verified, to be honest.

6  But the response identifies Google accounts.  What we have asked

7  them to do is say that this is a full list, not TBD, or a set of

8  addresses including these ones.  That this is the list.

9      **THE COURT:**  All right.  Thank you.  And how about -- same

10  thing for devices.  The same concern?

11      **MR. MARAIS:**  Yeah.  So devices are a little different, Your

12  Honor, because as you know, the case has been stayed for a year.

13  I have spoken to Mr. Maya in the last few weeks to ask that he

14  supplement that list to identify any new devices that plaintiffs

15  have acquired.  I got an email last night that I'm struggling to

16  interpret.  It said, "There is no information with which to

17  update the response."

18      I don't know what that means.  I don't know whether

19  plaintiffs' counsel have talked to plaintiffs about whether they

20  have new devices.  When I look at the list of devices we have, I

21  can see that most of the plaintiffs change their phones every one

22  to two years, as many of us do.  And yet two to three years have

23  gone by, and there have been no supplementation.

24      So I'm skeptical that there aren't any new devices.  And I

25  honestly don't know whether plaintiffs' position is yes, we

1    counsel have talked to our clients, and there are no new devices,

2    or if it's something else.

3         **MR. KELSTON:**  Your Honor, may I respond?

4         **THE COURT:**  Okay.  Mr. Maya, how are you --

5         **MR. MAYA:**  Yeah.  Those interrogatory responses are

6    verified.  I think the wording is very clear.  I am hearing Mr.

7    Marais say otherwise.  I haven't tried to be obtuse in my emails.

8    I think that interrogatory responses are clear.  They are

9    verified.  They were supplemented January 2022.  So it's not

10   years ago.  I mean, I have checked back in with plaintiffs.

11        The email that he's talking about last night, was preceded

12   by other emails and a meet and confer, during which I explained

13   that one of the plaintiffs had found one of the previously --

14   well, actually two previously identified devices that are listed

15   in Interrogatory 1.

16        They had been -- he didn't have them at that time.  He

17   didn't know where they were.  His kids had them.  He had now --

18   he found them during the stay.  We have them.  They have not been

19   -- we haven't been able to image them.  That's the update.  It's

20   not information that changes the response to Interrogatory Number

21   1.

22        **THE COURT:**  Mr. Marais, what's the relevance of, say a

23   device that was acquired in January of 2023?  What's the

24   relevance of a device from then as to the claims in the case and

25   defenses?

1    **MR. MARAIS:** Yeah.  The class period that plaintiffs have

2    alleged is January 2014 through the present, and part of their

3    claim is that they have -- that they're privacy conscious and

4    that plaintiffs have refused or tried to refuse to share their

5    location with Google and presumably other apps.

6         And so what their settings are at any given time, including

7    on new phones they acquired in the last year, will go to the

8    truth of those claims.  So again, Your Honor, if Mr. Maya is

9    representing to everybody today that he has double checked with

10   plaintiffs, and that they have no new devices in the last 14

11   months, okay, but I haven't heard that.

12   **MR. MAYA:** And Your Honor, the question about settings is

13   Interrogatory Number 4.  We've provided copious information on

14   all the settings of plaintiffs' devices as of that January 2022

15   response.  That's a completely different issue.

16   **THE COURT:** All right.  All right.  Thank you.

17        Well, here's my ruling on this request from Google.  And

18   that's to compel updated responses to Interrogatory 1 and 2.  And

19   I'm going to order a supplementation in the next two weeks by

20   April 19.  And the principal reason why it's just the passage of

21   time.

22        Our last conversation in the prior supplementation was in

23   January 2022, with the assertion being the class period is to the

24   present, I want to get an update to that response.  And it may

25   well be that there's not much of an update, but I want Google to

1    have the benefit of the current information.  And plaintiffs'

2    counsel has heard the concerns.  The list is not full, it's not

3    current.  I want to give you a chance to evaluate that and then

4    to provide an updated response served by April 19th to Google.

5        **MR. MAYA:**  Thank you, Your Honor.

6        **THE COURT:**  All right.  So that's the ruling on Rogs 1 and

7    2.  Supplement by April 19th.  All right.

8        And then to the last issue, which is the overall collection

9    of custodial data.  And of course, there's a collection, but then

10   there's a question of what's what and when is something going to

11   be done with that custodial data?

12       Mr. Marais, let me start with you as far as what you're

13   wanting me to order right now.

14       **MR. MARAIS:**  Right.  Thank you, Your Honor.  Just a little

15   bit of background.

16       You're right.  This is on the collection and forensic

17   imaging and making sure that everything that's out there is

18   preserved.  We had a precursor dispute about this I think in late

19   2021.  The court ordered plaintiffs to collect all custodial data

20   by January 2022 and to certify that they had done that.  After

21   those deadlines passed, I got updated information from Mr. Maya

22   explaining that between them plaintiffs had 26 devices.  They

23   have only imaged seven of those 26 devices.

24       And there are two issues.  The first is plaintiffs claim

25   that with respect to many of those devices, they simply can't get

1   into them.  They don't have them.  Maybe they don't work anymore.

2   They've forgotten what the PIN is so they can't access them.

3        That I'm not asking for any ruling today.  I'm just flagging

4   it because we have some spoliation concerns, and that may come up

5   again in the future.  I have struggled to get information about

6   what that means for Mr. Maya, because he has told me he doesn't

7   want to answer my questions, and I can ask them to plaintiffs

8   when we depose them.  So it's not ripe yet, but I will keep

9   trying and it may come before the Court.

10       The second issue is plaintiffs are refusing to image their

11  current devices.  I don't really understand the basis for this.

12  But they're essentially arguing that it's inconvenient for

13  plaintiffs to send in or have some forensic expert come and make

14  copies of their current devices.  But those are going to have the

15  most current settings, the most current email text messages.  And

16  if we're about to embark on custodial searches, I think it's

17  critical that they image their current devices as well.

18       **THE COURT:**  All right.  So give me your conclusion as to

19  what you want me to order.

20       **MR. MARAIS:**  The plaintiffs -- some of its going to flow

21  from the identification that the Court's just ordered.  But the

22  plaintiffs' image -- their plaintiffs' counsel image their

23  clients' current mobile devices the way that they've done with

24  some of the historic devices.

25       **THE COURT:**  All right.  Thank you.

1          Mr. Maya, are you handling this one?

2          **MR. MAYA:**  Yes, Your Honor.  As we've reported to the Court

3     before, plaintiffs preserved the phones they were using when they

4     joined the litigation, and now we're using replacement phones.

5     We've given them all the settings information from their current

6     phones that they're using, and we have identified those phones,

7     but the phones that have been collected and imaged and processed

8     were the ones that they were using when they joined the

9     litigation.  And we don't see why those replacement phones --

10    this process must go on and on.  You know, we've done this

11    process, which in mind of trying to keep this evidence and

12    collect it for use in this litigation.

13         **THE COURT:**  Yeah.  So tell me Mr. Marais asserted that only

14    seven of the 26 devices were imaged.

15         **MR. KELSTON:**  I'm not sure about the number, Your Honor, but

16    that could be correct.  Because some of those old devices are

17    broken.  Some won't start up.  Some have not been found.  And

18    others that plaintiffs don't have the PIN codes to access them

19    anymore.  And we've provided all this information to Google in

20    table format.

21         **THE COURT:**  All right.  My tentative view is it doesn't

22    sound compliant was what I ordered back in December of 2021.  And

23    I'm going to want to understand more about what the areas of

24    shortcoming are before Google files some enforcement motion about

25    it.  And if the class period is to the present, why isn't it

1  relevant information to have their current phones, even if it's a

2  replacement of a phone that was used earlier?

3  **MR. MAYA:**  Well, Your Honor, I mean, the phones have been

4  imaged.  They're then current phones when they joined the

5  litigation.  It's true that they do have replacement phones.  Is

6  there a point where we can step up imaging their phones over and

7  over again.  These phones also, it's worth noting, and I think

8  this is an important point, because Google is asking for the

9  actual phones and for images of them.

10  These are plaintiffs' personal devices, which include highly

11  personal information concerning family matters; photographs, text

12  messages, information that they wouldn't be comfortable sharing

13  with Google that I think most people wouldn't be comfortable

14  sharing with Google.  So it is disproportionate and highly

15  invasive.

16  We have collected devices.  We've collected a lot of data.

17  We are ready to produce that.  We are ready to conclude

18  negotiations about search terms.  I do think it's odd that Google

19  is here complaining about our collection of data when they have

20  not collected anything in response to our -- any custodial data

21  in response to our requests.

22  **THE COURT:**  Oh, they're under order to do that.  But it's

23  going to go both directions.  And the time period for discovery

24  is everybody's time period for discovery.  So I need to put

25  pressure on all sides to move forward with this process.  Well,

1   here's -- there's going to need to be some more produced on the

2   plaintiffs side, too.  And absolutely, there's some invasive

3   things that individual plaintiffs may not want to have

4   discovered.  But the first step is to collect it and to

5   understand what those problems are, and to be transparent with

6   Google about what you are willing to produce.  And we're still a

7   few steps away from that.

8        So my tentative view is that I am going to order production

9   -- collection and production from current phones.  There's

10  different ways you could do it.  You can use a third-party vendor

11  to do this collection and to search certain things to protect

12  privacy.  I'm open to that.

13       You could -- you know, you can pick a date.  You -- Mr.

14  Maya, you identify a real problem, which is am I going to order

15  this every week?  That would be burdensome.  No, I'm not going to

16  order you to do this -- you know, find a new phone every week, or

17  it needs to actually be some ending point.  But it's really not

18  acceptable to say, well, even though it's through the present,

19  I'm not going to order anything from beyond 2022.  I don't see

20  that as being a fair ending point for the class.

21       So I want to give you a chance to assess what you've got and

22  to confer further.  Maybe you can pick some ending point for when

23  this process will be concluded.  But then there's going to be a

24  production from that ending point.  So I'm going to give you some

25  collective more homework in the next week.  And this is quite a

1  bit of stuff, to first identify what you've got from the

2  plaintiffs.  And I gave it a deadline of two weeks for you to

3  enter -- to respond to the interrogatories.  But the first step

4  in the next week, it's quick, is to figure it out, and to talk

5  with Google and to see if you can come to some agreement about

6  what you're going to produce by when for which devices.

7     Now, Mr. Marais and Google might want there to be a more

8  aggressive deadline than that and may produce more, but there are

9  a lot of different ways to skin this cat as far as the method of

10  production and I want you to work together to see if you can come

11  to some agreement before I order it.

12     **MR. MAYA:**  Yes, Judge -- Your Honor.  I think if I -- just

13  so I can clarify.  I hear Your Honor ordering us to image

14  plaintiffs' current devices.

15     **THE COURT:**  Well, I didn't say you got to image all the

16  current devices because I want you to talk about well, is it

17  going to be through today?  Is it going to be through last week?

18  Is it going to be through next week?  See if you can come to some

19  agreement about when this kind of final imaging is going to be

20  done.  Maybe Google will say there needs to be another round of

21  this, you know, June 1st.  I want you to talk about that.

22     Because there's different -- there's expenses involved in

23  this.  And I don't know how expensive it is to do this.  It may

24  depend upon how many devices you're talking about.  How

25  burdensome is it?  I want you to be able to talk with the

1    plaintiffs before I just order it.  But I -- yes, that's my set

2    of views and I am ordering imaging of current devices, and maybe

3    more in the future.  But I want you to talk about that.

4        **MR. MAYA:**  Thank you, Your Honor.

5        **THE COURT:**  Mr. Maya, I cut you off.  Did you have other

6    questions about what I've just said?

7        **MR. MAYA:**  No, I think I understand.  It sounds like there

8    is not at this point a court order date by which the images need

9    to be made or through which they need to go.  We obviously will

10   comply.  I just want to make sure that I'm not accused of failing

11   to --

12       **THE COURT:**  I have not set a court order date for

13   production.  But I have set a court order date of the next week

14   for you to assess and to confer with each other about how you

15   might respond to Google's request.

16       **UNIDENTIFIED SPEAKER:**  And Your Honor --

17       **MR. KELSTON:**  And to be clear, there's one current device

18   for each plaintiff.  They don't have multiple current devices.

19       **THE COURT:**  And I'm not passing judgment on that assertion.

20   I want you to assess that with your clients and to communicate

21   that with Google.

22       **MR. MARAIS:**  Your Honor, I think that's fine.  And I think

23   the way that you've laid it out, I mean, these things do need to

24   be sequenced.  I am mindful of the time that we have left.  And I

25   think that by the time we're in front of you in four weeks or so

1    if there are a search term disputes between us and plaintiffs

2    with respect to plaintiffs' data, I would like to have those if

3    not resolved by then at least ready for the Court to assist us

4    further.

5        So as long as plaintiffs are going to move expeditiously, I

6    think we can do it.  I do think if you're asking them to identify

7    the devices in a week, if we could get that in a week, even if

8    it's a meet and confer correspondence rather than a verified

9    interrogatory responses, that would help.  I know the rog

10   responses will be due in two weeks from today.  And I can talk to

11   Mr. Maya about moving this forward.

12       **THE COURT:**  Very good.  And that -- I had in mind that

13   purposefully that the formal interrogatory response will take a

14   little bit longer.  But the information you might get informally

15   quicker to advance your conversation.  And that in a month, I

16   would be hopeful that we would be, if not sooner, in a position

17   of saying all right, if you've got a dispute about the search

18   terms, and what's being provided from these devices and accounts,

19   now we're ready to get that resolved.

20       You might resolve it sooner than that through your direct

21   conversations.  But if you have a disagreement, I'm hopeful that

22   by the beginning of May that we can get that concluded and get

23   out production information.

24       **MR. MAYA:**  Thank you, Your Honor.

25       **THE COURT:**  All right.  So I think that concludes the issues

1   that we were teed up in the letter brief, but let me make sure

2   there aren't any others that I can help you with on the

3   plaintiffs side.  Anything else I can help you with today?

4          **MR. KELSTON:**  Not for me, Your Honor.

5          **THE COURT:**  All right.  Thanks very much for your time.

6          And on the Google side?

7          **MR. MARAIS:**  No.  That was all very helpful.  Thank you,

8   Your Honor.

9          **THE COURT:**  All right.  Thank you for your time.  Much

10  appreciated.  I've given you quite a bit of homework.  I'll

11  summarize that in a minute order today.  And we've set two future

12  report visits, the next one being May 3rd at 11 a.m. to continue

13  our discovery efforts.  Thanks for your time.  Have a great day.

14  We're in recess.

15          (Proceedings adjourned at 11:16 a.m.)

16                              ---OOO---

17                    **C E R T I F I C A T E**

18          I, DIPTI PATEL, court-approved transcriber, certify that the

19  foregoing is a correct transcript from the official electronic

20  sound recording of the proceedings in the above-entitled matter.

21  *Dipti Patel*

22  _____

23  DIPTI PATEL, CET-997

24  LIBERTY TRANSCRIPTS                    Date: April 6, 2023

25