Pages 1 - 24

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Nathanael M. Cousins,
United States Magistrate Judge

IN RE:                           )
                                 )
GOOGLE LOCATION HISTORY          )
LITIGATION.                      )    **Case No. 5:18-CV-05062-EJD**
                                 )
                                 )
_____)

San Jose, California
Tuesday, April 18, 2023

<u>**TRANSCRIPT OF DISCOVERY HEARING**</u>

**APPEARANCES:**

For the Plaintiff:
                    AHDOOT & WOLFSON, PC
                    2600 W Olive Avenue
                    Burbank, California 91505
                    **BY: TINA WOLFSON, ATTORNEY AT LAW**
                    **BY: THEODORE MAYA, ATTORNEY AT LAW**

                    LEIFF CABRASER HEIMANN & BERNSTEIN
                    275 Battery Street, Suite 2900
                    San Francisco, California 94111
                    **BY: MICHAEL W. SOBOL, ATTORNEY AT LAW**
                    **BY: MICHAEL LEVIN-GESUNDHEIT, ATTORNEY AT LAW**
                    **BY: MELISSA GARDNER, ATTORNEY AT LAW**
                    **BY: MICHAEL SHEEN, ATTORNEY AT LAW**

For the Defendant:
                    KEKER VAN NEST & PETERS LLP
                    633 Battery Street
                    San Francisco, California 94111
                    **BY: NICHOLAS MARAIS, ATTORNEY AT LAW**

TRANSCRIPTION SERVICE BY:
                    Dipti Patel, CET-997
                    Liberty Transcripts
                    7306 Danwood Drive
                    Austin, Texas 78759
                    (847) 848-4907

1  **<u>Tuesday – April 18, 2023</u>**                                    **<u>1:03 P.M.</u>**

2                          **P R O C E E D I N G S**

3                                ---oOo---

4      **THE CLERK:**  Calling Civil 18-5062, In re: Google Location

5  History Litigation.

6      Counsel, please state your appearances for the record.

7      **MS. WOLFSON:**  Your Honor, for the plaintiffs, Tina

8  Wolfson of Ahdoot & Wolfson.

9      **MR. SOBOL:**  Michael Sobol from Lieff Cabraser for the

10  plaintiffs.

11      **MR. MAYA:**  Theodore Maya also for plaintiffs.

12      **MR. LEVIN-GESUNDHEIT:**  Michael Levin-Gesundheit for

13  plaintiffs.

14      **MS. GARDNER:**  Melissa Gardner for plaintiffs.

15      **THE COURT:**  Thank you.

16      **MR. SHEEN:**  Michael Sheen for plaintiffs.

17      **THE COURT:**  Thank you.  And Mr. Marais.

18      **MR. MARAIS:**  Good afternoon, Your Honor.

19      Nic Marais from Keker Van Nest & Peters for defendant,

20  Google.

21      **THE COURT:**  Thank you.  And as you're doing, even though

22  I'm asking you to (indiscernible) speak into your microphone

23  because we are getting a recording and a record of it and

24  (indiscernible) case so to the extent there was a review, we

25  want to have a good recording made.

1     And I apologize for our miscommunication to you as to the

2     setting today.  Mr. Marais, thank you for giving

3     (indiscernible) twice.  That was not the intention of the

4     Court to punish anyone by making you drive around without

5     (indiscernible).  We can definitely set this tomorrow

6     (indiscernible) so I apologize for making you drive and to

7     plaintiffs' counsel for waiting around for the hearing.  You

8     did communicate you were here before the 11:00 set hearing

9     time and you had to wait and again, I'm sorry for that.

10     And we don't have a hearing tomorrow, so no hearing

11     tomorrow.

12     **MR. MARAIS:**  Thank you, Your Honor.

13     **THE COURT:**  And, Mr. Marais, we did have an ex-parte

14     communication at 11:00 without you being here.  It was not

15     recorded.  It was solely as to whether we should keep the

16     hearing on for today or move it to tomorrow.  We did not

17     discuss the merits or any of the matters raised in the letter.

18     But I did speak with plaintiffs' counsel about the timing.

19     And I did communicate with you about whether you should be

20     here today and we decided to keep it on calendar today rather

21     than put it over until tomorrow.

22     **MR. MARAIS:**  Ms. Harrell has been very helpful.  Thank

23     you.

24     **THE COURT:**  Great.  That's why I was (indiscernible).

25     All right.  So in discovery briefs 294, 295, 296, and 298 is

4

1   why we're here (indiscernible) today.  And I was very

2   concerned about the direction and the tone of the

3   communications between counsel.  I really wanted to have you

4   here together for you to talk with each other about that and

5   you can talk about it with me because it's inconsistent with

6   what I'm hoping for in the case.

7       There appear to be a difference of approach and

8   management in the communications.  And to prevent any further

9   tension and difference of approach, I wanted to make sure and

10  get us all on the same page.

11      As far as what I'm hoping for (indiscernible) the case,

12  as we've discussed it over and over at hearings, I thought I'd

13  actually put it right back on October 6th of 2021 at Docket

14  187 three principles of one joint discovery reports.  So

15  that's collaboration.  You working together and presenting

16  something together before the dispute is presented to me.

17      And the objective of that is to hopefully give you an

18  opportunity to work things out together.  (Indiscernible)

19  mutually beneficial and also more efficient if you agree to

20  things in advance (indiscernible) dispute is presented to the

21  Court

22      The second principle is the lead discovery liaison

23  counsel on each side must confer and confer by speaking, not

24  by exchanging emails or letters before presenting any

25  discovery dispute to the Court.  And the reports must certify

5

1    this has been completed.

2          Third, and this is less important but in that same order

3    I said no more footnotes are allowed in discovery motions or

4    reports in this case.  And the reason that I ordered that back

5    on October of 2021 is that a source of stark critical

6    comments, challenges and comments that appear to be included

7    in footnotes not because they were on the merits but because

8    there's something that was less important but had some charged

9    nature to it.  I saw that back in 2021 and I said don't do

10   that anymore.  It's unproductive, not productive as the

11   footnotes were before making charges and counter charges

12   (indiscernible).

13         With that, hearings since then, the case was stayed for a

14   while so it may be that you've forgotten what I hoped for back

15   in 2021.  But we had another hearing on April 5th where some

16   of those same things were reiterated and they're also in

17   writing in Docket 292.  And that's a joint submission of

18   discovery disputes.  And the idea of conferring before

19   submitting was reaffirmed there.

20         So that's what I'm hoping for and the reasons for it.  I

21   don't think that my prohibition is different from any other

22   judge to encourage you to collaborate and work things out

23   before presenting disputes which does not mean there can't be

24   disputes.  There still could be plenty of disputes.  And, in

25   fact, at Docket 293, you've got a real discovery disputes on

1    location data presented, which I would like to spend the time

2    today focusing on that.  And the other disputes

3    (indiscernible) really take away from the merits.

4        I'm looking at plaintiffs' side because you're the one in

5    293 seeking information from Google.  But I've got four other

6    briefs now to respond to filed after that one that are really

7    (indiscernible) what I think is serious issues that you raise

8    in your discovery brief but also in your case.  So the method

9    of presentation to me is at least distracting but it also

10   violates my court order from 2021 reiterated a number of

11   times.

12       So the letter -- and my requirements are not just for

13   plaintiffs' side.  It's for both sides.  So what I see in 296

14   in particular, it violates my expectations three ways.

15   Footnote 1 is where I'm focusing my attention.  One, I

16   requested no footnotes.  Here's a footnote with a stark attack

17   on opposing counsel.  Two, I requested joint letter briefs.

18   Instead, what I got is four individual briefs that are not

19   collaborative.

20       Three, there's no evidence here that there was actual

21   communication to meet and confer other than a reference to

22   emails sent back and forth beforehand which (indiscernible)

23   emails.  There was an offer made to send me all the emails.  I

24   do not want to read all your emails back and forth.  It's just

25   not productive, it's not helpful.  I'm not saying you can't

1    send emails, but I don't want to read all of your emails.

2         And, lastly, plaintiffs' counsel here is you're saying I

3    need to grant what Google might say.  I don't want

4    (indiscernible).  I don't want to have a tit-for-tat of one

5    party rushing in to tell me something and the other party

6    telling me what you didn't tell me and then back and back

7    because there's no end to that.  An eye for an eye makes you

8    all blind and gives me a pain in the head, as well.

9         So the back and forth emails and sending submissions to

10   the Court (indiscernible), that can't be good for you, but

11   it's not what I want.  So I wanted you to understand it's not

12   what I'm expecting.  It's not what I've ordered.  And it's not

13   what Judge Davila wants either.  I don't think it's what any

14   judge wants.  So that's the problem in approach between what

15   you're giving me and what I'm requesting.

16        Now you could do it your way and we're going to have

17   continued disagreements and frustration and inefficiencies.

18   But your way is just leading to lots of (indiscernible) and

19   now in the position of figuring, okay, do I need to deal with

20   the back and forth ones or the real one in 293 that has real

21   issues.  Which order should I (indiscernible), the order

22   filed, the order (indiscernible) and what do I do with the

23   fact that you're apparently not responding to my orders.

24   That's frustrating to me.

25        So lots of frustration revealed in your correspondence.

8

1    That's concerning because I can't be happy for you to be

2    litigating the case in that way.  And you've still got a lot

3    of case (indiscernible) and serious issues in a short period

4    of time to take the discovery.  We've got other dates set, May

5    3rd coming up.  There were some dates before that.  I really

6    want to just solve these problems now today.  If you could

7    appear in person and we got a criminal calendar waiting.  And

8    I know you just walked into the courthouse and haven't had

9    much time to communicate with counsel about it.  So I'm laying

10   out the problem and look to you for solutions.

11       So I'm going to start on plaintiffs' side.  What's going

12   on and how can we solve this?

13       **MR. LEVIN-GESUNDHEIT:**  Thank you, Your Honor.

14       Michael Levin-Gesundheit for the plaintiffs.  I'm happy

15   to walk you through the chronology of what happened here, but

16   hearing what you said, I don't know that that's what you want.

17   And I want to be mindful that I'm here to serve the Court and

18   provide you with what would be helpful to you.

19       So I would be happy to proceed any way that you'd prefer.

20   Would it be helpful to walk through the chronology here?

21       **THE COURT:**  I don't think so.

22       **MR. LEVIN-GESUNDHEIT:**  Okay.

23       **THE COURT:**  I want to know how we can --

24       **MR. LEVIN-GESUNDHEIT:**  Absolutely.

25       **THE COURT:**  -- do things better going forward.

9

1          **MR. LEVIN-GESUNDHEIT:**  Absolutely.

2          So -- and let me say that we apologize about the footnote

3     and we'll take note of that.  We did not remember that from

4     the stay.  I think that what started this off was a unilateral

5     filing from Google the night of April 12th.  We had read your

6     minute order to say that by April 12th, we were to identify 6

7     custodians from the 40 that have been before you.  And we had

8     a lot of work to do to twiddle that down from our 40.

9          We were working on that, and we saw a filing come in.

10    Google had not conferred with us and had not given us an

11    opportunity to talk to them.  And we felt we had to respond,

12    in  particular because it seemed that it was aimed at painting

13    us in a negative light, claiming that we have not provided the

14    custodian list when it wasn't actually due yet.

15         And so we snapped into action.  We felt we had to stand

16    up and provide a full record.  I hear you, Your Honor, that

17    you would have preferred that that second filing not occur.

18    But we felt we needed to at the time, and we did.  And we

19    explained that another issue had arisen which is the two new

20    witnesses had been revealed that Friday that Google said it

21    was considering adding to its Rule 26 disclosures.

22         And then the next morning, we received an email from

23    Marais that accused us of lying to the Court intentionally and

24    said that if we didn't take action that morning, Google would

25    notify the Court.  And that set us off in this direction.

1    I think that your reiteration that our filings should be

2    joint I think solves those problems because if we had been in

3    a position where we had spoken with one another and -- then we

4    would have gotten through and resolved all these issues.  We

5    would have learned that Google's counsel had confused

6    (indiscernible) and (indiscernible) and we would have talked

7    about the other person.

8    And it turns out that the other person although who is

9    not familiar to us actually was included on a very early

10   (indiscernible) list in 2021 (indiscernible).  Certainly news

11   to us at the time that I want to put out there because I know

12   Mr. Marais will likely raise it.  He raised it in the meet and

13   confer yesterday.

14   But all that is to say that if we are encouraged and

15   being required to make our filings joint as we thought we

16   were, then I think that will resolve a lot of these issues.  I

17   would also ask that the parties, and we try our best in this

18   regard, presume the best intent of the other side and not be

19   so quick to accuse the other side of intentionally misleading

20   the Court.

21   **THE COURT:**  Well, thank you for your reaffirming that

22   (indiscernible) were doing things jointly.  A question about

23   who, so part of the meet-and-confer process that I set forth

24   is the lead liaison counsel meet and confer by speaking.  I

25   don't care if this meeting is in person or by phone, by Zoom,

1    or some other technology.  But part of this is knowing who the

2    right person is.  There's six here today here and that hasn't

3    changed as far as who the liaison counsel.

4        Who is it from plaintiffs' side who's going to be the

5    point person and be responsible and accountable for the

6    positions that (indiscernible)?

7        **MR. LEVIN-GESUNDHEIT:**  So we have designated Mike Sheen

8    who's here today and Henry Kelston as our discovery liaisons.

9    That doesn't mean that there aren't others on our team that

10   take on certain tasks and topics and coordination with them.

11       With respect to this particular filing, I had not been

12   the lead on the ESI custodian.  Mr. Kelston was the one who

13   had sent the email.  But I worked to step in to the breach

14   late at night to work on this because he's in New York and

15   we'd gotten this filing late at night.  So we worked as a

16   team.  There was never any time we weren't in communication

17   with Mr. Kelston or Mr. Sheen.  But those are the two people

18   whom opposing counsel can -- I'm happy to answer my phone,

19   too, and so is Mr. Sobol, so is Ms. Wolfson, so is Mr. Maya,

20   so is Ms. Gardener.

21       But those -- to the extent there needs to be some person

22   who is that liaison, those two individuals are.

23       **THE COURT:**  All right.  Thank you for that response.  If

24   you're going to step into the breach, I appreciate that under

25   the circumstances what you're doing.  You need to be compliant

1   with my court orders, and that means knowing what I've ordered

2   and you've been to our prior hearings.  And so when I say it's

3   required to meet and confer and to file things jointly, that's

4   going to be on you personally as counsel representing your

5   clients.

6        **MR. LEVIN-GESUNDHEIT:**  Understood.

7        **THE COURT:**  And your teammates put you in a tough

8   position of doing that when they're the ones who are lead

9   counsel, that's not (indiscernible), too.  But your name's on

10  this letter, you need to be responsible for the things that

11  were filed with the Court.

12       **MR. LEVIN-GESUNDHEIT:**  Understood.

13       **THE COURT:**  All right.  Anything more you wanted to say

14  as far as going forward, things that I could help you

15  (indiscernible)?

16       **MR. LEVIN-GESUNDHEIT:**  I think that we are going to be

17  presenting a status report on April 28th that I imagine will

18  raise a number of discovery issues.  There are things that

19  have been percolating these last few weeks.  I don't know that

20  they're ripe to discuss now.

21       My colleagues, Mr. Maya and Mr. Sheen were in a meet and

22  confer yesterday with Google's counsel about these ESI

23  custodians.  There was a question about whether Ms.

24  (indiscernible) should be added.  But I don't know that that's

25  ripe today.

1    **THE COURT:**  Thank you.  If you just open up to the other

2    plaintiffs' counsel, would you like to say something, but if

3    there's other going forward ideas, you all (indiscernible).

4    **MR. LEVIN-GESUNDHEIT:**  I'm making eye contact with the

5    team.  I don't think at this time, Your Honor.

6    **THE COURT:**  All right.  Thank you.

7    Mr. Marais, the same opportunity for you.

8    **MR. MARAIS:**  Thank you.

9    **THE COURT:**  (Indiscernible) rehash the things in the

10   letter briefs but just to focus going forward things I can do

11   to help the (indiscernible).

12   **MR. MARAIS:**  Yeah.  Thank you, Your Honor.

13   I think the frustration on our side was that we were here

14   in this Court two weeks ago, and the Court set a cap of ten

15   custodians, identified Google's four custodians, and asked

16   plaintiffs to let us know who their six were.  And we didn't

17   hear anything.

18   We emailed a couple of days later to solicit a list from

19   plaintiffs.  We didn't even get a response to say hang in

20   there, we're working on it.  We heard nothing.  And that is

21   part of I think a consistent pattern of creating issues to

22   bring to the Court but then not following up on them.

23   When we got to seven days out, I had understood the Court

24   asked for a status update.  It was not a brief, it was not a

25   dispute.  In my mind, it was a three-line status report, all

1   of which was accurate.  I am not surprised that plaintiffs'

2   counsel responded, although I was surprised by the tone and

3   the contents of the response.

4       The first response contained a number of factual

5   misstatements that I'm pleased that Mr. Levin-Gesundheit has

6   walked back today.  I did email the next morning to identify

7   one of those misstatements.  I did not want to weigh in and

8   air the issue in front of the Court.  I wanted to give

9   plaintiffs' counsel time to correct the record.

10      I was shocked when I saw Docket 296.  I understand it's

11  one thing for plaintiffs' counsel to make these sorts of

12  accusations in email correspondence.  It happens.  In my view,

13  it happens too often.  Last Wednesday, the same day these

14  brief were filed, Mr. Levin-Gesundheit sent an email to my

15  colleague Chris Sun, accusing him of inflammatory and

16  misleading statements in a brief.  When I emailed back to ask

17  what he was talking about, I never got a response.

18       I understand that the temperature sometimes gets heated.

19  We're litigators.  This case is being litigated aggressively.

20  But I think it is another thing all together to attack other

21  lawyers' integrity, to attack the integrity of my colleagues

22  in a public filing before the Court.  And although I did not

23  want to and I am sorry that this has been aired in front of

24  the Court, I really did think that I had to respond to some of

25  the allegations in Docket 296.

1        **THE COURT:**  (Indiscernible).

2        **MR. MARAIS:**  Yes.  Yes, Your Honor.

3        **THE COURT:**  And do you have anything more you want to say

4   now?  I've taken notice of (indiscernible).

5        **MR. MARAIS:**  Well, Your Honor, there is a separate issue

6   that I think we need to address if I may.  I don't know if the

7   Court is aware there was a filing late last night by

8   plaintiffs' counsel noting that one of the four named

9   plaintiffs passed away in January.

10       We are still trying to gather all the facts, but I know

11   enough already to recognize that this is an extremely serious

12   situation.  Mr. Mahone (phonetic) has been dead for three

13   months.  This is information that plaintiffs' counsel told us

14   for the first time last week, more than two a half months

15   after he died.

16       When I asked plaintiffs' counsel on two separate calls

17   when he had died, they were unwilling to tell me that.  We've

18   had to confirm that information independently.  For two months

19   in this case, since Mr. Mahone passed away, plaintiffs'

20   counsel have been taking positions on his behalf, they have

21   been serving discovery responses on behalf of Mr. Mahone, they

22   have answered interrogatories on his behalf since he died.

23       I'd like to give the court just a couple of examples of

24   this.  About three weeks ago on March 30th, plaintiffs'

25   counsel served amended responses to seven interrogatories in

which they made representations about when Mr. Mahone turned

his location history setting off and answered some of the

questions.  They described those responses as accurate "to the

best of Mr. Mahone's present recollection and reserve the

right to supplement them if Mr. Mahone recalled additional

facts."

Plaintiffs' counsel have responded to an interrogatory

and four RFPs about Mr. Mahone's criminal and civil litigation

history in those responses, and this is three months after he

died.  Plaintiff's counsel said, "He does not have any civil

or criminal matters to identify" and "was aware of no

responsive documents."

Those statements appear to us to be false.  Mr. Mahone

was involved in a number of civil disputes and was arrested in

2019.  But the bigger issue today is that plaintiffs' counsel

signed those responses and they could not possibly have

checked them with Mr. Mahone.

It's not just limited to discovery responses.  This Court

will remember when we were here a couple of weeks ago, one of

the big issues we raised was making sure that we had accurate

information about plaintiffs' mobile devices.  At that

hearing in this Court, I said that I wasn't sure that we were

getting the most current information from plaintiffs.  And Mr.

Maya told Your Honor, "I have checked back in with

plaintiffs."

1       We met and conferred after that hearing and plaintiffs'

2    counsel made the same representations to us.  Mr. Maya told me

3    in no uncertain terms that he had "spoken with plaintiffs

4    about their mobile devices."  And with respect to the criminal

5    histories, I asked Mr. King if he confirmed the responses with

6    his clients, and he said correct.

7       I recognize that plaintiffs' counsel did not know this at

8    that time, but Mr. Mahone had been dead for two and a half

9    months.  This is not an exhaustive list.  I raise these

10   examples to illustrate how serious the situation is.

11      Over the past couple of days, plaintiffs' counsel have

12   declined to answer my questions.  We sent them a letter

13   yesterday setting out a fairly detailed list of questions.  I

14   am hoping that they will respond in full today.  I am not

15   currently asking for any particular relief, although I

16   anticipate that we will seek monetary and other potential

17   sanctions here.

18      We, Your Honor, included, we have spent an enormous

19   amount of time and energy trying to verify the voracity of

20   these discovery responses and, unfortunately, this development

21   casts serious doubt in our view on all of plaintiffs'

22   discovery responses in this case.

23      So I'll leave it there for now.  I'm hopeful that

24   plaintiffs' counsel will get back to us.  I think it may be in

25   everybody's interest if the Court is available to set a

1    hearing on this in the not-too-distant future and to give the

2    parties an opportunity to brief the issue.

3        **MR. LEVIN-GESUNDHEIT:**  May I please respond?

4        **THE COURT:**  Yes.

5        **MR. LEVIN-GESUNDHEIT:**  So, first of all, the lead on this

6    issue is Mr. Maya who is here.  But the first thing I would

7    say is that Your Honor just told us that the key principle to

8    you is that we meet and confer before we bring disputes to

9    Your Honor.  And this topic that Mr. Marais raises is

10   something we have not adequately met and conferred about.

11       We learned that our client tragically died last

12   Wednesday.  We informed counsel for Google on Wednesday.  We

13   received a lengthy single-spaced I believe five-page letter

14   yesterday with many accusatory questions, many accusing us of

15   misconduct from Mr. Marais.  We have not had a chance to

16   respond.

17       We've provided notice of our client's death to Your Honor

18   last night.  And I just heard what sounded like a very lengthy

19   speech about this topic that we have not had a chance to meet

20   and confer about.  So I also want to respond to the

21   accusations from Mr. Marais that I've acted improperly somehow

22   in communications with his colleagues.  But I heard from Your

23   Honor that discussing those specifics is not what you wanted

24   to hear.

25       **THE COURT:**  Not at this moment.  Not at this moment.

1        **MR. LEVIN-GESUNDHEIT:**   Yeah.

2        **THE COURT:**   There might be a time later.  So here's what

3   I'm going to do.  Thank you and I'm not trying to

4   (indiscernible) Mr. Marais from responding further because two

5   thoughts.  One, the issues raised as to the death of one of

6   your clients, those may go more to Judge Davila, your trial

7   judge, than to the discovery issues so I don't even know if

8   I'm the proper person to raise the notice.  It's not just to

9   me but to the Court.

10       And I do want you to confer further about that if it's

11   going to be presented to me for some decision and there's not

12   even (indiscernible) by Google.  So that's going to go on to

13   your items to be discussed further, and then if it's really

14   Google seeking, to decide who is the right person to present

15   to because I'm not sure it's purely a discovery question.  It

16   may be a discovery question that could be more of a trial

17   judge issue.

18       So I've got three more things to set for you here to just

19   make sure I've got our future plans together.  We do have a

20   May 3rd status here which I want to keep because there will be

21   things that are on your agenda.  It can include at that May

22   3rd hearing the 293 location data.  (Indiscernible) want it to

23   be done sooner, but this conversation has taken the time that

24   I might have otherwise spent on that.

25       I'm striking the (indiscernible) 294, 295, 296, and 298

1  because they're not compliant with my court orders 187 and

2  (indiscernible).  The issues just raised by Mr. Marais about

3  the plaintiffs' death, you're going to need to confer about

4  that further.  You can present them in your next letter brief

5  if that's appropriate if you decide it's a discovery issue.

6  Or you decide it's not a discovery issue, then it's for Judge

7  Davila to decide.

8      **MR. LEVIN-GESUNDHEIT:**  May I seek clarification, when you

9  say letter brief, you mean presenting the April 28th status

10  report?

11      **THE COURT:**  Yes, the April 28th submission.

12      **MR. LEVIN-GESUNDHEIT:**  Okay, thank you.

13      **MR. MARAIS:**  Your Honor, I do want to say that given the

14  seriousness of those issues, I suspect that we may --

15      **THE COURT:**  I'm sorry, when you say those issues, which

16  issues?

17      **MR. MARAIS:**  Of the discovery issues related to Mr.

18  Mahone that I have flagged for the Court.  As I said, I'm

19  hopeful we'll get some responses from plaintiffs' counsel

20  today.  We may need to take that up sooner than the next

21  status conference, but we'll seek leave to do that if we need

22  to.

23      **THE COURT:**  That's fine.  I --

24      **MR. LEVIN-GESUNDHEIT:**  May I --

25      **THE COURT:**  Sorry, one more thing from me.  I ordered you

1    not to file any more materials before today's hearing.  That

2    admonition is lifted.  You've addressed the letter briefs

3    filed.  You've heard me, and I thank you for hearing my

4    perspective.  Your deadline going forward for our next few

5    discoveries, those remain in place.  The schedule I previously

6    set remains in place.

7          (Indiscernible) Mr. Maya.

8          **MR. LEVIN-GESUNDHEIT:**  Okay, I'll hand it to Mr. Maya,

9    but I would just say that April 28th is ten days away.  So I

10   hope that that would be sufficient time for us to meet and

11   confer and file something, that there wouldn't be a need for

12   Mr. Marais to file something sooner.  But I'll hand it to Mr.

13   Maya.

14         **MR. MAYA:**  Your Honor, we were saddened and surprised to

15   learn of our client's death.  Further saddened when opposing

16   counsel immediately began exploiting it.  And I find it

17   offensive and the pot calling the kettle black for Mr. Marais

18   to stand up here and tell Your Honor that he was so offended

19   by my co-counsel's suggestion that he violated the Northern

20   District's rules of civility when yesterday he sent me a

21   letter accusing me of violating the Rules of Professional

22   Conduct, Federal Rule of Civil Procedure 11, and a variety of

23   other rules which we have not done.

24         We notified them as soon as possible of Mr. Mahone's

25   death.  We have been in contact with Mr. Mahone up until his

1   passing regularly regarding settlement and regarding

2   discovery.  The particular interrogatory about which Mr.

3   Marais is concerned was propounded before the stay.  We

4   discussed it with him then.  And we did our own investigation

5   before we propounded that response that he's discussing.

6       And I think I can leave it there, Your Honor.  But I do

7   feel like I needed to correct the record.

8       **THE COURT:**  All right.  You've made your record.  In the

9   interest of time, we have a criminal calendar, I'm not going

10  to ask for corrections of the record.  But these are serious

11  issues and you've got a serious case.

12      Adding to my diagnosis the accusations of violations of

13  the rules of civility and the local rules, as well, any time

14  someone makes an allegation like that, this goes both

15  directions, the other side needs to respond to them.  Those

16  are very serious allegations.  And, of course, if there has

17  been a violation, there might be an occasion where that's

18  appropriate.  But to me, a better method is to talk to each

19  other to see if you can work it out rather than sending a

20  letter or an email, text, or other message accusing opposing

21  counsel of a violation.  To me, that's counterproductive to

22  getting things done in a collaborative (indiscernible).

23      So that's what I'm hoping to discourage and to encourage

24  more progress on the very time-pressured and important

25  discovery (indiscernible) going forward.  We've got a lot of

1    deadlines to complete as it is.  Adding things to plate of

2    responsibilities if going to be even more difficult

3    (indiscernible), so I want to help you get through

4    successfully and (indiscernible).

5         **MR. LEVIN-GESUNDHEIT:**  Thank you, Your Hon or.

6         **THE COURT:**  All right.  So thank you for your time.  And

7    I again apologize for making you come here early on this day

8    late in the rush (indiscernible).

9         **MR. MARAIS:**  Thank you.

10        **THE COURT:**  Now on to the calendar of criminal matters.

11        (Proceedings adjourned at 1:31 p.m.)

12                         ---oOo---

13

14

15

16

17

18

19

20

21

22

23

24

25

1
**C E R T I F I C A T E**

2      I, DIPTI PATEL, certify that the foregoing is a true and

3 correct transcript, to the best of my ability, of the above

4 pages of the official electronic sound recording provided to

5 me by the U.S. District Court for the Northern District of

6 California of the proceedings take on the date and time

7 previously stated in the above-entitled matter.

8      I further certify that I am neither counsel for, related

9 to, nor employed by any of the parties to the action in which

10 this hearing was taken.

11      I further certify that I am not financially nor otherwise

12 interested in the outcome of the action.

13

14 _Dipti Patel_
_____

15 DIPTI PATEL, CET-997

16 LIBERTY TRANSCRIPTS                    Date: April 26, 2023

17

18

19

20

21

22

23

24

25