1

LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP

2

Michael W. Sobol (SBN 194857)
msobol@lchb.com

3

Melissa Gardner (SBN 289096)
mgardner@lchb.com

4

Michael Levin-Gesundheit (SBN 292930)
mlevin@lchb.com

5

Michael K. Sheen (SBN 288284)
msheen@lchb.com

6

Jallé H. Dafa (SBN 290637)
jdafa@lchb.com

7

John D. Maher (SBN 316157)
jmaher@lchb.com

8

275 Battery Street, 29th Floor
San Francisco, CA 94111

9

Telephone: 415.956.1000
Facsimile: 415.956.1008

10

11

LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP

Nicholas Diamand (*pro hac vice*)

12

250 Hudson Street, 8th Floor
New York, NY 10013

13

Telephone: 212.355.9500
Facsimile: 212.355.9592

14

15

*Interim Co-Lead Class Counsel*

AHDOOT & WOLFSON, PC
Tina Wolfson (SBN 174806)
twolfson@ahdootwolfson.com
Theodore Maya (SBN 223242)
tmaya@ahdootwolfson.com
Bradley K. King (SBN 274399)
bking@ahdootwolfson.com
Henry J. Kelston (*pro hac vice*)
hkelston@ahdootwolfson.com
Deborah De Villa (SBN 312564)
ddevilla@ahdootwolfson.com
2600 West Olive Avenue, Suite 500
Burbank, California 91505
Telephone: 310.474.9111
Facsimile: 310.474.8585

*Interim Co-Lead Class Counsel*

16

UNITED STATES DISTRICT COURT

17

NORTHERN DISTRICT OF CALIFORNIA

18

SAN JOSE DIVISION

19

IN RE: GOOGLE LOCATION HISTORY
LITIGATION

20

21

22

23

24

25

26

27

28

Case No. 5:18-cv-05062-EJD

**NOTICE OF MOTION AND MOTION
FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT;
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT
THEREOF**

Dept:      Courtroom 4 - 5th Floor
Judge:    Hon. Edward J. Davila
Date:      October 26, 2023
Time:      9:00 A.M.

(Joint Declaration of Tina Wolfson and
Michael W. Sobol, including Settlement
Agreement, and Declaration of Daniel
Talavera, filed concurrently herewith)

## NOTICE OF MOTION AND MOTION

### TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that on October 26, 2023 at 9:00 a.m., in Courtroom 4 of the United States District Court for the Northern District of California, Robert F. Peckham Federal Building & United States Courthouse, 280 South First Street, San Jose, California 95113, the Honorable Edward J. Davila presiding, Plaintiffs[1] will and hereby do move for an Order pursuant to Rule 23 of the Federal Rules of Civil Procedure ("Rule"): (i) preliminarily approving the proposed Class Action Settlement Agreement and Release dated August 23, 2023 (attached as Exhibit 1 to the concurrently filed Joint Declaration of Tina Wolfson and Michael W. Sobol); (ii) finding that, for purposes of effectuating the proposed Settlement, the prerequisites for class certification under Federal Rule of Civil Procedure 23 are likely to be found satisfied; (iii) approving the form and manner of notice to the Settlement Class; (iv) approving the selection of the Settlement Administrator; and (iv) scheduling a Final Approval Hearing before the Court.

Plaintiffs' motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities set forth below, the Joint Declaration of Tina Wolfson and Michael W. Sobol in Support of Plaintiffs' Motion for Preliminary Approval of Proposed Class Action Settlement ("Joint Declaration"), the Settlement Agreement, the Declaration of Cameron R. Azari, Esq., all exhibits attached thereto, the pleadings and records on file in this Action, and other such matters and argument as the Court may consider at the hearing of this Motion.

### STATEMENT OF ISSUES TO BE DECIDED

1.      Whether the proposed Settlement warrants: (a) preliminary approval; (b) a finding that, for purposes of effectuating the proposed Settlement, the prerequisites for class certification under Federal Rule of Civil Procedure 23 are likely to be satisfied; (c) dissemination of Notice of the Settlement's terms to Settlement Class Members; and (d) a hearing on Motions for final

---

[1]  All capitalized words and terms are defined in the Settlement Agreement (Section II) unless otherwise defined herein.

approval of the Settlement, and for attorneys' fees, and reimbursement of expenses and Service Awards to the Class Representatives;

2.     Whether the proposed Notice satisfies due process and adequately apprises the Settlement Class Members of the terms of the Settlement and their rights with respect to it; and

3.     Whether Epiq Class Actions & Claims Solutions, Inc. should be appointed as Settlement Administrator;

4.     Whether the proposed plan of allocation of the Settlement Fund should be preliminarily approved.

Respectfully submitted,

Dated: September 14, 2023                    /s/ Tina Wolfson
                                             AHDOOT & WOLFSON, PC
                                             Tina Wolfson (SBN 174806)
                                             twolfson@ahdootwolfson.com
                                             Theodore Maya (SBN 223242)
                                             tmaya@ahdootwolfson.com
                                             Bradley K. King (SBN 274399)
                                             bking@ahdootwolfson.com
                                             Henry J. Kelston (*pro hac vice*)
                                             hkelston@ahdootwolfson.com
                                             Deborah De Villa (SBN 312564)
                                             ddevilla@ahdootwolfson.com

                                             2600 West Olive Avenue, Suite 500
                                             Burbank, California 91505
                                             Tel: 310.474.9111
                                             Fax: 310.474.8585

                                             *Interim Co-Lead Class Counsel*

Dated: September 14, 2023                    /s/ Michael Sobol
                                             LIEFF CABRASER HEIMANN &
                                             BERNSTEIN, LLP
                                             Michael W. Sobol (SBN 194857)
                                             msobol@lchb.com
                                             Melissa Gardner (SBN 289096)
                                             mgardner@lchb.com
                                             Michael Levin-Gesundheit (SBN 292930)
                                             mlevin@lchb.com

1   Michael K. Sheen (SBN 288284)
    msheen@lchb.com
2   Jallé H. Dafa (SBN 290637)
    jdafa@lchb.com
3   John D. Maher (SBN 316157)
    jmaher@lchb.com
4   275 Battery Street, 29th Floor
    San Francisco, CA 94111
5   Telephone: 415.956.1000
    Facsimile: 415.956.1008
6
7   LIEFF CABRASER HEIMANN &
    BERNSTEIN, LLP
8   Nicholas Diamand (*pro hac vice*)
    250 Hudson Street, 8th Floor
9   New York, NY 10013
    Telephone: 212.355.9500
10  Facsimile: 212.355.9592

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

Page

I.    INTRODUCTION ................................................................................................1

II.    BACKGROUND ................................................................................................2

    A.    The Litigation and Class Counsel's Efforts on Behalf of the Class ........................2

    B.    Settlement Negotiations and Mediation ....................................................4

III.    SUMMARY OF SETTLEMENT TERMS ................................................................6

    A.    The Settlement Class and Release ....................................................6

    B.    The $62 Million Non-Reversionary Settlement Fund ................................6

    C.    Injunctive Relief................................................................................8

    D.    The Settlement's Notice Plan ....................................................8

    E.    Attorneys' Fees and Expenses, and Class Representative Service Awards ..........9

    F.    The Settlement Administrator ....................................................9

IV.    ARGUMENT ................................................................................................9

    A.    The Legal Standards for Preliminary Approval ........................................9

    B.    The Settlement Satisfies the Northern District's Guidance ......................10

        i.    Guidance 1a-b: Differences Between Class Definitions ..................10

        ii.    Guidance 1c.: Settlement Recovery Compared to Trial ................11

            Intrusion upon seclusion and California Constitutional privacy ..........11

            Unjust enrichment ................................................................11

        iii.    Guidance 1e-g: The Settlement's Plan of Allocation Merits Approval ......13

        iv.    Guidance 2: The Proposed Settlement Administrator ................15

        v.    Guidance 3: The Proposed Notice Plan ................................15

            Publication Notice ................................................................11

            Settlement Website ................................................................11

        vi.    Guidance 4 and 5: Opt-Outs and Objections ........................17

        vii.    Guidance 6: The Intended Attorneys' Fees and Expenses Request ........18

viii. Guidance 7: Service Awards ........................................................................18

ix. Guidance 8: Proposed *Cy Pres* Recipients .................................................19

x. Guidance 9: Proposed Timeline ...............................................................20

xi. Guidance 10: Class Action Fairness Act ..................................................20

xii. Guidance 11: Comparable Outcomes ......................................................20

C. The Settlement Is the Product of Arm's-Length Negotiations and Is Supported by Experienced Counsel ............................................................22

D. The Stage of the Proceedings and the Discovery Conducted Support Approval ...23

E. Rule 23's Requirements for Class Certification Are Met ......................................23

i. Class Representatives Satisfy Rule 23(a)'s Prerequisites ..........................23

Numerosity—Rule 23(a)(1) .....................................................................23

Commonality—Rule 23(a)(2) ..................................................................23

Typicality—Rule 23(a)(3) ........................................................................24

Adequacy—Rule 23(a)(4) ........................................................................24

ii. Plaintiffs Satisfy Rule 23(b)(3)'s Requirements ........................................24

Predominance ...........................................................................................24

Superiority ................................................................................................24

F. The Court Should Appoint the Named Plaintiffs as Class Representatives ..........25

V. CONCLUSION .........................................................................................................25

- ii -

Notice of Mot. and Mot. For Prelim. Approval; MPA iso Thereof
Case No. 5:18-cv-05062-EJD

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Abante Rooter & Plumbing, Inc. v. Pivotal Payments Inc.*,
   No. 16-cv-05486, 2018 WL 8949777 (N.D. Cal. Oct. 15, 2018) ................................24

5

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997).................................................................................................23

6

7

*Brown v. Google*, LLC,
   No. 20-cv-03664, 2022 WL 17961497 (N.D. Cal. Dec. 12, 2022)...........................12

8

9

*Campbell v. Facebook Inc.*,
   No. 13-cv-05996, 2017 WL 3581179 (N.D. Cal. Aug. 18, 2017) .......................13, 15

10

*Campbell v. Facebook Inc.*,
   951 F.3d 1106 (9th Cir. 2020) .................................................................................13

11

12

*Carlotti v. ASUS Computer Int'l*,
   No. 18-cv-03369, 2019 WL 6134910 (N.D. Cal. Nov. 19, 2019) ............................11

13

14

*Cf. Cummings v. Connell*,
   402 F.3d 936 (9th Cir. 2005) ...................................................................................11

15

*Churchill Vill., LLC v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004) ...................................................................................10

16

17

*Ebarle v. Lifelock, Inc.*,
   No. 15-cv-00258, 2016 WL 234364 (N.D. Cal. Jan. 20, 2016)................................24

18

19

*Ellis v. Naval Air Rework Facility*,
   87 F.R.D. 15 (N.D. Cal. 1980)..................................................................................22

20

*Ellis v. Naval Air Rework Facility*,
   661 F.2d 939 (9th Cir. 1981)....................................................................................22

21

22

*Frank v. Gaos*,
   139 S. Ct. 1041 (2019).............................................................................................15

23

24

*Hanon v. Dataproducts Corp.*,
   976 F.2d 497 (9th Cir. 1992) ...................................................................................24

25

*Hart v. TWC Prod. & Tech. LLC*,
   No. 20-cv-03842, 2023 WL 3568078 (N.D. Cal. Mar. 30, 2023) ............................12

26

27

*Hesse v. Sprint Corp.*,
   598 F.3d 581 (9th Cir. 2010) .....................................................................................6

28

- iii -

*In re Google Plus Profile Litig.*,
No. 18-cv-06164, 2021 WL 242887 (N.D. Cal. Jan. 25, 2021)..................................21

*In re Anthem, Inc. Data Breach Litig.*,
327 F.R.D. 299 (N.D. Cal. 2018)...............................................................................24

*In re Apple Inc. Device Performance Litig.*,
No. 18-md-02827, 2021 WL 1022866 (N.D. Cal. Mar. 17, 2021) ...........................18

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) ...........................................................................10, 22

*In re Chrysler-Dodge-Jeep Ecodiesel Mkting, Sales Practices, and Prods. Liab. Litig.*,
No. 17-md-02777, 2019 WL 536661 (N.D. Cal. Feb. 11, 2019)..............................11

*In re Domestic Air Transp. Antitrust Litig.*,
141 F.R.D. 534 (N.D. Ga. 1992)...............................................................................16

*In re Facebook Biometric Information Privacy Litig.*,
15-cv-03747-JD (N.D. Cal.) .......................................................................................22

*In re Facebook Consumer Privacy User Profile Litig.*,
No. 18-md-02843 (N.D. Cal.) .....................................................................................14

*In re Google Buzz Privacy Litig.*,
No. 10-cv-00672, 2011 WL 7460099 (N.D. Cal. June 2, 2011)....................15, 20, 21

*In re Google Inc. Gmail Litig.*,
No. 13-md-02430-LHK, 2014 WL 1102660 (N.D. Cal. Mar. 18, 2014) ...................12

*In re Google Inc. Street View Elec. Comms. Litig.*,
21 F.4th 1102 (9th Cir. 2021) ...................................................................13, 15, 20

*In re Google Referrer Header Privacy Litig.*,
869 F.3d 737 (9th Cir. 2017) .............................................................................15, 19

*In re Hyundai and Kia Fuel Economy Litig.*,
926 F.3d 539 (9th Cir. 2019) .......................................................................................9

*In re Linkedin User Priv. Litig.*,
309 F.R.D. 573 (N.D. Cal. 2015)...............................................................................22

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000) .....................................................................................24

*In re MetLife Demutualization Litig.*,
262 F.R.D. 205 (E.D.N.Y. 2009)...............................................................................16

*In re Netflix Priv. Litig.*,
No. 11-cv-00379, 2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ......................15, 21

*In re Online DVD-Rental Antitrust Litig.*,
779 F.3d 934 (9th Cir. 2015) ........................................................................ 10, 25

*In re: Vizio, Inc., Consumer Priv. Litig.*,
16-ml-02693 (C.D. Cal. July 31, 2017) .................................................................. 21

*Just Film, Inc. v. Buono*,
847 F.3d 1108 (9th Cir. 2017) ............................................................................... 25

*Lane v. Facebook*,
969 F.3d 811 (9th Cir. 2012) ........................................................................ *passim*

*Mazza v. Am. Honda Motor Co.*,
666 F.3d 581 (9th Cir. 2012) ................................................................................ 24

*McDonald, et al. v. Kiloo A/S, et al.*,
No. 17-cv-04344 (N.D. Cal. Apr. 12, 2021) ......................................................... 13

*Mullane v. Cent. Hanover Bank Trust Co.*,
339 U.S. 306 (1950) ........................................................................................ 16, 17

*Nachshin v. AOL, LLC*,
663 F.3d 1034 (9th Cir. 2011) ............................................................................... 19

*Noll v. eBay, Inc.*,
309 F.R.D. 593 (N.D. Cal. 2015) ..................................................................... 17, 24

*Officers for Justice v. Civil Serv. Comm'n*,
688 F.2d 615 (9th Cir. 1982) ................................................................................... 9

*Phillips Co. v. Shutts*,
472 U.S. 797 (1985) ............................................................................................... 25

*Rodriguez v. West Publg. Corp.*,
563 F.3d 948 (9th Cir. 2009) ................................................................................. 18

*Sandoval v. Roadlink USA Pac., Inc.*,
No. 10-cv-00973, 2011 WL 5443777 (C.D. Cal. Oct. 9, 2011) ............................ 23

*Schneider v. Chipotle Mexican Grill, Inc.*,
No. 16-cv-02200, 2019 WL 1512265 (N.D. Cal. Apr. 8, 2019) ............................ 16

*Six (6) Mexican Workers v. Ariz. Citrus Growers*,
904 F.2d 1301 (9th Cir. 1990) ............................................................................... 13

*Van Bronkhorst v. Safeco Corp.*,
529 F.2d 943 (9th Cir. 1976) ................................................................................... 9

*Villegas v. J.P. Morgan Chase & Co.*,
No. 09-cv00261, 2012 WL 5878390 (N.D. Cal. Nov. 21, 2012) ........................... 23

- v -

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ...................................................................................................23, 24

**Statutes**

Class Action Fairness Act, 28 U.S.C. § 1715 ...................................................................20

**Other Authorities**

Judicial Council of California Civil Jury Instructions (2023) ......................................11

Restatement (Second) of Torts § 652H (Am. L. Inst. 1977) .........................................11

Rutter Group, Cal. Prac. Guide: Civ. Proc. Trial Claims & Def. ..........................11

**Rules**

Fed. R. Civ. P. 23 ............................................................................................................23

Fed. R. Civ. P. 23, Adv. Comm. Notes to 2018 Amendment .....................................23

Fed. R. Civ. P. 23(a)(1) ..................................................................................................23

Fed. R. Civ. P. 23(a)(2) ..................................................................................................23

Fed. R. Civ. P. 23(a)(3) ..................................................................................................24

Fed. R. Civ. P. 23(a)(4) ..................................................................................................24

Fed. R. Civ. P. 23(b)(3) ..................................................................................................24

Fed. R. Civ. P. 23(c) .......................................................................................................16

Fed. R. Civ. P. 23(e) .......................................................................................................10

Fed. R. Civ. P. 23(e)(1)(B) .......................................................................................10, 15

Fed. R. Civ. P. 23(e)(2) ..................................................................................................10

Fed. R. Civ. P. 23(e)(2), 2018 Adv. Comm. Note .......................................................10

Fed. R. Civ. P. 23(e)(5) ..................................................................................................20

Fed. R. Civ. P. 23(g)(1) ..................................................................................................25

Fed. R. Civ. P. 23(g)(3) ..................................................................................................25

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.    INTRODUCTION**

Plaintiffs request that the Court preliminarily approve a nationwide class action settlement by which Defendant Google LLC ("Defendant" or "Google") agrees to pay $62 million into a non-reversionary cash fund to be used in support of Class Members' privacy rights, and which would require meaningful prospective injunctive relief giving Class Members greater understanding of, and control over, their Location Information. This Settlement comes after years of hard-fought litigation that began in August 2018, and over a year of contentious, well-informed, arm's-length settlement negotiations aided by mediator Eric D. Green, Esq. and by Magistrate Judge Joseph C. Spero. It was reached at a critical juncture in the litigation, after extensive motion practice and discovery, but before Plaintiffs face the risks of class certification and summary judgment.

The Settlement provides substantial financial redress for the alleged privacy violations through *cy pres* awards and injunctive relief designed to address the practices on which Plaintiffs' claims are based and to prevent privacy violations in the future. If approved, the $62 million Settlement Fund, which would be among the largest privacy class action recoveries where statutory damages were unavailable, will be distributed (after notice and Settlement administration costs and any service awards and attorneys' fees and costs the Court may award) to Court-approved organizations with a track record of addressing privacy concerns on the Internet. *Cy pres* relief is a necessary and appropriate means of distributing the Settlement's cash component given the economic infeasibility of individual distributions where there are as many as 247.7 million Class Members. The negotiated injunctive relief would impose enforceable mandates on Google to disclose the nature and extent of its use and storage of users' Location Information, and how users can make informed choices to influence those practices, including how to disable settings such as Location History, how to delete the data collected, and how to set data retention limits.

Expert Settlement Administrator Epiq Class Action & Claims Solutions, Inc. ("Epiq" or the "Settlement Administrator") recommends a digital publication-based notice plan to advise potential Class Members of the Action and the Settlement Agreement, and to ensure all Class Members can exercise their rights to object or exclude themselves from the Settlement. Publication notice is best

notice practicable here because publication is necessary to reach Settlement Class Members who no longer have Google accounts, and the same notice also will reach current Google users.

In sum, the Settlement delivers substantial monetary and injunctive relief and satisfies all requirements of Rule 23 and this District's Guidelines for Class Action Settlements. The Settlement presents an excellent result, particularly considering the substantial risks of protracted litigation. Accordingly, Plaintiffs respectfully request that the Court grant preliminary approval, allow dissemination of notice, and set a final fairness hearing.

## II.    BACKGROUND

As detailed below, Plaintiffs litigated against substantial opposition for approximately five years. Co-lead class counsel Ahdoot & Wolfson, PC and Lieff Cabraser Heimann & Bernstein, LLP (together, "Class Counsel"), along with the additional firms appointed as Interim Class Counsel, invested over 17,000 hours. On behalf of the proposed Class, Class Counsel: (i) diligently investigated and asserted their legal claims, in consultation with experts; (ii) efficiently negotiated the consolidation of six related cases asserting substantially similar claims; (iii) successfully opposed, in part, Google's second motion to dismiss the claims in full; (iv) engaged in comprehensive discovery and litigated roughly 20 discovery disputes through motions,  regular hearings, and joint reports, before Magistrate Judge Nathanael Cousins; (v) conducted significant research and discovery in preparation for the anticipated class certification motion; and (vi) engaged in multiple mediation and settlement conference sessions with Defendant, obtaining significant information regarding the Class claims in connection with such mediation; among many other tasks, all of which have been reflected in the quarterly time reports submitted *in camera* to this Court since 2019. As a result of this work, Plaintiffs and Class Counsel had a thorough understanding of the relative strengths and weaknesses of the claims asserted at the time the Settlement was reached.

### A.    The Litigation and Class Counsel's Efforts on Behalf of the Class

Plaintiffs allege Google knowingly violated the privacy rights of millions of U.S. mobile device users by tracking and storing their geolocations despite the relevant setting ("Location History") being disabled. *See generally* Dkt. 131 (First Am. Consol. Class Action Compl., "FAC"). Plaintiffs allege Google's actions violated its own representations and wrongfully enabled Google

to amass and commercially exploit valuable and sensitive geolocation data. *Id.*

This action commenced on August 17, 2018 (Dkt. 1) and was swiftly followed by six additional putative class actions asserting similar claims. Following consolidation of all related cases on December 11, 2018 (Dkt. 51), on April 1, 2019, the Court appointed Class Counsel. Dkt. 72. Class Counsel reported time to the Court quarterly in accordance with that order. Joint Declaration of Tina Wolfson and Michael W. Sobol ("Joint Decl.") ¶ 10.

On April 29, 2019, Plaintiffs filed a Consolidated Complaint alleging: (a) violation of the California Invasion of Privacy Act ("CIPA"), Cal. Pen. Code § 637.7; (b) intrusion upon seclusion; and (c) violation of the California Constitution's right to privacy, Art. 1, § 1. Dkt. 80.

On December 19, 2019, the Court granted Defendant's motion to dismiss, dismissing all of Plaintiffs' claims. Dkt. 113. At this point, Plaintiffs had no claims.

Plaintiffs attempted an interlocutory appeal of the December 2019 dismissal order, and the parties agreed to stay discovery during such proceedings after Google made a limited production of documents previously produced to Congress in connection with its investigation of Google's practices regarding Location Information. Dkt. 118; Joint Decl. ¶ 12. In April 2020, the Court denied Plaintiffs' motion to certify the dismissal order for interlocutory appeal (Dkt. 126) and, in June 2020, the Court also denied Plaintiffs' motion for leave to file a motion for reconsideration of the dismissal order (Dkt. 130).

Plaintiffs filed the FAC on July 6, 2020, alleging claims for: (a) intrusion upon seclusion; (b) violation of the California Constitution's right to privacy, Art. 1, § 1; and (c) unjust enrichment (Dkt. 131), which was deemed filed as of July 16, 2020. Dkts. 136, 137. Google moved for dismissal under Rule 12(b)(6). Dkt. 145. In January 2021 the Court largely denied the motion. Dkt. 162. The Court's denial of this motion to dismiss turned on its finding that Plaintiffs now alleged "continuous and comprehensive" tracking and storage of Location Information. *Id*. at 8.

After the Parties filed opposing briefs on the need to file portions of the FAC and motion to dismiss briefing under seal, an unredacted version of the FAC was filed on February 8, 2021. Dkt. 164, 164-1. Defendant answered the FAC that same day. Dkt. 165.

Discovery reopened in February 2021. It was hard-fought and contentious throughout the

remaining years of this litigation. All told the Parties engaged in approximately 26 months of discovery, including: serving discovery requests and written responses; meeting and conferring; engaging in discovery motion practice; and attending regular discovery conferences with Magistrate Judge Cousins. Joint Decl. ¶ 17. Defendant produced, and Plaintiffs reviewed (including while discovery was stayed to facilitate mediation), more than 500,000 pages of documents. *Id.*

Magistrate Judge Cousins held seven discovery hearings and conferences and required joint reports concerning the Parties' numerous disputes on a weekly, then biweekly, basis. Dkts. 187, 204, 229. While many disputes were adjudicated in that fashion, the Parties also briefed numerous disputes through joint letter briefs. *See, e.g.*, Dkts. 173 (Letter Brief), 175 (Order), 180 (Letter Brief), 183 (Letter Brief), 187 (Order), 207 (Order), 215 (Order), 225 (Order), 226 (Order), 229 (Order), 288 (Letter Brief), 292 (Order), 293 (Letter Brief), 308 (Order), 309 (Letter Brief). Even Plaintiffs' ability to conduct expert analysis was contentious, requiring the Court to adjudicate an opposed motion to disclose material that Google designated highly confidential to Plaintiffs' expert (Dkt. 276), which was granted on March 21, 2023 (Dkt. 284).

While Plaintiffs fought Google's persistent efforts to block their discovery efforts, they defended against Google's aggressive discovery towards them. For instance, Google sought the history of every location-related setting on every app on every device Plaintiffs or their children used during the class period. Plaintiffs were required to turn over their mobile devices, and to have those devices as well as their personal email accounts imaged and searched. Joint Decl. ¶ 19.

On February 22, 2022, the Court stayed discovery a second time, to facilitate mediation. Dkt. 243. The Parties exchanged additional documents and information in connection with the ongoing mediation and settlement discussions. Joint Decl. ¶ 20.

Throughout the course of the litigation, Class Counsel tracked the progress of related litigation in the U.S. and in other countries, including in Australia and Europe, and researched the application of the issues surrounding those cases to this litigation. *Id.* ¶ 21.

### B.    <u>Settlement Negotiations and Mediation</u>

The Parties engaged in extensive, arm's-length negotiations over many months, including three full-day mediation sessions on March 15, May 2, and May 24, 2022, and numerous additional

- 4 -

Notice of Mot. and Mot. For Prelim. Approval; MPA iso Thereof
Case No. 5:18-cv-05062-EJD

discussions facilitated by an experienced and well-respected mediator, Eric D. Green, Esq. Joint Decl. ¶ 22. Mr. Green has extensive experience mediating class actions, including multiple data privacy cases where a settlement was reached and approved. *Id.* Ahead of these mediation sessions, the Parties exchanged information to facilitate productive mediation sessions, in addition to information already gleaned through discovery. *Id.*

The Parties reached agreement on the general terms of a settlement in the form of a mediator's proposal in May 2022. *Id.* ¶ 23; *see also* Dkt. 258. However, after months of intense negotiations the Parties were unable to agree on certain terms necessary to consummate a full settlement agreement and reported as much to the Court on October 12, 2022. Dkt. 254.

The Court held a status conference on November 3, 2022 (Dkt. 256), and referred the matter to Magistrate Judge Spero, who held a settlement conference on January 19, 2023. (Dkt. 262). Although progress was made, the case did not settle at that time. Joint Decl. ¶ 24.

The Parties continued their negotiations, and, on April 27, 2023, executed a term sheet agreeing, subject to the Court's approval, to settle the dispute on the general terms now before the Court. *Id.* ¶ 25. However, the Parties had yet to reach agreement on other key terms and continued to negotiate these issues intensely. *Id.* The Parties also participated in numerous video and phone conferences during which they successfully negotiated the Settlement's significant injunctive relief. *Id.* ¶ 26. Injunctive relief negotiations extended for months, including several iterations and revisions of written proposals and counterproposals, and consultation with experts. *Id.* Numerous drafts and redlines of the Settlement Agreement and its many exhibits were exchanged and scrutinized. *Id.* ¶ 27.

Class Counsel collaborated with defense counsel and the proposed Settlement Administrator on the logistics and substance of the Notice Plan. *Id.* Class Counsel spent numerous hours obtaining and negotiating multiple rounds of bids from five well-established, experienced, and highly regarded class action notice and administration firms. *Id.*

As a result of the extensive discovery conducted prior to mediation (and document review which continued even after the case was stayed), consultation with experts, and the intense negotiations that lasted over a year in total before the Settlement was finalized, Plaintiffs had a

1   thorough understanding of the case including Google's anticipated defenses on the merits; the likely

2   arguments that would be advanced at class certification, summary judgment, and trial; the

3   Settlement Class and the challenges presented with identifying individual class members; and the

4   complex technical issues surrounding these issues and potential injunctive relief. *Id.* ¶ 42.

5   **III.   SUMMARY OF SETTLEMENT TERMS**

6       **A.   The Settlement Class and Release**

7       The proposed Settlement Class is defined as: "All natural persons residing in the United

8   States who used one or more mobile devices and whose Location Information was stored by Google

9   while "Location History" was disabled at any time during the Class Period (January 1, 2014 through

10  the Notice Date)." Settlement Agreement ("SA") ¶ 28.

11      In exchange for the Settlement's benefits, Class Members will release any claims against

12  Google and the Released Parties that are based on, or arise from, one or more of the same factual

13  predicates or theories of liability as alleged in the Consolidated Action. *Id.* ¶¶ 50-57. The scope of

14  the Release is consistent with this Circuit's governing standards. *See, e.g.*, *Hesse v. Sprint Corp.*,

15  598 F.3d 581, 590 (9th Cir. 2010) ("A settlement agreement may preclude a party from bringing

16  a . . . released claim [that] is 'based on the identical factual predicate as that underlying the claims

17  in the settled class action'") (citation omitted).

18      **B.   The $62 Million Non-Reversionary Settlement Fund**

19      The Settlement would create a non-reversionary cash Settlement Fund of $62 million, which

20  would be used to pay for the costs of Notice and Settlement administration, any Court-awarded

21  attorneys' fees and expenses and Class Representative Service Awards. SA ¶¶ 32, 39. The balance

22  (the "Net Settlement Fund") would be distributed to one or more Court-approved *cy pres* recipients.

23  SA ¶¶ 40-42. No portion of the Settlement Fund would revert to Google. *Id.* ¶ 32.

24      After payment of settlement administration expenses, Court-approved service awards and

25  attorneys' fees and costs, the Net Settlement Fund would be distributed to Court-approved *cy pres*

26  recipients within 60 days of the Effective Date. SA ¶¶ 41.2, 42. The proposed recipients must be

27  "independent 501(c)(3) organizations with a track record of addressing privacy concerns on the

28  Internet (either directly or through grants) and . . . shall use the funds to promote the protection of

1   internet privacy." SA ¶ 41.2.

2   The Parties propose 17 entities identified in Exhibit D of the Settlement Agreement as *cy*

3   *pres* recipients. These include educational institutions with track records of cutting-edge public

4   interest research and education regarding online privacy issues, influencing the course of privacy

5   policy and action across the country (the Berkman Klein Center for Internet & Society at Harvard

6   University, MIT's Internet Policy Research Initiative, New York University's Information Law

7   Institute, Yale Law School's Information Society Project, the Fordham University Center on Law

8   and Information Policy); a non-profit news organization that employs trained technologists to

9   conduct independent research, and has a reputation for breaking news regarding internet privacy

10  issues in the technology industry (The Markup); an organization which serves a critical role in

11  enabling access for researchers, historians, scholars, and the general public to otherwise ephemeral

12  sources on the web—records critical to protecting consumer choice and privacy (Internet Archive);

13  public interest research and consumer advocacy organizations that focus on consumer privacy rights

14  and issues (the ACLU's Speech, Privacy, and Technology Project, the ACLU of Northern

15  California's Technology and Civil Liberties Program, the Center for Democracy & Technology,

16  Connect Safely, the Electronic Frontier Foundation, FPF Education & Innovation Foundation, and

17  Privacy Rights Clearinghouse); individual researchers whose work will advance the public

18  understanding of privacy rights and means of securing them (the Data & Society Research

19  Institute); and the Rose Foundation for Communities and the Environment, which is well-

20  positioned to ensure that additional organizations meeting the nexus of this Class and the claims at

21  issue here are able to obtain and dedicate funding from this Settlement to serving Class members.

22  *See* Joint Decl. ¶ 34. The proposed *cy pres* awards account for the nature of Plaintiffs' lawsuit and

23  the interests of silent class members. *See Lane v. Facebook*, 969 F.3d 811, 819-820 (9th Cir. 2012).

24  Plaintiffs are soliciting detailed proposals from the organizations regarding how they would use the

25  *cy pres* awards if approved, which they hope to submit with their Reply brief.

26  As a condition of receiving any portion of the Settlement Fund, each Approved *Cy Pres*

27  Recipient shall provide a report to the Court and the Parties every six months regarding how any

28  portion of the Settlement Fund allocated to it has been used and how remaining funds will be used.

- 7 -

1   SA ¶ 41.4. Class Counsel shall ensure that such reports are posted on the Settlement Website. *Id.*

2   **C.      Injunctive Relief**

3       The Settlement also provides meaningful injunctive relief that extends for at least three

4   years, requiring Google to: (1) confirm that it removed from its website (and any app or settings

5   page controlled by Google where it appeared) the statement that, "[w]ith Location History off, the

6   places you go are no longer stored"; (2) maintain a policy whereby (a) Location Information stored

7   through Location History ("LH") and Web & App Activity ("WAA") is automatically deleted by

8   default after a period of at least 18 months when users opt into these settings for the first time, and

9   (b) users can set their own auto-delete periods; (3) send a notification explaining that WAA and LH

10  collect Location Information with instructions on how to disable each setting, delete the data

11  collected by each, and set retention limits; (4) confirm that Google does not now share users' precise

12  Location Information collected in LH or WAA with third parties (except for valid legal reasons);

13  (5) create and maintain a "Location Technologies Page" that will provide useful information about

14  Google's location practices; and (6) include a link to the Location Technologies Page in its annual

15  "Privacy Check-Up" email and on other pages concerning location. SA ¶¶ 43-44 & Ex. C.

16  **D.      The Settlement's Notice Plan**

17      The proposed Class Notice is attached as Exhibit A to the Settlement Agreement. Notice

18  will be disseminated via a targeted digital media campaign specifically designed to reach Class

19  Members. SA Ex. B Declaration of Cameron R. Azari, Esq. ("Azari Decl."), ¶¶ 22-50. A Settlement

20  Website will include all important information, deadlines, and the Class Notice. SA ¶ 26.41. The

21  Settlement Website also will provide access to relevant case documents such as the operative

22  complaint, the Settlement Agreement, the Preliminary Approval Order, any application for the

23  Attorneys' Fees and Expense Award or Service Awards, any brief filed by the Parties in support of

24  the Settlement and, once issued, the Final Approval Order and Final Judgment. SA ¶ 26.41; Azari

25  Decl. ¶ 47. A toll-free telephone number, email, and physical mailing address will be available for

26  Class Members to contact the Settlement Administrator directly. SA ¶¶ 65.2-65.3; Azari Decl. ¶¶

27  47-49. The costs of Notice will be paid out of the Settlement Fund. SA ¶¶ 66, 69. The Notice Plan

28  is the best practicable notice under the circumstances, meets all due process requirements, and is

expected to reach at least 80% of the Settlement Class. Azari Decl. ¶¶ 52-54.

### E.       Attorneys' Fees and Expenses, and Class Representative Service Awards

Class Counsel will file a motion for an award of reasonable attorneys' fees, reimbursement of costs and expenses, and service awards for the Class Representatives, at least 35 days prior to the Objection Deadline. SA ¶¶ 58, 61. The sums requested (see *infra* Section IV.B.vii) will be disclosed in the Class Notice. Joint Decl. ¶¶ 38-41; SA ¶ 61 and Ex. A at Question 13.

Any approved service awards, attorneys' fees, and expenses will be paid out of the Settlement Fund. SA ¶ 59. The Settlement is not conditioned upon the Court's approval of any service award, attorneys' fees, or expenses, and Google may oppose. SA ¶¶ 62-63.

### F.       The Settlement Administrator

The Parties propose that Epiq, an experienced and reputable national class action administrator, serve as Settlement Administrator to provide Notice to the Class and all other services necessary to implement the Settlement. SA ¶ 26.36; *see generally* Azari Decl. ¶¶ 4-12 & Attach. 1. Settlement administration expenses will be paid out of the Settlement Fund. SA ¶ 66.

Epiq was selected after a competitive bidding process. Joint Decl. ¶ 28. Class Counsel vetted and considered proposals from five potential administrators. *Id*. Class Counsel—each of whom have litigated hundreds of class actions to settlement—previously have worked with Epiq, the four other bidders, as well as other professional administrators. *Id*. Class Counsel was able to negotiate a cap on the total notice and administrative costs. Azari Decl. ¶ 56. The estimated cost of $561,153 to $589,211 for class notice and settlement administration is reasonable. Joint Decl. ¶ 29.

## IV.   ARGUMENT

### A.       The Legal Standards for Preliminary Approval

In deciding whether to approve a proposed settlement, the Ninth Circuit has a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Hyundai and Kia Fuel Economy Litig.*, 926 F.3d 539, 556 (9th Cir. 2019); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). "[T]here is an overriding public interest in settling and quieting litigation," and this is "particularly true in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).

At the preliminary approval stage, the Court must determine that it "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). Specifically, in evaluating a proposed settlement, the Court should consider whether "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate . . . ; and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2).[2]

Prior to class certification, class settlements must withstand a "higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair," to ensure that "the settlement is not the product of collusion." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2011).

The Northern District of California's Procedural Guidance for Class Action Settlements ("Guidance") covers most of these requirements. The Settlement satisfies the Guidance requirements, Rule 23(e), the *Churchill* factors, and all other requirements for preliminary approval.

**B.** **The Settlement Satisfies the Northern District's Guidance**

    **i.** **Guidance 1a-b: Differences Between Class Definitions**

A class has not yet been certified. The proposed Settlement Class is: "all natural persons residing in the United States who used one or more mobile devices and whose Location Information

---

[2] Rule 23(e)(2), as amended, was not intended "to displace any factor" courts have articulated as relevant to the decision whether to approve a class settlement as fair and adequate. Fed. R. Civ. P. 23(e)(2), 2018 Adv. Comm. Note. In the Ninth Circuit, these factors include: "(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of future litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944 (9th Cir. 2015) (quoting *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)).

was stored by Google while 'Location History' was disabled at any time during the Class Period (January 1, 2014 through the Notice Date)." SA ¶ 28. The Settlement Class definition tracks the class definition in the operative FAC, with three exceptions: (1) "Location Information" was not defined in the FAC, but is defined in the Settlement Agreement for clarity; (2) the Settlement Class period is incorporated into the Settlement Class definition, but was not defined in the FAC; and (3) Plaintiffs do not seek certification for settlement purposes of three subclasses proposed in the FAC. FAC ¶ 140 (defining an "Android Class," an "Apple Class," and a "Parent Subclass"). Courts routinely approve more extensive departures from proposed litigation classes. *See, e.g.*, *Carlotti v. ASUS Computer Int'l*, No. 18-cv-03369, 2019 WL 6134910, at *14 (N.D. Cal. Nov. 19, 2019) (approving settlement class narrower than class in complaint); *In re Chrysler-Dodge-Jeep Ecodiesel Mktg, Sales Practices, and Prods. Liab. Litig.*, No. 17-md-02777, 2019 WL 536661, at *3-7 (N.D. Cal. Feb. 11, 2019) (approving settlement with "simpler" class definition).

### ii.   Guidance 1c.: Settlement Recovery Compared to Trial

The proposed $62 million recovery and injunctive relief is significant and adequate in comparison to the potential recovery if Plaintiffs prevailed after trial on each of their claims.

**Intrusion upon seclusion and California Constitutional privacy.** Plaintiffs' common law and constitutional privacy claims allow for compensatory damages, restitution, punitive damages, nominal damages, and injunctive relief. *See, e.g.*, CACI No. VF-1800 (2023); Restatement (Second) of Torts § 652H (Am. L. Inst. 1977); Rutter Group, CAL. PRAC. GUIDE: CIV. PROC. TRIAL CLAIMS & DEF., Ch. 4(IV)-E; *Cf. Cummings v. Connell*, 402 F.3d 936, 944 (9th Cir. 2005) ("Where a plaintiff proves a violation of constitutional rights, nominal damages must be awarded as a matter of law."). Calculating class-wide damages under the claims asserted here is inherently uncertain and would have drawn significant challenges from Google. Plaintiffs have not sought compensation for past financial expenditures, which would have raised objections regarding individualized inquiries, and potential punitive damages would be a matter for the jury. In any event, given the large size of the class, damages, while difficult to estimate, could be substantial.

**Unjust enrichment.** Plaintiffs' unjust enrichment claim allows for possible disgorgement of advertising revenue wrongfully derived from class members' Location Information. While

Google's revenues are substantial, there is significant risk associated with the inevitably competing expert evidence that quantifies the portion of those revenues attributable to the unlawful conduct. For example, Google has taken the position that the Court "limited Plaintiffs' unjust-enrichment claim to data collected 'when users did ***not*** interact with Google apps or services." Dkt. 293 at 4 (quoting MTD Order, Dkt. 162 at 15). Despite that Google's total U.S. advertising revenues during the Class Period exceed $600 billion (based on a review of the company's annual filings since 2014), there not only is risk associated with proving the offending conduct during that entire period, but also risk that a fact finder concludes there is insufficient evidence to attribute any of that revenue to the offending conduct. In addition, Google entered into various settlements with various state attorneys general and may argue that those recoveries—totaling approximately $500 million— should offset any recovery here.

Although Plaintiffs believe their case is strong, class certification is warranted, and that a jury could find Google liable, there is a great deal of uncertainty as to whether the Court would grant certification, deny a motion for summary judgment, and accept Plaintiffs' damages models. And similar uncertainty exists as to whether a jury would find Plaintiffs entitled to all damages they sought. The risks here are particularly acute given the Court's holding that Plaintiffs' claims depend on proof of "continuous and comprehensive" tracking and storage of Location Information, and the evidentiary burden Plaintiffs would bear in further pretrial and trial proceedings. Dkt. 162. at 8. That risk is amplified given Google's likely arguments in opposition to class certification. *See, e.g.*, *Hart v. TWC Prod. & Tech. LLC*, No. 20-cv-03842, 2023 WL 3568078, at *10-11 (N.D. Cal. Mar. 30, 2023) (denying certification because "[t]he common question of whether users maintained a reasonable expectation of privacy . . . necessitates an individualized factual inquiry into whether individual users understood that their affirmative responses to the permission prompts enabled TWC to use the location data it collected"); *Brown v. Google*, LLC, No. 20-cv-03664, 2022 WL 17961497, at *19 (N.D. Cal. Dec. 12, 2022) (denying certification of privacy claims under Rule 23(b)(3) because "the inquiry into implied consent . . . creates individualized issues that defeat predominance"); *In re Google Inc. Gmail Litig.*, No. 13-md-02430-LHK, 2014 WL 1102660, at *18 (N.D. Cal. Mar. 18, 2014) (denying certification of wiretapping claims because the issue of

- 12 -

Notice of Mot. and Mot. For Prelim. Approval; MPA iso Thereof
Case No. 5:18-cv-05062-EJD

1  consent would require individualized inquires as to which disclosures each viewed).

2  Given such realities, numerous privacy class actions have settled for non-monetary relief

3  and/or indirect *cy pres* relief. *See, e.g., In re Google Inc. Street View Elec. Comms. Litig.*, 21 F.4th

4  1102, 1115 (9th Cir. 2021) (affirming approval of settlement providing for injunctive relief and *cy*

5  *pres* monetary award); *Campbell v. Facebook Inc.*, No. 13-cv-05996, 2017 WL 3581179, at *8

6  (N.D. Cal. Aug. 18, 2017) (granting final approval of declaratory and injunctive relief settlement),

7  *aff'd*, 951 F.3d 1106 (9th Cir. 2020); *McDonald, et al. v. Kiloo A/S, et al.*, No. 17-cv-04344 (N.D.

8  Cal. Apr. 12, 2021), ECF No. 406 (granting final approval to 16 injunctive relief-only settlements).

9  In short, given the anticipated disputes that would inevitably lie ahead, including summary

10  judgment (when Google might prevail by establishing it did not continuously and comprehensively

11  track class members throughout the Class Period) and class certification (when Google might

12  prevail by establishing that individualized issues regarding consent would predominate), Plaintiffs

13  faced significant risk. And, even if Plaintiffs successfully proved their case at trial, the amount of

14  recovery, if any, could vary widely. If anything were recovered, it would take years to secure, as

15  Google undoubtedly would appeal any adverse judgment. In comparison, the Settlement provides

16  a guaranteed, immediate, and substantial cash recovery of $62 million, plus significant injunctive

17  relief custom-tailored to address the allegedly offensive practices.

18        **iii.**     **Guidance 1e-g: The Settlement's Plan of Allocation Merits Approval**

19  The proposed *cy pres* awards are the most effective means of providing a benefit to the

20  Settlement Class here. These distributions will meaningfully benefit Class Members by funding

21  activities that are in their interest and that serve the goals of this litigation.

22  Where individual distributions would not be economically viable, *cy pres* awards are viewed

23  as the best and most effective means of benefiting class members. *See In re Google Inc. Street View*,

24  21 F.4th at 1115 (affirming approval of settlement providing for injunctive relief and *cy pres*

25  monetary award, where "self-identification" by class members whose wi-fi network data was

26  collected by Google "would be pure speculation"); *Six (6) Mexican Workers v. Ariz. Citrus*

27  *Growers*, 904 F.2d 1301, 1305 (9th Cir. 1990) ("[F]ederal courts have frequently approved [*cy pres*]

28  in the settlement of class actions where the proof of individual claims would be burdensome or

distribution of damages costly."").

Here, distribution to class members is economically infeasible. Plaintiffs allege Google stored Location Information collected via mobile devices despite users' Location History settings being disabled during the Class Period, and thus consider each U.S. mobile device user with a Location History setting that was turned off at any point during the Class Period to be a Settlement Class Member. The Location History setting was off by default throughout the Class Period. *See, e.g.*, SA Ex. A at Question 2.

According to Epiq, there are approximately 247.7 million U.S. adults with mobile devices. Joint Decl. ¶ 31. Google asserts it has billions of U.S. accounts associated with such people. Declaration of Daniel Talavera ("Talavera Decl.") ¶ 7. Because U.S. Google accounts (each of which has a Location History setting) far outnumber U.S. adults with mobile devices, Plaintiffs believe the number of U.S. adults with mobile devices roughly approximates the size of the Settlement Class.

Accordingly, were Google to email each class member at a single email address (despite having multiple email addresses for many), and offer each an automatic payment via Google Pay, each class member's share, assuming administration costs were unrealistically capped at the cost of publication notice proposed here to achieve the same Net Settlement Fund, would be a *de minimis* sum of approximately 17¢. Of course, de-duplicating multiple Google accounts per individual and addressing claims of individuals who deleted their accounts would be time- and resource-intensive (if possible at all), and would drive up administration costs. If a claims process were implemented, Plaintiffs expect the Settlement would receive significant media attention, and the response rate could be similar to or higher than the rate recently reported in *In re Facebook Consumer Privacy User Profile Litig.*, No. 18-md-02843 (N.D. Cal.)—around 7%. If that were achieved, each claimant would be expected to receive approximately $2.50. *See* Bonnie Eslinger, *Facebook Jurist 'Blown Away' By Record Reply To $725M Deal*, Law360, Sept. 7, 2023.

The Settlement's *cy pres* distribution will give the Class the greatest benefit of any form of monetary relief that could realized here. The Settlement Class will benefit from millions of dollars in donations to qualified organizations with a track record of addressing privacy concerns

- 14 -

on the Internet. SA ¶ 41.2. The donations to these organizations will benefit the Class by aiding consumers in protecting themselves and their privacy online in the future. *See Lane*, 696 F.3d at 821 (*cy pres* supported where "direct monetary payments . . . would be infeasible given that each class member's direct recovery would be de minimis.").

Further, the Settlement Fund of $62 million here is large in the context of comparable settlements. *See, e.g.*, *In re Google Inc. Street View*, 21 F.4th at 1109 (affirming final approval of settlement providing $13 million in *cy pres* and injunctive relief where the class size was 60 million); *Campbell*, 2017 WL 3581179, at *4 (approving settlement providing injunctive relief only and no monetary relief); *In re Google Referrer Header Privacy Litig.*, 869 F.3d 737, 740 (9th Cir. 2017), *vacated on other grounds by Frank v. Gaos*, 139 S. Ct. 1041 (2019) (affirming approval of settlement providing for *cy pres* distribution of $5.3 million); *Lane*, 696 F.3d 811 (unauthorized disclosure of personal information; *cy pres* distribution of $9.5 million); *In re Netflix Priv. Litig.*, No. 11-cv-00379, 2013 WL 1120801, at *3 (N.D. Cal. Mar. 18, 2013) (approving settlement including *cy pres* distribution of $9 million in case involving alleged unauthorized storage of personal information); *In re Google Buzz Privacy Litig.*, No. 10-cv-672-JW, 2011 WL 7460099, at *4 (N.D. Cal. June 2, 2011) (approving settlement creating $8.5 million *cy pres* fund to resolve privacy claims of class estimated in the tens of millions).

Considering the myriad uncertainties of litigation and the immediate benefits offered to the Class by the proposed Settlement, the Settlement Agreement offers the Class the greatest relief possible and warrants preliminary approval.

### iv.     <u>Guidance 2: The Proposed Settlement Administrator</u>

The Parties request that the Court appoint Epiq as Settlement Administrator for the Settlement. As described in Section III.G above, Epiq is an excellent choice selected through a competitive bidding process involving four other potential administrators. Joint Decl. ¶ 28.

### v.     <u>Guidance 3: The Proposed Notice Plan</u>

Rule 23(c)(2)(B) requires that settlement notice be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c); *see also* Fed. R. Civ. P. 23(e)(1)(B) ("The court must

- 15 -

1  direct notice in a reasonable manner to all class members who would be bound by the propos[ed

2  settlement].”). Notice “must generally describe[] the terms of the settlement in sufficient detail to

3  alert those with adverse viewpoints to investigate and to come forward and be heard.” *Lane v.*

4  *Facebook, Inc.*, 696 F.3d at 826 (9th Cir. 2012) (citation omitted). “The means [of notice] employed

5  must be such as one desirous of actually informing the absentee might reasonably adopt to

6  accomplish it. The reasonableness and hence the constitutional validity of any chosen method may

7  be defended on the ground that it is in itself reasonably certain to inform those affected.” *Mullane*

8  *v. Cent. Hanover Bank Trust Co.*, 339 U.S. 306, 315 (1950).

9      Google states that its “data-collection practices and systems make it infeasible to identify

10  the individuals who fit the class definition.” Talavera Decl. ¶ 3. While Plaintiffs take no position

11  on whether Google could identify the email addresses of a significant portion of the Settlement

12  Class, the question need not be resolved. Publication notice would be necessary regardless because

13  any list of email addresses would be significantly under-inclusive of former Google users, given

14  that Google “may not have reliable contact information for a user” who “deleted their account or

15  stopped using it.” *Id.* ¶ 8. Further, it would be extremely challenging to search for alternative contact

16  information associated with abandoned Google accounts. Publication notice is thus the only

17  reasonable way to reach former users, and those same digital advertisements would also target all

18  Settlement Class Members.

19      In sum, because Google cannot generate a comprehensive class list, publication notice is

20  the best notice here. *See, e.g.*, *In re MetLife Demutualization Litig.*, 262 F.R.D. 205, 208 (E.D.N.Y.

21  2009) (“The best practicable notice under the circumstance is notice by publication in newspapers.

22  In view of the millions of members of the class, notice to class members by individual postal mail,

23  email or radio or television advertisements, is neither necessary nor appropriate.”); *Schneider v.*

24  *Chipotle Mexican Grill, Inc.*, No. 16-cv-02200, 2019 WL 1512265, at *3 (N.D. Cal. Apr. 8, 2019)

25  (ordering publication notice and denying request to issue direct notice via email to an email list not

26  coextensive with class membership); *In re Domestic Air Transp. Antitrust Litig.*, 141 F.R.D. 534,

27  545-46 (N.D. Ga. 1992) (requiring publication notice only where defendant’s list of potential class

28  members was both over- and under-inclusive). Plaintiffs propose a comprehensive digital media

- 16 -

campaign that is well-designed "to inform those affected," given that class members by definition use digital devices. *Mullane*, 339 U.S. 306 at 315. This is the best practicable notice given the enormous size and composition of this Settlement Class.

**Publication Notice**. Notice to Class Members will include a comprehensive publication plan that conforms to all applicable rules and guidelines. The proposed notice plan includes Gmail inbox ads and targeted digital advertising including banners, audio, and video ads designed to target Settlement Class Members and attain the widest reach possible. Azari Decl. ¶¶ 32-24, 38-47. The Notice Plan is well-designed to reach Class Members and is the best notice practicable. *Id*. ¶¶ 52-54; *accord Noll v. eBay, Inc.*, 309 F.R.D. 593, 604-05 (N.D. Cal. 2015) ("While Rule 23 requires that reasonable efforts be made to reach all class members, it does not require that each individual actually receive notice."). The Class Notice forms are clear and, together with the Settlement Website, provide all the information Settlement Class Members possibly might require to make an informed decision as to how to respond. Azari Decl. ¶¶ 47-50. The Notice program therefore satisfies the requirements of Rule 23. *Id*. ¶¶ 53-54.

**Settlement Website.** The Settlement Administrator will create the Settlement Website, which will remain active until at least 90 days after the Settlement's Effective Date. SA ¶ 65.2. Key documents will be available here, and the website will notify Class Members of their rights to object or opt out and inform Class Members that they should monitor the Settlement Website for developments. The Settlement Administrator also will establish a toll-free telephone number and P.O. Box to which Class Members may submit questions. Azari Decl. ¶¶ 48-49.

### vi.     Guidance 4 and 5: Opt-Outs and Objections

The proposed Notice complies with Rule 23(e)(5) and: (a) describes the nature of the Action and the proposed Settlement, including information on the definition of the Settlement Class, (b) directly states that the Settlement does not entitle class members to any direct payment and explains how the proposed Settlement would provide indirect relief through the *cy pres* beneficiaries; (c) describes what claims are released under the proposed Settlement; (d) advises Settlement Class Members that, if they do not file valid exclusion requests, they will release their claims; (e) informs Settlement Class Members of their right to opt out; (f) informs Settlement Class Members of their

1   right to object to the proposed Settlement, Attorneys' Fees and Expenses Award, and/or Service

2   Awards and to appear at the Final Approval Hearing; (g) informs Settlement Class Members that

3   fees and expenses related to the Settlement Administrator will be deducted from the Settlement

4   Fund, and the maximum Fees and Expenses Award and Service Awards to be sought; and (h)

5   informs the Settlement Class about the Proposed *Cy Pres* Recipients. SA ¶ 64.

6               vii.      **Guidance 6: The Intended Attorneys' Fees and Expenses Request**

7               Class Counsel anticipate seeking attorneys' fees up to 30% of the Settlement Fund (i.e., up

8   to $18.6 million), plus reimbursement of reasonable out-of-pocket expenses currently totaling

9   approximately $145,000. Joint Decl. ¶ 39. Google has the right to oppose Class Counsel's request,

10  but the 30% fee award would be appropriate considering the results achieved for the Class. SA ¶ 63.

11  It also will be supported by a lodestar cross-check, given that Plaintiffs' Counsel's total lodestar,

12  through June 30, 2023 (the last reporting deadline as of this filing), totals approximately $10.8

13  million for approximately 17,000 hours of work. Joint Decl. ¶ 39. Though Class Counsel anticipate

14  reporting a higher lodestar with their Fee Motion, at this amount, the maximum fee request would

15  represent a modest multiplier of 1.7. *Id.* Class Counsel will detail the work, hours, lodestar, and

16  expenses in their fee and expense motion.

17              viii.     **Guidance 7: Service Awards**

18              Service Awards "have long been approved in the Ninth Circuit," *In re Apple Inc. Device*

19  *Performance Litig.*, No. 18-md-02827, 2021 WL 1022866, at *11 (N.D. Cal. Mar. 17, 2021), and

20  are "fairly typical in class action cases," *Rodriguez v. West Publg. Corp.*, 563 F.3d 948, 958 (9th

21  Cir. 2009). Plaintiffs have been dedicated and active participants in this litigation. Joint Decl. ¶ 40.

22  They assisted in the investigation, participated in the plaintiff vetting process implemented by their

23  respective counsel and by Class Counsel after appointment, reviewed and approved the complaints,

24  kept in close contact with counsel to monitor the progress of the litigation, and communicated with

25  counsel regarding the Settlement. *Id.* Plaintiffs spent significant time responding to extensive and

26  broad discovery served by Google, including invasive collection of comprehensive personal data

27  from their phones, email, and Google accounts, despite privacy concerns. Plaintiffs provided their

28  mobile devices to Class Counsel's forensic data experts. *Id.* ¶ 41. Plaintiffs put their names and

1  reputations on the line for the sake of the Class. Joint Decl. ¶ 41. The Class recovery here would

2  not have been possible without their efforts. Given the time and risk Class Representatives took on

3  to participate in this Action, Class Counsel will petition the Court for approval of Service Awards

4  in the amount of $5,000 each. *Id.* These amounts will be disclosed in the Class Notice. *Id.*

5  **ix.**     **Guidance 8: Proposed *Cy Pres* Recipients**

6         The Parties propose the *cy pres* recipients identified in Section III.C., above. Each proposed

7  recipient is an independent 501(c)(3) organization with a track record of addressing privacy

8  concerns on the Internet (either directly or through grants), and as a condition of becoming

9  Approved *Cy Pres* Recipients and receiving any portion of the Settlement Fund (*see* SA ¶ 41.2),

10 they each will have provided a specific proposal demonstrating and committing how they will use

11 the funds to promote the protection of internet privacy. Joint Decl. ¶¶ 34-36.

12       Where class action settlements provide for a *cy pres* remedy, "[t]he district court's

13 review . . . is not substantively different from that of any other class-action settlement," with one

14 exception. *Lane*, 696 F.3d at 819-820. *Cy pres* "awards [must] meet a 'nexus' requirement by being

15 tethered to the objectives of the underlying statute and the interests of the silent class members."

16 *In re Google Referrer Header Privacy Litig.*, 869 F.3d at 743 (*citing Nachshin v. AOL, LLC*, 663

17 F.3d 1034, 1039 (9th Cir. 2011)).

18       The proposal that funds be distributed to potential *cy pres* recipients here complies with the

19 directives from the Ninth Circuit because the funds will be used to promote the protection of

20 Internet privacy. When Plaintiffs file their papers in support of Final Approval—after specific

21 proposals are received from Proposed *Cy Pres* Recipients—the Parties will identify for the Court,

22 a proposed percentage of the Net Settlement Fund to be distributed to each Approved *Cy Pres*

23 Recipient. *Id.* ¶ 41.3. To the extent some or all the Proposed *Cy Pres* Recipients do not become

24 Approved *Cy Pres* Recipients, the Parties may mutually agree to nominate additional Proposed *Cy*

25 *Pres* Recipients, if so requested or directed by the Court. In the event the Parties are unable to agree

26 on additional Proposed *Cy Pres* Recipients to propose after meeting and conferring in good faith,

27 each Party may submit Proposed *Cy Pres* Recipients unilaterally. *Id.*

28

#### x.  Guidance 9: Proposed Timeline

The Parties suggest a schedule based on the following intervals:

| Event / Deadline | Proposed Time for Compliance |
|---|---|
| Notice Date | No later than 30 days after the Court's entry of the Preliminary Approval Order. SA ¶ 26.20 |
| Objection Deadline | 91 days after the Notice Date. SA ¶ 26.22 |
| Exclusion (Opt-Out) Deadline | 91 days after the Notice Date. SA ¶ 26.23 |
| Deadline to file Motions for Attorneys' Fees and Expenses and Class Representative Service Awards | 35 days prior to the Objection Deadline. SA ¶¶ 58, 61 |
| Deadline to file Motion for Final Approval | 21 days after the Request for Exclusion (Opt-Out) Deadline. SA ¶ 26.13 |
| Oppositions to Motion for Final Approval | 14 days after Motion for Final Approval |
| Reply in Support of Motion for Final Approval | 21 days after Oppositions to Motion for Final Approval |
| Final Approval Hearing | In light of the deadlines above, no earlier than 200 days after the Court's entry of the Preliminary Approval Order. |

#### xi.  Guidance 10: Class Action Fairness Act

The Administrator will serve the notice required by the Class Action Fairness Act, 28 U.S.C. § 1715, no later than 10 days after this filing. SA ¶ 97.

#### xii.  Guidance 11: Comparable Outcomes

In *In re Google Inc. Street View*, the Ninth Circuit affirmed approval of a comparable *cy pres* settlement distribution. In that case, plaintiffs alleged that Google used its Street View vehicles to intentionally intercept and store electronic communications transmitted by class members over unencrypted wireless internet connections. 21 F.4th at 1108-09. The settlement covered approximately 60 million members, provided for injunctive relief and a $13 million settlement fund which, after subtracting attorneys' fees and other payments, would be distributed to nonprofit organizations involved in addressing consumer privacy issues. *Id.* at 1109, 1114-15.

*In re Google Buzz Privacy Litig.*, No. 10-00672, 2011 WL 7460099 (N.D. Cal. June 2, 2011), was a privacy class action brought on behalf of a class estimated to be in the tens of millions and included allegations that defendant Google disseminated the personal information of users of its Google Buzz program in violation of federal privacy-related statutes. The settlement included

1   an \$8.5 million fund to be distributed to third-party *cy pres* recipients for the purpose of furthering

2   consumer privacy protection. *Id.* The court found that the *cy pres* distribution would provide "an

3   indirect benefit to the Class Members consistent with the Class Members' claims." *Id.* at \*4.

4          *In re Netflix Priv. Litig.*, No. 11-00379, 2013 WL 1120801 (N.D. Cal. Mar. 18, 2013), was

5   a putative class action challenging the way defendant retained and used its subscribers'

6   Entertainment Content Viewing Histories and other personally identifiable information allegedly

7   in violation of the Video Protection Privacy Act ("VPPA"), which provides for statutory damages.

8   The Court approved a settlement that provided for *cy pres* distribution of \$9 million where the class

9   size was approximately 62 million. *Id.* at \*7.

10         In *Lane*, the Ninth Circuit affirmed approval of a *cy pres* distribution similar to that

11  proposed here. The case, brought on behalf of a class of millions, involved alleged violations of the

12  VPPA and other privacy statutes based on allegations that defendant Facebook gathered and

13  disseminated the personal information of its members. The settlement agreement included a \$9.5

14  million fund which, after subtracting attorneys' fees and other awards and costs, would be used by

15  Facebook to set up a new charity organization whose stated purpose would be to "fund and sponsor

16  programs designed to educate users, regulators[,] and enterprises regarding critical issues relating

17  to protection of identity and personal information online through user control, and the protection of

18  users from online threats." *Lane*, 696 F.3d at 817. The Ninth Circuit concluded this settlement

19  warranted approval because, in addition to the \$9.5 million pay-out being a "substantial" sum for

20  this type of class action, "it would be burdensome and inefficient to pay the \$6.5 million in *cy*

21  *pres* funds that remain after costs directly to the class because each class member's recovery under

22  a direct distribution would be *de minimis.*" *Id.* at 824–25 (internal quotation marks omitted).

23         The present Settlement compares favorably to these and other class settlements alleging

24  digital privacy violations. *See e.g.*, *In re Google Plus Profile Litig.*, No. 18-cv-06164, 2021 WL

25  242887, at \*1 (N.D. Cal. Jan. 25, 2021) (\$7.5 million for 161 million Google+ users in data breach

26  case); *In re: Vizio, Inc., Consumer Privacy Litigation*, 16-ml-02693 (C.D. Cal. July 31, 2017) (\$17

27  million for 16 million potential claimants for unauthorized collection and disclosure of information

28  from customers' VIZIO smart TVs, including IP addresses and device identifiers); *In re Linkedin*

1    *User Priv. Litig.*, 309 F.R.D. 573, 582 (N.D. Cal. 2015) ($1.25 million for claims related to

2    approximately 6.4 million LinkedIn users' stolen account passwords). Furthermore, Plaintiffs here

3    successfully obtained substantive and meaningful injunctive relief. And while a handful of privacy

4    settlements in recent years have resulted in larger absolute recoveries—*e.g.*, *In re Facebook*

5    *Biometric Information Privacy Litig.*, 15-cv-03747-JD (N.D. Cal.)—few involved solely common

6    law or constitutional privacy tort claims, without attendant statutory damages.

7           Google's settlements with various state attorneys general in late 2022 and early 2023, which

8    resolved different claims relating to the same underlying conduct and which resulted in total

9    payments by Google exceeding $500 million, are not comparable. Those settlements resolved state

10   enforcement actions, not consumer privacy class actions. Nonetheless, Plaintiffs faced the risk that

11   Google could argue that these settlements would offset any recovery here. This Settlement will not

12   affect those cases or settlements. *See* Guidance 1.d.

13       **C.**     **The Settlement Is the Product of Arm's-Length Negotiations and Is**
                    **Supported by Experienced Counsel**

14
15          None of the signs of collusion identified by the Ninth Circuit are present here. There is no

16   "free sailing provision." *Bluetooth*, 654 F.3d at 942; SA ¶¶ 58, 63. There is no reversion of the

17   Settlement Fund—rather the Settlement will distribute the entire Settlement Amount. *See* SA ¶¶ 32,

18   40-42. Class Counsel will apply for fees from the Settlement Fund and had every incentive to secure

19   the largest fund possible. There has been no collusion or fraud in the settlement negotiations.

20          It required over a year of intense and contentious negotiations to reach the agreement

21   currently before the Court, including, for a time, a return to active litigation. Courts recognize that

22   the opinion of experienced counsel supporting settlement after arm's-length negotiations "is

23   entitled to considerable weight." *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal.

24   1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981). Class Counsel conducted an extensive investigation into

25   the claims, and diligently prosecuted the case in the face of an aggressive and steadfast defense

26   mounted by a premier firm representing a defendant with unlimited resources. The Parties'

27   protracted and hard-fought negotiations included the determined assistance of an experienced

28   mediator, including three formal mediation sessions, and input from Magistrate Judge Spero. The

Parties submitted multiple comprehensive mediation briefs. *See Villegas v. J.P. Morgan Chase & Co.*, No. 09-cv-00261, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012) (noting that private mediation "tends to support the conclusion that the settlement process was not collusive"). The settlement was zealously and contentiously negotiated, and Class Counsel support the settlement as fair, reasonable, and adequate. Joint Decl. ¶¶ 22-29, 42-43.

### D.    The Stage of the Proceedings and the Discovery Conducted Support Approval

As discussed above, Class Counsel (and their co-counsel) engaged in extensive investigation, research, and analysis of the Class's claims. The Parties engaged in approximately 26 months of discovery, including: serving discovery requests and written responses; meeting and conferring; engaging in discovery motion practice, where necessary; and attending regular discovery conferences with Magistrate Judge Cousins. *See* Joint Decl. ¶¶ 7, 17-21. Defendant produced, and Plaintiffs reviewed (including while discovery was stayed), more than 500,000 pages of documents. *Id.* ¶ 17. In addition, Class Counsel consulted with several experts. *Id.* ¶¶ 7, 26, 42. This discovery allowed Plaintiffs to adequately evaluate the merits of their claims.

### E.    Rule 23's Requirements for Class Certification Are Met

Parties seeking class certification for settlement purposes must satisfy the requirements of Fed. R. Civ. P. 23. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). "A court considering such a request should give the Rule 23 certification factors 'undiluted, even heightened, attention in the settlement context.'" *Sandoval v. Roadlink USA Pac., Inc.*, No. 10-cv-00973, 2011 WL 5443777, at *2 (C.D. Cal. Oct. 9, 2011) (quoting *Amchem*, 521 U.S. at 621). "[I]f a class has not [yet] been certified, the parties must ensure that the court has a basis for concluding that it likely will be able, after the final hearing, to certify the class." Fed. R. Civ. P. 23, Adv. Comm. Notes to 2018 Amendment. All the requirements of Rule 23(a) must be met, and "at least one of the three requirements listed in Rule 23(b)." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011).

### i.    Class Representatives Satisfy Rule 23(a)'s Prerequisites

**Numerosity—Rule 23(a)(1)**: As explained above there are likely hundreds of millions of Settlement Class Members. There can be no doubt that numerosity is satisfied.

**Commonality—Rule 23(a)(2)**: For purposes of Rule 23(a)(2), even a single common

- 23 -

1  question is satisfactory. *Wal-Mart*, 564 U.S. at 359; *see also Mazza v. Am. Honda Motor Co.*, 666

2  F.3d 581, 589 (9th Cir. 2012) (characterizing commonality as a "limited burden"). Questions about

3  how and why Google collected and stored Location Information, and what Google did or did not

4  disclose about its actions, at a minimum, are common to the Class.

5      **Typicality—23(a)(3)**: Plaintiffs are typical of the Settlement Class they seek to represent.

6  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). Each alleges that they took efforts

7  to prevent their mobile devices' Location Information from being recorded and stored by Google,

8  and despite these efforts and contrary to Google's representations, Google recorded and stored it.

9  Plaintiffs' and Class Members' claims arise from the same nucleus of facts, pertain to a common

10  defendant, and are based on the same legal theories. Plaintiffs are typical of other Class Members.

11      **Adequacy—Rule 23(a)(4)**: Plaintiffs have no conflicts with other Class Members. They

12  and Class Counsel prosecuted this Action vigorously on behalf of the Settlement Class and will

13  continue to do so. *Ebarle v. Lifelock, Inc.*, No. 15-cv-00258, 2016 WL 234364, at *4 (N.D. Cal.

14  Jan. 20, 2016) (citing *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000)).

15          **ii.**     **Plaintiffs Satisfy Rule 23(b)(3)'s Requirements**

16      Plaintiffs seek conditional certification under Rule 23(b)(3), which provides that a class

17  action can be maintained where: (1) the questions of law and fact common to members of the class

18  predominate over any questions affecting only individuals; and (2) the class action mechanism is

19  superior to the other available methods for the fair and efficient adjudication of the controversy.

20  Fed. R. Civ. P. 23(b)(3); *eBay*, 309 F.R.D. at 604.

21      **Predominance**: Every Class Member was subjected to the same alleged conduct—

22  invasions of widely held and reasonable expectations regarding their data, and Google's wrongful

23  use of it—that caused them the same type of harm. The overarching questions at issue in this case

24  are common ones and can be resolved for all members of the proposed Settlement Class in a single

25  adjudication. *See, e.g., Abante Rooter & Plumbing, Inc. v. Pivotal Payments Inc.*, No. 16-cv-05486,

26  2018 WL 8949777, at *5 (N.D. Cal. Oct. 15, 2018); *In re Anthem, Inc. Data Breach Litig.*, 327

27  F.R.D. 299, 312 (N.D. Cal. 2018).

28      **Superiority**: Where, as here, a court is deciding the certification question in a settlement

- 24 -

context, it need not consider manageability issues because "the proposal is that there be no trial," and hence manageability considerations are no hurdle to certification for purposes of settlement. *Amchem*, 521 U.S. at 620. Here, a class action is the only reasonable method to fairly and efficiently adjudicate Class Members' claims against Google. *See, e.g.*, *Phillips Co. v. Shutts*, 472 U.S. 797, 809 (1985) ("Class actions . . . permit the plaintiffs to pool claims which would be uneconomical to litigate individually."). Resolution of the predominant issues of fact and law through individual actions is impracticable: the amount in dispute for individual class members is too small, the technical issues involved are too complex, and the required expert testimony and document review too costly. *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1123 (9th Cir. 2017).

### F.   The Court Should Appoint the Named Plaintiffs as Class Representatives

The Court should appoint the named Plaintiffs as Class Representatives because they have no conflicts with the Settlement Class and are represented by qualified counsel who will vigorously prosecute the Class's interests. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 943.

### G.   The Court Should Appoint Class Counsel as Settlement Class Counsel

Class Counsel were previously appointed on an interim basis. Dkt. 72. Considering counsel's collective expertise and experience in handling similar actions, the resources they have committed to vigorously representing the Class over more than five years, and the result they have ultimately achieved, they should be appointed as Class Counsel for the proposed Settlement Class under Rule 23(g)(3) and confirmed under Rule 23(g)(1). Joint Decl. ¶¶ 7, 42-43; *see also* Dkt. 54.

### V.   CONCLUSION

For the reasons discussed above, Plaintiffs respectfully request the Court preliminarily approve the proposed Settlement; find that, for purposes of effectuating the proposed Settlement, the prerequisites for class certification under Rule 23(a) are likely to be satisfied; approve Notice and the selection of the Settlement Administrator; and set a final approval hearing.

Respectfully submitted,

Dated: September 14, 2023

*/s/ Tina Wolfson*
AHDOOT & WOLFSON, PC
Tina Wolfson (SBN 174806)
twolfson@ahdootwolfson.com

- 25 -

1   Theodore Maya (SBN 223242)
    tmaya@ahdootwolfson.com
2   Bradley K. King (SBN 274399)
    bking@ahdootwolfson.com
3   Henry J. Kelston (*pro hac vice*)
    hkelston@ahdootwolfson.com
4   Deborah De Villa (SBN 312564)
    ddevilla@ahdootwolfson.com

5   2600 West Olive Avenue, Suite 500
    Burbank, California 91505
6   Telephone: 310.474.9111
    Facsimile: 310.474.8585
7

8   Dated: September 14, 2023                    */s/ Michael W. Sobol*
9                                                LIEFF CABRASER HEIMANN &
                                                 BERNSTEIN, LLP
10                                               Michael W. Sobol (SBN 194857)
                                                 msobol@lchb.com
11                                               Melissa Gardner (SBN 289096)
                                                 mgardner@lchb.com
12                                               Michael Levin-Gesundheit (SBN 292930)
                                                 mlevin@lchb.com
13                                               Michael K. Sheen (SBN 288284)
                                                 msheen@lchb.com
14                                               Jallé H. Dafa (SBN 290637)
                                                 jdafa@lchb.com
15                                               John D. Maher (SBN 316157)
                                                 jmaher@lchb.com
16                                               275 Battery Street, 29th Floor
                                                 San Francisco, CA 94111
17                                               Telephone: 415.956.1000
                                                 Facsimile: 415.956.1008
18
                                                 LIEFF CABRASER HEIMANN &
19                                               BERNSTEIN, LLP
                                                 Nicholas Diamand (*pro hac vice*)
20                                               250 Hudson Street, 8th Floor
                                                 New York, NY 10013
21                                               Telephone: 212.355.9500
                                                 Facsimile: 212.355.9592
22
                                                 *Interim Co-Lead Class Counsel*
23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SIGNATURE ATTESTATION**

I am the ECF User whose identification and password are being used to file the foregoing Notice of Motion and Motion for Preliminary Approval of Proposed Class Action Settlement; Memorandum of Points and Authorities in Support Thereof.  Pursuant to L.R 5-1(i)(3) regarding signatures, I, Tina Wolfson attest that concurrence in the filing of this document has been obtained.

DATED: September 14, 2023                         _/s/ Tina Wolfson_____
                                                                    Tina Wolfson