LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
Michael W. Sobol (SBN 194857)
msobol@lchb.com
Melissa Gardner (SBN 289096)
mgardner@lchb.com
Michael Levin-Gesundheit (SBN 292930)
mlevin@lchb.com
Michael K. Sheen (SBN 288284)
msheen@lchb.com
Jallé H. Dafa (SBN 290637)
jdafa@lchb.com
John D. Maher (SBN 316157)
jmaher@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: 415.956.1000
Facsimile: 415.956.1008

LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
Nicholas Diamand (*pro hac vice*)
250 Hudson Street, 8th Floor
New York, NY 10013
Telephone: 212.355.9500
Facsimile: 212.355.9592

*Interim Co-Lead Class Counsel*

AHDOOT & WOLFSON, PC
Tina Wolfson (SBN 174806)
twolfson@ahdootwolfson.com
Theodore Maya (SBN 223242)
tmaya@ahdootwolfson.com
Bradley K. King (SBN 274399)
bking@ahdootwolfson.com
Henry J. Kelston (*pro hac vice*)
hkelston@ahdootwolfson.com
Deborah De Villa (SBN 312564)
ddevilla@ahdootwolfson.com
2600 West Olive Avenue, Suite 500
Burbank, California 91505
Tel: 310.474.9111
Fax: 310.474.8585

*Interim Co-Lead Class Counsel*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE: GOOGLE LOCATION HISTORY LITIGATION | Case No. 5:18-cv-05062-EJD<br><br>**JOINT DECLARATION OF TINA WOLFSON AND MICHAEL W. SOBOL IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Dept: Courtroom 4 - 5th Floor<br>Judge: Hon. Edward J. Davila<br>Date: October 26, 2023<br>Time: 9:00 A.M. |

We, Tina Wolfson and Michael W. Sobol, declare as follows:

1. I, Tina Wolfson, am a member in good standing of the California State Bar and a partner in the law firm of Ahdoot & Wolfson, PC ("AW").

2. I, Michael W. Sobol, am a member in good standing of the California State Bar and a partner in the law firm of Lieff Cabraser Heimann & Bernstein, LLP ("LCHB"). I have served as the chair of my firm's Cybersecurity & Data Privacy practice group since its inception in 2016.

3. We were appointed by the Court as Interim Co-Lead Class Counsel in the consolidated proceedings against Defendant Google LLC ("Defendant" or "Google"). We have personal knowledge of the matters set forth herein, and could and would testify competently hereto if called upon to do so. We respectfully submit this Joint Declaration in support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement.

4. After years of hard-fought litigation since these consolidated actions commenced in August 2018, and over a year of contentious, well-informed, arm's-length settlement negotiations aided by mediator Eric D. Green, Esq. and by Magistrate Judge Joseph C. Spero, the Parties present the Court with an agreement to settle Plaintiffs' claims against Google on a nationwide, class basis.

5. Attached hereto as **Exhibit 1** is the Class Action Settlement and Release Agreement ("Settlement" or "SA") entered into between the Parties to this litigation.

6. If approved, the Settlement will establish a non-reversionary cash Settlement Fund of $62 million to be distributed (after notice and Settlement administration costs and any service awards and attorneys' fees and costs the Court may award) to Court-approved organizations with a track record of addressing privacy concerns on the Internet.

7. At the time the Settlement was reached, we, and members of our respective firms, had a firm understanding of the risks and benefits of futher litigation.  We have been actively and personally involved in every aspect of this litigation since its inception, and (i) diligently investigated and asserted the legal claims of the proposed Class, in consultation with experts; (ii) efficiently negotiated the consolidation of six related cases asserting substantially similar claims; (iii) successfully opposed, in part, Google's second motion to dismiss the claims in full; (iv) engaged in comprehensive discovery and litigated roughly 20 discovery disputes through motions,

- 1 -

Joint Declaration iso Mot. For Prelim. Approval
Case No. 5:18-cv-05062-EJD

regular hearings, and joint reports, before Magistrate Judge Nathanael Cousins; (v) conducted significant research and discovery in preparation for the anticipated class certification motion; and (vi) engaged in multiple mediation and settlement conference sessions with Defendant, obtaining significant information regarding the Class claims in connection with such mediation; among many other tasks, all of which have been reflected in the quarterly time reports submitted *in camera* to this Court since 2019.

8. Given the substantial risks of this ligation, we believe that the Settlement is very clearly in the best interests of the Class. As discussed below, we believe the Settlement is not only fair, reasonable, and adequate, but an excellent outcome that will advance Class Members' privacy interests.

**BACKGROUND**

9. Plaintiffs allege that Google knowingly violated the privacy rights of millions of U.S. mobile device users by tracking and storing their geolocations despite the relevant setting ("Location History") being disabled. *See generally* Dkt. 131 (First Am. Consol. Class Action Compl., "FAC"). Plaintiffs allege Google's actions violated its own representations and wrongfully enabled Google to amass and commercially exploit valuable and sensitive geolocation data. *Id.*

10. This action commenced on August 17, 2018 (Dkt. 1) and was swiftly followed by six additional putative class actions asserting similar claims. Following consolidation of all related cases on December 11, 2018 (Dkt. 51), on April 1, 2019, the Court appointed us as Interim Co-Lead Class Counsel, and additional attorneys as Interim Class Counsel. Dkt. 72.

11. On April 29, 2019, Plaintiffs filed a Consolidated Complaint alleging: (a) violation of the California Invasion of Privacy Act ("CIPA"), Cal. Pen. Code § 637.7; (b) intrusion upon seclusion; and (c) violation of the California Constitution's right to privacy, Art. 1, § 1. Dkt. 80. On December 19, 2019, the Court granted Defendant's motion to dismiss, dismissing all of Plaintiffs' claims. Dkt. 113. At this point, Plaintiffs had no claims.

12. Plaintiffs attempted an interlocutory appeal of the December 2019 dismissal order, and the parties agreed to stay discovery during such proceedings after Google made a limited

- 2 -

Joint Declaration iso Mot. For Prelim. Approval
Case No. 5:18-cv-05062-EJD

production of documents previously produced to Congress in connection with its investigation of Google's practices regarding Location Information. Dkt. 118.

13. In April 2020, the Court denied Plaintiffs' motion to certify the dismissal order for interlocutory appeal (Dkt. 126).

14. In June 2020, the Court also denied Plaintiffs' motion for leave to file a motion for reconsideration of the dismissal order (Dkt. 130).

15. Plaintiffs filed the FAC on July 6, 2020, alleging claims for: (a) intrusion upon seclusion; (b) violation of the California Constitution's right to privacy, Art. 1, § 1; and (c) unjust enrichment (or, alternatively, breach of contract) (Dkt. 131), which was deemed filed as of July 16, 2020. Dkts. 136, 137. Google moved for dismissal under Rule 12(b)(6). Dkt. 145. In January 2021, the Court largely denied the motion. Dkt. 162. The Court's denial of this motion to dismiss turned on its finding that Plaintiffs now alleged "continuous and comprehensive" tracking and storage of Location Information. *Id.* at 8.

16. Defendant answered the FAC on February 8, 2021. Dkt. 165.

17. Discovery reopened in February 2021. It was hard-fought and contentious throughout the remaining years of this litigation. All told the Parties engaged in approximately 26 months of discovery, including: serving discovery requests and written responses; meeting and conferring; engaging in discovery motion practice; and attending regular discovery conferences with Magistrate Judge Cousins. Defendant produced, and Plaintiffs reviewed (including while discovery was stayed to facilitate mediation), more than 500,000 pages of documents.

18. Magistrate Judge Cousins held seven discovery hearings and conferences, and required joint reports concerning the Parties' numerous disputes on a weekly, then biweekly, basis. Dkts. 187, 204, 229. While many disputes were adjudicated in that fashion, the Parties also briefed numerous disputes through joint letter briefs. *See, e.g.*, Dkts. 173 (Letter Brief), 175 (Order), 180 (Letter Brief), 183 (Letter Brief), 187 (Order), 207 (Order), 215 (Order), 225 (Order), 226 (Order), 229 (Order), 288 (Letter Brief), 292 (Order), 293 (Letter Brief), 308 (Order), 309 (Letter Brief). Even Plaintiffs' ability to conduct expert analysis was contentious, requiring the Court to

- 3 -

Joint Declaration iso Mot. For Prelim. Approval
Case No. 5:18-cv-05062-EJD

adjudicate an opposed motion to disclose material that Google designated highly confidential to Plaintiffs' expert (Dkt. 276). Plaintiffs prevailed (Dkt. 284).

19. While Plaintiffs fought Google's persistent efforts to block their discovery efforts, they defended against Google's aggressive discovery towards them. For instance, Google sought the history of every location-related setting on every app on every device Plaintiffs or their children used during the class period. Plaintiffs were required to turn over their mobile devices, and to have those devices as well as their personal email accounts imaged and searched.

20. On February 22, 2022, the Court stayed discovery a second time, to facilitate mediation. Dkt. 243. The Parties exchanged additional documents and information in connection with the ongoing mediation and settlement discussions.

21. Throughout the course of the litigation, Class Counsel tracked the progress of related litigation in the U.S. and in other countries, including in Australia and Europe, and researched the application of the issues surrounding those cases to this litigation.

## SETTLEMENT NEGOTIATIONS AND MEDIATION

22. The Parties engaged in extensive, arm's-length negotiations over many months, including three full-day mediation sessions on March 15, May 2, and May 24, 2022, and numerous additional discussions facilitated by an experienced and well-respected mediator, Eric D. Green, Esq. Mr. Green has extensive experience mediating class actions, including multiple data privacy cases where a settlement was reached and approved. Ahead of these mediation sessions, the Parties exchanged information to facilitate productive mediation sessions, in addition to information already gleaned through discovery.

23. The Parties reached agreement on the general terms of a settlement in the form of a mediator's proposal in May 2022. However, after months of intense negotiations the Parties were unable to agree on certain terms necessary to consummate a full settlement agreement and reported as much to the Court on October 12, 2022.

24. The Court held a status conference on November 3, 2022, and referred the matter to Magistrate Judge Spero, who held a settlement conference on January 19, 2023. Although progress was made, the case did not settle at that time. The Parties returned to active, contentious litigation.

25. The Parties continued their negotiations and, on April 27, 2023, the Parties executed a term sheet agreeing, subject to the Court's approval, to settle the dispute on the general terms now before the Court. However, the Parties had yet to reach agreement on other key terms and continued to negotiate these issues intensely.

26. The Parties also participated in numerous video and phone conferences during which they successfully negotiated the Settlement's significant injunctive relief. Injunctive relief negotiations extended for months, including several iterations and revisions of written proposals and counterproposals, and consultation with experts.

27. Numerous drafts and redlines of the Settlement Agreement and its many exhibits were exchanged and scrutinized. Class Counsel collaborated with defense counsel and the proposed Settlement Administrator on the logistics and substance of the Notice Plan. Class Counsel spent numerous hours obtaining and negotiating multiple rounds of bids from five well-established, experienced, and highly regarded class action notice and administration firms.

28. Epiq Class Action & Claims Solutions, Inc. ("Epiq") was selected to serve as Settlement Administrator after a competitive bidding process during which Class Counsel vetted and considered proposals from four other potential administrators. Class Counsel previously worked with Epiq, the four other bidders, as wells as other professional administrators.

29. Class Counsel was able to negotiate a cap on the total notice and administrative costs. In Class Counsel's experience, the estimated cost of $561,153 to $589,211 for class notice and settlement administration, set forth in the concurrently filed Declaration of Cameron R. Azari (SA Ex. B), is reasonable.

**SUMMARY OF SETTLEMENT TERMS**

30. The proposed Settlement Class is defined as: "All natural persons residing in the United States who used one or more mobile devices and whose Location Information was stored by Google while 'Location History' was disabled at any time during the Class Period (January 1, 2014 through the Notice Date)." SA ¶ 28. "'Location Information' means any data used to identify a user or device and a place in the world at a point in time by use of GPS coordinate monitoring

- 5 -

Joint Declaration iso Mot. For Prelim. Approval
Case No. 5:18-cv-05062-EJD

technology, IP address, cell tower data, wireless internet access points (Wi-Fi data), or Bluetooth data." SA ¶ 26.17.

31. We are informed and believe that the Notice Target Audience consisting of Adults, Aged 18+ in the United States with a mobile device is approximately 247.7 million people according to the MRI-Simmons 2022 Survey of the American Consumer®. In our experience, MRI-Simmons' data commonly is used for purposes of class action notice planning.

32. The Settlement establishes a non-reversionary cash Settlement Fund of $62 million, which would be used to pay for the costs of Notice and Settlement administration, any Court-awarded attorneys' fees and expenses and Class Representative Service Awards. SA ¶¶ 32, 39. The balance (the "Net Settlement Fund") would be distributed to one or more Court-approved *cy pres* recipients. SA ¶¶ 40-42.

33. The proposed recipients must be "independent 501(c)(3) organizations with a track record of addressing privacy concerns on the Internet (either directly or through grants) and . . . shall use the funds to promote the protection of internet privacy." SA ¶ 41.2.

34. The Parties propose 17 entities identified in Exhibit D of the Settlement Agreement as *cy pres* recipients. These include:

   i. **Berkman Klein Center for Internet & Society at Harvard University** is a leading academic research center devoted to researching and teaching about issues at the intersection of emerging technologies, law, public policy, industry, and education.

   ii. **MIT Internet Policy Research Initiative** was founded in 2015 as a response to the critical need for technology-informed policy making in the areas of privacy, security, networks and the Internet economy. Its mission is to lead the development of policy-aware, technically grounded research that enables policymakers and engineers to increase the trustworthiness of interconnected digital systems like the Internet and related technologies.

   iii. **New York University Information Law Institute** ("ILI") is devoted to the study of law, policy, and technology as they define and affect the flow of information in digitally networked societies, with a primary focus on information privacy. The ILI regularly hosts events

involving faculty, policy makers, public interest advocates, and industry representatives from the United States and elsewhere around the world.

        iv.        **Yale Law School Information Society Project** is an intellectual center at Yale Law School. It supports a community of interdisciplinary scholars who explore issues at the intersection of law, technology, and society.

        v.        **Fordham University Center on Law and Information Policy ("CLIP")** brings together scholars, the bar, the business community, technology experts, the policy community, students, and the public to address and assess policies and solutions for cutting-edge issues that affect the evolution of the information economy. CLIP pursues work in five related areas, including technology, privacy and security;

        vi.        **The Markup** is a nonprofit newsroom with the motto "Big Tech Is Watching You. We're Watching Big Tech." Staffed with quantitative journalists who pursue meaningful, data-driven investigations, the Markup investigates how powerful institutions are using technology to change our society, and has created publicly-accessible tools for consumers to understand privacy risks associated with technology used in their day-to-day lives, including "Blacklight," real-time website privacy inspector that empowers anyone to uncover how their personal data is collected as they browse the internet. In 2021, the Markup received the Electronic Privacy Information Center's Champion of Freedom Award for 2021, which recognizes individuals and organizations that have helped safeguard the right of privacy, promote open government, and protect democratic values with courage and integrity.

        vii.        **The Internet Archive** ("IA") is a nonprofit with the mission "to provide Universal Access to All Knowledge." More specifically, IA provides free access to researchers, historians, scholars, people with print disabilities, and the general public to historical information from the web, including over 26 years of web history accessible through the Wayback Machine (which indeed even served as a useful investigative source for Plaintiffs in this case). IA has consistently devoted its efforts—to great effect—to enabling public access to knowledge about statements made on the web and in other ephemeral sources. IA provides access to historical records of privacy policies and other disclosures that are critical for consumers to understand

- 7 -

Joint Declaration iso Mot. For Prelim. Approval
Case No. 5:18-cv-05062-EJD

choices they have made, or are charged with having made, about mobile device settings and information sharing, as well as for policymakers and research into practices and disclosures.

      viii.     **American Civil Liberties Union Foundation (Speech, Privacy, and Technology Project)** consistently has been at the forefront of precedent-setting privacy litigation (*see, e.g., U.S. v. Carpenter*) and also engages in records requests, public education, advocacy before companies and internet standards-setting bodies, and separately funded state and federal lobbying, to protect data privacy and security throughout the United States.

      ix.     **American Civil Liberties Union Foundation of Northern California (Technology and Civil Liberties Program**)  works to protect the privacy, civil rights and civil liberties of Californians through advocacy in the courts, communities, companies and legislatures to ensure that individuals control how personal information is collected, shared and used.

      x.     **Center for Democracy & Technology** ("CDT") is a consumer advocacy group dedicated to keeping the internet open, innovate, and free. The CDT has contributed to the development and implementation of robust protections for consumer privacy through government policy, improved business practices, privacy design, and consumer awareness and empowerment.

      xi.     **Connect Safely** is a non-profit organization dedicated to educating consumers about online safety, privacy, security and digital wellness.

      xii.     **Electronic Frontier Foundation** ("EFF") focuses on defending free speech, privacy, innovation, and consumer rights on the cutting edge of technology.  The EFF uses reactive education—which grants consumers broader, deeper understandings of their rights and lays out what consumers can do to protect those rights—and technology tools—which aim to make it easier for users to engage in prophylactic behavior with regard to online privacy and security—to further these goals.

      xiii.     **The Future of Privacy Forum Education & Innovation Foundation** serves as a catalyst for privacy leadership and scholarship, advancing principled data practices in support of emerging technologies.

      xiv.     **Privacy Rights Clearinghouse** ("PRC") is a nonprofit organization focused on increasing access to information, policy discussions and meaningful rights so that data privacy

- 8 -

Joint Declaration iso Mot. For Prelim. Approval
Case No. 5:18-cv-05062-EJD

can be a reality for everyone. The PRC publishes clear overviews of complex data privacy laws and creates resources that provide context for rights and choices that lie at the intersection of data privacy and other key topics such as health, employment, finance, and housing.

   xv.  **Data & Society Research Institute** is a non-profit research institute that works to illuminate how data-centric technologies and automation affect the world around us. Data & Society uses interdisciplinary research and engagement to advance public understanding of the social and cultural implications of technology.

   xvi.  **National Cyber Security Alliance** ("NCA") was established in 2001 and has since been instrumental in offering practical digital privacy and security advice to the American public. The NCA's commitment to promoting a culture of privacy and security equips digital citizens with the necessary knowledge to safeguard themselves, their organizations, and their families. Its primary goal is to provide practical, actionable advice and answer the pressing questions people have about protecting their online privacy.

   xvii.  **The Rose Foundation for Communities and the Environment** is a non-profit organization that specializes in distributing *cy pres* funds for a wide range of charitable work that has a direct nexus with the class action settlement. The Rose Foundation utilizes its grant-making experience and deep knowledge of privacy issues and consumer education to conduct a public, competitive, and transparent national grant-making process designed to identify appropriate recipients whose work has a direct nexus to the interests of class members and the goals of the underlying litigation. The foundation's Consumer Privacy Fund has previously administered more than $7 million in privacy grants to more than 100 consumer privacy non-profits throughout the United States, funded by *cy pres* settlements in other privacy litigation.

  35.  Each proposed recipient is an independent 501(c)(3) organization with a track record of addressing privacy concerns on the Internet (either directly or through grants).

  36.  Plaintiffs are soliciting detailed proposals from the organizations regarding how they would use the *cy pres* awards if approved, which they hope to submit with their Reply brief in support of preliminary approval.

- 9 -

Joint Declaration iso Mot. For Prelim. Approval
Case No. 5:18-cv-05062-EJD

37. The Settlement also provides meaningful injunctive relief that extends for at least three years, requiring Google to: (1) confirm that it removed from its website (and any app or settings page controlled by Google where it appeared) the statement that, "[w]ith Location History off, the places you go are no longer stored"; (2) maintain a policy whereby (a) Location Information stored through Location History ("LH") and Web & App Activity ("WAA") is automatically deleted by default after a period of at least 18 months when users opt into these settings for the first time, and (b) users can set their own auto-delete periods; (3) send a notification that WAA and LH collect Location Information with instructions on how to disable each setting, delete the data collected by each, and set data retention limits; (4) confirm that Google does not now share users' precise Location Information collected in LH or WAA with third parties (except for valid legal reasons); (5) create and maintain a "Location Technologies Page" that will provide useful information about Google's location practices; and (6) include a link to the Location Technologies Page in its annual "Privacy Check-Up" email and on other pages concerning location. *See* SA ¶¶ 43-44 & Ex. C.

## PROPOSED ATTORNEYS' FEES AND SERVICE AWARDS

38. Class Counsel will file a motion for an award of reasonable attorneys' fees, reimbursement of costs and expenses, and service awards for the Class Representatives, at least 35 days prior to the Objection Deadline. The sums requested will be disclosed in the Class Notice.

39. Class Counsel anticipate seeking attorneys' fees up to 30% of the Settlement Fund (i.e., up to $18.6 million), plus reimbursement of reasonable out-of-pocket expenses currently totaling approximately $145,000. Google has the right to oppose Class Counsel's request, but the 30% fee award would be appropriate considering the results achieved for the Class. It also will be supported by a lodestar cross-check, given that Plaintiffs' Counsel's total lodestar, through June 30, 2023 (the last reporting deadline as of this filing), totals approximately $10.8 million for approximately 17,000 hours of work. Though Class Counsel anticipate reporting a higher lodestar with their Fee Motion, at this amount, the maximum fee request would represent a 1.7 multiplier. Class Counsel will detail their work, hours, lodestar and expenses in their fee and expense motion.

- 10 -

Joint Declaration iso Mot. For Prelim. Approval
Case No. 5:18-cv-05062-EJD

40.     Plaintiffs have been dedicated and active participants in this litigation. They assisted in the investigation, participated in the plaintiff vetting process implemented by their respective counsel and by Class Counsel after appointment, reviewed and approved the complaints, kept in close contact with counsel to monitor the progress of the litigation, and communicated with counsel regarding the Settlement.

41.     Plaintiffs spent significant time responding to extensive and broad discovery served by Google, including invasive collection of comprehensive personal data from their phones, email, and Google accounts, despite privacy concerns. Plaintiffs addressed discovery inquiries that extended as far as family law disputes and criminal history. Plaintiffs provided their mobile devices to Class Counsel's forensic data experts. Plaintiffs put their names and reputations on the line for the sake of the Class. The Class recovery here would not have been possible without their efforts. Given the time and risk Class Representatives took on to participate in this Action, Class Counsel will petition the Court for approval of Service Awards in the amount of $5,000 each.

## CONCLUSION

42.     As a result of the extensive discovery conducted prior to mediation (and document review which continued even after the case was stayed), consultation with experts, and the intense negotiations that lasted over a year in total before the Settlement was finalized, Plaintiffs and Class Counsel had a thorough understanding of the case including Google's anticipated defenses on the merits; the likely arguments that would be advanced at class certification, summary judgment, and trial; the Settlement Class and the challenges presented with identifying individual class members; and the complex technical issues surrounding these issues and potential injunctive relief.

43.     Based on our experience and knowledge regarding the factual and legal issues in this matter, and given the substantial benefits to privacy rights provided by the Settlement, it is our opinion that the proposed Settlement is not only fair, reasonable, and adequate, but an excellent outcome that is in the best interests of the Settlement Class.

We declare under penalty of perjury that the foregoing is true and correct.  Executed under the penalty of perjury that the foregoing is true and correct.

- 11 -

Joint Declaration iso Mot. For Prelim. Approval
Case No. 5:18-cv-05062-EJD

Executed on this 14th day of September, 2023, by Tina Wolfson in Los Angeles, California. Michael W. Sobol in San Francisco, California.

| | |
|---|---|
| */s Tina Wolfson* | */s Michael W. Sobol* |
| Tina Wolfson | Michael W. Sobol |