KEKER, VAN NEST & PETERS LLP
BENJAMIN BERKOWITZ - # 244441
bberkowitz@keker.com
THOMAS E. GORMAN - # 279409
tgorman@keker.com
NICHOLAS D. MARAIS - # 277846
nmarais@keker.com
CHRISTOPHER S. SUN - # 308945
csun@keker.com
CHRISTINA LEE - # 314339
clee@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:   415 391 5400
Facsimile:    415 397 7188

Attorneys for Defendant GOOGLE LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE: GOOGLE LOCATION HISTORY LITIGATION | Case No. 5:18-cv-05062-EJD<br><br>**DECLARATION OF DANIEL TALAVERA IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT**<br><br>Dept:   Courtroom 4 - 5th Floor<br>Judge:  Hon. Edward J. Davila<br><br>Date Filed: November 2, 2018<br><br>Trial Date: None Set |

DECLARATION OF DANIEL TALAVERA IN SUPPORT OF
MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT
Case No. 5:18-cv-05062-EJD

2157652

I, Daniel Talavera, declare:

1. I am employed at Google LLC as an Engineering Director on the Core Experience team. In my role running the cross-product analytics engineering team, I have experience with Google's user analytics systems. Unless otherwise stated, I have personal knowledge of the facts set forth in this declaration and, if called to testify as a witness, I could competently testify to these facts under oath.

2. I submit this declaration in support of the Plaintiffs' Motion for Preliminary Approval of Class Action Settlement ("Motion").

3. I am informed that Plaintiffs' Motion seeks approval of a settlement where the settlement class is defined as: "All natural persons residing in the United States who used one or more mobile devices and whose Location Information was stored by Google while "Location History" was disabled at any time during the Class Period (January 1, 2014 through the Notice Date )." However, as explained below, Google's data-collection practices and systems make it infeasible to identify the individuals who fit this class definition.

**A.   Google's account records are limited, and do not allow for identification of "natural persons."**

4. Google maintains certain account records for its users in the ordinary course of its business, but those records have limitations that are relevant here.

5. First, Google does not require users to provide their full names or other means of identification, such as a mailing address or social security number, when creating a Google account. Thus, Google users have the ability to (and frequently do) create and use their Google accounts without providing their true or full names or contact information.

6. Second, Google accounts can be and often are shared by more than one natural person. For example, family members may share an account (e.g., TheSmithFamily@gmail.com) for all purposes. Such an account could be shared by two people, or a dozen, and those individuals may (or may not) have their own separate accounts in addition to a joint account. Or, even if individuals have their own accounts, they may still share an account with other individuals for a particular purpose (e.g. SmithFamilyBills@gmail.com). Or multiple people may use a single

1

DECLARATION OF DANIEL TALAVERA IN SUPPORT OF
MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT
Case No. 5:18-cv-05062-EJD

2157652

device (such as a family tablet) that is logged into a single account. Based solely on the existence of such a shared account, Google has no way to identify the various people who use such shared accounts in order to generate a list of potential class members.

7.      Third, it is common for individual Google users to have multiple accounts, whether for privacy (e.g. an account set up under a pseudonym) or to sort incoming mail into different categories (e.g., financial emails to one account, social-media emails to another). For example, I have been informed that the named plaintiffs in this litigation each held multiple Google accounts. This is unsurprising, as many Google users use more than one account (especially over a time period that extends all the way back to January 1, 2014). Indeed, the number of Google accounts that have been created far exceeds the global population, and several billion accounts currently exist with activity in the United States. There are many reasons why a person might end up using multiple accounts. For example, an individual may obtain separate accounts to use for personal, educational, employment, and hobby purposes. Over the years, they may continue to use all of their accounts, or they may stop using certain accounts (with or without deleting them) when they open new ones. Individual users choose how they wish to access Google services: they decide when to sign in or sign out of an account, and they decide which account to sign into. Individual users may access the Google services on their mobile devices from a single account or from multiple accounts, and the way they choose to use these accounts in connection with their devices may change over time. To respect user choice and protect user privacy, Google does not attempt to link or deduplicate multiple accounts that either were created by, or used by, the same natural person. Thus, if Google were to somehow generate a list of Google accounts that are potentially linked to class members, it has no feasible way to deduplicate that account list to prevent a "natural person" from being listed many times. Google also does not link "signed-out" activity to a user's account(s) or natural person, for similar reasons centered on privacy and user trust.

8.      Fourth, Google accounts are not always linked to reliable contact information. This can be true for many reasons, including because user-provided contact information may be unverified or because the user at some point stopped using the email address or phone number

2

DECLARATION OF DANIEL TALAVERA IN SUPPORT OF
MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT
Case No. 5:18-cv-05062-EJD

2157652

that they originally provided. To illustrate, I understand that when Google sends emails in the ordinary course to users, it typically receives a significant number of "bounce backs." In addition, as explained further below, Google may not have reliable contact information for a user because they have deleted their account or stopped using it.

9.  Fifth, some data that was collected by Google may have been deleted by users over the years, making it infeasible to identify users who fall within the class definition. Google provides its users with tools and options that allow them to control certain data saved to their accounts. For example, Google users can visit https://myactivity.google.com and delete certain data—including location-related data—that has been saved to their account. These items of data can be deleted individually or in bulk. When a user deletes data from their account, we immediately start the process of removing it from the product and our systems. First, we aim to immediately remove it from view and the data may no longer be used to personalize your Google experience. We then begin a process designed to safely and completely delete the data from our storage systems. This process generally takes around 2 months from the time of deletion. This often includes up to a month-long period during which users can "recover" or restore their data if it was removed unintentionally or they change their minds. Not only can users delete these items individually, and in bulk, but for certain services (like Web & App Activity) they can set a default retention period that deletes relevant activity after a certain period of time.

10. Sixth, Google provides users with the option to delete their accounts entirely. If the user selects this option, Google again follows an ordered process to ensure that the account is deleted safely (which includes a recovery period to allow users to recover data that was removed unintentionally). Although more Google accounts are created each year than are deleted, the overall number of deleted accounts is substantial given that the class period extends back to January 1, 2014. Although users who set up (and then deleted) these accounts could well fall within the class definition, Google does not retain sufficient records about those accounts and would have no way of contacting those users.

3
DECLARATION OF DANIEL TALAVERA IN SUPPORT OF
MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT
Case No. 5:18-cv-05062-EJD

2157652

**B.     Google has no practically feasible method for determining a country of residence with certainty for every user of every account.**

11.     As noted above, during account creation, users are not required to provide Google with their home address or residency information. Google does not ask users what their country of residence is.

12.     While in some use cases Google may use certain signals, such as an IP address, to make an educated guess as to where certain account activity is taking place, this information does not reliably provide Google with the user's country of residence and may also be unreliable even with respect to the particular activity information being logged. For example, if a user connects from an IP address that has been registered—by their internet-service provider—as being assigned to a particular country, Google's system might estimate that the user is located in that country. Moreover, these signals are not always reliable. For example, users who connect to Google through virtual private networks (which are increasingly common) or through a web proxying service may send misleading signals about where they are located, which may result in Google identifying the incorrect country for that account's activity. But, most importantly, even when Google's systems accurately estimate the country where a connecting device is located, this does not necessarily reflect the user's country of residence, for example, in situations where the user may be traveling away from their home country.

13.     Data related to a user's country of residence is also less certain or definitive prior to 2018. Prior to that point, Google did not have a centralized system for estimating the country associated with an account. And while Google maintains certain information related to which regional version of Google's Terms of Service was accepted by a particular user, this information does not necessarily reflect a user's primary country of residence, including because it would say nothing about what country they legally resided in at the time they accepted the TOS, or where that user had moved to since accepting the TOS.

14.     For all of these reasons, I do not believe Google can reliably determine a country of residence for all users of Google accounts during the alleged Class Period.

4
DECLARATION OF DANIEL TALAVERA IN SUPPORT OF
MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT
Case No. 5:18-cv-05062-EJD

2157652

**C.  Google has no practically feasible method for identifying all accounts that disabled the Location History setting.**

15. I understand that, for someone to be a class member in this case, their "Location History" setting must have been disabled at any time during the Class Period. But Google' user analytics systems have limited data with respect to accounts' "Location History" ("LH") setting states over time. In preparing this declaration, I have also reviewed and discussed certain technical information with knowledgeable Google employees who manage Google's LH setting. Based upon this review, I understand that while Google's systems have collected certain periodic data from some accounts, for other accounts, Google simply does not have records of their setting state information.

16. I also understand that the absence of LH data in any particular account is not a reliable indicator that the individual account disabled the LH setting. This may be the case for a variety of reasons, including changes to a user's devices or device-level settings. For example, beginning in 2018, Google identified over 1 billion accounts worldwide where the account's devices had LH turned on but had stopped reporting location data to the LH database. Google paused LH for those users to help preserve their privacy, and Google routinely turns off the LH setting for users who have not recently uploaded data via LH.

17. Given the above limitations, Google cannot reliably determine all accounts where a user disabled the LH setting.

**D.  Google has no practically feasible method for identifying all persons "whose location information was stored."**

18. I have been informed that, for purposes of this proposed settlement, the parties have agreed to define "Location Information" to mean "any data used to identify a user or device and a place in the world at a point in time by use of GPS coordinate monitoring technology, IP address, cell tower data, wireless internet access points (Wi-Fi data), or Bluetooth data." This definition encompasses numerous scenarios in which the data that is "stored" cannot feasibly be connected back to a natural person or account. For example, many of Google's services do not require a user to log in with their Google account. If a user is not logged in, their activity (to the

5
DECLARATION OF DANIEL TALAVERA IN SUPPORT OF
MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT
Case No. 5:18-cv-05062-EJD

2157652

extent that it is stored) would not be associated with their account, but they could still meet the class definition if they were natural persons in the United States whose location information was stored (even if unaffiliated with their accounts) while the Location History setting was disabled. A user might conduct a Google search from a mobile device while they are not logged in (e.g. "best pizza near me"), and Google might use a rough estimate of their location to contextualize the results of their search (e.g. returning search results for pizzerias near the estimated location). That coarse location would be "stored" in Google's systems, but not associated with that user, and it would not be stored in a way that could be tied back to the natural person who typed in the search. Even when a user is logged in, certain activity information might be stored by Google but not stored in any way that can be associated with a Google account identifier. For example, Google often associates information with pseudonymous identifiers as a pro-privacy measure. Google does not attempt to re-identify such pseudonymous data by linking it to individual accounts or natural persons.

19. And even when a user is logged in and information is stored in a way that is associated with a Google account identifier, that information is not stored indefinitely. As explained above, users can delete certain information associated with their own accounts (or delete their entire accounts). And even if the user does not initiate deletion, such information may be deleted as part of Google's operations (e.g., after a certain period of time). I know of no feasible way for Google to identify potential class members whose location information (or accounts) was deleted.

20. And even where location information was stored in association with a Google account identifier, and not deleted, it still may not be feasible to identify the relevant accounts. That is because Google's many different products and services potentially interface with location information, and those various products and services use a variety of different systems and technologies for storing activity information (i.e. the information is not stored in a central repository). Google does not centrally track whether non-LH location information has been stored for any account across any of those various products or services. I am not aware of any feasible mechanism for querying and cross-referencing records stored in connection with all of the

6
DECLARATION OF DANIEL TALAVERA IN SUPPORT OF
MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT
Case No. 5:18-cv-05062-EJD

2157652

individual products and services that potentially interface with location information in order to identify all accounts for which location information was saved during the class period.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed in San Francisco, California.

Dated: 9/11/2023

*Danny Talavera*
CAD5A9276015491...

DANIEL TALAVERA

7
DECLARATION OF DANIEL TALAVERA IN SUPPORT OF
MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT
Case No. 5:18-cv-05062-EJD

2157652