1

LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP

2

Michael W. Sobol (SBN 194857)
msobol@lchb.com

3

Melissa Gardner (SBN 289096)
mgardner@lchb.com

4

Michael Levin-Gesundheit (SBN 292930)
mlevin@lchb.com

5

Michael K. Sheen (SBN 288284)
msheen@lchb.com

6

Jallé H. Dafa (SBN 290637)
jdafa@lchb.com

7

John D. Maher (SBN 316157)
jmaher@lchb.com

8

275 Battery Street, 29th Floor
San Francisco, CA 94111

9

Telephone: 415.956.1000
Facsimile: 415.956.1008

10

11

LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP

Nicholas Diamand (*pro hac vice*)

12

250 Hudson Street, 8th Floor
New York, NY 10013

13

Telephone: 212.355.9500
Facsimile: 212.355.9592

14

15

*Interim Co-Lead Class Counsel*

AHDOOT & WOLFSON, PC
Tina Wolfson (SBN 174806)
twolfson@ahdootwolfson.com
Theodore Maya (SBN 223242)
tmaya@ahdootwolfson.com
Bradley K. King (SBN 274399)
bking@ahdootwolfson.com
Henry J. Kelston (*pro hac vice*)
hkelston@ahdootwolfson.com
Deborah De Villa (SBN 312564)
ddevilla@ahdootwolfson.com
2600 West Olive Avenue, Suite 500
Burbank, California 91505
Telephone: 310.474.9111
Facsimile: 310.474.8585

*Interim Co-Lead Class Counsel*

16

UNITED STATES DISTRICT COURT

17

NORTHERN DISTRICT OF CALIFORNIA

18

SAN JOSE DIVISION

19

IN RE: GOOGLE LOCATION HISTORY
LITIGATION

20

21

22

23

24

25

26

27

28

Case No. 5:18-cv-05062-EJD

**PLAINTIFFS' NOTICE OF MOTION
AND MOTION FOR ATTORNEYS'
FEES AND EXPENSES, AND FOR
CLASS REPRESENTATIVE SERVICE
AWARDS; MEMORANDUM OF
POINTS AND AUTHORITIES IN
SUPPORT THEREOF**

Dept:      Courtroom 4 - 5th Floor
Judge:     Hon. Edward J. Davila
Date:      April 18, 2024
Time:      9:00 A.M.

(Joint Declaration of Tina Wolfson and
Michael W. Sobol, and Declarations of
Settlement Class Representatives, filed
concurrently herewith)

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on April 18, 2024 at 9:00 a.m., in Courtroom 4 of the United States District Court for the Northern District of California, Robert F. Peckham Federal Building & United States Courthouse, 280 South First Street, San Jose, California 95113, the Honorable Edward J. Davila presiding, Plaintiffs Napoleon Patacsil, Michael Childs, and Noe Gamboa ("Settlement Class Representatives") will and hereby move for an Order pursuant to Rules 23(h)(1) and 54(d)(2) of the Federal Rules of Civil Procedure awarding: (i) Attorneys' Fees to Class Counsel equal to 30% of the $62 million non-reversionary Settlement Fund, or $18.6 million[1]; (ii) unreimbursed expenses totaling $151,756.23 that Class Counsel reasonably and necessarily incurred in furtherance of the prosecution of this Action; and (iii) Service Awards of $5,000 for each of the three Settlement Class Representatives, totaling $15,000.

This motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities set forth below, the concurrently filed Joint Declaration of Tina Wolfson and Michael W. Sobol in support of this motion ("Joint Declaration") and all exhibits attached thereto, the concurrently filed declarations of Settlement Class Representatives, the pleadings and records on file in this Action, and other such matters and argument as the Court may consider at the hearing of this motion.

## STATEMENT OF ISSUES TO BE DECIDED

1.       Whether the Court should award 30% of the $62 million non-reversionary Settlement Fund to Class Counsel as attorneys' fees;

2.       Whether the Court should award $151,756.23 in out-of-pocket expenses that Class Counsel reasonably and necessarily incurred in furtherance of the Action; and

3.       Whether the Court should award Service Awards of $5,000 to each of the three Settlement Class Representatives for their time and effort in pursuing this Action.

---

[1] All capitalized words and terms are defined in the Class Action Settlement and Release Agreement ("Settlement Agreement" or "SA") (Dkt. 328-1) (Section II) unless otherwise defined herein.

|     |                              |                                                      |
|-----|------------------------------|------------------------------------------------------|
| 1   |                              | Respectfully submitted,                              |
| 2   | Dated: January 29, 2024      | */s/ Tina Wolfson*                                   |
| 3   |                              | AHDOOT & WOLFSON, PC                                  |

Respectfully submitted,

Dated: January 29, 2024

*/s/ Tina Wolfson*
AHDOOT & WOLFSON, PC
Tina Wolfson (SBN 174806)
twolfson@ahdootwolfson.com
Theodore Maya (SBN 223242)
tmaya@ahdootwolfson.com
Bradley K. King (SBN 274399)
bking@ahdootwolfson.com
Henry J. Kelston (*pro hac vice*)
hkelston@ahdootwolfson.com
Deborah De Villa (SBN 312564)
ddevilla@ahdootwolfson.com
2600 West Olive Avenue, Suite 500
Burbank, California 91505
Tel: 310.474.9111
Fax: 310.474.8585

*Interim Co-Lead Class Counsel*

Dated: January 29, 2024

*/s/ Michael W. Sobol*
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
Michael W. Sobol (SBN 194857)
msobol@lchb.com
Melissa Gardner (SBN 289096)
mgardner@lchb.com
Michael Levin-Gesundheit (SBN 292930)
mlevin@lchb.com
Michael K. Sheen (SBN 288284)
msheen@lchb.com
Jallé H. Dafa (SBN 290637)
jdafa@lchb.com
John D. Maher (SBN 316157)
jmaher@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: 415.956.1000
Facsimile: 415.956.1008

LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
Nicholas Diamand (*pro hac vice*)
250 Hudson Street, 8th Floor
New York, NY 10013
Telephone: 212.355.9500
Facsimile: 212.355.9592

- 2 -

# **TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ................................................................................................. 1

II.   BACKGROUND ................................................................................................. 2

    A.   The Litigation and Class Counsel's Efforts on Behalf of the Class ......................... 2

    B.   Settlement Negotiations and Mediation ................................................. 5

    C.   Preliminary Approval and Dissemination of Notice ................................. 6

III.   THE COURT SHOULD APPROVE THE REQUESTED FEE AWARD ......................... 7

    A.   Class Counsel Should Be Awarded Attorneys' Fees from the Common Fund ........ 7

    B.   The Court Should Use the Percentage Method to Calculate Reasonable
Attorneys' Fees ....................................................................................... 7

    C.   The Relevant Factors Support Class Counsel's Requested Fee Award ................. 8

        1.   Class Counsel Achieved an Exceptional Result for the Class ...................... 9

        2.   Class Counsel Undertook Substantial Risk in this Litigation ................... 13

        3.   The Settlement Required Skill and High-Quality Work ........................... 15

        4.   Class Counsel Worked for Years on a Fully Contingent Basis ................. 17

        5.   The Award Requested Is on Par with Awards in Similar Cases ............... 18

    D.   A Lodestar Cross-Check Confirms the Reasonableness of the Requested Fees .... 19

        1.   The Number of Hours Devoted to the Case Was Reasonable ................... 19

        2.   The Hourly Rates Are Reasonable ........................................................ 21

        3.   The Multiplier Is Justified Given the Results Obtained, the Complexity of
the Issues, and the Contingent Nature of the Representation .................... 22

IV.   CLASS COUNSEL ARE ENTITLED TO REIMBURSEMENT OF THEIR
REASONABLE LITIGATION EXPENSES ................................................................ 23

VII.   THE REQUESTED CLASS REPRESENTATIVE SERVICE AWARDS ARE
REASONABLE AND JUSTIFIED ........................................................................ 24

VIII.   CONCLUSION ................................................................................................. 25

# TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*Allagas v. BP Solar International, Inc.*,
   No. 3:14-cv-00560-SI (EDL), 2016 WL 9114162 (N.D. Cal. Dec. 22, 2016)...........................25

*Barbosa v. Cargill Meat Solutions Corp.*,
   297 F.R.D. 431 (E.D. Cal. 2013)...................................................................................................16

*Barnes v. The Equinox Group, Inc.*,
   No. C 10-3586-LB, 2013 WL 3988804 (N.D. Cal. Aug. 2, 2013)................................................8

*Bellinghausen v. Tractor Supply Co.*,
   306 F.R.D. 245 (N.D. Cal. 2015) .................................................................................................17

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980) ......................................................................................................................7

*Bower v. Cycle Gear, Inc.*,
   No. 14-cv-02712-HSG, 2016 WL 4439875 (N.D. Cal. Aug. 23, 2016) .....................................15

*Brown v. Google*, LLC,
   No. 20-3664, 2022 WL 17961497 (N.D. Cal. Dec. 12, 2022) ....................................................13

*Brown v. Hain Celestial Group, Inc.*,
   No. 3:11-CV-03082-LB, 2016 WL 631880 (N.D. Cal. Feb. 17, 2016) ......................................21

*Campbell v. Facebook Inc.*,
   No. 13-05996, 2017 WL 3581179 (N.D. Cal. Aug. 18, 2017) *aff'd*, 951 F.3d 1106.
   (9th Cir. 2020) .......................................................................................................................10, 14

*Carlin v. DairyAmerica, Inc.*,
   380 F. Supp. 3d 998 (E.D. Cal. 2019) .........................................................................................18

*Carlin v. Spooner*,
   808 F.App'x 571 (9th Cir. 2020)..................................................................................................18

*Carpenter v. United States*,
   138 S. Ct. 2206 (2018) ..................................................................................................................3

*Ching v. Siemens Industry Inc.*,
   No. 11-cv-04838-MEJ, 2014 WL 2926210 (N.D. Cal. June 27, 2014) ......................................17

*Craft v. County of San Bernardino*,
   624 F. Supp. 2d 1113 (C.D. Cal. 2008) ..................................................................... 23

*Destefano v. Zynga, Inc.*,
   No. 12-CV-04007-JSC, 2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ................................ 8, 15

*Eashoo v. Iovate Health Sciences U.S.A., Inc.*,
   No. CV-01726-BRO, 2016 WL 6205785 (C.D. Cal. Apr. 5, 2016) ..................................... 13

*Fischel v. Equitable Life Assurance Society of the United States*,
   307 F.3d 997 (9th Cir. 2002) ............................................................................... 7, 21

*Fleming v. Impax Laboratories Inc.*,
   No. 16-cv-06557-HSG, 2022 WL 2789496 (N.D. Cal. July 15, 2022) ................................. 22

*Fowler v. Wells Fargo Bank, N.A.*,
   No. 17-cv-02092-HSG, 2019 WL 330910 (N.D. Cal. Jan. 25, 2019) .................................. 21

*Garner v. State Farm Mut. Auto. Ins. Co.*,
   No. 8-1365, 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ............................................... 9

*Gutierrez v. Amplify Energy Corp.*,
   No. 21-01628, 2023 WL 6370233 (C.D. Cal. Sept. 14, 2023) ......................................... 22

*Gutierrez v. Wells Fargo Bank, N.A.*,
   No. C 07-05923 WHA, 2015 WL 2438274 (N.D. Cal. May 21, 2015) ................................ 23

*Harris v. Marhoefer*,
   24 F.3d 16 (9th Cir. 1994) .................................................................................... 23

*Harrison v. Bank of America Corp.*,
   No. 19-cv-00316-LB, 2021 WL 5507175 (N.D. Cal. Nov. 24, 2021) .......................... 7, 19, 24

*Hart v. TWC Product and Technology LLC*,
   No. 20-03842, 2023 WL 3568078 (N.D. Cal. Mar. 30, 2023) ......................................... 13

*Heeger v. Facebook, Inc.*,
   509 F. Supp. 3d 1182 (N.D. Cal. Dec. 24, 2020) ....................................................... 14

*Hefler v. Wells Fargo & Co.*,
   No. 16-cv-05479-JST, 2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ................................ 22

*Hendricks v. Ference*,
754 F. App'x 510 (9th Cir. 2018) ................................................................ 18

*Hendricks v. Starkist Co.*,
No. 13-CV-00729-HSG, 2016 WL 5462423 (N.D. Cal. Sept. 29, 2016) ................................. 18

*Hernandez v. Dutton Ranch Corp.*,
No. 16-cv-817, 2021 WL 5053476 (N.D. Cal. Sep. 10, 2021) ...................................... 9

*In re American Apparel, Inc. Shareholder Litig.*,
No. CV-1006352-MMM, 2014 WL 10212865 (C.D. Cal. July 28, 2014) ............................... 16

*In re Apple Inc. Device Performance Litig.*,
386 F. Supp. 3d 1155 (N.D. Cal. 2019) ....................................................... 15

*In re Bluetooth Headset Prod. Liability Litig.*,
654 F.3d 935 (9th Cir. 2011) ................................................................ 8

*In re Capacitors Antitrust Litig.*,
No. 3:17-md-02801-JD, 2018 WL 4790575 (N.D. Cal. Sept. 21, 2018) ............................. 19

*In re Consumer Privacy Cases*,
175 Cal. App. 4th 545 (2009) ................................................................ 19

*In re Experian Data Breach Litig.*,
No. SACV1501592AGDFMX, 2017 WL 4325583 (C.D. Cal. May 18, 2017) ............................. 15

*In re Facebook Internet Tracking Litig.*,
No. 5:12-md-02314, 2022 WL 16902426 (9th Cir. 2020) ...................................... 3, 22

*In re Galena Biopharma, Inc. Securities Litig.*,
No. 3:14-cv-00367, 2016 WL 3457165 (D. Or. June 24, 2016) ................................... 18

*In re Google Buzz Privacy Litig.*,
No. 5-10-cv-672-JW, 2011 WL 7460099 (N.D. Cal. June 2, 2011) ............................... 10

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015) ................................................................. 15

*In re Google Inc. Gmail Litig.*,
No. 13-MD-02430-LHK, 2014 WL 1102660 (N.D. Cal. Mar. 18, 2014) .............................. 14

*In re Google Inc. Street View Electronic Communications Litig.*,
   21 F.4th 1102 (9th Cir. 2021) .......................................................................................... 14

*In re Google Play Developer Antitrust Litig.*,
   No. 20-cv-05792-JD, 2024 WL 150585 (N.D. Cal. Jan. 11, 2024) ........................................ 12

*In re Heritage Bond Litigation*,
   No. 02-ML-1475-DT (RCx), 2005 WL 1594403 (C.D. Cal. June 10, 2005)...................... 16, 17

*In re iPhone Application Litig.*,
   6 F. Supp. 3d 1004 (N.D. Cal. Nov. 25, 2013) ........................................................................ 14

*In re Korean Air Lines Co., Ltd. Antitrust Litig.*,
   No. CV 07-05107-SJO, 2013 WL 7985367 (C.D. Cal. Dec. 23, 2013) ...................................... 8

*In re LendingClub Securities Litig.*,
   No. C 16-02627 WHA, 2018 WL 4586669 (N.D. Cal. Sept. 24, 2018) ................................... 24

*In re Lenovo Adware Litigation*,
   No. 15-md-02624, 2019 WL 1791420 (N.D. Cal. April 24, 2019) ............................... 15, 16, 24

*In re Lidoderm Antitrust Litig.*,
   No. 14-md-02521-WHO, 2018 WL 4620695 (N.D. Cal. Sept. 20, 2018) ............................... 18

*In re Lithium Ion Batteries Antitrust Litig.*,
   No. 13-MD-02420-YGR, 2018 WL 3064391 (N.D. Cal. May 16, 2018) ................................ 18

*In re MacBook Keyboard Litig.*,
   No. 18-cv-2813, 2023 WL 3688452 (N.D. Cal. May 25, 2023) .............................................. 22

*In re Media Vision Tech. Sec. Litig.*,
   913 F. Supp. 1362 (N.D. Cal. 1995)........................................................................................ 23

*In re Mego Financial Corporations Securities Litig.*,
   213 F.3d 454 (9th Cir. 2000), as amended (June 19, 2000) .................................................... 18

*In re National Collegiate Athletic Association Athletic Grant-in-Aid Cap Antitrust Litig.*,
   No. 14-md-2541, 2017 WL 6040065 (N.D. Cal. Dec. 6, 2017)................................................. 9

*In re National Collegiate Athletic Association Athletic Grant-in-Aid Cap Antitrust Litig.*,
   768 F. App'x 651 (9th Cir. 2019)............................................................................................ 23

*In re Netflix Privacy Litig.*,
   No. 11-00379, 2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ................................................ 10

*In re Nexus 6P Products Liability Litig.*,
    No. 17-cv-02185-BLF, 2019 WL 6622842 (N.D. Cal. Nov. 12, 2019) .............................. 17, 18

*In re Omnivision Technologies, Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) ...................................................................... 9, 16, 17, 18

*In re Online DVD-Rental Antitrust Litig.*,
    779 F.3d 934 (9th Cir. 2015) .................................................................................................... 24

*In re Portal Software, Inc. Securities Litig.*,
    No. C-03-5138 VRW, 2007 WL 1991529 (N.D. Cal. June 30, 2007) ..................................... 25

*In re Premera Blue Cross Customer Data Security Breach Litig.*,
    296 F. Supp. 3d 1230 (D. Or. 2017) ........................................................................................ 15

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    No. M 07-md-1827, 2013 WL 149692 (N.D. Cal. Jan. 14, 2013) ........................................ 9, 18

*In re TikTok, Inc., Consumer Privacy Litig.*,
    No. 20 C 4699, 2022 WL 2982782 (N.D. Ill. Jul. 28, 2022) .................................................... 14

*In re Toys R Us-Delaware, Inc. – Fair and Accurate Credit Transactions Act (FACTA) Litig.*,
    295 F.R.D. 438 (C.D. Cal. 2014) ............................................................................................. 19

*In re Vizio, Inc., Consumer Privacy Litig.*,
    238 F. Supp. 3d 1204 (C.D. Cal. 2017) ................................................................................... 15

*In re Volkswagen "Clean Diesel" Marketing*,
    No. 15-md-02672-CRB, 2022 WL 17730381 (N.D. Cal. Nov. 9, 2022) ............................ 18, 22

*In re Washington Public Power Supply System Securities Litig.*,
    19 F.3d 1291 (9th Cir. 1994) .................................................................................................... 17

*In re Yahoo! Inc. Shareholder Derivative Litig.*,
    153 F. Supp. 3d 1107 (N.D. Cal. 2015) ................................................................................... 15

*Jarrell v. Amerigas Propane, Inc.*,
    No. 16-CV-01481-JST, 2018 WL 1640055 (N.D. Cal. Apr. 5, 2018) ...................................... 19

*Johnson v. Fujitsu Technology and Business of America, Inc.*,
    No. 16-CV-03698-NC, 2018 WL 2183253 (N.D. Cal. May 11, 2018) ...................................... 24

*Knight v. Red Door Salons, Inc.*,
   No. 8-01520, 2009 WL 248367 (N.D. Cal. Feb 2, 2009).........................................................9, 19

*Ladore v. Ecolab, Inc.*,
   No. CV 11-9386-FMO, 2013 WL 12246339 (C.D. Cal. Nov. 12, 2013) ...................................17

*LeBlanc-Sternberg v. Fletcher*,
   143 F.3d 748 (2nd Cir. 1998) ...................................................................................................21

*Linney v. Cellular Alaska Partnership*,
   No. C-96-3008, 1997 WL 450064 (N.D. Cal. July 18, 1997), *aff'd,* 151 F.3d 1234
   (9th Cir. 1998) ..........................................................................................................................12

*Lusby v. GameStop Inc.*,
   No. 12-3783, 2015 WL 1501095 (N.D. Cal. Mar. 31, 2015) ....................................................18

*McDonald, et al. v. Kiloo A/S, et al.*,
   No. 17-04344 (N.D. Cal. Apr. 12, 2021) ..................................................................................14

*Miller v. Ghirardelli Chocolate Company*,
   No. 12-cv-04936, 2015 WL 758094 (N.D. Cal. Feb. 20, 2015).......................................9, 19, 21

*Munoz v. Big Bus Tours Ltd.*,
   No. 18-05761, 2020 WL 13533045 (N.D. Cal. Feb. 12, 2020)....................................................8

*Patel v. Trans Union, LLC*,
   No. 14-cv-00522-LB, 2018 WL 1258194 (N.D. Cal. Mar. 11, 2018) .......................................18

*Pennsylvania v. Delaware Valley Citizens' Council*,
   483 U.S. 711 (1987) ..................................................................................................................21

*Roberti v. OSI Systems, Inc.*,
   No. CV13-09174 MWF (MRWx), 2015 WL 8329916 (C.D. Cal. Dec. 8, 2015).....................15

*Russell v. United States*,
   No. 09-03239, 2013 WL 3988778 (N.D. Cal. Aug. 2, 2013) ......................................................7

*Smith v. CRST Van Expedited, Inc.*,
   No. 10-cv-1116-IEG, 2013 WL 163293 (S.D. Cal. Jan. 14, 2013) ...........................................18

*Stanger v. China Electric Motor, Inc.*,
   812 F.3d 734 (9th Cir. 2016) .....................................................................................................21

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) ........................................................................... 7, 12

*Steiner v. American Broadcasting Co.*,
  248 F. App'x 780 (9th Cir. 2007) .......................................................................... 23

*Thomas v. MagnaChip Semiconductor Corp.*,
  No. 14-CV-01160-JST, 2018 WL 2234598 (N.D. Cal. May 15, 2018) ................................ 8, 24

*Van Vranken v. Atlantic Richfield Co.*,
  901 F. Supp. 294 (N.D. Cal. 1995) .......................................................................... 23

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002) .......................................................................*passim*

*Wallace v. Countrywide Home Loans, Inc.*,
  No. SACV-08-1463 JLS (MLGx), 2015 WL 13284517 (C.D. Cal. Apr. 17, 2015) .................. 16

*Walsh v. KindredHealthcare*,
  No. 11-50, 2013 WL 6623224 (N.D. Cal. Dec. 16, 2013) ........................................ 12

*Weeks v. Google LLC*,
  No. 5:18-cv-00801-NC, 2019 WL 8135563 (N.D. Cal. Dec. 13, 2019) .......................... 9

*Williamson v. McAfee, Inc.*,
  No. 5:14-cv-00158-EJD, 2017 WL 6033070 (N.D. Cal. Feb. 3, 2017) .......................... 7

*Williamson v. Microsemi Corp.*,
  No. 5:14-CV-01827-LHK, 2015 WL 13650045 (N.D. Cal. Feb. 19, 2015) ....................... 7

*Wing v. Asarco Inc.*,
  114 F.3d 986 (9th Cir. 1997) .......................................................................... 17

*Yastrab v. Apple Inc.*,
  173 F. Supp. 3d 972 (N.D. Cal. Mar. 25, 2016) .................................................. 14

**Statutes**

California Penal Code § 637.7 ........................................................................... 3

California Constitution Right to Privacy, Art. 1, § 1 ................................................... 3

California Invasion of Privacy Act ("CIPA") ........................................................... 3

Video Protection Privacy Act of 1988 ................................................................. 10

1

**<u>Other Authorities</u>**

2

Federal Judicial Center, *Manual for Complex Litigation*, §21.71, p. 336 (4th ed. 2004) ............... 9

3

**<u>Rules</u>**

4

Fed. R. Civ. P. 23 ................................................................................................................... 9

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

After years of hard-fought litigation, Class Counsel negotiated a remarkable Settlement that provides meaningful relief to the proposed Class and an outstanding resolution of this difficult and uncertain case.  Google will pay $62 million into a non-reversionary Settlement Fund that will be used to fund critical work by Court-approved organizations to promote and protect Class members' privacy interests, including by providing education, advocacy, and security against similar privacy violations now and in the future. Class Counsel also secured important injunctive relief for the Class, which imposes enforceable mandates on Google to disclose the nature and extent of its use and storage of users' Location Information, and how users can make informed choices to influence those practices, including how to disable settings such as Location History, how to delete the data collected, and how to set data retention limits.

In recognition of the substantial work performed for the Class in this case and the strong result achieved—including an extraordinarily large monetary payment in light of the lack of any potential statutory damages, plus injunctive relief custom-tailored to address the practices on which Plaintiffs' claims are based—Class Counsel respectfully move the Court to award attorneys' fees representing 30% of the Settlement Fund. This request, amounting to $18.6 million, is further supported by a lodestar cross-check, as the reasonable lodestar of $12,960,632 results in a modest multiplier of 1.44.

Class Counsel also seek reimbursement of their reasonably incurred litigation expenses, which include costs relating to discovery, experts, travel, and mediation. These expenses, totaling $151,756.23, are modest in light of the complexity and nearly six-year duration of this Action.

In addition, Service Awards of $5,000 for each of the three Class Representatives are appropriate. Throughout the litigation, the Class Representatives actively assisted with prosecution of the litigation, participated in discovery, and remained committed to their duties to the Class. By stepping forward to assert their claims, the Class Representatives put their digital lives at issue in this high-profile litigation, spent considerable time assisting with discovery, provided information

1   about their specific experiences, reviewed pleadings, and consistently communicated with Class

2   Counsel to stay abreast of case developments.

3        For the reasons set forth herein, Plaintiffs and Class Counsel respectfully request that the

4   Court approve the requested fee award, expense reimbursement, and Service Awards in light of the

5   quality of the Settlement, the skill required to achieve it, the significant risks assumed and the

6   contingent nature of Class Counsel's representation in this challenging and important litigation.

7   **II.   BACKGROUND**

8        Co-lead class counsel Ahdoot & Wolfson, PC ("Ahdoot Wolfson") and Lieff Cabraser

9   Heimann & Bernstein, LLP ("Lieff Cabraser") (together, "Class Counsel"), with support from

10  counsel this Court appointed as Interim Class Counsel, have devoted nearly six years of work to

11  this case on a contingency basis, to the exclusion of other fee-generating work. As detailed below,

12  they have strategically invested considerable resources, as well as their experience and expertise in

13  litigating consumer data privacy class actions, to prosecuting the novel claims and negotiating an

14  outstanding settlement on behalf of the Settlement Class. Collectively, the size of the Class, the

15  untested nature of the claims asserted, the long duration of this litigation, the Court's rulings on

16  Google's motions to dismiss, and the attorney resources required presented a high-risk undertaking.

17  And despite the myriad of risks presented to them, Class Counsel achieved an outstanding result

18  for the Class.

19      **A.   The Litigation and Class Counsel's Efforts on Behalf of the Class**

20       Plaintiffs allege Google knowingly violated the privacy rights of millions of U.S. mobile

21  device users to amass and commercially exploit valuable and sensitive geolocation data, by tracking

22  and storing their geolocations despite the relevant setting—"Location History" —being disabled.

23  *See generally* Dkt. 164-1 (First Am. Consol. Class Action Compl., "FAC"). Class Counsel

24  demonstrated creativity, tenacity, and skill against a fierce defense at every phase of this Action.

25       After this litigation commenced on August 17, 2018 (Dkt. 1), the first-filed complaint was

26  swiftly followed by five additional putative class actions arising from the same facts. Class Counsel

27  efficiently negotiated the consolidation of these six related cases. (Dkt. 51). Following a contested

28  hearing on the appointment of lead counsel, on April 1, 2019, the Court appointed Tina Wolfson of

1    Ahdoot Wolfson and Michael Sobol of Lieff Cabraser as Interim Co-Lead Class Counsel, and

2    attorneys at five additional firms as Interim Class Counsel. Dkt. 72.

3    On April 29, 2019, Plaintiffs filed a Consolidated Complaint alleging: (a) violation of the

4    California Invasion of Privacy Act ("CIPA"), Cal. Pen. Code § 637.7; (b) intrusion upon seclusion;

5    and (c) violation of the California Constitution's right to privacy, Art. 1, § 1. Dkt. 80. These were

6    difficult, pioneering claims that turned on novel questions of statutory interpretation and the

7    interpretation of concurrently-developing precedent from the higher courts. *See e.g.*, *Carpenter v.*

8    *United States*, 138 S. Ct. 2206, 2217, (2018) (establishing new criteria for evaluating expectations

9    of privacy over geolocation information under the Fourth Amendment); *In re Facebook, Inc.*

10   *Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020) (advancing the framework for evaluating

11   expectations of privacy and consent).

12   On December 19, 2019, the Court granted Google's motion to dismiss all of Plaintiffs'

13   claims. Dkt. 113. The Court dismissed Plaintiffs' CIPA cause of action with prejudice, finding that

14   the statute did not regulate the type of tracking at issue. The Court dismissed the California

15   constitutional and common law privacy claims without prejudice, finding that Plaintiffs alleged

16   neither "a legally protective privacy interest in the <u>specific</u> places they went" nor "how often their

17   geolocation was accessed." *Id.* at 8-14, 19 (emphasis in original). At this point, Plaintiffs had no

18   claims, and faced a significant hurdle they would have to surmount to move the case forward.

19   Plaintiffs sought an interlocutory appeal of the December 2019 dismissal order, and the

20   parties agreed to stay discovery during such proceedings after Google made a limited production

21   of documents. Dkt. 118; Joint Decl. ¶ 31. In April 2020, the Court denied Plaintiffs' motion to

22   certify the dismissal order for interlocutory appeal (Dkt. 126) and, in June 2020, the Court also

23   denied Plaintiffs' motion for leave to file a motion for reconsideration of the dismissal order

24   (Dkt. 130).

25   Plaintiffs filed the FAC on July 6, 2020, re-asserting their claims for: (a) intrusion upon

26   seclusion; (b) violation of the California Constitution's right to privacy, Art. 1, § 1; and alleging a

27   new claim for (c) unjust enrichment (or breach of contract in the alternative). Dkt. 131 (deemed

28   filed as of July 16, 2020, Dkts. 136, 137). Google moved to dismiss the FAC in its entirety. Dkt.

145. In January 2021, the Court largely denied the motion based on its finding that Plaintiffs now alleged "continuous and comprehensive" tracking and storage of Location Information. Dkt. 162 at 8. After the Parties filed opposing briefs on the need to file portions of the FAC and motion to dismiss briefing under seal, Plaintiffs filed an unredacted version of the FAC on February 8, 2021. Dkt. 164-1. Google answered the FAC that same day. Dkt. 165.

Discovery reopened in February 2021. It was hard-fought and contentious throughout the remaining years of this litigation. All told, the Parties engaged in approximately 26 months of discovery, including: serving discovery requests and written responses; meeting and conferring; engaging in discovery motion practice; and attending regular discovery conferences with Magistrate Judge Nathanael Cousins. Joint Decl. ¶ 23. Plaintiffs reviewed hundreds of thousands of pages of documents produced by Google. Joint Decl. ¶ 63; SA ¶ 13.

Magistrate Judge Cousins held seven discovery hearings and conferences, and required joint reports concerning the Parties' numerous disputes on a weekly, then biweekly, basis. Dkts. 187, 204, 229. While many disputes were adjudicated through that process, the Parties also briefed numerous disputes through joint letter briefs, amounting to roughly 20 discovery disputes altogether. Joint Decl. ¶¶ 30-62. These disputes included, *inter alia*, issues such as the appropriate definition of "location information"; Google's production of documents from the Arizona Attorney General's litigation against Google concerning its location-tracking practices; the proper custodians, search terms, and sources of data from which discovery could be gathered; and the sufficiency of responses to written discovery. *Id.* Even Plaintiffs' ability to conduct expert analysis was contentious, requiring them to litigate a contested motion to disclose material that Google designated highly confidential to Plaintiffs' expert (Dkt. 276), which was granted on March 21, 2023 (Dkt. 284).

As Plaintiffs fought Google's persistent efforts to resist discovery, they also had to defend against Google's aggressive discovery towards them. For instance, Google requested that Plaintiffs produce the history of every location-related setting on every app on every device Plaintiffs or their children ever used during the class period. Plaintiffs were required to turn over their mobile devices, and to have those devices as well as their personal email accounts forensically imaged and searched.

Joint Decl. ¶ 25.

On February 22, 2022, the Court again stayed discovery, this time to facilitate mediation. Dkt. 243. Class Counsel negotiated the production of additional information by Google during, and to facilitate, mediation. Joint Decl. ¶ 56.

Throughout the course of the litigation, Class Counsel actively monitored the progress of other litigation arising from Google's alleged tracking of mobile devices in the U.S. and in other countries, including lawsuits filed by the Attorneys General of four states and the District of Columbia, complaints filed by consumer organizations in Norway, Sweden, Greece, Slovenia, Poland and the Netherlands, as well as litigation brought by the Australian Competition and Consumer Commission in the Federal Court of Australia. *Id.* ¶ 28.

**B.    Settlement Negotiations and Mediation**

In light of the Parties' fundamentally oppositional views on the merits of this litigation, the Settlement was extremely difficult to achieve. The Parties engaged in extensive, arm's-length negotiations over many months, including three full-day mediation sessions on March 15, May 2, and May 24, 2022, and numerous additional discussions facilitated by Professor Eric D. Green, Esq., an experienced and well-respected mediator. Joint Decl. ¶ 5. In addition to information gleaned through discovery, the Parties informally exchanged information to facilitate productive mediation sessions. *Id.*

The Parties reached agreement on the general terms of a settlement in the form of a mediator's proposal in May 2022. *Id.* ¶ 70; *see also* Dkt. 258. However, after months of intensive negotiations, the Parties were unable to agree on certain terms necessary to consummate a full settlement agreement and reported as much to the Court on October 12, 2022. Dkt. 254. The Parties returned to active litigation, including additional discovery disputes before Judge Cousins. Joint Decl. ¶¶ 57-62.

The Court held a status conference on November 3, 2022 (Dkt. 256), and referred the matter to Magistrate Judge Spero, who held a settlement conference on January 19, 2023. (Dkt. 262). Although progress was made during that conference, the case did not settle. Joint Decl. ¶ 71.

The Parties continued their direct negotiations and, on April 27, 2023, executed a term sheet

agreeing to settle the dispute on the general terms now before the Court. *Id.* ¶ 72. However, the Parties had yet to reach agreement on other key terms and strenuous negotiations continued. *Id.* Over the course of several months, the Parties participated in numerous video and phone conferences during which they successfully negotiated the Settlement's significant injunctive relief. *Id.* ¶¶ 73-74. Injunctive relief negotiations extended for months, including numerous written proposals and counterproposals, and consultation with experts. *Id.* Multiple drafts and redlines of the Settlement Agreement and its many exhibits were exchanged and scrutinized. *Id.* ¶ 73.

Class Counsel obtained and carefully negotiated multiple rounds of bids from five well-established, experienced, and highly regarded class action notice and administration firms. *Id.* ¶ 74. Class Counsel collaborated with defense counsel and the proposed Settlement Administrator on the logistics and substance of the Notice Plan. *Id.* ¶ 76.

As a result of the extensive discovery conducted prior to mediation (and document review which continued even after the case was stayed), information provided during settlement negotiations, consultation with experts, and the intense negotiations that lasted over a year in total before the Settlement was finalized, Class Counsel had a comprehensive understanding of the case, including Google's anticipated defenses on the merits; the likely arguments that would be advanced at class certification, summary judgment, and trial; the Settlement Class definition and the challenges involved in identifying individual class members; and the complex technical issues surrounding these issues and potential injunctive relief. *Id.* ¶ 69.

## C.    Preliminary Approval and Dissemination of Notice

On September 14, 2023, Plaintiffs filed a motion for preliminary approval of the Settlement, supported by declarations of counsel and the Settlement Administrator, Epiq Class Action & Claims Solutions, Inc. ("Epiq" or the "Settlement Administrator"). *See* Dkts. 327-329.

On November 7, 2023, the Court granted preliminary approval of the Settlement, provisionally certified the Settlement Class, approved the Notice Plan, and appointed Class Counsel, Class Representatives, and Epiq as the Settlement Administrator. *See* Dkt. 345 (Order Granting Preliminary Approval of Class Action Settlement). Following preliminary approval, the

Administrator has been implementing the Settlement's notice program. *See, e.g.*, https://www.googlelocationhistorysettlement.com/en.

### III.   THE COURT SHOULD APPROVE THE REQUESTED FEE AWARD

Class Counsel vigorously pursued this action for years against significant odds and negotiated a resolution that provides a non-reversionary Settlement Fund of $62 million for the benefit of the Settlement Class and significant injunctive relief. Accordingly, Class Counsel respectfully submit that an award of attorneys' fees in the amount of $18.6 million, which represents 30% of the Settlement Fund and a 1.44 multiplier on Class Counsel's reasonable lodestar, is fair and reasonable.

#### A.   Class Counsel Should Be Awarded Attorneys' Fees from the Common Fund

The United States Supreme Court "has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also, e.g.*, *Harrison v. Bank of Am. Corp.*, No. 19-cv-00316-LB, 2021 WL 5507175, at *8 (N.D. Cal. Nov. 24, 2021) ("When counsel recovers a common fund that confers a 'substantial benefit' on a class of beneficiaries, counsel is 'entitled to recover their attorney's fees from the fund.'") (quoting *Fischel v. Equitable Life Assurance Soc'y*, 307 F.3d 997, 1006 (9th Cir. 2002)); *Williamson v. Microsemi Corp.*, No. 5:14-CV-01827-LHK, 2015 WL 13650045, at *1 (N.D. Cal. Feb. 19, 2015) ("When counsel's efforts result in the creation of a common fund that benefits a class, counsel have an equitable right to be compensated from that fund as a whole.").

#### B.   The Court Should Use the Percentage Method to Calculate Reasonable Attorneys' Fees

In granting fees, "a court must ensure that attorney's fees and costs awarded to class counsel are 'fair, reasonable and adequate.'" *Russell v. United States*, No. 09-03239, 2013 WL 3988778, at *3 (N.D. Cal. Aug. 2, 2013) (citing *Staton v. Boeing Co.*, 327 F.3d 938, 963–64 (9th Cir. 2003)). Under Ninth Circuit law, "the district court has discretion in common fund cases to choose either the percentage-of-the-fund or the lodestar method." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *see also Williamson v. McAfee, Inc.*, No. 5:14-cv-00158-EJD, 2017 WL

6033070, at *1 (N.D. Cal. Feb. 3, 2017).

The percentage-of-the-fund method is the best method to determine the reasonableness of a fixed and readily-quantified attorney's fee award as Class Counsel requests here. Because the "benefit to the class is easily quantified in common-fund settlements," district courts may "award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar." *Thomas v. MagnaChip Semiconductor Corp.*, No. 14-CV-01160-JST, 2018 WL 2234598, at *3 (N.D. Cal. May 15, 2018) (citing *In re Bluetooth Headset Prod. Liability Litig.*, 654 F.3d 935, 942 (9th Cir. 2011)); *see also In re Korean Air Lines Co., Ltd. Antitrust Litig.*, No. CV 07-05107-SJO, 2013 WL 7985367, at *1 (C.D. Cal. Dec. 23, 2013) ("The use of the percentage-of-the-fund method in common-fund cases . . . permits the Court to focus on a showing that a fund conferring benefits on a class was created through the efforts of plaintiffs' counsel."); *Barnes v. The Equinox Group, Inc.*, No. C 10-3586-LB, 2013 WL 3988804, at *3 (N.D. Cal. Aug. 2, 2013) ("The percentage-of-the-fund method is appropriate where—as here—the amount of the settlement is fixed without any reversionary payment to the defendant."). Accordingly, the nature of this action warrants application of percentage-of-the-fund approach—the "prevailing practice in the Ninth Circuit"—to determine the reasonableness of Class Counsel's fee request. *Korean Air Lines*, 2013 WL 7985367, at *1; *see also Destefano v. Zynga, Inc.*, No. 12-CV-04007-JSC, 2016 WL 537946, at *17 (N.D. Cal. Feb. 11, 2016) ("Because this case involves a common settlement fund with an easily quantifiable benefit to the Class, the Court will primarily determine attorneys' fees using the percentage method.").

## C. <u>The Relevant Factors Support Class Counsel's Requested Fee Award</u>

Class Counsel's request for an award of 30% of the common fund "is within the 'usual range'" of fee awards that Ninth Circuit courts award in common fund cases, and reasonable under the factors that courts in this Circuit apply to evaluate a fee award. *Munoz v. Big Bus Tours Ltd.*, No. 18-05761, 2020 WL 13533045, at *4 (N.D. Cal. Feb. 12, 2020) (citing *Vizcaino*, 290 F.3d at 1047).

While the requested award falls above the 25% benchmark used as a starting point in this Circuit, it is well justified. Courts within the Ninth Circuit have awarded fees above the 25%

benchmark where the award is justified by (1) the results achieved; (2) the effort, experience, and skill of counsel; (3) the riskiness of the case and the financial burden shouldered by counsel on a contingency basis; and (4) awards made in similar cases. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002). Indeed, courts in this circuit award fees that exceed the 25% benchmark "in most common fund cases." *In re Omnivision Technologies, Inc.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008); *see also In re National Collegiate Athletic Association Athletic Grant-in-Aid Cap Antitrust Litig.*, No. 14-md-2541, 2017 WL 6040065, at *2 (N.D. Cal. Dec. 6, 2017) (same); *Hernandez v. Dutton Ranch Corp.*, No. 16-cv-817, 2021 WL 5053476, at *6 (N.D. Cal. Sep. 10, 2021) (collecting cases and finding that "[d]istrict courts within this circuit . . . routinely award attorneys' fees that are one-third of the total settlement fund," and "[s]uch awards are routinely upheld by the Ninth Circuit"); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-md-1827, at *2 (N.D. Cal. Dec. 27, 2011) (30% award in $405 million settlement); *Garner v. State Farm Mut. Auto. Ins. Co.,* No. 8-1365, 2010 WL 1687832, at *18 (N.D. Cal. Apr. 22, 2010) (30% award); *Knight v. Red Door Salons, Inc.*, No. 8-01520, 2009 WL 248367, at *7 (N.D. Cal. Feb 2, 2009) (30% award); *Weeks v. Google LLC*, No. 5:18-cv-00801-NC, 2019 WL 8135563, at *4 (N.D. Cal. Dec. 13, 2019) (awarding 30% of the common fund). "Where a court adopts the percentage method, absent extraordinary circumstances that suggest reasons to lower or increase the percentage, the rate should be set at 30%." *Omnivision*, 559 F. Supp. 2d at 1048 (internal quotation marks and citations omitted).

### 1. Class Counsel Achieved an Exceptional Result for the Class

"The overall result and benefit to the class from the litigation is the most critical factor in granting a fee award." *Omnivision*, 559 F. Supp. 2d at 1046; *see also* Federal Judicial Center, *Manual for Complex Litigation*, §21.71, p. 336 (4th ed. 2004) ("[T]he fundamental focus is the result actually achieved for class members.") (citing Fed. R. Civ. P. 23(h) committee note). "[W]hen determining the value of a settlement, courts consider the monetary and non-monetary benefits that the settlement confers." *Miller v. Ghirardelli Chocolate Co.*, No. 12-cv-04936, 2015 WL 758094, at *5 (N.D. Cal. Feb. 20, 2015). The Ninth Circuit has held that the value of a settlement should be enhanced for purposes of fee analyses where there are significant "nonmonetary benefits conferred

1    by the litigation." *Vizcaino,* 290 F.3d at 1049.

2      The Settlement provides substantial redress for the alleged privacy violations.  As described

3    in Plaintiffs' Motion for Preliminary Approval (Dkt. 327), and summarized below, the *cy pres*

4    awards will ensure that the settlement fund is used to the benefit of Class members, as well as

5    satisfying the deterrent goals of the class action device. Further, both the *cy pres* awards and the

6    injunctive relief are designed to address the practices on which Plaintiffs' claims are based, and to

7    prevent privacy violations in the future. The overall result and the benefit to the Settlement Class

8    warrants an upward departure from the Ninth Circuit benchmark attorneys' fee.

9      **Monetary Relief**: The Settlement requires Google to pay $62 million to resolve Plaintiffs'

10   claims under the California Constitutional right of privacy, common law intrusion upon seclusion,

11   and unjust enrichment. Class Counsel's research has identified no larger recovery in any privacy

12   class action where only common law claims, without a potential statutory damages recovery, were

13   at issue. Moreover, *cy pres* distribution in large privacy class actions is not uncommon. *See, e.g.*,

14   *In re Google Inc. Street View*, 21 F.4th at 1109 (affirming final approval of $13 million settlement

15   distributed as *cy pres*); *Campbell v. Facebook Inc.*, 2017 WL 3581179, at *4 (N.D. Cal. Aug. 18,

16   2017), *aff'd*, 951 F.3d 1106 (9th Cir. 2020) (approving settlement providing injunctive relief only

17   and no monetary relief); *Lane v. Facebook,* 969 F.3d 811, 819-820 (9th Cir. 2012) (affirming $9.5

18   million settlement distributed as *cy pres* in case with statutory damages available under the Video

19   Protection Privacy Act ("VPPA")); *In re Netflix Privacy Litig.*, No. 11-cv-00379, 2013 WL

20   1120801, at *3 (N.D. Cal. Mar. 18, 2013) (approving $9 million settlement distributed as *cy pres*

21   in case involving alleged unauthorized storage of personal information, where statutory damages

22   under the VPPA were available); *In re Google Buzz Privacy Litig.*, No. 10-cv-672-JW, 2011 WL

23   7460099, at *4 (N.D. Cal. June 2, 2011) (approving settlement creating $8.5 million *cy pres* fund

24   to resolve privacy claims of class estimated in the tens of millions).

25     If approved, the $62 million Settlement Fund will be distributed (after payment of Court-

26   awarded notice and Settlement administration costs, attorneys' fees and expenses, and service

27   awards) to nonprofit organizations approved by the Court. These potential *Cy Pres* Recipients

28   include educational institutions with track records of cutting-edge public interest research and

education regarding online privacy issues, influencing privacy policy and action across the country (Berkman Klein Center for Internet & Society at Harvard University, MIT's Internet Policy Research Initiative, New York University's Information Law Institute, Yale Law School's Information Society Project, the Fordham University Center on Law and Information Policy, the Center on Privacy & Technology at Georgetown Law, and UCLA's Institute for Technology, Law & Policy); a non-profit news organization that employs trained technologists to conduct independent research, and has a reputation for breaking news regarding internet privacy issues in the technology industry (The Markup); an organization that serves a critical role in enabling access for researchers, historians, scholars, and the general public to otherwise ephemeral sources on the web—records critical to protecting consumer choice and privacy (Internet Archive); public interest research and consumer advocacy organizations that focus on consumer privacy rights and issues (the ACLU's Speech, Privacy, and Technology Project, the ACLU of Northern California's Technology and Civil Liberties Program, the Center for Democracy & Technology, Connect Safely, the Electronic Frontier Foundation, FPF Education & Innovation Foundation, Free Press, and Privacy Rights Clearinghouse); individual researchers whose work will advance the public understanding of privacy rights and means of securing them (the Data & Society Research Institute); and the Rose Foundation for Communities and the Environment, which is well-positioned to ensure that additional organizations meeting the nexus of this Class and the claims at issue here are able to obtain and dedicate funding from this Settlement to serving Class members. *See* Joint Decl. ¶ 77.

Class Counsel estimate that approximately $42.6 million in *cy pres* funding would be made available to support the work of these organizations—work specifically targeted to promote and protect Class members' privacy interests, providing education, advocacy, and security against privacy violations in the future—if the requested attorneys' fees and other expenses are approved in full.

**Injunctive Relief**: Where, as here, a settlement achieves significant benefits that are not accounted for in the dollar value of the common settlement fund, the court "should consider the value of [such] relief obtained as a 'relevant circumstance' in determining what percentage of the

common fund class counsel should receive as attorneys' fees." *Staton v. Boeing Co.,* 327 F.3d 938, 974 (9th Cir. 2003); *see also Vizcaino,* 290 F.3d at 1049 (affirming enhanced fee award where "the court found that counsel's performance generated benefits beyond the cash settlement fund"); *Linney v. Cellular Alaska Partnership*, No. C-96-3008, 1997 WL 450064, at *7 (N.D. Cal. July 18, 1997), *aff'd,* 151 F.3d 1234 (9th Cir. 1998) (granting fee award of one-third of common fund where settlement provided additional non-monetary relief).

The Settlement provides meaningful injunctive relief that extends for at least three years, requiring Google to: (1) confirm that it removed from its website (and any app or settings page controlled by Google where it appeared) the statement that "[w]ith Location History off, the places you go are no longer stored"; (2) maintain a policy under which (a) Location Information stored through Location History ("LH") and Web & App Activity ("WAA") is automatically deleted by default after a period of (at most) 18 months when users opt into these settings for the first time, and (b) users can set their own auto-delete periods; (3) send a notification explaining that WAA and LH collect Location Information with instructions on how to disable each setting, delete the data collected by each, and set retention limits; (4) confirm that Google does not now share users' precise Location Information collected in LH or WAA with third parties (except for valid legal reasons); (5) create and maintain a "Location Technologies Page" that will provide useful information about Google's location practices; and (6) include a link to the Location Technologies Page in its annual "Privacy Check-Up" email and on other pages concerning location. SA ¶¶ 43-44 & Ex. C.

If the value of the injunctive relief were considered, it would "reduce[] the overall percentage of fees" requested. *Walsh v. KindredHealthcare,* No. 11-50, 2013 WL 6623224, at *3 (N.D. Cal. Dec. 16, 2013) (approving fee request of 30% of the common fund; finding the percentage was effectively reduced by the "substantial injunctive relief" obtained through the settlement); *In re Google Play Developer Antitrust Litig*., No. 20-cv-05792-JD, 2024 WL 150585 (N.D. Cal. Jan. 11, 2024), Dkt. 269 at *4 (finding "it appropriate to put a dollar value on a portion of the structural reforms to be provided by the Settlement"). The Settlement's monetary and injunctive relief serve as an excellent recovery for the Class and provide strong support for Class

1    Counsel's fee request.

2              2.      **Class Counsel Undertook Substantial Risk in this Litigation**

3        The risk associated with litigation is a key consideration in determining whether a requested

4    fee award is reasonable. *Vizcaino*, 290 F.3d at 1048 ("Risk is a relevant circumstance" in applying

5    the percentage of the fund method); *see also Eashoo v. Iovate Health Sciences U.S.A., Inc.*, No.

6    CV-01726-BRO, 2016 WL 6205785, at *9 (C.D. Cal. Apr. 5, 2016) ("The risk that further litigation

7    might result in no recovery is a significant factor in assessing the fairness and reasonableness of an

8    award of attorneys' fees.") (internal quotation marks and citation omitted).

9        Class Counsel persisted in the face of numerous hurdles over the course of the litigation that

10   could have substantially narrowed or precluded any recovery in this case. Joint Decl. ¶¶ 16-18, 36,

11   60. Class Counsel assumed the risk of challenging Google, a well-resourced defendant that would

12   have continued to vigorously defend its business practices had the litigation gone forward. There

13   was no guarantee or predefined path to success on any of Plaintiffs' novel and innovative legal

14   claims.

15       Although Plaintiffs believe their case is strong, class certification is warranted, and a jury

16   could find Google liable, there is a great deal of uncertainty as to whether the Court would grant

17   certification, deny a motion for summary judgment, and accept Plaintiffs' damages models. Similar

18   uncertainty exists as to whether a jury would find Plaintiffs entitled to all damages they sought. The

19   risks here were heightened following the Court's holding that Plaintiffs' claims depend on proof of

20   "continuous and comprehensive" tracking and storage of Location Information, and the evidentiary

21   burden Plaintiffs would bear in further pretrial and trial proceedings. Dkt. 162. at 8. That risk is

22   amplified given Google's likely arguments in opposition to class certification. *See, e.g.*, *Hart v.

23   TWC Prod. & Tech. LLC*, No. 20-cv-03842-JST, 2023 WL 3568078, at *10-11 (N.D. Cal. Mar. 30,

24   2023) (denying certification because "[t]he common question of whether users maintained a

25   reasonable expectation of privacy . . . necessitates an individualized factual inquiry into whether

26   individual users understood that their affirmative responses to the permission prompts enabled

27   TWC to use the location data it collected"); *Brown v. Google, LLC*, No. 20-cv-03664-YGR, 2022

28   WL 17961497, at *19 (N.D. Cal. Dec. 12, 2022) (denying certification of privacy claims under

Rule 23(b)(3) because "the inquiry into implied consent . . . creates individualized issues that defeat predominance"); *In re Google Inc. Gmail Litig.*, No. 13-md-02430-LHK, 2014 WL 1102660, at *18 (N.D. Cal. Mar. 18, 2014) (denying certification of wiretapping claims because the issue of consent would require individualized inquires as to which disclosures each viewed).

Litigation risks are particularly pronounced in consumer cases against technology companies; privacy-related claims are often dismissed (as this one was), and class certification has proven difficult. *See In re TikTok, Inc., Consumer Privacy Litig.*, No. 20 C 4699, 2022 WL 2982782, at *28 (N.D. Ill. Jul. 28, 2022) ("Data privacy law is a relatively undeveloped and technically complex body of law, which creates uncertainty and, therefore, additional risk for Class Counsel."); *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1186 (N.D. Cal. Dec. 24, 2020) (largely dismissing two related class actions challenging Facebook's collection of personal location data); *Yastrab v. Apple Inc.*, 173 F. Supp. 3d 972, 976 (N.D. Cal. Mar. 25, 2016) (dismissing claims based on software updates that purportedly removed features from iPhones); *In re iPhone Application Litig.*, 6 F. Supp. 3d 1004, 1007 (N.D. Cal. Nov. 25, 2013) (granting summary judgment and denying class certification as moot in case involving Apple's data collection practices).

Given such realities, numerous privacy class actions against big-tech defendants have settled for non-monetary relief and/or indirect *cy pres* relief. *See, e.g., In re Google Inc. Street View Electronic Communications Litig.*, 21 F.4th 1102, 1115 (9th Cir. 2021) (affirming approval of settlement providing for injunctive relief and *cy pres* monetary award); *Campbell v. Facebook Inc.*, No. 13-cv-05996, 2017 WL 3581179, at *8 (N.D. Cal. Aug. 18, 2017) (granting final approval of declaratory and injunctive relief settlement), *aff'd*, 951 F.3d 1106 (9th Cir. 2020); *McDonald, et al. v. Kiloo A/S, et al.*, No. 17-cv-04344 (N.D. Cal. Apr. 12, 2021), ECF No. 406 (granting final approval to 16 injunctive relief-only settlements).

In short, given the anticipated disputes that would inevitably lie ahead, including summary judgment (when Google might prevail by establishing it did not continuously and comprehensively track class members throughout the Class Period) and class certification (when Google might prevail by establishing that individualized issues regarding consent or the reasonable expectation of privacy would predominate), Plaintiffs faced significant risk of non-recovery. And, even if

Plaintiffs successfully proved their case at trial, the claims in this litigation provide no guarantee of a substantial damages award. If anything were recovered, it could take years to secure, as Google would likely appeal any adverse judgment.

The risk of little or no recovery weighs in favor of the requested fee award.  As courts in the Ninth Circuit have concluded, there are considerable risks related to obtaining class certification, surviving summary judgment, prevailing at trial, and "withstanding a potential appeal." *Bower v. Cycle Gear, Inc*., No. 14-cv-02712-HSG, 2016 WL 4439875, at *7 (N.D. Cal. Aug. 23, 2016); *see also Destefano*, 2016 WL 537946, at *17 (noting the "substantial" risk associated with "obtaining [and maintaining] class certification"); *Roberti v. OSI Systems, Inc.*, No. CV13-09174 MWF (MRWx), 2015 WL 8329916, at *6 (C.D. Cal. Dec. 8, 2015) (the defendant's "vigorous opposition" represented a "substantial" risk weighing in favor of the requested attorney's fees).

### 3.    The Settlement Required Skill and High-Quality Work

Class Counsel's experience and the skill they brought to bear in this case also favor granting the requested fee award. Class Counsel have decades of relevant expertise in high-profile privacy cases and consumer class actions. *See e.g.*, Joint Decl. at ¶¶ 97-114 & Exs. B-C (describing privacy cases including *In Re: Zoom Video Communications, Inc. Privacy Litig.*, No. 3:20-cv-02155-LB (N.D. Cal.); *Rivera v. Google LLC*, No. 2019-CH-00990 (Ill Cir. Ct.); *In re Experian Data Breach Litig.*, No. SACV1501592AGDFMX, 2017 WL 4325583 (C.D. Cal. May 18, 2017); *In re Premera Blue Cross Customer Data Security Breach Litig*., 296 F. Supp. 3d 1230 (D. Or. 2017); *In re Google Inc. Cookie Placement Consumer Privacy Litig*., 806 F.3d 125 (3d Cir. 2015); *In re Vizio, Inc., Consumer Privacy Litig*., 238 F. Supp. 3d 1204 (C.D. Cal. 2017); and *In re Lenovo Adware Litig*., No. 15-md-02624-RMW, 2016 WL 6277245 (N.D. Cal. Oct. 27, 2016)); Joint Decl. at Ex. B (describing other class actions arising out of technological vulnerabilities such as *In re Apple Inc. Device Performance Litig.*, 386 F. Supp. 3d 1155 (N.D. Cal. 2019), and *In re Yahoo! Inc. Shareholder Derivative Litig.,* 153 F. Supp. 3d 1107 (N.D. Cal. 2015)).

Class Counsel's expertise in privacy and technology issues was critical to prosecution of this action. For instance, discovery involved not only large quantities of documents, but highly technical issues that required Class Counsel's experience as well as the input of highly qualified

experts.  Joint Decl. ¶ 5.

The quality of Class Counsel's representation is reflected in the work they performed throughout the case and, ultimately, in the favorable settlement for the Settlement Class. *See generally* Joint Decl. "The prosecution and management of a complex national class action requires unique legal skills and abilities." *Omnivision*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008); *see also Wallace v. Countrywide Home Loans, Inc.*, No. SACV-08-1463 JLS (MLGx), 2015 WL 13284517, at *9 (C.D. Cal. Apr. 17, 2015) (noting customary factors reflecting counsel's skill such as developing the facts and legal claims, conducting discovery, reviewing documents, retaining experts, motion practice, and negotiating and drafting the settlement).

As discussed above, the settlement was not reached lightly. Over the course of nearly six years, Class Counsel prosecuted the Class's claims against a vigorous defense and aggressively pursued discovery, reviewing and analyzing of hundreds of thousands of internal documents from Google. Joint Decl. ¶¶ 5, 64-67.  These efforts put Class Counsel in the best possible position to negotiate a favorable resolution for the Class. *Id*. ¶ 69; *see also Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 449 (E.D. Cal. 2013) (class counsel used their "specialized skill" in the particular area of law which represented an asset to class members and weighed in favor of the fee request); *Omnivision*, 559 F. Supp. 2d at 1047 (explaining that the plaintiffs' case withstood a motion to dismiss, "despite other weaknesses, is some testament to Lead Counsel's skill" and that "[t]his factor also supports the requested fee"); *In re Heritage Bond Litigation*, No. 02-ML-1475-DT (RCx), 2005 WL 1594403, at *19 (C.D. Cal. June 10, 2005) (finding fact investigation, detailed complaints, extensive motion practice, review of numerous documents, and demonstrated class counsel's legal skills); *Lenovo*, 2019 WL 1791420, at *8 (noting favorable result given that the case had "been actively litigated for the past four years, and required complex legal and factual research and analysis by Class Counsel").

The quality of opposing counsel also should be considered when evaluating Class Counsel's performance. *See In re American Apparel, Inc. Shareholder Litig.*, No. CV-1006352-MMM, 2014 WL 10212865, at *22 (C.D. Cal. July 28, 2014) ("In addition to the difficulty of the legal and factual issues raised, the court should also consider the quality of opposing counsel as a measure of

the skill required to litigate the case successfully.") (citing *Wing v. Asarco Inc.*, 114 F.3d 986, 989 (9th Cir. 1997)). Google, a defendant with virtually unlimited resources, was represented in this case by Keker, Van Nest & Peters LLP, a highly respected litigation boutique with significant resources and substantial experience defending consumer class actions. This factor weighs in favor of the requested fee award.  *See Heritage Bond*, 2005 WL 1594403, at *20 ("[P]laintiffs in this litigation were opposed by highly skilled and respected counsel with well-deserved local and nationwide reputations for vigorous advocacy in the defense of their clients.").

### 4.    Class Counsel Worked for Years on a Fully Contingent Basis

Class Counsel took this matter on contingency and advanced all necessary professional time and expenses for nearly six years. Joint Decl. ¶ 87. In common fund cases, "attorneys whose compensation depends on their winning the case must make up in compensation in the cases they win for the lack of compensation in the cases they lose." *Vizcaino*, 290 F.3d at 1051. "When counsel takes cases on a contingency fee basis, and litigation is protracted, the risk of non-payment after years of litigation justifies a significant fee award." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 261 (N.D. Cal. 2015). "This substantial outlay, when there is a risk that none of it will be recovered, further supports the award of the requested fees." *In re Nexus 6P Products Liability Litig.*, No. 17-cv-02185-BLF, 2019 WL 6622842, at *13 (N.D. Cal. Nov. 12, 2019) (quoting *Omnivision*, 559 F. Supp. 2d at 1047). "Courts have long recognized that the public interest is served by rewarding attorneys who assume representation on a contingent basis with an enhanced fee to compensate them for the risk that they might be paid nothing at all for their work." *Ching v. Siemens Industry, Inc.*, No. 11-cv-04838-MEJ, 2014 WL 2926210, at *8 (N.D. Cal. June 27, 2014); *see also In re Washington Public Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994) ("It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases."). "A contingent fee must be higher than a fee for the same legal services paid as they are performed. The contingent fee compensates the lawyer not only for the legal services he renders but for the loan of those services." *Ladore v. Ecolab, Inc.*, No. CV 11-9386-FMO, 2013 WL 12246339, at *11 (C.D. Cal. Nov. 12, 2013).

### 5.      The Award Requested Is on Par with Awards in Similar Cases

A review of fee awards in other common fund cases underscores the reasonableness of the fee requested here. Indeed, fee awards in common fund settlements of comparable size regularly exceed the 25% benchmark. *See, e.g. Omnivision*, 559 F. Supp. 2d at 1047 ("[I]n most common fund cases, the award exceeds that [25%] benchmark."); *In re Mego Financial Corporations Securities Litig.*, 213 F.3d 454, 463 (9th Cir. 2000), as amended (June 19, 2000) (affirming fee award of one third of common fund).

Additionally, courts in the Ninth Circuit have regularly awarded attorney fees amounting to or exceeding 30%, including in relatively large settlements. *See, e.g.*, *In re Volkswagen "Clean Diesel" Marketing*, No. 15-md-02672-CRB, 2022 WL 17730381, at *10 (N.D. Cal. Nov. 9, 2022) (awarding 30% of $80 million settlement fund); *Carlin v. DairyAmerica, Inc.*, 380 F. Supp. 3d 998, 1022 (E.D. Cal. 2019), *appeal dismissed sub nom. Carlin v. Spooner*, 808 F.App'x 571 (9th Cir. 2020) (awarding one-third of $40 million recovery, and citing cases in support); *Nexus 6P*, 2019 WL 6622842, at *13 (awarding 30% of common fund in case concerning defective smartphones, and finding that the "request for a 30% fee falls within the usual range of common fund cases"); *In re Lidoderm Antitrust Litig.*, No. 14-md-02521-WHO, 2018 WL 4620695, at *1 (N.D. Cal. Sept. 20, 2018) (awarding one-third of $105 million settlement); *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-MD-02420-YGR, 2018 WL 3064391, at 1* (N.D. Cal. May 16, 2018) (awarding 30% of $139.3 million settlement fund); *Patel v. Trans Union, LLC*, No. 14-cv-00522-LB, 2018 WL 1258194, at *12 (N.D. Cal. Mar. 11, 2018) (awarding one-third of settlement fund in consumer class action matter involving erroneous information on credit reports); *Hendricks v. Starkist Co.*, No. 13-CV-00729-HSG, 2016 WL 5462423, at *12 (N.D. Cal. Sept. 29, 2016), *aff'd sub nom. Hendricks v. Ference*, 754 F. App'x 510 (9th Cir. 2018) (awarding 30% of fund in consumer protection case); *Lusby v. GameStop Inc.*, No. 12-3783, 2015 WL 1501095, at *9 (N.D. Cal. Mar. 31, 2015) (awarding one-third of common fund); *In re Galena Biopharma, Inc. Sec. Litig.*, No. 3:14-cv-00367, 2016 WL 3457165 (D. Or. June 24, 2016) (awarding 32% fee based on a $27.9 million recovery); *In re TFT-LCD Antitrust Litig.*, No. M 07-1827 SI, 2013 WL 149692, at *2 (N.D. Cal. Jan. 14, 2013) (awarding 30% of $68 million recovery); *Smith v. CRST Van Expedited, Inc.*,

No. 10-cv-1116-IEG, 2013 WL 163293, at *5 (S.D. Cal. Jan. 14, 2013) ("Under the percentage method, California has recognized that most fee awards based on either a lodestar or percentage calculation are 33 percent.") (citing *In re Consumer Privacy Cases*, 175 Cal. App. 4th 545, 556 n.13 (2009)); *Knight*, 2009 WL 248367, at *7-8 (awarding 30% of common fund). Accordingly, Class Counsel's request for 30% of the Settlement Fund is well within the range of fees awarded in other cases, obtaining similarly exceptional results.

### D.   A Lodestar Cross-Check Confirms the Reasonableness of the Requested Fees

"Finally, after applying the percentage method, courts typically roughly calculate the lodestar as a cross-check to assess the reasonableness of the percentage award." *Miller*, 2015 WL 758094, at *6 (internal quotation marks and citations omitted). *See Vizcaino*, 290 F.3d at 1050 ("Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award."). The lodestar "is produced by multiplying the number of hours reasonably expended by counsel by a reasonable hourly rate." *Harrison*, 2021 WL 5507175, at *8 (citations omitted). The Court "has broad discretion in setting the reasonable hourly rates used in the lodestar calculation" and "can rely on its own experience." *Id.* at *9 (internal quotation marks and citations omitted).

In performing the cross-check, however, "the determination of fees should not result in a second major litigation," and "trial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal . . . is to do rough justice, not to achieve auditing perfection." *Jarrell v. Amerigas Propane, Inc.*, No. 16-CV-01481-JST, 2018 WL 1640055, at *4 (N.D. Cal. Apr. 5, 2018) (citations omitted); *see also In re Capacitors Antitrust Litig.*, No. 3:17-md-02801-JD, 2018 WL 4790575, at *6 (N.D. Cal. Sept. 21, 2018) (reasoning the cross-check does not require "mathematical precision nor bean-counting") (citation omitted); *In re Toys R Us-Delaware, Inc. – Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 460 (C.D. Cal. 2014) ("In cases where courts apply the percentage method to calculate fees, they should use a rough calculation of the lodestar as a cross-check to assess the reasonableness of the percentage award.").

### 1.   The Number of Hours Devoted to the Case Was Reasonable

Pursuant to the Court's initial appointment order, Class Counsel maintained

contemporaneous time records, and provided quarterly reporting of their time that was audited and reviewed by Class Counsel.  Joint Decl. ¶ 11. As reflected in these reports, Class Counsel performed a significant amount of work in this Action, including: (i) diligently investigating the legal claims, in consultation with experts; (ii) efficiently negotiating the consolidation of six related cases asserting substantially similar claims; (iii) successfully opposing, in part, Google's second motion to dismiss the claims in full; (iv) engaging in comprehensive discovery and litigating roughly 20 discovery disputes through motions, regular hearings, and joint reports, before Magistrate Judge Cousins; (v) conducting significant research and discovery in preparation for the anticipated class certification motion; (vi) engaging in multiple mediation and settlement conference sessions with Google, obtaining significant information regarding the Class claims in connection with such mediation; and (vii) fulfilling their responsibilities under the Settlement, including identifying and proposing appropriate *cy pres* recipients, seeking and obtaining preliminary approval of the Settlement and overseeing Notice administration and responding to Class member inquiries, among many other tasks—all of which have been reflected in the quarterly time reports submitted *in camera* to this Court since 2019. *See generally* Joint Decl. Class Counsel continue to devote substantial time and resources to this action daily—including by overseeing the Settlement administration process—and will continue to do so until the conclusion of the Settlement's disbursement process, which may take years depending on the *cy pres* disbursements approved. Joint Decl. ¶ 6. Moreover, Class Counsel closely audited the work and assignments of members the additional firms appointed as Interim Class Counsel to ensure fairness and order, as well as to minimize any work duplication. *Id.* ¶ 94. None of the time that any Class Counsel dedicated to the contested applications for leadership in this action, for example, is included in the lodestar summary presented here. In total, Plaintiffs' Counsel collectively report approximately 17,600 hours on this matter through December 31, 2023.  Joint Decl. Ex. A.  All time spent by attorneys who worked fewer than 20 hours on the case, all time devoted to the disputed application for leadership of the Action, and all time devoted to this fee application, has been omitted from the lodestar calculation. Joint Decl. ¶ 94.

2.      **The Hourly Rates Are Reasonable**

As the Supreme Court has stated, "[w]hen plaintiffs' entitlement to attorney's fees depends on success, their lawyers are not paid until a favorable decision finally eventuates, which may be years later. . . . Meanwhile, their expenses of doing business continue and must be met." *Pennsylvania v. Delaware Valley Citizens' Council*, 483 U.S. 711, 716 (1987) (citations omitted). Accordingly, "[a]ttorneys in common fund cases must be compensated for any delay in payment." *Stanger v. China Electric Motor, Inc.*, 812 F.3d 734, 740 (9th Cir. 2016) (quoting *Fischel v. Equitable Life Assurance Society of U.S.*, 307 F.3d 997, 1010 (9th Cir. 2002)). As the Ninth Circuit in *Washington Public Power* reasoned, "[f]ull compensation requires charging current rates [for attorneys still at the firm] for all work done during the litigation, or by using historical rates [for those who left the firm prior to the filing of the fee petition] enhanced by an interest factor." *Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d at 1305.

Courts acknowledge the risks taken by counsel in contingent matters and, accordingly, "'[c]urrent rates, rather than historical rates, should be applied in order to compensate for the delay in payment" given the "deferred and contingent nature of counsel's compensation.'" *Brown v. Hain Celestial Group, Inc.*, No. 3:11-CV-03082-LB, 2016 WL 631880, at *8 (N.D. Cal. Feb. 17, 2016) (quoting *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2nd Cir. 1998)); *see also Miller*, 2015 WL 758094, at *6 (holding current rates are appropriate "given the deferred and contingent nature of counsel's compensation"). Here, because Class Counsel has waited almost six years, so far, to recover any compensation for their work and expenses in this matter, the Court should cross-check the percentage request utilizing a lodestar based on counsel's current hourly rates.

The reasonable hourly rate is "the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Fowler v. Wells Fargo Bank, N.A.*, No. 17-cv-02092-HSG, 2019 WL 330910, at *6 (N.D. Cal. Jan. 25, 2019).  Here, Class Counsel's hourly rates, as well as the rates of all members of additional firms appointed as Interim Class Counsel, range from $550 to $1,300 for partners; $420 to $710 for associates[2]; and $150 to

---

[2] This figure is exclusive of the rates of two senior Interim Class Counsel attorneys, each with decades of legal experience, who were classified as associates on quarterly time submissions to

$535 for paralegals and other support staff. Joint Decl. Ex. A. In the context of complex litigation, courts in this District have regularly approved rates at these levels or higher—and, in some cases, before the high levels of inflation experienced in the United States since the COVID-19 pandemic. *See Gutierrez v. Amplify Energy Corp.*, No. 21-01628, 2023 WL 6370233, at *7 (C.D. Cal. Sept. 14, 2023) (surveying Northern District orders awarding attorneys' fees, finding that Lieff Cabraser's hourly "rates are consistent with market rates in their area."); *In re MacBook Keyboard Litig.*, No. 18-cv-2813, 2023 WL 3688452, at *15 (N.D. Cal. May 25, 2023) (approving rates of up to $1,195 for partners and $850 for associates); *In re Facebook Internet Tracking Litig.,* 2022 WL 16902426, at *12 (finding hourly rates up to $1,200 "reasonable and commensurate with those charged by attorneys with similar experience in the market"); *Fleming v. Impax Laboratories Inc.,* No. 16-cv-06557-HSG, 2022 WL 2789496, at *9 (N.D. Cal. July 15, 2022) (finding rates of $760 to $1,325 for partners to be reasonable); *Hefler v. Wells Fargo & Co.*, No. 16-cv-05479-JST, 2018 WL 6619983, at *14 (N.D. Cal. Dec. 18, 2018) (finding rates up to $1,250 for "partners or senior counsel," $650 for associates, and $350 for paralegals reasonable); *In re Volkswagen "Clean Diesel" Marketing,* 2017 WL 1047834, at *5 (N.D. Cal. Mar. 17, 2017) (finding rates up to $1,600 for partners, $790 for associates, and $490 for paralegals reasonable).

### 3. The Multiplier Is Justified Given the Results Obtained, the Complexity of the Issues, and the Contingent Nature of the Representation

Based on Class Counsel's and Interim Class Counsel's collective hours and their reasonable and customary hourly rates, and after excluding several hundred hours of reported time in the exercise of billing discretion, they have a combined lodestar of $12,960,632.  Joint Decl. ¶¶ 91-94 & Ex. A. Thus, the requested award of fees of $18.6 million represents a multiplier of 1.44. The two firms appointed Class Counsel, alone, have a combined lodestar of $12,068,829 and, thus, the requested award represents a multiplier of 1.54 on that figure, alone. Joint Decl. ¶ 92.

Such a modest multiplier is well within the range of multipliers that the Courts in the Ninth

---

the Court. These individuals billed approximately 40 hours in total at rates of $830 and $835. One of the individuals, responsible for the majority of the time, had applied to be lead counsel and described her title as Senior Attorney, a designation not available on quarterly time forms. *See* Dkts. 52, 52-1 at ¶ 1. She subsequently changed firms and now carries the title of partner.

Circuit and elsewhere regularly approve. *See Vizcaino*, 290 F.3d at 1043, 1051 (9th Cir. 2002) & Appendix (approving multiplier of 3.65 and citing cases with multipliers as high as 19.6); *In re Volkswagen*, 2017 WL 1047834, at *5 (Breyer, J.) ("'Multipliers in the 3-4 range are common in lodestar awards for lengthy and complex class action litigation.'") (quoting *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 298-99 (N.D. Cal. 1995)); *Gutierrez v. Wells Fargo Bank, N.A.*, No. C 07-05923 WHA, 2015 WL 2438274, *7 (N.D. Cal. May 21, 2015) (applying a 5.5 multiplier to lead counsel's lodestar based on "the fine results achieved on behalf of the class, the risk of non-payment [lead counsel] accepted, the superior quality of their efforts, and the delay in payment"); *In re National Collegiate Athletic Association Athletic Grant-in-Aid Cap Antitrust Litig.*, 768 F. App'x 651, 653 (9th Cir. 2019) (approving 3.66 multiplier in $200 million settlement); *Steiner v. American Broadcasting Co.*, 248 F. App'x 780, 783 (9th Cir. 2007) (even a multiplier of 6.85 was "well within the range of multipliers that courts have allowed"); *Craft v. County of San Bernardino*, 624 F. Supp. 2d 1113, 1125 (C.D. Cal. 2008) (multiplier of approximately 5.2).

Here, given the extensive effort required, the Settlement's excellent results, in the face of the risks presented and the complexity of the issues this litigation entailed, the lodestar cross-check and multiplier are appropriate.

## IV.   CLASS COUNSEL ARE ENTITLED TO REIMBURSEMENT OF THEIR REASONABLE LITIGATION EXPENSES

"Reasonable costs and expenses incurred by an attorney who creates or preserves a common fund are reimbursed proportionately by those class members who benefit[.]" *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1995) (citation omitted). Class Counsel have incurred $151,756.23 in unreimbursed litigation expenses, including costs advanced in connection with consultants, legal research, court reporting services, copying and mailing, and other customary litigation expenses. Joint Decl. ¶ 115.

Here, Class Counsel is entitled to recover "those out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (quotations omitted). The expenses for which Class Counsel seek reimbursement were reasonably necessary for the continued prosecution and resolution of this litigation, and were incurred by Class

1   Counsel for the benefit of the Class with no guarantee that they would be reimbursed. These

2   expenses include expert fees, mediation fees, fees for document review and hosting, fees for the

3   forensic consultant Class Counsel engaged in order to collect and preserve Plaintiffs' data, and

4   other fees ordinarily incurred in litigation. Joint Decl. ¶ 115. Courts have frequently found such

5   expenses to be recoverable. *See, e.g.*, *In re LendingClub Sec. Litig.*, No. C 16-02627 WHA, 2018

6   WL 4586669, at *3 (N.D. Cal. Sept. 24, 2018) (expenses such as expert and consultant fees, court

7   fees, travel and lodging costs, legal research fees, and copying expenses were reasonable and

8   recoverable); *Thomas*, 2018 WL 2234598, at *4 (granting requests for costs consisting of "court

9   fees, online research fees, postage and copying, travel costs, electronic discovery expenses,

10   deposition costs, mediation charges, and travel costs"). Accordingly, the Court should approve

11   their reimbursement.

12
13   **VII.   THE REQUESTED CLASS REPRESENTATIVE SERVICE AWARDS ARE
       REASONABLE AND JUSTIFIED**

14       Service awards are "intended to compensate class representatives for work undertaken on

15   behalf of a class" and "are fairly typical in class action cases." *In re Online DVD-Rental Antitrust*

16   *Litig.*, 779 F.3d 934, 943 (9th Cir. 2015) (internal quotation marks and citation omitted). "In this

17   district, a $5,000 incentive award is presumptively reasonable." *Harrison*, 2021 WL 5507175, at

18   *7. Here, Class Counsel request Service Awards of $5,000 for each of the three Class

19   Representatives, for a total of $15,000.

20       In considering the amount of a service payment, courts consider "the actions the plaintiff

21   has taken to protect the interests of the class, the degree to which the class has benefitted from those

22   actions, . . . and the amount of time and effort the plaintiff expended in pursuing the litigation."

23   *Johnson v. Fujitsu Tech. & Bus. of Am., Inc.*, No. 16-CV-03698-NC, 2018 WL 2183253, at *8

24   (N.D. Cal. May 11, 2018) (alterations and citation omitted); *In re Lenovo Adware Litig.*, No. 15-

25   md-02624, 2019 WL 1791420, at *9-10 (N.D. Cal. April 24, 2019) (same). Here, the Class

26   Representatives stepped forward to represent and protect the interests of the Settlement Class and

27   spent years prosecuting this Action. *See* concurrently filed Declarations of Napoleon Patacsil,

28   Michael Childs, and Noe Gamboa. The Class Representatives assisted in the investigation,

participated in the plaintiff vetting process implemented by their respective counsel and by Class Counsel after appointment, reviewed and approved the complaints, kept in close contact with counsel to monitor the progress of the litigation, and communicated with counsel regarding the Settlement. *Id.* The Class Representatives spent significant time responding to extensive and broad discovery served by Google, including invasive collection of comprehensive personal data from their phones, email, and Google accounts, despite privacy concerns. *Id.* The Class Representatives provided their mobile devices to Class Counsel's forensic data experts. *Id.* The Class Representatives put their names and reputations on the line for the sake of the Class. The Class recovery here would not have been possible without their efforts.

Courts have awarded service payments for similar work on behalf of the class and time commitments. Class Counsel seek a total of $15,000, which is reasonable in relation to the full amount of the Settlement Fund. Finally, the Settlement does not improperly grant preferential treatment to Plaintiffs. *In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138 VRW, 2007 WL 1991529, at *6 (N.D. Cal. June 30, 2007). Because Plaintiffs' Service Award request "is in line with precedent," *Allagas v. BP Solar Int'l, Inc.*, No. 3:14-cv-00560-SI (EDL), 2016 WL 9114162, at *4 (N.D. Cal. Dec. 22, 2016) (citations omitted), the Court should grant the requested Service Awards.

## VIII.   **CONCLUSION**

Class Counsel devoted many thousands of hours to the litigation. Ultimately they successfully negotiated a favorable settlement including a $62 million non-reversionary cash fund and injunctive relief. Based on these circumstances, and consistent with the factors applied by federal courts, including in the Northern District of California, Class Counsel respectfully request that the Court issue an order awarding $18.6 million in attorneys' fees, approving reimbursement of $151,756.23 in litigation expenses, and awarding Service Awards of $5,000 to each of the three Plaintiffs.

Respectfully submitted,

Dated: January 29, 2024

*/s/ Tina Wolfson*
AHDOOT & WOLFSON, PC

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Tina Wolfson (SBN 174806)
twolfson@ahdootwolfson.com
Theodore Maya (SBN 223242)
tmaya@ahdootwolfson.com
Bradley K. King (SBN 274399)
bking@ahdootwolfson.com
Henry J. Kelston (*pro hac vice*)
hkelston@ahdootwolfson.com
Deborah De Villa (SBN 312564)
ddevilla@ahdootwolfson.com
2600 West Olive Avenue, Suite 500
Burbank, California 91505
Telephone: 310.474.9111
Facsimile: 310.474.8585

Dated: January 29, 2024

*/s/ Michael W. Sobol*
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
Michael W. Sobol (SBN 194857)
msobol@lchb.com
Melissa Gardner (SBN 289096)
mgardner@lchb.com
Michael Levin-Gesundheit (SBN 292930)
mlevin@lchb.com
Michael K. Sheen (SBN 288284)
msheen@lchb.com
Jallé H. Dafa (SBN 290637)
jdafa@lchb.com
John D. Maher (SBN 316157)
jmaher@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: 415.956.1000
Facsimile: 415.956.1008

LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
Nicholas Diamand (*pro hac vice*)
250 Hudson Street, 8th Floor
New York, NY 10013
Telephone: 212.355.9500
Facsimile: 212.355.9592

*Interim Co-Lead Class Counsel*

**SIGNATURE ATTESTATION**

I am the ECF User whose identification and password are being used to file the foregoing Notice of Motion and Motion for Attorneys' Fees and Expenses, and Service Awards; Memorandum of Points and Authorities in Support Thereof. Pursuant to L.R 5-1(i)(3) regarding signatures, I, Tina Wolfson attest that concurrence in the filing of this document has been obtained.

DATED: January 29, 2024                    */s/ Tina Wolfson*
                                            Tina Wolfson