# Exhibit 4



<u>**_In re Google Location History Litigation_ Cy Pres Award Proposal**</u>
<u>**October 5, 2023**</u>

## I.   Organization Information

   1. **Name of organization & contact details.**

Name:       Center for Democracy & Technology
Contact:    Alexandra Givens, President & CEO
            agivens@cdt.org; development@cdt.org
            (202) 407 8840

   2. **Discuss the founding and history of the organization.**

The Center for Democracy & Technology (CDT) is a nonpartisan, nonprofit advocacy organization that fights to protect consumers' privacy, civil rights and civil liberties in the digital age. We promote strong privacy and security protections for personal data, work to combat data-driven discrimination, and defend users' rights to free expression and privacy. CDT was founded in Washington, D.C. in 1994 and has operated a second office, in Brussels, since 2014.

Since our founding, CDT has been one of the leading U.S. and global organizations fighting to protect consumers' privacy. CDT's largest program is our Privacy & Data project, which works to protect consumers' interests in areas ranging from internet privacy to artificial intelligence, location data privacy, health privacy, workplace privacy and more.

CDT leads legislative efforts at the U.S. federal level and advocates to federal agencies. We also advocate directly to technology companies to improve their business practices and product designs, and serve as public interest leaders in multistakeholder fora where best practices and standards are set.

3.  **Describe the organization's current goals.**

- Promote strong privacy & security protections for people's personal data
- Combat data-driven discrimination
- Promote responsible governance of AI
- Defend civil liberties by limiting government digital surveillance
- Advance equity and privacy considerations in the use of technology in education and in government services
- Promote solutions to the challenges of online trust & safety that protect individuals' rights to freedom of expression and privacy.

4.  **Provide a brief description of the organization's current programs.**

CDT's **Privacy & Data Program** seeks to improve companies' data practices through legislation, regulatory action, and by changing industry norms. We believe that people's privacy must be protected by clear rules and practices enshrining data minimization, use limitations, and strict protections for sensitive data such as location information. We are a leading voice in the fight for a U.S. federal privacy law, and advocate directly to the Federal Trade Commission, Consumer Financial Protection Bureau, the Commerce Department and other agencies to combat invasive data practices.

Our Privacy & Data Program also advocates directly to companies to improve their business practices and product designs. We engage directly with in-house privacy teams on best practices, and create outside pressure for them to act. We also serve as public interest leaders in the multistakeholder bodies where privacy standards and norms are set, leading the World Wide Web Consortium (W3C)'s Privacy Interest Group, serving on the Internet Architecture Board, and participating in numerous advisory groups and fora. We have specific sub-projects focused on health privacy, student privacy, worker privacy, and disability rights & tech.

CDT's **Security & Surveillance Program** seeks to ensure reasonable checks and balances on governments' ability to access, collect, and store individuals' data. In addition to advocating for policy change, our Surveillance program engages directly with companies to urge their responsible handling of governments' data requests. We push back against overbroad geofence warrants, call on companies to require legal

process before sharing their customers' data, and oppose law enforcement's unfettered access to people's data via commercial data brokers. We were founding members of the Global Network Initiative, a unique body through which companies commit to transparency and assessments of how they protect their users' privacy rights.

CDT also has programs on Free Expression/Online Platform Governance; Equity in Civic Technology; Competition; and Elections & Democracy.

> 5. **Has your organization ever received a prior *cy pres* award? If yes, please cite the applicable case(s), identify the amount(s) awarded, and describe the nature and scope of the project(s) funded.**

Cy pres awards are an important source of funding for CDT's consumer advocacy work. We are honored to have been entrusted as recipients of cy pres awards in numerous prior cases. The awards have been unrestricted rather than allocated to a specific project.

| 2023 | ● *Quintero v. SANDAG* — $36,973.20 |
|------|-------------------------------------|
| 2022 | ● *In Re Carrier IQ, Inc. Consumer Privacy Litigation* — $275,671 |
| 2020 | ● *Borecki v Raymours Furniture Company, Inc.* — $45,634<br>● *TD Ameritrade* — $7,380 |
| 2019 | ● *Wahl v. Yahoo! Inc.* — $170.00 |
| 2018 | ● *N.P. v. Standard Innovation Corp.* — $39,780.31 |
| 2017 | ● *Fraley et al v. Facebook* — $10,407.98 |
| 2016 | ● *Byanooni v. Merrill Lynch* — $17,374.91<br>● *Aboudi v. T-Mobile USA, Inc.* — $408,203.94<br>● *In Re LinkedIn User Privacy Litigation* — $31,752 |
| 2014 | ● *Manjunath A. Gokare, P.C. v. Fed. Express Corp.* — $5.00<br>● *In Re Netflix Privacy Litigation* — $497,661 |
| 2013 | ● *Standiford vs. Palm, Inc.* — $365,149.44<br>● *TD Ameritrade Class Action* — $59,669.97 |
| 2012 | ● *In Re Google Buzz User Privacy Litigation* — $511,199.49<br>● *Valentine v. NebuAd, Inc.* — $75,000 |

| 2011 | • "Flash Cookie" Class Action Settlement — $322,795 <br> ○ *In Re Quantcast Advertising Cookie Litigation* <br> ○ *In Re Clearspring Flash Cookie Litigation* <br> ○ *Davis, et al. v. VideoEgg, et. al* <br> • *Demetria Rodriguez, et. al., vs. NDCHealth Corporation et al.* — $255,007 |
|---|---|

6. **Has your organization been reviewed or rated by Charity Navigator or similar entity? If yes, what are the organization's ratings?**

Charity Navigator awards CDT 4 out of 4.

## II.   Grant Proposal

7. **Identify the organization's principal investigator or project director.**

Dr. Nathalie Maréchal, Co-Director, Privacy & Data Program
Eric Null, Co-Director, Privacy & Data Program

8. **Provide a summary of the plan for the program or project request. Include the issue and/or opportunity addressed, goals and objectives, activities, and timeline.**

CDT seeks to expand our Privacy & Data Program to better protect consumers' privacy through legislation, regulation, and improved company practices. Through three lines of work, we seek to: (i) secure robust privacy protections for location information and other sensitive data through comprehensive legislation and regulation; (ii) push companies to improve their data practices and product designs; and (iii) advance affirmative, privacy-protecting approaches to online advertising to displace current behavior-based models. These efforts build on CDT's existing subject matter expertise and strong working relationships with federal policymakers, company decision-makers, and allied consumer groups. The Award would allow us to scale up and expand this work, as described below.

(1) <u>Securing Better Consumer Privacy Protections for Location Information & Other Sensitive Data</u>

*Goal:* Secure robust privacy protections for location information and other sensitive data by advancing comprehensive privacy legislation and effective regulations.

*Context:* Recent events have increased public awareness about the sensitivity of location information and the lack of adequate protections for this and other sensitive data. In the wake of the 2022 *Dobbs* decision, investigative reporters showed that they could easily purchase location information revealing where people who visited a Planned Parenthood facility had come from and where they went next. Reports showed that marketing companies are using location data to target ads to people in sensitive locations such as a doctor's office. Law enforcement has purchased commercially-available location data to issue geofence warrants, and more.

CDT has been a leading voice emphasizing the sensitivity of location data and the need for meaningful privacy protections. During the major legislative push that led to the introduction and movement of the American Data Privacy & Protection Act in 2021-2023, CDT contributed legislative recommendations, testified before Congress, and raised public awareness about the risks and need for a strong comprehensive privacy law. The bill's overwhelming bipartisan vote out of the House Energy & Commerce Committee and various state bills show that attitudes are changing — and the FTC's increased enforcement against companies that collect and sell consumer location data shows the potential (and the challenges) for enforcement actions to protect location data too. CDT is eager to build on this momentum, to increase public awareness about the need for strong consumer privacy protections and to secure those protections now.

*Activities:*
- Advocate for Congress to adopt robust protections for consumer privacy, with a particular focus on (i) protecting sensitive information such as location data, and (ii) ensuring any framework imposes baseline privacy requirements (rather than relying on users' notice & consent, which can easily be worked around or manipulated). Provide public interest feedback and actionable advice on legislative proposals; educate policymakers on the significance of privacy issues;

and support diverse public interest groups from across the political spectrum to engage in the fight for strong privacy protections.

- Serve as a strong consumer voice in existing and anticipated federal agency processes impacting consumer privacy, including Federal Trade Commission (FTC) rulemaking on commercial data practices and Consumer Financial Protection Bureau (CFPB) efforts on commercial data brokers. Develop strategies for other agencies, such as the Federal Communications Commission, to use their authorities to protect location privacy. File comments & support others' submissions to build a strong evidence base for robust, protective rules.

*(2) Directly Improving Companies' Data Policies, Practices & Designs*

*Goal:* To push companies to improve their data policies, practices, and designs through direct advocacy and public interest leadership in the multi-stakeholder fora where industry best practices and norms are set.

*Context:* Given the slow pace of legislative and regulatory efforts, CDT believes consumer advocates must also advocate *directly* for companies to improve their data policies, practices and designs. CDT already does this in several ways, which include engaging directly with in-house privacy and product teams to recommend changes to company data practices, while creating outside pressure for them to act. For example, we successfully convinced Apple and Google to develop a standard to reduce the risk of Bluetooth location trackers (like Airtags) being misused for stalking people, which was the result of two years' direct advocacy by CDT and the National Network to End Domestic Violence.

CDT publishes reports and best practice guides for how companies should protect consumers' data. We also serve as a strong public interest voice in multi-stakeholder fora where standards and norms are set, ranging from internet standards bodies like the IETF (where we are working to make the Apple-Google Bluetooth location tracking proposal become an industry standard) and W3C, to efforts by the World Economic Forum, BBB, BSR, and others. In recent years, we have expanded our strategy to include investors as a tool to shape company behavior, elevating "responsible data practices" as an ESG investment criterion against which companies should be scored.

CDT is eager to build on this work, at a time when rapid advancements in AI and national security debates are increasing public attention on businesses' data practices and thus creating new momentum. Specifically, CDT seeks to hire new staff who can delve more deeply into companies' data practices at the operational level, and to grow our ESG/investor-focused work from a pilot effort to a formal program.

*Activities:*
- Hire 1-2 experienced data privacy professionals who have managed effective data privacy programs within companies or industry associations, and can boost CDT's efforts to drive best practices in key industries including the data broker, automotive and advertising sectors.
- Develop and advocate for the adoption of privacy-protecting measures, such as basic data hygiene (for example, understand the data they collect, reduce what they collect to what they need, delete data when no longer needed), adopting privacy controls that require opt-in consent for any location data not necessary for the service; improving policies around geotargeting; improving user notices; and improving global controls (see more on this below).
- Hire 1 new professional to lead CDT's work elevating consumer privacy & responsible data practices as a criterion for formal measurement within ESG. This work will focus on urging the leading global ESG benchmarking organizations to include effective measures for data privacy & governance in their benchmarking efforts, working with investors to craft shareholder proposals for introduction during company Annual General Meetings, and providing technical and policy expertise to inform these efforts.

*(3) Transforming Online Advertising to Protect Consumer Privacy*

*Goal*: To support the growth & adoption of an online advertising ecosystem that moves away from pervasive tracking and respects users' privacy.

*Context*: The next few years could serve as an inflexion point for online advertising. New data privacy regulations and growing public dismay at the behavioral-tracking model of online advertising are creating new opportunities for the ecosystem to change. At the same time, work is needed to establish how such change can work in practice – meeting

consumers' needs, and providing a sustainable funding model for journalism, social media sites, and other services that need advertising revenue to survive.

The capabilities for tracking online activity and the protections that users can count on are primarily determined not by legislative bodies, but by industry self-regulation (discussed above) and by the implementation of internet standards by large and small tech companies. Google's Privacy Sandbox and Apple's App Tracking Transparency are particular examples, but new advertising-related proposals are widespread and may reshape how advertising is targeted, distributed and measured. These proposals are often developed and adopted inside companies or inside internet standards bodies like the IETF and W3C where consumer advocates are barely represented. CDT has a unique history as one of the few public interest voices in these fora, and we wish to grow this work at a critical time to advance privacy-preserving advertising that actually serves consumers' needs.

*Activities*:
- Work to standardize simple global opt-outs, including the Global Privacy Control.
- Support standardization (and improvement) of easy-to-understand privacy labels. These have seen recent uptake in mobile device app stores, but lack standardization or application to settings outside centralized control.
- Support mechanisms to address the priority question of ad measurement. Current privacy debates are stymied by advertisers' claims that they need to share users' data with third parties to measure the effectiveness of ads: advancing privacy-preserving methods for online measurement will help clear the way for stronger legislative protections.

9. **Explain why the organization is approaching the issue and/or opportunity in this way.**

Please see "Context" section for each goal outlined above.

10. **Identify and explain the range of funds required to effectuate the program or project request, on an aggregate and annual basis (if applicable), including how the money will be used.**

Requested Funding Amount: $3 million over 3 years ($1 million per year).

The money will be used to support the salaries of key personnel to conduct the activities described above, with some additional budget for travel and events. While we have broken out the three workstreams for clarity and explanation, they are highly complementary and part of an integrated strategy. For example, our industry-facing advocacy (Workstream 2) is most effective when it is backed by momentum in legislative and regulatory efforts (Workstream 1); and both our legislative/regulatory advocacy and industry-facing advocacy will be most effective if public interest voices have helped craft alternative, privacy-affirming models for advertising (Workstream 3).

| | | Year One | Year Two | Year Three | |
|---|---|---|---|---|---|
| **Workstream 1 (Policy)** | | | | | **W1 Total** |
| *Salary & Benefits* | Co-Director, Privacy & Data | $193,558 | $193,558 | $193,558 | **$1,044,271** |
| | Policy Counsel, Privacy & Data | $96,428 | $96,428 | $96,428 | |
| *Travel & Events* | | $5,000 | $5,000 | $5,000 | |
| *Overhead* | | $53,104 | $53,104 | $53,104 | |
| *Total* | | $348,090 | $348,090 | $348,090 | |
| **Workstream 2 (Industry Advocacy)** | | | | | **W2 Total** |
| *Salary & Benefits* | Senior Counsel, Privacy & Data | $131,215 | $131,215 | $131,215 | **$1,411,231** |
| | Senior Counsel, Privacy & Data | $131,215 | $131,215 | $131,215 | |
| | Senior Counsel, ESG | $131,215 | $131,215 | $131,215 | |
| *Travel & Events* | | $5,000 | $5,000 | $5,000 | |
| *Overhead* | | $71,765 | $71,765 | $71,765 | |
| *Total* | | $470,410 | $470,410 | $470,410 | |
| **Workstream 3 (Advertising)** | | | | | **W3 Total** |
| *Salary & Benefits* | Senior Technologist | $143,310 | $143,310 | $143,310 | **$544,498** |
| *Travel & Events* | | $10,500 | $10,500 | $10,500 | |
| *Overhead* | | $27,689 | $27,689 | $27,689 | |
| *Total* | | $181,499 | $181,499 | $181,499 | |
| | | **Year 1 Total $1,000,000** | **Year 2 Total $1,000,000** | **Year 3 Total $1,000,000** | **Grand Total $3,000,000** |

**11. Will the money be used to continue an existing project or create a new project?**

Grow CDT's existing Privacy & Data Program.

**12. What target population will your organization's project benefit?**

All people deserve and benefit from increased privacy protections, but the needs are particularly acute for historically marginalized communities, for whom new technologies and data use can drive discrimination and deepen inequality.

CDT prioritizes this lens of equity and justice across our work. Some examples include our focus on the implications of government surveillance for communities of color; the impact of student 'safety' monitoring technology on the privacy and civil rights of LGBTQ+ students, disabled students, and students of color; and the discriminatory effects of targeted advertising and the use of AI in hiring, lending, housing, credit, for historically marginalized communities.

A key way in which CDT works is by partnering with organizations that represent impacted communities to help them engage on tech policy issues. Our collaboration with the National Network to End Domestic Violence to combat abuse of Bluetooth location tracking devices is one example of this; we also have a joint fellow with the American Association of People with Disabilities, and work closely with a wide range of groups focused on racial justice, LGBTQ+ rights, immigrants' rights, workers' rights, reproductive rights, and the rights of older Americans.

We collaborate with these groups to identify problems, develop informed solutions, and increase the big tent of voices calling for stronger protections in how technology is designed and governed. This strategy has allowed CDT to successfully shift the concern of technical considerations from a focus on the owners, operators, and technology itself to a focus on the safety, dignity, and freedom of the users and impacted communities.

## III.   Evaluation

13. **Will your organization agree to provide a report to the Court and the parties every six months informing the Court and the parties of how any portion of the Settlement Fund allocated to it has been used and how remaining funds will be used?**

Yes. CDT has regular processes in place to track and report progress on allocated funds. We are the recipient of numerous foundation grants that require annual or semi-annual reporting, and are accustomed to generating mid-grant financial reports as well as substantive project updates.

14. **Describe how your organization will evaluate the success of the grant on enhancing or promoting the protection of internet privacy.**

CDT seeks to shape public policy decisions and change company practices to protect people's privacy, civil rights and civil liberties. These changes take time, so in addition to tracking outcomes we look to interim indicators of success.

For our policy work, these indicators include how often policymakers turn to CDT for expert advice, and how frequently our recommendations are reflected in policymakers' talking points, legislation, oversight letters, and executive actions. We also monitor how other public interest organizations cite CDT's work, adopt our arguments, seek advice, and join our advocacy letters.

For our direct-to-industry advocacy, our success indicators include how often companies turn to CDT and whether they act upon our recommendations. For example, whether CDT is invited to serve on companies' advisory councils and to brief internal teams, and how effective we are in those activities.

We actively track press hits, which includes major outlets like the Washington Post, New York Times, CNN, NBC, NPR and the AP. In addition to broad dissemination, we do targeted outreach to policymakers, companies, advocates and impacted communities, speaking at conferences or holding custom briefings.

In addition to routine tracking, each project has a monthly check-in with senior leadership to ensure projects are advancing on track towards their goals.

15. **Does your organization intend to use the results of the project in any publications, conference papers, and presentations?**

Yes. We anticipate publishing reports and shorter public-facing pieces (like op-eds and fact sheets) on topics such as best practices for companies to protect users' privacy, and recommended policy changes. We anticipate filing comments with relevant federal agencies to raise awareness of privacy harms, recommend agency interventions, and create an evidentiary record for change. We hope and expect that we may again be called to provide Congressional testimony.

CDT routinely engages with the press and uses short-form writing (op-eds, blogposts, social media posts) to raise public awareness about privacy harms and ways to address them.  We also give presentations and attend privacy-related conferences to advocate for strong privacy policies and protections.