# Exhibit 8



**Electronic Privacy Information Center**
1519 New Hampshire Avenue NW
Washington, DC 20036, USA

📞 +1 202 483 1140
🖨 +1 202 483 1248
🐦 @EPICPrivacy
🌐 https://epic.org

June 20, 2023

Ms. Tina Wolfson
Ahdoot & Wolfson, PC
2600 West Olive Avenue, Suite 500
Burbank, CA 91505

Mr. Michael W. Sobol
Lieff Cabraser Heimann & Bernstein, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111

Dear Tina and Michael,

I am writing to you on behalf of the Electronic Privacy Information Center ("EPIC"), a public interest research center in Washington, D.C., to applaud your important work on behalf of consumers in *In re: Google Location History Litigation*, 18-5062 (N.D. Cal.). This case is an important check on the misuse of user location data and plays an important role in enforcing and advancing consumer privacy rights nationwide, and we understand that there may be an opportunity to designate a *cy pres* recipient for any remainder funds after the class members receive payments in the case.

We hope that you will consider selecting EPIC as one of the beneficiary charities in this case if there is a remainder distributed via *cy pres*. EPIC routinely engages in research and advocacy to promote consumer privacy and provide important educational information about emerging privacy issues. Our work is cited and relied upon by policymakers, scholars, and privacy professionals around the world. We have defended consumer privacy in Congressional hearings and agency rulemakings involving the California Consumer Privacy Act, the Telephone Consumer Protection Act, the Electronic Communications Privacy Act, the Video Privacy Protection Act, the Federal Trade Commission Act, and many other privacy statutes, and funds directed to EPIC are sure to serve the interests of class members in this case. EPIC directs 83% of revenue to program activities—a top-tier standard for non-profit management.

EPIC has long supported the establishment and enforcement of a comprehensive consumer privacy framework in the United States. We believe that there should be strict limits on when consumer data can be collected, processed, used, and retained by social media networks and other entities. Over the last three decades, we have been very active in defending consumers from privacy violations online. We filed landmark complaints with the Federal Trade Commission about Facebook's deceptive privacy policies,[1] supported rulemaking efforts by privacy regulators in California and Colorado,[2] recently defended California's new Age-Appropriate Design Code against a challenge from the tech advocacy group NetChoice,[3] and more.

---

[1] *See* EPIC Complaint*, In re Facebook, Inc.*, FTC File No. 092-3184 (Dec. 17, 2009),
https://epic.org/wp-content/uploads/privacy/inrefacebook/EPIC-FacebookComplaint.pdf
[2] *See* EPIC, *California Consumer Privacy Regulations Go Into Force* (Mar. 31, 2023),
https://epic.org/california-consumer-privacy-regulations-go-into-force/
[3] *See* EPIC, *EPIC Leads Coalition Brief Defending California's New Age-Appropriate Design Code* (May 2, 2023), https://epic.org/epic-leads-coalition-brief-defending-californias-new-age-appropriate-design-code/

As part of these efforts, EPIC has done extensive work to protect individuals' location data—both with regard to Google's data practices specifically, and more generally. In 2017, we highlighted many of the privacy issues with Google's Web & App Activity in a complaint to the FTC. In particular, we explained why Google's secret purchase-tracking algorithm was an unfair trade practice and highlighted the fact that "there appear[ed] to be no mechanism by which Google users [could] opt out of purchase tracker other than by disabling location tracking entirely.[4] Accordingly, we argued that "The need for Google users to opt out of location tracking to avoid in-store purchase tracking [was] misleading because a reasonable consumer would have no reason to know that the latter relies on the former."[5]

In January 2022, attorneys general from the District of Columbia, Texas, Washington, and Indiana sued Google, alleging that the company used dark patterns to repeatedly nudge users to provide more location data.[6] This lawsuit targeted some of the problematic data collection settings we had raised in our 2017 complaint, demonstrating EPIC's vigilance and early detection of Google's unfair and deceptive location data practices.

Years later, we recognize that users' sensitive location data has only become further imperiled in the aftermath of the Supreme Court's decision in *Dobbs* last summer. That's why we worked with worked with a coalition of over 70 organizations to send a letter to Sundar Pichai, the CEO of Google, in June 2022, calling on the company to end its collection and retention of users' location data. We explained that because "law enforcement officials routinely obtain court orders forcing Google to turn over its customers' location information," Google should not "allow its online advertising-focused digital infrastructure to be weaponized against people seeking abortions."[7]

Aside from closely scrutinizing Google's location data practices, we also strive to stop other apps and entities from collecting and selling location data without users' consent. In 2017, through a security researcher's investigation, we learned that a popular weather app was not only tracking the locations of consumers who had already expressly opted out of location tracking, but also misleading consumers by sending their personal location data to third-party companies for targeted advertising.[8]

Soon after this discovery, in 2018, EPIC brought the first location data tracking lawsuit under the D.C. Consumer Protection Procedures Act against AccuWeather International, Inc., alleging that the company engaged in unlawful and deceptive practices in tracking consumers' locations. Following our lawsuit, AccuWeather overhauled its app and changed its location tracking practices, including by separating location service controls for functional purposes and for advertising purposes.[9] We were pleased to see these changes and believe they are necessary to put users in control of their own cell phone location data.

---

[4] *See* EPIC Complaint to the FTC, *In re Google Purchase Tracking* (July 31, 2017), https://epic.org/wp-content/uploads/privacy/ftc/google/EPIC-FTC-Google-Purchase-Tracking-Complaint.pdf
[5] *Id.*
[6] *See* EPIC, *States Sue Google for Using Dark Patterns & Deception to Amass Location Data* (Jan. 24, 2022), https://epic.org/states-sue-google-for-using-dark-patterns-deception-to-amass-location-data/
[7] *See* Coalition Letter to Google on Location Data and Abortion Access (June 1, 2022), https://epic.org/wp-content/uploads/2022/06/Letter-to-Google-on-Location-Data-and-Abortion-Access-06-01-2022.pdf
[8] *See* EPIC, *EPIC v. AccuWeather* (2018), https://epic.org/documents/epic-v-accuweather/
[9] *Id.*

In another case, *EPIC v. DOJ*, No. 18-1814 (D.D.C.), we sought the public release of information detailing the Department of Justice's collection of cell site location information (CSLI) through § 2703(d) court orders. As CSLI can reveal the most intimate details of an individual's everyday life—from religion to political beliefs to health conditions—EPIC was interested in learning more about the DOJ's use of cell site location information for law enforcement investigations. In our initial FOIA request, we explained that we sought to "determine the use, effectiveness, cost, and necessity in the collection and use of cell site location information so that the public, lawmakers, and the courts may have a better understanding of the use of this investigative technique."[10]

Months later, as a result of our lawsuit, the DOJ agreed to provide a detailed breakdown of the total number of applications, orders, and warrants for cell phone location data under § 2703(d) from five U.S. Attorney's Offices between 2016 and 2019. As prosecutors currently do not release any comprehensive or uniform data about their surveillance of cell phone location data, we compiled the information we received from the DOJ in a comparative table for each district.[11] Interestingly, we found that the U.S. Attorney's Office for the District of Rhode Island and the U.S. Virgin Islands—two of the smallest offices in the country—had sought warrants for location data information during the specified period of time. Moving forward, we intend to continue to increase transparency and hold both private companies and federal agencies accountable for their collection of location data.

In addition to litigation, EPIC also takes other actions to demand better protections for consumer location data, such as pursuing regulatory changes. While the Federal Communications Commission has inquired into mobile carriers' data privacy policies for geolocation data, EPIC believes it has yet to adequately address the lack of protections for such data.[12] As such, EPIC has raised to the Commission the need for greater protections and called for a rulemaking on location privacy for telecommunications carriers as part of its efforts to establish stronger privacy safeguards for location data.

EPIC has also recently been leading the charge for the FTC to enact commercial surveillance rules, which would place stricter limits on Google and other companies' collection and use of personal data. In August 2022, the FTC announced that it would conduct its first-ever rulemaking on commercial surveillance and data security.[13] EPIC has long called on the FTC to use its rulemaking authority to safeguard privacy and civil rights. This includes EPIC's 2021 report to the FTC observing that "[t]he Commission's repeated failure to take meaningful enforcement action and to

---

[10] *See* EPIC, *EPIC v. DOJ (CSLI Section 2703(d) Orders)* (2021), https://epic.org/documents/epic-v-doj-csli-section-2703d-orders/

[11] *Id*.

[12] *See* Chris Frascella, *Greater Legal Protections Needed for Phone Geolocation Data* (Nov. 28, 2022), https://epic.org/greater-legal-protections-needed-for-phone-geolocation-data/

[13] *See* FTC, *FTC Explores Rules Cracking Down on Commercial Surveillance and Lax Data Security Practices* (Aug. 11, 2022), https://www.ftc.gov/news-events/news/press-releases/2022/08/ftc-explores-rules-cracking-down-commercial-surveillance-lax-data-security-practices

block harmful mergers has allowed abusive data practices by … Google[] and industry giants to flourish."[14]

In response to the FTC's announcement of the proposed rulemaking, EPIC submitted a 230-page comment that provides an overview of the systems that facilitate commercial surveillance, the injuries they inflict on consumers, and the regulatory steps the Commission should take.[15] Once again, EPIC used this report to focus both the Commission and the public's attention on the concerning surveillance practices in place at Google and other technology companies. In particular, we demonstrated why a data minimization rule is necessary when companies like Google "collect[] data points on every click, every piece of content viewed, and every search query … to keep the commercial surveillance cycle going."[16]

We believe EPIC's past work to protect user location data serves as clear evidence of our alignment with the class members and our commitment both to holding Google accountable and to protecting consumer privacy more broadly. EPIC's staff are also frequently cited as experts in major publications, including *Forbes*[17] and *The Wall Street Journal,*[18] where we recently highlighted concerns about Google user privacy and called for stronger protections.

Courts have approved EPIC as a *cy pres* recipient in many consumer privacy cases, including *Mirfasihi v. Fleet Mortgage Corp.*, 03-1069 (N.D. Ill.); *Perkins v. LinkedIn Co*., No. 13- 4304 (N.D. Cal.); *In re: Vizio, Inc. Consumer Privacy Litigation*, 8:16-ml-2693 (C.D. Cal.) (SCA & Wiretap Act); *Abramson v. American Advisors Group, Inc.*, 19-cv-1341 (W. D. Pa.) (TCPA); *Dolemba v. Champion Roofing*, LLC, 19-cv-7139 (N.D. Ill.) (TCPA); *William Harrison v. The Irvine Company LLC*, 30-2018-00978745 (Orange Cty. Sup. Ct.) (FACTA & FCRA); *Craftwood Lumber Co. v. Senco Brands, Inc.*, 14-cv-06866 (N.D. Ill.) (TCPA); *Lopez v. Superior Health Linens, LLC*, 19-cv-02390 (N.D. Ill.) (BIPA); *West Loop Chiropractic & Sports Injury Center, Ltd., et al. v. North American Bancard, LLC*, 16-cv-5856 (N.D. Ill.) (TCPA); *In re Google Plus Profile Litigation*, 18-6164 (N.D. Cal.) (data breach); *In re: Google Street View*, 10-2184 (N.D. Cal.) (Wiretap Act); and *Krakauer v. Dish*, 1:14-cv-333 (M.D.N.C.) (TCPA).

In *Perkins v. LinkedIn Co*., the court found that EPIC is a "well-established and respected organization within the field of internet privacy" and is thus "well-suited to be a *cy pres* recipient." In *Mirfasihi v. Fleet Mortgage Corp.*, the court found that a *cy pres* distribution to EPIC "did cause

---

[14] *See* EPIC, *What the FTC Could Be Doing (But Isn't) to Protect Privacy* (June 2021), https://epic.org/wp-content/uploads/privacy/consumer/EPIC-FTC-Unused-Authorities-Report-June2021.pdf
[15] *See* EPIC, *Disrupting Data Abuse: Protecting Consumers from Commercial Surveillance in the Online Ecosystem* (Nov. 2022), https://epic.org/documents/disrupting-data-abuse-protecting-consumers-from-commercial-surveillance-in-the-online-ecosystem/
[16] *Id*.
[17] *See* Thomas Brewster, *Cops Turn To Google Location Data To Pursue A Death Penalty For 2015 Murder* (July 28, 2022), https://www.forbes.com/sites/thomasbrewster/2022/07/28/google-geofence-warrant-could-help-sentence-two-murder-suspects-to-death/
[18] *See* John McKinnon, *Google Reaches $391.5 Million Settlement With States Over Location Tracking Practices* (Nov. 14, 2022), https://www.wsj.com/articles/google-reaches-391-5-million-settlement-with-states-over-location-tracking-practices-11668444749

an improvement in the settlement that provides additional benefits to the plaintiffs and to the community."

EPIC satisfies the two key requirements for a distribution of *cy pres* funds in a consumer privacy case: EPIC is both aligned with the interests of class members and advances the aims of the underlying litigation. Additionally, EPIC has had a strict independence policy since its inception and does not accept donations or sponsorships from corporations or government entities. This sets EPIC apart from many other organizations and ensures that our position is always based solely on the public interest.

We hope you will consider EPIC for a *cy pres* remainder designation in *In re: Google Location History Litigation*, 18-5062 (N.D. Cal.). Please feel free to contact us if you would like any additional information. I can be reached at 202-483-1140 x103.

Sincerely,

Alan Butler
EPIC Executive Director