# Exhibit 18



October 5, 2023

# Privacy Rights Clearinghouse *Cy Pres* Award Proposal:
## *In re Google Location History Litigation*

Thank you for inviting Privacy Rights Clearinghouse to submit a *cy pres* award proposal in the *In re Google Location History Litigation* settlement. Please see the information below regarding our organization, grant proposal, and commitment to evaluating the success of any project funded by a *cy pres* award.

## Organization Information

Privacy Rights Clearinghouse (PRC) is an independent 501(c)(3) nonprofit organization. Our mission is to increase access to information, policy discussions, and meaningful rights so that data privacy can be a reality for everyone.

**History**

Privacy Rights Clearinghouse was one of the first, and remains one of few, organizations focused exclusively on consumer privacy rights and issues. The organization serves as a longstanding leader in data privacy education and advocacy.

From our founding in 1992 until 1996, PRC was a program of the University of San Diego School of Law's Center for Public Interest Law. Our team operated a telephone help hotline and published printed educational fact sheets—assisting tens of thousands of individuals.

From 1996 until 2014, PRC was a fiscally sponsored program of the Utility Consumers' Action Network. We launched and built out our widely-recognized educational website (privacyrights.org) with detailed content covering laws, rights, and issues as they emerged in response to technological and societal changes. Our founder, Beth Givens, was among the first advocates to raise public awareness of identity theft and create a program to provide direct victim assistance. She also recognized the impact of corporate data practices on individuals' lives and began tracking data breaches in 2005. Our Data Breach Chronology project has informed the work of advocates, researchers, and policymakers for almost two decades.

In 2014, PRC became an independent 501(c)(3) nonprofit organization. Our team developed an online consumer complaint center to better inform our education and advocacy priorities, published an early and widely cited report examining the privacy practices of health and fitness

apps, studied data broker privacy policies and practices, and has continued to serve as an expert voice in data privacy advocacy in California and nationally. To this day, PRC continues to adapt to the evolving privacy landscape and build upon our founding principles and body of work.

**Current Goals**

Privacy Rights Clearinghouse was founded on the belief that people deserve the opportunity to be informed of their rights and be heard by those who represent them.  This continues to serve as our team's motivation as we work toward a future where privacy rights are meaningful and accessible to all people, available choices are clear, and both are reflected in the products and services people use and interact with on a daily basis.

**Current Programs**

*Consumer Education and Outreach*

PRC increases access to understandable information and expands public understanding of existing data privacy rights and choices by

- Publishing clear overviews of complex data privacy laws
- Creating educational resources that provide context for rights and choices that lie at the intersection of data privacy and health, employment, finance, education, and housing
- Engaging in community outreach

*Consumer and Policy Advocacy*

PRC advocates to defend and advance consumer data privacy protections by

- Providing policy analysis and input at the state and national level, with a focus on agency proceedings
- Focusing strategic advocacy in California, a state that has long served as a driver of data privacy protections nationwide
- Coordinating advocates to enhance their public policy capacity for consumer data privacy issues that impact those they represent

*Privacy Research Tools*

PRC provides researchers, journalists, policymakers, and advocates with access to issue-relevant data and information to better and more efficiently understand data privacy issues by

- Building databases and interactive tools to help analyze the data
- Publishing reports analyzing emerging issues and trends

***Cy Pres* Awards**

*Cy pres* awards are a critical source of funding for our organization, and PRC is in a strong position to benefit the class in privacy-related settlements. We focus exclusively on consumer data privacy with no competing priority issues, and we accept funding only from sources that align with our mission.

Over the past decade, PRC has received the *cy pres* awards listed below.

**2023**

*IN RE PLAID INC. PRIVACY LITIGATION*, 4:20-cv-03056, (N.D. Cal.) Plaintiffs alleged that defendant used consumers' banking login credentials to harvest and sell detailed financial data without their consent. In October 2023, PRC will receive funds to support our programs.

*In re Toll Roads Litigation*, No. 8:16-00262-ODW (ADSx) (C. D. Cal.) Plaintiffs alleged that defendants improperly provided personally identifiable information to third parties in violation of California Streets and Highways Code § 31490. PRC will receive funds in October 2023.

**2022**

*Larson v. Harman-Management Corp.* Plaintiffs alleged that Harman sent unauthorized, automated text messages to class members' cell phones in violation of the Telephone Consumer Protection Act. PRC received $27,876.09 for general program support.

*Bailey v. Great America LLC, d/b/a Six Flags Great America,* No. 17 CH 1118 (19th Jud. Cir. Lake Cnty., Ill.) Plaintiffs alleged defendants violated the Fair and Accurate Credit Transactions Act. PRC received $584.80 for general program support.

**2021**

*Vizio, Inc., Consumer Privacy Litigation,* 8:16-ml-02693, (C.D. Cal.) Plaintiffs alleged that defendant violated the Video Privacy Protection Act. PRC received $12,357.80 and used the funds to publish educational materials.

*Hashw v. Dep't Stores Nat'l Bank,* No. 0:13-cv-00727-RHK-BRT (D. Minn.). Plaintiffs alleged that defendant violated the Telephone Consumer Protection Act. PRC received $136,371.03 for general program support.

*Virgine v. CR England* No. 1:19-cv-02011-SEB-MJD (S.D. Ind.) Plaintiffs alleged that defendant violated the Telephone Consumer Protection Act. PRC received $7,208.73 for general program support.

**2020**

*Robert Cohen v. Foothill Eastern Transportation Corridor Agency,* 8:15-cv-01698, (C.D. Cal.) Plaintiffs alleged that defendants violated the Fair Credit Reporting Act. PRC received $6,447.86 for general program support.

*Simms v. ExactTarget LLC,* No. 1:14-cv-00737-WTL-DKL (S.D. Ind.) Plaintiffs alleged that defendants violated the Telephone Consumer Protection Act. PRC received $27,624.43 for general program support.

*Seegert v. P.F. Chang's China Bistro, Inc., et al*, No. 37-2017-00016131-CU-MC-CTL (Cal. Super. Ct., San Diego Cnty.)  Plaintiffs alleged that defendant violated the Song-Beverly Credit Card Act. PRC received $30,838.97 for general program support.

*Johnson v. American Finance & Associates Corp and Does 1-50*, Case No. 56-2013-00436494-CU-BT-VTA. PRC received $1,580.44 for general program support.

**2019**

*In Re: Collecto, Inc., Telephone Consumer Protection Act (TCPA) Litigation,* 1:14-md-02513, (D. Mass.) Plaintiffs alleged that defendant violated the Telephone Consumer Protection Act. PRC received $166,674 for general program support.

*Gutierrez-Rodriguez v. R.M. Galicia, Inc.,* 3:16-cv-00182, (S.D. Cal.) Plaintiffs alleged that defendant violated the Telephone Consumer Protection Act. PRC received $33,119.42 for general program support.

*Connolly v. Umpqua Bank,* NO. 2:15-CV-00517-TSZ (U.S. Dist. Ct., W.D. Wash.) Plaintiffs alleged that Umpqua violated the Fair Credit Reporting Act. PRC received $10,409.67 to publish educational materials.

**2018**

*Robinson v. Paramount Equity Mortgage*, No. 2:14-cv-02359-TLN-CKD (U.S. Dist. Ct., E.D. Cal.) Plaintiffs alleged that Paramount Equity called individuals for marketing purposes without prior express written consent and called individuals registered on the Do Not Call Registry without prior consent. PRC received $411,014.67 for general program support.

*Mount v. Wells Fargo Bank, N.A.*, No. BC395959 (Super. Ct. Cal., County of Los Angeles) Plaintiffs alleged that Wells Fargo illegally recorded customer service phone calls. PRC received $46,665.26 for general program support.

**2016**

*People of Calif. v. Wells Fargo Bank, N.A.*, No. BC611105 (Super. Ct. Cal., County of Los Angeles) Wells Fargo settled claims brought by the California Attorney General and five other state regulators alleging that the bank failed to properly notify consumers that their phone calls were being recorded. PRC received $250,000.00 for general program support.

*Stone v. Howard Johnson International Inc*., No. 12-cv-01684 (U.S. Dist. Ct., C.D. Cal.) Plaintiffs alleged that Howard Johnson illegally recorded telephone calls without the consent of the caller. PRC received $54,557.49 for general program support.

*Doe v. Twitter*, No. CGC-10-503630 (Super. Ct. Cal., County of San Francisco) Plaintiffs alleged that Twitter violated users' privacy rights by disclosing full names of users without warning, sharing users' public Tweets and public profile information with third parties without adequate disclosure, and failing to adequately warn or instruct users that their Tweets would be public by default. PRC received $302,914.26 for general program support.

**2015**

The Digital Trust Foundation (created from settlement funds in an action concerning Facebook's "Beacon" program) funded projects and initiatives to "promote the cause of online privacy, safety, and security." PRC submitted a proposal and was awarded $275,000.00 to design and publish new educational materials, redesign the organization's website to improve usability, build outreach capacity, and hire a staff outreach coordinator.

*Nicolucci v. Sephora USA, Inc.*, No. CGC-11-508450 (Super. Ct. Cal., County of San Francisco) Plaintiffs alleged that Sephora illegally collected customers' zip codes, putting consumers at risk of possible identity theft and fraud. PRC received $105,330.00 for general program support.

**2014**

*In. re: Netflix Privacy Litigation*, No. 5:11-cv-00379 (U.S. Dist. Ct., N.D. Cal.) Plaintiffs alleged that Netflix violated the Video Privacy Protection Act by storing the financial information and viewing history of former customers who had canceled their accounts. PRC received $175,558.50 to publish educational materials on mobile payment systems, mobile apps, data brokers, and location-based services.

*Holmes v. NCO Financial Systems, Inc.*, No. 11-56969 (U.S. Ct. App., 9th Cir.) Plaintiffs alleged that NCO Financial Systems violated the Fair Debt Collection Practices Act by contacting individuals whose debts were contested. PRC received $20,924.06 for general program support.

**2013**

*Syran v. LexisNexis Group*, No. 05-cv-0909-LAB-KSC (U.S. Dist. Ct., S.D. Cal.) Plaintiffs alleged that LexisNexis violated various federal (including Fair Credit Reporting Act) and California (including California's Information Practices Act) statutes and common law rights when information about plaintiffs and other consumers was obtained by unauthorized persons. PRC received $172,805.75 for general program support.

*Kaye et. al. v. Aesthera Corp,* No. 3:09-cv-01947 (U.S. Dist. Ct., Conn.) Plaintiffs alleged that Aesthera sent unsolicited facsimile advertisements in violation of the Telephone Consumer Protection Act. PRC received $5,012.44 for general program support.

*Wang v. Asset Acceptance, et. al.*, No. 09-4797 (U.S. Dist. Ct., N.D. Cal.) Plaintiffs alleged that Asset Acceptance violated the California Consumer Credit Report Agencies Act and the Fair Credit Reporting Act when it placed debts on plaintiffs' credit reports without reporting that the alleged debts were disputed. PRC received $130,025.39 for general program support.

*Main et. al. v. Wal-Mart Stores, Inc.*, No.: 3:11-cv-01919-JSW (U.S. Dist. Ct., N.D. Cal.) Plaintiffs alleged that defendant violated the Song-Beverly Act. PRC received $368,512.50 for general program support.

**Charity Navigator Rating**

Privacy Rights Clearinghouse has been rated a four-star charity by Charity Navigator with a 97% rating.

# Grant Proposal

**Project Director**

Meghan Land, Executive Director

**Project Summary**

The internet plays a role in nearly every aspect of people's daily lives in the U.S. Its ubiquity means that the internet not only affects people's privacy when they actively engage online, but it also influences how data is collected, shared, sold, and stored in ways that affect health, education, finances, safety, employment, and the ability to obtain housing in people's physical lives.

PRC promotes the protection and advancement of internet privacy through each of our programs. Generally speaking, our approach is to listen to people and those who represent them, identify patterns, research and analyze the issue and existing protections, inform people, and advocate where we see gaps. Our organization's work is intended to benefit U.S. consumers, and will specifically benefit the class and advance internet privacy by providing access to information about data privacy rights for individuals and the community organizations that serve them directly, creating data-privacy-centered resources to inform public policy and privacy research, and advancing access to privacy rights for all people.

With the funds requested, PRC will be able to accomplish the following over a three-year period. Please note that we are able to scale this proposal up or down depending on available *cy pres* funds.

1. **Enhance Educational Content and Outreach Capacity**

    a. *Expand and update published consumer education materials*

    All educational materials we publish on privacyrights.org are free and licensed under Creative Commons so they may be widely shared. They can stand alone (to provide brief answers to questions, for instance) or be used in combination with one another to create a custom or more comprehensive resource. With the funding requested, we will be able to accomplish the following over the course of three years.

    > *Privacy Law Overviews.* Our goal is to have a consumer-focused overview of every U.S. privacy law available on our site by 2026. These overviews are intended to help advocates and direct service organizations, journalists, researchers, and interested individuals better understand existing data privacy rights. They require issue expertise, legal research, and continuous updating.

*Common Data Privacy Q/A.* We regularly publish common questions and answers we have received from individuals and their advocates over the years. These are intended to help those seeking a quick answer or starting point and are typically accessed by online search. Our goal is to have staff capacity to publish, update, and communicate these on a monthly basis.

*Know Your Rights.* We publish these to help people understand privacy rights in context. Our goal is to have staff capacity to publish one of these each month, and review for updates and accuracy on an annual basis.

*Guides*. These publications are intended to provide people with actionable instructions for exercising a privacy right or making a choice grounded in privacy rights. Our goal is to publish these in conjunction with the Privacy Law Overviews.

b. *Build outreach capacity*

We will expand our team to enhance community outreach capacity, allowing us to dedicate more resources to building strong relationships with community-based organizations. Our goal is to understand how internet-privacy-related issues affect individuals' lives and create helpful and actionable resources with the input of those who work with them directly.

In addition to new resources on privacyrights.org, deliverables may include presentations and custom content for community-based organizations on internet-related privacy issues, choices, rights that are important to the populations they serve.

c. *Improve website and content design and development*

We will improve our website accessibility and add translation capability and/or possibly create materials in additional languages and media formats.

2. **Support and Enhance Consumer and Policy Advocacy**

    a. *Advocate for strong privacy protections and improved data practices*

    In addition to our current work, funding will allow us to increase our capacity to analyze and weigh in on federal and state policy proceedings such as agency rulemakings and calls for comment. We will also expand our reach among advocates focusing on issues that intersect with data privacy to build issue understanding that helps drive positive change.

    b. *Offer paid legal internships*

    We maintain a competitive legal internship program and are committed to providing an experience that equips students with privacy law knowledge and consumer advocacy skills regardless of their career paths after law school. Funding will allow us to pay interns for their meaningful contributions rather than relying on course credit alone.

3. **Improve Existing Research Tools and Create New Tools and Reports**

   A critical aspect of promoting consumer privacy, particularly with respect to internet privacy, is gaining a better understanding of how personal data is collected, stored, shared, and protected. Through this program, our team builds and maintains issue-relevant databases, creates interactive dashboards, and writes reports to inform the work of researchers, advocates, journalists, and policymakers to better understand data privacy and its impacts on individuals.

   a. *Maintain and improve PRC's Chronology of Data Breaches and Data Broker Directory, and possibly develop new tools and databases based on identified needs during the funding period*

      With the funding requested, we will create a data science fellowship or staff position (depending on funding received) to enhance these projects.

      We prioritize issues surrounding data breach and data brokers (companies that collect and sell consumer data that is often generated online—such as geolocation data—without ever interacting with individuals). Both issues influence and are heavily influenced by internet privacy protections.

      Our Chronology of Data Breaches provides information on reported consumer data breaches in the U.S. since 2005. It is the only publicly available resource of its kind. Since its relaunch in April 2023, the interactive dashboard has been accessed over 80,000 times and we have provided the underlying database to over 100 academic researchers.

      Our Data Broker Directory will be redesigned and relaunched in early 2024, and provides information on data brokers that have registered in California and Vermont (the two states with registration requirements). The purpose of this resource is to take largely unusable registration information, and develop a resource that can be used to better understand the data broker industry and practices.

   b. *Publish new reports and update existing reports on an annual basis*

      We publish reports and comparative visual dashboards on various privacy laws and issues to help advocates and policymakers understand where strengths and gaps exist for consumers. We currently have consumer-focused reports on data breach notification laws and data broker registration, and we have a report in progress that

will analyze student data privacy protections in higher education focused on online courseware and digital instructional materials.

Funding will support annual updates to our existing reports as well as the legal, technical, communications, and design expertise needed to identify needs and generate new reports.

**Project Funds Requested**

We have outlined a proposal that we can easily scale up or down based on available *cy pres* funding. The amounts requested include all staff, contractors, services, and materials necessary to accomplish the work summarized above over the course of three years.

| Program | Activity | Year 1 | Year 2 | Year 3 | Total |
|---|---|---|---|---|---|
| **Consumer Education and Outreach** | Research, educational content publication | $115,000 | $115,000 | $115,000 | $345,000 |
| | Website and content design and development | $80,000 | $40,000 | $40,000 | $160,000 |
| | Community outreach and external communications | $55,000 | $95,000 | $95,000 | $245,000 |
| **Consumer and Policy Advocacy** | Policy research, analysis, advocacy | $115,000 | $115,000 | $115,000 | $345,000 |
| | Paid legal internship program | $35,000 | $35,000 | $35,000 | $105,000 |
| **Research Tools and Reports** | Database design, development, maintenance, and management | $100,000 | $100,000 | $100,000 | $300,000 |
| | Interactive dashboard design, creation, improvements, maintenance | $50,000 | $50,000 | $50,000 | $150,000 |
| | Report research, publication, communications | $100,000 | $100,000 | $100,000 | $300,000 |
| **Total** | | $650,000 | $650,000 | $650,000 | **$1,950,000** |

## **Evaluation**

If funded, Privacy Rights Clearinghouse will provide the Court and parties with a report every six months informing them of how any portion of the Settlement Fund has been used, of deliverables that have been completed, and how remaining funds will be used. We also plan to publish any written product we create as part of this proposal, and it is likely we would use at least one to form the basis of conference or community presentations.

We will continually evaluate our project and program success using a combination of quantitative and qualitative measures.  We will

- design new or modified initiatives with input from the project's target audience or audiences to form a baseline against which to measure success;
- solicit formal feedback from target audiences annually and informal feedback on a more frequent basis, and include questions and discussion specific to internet privacy and the interests of the class; and
- measure the number of people we reach through various communications channels; people who might benefit from advocacy efforts; and researchers, policymakers, journalists, and advocates using our information and data to inform their published work.