LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
Michael W. Sobol (SBN 194857)
msobol@lchb.com
Melissa Gardner (SBN 289096)
mgardner@lchb.com
Michael Levin-Gesundheit (SBN 292930)
mlevin@lchb.com
Michael K. Sheen (SBN 288284)
msheen@lchb.com
Jallé H. Dafa (SBN 290637)
jdafa@lchb.com
John D. Maher (SBN 316157)
jmaher@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: 415.956.1000
Facsimile: 415.956.1008

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
Nicholas Diamand (*pro hac vice*)
250 Hudson Street, 8th Floor
New York, NY 10013
Telephone: 212.355.9500
Facsimile: 212.355.9592

*Interim Co-Lead Class Counsel*

AHDOOT & WOLFSON, PC
Tina Wolfson (SBN 174806)
twolfson@ahdootwolfson.com
Theodore Maya (SBN 223242)
tmaya@ahdootwolfson.com
Bradley K. King (SBN 274399)
bking@ahdootwolfson.com
Henry J. Kelston (*pro hac vice*)
hkelston@ahdootwolfson.com
Deborah De Villa (SBN 312564)
ddevilla@ahdootwolfson.com
2600 West Olive Avenue, Suite 500
Burbank, California 91505
Tel: 310.474.9111
Fax: 310.474.8585

*Interim Co-Lead Class Counsel*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE: GOOGLE LOCATION HISTORY LITIGATION | Case No. 5:18-cv-05062-EJD |
| | **NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| | Dept: Courtroom 4 - 5th Floor |
| | Judge: Hon. Edward J. Davila |
| | Date: April 18, 2024 |
| | Time: 9:00 A.M. |
| | [Declaration of Cameron R. Azari, Esq. and Joint Declaration of Tina Wolfson and Michael W. Sobol, filed concurrently herewith] |

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that on April 18, 2024, at 9:00 a.m., in Courtroom 4 of the United States District Court for the Northern District of California, Robert F. Peckham Federal Building & United States Courthouse, 280 South First Street, San Jose, California 95113, the Honorable Edward J. Davila presiding, Plaintiffs[1] will and hereby do move for an order pursuant to Rule 23 of the Federal Rules of Civil Procedure: (i) granting final approval of the proposed Class Action Settlement and Release Agreement (Dkt. 328-1) (the "Settlement" or "Settlement Agreement"); (ii) certifying the Settlement Class; (iii) overruling the objections of objectors John Andren, Matthew Lilley, and Joseph St. John (Dkt. 354); and (iv) entering final judgment.

Plaintiffs' motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities set forth below, the Joint Declaration of Tina Wolfson and Michael W. Sobol in Support of Plaintiffs' Motion for Final Approval of Proposed Class Action Settlement ("Joint Declaration"), the Settlement Agreement, the Declaration of Cameron R. Azari, Esq. ("Azari Declaration"), the pleadings and records on file in this Action, and other such matters and argument as the Court may consider at the hearing of this Motion.

## STATEMENT OF ISSUES TO BE DECIDED

1. Whether the Settlement is fair, reasonable, and adequate and should be approved under Rule 23(e) and controlling Ninth Circuit authority.

2. Whether the Settlement Class should be certified under Rules 23(a) and 23(b)(3).

3. Whether the appointment of Ahdoot Wolfson, P.C. and Lieff Cabraser Heimann & Bernstein LLP as Class Counsel should be affirmed.

4. Whether the appointment of Plaintiffs Napolean Patacsil, Noe Gamboa, and Michael Childs as Settlement Class Representatives should be affirmed.

---

[1]  All capitalized words and terms are defined in the Settlement Agreement (Section II) unless otherwise defined herein.

1    Dated: March 25, 2024                         Respectfully submitted,

2
                                                   By: /s/ Tina Wolfson
3                                                  **AHDOOT & WOLFSON, PC**
                                                   Tina Wolfson (SBN 174806)
4                                                  twolfson@ahdootwolfson.com
                                                   Theodore Maya (SBN 223242)
5                                                  tmaya@ahdootwolfson.com
                                                   Bradley K. King (SBN 274399)
6                                                  bking@ahdootwolfson.com
                                                   Henry J. Kelston (pro hac vice)
7                                                  hkelston@ahdootwolfson.com
                                                   Deborah De Villa (SBN 312564)
8                                                  ddevilla@ahdootwolfson.com

9                                                  2600 West Olive Avenue, Suite 500
                                                   Burbank, California 91505
10                                                 Tel: 310.474.9111
                                                   Fax: 310.474.8585
11

12   Dated: March 25, 2024

13                                                 By: /s/ Michael W. Sobol
                                                   **LIEFF CABRASER HEIMANN &**
14                                                 **BERNSTEIN, LLP**
                                                   Michael W. Sobol (SBN 194857)
15                                                 msobol@lchb.com
                                                   Melissa Gardner (SBN 289096)
16                                                 mgardner@lchb.com
                                                   Michael Levin-Gesundheit (SBN
17                                                 292930)
                                                   mlevin@lchb.com
18                                                 Michael K. Sheen (SBN 288284)
                                                   msheen@lchb.com
19                                                 Jallé H. Dafa (SBN 290637)
                                                   jdafa@lchb.com
20                                                 John D. Maher (SBN 316157)
                                                   jmaher@lchb.com
21                                                 275 Battery Street, 29th Floor
                                                   San Francisco, CA 94111
22                                                 Telephone: 415.956.1000
                                                   Facsimile: 415.956.1008
23
                                                   **LIEFF CABRASER HEIMANN &**
24                                                 **BERNSTEIN, LLP**
                                                   Nicholas Diamand (pro hac vice)
25                                                 250 Hudson Street, 8th Floor
                                                   New York, NY 10013
26                                                 Telephone: 212.355.9500
                                                   Facsimile: 212.355.9592
27
                                                   *Interim Co-Lead Class Counsel*
28

# **TABLE OF CONTENTS**

**Page**

NOTICE OF MOTION AND MOTION...................................................................................ii

STATEMENT OF ISSUES TO BE DECIDED .....................................................................ii

I.    INTRODUCTION ...........................................................................................................1

II.   BACKGROUND .............................................................................................................1

    A.    Procedural History.............................................................................................1

    B.    Summary of the Settlement ...............................................................................2

    C.    Class Notice and CAFA Notice .........................................................................5

    D.    Attorneys' Fees and Expenses, and Plaintiff Service Awards ...........................5

    E.    Class Member Response.....................................................................................6

III.  ARGUMENT ..................................................................................................................6

    A.    The Court Should Certify the Settlement Class .................................................6

        1.    Rule 23(a): Numerosity, Commonality, Typicality, and Adequacy Are Satisfied .........................................................................................6

        2.    Rule 23(b)(3): Predominance and Superiority Are Satisfied ...................10

        3.    Rule 23(g): The Court Should Reaffirm the Appointment of Class Counsel and the Class Representatives ......................................11

    B.    The Court Should Grant Final Approval to the Settlement................................12

        1.    Rule 23(e)(2)(A): The Class Representatives and Class Counsel Have Adequately Represented the Class................................................13

        2.    Rule 23(e)(2)(B): The Proposed Settlement Was Negotiated At Arm's Length.....................................................................................14

        3.    Rule 23(e)(2)(C): The Relief Provided for the Class is Adequate ...........14

            a.    *23(e)(2)(C)(i): Costs, Risks, and Delay of Trial and Appeal* ......14

            b.    *23(e)(2)(C)(ii): Effectiveness of Distribution* ..............................16

                i.    *Cy Pres* Awards are Compensation to the Class ..............17

                ii.    *Cy Pres* Awards Do Not Violate the First Amendment ......................................................................20

                iii.    The Proposed *Cy Pres* Recipients Are Appropriate .........21

            c.    *23(e)(2)(C)(iii)Terms of Proposed Attorneys' Fees* ....................23

            d.    *23(e)(2)(C)(iv)Agreements Under Rule 23(e)(3)* .........................24

        4.    Rule 23(e)(2)(D): The Proposed Settlement Treats Class Members Equitably Relative to Each Other. ............................................24

    C.    The Court Should Grant Class Counsel's Fee Request .......................................25

IV.  CONCLUSION ..............................................................................................................25

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**                                                                                          **Page(s)**

*Abante Rooter & Plumbing, Inc. v. Pivotal Payments Inc.*,
   No. 16-05486, 2018 WL 8949777 (N.D. Cal. Oct. 15, 2018) ...................................................... 10

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ................................................................................................................... 6

*Briseno v. Henderson*,
   998 F.3d 1014 (9th Cir. 2021) ........................................................................................... 13, 14

*Brown v. Google, LLC*,
   No. 20-03664, 2022 WL 17961497 (N.D. Cal. Dec. 12, 2022) ................................................ 16

*Churchill Vill., L.L.C. v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004) ...................................................................................................... 5

*Dennis v. Kellogg Co.*,
   697 F.3d 858 (9th Cir. 2012) .................................................................................................... 21

*Frank v. Gaos*,
   139 S. Ct. 1041 (2019) ...................................................................................................... 1, 6, 8

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) .......................................................................................... 6, 13, 19

*Harbour v. Cal. Health & Wellness Plan*,
   No. 21-03322, 2024 WL 171192 (N.D. Cal. Jan. 16, 2024) ...................................................... 6

*Harris v. Quinn*,
   573 U.S. 616 (2014) ............................................................................................................ 20, 21

*Hart v. TWC Prod. & Tech. LLC*,
   No. 20-03842, 2023 WL 3568078 (N.D. Cal. Mar. 30, 2023) .................................................. 15

*Heeger v. Facebook, Inc.*,
   509 F. Supp. 3d 1182 (N.D. Cal. Dec. 24, 2020) ..................................................................... 15

*Hesse v. Sprint Corp.*,
   598 F.3d 581 (9th Cir. 2010) ...................................................................................................... 5

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Hughes v. Kore of Indiana Enter.*,
731 F.3d 672 (7th Cir. 2013) ........................................................................ 8

*In re Bluetooth Headset Prod. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) ........................................................... 9, 14, 15

*In re Easysaver Rewards Litig.*,
906 F.3d 747 (9th Cir. 2018) ...................................................................... 17

*In re Facebook Biometric Info. Priv. Litig.*,
522 F. Supp. 3d 617 (N.D. Cal. 2021) ....................................................... 19

*In re Facebook Biometric Info. Priv. Litig.*,
No. 21-15553, 2022 WL 822923 (9th Cir. Mar. 17, 2022) ........................ 10

*In re Facebook Consumer Privacy User Profile Litig.*,
No. 18-md-02843 (N.D. Cal.) ..................................................................... 19

*In re Google Buzz Privacy Litig.*,
No. 10-00672, 2011 WL 7460099 (N.D. Cal. June 2, 2011) ................. 17, 23

*In re Google Inc. St. View Elec. Commc'ns Litig.*,
21 F.4th 1102 (9th Cir. 2021) ............................................................ *passim*

*In re Google LLC St. View Elec. Comms. Litig.*,
611 F. Supp. 3d 872 (N.D. Cal. 2020) ....................................................... 18

*In re Google Referrer Header Priv. Litig.*,
869 F.3d 737 (9th Cir. 2017) ................................................................. 16, 22

*In re Hyundai and Kia Fuel Economy Litig.*,
926 F.3d 539 (9th Cir. 2019) ........................................................................ 6

*In re Mego Fin. Corp. Secs. Litig.*,
213 F.3d 454 (9th Cir. 2000) ...................................................................... 13

*In re Netflix Privacy Litig.*,
No. 11-00379, 2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ................. 8, 17

*In re TikTok, Inc., Consumer Privacy Litig.*,
No. 20-4699, 2022 WL 2982782 (N.D. Ill. Jul. 28, 2022) ......................... 15

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
No. 2672, 2017 WL 672727 (N.D. Cal. Feb. 16, 2017) ......................... 5, 11

*In re: Motor Fuel Temperature Sales Pracs. Litig.*,
   872 F.3d 1094 (10th Cir. 2017) ................................................................ 20

*Janus v. AFSCME, Council 31*,
   138 S. Ct. 2448 (2018) .......................................................................... 21

*Jones v. Monsanto Co.*,
   38 F.4th 693 (8th Cir. 2022) .................................................................... 1

*Just Film, Inc. v. Buono*,
   847 F.3d 1108 (9th Cir. 2017) ................................................................. 10

*Knox v. SEIU, Local 1000*,
   567 U.S. 298 (2012) ............................................................................. 21

*Lane v. Facebook, Inc.*,
   696 F.3d 811 (9th Cir. 2012) ........................................................... *passim*

*Lowery v. Joffe*,
   143 S. Ct. 107 (2022) ............................................................................ 1

*Munoz v. Big Bus Tours Ltd.*,
   No. 18-05761, 2020 WL 13533045 (N.D. Cal. Feb. 12, 2020) ................................ 10

*Naschin v. AOL, LLC*,
   663 F.3d 1034 (9th Cir 2011) .......................................................... 13, 16, 21

*Pearson v. NBTY, Inc.*,
   772 F.3d 778 (7th Cir. 2014) ................................................................... 25

*Perkins v. Linkedin Corp.*,
   No. 13-04303, 2016 WL 613255 (N.D. Cal. Feb. 16, 2016) .................................. 20

*Roes, 1-2 v. SFBSC Mgmt., LLC*,
   944 F.3d 1035 (9th Cir. 2019) ................................................................. 19

*Six (6) Mexican Workers v. Ariz. Citrus Growers*,
   904 F.2d 1301 (9th Cir. 1990) ................................................................. 17

*St. John v. Jones*,
   143 S. Ct. 2458 (2023) .......................................................................... 1

*Villegas v. J.P. Morgan Chase & Co.*,
   2012 WL 5878390 (N.D. Cal. Nov. 21, 2012) .................................................. 14

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ..................................................................................... 10

*Wolin v. Jaguar Land Rover N. Am., LLC*,
    617 F.3d 1168 (9th Cir. 2010) ..................................................................................... 11

**Other Authorities**

William B. Rubinstein, *Newberg on Class Actions* (5th ed. 2019 update) ......................... 8, 13, 14

**Rules**

Fed. R. Civ. P. 23 ............................................................................................................... 13

Fed. R. Civ. P. 23(a) ..................................................................................................... 6, 7

Fed. R. Civ. P. 23(e) ................................................................................................... 15, 24

1

## I.  __INTRODUCTION__

2  Plaintiffs request that the Court grant final approval to a nationwide class action Settlement

3  which requires Defendant Google LLC ("Defendant" or "Google") to pay $62 million into a non-

4  reversionary cash fund that, if the Settlement is approved, will be used by up to 21 highly qualified,

5  reputable, 501(c)(3) non-profit organizations for the support and defense of class members'

6  privacy rights, and which requires meaningful prospective injunctive relief giving class members

7  greater understanding of, and control over, their Location Information.

8  The Settlement meets all standards for class certification and final approval. At the

9  conclusion of nationwide notice to a class including hundreds of millions of class members, only

10  nine class members requested to exclude themselves, indicating that all but a handful of the class

11  support approval. Only one objection was filed, by activist attorney Ted Frank on behalf of three

12  objectors. At the core of Mr. Frank's objection is his belief that courts may *never* approve awards

13  of class settlement proceeds under the *cy pres* doctrine when some *de minimis* financial distribution

14  to a fraction of the class theoretically might be possible, because Mr. Frank believes that *cy pres*

15  awards do not provide value to the Class. Mr. Frank's opinions are contrary to binding precedent,

16  a fact acknowledged throughout the objection. Mr. Frank previously has sought, and been denied,

17  a ruling to his liking by the Supreme Court in several cases in which he similarly objected to class

18  settlements providing for *cy pres* distributions. *See e.g.*, *In re Google Inc. St. View Elec. Commc'ns*

19  *Litig.*, 21 F.4th 1102 (9th Cir. 2021), cert. denied *Lowery v. Joffe*, 143 S. Ct. 107 (2022); *Jones v.*

20  *Monsanto Co.*, 38 F.4th 693 (8th Cir. 2022), cert. denied *St. John v. Jones*, 143 S. Ct. 2458 (2023);

21  *Frank v. Gaos*, 139 S. Ct. 1041, 1046-48 (2019).

22  This Court should approve the Settlement. The Settlement provides effective, fair,

23  reasonable, and adequate relief to the Settlement Class, which will benefit significantly from tens

24  of millions of dollars of expenditures dedicated to serving their interests and the goals of this

25  lawsuit, as well as from the Settlement's injunctive relief.

26  ## II.  __BACKGROUND__

27  ### A.  __Procedural History__

28  Plaintiffs previously provided the Court with a detailed procedural history of this action,

litigated over nearly six years in the face of an aggressive defense by one of the largest and richest companies on Earth. *See* Dkt. 327 at 2-6; Dkt. 328; Dkt. 351 at 2-5; Dkt. 351-1. To briefly summarize, Plaintiffs allege that Google knowingly violated their privacy rights, and those of millions of U.S. mobile device users to amass and commercially exploit valuable and sensitive geolocation data, by tracking and storing their location data despite the relevant Google account setting—"Location History"—being disabled. *See generally* Dkt. 164-1 (First Am. Consol. Class Action Compl., "FAC"). After two rounds of motions to dismiss, this Court upheld three claims against Google based on Plaintiffs' allegation of "continuous and comprehensive" tracking and storage of location information: (a) intrusion upon seclusion; (b) violation of the California Constitution's right to privacy, Art. 1, § 1; and (c) unjust enrichment. Dkt. 162 at 8; *see also* Dkt. 351-1 ¶¶ 7-21 (detailing Plaintiffs' efforts to diligently investigate and assert their claims, consolidate six overlapping actions, and overcome Google's challenges). Over the course of litigation, the parties engaged in approximately 26 months of discovery, which included serving and responding to discovery requests, engaging with experts, extensive and often contentious meet and confers, and participation in regular discovery conferences with Magistrate Judge Nathanael Cousins. Discovery was very hard-fought. *See* Dkt. 351-1 ¶¶ 22-67 (describing discovery efforts).

The parties agreed to the Settlement only after engaging in extensive arm's-length negotiations over many months, including three full-day mediation sessions (on March 15, May 2, and May 24, 2022) and numerous additional discussions facilitated by experienced mediator Professor Eric D. Green, Esq.; a settlement conference with Magistrate Judge Joseph C. Spero on January 19, 2023; and strenuous direct negotiations between the parties. Through formal discovery and information exchanged during settlement negotiations, Plaintiffs and Class Counsel obtained significant information regarding the Settlement Class's claims and developed a thorough understanding of the claims' strengths and weaknesses at the time the Settlement was reached.

On November 7, 2023, the Court preliminarily certified the Settlement Class for settlement purposes and found that it would likely approve the Settlement Agreement. Dkt. 345.

### B.     Summary of the Settlement

**The Settlement Class.** The Settlement Class is defined as "all natural persons residing in

1   the United States who used one or more mobile devices and whose Location Information was

2   stored by Google while 'Location History' was disabled at any time during the Class Period

3   (January 1, 2014 through the Notice Date)." Settlement Agreement ("SA") ¶ 28.

4        **Monetary Relief.** The Settlement creates a non-reversionary cash Settlement Fund of $62

5   million to pay for the costs of Notice and Settlement administration, any Court-awarded attorneys'

6   fees and expenses, and Class Representative Service Awards, with the balance (the "Net

7   Settlement Fund") distributed to Court-approved *cy pres* recipients. SA ¶¶ 32, 39-42. The proposed

8   *cy pres* recipients must be "independent 501(c)(3) organizations with a track record of addressing

9   privacy concerns on the Internet (either directly or through grants)" and, as a condition of receiving

10   any award, were required to provide a proposal "demonstrating and committing that they shall use

11   the funds to promote the protection of internet privacy." SA ¶ 41.2.

12        The Parties identified 17 proposed *cy pres* recipients in Exhibit D to the Settlement

13   Agreement. Dkt. 328-1 at Ex. D. Since then, additional organizations have come forward, bringing

14   the current number to 21. Each organization's proposal was posted to the Settlement Website

15   during the notice period, and the parties filed multiple notices (which also were posted to the

16   website) disclosing any potentially relevant relationships the parties or their counsel may have

17   with such recipients. Dkts. 332, 338, 349-50, 352. In accordance with the terms of the Settlement,

18   the Parties present the Court with their joint proposal for allocation of the Net Settlement Fund in

19   Exhibit A to this Motion. Under the Settlement, the Court, not the Parties, ultimately designates

20   the Approved *Cy Pres* Recipients and allocates the Net Settlement Fund between them. SA ¶ 41.1.

21        The Proposed *Cy Pres* Recipients include organizations working on behalf of class

22   members nationwide, including seven educational institutions with track records of cutting-edge

23   public interest research and education regarding online privacy issues, influencing privacy policy

24   and action across the country; a non-profit news organization that employs trained technologists

25   to conduct independent investigations, and has a reputation for breaking news regarding internet

26   privacy issues (The Markup); an organization that serves a critical role in enabling access for

27   researchers, historians, scholars, and the general public to otherwise ephemeral sources on the

28   web—records critical to protecting consumer choice and privacy (Internet Archive); ten public

1   interest research and consumer advocacy organizations that focus on consumer privacy rights and

2   issues; and individual researchers whose work will advance the public understanding of privacy

3   rights and means of securing them (the Data & Society Research Institute). *See* Joint Decl. Exs.

4   A-U. In addition, the parties propose that the Rose Foundation for Communities and the

5   Environment receive a proportion of the funds to distribute to additional, smaller, perhaps

6   otherwise-overlooked organizations through a grantmaking process that will include an open-

7   application process and targeted outreach to worthy recipients who can use the funds to mitigate,

8   address, or support matters revolving around online privacy and data security issues. *See* Joint

9   Decl. Ex. S. The Rose Foundation is well-positioned to ensure that additional organizations

10  meeting the nexus of this Settlement Class and the claims at issue are able to obtain and dedicate

11  funding from this Settlement to serve Settlement Class Members.

12          Counsel for the Parties examined each of these organization's past work and populations

13  served, as well their proposed projects, and evaluated the nexus between (a) the organization and

14  (b) the claims and the class at issue. In order to make practical proposals regarding specific

15  allocations to particular entities that satisfied the nexus requirement, counsel also closely examined

16  each organization's size, existing capacity, budgets, and other indicia of its ability to put Settlement

17  funds to use so as to advance class members' interests effectively and efficiently. Joint Decl. ¶ 13.

18          As a condition of receiving any portion of the Settlement Fund, each Approved *Cy Pres*

19  Recipient shall provide a report to the Court and the Parties every six months regarding how any

20  portion of the Settlement Fund allocated to it has been used and how remaining funds will be used.

21  SA ¶ 41.4. Class Counsel shall ensure that such reports are posted on the Settlement Website. *Id.*

22          **Injunctive Relief.** As detailed in Exhibit C to the Settlement, the Settlement requires

23  Google to implement several business practice changes for a period of at least three years,

24  including, for instance, sending a notification, after the Settlement's Effective Date, to all Google

25  users with Location History or Web & App Activity settings enabled, explaining how those

26  features collection Location Information, instructing those users how to disable the settings, and

27  directing them to new web pages, the content of which was negotiated at length by Class Counsel.

28  SA Ex. C at ¶¶ 4, 6. Google also is required to maintain a policy under which (a) Location

Information stored through Location History and Web & App Activity is automatically deleted by default after a period no greater than 18 months when users opt into these settings for the first time, and (b) users can set their own auto-delete periods. And all of the Settlement's meaningful injunctive relief extends for at least three years.

**Classwide Release.** In exchange for the Settlement's benefits, class members will release any claims against the Released Parties that are based on, or arise from, one or more of the same factual predicates or theories of liability as alleged in the Consolidated Action. *Id.* ¶¶ 50-57. The scope of the Release is consistent with this Circuit's governing standards. *See, e.g.*, *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) ("A settlement agreement may preclude a party from bringing a . . . released claim [that] is 'based on the identical factual predicate as that underlying the claims in the settled class action'") (citation omitted).

### C.   Class Notice and CAFA Notice

Pursuant to the Court's preliminary approval order, the Administrator implemented a robust Notice Plan approved by the Court, which "provide[d] a summary of the Settlement and clearly explain[ed] how Class Members may object to or opt out of the Settlement, as well as how Class Members may address the Court at the final approval hearing." *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, No. 2672, 2017 WL 672727, at *20 (N.D. Cal. Feb. 16, 2017); *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) ("Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.").

As explained more fully in the concurrently filed declaration of Administrator Cameron Azari, the Notice Program generated more than 826 million impressions nationwide to an estimated 80% of the Settlement Class, displayed sponsored "search" listings more than 146 thousand times, and delivered an informational release to approximately 5,000 general media news outlets. Azari Decl. ¶¶ 23, 39. The appropriate state and federal officials were provided notice of this Settlement as required under CAFA. Dkt. 335; *Id.* ¶ 9.

### D.   Attorneys' Fees and Expenses, and Plaintiff Service Awards

Plaintiffs filed their Motion for Attorneys' Fees and Expenses (Dkt. 351) in January,

1  seeking an award of attorneys' fees representing 30% of the Settlement Fund, in the amount of

2  $18.6 million; unreimbursed expenses of $151,756.23; and Service Awards of $5,000 for each of

3  the three Settlement Class Representatives, totaling $15,000. The Settlement is not conditioned

4  upon the Court's approval of any service award, attorneys' fees, or expenses, and Google may

5  oppose the request. SA ¶¶ 62-63.

6          **E.     Class Member Response**

7          Only nine class members opted out of the Settlement. Azari Decl. ¶ 32. No class member

8  objected to the Notice Plan. Mr. Frank submitted the sole objection.

9  **III.   ARGUMENT**

10         To determine whether to approve a class action settlement, the Court must first assure itself

11 that the proposed settlement class may be certified under Rule 23(a) and (b); next the Court must

12 assess whether the proposed settlement is "fair, reasonable, and adequate." *See Hanlon v. Chrysler*

13 *Corp.*, 150 F.3d 1011, 1019, 1022, 1025 (9th Cir. 1998); *Harbour v. Cal. Health & Wellness Plan*,

14 No. 21-03322, 2024 WL 171192, at *3 (N.D. Cal. Jan. 16, 2024). The Court must also assure itself

15 of Plaintiffs' standing under Article III. *Gaos*, 139 S. Ct. at 1046. Here, the Court can rely on

16 Plaintiff's allegations to establish standing. Each Plaintiff alleges a concrete invasion of their

17 privacy interests in their own location information. *See supra* § II-A.

18         **A.     The Court Should Certify the Settlement Class**

19         At final approval, the Court must conduct a "rigorous" analysis to confirm that the

20 requirements of Rule 23(a) and 23(b)(3) are met. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591,

21 619–22 (1997); *In re Hyundai and Kia Fuel Economy Litig.*, 926 F.3d 539, 556 (9th Cir. 2019)

22 (citations omitted). The Court thoroughly examined the Rule 23 requirements prior to granting

23 preliminary approval. Nothing has occurred that should change the Court's previous determination

24 that the requirements of Rule 23 are satisfied.

25         **1.     Rule 23(a): Numerosity, Commonality, Typicality, and Adequacy Are
                    Satisfied**

26

27         Rule 23(a) requires a showing of: (1) numerosity; (2) commonality; (3) typicality; and (4)

28 adequacy. *See* Fed. R. Civ. P. 23(a). These requirements are satisfied.

         **Numerosity.** There can be no doubt that numerosity is satisfied, because it is undisputed

1    that the class consists of hundreds of millions of people. Fed. R. Civ. P. 23(a)(1); Dkt. 328 ¶ 31.

2    Plaintiffs estimate the Settlement Class includes roughly 247.7 million people. *See* Dkt. 327 at 14.

3       **Commonality.** The same central questions underlie all Plaintiffs' and Settlement Class

4    Members' claims including, *inter alia*, how and why Google stored Location Information, and

5    what Google did or did not disclose, satisfying commonality. Fed. R. Civ. P. 23(a)(2).

6       **Typicality.** Plaintiffs' and Settlement Class Members' claims arise from the same nucleus

7    of facts, including, *inter alia*, thwarted efforts to prevent the storage of Location Information,

8    pertain to a common defendant, and are based on the same legal theories, satisfying typicality. Fed.

9    R. Civ. P. 23(a)(3); Dkt. 131 (CAC) ¶¶ 12, 16, 30.

10      **Adequacy.** As detailed in Plaintiffs' request for Plaintiffs' Service Awards and supporting

11   declarations, and illustrated by the significant recovery on behalf of the Settlement Class, Class

12   Counsel and the Plaintiffs fairly and adequately prosecuted this Action on behalf of the Settlement

13   Class. They will continue to do so, and no conflicts of interest exist between Plaintiffs and the

14   Settlement Class. *See* Fed. R. Civ. P. 23(a)(4); Dkt. 351.

15      Mr. Frank's sole challenge to class certification under Rule 23(a)—to the adequacy

16   requirement—rests on the untenable foundation that the Settlement represents "zero-recovery" for

17   the class because the monetary component of the Settlement would be distributed by *cy pres*. Obj.

18   at 20-21. The premise of Mr. Frank's adequacy objection is flawed because the Settlement's *cy

19   pres* distributions would provide substantial value to the class. The *cy pres* awards are directed at

20   some of the most effective advocates for internet privacy in the United States. Only "independent

21   501(c)(3) organizations with a track record of addressing privacy concerns on the Internet (either

22   directly or through grants)" are eligible for a *cy pres* distribution, and only if they provided a

23   specific proposal "demonstrating and committing that they shall use the funds to promote the

24   protection of internet privacy." SA ¶ 41.2. These groups have demonstrated—through the detailed

25   descriptions of their past, ongoing, and anticipated work in their respective proposals—that they

26   will continue to raise awareness of, work to protect, internet privacy. *See* Joint Decl. Exs. A-U.

27      These organizations "can use the money to do something to minimize" future violations of

28   privacy rights that, "as a practical matter, class members each given $3.57 cannot." *Hughes v. Kore*

1    *of Indiana Enter.*, 731 F.3d 672, 676 (7th Cir. 2013). Improvements to privacy in the broad internet

2    ecosystem in which a huge proportion of daily life takes place will deliver actual, tangible benefits

3    to nearly all class members. Such "indirect" benefits are the hallmark of *cy pres* settlements. *See*

4    *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012). This benefit is *compensation* to class

5    members who would otherwise see none. *See id.*; *accord* William B. Rubinstein, *4 Newberg on*

6    *Class Actions* § 12:32 (5th ed. 2019 update) ("*Newberg*").[2]

7         Moreover, the proposed class is enormous—estimated at 247.7 million members—and the

8    Settlement fund, while significant, could only provide *de minimis* payouts to the class as a whole.

9    As this Court recognized at the preliminary approval hearing, "[t]he *cy pres* settlement seems to

10   be the appropriate method of settlement in this case, given the size of the class and the funds

11   available, cash funds available. Distribution to that size of the class would be impossible and

12   meaningless." Dkt. 343, 10/26/23 Tr. 26:15-19; *see also See Lane*, 696 F.3d at 821 (*cy pres*

13   supported where "direct monetary payments . . . would be infeasible given that each class

14   member's direct recovery would be *de minimis*"); *In re Netflix Privacy Litig.*, No. 11-00379, 2013

15   WL 1120801, at *7 (N.D. Cal. Mar. 18, 2013) (approving cy pres settlement where, "[g]iven the

16   sheer size of the Class . . . each Class member would receive a *de minimis* payment in the event of

17   a direct class cash payout"). Under Mr. Frank's counter-proposal, the Settlement would distribute

18   funds to a tiny portion of the class (1-2%) and leave the rest empty-handed, at best. At worst, the

19   alternative endorsed by Mr. Frank would expend millions of dollars and generate months to years

20   of delay and wasted efforts effectuating a second nationwide class notice program, claims, and

21   verification process, only to confirm the obvious: the funds are non-distributable and should be

22   distributed via *cy pres* awards.

23        Mr. Frank is wrong to describe the non-monetary relief as "illusory." Obj. at 23. He

24   contends that these provisions are consistent with Google's obligations under 2022 agreements

25   _____

26   [2] Plaintiffs respectfully submit that Justice Thomas's *dissenting* opinion in *Frank v. Gaos* that *cy
     pres* is "not a form of relief to the absent class members and should not be treated as such" is, on

27   these facts, incorrect. *Frank*, 139 S.Ct. at 1047. The leading class action treatise agrees: "If
     remedies are directed to charities, as they must be, and those charities are truly aligned with the

28   class's causes of action, *cy pres* awards should produce social benefits consistent with the class's
     interest and hence indirectly benefit the class." *Newberg* § 12:26 n.10.

with State Attorneys General. *Id*. It bears noting that negotiations that led to this Settlement's non-monetary terms extended for months and predated Google's settlements with the Attorneys General. Joint Decl. ¶ 17. In addition, the terms here go well beyond those on which Mr. Frank relies, including by requiring a default auto-deletion period for Location Information; prohibiting Google from "mak[ing] any attempts or efforts to re-identify . . . pseudonymous, anonymous, or de-identified" location information; and requiring an annual email notice. *See* SA Ex. C ¶¶ 1, 2, 8, and 11. Furthermore, only this Settlement would provide class members the ability to enforce any injunctive relief provisions here in this Court.

Mr. Frank also is incorrect to assert that Class Counsel should have advised class members to opt out of the Settlement *en masse* because they could still benefit from the work of the *cy pres* recipients. Obj. 2, 20-21. If a *cy pres* award has a "direct and substantial nexus to the interests of absent class members," *Lane*, 696 F.3d at 821, as the awards here do, and must, under Ninth Circuit precedent, "then it necessarily prioritizes class members' interests, even if it also provides a diffuse benefit to society at large." *Google Stree View*, 21 F.4th at 1116 (quoting *Lane*, 696 F.3d at 821). Mr. Frank also is wrong as a practical matter. A large number of opt outs would entitle Google to rescind the Settlement (Dkt. 330; SA ¶ 85), preventing anyone from obtaining its benefits, and denying class members the fair, reasonable resolution of the risks of continued litigation and appeals that counsel has achieved. Notably, the many class members do not share Mr. Frank's opinion about opting out. After a robust notice program, which fully described the details of the Settlement agreement and the intended plan of allocation for the monetary component, only nine individuals excluded themselves.

In a final effort to find some other basis for an objection, Mr. Frank falsely asserts that a "sizable clear-sailing attorneys' fee, [and] sizable incentive awards" demonstrate inadequate representation. Obj. at 20. None of that is true. A "clear sailing agreement" is present where "defendants agree[] *not to* object" to a fee of some specified amount. *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011) (emphasis added). The Settlement, by contrast, provides that "Defendant expressly reserves the right to contest the amount of any requests for attorneys' fees or service awards." Dkt. 328-1, SA ¶ 63. And the size of the requested fee and

service awards are in line with awards commonly sought and awarded in this Circuit. *See e.g.*, *Munoz v. Big Bus Tours Ltd.*, No. 18-05761, 2020 WL 13533045, at *4 (N.D. Cal. Feb. 12, 2020) (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002)) ("Thirty percent is within the 'usual range'"); *In re Facebook Biometric Info. Priv. Litig.*, No. 21-15553, 2022 WL 822923, at *2 (9th Cir. Mar. 17, 2022) ("We regularly uphold incentive awards of [$5,000].""). Moreover, each award is subject to Court approval and expressly not a condition of the Settlement. *See* SA ¶ 62.

### 2.   Rule 23(b)(3): Predominance and Superiority Are Satisfied

Rule 23(b)(3) requires a showing of (1) predominance and (2) superiority. Fed. R. Civ. P. 23(b)(3). These requirements are satisfied.

**Predominance.** Common questions of law and fact predominate over any questions affecting only individuals because every Settlement Class Member has been subjected to the same alleged conduct which caused them the same type of harm—invasions of widely held and reasonable expectations regarding their data, and Google's wrongful use of it. The overarching questions at issue in this case can be resolved for all members of the proposed Settlement Class in a single adjudication. *See, e.g.*, *Abante Rooter & Plumbing, Inc. v. Pivotal Payments Inc.*, No. 16-05486, 2018 WL 8949777, at *5 (N.D. Cal. Oct. 15, 2018).

**Superiority.** This class action is the only reasonable method for fairly and efficiently adjudicating Settlement Class Members' claims against Google. Resolution of the common issues of fact and law through individual actions is impracticable: the amount in dispute for individual class members is too small, the technical issues involved are too complex, and the required expert testimony and document review too costly. *See Just Film, Inc. v. Buono*, 847 F.3d 1108, 1123 (9th Cir. 2017). Individual litigation is unlikely, as evidenced by the vanishingly small proportion of Settlement Class Members who opted out of the Settlement (0.000004%), and the fact that no claims were filed on an individual basis in any forum, at any time, during the pendency of this litigation (to Class Counsel's knowledge). If Settlement Class Members' hundreds of millions of individual suits were viable, it would be completely impracticable to litigate each claim separately without exhausting the entire capacity of the federal judiciary. Such individual lawsuits also would

present "the possibility of inconsistent rulings and results," further militating toward class treatment. *In re Volkswagen "Clean Diesel" Mktg.*, 2017 WL 672727, at *14. And because the case has settled, no "likely difficulties in managing a class action" exist. *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010).

Mr. Frank's sole challenge to class certification under Rule 23(b)(3), based on the superiority requirement, rests on his contention that settlement relief is not "compensatory" if it is distributed via *cy pres*. Obj. at 21-22. That is not the law in this (or any) Circuit. *In re Google Inc. St. View Elec. Commc'ns Litig.*, 21 F.4th 1102, 1116 (9th Cir. 2021) ("[T]he infeasibility of distributing settlement funds directly to class members does not preclude class certification."); *Google Referrer*, 869 F.3d 742 ("[W]e easily reject Objectors' argument that if the settlement fund *was* non-distributable, then a class action cannot be the superior means of adjudicating this controversy"); *Lane*, 696 F.3d at 826 (affirming certification of class receiving *cy-pres* relief).

Mr. Frank overstates the limited out-of-Circuit district court authority on which he relies. The order from the Eastern District of North Carolina denying preliminary approval of a settlement did not "hold[]," as he asserts, that all *cy pres* awards are "attenuated" and inconsistent with judicial efficiency as a matter of law, or policy. *See* Obj. at 21; *Supler v. FKAACS, Inc.*, No. 11-00229, 2012 WL 5430328, at *4 (E.D.N.C. Nov. 6, 2012). It merely evaluated a proposal to make a limited award of $17,500 to a Legal Aid foundation, where the parties had "not identified any meaningful value to the class." *Id.* Here, the requisite "nexus" requirement is resoundingly met. The Court should reject Mr. Frank's objections to class certification, just as the Ninth Circuit did in *Google Street View*, and certify the Settlement Class. *See Google Street View*, 21 F.4th at 1122; Obj. at 21-22 (acknowledging that *Google Street View* rejected identical adequacy and predominance arguments).

### 3.   Rule 23(g): The Court Should Reaffirm the Appointment of Class Counsel and the Class Representatives

"An order certifying a class action . . . must appoint class counsel under Rule 23(g)." Fed. R. Civ. P. 23(c)(1)(B). Rule 23(g)(1)(A) requires the Court to consider: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; (iii)

- 11 -

counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." The Court appointed Tina Wolfson and Michael Sobol as Interim Co-Lead Class Counsel at the outset of this consolidated litigation (Dkt. 72), and affirmed that appointment at preliminary approval, designating them Lead Counsel for the Settlement Class, and appointing Plaintiffs as Settlement Class Representatives. Dkt. 345 at 2-3. Counsel detailed their qualifications and work performed on behalf of the class in connection with those appointments, and again in their recent Motion for Attorneys' Fees. Dkt. 351. They capably managed this complex litigation and negotiated a settlement that provides meaningful and fair relief to the class. Plaintiffs diligently fulfilled their roles as class representatives. Class Counsel's law firms, and the Settlement Class Representatives should be appointed to represent the Settlement Class, consistent with the Court's prior findings and orders. *See Harrington v. City of Albuquerque*, 222 F.R.D. 505, 520 (D.N.M. 2004); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 943.  The criteria of Rule 23(g)(1) are satisfied.

### B.     The Court Should Grant Final Approval to the Settlement

In deciding whether to approve a proposed settlement, the Ninth Circuit has a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Hyundai and Kia Fuel Economy Litig.*, 926 F.3d 539, 556 (9th Cir. 2019); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). "[T]here is an overriding public interest in settling and quieting litigation," and this is "particularly true in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).

Where a settlement agreement calls for distribution via *cy pres*, the Ninth Circuit instructs courts to "apply the same standards" as "for any class action settlement, asking whether the total relief afforded by the settlement—whether in the form of injunctive relief, *cy pres* payments, or direct monetary payments—adequately compensates class members for relinquishing their claims." *Google Street View*, 21 F.4th at 1112 n.3. Thus, "review of a class-action settlement that calls for a *cy pres* remedy is not substantively different from that of any other class-action settlement," except that the court must find that "the *cy pres* remedy 'account[s] for the nature of the plaintiffs' lawsuit, the objectives of the underlying statutes, and the interests of the silent class

members.'" *Lane*, 696 F.3d at 819-20 (quoting *Naschin v. AOL, LLC*, 663 F.3d 1034, 1036 (9th Cir 2011)). Ultimately, the Court's role is not to determine "whether the settlement is perfect," but to determine if it is fair. *Id.* (citing *Hanlon*, 150 F.3d at 1027).

In making that determination, Rule 23(e)(2) directs the Court to consider whether:

(A)    the class representatives and class counsel have adequately represented the class;

(B)    the proposal was negotiated at arm's length;

(C)    the relief provided for the class is adequate, taking into account:

      (i)    the costs, risks, and delay of trial and appeal;

      (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

      (iii)    the terms of any proposed award of attorney's fees, including timing of payment; and

      (iv)    any agreement required to be identified under Rule 23(e)(3); and

(D)    the proposal treats class members equitably relative to each other.

*See also Briseno v. Henderson*, 998 F.3d 1014, 1025 (9th Cir. 2021) (describing the Ninth Circuit's eight-factor test as "fall[ing] within the ambit of" the current version of Rule 23). Where, as here, the settlement is reached before litigation class certification, approval requires a "higher standard of fairness." *Lane*, 696 F.3d at 819.

## 1.    <u>Rule 23(e)(2)(A): The Class Representatives and Class Counsel Have Adequately Represented the Class</u>

Class Counsel and the Settlement Class Representatives "have adequately represented the class" under Rule 23(e)(2)(A). The Advisory Committee Notes explain that this subsection, in conjunction with subsection (B), "identify matters that might be described as 'procedural' concerns, looking to the conduct of the litigation and of the negotiations leading up to the proposed settlement." *See* Fed. R. Civ. P. 23, Notes of Advisory Comm., Subdivision (e)(2), Paragraphs (A) and (B) (2018). Relevant factors may include the nature and amount of discovery conducted, the outcome of other cases, and the adequacy of counsel's information. *Newberg* § 13:49; *In re Mego Fin. Corp. Secs. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000).

As discussed above in connection with Rule 23(a), and as the Court found at preliminary approval, Class Counsel "are competent and capable . . . and will adequately protect the interests of the Settlement Class." Dkt. 345 ¶ 7. The Settlement is the culmination of six years of hard-

fought litigation against a vigorous defense, extensive contentious discovery, and fully-informed arms-length negotiations. *See* Dkt. 351. Plaintiffs diligently represented the Class and actively participated in this litigation, including broad discovery. *Id.* Rule 23(e)(2)(A) is satisfied.

### 2.   Rule 23(e)(2)(B): The Proposed Settlement Was Negotiated At Arm's Length

The Settlement "was negotiated at arm's length" under Rule 23(e)(2)(B). The Advisory Committee notes state that the involvement of a neutral mediator may bear on whether settlement negotiations were conducted "in a manner that would protect and further the class interests." At its root, this factor aims to guard against collusive settlements. *See Newberg* § 13:50. The Ninth Circuit has similarly directed district courts to pay close attention to signs of collusion, such as the presence of a clear sailing arrangement, a disproportionate distribution of the settlement to counsel, and/or the presence of a reverter clause. *Briseno*, 998 F.3d at 1023; *Bluetooth*, 654 F.3d at 941.

No signs of collusion are present here. Indeed, the Settlement required months of contentious, informed negotiations between experienced counsel in a process overseen by a highly respected mediator, and, for a time, return to active litigation. *See* Dkt. 343, 10/26/23 Hearing Transcript 26:5-8 ("I do see this was a hard fought litigation, I ruled on several motions, Judge Cousins ruled on many motions, there were stays in the case, there were motions post-stay, you met with mediators."); *See Villegas v. J.P. Morgan Chase & Co.,* 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012) (noting that private mediation "tends to support the conclusion that the settlement process was not collusive"). There is no clear sailing provision in the Settlement, and no portion of the Settlement Fund will revert to Google. *See* SA ¶¶ 32, 40-42, 58-63. Class Counsel seek a reasonable and proportionate fee from the common fund created by the Settlement, and had every incentive to secure the largest fund possible. Rule 23(e)(2)(B) is satisfied.

### 3.   Rule 23(e)(2)(C): The Relief Provided for the Class is Adequate

The relief provided for the class: a $62 million common fund and injunctive relief designed to address the practices on which Plaintiffs' claims are based, is "adequate" taking into account each of Rule 23(e)(2)(C)'s four enumerated factors.

#### a.   *23(e)(2)(C)(i): Costs, Risks, and Delay of Trial and Appeal*

The first factor requires the Court to consider "the costs, risks, and delay of trial and

- 14 -

appeal." Fed. R. Civ. P. 23(e)(2)(C)(i); *see also Bluetooth*, 654 F.3d at 946 (listing factors including "the risk, expense, complexity, and likely duration of further litigation," in conjunction with "the strength of the plaintiff's case"). The $62 million Settlement Fund and injunctive relief provides a strong recovery for the class in light of these factors. Although Plaintiffs' case had many strengths—among them the large number of potential class members and a body of uncontested facts concerning Google's conduct—continuing the case also presented very considerable risks.

Even beyond the inherent unpredictability of class action and trial practice, litigation risks are particularly pronounced in consumer cases against technology companies; privacy-related claims are often dismissed, just as the court initially dismissed this action, and class certification can present unique challenges. *See In re TikTok, Inc., Consumer Privacy Litig.*, No. 20-4699, 2022 WL 2982782, at *28 (N.D. Ill. Jul. 28, 2022) ("Data privacy law is a relatively undeveloped and technically complex body of law, which creates uncertainty and, therefore, additional risk"); *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1186 (N.D. Cal. Dec. 24, 2020) (largely dismissing two related class actions challenging Facebook's collection of personal location data); *Yastrab v. Apple Inc.*, 173 F. Supp. 3d 972, 976 (N.D. Cal. Mar. 25, 2016) (dismissing claims based on software updates that purportedly removed features from iPhones); *In re iPhone Application Litig.*, 6 F. Supp. 3d 1004, 1007 (N.D. Cal. Nov. 25, 2013) (granting summary judgment and denying class certification as moot in case involving data collection practices).

As discussed in Plaintiffs' Motion for Preliminary Approval (Dkt. 357 at 12, 22), the risks that the Class faced here are underscored by the Court's holding that Plaintiffs' remaining claims for intrusion upon seclusion and invasion of the California constitutional right to privacy would depend on proof of "continuous and comprehensive" tracking and storage of Location Information, which imposed a high evidentiary burden on Plaintiffs in further pretrial and trial proceedings. Dkt. 162 at 8, 10. That risk is amplified further given Google's likely arguments in opposition to class certification. *See, e.g.*, *Hart v. TWC Prod. & Tech. LLC*, No. 20-03842, 2023 WL 3568078, at *10-11 (N.D. Cal. Mar. 30, 2023) (denying certification because "[t]he common question of whether users maintained a reasonable expectation of privacy . . . necessitates an individualized factual inquiry into whether individual users understood that their affirmative responses to the

permission prompts enabled TWC to use the location data it collected"); *Brown v. Google*, *LLC*, No. 20-03664, 2022 WL 17961497, at *19 (N.D. Cal. Dec. 12, 2022) (denying certification of privacy claims under Rule 23(b)(3)).

In short, given the anticipated disputes that inevitably would lie ahead, including at summary judgment (when Google might prevail by establishing it did not continuously and comprehensively track class members throughout the Class Period), and at class certification (when Google might prevail by establishing that individualized issues regarding consent or the reasonable expectation of privacy would predominate), Plaintiffs faced significant risk of investing further substantial costs and time in this litigation in order to achieve no recovery whatsoever on behalf of the class. And, even if Plaintiffs successfully proved their case at trial, the claims in this litigation provide no guarantee of a substantial damages award. If anything were recovered, it could take years to secure, as Google would likely appeal any adverse judgment. This factor warrants Settlement approval.

### b.   *23(e)(2)(C)(ii): Effectiveness of Distribution*

The proposed method of distributing the monetary relief from this Settlement: *cy pres* awards to 21 non-profit organizations, each of which has a track record of protecting internet privacy rights, and has submitted a proposal demonstrating and committing to continue that work, is "effective" under Rule 23(e)(2)(C)(ii).

This Circuit, like many others, permits a *cy pres* distribution in circumstances where the settlement fund is "non-distributable," meaning "proof of individual claims would be burdensome or distribution of damages costly." *Lane*, 696 F.3d at 819; *Nachshin*, 663 F.3d at 1036. An individual claims process is "burdensome" where "each class member's recovery under a direct distribution would be *de minimis.*" *Lane*, 696 F.3d at 825. The relevant "recovery" for this assessment is determined with respect to the class as a whole, and courts in this Circuit use each class member's *pro rata* share of the settlement fund as a key metric in evaluating the fairness of distributing settlement funds by *cy pres*. *See, e.g.*, *In re Google Referrer Header Priv. Litig.*, 869 F.3d 737, 742 (9th Cir. 2017), *vacated and remanded on other grounds* (affirming finding of non-distributability where net settlement fund could provide only 4 cents in recovery to each member

of settlement class); *In re Easysaver Rewards Litig.*, 906 F.3d 747 (9th Cir. 2018) (finding a second distribution to be *de minimis* when there were over one million potential class members, but only three million dollars in available funds (*i.e.*, ~$3 per class member)); *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1305 (9th Cir. 1990) ("When a class action involves a large number of class members but only a small individual recovery, the cost of separately proving and distributing each class member's damages may so outweigh the potential recovery that the class action becomes unfeasible. . . . '[C]y pres' distribution avoids these difficulties."); *In re Netflix*, 2013 WL 1120801, at *7 (approving *cy pres* award where, "[g]iven the sheer size of the Class . . . each Class member would receive a *de minimis* payment in the event of a direct class cash payout"—there, a $9 million fund and 62 million class members (~15 cents per class member before fees and other expenses)); *In re Google Buzz Privacy Litig.*, No. 10-00672, 2011 WL 7460099, at *4 (N.D. Cal. June 2, 2011) (approving cy pres-only settlement).

Here, the total settlement fund before deducting any award of attorneys' fees, expenses, administrative costs, and service awards, is $62 million. While this amount is substantial, the estimated number of Class members is 247.7 million. The resulting *pro rata* recovery per Class Member could be no more than 25 cents (assuming no attorneys' fees, service awards, or administration costs), an amount that is "non-distributable" under this Circuit's above-cited precedents. The proposed method of distribution therefore "satisf[ies] the appropriate standards for fairness" and should be approved. *See Google Street View*, 21 F.4th at 1114.

Mr. Frank challenges the effectiveness of the proposed *cy pres* relief on several grounds, none of which withstand scrutiny. He argues that *cy pres* awards deliver no value to class members, that they violate the First Amendment's prohibition on compelled speech, and that the specific potential beneficiaries identified for this Settlement, are improper. All of these arguments have been rejected previously, and should be rejected again here.

### i.   *Cy Pres* Awards Are Compensation to the Class

At the root of all of Mr. Frank's objections is his opinion that the *cy pres* doctrine represents a redirection of settlement benefits away from class members to other entities. *See* Obj. at 4-5. The Ninth Circuit, however, has "repeatedly recognized that class members *do* benefit—albeit indirectly—from

a defendant's payment of funds to an appropriate third party." *Google Street View*, 21 F.4th at 1116; *see also In re Google LLC St. View Elec. Comms. Litig.*, 611 F. Supp. 3d 872, 884 (N.D. Cal. 2020), *aff'd*, (rejecting identical argument "because it assumes, wrongly, that the *cy pres* settlement is not a benefit to the class")

Nevertheless, building on the supposition that *cy pres* awards do not qualify as compensatory relief, Mr. Frank argues that the *cy pres* distributions proposed here are improper if funds could be distributed to a tiny number of class members through a claims process. In support, Mr. Frank cites a number of settlements in which, due to low claims rates, otherwise non-distributable settlement funds were in fact distributed to the fraction of class members who submitted claims. Obj. at 6-7; Frank Decl. ¶¶ 36-37. Mr. Frank contends that here, too, the parties could rely on nearly all class members choosing to forego their right to claim their share of monetary relief, speculating that the funds must be "distributable" because, if only 1.5% of class members filed claims, then that 1.5% could receive about $12 each. Obj. at 7-11.

In addition to misunderstanding, or ignoring, the value to class members of appropriately-tailored *cy pres* relief, Mr. Frank applies the wrong test for determining non-distributability of settlement funds in this Circuit. The Ninth Circuit explained this to Mr. Frank when it rejected the argument he makes here, which he also raised in *Street View*:

> Lowery [Mr. Frank's client] argues that the district court applied the wrong standard for determining feasibility by asking "whether it is feasible to hand-deliver checks to every single class member" instead of focusing on "the ability of *some* class members to make a claim." We disagree. Lowery cites no authority indicating that a district court must consider only whether settlement funds are distributable to "some" of a class.

*Google Street View*, 21 F.4th at 1114. This confirms that the question for the Court at final approval is not whether a different settlement with a claims process that would have left 98.5% of the class members empty-handed was theoretically possible. The question before the Court is whether the relief provided by *this* Settlement is effective, and "adequately compensates class members for relinquishing their claims." *Google Street View*, 21 F.4th at 1112 n.3; *Lane*, 696 F.3d at 819-20; *see also Google Street View*, 611 F. Supp. 3d at 893 ("A settlement that benefits 1% of the class, and that has no benefit to 99% of the class, is not so obviously superior to a *cy pres*-only settlement that the

Court must reject this settlement as unfair."); *see also Hanlon*, 150 F.3d at 1027 ("[T]he question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion."). Mr. Frank fails to accept that *cy pres* relief *is* compensation to the class, and the Court should reject his objections based on that flawed premise.

There are numerous other problems with Mr. Frank's hypothetical proposal for a different settlement. For one, it depends for its viability on a low response rate, which perversely twists counsel's usual obligations to seek and encourage as high of a claims rate as possible. *Cf. Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1058 (9th Cir. 2019) (expressing skepticism of clause in settlement "creat[ing] an incentive for defendants to ensure as low a claims rate as possible"). That a high claims rate, ordinarily a measure of success, would *diminish* the success of Mr. Frank's proposal suggests its inferiority. Nor would Mr. Frank's expected results—up to $12 for 1% of Class members—be guaranteed. Mr. Frank's speculation about how a claims process plays out could be wrong.

Plaintiffs suggested in their preliminary approval motion that this settlement, with a claims-made provision, could have generated a claims rate comparable to the 7% rate reported just this last year in *In re Facebook Consumer Privacy User Profile Litig.*, No. 18-md-02843, Dkt. 327 at 14 (N.D. Cal.). Mr. Frank contends that 7% is atypically high, but it does happen, and other cases have exceeded that rate. Indeed, the $650 million settlement in *In re Facebook Biometric Info. Priv. Litig.*, 522 F. Supp. 3d 617, 622 (N.D. Cal. 2021), generated "a claims rate of approximately 22%."

Further, a claims process involving many millions of claims would entail additional administrative costs, including anti-fraud measures that would be required to screen out bot-submitted and otherwise fraudulent claims. According to the Administrator, a 1% claims rate would consume $1.9 million of the common fund; a 3% claims rate $4 million, and a 7% claims rate $8.2 million. Azari Decl. ¶ 34. These figures assume that payments will be delivered electronically where possible. *Id.* ¶ 35. Accounting for such increased administrative costs, Plaintiffs calculate that, at a 7% claims rate, each claimant in Mr. Frank's hypothetical different settlement would be expected to receive approximately $2; at a 3% claims rate, approximately $5;

1  and at a 1% claims rate, approximately $17. Therefore, even applying Mr. Frank's incorrect test

2  for "feasibility," the net result could *still* be a non-distributable settlement fund that is instead

3  distributed to *cy pres* recipients instead of to claimants, *i.e.*, a massive expenditure of class funds,

4  time, party and judicial effort, and increased administration costs, for nothing.

5  More practically, Mr. Frank's hypothetical is not the settlement before the court, or even

6  the relief he seeks. He asks the Court to deny final approval. If the Court were to affirm Mr. Frank's

7  objection here, there is no way to predict what the parties might negotiate, or whether another

8  settlement is possible.

9  In addition to the non-distributability of *pro rata* payments below 25 cents under clear,

10  binding precedent, Google has put forward evidence that it contends "make[s] it infeasible to

11  identify the individuals who fit this class definition," and thus unusually difficult, if not impossible,

12  to verify the validity of theoretical claims based on self-identification. Dkt. 329. A lack of a "viable

13  way for a claims administrator to verify any claimant's entitlement to settlement funds" also

14  supports a finding of non-distributability. *See Google Street View*, 21 F.4th at 1114.

15         **ii.**     **_Cy Pres_ Awards Do Not Violate the First Amendment**

16  Mr. Frank also raises a First Amendment challenge to the *cy pres* doctrine, which the Ninth

17  Circuit already rejected. *See Google Street View*, 21 F.4th at 1118 ("[W]e hold that the settlement

18  agreement does not compel class members to subsidize third-party speech because any class

19  member who does not wish to 'subsidize speech by a third party that he or she does not wish to

20  support' . . . can simply opt out of the class.") (quoting *Harris v. Quinn*, 573 U.S. 616, 656 (2014);

21  *see also*, *e.g., In re: Motor Fuel Temperature Sales Pracs. Litig.*, 872 F.3d 1094, 1114 (10th Cir.

22  2017) ("[T]he district court's approval of the settlement agreements doesn't constitute state action.

23  And absent any state action, [the] First Amendment argument fails."); *Perkins v. Linkedin Corp.*,

24  No. 13-04303, 2016 WL 613255, at *11 n.9 (N.D. Cal. Feb. 16, 2016) (rejecting argument).

25  Because class members who do not wish to support the work of the proposed *cy pres* recipients

26  can opt out of the Settlement, there is no argument that payment of a *cy pres* award compels their

27  speech through government action.

28  The *Google Street View* court likewise explicitly rejected Mr. Frank's reliance on Supreme

1    Court cases concerning the extent to which non-union government employees may be compelled

2    to pay fees to public unions. Unlike such cases, which concern "paycheck deductions for public

3    employees, . . . the settlement here involves funds that, regardless of the *cy pres* provisions, could

4    not feasibly be paid to class members." *Google Street View*, 21 F.4th at 1118-19 (distinguishing

5    *Janus v. AFSCME, Council 31*, 138 S. Ct. 2448 (2018); *Harris*, 573 U.S. 616; and *Knox v. SEIU,*

6    *Local 1000*, 567 U.S. 298 (2012)).

7                          **iii.     The Proposed *Cy Pres* Recipients Are Appropriate**

8              Mr. Frank challenges the individual organizations proposed as recipients of *cy pres* awards

9    as "improper" due to (1) alleged relationships with counsel for the parties, and (2) Mr. Frank's

10   perception of the organizations' additional political activity. Obj. at 14-20.

11             The *cy pres* recipients proposed are appropriate. In the Ninth Circuit, "[n]ot just any

12   worthy recipient can qualify as an appropriate *cy pres* beneficiary." *Dennis v. Kellogg Co.*, 697

13   F.3d 858, 865 (9th Cir. 2012). To avoid the "many nascent dangers to the fairness of the

14   distribution process," the Court requires that there be "a driving nexus between the plaintiff class

15   and the *cy pres* beneficiaries." *Id.* (quoting *Nachshin*, 663 F.3d at 1038). This nexus is established

16   where *cy pres* distributions "account for the nature of the plaintiffs' lawsuit, the objectives of the

17   underlying statutes, and the interests of the silent class members, including their geographic

18   diversity." *Id.* at 1036.  Here, the Settlement requires that only "independent 501(c)(3)

19   organizations"—*i.e.*, not political entities—"with a track record of addressing privacy concerns

20   on the Internet (either directly or through grants)" are eligible for a *cy pres* distribution, and

21   further requires that they provide a specific proposal "demonstrating and committing that they

22   shall use the funds to promote the protection of internet privacy." SA ¶ 41.2.  The parties

23   evaluated each potential *cy pres* recipient closely to ensure that the requisite "nexus" requirements

24   were met. Joint Decl. ¶ 13.  Each of these organizations has the required track record and can be

25   expected to put any award approved by the Court to immediate good use on behalf of the class.

26             The Ninth Circuit has "affirmed *cy pres* provisions involving much closer relationships

27   between recipients and parties" than anything Mr. Frank describes in his objection. *Google Street*

28   *View,* 21 F.4th at 1119; *Lane*, 696 F.3d at 821 (approving settlement fund awarded to a newly-

created foundation, the board of which would include a director appointed by the defendant); *Google Referrer*, 869 F.3d at 744 (approving *cy pres* award to some recipients to whom defendant had previously contributed, some that had previously received settlement funds from the defendant, and some which were housed at class counsel's *alma maters*). In fact, the Ninth Circuit guards against the prospect of conflicted *cy pres* recipients primarily through the "nexus" requirement, which Mr. Frank does not challenge, and which is fully satisfied here. *Id.* at 743.

Mr. Frank relies heavily on the American Law Institute's (ALI) comment that "[a] cy pres remedy should not be ordered if the court or any party has any significant prior affiliation with the intended recipient that would raise substantial questions about whether the award was made on the merits." Obj. at 18.  The Ninth Circuit did not adopt that standard when Mr .Frank proposed it in *Google Street View*, 21 F.4th at 1120. Even if the ALI standard applied, there is no such "affiliation." Plaintiffs do not believe that Lieff Cabraser's occasional co-litigation with the ACLU substantially impairs the perceived fairness of the award to a group that has historically been on the front lines of defending civil liberties.[3] Nor does Google's prior funding of some recipient groups raise such a question. *Id.* at 1119 ("We have never held that merely having previously received *cy pres* funds from a defendant, let alone *other* defendants in unrelated cases, disqualifies a proposed recipient for all future cases."). Moreover, Google explicitly agreed that any *cy pres* distributions would be in addition to its ordinary charitable giving. SA ¶ 38. And neither Google nor Plaintiffs' counsel will exercise control or influence over any recipient's expenditure of *cy pres* funds other than monitoring the recipients' reports to ensure compliance with the Settlement. SA ¶ 41.5.

Here, the ultimate selection of *cy pres* recipients is vested in the Court's discretion. The parties' role has consisted of conducting research to identify organizations with the requisite nexus, soliciting and publicizing proposals, and making a recommendation to the Court. They did so

---

[3] Mr. Frank's suggestions of impropriety in Lieff Cabraser's disclosures are unfounded. Lieff Cabraser endeavored to identify and disclose co-counsel relationships for the past decade. Dkt. 352 ¶ 3. Mr. Frank's identification of unrelated co-counsel relationships with the ACLU approximately 15 years ago and with the Electronic Frontier Foundation nearly 20 years ago do not change the calculus. Dkt. 354 at 15.

without favoring their alma maters or organizations with which they are affiliated. If the Court believes any relationship raises substantial questions about whether a particular suggested award is based on the proposed recipient's merits, then the Court can and should allocate funds to other recipients. It is well within the Court's power to consider the proposed *cy pres* awards and allocate funds differently than the parties propose. *See Google Street View*, 21 F.4th at 1116 (courts should consider the nature and objectives of the claims and interests of absent class members with the goal of particularly benefiting the class).[4]

The Settlement Website provides class members with sufficient information about the Settlement, *cy pres* selection process, and including detailed proposals from each of the proposed *cy pres* recipients which is, by any measure, far better than the non-disclosure in *In re Google Buzz User Privacy Litig.*, No. 10-00672, Dkt. 117 (N.D. Cal. Feb. 16, 2011)). *See Lane*, 696 F.3d at 822 (requiring only that the settlement explain that "the funds will be used . . . to 'fund and sponsor [certain educational, online-privacy-related] programs'").

Finally, that certain organizations publicly espouse an interest in promoting racial, social, and environmental justice (Dkt. 354 at 16; 354-1 ¶ 11), in no way makes them inappropriate *cy pres* recipients and is irrelevant to evaluating the nexus between their privacy-related work and this case. Mr. Frank's unsupported—and frankly offensive—claims that these reputable organizations, which are all respected in the privacy (and grant-making) field, is somehow racist or anti-Semitic because of their expressed support for diversity simply should not be entertained. *See* Dkt. 355 at ¶¶ 7, 9, 10, 12, 17, 21, 23, 26, 27.

### c.   *23(e)(2)(C)(iii) Terms of Proposed Attorneys' Fees*

Rule 23(e)(2)(C)'s third factor for consideration is: "the terms of any proposed award of attorney's fees, including timing of payment." Here, the Settlement Agreement does not

---

[4] Mr. Frank also claims to "reserve the right to supplement" the objection upon review of the Parties' "final list of proposed cy pres recipients" and "the percentage of the net settlement funds they are requesting" at final approval. Dkt. 354 at 20. As discussed above, ultimately the Court is vested with the authority to determine Approved *Cy Pres* Recipients and their allocations. Moreover, the Parties have not suggested any *cy pres* recipients that were not disclosed during the notice period. Mr. Frank cannot reserve a right to supplement the objection indefinitely into the future.

contemplate a specific award of attorneys' fees, but provides that any Court-awarded fees will be paid from the Settlement Fund, and Google is free to object to Class Counsel's requested award. *See* SA ¶¶ 32, 40-42, 58-63.  As detailed in Plaintiffs' Motion for Attorneys' Fees and Expenses (Dkt. 351) and as summarized in Section VI, below, Class Counsel's fee request is within the usual range of fee awards that are approved in the Ninth Circuit, including in connection with settlements offering *cy pres* relief, and the request is merited. Class Counsel will not be paid any fees until after the Settlement's Effective Date has passed, and there are no issues with timing that might raise concern.

### d.  *23(e)(2)(C)(iv)Agreements Under Rule 23(e)(3)*

Rule 23(e)(2)(C)(iv) requires the Court to consider agreements that must be identified under Rule 23(e)(3). This provision is aimed at "related undertakings that, although seemingly separate, may have influenced the terms of the settlement by trading away possible advantages for the class in return for advantages for others." Fed. R. Civ. P. 23(e), 2003 Advisory Committee Notes. Plaintiffs have entered into no such agreements.

The Settlement provides effective, fair, reasonable, and adequate relief to the Class, satisfying Rule 23(e)(2)(C).

### 4.  Rule 23(e)(2)(D): The Proposed Settlement Treats Class Members Equitably Relative to Each Other.

The proceeds recovered for each class member are treated the same way, distributed to non-profit organizations that meet the standards for approval under Ninth Circuit doctrine, and will serve Class members' interests. Mr. Frank's proposals for distribution, by contrast, divide the class into winners and losers: a tiny portion of the class who might get some monetary award, and the vast majority who get nothing. Mr. Frank proposes a lottery-type system in the event that too many claims are submitted (Obj. at 10), which would be entirely arbitrary and would fail to "treat[] class members equitably relative to each other," as required by Rule 23(e)(2)(D). The same is true with respect to Mr. Frank's proposed claims process that he expects to result in only 1.5% of the class receiving any monetary benefit from the Settlement. Mr. Frank fails to explain why the Court should prioritize the interests of such a tiny proportion of class members where, as here, *cy pres* awards are expected to result in substantial benefits on a roughly equal basis across a broad cross-

1    section of the class.

2        **C.    The Court Should Grant Class Counsel's Fee Request**

3        Class counsel submitted their application for attorneys' fees on January 29, 2024. Dkt. 351.

4    Mr. Frank, acknowledging that his argument conflicts with Ninth Circuit law, invokes out-of-

5    Circuit authority for the proposition that *cy pres* relief should not be considered for purposes of

6    attorneys' fees, and that Class Counsel should not be awarded any fees whatsoever. *See* Obj. at 22

7    (citing *Pearson v. NBTY, Inc.*, 772 F.3d 778, 784 (7th Cir. 2014), and acknowledging conflict with

8    *Google Street View*, 21. F.4th at 1121). In this Circuit, "counsel should not be penalized for

9    fashioning a *cy pres*-only settlement that stands to accomplish some good." *Google Street View*,

10   21 F.4th at 1121. Not only does the Seventh Circuit's *Pearson* case not apply Ninth Circuit law,

11   but it considered a settlement entirely distinguishable from the one before this Court, which

12   included a clear-sailing provision and a kicker provision under which any amounts not awarded to

13   class counsel would revert to defendant. *Pearson*, at 780. As pointed out above, this Settlement

14   includes no such features, and *Pearson* simply does not speak to the issues before this Court, which

15   should follow Ninth Circuit law in determining appropriate attorneys' fees and service awards.

16       Mr. Frank also argues there is no basis to exceed the Ninth Circuit's 25% benchmark, but

17   Plaintiffs fully justified their requested award in the Motion for Attorneys' Fees and Expenses,

18   based upon (1) the excellent results achieved; (2) the effort, experience, and skill that was required;

19   (3) the riskiness of the case and the financial burden shouldered by Class Counsel on a contingency

20   basis; and (4) awards made in similar cases. *See* Dkt. 351 at 9-19. Plaintiffs will not repeat all of

21   those arguments here and reserve the right to expand on these issues in their forthcoming Reply

22   brief, but it is clear that, under Ninth Circuit law, the requested award is fully justified.

23   **IV.    CONCLUSION**

24       For the foregoing reasons, Plaintiffs respectfully request that the Court enter an order,

25   substantially similar to the proposed order filed and lodged herewith: (1) certifying the Settlement

26   Class; (2) granting final approval of the Settlement as fair, reasonable, and adequate; and (3)

27   entering final judgment as to Google in this Action.

28

Dated: March 25, 2024

Respectfully submitted,

By: */s/ Tina Wolfson*

**AHDOOT & WOLFSON, PC**
Tina Wolfson (SBN 174806)
twolfson@ahdootwolfson.com
Theodore Maya (SBN 223242)
tmaya@ahdootwolfson.com
Bradley K. King (SBN 274399)
bking@ahdootwolfson.com
Henry J. Kelston (pro hac vice)
hkelston@ahdootwolfson.com
Deborah De Villa (SBN 312564)
ddevilla@ahdootwolfson.com

2600 West Olive Avenue, Suite 500
Burbank, California 91505
Tel: 310.474.9111
Fax: 310.474.8585

Dated: March 25, 2024

By: */s/ Michael W. Sobol*

**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
Michael W. Sobol (SBN 194857)
msobol@lchb.com
Melissa Gardner (SBN 289096)
mgardner@lchb.com
Michael Levin-Gesundheit (SBN 292930)
mlevin@lchb.com
Michael K. Sheen (SBN 288284)
msheen@lchb.com
Jallé H. Dafa (SBN 290637)
jdafa@lchb.com
John D. Maher (SBN 316157)
jmaher@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: 415.956.1000
Facsimile: 415.956.1008

**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
Nicholas Diamand (pro hac vice)
250 Hudson Street, 8th Floor
New York, NY 10013
Telephone: 212.355.9500
Facsimile: 212.355.9592

*Interim Co-Lead Class Counsel*

1

## <u>SIGNATURE ATTESTATION</u>

2

I am the ECF User whose identification and password are being used to file the foregoing

3 Notice of Motion and Motion for Preliminary Approval of Proposed Class Action Settlement;

4 Memorandum of Points and Authorities in Support Thereof.  Pursuant to L.R 5-1(i)(3) regarding

5 signatures, I, Tina Wolfson attest that concurrence in the filing of this document has been obtained.

6

7     Dated: March 25, 2024                          */s/ Tina Wolfson*

8                                                              Tina Wolfson

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR FINAL APPROVAL; MEMO OF POINTS & AUTHORITIES ISO THEREOF
Case No. 5:18-cv-05062-EJD