Theodore H. Frank (SBN 196332)
HAMILTON LINCOLN LAW INSTITUTE
CENTER FOR CLASS ACTION FAIRNESS
1629 K Street NW, Suite 300
Washington, DC 20006
Voice: 703-203-3848
Email: ted.frank@hlli.org

*Attorneys for Objectors John Andren, Matthew Lilley, and Joseph S. St. John*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE: GOOGLE LOCATION HISTORY LITIGATION | Case No. 5:18-cv-05062-EJD<br><br>**SUPPLEMENTAL OBJECTION OF JOHN ANDREN, MATTHEW LILLEY, AND JOSEPH S. ST. JOHN**<br><br>Time:     9:00 A.M.<br>Date:     April 18, 2024<br>Judge:    Hon. Edward J. Davila<br>Courtroom: 4, 5th Floor |
| JOHN ANDREN, MATTHEW LILLEY, and JOSEPH S. ST. JOHN,<br><br>Objectors. | |

**TABLE OF CONTENTS**

TABLE OF CONTENTS ........................................................................................................................i

INTRODUCTION ..................................................................................................................................1

I.   The proposed recipients are so wholly inappropriate that the settlement cannot be approved under Rule 23(e)(2)(c)(ii) or, in the alternative, the proposed recipients cannot be selected. ..................2

II.  None of Plaintiffs' excuses for the all-*cy pres* settlement are legally justified. ............................4

III. Plaintiffs offer no support for their novel argument that a claims process might be invalid under Rule 23(e)(2)(D). ..................................................................................................................6

CONCLUSION ........................................................................................................................................6

## INTRODUCTION

On March 4, 2019, class members John Andren, Matthew Lilley, and Joseph St. John (collectively, "Objectors") filed a timely objection to the proposed settlement and attorneys' fee request in this action. Objectors reserved the right to supplement their objection after Plaintiffs filed their motion for final approval. *See* Dkt. 354 at 20. This was because Plaintiffs had not proposed specific awards for the proposed *cy pres* recipients by the objection deadline, and it was not clear if the list of proposed recipients was final, as Plaintiffs had already added new recipients after the settlement was finalized. *See, e.g.*, Dkt. 352 at 1 (February 14 filing noting new *cy pres* proposal from UCLA). Objectors now file this supplemental objection to address the proposed *cy pres* distribution and points raised in plaintiffs' motion.

Plaintiffs' proposed distribution would give tens of millions of dollars that should go to the class to organizations that engage in work that a substantial percentage of the class would not want to support (such as "racial justice"—a codeword for support for racial discrimination and anti-Semitic policies—and promoting abortion); that target for support only narrow subsets of the class (*e.g.*, computer science undergraduates or "historically marginalized communities") or a population not included in the class at all (*e.g.*, a target population that is "global in scope" or "everyone in the country"); and that have conflicts of interest that made the organizations undeservingly attractive to the parties soliciting and evaluating the proposals. Indeed, Plaintiffs propose directing twice as much as money as to any other organization to three organizations that all engage in extreme left-wing political and ideological work. All three propose using the funds to support a target population that is not aligned with the class, and two of those three have conflicts of interest with the counsel for both parties in the form of co-counsel and *pro bono* relationships. *See* Dkt. 354 at 15; Dkt. 349 at 2; Dkt. 332 at 1-2. While *cy pres* itself is problematic in class action settlements, and Objectors preserve their argument that the Ninth Circuit should set new precedent on a number of related legal issues as described in their objection, this Court can apply existing Circuit precedent to reject the proposed settlement because cash distribution is feasible or because class certification is inappropriate, or the Court can reject the settlement or its proposed recipients as improper due to the numerous deficiencies Objectors have identified.

**I.   The proposed recipients are so wholly inappropriate that the settlement cannot be approved under Rule 23(e)(2)(c)(ii) or, in the alternative, the proposed recipients cannot be selected.**

Plaintiffs attempt to gloss over the impropriety of many of the proposed *cy pres* recipients by claiming that they merely "publicly espouse an interest in promoting racial, social, and environmental justice," Dkt. 356 at 23, when, in fact, several of the proposals would use the funds to unfairly discriminate against Asian and Caucasian individuals on the basis of their race; would support organizations with deep and well-documented anti-Semitism; or would support increasing the number of abortions. Millions upon millions of class members—including Objectors—would be shocked or at least find it unsettling that funds that rightly belong to them are being used for such controversial purposes.

Plaintiffs' claim that the proposed *cy pres* will benefit the class overlooks not only the deeply troubling nature of the organizations but also that many of their proposals for using the *cy pres* money are not targeted to benefit the class of Google users. Objectors detail these concerns in the Declaration of Theodore H. Frank, Dkt. 355 ¶¶ 7-35. Those concerns are identified in the chart below for easier reference, with the organizations in the same order as the allocation proposal (Dkt. 356-1):

| Organization | % | Amount | Conflict of Interest | Mismatched Target Beneficiary | Documented Anti-Semitism or Racism | Extreme Left-Wing Ideological Work* | Failed to Provide Full Information |
|---|---|---|---|---|---|---|---|
| Berkman Klein Center for Internet & Society, Harvard | 4% | $1,500,000 | ☒ | ☒ | ☒ | | ☒ |
| MIT Internet Policy Research Initiative | 4% | $1,500,000 | ☒ | ☒ | ☒ | | |
| New York University's Information Law Institute | 1% | $404,790 | ☒ | ☒ | ☒ | | |
| Yale Law School's Information Society Project | 4% | $1,500,000 | ☒ | ☒ | ☒ | ☒ | |
| Fordham University Center on Law and Information | 2% | $800,000 | ☒ | ☒ | | | |
| Center on Privacy & Tech. at Georgetown Law | 4% | $1,500,000 | ☒ | ☒ | | ☒ | |

| Organization | % | Amount | Conflict of Interest | Mismatched Target Beneficiary | Documented Anti-Semitism or Racism | Extreme Left-Wing Ideological Work* | Failed to Provide Full Information |
|---|---|---|---|---|---|---|---|
| UCLA Institute for Technology, Law & Policy | 4% | $1,500,000 | ☒ | ☒ | ☒ | | |
| The Markup | 7% | $3,000,000 | | ☒ | | | |
| Internet Archive | 5% | $2,000,000 | | ☒ | | | |
| ACLU Speech, Privacy, and Technology Project | 14% | $6,000,000 | ☒ | ☒ | | ☒ | ☒ |
| ACLU of N. Cal. Tech. & Civil Liberties Program | 4% | $1,800,000 | ☒ | ☒ | | ☒ | |
| Center for Democracy & Technology | 6% | $2,500,000 | ☒ | ☒ | | ☒ | |
| ConnectSafely | 1% | $350,000 | | ☒ | | | |
| Electronic Frontier Foundation | 14% | $6,000,000 | ☒ | ☒ | | ☒ | |
| FPF Education & Innovation Foundation | 4% | $1,500,000 | ☒ | ☒ | | | |
| Free Press | 4% | $1,500,000 | ☒ | ☒ | | ☒ | |
| Privacy Rights Clearinghouse | 1% | $350,000 | | ☒ | | | ☒ |
| Data & Society Research Initiative | 4% | $1,500,000 | | ☒ | | ☒ | |
| National Cybersecurity Alliance | 1% | $350,000 | | ☒ | | | |
| Electronic Privacy Information Center (EPIC) | 4% | $1,500,000 | | ☒ | | | ☒ |
| Rose Foundation | 13% | $5,589,243 | | ☒ | | ☒ | ☒ |

\* *E.g.*, abortion, promotion of racial discrimination, transgenderism.

## II. None of Plaintiffs' excuses for the all-*cy pres* settlement are legally justified.

Plaintiffs are wrong to prioritize their personal view that class members must spend their money "to do something" to minimize future privacy violations with the settlement funds. Dkt. 356 at 7. The settlement funds are compensation for past harm, not a down payment toward future action that class members must fund to protect themselves. Indeed, one of the benefits of a class action is that the legal action is itself intended to deter future wrongdoing by the defendant who had to pay a hefty settlement or judgment. Class members almost certainly would prefer to receive cash—which they can use in any way they like—than to be forced to fund organizations to do work that is not even intended to help them in many cases, or they might disagree with, or that may not be efficiently used, in any event. *See, e.g.*, Dkt. 355 ¶ 16 (objecting to Future Privacy Forum's proposal to use their distribution toward "fringe benefits" for staff); *id.* ¶ 17 (objecting to Free Press's proposal to use their distribution toward general expenses, which would mostly be staff payroll).

As Objectors demonstrated by discussing and citing countless other settlements with equal or lower ratios of settlement funds to class members, Plaintiffs are demonstrably wrong that class members would not see any compensation unless the funds are "indirectly" used to benefit them by funding *cy pres*. Numerous settlements with similar or lower ratios have paid class members material amounts through a claims-made process, and new electronic payment methods make such distribution relatively easy and inexpensive to administer. Dkt. 355 ¶¶ 35-39; Dkt. 354 at 7-11.

The cases that Plaintiffs cite to support their argument that the *pro rata* recovery here is *de minimis* and thus justifies *cy pres* distribution are all inapposite. Plaintiffs failed to inform that Court that after *In re Google Referrer Header Privacy Litig.*, 869 F.3d 737 (9th Cir. 2017), was vacated and remanded, the parties reached an amended settlement that distributed about $7.70 in cash to each claiming class member after the parties had argued for years that it was economically infeasible to distribute a fund to a class of Google users totaling 193 million through a claims process. Three of the remaining cases are from over a decade ago, before the advent of inexpensive, electronic financial transfers made distribution of smaller amounts feasible. *See* Dkt. 356 at 16-17 (citing *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990); *In re Google Buzz Privacy Litig.*, No. 10-00672, 2011 WL 7460099 (N.D. Cal. June 2, 2011); *In re Netflix Privacy Litig.*, No. 11-0379, 2013 WL 1120801 (N.D. Cal. Mar. 18, 2013)). And the final case involved only a secondary distribution as *cy pres*

where the class had received a cash distribution. *Id.* (citing *In re Easysaver Rewards Litig.*, 906 F.3d 747 (9th Cir. 2018)).

Google's claim that it is infeasible to identify the individuals who fit the class definition and thus "unusually difficult if not impossible, to verify the validity of theoretical claims based on self-identification" is self-serving and no different than in any class action where, for example, a user purchased a product subject to a class action settlement with cash or witout a saved receipt. Google's concern does not appear to be based on any dispute that Google stored users' location history even when the location history setting was disabled. *See* Dkt. 329. Its concern instead seems to be that Google might not be able to specifically connect a user's real personal identifying information with location history data that it has stored without previously deleting. But that standard is not required. Class members either generally are aware of whether their location history is disabled or can review their account information to determine this information and when it was turned off or on. Given the lack of dispute that Google stored users' location history even when that setting was disabled, all that is needed for class members to self-identify for the purposes of a claims process—as is standard in claims processes—is that the location history setting on their account was disabled. They can do so here, undermining Google's last-minute infeasibility argument.

Plaintiffs devote a short paragraph to identifying only three small ways in which the injunctive relief in the settlement differs from that required by Google's settlement with the State Attorneys General. Dkt. 356 at 9. Their main argument appears to be their unsupported claim that their "negotiations that led to this Settlement's non-monetary terms" were happening before the State AG settlement. That vague assertion doesn't change the fact that the injunctive relief offers no incremental value to the class and, indeed, Plaintiffs offer no proposed valuation of the injunction, nor do they suggest any way for the Court to calculate its value for purposes of either settlement approval or attorneys' fees.

Plaintiffs' argument that class members could opt out if they did not wish to support the *cy pres* recipients is inconsistent with precedent and dishonest with respect to the facts in this case. The deadline for opting out was March 4. Plaintiffs were continuing to modify the proposed *cy pres* list in February and partially disclosing the parties' conflicts on a seeming ongoing basis in the lead up to the deadline. Class members were not informed of the parties' proposal for *cy pres* distribution until after the objection deadline when, for the first time, the parties publicly revealed the proposed allocations to a list of recipients. *See Phillips Petroleum Co.*

*v. Shutts*, 472 U.S. 797, 812 (1985) (due process requires that absent class members "must receive notice plus an opportunity to be heard and participate in the litigation"). Moreover, even if the *cy pres* distribution had been finalized in the settlement agreement and disclosed to the class before the deadline, opt out is an insufficient remedy. Outside the Rule 23-context, and as the Supreme Court held in *Janus* and Objectors preserver to raise in any appeal, forced payments, such as the *cy pres* payment of funds that belong to the class members here, require the "affirmative[] consent" of the class member. *Janus v. Am. Fed'n of State, Cty. & Mun. Employees*, 138 S. Ct. 2448, 2486 (2018); *see also Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 574 (2013) (Alito J., concurring) (failure to respond to "opt-out notices" is not consent). "Ascribing any meaning to silence in response to publication notice is untenable." Debra Lyn Bassett, *Class Action Silence*, 94 Boston U. L. Rev. 1781, 1799 (2014); *accord Redman v. RadioShack Corp.*, 768 F.3d 622, 628 (7th Cir. 2014).

### III. Plaintiffs offer no support for their novel argument that a claims process might be invalid under Rule 23(e)(2)(D).

Finally, Plaintiffs' absurd suggestion that a claims process would violate the Rule 23(e)(2)(D) requirement that class members be treated equitably relative to each other would up-end the entire class action system. Unsurprisingly, they cite zero authority for this argument, and it's obviously wrong. A claims process treats every class member equitably relative to each other because every class member receives notice through the same notice plan and has the same opportunity to claim their *pro rata* portion of the settlement through the same claims process. Rule 23 requires equal treatment, not equal outcome. Thus, in some class actions, the settlement might provide a certain amount of compensation based on the number of purchases a consumer made or another calculation to determine the amount of harm each class member incurred based on a measure that applies equally to every class member. Class members receive equal treatment but not necessarily an equal recovery. So, too, with a claims process that treats all class members equitably, such as that proposed by Objectors.

### CONCLUSION

The court should deny final approval of the settlement, either because the settlement is unfair because distribution is feasible, or because class certification is inappropriate. If the settlement is approved, class counsel is not entitled to fees, and, at a minimum, not entitled to the 30% it has requested.

| | | |
|---|---|---|
| 1 | Dated: April 8, 2024 | Respectfully submitted, |
| 2 | | |
| 3 | | /s/ Theodore H. Frank |
|   | | Theodore H. Frank (SBN 196332) |
| 4 | | HAMILTON LINCOLN LAW INSTITUTE |
|   | | CENTER FOR CLASS ACTION FAIRNESS |
| 5 | | 1629 K Street NW, Suite 300 |
|   | | Washington, DC 20006 |
| 6 | | Voice: 703-203-3848 |
|   | | Email: ted.frank@hlli.org |
| 7 | | |
| 8 | | *Attorneys for Objectors John Andren,* |
|   | | *Matthew Lilley, and Joseph S. St. John* |

PROOF OF SERVICE

I hereby certify that on this day I electronically filed this Objection using the CM/ECF filing system thus effecting service of such filing on all ECF registered attorneys in this case.

DATED this 8th day of April, 2024.

/s/ *Theodore H. Frank*
Theodore H. Frank