| | |
|---|---|
| LIEFF CABRASER HEIMANN & BERNSTEIN, LLP<br>Michael W. Sobol (SBN 194857)<br>msobol@lchb.com<br>Melissa Gardner (SBN 289096)<br>mgardner@lchb.com<br>Michael Levin-Gesundheit (SBN 292930)<br>mlevin@lchb.com<br>Michael K. Sheen (SBN 288284)<br>msheen@lchb.com<br>Jallé H. Dafa (SBN 290637)<br>jdafa@lchb.com<br>John D. Maher (SBN 316157)<br>jmaher@lchb.com<br>275 Battery Street, 29th Floor<br>San Francisco, CA 94111<br>Telephone: 415.956.1000<br>Facsimile: 415.956.1008<br><br>LIEFF CABRASER HEIMANN & BERNSTEIN, LLP<br>Nicholas Diamand (*pro hac vice*)<br>250 Hudson Street, 8th Floor<br>New York, NY 10013<br>Telephone: 212.355.9500<br>Facsimile: 212.355.9592<br><br>*Interim Co-Lead Class Counsel* | AHDOOT & WOLFSON, PC<br>Tina Wolfson (SBN 174806)<br>twolfson@ahdootwolfson.com<br>Theodore Maya (SBN 223242)<br>tmaya@ahdootwolfson.com<br>Bradley K. King (SBN 274399)<br>bking@ahdootwolfson.com<br>Henry J. Kelston (*pro hac vice*)<br>hkelston@ahdootwolfson.com<br>Deborah De Villa (SBN 312564)<br>ddevilla@ahdootwolfson.com<br>2600 West Olive Avenue, Suite 500<br>Burbank, California 91505<br>Tel: 310.474.9111<br>Fax: 310.474.8585<br><br>*Interim Co-Lead Class Counsel* |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE: GOOGLE LOCATION HISTORY LITIGATION | Case No. 5:18-cv-05062-EJD<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Dept: Courtroom 4 - 5th Floor<br>Judge: Hon. Edward J. Davila<br>Date: April 18, 2024<br>Time: 9:00 A.M. |

## TABLE OF CONTENTS

|      |      |                                                                                        | Page |
|------|------|----------------------------------------------------------------------------------------|------|
| I.   |      | INTRODUCTION ......................................................................... | 1    |
| II.  |      | ARGUMENT ............................................................................... | 1    |
|      | A.   | The Proposed *Cy Pres* Recipients All Meet the Nexus Requirement ..... | 2    |
|      | B.   | There Is Nothing Improper About the Timing of Proposed *Cy Pres* Allocations ............................................................................... | 5    |
|      | C.   | The Settlement's Non-Monetary Relief Is a Meaningful Benefit ............ | 6    |
|      | D.   | Plaintiffs Never Argued that a Claims Process Would Violate Rule 23 ... | 7    |
| III. |      | CONCLUSION ............................................................................ | 7    |

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*In re Google Inc. St. View Elec. Commc'ns Litig.*,
  21 F.4th 1102 (9th Cir. 2021) ............................................................................... 1, 2, 5

*Janus v. AFSCME, Council 31*,
  138 S. Ct. 2448 (2018) ................................................................................................ 5

*Lane v. Facebook*,
  696 F.3d 811 (9th Cir. 2012) ...................................................................................... 2

*Nachshin v. AOL, LLC*,
  663 F.3d 1034 (9th Cir. 2011) .................................................................................... 2

*Oxford Health Plans LLC v. Sutter*,
  569 U.S. 564 (2013) .................................................................................................... 5

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985) .................................................................................................... 5

**Rules**

Fed. R. Civ. P. 23(e)(2)(D) ................................................................................................. 6

## I. INTRODUCTION

As Plaintiffs argued in their opening brief, the Court should grant final approval of the Settlement[1] and enter the Final Judgment in this action. The Settlement satisfies all established factors for approval. Attorney Ted Frank's objection to the Settlement should be overruled, and his procedurally improper "Supplemental Objection" only highlights that Mr. Frank's opposition to the Settlement is fundamentally at odds with the best interests of the Settlement Class and with controlling Circuit law. Indeed, Mr. Frank does not once engage with key precedent that forecloses many of his arguments. *See In re Google Inc. St. View Elec. Commc'ns Litig.*, 21 F.4th 1102 (9th Cir. 2021).

## II. ARGUMENT

The Settlement is an excellent result. It will establish a $62 million common fund and requires Google to implement tailored injunctive relief in exchange for resolving class members' claims for violations of their location privacy. Due to the size of the Settlement Class and the correspondingly *de minimis* value of *pro rata* distributions, the Settlement provides for a *cy pres* distribution of the Net Settlement Fund to 501(c)(3) non-profit organizations that have a track record of addressing privacy concerns on the Internet, each of which, as discussed in Plaintiffs' opening brief, has the appropriate "nexus" to the Class and the claims in this litigation. The parties provided notice of the organizations they had identified as candidates to the Court, investigated potential conflicts, and jointly disclosed their findings to the Court and Settlement Class members.

After assuring themselves that each organization would dedicate all *cy pres* funding to furthering the interests of the Class and claims at issue in this case, the Parties proposed specific allocations to each Proposed *Cy Pres* Recipient, subject to Court approval, with Plaintiffs' Motion for Final Approval. These proposed allocations are based upon practical considerations such as the size of each organization, existing staffing and infrastructure, and other information in the specific proposals these organizations submitted. *See* Dkt. 356-2, Decl. of T. Wolfson & M. Sobol at ¶ 13.

---

[1] Capitalized terms in this brief have the meaning ascribed to them in the Settlement Agreement, unless otherwise defined.

Mr. Frank disputes that these organizations are appropriate *cy pres* beneficiaries even though they represent a cross-section of reputable advocacy, public interest, and educational institutions from across the United States that have been engaged in work to further Internet privacy for many years. Mr. Frank disputes that the Net Settlement Fund is non-distributable even though the *pro rata* distribution amounts to less than the value of a postage stamp. Contrary to Mr. Frank's arguments, the Proposed *Cy Pres* Recipients, and the Settlement, are fully appropriate and should be approved, consistent with Ninth Circuit authority. *See e.g.*, *Google Street View*, 21 F.4th at 1112 (affirming that class settlements featuring *cy pres* monetary relief combined with non-monetary injunctive relief, "*can* be appropriate provided they have 'the requisite nexus between the *cy pres* remedy and the interests' of the class members") (emphasis in original) (quoting *Lane v. Facebook*, 696 F.3d 811, 822 (9th Cir. 2012)).

### A. The Proposed *Cy Pres* Recipients All Meet the Nexus Requirement

To help ensure that *cy pres* distributions inure to the benefit of class members, this Circuit imposes a "nexus" requirement, under which such distributions must "account for the nature of the plaintiffs' lawsuit, the objectives of the underlying statutes, and the interests of the silent class members, including their geographic diversity." *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1036 (9th Cir. 2011); *see also Google Street View*, 21 F.4th at 1116 (quoting same). In determining whether the appropriate nexus exists, Courts consider the organization's location and population served, the organization's "relation to the objectives of the underlying statutes," and "how th[e] organization would benefit the plaintiff class." *Nachshin*, 663 F.3d at 1040.

As discussed in Plaintiffs' opening brief, the 21 organizations proposed here are located throughout the country, and their impact, as appropriate for this case, is nationwide. At the forefront of promoting and defending consumer privacy—the interests served by the privacy laws in this action—their efforts to promote Internet privacy are widely known, reflected in their past and ongoing work, and not subject to reasonable dispute. The Settlement Class will benefit significantly through increased funding for the kinds of targeted educational campaigns, investigative reporting, advocacy, and impact litigation these organizations have all successfully done in service of privacy rights for many years. The Settlement *requires* that organizations approved by the Court use any *cy*

*pres* award in furtherance of such work. It also required specific proposals regarding how they would use any funds awarded from this Settlement in order to be considered, and will impose ongoing reporting requirements as the organizations put any funds awarded to them to use. The Settlement thus goes above and beyond to ensure, not only that the requisite nexus exists, but that the organizations have the institutional capacity to serve the Settlement Class effectively through appropriately tailored funding. *See* Dkt. 328-1, Settlement Agmt. ¶ 41.4. These organizations fully satisfy all relevant criteria, and their proposals are consistent with the well-earned reputations that made them appropriate *cy pres* beneficiaries in the first instance.

Mr. Frank claims that his Supplemental Objection is based on the parties' joint proposed allocations to each proposed recipient, but in fact, he opposes nomination of these *organizations*, and the proposal to distribute funds via *cy pres* at all. Neither objection is a proper subject of his supplemental filing because the organizations being considered, potential conflicts, the process for nominations, and the plan to distribute funds via *cy pres* were all fully disclosed, in detail, well before the objection deadline. Mr. Frank acknowledges these facts, as he must. *See* Supp. Obj. at 1.

Mr. Frank's complaints about the organizations are not premised on the allocation recommendations but, rather, on his contentions about the nature of the organizations' work, and he does not suggest that the Court should make alternative allocations to these or other recipients instead. Even if the Supplemental Objection had addressed such issues, it would provide no basis to deny approval to the Settlement. The allocation proposals reflect practical considerations, *i.e.*, each organization's size, existing capacity, budgets, and other indicia of their ability to use funds from this Settlement to advance class members' interests effectively and efficiently. *See* Dkt. 356-2, Decl. of T. Wolfson & M. Sobol at ¶ 13. If the Court determines that any relationship raises substantial questions about a particular suggested award, then the Court can simply allocate funds to other recipients as it may deem appropriate. *See* Dkt. 356 at 23.

Turning to the substance of Mr. Frank's belated additional argument for his original objection, Mr. Frank fails to acknowledge each entity's commitment to use any funds awarded here to serve Settlement Class Members in the United States, instead quoting selectively from a few of their proposals in an effort to mischaracterize how settlement funds would be used. Mr. Frank

quotes from Internet Archive's statement that its activities encourage "universal access to all knowledge" for all people, and thus its overarching mission is "global in scope," but ignores that Internet Archive proposes to deliver privacy-focused "free training and events for a diverse set of affected communities throughout the United States," and has a strong reputation as a source of information about past representations by technology companies concerning privacy and their products here in the United States. Supp. Obj. at 1; Dkt. 356-2, Ex. M. Similarly, Mr. Frank notes that the Center for Democracy and Technology describes the need for increased privacy protections as particularly acute in "historically marginalized communities," but ignores that CDT's legislative, advocacy, and educational work targets consumers nationwide, and that its proposal is entirely consistent with that work. Dkt. 356-2 Ex. D. Mr. Frank's concern that the MIT Internet Privacy Research Initiative's improved privacy curriculum (to be shared freely with other educational institutions) benefits "computer science undergraduates" ignores that those undergraduates are the engineers of the future and will be trained in privacy aware system-design to the benefit of the Settlement Class, in order to help prevent privacy violations in the future. Dkt. 356-2 Ex. O. Indeed, far from benefiting only a "subset of the class," the proposal also contains a project aimed at "end users of consumer-facing services on the web." *Id.* Georgetown's Center for Privacy & Technology's statement that the types of projects it proposes to engage in will "have a positive impact on the future of internet privacy in the U.S., and thus will benefit everyone in the country" is entirely consistent with Settlement Class Members' interests and the purposes of this litigation. *See* Dkt. 356-2 Ex. E.

Mr. Frank also repeats his arguments that the Court should impose additional requirements when considering *cy pres* recipients, and his proposal that the Court adopt a conflict-of-interest standard that the Ninth Circuit has already explicitly rejected. *Compare* Dkt. 354 (Obj.) at 12–20, *with* Supp. Obj. at 2–3. These objections were properly addressed in Plaintiffs' motion for final approval. *See* Dkt. 356 at 17–23.

At bottom, the Proposed *Cy Pres* Recipients were carefully vetted by both Plaintiffs' and Google's counsel, and any objective examination of these organizations and their proposals confirms that the nexus requirement is met. The Parties and their counsel also disclosed any

possibly relevant relationships with any Proposed Cy Pres Recipient. *See* Dkts. 332, 338, 349-50, 352. Counsel selected these Proposed *Cy Pres* Recipients based on the required nexus analysis and made the allocation proposals based on their capacity demonstrated ability to spend certain amounts efficiently in the interests of the class. Mr. Frank's Objection and Supplemental Objection should be overruled.

### B. There Is Nothing Improper About the Timing of Proposed *Cy Pres* Allocations

As discussed above, the Parties timely provided class members with full information regarding the *cy pres* selection process and the Proposed *Cy Pres* Recipients, including each organization's proposal and all possibly relevant relationships with those organizations. *See* Supp. Obj. at 5. Mr. Frank is wrong to suggest that such a disclosure was somehow defective because it did not include the specific amounts that the Parties would eventually *propose* each organization receive. The proposal is not even determinative of any outcome here because the Court, not the Parties, will ultimately decide how much money is distributed to each Approved *Cy Pres* Recipient. Any Settlement Class member concerned that an organization might receive too much, or too little, could have come forward prior to the objection deadline to explain the basis for any such concern. And, to be clear, Mr. Frank objects now, as he did initially, to *all* Proposed *Cy Pres* Recipients, not the specific award the parties propose for any particular organization.

Nonetheless, Mr. Frank suggests that Settlement Class members did not have sufficient notice to opt out or object prior to the deadline. They had the necessary information. There is no requirement that, prior to the deadline to opt out, class members know exactly how much the parties will recommend a particular *cy pres* recipient receive, let alone how much that recipient will actually receive. The sole authority on which Mr. Frank premises this argument requires no such thing: in *Phillips Petroleum Co. v. Shutts*, the Supreme Court held merely that any notice to the class "must be the best practicable, 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" 472 U.S. 797, 812 (1985) (cited in Supp. Obj. at 5-6).

Indeed, where residual funds are distributed to *cy pres* recipients following a claims process, the amount to be distributed *cannot* be known until all claims have been submitted to and vetted by

the claims administrator. Likewise, here, it is impossible to know the precise amounts any recipient might receive without knowing the Court's ultimate allocation decision, as well as the amounts of any Court-awarded Attorneys' Fees and Expenses Award and/or Service Awards. Here, class members were fully apprised of the nature of the Proposed *Cy Pres* Recipients, well beyond what is typically required, before the deadline to make an appearance and object, if they so desired. Only Mr. Frank filed an objection.

Mr. Frank also cites to the Supreme Court's inapposite opinion in *Janus v. AFSCME, Council 31*, 138 S. Ct. 2448 (2018), as somehow requiring absent class members to opt in to this Settlement. (Supp. Obj. at 6.) As Plaintiffs already pointed out in their opening brief, the Ninth Circuit in *Google Street View* explicitly rejected Mr. Frank's reliance on Supreme Court cases like *Janus*, which concerned the extent to which non-union government employees may be compelled to pay fees to public unions. Unlike such cases, "the settlement here involves funds that, regardless of the *cy pres* provisions, could not feasibly be paid to class members." *Google Street View*, 21 F.4th at 1118-19 (distinguishing, *inter alia*, *Janus*).

Mr. Frank's new citation to Justice Alito's concurring opinion in *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564 (2013), *see* Supp. Obj. at 6, is no more helpful to his cause. There, the Court held that an arbitrator did not exceed his powers where he interpreted the parties' arbitration agreement as allowing class-wide arbitration. *Id.* at 565-66. In the concurring opinion that Mr. Frank cites, Justice Alito reasoned that, "unlike petitioner, absent members of the plaintiff class never conceded that the contract authorize[d] the arbitrator to decide whether to conduct class arbitration." *Id.* at 574. In that context, Justice Alito reasoned that "[t]he distribution of opt-out notices does not cure this fundamental flaw." *Id.* The concurring opinion simply has no bearing here, where class arbitration is not at issue.

### C. The Settlement's Non-Monetary Relief Is a Meaningful Benefit

Mr. Frank acknowledges, in response to Plaintiffs' opening brief, that the non-monetary relief obtained by the Settlement is different from the terms agreed upon by state attorneys general in their settlements, which were based upon a subset of the same tracking at issue in this case. *See* Dkt. 356 at 9. Unlike those settlements, this one would require a default auto-deletion period for

Location Information; prohibit Google from "mak[ing] any attempts or efforts to re-identify . . . pseudonymous, anonymous, or de-identified" location information; and require an annual email notice. *See* Dkt. 328-1, Settlement Agmt. Ex. C at ¶¶ 1, 2, 8. It also would provide Settlement Class Members the ability to enforce the provisions in this Court. Mr. Frank contends these features are not additive *enough*. Even if true, that is no basis to deny approval of the Settlement, nor is this aspect of Mr. Frank's Supplemental Objection related in any way to his purported basis for filing it.

### D. Plaintiffs Never Argued that a Claims Process Would Violate Rule 23

In their opening brief, Plaintiffs explained how the proposed Settlement treats Settlement Class Members equitably relative to each other, as required by Rule 23(e)(2)(D). *See* Dkt. 356, Final Approval Mot. at 24-25. Plaintiffs pointed out that the novel lottery-type system Mr. Frank proposed in his original objection—under which, if too many claims were submitted, only randomly sampled claims would be honored (Dkt. 354, Original Obj. at 10)—would not treat Class Members equitably to each other. *See* Dkt. 356, Final Approval Mot. at 24.

Plaintiffs never argued that a normal claims process would violate Rule 23. Rather, Plaintiffs pointed out that, given there are hundreds of millions of potential claimants, it is entirely possible that a *cy pres* distribution nonetheless would be required even were an expensive claims process conducted. (*Id.* at 19-20.) This is undeniably true, and Mr. Frank does not suggest otherwise in his Supplemental Objection.

## III. CONCLUSION

For all the reasons set forth above and in Plaintiffs' original Motion for Final Approval, the Court should grant final approval to the proposed Settlement, enter the proposed final approval order and proposed final judgment submitted by the Parties with that Motion, and close this case.

Dated: April 16, 2024　　　　　　　　　　Respectfully submitted,

By: */s/ Tina Wolfson*
　　**AHDOOT & WOLFSON, PC**
　　Tina Wolfson (SBN 174806)
　　twolfson@ahdootwolfson.com
　　Theodore Maya (SBN 223242)

- 7 -

|   |   |   |
|---|---|---|
| | | tmaya@ahdootwolfson.com |
| | | Bradley K. King (SBN 274399) |
| | | bking@ahdootwolfson.com |
| | | Henry J. Kelston (pro hac vice) |
| | | hkelston@ahdootwolfson.com |
| | | Deborah De Villa (SBN 312564) |
| | | ddevilla@ahdootwolfson.com |
| | | 2600 West Olive Avenue, Suite 500 |
| | | Burbank, California 91505 |
| | | Tel: 310.474.9111 |
| | | Fax: 310.474.8585 |

Dated: April 16, 2024          By:  /s/ Michael W. Sobol

**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
Michael W. Sobol (SBN 194857)
msobol@lchb.com
Melissa Gardner (SBN 289096)
mgardner@lchb.com
Michael Levin-Gesundheit (SBN 292930)
mlevin@lchb.com
Michael K. Sheen (SBN 288284)
msheen@lchb.com
Jallé H. Dafa (SBN 290637)
jdafa@lchb.com
John D. Maher (SBN 316157)
jmaher@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: 415.956.1000
Facsimile: 415.956.1008

**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
Nicholas Diamand (pro hac vice)
250 Hudson Street, 8th Floor
New York, NY 10013
Telephone: 212.355.9500
Facsimile: 212.355.9592

*Interim Co-Lead Class Counsel*

- 8 -

REPLY ISO MOTION FOR FINAL APPROVAL
Case No. 5:18-cv-05062-EJD

## SIGNATURE ATTESTATION

I am the ECF User whose identification and password are being used to file the foregoing Plaintiffs' Reply in Support of Motion for Final Approval of Class Action Settlement. Pursuant to L.R 5-1(i)(3) regarding signatures, I, Tina Wolfson attest that concurrence in the filing of this document has been obtained.

Dated: April 16, 2024   /s/ Tina Wolfson
                        Tina Wolfson