UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE: GOOGLE LOCATION HISTORY LITIGATION | Case No.  5:18-cv-05062-EJD<br><br>**ORDER GRANTING FINAL SETTLEMENT APPROVAL; GRANTING MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS**<br><br>Re: Dkt. Nos. 351, 356 |

Plaintiffs, Napoleon Patacsil, Michael Childs, and Noe Gamboa ("Plaintiffs" or "Settlement Class Representatives"), on behalf of themselves and the Settlement Class as defined below, and Defendant Google LLC ("Defendant" or "Google") (collectively, "the Parties") entered into a Settlement Agreement proposing a settlement of this Consolidated Action and its dismissal with prejudice.  Settlement Agreement, ECF No. 328-1.

Before the Court now are Plaintiffs' Motion for Final Approval of Class Action Settlement ("Motion for Final Approval") and Plaintiffs' Motion for Attorneys' Fees, Expenses, and Class Representative Service Awards ("Motion for Attorneys' Fees").  Mot. for Final Approval, ECF No. 356; Mot. for Attorneys' Fees, ECF No. 351.  The Court received one written objection filed on behalf of three objectors ("Objectors").  Objections, ECF No. 354; Supp. Objections, ECF No. 357.  The Court held a Fairness Hearing on Plaintiffs' motions on April 18, 2024, where the Court heard oral arguments from Plaintiffs, Defendants, and Objectors.  ECF No. 360.

Having considered the motions briefing, terms of the Settlement Agreement, objections, arguments of counsel, and other matters on file in this action, the Court **GRANTS** the Motion for

Final Approval.  The Court finds the Settlement Agreement to be fair, adequate, and reasonable. The provisional appointments of the Settlement Class Representatives and Class Counsel are confirmed.  The Court also **GRANTS** Class Counsel's requests for attorneys' fees, expenses, and service awards.

## I.      BACKGROUND

This is a data privacy class action arising out of Google's alleged tracking and storing of approximately 247.7 million U.S. mobile device users' location data, despite the relevant Google account setting—"Location History"—being disabled.  *See* First Am. Consol. Class Action Compl. ("FAC"), ECF No. 164-1.

After undergoing two rounds of motions to dismiss, the Court ultimately found Plaintiffs adequately pled that Google's alleged conduct gave rise to the following claims: (1) intrusion upon seclusion; (2) violation of the California Constitution's right to privacy; and (3) unjust enrichment.  Order Granting in Part and Den. in Part Mot. to Dismiss, ECF No. 162.  The Parties proceeded to engage in approximately twenty-six months of contentious discovery, requiring participation in regular discovery conferences before Magistrate Judge Cousins.  *See* Decl. of Tina Wolfson and Michael W. Sobol in Supp. of Mot. for Final Approval ("Wolfson & Sobol Decl. ISO Mot. for Final Approval") ¶¶ 22–67, ECF No. 351-1.  The Parties also engaged in three full-day mediation sessions and additional discussions with experienced mediator Professor Eric D. Green, as well as a settlement conference with Magistrate Judge Spero.  *Id.* ¶ 5.  Approximately five years into this litigation, the Parties finally reached their Settlement Agreement.  *See* Mot. for Prelim. Approval of Class Action Settlement, ECF No. 327.

The Court granted Plaintiffs' motion for preliminary approval and provisionally certified the Settlement Class; appointed Tina Wolfson of Ahdoot & Wolfson, PC and Michael W. Sobol of Lieff Cabraser Heimann & Bernstein, LLP as Lead Class Counsel for the Settlement Class; appointed Plaintiffs as Class Representatives; and appointed Epiq Class Action and Claims Solutions, Inc., ("Epiq") as Class Administrator.  Preliminary Approval Order ¶¶ 6, 11, ECF No. 345.

United States District Court
Northern District of California

### A.   Terms of the Settlement Agreement

#### 1.   Class Definition

Pursuant to the provisional class certification in the Court's Preliminary Approval Order, the Settlement Agreement defines the Settlement Class as follows:

> All natural persons residing in the United States who used one or more mobile devices and whose Location Information was stored by Google while "Location History" was disabled at any time during the Class Period (January 1, 2014 through the Notice Date).

Settlement Agreement ¶ 28.

#### 2.   Class Relief

The Settlement Agreement provides both monetary and injunctive relief.

First, Google is obligated to pay $62 million into a non-reversionary common settlement fund.  Settlement Agreement ¶¶ 26.35, 32.  This amount includes attorneys' fees and expenses, Class Representatives' service awards, and the cost of class notice and settlement administration, with the remaining balance to be distributed to *cy pres* recipients.  *Id.* ¶¶ 32, 39–42.  The Parties proposed, subject to the Court's approval, twenty-one *cy pres* recipients who will use the funds to further the data privacy interests of Settlement Class Members nationwide.  *Id.* ¶ 41.  The *cy pres* recipients are all independent 501(c)(3) organizations with a track record of addressing internet and data privacy concerns.  *Id.* ¶ 41.2.  All recipients have provided proposals for the Court's review demonstrating how they will commit to use the funds to promote the protection of data privacy.  *Id.* ¶ 41.2.  As a condition of receiving any portion of the Settlement Amount, each *cy pres* recipient also agreed to provide a report to the Court and the Parties every six months informing the Court and the Parties of how any portion of the Settlement Fund allocated to the recipient has been used and how remaining funds are intended to be used.  *Id.* ¶ 41.4.  Lead Class Counsel will post said reports on the Settlement Website as well.  *Id.*

Second, Google is obligated to implement several business practice changes for a period of at least three years, including sending a notification to all Google users with Location History or Web & App Activity settings enabled that explains how those features collect Location Information, instructs those users on how to disable the settings, and directs them to new web

United States District Court
Northern District of California

pages with content negotiated by Class Counsel.  *Id.*, Ex. C ¶¶ 4, 6.  Google is also required to maintain a policy for at least three years under which Location Information stored through Location History and Web & App Activity is automatically deleted by default after a period no greater than eighteen months when users opt into these settings for the first time, and users can set their own auto-delete periods.  *Id.*, Ex. C ¶ 2.

### 3.    Releases and Dismissal of Action

In exchange for the relief described above, the Settlement Agreement calls for the dismissal of this action with prejudice and includes a general release for all Settlement Class Members, providing that the Releasing Parties:

> shall have, fully, finally and forever released, relinquished, and discharged any and all claims, demands, rights, damages, arbitrations, liabilities, obligations, suits, debts, liens, and causes of action pursuant to any theory of recovery (including, but not limited to, those based in contract or tort, common law or equity, federal, state, or local law, statute, ordinance, or regulation) of every nature and description whatsoever, including without limitation claims that were or could have been asserted by a parent or guardian on behalf of a minor child or ward, ascertained or unascertained, suspected or unsuspected, existing or claimed to exist, including unknown claims as of the Notice Date by all of the Releasing Parties that are based on, or arise from, one or more of the same factual predicates or theories of liability as alleged in the Consolidated Action or the Related Actions during the Class Period, including but not limited to the collection, use, or disclosure of data identifying, comprising, approximating, estimating, inferring, revealing, or relating to the Releasing Parties' location(s) . . . against the Released Parties.

Settlement Agreement ¶ 52; *see also id.* ¶¶ 32, 55–57.

### 4.    Attorneys' Fees and Expenses

The Settlement Agreement provides that the Parties did not discuss or come to any agreements regarding attorneys' fees, expenses, or service awards:

> The Parties did not discuss service award payments or attorneys' fees and expenses at any of those sessions or conferences or while negotiating the material terms of the Settlement Agreement, and they have made no agreements in connection with the Settlement Class Representatives' requests for service award payments or Lead Class Counsel's attorneys' fees and expenses. Defendant expressly reserves the right to contest the amount of any requests for an Attorneys' Fees and Expenses Award or Service Awards.

United States District Court
Northern District of California

1  Settlement Agreement ¶ 63.

2  **B.     Class Notice and Claims Administration**

3  The Settlement Agreement is being administered by Epiq.  Decl. of Cameron R. Azari

4  ("Azari Decl."), ECF No. 356-3.  Following the Court's Preliminary Approval Order, Epiq

5  implemented the Court-approved Notice Plan.  *See id.* ¶ 8.  The Notice Plan included media

6  notice, an internet digital notice campaign, sponsored search listings, an informational release to

7  print and broadcast media, a settlement website, a toll-free telephone number, and a postal mailing

8  address.  *Id.* ¶¶ 10–30.  The Notice Plan generated more than 826 million impressions nationwide

9  to an estimated 80% of the Settlement Class, displayed sponsored "search" listings more than 146

10 thousand times, and delivered an informational release to approximately 5,000 general media news

11 outlets.  *Id.*  ¶¶ 23, 39.  Epiq also sent 57 CAFA notice packages to the appropriate state and

12 federal officials.  *Id.* ¶ 9.

13 **C.     Objections**

14 The Court received one written objection filed by counsel on behalf of the three Objectors.

15 Objections, ECF No. 354; Supp. Objections, ECF No. 357.  Objectors object to the Settlement

16 Agreement's terms providing for *cy pres* distribution and to Plaintiffs' request for attorneys' fees.

17 *See id.*

18 **II.    FINAL APPROVAL OF SETTLEMENT**

19 **A.     Legal Standard**

20 At final approval, the Court must first conduct a "rigorous" analysis to confirm that the

21 requirements for class certification under Rule 23(a) and 23(b)(3) are met.  *Amchem Prods., Inc. v.*

22 *Windsor*, 521 U.S. 591, 619–22 (1997); *In re Hyundai and Kia Fuel Economy Litig.*, 926 F.3d

23 539, 556 (9th Cir. 2019) (citations omitted).  A court may then approve a proposed class action

24 settlement only "after a hearing and only on finding that it is fair, reasonable, and adequate."  Fed.

25 R. Civ. P. 23(e)(2).  In reviewing the proposed settlement, a court must balance several factors to

26 gauge fairness and adequacy, including the following:

27 (1) the strength of the plaintiffs' case; (2) the risk, expense,

28 Case No.: 5:18-cv-05062-EJD
   ORDER GRANTING FINAL APPROVAL; GRANTING ATTORNEYS' FEES AND COSTS

5

United States District Court
Northern District of California

> complexity, and likely duration of further litigation; (3) the risk of
> maintaining class action status throughout the trial; (4) the amount
> offered in settlement; (5) the extent of discovery completed and the
> stage of the proceedings; (6) the experience and views of counsel;
> (7) the presence of a governmental participant; and (8) the reaction
> of the class members to the proposed settlement.

*Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

Furthermore, class settlements reached prior to formal class certification require a "heightened fairness inquiry." *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1049 (9th Cir. 2019). When reviewing such a pre-certification settlement, the district court must not only explore the *Churchill* factors but also "look[] for and scrutinize[] any subtle signs that class counsel have allowed pursuit of their own self-interests . . . to infect the negotiations." *Id.* at 1043 (internal quotation marks omitted).

### B.    Discussion

#### 1.    Class Certification

This analysis begins with an examination of whether class treatment remains appropriate under Rule 23(a) and Rule 23(b)(3).

First, the Court finds that Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequate protection by the Class Representatives remain satisfied. Plaintiffs anticipated a Settlement Class comprised of approximately 247.7 individuals who all share a common injury—breach of data privacy. Mot. for Final Approval 7. The existence of this injury as to each Settlement Class Member could be determined by resolving the same questions: how and why Google stored Location Information, and what Google did or did not disclose to users. Plaintiffs' claims are also typical, if not identical, to that of other Settlement Class members in that the claims against Google all arise from the same nucleus of facts, i.e., thwarted efforts to prevent the storage of Location Information. For that same reason, and in the absence of any facts to the contrary, there is also no indication that Plaintiffs' interests would conflict with that of the Settlement Class such that representation would be inadequate.

Second, as to Rule 23(b)(3), the Court finds that common questions predominate and that

the class action mechanism is a superior process for this litigation.  Common questions of law and fact predominate over any questions affecting individuals here because every Settlement Class Member has been subjected to the same alleged conduct which caused the same type of harm: invasions of their data privacy expectations and Google's wrongful use of their data.  The class action mechanism is also superior here given that the amount in dispute for individual class members is too small, the technical issues involved are too complex, and the required expert testimony and document review is too costly.  *See Just Film, Inc. v. Buono*, 847 F.3d 1108, 1123 (9th Cir. 2017).  The alternatives to class certification—approximately 247.7 million separate, individual and time-consuming proceedings, or a complete abandonment of claims by a majority of class members—are not preferable.[1]

Therefore, the Court finds all factors have been met and the Class shall remain certified for the purposes of the Settlement Agreement.  The Court also reaffirms the appointment of Class Counsel and Class Representatives pursuant to Rule 23(g) for all the reasons identified in its Preliminary Approval Order.  Preliminary Approval Order ¶ 7.

### 2.    Adequacy of Notice

A court must "direct notice [of a proposed class settlement] in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1).  "[T]he class must be notified of a proposed settlement in a manner that does not systematically leave any group without notice." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982).  Adequate notice requires the best notice practicable, whereby the notice must be reasonably calculated to apprise the Settlement Class members of the proposed settlement and of their right to object or to exclude themselves; must constitute due, adequate, and sufficient notice to all persons entitled to receive notice; and must meet all applicable requirements of due process and any other applicable requirements under federal law. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985).  Due process requires "notice reasonably calculated, under all the circumstances, to

---

[1] This finding takes into consideration Objectors' arguments regarding superiority, which the Court addresses in greater detail below.

United States District Court
Northern District of California

apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

The Court finds that the Notice Plan provided the best notice practicable.  Pursuant to the procedures approved by the Court in its Preliminary Approval Order, Epiq carried out the Notice Plan and reached 80% of potential Settlement Class Members, displayed sponsored "search" listings more than 146 thousand times, and delivered an informational release to approximately 5,000 general media news outlets.  The Notice Plan employed methods including (1) social media, (2) sponsored search listings, (3) a settlement website, (4) a toll-free telephone number, and (5) a postal mailing address.  Azari Decl. ¶¶ 23, 39.  The settlement website address was prominently displayed in all notice documents.  *Id.* ¶ 28.  The settlement website contained relevant documents and information including the Class Notice, Complaint, Settlement Agreement, proposals submitted by potential *cy pres* recipients, the Preliminary Approval Order, and the Motion for Attorneys' Fees, Expenses, and Service Awards.  *Id.*  The Settlement Website also included answers to frequently asked questions, instructions for how Settlement Class Members could opt-out or object, instructions for how to obtain other case-related information, and contact information for the Settlement Administrator.  *Id.*  Given the great lengths that Epiq took to notify the Settlement Class and the resulting expansive reach of the Class Notice, the Court finds that the Court-approved Notice Plan has been fully and properly implemented by the Parties and Class Administrator and the Settlement Class has been provided adequate notice of the pendency of this action and the opportunity to opt out or present their objections.

### 3.     Settlement Is Fair and Reasonable

The Court finds that the Settlement Agreement is fair, reasonable, and adequate under the *Churchill* factors.  The Court will analyze each factor in turn.

### a.     Strength of the Case

To assess strength of the case, "the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations and rough justice."  *Officers for Justice*, 688 F.2d at 625 (internal quotations omitted).  There is no "particular formula by which that outcome

1    must be tested," *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009), and the

2    district court is not required to render specific findings on the strength of all claims.  *Lane*, 696

3    F.3d at 823 (9th Cir. 2012).

4         The Court finds that the Settlement Agreement adequately reflects the strength of

5    Plaintiffs' case, as well as Google's position.  The strengths of this case include the large number

6    of potential class members and a body of uncontested facts concerning Google's conduct.  Mot.

7    for Final Approval 15.  However, this litigation presents significant hurdles that could weaken

8    Plaintiffs' case, including the burden on Plaintiffs to provide evidence of "continuous and

9    comprehensive" tracking and storage of Location Information to prevail on its claims for intrusion

10   upon seclusion and invasion of the California constitutional right to privacy, as well as potential

11   challenges to class certification.  Considering Plaintiffs' evidentiary burden and the intricacies of

12   class actions of this magnitude, the Court finds that the judicial policy favoring compromise and

13   settlement of class action suits is applicable here.  *See In re Syncor ERISA Litig.*, 516 F.3d 1095,

14   1101 (9th Cir. 2008).

15                    **b.     Risk, Expense, Complexity, and Likely Duration of Further**
                              **Litigation**
16

17        Plaintiffs maintain that the costs, risks, and delay presented by further litigation, trial, and

18   appeal favor settlement on behalf of the Settlement Class Members, as settlement provides

19   meaningful and certain benefits on a much shorter time frame than otherwise possible.  Mot. for

20   Final Approval 15–16.

21        The Court finds that the risks, expense, complexity, and likely duration of further litigation

22   also support the Court's final approval of the Settlement Agreement.  Plaintiffs faced significant

23   risk of investing further substantial costs and time in this litigation to potentially achieve no

24   recovery on behalf of the Settlement Class.  In addition to the inherent unpredictability of class

25   action consumer data privacy cases against large technology companies, Google may prevail at

26   summary judgment by establishing it did not continuously and comprehensively track class

27   members throughout the Class Period, and Google may prevail at class certification by

28   Case No.: 5:18-cv-05062-EJD
     ORDER GRANTING FINAL APPROVAL; GRANTING ATTORNEYS' FEES AND COSTS

United States District Court
Northern District of California

1    establishing that individualized issues regarding consent or the reasonable expectation of privacy

2    would predominate.  Further, even if Plaintiffs successfully proved their case at trial, the claims in

3    this litigation provide no guarantee of a substantial damages award.  If anything were recovered, it

4    could take years to secure, as Google would likely appeal any adverse judgment.  Given Google's

5    maintenance of no liability, the complexity of the underlying claims, the lack of guarantee for

6    substantial damages, and the additional time and expense further litigation undoubtable would

7    create, the Court finds that a negotiated resolution under these circumstances was proper.  *See,*

8    *e.g.*, *Lane*, 696 F.3d at 820 (affirming the district court's approval of a settlement where class

9    counsel "reasonably concluded that the immediate benefits represented by the Settlement

10    outweighed the possibility—perhaps remote—of obtaining a better result at trial"); *Class Plaintiffs*

11    *v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (stating that the Ninth Circuit has a "strong

12    judicial policy that favors settlements, particularly where complex class action litigation is

13    concerned").

14          c.       **Risk of Maintaining Class Action Status Throughout Trial**

15          Although a class can be certified for settlement purposes, the notion that a district court

16    could decertify a class at any time is an inescapable and weighty risk that weighs in favor of a

17    settlement.  *See Rodriguez*, 563 F.3d at 966 (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147,

18    160 (1982)).  Here, Google maintains no liability, thereby leading the Court to believe that they

19    would have opposed class certification when the time arose and would have raised challenges to

20    class certification based on overbreadth or management difficulties, some of which could be

21    considered meritorious.  Thus, the very real risk of never obtaining or losing class status in the

22    absence of settlement weighs in favor of approval.

23          d.       **Amount Offered**

24               i.       **Monetary and Injunctive Relief**

25          The Court finds that the monetary and injunctive relief is fair, adequate, and reasonable.

26    Under the terms of the Settlement Agreement, Google will pay $62 million into a non-

27    reversionary common settlement fund, which includes attorneys' fees and costs, the cost of class

28    Case No.: 5:18-cv-05062-EJD
     ORDER GRANTING FINAL APPROVAL; GRANTING ATTORNEYS' FEES AND COSTS
     10

United States District Court
Northern District of California

1 notice and settlement administration, and the Class Representatives' service award, with the

2 remaining funds to be distributed to the twenty-one proposed *cy pres* recipients, subject to Court

3 approval.  Settlement Agreement ¶¶ 26.35, 32, 39–42.  The Settlement Agreement also provides

4 that Google must implement several business practice changes for a period of at least three years,

5 including, sending a notification to all Google users with Location History or Web & App Activity

6 settings enabled that explains how those features collection Location Information, instructs those

7 users on how to disable the settings, and directs them to new web pages with content negotiated at

8 length by Class Counsel.  *Id.*, Ex. C ¶¶ 4, 6.  Google is also required to maintain a policy for three

9 years of automatically deleting Location Information stored through Location History and Web &

10 App Activity after a period no greater than eighteen months when users opt into these settings for

11 the first time, and allowing users to set their own auto-delete periods.  *Id.*, Ex. C ¶ 2.  The Court

12 finds that the amount of the agreed-upon settlement fund and the injunctive relief provides

13 meaningful benefits to the Settlement Class and compares favorably to that of other similar class

14 actions.  *See, e.g., In re Google LLC St. View Elec. Commc'ns Litig.*, 611 F. Supp. 3d 872, 891

15 (N.D. Cal. 2020), *aff'd sub nom. In re Google Inc. St. View Elec. Commc'ns Litig.*, 21 F.4th 1102

16 (9th Cir. 2021) (60-million-person class size and $13 million settlement fund with injunctive

17 relief).

18                              **ii.     *Cy Pres* Distribution**

19          The Ninth Circuit permits a *cy pres* distribution in circumstances where the settlement fund

20 is "non-distributable," meaning "proof of individual claims would be burdensome or distribution

21 of damages costly."  *Lane*, 696 F.3d at 819.  An individual claims process is "burdensome" where

22 "each class member's recovery under a direct distribution would be *de minimis*."  *Id.* at 825.  The

23 relevant "recovery" for this assessment is determined with respect to the class as a whole, and

24 courts in this Circuit use each class member's pro rata share of the settlement fund as a key metric

25 in evaluating the fairness of distributing settlement funds by *cy pres*.  *See, e.g., In re Google*

26 *Referrer Header Priv. Litig.*, 869 F.3d 737, 742 (9th Cir. 2017), *vacated and remanded on other*

27 *grounds, Frank v. Gaos*, 139 S. Ct. 1041 (2019) (affirming finding of non-distributability where

28 Case No.: 5:18-cv-05062-EJD
ORDER GRANTING FINAL APPROVAL; GRANTING ATTORNEYS' FEES AND COSTS

1    net settlement fund could provide only four cents in recovery to each settlement class member); *In*

2    *re Easysaver Rewards Litig.*, 906 F.3d 747 (9th Cir. 2018) (finding a second distribution to be de

3    minimis when there were over one million potential class members, but only three million dollars

4    in available funds (i.e., approximately $3 per class member)); *Six (6) Mexican Workers v. Ariz.*

5    *Citrus Growers*, 904 F.2d 1301, 1305 (9th Cir. 1990) ("When a class action involves a large

6    number of class members but only a small individual recovery, the cost of separately proving and

7    distributing each class member's damages may so outweigh the potential recovery that the class

8    action becomes unfeasible . . . . '[C]y pres' distribution avoids these difficulties.").

9           The Court finds *cy pres* distribution appropriate in this case.[2]   The total Settlement Fund

10   before deducting any award of attorneys' fees, expenses, administrative costs, and service awards

11   is $62 million.  Given the approximate 247.7 Settlement Class Members, the resulting pro rata

12   recovery per Class Member could be no more than twenty-five cents, assuming the Court awards

13   no attorneys' fees, service awards, or administration costs.  This *de minimis* recovery would be

14   further diminished when considering the additional administrative costs associated with

15   distributing funds to a class of this magnitude.  For example, the Class Administrator estimates

16   that even distributing funds to 1% of the Settlement Class would consume an additional $1.9

17   million from the Settlement Fund.  Azari Decl. ¶¶ 34–37.  This 25 cent distribution, considered in

18   combination with the exorbitant costs this distribution would entail,  is "non-distributable" under

19   the Ninth Circuit's precedents cited above.  *See also, e.g., In re Netflix*, No. 11-00379, 2013 WL

20   1120801, at *7 (N.D. Cal. Mar. 18, 2013) (approving *cy pres* award where "[g]iven the sheer size

21   of the Class . . . each Class member would receive a de minimis payment in the event of a direct

22   class cash payout"—there, a $9 million fund and 62 million class members (approximately fifteen

23   cents per class member before fees and other expenses)); *In re Google Buzz Privacy Litig.*, No. 10-

24   00672, 2011 WL 7460099, at *4 (N.D. Cal. June 2, 2011) (approving *cy pres*-only settlement).

25   The Court finds that the proposed method of distribution therefore "satisf[ies] the appropriate

26

27   [2] This finding takes into consideration Objectors' arguments regarding distributability, which the
     Court addresses in greater detail below.

28   Case No.: 5:18-cv-05062-EJD
     ORDER GRANTING FINAL APPROVAL; GRANTING ATTORNEYS' FEES AND COSTS

United States District Court
Northern District of California

1   standards for fairness." *See Google Street View*, 21 F.4th at 1114.

2   ### iii.     *Cy Pres* Recipients

3       The Ninth Circuit employs the substantial nexus test for determining whether *cy pres*

4   recipients are fair, adequate, and reasonable.  *Lane*, 696 F.3d at 820–21.  This test requires the

5   Court to analyze whether the *cy pres* distribution bears a substantial nexus to the interests of the

6   class members, accounting for the nature of the lawsuit, the objectives of the underlying statutes,

7   and the interests of the silent class members.  *Id.*

8       Upon careful review of the *cy pres* proposals, the Court is satisfied that the *cy pres*

9   distribution bears a substantial nexus to the interests of the Settlement Class Members in the

10  specific areas of data privacy that were raised in this case.[3]  *See* Decl. of Tina Wolfson and

11  Michaels Sobol in Supp. of Mot. for Final Approval of Class Action Settlement ("Joint Decl. ISO

12  Final Approval"), Ex. A–U, ECF No. 356-2.  The Settlement Class suffered a common injury—

13  breach of data privacy.  The *cy pres* recipients have documented their commitment to use their

14  portion of the Settlement Fund solely to fund their efforts to advocate for the protection of data

15  privacy, as well as enhancing public knowledge of internet data privacy issues.  *See id.*  The Court

16  was particularly impressed by programs such as MIT's privacy research initiative, Yale's

17  fellowships, Fordham's privacy education program, Internet Archive's data privacy workshops,

18  Free Press's data and society research, and National Cyber Security alliance's programming and

19  partnering with women in cyber security.  *Id.*, Ex. J, M, O, P, U.  In accordance with the Court's

20  careful review of the *cy pres* proposals, the Court made modifications to counsel's proposed

21  allocations during the Fairness Hearing, as is reflected in Exhibit A attached to this Order.  The

22  Court also appreciates counsel's efforts to identify and propose organizations who have never

23  received a *cy pres* award before and whose valuable data privacy work would especially benefit

24  from the distributed funds, including organizations such as the Markup and Internet Archive.  *Id.*,

25  Ex. M, N.  The Court finds that the *cy pres* recipients will appropriately use the Settlement Fund to

26

27  ---
    [3] This finding takes into consideration Objectors' arguments regarding the appropriateness of the
    *cy pres* recipients, which the Court addresses in greater detail below.

28

further their advocacy for data privacy nationwide such that the Settlement Class will ultimately enjoy greater data privacy protections as a result.

Therefore, because the Court is satisfied with the relief acquired, the *cy pres* distribution method, and the *cy pres* recipients, the Court finds that this factor favors approval.

### e.  Extent of Discovery

Prior to reaching the Settlement Agreement, the Parties engaged in approximately twenty-six months of contentious discovery, requiring participation in regular discovery conferences with Magistrate Judge Cousins.  *See* Wolfson & Sobol Decl. ISO Mot. for Final Approval ¶¶ 22–67, ECF No. 351-1.  The Court finds that the amount of investigation and discovery conducted shows that the Parties had adequately developed a perspective on the strengths and weaknesses of their respective cases to "make an informed decision about settlement."  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (quoting *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998)).

### f.  Experience and Views of Counsel

"Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation."  *Rodriguez*, 563 F.3d at 967.  Consequently, "'[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness.'"  *In re Omnivision Techns., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2009) (quoting *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979)).  Given the extensive experience of Class Counsel with complex class action lawsuits of a similar size to the instant case, the Court finds that this factor also favors approval of the settlement.  *See* Wolfson & Sobol Decl. ISO Mot. for Final Approval, Ex. B, C.

### g.  Presence of a Governmental Participant

The Class Action Fairness Act, or "CAFA," requires that notice of a settlement be given to state and federal officials and provides those officials a window of time to comment.  28 U.S.C. § 1715(b).  "Although CAFA does not create an affirmative duty for either state or federal officials to take any action in response to a class action settlement, CAFA presumes that, once put on

United States District Court
Northern District of California

notice, state or federal officials will raise any concerns that they may have during the normal course of the class action settlement procedures." *Garner*, 2010 WL 1687832, at *14.

No governmental agency is involved in this litigation.  The Attorney General of the United States and Attorneys General of each State have been notified of the proposed Settlement pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715, and had an opportunity to raise any concerns or objections.  Azari Decl. ¶ 8.  No objections have been made by the government to date.  Thus, this factor favors the settlement.

### h.    Reaction of Class Members to the Proposed Settlement

"[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."  *In re Omnivision Techs., Inc.*, 559 F.Supp.2d 1036, 1043 (N.D. Cal. 2008) (citation omitted); *see also Churchill Vill.*, 361 F.3d at 577 (holding that approval of a settlement that received 45 objections (0.05%) and 500 opt-outs (0.56%) out of 90,000 Settlement Class members was proper).  The reaction of the class was overwhelmingly positive.  Out of the estimated 247.7 million class members, the Court received only three objections and nine requests for exclusion.  Azari Decl. ¶¶ 29, 30; Notice of Filing of Updated Report, ECF No. 59.  Therefore, the Court finds that this factor favors settlement.

In sum, all the applicable factors weigh in favor of finding that the Settlement Agreement is fair and reasonable.

### 4.    Collusion

The Ninth Circuit has articulated the following "subtle signs" of collusion of which a court should be "particularly vigilant" when scrutinizing settlements achieved prior to class certification: (1) "when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded"; (2) "clear sailing" arrangements; and (3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund."  *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011) (internal quotations and citations omitted).

The Court finds that there is no evidence of conflicts of interest nor are there "subtle signs" of collusion here. The Settlement Agreement was reached only after hard-fought arm's-length negotiations between experienced counsel, including three full-day mediation sessions and additional discussions with experienced mediator Professor Eric D. Green, as well as a settlement conference with Magistrate Judge Spero and other continued negotiations. Wolfson & Sobol Decl. ISO Mot. for Final Approval ¶ 5. Professor Eric D. Green and Judge Spero's involvement demonstrates, in part, non-collusive conduct. *See G. F. v. Contra Costa Cnty.*, No. 13-cv-03667, 2015 WL 4606078, at *13 (N.D. Cal. July 30, 2015) ("[T]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.") (internal quotation marks and citation omitted). The Parties also did not reach an agreement regarding the amount of attorney's fees to which they were entitled. *See In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 570 (9th Cir. 2019). Rather, the attorneys' fees will be provided from the Settlement Fund, indicating that the parties have not negotiated a "clear sailing" arrangement,[4] which "carries the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class." *Bluetooth*, 654 F.3d at 947 (internal quotation marks omitted).

### 5. Objections

Counsel for the three Objectors filed one written objection to the Motion for Final Approval. Objections, ECF No. 354; Supp. Objections, ECF No. 357 (supplement to original objection). Objectors make two categories of arguments: (1) settlements distributing all monetary relief to *cy pres* recipients are unlawful; and (2) the *cy pres* recipients in this matter are improper.

The Court **OVERRULES** these objections for the following reasons.

---

[4] The Court is puzzled by Objectors' claim that the Settlement Agreement contains a "sizable clear-sailing attorneys' fee." Objections 20. Objectors have failed to even attempt to point the Court to any provision of the Settlement Agreement suggesting a clear sailing agreement. To the contrary, the Settlement Agreement explicitly contains a clause indicating that the Parties have made no agreements regarding Class Counsel's attorneys' fees and expenses, and Google expressly reserved the right to contest the amount of any requests for attorneys' fees, expense awards, or service awards. Settlement Agreement ¶ 63.

### a.   *Cy Pres* **Settlements**

The Ninth Circuit has expressly rejected nearly all of Objectors' arguments regarding *cy pres* settlements in *In re Google Inc. St. View Elec. Commc'ns Litig.* ("*Google Street View*"), where Objectors' same counsel appeared on behalf of the objectors to the *Google Street View* settlement.  *See Google Street View*, 21 F.4th at 1113 ("As a threshold issue, we reject the suggestion that a district court may not approve a class-action settlement that provides monetary relief only in the form of *cy pres* payments to third parties. We have repeatedly approved such settlements, and therefore adopting a blanket rule against these arrangements . . . would be incompatible with our precedents in which we have recognized that *cy pres* awards are an acceptable solution when settlement funds are not distributable.") (citations omitted).  It is Objectors' belief that this Court has the discretion to decide whether it would like its Order to follow "some Ninth Circuit rule that contradicts common sense."  Tr. of Proceedings Held 4/18/2024 ("Tr.") 27:17–19.  Quite the opposite, it is the Court's duty to adhere to binding Ninth Circuit precedent, and the Court does not intend to flout that duty today.

First, Objectors argue that *cy pres* distribution is not appropriate here because payment to the Settlement Class Members is feasible[5] through claims-based distribution, which they estimate would be approximately 1.5%.  Objections 10.  The Ninth Circuit explicitly rejected Objectors' argument that the standard for feasibility asks only whether *some* members could receive a payment through claims-based distribution:

> [Objectors' counsel] argues that the district court applied the wrong standard for determining feasibility by asking "whether it is feasible to hand-deliver checks to every single class member" instead of focusing on "the ability of *some* class members to make a claim." We disagree. [Objectors' counsel] cites no authority indicating that a district court must consider only whether settlement funds are distributable to "some" of a class, nor does he explain what proportion of a class would satisfy his proposed "*some* class members" test.

---

[5] The Court notes that "feasible" is not, as Objectors repeatedly suggested during the Fairness Hearing, a synonym for "impossible" in this context.  *See, e.g., Six (6) Mexican Workers*, 904 F.2d at 1305 ("When a class action involves a large number of class members but only a small individual recovery, the cost of separately proving and distributing each class member's damages may so outweigh the potential recovery that the class action becomes unfeasible . . . . '[C]y pres' distribution avoids these difficulties.").

1    *Google Street View*, 21 F.4th at 1114 (emphasis in original).

2         The Court reiterates its finding discussed above that, given the estimated 247.7-million-

3    person class size and the $62 million Settlement Fund, and given the challenges and exorbitant

4    expense in identifying and distributing funds to class members, distribution of the settlement funds

5    directly to Settlement Class Members is infeasible.  Whether distribution would be feasible to only

6    *some* of the class through a claims-based or lottery system is simply not the proper inquiry.  *See,*

7    *e.g., Lane*, 696 F.3d at 820–21 ("[The Ninth Circuit does] not require as part of that doctrine that

8    settling parties select a *cy pres* recipient that the court or class members would find ideal. On the

9    contrary, such an intrusion into the private parties' negotiations would be improper and disruptive

10   to the settlement process.").  While Objectors are correct that the Ninth Circuit in *Google Street*

11   *View* affirmed the district court's finding that the settlement fund was non-distributable by

12   focusing on the infeasibility of verifying claims, Objectors cannot escape the Ninth Circuit's

13   rejection of their underlying theory that courts must find distribution to the class feasible when

14   distribution would be feasible to only some of the class.  And regardless, even if the Court were to

15   apply Objectors' improper standard, distribution to some of the class may very well still be

16   infeasible when accounting for the necessary increase in administrative costs—the Class

17   Administrator estimates that a 1% claims rate would consume $1.9 million of the common fund; a

18   3% claims rate $4 million; and a 7% claims rate $8.2 million.  Azari Decl. ¶¶ 34–37.  The Court

19   also notes Google has put forward evidence that, similar to *Google Street View*, its "data-

20   collection practices and systems make it infeasible to identify the individuals who fit this class

21   definition."  Decl. of Daniel Talavera ¶ 3, ECF No. 329.

22        Second, Objectors argue that if the Settlement Class is too large to directly distribute

23   funds, then the class action mechanism is not superior to individual lawsuits.  Objections 21–22.

24   Objectors' argument ultimately relies on the falsehood that *cy pres* distribution is not a benefit to

25   the class—another argument explicitly rejected by the Ninth Circuit: "In upholding the validity of

26   *cy pres* arrangements, we have repeatedly recognized that class members *do* benefit—albeit

27   indirectly—from a defendant's payment of funds to an appropriate third party."  *Google Street*

*View,* 21 F.4th at 1115.  Notably, the Ninth Circuit's approach is shared by multiple other circuits. *Id.* at 1113–14 ("In declining to impose a categorical ban on a settlement that does not include direct payments to class members, we note that other circuits have generally taken a similar approach to ours, approving *cy pres* settlements when they satisfy the appropriate standards for fairness.") (citation and internal quotations omitted, cleaned up) (citing *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 934 F.3d 316, 326 (3d Cir. 2019) (rejecting the argument that "*cy pres*-only settlements are unfair per se under Rule 23(e)(2)" and recognizing that "[i]n some cases a *cy pres*-only settlement may be proper"); *In re Lupron Mktg. & Sales Pracs. Litig.*, 677 F.3d 21, 31–34 (1st Cir. 2012); *Powell v. Ga.-Pac. Corp.*, 119 F.3d 703, 706–07 (8th Cir. 1997)); *see also, e.g., Hyland v. Navient Corp.*, 48 F.4th 110, 121–22 (2d Cir. 2022), *cert. denied sub nom. Yeatman v. Hyland*, 143 S. Ct. 1747, 215 L. Ed. 2d 648 (2023), *and cert. denied sub nom. Carson v. Hyland,* 143 S. Ct. 1747 (2023).

Third, Objectors argue that the Settlement Agreement violates the First Amendment's prohibition on compelled speech by distributing class settlement funds to organizations who take lobbying positions adverse to the three Objectors' own interests and beliefs.[6]  Objections 2. Again, the Ninth Circuit explicitly rejected this argument, finding that there is no compelled speech in such settlements because class members can opt out.  *Google Street View,* 21 F.4th at 1118 ("[W]e hold that the settlement agreement does not compel class members to subsidize third-party speech because any class member who does not wish to 'subsidize speech by a third party that he or she does not wish to support,' *Harris v. Quinn*, 573 U.S. 616, 656, 134 S. Ct. 2618, 189 L.Ed.2d 620 (2014), can simply opt out of the class.").

---

[6] While Objectors represented to the Court during the Fairness Hearing that they "never used the words First Amendment," their filings present otherwise.  *See, e.g.,* Objections 2 ("Even more fundamentally, *cy pres* without the affirmative consent of class members constitutes compelled speech in contravention of the First Amendment."); 12 ("Without class members' affirmative election, *cy pres* constitutes compelled speech in violation of the First Amendment . . . . It is not enough that class members may exclude themselves from the class; silence is not consent and a waiver of First Amendment rights 'cannot be presumed.'"); 14 ("Again, class distributions are feasible here. But either way, approving the settlement's *cy pres* provision would violate the First Amendment.").

Case No.: 5:18-cv-05062-EJD
ORDER GRANTING FINAL APPROVAL; GRANTING ATTORNEYS' FEES AND COSTS

United States District Court
Northern District of California

Finally, Objectors argue that representation was inadequate because counsel failed to advise class members of the superiority of opting out en mass.  Objections 21.  The Ninth Circuit also explicitly rejected this argument:

> [Objectors' counsel's] fiduciary duty arguments are simply a repackaging of his other arguments against the settlement . . . . Because we affirm the district court's finding that the settlement *does* provide adequate value to the class, and because there is no indication that counsel accepted excessive attorneys' fees or favored third parties over class members, we hold that class counsel and class representatives did not breach their fiduciary duties by entering the settlement.") (emphasis in original).  Again here, Objectors rely on the falsehood that *cy pres* distribution is not a benefit to the class, which for all the reasons discussed above, is simply not the law.

*Google Street View*, 21 F.4th at 1122 (emphasis in original).  Objectors have provided no distinguishing facts regarding representation in this case to justify a finding that differs from the Ninth Circuit's order.

### b.    *Cy Pres* **Recipients**

Objectors also raise a series of arguments that the *cy pres* recipients here are improper for this particular class action.  Similarly, many of Objectors' arguments regarding *cy pres* recipients mirror those that have been rejected by the Ninth Circuit in *Google Street View*.

As an initial matter, the Court reiterates that the law in the Ninth Circuit for determining whether *cy pres* recipients are fair, adequate, and reasonable is the substantial nexus test, whereby the Court analyzes whether the *cy pres* distribution bears a substantial nexus to the interests of the class members and must account for the nature of the lawsuit, the objectives of the underlying statutes, and the interests of the silent class members.  *Lane*, 696 F.3d at 820–21.  Objectors attempt in error to apply a standard for analyzing *cy pres* recipients from the American Law Institute's Principles of the Law of Aggregate Litigation and out-of-circuit authority which, yet again, the Ninth Circuit has explicitly rejected.

> Citing the American Law Institute's Principles of the Law of Aggregate Litigation and out-of-circuit authority, [Objectors' counsel] argues that "[t]he correct legal standard" for approving a proposed *cy pres* recipient is whether "any party has any significant prior affiliation with the intended recipient that would raise

United States District Court
Northern District of California

> substantial questions about whether the award was made on the merits." But we have never adopted [Objectors' counsel's] expansive proposed test, and [Objectors' counsel] cites no binding authority that would have precluded the district court from approving the *cy pres* recipients here.

*Google Street View*, 21 F.4th at 1120.  Thus, the Court will continue its analysis applying the proper substantial nexus test.

First, Objectors argue that the *cy pres* recipients are improper because of preexisting relationships between themselves and the Parties' counsel.  Objections 15, 18–19.  For example, Objectors maintain that attorneys on both sides have attended Harvard, Yale, Fordham, MIT, UCLA, and Georgetown; have represented the Regents of the University of California, the governing body of UCLA; and have connections with the ACLU and Electronic Frontier Foundation in the form of having provided pro-bono services and served as co-counsel in the past. *Id.* at 15.  Objectors also argue that, because Google already provides funding to some *cy pres* recipients, Google would financially benefit from the *cy pres* distribution because it would allow Google to direct fewer financial resources to those recipients.  *Id.*

The Court finds that Objectors have failed to show how counsel's relationships with the proposed *cy pres* recipients or Google's prior funding render the recipients improper.  The relationships Objectors highlight between counsel and various recipients do not raise substantial questions about whether any particular recipient was proposed based on the recipient's merits.  As the Court described above, and will discuss again below, the Court has independently reviewed all *cy pres* recipient proposals and found a substantial nexus between their proposed work and the Settlement Class here.  Both Parties have also explicitly provided in the Settlement Agreement that they will not exercise control or influence over any recipient's expenditure of *cy pres* funds other than monitoring the recipients' reports to ensure compliance with the Settlement, *id.* ¶ 41.5, and the Court notes that the Ninth Circuit has affirmed *cy pres* provisions involving much closer relationships than those alleged here.  *See, e.g., Lane*, 696 F.3d at 817 (affirming *cy pres* recipient whose board of directors consisted of counsel for both the plaintiff and defendant).  Google's prior funding of some recipient groups also does not disqualify those organizations as *cy pres* recipients.

1   *See, e.g., Google Street View,* 21 F.4th at 1119 ("We have never held that merely having

2   previously received *cy pres* funds from a defendant, let alone *other* defendants in unrelated cases,

3   disqualifies a proposed recipient for all future cases.").  And further, Google explicitly agreed in

4   the Settlement Agreement that any *cy pres* distributions would be in addition to its ordinary

5   charitable giving.  Settlement Agreement ¶ 38.

6          Second, Objectors argue that the *cy pres* recipients do not align with the interests of the

7   Settlement Class because, in addition to their data privacy work, they also engage in political

8   advocacy for causes to which Objectors disagree, as well as "other policy work that attracts less

9   heated controversy but still is not universally agreed upon."  Objections 16.

10          As described in greater detail in the prior section, the Court finds that the *cy pres* recipients

11   satisfy the Ninth Circuit's substantial nexus test and is satisfied by the *cy pres* recipients'

12   proposals documenting their commitment to use their portion of the Settlement Fund solely to

13   fund their efforts to advocate for the protection of data privacy, as well as enhance public

14   knowledge of the issues impacting data privacy.  The Court reminds Objectors here, as it did

15   during the Fairness Hearing, that the Court acts as a fiduciary for the Settlement Class, and part of

16   that fiduciary obligation is to ensure that the Settlement Funds are being used for the purposes

17   described by the Settlement Agreement.  While some of the *cy pres* recipient organizations also

18   advocate for various issues outside of their data privacy work,[7] the Court is confident in its

19   abilities to review the required bi-annual reports and effectively police the grants that the Court

20   itself authorizes to ensure that funds are not being used outside of the perimeters assigned in their

21   Court-approved proposals.  The Court also notes that its confidence extends past the abilities of

22   the Undersigned and reflects the abilities of the judiciary at large, which is assigned the

23   responsibility to call upon its equitable protocols, policies, and precedent to ensure that the

24   Settlement Class continues to be protected and served by the benefits acquired in the present

25

26

27   [7] Notably, the Court also finds it hard to imagine any *cy pres* recipient which could possibly meet
Objectors' standard of only engaging in "universally agreed upon" policy work.  Objections 16.

28   Case No.: 5:18-cv-05062-EJD
ORDER GRANTING FINAL APPROVAL; GRANTING ATTORNEYS' FEES AND COSTS

1   Settlement Agreement.[8]

2          For these and all other reasons stated on the record, the Court finds that Objectors have not

3   shown how the *cy pres* recipients fail to meet the substantial nexus test, and the Court maintains

4   that the *cy pres* recipients are fair, adequate, and reasonable.

5   **III.   ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS**

6          Attorneys' fees and expenses may be awarded in a certified class action under Federal Rule

7   of Civil Procedure 23(h).  Such fees must be found "fair, reasonable, and adequate" in order to be

8   approved.  Fed. R. Civ. P. 23(e); *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003).  To

9   "avoid abdicating its responsibility to review the agreement for the protection of the class, a

10  district court must carefully assess the reasonableness of a fee amount spelled out in a class action

11  settlement agreement." *Id.* at 963.  "[T]he members of the class retain an interest in assuring that

12  the fees to be paid class counsel are not unreasonably high," since unreasonably high fees are a

13  likely indicator that the class has obtained less monetary or injunctive relief than they might

14  otherwise. *Id.* at 964.

15         The Court analyzes an attorney's fee request based on either the "lodestar" method or a

16  percentage of the total settlement fund made available to the class, including costs, fees, and

17  injunctive relief. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).  The Ninth

18  Circuit encourages courts to use the lodestar method as a cross-check in order to avoid a

19  "mechanical or formulaic approach that results in an unreasonable reward." *In re Bluetooth*, 654

20  F.3d at 944–45 (citing *Vizcaino,* 290 F.3d at 1050–51).

21         Here, Class Counsel requests $18.6 million in attorneys' fees.  Google does not oppose the

22  fee request.  Objectors object to the attorneys' fees request.  For the reasons explained below, the

23  Court finds this request fair, reasonable, and adequate.

24         **A.      Percentage of the Fund**

25         When using the percentage of the fund method, courts consider a number of factors,

26

27  _____
    [8] The Court emphasizes this point in response to Objectors' query during the Fairness Hearing,
    "what happens if you leave the bench and your successor doesn't want to do it?" Tr. 35:21–23.

28  Case No.: 5:18-cv-05062-EJD
    ORDER GRANTING FINAL APPROVAL; GRANTING ATTORNEYS' FEES AND COSTS

United States District Court
Northern District of California

1  including the results achieved, the risk, counsel's performance, the burdens of litigation, and

2  whether the case was handled on a contingency basis.  *In re Online DVD-Rental Antitrust Litig.*,

3  779 F.3d 934, 954–55 (9th Cir. 2015) (quoting *Vizcaino*, 290 F.3d at 1047–50).  "[T]he most

4  critical factor [in determining appropriate attorney's fee awards] is the degree of success

5  obtained."  *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983).  Under the percentage of the fund

6  method, courts in the Ninth Circuit "typically calculate 25% of the fund as the 'benchmark' for a

7  reasonable fee award, providing adequate explanation in the record of any 'special circumstances'

8  justifying a departure."  *In re Bluetooth*, 654 F.3d at 942 (citing *Six (6) Mexican Workers*, 904

9  F.2d at 1311.  The benchmark should be adjusted when the percentage recovery would be "either

10 too small or too large in light of the hours devoted to the case or other relevant factors."  *Six (6)*

11 *Mexican Workers*, 904 F.2d at 1311.

12         Here, Class Counsel asks for a fee award of $18.6 million, which is equal to 30% of the

13 Settlement Fund.  Mot. for Attorneys' Fees 1.  Having considered the relevant factors, the Court

14 exercises its discretion to find that a 30% request is appropriate in these circumstances.  The $62

15 million non-reversionary Settlement Fund and accompanying injunctive relief is an excellent

16 result that avoids the uncertainty and the risk presented by continued litigation.  This result was

17 also hard-fought.  The Settlement Agreement was reached only after approximately five years of

18 litigation, including two rounds of motions to dismiss, approximately twenty-six months of

19 contentious discovery including in regular discovery conferences with Magistrate Judge Cousins,

20 three full-day mediation sessions and additional discussions with experienced mediator Professor

21 Eric D. Green, and a settlement conference with Magistrate Judge Spero.  Class Counsel also

22 undertook substantial risk by agreeing to litigate this case on a purely contingent basis given the

23 magnitude of the class, complicated and technical facts, well-funded defendants, and numerous

24 contested issues.  An award of 30% in these circumstances is also consistent with Ninth Circuit

25 precedent.  *See, e.g., In re Volkswagen "Clean Diesel" Marketing*, No. 15-md-02672-CRB, 2022

26 WL 17730381, at *10 (N.D. Cal. Nov. 9, 2022) (awarding 30% of $80 million settlement fund);

27 *Carlin v. DairyAmerica, Inc.*, 380 F. Supp. 3d 998, 1022 (E.D. Cal. 2019), *appeal dismissed sub*

1    *nom. Carlin v. Spooner*, 808 F.App'x 571 (9th Cir. 2020) (awarding one-third of $40 million

2    recovery, and citing cases in support); *In re Lidoderm Antitrust Litig.*, No. 14-md-02521-WHO,

3    2018 WL 4620695, at *1 (N.D. Cal. Sept. 20, 2018) (awarding one-third of $105 million

4    settlement); *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-MD-02420-YGR, 2018 WL

5    3064391, at 1* (N.D. Cal. May 16, 2018) (awarding 30% of $139.3 million settlement fund); *In re

6    Galena Biopharma, Inc. Sec. Litig.*, No. 3:14-cv-00367, 2016 WL 3457165 (D. Or. June 24, 2016)

7    (awarding 32% fee based on a $27.9 million recovery); *In re TFT-LCD Antitrust Litig.*, No. M 07-

8    1827 SI, 2013 WL 149692, at *2 (N.D. Cal. Jan. 14, 2013) (awarding 30% of $68 million

9    recovery).

10          **B.      Lodestar**

11          Under the lodestar approach, a court multiplies the number of hours reasonably expended

12   by the reasonable hourly rate.  *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016).  A

13   reasonable hourly rate is typically the prevailing market rate in the relevant community.  *Id.*  Since

14   a 25% benchmark award might be reasonable in some cases but arbitrary in cases involving an

15   extremely large settlement fund, the purpose of the comparison with the lodestar is to ensure

16   counsel is not overcompensated.  *In re Coordinated Pretrial Proceedings in Petroleum Prods.*

17   *Antitrust Litig.*, 103 F.3d 602, 607 (9th Cir. 1997).

18          Here, Class Counsel calculate a lodestar figure of $12,960,632 for 1,794.8 hours from

19   seven law firms, to which they apply a 1.4 multiplier for a total of $18.6 million.  Attorneys' Fees

20   Mot. 18.  Among the participating law firms, the hourly rates charged by attorneys range from

21   range from $550 to $1,300 for partners; $420 to $710 for associates; and $535 for paralegals and

22   other support staff.  Decl. of Tina Wolfson and Michael W. Sobol in Supp. of Mot. for Attorneys'

23   Fees, Ex. A, ECF No. 351-1.

24          The Court finds that Class Counsel has provided sufficient support for its proposed

25   lodestar calculation.  *See id.*, Ex. A.  The number of hours and other costs attributed to this case

26   are reasonable considering the efforts required to engage in the settlement process here.  The

27   reasonableness is further supported by an examination of the hours not included in this lodestar

28   Case No.: 5:18-cv-05062-EJD
ORDER GRANTING FINAL APPROVAL; GRANTING ATTORNEYS' FEES AND COSTS

United States District Court
Northern District of California

calculation.  For example, Plaintiffs' lodestar calculation excludes all billers that billed less than twenty hours in this case and includes only work done prior to December 31, 2023, which would not include the substantial work done since then, including briefing and litigating the present Motion for Final Approval, and the substantial work to follow in ensuring compliance with the Settlement Agreement.  *Id.*, Ex. A; *id.* ¶ 94.  In addition, the hourly rates fall within the range of those approved in other similar cases, and the lodestar multiplier of 1.4 is comparable to that previously permitted by other courts in similar cases.  *See, e.g.*, *Steiner v. Am. Broad. Co., Inc.*, 248 Fed. Appx. 780, 783 (9th Cir. 2007) ("[T]his multiplier [of 6.85] falls well within the range of multipliers that courts have allowed"); *Vizcaino*, 290 F.3d at 1051 (multiplier of 3.65); *Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1265 (C.D. Cal. 2016) (multiplier of 3.07).

Accordingly, the Court finds that the lodestar cross-check confirms the reasonableness of the percentage-based calculation.

### C.    Expenses Award

Class Counsel also seek compensation for total expenses of $151,756.23.  Mot. for Attorneys' Fees 1.  Class Counsel is entitled to reimbursement of reasonable out-of-pocket expenses.  Fed. R. Civ. P. 23(h); *see Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (holding that attorneys may recover reasonable expenses that would typically be billed to paying clients in non-contingency matters).  Costs compensable under Rule 23(h) include "nontaxable expenses that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).  Here, Class Counsel seeks reimbursement for litigation expenses, and provides records documenting those expenses, in the amount of $151,756.23.  The Court finds this request is supported by the record and the amount is reasonable, fair, and adequate.

### D.    Service Award

Service awards are "intended to compensate class representatives for work undertaken on behalf of a class" and "are fairly typical in class action cases."  *DVD-Rental*, 779 F.3d 934, 943 (9th Cir. 2015) (internal quotation marks and citation omitted).  The district court must evaluate named plaintiff's requested award using relevant factors including "the actions the plaintiff has

Case No.: 5:18-cv-05062-EJD
ORDER GRANTING FINAL APPROVAL; GRANTING ATTORNEYS' FEES AND COSTS

26

United States District Court
Northern District of California

taken to protect the interests of the class, the degree to which the class has benefitted from those

actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation."

*Staton*, 327 F.3d at 977.  "Such awards are discretionary and are intended to compensate class

representatives for work done on behalf of the class, to make up for financial or reputational risk

undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private

attorney general." *Rodriguez*, 563 F.3d at 958–59 (internal citation omitted).  The Ninth Circuit

has emphasized that district courts must "scrutiniz[e] all incentive awards to determine whether

they destroy the adequacy of the class representatives." *Radcliffe v. Experian Info. Solutions*, 715

F.3d 1157, 1163 (9th Cir. 2013).

Here, the Class Representatives request service awards of $5,000 each.  Mot. for

Attorneys' Fees 24.  The Court finds that the requested service awards are reasonable considering

Class Representatives' efforts in this case, including spending significant time responding to

extensive and broad discovery, such as the invasive collection of comprehensive personal data

from their phones, email, and Google accounts.  *Id.* at 25.  The requested service awards are also

the presumptively reasonable amount of $5,000 and are consistent with precedent.  *See, e.g.,*

*Allagas v. BP Solar Int'l*, 2016 WL 9114162, at *4 (N.D. Cal. Dec. 22, 2016) (awarding $7,500 to

named plaintiffs who were deposed and $3,500 to one named plaintiff who was not deposed).

### E.      Objections

Counsel for the three Objectors filed one written objection to the Motion for Attorneys'

Fees.  Objections; Supp. Objections.  The Court **OVERRULES** this objection for the following

reasons.

Objectors essentially argue that Class Counsel should not be rewarded for acquiring an all

*cy pres* distribution Settlement Agreement.  Objections 22–24.  Again, Objectors' argument is

based entirely on the mistaken premise that *cy pres* distributions do not benefit the Class, and

again, the Ninth Circuit explicitly rejected this argument, stating that there is no requirement to

discount attorneys' fees based on *cy pres* relief:

[T]here is no uniform rule that district courts must discount the value

United States District Court
Northern District of California

1

> of any *cy pres* relief, regardless of the feasibility of distribution to class members or other relevant circumstances. Indeed, we have repeatedly approved attorneys' fees for *cy pres* settlements in proportions similar to the award here.

2

3   *Google Street View*, 21 F. 4th at 1121.  The fact that this is a *cy pres* resolution does not diminish

4   the Court's finding that Class Counsel worked exceptionally hard on this case, and for all the

5   reasons discussed above, it does not diminish the return for the Settlement Class Members.

6          The Court also notes that this is not, as Objectors represent, an "all-*cy pres*" settlement; the

7   Settlement Agreement also calls for meaningful injunctive relief discussed in greater detail above.

8   *See Google Street View,* 21 F.4th at 1113 ("[W]e reiterate at the outset that strictly speaking, the

9   settlement here is not, as [Objectors' counsel] describes it, a '*cy pres*-only settlement.' Instead, it

10  involves *cy pres* payments to third-party organizations *and* injunctive relief.").  The Court is

11  unpersuaded by Objectors' argument that the injunctive relief is "illusory" because it is consistent

12  with Google's obligations under 2022 agreements with the State Attorneys General.  Objections

13  23.  The terms here go beyond those in the referenced agreements, including requiring a default

14  auto-deletion period for Location Information; prohibiting Google from "mak[ing] any attempts or

15  efforts to re-identify . . . pseudonymous, anonymous, or de-identified" location information; and

16  requiring an annual email notice.  *See* Settlement Agreement, Ex. C ¶¶ 1, 2, 8, 11.  It is also worth

17  noting that only this Settlement would provide class members the ability to enforce any injunctive

18  relief provisions here in this Court.

19  **IV.    CONCLUSION**

20         Based on the preceding discussion, the Court finds that the terms of the Settlement

21  Agreement and the awards of attorneys' fees, expenses, and service awards, is fair, adequate, and

22  reasonable; that it satisfies Federal Rule of Civil Procedure 23(e) and the fairness and adequacy

23  factors; and that it should be approved and implemented.

24         The Motion for Final Approval is **GRANTED**.  Plaintiffs' Motion for Attorneys' Fees and

25  Costs is **GRANTED**.  Class Counsel is awarded  $18,600,000 in attorneys' fees and $151,756.23 in

26  litigation expenses.  Class Representatives are granted a service award of $5,000 each.  This

27

28  Case No.: 5:18-cv-05062-EJD
ORDER GRANTING FINAL APPROVAL; GRANTING ATTORNEYS' FEES AND COSTS

United States District Court
Northern District of California

document will constitute a final judgment (and a separate document constituting the judgment) for purposes of Rule 58, Federal Rules of Civil Procedure.

Without affecting the finality of this Order in any way, the Court retains jurisdiction of all matters relating to the interpretation, administration, implementation, effectuation, and enforcement of this Order and the Settlement Agreement.

The Parties shall file a post-distribution accounting in accordance with this District's Procedural Guidance for Class Action Settlements no later than **January 31, 2025**.

The Court sets a compliance deadline on **February 13, 2025,** on the Court's 9:00 a.m. calendar to verify timely filing of the post-distribution accounting.

**IT IS SO ORDERED.**

Dated: May 3, 2024

EDWARD J. DAVILA
United States District Judge

United States District Court
Northern District of California

Case No.: 5:18-cv-05062-EJD
ORDER GRANTING FINAL APPROVAL; GRANTING ATTORNEYS' FEES AND COSTS

# Exhibit A

## EXHIBIT A

### *Cy Pres* Allocation

Pursuant to the Settlement Agreement, the Net Settlement Fund shall be allocated to the Approved *Cy Pres* Recipients identified below. The Settlement Administrator shall distribute the proceeds of the Net Settlement Fund in the percentages set forth in below within 60 days of the Effective Date:

| Organization Name | Percentage of Net Settlement Fund (Rounded) | Estimated Amount[1] |
|---|---|---|
| Berkman Klein Center for Internet & Society at Harvard | 2.34% | $1,000,000 |
| MIT Internet Policy Research Initiative | 3.52% | $1,500,000 |
| New York University's Information Law Institute | 0.95% | $404,790 |
| Yale Law School's Information Society Project | 3.52% | $1,500,000 |
| Fordham University Center on Law and Information Policy | 2.34% | $1,000,000 |
| Center on Privacy & Technology at Georgetown Law | 2.34% | $1,000,000 |
| UCLA Institute for Technology, Law & Policy | 2.34% | $1,000,000 |
| The Markup | 7.03% | $3,000,000 |
| Internet Archive | 4.69% | $2,000,000 |
| ACLU Speech, Privacy, and Technology Project | 14.07% | $6,000,000 |
| ACLU of N. Cal. Tech. & Civil Liberties Program | 3.52% | $1,500,000 |
| Center for Democracy & Technology | 7.03% | $3,000,000 |
| ConnectSafely | 0.82% | $350,000 |
| Electronic Frontier Foundation | 13.69% | $5,839,243 |
| FPF Education & Innovation Foundation | 3.52% | $1,500,000 |
| Free Press | 4.69% | $2,000,000 |
| Privacy Rights Clearinghouse | 0.82% | $350,000 |
| Data & Society Research Institute | 4.69% | $2,000,000 |
| National Cybersecurity Alliance | 1.64% | $700,000 |
| Electronic Privacy Information Center (EPIC) | 2.34% | $1,000,000 |
| Rose Foundation | 14.07% | $6,000,000 |
|  |  |  |
| **Total:** | **100.00%** | **$42,644,033** |

---

[1] The amounts specified may change (e.g., to the extent the Net Settlement Fund accumulates interest prior to distribution).  *See* Settlement Agreement ¶¶ 40, 48.4.